Adam R.F. Gustafson
Principal Deputy Assistant Attorney General
Robert N. Stander
Bradley Craigmyle
Justin D. Heminger
Deputy Assistant Attorneys General
Riley Walters
Counsel
Environment and Natural Resources Division
Stefan J. Bachman (SC Bar No. 102182)
Senior Attorney
Environmental Enforcement Section
**United States Department of Justice**
150 M Street, N.E., Room 2.900
Washington, D.C. 20002
Tel: (202) 598-9566
*Counsel for the United States of America*

[Additional counsel
listed following caption]

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,<br><br>      Petitioners/Plaintiffs,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10; inclusive,<br><br>     Respondents/Defendants. | Case No. 2:26-cv-05242<br><br>**UNITED STATES' AND REAL PARTIES IN INTEREST SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S JOINT NOTICE OF REMOVAL**<br><br>[U.S.C. §§ 1442(A)(1) AND 1446(B)(3)] |

1

SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,

Real Parties in Interest.

_____

ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,

Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10; inclusive,

Respondents/Defendants.

_____

SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,

Real Parties in Interest.

2

Andrew Klair (CA Bar 334960)
andrew.klair@hklaw.com
James W. Noe (*Admission Pending*)
jim.noe@hklaw.com
Rafe Petersen (*Admission Pending*)
rafe.petersen@hklaw.com
Matthew Z. Leopold (*Admission Pending*)
matt.leopold@hklaw.com
**HOLLAND & KNIGHT LLP**
560 Mission Street, Suite 1900
San Francisco, California 94105
Tel: (415) 743.6962
*Counsel for Real Parties in Interest*
*Sable Offshore Corp. and Pacific Pipeline*
*Company*

3

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND ALL PARTIES:

The United States of America and Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company ("Sable") give notice of the removal to this Court of the above-captioned civil action pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446(b)(3) from the Superior Court for the State of California for the County of Santa Barbara.

The removed cases are *Center for Biological Div. et al. v. Cal. Dep't of Forestry & Fire Prot. et al.*, No. 25CV2244 (SBCSC), consolidated with *Envt'l Def. Ctr. et al. v. Cal. Dep't of Forestry & Fire Prot. et al.*, No. 25CV2247 (SBCSC). The grounds for removal are set forth below.

## THE UNITED STATES' GROUNDS FOR REMOVAL

**I.      Introduction**

On April 17, 2026, the state court declined to dissolve an injunction ("April Order") that conflicts with a March 13, 2026 Defense Production Act order issued by the Secretary of Energy ("DPA Order") directing Sable to immediately transport crude oil through the Santa Ynez Pipeline System ("SYPS"). In the April Order, the state court purports to enforce a federal consent decree as controlling over the DPA Order, forcing Sable, under threat of sanctions, to violate the DPA Order. *See* 28 U.S.C. § 1446(b)(3). Although the plaintiffs have not named the federal government as a defendant, the state court action is now clearly directed to the United States and a federal officer. *See* 28 U.S.C. § 1442(a)(1). The United States is therefore removing this case to defend itself in a federal forum.

This removal is timely because § 1446(b) does not apply to a removal under § 1442(a)(1) that is "directed to" the United States or a federal officer. Put differently, the removal clock applies to "the defendant," *see* 28 U.S.C. § 1446(b)(1), (3), and the United States is not a defendant in the state court case. *See Miami Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349, 1366

(N.D. Fla. 2018) ("Section 1446(b) does not address removal by a non-party to the case."). This removal is also timely because, even if § 1446's timing provision applied, the removal is filed within thirty days of the April Order.

Removal will also promote the uniform application of federal law. The state court case is intertwined with four other cases that are now pending before this Court and that raise related questions. Those cases are identified below:

- *United States & People of the State of California v. Plains All American Pipeline, L.P. et al.*, Case No. 20-cv-02415 (C.D. Cal.) (United States and California's civil enforcement case resolved by consent decree);

- *California v. Wright*, Case No. 26-cv-3396 (C.D. Cal.) (California's challenge to the DPA order);

- *California Department of Parks and Recreation v. Sable Offshore Corp. et al.*, Case No. 26-cv-02946 (C.D. Cal.) (California's state court trespass action removed to federal court); and

- *Sable Offshore Corp. et al. v. Quintero*, Case No. 26-cv-02739 (C.D. Cal.) (Sable's declaratory judgment action against California).

## II.   Background

1.    This consolidated case concerns a civil challenge brought by several environmental groups ("Environmental Plaintiffs") against certain California agencies and officials ("California"), challenging California's issuance of waivers to Sable. The waivers are one step in a lengthy process Sable has taken under the federal consent decree to resume transporting crude oil through segments CA-324 and CA-325 of the SYPS ("the segments").

A.    The Federal Consent Decree, the DPA Order, and Related Cases in this Court

2.    In March 2020, the United States and California filed a complaint in this Court against the segments' then-owners, Plains All American Pipeline, L.P.

and Plains Pipeline, L.P. (together, "Plains"), arising out of a 2015 release of oil from segment CA-324. Complaint, *United States & People of the State of Cal. et al. v. Plains All Am. Pipeline, L.P. & Plains Pipeline, L.P.*, 2:20-cv-02415 (C.D. Cal. Mar. 13, 2020) ("*Plains*"), Dkt. No. 1. With the complaint, the United States and California (and related California agencies) lodged the consent decree, proposing to resolve the alleged violations. *Id.* at Dkt. No. 6-1. The Court entered the consent decree in October 2020. *Id.* at Dkt. No. 33.

3.    At the time of the complaint and entry of the consent decree, the segments were classified as *intrastate*. *Plains*, Dkt. No. 1 ¶¶ 8–9. Consistent with that classification, the consent decree required Plains to obtain from California waivers and approval of a restart plan before resuming transportation of oil through the segments. *Id.*, Dkt. No. 6-1, Appx. B ¶ 1.A, B & Appx. D ¶ 1.a, b, e, f, j.

4.    In February 2024, Sable Offshore Corp. acquired an interest in the segments. *Id.*, Dkt. No. 49-2, Ex. 5. That transaction brought the segments under common ownership with other assets operated as a single interstate pipeline system, the Santa Ynez Pipeline System. *Id.*

5.    Since Sable's acquisition of the segments, intervening developments have materially altered the course of the segments' operations and the obligations imposed by the federal consent decree, resulting in substantial litigation in this Court:

    a.  On December 17, 2024, California issued waivers to Sable. *Id.*, Dkt. No. 49-2, Ex. 3.

    b.  On September 11, 2025, Sable submitted a restart plan for the segments to California, which to date California has neither approved nor disapproved. *See id.*

    c.  On December 17, 2025, the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") reclassified the SYPS, including the segments, as *interstate* and assumed sole and exclusive jurisdiction over

6

the SYPS pursuant to the Pipeline Safety Act. *Id.* at Ex. 5. Five days later, PHMSA approved a restart plan for the segments, and the next day PHMSA issued Sable an emergency special permit. *Id.* at Exs. 6, 7.

d. On January 14, 2026, Plains and Sable each submitted written requests to the United States and California to terminate the consent decree. The United States determined that the consent decree's termination standard has been met and stipulated to termination. *Id.* at Dkt. No. 49, PageID 1381. California has refused to stipulate to termination. *Id.* at Dkt. No. 55.

e. On January 23, 2026, California petitioned the Ninth Circuit to review PHMSA's reclassification of the segments as interstate, approval of the restart plan, and issuance of the emergency special permit. Petition for Review, *State of Cal. v. PHMSA et al.*, No. 25-508 (9th Cir. Jan. 23, 2026), Dkt. No. 1.

f. On March 13, 2026, the Secretary of Energy determined that transporting crude oil through the SYPS, including the segments, is essential to core national defense and security needs, which are threatened by energy shortages and reliance on foreign oil. The Secretary, acting pursuant to delegated Presidential authority, issued the DPA Order, attached as **Exhibit A**, directing Sable to immediately prioritize transportation of hydrocarbons through the SYPS until the federal government directs otherwise. Ex. A at PDF p. 4.[1] Soon after, Sable safely resumed transporting oil through the SYPS, including the segments, with PHMSA pipeline safety inspectors onsite supervising the process. *Plains*, Dkt. No. 49-3 ¶¶ 14–33. Sable *must* comply with the DPA Order, *see* 50 U.S.C. § 4513 (criminal penalties for failure to comply), and therefore the DPA

---

[1] Page citations to exhibits attached to this Notice refer to the PDF page number, not original page numbers in the document.

7

Order requires Sable to act under the direction of the Secretary of Energy. *See* 28 U.S.C. § 1442(a)(1).

g. On March 17, 2026, the California Department of Parks and Recreation filed a trespass action against Sable in Santa Barbara County Superior Court related to a portion of the segments that crosses state land in Gaviota State Park. Sable removed that action to this Court on March 19, 2026, citing the DPA Order and 28 U.S.C. § 1442(a)(1). Notice of Removal, *Cal. Dep't of Parks & Recreation v. Sable Offshore Corp et al.*, 2:26-cv-02946 (C.D. Cal. Mar. 19, 2026), Dkt. No. 1.

h. On March 30, 2026, the United States filed a motion to terminate or modify the federal consent decree. *Plains*, Dkt. No. 49. The motion asks this Court to terminate the consent decree because the termination standard has been met. *Id.* at PageID 1384–85. Alternatively, the motion asks this Court to modify the decree to substitute PHMSA as the regulator for the segments, reflecting significant changes in fact and law that have occurred since entry. *Id.* at PageID 1389–96. That motion is pending with the Court.

i. On March 31, 2026, California filed a complaint in this Court against the Secretary of Energy challenging the DPA Order. Complaint, *State of Cal. v. Chris Wright et al.*, No. 2:26-cv-03396 (C.D. Cal. Mar. 30, 2026), Dkt. No 1.

j. On April 13, 2026, California filed a motion in this Court to enforce the federal consent decree against the United States and Sable. *Plains*, Dkt. No. 55. That motion is pending with the Court.

B.   Environmental Plaintiffs' Claims and Procedural History of the Case

6.   On April 15, 2025, Environmental Plaintiffs filed complaints against the California Department of Forestry and Fire Protection, Office of the State Fire Marshal, and State Fire Marshal Daniel Berlant, in his official capacity ("OSFM"),

challenging OSFM's issuance of the state waivers.  Environmental Plaintiffs' suit contends, *inter alia*, that OSFM failed to comply with state and federal laws when issuing the waivers to Sable. Copies of the petitions for review are attached as **Exhibits B and C**.

7.    On June 3, 2025, Environmental Plaintiffs moved for a preliminary injunction to prevent Sable from resuming the transportation of crude oil through the segments, which the state court granted on July 29, 2025. A copy of the order on preliminary injunction is attached as **Exhibit D**. The preliminary injunction enjoins Sable from resuming the transportation of crude oil through the segments until it complies with all provisions of the federal consent decree and threatens Sable with sanctions for noncompliance with the preliminary injunction.

8.    On January 5, 2026, following PHMSA's reclassification of the segments to interstate, Sable moved the state court to rescind its July 29, 2025 preliminary injunction, which the state court denied on February 27, 2026.

9.    On March 13, 2026, following the Secretary's DPA Order requiring Sable to immediately resume transportation of hydrocarbons through the SYPS, Sable filed an ex parte application to dissolve the July 29, 2025 preliminary injunction based on its conflict with the DPA Order.

10.    On April 17, 2026, the state court issued the April Order denying Sable's ex parte application, finding that no conflict existed between the federal consent decree and the preliminary injunction, which, in the state court's view, rendered Sable's obligations under the DPA Order secondary to those set forth in the federal consent decree. A copy of the April Order is attached as **Exhibit E**.

11.    The state court has set a hearing for May 22, 2026, to address whether Sable should be found in contempt for obeying the DPA Order as opposed to the consent decree.

## III.   Reasons for Removal

12.   The federal officer removal statute is "an incident of federal supremacy." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969). The statute's purpose is to protect the United States from state court interference with federal operations. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007). To this end, the statute aims to protect against a state court that might "administer not only the laws of the State, but equally Federal law, in such a manner as to paralyze the operations of the government." *Tennessee v. Davis*, 100 U.S. 257, 263 (1880).

13.   While the general removal statute is construed narrowly, the federal officer removal statute is "broadly construed in favor of a federal forum." *In re Commonwealth's Motion to Appoint Counsel*, 790 F.3d 457, 466-67 (3d Cir. 2015). The Supreme Court confirmed this rule of construction just last month, when it broadly construed Section 1442(a)(1)'s phrase "relating to" in favor of removing state court lawsuits against energy companies for crude oil production during World War II.  *Chevron USA Inc. v. Plaquemines Parish, La.*, 146 S. Ct. 1052, 1060–62 (2026). This Court's inquiry is whether the United States is "threatened," one way or another, "with the state's coercive power." *Nationwide Invs. v. Miller*, 793 F.2d 1044, 1046 (9th Cir. 1986). And where, as here, "the essential nature and effect of the proceeding" is to "interfere with the public administration," then the suit is against the sovereign for purposes of the federal officer removal statute. *Land v. Dollar*, 330 U.S. 731, 738 (1947) (internal quotations omitted).

14.   Federal courts have repeatedly sustained removal under § 1442(a)(1) in a variety of circumstances where the suit is "directed to" the United States, federal agencies, or federal officials, even when those officials and agencies were not named as defendants. *See*, *e.g.*, *Miami Herald Media Co.*, 345 F. Supp. 3d at 1363–68 (removal by nonparty United States proper and timely following state court order compelling state agency to disclose documents that federal law required be kept confidential); *Luevano v. Dawoodbhai*, No. 2:18-CV-2467, 2018 WL

2315954, *3–4 (C.D. Cal. May 18, 2018) (suit stemming from defendant's actions that related to his federal employment properly removed); *In re Minasian*, No. 8:18-CV-205, 2018 WL 1940402, *2 (C.D. Cal. Apr. 23, 2018) (state suit claiming Judge Advocate attorney for the California National Guard engaged in the unauthorized practice of law by not being licensed in California was properly removed as defendant was "at the very least, a 'person acting under'" a federal officer, if not a federal officer himself); *In re Lusk*, No. 16-CV-0930, 2016 WL 4107671, *3–4 (C.D. Cal. Jul. 30, 2016) (similar suit against JAG attorney properly removed as it would "interfere with the United States' operation of its federal JAG program" and thus was "effectively 'directed to' the United States and its military operation"); *Clio Convalescent Ctr. v. Mich. Dep't of Consumer & Indus. Servs.*, 66 F. Supp. 2d 875, 876-77 (E.D. Mich. 1999) (state court order enjoining state agency from reporting violations as required by federal law was sufficient basis for Secretary to remove the case following the injunction as state agency was acting as the federal agency's agent); *Harbor Venture, Inc. v. Nichols*, 934 F. Supp. 322, 322-24 (E.D. Mo. 1996) (federal officials and agencies who were parties to a consent decree properly removed state court action regarding enforceability of said decree).

15.    The state court's April Order prohibits Sable from immediately transporting crude oil through the segments under threat of sanctions, while the DPA Order requires Sable to immediately transport oil through the SYPS, including the segments, or face possible criminal penalties, placing the two directives in direct conflict and Sable in an impossible position.

16.    The April Order attempts to resolve this conflict by characterizing the preliminary injunction as no broader in scope than the federal consent decree. In doing so, the April Order considers the relationship between the federal consent decree and the DPA Order and finds that "a DPA Order does not by itself permit violation of other federal law to accomplish the goals of the DPA Order.

Consequently, in the present procedural posture of the requirements binding on Sable, Sable continues to be obligated to the requirements of the federal consent decree." Ex. E at PDF p. 16.

17. The April Order further considers the DPA Order's relationship with state regulatory law, relying on precedent that, in the state court's view, "strongly implies that the DPA order, by itself, does not permit the violation of applicable state regulatory law." *Id.*

18. In reaching these conclusions, the state court *limits* the DPA Order through its continued injunction of the segments and purports to *enforce* the federal consent decree as controlling over the DPA Order. Moreover, in treating the federal consent decree as paramount and requiring full compliance with its terms prior to compliance with the DPA Order, the state court *interferes* with the Secretary of Energy's delegated Presidential authority to address national security interests under the Defense Production Act, as exercised through the DPA Order.

19. Under the broad reading of the federal officer removal statute required by federal law, this case, including the claims that rely on the enforceability of the federal consent decree, notwithstanding the DPA Order, is thus "directed to" the United States and is properly removed to federal court under 28 U.S.C. § 1442(a)(1).

20. The United States' removal is timely because § 1446(b) does not apply when the United States removes a case under § 1442(a)(1) that is "directed to" it. Put differently, Congress intended to give the United States broad rights under the federal officer removal provision because the United States may not be a defendant in a lawsuit "directed to" it and therefore may not immediately discover that the interests of the United States or a federal officer are affected.

21. Removal is also timely under 28 U.S.C. § 1446(b)(3) because the April Order made clear that this case is now removable. The April Order reflects the state court's view that the DPA Order is conditioned on full compliance with

12

the federal consent decree, under threat of sanctions, notwithstanding the sharp conflict between the April Order and the DPA Order. The April Order also makes clear that the state court is seeking to enforce the federal consent decree as it currently stands to grant emergency injunctive relief to Environmental Plaintiffs that, if enforced, would interfere with federal operations, *Dollar*, 330 U.S. at 738; *Watson*, 551 U.S. at 150, if not "paralyze" them altogether, *Davis*, 100 U.S. at 262.

22.    Removal of the state action also will ensure the uniform interpretation and application of federal law to the same set of facts and issues. This Court already has pending before it four lawsuits concerning the same issues and facts implicated by the April Order and the state action. Most importantly, this Court has jurisdiction over the federal consent decree in the *Plains* case and a challenge to the DPA Order.

23.    Accordingly, this suit is "directed to" the United States and thus is properly removed to this Court pursuant to 28 U.S.C. § 1442(a)(1).

## SABLE'S GROUNDS FOR REMOVAL

24.    Sable has independent grounds for federal officer removal because federal removal of civil actions includes federal officers as well as any persons "acting under that officer." 28 U.S.C. § 1442(a)(1).

25.    The statute's purpose "should not be frustrated by a narrow, grudging interpretation," *Willingham*, 395 U.S. at 407, and the words "'acting under' are broad," and must be "liberally construed." *Watson*, 551 U.S. at 147; *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). That liberal construction applies with particular force where, as here, a party seeks to "assert federal immunity defenses," because the statute's "main point" is "to give officers a federal forum in which to litigate the merits of [those] immunity defenses.'" *Watson*, 551 U.S. at 151 (quoting *Jefferson Cnty v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part)). The same considerations apply to private persons acting as federal assistants. *Id.*

26.    The state action as a whole is "directed to" the United States and to Sable as a person acting under a federal officer. The April 17 contempt process is intertwined with and inseparable from the state action's underlying merits, and removal of the entire civil action is therefore proper. The Ninth Circuit has held that where contempt arises within a larger case and is not severable, "[t]he state court's issuance of [a] bench warrant … necessitated removing the entire action." *Swett v. Schenck*, 792 F.2d 1447, 1450 (9th Cir. 1986); *accord. State of Florida v. Cohen*, 887 F.2d 1451, 1453–55 (11th Cir. 1989); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995) (Section 1442 reaches "any proceeding in which state judicial civil power was invoked against a federal official").

27.    The DPA Order, the contempt proceedings, and the preliminary injunction rise and fall on the same facts. If Sable's federal defenses prevail, the state court cannot enforce its preliminary injunction to penalize or restrain federally directed conduct, and the Defense Production Act's immunity provision, 50 U.S.C. § 4557, bars enforcement against Sable. Removal is therefore the only coherent way to resolve the intertwined orders, facts, and federal defenses presented here.

    A.    Sable's request for removal is timely.

28.    Section 1442(a)(1) contains no independent deadline. Instead, removal is authorized whenever a state proceeding is "against or directed to" a person "acting under" a federal officer.  In any event, the Ninth Circuit holds that a federal officer's 30 days run only from disclosure of "sufficient facts for federal officer removal, even if the officer was previously aware of a different basis for removal." *Durham*, 445 F.3d at 1253. Section 1442 must be "interpret[ed] … broadly in favor of removal." *Id.* at 1252–53. The triggering event here is the state court's April 17, 2026 order denying Sable's motion to dissolve the preliminary injunction and initiating contempt proceedings against Sable—the first invocation of coercive judicial process against Sable for conduct taken under federal direction.

14

29. The April Order disclosed facts that, at minimum, render removal proper now, and Section 1442(d)(1) is plainly satisfied here. The statute requires a "proceeding" in which a "judicial order … is sought or issued" against the person acting under a federal officer. That condition was indisputably met on April 17, 2026, when the state court: (i) construed the preliminary injunction to bind Sable's federally mandated actions, (ii) held that the DPA Order "does not constitute a basis for dissolving or modifying the preliminary injunction," and (iii) initiated contempt proceedings to enforce that conclusion. Only then did the State's coercive process "directed to" Sable for acts taken "under color of" federal office crystallize. *See Durham*, 445 F.3d at 1253.

30. This result accords with the statute's purpose—protecting the federal government and its agents from state court "interference with its operations." *Chevron USA Inc. v. Plaquemines Par.*, 146 S. Ct. 1052, 1057 (2026).

31. The state action, now an enforcement proceeding seeking to condition, restrain, or punish Sable's compliance with a federal directive, is precisely the kind of action § 1442(a)(1) was enacted to remove.

32. Fewer than 30 days have elapsed since April 17, 2026. This Notice of Removal is therefore timely under any standard. *See* Fed. R. Civ. P. 6(a).

33. Sable accordingly is entitled to remove the entire civil action, including all process, pleadings, and orders pursuant to 28 U.S.C. § 1442(a)(1).

B. <u>Sable meets the requirements for a party acting under a federal officer.</u>

34. To qualify as "acting under" a federal officer, the removing party must: (1) be "a person", (2) show a "causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims," and (3) "assert a colorable federal defense." *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) ("*Chevron*") (quoting *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019)); *see also Defiore v. SOC, LLC*, 85 F.4th 546, 552 (9th Cir. 2023).

15

35.    That Sable is a real party in interest, rather than a formal defendant, is not material; the state court's initiation of contempt and show-cause proceedings against Sable rendered the case removable. "[T]he form of the action is not controlling[;]" rather, the dispositive inquiry is "the state's power to subject federal officers to the state's process." *Nationwide Invs.*, 793 F.2d at 1047. The state action is a "proceeding" in which a "judicial order … is sought or issued" against Sable—a legal person "acting under" a federal officer—for acts taken under color of federal office (i.e., compliance with the Secretary of Energy's DPA Order). Removal of the entire state action under § 1442(a)(1) and (d)(1) is therefore proper.

36.    Sable Offshore Corp. and Pacific Pipeline Company are corporations, and "[t]he courts of appeals have uniformly held that corporations are 'person[s]' under § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244; *see also* 1 U.S.C. § 1.

37.    Whether an entity is "acting under" a federal officer turns on four factors: (1) whether it was working under an officer "in a manner akin to an agency relationship"; (2) whether it was "subject to the officer's close direction," guidance, control, or "detailed regulation, monitoring, or supervision"; (3) whether it helped fulfill "basic governmental tasks"; and (4) whether its activities were "so closely related to the government's implementation of its federal duties" that it faced "a significant risk of state-court prejudice." *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022). This prong is broad and "must be liberally construed." *Id.* Sable satisfies each factor.

38.    The DPA Order is an express, targeted federal directive, naming Sable expressly. It commands Sable to "immediately prioritize and allocate" pipeline transportation, to "immediately commence performance," to give pipeline transportation priority over alternatives, and to submit monthly hydrocarbon volume reports to the Department of Energy. Ex. A at PDF p. 4. Sable "is ordered to comply with this order immediately and to maintain such compliance until such time as the conditions necessitating the issuance of this order abate or until Sable

16

is directed otherwise." *Id.* As California has acknowledged, "[t]he DPA Order ***expressly requires Sable's immediate compliance with its directions***" and "imposes criminal penalties on defense contractors who refuse to comply." *Id.* at Dkt. No. 43, at PageID 516 (emphasis and italics added). All this adds up to subject Sable to the Secretary of Energy's close direction and control.

39.     Sable is also helping fulfill "basic governmental tasks." *City & Cnty. of Honolulu*, 39 F.4th at 1107. Section 1442(a) is satisfied where private parties "help[] the Government to produce an item that it needs," *Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 916 (9th Cir. 2024) (quoting *Watson*, 551 U.S. at 152-53), or where they produce goods "used to help conduct a war" or perform a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Chevron*, 32 F.4th at 757 (quoting *Watson*, 551 U.S. at 154). The Supreme Court recently affirmed federal officer removal in materially similar circumstances: a state environmental suit challenging crude-oil production that supported federal wartime fuel needs. *See Chevron USA*, 146 S. Ct. at 1060–62. The same relationship exists here: the DPA Order, invoking the current energy emergency and national security, directs Sable's transportation of crude oil from federal offshore production into California refineries. "In this all-hands-on-deck, wartime context," the federal interest in producing "more crude oil as quickly as possible" is paramount. *Id.* Sable is helping fulfill that task.

40.     Finally, Sable's compliance with the DPA Order and resulting transportation of crude oil are causally connected to Environmental Plaintiffs' claims as reframed by the April 17, 2026 Order. *Chevron*, 32 F.4th at 755. The "central issue" in the causal-nexus inquiry is whether a federal officer directed the challenged action. *See People of the State of Cal. v. Express Scripts, Inc.*, No. 24-1972, slip op. at 15, 24–25 (9th Cir. Sept. 8, 2025); *DeFiore*, 85 F.4th at 554, 557 n.6. The party "need show only that the challenged acts 'occurred because of what they were asked to do by the Government,'" and the court must "'credit the

17

[accused party's] theory of the case.'" *DeFiore*, 85 F.4th at 557 (citations omitted). In turn, the April Order means that Sable faces direct, immediate state-court interference with its ability to comply with the DPA Order. The Secretary of Energy has ordered Sable to ***immediately*** prioritize, allocate, and commence transportation through the SYPS, while the state court, through the contempt proceedings, seeks to penalize, prevent, or condition that very conduct.

41.    To show a colorable federal defense, the removing party need only present a defense that "depends on federal law." *Jefferson Cnty*, 527 U.S. at 431. "[T]he scope of the court's inquiry is only whether the [accused party] advanced a colorable federal defense, 'not whether [the] defense will be successful,'" and the accused party "'need not win [their] case' before removal." *DeFiore*, 85 F.4th at 558 (citations omitted). The defense need only not be "immaterial and made solely for the purpose of obtaining jurisdiction or … wholly insubstantial and frivolous." *Id.* at 560 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).  Here, Sable asserts statutory immunity under 50 U.S.C. § 4557, which provides that "[n]o person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or [DPA] order." The DPA Order requires Sable to use the SYPS to deliver oil to refineries supporting national security and energy needs. Compliance with the DPA Order necessarily requires Sable to operate segments CA-324 and CA-325 in a manner that exceeds the scope of operating authority that Environmental Plaintiffs contend Sable presently holds under state law. OSFM—the state agency that issued the waivers Environmental Plaintiffs challenge, and is named as a respondent in the state action—has likewise not recognized any independent state law authority for Sable to undertake the activities the DPA Order compels. Section 4557 therefore preempts and bars the state action insofar as it seeks to prevent or punish Sable's DPA compliance.

18

## THE UNITED STATES AND SABLE HAVE MET ALL PROCEDURAL REQUIREMENTS

42.    **Removal to this Court is proper.** Because the complaints in the consolidated state action were filed in the Superior Court of California, County of Santa Barbara, removal is proper to this Court, which encompasses the location in which the complaints were initially pending in state court. *See* 28 U.S.C. § 1442(a).

43.    **Notice is being provided.** Pursuant to 28 U.S.C. § 1446(d), the United States and Sable will promptly provide written notice to California and Environmental Plaintiffs and will promptly file a copy of this Notice with the clerk of the Superior Court of the State of California, County of Santa Barbara.

44.    **All required filings are attached**. Pursuant to 28 U.S.C. § 1446(a), copies of all state court filings are attached as **Exhibits F through PP.**

45.    **Reservation of Rights.** The United States and Sable reserve the right to amend or supplement this Notice of Removal.

## CONCLUSION

The United States and Sable respectfully request this Court exercise jurisdiction over this action, enter orders, and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the Superior Cout of the State of California, Santa Barbara County.


DATED: May 14, 2026.


Respectfully submitted,


Adam R.F. Gustafson
Principal Deputy Assistant Attorney General
Robert N. Stander
Bradley Craigmyle
Justin D. Heminger
Deputy Assistant Attorneys General

19

Riley Walters
Counsel
Environment and Natural Resources Division
United States Department of Justice


/s/ *Stefan J. Bachman*
Stefan J. Bachman (SC Bar No. 102182)
Email: stefan.bachman@usdoj.gov
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
150 M Street, NE, Room 2.900
Washington, DC 20002
(202) 598-9566


/s/ *Andrew Klair*[2]
Andrew Klair (CA Bar 334960)
andrew.klair@hklaw.com
James W. Noe (*Admission Pending*)
jim.noe@hklaw.com
Rafe Petersen (*Admission Pending*)
rafe.petersen@hklaw.com
Matthew Z. Leopold (*Admission Pending*)
matt.leopold@hklaw.com
HOLLAND & KNIGHT LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Tel: (415) 743.6962

---

[2] Filer attests that all signatories concur in this filing's content and have authorized the filing.

20