# EXHIBIT I

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
DarreE. Parker, Executive Officer
6/27/2025 1:00 PM
By: Terri Chavez , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
LISA L. GARCIA, SBN 301362
lisa.garcia@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone: (310) 620-5879
Facsimile: (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,

Petitioners and Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,

Respondents and Defendants,

Case No. 25CV02247

Assigned for all purposes to:
Hon. Donna D. Geck

**REAL PARTIES IN INTEREST *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION AND REQUEST FOR SANCTIONS OR, IN THE ALTERNATIVE, TO STRIKE THE DECLARATION OF MR. KUPREWICZ; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Filed concurrently with supporting Declaration of Jeffrey Dintzer and Exhibits, and [Proposed] Order]

Date:            June 30 2025
Time:            8:30 a.m.

---

1

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

and

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

| | |
|---|---|
| Dept: | 4 |
| Complaint Filed: | April 15, 2025 |
| Trial Date: | None set |

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

### *EX PARTE* APPLICATION

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 30, 2025, at 8:30 a.m., or as soon thereafter as the matter may be heard in Department 4 of the California Superior Court for the County of Santa Barbara, Anacapa Division, located at 1100 Anacapa Street, Santa Barbara, CA 93121-1107, Real Parties in Interest Sable Offshore Corp. ("Sable") and Pacific Pipeline Company ("PPC" and collectively "Real Parties") will and hereby do apply *ex parte* for an order requiring Plaintiffs' expert Richard B. Kuprewicz ("Mr. Kuprewicz") to appear at his deposition on July 1, 2025 or, in the alternative, for an order shortening time for notice and advancing the hearing on Real Parties' Motion to Compel Mr. Kuprewicz's deposition or, in the alternative, for an order striking Plaintiffs' Declaration of Richard B. Kuprewicz submitted in support of Petitioners' *Ex parte* Application for Stay, Order to Show Cause and Temporary Restraining Order.

This Application is made pursuant to Rule 3.1200, *et seq.*, of the California Rules of Court, and is made on the grounds that good cause and exigent circumstances exist because Real Parties will suffer significant and irreparable harm if they are not afforded their due process right to cross-examine Plaintiff's expert and key declarant, Mr. Kuprewicz, on an expedited basis:

1. On June 2, 2025, Plaintiffs filed an *ex parte* application to stay, or in the alternative, an order to show cause and temporary restraining order against Defendants and Real Parties to stay the operation of the approval of State Waivers for CA-324 and CA-325A/B pending judgment of the Court.

2. Plaintiffs filed the Declaration of their expert Mr. Kuprewicz in support of their *ex parte* application, which also supports their OSC re preliminary injunction (the "Preliminary Injunction"). Mr. Kuprewicz serves as Plaintiffs' key witness supporting the Preliminary Injunction, offering in his declaration expert opinions regarding the effects of corrosion to the Pipelines. The Court scheduled the hearing on the Preliminary Injunction for July 18, 2025 and Real Parties' opposition to the Preliminary Injunction is due July 7, 2025.

3. Consistent with their right to cross-examine Mr. Kuprewicz to oppose the Preliminary Injunction, Real Parties served a deposition subpoena on Mr. Kuprewicz on June 5, 2025. On June 10,

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

2025, Plaintiffs' counsel agreed that Mr. Kuprewicz would appear for deposition but asked that the deposition be moved one week later due to scheduling conflicts and sought certain accommodations due to Mr. Kuprewicz's health conditions.  Real Parties met and conferred in good faith to accommodate Mr. Kuprewicz, agreeing to delay the deposition one week and travel to a hotel near Mr. Kuprewicz to minimize his own travel.  On June 12, 2025, the parties finalized their agreement for the date, time, and location of Mr. Kuprewicz's deposition and Mr. Kuprewicz's personal counsel (who has never objected or moved to quash the deposition subpoena) accepted service of the amended deposition notice.

4.      But Plaintiffs "meet and confer" efforts were merely a ruse to buy themselves more time to quash the subpoena and disadvantage Real Parties.  Nearly two weeks after agreeing to produce Mr. Kuprewicz for deposition, Plaintiffs changed their mind (without legal support).  Plaintiffs then waited until two business days before Mr. Kuprewicz's deposition to move to quash.  This gamesmanship should not be tolerated.

5.      Real Parties have a fundamental right to cross-examine Mr. Kuprewicz and will be severely prejudiced without an adequate and sufficient opportunity to depose Mr. Kuprewicz about his opinions and declaration before their opposition to the Preliminary Injunction is due on July 7, 2025.  It would be extremely prejudicial to further extend the briefing and hearing schedule for the Preliminary Injunction while a TRO remains in place.  Furthermore, Real Parties have no alternative means of obtaining the information sought by the deposition subpoena served on Mr. Kuprewicz.  Because of Plaintiffs' purposeful delay and the upcoming holiday weekend, there is not enough time for a regularly noticed motion to compel the deposition of Mr. Kuprewicz to be heard before the opposition is due.  *Ex parte* relief is warranted. Mr. Kuprewicz should be ordered to appear at his deposition, duly noticed for July 1, 2025.  In the alternative, Real Parties' Motion to Compel Mr. Kuprewicz's Deposition currently set to be heard July 18, 2025 should be advanced to be heard by July 1, 2025 to allow time for Mr. Kuprewicz's deposition to take place during this shortened holiday week.  In the alternative, if due to Plaintiffs' delay Mr. Kuprewicz's deposition cannot feasibly take place before July 7, 2025, his declaration should be stricken.

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

6.    Pursuant to Rule 3.1202, subdivision (a) of the California Rules of Court, the contact information for known counsel in this matter is as follows:

Jeffrey D. Dintzer
jeffrey.dintzer@alston.com
Garrett B. Stanton
garrett.stanton@alston.com
 ALSTON & BIRD LLP
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
(213) 576-1000

DJ Moore
djmoore@paulhastings.com
Benjamin J. Hanelin
benjaminhanelin@paulhastings.com
Natalie C. Rogers
natalierogers@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
(310) 620-5700

Linda Krop
lkrop@environmentaldefensecenter.org
Jeremy M. Frankel
jfrankel@environmentaldefensecenter.org
Tara C. Rengifo
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
(805) 963-1622, Ext. 100

Julie Teel Simmonds
jteelsimmonds@biologicaldiversity.org
David Pettit
dpettit@biologicaldiversity.org
Talia Nimmer
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
(510) 844-7100

Michael S. Dorsi
Michael.Dorsi@doj.ca.gov

5

California Attorney General's Office
455 Golden Gate Ave, Ste 11000
San Francisco, CA 94102
(415) 510-4400

7. In accordance with California Rule of Court 3.1203, counsel for Real Parties provided notice of the nature of the relief to be requested and the date, time and place the Application will be made to counsel for Plaintiffs, Defendants, and Mr. Kuprewicz on June 27, 2025, by email at 6:45 a.m. Counsel for Plaintiffs intend to appear and oppose the application. Counsel for Defendants and counsel for Mr. Kuprewicz have not responded as to whether they intend to appear and oppose the application.

8. No prior application has been made with respect to this matter.

This Application is made pursuant to California Rule of Court 3.1202 and is based on this Application and the accompanying Memorandum of Points and Authorities, the declaration of Jeffrey Dintzer filed concurrently herewith, and the Notice of Motion and Motion to Compel the Deposition of Richard B. Kuprewicz.


DATED:  June 27, 2025              Respectfully submitted,

                                  **ALSTON & BIRD**
                                  JEFFREY D. DINTZER
                                  GARRETT B. STANTON

                                  **PAUL HASTINGS**
                                  DUNCAN JOSEPH MOORE


                                  _____
                                        Jeffrey D. Dintzer

                                  Attorneys for Real Parties in Interest
                                  **SABLE OFFSHORE CORP.**
                                  **PACIFIC PIPELINE COMPANY**

6

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION AND STATEMENT OF RELEVANT FACTS**

Real Parties in Interest Sable Offshore Corp. ("Sable") and Pacific Pipeline Company ("PPC" and collectively "Real Parties") seek *ex parte* relief for: (1) an order requiring Plaintiffs' expert Mr. Kuprewicz to appear at deposition on July 1, 2025 or, (2) in the alternative an order shortening time for notice and advancing the hearing on Real Parties' Motion to Compel Mr. Kuprewicz to appear for deposition or, (3) if Mr. Kuprewicz's deposition cannot feasibly take place before Real Parties' opposition to the Preliminary Injunction is due, in the alternative an order striking the declaration of Mr. Kuprewicz submitted in support of Plaintiffs' Application for a TRO and Motion for Preliminary Injunction.

Plaintiffs submitted the declaration of Mr. Kuprewicz in support of their OSC re Preliminary Injunction, which is scheduled to be heard on July 18, 2025. Consistent with their fundamental due process right to cross-examine Mr. Kuprewicz, Real Parties immediately served a deposition subpoena on Mr. Kuprewicz. The parties, including Mr. Kuprewicz's attorney agreed to appear. Plaintiffs asked that the deposition be rescheduled one week later and the parties met and conferred about deposition logistics to accommodate Mr. Kuprewicz's health issues. Real Parties agreed to reschedule the deposition for July 1, 2025 and made arrangements for the deposition to be taken at a hotel next to Mr. Kuprewicz's residence. Mr. Kuprewicz's attorney agreed and accepted service of the amended deposition subpoena. But then Plaintiffs suddenly reneged on that agreement, stating that Mr. Kuprewicz would not appear for his deposition. Notably, Mr. Kuprewicz's own attorney has never objected or moved to quash the subpoena. Plaintiffs then waited until roughly two business days before Mr. Kuprewicz's deposition to file a motion to quash. In light of the shortened workweek due to the 4th of July holiday, Real Parties are now left with insufficient time to move to compel Mr. Kuprewicz's deposition. These actions are clearly intended to deprive Real Parties of their fundamental right to cross-examine and prepare their opposition to Plaintiffs' Preliminary Injunction. Plaintiffs' clear gamesmanship should not be tolerated and the witness should be ordered to appear at his deposition on the agreed upon date, time and location.

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

**A.  Plaintiffs Filed the Declaration of Richard B. Kuprewicz in Support of Their Preliminary Injunction.**

On June 2, 2025, Plaintiffs filed an *ex parte* Application For Stay or Order to Show Cause and Temporary Restraining Order.  In support of their Application, Plaintiffs also filed the Declaration of Richard B. Kuprewicz, a purported pipeline safety expert, who opined that the pipelines cannot be safely operated and why the waivers will not ensure the integrity and safety of the pipelines or prevent another oil spill.  On June 3, 2025, the Court granted Plaintiffs' temporary restraining order and scheduled an Order to Show Cause why a preliminary injunction should not issue against Defendants and Real Parties prohibiting them from proceeding with the restart and operation of the Las Flores Pipeline System on July 18, 2025.  Real Parties' opposition to the Preliminary Injunction is currently due on July 7, 2025.

**B.  Real Parties Personally Served Mr. Kuprewicz With a Deposition Subpoena for Personal Appearance and Mr. Kuprewicz Agreed to Appear.**

On June 5, 2025, Real Parties personally served a Deposition Subpoena for Personal Appearance and Production of Documents on Mr. Kuprewicz for June 24, 2025 and paid witness fees of $41.00.  [*See* Declaration of Jeffrey Dintzer ("Dintzer Decl."), ¶ 1.]  On June 10, 2025, counsel for Center for Biological Diversity agreed that Mr. Kuprewicz would appear for deposition but asked that the deposition be rescheduled to a later date, taken remotely, and split into two sessions due to Mr. Kuprewicz's health issues.  [*Id.*, ¶ 2.]  The parties conferred about deposition logistics and Real Parties worked in good faith to provide accommodations for Mr. Kuprewicz's stated health issues. [*Id.*, ¶ 2.]  On June 12, 2025, all parties (including Mr. Kuprewicz's personal counsel) agreed to a July 1, 2025 deposition date, time, and location close to Mr. Kuprewicz.  [*Id.*, ¶ 3.]  On June 20, 2025, Real Parties timely served an Amended Deposition Subpoena for Personal Appearance and Production of Documents on Mr. Kuprewicz for July 1, 2025 on Mr. Kuprewicz's counsel, who agreed to accept service of the subpoena.  [*Id.*, ¶ 3.]

**C.  Nearly Two Weeks After Agreeing to Appear For Deposition, Plaintiffs Suddenly Refuse to Produce Mr. Kuprewicz for Deposition.**

On June 23, 2025, nearly two weeks after agreeing to appear for deposition and after accepting

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

service of the Amended Deposition Subpoena for July 1, 2025, counsel for Environmental Defense Center emailed Real Parties for the first time stating that "[a]fter further consideration," they would not produce Mr. Kuprewicz for deposition – without any valid basis for their newfound position. [Dintzer Decl., ¶ 4.] Real Parties explained that during the meet and confer process in which all parties agreed to a date, time, and location for Mr. Kuprewicz's deposition, neither Plaintiffs, nor Mr. Kuprewicz ever objected to appearing for deposition. [*Id.*, ¶ 4.] Moreover, Real Parties explained why they are entitled to cross-examine witnesses in support of a Preliminary Injunction and that if Mr. Kuprewicz refused to appear, they would seek monetary sanctions. [*Id.*, ¶ 4.] On June 24, 2025, counsel for Environmental Defense Center confirmed Mr. Kuprewicz would not appear and served formal objections to the deposition. [*Id.*, ¶ 4.] On the evening of June 26, 2025, roughly two business days before Mr. Kuprewicz's deposition (and over two weeks after agreeing Mr. Kuprewicz would sit for deposition), Plaintiffs filed a motion to quash the subpoena. The timing of these motions will preclude Plaintiffs from taking Mr. Kuprewicz's deposition in time to use his testimony in opposition to the pending Motion for Preliminary Injunction. Notably, Mr. Kuprewicz's own counsel has never objected or filed a motion to quash the subpoena.

## II.   THE COURT IS AUTHORIZED TO SHORTEN TIME FOR NOTICE AND HEARING OF THE PROPOSED MOTION

Code Civ. Proc. § 1005(b) provides that "[t]he court, or a judge may prescribe a shorter time" than otherwise prescribed in § 1005 for written notice of a motion. California Rules of Court, rule 3.1300(b) states that the court "on application for an order shortening time supported by a declaration showing good cause, may prescribe shorter times for the filing and service of papers than the times specified in Code of Civil Procedure section 1005."

## III.   *EX PARTE* RELIEF IS WARRANTED

As stated in the *ex parte* application and the Declaration of Jeffrey Dintzer, good cause exists to order Mr. Kuprewicz to appear at his deposition on July 1, 2025 because Real Parties will be irreparably harmed if the Court does not grant the relief they seek. Due to Plaintiffs' intentional delay, Plaintiffs

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

have left insufficient time to brief and hear the Motion to Compel *and* take Mr. Kuprewicz's deposition during this shortened holiday week before Real Parties' opposition is due on Monday July 7.

Without the opportunity to cross-examine Mr. Kuprewicz, Real Parties are denied their due process right to cross-examine. Real Parties served a valid Deposition Subpoena on Mr. Kuprewicz. Mr. Kuprewicz's own attorney accepted service of the subpoena and has never objected or moved to quash it. Plaintiffs also agreed that Mr. Kuprewicz would appear for deposition. At Plaintiffs' request, Real Parties agreed to reschedule the deposition to a later date and move the location closer to his home to accommodate his health issues. During these meet and confer efforts, Plaintiffs never objected to the deposition going forward; to the contrary, they insisted that certain conditions be put in place to address Mr. Kuprewicz's deposition. Those conditions were fully vetted and addressed to the satisfaction of Plaintiffs and Mr. Kuprewicz's counsel during a video teleconference on June 12, 2025. Had Plaintiffs objected earlier, Real Parties would have been afforded an opportunity to move to compel Mr. Kuprewicz's deposition. Instead, Plaintiffs waited until weeks later (and only a few days before his deposition) to notify Real Parties that they intended to object to the taking of Mr. Kuprewicz's deposition and only filed their motions to quash his deposition subpoena. Plaintiffs have offered no valid legal basis for refusing to allow this deposition to proceed.

Given Real Parties' upcoming July 7, 2025 opposition deadline, if the requested relief is not provided, Real Parties will be denied their right to cross-examine evidence submitted in support of Plaintiffs' Preliminary Injunction. Additionally, it would be extremely prejudicial to further extend the briefing and hearing schedule for the Preliminary Injunction while a TRO remains in place. For these reasons, the Court should grant the requested relief and order Mr. Kuprewicz to appear for his deposition on July 1, 2025. In the alternative, Real Parties request an order shortening time for notice and advancing the hearing date on Real Parties' Motion to Compel Mr. Kuprewicz's Deposition to later today, and use Plaintiffs' motions for to quash as their oppositions to the motion to compel.

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

## IV.    MR. KUPREWICZ SHOULD BE COMPELLED TO APPEAR FOR DEPOSITION OR THE DELCARATION SHOULD BE STRICKEN

First, it is black-letter law in California that personal service of a deposition subpoena is effective to require any deponent who is a resident of California at the time of service to personally appear at deposition and give testimony. Cal. Code Civ. Proc. § 2020.220(c)(1). Where a non-party fails to appear for deposition after being served with a subpoena demanding his testimony, the Court may compel his attendance at deposition and impose sanctions. (*See* Cal. Code Civ. Proc. §§ 1987.1, 1987.2, and 2025.450; *Terry v. SLICO* (2009) 175 Cal.App.4th 352, 355 [affirming trial court's order compelling deposition and sanctioning non-party witness who failed to appear at deposition or properly object to subpoena]). Here, neither Plaintiffs nor Mr. Kuprewicz dispute that Real Parties properly served a valid deposition subpoena on Mr. Kuprewicz or that Mr. Kuprewicz is a resident of California.

Next, the California Code of Civil Procedure states that "a party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . Discovery may relate to the claim or defense of the party seeking discovery . . . ." (Code Civ. Proc. § 2017.010.) California courts have construed the discovery statutes broadly in favor of permitting discovery, so as to uphold the right to discovery whenever possible. (*Lipton v. Super. Ct.* (1996) 48 Cal.App.4th 1599, 1612; *Greyhound Corp. v. Super. Ct.* (1961) 56 Cal.2d 355, 377-78; *Emerson Elec. Co. v. Super. Ct.* (1997) 16 Cal.4th 1101, 1108.)

Finally, parties are entitled to cross-examine witnesses who submit testimony in support of a preliminary injunction. (*See In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 ["A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses."]; 5 California Trial Guide § 100.20 [discussing depositions are appropriate for use in pretrial proceedings "such as a motion for a preliminary injunction"]; *Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350, 356 ["Before issuing a preliminary injunction, the trial court must 'carefully weigh the evidence and decide whether the facts require . . . such relief. The court evaluates the credibility of witnesses and makes factual findings on disputed evidence."]; *see also St. Mary Med. Ctr. v. Sup.Ct.* (1996) 50 Cal.App.4th 1531, 1539 [holding § 2034.010 et seq. procedure for deposing expert witnesses does not bar earlier

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

depositions of experts whose opinions are filed in support of or in opposition to a motion for summary judgment or summary adjudication].)  The "confrontation of witnesses against him in noncriminal proceedings is a part of procedural due process guaranteed by the Fifth Amendment and the Fourteenth Amendment to the federal Constitution." (*August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 60 [finding hearing met requirements of due process where sworn statement was considered but there was no subsequent request to cross-examine the declarant]; *see also* Cal. Const. Art. I. § 7.)  In fact, "[b]ecause it relates to the fundamental fairness of the proceedings, cross-examination is said to represent an 'absolute right,' not merely a privilege," (*Fost v. Marin County Superior Court* (2000) 80 Cal.App.4th 724, 733 [noting the rule applies in "either a criminal or a civil case" and if "a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude the witness's testimony"].)  Further, "[t]he lack of an opportunity to cross-examine the declarant deprives the opposing party of important evidence concerning the credibility of the declarant and the reliability of testimony in the declaration." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 841-842 [relying on *Fost* and holding it was error for trial court to rely on declaration on motion for preliminary relief in family law case where declarant was not made available for cross-examination or live testimony].)

Because Real Parties have a fundamental right to cross-examine Mr. Kuprewicz.  Therefore, either he must appear for deposition or his declaration must be stricken.

## V.    PLAINTIFFS' ARGUMENTS HAVE NO MERIT

On the evening of June 26, 2025, Plaintiffs served a motion to quash the deposition subpoena outlining their position opposing Mr. Kupewicz's deposition.  Plaintiffs argue that Mr. Kuprewicz may not be deposed until he is designated as an expert pursuant to Code of Civil Procedure section 2034.210.  But this argument misses the mark.  Mr. Kuprewicz's deposition is not expert discovery – it is Real Parties exercising their due process right to cross-examine testimony submitted in support of a preliminary injunction that if ordered will have significant financial consequences to Real Parties.  (*St. Mary Med. Ctr. v. Sup.Ct.* (1996) 50 Cal.App.4th 1531, 1539 [holding § 2034.010 et seq. procedure for deposing expert witnesses does not bar earlier depositions of experts whose opinions are filed in support

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

of or in opposition to a motion for summary judgment or summary adjudication]; *see also* Steve Rusch Declaration, ¶¶ 13-22 filed in opposition to the Ex-Parte Application for TRO.)  Plaintiffs' argument about expert discovery is inapplicable, nonsensical, and should be disregarded.  If Plaintiffs were to have it their way, they would be able to submit any evidence in support of their Preliminary Injunction without providing Real Parties any ability to challenge that evidence.  Not surprisingly, Plaintiffs fail to provide any applicable legal support for this position.

As explained above, parties have a fundamental right to cross-examine witnesses who submit statements in support of a preliminary injunction and Plaintiffs have not provided any support to the contrary.  There is simply no basis in law to refuse to produce Mr. Kuprewicz for deposition.

## VI.   CONCLUSION

Based on the foregoing facts and authorities, good cause exists for an *ex parte* order requiring Mr. Kuprewicz to appear at his deposition on July 1, 2025.  In the alternative, good cause exists to advance the hearing on Real Parties' Motion to Compel Mr. Kuprewicz to appear for deposition.  If none of the above relief is granted, in the alternative, Real Parties seek an order striking Plaintiffs' Declaration of Richard B. Kuprewicz submitted in support of Petitioners' Preliminary Injunction.

DATED:   June 27, 2025                 Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE


_____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

13

REAL PARTIES' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION; OR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ

**PROOF OF SERVICE**

I, Josie Cisneros, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 27, 2025, I served the document(s) **REAL PARTIES IN INTEREST *EX PARTE* APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION AND REQUEST FOR SANCTIONS OR, IN THE ALTERNATIVE, TO STRIKE THE DECLARATION OF MR. KUPREWICZ; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on the interested parties stated below, by the following means of service:

**See Attached Service List**

☐ (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐ (BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒ BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 27, 2025, at Los Angeles, California.

*/s/ Josie Cisneros*
Josie Cisneros

**SERVICE LIST**

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
       jfrankel@environmentaldefensecenter.org
       trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
       benjaminhanelin@paulhastings.com
       natalierogers@paulhastings.com

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
LISA L. GARCIA, SBN 301362
lisa.garcia@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone: (310) 620-5879
Facsimile: (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
DarreE. Parker, Executive Officer
6/27/2025 1:00 PM
By: Terri Chavez , Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SANTA BARBARA

ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,

Petitioners and Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,

Respondents and Defendants,

and

Case No. 25CV02247

Assigned for all purposes to:
Hon. Donna D. Geck

**DECLARATION OF JEFFREY DINTZER IN SUPPORT OF REAL PARTIES' EX PARTE APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, IN THE ALTERNATIVE, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION AND REQUEST FOR SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ**

[Filed concurrently with Ex Parte Application, and [Proposed] Order]

Date:           June 30, 2025
Time:          8:30 a.m.
Dept:           4

Complaint Filed:    April 15, 2025

1
DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

Trial Date:        None set

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

**DECLARATION OF JEFFREY DINTZER**

I, Jeffrey Dintzer, declare as follows:

1.      I am an attorney at law at the law firm Alston & Bird LLP, counsel for Real Parties in Interest Sable Offshore Corp and Pacific Pipeline Company ("Real Parties"). I make this declaration in support of Real Parties' Ex Parte Application for an Order Requiring Mr. Kuprewicz to Appear at Deposition or, in the Alternative, for an Order Shortening Time to Hear Motion to Compel Deposition and Request for Sanctions or, in the Alternative, to Strike the Declaration of Mr. Kuprewicz. I have personal knowledge of the facts stated in this declaration and, if called upon to do so, I could and would competently testify to them.

1.       On June 5, 2025 at 7:00 a.m., Real Parties personally served Mr. Richard B. Kuprewicz with a Deposition Subpoena for Personal Appearance and Production of Documents and Things for June 24, 2025 at 9:00 a.m. at the Marriott, 1605 Calle Joaquin, San Luis Obispo, California 93405. At the time that Real Parties served Mr. Kuprewicz, his witness fees in the amount of $41.00 were also paid. A true and correct copy of the Deposition Subpoena for Personal Appearance and proof of service is attached hereto as **Exhibit A**.

2.       On June 10, 2025, counsel for Center for Biological Diversity agreed that Mr. Kuprewicz would appear for deposition but asked that the deposition be rescheduled for a date during the week of June 30 through July 3, 2025. Counsel also requested that the deposition be taken remotely and split between two days due to certain health issues. On the same day, Real Parties agreed to reschedule the deposition to July 1, 2025. Between June 10 and June 11, the parties exchanged several emails related to deposition logistics. A true and correct copy of the email chain between the parties from June 5, 2025 through June 11, 2025 is attached hereto as **Exhibit B**.

3.       On June 12, 2025, I participated in a telephone call with Plaintiffs' counsel and the parties agreed that Mr. Kuprewicz would appear for deposition on July 1, 2025 at 9:00 a.m. at a Courtyard hotel located at 1605 Calle Joaquin, San Luis Obispo, CA 93405, which is a short distance from Mr. Kuprewicz's residence. Mr. Kuprewicz's personal counsel, Mr. Tom Stolpman, who was on the telephone call, agreed to accept service of the amended deposition subpoena. It was also agreed that the deposition would be in person at the Courtyard hotel and that we would take sufficient breaks to

---

1

accommodate Mr. Kuprewicz's specified health concerns, but conclude the deposition on that day. On June 20, 2025, Real Parties served Mr. Stolpman with an Amended Deposition Subpoena for Personal Appearance and Production of Documents and Things for July 1, 2025 at 9:00 a.m. at the agreed upon location. A true and correct copy of the Amended Deposition Subpoena for Personal Appearance and proof of service is attached hereto as **Exhibit C**.

4. On June 23, 2025, counsel for Environmental Defense Center emailed Real Parties for the first time stating that "[a]fter further consideration," they would not produce Mr. Kuprewicz for deposition. We exchanged additional emails on June 23 and June 24, 2025, in which I noted that the parties already reached an agreement that the deposition would proceed on July 1, and that if Mr. Kuprewicz refused to appear, Real Parties would seek monetary sanctions. On June 24, 2025, counsel for Environmental Defense Center served formal objections to the deposition. A true and correct copy of the email chain between the parties from June 23, 2025 through June 24, 2025 is attached hereto as **Exhibit D**.

5. Mr. Kuprewicz's attorney, Mr. Stolpman has never objected or moved to quash the deposition subpoena.

6. Real Parties need to take Mr. Kuprewicz's deposition to, among other things, ascertain the scope and limitations of the opinions set forth in his declaration filed in support of the pending Motion for Preliminary Injunction and to test the veracity of his conclusions that the repairs to the existing pipeline are insufficient to warrant the State Fire Marshal from issuing a Plan Approval to restart the pipeline.

7. On June 27, 2025 at approximately 6:45 a.m., my office gave notice of the *ex parte* application to counsel for Plaintiffs, Defendants, and Mr. Kuprewicz via email including the relief sought. Counsel for Plaintiffs responded that they intend to appear and oppose the application. Counsel for Defendants and Mr. Kuprewicz did not respond as to whether they intend to appear and oppose the application. A true and correct copy of the email correspondence giving notice of the *ex parte* application, dated June 27, 2025, is attached hereto as **Exhibit E**.

DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27th day of June 2025, at Los Angeles, California.

_____
Jeffrey Dintzer

DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

**PROOF OF SERVICE**

I, Josie Cisneros, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 27, 2025, I served the document(s) **DECLARATION OF JEFFREY DINTZER IN SUPPORT OF REAL PARTIES' EX PARTE APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, IN THE ALTERNATIVE, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION AND REQUEST FOR SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ**on the interested parties stated below, by the following means of service:

**See Attached Service List**

☐   (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐   (BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐   (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒   BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 27, 2025, 2025, at Los Angeles, California.

*/s/ Josie Cisneros*
Josie Cisneros

<strong>SERVICE LIST</strong>

| | |
|---|---|
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Regnifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Phone: (805) 963-1622; Fax: (805) 962-3152 | **ATTORNEYS FOR PETITIONERS**<br>ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation<br><br>Tel.:   (510) 844-7100<br>Fax:   (510) 844-7150<br>Email: lkrop@environmentaldefensecenter.org<br>        jfrankel@environmentaldefensecenter.org<br>        trengifo@environmentaldefensecenter.org |
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000,<br>San Francisco, CA 94102 | **ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal<br><br>Tel.:   (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov |
| Duncan Joseph Moore, Esq.<br>Benjamin J. Hanelin, Esq.<br>Natalie C. Rogers, Esq.<br>PAUL HASTINGS<br>1999 Avenue of the Stars, 27th Floor<br>Century City, California, 90067 | **ATTORNEYS FOR REAL PARTIES IN INTEREST**<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:   (310) 620-5879<br>Email: djmoore@paulhastings.com<br>        benjaminhanelin@paulhastings.com<br>        natalierogers@paulhastings.com |

# EXHIBIT A

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
MATTHEW C. WICKERSHAM, SBN 241733
matt.wickersham@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:      (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN (SBN 237595)
benjaminhanelin@paulhastings.com
NATALIE C. Rogers (SBN 301254)
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:      (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, | Case No. 25CV02247 Coordinated with Case No. 25CV02244 Assigned for all purposes to: Hon. Donna G. Geck |
| Petitioners and Plaintiffs, | **REAL PARTIES IN INTEREST'S CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** |
| v. | **Date**:   June 24, 2025<br>**Time**:   9:00 a.m.<br>**Place**:   1605 Calle Joaquin, San Luis Obispo, California 93405 |
| CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, | Complaint Filed:      April 15, 2025<br>Trial Date:             None set |
| Respondents and Defendants, | |

1

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND
DEPOSITION OF RICHARD B. KUPREWICZ

and

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company ("Real Parties") hereby cross-notice the deposition set forth in the Deposition Subpoena for Personal Appearance and Production of Documents and Things to Richard B. Kuprewicz (the "Deponent") issued by Real Parties in the coordinated action (Case No. 25CV02244), attached hereto as **Exhibit 1** (the "Deposition Subpoena").

**PLEASE TAKE FURTHER NOTICE** that the deposition of Deponent will take place on **June 24, 2025** at the Marriott, 1605 Calle Joaquin, San Luis Obispo, California 93405. The deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, California 90017. The deposition will be taken before an officer authorized to administer the oath to the deponent and will be recorded by stenographic means by a court reporter certified to record depositions and authorized to administer the oath and serve as the deposition officer in the State of California.

Real Parties intend to (1) record the deposition utilizing audio and video technology; (2) use instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time; (3) use Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that, in lieu of a paper set, exhibits may be provided and displayed digitally to the deposition officer, deponent, parties, and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise of those who intend to appear via this remote participating means so that the necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the deposition.

///

///

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND
DEPOSITION OF RICHARD B. KUPREWICZ

DATED:   June 4, 2025                    Respectfully submitted,

                                         **ALSTON & BIRD**
                                         JEFFREY D. DINTZER
                                         GARRETT B. STANTON

                                         **PAUL HASTINGS**
                                         DUNCAN JOSEPH MOORE


                                         _____
                                                   Jeffrey D. Dintzer

                                         Attorneys for Real Parties in Interest
                                         **SABLE OFFSHORE CORP.**
                                         **PACIFIC PIPELINE COMPANY**

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND
DEPOSITION OF RICHARD B. KUPREWICZ

# EXHIBIT 1

SUBP-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jeffrey D. Dintzer (Cal. Bar No. 139056); Matthew C. Wickersham (Cal. Bar No. 241733); Garrett B. Stanton (Cal. Bar No. 324775) ALSTON & BIRD LLP 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071     TELEPHONE NO.: (213) 576-1000     FAX NO. *(Optional):* (213) 576-1100 E-MAIL ADDRESS *(Optional):* jeffrey.dintzer@alston.com; matt.wickersham@alston.com; garrett.stanton@alston.com     ATTORNEY FOR *(Name):* Real Parties in Interest | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
 STREET ADDRESS: 1100 Anacapa Street
 MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
 BRANCH NAME:

PLAINTIFF/ PETITIONER: Center for Biological Diversity and Wishtoyo Foundation

DEFENDANT/ RESPONDENT: California Department of Forestry and Fire Protection, et al.

| **DEPOSITION SUBPOENA** **FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | CASE NUMBER: 25CV02244 |
|---|---|

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of deponent, if known):*
Richard B. Kuprewicz, 1783 Trilogy Pkwy, Nipomo, CA 93444-6621

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS in this action at the following date, time, and place:**

| Date: June 24, 2025 | Time: 9:00 a.m. | Address: Marriott, 1605 Calle Joaquin, San Luis Obispo, CA 93405 |
|---|---|---|

   a. ☐ As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc, § 2025.230.)

   b. ☒ You are ordered to produce the documents and things described in item 3.

   c. ☒ This deposition will be recorded stenographically ☐ through the instant visual display of testimony and by ☐ audiotape ☒ videotape.

   d. ☒ This videotape deposition is intended for possible use at trial under Code of Civil Procedure section 2025.620(d).

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents and things to be produced and any testing or sampling being sought are described as follows:
 See Attachment 3
   ☒ Continued on Attachment 3.

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:

   ☐ Continued on Attachment 4.

5. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

6. *At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence or within 150 miles of your residence if the deposition will be taken within the county of the court where the action is pending. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.*

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: June 4, 2025

▶ _____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Jeffrey D. Dintzer
   (TYPE OR PRINT NAME)

Attorney for Real Parties in Interest
   (TITLE)

(Proof of service on reverse)

**Page 1 of 2**

| Form Adopted for Mandatory Use Judicial Council of California SUBP-020 [Rev. January 1, 2009] | **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | Code of Civil Procedure §§ 2020.510, 2025.220, 2025.230, 2025.250, 2025.620; Government Code, § 68097.1 *www.courts.ca.gov* |
|---|---|---|

**SUBP-020**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Center for Biological Diversity and Wishtoyo Foundation <br><br> DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection, et al. | CASE NUMBER: <br> 25CV02244 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS

1. I served this *Deposition Subpoena for Personal Appearance and Production of Documents and Things* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*: Richard B. Kuprewicz

   b. Address where served:

   c. Date of delivery:

   d. Time of delivery:

   e. Witness fees and mileage both ways *(check one)*:

   (1) ☐   were paid. Amount: ....................$ _____

   (2) ☐   were not paid.

   (3) ☐   were tendered to the witness's public entity employer as required by Government Code section 68097.2. The amount tendered was *(specify)*:................$ _____

   f. Fee for service: .........................................$ _____

2. I received this subpoena for service on *(date):*

3. Person serving:

   a. ☐   Not a registered California process server

   b. ☐   California sheriff or marshal

   c. ☐   Registered California process server.

   d. ☐   Employee or independent contractor of a registered California process server

   e. ☐   Exempt from registration under Business and Professions Code section 22350(b)

   f. ☐   Registered professional photocopier

   g. ☐   Exempt from registration under Business and Professions Code section 22451

   h.   Name, address, telephone number, and, if applicable, county of registration and number:

| | |
|---|---|
| **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct. | **(For California sheriff or marshal use only)** <br> **I certify** that the foregoing is true and correct. |
| Date: | Date: |
| ▶ _____ <br> (SIGNATURE) | ▶ _____ <br> (SIGNATURE) |

SUBP-020 [Rev. January 1, 2009]

**PROOF OF SERVICE
DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE
AND PRODUCTION OF DOCUMENTS AND THINGS**

Page 2 of 2

**ATTACHMENT 3**

## DEFINITIONS

1.      "YOU" and "YOUR" mean to Richard B. Kuprewicz, his agents, attorneys, and other representatives acting on his behalf.

2.      "SABLE" shall mean Sable Offshore Corp.

3.      "PPC" shall mean Pacific Pipeline Company.

4.      "PETITIONERS" shall mean Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation, as well as their agents, attorneys, and other representatives acting on their behalf

5.      "ACTION" shall mean the civil lawsuits filed by PETITIONERS entitled *Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02244, and the coordinated action entitled *Environmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02247.

6.      "SYU PIPELINE" shall refer to the Santa Ynez Unit Pipelines located in waters offshore California.

7.      "LAS FLORES PIPELINE" shall refer to the Las Flores Pipelines located in waters offshore California.

8.       "DOCUMENTS" means all data, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, including written papers or memoranda which summarize

oral conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter and intra- office communications; photocopies; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; electronically stored information (ESI) and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English. DOCUMENTS does not include DOCUMENTS protected by the attorney-client and/or work product privileges.

9.      "COMMUNICATION" means any attempt by one or more persons or entities to communicate, including but not limited to written communications, including memoranda, letters, notes, telegrams, telexes and any other documents; oral communications including face-to-face meetings and telephone conversations; and, electronic or computerized communications, including emails (electronic mailings), Internet postings, word processing systems, magnetic tapes, disks and diskettes.

10.      "RELATE TO" or "RELATING TO" means directly or indirectly mentioning or describing, pertaining to, being connected with, or reflecting upon a stated subject matter.

Page **2** of **6**

## __INSTRUCTIONS__

1.      Produce all DOCUMENTS in your possession, custody, or control, as well as all DOCUMENTS in the possession, custody, or control of your agents, representatives, attorneys, investigators, consultants, independent contractors, or experts at least one (1) week before the deposition date reflected in the Subpoena. (As used herein, the term "DOCUMENT" means all original writings of any nature whatsoever and all copies thereof which are not identical to the original or which contain any commentary or notation that does not appear on the original, whether written, printed, recorded or graphic matter, photographic matter, or sound reproduction of any kind in any form whatsoever (including, but not limited to, reports, studies, charts, statistical compilations, letters, correspondence, telegrams, memoranda, ledgers, books of accounts, bookkeeping and accounting records, minutes, contracts, leases, notes, electronic transcriptions or tapings of conversations conducted by any means, work papers, schedules, computer printouts, computer files, e-mails, financial statements, and reports, calculations, diaries, appointment calendars or records, manuals, brochures, invoices, desk calendars, work sheets, tapes, records of telephone calls) of which you have knowledge, whether or not such documents are in YOUR possession, custody or control, and irrespective of who prepared or signed such documents. In all cases where originals and/or non-identical copies are not available, "DOCUMENTS" also means identical copies of original documents and copies of non-identical copies.)

2.      Produce each and every copy where such copy contains any commentary or notation that does not appear on the original. ESI should be produced in its Native Format, meaning the form that it is ordinarily maintained on your systems, including any metadata associated therewith. (As used herein, the term "ESI" means electronically stored information as defined in California Code of Civil Procedure section 2016.020(e), and shall include, but is not limited to, e-mails and text messages.) Should you choose to produce electronic images of paper DOCUMENTS instead of paper copies, you must product them in single-page TIFF FORMAT imaged at not less than 300 dpi resolution that shows all text and images that would be visible to

a user of the paper DOCUMENT. Color DOCUMENTS must be produced in color TIFF images. Each image should have a unique filename. If a paper DOCUMENT is more than one page, the unitization of the paper DOCUMENT and any attachments or affixed notes shall be maintained as it existed when collected, including, for example, emails or letters with their attachments.

3.      Produce all drafts, as well as the final version, of all responsive DOCUMENTS.

4.      Produce, where possible, originals of the DOCUMENTS requested, whether signed or unsigned, for inspection and copying.

5.      For each DOCUMENT requested which is sought to be withheld under a claim of privilege, provide the following information:

a.      The number of the request to which the DOCUMENT is responsive;

b.      A statement of the basis upon which the privilege is claimed and whether or not the subject matter of the contents of the DOCUMENT is limited to legal advice or information provided for the purpose of securing legal advice;

c.      The name and title of the sender and the name and title of the recipient of the DOCUMENT, if applicable;

d.      The place, approximate date, and manner of recording or otherwise preparing the DOCUMENT;

e.      The name of each person or persons participating in the preparation of the DOCUMENT; and

f.      The name and title, if any, of each person to whom the contents of the DOCUMENT has been communicated by copy, exhibition, reading or substantial summarization.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 2**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 3**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 4**:

YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

**REQUEST FOR PRODUCTION NO. 5**:

YOUR COMMUNICATIONS discussing SABLE.

**REQUEST FOR PRODUCTION NO. 6**:

YOUR COMMUNICATIONS discussing PPC.

**REQUEST FOR PRODUCTION NO. 7**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

**REQUEST FOR PRODUCTION NO. 8**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

**REQUEST FOR PRODUCTION NO. 9**:

All contracts and agreements YOU have with PETITIONERS.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 11**:

All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 12**:

All drafts and versions of Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 13**:

All drafts and versions of Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 14**:

All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable Offshore Corp v. California Coastal Commission et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV00974.

**ALSTON & BIRD LLP**                                               **(213) 576-1000**
Jeffrey D. Dintzer (Cal. Bar 139056); Matthew C. Wickersham (Cal. Bar No 241733);
Garrett B. Stanton (Cal. Bar No. 327775)
**350 South Grand Avenue, Suite 5100 , Los Angeles, CA 90071**
ATTORNEY FOR *(Name):* **Real Parties in Interest**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SANTA BARBARA - ANACAPA DIVISON**

PLAINTIFF/PETITIONER:    **Center for Biological Diversity and Wishtoyo Foundation**
DEFENDANT/RESPONDENT: **California Department of Forestry and Fire Protection, et al.**

| **PROOF OF SERVICE** | HEARING DATE:<br>**June 24, 2025** | TIME:<br>**9:00 AM** | CASE NUMBER:<br>**25CV02244** |
|---|---|---|---|

1.    At the time of service I was 18 years of age and not a party to this action, and   **I served copies**   of the *(specify document(s)):*

**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS**

2.    a. Party Served:          **Richard B. Kuprewicz**

      b. Person Served:         **Same as party in item 2a.**

      c. Address:               **1783 Trilogy Parkway**
                                **Nipomo, CA 934446621**

3.    I served the party in item 2

      a. **By personally delivering the copies.**

                                                  (1) on *(date):*          **6/5/2025**
                                                  (2) at *(time):*          **7:00 AM**

4.    **Witness fees were not demanded and were not paid.**

5.    Person Serving *(name, address, and telephone No.):*

**Joseph P. Stetz III**                           f. **Fee** for service: $
Ace Attorney Service, Inc.                        c. Registered California Process Server.
800 S. Figueroa Street, Suite 900                 (1) Employee or independent contractor.
Los Angeles, CA 90017                             (2) Registration No.: **270**
(213) 623-3979                                    (3) County : **SANTA BARBARA**

6.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

      Date:  **June 5, 2025**

                                                  _____
                                                            *(signature)*

SUBP-020 [Rev. January 1,2009]                                          Order#: 2455263/POS2

**PROOF OF SERVICE**

**PROOF OF SERVICE**

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 5, 2025, I served the document(s) **REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☒ (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by UPS for overnight delivery.

☒ BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 5, 2025, at Los Angeles, California.

Heather Thai
_____
Heather Thai

**SERVICE LIST**

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:   (510) 844-7100
Fax:   (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
          jfrankel@environmentaldefensecenter.org
          trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:   (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:   (310) 620-5879
Email: djmoore@paulhastings.com
          benjaminhanelin@paulhastings.com
          natalierogers@paulhastings.com

# EXHIBIT B

| | |
|---|---|
| **From:** | Dintzer, Jeffrey |
| **Sent:** | Thursday, June 12, 2025 4:42 PM |
| **To:** | Jeremy Frankel; Stanton, Garrett |
| **Cc:** | djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt; Talia Nimmer; Thai, Heather; Julie Teel Simmonds; David Pettit; Michael.dorsi@doj.ca.gov; Linda Krop; Tara Rengifo; Bolender, Brooke; Niz, Kim; tom@stolpmanlawgroup.com |
| **Subject:** | Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247) |

Ok

**From:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
**Sent:** Thursday, June 12, 2025 1:40:10 PM
**To:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>
**Cc:** djmoore@paulhastings.com <djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com <benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com <natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov <Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com <tom@stolpmanlawgroup.com>
**Subject:** RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

**EXTERNAL SENDER – Proceed with caution**

How does 3 pm sound?

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to

1

elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

-----Original Message-----
From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
Sent: Thursday, June 12, 2025 1:38 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com
Subject: Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Yes, that will work. Please send a teams or zoom link. Jeffrey.

_____
From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
Sent: Thursday, June 12, 2025 1:28:19 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com <djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com <benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com <natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov <Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com <tom@stolpmanlawgroup.com>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution
_____

2

Hi Jeffrey,

Are you available for a phone call this afternoon with myself and Tom Stolpman, cc'ed here, who will be serving as counsel for Mr. Kuprewicz? Any time before 4:30 would work for us.

Thanks,

[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.environmentaldefensecenter.org>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
Sent: Wednesday, June 11, 2025 5:07 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)


Thank you, I look forward to hearing from him/her tomorrow. Regards, Jeffrey.


From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 5:05 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____

We are working on obtaining outside counsel for Mr. Kuprewicz, which should be resolved some time tomorrow. Counsel for Mr. Kuprewicz will follow up with you about appropriate accommodations.

Thanks,

[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.environmentaldefensecenter.org>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original

message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>
Sent: Wednesday, June 11, 2025 3:53 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Mr. Frankel you have not answered my question, which is very simple, can Mr. Kuperwicz travel the short distance to a local hotel to attend the deposition? You will have to answer this question if you intend to seek a protective order. Please advise. If he is truly housebound then we can discuss other accommodations, but a remote deposition is not one of them. Finally, please advise whether your offices are representing Mr. Kuperwicz as his personal counsel in this matter. Regards, Jeffrey Dintzer.

From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 3:43 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds

<jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)


EXTERNAL SENDER - Proceed with caution

_____


Hi Jeffrey,


It is my understanding that Mr. Kuprewicz is unable to travel. But he is able to participate remotely, so long as the sessions are limited to half-days.


Again, if you are not willing to make reasonable accommodations for Mr. Kuprewicz's health issues, we will seek appropriate relief.


Thanks,


[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.environmentaldefensecenter.org>

7

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>
Sent: Wednesday, June 11, 2025 3:09 PM
To: Jeremy Frankel
<jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>;
Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>;
benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>;
natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt
<Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer
<tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather
<Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds
<jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit
<dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>;
Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop
<lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara
Rengifo
<trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>;
Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim
<Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Mr. Frankel, we have agreed to move the deposition date and are going to travel to a location near Mr. Kuprewicz's home. We are prepared to take reasonable breaks to accommodate the witness so that he can rest between questioning sessions. We are not willing to conduct the deposition remotely. Is it your representation that he cannot leave his home and come to a local hotel and give live testimony? Please advise. Regards, Jeffrey Dintzer.

From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 2:53 PM
To: Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____

Hi Garrett,

Mr. Kuprewicz is experiencing severe health issues that, among other things, prevent him from traveling. If you want to proceed with his deposition, it will have to be conducted remotely, and it will have to be

9

split up between two, 3.5 hour sessions. Otherwise, we will be forced to seek a protective order and stay the deposition until the court can hear the issue.

We see these as very reasonable requests, and I'm sure the court would as well.

Thanks,

[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.environmentaldefensecenter.org>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Sent: Tuesday, June 10, 2025 5:36 PM
To: Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)


Hi Talia,


We are agreeable rescheduling the deposition for July 1st to accommodate calendar conflicts. While the Code allows for remote depositions by agreement, the rules also permit "any party or attorney of record" to be "physically present at the deposition at the location of the deponent," as long as requisite notice is given. (Cal. Rules of Court, rule 3.1010(a)(3).)


As such, the deposition will be noticed to go forward in-person, and will need to take place in a single, 7-hour session as allowed by the Code since the deposition will require us to undertake substantial travel. We, of course, are agreeable to taking more frequent breaks during the deposition to accommodate the witness.


Thanks,

Garrett B. Stanton

Senior Associate

ALSTON & BIRD

350 South Grand Avenue, 51st Floor

Los Angeles, CA 90071

garrett.stanton@alston.com<mailto:garrett.stanton@alston.com> | t: 213.576.1151

From: Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>
Sent: Tuesday, June 10, 2025 4:54 PM
To: Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>; jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>; trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____

Counsel,

Given scheduling conflicts, we would like to request that the deposition be rescheduled for the following

12

week (June 30-July 3). Additionally, because the witness is currently experiencing health issues, we would like to further request that the deposition take place remotely and that should the deposition run more than 3.5 hours, it be split into two morning sessions.

Please advise whether this is amenable. Thank you for your anticipated cooperation.

Talia Nimmer (she/her)

Staff Attorney

Climate Law Institute

Center for Biological Diversity

(213) 341-1426

[cbd.circle.tag.rgb]

The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.

_____

From: Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>
Sent: Thursday, June 5, 2025 12:32 PM
To: Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov> <Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>>; lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org> <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org> <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>

<trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>
<djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>>;
benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>
<benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>>;
natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>
<natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>>; Dintzer, Jeffrey
<Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt
<Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Stanton, Garrett
<Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>; Bolender, Brooke
<Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim
<Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: Center for Biological Diversity v. California Department of Forestry, et al. (Case No.
25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No.
25CV02247)


Electronically Served:

Dear Counsel:

Please see the attached documents listed documents:

Center for Biological Diversity v. California Department of Forestry, et al.

· Real Parties in Interest's Notice of Issuance of Subpoena to and Deposition of Richard B. Kuprewicz


Environmental Defense Center v. California Department of Forestry, et al.

· Real Parties in Interest's Notice of Issuance of Subpoena to and Deposition of Richard B. Kuprewicz

Thank you,

Heather L. Thai
ABassist Specialist
ALSTON & BIRD
350 South Grand Avenue

51st Floor
Los Angeles, CA 90071
+1 213 576 1017 (O)
Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>

_____

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

# EXHIBIT C

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN (SBN 237595)
benjaminhanelin@paulhastings.com
NATALIE C. Rogers (SBN 301254)
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and | Case No. 25CV02247 <br> Coordinated with Case No. 25CV02244 <br><br> Assigned for all purposes to: <br> Hon. Donna G. Geck <br><br> **REAL PARTIES IN INTEREST'S AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** <br><br> **Date**:  July 1, 2025 <br> **Time**:  9:00 a.m. <br> **Place**: 1605 Calle Joaquin, San Luis Obispo, California 93405 <br><br><br> Complaint Filed:       April 15, 2025 <br> Trial Date:                None set |

REAL PARTIES IN INTEREST'S AMENDED NOTICE OF
DEPOSITION OF RICHARD B. KUPREWICZ

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

REAL PARTIES IN INTEREST'S AMENDED NOTICE OF
DEPOSITION OF RICHARD B. KUPREWICZ

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Real Parties in Interest Sable Offshore Cop. and Pacific Pipeline Company ("Real Parties") hereby cross-notice the deposition set forth in the Amended Deposition Subpoena for Personal Appearance and Production of Documents and Things to Richard B. Kuprewicz (the "Deponent") issued by Real Parties in the Coordinated Action (Case No. 25CV02244), attached hereto as **Exhibit 1** (the "Deposition Subpoena").

**PLEASE TAKE FURTHER NOTICE** that the deposition of Deponent will take place on **July 1, 2025** at the Marriott, 1605 Calle Joaquin, San Luis Obispo, California 93405. The deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, California 90017. The deposition will be taken before an officer authorized to administer the oath to the deponent and will be recorded by stenographic means by a court reporter certified to record depositions and authorized to administer the oath and serve as the deposition officer in the State of California.

Real Parties intend to (1) record the deposition utilizing audio and video technology; (2) use instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time; (3) use Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that, in lieu of a paper set, exhibits may be provided and displayed digitally to the deposition officer, deponent, parties, and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise of those who intend to appear via this remote participating means so that the necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the deposition.

/ / /

/ / /

DATED:   June 20, 2025          Respectfully submitted,

                                **ALSTON & BIRD**
                                JEFFREY D. DINTZER
                                GARRETT B. STANTON

                                **PAUL HASTINGS**
                                DUNCAN JOSEPH MOORE


                                _____
                                      Jeffrey D. Dintzer

                                Attorneys for Real Parties in Interest
                                **SABLE OFFSHORE CORP.**
                                **PACIFIC PIPELINE COMPANY**

# Exhibit 1

SUBP-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| Jeffrey D. Dintzer (SBN 139056); Garrett B. Stanton (SBN 324775)<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071<br>　　TELEPHONE NO.: (213) 576-1000　　FAX NO. *(Optional)*: (213) 576-1100<br>E-MAIL ADDRESS *(Optional)*: jeffrey.dintzer@alston.com; garrett.stanton@alston.com<br>　ATTORNEY FOR *(Name)*: Real Parties in Interest | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
　STREET ADDRESS: 1100 Anacapa Street
　MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
　BRANCH NAME:

PLAINTIFF/ PETITIONER: Environmental Defense Center, et al.

DEFENDANT/ RESPONDENT: California Department of Forestry and Fire Protection, et al.

| **DEPOSITION SUBPOENA**<br>**FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | CASE NUMBER:<br>25CV02247 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):*
Richard B. Kuprewicz, 1783 Trilogy Pkwy, Nipomo, CA 93444-6621

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS in this action at the following date, time, and place:**

| Date: July 1, 2025 | Time: 9:00 a.m. | Address: 1605 Calle Joaquin, San Luis Obispo, California 93405 |
|---|---|---|

　a. ☐　As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc, § 2025.230.)

　b. ☒　You are ordered to produce the documents and things described in item 3.

　c. ☒　This deposition will be recorded stenographically　☐　through the instant visual display of testimony
　　　and by　☐　audiotape　☒　videotape.

　d. ☒　This videotape deposition is intended for possible use at trial under Code of Civil Procedure section 2025.620(d).

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents and things to be produced and any testing or sampling being sought are described as follows:
　See Attachment 3
　☒　Continued on Attachment 3.

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:

　☐　Continued on Attachment 4.

5. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

6. *At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence or within 150 miles of your residence if the deposition will be taken within the county of the court where the action is pending. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.*

| **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.** |
|---|

Date issued: June 20, 2025

▶　_____
　　　(SIGNATURE OF PERSON ISSUING SUBPOENA)

Jeffrey D. Dintzer
_____
(TYPE OR PRINT NAME)

Attorney for Real Parties in Interest
_____
(TITLE)

(Proof of service on reverse)　　　　　　　　　　　　　　　　　　　　　　　　**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-020 [Rev. January 1, 2009] | **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE**<br>**AND PRODUCTION OF DOCUMENTS AND THINGS** | Code of Civil Procedure §§ 2020.510,<br>2025.220, 2025.230, 2025.250, 2025.620;<br>Government Code, § 68097.1<br>www.courts.ca.gov |
|---|---|---|

# Attachment 3

ATTACHMENT 3

**<u>DEFINITIONS</u>**

1.      "YOU" and "YOUR" mean to Richard B. Kuprewicz, his agents, attorneys, and other representatives acting on his behalf.

2.      "SABLE" shall mean Sable Offshore Corp.

3.      "PPC" shall mean Pacific Pipeline Company.

4.      "PETITIONERS" shall mean Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation, as well as their agents, attorneys, and other representatives acting on their behalf

5.      "ACTION" shall mean the civil lawsuits filed by PETITIONERS entitled *Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02244, and the coordinated action entitled *Environmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02247.

6.      "SYU PIPELINE" shall refer to the Santa Ynez Unit Pipelines located in waters offshore California.

7.      "LAS FLORES PIPELINE" shall refer to the Las Flores Pipelines located in waters offshore California.

8.      "DOCUMENTS" means all data, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, including written papers or memoranda which summarize

Page **1** of **6**

oral conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter and intra- office communications; photocopies; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; electronically stored information (ESI) and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English. DOCUMENTS does not include DOCUMENTS protected by the attorney-client and/or work product privileges.

9.    "COMMUNICATION" means any attempt by one or more persons or entities to communicate, including but not limited to written communications, including memoranda, letters, notes, telegrams, telexes and any other documents; oral communications including face-to-face meetings and telephone conversations; and, electronic or computerized communications, including emails (electronic mailings), Internet postings, word processing systems, magnetic tapes, disks and diskettes.

10.    "RELATE TO" or "RELATING TO" means directly or indirectly mentioning or describing, pertaining to, being connected with, or reflecting upon a stated subject matter.

Page **2** of **6**

## <u>INSTRUCTIONS</u>

1.       Produce all DOCUMENTS in your possession, custody, or control, as well as all DOCUMENTS in the possession, custody, or control of your agents, representatives, attorneys, investigators, consultants, independent contractors, or experts at least one (1) week before the deposition date reflected in the Subpoena. (As used herein, the term "DOCUMENT" means all original writings of any nature whatsoever and all copies thereof which are not identical to the original or which contain any commentary or notation that does not appear on the original, whether written, printed, recorded or graphic matter, photographic matter, or sound reproduction of any kind in any form whatsoever (including, but not limited to, reports, studies, charts, statistical compilations, letters, correspondence, telegrams, memoranda, ledgers, books of accounts, bookkeeping and accounting records, minutes, contracts, leases, notes, electronic transcriptions or tapings of conversations conducted by any means, work papers, schedules, computer printouts, computer files, e-mails, financial statements, and reports, calculations, diaries, appointment calendars or records, manuals, brochures, invoices, desk calendars, work sheets, tapes, records of telephone calls) of which you have knowledge, whether or not such documents are in YOUR possession, custody or control, and irrespective of who prepared or signed such documents. In all cases where originals and/or non-identical copies are not available, "DOCUMENTS" also means identical copies of original documents and copies of non-identical copies.)

2.       Produce each and every copy where such copy contains any commentary or notation that does not appear on the original. ESI should be produced in its Native Format, meaning the form that it is ordinarily maintained on your systems, including any metadata associated therewith. (As used herein, the term "ESI" means electronically stored information as defined in California Code of Civil Procedure section 2016.020(e), and shall include, but is not limited to, e-mails and text messages.) Should you choose to produce electronic images of paper DOCUMENTS instead of paper copies, you must product them in single-page TIFF FORMAT imaged at not less than 300 dpi resolution that shows all text and images that would be visible to

Page **3** of **6**

a user of the paper DOCUMENT. Color DOCUMENTS must be produced in color TIFF images. Each image should have a unique filename. If a paper DOCUMENT is more than one page, the unitization of the paper DOCUMENT and any attachments or affixed notes shall be maintained as it existed when collected, including, for example, emails or letters with their attachments.

3.      Produce all drafts, as well as the final version, of all responsive DOCUMENTS.

4.      Produce, where possible, originals of the DOCUMENTS requested, whether signed or unsigned, for inspection and copying.

5.      For each DOCUMENT requested which is sought to be withheld under a claim of privilege, provide the following information:

a.      The number of the request to which the DOCUMENT is responsive;

b.      A statement of the basis upon which the privilege is claimed and whether or not the subject matter of the contents of the DOCUMENT is limited to legal advice or information provided for the purpose of securing legal advice;

c.      The name and title of the sender and the name and title of the recipient of the DOCUMENT, if applicable;

d.      The place, approximate date, and manner of recording or otherwise preparing the DOCUMENT;

e.      The name of each person or persons participating in the preparation of the DOCUMENT; and

f.      The name and title, if any, of each person to whom the contents of the DOCUMENT has been communicated by copy, exhibition, reading or substantial summarization.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 2**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 3**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 4**:

YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

**REQUEST FOR PRODUCTION NO. 5**:

YOUR COMMUNICATIONS discussing SABLE.

**REQUEST FOR PRODUCTION NO. 6**:

YOUR COMMUNICATIONS discussing PPC.

**REQUEST FOR PRODUCTION NO. 7**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

**REQUEST FOR PRODUCTION NO. 8**:

Page **5** of **6**

All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

**REQUEST FOR PRODUCTION NO. 9**:

All contracts and agreements YOU have with PETITIONERS.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 11**:

All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 12**:

All drafts and versions of Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 13**:

All drafts and versions of Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 14**:

All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable Offshore Corp v. California Coastal Commission et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV00974.

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 20, 2025, I served the document(s) AEMNDED DEPOSITION SUBPOENA **FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS TO RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

☐ (BY U.S. MAIL) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐ (BY FACSIMILE) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒ BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 20, 2025, at Los Angeles, California.

*/s/ Kim Niz*<br>Kim Niz

**SERVICE LIST**

Tom Stolpman                                    **Counsel for Robert Kuperwicz**
Stolpman Law Group                              **tom@stolpmanlawgroup.com**

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 20, 2025, I served the document(s) **REAL PARTIES IN INTEREST'S AMENDED NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☐    (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐    (BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐    (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒    BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 20, 2025, at Los Angeles, California.

/s/ *Kim Niz*
Kim Niz

**SERVICE LIST**

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
         jfrankel@environmentaldefensecenter.org
         trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
         benjaminhanelin@paulhastings.com
         natalierogers@paulhastings.com

# EXHIBIT D

| | |
|---|---|
| **From:** | Jeremy Frankel <jfrankel@environmentaldefensecenter.org> |
| **Sent:** | Tuesday, June 24, 2025 5:26 PM |
| **To:** | Dintzer, Jeffrey; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett; Daniel, Madeline; Seabolt, Dan; Vreeland, Shannon; Rusek, Vickie; Oberst, Brett; Brown, Frankie |
| **Cc:** | Linda Krop; Tara Rengifo; Julie Teel Simmonds; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov |
| **Subject:** | RE: Re Mr. Kuprewicz's Deposition |
| **Attachments:** | 2025_06_24_Objection to Deposition of Richard Kuprewicz.pdf |

**EXTERNAL SENDER – Proceed with caution**

Hi Jeffrey,

Again, our previous discussions were borne of an obvious and immediate need to reschedule the date of the proposed deposition, and to inform you of Mr. Kuprewicz's ongoing health issues. At no time did Petitioners waive their right to object to Mr. Kuprewicz's deposition on the grounds that it exceeds the scope of permissible discovery, which our ongoing research has since revealed.

We respectfully disagree with your below contentions, including that it is unreasonable or prejudicial to quash an improper deposition subpoena/notice. Our review of the law indicates that, under the circumstances, Real Parties are not entitled to take Mr. Kuprewicz's deposition at this time. Accordingly, should Real Parties' not withdraw their deposition subpoena/notices by 5:00 p.m. tomorrow, we will proceed with a motion to quash.

Attached please find the EDC Petitioners' formal objection to Real Parties deposition subpoena and cross-notice of deposition. A copy is also being served by mail.

Thanks,



**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org



We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby

notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

---

**From:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
**Sent:** Tuesday, June 24, 2025 3:51 PM
**To:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; Daniel, Madeline <Madeline.Daniel@alston.com>; Seabolt, Dan <Dan.Seabolt@alston.com>; Vreeland, Shannon <Shannon.Vreeland@alston.com>; Rusek, Vickie <Vickie.Rusek@alston.com>; Oberst, Brett <Brett.Oberst@alston.com>; Brown, Frankie <Frankie.Brown@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov
**Subject:** Re Mr. Kuprewicz's Deposition

Mr. Frankel,

It is true that we noticed the deposition for June 24th, and we moved the deposition date to July 1st to accommodate the schedules of counsel, *at counsel's request*.  In that request, there was no objection for the deposition going forward, and that would have been the appropriate time to raise such objection.  Such would have afforded the Real Parties with an opportunity to have the court compel the deposition in due time before Real Parties' opposition will be due on July 7th.  On June 12th, we discussed Real Parties' need to take the deposition in time for our July 7th opposition, which is why we agreed upon July 1st.  *At no time did any counsel object to the deposition going forward during this discussion either*.  On the call, we all reached an agreement regarding the date, time, and location of the deposition to accommodate the witness.  Mr. Stolpman further agreed to accept service on behalf of his client.  Why would we discuss all of these topics and agree on them only to "make any deposition less burdensome" for Mr. Kuprewicz but not agree on a deposition going forward?  That logically makes no sense.  And based on the parties' agreement, Real Parties have reasonably had to incur necessary costs to reserve space for the deposition and for travel.

Further, waiting to move to quash the deposition only just before Real Parties' opposition is due is highly prejudicial for obvious reasons.  Such prejudice cannot simply ensue because  "it has come to [y]our attention that Real Parties are not entitled to proceed with Mr. Kuprewicz's deposition at this time" – offering no basis to prevent necessary cross-examination of evidence offered in support of an application for preliminary injunction that will greatly impact Real Parties' rights.  The parties reached a clear agreement on June 12th to proceed with the deposition, and the law does not support your newfound position. (See *In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 ["A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses."]; 5 California Trial Guide § 100.20 [discussing depositions are appropriate for use in pretrial proceedings "such as a motion for a preliminary injunction"]; *Fleishman v. Superior Court* (2002)102 Cal. App. 4th 350, 356 ["Before issuing a preliminary injunction, the trial court must 'carefully weigh the evidence and decide whether the facts require . . . such relief. The court evaluates the credibility of witnesses and makes factual findings on disputed evidence."]; see also *St. Mary Med. Ctr. v. Sup.Ct. (Mennella)* (1996) 50 Cal.App.4th 1531, 1539 [holding  § 2034.010 et seq. procedure for deposing expert witnesses does not bar earlier depositions of experts whose opinions are filed in support of or in opposition to a motion for summary judgment or summary adjudication].)

Preventing the deposition of Mr. Kuprewicz, without removing his declaration from the record, is highly unreasonable, highly prejudicial to Real Parties, violates their due process rights, and certainly serves as a strong basis for sanctions. We expect your declarant to appear at his deposition on July 1, 2025, as noticed.  Regards, Jeffrey.

Jeffrey Dintzer

ALSTON & BIRD
350 S. Grand Avenue, 51st Floor
Los Angeles, CA 90071
Office:  213-576-1063
Cell: 213-393-8664

---

**From:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
**Sent:** Tuesday, June 24, 2025 10:20 AM
**To:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

**EXTERNAL SENDER – Proceed with caution**

---

Hi Jeffrey,

Thank you for your response.

We certainly appreciate your willingness to move the deposition date, but the only reason it was moved was because you unilaterally scheduled the deposition without consulting counsel for petitioners, and you noticed it for a date when counsel for CBD and Wishtoyo was unavailable. The only reason the date was moved was to accommodate counsel's schedule.

When we previously met and conferred, we did so to discuss a different issue: Mr. Kuprewicz's severe health issues, and possible accommodations for him to make any deposition less burdensome. Any "agreement" we reached at our previous meeting was strictly related to that issue. Notably, we are not seeking to quash the subpoena on the basis of Mr. Kuprewicz's health issues.

We are not proceeding in bad faith. This is an unusual situation, and based on our continuing research, it has come to our attention that Real Parties are not entitled to proceed with Mr. Kuprewicz's deposition at this time. Because, as explained in our previous email, the deposition exceeds the scope of permissible discovery, it remains reasonable for us to pursue a motion to quash, regardless of when the deposition was re-noticed for.

Moreover, it's not clear to us how pushing the deposition to July 1 – which, again, was necessary to accommodate counsel's schedule – resulted in any prejudice to Real Parties.  We ultimately reached out to meet and confer *before* the date Mr. Kuprewicz's deposition was initially noticed for (June 24), and our formal objections will be served imminently.

Please let us know what times you are available today for a call.

Thanks,

3



**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org



We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

---

**From:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
**Sent:** Monday, June 23, 2025 5:29 PM
**To:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; michael.dorsi@doj.ca.gov; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

Mr. Frankel, we are happy to meet and confer with you tomorrow over the deposition of Mr. Kuprewicz.  But please know that if you file a motion to block the deposition from going forward, we will seek monetary sanctions against you. We agreed to move Mr. Kuprewicz's deposition to July 1 in good faith, with the understanding after *reaching an agreement with you and his independent counsel, Mr. Stolpman,* that deposition would proceed on July 1. The record reflects as much.

You never once mentioned any objection to the taking of his deposition before we agreed to move the deposition to July 1st, knowing our opposition is due on July 7th after a holiday weekend. The email below is the first we have heard of any objection to proceeding with this deposition as scheduled.  In fact, we met and conferred on June 12th, and all agreed that the deposition would proceed on July 1st at the location we selected near the witnesses' residence to accommodate his travel restrictions.  Had we been advised of such an objection, which could have been made at that time, we would not have moved the date to accommodate you and the witness.

Requesting a delay in the deposition of a declarant supporting an application for preliminary injunction so you can have additional time to file a motion for protective order or to quash the subpoena without advising opposing counsel of your intentions is bad faith and sanctionable.  Jeffrey

4

**From:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
**Sent:** Monday, June 23, 2025 4:57 PM
**To:** djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>; michael.dorsi@doj.ca.gov; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

**EXTERNAL SENDER – Proceed with caution**

Counsel,

After further consideration, we believe that Real Parties' attempt to depose Mr. Kuprewicz – Petitioners' retained expert consultant – exceeds the scope of permissible discovery. Generally, parties are not entitled to engage in expert discovery (including depositions) unless and until experts have been designated pursuant to CCP § 2034.210. (*See, e.g., County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57 (recognizing that information related to an expert's identity, qualifications, or opinion(s) is not discoverable before designation).) The only recognized exception to that rule is limited to summary judgment proceedings and is inapplicable here. (*See St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1540-41.)

Accordingly, at this point, petitioners in both 25CV02244 and 25CV02247 intend to file motions to quash Mr. Kuprewicz's deposition subpoena and related notices of deposition. Filing the motions will automatically stay Mr. Kuprewicz's deposition until they can be heard. (CCP § 2025.410(b).)

That said, we welcome the opportunity to first attempt to resolve this informally. Please let us know your availability to meet and confer in the next few days.

(This effort to meet and confer is joined by counsel for petitioners in 25CV02244, cc'ed here.)

Thanks,



**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org



We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

**From:** Niz, Kim <Kim.Niz@alston.com>
**Sent:** Friday, June 20, 2025 4:41 PM
**To:** Linda Krop <lkrop@environmentaldefensecenter.org>; Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; michael.dorsi@doj.ca.gov; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org; tnimmer@biologicaldiversity.or
**Cc:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>
**Subject:** Service Docs - Case Nos.: 25CV02244 and 25CV02247

**Electronic Service:**

Dear Counsel,

Please find attached electronic service documents:

- EDC v. Sable - Real Party in Interest's Amended Cross-Notice of Deposition of Richard B. Kuprewicz
- CBD v. Sable - Real Party in Interest's Amended Cross-Notice of Deposition of Richard B. Kuprewicz

Thank you,


Kim S. Niz | Legal Administrative Assistant
**ALSTON & BIRD**
Jeffrey D. Dintzer | Brett Oberst | Krista Hernandez
Jeff Carlin | Matthew C. Wickersham | Garrett Stanton
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Direct:  213 576 1096 | Office:  213 576 1000
Kim.Niz@alston.com


NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA — ANACAPA DIVISION

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and <br><br> SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, <br><br> Real Parties in Interest. | Case No.: 25CV02247 <br><br><br> **PETITIONERS AND PLAINTIFFS' OBJECTION TO REAL PARTIES' DEPOSITION SUBPOENA OF RICHARD B. KUPREWICZ AND AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** <br><br> Dept.:    4 <br> Judge:   Honorable Donna D. Geck <br><br> Petition Filed: April 15, 2025 <br> Trial: None Set |

1

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

Pursuant to California Code of Civil Procedure section 2025.010 et seq., Petitioner and Plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (collectively, "Petitioners") object to Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company's (collectively, "Real Parties") Deposition Subpoena of Richard B. Kuprewicz (the "Subpoena"), Petitioners' consultant in this matter, and Amended Cross-Notice of Deposition of Richard B. Kuprewicz (the "Notice") as follows:

## GENERAL OBJECTIONS

1. Petitioners object to the Subpoena and Notice on the grounds that they exceed the scope of permissible discovery. Mr. Kuprewicz is Petitioners' retained expert consultant in this matter. While Petitioners filed a declaration from Mr. Kuprewicz in support of their ex parte application for a stay, temporary restraining order, and order to show cause, Mr. Kuprewicz has not been designated as an expert pursuant to Code of Civil Procedure section 2034.210 *et seq*. Unless and until he is so designated, Real Parties are precluded from deposing Mr. Kuprewicz or subpoenaing his records. (*County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57 (recognizing that information related to an expert's identity, qualifications, or opinion(s) is not discoverable before designation and therefore reversing a trial court's order compelling expert testimony at a deposition).) Moreover, even assuming, arguendo, that Real Parties are not summarily precluded from deposing Mr. Kuprewicz in light of Petitioners' reliance on his declaration, his deposition would only be appropriate upon an affirmative showing by Real Parties of "objective facts . . . which create a significant question regarding the validity of [Mr. Kuprewicz's declaration] which, if successfully pursued, will impeach the foundational basis of the [declaration]." (*St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1540-41.) Real Parties have not provided any such facts, and Petitioners are aware of none. Lastly, even if Real Parties were to make the requisite showing of such facts, any deposition of Mr. Kuprewicz must be limited to inquiring into the foundation of the opinions expressed in his declaration. (*See id.*) The Subpoena and Notice are not so limited.

2. Petitioners object to the Subpoena and Notice on the grounds that they seek to elicit information protected by the attorney-client privilege and/or information that constitutes attorney work

product. As noted, Mr. Kuprewicz is Petitioners' consultant in this matter, but he has not been designated as an expert pursuant to Code of Civil Procedure section 2034.210 *et seq*. Thus, all communications by and between Petitioners, their attorneys, and Mr. Kuprewicz remain privileged. (*DeLuca v. State Fish Co., Inc.* (2013) 217 Cal.App.4th 671, 688 ("[T]he attorney-client privilege . . . clearly includes communications to a consulting expert.").) Likewise, any documents, opinions, or other information prepared by Mr. Kuprewicz at Petitioners' request and not already disclosed constitute attorney work product. (*See id.*) Moreover, save for Mr. Kuprewicz's declaration, all of Mr. Kuprewicz's services to date have been rendered purely in an advisory capacity; accordingly, even if Petitioners' *were* to designate Mr. Kuprewicz as an expert, communications with Mr. Kuprewicz and information developed by Mr. Kuprewicz at Petitioners' request would remain protected as attorney work product. (*National Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476, 542-43 (holding that any information or opinions rendered by an expert in an advisory capacity remain subject to the work product limitation on discovery even after expert designation).)

## OBJECTIONS TO REQUESTS FOR PRODUCTION

1. **REQUEST FOR PRODUCTION NO. 1:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

2. **REQUEST FOR PRODUCTION NO. 2:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B

to YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

3. **REQUEST FOR PRODUCTION NO. 3:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

4. **REQUEST FOR PRODUCTION NO. 4:**

Request: YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

5. **REQUEST FOR PRODUCTION NO. 5:**

Request: YOUR COMMUNICATIONS discussing SABLE.

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is not reasonably particularized.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

6. **REQUEST FOR PRODUCTION NO. 6:**

Request: YOUR COMMUNICATIONS discussing PPC.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is not reasonably particularized.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

7. **REQUEST FOR PRODUCTION NO. 7:**

Request: All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

8. **REQUEST FOR PRODUCTION NO. 8:**

Request: All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

9. **REQUEST FOR PRODUCTION NO. 9:**

Request: All contracts and agreements YOU have with PETITIONERS.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

10. **REQUEST FOR PRODUCTION NO. 10:**

Request: DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

11. **REQUEST FOR PRODUCTION NO. 11:**

Request: All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work

product, as set forth in General Objection 2 above.

12. **REQUEST FOR PRODUCTION NO. 12:**

Request: All drafts and versions of Exhibit B to YOUR declaration in support of
PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining
order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible
  discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and
  information protected by the attorney-client privilege and/or constitutes attorney work
  product, as set forth in General Objection 2 above.

13. **REQUEST FOR PRODUCTION NO. 13:**

Request: All drafts and versions of Exhibit C to YOUR declaration in support of
PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining
order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible
  discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and
  information protected by the attorney-client privilege and/or constitutes attorney work
  product, as set forth in General Objection 2 above.

14. **REQUEST FOR PRODUCTION NO. 14:**

Request: All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable
Offshore Corp. v. California Coastal Commission et al.*, Superior Court for the State of
California, Santa Barbara County Case No. 25CV00974.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible
  discovery, as set forth in General Objection 1 above.

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

Dated: June 24, 2025                    Respectfully

_Ldakp_
_____

Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On June 24, 2025, I served the above document(s) described as **PETITIONERS AND PLAINTIFFS' OBJECTION TO REAL PARTIES' DEPOSITION SUBPOENA OF RICAHRD B. KUPREWICZ AND AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒    **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

☒    **By United States mail.** On the date above, I enclosed a copy of the document(s) described above in a sealed envelope or package addressed to the recipients designated in the attached Service List, postage fully prepaid, with the United States Postal Service at Santa Barbara, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 24, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

**SERVICE LIST**

| | |
|---|---|
| Michael S. Dorsi | ATTORNEY FOR |
| Michael.Dorsi@doj.ca.gov | RESPONDENTS/DEFENDANTS |
| California Attorney General's Office | California Department of Forestry and Fire |
| 55 Golden Gate Avenue, Suite 11000 | Protection, Office of the State Fire Marshal; and |
| San Francisco, CA 94102 | Daniel Berlant, in his official capacity as State Fire Marshal |

| | |
|---|---|
| Duncan Joseph Moore | ATTORNEYS FOR REAL PARTIES IN |
| djmoore@paulhastings.com | INTEREST |
| Benjamin J. Hanelin | Sable Offshore Corp. and Pacific Pipeline |
| benjaminhanelin@paulhastings.com | Company |
| Natalie C. Rogers | |
| natalierogers@paulhastings.com | |
| PAUL HASTINGS, LLP | |
| 1999 Avenue of the Stars, 27th Floor | |
| Century City, CA 90067 | |

| | |
|---|---|
| Jeffrey D. Dintzer | ATTORNEYS FOR REAL PARTIES IN |
| Jeffrey.dintzer@alston.com | INTEREST |
| Matthew C. Wickersham | Sable Offshore Corp. and Pacific Pipeline |
| Matt.wickersham@alston.com | Company |
| Garrett B. Stanton | |
| Garrett.stanton@alston.com | |
| ALSTON & BIRD LLP | |
| 350 South Grand Avenue, 51st Floor | |
| Los Angeles, CA 90071 | |

# EXHIBIT E

| | |
|---|---|
| **From:** | Stanton, Garrett |
| **Sent:** | Friday, June 27, 2025 9:46 AM |
| **To:** | jfrankel@environmentaldefensecenter.org; Linda Krop; Tara Rengifo; Julie Teel Simmonds; dpettit@biologicaldiversity.org; Talia Nimmer; Michael S Dorsi; tom@stolpmanlawgroup.com |
| **Cc:** | Dintzer, Jeffrey; Rusek, Vickie; Oberst, Brett; Daniel, Madeline; Moore, DJ; Hanelin, Benjamin J.; Rogers, Natalie C. |
| **Subject:** | Case Nos. 25CV02244 and 25CV02247 |

Dear Counsel,

**PLEASE TAKE NOTICE THAT** on June 30, 2025 at 8:30 a.m., in Department 4 of the California Superior Court for the County of Santa Barbara, Anacapa Division, located at 1100 Anacapa Street, Santa Barbara, California 93121-1107, before the honorable Donna D. Geck, Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company will apply to the Court *ex parte* for an order compelling the deposition of Robert Kuprewicz, or in the alternative, shortening time to hear Real Parties' motion to compel deposition of Robert Kuprewicz, or in the further alternative, striking the declaration of Robert Kuprewicz in support of Plaintiffs' pending application for preliminary injunction.

**Please let us know whether any of the parties intend to oppose this application so we can advise the court.**

Thank you for your attention to this matter.

Garrett B. Stanton
Senior Associate
**ALSTON & BIRD**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
garrett.stanton@alston.com | t: 213.576.1151

1

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
6/27/2025 4:52 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
LISA L. GARCIA, SBN 301362
lisa.garcia@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone: (310) 620-5879
Facsimile: (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,<br><br>Petitioners and Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,<br><br>Respondents and Defendants, | Case No. 25CV02247<br><br>Assigned for all purposes to:<br>Hon. Donna D. Geck<br><br>**REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with supporting Declaration of Jeffrey Dintzer and [Proposed] Order]<br><br>Date:     July 18, 2025<br>Time:     8:30 a.m.     10 AM<br>Dept:     4<br><br>Complaint Filed:     April 15, 2025<br>Trial Date:     None set |

REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD
B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

and

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 18, 2025 at 8:30 a.m., or on an advanced date pursuant to the concurrently filed *ex parte* application, in Department 4 of the California Superior Court for the County of Santa Barbara, Anacapa Division, located at 1100 Anacapa Street, Santa Barbara, CA 93121-1107, Real Parties in Interest Sable Offshore Corporation ("Sable") and Pacific Pipeline Company ("PPC" and collectively "Real Parties") will and hereby do move this Court for an order compelling Richard B. Kuprewicz to appear and testify at his deposition and for monetary sanctions to be assessed upon Plaintiffs and their counsel for refusing to allow Mr. Kuprewicz to appear at his deposition and for opposing this Motion without substantial justification. Plaintiffs' unfair gamesmanship has resulted in Real Parties' counsel incurring costs to bring this Motion and the accompanying *ex parte* application for shortened time to hear this Motion.

On June 2, 2025, Plaintiffs filed an *ex parte* application to stay, or in the alternative, an order to show cause and temporary restraining order against Defendants and Real Parties to stay the operation of the approval of State Waivers for CA-324 and CA-325A/B pending judgment of the Court. Plaintiffs filed the Declaration of their expert Mr. Kuprewicz in support of their OSC re preliminary injunction (the "Preliminary Injunction"). On June 3, 2025, the Court scheduled the Preliminary Injunction hearing for July 18, 2025 with Real Parties' opposition to be due July 7, 2025.

Consistent with their fundamental right to cross-examine Mr. Kuprewicz to oppose the Preliminary Injunction, on June 5, 2025, Real Parties personally served a deposition subpoena on Mr. Kuprewicz for June 24, 2025. On June 10, 2025, Plaintiffs' counsel agreed that Mr. Kuprewicz would appear for deposition but asked Real Parties to delay the deposition by one week and provide certain accommodations to assist with Mr. Kuprewicz's health restrictions. Real Parties agreed to these accommodations in good faith, including delaying the deposition by one week to July 1, 2025 and hosting the deposition at a hotel near Mr. Kuprewicz's residence. The record is clear that Plaintiffs and Mr. Kuprewicz's personal counsel agreed to a date, time, and location for Mr. Kuprewicz's deposition. Pursuant to that agreement, on June 20, 2025, Real Parties served the amended deposition subpoena on Mr. Kuprewicz's counsel and Plaintiffs. Mr. Kuprewicz's counsel has never objected or moved to quash the subpoena. But on June 23, 2025 – nearly two weeks after first agreeing to appear for his deposition

1

and a week before the scheduled deposition – Plaintiffs' counsel notified Real Parties that they were moving to quash the deposition subpoena. Plaintiffs waited until roughly two business days before the deposition to file and serve the motion to quash. There is no justification for the eleventh-hour motion to quash, particularly where Plaintiffs had already agreed on a date, time, and location for the deposition. Plaintiffs' gamesmanship should not be rewarded. Real Parties are entitled to cross-examine Mr. Kuprewicz and they should be afforded their right to due process.

By this Motion, Real Parties also seek sanctions against Plaintiffs and their counsel, jointly and severally, for costs incurred in bringing this Motion amounting to $22,000.00 pursuant to Code of Civil Procedure sections 1987.1 and 1987.2. Counsel for the parties have met and conferred in an effort to resolve the issues raised by this Motion, but the meet and confer efforts were ultimately unsuccessful.

This Motion is made pursuant to Code of Civil Procedure sections 1987.1 and 1987.2, and is based upon this Notice of Motion and the accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of Jeffrey Dintzer and the exhibits attached thereto; the Proposed Order; all pleadings, papers, and records on file in this action; all matters of which the Court may properly take judicial notice; such argument as the Court may permit; and any such other matters or evidence as the Court may consider at a hearing on this matter.

DATED: June 27, 2025          Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE

_____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

2
REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiffs' last-minute refusal to produce their key witness, Richard B. Kuprewicz, for deposition is a deliberate and improper attempt to obstruct Real Parties from their fundamental due process right to cross-examine opposing witnesses.  Mr. Kuprewicz serves as Plaintiffs' key witness supporting their preliminary injunction, offering in his declaration expert opinions regarding the effects of corrosion to the Pipelines and Real Parties are entitled to cross-examine his testimony.

The record is clear that Plaintiffs and Mr. Kuprewicz agreed that Mr. Kuprewicz would appear for his deposition.  The parties even agreed on a time, date, and location for his deposition.  But in an obvious game of delay, nearly two weeks after their agreement, Plaintiffs reneged on their agreement without any valid basis.  Plaintiffs masked their attempts to meet and confer about deposition logistics and delayed the deposition to gain additional time to file their belated motion quash and deprive Real Parties of their due process rights.  Plaintiffs' eleventh-hour refusal is unjustified and in bad faith.  Notably, Mr. Kuprewicz's personal counsel never objected to or moved to quash his deposition.  Real Parties respectfully request this Court order Richard B. Kuprewicz to appear and testify at his deposition on an expedited basis (and before Real Parties' opposition to Plaintiffs' Preliminary Injunction is due on July 7, 2025).  Real Parties also respectfully request monetary sanctions to be assessed upon Plaintiffs and their counsel for opposing this Motion without substantial justification.

**II.    FACTUAL BACKGROUND**

**A.    Plaintiffs Filed the Declaration of Richard B. Kuprewicz in Support of Their Preliminary Injunction.**

On June 2, 2025, Plaintiffs filed an *ex parte* Application For Stay or Order to Show Cause and Temporary Restraining Order.  In support of their Application, Plaintiffs also filed the Declaration of Richard B. Kuprewicz, a purported pipeline safety expert, who opined that the pipelines cannot be safely operated and why the waivers will not ensure the integrity and safety of the pipelines or prevent another oil spill.  One June 3, 2025, the Court granted Plaintiffs' temporary restraining order and scheduled an Order to Show Cause why a preliminary injunction should not issue against Defendants and Real Parties

REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

prohibiting them from proceeding with the restart and operation of the Las Flores Pipeline System on July 18, 2025 (the "Preliminary Injunction"). Real Parties' opposition to the Preliminary Injunction is due on July 7, 2025.

### B.    Real Parties Personally Served Mr. Kuprewicz With a Deposition Subpoena for Personal Appearance and Mr. Kuprewicz Agreed to Appear.

On June 5, 2025, Real Parties personally served a Deposition Subpoena for Personal Appearance and Production of Documents on Mr. Kuprewicz for June 24, 2025 and paid witness fees of $41.00. [*See* Declaration of Jeffrey Dintzer ("Dintzer Decl."), ¶ 1, Ex. A.] On June 10, 2025, counsel for Center for Biological Diversity agreed that Mr. Kuprewicz would appear for deposition but asked that the deposition be rescheduled to a later date, taken remotely, and split into two sessions due to Mr. Kuprewicz's health issues. [*Id*., ¶ 2, Ex. B.] The parties conferred about deposition logistics and Real Parties offered accommodations for Mr. Kuprewicz's stated health issues. [*Id*.] On June 12, 2025, all parties agreed (including Mr. Kuprewicz's personal counsel) to a July 1, 2025 deposition date, time, and location. [*Id*. , ¶ 3.] On June 20, 2025, Real Parties timely served an Amended Deposition Subpoena for Personal Appearance and Production of Documents on Mr. Kuprewicz for July 1, 2025 on Mr. Kuprewicz's counsel, who agreed to accept service of the subpoena. [*Id*. , ¶ 3, Ex. C.]

### C.    Nearly Two Weeks After Agreeing to Appear For Deposition, Plaintiffs Suddenly Refuse to Produce Mr. Kuprewicz for Deposition.

On June 23, 2025, nearly two weeks after agreeing to appear for deposition and after accepting service of the Amended Deposition Subpoena, counsel for Environmental Defense Center emailed Real Parties *for the first time* stating that "[a]fter further consideration," they would not produce Mr. Kuprewicz for deposition. Although they presented Mr. Kuprewicz's declaration in support of their preliminary injunction, they did not believe Real Parties were entitled to depose him, citing to irrelevant case law. [Dintzer Decl., ¶ 4, Ex. D.] Real Parties explained that during the meet and confer process in which all parties agreed to a date, time, and location for Mr. Kuprewicz's deposition, neither Plaintiffs, nor Mr. Kuprewicz ever objected to appearing for deposition. [*Id*.] Moreover, Real Parties explained why they are entitled to cross-examine witnesses in support of a preliminary injunction and that if Mr. Kuprewicz refused to appear, they would seek monetary sanctions. [*Id*.] On the evening of June 26,

REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

2025, roughly two business days before Mr. Kuprewicz's deposition (and over two weeks after agreeing Mr. Kuprewicz would sit for deposition), Plaintiffs filed a motion to quash the subpoena. The timing of these motions are an attempt to preclude Plaintiffs from taking Mr. Kuprewicz's deposition before their opposition is due. Notably, Mr. Kuprewicz's own counsel has never objected or filed a motion to quash the subpoena.

### THE COURT SHOULD COMPEL MR. KUPREWICZ'S DEPOSITION

### D.    Real Parties Duly and Timely Noticed Mr. Kuprewicz's Deposition.

It is black-letter law in California that personal service of a deposition subpoena is effective to require any deponent who is a resident of California at the time of service to personally appear at deposition and give testimony. (Code Civ. Proc. § 2020.220(c)(1).) Where a non-party fails to appear for deposition after being served with a subpoena demanding his testimony, the Court may compel his attendance at deposition and impose sanctions. (*See* Code Civ. Proc. §§ 1987.1, 1987.2, and 2025.450; *Terry v. SLICO* (2009) 175 Cal.App.4th 352, 355 [affirming trial court's order compelling deposition and sanctioning non-party witness who failed to appear at deposition or properly object to subpoena].) Here, neither Plaintiffs nor Mr. Kuprewicz dispute that the parties agreed to a deposition date, time, and location, and Real Parties properly served a valid deposition subpoena on Mr. Kuprewicz, a resident of California.[1]

### E.    Real Parties Are Entitled to Depose Mr. Kuprewicz.

The Code of Civil Procedure states that "a party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . Discovery may relate to the claim or defense of the party seeking discovery . . . ." (Code Civ. Proc. § 2017.010.) California courts have construed the discovery statutes broadly in favor of permitting discovery, so as to uphold the right to discovery whenever possible. (*Lipton v. Super. Ct*. (1996) 48 Cal.App.4th 1599, 1612; *Greyhound Corp. v. Super. Ct*. (1961) 56 Cal.2d 355, 377-78; *Emerson Elec. Co. v. Super. Ct*. (1997) 16 Cal.4th 1101, 1108.)

---

[1] Plaintiffs and Mr. Kuprewicz waived their right to object to the deposition subpoena by agreeing on a time, date, and location for Mr. Kuprewicz's deposition and not raising any objection until almost two weeks after agreeing to appear.

REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

The "confrontation of witnesses against him in noncriminal proceedings is a part of procedural due process guaranteed by the Fifth Amendment and the Fourteenth Amendment to the federal Constitution." (*August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 60 [finding hearing met requirements of due process where sworn statement was considered but there was no subsequent request to cross-examine the declarant]; *see also* Cal. Const. Art. I. § 7.)  In fact, "[b]ecause it relates to the fundamental fairness of the proceedings, cross-examination is said to represent an 'absolute right,' not merely a privilege," (*Fost v. Marin County Superior Court* (2000) 80 Cal.App.4th 724, 733 [noting the rule applies in "either a criminal or a civil case" and if "a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude the witness's testimony"].)  Further, "[t]he lack of an opportunity to cross-examine the declarant deprives the opposing party of important evidence concerning the credibility of the declarant and the reliability of testimony in the declaration." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 841-842 [relying on *Fost* and holding it was error for trial court to rely on declaration on motion for preliminary relief in family law case where declarant was not made available for cross-examination or live testimony].)

Moreover, a preliminary injunction hearing requires the court to carefully weigh the evidence and decide whether the facts require such relief.  (*Fleishman v. Superior Court* (2002) 102 Cal. App. 4th 350, 356.)  During a preliminary injunction hearing, the court evaluates the credibility of witnesses and makes factual findings on disputed evidence.  (*Id*.)  Parties are therefore entitled to cross-examine witnesses who submit statements in support of a preliminary injunction.  (*See In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 ["A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses."]; 5 California Trial Guide § 100.20 [discussing depositions are appropriate for use in pretrial proceedings "such as a motion for a preliminary injunction"].)  Real Parties have a fundamental right to depose Mr. Kuprewicz.

**F.    Plaintiffs and Mr. Kuprewicz's Refusal to Appear at Deposition Is Unjustified.**

Plaintiffs and Mr. Kuprewicz's objection to Mr. Kuprewicz's deposition is unjustified.  They argue that Mr. Kuprewicz may not be deposed until he is designated as an expert pursuant to Code of Civil Procedure section 2034.210.  But this argument misses the mark.  Mr. Kuprewicz's deposition is not expert discovery – it is Real Parties exercising their due process right to cross-examine testimony

REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

submitted in support of a preliminary injunction that if ordered will have significant financial consequences to Real Parties. (*St. Mary Med. Ctr. v. Sup.Ct.* (1996) 50 Cal.App.4th 1531, 1539 [holding § 2034.010 et seq. procedure for deposing expert witnesses does not bar earlier depositions of experts whose opinions are filed in support of or in opposition to a motion for summary judgment or summary adjudication]; *see also* Steve Rusch Declaration, ¶¶ 13-22 filed in opposition to the Ex-Parte Application for TRO.)  Plaintiffs' argument about expert discovery is inapplicable and nonsensical.  If Plaintiffs were to have it their way, they would be able to submit any evidence in support of their preliminary injunction without providing Real Parties any ability to challenge that evidence.  Not surprisingly, Plaintiffs fail to provide any legal support for this position.

As explained above, Parties are entitled to cross-examine witnesses who submit statements in support of a preliminary injunction and Plaintiffs have not provided any support to the contrary.  There is simply no basis in law to refuse to produce Mr. Kuprewicz for deposition.

**III.    PLAINTIFFS SHOULD BEAR THE COSTS AND FEES ASSOCIATED WITH THIS MOTION**

Code of Civil Procedure section 1987.1 provides that "[i]f a subpoena requires the attendance of a witness … at the taking of a deposition, the court, upon motion reasonably made by [a party or a witness] … may make an order … directing compliance with it upon those terms or conditions as the court shall declare …." Within its discretion, the Court may also award the amount of the reasonable expenses incurred in making the motion, including reasonable attorney's fees, if the Court finds the motion was opposed in bad faith or without substantial justification. (Code Civ. Proc., § 1987.2, subd. (a).)

As described herein, there was no justification for Plaintiffs' refusal to produce Mr. Kuprewicz on the date agreed upon by the parties and timely and properly noticed by Real Parties.  Nor is there any justification to oppose this Motion and the relief sought herein. Plaintiffs' delay tactics clearly show unfair gamesmanship.  For nearly two weeks, Plaintiffs led Real Parties to believe Mr. Kuprewicz would appear for deposition by requesting a delay in the deposition date and conferring about certain health-related accommodations.  After Real Parties agreed to these accommodations in good faith, Plaintiff used that time to gain an advantage for their late filed motion to quash.  Plaintiffs unsubstantiated refusal

REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

to produce Mr. Kuprewicz pursuant to the subpoena has necessitated the filing of this Motion and Plaintiffs' opposition (contained in their motion to quash) is without any substantial justification. In turn, Real Parties request that they be reimbursed by the amount of $22,000.00, representing the Plaintiffs' reasonable attorneys' fees incurred in bringing this Motion now required to compel compliance with the deposition subpoena.  [Dintzer Decl., ¶ 6.]

## IV.    CONCLUSION

For the foregoing reasons, Real Parties respectfully request that the Court compel the deposition of Mr. Kuprewicz before Real Parties' opposition to Plaintiffs' preliminary injunction is due on July 7, 2025.  Real Parties further respectfully request that the Court award sanctions in the amount of $22,000.00 representing the reimbursement of fees and costs associated with bringing this Motion.

DATED: June 27, 2025                Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE


_____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

**PROOF OF SERVICE**

I, Josie Cisneros, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 27, 2025, I served the document(s) **REAL PARTIES IN INTEREST NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF RICHARD B. KUPREWICZ AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☐ (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐ (BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒ BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 27, 2025, at Los Angeles, California.

/s/Josie Cisneros
Josie Cisneros

**SERVICE LIST**

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
          jfrankel@environmentaldefensecenter.org
          trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
          benjaminhanelin@paulhastings.com
          natalierogers@paulhastings.com

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
LISA L. GARCIA, SBN 301362
lisa.garcia@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone: (310) 620-5879
Facsimile: (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
6/27/2025 1:00 PM
By: Terri Chavez , Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,<br><br>      Petitioners and Plaintiffs,<br><br>      v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,<br><br>      Respondents and Defendants,<br><br>      and | Case No. 25CV02247<br><br>Assigned for all purposes to:<br>Hon. Donna D. Geck<br><br>**DECLARATION OF JEFFREY DINTZER IN SUPPORT OF REAL PARTIES' EX PARTE APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, IN THE ALTERNATIVE, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION AND REQUEST FOR SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ**<br><br>[Filed concurrently with Ex Parte Application, and [Proposed] Order]<br><br>Date:          June 30, 2025<br>Time:          8:30 a.m.<br>Dept:          4<br><br>Complaint Filed:     April 15, 2025 |

1

DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

| | Trial Date: None set |
|---|---|
| SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, | |
| Real Parties in Interest. | |

DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

## **DECLARATION OF JEFFREY DINTZER**

I, Jeffrey Dintzer, declare as follows:

1. I am an attorney at law at the law firm Alston & Bird LLP, counsel for Real Parties in Interest Sable Offshore Corp and Pacific Pipeline Company ("Real Parties"). I make this declaration in support of Real Parties' Ex Parte Application for an Order Requiring Mr. Kuprewicz to Appear at Deposition or, in the Alternative, for an Order Shortening Time to Hear Motion to Compel Deposition and Request for Sanctions or, in the Alternative, to Strike the Declaration of Mr. Kuprewicz. I have personal knowledge of the facts stated in this declaration and, if called upon to do so, I could and would competently testify to them.

1. On June 5, 2025 at 7:00 a.m., Real Parties personally served Mr. Richard B. Kuprewicz with a Deposition Subpoena for Personal Appearance and Production of Documents and Things for June 24, 2025 at 9:00 a.m. at the Marriott, 1605 Calle Joaquin, San Luis Obispo, California 93405. At the time that Real Parties served Mr. Kuprewicz, his witness fees in the amount of $41.00 were also paid. A true and correct copy of the Deposition Subpoena for Personal Appearance and proof of service is attached hereto as **Exhibit A**.

2. On June 10, 2025, counsel for Center for Biological Diversity agreed that Mr. Kuprewicz would appear for deposition but asked that the deposition be rescheduled for a date during the week of June 30 through July 3, 2025. Counsel also requested that the deposition be taken remotely and split between two days due to certain health issues. On the same day, Real Parties agreed to reschedule the deposition to July 1, 2025. Between June 10 and June 11, the parties exchanged several emails related to deposition logistics. A true and correct copy of the email chain between the parties from June 5, 2025 through June 11, 2025 is attached hereto as **Exhibit B**.

3. On June 12, 2025, I participated in a telephone call with Plaintiffs' counsel and the parties agreed that Mr. Kuprewicz would appear for deposition on July 1, 2025 at 9:00 a.m. at a Courtyard hotel located at 1605 Calle Joaquin, San Luis Obispo, CA 93405, which is a short distance from Mr. Kuprewicz's residence. Mr. Kuprewicz's personal counsel, Mr. Tom Stolpman, who was on the telephone call, agreed to accept service of the amended deposition subpoena. It was also agreed that the deposition would be in person at the Courtyard hotel and that we would take sufficient breaks to

DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

accommodate Mr. Kuprewicz's specified health concerns, but conclude the deposition on that day. On June 20, 2025, Real Parties served Mr. Stolpman with an Amended Deposition Subpoena for Personal Appearance and Production of Documents and Things for July 1, 2025 at 9:00 a.m. at the agreed upon location. A true and correct copy of the Amended Deposition Subpoena for Personal Appearance and proof of service is attached hereto as **Exhibit C**.

4.      On June 23, 2025, counsel for Environmental Defense Center emailed Real Parties for the first time stating that "[a]fter further consideration," they would not produce Mr. Kuprewicz for deposition. We exchanged additional emails on June 23 and June 24, 2025, in which I noted that the parties already reached an agreement that the deposition would proceed on July 1, and that if Mr. Kuprewicz refused to appear, Real Parties would seek monetary sanctions. On June 24, 2025, counsel for Environmental Defense Center served formal objections to the deposition. A true and correct copy of the email chain between the parties from June 23, 2025 through June 24, 2025 is attached hereto as **Exhibit D**.

5.      Mr. Kuprewicz's attorney, Mr. Stolpman has never objected or moved to quash the deposition subpoena.

6.      Real Parties need to take Mr. Kuprewicz's deposition to, among other things, ascertain the scope and limitations of the opinions set forth in his declaration filed in support of the pending Motion for Preliminary Injunction and to test the veracity of his conclusions that the repairs to the existing pipeline are insufficient to warrant the State Fire Marshal from issuing a Plan Approval to restart the pipeline.

7.      On June 27, 2025 at approximately 6:45 a.m., my office gave notice of the *ex parte* application to counsel for Plaintiffs, Defendants, and Mr. Kuprewicz via email including the relief sought. Counsel for Plaintiffs responded that they intend to appear and oppose the application. Counsel for Defendants and Mr. Kuprewicz did not respond as to whether they intend to appear and oppose the application. A true and correct copy of the email correspondence giving notice of the *ex parte* application, dated June 27, 2025, is attached hereto as **Exhibit E**.

DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27th day of June 2025, at Los Angeles, California.

Jeffrey Dintzer

DECLARATION OF JEFFREY DINTZER IN SUPPORT OF EX PARTE APPLICATION

**PROOF OF SERVICE**

I, Josie Cisneros, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 27, 2025, I served the document(s) **DECLARATION OF JEFFREY DINTZER IN SUPPORT OF REAL PARTIES' EX PARTE APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, IN THE ALTERNATIVE, SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION AND REQUEST FOR SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ORDER TO STRIKE THE DECLARATION OF MR. KUPREWICZ**on the interested parties stated below, by the following means of service:

**See Attached Service List**

☐ (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐ (BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒ BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 27, 2025, 2025, at Los Angeles, California.

*/s/ Josie Cisneros*
Josie Cisneros

## SERVICE LIST

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
        jfrankel@environmentaldefensecenter.org
        trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
        benjaminhanelin@paulhastings.com
        natalierogers@paulhastings.com

# EXHIBIT A

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
MATTHEW C. WICKERSHAM, SBN 241733
matt.wickersham@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN (SBN 237595)
benjaminhanelin@paulhastings.com
NATALIE C. Rogers (SBN 301254)
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,<br><br>        Petitioners and Plaintiffs,<br><br>      v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,<br><br>        Respondents and Defendants, | Case No. 25CV02247<br>Coordinated with Case No. 25CV02244<br><br>Assigned for all purposes to:<br>Hon. Donna G. Geck<br><br>**REAL PARTIES IN INTEREST'S CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ**<br><br>**Date**:  June 24, 2025<br>**Time**:  9:00 a.m.<br>**Place**:  1605 Calle Joaquin, San Luis Obispo, California 93405<br><br>Complaint Filed:    April 15, 2025<br>Trial Date:      None set |

1

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND
DEPOSITION OF RICHARD B. KUPREWICZ

and

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company ("Real Parties") hereby cross-notice the deposition set forth in the Deposition Subpoena for Personal Appearance and Production of Documents and Things to Richard B. Kuprewicz (the "Deponent") issued by Real Parties in the coordinated action (Case No. 25CV02244), attached hereto as **Exhibit 1** (the "Deposition Subpoena").

**PLEASE TAKE FURTHER NOTICE** that the deposition of Deponent will take place on **June 24, 2025** at the Marriott, 1605 Calle Joaquin, San Luis Obispo, California 93405. The deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, California 90017. The deposition will be taken before an officer authorized to administer the oath to the deponent and will be recorded by stenographic means by a court reporter certified to record depositions and authorized to administer the oath and serve as the deposition officer in the State of California.

Real Parties intend to (1) record the deposition utilizing audio and video technology; (2) use instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time; (3) use Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that, in lieu of a paper set, exhibits may be provided and displayed digitally to the deposition officer, deponent, parties, and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise of those who intend to appear via this remote participating means so that the necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the deposition.

///

///

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND
DEPOSITION OF RICHARD B. KUPREWICZ

DATED:   June 4, 2025

Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE

_____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND
DEPOSITION OF RICHARD B. KUPREWICZ

# EXHIBIT 1

SUBP-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| Jeffrey D. Dintzer (Cal. Bar No. 139056); Matthew C. Wickersham (Cal. Bar No. 241733); Garrett B. Stanton (Cal. Bar No. 324775) ALSTON & BIRD LLP 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071 TELEPHONE NO.: (213) 576-1000        FAX NO. *(Optional)*: (213) 576-1100 E-MAIL ADDRESS *(Optional)*: jeffrey.dintzer@alston.com; matt.wickersham@alston.com; garrett.stanton@alston.com ATTORNEY FOR *(Name)*: Real Parties in Interest | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
 STREET ADDRESS: 1100 Anacapa Street
 MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
 BRANCH NAME:

PLAINTIFF/ PETITIONER: Center for Biological Diversity and Wishtoyo Foundation

DEFENDANT/ RESPONDENT: California Department of Forestry and Fire Protection, et al.

| DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS | CASE NUMBER: 25CV02244 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known)*:
Richard B. Kuprewicz, 1783 Trilogy Pkwy, Nipomo, CA 93444-6621

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS in this action at the following date, time, and place:**

| Date: June 24, 2025 | Time: 9:00 a.m. | Address: Marriott, 1605 Calle Joaquin, San Luis Obispo, CA 93405 |
|---|---|---|

   a. ☐   As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc, § 2025.230.)

   b. ☒   You are ordered to produce the documents and things described in item 3.

   c. ☒   This deposition will be recorded stenographically ☐ through the instant visual display of testimony and by ☐ audiotape ☒ videotape.

   d. ☒   This videotape deposition is intended for possible use at trial under Code of Civil Procedure section 2025.620(d).

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents and things to be produced and any testing or sampling being sought are described as follows:
 See Attachment 3
   ☒   Continued on Attachment 3.

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:

   ☐   Continued on Attachment 4.

5. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

6. *At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence or within 150 miles of your residence if the deposition will be taken within the county of the court where the action is pending. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.*

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: June 4, 2025

▶

(SIGNATURE OF PERSON ISSUING SUBPOENA)

Jeffrey D. Dintzer

(TYPE OR PRINT NAME)

Attorney for Real Parties in Interest

(TITLE)

(Proof of service on reverse)                    **Page 1 of 2**

| Form Adopted for Mandatory Use Judicial Council of California SUBP-020 [Rev. January 1, 2009] | **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | Code of Civil Procedure §§ 2020.510, 2025.220, 2025.230, 2025.250, 2025.620; Government Code, § 68097.1 www.courts.ca.gov |
|---|---|---|

**SUBP-020**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Center for Biological Diversity and Wishtoyo Foundation<br><br>DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection, et al. | CASE NUMBER:<br>25CV02244 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE
## AND PRODUCTION OF DOCUMENTS AND THINGS

1. I served this *Deposition Subpoena for Personal Appearance and Production of Documents and Things* by personally delivering a copy to the person served as follows:

    a. Person served *(name)*: Richard B. Kuprewicz

    b. Address where served:



    c. Date of delivery:

    d. Time of delivery:

    e. Witness fees and mileage both ways *(check one)*:

       (1) ☐   were paid. Amount: ....................$ _____

       (2) ☐   were not paid.

       (3) ☐   were tendered to the witness's public entity employer as required by Government Code section 68097.2. The amount tendered was *(specify)*:...............$ _____

    f. Fee for service: .........................................$ _____

2. I received this subpoena for service on *(date):*

3. Person serving:

    a. ☐   Not a registered California process server

    b. ☐   California sheriff or marshal

    c. ☐   Registered California process server.

    d. ☐   Employee or independent contractor of a registered California process server

    e. ☐   Exempt from registration under Business and Professions Code section 22350(b)

    f. ☐   Registered professional photocopier

    g. ☐   Exempt from registration under Business and Professions Code section 22451

    h.   Name, address, telephone number, and, if applicable, county of registration and number:





| | |
|---|---|
| **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct. | **(For California sheriff or marshal use only)**<br>**I certify** that the foregoing is true and correct. |
| Date: | Date: |
| ▶ | ▶ |
| _____<br>(SIGNATURE) | _____<br>(SIGNATURE) |

**PROOF OF SERVICE**
**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE**
**AND PRODUCTION OF DOCUMENTS AND THINGS**

**ATTACHMENT 3**

## DEFINITIONS

1.      "YOU" and "YOUR" mean to Richard B. Kuprewicz, his agents, attorneys, and other representatives acting on his behalf.

2.      "SABLE" shall mean Sable Offshore Corp.

3.      "PPC" shall mean Pacific Pipeline Company.

4.      "PETITIONERS" shall mean Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation, as well as their agents, attorneys, and other representatives acting on their behalf

5.      "ACTION" shall mean the civil lawsuits filed by PETITIONERS entitled *Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02244, and the coordinated action entitled *Environmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02247.

6.      "SYU PIPELINE" shall refer to the Santa Ynez Unit Pipelines located in waters offshore California.

7.      "LAS FLORES PIPELINE" shall refer to the Las Flores Pipelines located in waters offshore California.

8.      "DOCUMENTS" means all data, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, including written papers or memoranda which summarize

oral conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter and intra- office communications; photocopies; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; electronically stored information (ESI) and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English. DOCUMENTS does not include DOCUMENTS protected by the attorney-client and/or work product privileges.

9.      "COMMUNICATION" means any attempt by one or more persons or entities to communicate, including but not limited to written communications, including memoranda, letters, notes, telegrams, telexes and any other documents; oral communications including face-to-face meetings and telephone conversations; and, electronic or computerized communications, including emails (electronic mailings), Internet postings, word processing systems, magnetic tapes, disks and diskettes.

10.      "RELATE TO" or "RELATING TO" means directly or indirectly mentioning or describing, pertaining to, being connected with, or reflecting upon a stated subject matter.

## INSTRUCTIONS

1.      Produce all DOCUMENTS in your possession, custody, or control, as well as all DOCUMENTS in the possession, custody, or control of your agents, representatives, attorneys, investigators, consultants, independent contractors, or experts at least one (1) week before the deposition date reflected in the Subpoena. (As used herein, the term "DOCUMENT" means all original writings of any nature whatsoever and all copies thereof which are not identical to the original or which contain any commentary or notation that does not appear on the original, whether written, printed, recorded or graphic matter, photographic matter, or sound reproduction of any kind in any form whatsoever (including, but not limited to, reports, studies, charts, statistical compilations, letters, correspondence, telegrams, memoranda, ledgers, books of accounts, bookkeeping and accounting records, minutes, contracts, leases, notes, electronic transcriptions or tapings of conversations conducted by any means, work papers, schedules, computer printouts, computer files, e-mails, financial statements, and reports, calculations, diaries, appointment calendars or records, manuals, brochures, invoices, desk calendars, work sheets, tapes, records of telephone calls) of which you have knowledge, whether or not such documents are in YOUR possession, custody or control, and irrespective of who prepared or signed such documents. In all cases where originals and/or non-identical copies are not available, "DOCUMENTS" also means identical copies of original documents and copies of non-identical copies.)

2.      Produce each and every copy where such copy contains any commentary or notation that does not appear on the original. ESI should be produced in its Native Format, meaning the form that it is ordinarily maintained on your systems, including any metadata associated therewith. (As used herein, the term "ESI" means electronically stored information as defined in California Code of Civil Procedure section 2016.020(e), and shall include, but is not limited to, e-mails and text messages.) Should you choose to produce electronic images of paper DOCUMENTS instead of paper copies, you must product them in single-page TIFF FORMAT imaged at not less than 300 dpi resolution that shows all text and images that would be visible to

a user of the paper DOCUMENT. Color DOCUMENTS must be produced in color TIFF images. Each image should have a unique filename. If a paper DOCUMENT is more than one page, the unitization of the paper DOCUMENT and any attachments or affixed notes shall be maintained as it existed when collected, including, for example, emails or letters with their attachments.

3.　　Produce all drafts, as well as the final version, of all responsive DOCUMENTS.

4.　　Produce, where possible, originals of the DOCUMENTS requested, whether signed or unsigned, for inspection and copying.

5.　　For each DOCUMENT requested which is sought to be withheld under a claim of privilege, provide the following information:

a.　　The number of the request to which the DOCUMENT is responsive;

b.　　A statement of the basis upon which the privilege is claimed and whether or not the subject matter of the contents of the DOCUMENT is limited to legal advice or information provided for the purpose of securing legal advice;

c.　　The name and title of the sender and the name and title of the recipient of the DOCUMENT, if applicable;

d.　　The place, approximate date, and manner of recording or otherwise preparing the DOCUMENT;

e.　　The name of each person or persons participating in the preparation of the DOCUMENT; and

f.　　The name and title, if any, of each person to whom the contents of the DOCUMENT has been communicated by copy, exhibition, reading or substantial summarization.

Page 4 of 6

**DOCUMENTS TO BE PRODUCED**

**REQUEST FOR PRODUCTION NO. 1**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 2**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 3**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 4**:

YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

**REQUEST FOR PRODUCTION NO. 5**:

YOUR COMMUNICATIONS discussing SABLE.

**REQUEST FOR PRODUCTION NO. 6**:

YOUR COMMUNICATIONS discussing PPC.

**REQUEST FOR PRODUCTION NO. 7**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

**REQUEST FOR PRODUCTION NO. 8**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

**REQUEST FOR PRODUCTION NO. 9**:

All contracts and agreements YOU have with PETITIONERS.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 11**:

All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 12**:

All drafts and versions of Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 13**:

All drafts and versions of Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 14**:

All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable Offshore Corp v. California Coastal Commission et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV00974.

**ALSTON & BIRD LLP**    (213) 576-1000
Jeffrey D. Dintzer (Cal. Bar 139056); Matthew C. Wickersham (Cal. Bar No 241733);
Garrett B. Stanton (Cal. Bar No. 327775)
**350 South Grand Avenue, Suite 5100 , Los Angeles, CA 90071**
ATTORNEY FOR *(Name):*  **Real Parties in Interest**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SANTA BARBARA - ANACAPA DIVISON**

PLAINTIFF/PETITIONER:    **Center for Biological Diversity and Wishtoyo Foundation**
DEFENDANT/RESPONDENT:  **California Department of Forestry and Fire Protection, et al.**

| **PROOF OF SERVICE** | HEARING DATE: **June 24, 2025** | TIME: **9:00 AM** | CASE NUMBER: **25CV02244** |
|---|---|---|---|

1.    At the time of service I was 18 years of age and not a party to this action, and   **I served copies**  of the *(specify document(s)):*

**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS**

2.    a. Party Served:        **Richard B. Kuprewicz**

    b. Person Served:        **Same as party in item 2a.**

    c. Address:        **1783 Trilogy Parkway**
**Nipomo, CA 934446621**

3.    I served the party in item 2

    a. **By personally delivering the copies.**

        (1) on *(date):*        **6/5/2025**
        (2) at *(time):*        **7:00 AM**

4.    **Witness fees were not demanded and were not paid.**

5.    Person Serving *(name, address, and telephone No.):*

**Joseph P. Stetz III**                    f. **Fee** for service: $
Ace Attorney Service, Inc.                c. Registered California Process Server.
800 S. Figueroa Street, Suite 900         (1) Employee or independent contractor.
Los Angeles, CA 90017                     (2) Registration No.: **270**
(213) 623-3979                            (3) County : **SANTA BARBARA**

6.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Date:  **June 5, 2025**

*(signature)*

SUBP-020 [Rev. January 1,2009]                                        Order#: 2455263/POS2
**PROOF OF SERVICE**

**PROOF OF SERVICE**

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 5, 2025, I served the document(s) **REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☒  (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by UPS for overnight delivery.

☒  BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 5, 2025, at Los Angeles, California.

Heather Thai
_____
Heather Thai

**SERVICE LIST**

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:   (510) 844-7100
Fax:   (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
jfrankel@environmentaldefensecenter.org
trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:   (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:   (310) 620-5879
Email: djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

# EXHIBIT B

| | |
|---|---|
| **From:** | Dintzer, Jeffrey |
| **Sent:** | Thursday, June 12, 2025 4:42 PM |
| **To:** | Jeremy Frankel; Stanton, Garrett |
| **Cc:** | djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt; Talia Nimmer; Thai, Heather; Julie Teel Simmonds; David Pettit; Michael.dorsi@doj.ca.gov; Linda Krop; Tara Rengifo; Bolender, Brooke; Niz, Kim; tom@stolpmanlawgroup.com |
| **Subject:** | Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247) |

Ok

**From:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
**Sent:** Thursday, June 12, 2025 1:40:10 PM
**To:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>
**Cc:** djmoore@paulhastings.com <djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com <benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com <natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov <Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com <tom@stolpmanlawgroup.com>
**Subject:** RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

**EXTERNAL SENDER – Proceed with caution**

How does 3 pm sound?

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to

1

elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

-----Original Message-----
From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
Sent: Thursday, June 12, 2025 1:38 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com
Subject: Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Yes, that will work. Please send a teams or zoom link. Jeffrey.

_____
From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
Sent: Thursday, June 12, 2025 1:28:19 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com <djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com <benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com <natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov <Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com <tom@stolpmanlawgroup.com>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution
_____

2

Hi Jeffrey,

Are you available for a phone call this afternoon with myself and Tom Stolpman, cc'ed here, who will be serving as counsel for Mr. Kuprewicz? Any time before 4:30 would work for us.

Thanks,

[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.environmentaldefensecenter.org>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
Sent: Wednesday, June 11, 2025 5:07 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Thank you, I look forward to hearing from him/her tomorrow. Regards, Jeffrey.

From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 5:05 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____

We are working on obtaining outside counsel for Mr. Kuprewicz, which should be resolved some time tomorrow. Counsel for Mr. Kuprewicz will follow up with you about appropriate accommodations.

Thanks,

[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.environmentaldefensecenter.org>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original

message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>
Sent: Wednesday, June 11, 2025 3:53 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Mr. Frankel you have not answered my question, which is very simple, can Mr. Kuperwicz travel the short distance to a local hotel to attend the deposition? You will have to answer this question if you intend to seek a protective order. Please advise. If he is truly housebound then we can discuss other accommodations, but a remote deposition is not one of them. Finally, please advise whether your offices are representing Mr. Kuperwicz as his personal counsel in this matter. Regards, Jeffrey Dintzer.

From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 3:43 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds

6

<jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>;
Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo
<trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>;
Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)


EXTERNAL SENDER - Proceed with caution

_____


Hi Jeffrey,


It is my understanding that Mr. Kuprewicz is unable to travel. But he is able to participate remotely, so long as the sessions are limited to half-days.


Again, if you are not willing to make reasonable accommodations for Mr. Kuprewicz's health issues, we will seek appropriate relief.


Thanks,


[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.environmentaldefensecenter.org>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>
Sent: Wednesday, June 11, 2025 3:09 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Mr. Frankel, we have agreed to move the deposition date and are going to travel to a location near Mr. Kuprewicz's home. We are prepared to take reasonable breaks to accommodate the witness so that he can rest between questioning sessions. We are not willing to conduct the deposition remotely. Is it your representation that he cannot leave his home and come to a local hotel and give live testimony? Please advise. Regards, Jeffrey Dintzer.

From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 2:53 PM
To: Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>;
benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>;
natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>;
Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>;
Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____

Hi Garrett,

Mr. Kuprewicz is experiencing severe health issues that, among other things, prevent him from traveling. If you want to proceed with his deposition, it will have to be conducted remotely, and it will have to be

9

split up between two, 3.5 hour sessions. Otherwise, we will be forced to seek a protective order and stay the deposition until the court can hear the issue.

We see these as very reasonable requests, and I'm sure the court would as well.

Thanks,

[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.environmentaldefensecenter.org>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Sent: Tuesday, June 10, 2025 5:36 PM
To: Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Hi Talia,

We are agreeable rescheduling the deposition for July 1st to accommodate calendar conflicts. While the Code allows for remote depositions by agreement, the rules also permit "any party or attorney of record" to be "physically present at the deposition at the location of the deponent," as long as requisite notice is given. (Cal. Rules of Court, rule 3.1010(a)(3).)

As such, the deposition will be noticed to go forward in-person, and will need to take place in a single, 7-hour session as allowed by the Code since the deposition will require us to undertake substantial travel. We, of course, are agreeable to taking more frequent breaks during the deposition to accommodate the witness.

Thanks,

11

Garrett B. Stanton

Senior Associate

ALSTON & BIRD

350 South Grand Avenue, 51st Floor

Los Angeles, CA 90071

garrett.stanton@alston.com<mailto:garrett.stanton@alston.com> | t: 213.576.1151


From: Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>
Sent: Tuesday, June 10, 2025 4:54 PM
To: Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>; jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>; trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)


EXTERNAL SENDER - Proceed with caution

_____


Counsel,


Given scheduling conflicts, we would like to request that the deposition be rescheduled for the following

12

week (June 30-July 3). Additionally, because the witness is currently experiencing health issues, we would like to further request that the deposition take place remotely and that should the deposition run more than 3.5 hours, it be split into two morning sessions.

Please advise whether this is amenable. Thank you for your anticipated cooperation.

Talia Nimmer (she/her)

Staff Attorney

Climate Law Institute

Center for Biological Diversity

(213) 341-1426

[cbd.circle.tag.rgb]

The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.

_____

From: Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>
Sent: Thursday, June 5, 2025 12:32 PM
To: Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov> <Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>>; lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org> <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org> <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>

13

<trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>
<djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>>;
benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>
<benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>>;
natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>
<natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>>; Dintzer, Jeffrey
<Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt
<Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Stanton, Garrett
<Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>; Bolender, Brooke
<Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim
<Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: Center for Biological Diversity v. California Department of Forestry, et al. (Case No.
25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No.
25CV02247)


Electronically Served:

Dear Counsel:

Please see the attached documents listed documents:

Center for Biological Diversity v. California Department of Forestry, et al.

· Real Parties in Interest's Notice of Issuance of Subpoena to and Deposition of Richard B. Kuprewicz


Environmental Defense Center v. California Department of Forestry, et al.

· Real Parties in Interest's Notice of Issuance of Subpoena to and Deposition of Richard B. Kuprewicz

Thank you,

Heather L. Thai
ABassist Specialist
ALSTON & BIRD
350 South Grand Avenue

51st Floor
Los Angeles, CA 90071
+1 213 576 1017 (O)
Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>

_____

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

# EXHIBIT C

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:      (213) 576-1000
Facsimile:      (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN (SBN 237595)
benjaminhanelin@paulhastings.com
NATALIE C. Rogers (SBN 301254)
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:      (310) 620-5879
Facsimile:      (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and | Case No. 25CV02247 <br> Coordinated with Case No. 25CV02244 <br><br> Assigned for all purposes to: <br> Hon. Donna G. Geck <br><br> **REAL PARTIES IN INTEREST'S AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** <br><br> **Date**:  July 1, 2025 <br> **Time**:  9:00 a.m. <br> **Place**: 1605 Calle Joaquin, San Luis Obispo, California 93405 <br><br> Complaint Filed:       April 15, 2025 <br> Trial Date:                None set |

1

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

REAL PARTIES IN INTEREST'S AMENDED NOTICE OF
DEPOSITION OF RICHARD B. KUPREWICZ

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Real Parties in Interest Sable Offshore Cop. and Pacific Pipeline Company ("Real Parties") hereby cross-notice the deposition set forth in the Amended Deposition Subpoena for Personal Appearance and Production of Documents and Things to Richard B. Kuprewicz (the "Deponent") issued by Real Parties in the Coordinated Action (Case No. 25CV02244), attached hereto as **Exhibit 1** (the "Deposition Subpoena").

**PLEASE TAKE FURTHER NOTICE** that the deposition of Deponent will take place on **July 1, 2025** at the Marriott, 1605 Calle Joaquin, San Luis Obispo, California 93405. The deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, California 90017. The deposition will be taken before an officer authorized to administer the oath to the deponent and will be recorded by stenographic means by a court reporter certified to record depositions and authorized to administer the oath and serve as the deposition officer in the State of California.

Real Parties intend to (1) record the deposition utilizing audio and video technology; (2) use instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time; (3) use Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that, in lieu of a paper set, exhibits may be provided and displayed digitally to the deposition officer, deponent, parties, and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise of those who intend to appear via this remote participating means so that the necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the deposition.

/ / /

/ / /

DATED:   June 20, 2025

Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE

Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

# Exhibit 1

SUBP-020

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Jeffrey D. Dintzer (SBN 139056); Garrett B. Stanton (SBN 324775)<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071<br>    TELEPHONE NO.: (213) 576-1000    FAX NO. *(Optional):* (213) 576-1100<br>E-MAIL ADDRESS *(Optional):* jeffrey.dintzer@alston.com; garrett.stanton@alston.com<br>  ATTORNEY FOR *(Name):* Real Parties in Interest | ***FOR COURT USE ONLY*** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
 STREET ADDRESS: 1100 Anacapa Street
 MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
  BRANCH NAME:

PLAINTIFF/ PETITIONER: Environmental Defense Center, et al.

DEFENDANT/ RESPONDENT: California Department of Forestry and Fire Protection, et al.

| | |
|---|---|
| **DEPOSITION SUBPOENA**<br>**FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | CASE NUMBER:<br>25CV02247 |

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of deponent, if known):*
Richard B. Kuprewicz, 1783 Trilogy Pkwy, Nipomo, CA 93444-6621

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS in this action at the following date, time, and place:**

| | | |
|---|---|---|
| Date: July 1, 2025 | Time: 9:00 a.m. | Address: 1605 Calle Joaquin, San Luis Obispo, California 93405 |

  a. ☐    As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc, § 2025.230.)

  b. ☒    You are ordered to produce the documents and things described in item 3.

  c. ☒    This deposition will be recorded stenographically    ☐   through the instant visual display of testimony
      and by    ☐   audiotape    ☒  videotape.

  d. ☒    This videotape deposition is intended for possible use at trial under Code of Civil Procedure section 2025.620(d).

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents and things to be produced and any testing or sampling being sought are described as follows:
  See Attachment 3
  ☒    Continued on Attachment 3.

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:

  ☐    Continued on Attachment 4.

5. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

6. *At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence or within 150 miles of your residence if the deposition will be taken within the county of the court where the action is pending. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.*

| |
|---|
| **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.** |

Date issued: June 20, 2025

                ▶

                    (SIGNATURE OF PERSON ISSUING SUBPOENA)

Jeffrey D. Dintzer                      Attorney for Real Parties in Interest
    (TYPE OR PRINT NAME)                                (TITLE)

(Proof of service on reverse)             **Page 1 of 2**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-020 [Rev. January 1, 2009] | **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE**<br>**AND PRODUCTION OF DOCUMENTS AND THINGS** | Code of Civil Procedure §§ 2020.510,<br>2025.220, 2025.230, 2025.250, 2025.620;<br>Government Code, § 68097.1<br>*www.courts.ca.gov* |

# Attachment 3

ATTACHMENT 3

**DEFINITIONS**

1.      "YOU" and "YOUR" mean to Richard B. Kuprewicz, his agents, attorneys, and other representatives acting on his behalf.

2.      "SABLE" shall mean Sable Offshore Corp.

3.      "PPC" shall mean Pacific Pipeline Company.

4.      "PETITIONERS" shall mean Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation, as well as their agents, attorneys, and other representatives acting on their behalf

5.      "ACTION" shall mean the civil lawsuits filed by PETITIONERS entitled *Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02244, and the coordinated action entitled *Environmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02247.

6.      "SYU PIPELINE" shall refer to the Santa Ynez Unit Pipelines located in waters offshore California.

7.      "LAS FLORES PIPELINE" shall refer to the Las Flores Pipelines located in waters offshore California.

8.      "DOCUMENTS" means all data, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, including written papers or memoranda which summarize

oral conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter and intra- office communications; photocopies; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; electronically stored information (ESI) and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English. DOCUMENTS does not include DOCUMENTS protected by the attorney-client and/or work product privileges.

9.     "COMMUNICATION" means any attempt by one or more persons or entities to communicate, including but not limited to written communications, including memoranda, letters, notes, telegrams, telexes and any other documents; oral communications including face-to-face meetings and telephone conversations; and, electronic or computerized communications, including emails (electronic mailings), Internet postings, word processing systems, magnetic tapes, disks and diskettes.

10.     "RELATE TO" or "RELATING TO" means directly or indirectly mentioning or describing, pertaining to, being connected with, or reflecting upon a stated subject matter.

## INSTRUCTIONS

1.      Produce all DOCUMENTS in your possession, custody, or control, as well as all DOCUMENTS in the possession, custody, or control of your agents, representatives, attorneys, investigators, consultants, independent contractors, or experts at least one (1) week before the deposition date reflected in the Subpoena. (As used herein, the term "DOCUMENT" means all original writings of any nature whatsoever and all copies thereof which are not identical to the original or which contain any commentary or notation that does not appear on the original, whether written, printed, recorded or graphic matter, photographic matter, or sound reproduction of any kind in any form whatsoever (including, but not limited to, reports, studies, charts, statistical compilations, letters, correspondence, telegrams, memoranda, ledgers, books of accounts, bookkeeping and accounting records, minutes, contracts, leases, notes, electronic transcriptions or tapings of conversations conducted by any means, work papers, schedules, computer printouts, computer files, e-mails, financial statements, and reports, calculations, diaries, appointment calendars or records, manuals, brochures, invoices, desk calendars, work sheets, tapes, records of telephone calls) of which you have knowledge, whether or not such documents are in YOUR possession, custody or control, and irrespective of who prepared or signed such documents. In all cases where originals and/or non-identical copies are not available, "DOCUMENTS" also means identical copies of original documents and copies of non-identical copies.)

2.      Produce each and every copy where such copy contains any commentary or notation that does not appear on the original. ESI should be produced in its Native Format, meaning the form that it is ordinarily maintained on your systems, including any metadata associated therewith. (As used herein, the term "ESI" means electronically stored information as defined in California Code of Civil Procedure section 2016.020(e), and shall include, but is not limited to, e-mails and text messages.) Should you choose to produce electronic images of paper DOCUMENTS instead of paper copies, you must product them in single-page TIFF FORMAT imaged at not less than 300 dpi resolution that shows all text and images that would be visible to

a user of the paper DOCUMENT. Color DOCUMENTS must be produced in color TIFF images. Each image should have a unique filename. If a paper DOCUMENT is more than one page, the unitization of the paper DOCUMENT and any attachments or affixed notes shall be maintained as it existed when collected, including, for example, emails or letters with their attachments.

3.      Produce all drafts, as well as the final version, of all responsive DOCUMENTS.

4.      Produce, where possible, originals of the DOCUMENTS requested, whether signed or unsigned, for inspection and copying.

5.      For each DOCUMENT requested which is sought to be withheld under a claim of privilege, provide the following information:

a.      The number of the request to which the DOCUMENT is responsive;

b.      A statement of the basis upon which the privilege is claimed and whether or not the subject matter of the contents of the DOCUMENT is limited to legal advice or information provided for the purpose of securing legal advice;

c.      The name and title of the sender and the name and title of the recipient of the DOCUMENT, if applicable;

d.      The place, approximate date, and manner of recording or otherwise preparing the DOCUMENT;

e.      The name of each person or persons participating in the preparation of the DOCUMENT; and

f.      The name and title, if any, of each person to whom the contents of the DOCUMENT has been communicated by copy, exhibition, reading or substantial summarization.

**<u>DOCUMENTS TO BE PRODUCED</u>**

**<u>REQUEST FOR PRODUCTION NO. 1</u>**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**<u>REQUEST FOR PRODUCTION NO. 2</u>**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**<u>REQUEST FOR PRODUCTION NO. 3</u>**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**<u>REQUEST FOR PRODUCTION NO. 4</u>**:

YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

**<u>REQUEST FOR PRODUCTION NO. 5</u>**:

YOUR COMMUNICATIONS discussing SABLE.

**<u>REQUEST FOR PRODUCTION NO. 6</u>**:

YOUR COMMUNICATIONS discussing PPC.

**<u>REQUEST FOR PRODUCTION NO. 7</u>**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

**<u>REQUEST FOR PRODUCTION NO. 8</u>**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

**REQUEST FOR PRODUCTION NO. 9**:

All contracts and agreements YOU have with PETITIONERS.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 11**:

All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 12**:

All drafts and versions of Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 13**:

All drafts and versions of Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 14**:

All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable Offshore Corp v. California Coastal Commission et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV00974.

Page **6** of **6**

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 20, 2025, I served the document(s) AEMNDED DEPOSITION SUBPOENA **FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS TO RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

☐ (BY U.S. MAIL) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐ (BY FACSIMILE) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒ BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 20, 2025, at Los Angeles, California.

/s/ Kim Niz
Kim Niz

**SERVICE LIST**

Tom Stolpman                                    **Counsel for Robert Kuperwicz**
Stolpman Law Group                              **tom@stolpmanlawgroup.com**

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 20, 2025, I served the document(s) **REAL PARTIES IN INTEREST'S AMENDED NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☐    (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐    (BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐    (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒    BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 20, 2025, at Los Angeles, California.

/s/ *Kim Niz*
Kim Niz

**SERVICE LIST**

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
         jfrankel@environmentaldefensecenter.org
         trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
         benjaminhanelin@paulhastings.com
         natalierogers@paulhastings.com

# EXHIBIT D

| | |
|---|---|
| **From:** | Jeremy Frankel <jfrankel@environmentaldefensecenter.org> |
| **Sent:** | Tuesday, June 24, 2025 5:26 PM |
| **To:** | Dintzer, Jeffrey; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett; Daniel, Madeline; Seabolt, Dan; Vreeland, Shannon; Rusek, Vickie; Oberst, Brett; Brown, Frankie |
| **Cc:** | Linda Krop; Tara Rengifo; Julie Teel Simmonds; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov |
| **Subject:** | RE: Re Mr. Kuprewicz's Deposition |
| **Attachments:** | 2025_06_24_Objection to Deposition of Richard Kuprewicz.pdf |

**EXTERNAL SENDER – Proceed with caution**

Hi Jeffrey,

Again, our previous discussions were borne of an obvious and immediate need to reschedule the date of the proposed deposition, and to inform you of Mr. Kuprewicz's ongoing health issues. At no time did Petitioners waive their right to object to Mr. Kuprewicz's deposition on the grounds that it exceeds the scope of permissible discovery, which our ongoing research has since revealed.

We respectfully disagree with your below contentions, including that it is unreasonable or prejudicial to quash an improper deposition subpoena/notice. Our review of the law indicates that, under the circumstances, Real Parties are not entitled to take Mr. Kuprewicz's deposition at this time. Accordingly, should Real Parties' not withdraw their deposition subpoena/notices by 5:00 p.m. tomorrow, we will proceed with a motion to quash.

Attached please find the EDC Petitioners' formal objection to Real Parties deposition subpoena and cross-notice of deposition. A copy is also being served by mail.

Thanks,



**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org



We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby

notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

---

**From:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
**Sent:** Tuesday, June 24, 2025 3:51 PM
**To:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; Daniel, Madeline <Madeline.Daniel@alston.com>; Seabolt, Dan <Dan.Seabolt@alston.com>; Vreeland, Shannon <Shannon.Vreeland@alston.com>; Rusek, Vickie <Vickie.Rusek@alston.com>; Oberst, Brett <Brett.Oberst@alston.com>; Brown, Frankie <Frankie.Brown@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov
**Subject:** Re Mr. Kuprewicz's Deposition

Mr. Frankel,

It is true that we noticed the deposition for June 24th, and we moved the deposition date to July 1st to accommodate the schedules of counsel, *at counsel's request*.  In that request, there was no objection for the deposition going forward, and that would have been the appropriate time to raise such objection.  Such would have afforded the Real Parties with an opportunity to have the court compel the deposition in due time before Real Parties' opposition will be due on July 7th.  On June 12th, we discussed Real Parties' need to take the deposition in time for our July 7th opposition, which is why we agreed upon July 1st.  *At no time did any counsel object to the deposition going forward during this discussion either*.  On the call, we all reached an agreement regarding the date, time, and location of the deposition to accommodate the witness.  Mr. Stolpman further agreed to accept service on behalf of his client.  Why would we discuss all of these topics and agree on them only to "make any deposition less burdensome" for Mr. Kuprewicz but not agree on a deposition going forward?  That logically makes no sense.  And based on the parties' agreement, Real Parties have reasonably had to incur necessary costs to reserve space for the deposition and for travel.

Further, waiting to move to quash the deposition only just before Real Parties' opposition is due is highly prejudicial for obvious reasons.  Such prejudice cannot simply ensue because  "it has come to [y]our attention that Real Parties are not entitled to proceed with Mr. Kuprewicz's deposition at this time" – offering no basis to prevent necessary cross-examination of evidence offered in support of an application for preliminary injunction that will greatly impact Real Parties' rights.  The parties reached a clear agreement on June 12th to proceed with the deposition, and the law does not support your newfound position. (See *In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 ["A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses."]; 5 California Trial Guide § 100.20 [discussing depositions are appropriate for use in pretrial proceedings "such as a motion for a preliminary injunction"]; *Fleishman v. Superior Court* (2002)102 Cal. App. 4th 350, 356 ["Before issuing a preliminary injunction, the trial court must 'carefully weigh the evidence and decide whether the facts require . . . such relief. The court evaluates the credibility of witnesses and makes factual findings on disputed evidence."]; see also *St. Mary Med. Ctr. v. Sup.Ct. (Mennella)* (1996) 50 Cal.App.4th 1531, 1539 [holding  § 2034.010 et seq. procedure for deposing expert witnesses does not bar earlier depositions of experts whose opinions are filed in support of or in opposition to a motion for summary judgment or summary adjudication].)

Preventing the deposition of Mr. Kuprewicz, without removing his declaration from the record, is highly unreasonable, highly prejudicial to Real Parties, violates their due process rights, and certainly serves as a strong basis for sanctions. We expect your declarant to appear at his deposition on July 1, 2025, as noticed.  Regards, Jeffrey.

Jeffrey Dintzer

2

ALSTON & BIRD
350 S. Grand Avenue, 51st Floor
Los Angeles, CA 90071
Office:  213-576-1063
Cell: 213-393-8664

---

**From:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
**Sent:** Tuesday, June 24, 2025 10:20 AM
**To:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

**EXTERNAL SENDER – Proceed with caution**

---

Hi Jeffrey,

Thank you for your response.

We certainly appreciate your willingness to move the deposition date, but the only reason it was moved was because you unilaterally scheduled the deposition without consulting counsel for petitioners, and you noticed it for a date when counsel for CBD and Wishtoyo was unavailable. The only reason the date was moved was to accommodate counsel's schedule.

When we previously met and conferred, we did so to discuss a different issue: Mr. Kuprewicz's severe health issues, and possible accommodations for him to make any deposition less burdensome. Any "agreement" we reached at our previous meeting was strictly related to that issue. Notably, we are not seeking to quash the subpoena on the basis of Mr. Kuprewicz's health issues.

We are not proceeding in bad faith. This is an unusual situation, and based on our continuing research, it has come to our attention that Real Parties are not entitled to proceed with Mr. Kuprewicz's deposition at this time. Because, as explained in our previous email, the deposition exceeds the scope of permissible discovery, it remains reasonable for us to pursue a motion to quash, regardless of when the deposition was re-noticed for.

Moreover, it's not clear to us how pushing the deposition to July 1 – which, again, was necessary to accommodate counsel's schedule – resulted in any prejudice to Real Parties.  We ultimately reached out to meet and confer *before* the date Mr. Kuprewicz's deposition was initially noticed for (June 24), and our formal objections will be served imminently.

Please let us know what times you are available today for a call.

Thanks,

3



**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org



We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

**From:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
**Sent:** Monday, June 23, 2025 5:29 PM
**To:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; michael.dorsi@doj.ca.gov; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

Mr. Frankel, we are happy to meet and confer with you tomorrow over the deposition of Mr. Kuprewicz.  But please know that if you file a motion to block the deposition from going forward, we will seek monetary sanctions against you. We agreed to move Mr. Kuprewicz's deposition to July 1 in good faith, with the understanding after *reaching an agreement with you and his independent counsel, Mr. Stolpman,* that deposition would proceed on July 1. The record reflects as much.

You never once mentioned any objection to the taking of his deposition before we agreed to move the deposition to July 1st, knowing our opposition is due on July 7th after a holiday weekend. The email below is the first we have heard of any objection to proceeding with this deposition as scheduled.  In fact, we met and conferred on June 12th, and all agreed that the deposition would proceed on July 1st at the location we selected near the witnesses' residence to accommodate his travel restrictions.  Had we been advised of such an objection, which could have been made at that time, we would not have moved the date to accommodate you and the witness.

Requesting a delay in the deposition of a declarant supporting an application for preliminary injunction so you can have additional time to file a motion for protective order or to quash the subpoena without advising opposing counsel of your intentions is bad faith and sanctionable.  Jeffrey

4

**From:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
**Sent:** Monday, June 23, 2025 4:57 PM
**To:** djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>; michael.dorsi@doj.ca.gov; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

**EXTERNAL SENDER – Proceed with caution**

Counsel,

After further consideration, we believe that Real Parties' attempt to depose Mr. Kuprewicz – Petitioners' retained expert consultant – exceeds the scope of permissible discovery. Generally, parties are not entitled to engage in expert discovery (including depositions) unless and until experts have been designated pursuant to CCP § 2034.210. (*See, e.g., County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57 (recognizing that information related to an expert's identity, qualifications, or opinion(s) is not discoverable before designation).) The only recognized exception to that rule is limited to summary judgment proceedings and is inapplicable here. (*See St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1540-41.)

Accordingly, at this point, petitioners in both 25CV02244 and 25CV02247 intend to file motions to quash Mr. Kuprewicz's deposition subpoena and related notices of deposition. Filing the motions will automatically stay Mr. Kuprewicz's deposition until they can be heard. (CCP § 2025.410(b).)

That said, we welcome the opportunity to first attempt to resolve this informally. Please let us know your availability to meet and confer in the next few days.

(This effort to meet and confer is joined by counsel for petitioners in 25CV02244, cc'ed here.)

Thanks,



**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org



We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

---

**From:** Niz, Kim <Kim.Niz@alston.com>
**Sent:** Friday, June 20, 2025 4:41 PM
**To:** Linda Krop <lkrop@environmentaldefensecenter.org>; Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; michael.dorsi@doj.ca.gov; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org; tnimmer@biologicaldiversity.or
**Cc:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>
**Subject:** Service Docs - Case Nos.: 25CV02244 and 25CV02247

**Electronic Service:**

Dear Counsel,

Please find attached electronic service documents:

- EDC v. Sable - Real Party in Interest's Amended Cross-Notice of Deposition of Richard B. Kuprewicz
- CBD v. Sable - Real Party in Interest's Amended Cross-Notice of Deposition of Richard B. Kuprewicz

Thank you,


Kim S. Niz | Legal Administrative Assistant
**ALSTON & BIRD**
Jeffrey D. Dintzer | Brett Oberst | Krista Hernandez
Jeff Carlin | Matthew C. Wickersham | Garrett Stanton
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Direct:  213 576 1096 | Office:  213 576 1000
Kim.Niz@alston.com

---

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

6

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA — ANACAPA DIVISION

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and <br><br> SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, <br><br> Real Parties in Interest. | Case No.: 25CV02247 <br><br> **PETITIONERS AND PLAINTIFFS' OBJECTION TO REAL PARTIES' DEPOSITION SUBPOENA OF RICHARD B. KUPREWICZ AND AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** <br><br> Dept.:    4 <br> Judge:   Honorable Donna D. Geck <br><br> Petition Filed: April 15, 2025 <br> Trial: None Set |

Pursuant to California Code of Civil Procedure section 2025.010 et seq., Petitioner and Plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (collectively, "Petitioners") object to Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company's (collectively, "Real Parties") Deposition Subpoena of Richard B. Kuprewicz (the "Subpoena"), Petitioners' consultant in this matter, and Amended Cross-Notice of Deposition of Richard B. Kuprewicz (the "Notice") as follows:

## GENERAL OBJECTIONS

1. Petitioners object to the Subpoena and Notice on the grounds that they exceed the scope of permissible discovery. Mr. Kuprewicz is Petitioners' retained expert consultant in this matter. While Petitioners filed a declaration from Mr. Kuprewicz in support of their ex parte application for a stay, temporary restraining order, and order to show cause, Mr. Kuprewicz has not been designated as an expert pursuant to Code of Civil Procedure section 2034.210 *et seq*. Unless and until he is so designated, Real Parties are precluded from deposing Mr. Kuprewicz or subpoenaing his records. (*County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57 (recognizing that information related to an expert's identity, qualifications, or opinion(s) is not discoverable before designation and therefore reversing a trial court's order compelling expert testimony at a deposition).) Moreover, even assuming, arguendo, that Real Parties are not summarily precluded from deposing Mr. Kuprewicz in light of Petitioners' reliance on his declaration, his deposition would only be appropriate upon an affirmative showing by Real Parties of "objective facts . . . which create a significant question regarding the validity of [Mr. Kuprewicz's declaration] which, if successfully pursued, will impeach the foundational basis of the [declaration]." (*St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1540-41.) Real Parties have not provided any such facts, and Petitioners are aware of none. Lastly, even if Real Parties were to make the requisite showing of such facts, any deposition of Mr. Kuprewicz must be limited to inquiring into the foundation of the opinions expressed in his declaration. (*See id.*) The Subpoena and Notice are not so limited.

2. Petitioners object to the Subpoena and Notice on the grounds that they seek to elicit information protected by the attorney-client privilege and/or information that constitutes attorney work

product. As noted, Mr. Kuprewicz is Petitioners' consultant in this matter, but he has not been designated as an expert pursuant to Code of Civil Procedure section 2034.210 *et seq*. Thus, all communications by and between Petitioners, their attorneys, and Mr. Kuprewicz remain privileged. (*DeLuca v. State Fish Co., Inc.* (2013) 217 Cal.App.4th 671, 688 ("[T]he attorney-client privilege . . . clearly includes communications to a consulting expert.").) Likewise, any documents, opinions, or other information prepared by Mr. Kuprewicz at Petitioners' request and not already disclosed constitute attorney work product. (*See id.*) Moreover, save for Mr. Kuprewicz's declaration, all of Mr. Kuprewicz's services to date have been rendered purely in an advisory capacity; accordingly, even if Petitioners' *were* to designate Mr. Kuprewicz as an expert, communications with Mr. Kuprewicz and information developed by Mr. Kuprewicz at Petitioners' request would remain protected as attorney work product. (*National Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476, 542-43 (holding that any information or opinions rendered by an expert in an advisory capacity remain subject to the work product limitation on discovery even after expert designation).)

**OBJECTIONS TO REQUESTS FOR PRODUCTION**

1. **REQUEST FOR PRODUCTION NO. 1:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

2. **REQUEST FOR PRODUCTION NO. 2:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

to YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

3. **REQUEST FOR PRODUCTION NO. 3:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

4. **REQUEST FOR PRODUCTION NO. 4:**

Request: YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

5. **REQUEST FOR PRODUCTION NO. 5:**

Request: YOUR COMMUNICATIONS discussing SABLE.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it is not reasonably particularized.

- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

6. **REQUEST FOR PRODUCTION NO. 6:**

Request: YOUR COMMUNICATIONS discussing PPC.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it is not reasonably particularized.

- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

7. **REQUEST FOR PRODUCTION NO. 7:**

Request: All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

8. **REQUEST FOR PRODUCTION NO. 8:**

Request: All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

9. **REQUEST FOR PRODUCTION NO. 9:**

Request: All contracts and agreements YOU have with PETITIONERS.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

10. **REQUEST FOR PRODUCTION NO. 10:**

Request: DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

11. **REQUEST FOR PRODUCTION NO. 11:**

Request: All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work

product, as set forth in General Objection 2 above.

12. **REQUEST FOR PRODUCTION NO. 12:**

Request: All drafts and versions of Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

13. **REQUEST FOR PRODUCTION NO. 13:**

Request: All drafts and versions of Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

14. **REQUEST FOR PRODUCTION NO. 14:**

Request: All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable Offshore Corp. v. California Coastal Commission et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV00974.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

Dated: June 24, 2025                    Respectfully

Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On June 24, 2025, I served the above document(s) described as **PETITIONERS AND PLAINTIFFS' OBJECTION TO REAL PARTIES' DEPOSITION SUBPOENA OF RICAHRD B. KUPREWICZ AND AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒    **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

☒    **By United States mail.** On the date above, I enclosed a copy of the document(s) described above in a sealed envelope or package addressed to the recipients designated in the attached Service List, postage fully prepaid, with the United States Postal Service at Santa Barbara, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 24, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

**SERVICE LIST**

Michael S. Dorsi
Michael.Dorsi@doj.ca.gov
California Attorney General's Office
55 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

ATTORNEY FOR
RESPONDENTS/DEFENDANTS
California Department of Forestry and Fire
Protection, Office of the State Fire Marshal; and
Daniel Berlant, in his official capacity as State Fire
Marshal

Duncan Joseph Moore
djmoore@paulhastings.com
Benjamin J. Hanelin
benjaminhanelin@paulhastings.com
Natalie C. Rogers
natalierogers@paulhastings.com
PAUL HASTINGS, LLP
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp. and Pacific Pipeline
Company

Jeffrey D. Dintzer
Jeffrey.dintzer@alston.com
Matthew C. Wickersham
Matt.wickersham@alston.com
Garrett B. Stanton
Garrett.stanton@alston.com
ALSTON & BIRD LLP
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp. and Pacific Pipeline
Company

# EXHIBIT E

| | |
|---|---|
| **From:** | Stanton, Garrett |
| **Sent:** | Friday, June 27, 2025 9:46 AM |
| **To:** | jfrankel@environmentaldefensecenter.org; Linda Krop; Tara Rengifo; Julie Teel Simmonds; dpettit@biologicaldiversity.org; Talia Nimmer; Michael S Dorsi; tom@stolpmanlawgroup.com |
| **Cc:** | Dintzer, Jeffrey; Rusek, Vickie; Oberst, Brett; Daniel, Madeline; Moore, DJ; Hanelin, Benjamin J.; Rogers, Natalie C. |
| **Subject:** | Case Nos. 25CV02244 and 25CV02247 |

Dear Counsel,

**PLEASE TAKE NOTICE THAT** on June 30, 2025 at 8:30 a.m., in Department 4 of the California Superior Court for the County of Santa Barbara, Anacapa Division, located at 1100 Anacapa Street, Santa Barbara, California 93121-1107, before the honorable Donna D. Geck, Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company will apply to the Court *ex parte* for an order compelling the deposition of Robert Kuprewicz, or in the alternative, shortening time to hear Real Parties' motion to compel deposition of Robert Kuprewicz, or in the further alternative, striking the declaration of Robert Kuprewicz in support of Plaintiffs' pending application for preliminary injunction.

**Please let us know whether any of the parties intend to oppose this application so we can advise the court.**

Thank you for your attention to this matter.

Garrett B. Stanton
Senior Associate
**ALSTON & BIRD**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
garrett.stanton@alston.com | t: 213.576.1151

1

**SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA BARBARA**

Dated and Entered:   06/30/2025                                    Time:   8:30 AM
Judicial Officer:        Donna D Geck
Deputy Clerk:           Maria Vidal                                    Dept:   SB Dept 4
Bailiff/Court Officer:  Vincenzo Peluso                          Case No: 25CV02247
Court Reporter:        FTR

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

| | |
|---|---|
| Jeremy Frankel | Petitioner's Attorney |
| Michael Dorsi | Respondent's Attorney (via Zoom) |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Lisa Garcia | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |

---

**NATURE OF PROCEEDINGS***:  **Real Parties In Interest Ex Parte Application For An Order Requiring Mr. Kuprewicz To Appear At Deposition Or, In The Alternative, For An Order Shortening Time To Hear Motion To Compel Deposition And Request For Sanctions Or, In The Alternative To Strike the Declaration of Mr. Kuprewicz**

Counsel presented oral argument.

The Court reserved the ruling on continuing the OSC re Preliminary Injunction to Wednesday, July 2, 2025 at 8:30 AM in Dept 4.

DARREL E. PARKER, EXECUTIVE OFFICER              Minutes Prepared by:

                                                                        _____  , Deputy
                                                                                    Maria Vidal

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
6/30/2025 8:00 AM
By: Narzralli Baksh , Deputy

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,<br><br>                    Petitioners and Plaintiffs,<br><br>     vs.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,<br><br>                    Respondents and Defendants,<br><br>     and<br><br>SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,<br><br>                    Real Parties in Interest. | Case No.: 25CV02247<br><br>**PETITIONERS AND PLAINTIFFS' OPPOSITION TO REAL PARTIES' EX PARTE APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION AND REQUEST FOR SANCTIONS OR, IN THE ALTERNATIVE, TO STRIKE THE DECLARATION OF MR. KUPREWICZ**<br><br>[*Filed concurrently with Declaration of Jeremy M. Frankel; Declaration of Richard B. Kuprewicz*]<br><br>Date:     June 30, 2025<br>Time:    8:30 a.m.<br>Dept.:    4<br>Judge:   Honorable Donna D. Geck<br><br>Action Filed: April 15, 2025<br>Trial: None Set |

**TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................... 3

I.      INTRODUCTION ................................................................................................... 4

II.     FACTUAL AND PROCEDURAL BACKGROUND............................................... 5

   A.   Real Parties' Efforts to Restart the Defective Las Flores Pipeline System ............... 5

   B.   Petitioners' Ex Parte Application for Preliminary Relief and Order to Show Cause ............... 5

   C.   Real Parties' Discovery Attempts and Petitioners' Efforts to Meet and Confer ............... 6

III.    APPLICABALE LAW AND ARGUMENT ............................................................. 8

   A.   Expert Discovery is Generally Prohibited before Experts are Formally Designated, and the Only Exception to that Rule is Plainly Inapplicable Here. ............... 8

   B.   Real Parties' Assertion that They are Entitled to Depose Mr. Kuprewicz, under a Purported "Fundamental Right to Cross-Examine," is Entirely Unsupported ............... 11

   C.   Additional, Equitable Factors Require that Real Parties' Application be Denied............... 13

   D.   Further Developments with Mr. Kuprewicz's Health Preclude His Deposition ............... 14

IV.     CONCLUSION...................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52 ........................................................ 12

*County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446 ...................................... 4, 8, 9, 13

*DeLuca v. State Fish Co., Inc.* (2013) 217 Cal.App.4th 671 ........................................................... 9

*Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350 ........................................................... 12

*Fost v. Marin County Superior Court* (2000) 80 Cal.App.4th 724 ................................................ 12

*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285 ......................................................... 13

*In re Crystal J.* (1993) 12 Cal.App.4th 407 ...................................................................... 12

*In re Marriage of Swain* (2018) 21 Cal.App.5th 830 ............................................................... 12

*St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531 ..................................... passim

**Statutes**

Code Civ. Proc. § 2025.290 ............................................................................................ 15

Code of Civ. Proc. § 2034.010, *et seq.* ............................................................................. 4

Code Civ. Proc. § 2034.210 ............................................................................................ 8

Code Civ. Proc. § 437c ................................................................................................. 10

## I.     **<u>INTRODUCTION</u>**

Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Real Parties") claim, without any supporting authority, that they have an unfettered right to depose Richard B. Kuprewicz, Petitioners' retained expert consultant in this matter. They also levy all manner of accusations against Petitioners, mischaracterizing their efforts to meet and confer as a "ruse" (Real Parties' Ex Parte Application, p. 4), their timely objections to Mr. Kuprewicz's deposition as the "reneg[ing]" of an agreement (*id*. at 7), and their June 26, 2025, Motion to Quash as intentionally delayed "gamesmanship" (*id.* at 7, 9). However, as explained in Petitioners' Motion to Quash — and reiterated here — Real Parties' proposed deposition plainly exceeds the scope of permissible discovery, and Petitioners have proceeded reasonably in contesting it. Moreover, the deposition of Mr. Kuprewicz would be unnecessary, manifestly unjust to Petitioners, and potentially set the stage for the upcoming July 18, 2025, hearing to devolve into a "mini-trial" of the ultimate issues in this case. Thus, Real Parties' Ex Parte Application should be denied.

While Petitioners filed a declaration from Mr. Kuprewicz in support of their ex parte application for a stay, temporary restraining order, and order to show cause, Mr. Kuprewicz has not been designated as an expert in this matter pursuant to Code of Civil Procedure section 2034.010, *et seq*. Unless and until he is so designated, Real Parties are precluded from deposing him. (*County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57 (recognizing that expert discovery is generally "not appropriate until and unless there is such a designation," and therefore reversing a trial court's order compelling expert testimony at a deposition).)

The *only* recognized exception to this standard prohibition is limited to summary judgment proceedings. (*See St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531.) However, even assuming, arguendo, that Real Parties could invoke that exception here, Mr. Kuprewicz's deposition would only be appropriate upon an affirmative showing by Real Parties of "objective facts . . . which create a significant question regarding the validity of [Mr. Kuprewicz's declaration] which, if successfully pursued, will impeach the foundational basis of the [declaration]." (*Id.* at 1540-41.) Real Parties have not provided any such facts, and Petitioners are aware of none.

Lastly, aside from unnecessarily burdening Petitioners and Mr. Kuprewicz, who is currently

experiencing severe health issues, Real Parties' attempt to depose Mr. Kuprewicz seeks to impermissibly tip the scales in Real Parties' favor. In the likely event that Real Parties submit expert declarations in support of their opposition to Petitioners' application for preliminary relief, Petitioners, under the current briefing schedule, will not have an equal opportunity to depose Real Parties' experts.

Accordingly, Petitioners respectfully request that this Court deny Real Parties' Ex Parte Application and, further, quash Mr. Kuprewicz's deposition subpoena and notice, as requested in Petitioners' Motion to Quash. Alternatively, should the Court find that the limited exception in *St. Mary* applies here, and that Mr. Kuprewicz's deposition is otherwise appropriate, Petitioners request that the Court issue an order appropriately limiting the scope of Mr. Kuprewicz's deposition and continuing the July 18, 2025, hearing to allow time for Petitioners to depose Real Parties' experts.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Real Parties' Efforts to Restart the Defective Las Flores Pipeline System

This case arises from Real Parties' efforts to restart the Las Flores Pipeline System — a defective pipeline system that ruptured in 2015 at Refugio State Beach, causing one of the worst oil disasters in California history.

As was discovered after the spill, the pipeline system suffers from a critical design defect that leaves it vulnerable to pervasive corrosion and, consequently, another catastrophic rupture. Importantly, the 120-mile long pipeline system does not just threaten coastal resources; it passes through major sources of water supply, renowned parks and ecological reserves, and a populated suburban neighborhood in Buellton, California, complete with schools, parks, and dozens of residential homes.

Rather than replacing the pipeline system or retrofitting it with an effective means of corrosion prevention, Real Parties intend to simply restart the existing pipeline system under State Waivers issued by the Office of the State Fire Marshal (OSFM). The State Waivers, which excuse Real Parties from complying with critical corrosion prevention requirements, were approved without a public process, environmental review, or any analysis as to why the pipeline system can be safely restarted. The Petition and Complaint on file in this action challenges these waivers.

### B.    Petitioners' Ex Parte Application for Preliminary Relief and Order to Show Cause

When Real Parties began publicly claiming that they were on the precipice of restarting the

defective Las Flores Pipeline System, Petitioners applied ex parte for an administrative stay, a temporary restraining order, and a preliminary injunction ("Petitioners' Ex Parte Application") to prevent Real Parties from doing so. In support of Petitioners' Ex Parte Application, Petitioners submitted a declaration from Mr. Kuprewicz, Petitioners' retained expert consultant in this matter. Mr. Kuprewicz's declaration, and the two reports attached thereto, explain the systemic issues with the defective pipeline system, why the State Waivers do not ensure that the pipeline system is safe to operate, and why the pipeline system continues to pose a significant threat of rupturing.

On June 3, 2025, the Court granted Petitioners' request for a temporary restraining order, and it issued an order to show cause why a preliminary injunction and/or stay should not issue (the "OSC"). The hearing on the OSC is set for July 18, 2025. The Court ordered that briefing be completed per code, meaning that Real Parties' opposition is due by July 7, 2025, and Petitioners' reply by July 11, 2025.

**C.     Real Parties' Discovery Attempts and Petitioners' Efforts to Meet and Confer**

On June 5, 2025, counsel for Real Parties served Mr. Kuprewicz with a deposition subpoena for personal appearance and production of documents and things. (Declaration of Jeremy M. Frankel, ¶ 6 [hereinafter "Frankel Declaration"].)

That same day, counsel for Real Parties served Petitioners in the related case *Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.*, 25CV0244 (the "CBD Petitioners") with a notice of deposition of Mr. Kuprewicz. (Frankel Declaration, ¶ 6.) Real Parties similarly served Petitioners in this case with a "cross-notice" of deposition, noticing Mr. Kuprewicz's deposition for June 24, 2025. (Frankel Declaration, ¶ 6.) A true and accurate copy of the cross-notice that Petitioners received, with Mr. Kuprewicz's subpoena attached, is attached as **Exhibit A** to the Declaration of Jeremy M. Frankel, filed herewith.

Because counsel for Real Parties had unilaterally scheduled the deposition and were seemingly unaware of Mr. Kuprewicz's substantial health issues, there was an immediate need to meet and confer regarding the deposition date and reasonable accommodations for Mr. Kuprewicz. (Frankel Declaration, ¶ 7.) Thus, on June 10, 2025, counsel for the CBD Petitioners requested that the deposition be moved to July 1, 2025, to accommodate their schedule. (Frankel Declaration, ¶ 7.) Counsel also asked for reasonable accommodations for Mr. Kuprewicz, including that the deposition take place remotely, and

that it be split into two, 3.5-hour sessions. (Frankel Declaration, ¶ 7; *see also* Declaration of Richard B. Kuprewicz, ¶ 5 [hereinafter "Kuprewicz Declaration"].)

Counsel for Real Parties agreed to move the deposition to July 1, 2025, but refused the requests to accommodate Mr. Kuprewicz's health issues. (Frankel Declaration, ¶ 7.) When undersigned counsel for Petitioners clarified that Mr. Kuprewicz was unable to travel, counsel for Real Parties continued to demand that the deposition proceed in-person. (Frankel Declaration, ¶ 7.) A true and accurate copy of this email exchange is attached as **Exhibit B** to the Declaration of Jeremy M. Frankel, filed herewith.

Counsel for Petitioners then secured outside counsel for Mr. Kuprewicz, Mr. Thomas Stolpman, and set up a teleconference meeting with counsel for Real Parties to discuss Mr. Kuprewicz's health issues and possible accommodations for him. (Frankel Declaration, ¶ 8.) At the June 12, 2025, meeting, Mr. Stolpman volunteered to drive Mr. Kuprewicz to the deposition, but warned that his various health conditions could prevent him from meaningfully participating. (Frankel Declaration, ¶ 8; *see also* Kuprewicz Declaration, ¶¶ 5, 6.) Mr. Stolpman also informed Real Parties that, in response to some concerning neurological symptoms, Mr. Kuprewicz's doctor had ordered imaging for his brain, and an MRI was scheduled for June 23, 2025. (Frankel Declaration, ¶ 8; *see also* Kuprewicz Declaration, ¶ 6.) Importantly, while the parties negotiated the terms of a deposition should one proceed, at no point did counsel for Petitioners agree to produce Mr. Kuprewicz. (Frankel Declaration, ¶ 8.) Nor did counsel waive any right to contest the propriety of his potential deposition. (Frankel Declaration, ¶ 8.)

On June 20, 2025, counsel for Real Parties issued Mr. Kuprewicz a new deposition subpoena for personal appearance and production of documents and things (the "Subpoena"). (Frankel Declaration, ¶ 9.) Also on June 20, 2025, counsel for Real Parties served Petitioners with an amended cross-notice of deposition, noticing Mr. Kuprewicz's deposition for July 1, 2025 (the "Notice"). (Frankel Declaration, ¶ 9.) A true and accurate copy of the Notice, with the Subpoena attached, is attached as **Exhibit C** to the Declaration of Jeremy M. Frankel, filed herewith.

The next business day, undersigned counsel for Petitioners reached out to counsel for Real Parties to explain that their continuing research had revealed Real Parties are not currently entitled to depose Mr. Kuprewicz, and offered to meet and confer regarding their intent to bring a Motion to Quash. (Frankel Declaration, ¶ 10.) Opposing counsel accused Petitioners of acting in bad faith and in a

sanctionable fashion, and asserted they would not have moved the deposition date if they had been aware of Petitioners' objection. (Frankel Declaration, ¶ 10.) The undersigned counsel explained that (1) the only reason the deposition was moved was because Real Parties had unilaterally noticed it for a time when Petitioners' cocounsel was unavailable; (2) while the parties had discussed accommodations for Mr. Kuprewicz's health issues, at no time did Petitioners wave their right to object to his deposition; (3) Petitioners ultimately raised the objection before the date Mr. Kuprewicz's deposition was initially noticed for; and (4) this is an unusual situation involving premature expert discovery and, based on counsels' continuing research, it had become apparent that the proposed deposition exceeded the scope of permissible discovery. (Frankel Declaration, ¶ 10.) A true and accurate copy of this email exchange is attached as **Exhibit D** to the Declaration of Jeremy M. Frankel, filed herewith.

The parties were unable to resolve the issue informally, necessitating that Petitioners bring said Motion to Quash, which was filed on June 26, 2025. (Frankel Declaration, ¶ 11.)  Petitioners also properly served a formal objection to the deposition in the time required by the code (*see* Code Civ. Proc. § 2025.410(a)), a true and accurate copy of which is attached as **Exhibit E** to the Declaration of Jeremy M. Frankel, filed herewith. (Frankel Declaration, ¶ 11.)

### III.  <u>APPLICABALE LAW AND ARGUMENT</u>

**A.    Expert Discovery is Generally Prohibited before Experts are Formally Designated, and the Only Exception to that Rule is Plainly Inapplicable Here.**

1.    <u>Premature Expert Discovery is Generally Prohibited</u>

Code of Civil Procedure section 2034.210, *et seq.* provides "a carefully crafted legislative scheme for the regulation of discovery of the identity, qualifications[,] and opinions of expert witnesses," including "the times and conditions for such discovery." (*County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57.)

As set forth in Section 2034.210, the door to expert discovery opens only when a party formally makes a demand to exchange expert witness information, and the parties subsequently designate expert witnesses for trial. (*See* Code Civ. Proc. § 2034.210(a), (b).) Expert discovery is generally "not appropriate until and unless there is such a designation." (*County of Los Angeles*, 224 Cal.App.3d at 1456; *see also id.* at 1456-57 (recognizing that information related to an expert's identity, qualifications,

or opinion(s) is not discoverable before designation and therefore reversing a trial court's order compelling expert testimony at a deposition).)

This limitation on expert discovery — of which Real Parties run afoul — exists for good reason. As the court in *County of Los Angeles* explained, there are at least four substantial justifications for strictly controlling pretrial expert discovery:

> In the first place, access to the conclusions of an adversary's experts often provides strong clues to the theories, thoughts, and tactics of opposing counsel, . . . [¶] Second, a limitless right to ascertain and probe the views of opposing experts could easily lead to an expensive and delay-producing round of discovery that would tend to feed on itself: . . . [¶] Third, unrestricted discovery as to an adversary's experts enables "the stupid or lazy practitioners" to sit back secure in the knowledge that at the appropriate time they will be able "to 'ride free' on the opponent's industry." Since 1963, recognition of this "free ride" as a discovery evil has been articulated in the Discovery Act itself: "It is the policy of the state . . . to prevent attorneys from taking undue advantage of their adversary's industry and efforts." Finally, . . . discovery as of right with respect to an adversary's experts is bound to have the dreaded "chilling effect" on the willingness of attorneys to use objective, fair-minded consultants who will honestly and frankly point out the weaknesses and deficiencies of their side.

(*Id.* at 1457 (quoting 2 Modern California Discovery § 13.12, pp. 250-51(4th ed. 1988)).) On top of that, premature expert discovery would appear to be in direct tension with protections afforded by the attorney client privilege and attorney work product doctrine. (*See DeLuca v. State Fish Co., Inc.* (2013) 217 Cal.App.4th 671, 688 (a party's communications with their *consulting* expert, and any information prepared by the expert at the party's request, is protected by attorney-client privilege and/or the attorney work product doctrine).)

That the parties here have not designated experts pursuant to Section 2034.210 is undisputed. Accordingly, Real Parties' Notice and Subpoena exceed the scope of permissible discovery, and they expose Petitioners to the potential abuses of premature expert discovery described in *County of Los Angeles*.

2.   *St. Mary's* Limited Exception for Summary Judgment Proceedings Is Inapplicable

There is only one recognized exception to the above-described prohibition on premature expert discovery, which originates from *St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531. However, this limited exception has only been held to apply in the context of summary judgment proceedings and, as explained below, is otherwise inapplicable here.

*St. Mary* involved a medical malpractice action that defendants sought to resolve on summary judgment. In response to defendants' summary judgment motion, plaintiffs produced a declaration from a medical expert whom they had retained but not yet designated as an expert pursuant to the discovery code. (*Id.* at 1534-35.) The expert's declaration and opinion were based on the premise that defendants — two medical doctors — had improperly performed a particular procedure. (*Id.* at 1534.) However, according to defendants, one of the doctors was not actually involved in that procedure, raising "a serious question . . . about whether or not [the expert's] declaration may have been factually incorrect." (*Id.* at 1540.) On that basis, defendants moved to compel the expert's deposition. (*Id.* at 1534-35.). The trial court denied the motion, citing the standard prohibition on premature expert discovery. (*Id.* at 1536.) Defendants appealed. (*Id.* at 1537.)

The appellate court acknowledged that, generally, the standard way for defendants to proceed would not be by deposing plaintiffs' expert, but by presenting a reply declaration challenging the factual foundation of the expert's opinion. (*See id.* at 1540.) However, the court recognized the unique shortcomings of that approach in the summary judgment context. (*Id.*) As the court pointed out, "[w]hile counsel could have presented a reply declaration . . . it would have been contradictory to the declaration of [plaintiffs' expert] and the trial court would have been required to conclude that a triable issue of fact existed." (*Id.*) In other words, by submitting a reply declaration, defendants would create a factual ambiguity that would actually preclude the court from granting their summary judgment motion. (*See id.*; *see also* Code Civ. Proc. § 437c(c), (g) (summary judgment is only appropriate where there is no triable issue of material fact).) The court was uncomfortable with that result given that "[i]t [was] possible that upon deposition of [plaintiffs' expert], confronted with proof that he may have been mistaken in his belief that [both defendants were] involved in the procedure, he may concede his mistake." (*St. Mary*, 50 Cal.App.4th at 1540.)

Persuaded that some sort of limited discovery was justified, the court held that, "under the proper circumstances, the parties should be allowed to depose an expert who supplies a declaration or affidavit in support of or in opposition to summary judgment or summary adjudication where there is a legitimate question regarding the foundation of the opinion of the expert." (*Id.* at 1540.)

Of course, we are not dealing with summary proceedings here; the only hearing on calendar

---

10

Petitioners and Plaintiffs' Opposition to Real Parties' Ex Parte Application

concerns the Court's OSC. And no court has applied the exception from *St. Mary* outside of summary judgment proceedings. Nor would it be appropriate do so: the underlying reasoning for the exception — that it would be unjust to force a party moving for summary judgment to create a triable issue of fact to challenge a suspect declaration — only applies in the summary judgment context.

In any event, even if the exception could be invoked outside of the summary judgment context, it nonetheless would not apply here. The court in *St. Mary* suggested that the exception should be used sparingly so as not to turn proceedings into "mini-trials." (*Id.* at 1540.) Hence, **it is limited to cases where "*objective facts* [are] presented which create a *significant question* regarding the validity of [a] declaration which, if successfully pursued, *will* impeach the foundational basis of the . . . declaration in question."** (*Id.* at 1540-41 (emphasis added).) Real Parties have not presented any such facts as to Mr. Kuprewicz's declaration. Nor are Petitioners aware of any.

Finally, the exception, where applicable, only permits a party to inquire into the factual underpinnings of the opinion(s) expressed in the expert's declaration. (*Id.* at 1540 (permitting a deposition that "would cover no more than the opinions rendered in the declaration of [the expert]").) Neither Real Parties' Notice nor Subpoena so limit the scope of Mr. Kuprewicz's proposed deposition. Additionally, Real Parties' production demands are incredibly broad, encompassing a host of documents that have no bearing on the foundation of the opinions expressed in Mr. Kuprewicz's declaration.

In sum, the exception from *St. Mary* is patently inapplicable here. Plus, even assuming (1) the exception could be invoked outside of summary judgment proceedings, and (2) Real Parties presented the "objective facts" required thereunder, Real Parties' Notice and Subpoena, which are not properly limited to the foundation of Mr. Kuprewicz's opinion, would still exceed the scope of permissible discovery.

**B. Real Parties' Assertion that They are Entitled to Depose Mr. Kuprewicz, under a Purported "Fundamental Right to Cross-Examine," is Entirely Unsupported**

Ignoring the above relevant legal framework, Real Parties appear to contend that they have an unabridged due process right to depose Mr. Kuprewicz, conflating, at times, the right of cross-examination with the limited right of expert discovery. None of the cases they cite support their position, or even bear a resemblance to the pending proceeding. Petitioners address them below in the order that

they appear:

- *In re Crystal J.* (1993) 12 Cal.App.4th 407. This was a dependency and neglect proceeding where the court affirmed the termination of a mother's parental rights over her due process objections, finding that due process was *satisfied* where a social worker's assessment report, used against her, was made available to her before the proceedings. It is entirely inapposite and does not once mention discovery procedures.

- *Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350. This case considered whether there was probable cause to bring a malicious prosecution action. Finding probable cause, the court noted that, in the underlying action, the trial court had issued a preliminary injunction, which required the court to "carefully weigh the evidence," "evaluate the credibility of witnesses," and "make[] factual findings on disputed evidence." (*Id.* at 356.) While the court made the unremarkable observation that a trial court must make factual findings in a preliminary injunction hearing, at no point did the court address the propriety of discovery procedures.

- *St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531. As explained above, *St. Mary* carved out a limited exception for premature expert discovery in summary proceedings, and the exception is not applicable here.

- *August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52. This was a driver's license revocation case in which the court found that due process was *satisfied* even though charges against the driver were brought ex parte and the arresting officer did not appear at the hearing. The case is entirely inapposite and does not once mention discovery procedures.

- *Fost v. Marin County Superior Court* (2000) 80 Cal.App.4th 724. Real Parties make much of this case, citing it for the proposition that they have an "absolute right" to cross-examine — *not depose* — Mr. Kuprewicz. *Fost* addressed the right of a criminal defendant to cross-examine a witness *at trial*; it did not discuss the propriety of discovery procedures and has no bearing on whether Real Parties have a right to depose Mr. Kuprewicz.

- *In re Marriage of Swain* (2018) 21 Cal.App.5th 830. In this spousal support case, the court held that, under a specific provision of the Family Code, a declaration was inadmissible and could not replace live, competent testimony. It did not discuss discovery procedures.

Petitioners and Plaintiffs' Opposition to Real Parties' Ex Parte Application

In sum, none of the cases cited by Real Parties have any bearing on the issue of whether it is proper to depose an expert whose declaration is submitted in support of preliminary injunction request. Thus, Real Parties have provided no legal justification for their contention that they are entitled to depose Mr. Kuprewicz.

### C.    Additional, Equitable Factors Require that Real Parties' Application be Denied

As separate and further grounds to deny Real Parties' Ex Parte Application, the proposed deposition of Mr. Kuprewicz would be unnecessary, manifestly unjust to Petitioners, and potentially lead to exactly the type of "mini-trial" that the *St. Mary* court warned about. Thus, in the interest of equity and efficient case management, the Court should deny the Ex Parte Application and exercise its broad discretion over discovery matters to quash the Notice and Subpoena.

First, contrary to Real Parties' claims, the deposition of Mr. Kuprewicz is not necessary for Real Parties to challenge his opinion. As suggested in *St Mary*, the standard way to challenge an expert declaration in pre-trial law and motion practice is by submitting a reply declaration from an opposing expert. That option remains available to them.

Second, aside from unnecessarily burdening Petitioners and Mr. Kuprewicz, Real Parties' attempt to depose Mr. Kuprewicz seeks to improperly tip the scales in Real Parties' favor. In the likely event that Real Parties submit expert declarations of their own in support of their opposition to Petitioners' Ex Parte Application, Petitioners, under the current briefing schedule, will not be afforded the same opportunity to depose Real Parties' experts in advance of the July 18, 2025, hearing given that Petitioners will only have five days to prepare their reply brief. Petitioners would be put on unequal footing with Real Parties, further underscoring the importance of sticking to the carefully crafted discovery procedures in the code. (*See Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 297 ("In general, fairness demands adherence to the statutory procedures, since they were designed to place the parties 'on roughly equal footing.'" (quoting *Kalaba v. Gray* (2002) 95 Cal.App.4th 1416, 1422).)

Third, and relatedly, permitting the deposition to proceed at this stage "could easily lead to an expensive and delay-producing round of discovery that would tend to feed on itself." (*County of Los Angeles*, 224 Cal.App.3d at 1457.) Petitioners would, in the interest of equity, seek to continue the OSC hearing to depose Real Parties' experts — an effort that may be challenged by Real Parties and cause

additional discovery motions to be brought before the Court. And extensive expert discovery would all but set the stage for the OSC hearing to become a "mini-trial" on the safety of the Las Flores Pipeline System and the ultimate merits of this case, complete with live expert testimony, which is entirely inappropriate at the preliminary relief stage of these proceedings.

Accordingly, even if the deposition of Mr. Kuprewicz was not prohibited at this stage in the proceedings — which it *is* — the Court should nonetheless deny Real Parties' Ex Parte Application in the interest of equity and efficiency.

### D.  Further Developments with Mr. Kuprewicz's Health Preclude His Deposition

As was made clear to counsel for Real Parties, Mr. Kuprewicz recently began experiencing concerning neurological symptoms, including double vision. (Frankel Declaration, ¶ 8.) On June 23, 2025, Mr. Kuprewicz had an MRI on his head — a scan that Real Parties were also made aware of. (Frankel Declaration, ¶ 8.)

The results of the scan revealed that Mr. Kuprewicz has a mass in his head that will require immediate surgery, assuming it is operable. (Kuprewicz Declaration, ¶¶ 7, 8.) On the advice of his doctor, Mr. Kuprewicz immediately sought the consultation of neurological surgeon. (Kuprewicz Declaration, ¶ 8.) He scheduled an appointment with a neurological surgeon for July 1, 2025, which was the earliest date available. (Kuprewicz Declaration, ¶ 8.)

According to Mr. Kuprewicz, in light of his ongoing health conditions, his scheduled consultation, and the urgent need to operate on the mass found in his head, he is not able to participate in a deposition on July 1, 2025, and until he is medically cleared to do so. (Kuprewicz Declaration, ¶ 9.)

Undersigned counsel only became aware of these scan results *after* attempts to meet and confer with Real Parties regarding Petitioners' Motion to Quash.

### IV.    <u>CONCLUSION</u>

For the above reasons, Petitioners respectfully request that this Court deny Real Parties' Ex Parte Application and quash the Subpoena and Notice. However, should the Court find the exception from *St. Mary* applies here, and that Mr. Kuprewicz's deposition is otherwise appropriate, Petitioners request that the Court issue an order limiting and conditioning his deposition. Specifically, subject to Mr. Kuprewicz's ongoing health conditions permitting him to participate in a deposition, Petitioners request

that the Court: (1) restrict Real Parties from deposing Mr. Kuprewicz for more than seven hours, and from noticing any further depositions of Mr. Kuprewicz during these proceedings (*see* Code Civ. Proc. § 2025.290(a)); (2) limit the scope of Mr. Kuprewicz's deposition to testing the factual foundation of the opinions expressed in his declaration (*see St. Mary*, 50 Cal.App.4th at 1540); and (3) continuing the July 18, 2025, OSC hearing, as well as Petitioners' reply brief deadline, to allow Petitioners sufficient opportunity to depose any experts on whom Real Parties rely in their opposition.

Dated: June 29, 2025                    Respectfully submitted,

Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On June 29, 2025, I served the above document(s) described as **PETITIONERS AND PLAINTIFFS' OPPOSITION TO REAL PARTIES' EX PARTE APPLICATION FOR AN ORDER REQUIRING MR. KUPREWICZ TO APPEAR AT DEPOSITION OR, IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME TO HEAR MOTION TO COMPEL DEPOSITION AND REQUEST FOR SANCTIONS OR, IN THE ALTERNATIVE, TO STRIKE THE DECLARATION OF MR. KUPREWICZ** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒    **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 29, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

**SERVICE LIST**

| | |
|---|---|
| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEY FOR<br>RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire<br>Protection, Office of the State Fire Marshal; and<br>Daniel Berlant, in his official capacity as State Fire<br>Marshal |
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN<br>INTEREST<br>Sable Offshore Corp. and Pacific Pipeline<br>Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN<br>INTEREST<br>Sable Offshore Corp. and Pacific Pipeline<br>Company |

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
6/30/2025 8:00 AM
By: Narzralli Baksh , Deputy

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and <br><br> SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, <br><br> Real Parties in Interest. | Case No.: 25CV02247 <br><br> **DECLARATION OF JEREMY M. FRANKEL IN SUPPORT OF PETITIONERS AND PLAINTIFFS' OPPOSITION TO REAL PARTIES' EX PARTE APPLICATION** <br><br> [*Filed concurrently with Plaintiffs and Petitioners' Opposition to Ex Parte Application for an Order Requiring Mr. Kuprewicz to Appear at Deposition or, in the alternative, for an Order Shortening Time to Hear Motion to Compel Deposition and Request for Sanctions or, in the alternative, to Strike the Declaration of Mr. Kuprewicz*] <br><br> Date:     June 30, 2025 <br> Time:     8:30 a.m. <br> Dept.:     4 <br> Judge:    Honorable Donna D. Geck <br><br> Action Filed: April 15, 2025 <br> Trial: None Set |

1

Declaration of Jeremy M. Frankel in support of Petitioners and Plaintiffs' Opposition to Real Parties' Ex Parte Application

**DECLARATION OF JEREMY M. FRANKEL**

I, Jeremy M. Frankel, hereby declare as follows:

1. I am a staff attorney employed by the non-profit, public interest law firm Environmental Defense Center (EDC) and am counsel for Petitioners in this action. I am duly licensed to practice law before this Court. I have personal knowledge of the following and, if called as a witness, would and could testify competently thereto.

2. Richard Kuprewicz is one of the nation's leading pipeline safety experts. Petitioners retained Mr. Kuprewicz as an expert consultant to advise them during their advocacy to various state and federal agencies overseeing Sable Offshore Corp.'s ("Sable") proposed restart of the Santa Ynez Unit and attendant infrastructure, including the Las Flores Pipeline System. As relevant here, Mr. Kuprewicz's contractual scope of work included evaluating the Las Flores Pipeline System's defects and systemic issues, and reviewing Sable's applications for State Waivers for the limited effectiveness of cathodic protection on the pipeline system.

3. At Petitioners' request, Mr. Kuprewicz prepared two reports: (1) a report generally outlining the dangers of restarting the Las Flores Pipeline System, and (2) a report addressing the deficiencies of the State Waivers that the Office of the State Fire Marshal (OSFM) ultimately issued to Sable. Both reports were submitted to OSFM during the administrative stage of these proceedings. Together, the reports explain the systemic issues with the pipeline system, why the State Waivers will not ensure that the pipeline system is safe to operate, and why the pipeline system continues to pose a significant threat of rupturing.

4. After Petitioners filed this action, Sable and Pacific Pipeline Company (together, "Real Parties") began publicly claiming that they were on the precipice of restarting the Las Flores Pipeline System. Accordingly, Petitioners applied ex parte for an administrative stay, a temporary restraining order, and a preliminary injunction (the "Ex Parte Application") to prevent them from doing so. In support of Petitioners' Ex Parte Application, Petitioners submitted a declaration from Mr. Kuprewicz, with his two reports attached thereto.

5. On June 3, 2025, the Court granted Petitioners' request for a temporary restraining order, and it issued an order to show cause why a preliminary injunction and/or stay should not issue (the

2

Declaration of Jeremy M. Frankel in support of Petitioners and Plaintiffs' Opposition to Real Parties' Ex Parte Application

"OSC"). The hearing on the OSC is set for July 18, 2025. The Court ordered that briefing be completed per code, meaning that Real Parties' opposition is due by July 7, 2025, and Petitioners' reply by July 11, 2025.

6. On June 5, 2025, Real Parties served Mr. Kuprewicz with a deposition subpoena for personal appearance and production of documents and things. That same day, Real Parties served Petitioners in the related case *Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.*, 25CV0244 (the "CBD Petitioners") with a notice of deposition of Mr. Kuprewicz. Real Parties similarly served Petitioners in this case with a "cross-notice" of deposition, noticing Mr. Kuprewicz's deposition for June 24, 2025. A true and accurate copy of the cross-notice that Petitioners received, with Mr. Kuprewicz's subpoena attached, is attached hereto as **Exhibit A**.

7. Because counsel for Real Parties had unilaterally scheduled the deposition and were seemingly unaware of Mr. Kuprewicz's substantial health issues, there was an immediate need to meet and confer regarding the deposition date and reasonable accommodations for Mr. Kuprewicz. Thus, on June 10, 2025, counsel for the CBD Petitioners requested via email that the deposition be moved to July 1, 2025, to accommodate their schedule. Counsel also asked for reasonable accommodations for Mr. Kuprewicz, including that the deposition take place remotely, and that it be split into two, 3.5-hour sessions. Counsel for Real Parties agreed to move the deposition to July 1, 2025, but refused the requests to accommodate Mr. Kuprewicz's health issues. When I chimed in to clarify that Mr. Kuprewicz was unable to travel, counsel for Real Parties continued to demand that the deposition proceed in-person. A true and accurate copy of this email exchange is attached hereto as **Exhibit B**.

8. I then secured outside counsel for Mr. Kuprewicz, Mr. Tom Stolpman, and set up a teleconference meeting with counsel for Real Parties to discuss Mr. Kuprewicz's health issues and possible accommodations for him. At the June 12, 2025, meeting, Mr. Stolpman volunteered to drive Mr. Kuprewicz to the deposition, but warned that his various health conditions, including impaired vision, could prevent him from meaningfully participating. Mr. Stolpman also informed Real Parties that, in response to some concerning neurological symptoms, Mr. Kuprewicz's doctor had ordered imaging for his brain, and an MRI was scheduled for June 23, 2025. At no point during this meeting did I agree to produce Mr. Kuprewicz. Nor did not I waive any right to contest the propriety of his

3

Declaration of Jeremy M. Frankel in support of Petitioners and Plaintiffs' Opposition to Real Parties' Ex Parte Application

deposition.

9. On June 20, 2025, counsel for Real Parties issued Mr. Kuprewicz a new deposition subpoena for personal appearance and production of documents and things — the subpoena at issue. Also on June 20, 2025, counsel for Real Parties served Petitioners with an amended cross-notice of deposition, noticing Mr. Kuprewicz's deposition for July 1, 2025 — the notice at issue. A true and accurate copy of the amended notice, with Mr. Kuprewicz's subpoena attached, is attached hereto as **Exhibit C**.

10. The next business day, I reached out to counsel for Real Parties via email to explain that our continuing research had revealed Real Parties were not entitled to depose Mr. Kuprewicz, and to meet and confer regarding a motion to quash. Opposing counsel accused Petitioners of acting in bad faith, and claimed they would not have moved the deposition date if they were aware of Petitioners' objection. In response, I explained that (1) the only reason the deposition was moved was because Real Parties had unilaterally noticed it for a time when counsel for CBD Petitioners was unavailable; (2) while the parties had discussed accommodations for Mr. Kuprewicz's health issues, at no time did Petitioners wave their right to object to his deposition; (3) Petitioners ultimately raised the objection before the date Mr. Kuprewicz's deposition was initially noticed for; and (4) this is an unusual situation involving premature expert discovery and, based on counsels' continuing research, it had become apparent that the proposed deposition exceeded the scope of permissible discovery. A true and accurate copy of this email exchange is attached hereto as **Exhibit D**.

11. The parties were unable to resolve the issue informally, necessitating that Petitioners bring said Motion to Quash, which I filed and served on June 26, 2025. I properly and timely served a formal objection to Mr. Kuprewicz's deposition on all interested parties on June 24, 2024. A true and accurate copy of Petitioners' objection is attached as **Exhibit E**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of June, 2025, in Santa Barbara, California.

_____
Jeremy M. Frankel

4

Declaration of Jeremy M. Frankel in support of Petitioners and Plaintiffs' Opposition to Real Parties' Ex Parte Application

# **EXHIBIT A**

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
MATTHEW C. WICKERSHAM, SBN 241733
matt.wickersham@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:    (213) 576-1000
Facsimile:    (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN (SBN 237595)
benjaminhanelin@paulhastings.com
NATALIE C. Rogers (SBN 301254)
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:    (310) 620-5879
Facsimile:    (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, | Case No. 25CV02247 Coordinated with Case No. 25CV02244 Assigned for all purposes to: Hon. Donna G. Geck |
| Petitioners and Plaintiffs, | **REAL PARTIES IN INTEREST'S CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** |
| v. | **Date**:  June 24, 2025 **Time**:  9:00 a.m. **Place**:  1605 Calle Joaquin, San Luis Obispo, California 93405 |
| CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, | Complaint Filed:    April 15, 2025 Trial Date:    None set |
| Respondents and Defendants, | |

1

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND
DEPOSITION OF RICHARD B. KUPREWICZ

and

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company ("Real Parties") hereby cross-notice the deposition set forth in the Deposition Subpoena for Personal Appearance and Production of Documents and Things to Richard B. Kuprewicz (the "Deponent") issued by Real Parties in the coordinated action (Case No. 25CV02244), attached hereto as **Exhibit 1** (the "Deposition Subpoena").

PLEASE TAKE FURTHER NOTICE that the deposition of Deponent will take place on **June 24, 2025** at the Marriott, 1605 Calle Joaquin, San Luis Obispo, California 93405. The deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, California 90017. The deposition will be taken before an officer authorized to administer the oath to the deponent and will be recorded by stenographic means by a court reporter certified to record depositions and authorized to administer the oath and serve as the deposition officer in the State of California.

Real Parties intend to (1) record the deposition utilizing audio and video technology; (2) use instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time; (3) use Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that, in lieu of a paper set, exhibits may be provided and displayed digitally to the deposition officer, deponent, parties, and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise of those who intend to appear via this remote participating means so that the necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the deposition.

///

///

3

REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND
DEPOSITION OF RICHARD B. KUPREWICZ

DATED:   June 4, 2025

Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE

_____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

4

# EXHIBIT 1

SUBP-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Jeffrey D. Dintzer (Cal. Bar No. 139056); Matthew C. Wickersham (Cal. Bar No. 241733); Garrett B. Stanton (Cal. Bar No. 324775) ALSTON & BIRD LLP 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071 TELEPHONE NO.: (213) 576-1000    FAX NO. *(Optional):* (213) 576-1100 E-MAIL ADDRESS *(Optional):* jeffrey.dintzer@alston.com; matt.wickersham@alston.com; garrett.stanton@alston.com ATTORNEY FOR *(Name):* Real Parties in Interest | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
 STREET ADDRESS: 1100 Anacapa Street
 MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
 BRANCH NAME:

PLAINTIFF/ PETITIONER: Center for Biological Diversity and Wishtoyo Foundation

DEFENDANT/ RESPONDENT: California Department of Forestry and Fire Protection, et al.

| **DEPOSITION SUBPOENA** **FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | CASE NUMBER: 25CV02244 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):*
Richard B. Kuprewicz, 1783 Trilogy Pkwy, Nipomo, CA 93444-6621

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS in this action at the following date, time, and place:**

| Date: June 24, 2025 | Time: 9:00 a.m. | Address: Marriott, 1605 Calle Joaquin, San Luis Obispo, CA 93405 |
|---|---|---|

a. ☐ As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc, § 2025.230.)

b. ☒ You are ordered to produce the documents and things described in item 3.

c. ☒ This deposition will be recorded stenographically    ☐ through the instant visual display of testimony and by    ☐ audiotape    ☒ videotape.

d. ☒ This videotape deposition is intended for possible use at trial under Code of Civil Procedure section 2025.620(d).

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents and things to be produced and any testing or sampling being sought are described as follows:
See Attachment 3
☒ Continued on Attachment 3.

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:

☐ Continued on Attachment 4.

5. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

6. *At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence or within 150 miles of your residence if the deposition will be taken within the county of the court where the action is pending. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.*

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: June 4, 2025

▶ _____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Jeffrey D. Dintzer
_____
(TYPE OR PRINT NAME)

Attorney for Real Parties in Interest
_____
(TITLE)

(Proof of service on reverse)    **Page 1 of 2**

| Form Adopted for Mandatory Use Judicial Council of California SUBP-020 [Rev. January 1, 2009] | **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | Code of Civil Procedure §§ 2020.510, 2025.220, 2025.230, 2025.250, 2025.620; Government Code, § 68097.1 www.courts.ca.gov |
|---|---|---|

**SUBP-020**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Center for Biological Diversity and Wishtoyo Foundation<br><br>DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection, et al. | CASE NUMBER:<br>25CV02244 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS

1. I served this *Deposition Subpoena for Personal Appearance and Production of Documents and Things* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*: Richard B. Kuprewicz

   b. Address where served:

   c. Date of delivery:

   d. Time of delivery:

   e. Witness fees and mileage both ways *(check one)*:

   (1) ☐    were paid. Amount: ....................$ _____

   (2) ☐    were not paid.

   (3) ☐    were tendered to the witness's public entity employer as required by Government Code section 68097.2. The amount tendered was *(specify)*:................$ _____

   f. Fee for service: .........................................$ _____

2. I received this subpoena for service on *(date):*

3. Person serving:

   a. ☐   Not a registered California process server

   b. ☐   California sheriff or marshal

   c. ☐   Registered California process server.

   d. ☐   Employee or independent contractor of a registered California process server

   e. ☐   Exempt from registration under Business and Professions Code section 22350(b)

   f. ☐   Registered professional photocopier

   g. ☐   Exempt from registration under Business and Professions Code section 22451

   h.  Name, address, telephone number, and, if applicable, county of registration and number:

**I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
              (SIGNATURE)

**(For California sheriff or marshal use only)**
**I certify** that the foregoing is true and correct.

Date:

▶ _____
              (SIGNATURE)

SUBP-020 [Rev. January 1, 2009]           **PROOF OF SERVICE**            **Page 2 of 2**
**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS**

**ATTACHMENT 3**

**<u>DEFINITIONS</u>**

1.      "YOU" and "YOUR" mean to Richard B. Kuprewicz, his agents, attorneys, and other representatives acting on his behalf.

2.      "SABLE" shall mean Sable Offshore Corp.

3.      "PPC" shall mean Pacific Pipeline Company.

4.      "PETITIONERS" shall mean Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation, as well as their agents, attorneys, and other representatives acting on their behalf

5.      "ACTION" shall mean the civil lawsuits filed by PETITIONERS entitled *Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02244, and the coordinated action entitled *Environmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02247.

6.      "SYU PIPELINE" shall refer to the Santa Ynez Unit Pipelines located in waters offshore California.

7.      "LAS FLORES PIPELINE" shall refer to the Las Flores Pipelines located in waters offshore California.

8.       "DOCUMENTS" means all data, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, including written papers or memoranda which summarize

oral conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter and intra- office communications; photocopies; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; electronically stored information (ESI) and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English. DOCUMENTS does not include DOCUMENTS protected by the attorney-client and/or work product privileges.

9.      "COMMUNICATION" means any attempt by one or more persons or entities to communicate, including but not limited to written communications, including memoranda, letters, notes, telegrams, telexes and any other documents; oral communications including face-to-face meetings and telephone conversations; and, electronic or computerized communications, including emails (electronic mailings), Internet postings, word processing systems, magnetic tapes, disks and diskettes.

10.      "RELATE TO" or "RELATING TO" means directly or indirectly mentioning or describing, pertaining to, being connected with, or reflecting upon a stated subject matter.

## **INSTRUCTIONS**

1.      Produce all DOCUMENTS in your possession, custody, or control, as well as all DOCUMENTS in the possession, custody, or control of your agents, representatives, attorneys, investigators, consultants, independent contractors, or experts at least one (1) week before the deposition date reflected in the Subpoena. (As used herein, the term "DOCUMENT" means all original writings of any nature whatsoever and all copies thereof which are not identical to the original or which contain any commentary or notation that does not appear on the original, whether written, printed, recorded or graphic matter, photographic matter, or sound reproduction of any kind in any form whatsoever (including, but not limited to, reports, studies, charts, statistical compilations, letters, correspondence, telegrams, memoranda, ledgers, books of accounts, bookkeeping and accounting records, minutes, contracts, leases, notes, electronic transcriptions or tapings of conversations conducted by any means, work papers, schedules, computer printouts, computer files, e-mails, financial statements, and reports, calculations, diaries, appointment calendars or records, manuals, brochures, invoices, desk calendars, work sheets, tapes, records of telephone calls) of which you have knowledge, whether or not such documents are in YOUR possession, custody or control, and irrespective of who prepared or signed such documents. In all cases where originals and/or non-identical copies are not available, "DOCUMENTS" also means identical copies of original documents and copies of non-identical copies.)

2.      Produce each and every copy where such copy contains any commentary or notation that does not appear on the original. ESI should be produced in its Native Format, meaning the form that it is ordinarily maintained on your systems, including any metadata associated therewith. (As used herein, the term "ESI" means electronically stored information as defined in California Code of Civil Procedure section 2016.020(e), and shall include, but is not limited to, e-mails and text messages.) Should you choose to produce electronic images of paper DOCUMENTS instead of paper copies, you must product them in single-page TIFF FORMAT imaged at not less than 300 dpi resolution that shows all text and images that would be visible to

a user of the paper DOCUMENT. Color DOCUMENTS must be produced in color TIFF images. Each image should have a unique filename. If a paper DOCUMENT is more than one page, the unitization of the paper DOCUMENT and any attachments or affixed notes shall be maintained as it existed when collected, including, for example, emails or letters with their attachments.

3.  Produce all drafts, as well as the final version, of all responsive DOCUMENTS.

4.  Produce, where possible, originals of the DOCUMENTS requested, whether signed or unsigned, for inspection and copying.

5.  For each DOCUMENT requested which is sought to be withheld under a claim of privilege, provide the following information:

a.  The number of the request to which the DOCUMENT is responsive;

b.  A statement of the basis upon which the privilege is claimed and whether or not the subject matter of the contents of the DOCUMENT is limited to legal advice or information provided for the purpose of securing legal advice;

c.  The name and title of the sender and the name and title of the recipient of the DOCUMENT, if applicable;

d.  The place, approximate date, and manner of recording or otherwise preparing the DOCUMENT;

e.  The name of each person or persons participating in the preparation of the DOCUMENT; and

f.  The name and title, if any, of each person to whom the contents of the DOCUMENT has been communicated by copy, exhibition, reading or substantial summarization.

**DOCUMENTS TO BE PRODUCED**

**REQUEST FOR PRODUCTION NO. 1**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 2**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 3**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 4**:

YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

**REQUEST FOR PRODUCTION NO. 5**:

YOUR COMMUNICATIONS discussing SABLE.

**REQUEST FOR PRODUCTION NO. 6**:

YOUR COMMUNICATIONS discussing PPC.

**REQUEST FOR PRODUCTION NO. 7**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

**REQUEST FOR PRODUCTION NO. 8**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

**REQUEST FOR PRODUCTION NO. 9**:

All contracts and agreements YOU have with PETITIONERS.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 11**:

All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 12**:

All drafts and versions of Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 13**:

All drafts and versions of Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 14**:

All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable Offshore Corp v. California Coastal Commission et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV00974.

| | | | ID #:2132   **(213) 576-1000** | |
|---|---|---|---|---|
| **ALSTON & BIRD LLP** | | | | |
| Jeffrey D. Dintzer (Cal. Bar 139056); Matthew C. Wickersham (Cal. Bar No 241733); | | | | |
| Garrett B. Stanton (Cal. Bar No. 327775) | | | | |
| **350 South Grand Avenue, Suite 5100 , Los Angeles, CA 90071** | | | | |
| ATTORNEY FOR *(Name):* **Real Parties in Interest** | | | | |
| **SUPERIOR COURT OF THE STATE OF CALIFORNIA** **COUNTY OF SANTA BARBARA - ANACAPA DIVISON** | | | | |
| PLAINTIFF/PETITIONER:    **Center for Biological Diversity and Wishtoyo Foundation** | | | | |
| DEFENDANT/RESPONDENT: **California Department of Forestry and Fire Protection, et al.** | | | | |
| **PROOF OF SERVICE** | HEARING DATE: **June 24, 2025** | TIME: **9:00 AM** | | CASE NUMBER: **25CV02244** |

1.   At the time of service I was 18 years of age and not a party to this action, and  **I served copies**  of the *(specify document(s)):*

**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS**

2.   a. Party Served:          **Richard B. Kuprewicz**

   b. Person Served:      **Same as party in item 2a.**

   c. Address:               **1783 Trilogy Parkway**
                                      **Nipomo, CA 934446621**

3.   I served the party in item 2

   a. **By personally delivering the copies.**

                                                        (1) on *(date):*          **6/5/2025**
                                                        (2) at *(time):*           **7:00 AM**

4.   **Witness fees were not demanded and were not paid.**

5.   Person Serving *(name, address, and telephone No.):*

   **Joseph P. Stetz III**                                       f. **Fee** for service: $
   Ace Attorney Service, Inc.                             c. Registered California Process Server.
   800 S. Figueroa Street, Suite 900                   (1) Employee or independent contractor.
   Los Angeles, CA 90017                                  (2) Registration No.: **270**
   (213) 623-3979                                             (3) County : **SANTA BARBARA**

6.   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

   Date:  **June 5, 2025**

                                                                        _____
                                                                                    *(signature)*

SUBP-020 [Rev. January 1,2009]                                                                      Order#: 2455263/POS2

**PROOF OF SERVICE**

**PROOF OF SERVICE**

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 5, 2025, I served the document(s) **REAL PARTIES IN INTEREST'S NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☒  (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by UPS for overnight delivery.

☒  BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 5, 2025, at Los Angeles, California.

Heather Thai
                    Heather Thai

**SERVICE LIST**

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
        jfrankel@environmentaldefensecenter.org
        trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
        benjaminhanelin@paulhastings.com
        natalierogers@paulhastings.com

# **EXHIBIT B**

| | |
|---|---|
| **From:** | Dintzer, Jeffrey |
| **To:** | Jeremy Frankel; Stanton, Garrett |
| **Cc:** | djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt; Talia Nimmer; Thai, Heather; Julie Teel Simmonds; David Pettit; Michael.dorsi@doj.ca.gov; Linda Krop; Tara Rengifo; Bolender, Brooke; Niz, Kim; tom@stolpmanlawgroup.com |
| **Subject:** | Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247) |
| **Date:** | Thursday, June 12, 2025 1:44:48 PM |

Ok

_____

From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
Sent: Thursday, June 12, 2025 1:40:10 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com <djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com <benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com <natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov <Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com <tom@stolpmanlawgroup.com>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER – Proceed with caution

_____

How does 3 pm sound?

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.EnvironmentalDefenseCenter.org>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

-----Original Message-----
From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>

Sent: Thursday, June 12, 2025 1:38 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com
Subject: Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Yes, that will work. Please send a teams or zoom link. Jeffrey.

_____

From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
Sent: Thursday, June 12, 2025 1:28:19 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com <djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com <benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com <natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov <Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>; tom@stolpmanlawgroup.com <tom@stolpmanlawgroup.com>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____


Hi Jeffrey,


Are you available for a phone call this afternoon with myself and Tom Stolpman, cc'ed here, who will be serving as counsel for Mr. Kuprewicz? Any time before 4:30 would work for us.


Thanks,


[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.EnvironmentalDefenseCenter.org>
<http://www.environmentaldefensecenter.org>>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter>> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter>> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center>> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
Sent: Wednesday, June 11, 2025 5:07 PM
To: Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Stanton, Garrett <Garrett.Stanton@alston.com>
Cc: djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Wickersham, Matt <Matt.Wickersham@alston.com>; Talia Nimmer <tnimmer@biologicaldiversity.org>; Thai, Heather <Heather.Thai@alston.com>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; David Pettit <dpettit@biologicaldiversity.org>; Michael.dorsi@doj.ca.gov; Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Bolender, Brooke <Brooke.Bolender@alston.com>; Niz, Kim <Kim.Niz@alston.com>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Thank you, I look forward to hearing from him/her tomorrow. Regards, Jeffrey.

From: Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 5:05 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop

<lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____

We are working on obtaining outside counsel for Mr. Kuprewicz, which should be resolved some time tomorrow. Counsel for Mr. Kuprewicz will follow up with you about appropriate accommodations.

Thanks,

[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.EnvironmentalDefenseCenter.org>
<http://www.environmentaldefensecenter.org>>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter>> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter>> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center>> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>
Sent: Wednesday, June 11, 2025 3:53 PM
To: Jeremy Frankel
<jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; Stanton, Garrett
<Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>;
benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>;
natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt
<Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer
<tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather
<Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds
<jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit
<dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>;
Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop
<lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo
<trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke
<Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim
<Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No.
25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)


Mr. Frankel you have not answered my question, which is very simple, can Mr. Kuperwicz travel the short distance
to a local hotel to attend the deposition? You will have to answer this question if you intend to seek a protective
order. Please advise. If he is truly housebound then we can discuss other accommodations, but a remote deposition
is not one of them. Finally, please advise whether your offices are representing Mr. Kuperwicz as his personal
counsel in this matter. Regards, Jeffrey Dintzer.


From: Jeremy Frankel
<jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 3:43 PM
To: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Stanton, Garrett
<Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>;
benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>;
natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt
<Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer
<tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather
<Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds
<jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit
<dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>;
Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop
<lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo
<trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke
<Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim
<Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No.
25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____

Hi Jeffrey,

It is my understanding that Mr. Kuprewicz is unable to travel. But he is able to participate remotely, so long as the sessions are limited to half-days.

Again, if you are not willing to make reasonable accommodations for Mr. Kuprewicz's health issues, we will seek appropriate relief.

Thanks,

[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.EnvironmentalDefenseCenter.org>
<http://www.environmentaldefensecenter.org>>

[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter>> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter>> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center>> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>>

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>
Sent: Wednesday, June 11, 2025 3:09 PM
To: Jeremy Frankel
<jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; Stanton, Garrett
<Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>;
benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>;
natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Wickersham, Matt
<Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer
<tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather
<Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds
<jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit
<dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>;
Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop
<lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo
<trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke
<Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim
<Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No.
25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)


Mr. Frankel, we have agreed to move the deposition date and are going to travel to a location near Mr. Kuprewicz's home. We are prepared to take reasonable breaks to accommodate the witness so that he can rest between questioning sessions. We are not willing to conduct the deposition remotely. Is it your representation that he cannot leave his home and come to a local hotel and give live testimony? Please advise. Regards, Jeffrey Dintzer.


From: Jeremy Frankel
<jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>
Sent: Wednesday, June 11, 2025 2:53 PM
To: Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>;
benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>;
natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey
<Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt
<Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Talia Nimmer
<tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather
<Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds
<jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit
<dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>;
Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop
<lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Tara Rengifo
<trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>; Bolender, Brooke
<Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim
<Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No.
25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)


EXTERNAL SENDER - Proceed with caution

_____


Hi Garrett,


Mr. Kuprewicz is experiencing severe health issues that, among other things, prevent him from traveling. If you want to proceed with his deposition, it will have to be conducted remotely, and it will have to be split up between two, 3.5 hour sessions. Otherwise, we will be forced to seek a protective order and stay the deposition until the court can hear the issue.


We see these as very reasonable requests, and I'm sure the court would as well.


Thanks,


[cid:image001.jpg@01DBDB9D.DA252F20]

JEREMY FRANKEL (he/him/his)
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org<http://www.EnvironmentalDefenseCenter.org>
<http://www.environmentaldefensecenter.org>>


[Facebook icon] <https://www.facebook.com/EnvironmentalDefenseCenter>> [Instagram icon] <https://www.instagram.com/environmentaldefensecenter>> [LinkedIn icon] <https://www.linkedin.com/company/environmental-defense-center>> [Youtube icon] <https://www.youtube.com/user/EnviroDefenseCenter>>


We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

From: Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>
Sent: Tuesday, June 10, 2025 5:36 PM
To: Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; Linda Krop <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; Jeremy Frankel <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; Tara Rengifo <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: RE: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Hi Talia,

We are agreeable rescheduling the deposition for July 1st to accommodate calendar conflicts. While the Code allows for remote depositions by agreement, the rules also permit "any party or attorney of record" to be "physically present at the deposition at the location of the deponent," as long as requisite notice is given. (Cal. Rules of Court, rule 3.1010(a)(3).)

As such, the deposition will be noticed to go forward in-person, and will need to take place in a single, 7-hour session as allowed by the Code since the deposition will require us to undertake substantial travel. We, of course, are agreeable to taking more frequent breaks during the deposition to accommodate the witness.

Thanks,

Garrett B. Stanton

Senior Associate

ALSTON & BIRD

350 South Grand Avenue, 51st Floor

Los Angeles, CA 90071

garrett.stanton@alston.com<mailto:garrett.stanton@alston.com> | t: 213.576.1151

From: Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>
Sent: Tuesday, June 10, 2025 4:54 PM
To: Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>; lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>; jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>; trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: Re: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

EXTERNAL SENDER - Proceed with caution

_____

Counsel,

Given scheduling conflicts, we would like to request that the deposition be rescheduled for the following week (June 30-July 3). Additionally, because the witness is currently experiencing health issues, we would like to further request that the deposition take place remotely and that should the deposition run more than 3.5 hours, it be split into two morning sessions.

Please advise whether this is amenable. Thank you for your anticipated cooperation.

Talia Nimmer (she/her)

Staff Attorney

Climate Law Institute

Center for Biological Diversity

(213) 341-1426

[cbd.circle.tag.rgb]

The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.

_____

From: Thai, Heather <Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>>
Sent: Thursday, June 5, 2025 12:32 PM
To: Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org<mailto:jteelsimmonds@biologicaldiversity.org>>; David Pettit <dpettit@biologicaldiversity.org<mailto:dpettit@biologicaldiversity.org>>; Talia Nimmer <tnimmer@biologicaldiversity.org<mailto:tnimmer@biologicaldiversity.org>>; Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov> <Michael.dorsi@doj.ca.gov<mailto:Michael.dorsi@doj.ca.gov>>; lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org> <lkrop@environmentaldefensecenter.org<mailto:lkrop@environmentaldefensecenter.org>>; jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org> <jfrankel@environmentaldefensecenter.org<mailto:jfrankel@environmentaldefensecenter.org>>; trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org> <trengifo@environmentaldefensecenter.org<mailto:trengifo@environmentaldefensecenter.org>>
Cc: djmoore@paulhastings.com<mailto:djmoore@paulhastings.com> <djmoore@paulhastings.com<mailto:djmoore@paulhastings.com>>; benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com> <benjaminhanelin@paulhastings.com<mailto:benjaminhanelin@paulhastings.com>>; natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com> <natalierogers@paulhastings.com<mailto:natalierogers@paulhastings.com>>; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com<mailto:Jeffrey.Dintzer@alston.com>>; Wickersham, Matt <Matt.Wickersham@alston.com<mailto:Matt.Wickersham@alston.com>>; Stanton, Garrett <Garrett.Stanton@alston.com<mailto:Garrett.Stanton@alston.com>>; Bolender, Brooke <Brooke.Bolender@alston.com<mailto:Brooke.Bolender@alston.com>>; Niz, Kim <Kim.Niz@alston.com<mailto:Kim.Niz@alston.com>>
Subject: Center for Biological Diversity v. California Department of Forestry, et al. (Case No. 25CV02244)/Environmental Defense Center v. California Department of Forestry, et al. (Case No. 25CV02247)

Electronically Served:

Dear Counsel:

Please see the attached documents listed documents:

Center for Biological Diversity v. California Department of Forestry, et al.

· Real Parties in Interest's Notice of Issuance of Subpoena to and Deposition of Richard B. Kuprewicz

Environmental Defense Center v. California Department of Forestry, et al.

· Real Parties in Interest's Notice of Issuance of Subpoena to and Deposition of Richard B. Kuprewicz

Thank you,

Heather L. Thai
ABassist Specialist
ALSTON & BIRD
350 South Grand Avenue

51st Floor
Los Angeles, CA 90071
+1 213 576 1017 (O)
Heather.Thai@alston.com<mailto:Heather.Thai@alston.com>

_____

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

# EXHIBIT C

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:    (213) 576-1000
Facsimile:    (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN (SBN 237595)
benjaminhanelin@paulhastings.com
NATALIE C. Rogers (SBN 301254)
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:    (310) 620-5879
Facsimile:    (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and | Case No. 25CV02247 <br> Coordinated with Case No. 25CV02244 <br><br> Assigned for all purposes to: <br> Hon. Donna G. Geck <br><br> **REAL PARTIES IN INTEREST'S AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** <br><br> **Date**: July 1, 2025 <br> **Time**: 9:00 a.m. <br> **Place**: 1605 Calle Joaquin, San Luis Obispo, California 93405 <br><br> Complaint Filed:      April 15, 2025 <br> Trial Date:            None set |

1

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

Real Parties in Interest.

REAL PARTIES IN INTEREST'S AMENDED NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Real Parties in Interest Sable Offshore Cop. and Pacific Pipeline Company ("Real Parties") hereby cross-notice the deposition set forth in the Amended Deposition Subpoena for Personal Appearance and Production of Documents and Things to Richard B. Kuprewicz (the "Deponent") issued by Real Parties in the Coordinated Action (Case No. 25CV02244), attached hereto as **Exhibit 1** (the "Deposition Subpoena").

**PLEASE TAKE FURTHER NOTICE** that the deposition of Deponent will take place on **July 1, 2025** at the Marriott, 1605 Calle Joaquin, San Luis Obispo, California 93405. The deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, California 90017. The deposition will be taken before an officer authorized to administer the oath to the deponent and will be recorded by stenographic means by a court reporter certified to record depositions and authorized to administer the oath and serve as the deposition officer in the State of California.

Real Parties intend to (1) record the deposition utilizing audio and video technology; (2) use instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time; (3) use Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that, in lieu of a paper set, exhibits may be provided and displayed digitally to the deposition officer, deponent, parties, and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise of those who intend to appear via this remote participating means so that the necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the deposition.

/ / /

/ / /

DATED:   June 20, 2025

Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE


_____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

# Exhibit 1

**SUBP-020**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Jeffrey D. Dintzer (SBN 139056); Garrett B. Stanton (SBN 324775) <br> ALSTON & BIRD LLP <br> 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071 <br> TELEPHONE NO.: (213) 576-1000    FAX NO. *(Optional):* (213) 576-1100 <br> E-MAIL ADDRESS *(Optional):* jeffrey.dintzer@alston.com; garrett.stanton@alston.com <br> ATTORNEY FOR *(Name):* Real Parties in Interest | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
 STREET ADDRESS: 1100 Anacapa Street
 MAILING ADDRESS: P.O. Box 21107
 CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
 BRANCH NAME:

PLAINTIFF/ PETITIONER: Environmental Defense Center, et al.

DEFENDANT/ RESPONDENT: California Department of Forestry and Fire Protection, et al.

| **DEPOSITION SUBPOENA** <br> **FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | CASE NUMBER: <br> 25CV02247 |
|---|---|

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of deponent, if known):*
Richard B. Kuprewicz, 1783 Trilogy Pkwy, Nipomo, CA 93444-6621

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS in this action at the following date, time, and place:**

| Date: July 1, 2025 | Time: 9:00 a.m. | Address: 1605 Calle Joaquin, San Luis Obispo, California 93405 |
|---|---|---|

   a. ☐ As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc, § 2025.230.)

   b. ☒ You are ordered to produce the documents and things described in item 3.

   c. ☒ This deposition will be recorded stenographically    ☐ through the instant visual display of testimony
      and by    ☐ audiotape    ☒ videotape.

   d. ☒ This videotape deposition is intended for possible use at trial under Code of Civil Procedure section 2025.620(d).

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents and things to be produced and any testing or sampling being sought are described as follows:
    See Attachment 3
    ☒ Continued on Attachment 3.

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:

    ☐ Continued on Attachment 4.

5. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

6. *At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence or within 150 miles of your residence if the deposition will be taken within the county of the court where the action is pending. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.*

| **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.** |
|---|

Date issued: June 20, 2025

▶

Jeffrey D. Dintzer _____
(TYPE OR PRINT NAME)

_____ (SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorney for Real Parties in Interest
(TITLE)

*(Proof of service on reverse)*    **Page 1 of 2**

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUBP-020 [Rev. January 1, 2009] | **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | Code of Civil Procedure §§ 2020.510, <br> 2025.220, 2025.230, 2025.250, 2025.620; <br> Government Code, § 68097.1 <br> www.courts.ca.gov |
|---|---|---|

# Attachment 3

**ATTACHMENT 3**

**DEFINITIONS**

1.      "YOU" and "YOUR" mean to Richard B. Kuprewicz, his agents, attorneys, and other representatives acting on his behalf.

2.      "SABLE" shall mean Sable Offshore Corp.

3.      "PPC" shall mean Pacific Pipeline Company.

4.      "PETITIONERS" shall mean Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation, as well as their agents, attorneys, and other representatives acting on their behalf

5.      "ACTION" shall mean the civil lawsuits filed by PETITIONERS entitled *Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02244, and the coordinated action entitled *Environmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV02247.

6.      "SYU PIPELINE" shall refer to the Santa Ynez Unit Pipelines located in waters offshore California.

7.      "LAS FLORES PIPELINE" shall refer to the Las Flores Pipelines located in waters offshore California.

8.       "DOCUMENTS" means all data, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, including written papers or memoranda which summarize

oral conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter and intra- office communications; photocopies; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; electronically stored information (ESI) and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English. DOCUMENTS does not include DOCUMENTS protected by the attorney-client and/or work product privileges.

9.     "COMMUNICATION" means any attempt by one or more persons or entities to communicate, including but not limited to written communications, including memoranda, letters, notes, telegrams, telexes and any other documents; oral communications including face-to-face meetings and telephone conversations; and, electronic or computerized communications, including emails (electronic mailings), Internet postings, word processing systems, magnetic tapes, disks and diskettes.

10.     "RELATE TO" or "RELATING TO" means directly or indirectly mentioning or describing, pertaining to, being connected with, or reflecting upon a stated subject matter.

## **INSTRUCTIONS**

1.      Produce all DOCUMENTS in your possession, custody, or control, as well as all DOCUMENTS in the possession, custody, or control of your agents, representatives, attorneys, investigators, consultants, independent contractors, or experts at least one (1) week before the deposition date reflected in the Subpoena. (As used herein, the term "DOCUMENT" means all original writings of any nature whatsoever and all copies thereof which are not identical to the original or which contain any commentary or notation that does not appear on the original, whether written, printed, recorded or graphic matter, photographic matter, or sound reproduction of any kind in any form whatsoever (including, but not limited to, reports, studies, charts, statistical compilations, letters, correspondence, telegrams, memoranda, ledgers, books of accounts, bookkeeping and accounting records, minutes, contracts, leases, notes, electronic transcriptions or tapings of conversations conducted by any means, work papers, schedules, computer printouts, computer files, e-mails, financial statements, and reports, calculations, diaries, appointment calendars or records, manuals, brochures, invoices, desk calendars, work sheets, tapes, records of telephone calls) of which you have knowledge, whether or not such documents are in YOUR possession, custody or control, and irrespective of who prepared or signed such documents. In all cases where originals and/or non-identical copies are not available, "DOCUMENTS" also means identical copies of original documents and copies of non-identical copies.)

2.      Produce each and every copy where such copy contains any commentary or notation that does not appear on the original. ESI should be produced in its Native Format, meaning the form that it is ordinarily maintained on your systems, including any metadata associated therewith. (As used herein, the term "ESI" means electronically stored information as defined in California Code of Civil Procedure section 2016.020(e), and shall include, but is not limited to, e-mails and text messages.) Should you choose to produce electronic images of paper DOCUMENTS instead of paper copies, you must product them in single-page TIFF FORMAT imaged at not less than 300 dpi resolution that shows all text and images that would be visible to

a user of the paper DOCUMENT. Color DOCUMENTS must be produced in color TIFF images. Each image should have a unique filename. If a paper DOCUMENT is more than one page, the unitization of the paper DOCUMENT and any attachments or affixed notes shall be maintained as it existed when collected, including, for example, emails or letters with their attachments.

3.    Produce all drafts, as well as the final version, of all responsive DOCUMENTS.

4.    Produce, where possible, originals of the DOCUMENTS requested, whether signed or unsigned, for inspection and copying.

5.    For each DOCUMENT requested which is sought to be withheld under a claim of privilege, provide the following information:

a.    The number of the request to which the DOCUMENT is responsive;

b.    A statement of the basis upon which the privilege is claimed and whether or not the subject matter of the contents of the DOCUMENT is limited to legal advice or information provided for the purpose of securing legal advice;

c.    The name and title of the sender and the name and title of the recipient of the DOCUMENT, if applicable;

d.    The place, approximate date, and manner of recording or otherwise preparing the DOCUMENT;

e.    The name of each person or persons participating in the preparation of the DOCUMENT; and

f.    The name and title, if any, of each person to whom the contents of the DOCUMENT has been communicated by copy, exhibition, reading or substantial summarization.

Page **4** of **6**

**DOCUMENTS TO BE PRODUCED**

**REQUEST FOR PRODUCTION NO. 1**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 2**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 3**:

All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 4**:

YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

**REQUEST FOR PRODUCTION NO. 5**:

YOUR COMMUNICATIONS discussing SABLE.

**REQUEST FOR PRODUCTION NO. 6**:

YOUR COMMUNICATIONS discussing PPC.

**REQUEST FOR PRODUCTION NO. 7**:

All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

**REQUEST FOR PRODUCTION NO. 8**:

Page **5** of **6**

All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

**REQUEST FOR PRODUCTION NO. 9**:

All contracts and agreements YOU have with PETITIONERS.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 11**:

All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 12**:

All drafts and versions of Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 13**:

All drafts and versions of Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

**REQUEST FOR PRODUCTION NO. 14**:

All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable Offshore Corp v. California Coastal Commission et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV00974.

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 20, 2025, I served the document(s) AEMNDED DEPOSITION SUBPOENA **FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS TO RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

☐   (BY U.S. MAIL) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐   (BY FACSIMILE) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐   (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒   BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 20, 2025, at Los Angeles, California.

*/s/ Kim Niz*
Kim Niz

**SERVICE LIST**

Tom Stolpman                          **Counsel for Robert Kuperwicz**
Stolpman Law Group                    **tom@stolpmanlawgroup.com**

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On June 20, 2025, I served the document(s) **REAL PARTIES IN INTEREST'S AMENDED NOTICE OF ISSUANCE OF SUBPOENA TO AND DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☐ (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐ (BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒ BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 20, 2025, at Los Angeles, California.

/s/ *Kim Niz*
Kim Niz

**SERVICE LIST**

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:   (510) 844-7100
Fax:   (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
        jfrankel@environmentaldefensecenter.org
        trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:   (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:   (310) 620-5879
Email: djmoore@paulhastings.com
        benjaminhanelin@paulhastings.com
        natalierogers@paulhastings.com

# **EXHIBIT D**

| **From:** | Jeremy Frankel |
|---|---|
| **To:** | Dintzer, Jeffrey; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett; Daniel, Madeline; Seabolt, Dan; Vreeland, Shannon; Rusek, Vickie; Oberst, Brett; Brown, Frankie |
| **Cc:** | Linda Krop; Tara Rengifo; Julie Teel Simmonds; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov |
| **Subject:** | RE: Re Mr. Kuprewicz"s Deposition |
| **Date:** | Tuesday, June 24, 2025 5:25:00 PM |
| **Attachments:** | 2025_06_24_Objection to Deposition of Richard Kuprewicz.pdf<br>image002.png<br>image003.png<br>image004.png<br>image005.png |

Hi Jeffrey,

Again, our previous discussions were borne of an obvious and immediate need to reschedule the date of the proposed deposition, and to inform you of Mr. Kuprewicz's ongoing health issues. At no time did Petitioners waive their right to object to Mr. Kuprewicz's deposition on the grounds that it exceeds the scope of permissible discovery, which our ongoing research has since revealed.

We respectfully disagree with your below contentions, including that it is unreasonable or prejudicial to quash an improper deposition subpoena/notice. Our review of the law indicates that, under the circumstances, Real Parties are not entitled to take Mr. Kuprewicz's deposition at this time. Accordingly, should Real Parties' not withdraw their deposition subpoena/notices by 5:00 p.m. tomorrow, we will proceed with a motion to quash.

Attached please find the EDC Petitioners' formal objection to Real Parties deposition subpoena and cross-notice of deposition. A copy is also being served by mail.

Thanks,



**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org

  

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

**From:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
**Sent:** Tuesday, June 24, 2025 3:51 PM
**To:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; Daniel, Madeline <Madeline.Daniel@alston.com>; Seabolt, Dan <Dan.Seabolt@alston.com>; Vreeland, Shannon <Shannon.Vreeland@alston.com>; Rusek, Vickie <Vickie.Rusek@alston.com>; Oberst, Brett <Brett.Oberst@alston.com>; Brown, Frankie <Frankie.Brown@alston.com>

**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; Julie Teel Simmonds <jteelsimmonds@biologicaldiversity.org>; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov
**Subject:** Re Mr. Kuprewicz's Deposition

Mr. Frankel,

It is true that we noticed the deposition for June 24th, and we moved the deposition date to July 1st to accommodate the schedules of counsel, *at counsel's request*.  In that request, there was no objection for the deposition going forward, and that would have been the appropriate time to raise such objection.  Such would have afforded the Real Parties with an opportunity to have the court compel the deposition in due time before Real Parties' opposition will be due on July 7th.  On June 12th, we discussed Real Parties' need to take the deposition in time for our July 7th opposition, which is why we agreed upon July 1st.  *At no time did any counsel object to the deposition going forward during this discussion either*.  On the call, we all reached an agreement regarding the date, time, and location of the deposition to accommodate the witness.  Mr. Stolpman further agreed to accept service on behalf of his client.  Why would we discuss all of these topics and agree on them only to "make any deposition less burdensome" for Mr. Kuprewicz but not agree on a deposition going forward?  That logically makes no sense.  And based on the parties' agreement, Real Parties have reasonably had to incur necessary costs to reserve space for the deposition and for travel.

Further, waiting to move to quash the deposition only just before Real Parties' opposition is due is highly prejudicial for obvious reasons.  Such prejudice cannot simply ensue because  "it has come to [y]our attention that Real Parties are not entitled to proceed with Mr. Kuprewicz's deposition at this time" – offering no basis to prevent necessary cross-examination of evidence offered in support of an application for preliminary injunction that will greatly impact Real Parties' rights.  The parties reached a clear agreement on June 12th to proceed with the deposition, and the law does not support your newfound position. (See *In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 ["A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses."]; 5 California Trial Guide § 100.20 [discussing depositions are appropriate for use in pretrial proceedings "such as a motion for a preliminary injunction"]; *Fleishman v. Superior Court* (2002)102 Cal. App. 4th 350, 356 ["Before issuing a preliminary injunction, the trial court must 'carefully weigh the evidence and decide whether the facts require . . . such relief. The court evaluates the credibility of witnesses and makes factual findings on disputed evidence."]; see also *St. Mary Med. Ctr. v. Sup.Ct. (Mennella)* (1996) 50 Cal.App.4th 1531, 1539 [holding  § 2034.010 et seq. procedure for deposing expert witnesses does not bar earlier depositions of experts whose opinions are filed in support of or in opposition to a motion for summary judgment or summary adjudication].)

Preventing the deposition of Mr. Kuprewicz, without removing his declaration from the record, is highly unreasonable, highly prejudicial to Real Parties, violates their due process rights, and certainly serves as a strong basis for sanctions. We expect your declarant to appear at his deposition on July 1, 2025, as noticed.  Regards, Jeffrey.

Jeffrey Dintzer
ALSTON & BIRD
350 S. Grand Avenue, 51st Floor
Los Angeles, CA 90071
Office:  213-576-1063
Cell: 213-393-8664

---

**From:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
**Sent:** Tuesday, June 24, 2025 10:20 AM

**To:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org; michael.dorsi@doj.ca.gov
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

**EXTERNAL SENDER – Proceed with caution**

---

Hi Jeffrey,

Thank you for your response.

We certainly appreciate your willingness to move the deposition date, but the only reason it was moved was because you unilaterally scheduled the deposition without consulting counsel for petitioners, and you noticed it for a date when counsel for CBD and Wishtoyo was unavailable. The only reason the date was moved was to accommodate counsel's schedule.

When we previously met and conferred, we did so to discuss a different issue: Mr. Kuprewicz's severe health issues, and possible accommodations for him to make any deposition less burdensome. Any "agreement" we reached at our previous meeting was strictly related to that issue. Notably, we are not seeking to quash the subpoena on the basis of Mr. Kuprewicz's health issues.

We are not proceeding in bad faith. This is an unusual situation, and based on our continuing research, it has come to our attention that Real Parties are not entitled to proceed with Mr. Kuprewicz's deposition at this time. Because, as explained in our previous email, the deposition exceeds the scope of permissible discovery, it remains reasonable for us to pursue a motion to quash, regardless of when the deposition was re-noticed for.

Moreover, it's not clear to us how pushing the deposition to July 1 – which, again, was necessary to accommodate counsel's schedule – resulted in any prejudice to Real Parties. We ultimately reached out to meet and confer *before* the date Mr. Kuprewicz's deposition was initially noticed for (June 24), and our formal objections will be served imminently.

Please let us know what times you are available today for a call.

Thanks,



**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org



We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

---

**From:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>
**Sent:** Monday, June 23, 2025 5:29 PM
**To:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Stanton, Garrett <Garrett.Stanton@alston.com>; michael.dorsi@doj.ca.gov; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

Mr. Frankel, we are happy to meet and confer with you tomorrow over the deposition of Mr. Kuprewicz.  But please know that if you file a motion to block the deposition from going forward, we will seek monetary sanctions against you. We agreed to move Mr. Kuprewicz's deposition to July 1 in good faith, with the understanding after *reaching an agreement with you and his independent counsel, Mr. Stolpman,* that deposition would proceed on July 1. The record reflects as much.

You never once mentioned any objection to the taking of his deposition before we agreed to move the deposition to July 1st, knowing our opposition is due on July 7th after a holiday weekend. The email below is the first we have heard of any objection to proceeding with this deposition as scheduled.  In fact, we met and conferred on June 12th, and all agreed that the deposition would proceed on July 1st at the location we selected near the witnesses' residence to accommodate his travel restrictions.  Had we been advised of such an objection, which could have been made at that time, we would not have moved the date to accommodate you and the witness.

Requesting a delay in the deposition of a declarant supporting an application for preliminary injunction so you can have additional time to file a motion for protective order or to quash the subpoena without advising opposing counsel of your intentions is bad faith and sanctionable.  Jeffrey

---

**From:** Jeremy Frankel <jfrankel@environmentaldefensecenter.org>
**Sent:** Monday, June 23, 2025 4:57 PM
**To:** djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>; michael.dorsi@doj.ca.gov; Niz, Kim <Kim.Niz@alston.com>
**Cc:** Linda Krop <lkrop@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; tnimmer@biologicaldiversity.or;

jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org
**Subject:** RE: Service Docs - Case Nos.: 25CV02244 and 25CV02247

**EXTERNAL SENDER – Proceed with caution**

---

Counsel,

After further consideration, we believe that Real Parties' attempt to depose Mr. Kuprewicz – Petitioners' retained expert consultant – exceeds the scope of permissible discovery. Generally, parties are not entitled to engage in expert discovery (including depositions) unless and until experts have been designated pursuant to CCP § 2034.210. (*See, e.g., County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57 (recognizing that information related to an expert's identity, qualifications, or opinion(s) is not discoverable before designation).) The only recognized exception to that rule is limited to summary judgment proceedings and is inapplicable here. (*See St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1540-41.)

Accordingly, at this point, petitioners in both 25CV02244 and 25CV02247 intend to file motions to quash Mr. Kuprewicz's deposition subpoena and related notices of deposition. Filing the motions will automatically stay Mr. Kuprewicz's deposition until they can be heard. (CCP § 2025.410(b).)

That said, we welcome the opportunity to first attempt to resolve this informally. Please let us know your availability to meet and confer in the next few days.

(This effort to meet and confer is joined by counsel for petitioners in 25CV02244, cc'ed here.)

Thanks,




**JEREMY FRANKEL (he/him/his)**
STAFF ATTORNEY
906 Garden Street
Santa Barbara, CA 93101
805.963.1622 x100
www.EnvironmentalDefenseCenter.org

  

We recognize that EDC sits on occupied, unceded, stolen lands of the Chumash Peoples, on Shmuwich Territory, who have called this area home for time immemorial. We commit today to make space to elevate indigenous voices and support our local Chumash and indigenous communities in our work to protect our environment.

CONFIDENTIALITY NOTE: The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

---

**From:** Niz, Kim <Kim.Niz@alston.com>
**Sent:** Friday, June 20, 2025 4:41 PM
**To:** Linda Krop <lkrop@environmentaldefensecenter.org>; Jeremy Frankel <jfrankel@environmentaldefensecenter.org>; Tara Rengifo <trengifo@environmentaldefensecenter.org>; michael.dorsi@doj.ca.gov; djmoore@paulhastings.com; benjaminhanelin@paulhastings.com; natalierogers@paulhastings.com; jteelsimmonds@biologicaldiversity.or; dpettit@biologicaldiversity.org; tnimmer@biologicaldiversity.or

**Cc:** Dintzer, Jeffrey <Jeffrey.Dintzer@alston.com>; Stanton, Garrett <Garrett.Stanton@alston.com>

**Subject:** Service Docs - Case Nos.: 25CV02244 and 25CV02247

**Electronic Service:**

Dear Counsel,

Please find attached electronic service documents:

- EDC v. Sable - Real Party in Interest's Amended Cross-Notice of Deposition of Richard B. Kuprewicz
- CBD v. Sable - Real Party in Interest's Amended Cross-Notice of Deposition of Richard B. Kuprewicz

Thank you,

Kim S. Niz | Legal Administrative Assistant
**ALSTON & BIRD**
Jeffrey D. Dintzer | Brett Oberst | Krista Hernandez
Jeff Carlin | Matthew C. Wickersham | Garrett Stanton

350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Direct:  213 576 1096 | Office:  213 576 1000
Kim.Niz@alston.com

---

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

# <u>EXHIBIT E</u>

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA BARBARA — ANACAPA DIVISION**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and <br><br> SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, <br><br> Real Parties in Interest. | Case No.: 25CV02247 <br><br><br> **PETITIONERS AND PLAINTIFFS' OBJECTION TO REAL PARTIES' DEPOSITION SUBPOENA OF RICHARD B. KUPREWICZ AND AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** <br><br> Dept.: 4 <br> Judge: Honorable Donna D. Geck <br><br> Petition Filed: April 15, 2025 <br> Trial: None Set |

Pursuant to California Code of Civil Procedure section 2025.010 et seq., Petitioner and Plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (collectively, "Petitioners") object to Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company's (collectively, "Real Parties") Deposition Subpoena of Richard B. Kuprewicz (the "Subpoena"), Petitioners' consultant in this matter, and Amended Cross-Notice of Deposition of Richard B. Kuprewicz (the "Notice") as follows:

**GENERAL OBJECTIONS**

1. Petitioners object to the Subpoena and Notice on the grounds that they exceed the scope of permissible discovery. Mr. Kuprewicz is Petitioners' retained expert consultant in this matter. While Petitioners filed a declaration from Mr. Kuprewicz in support of their ex parte application for a stay, temporary restraining order, and order to show cause, Mr. Kuprewicz has not been designated as an expert pursuant to Code of Civil Procedure section 2034.210 *et seq*. Unless and until he is so designated, Real Parties are precluded from deposing Mr. Kuprewicz or subpoenaing his records. (*County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57 (recognizing that information related to an expert's identity, qualifications, or opinion(s) is not discoverable before designation and therefore reversing a trial court's order compelling expert testimony at a deposition).) Moreover, even assuming, arguendo, that Real Parties are not summarily precluded from deposing Mr. Kuprewicz in light of Petitioners' reliance on his declaration, his deposition would only be appropriate upon an affirmative showing by Real Parties of "objective facts . . . which create a significant question regarding the validity of [Mr. Kuprewicz's declaration] which, if successfully pursued, will impeach the foundational basis of the [declaration]." (*St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1540-41.) Real Parties have not provided any such facts, and Petitioners are aware of none. Lastly, even if Real Parties were to make the requisite showing of such facts, any deposition of Mr. Kuprewicz must be limited to inquiring into the foundation of the opinions expressed in his declaration. (*See id.*) The Subpoena and Notice are not so limited.

2. Petitioners object to the Subpoena and Notice on the grounds that they seek to elicit information protected by the attorney-client privilege and/or information that constitutes attorney work

product. As noted, Mr. Kuprewicz is Petitioners' consultant in this matter, but he has not been designated as an expert pursuant to Code of Civil Procedure section 2034.210 *et seq.* Thus, all communications by and between Petitioners, their attorneys, and Mr. Kuprewicz remain privileged. (*DeLuca v. State Fish Co., Inc.* (2013) 217 Cal.App.4th 671, 688 ("[T]he attorney-client privilege . . . clearly includes communications to a consulting expert.").) Likewise, any documents, opinions, or other information prepared by Mr. Kuprewicz at Petitioners' request and not already disclosed constitute attorney work product. (*See id.*) Moreover, save for Mr. Kuprewicz's declaration, all of Mr. Kuprewicz's services to date have been rendered purely in an advisory capacity; accordingly, even if Petitioners' *were* to designate Mr. Kuprewicz as an expert, communications with Mr. Kuprewicz and information developed by Mr. Kuprewicz at Petitioners' request would remain protected as attorney work product. (*National Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476, 542-43 (holding that any information or opinions rendered by an expert in an advisory capacity remain subject to the work product limitation on discovery even after expert designation).)

## OBJECTIONS TO REQUESTS FOR PRODUCTION

1. **REQUEST FOR PRODUCTION NO. 1:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

2. **REQUEST FOR PRODUCTION NO. 2:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit B

to YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

3. **REQUEST FOR PRODUCTION NO. 3:**

Request: All DOCUMENTS and COMMUNICATIONS YOU relied on in preparing Exhibit C to YOUR declaration in support of PETITIONERS' *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

4. **REQUEST FOR PRODUCTION NO. 4:**

Request: YOUR COMMUNICATIONS with PETITIONERS RELATED TO the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

5. **REQUEST FOR PRODUCTION NO. 5:**

Request: YOUR COMMUNICATIONS discussing SABLE.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it is not reasonably particularized.

- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

6. **REQUEST FOR PRODUCTION NO. 6:**

Request: YOUR COMMUNICATIONS discussing PPC.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it is not reasonably particularized.

- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

7. **REQUEST FOR PRODUCTION NO. 7:**

Request: All DOCUMENTS reflecting any work YOU have performed RELATED TO the SYU PIPELINE.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

8. **REQUEST FOR PRODUCTION NO. 8:**

Request: All DOCUMENTS reflecting any work YOU have performed RELATED TO the LAS FLORES PIPELINE.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

9. **REQUEST FOR PRODUCTION NO. 9:**

Request: All contracts and agreements YOU have with PETITIONERS.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

10. **REQUEST FOR PRODUCTION NO. 10:**

Request: DOCUMENTS sufficient to show YOUR work in "consult[ing] for various local, state, and federal agencies, nonprofit organizations, and members of the public on pipeline regulation, operation, and design," as stated in paragraph 3 of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.
- Petitioners object to this request on the grounds that it is so broad as to be unjustly burdensome.
- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

11. **REQUEST FOR PRODUCTION NO. 11:**

Request: All drafts and versions of YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.
- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

product, as set forth in General Objection 2 above.

12. **REQUEST FOR PRODUCTION NO. 12:**

Request: All drafts and versions of Exhibit B to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

13. **REQUEST FOR PRODUCTION NO. 13:**

Request: All drafts and versions of Exhibit C to YOUR declaration in support of PETITIONER's *ex parte* application for a stay, order to show cause and temporary restraining order in the ACTION.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

14. **REQUEST FOR PRODUCTION NO. 14:**

Request: All of YOUR COMMUNICATIONS RELATED TO the civil action entitled *Sable Offshore Corp. v. California Coastal Commission et al.*, Superior Court for the State of California, Santa Barbara County Case No. 25CV00974.

Response:

- Petitioners object to this request on the grounds that it exceeds the scope of permissible discovery, as set forth in General Objection 1 above.

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

- Petitioners object to this request on the grounds that it calls for documents and information protected by the attorney-client privilege and/or constitutes attorney work product, as set forth in General Objection 2 above.

- Petitioners object to this request on the grounds that it seeks documents not relevant to the issues in this case.

Dated: June 24, 2025                    Respectfully

_____

Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

Petitioners and Plaintiffs' Objection to Deposition of Richard B. Kuprewicz

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On June 24, 2025, I served the above document(s) described as **PETITIONERS AND PLAINTIFFS' OBJECTION TO REAL PARTIES' DEPOSITION SUBPOENA OF RICAHRD B. KUPREWICZ AND AMENDED CROSS-NOTICE OF DEPOSITION OF RICHARD B. KUPREWICZ** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒ **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

☒ **By United States mail.** On the date above, I enclosed a copy of the document(s) described above in a sealed envelope or package addressed to the recipients designated in the attached Service List, postage fully prepaid, with the United States Postal Service at Santa Barbara, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 24, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

1
Proof of Service

**SERVICE LIST**

Michael S. Dorsi
Michael.Dorsi@doj.ca.gov
California Attorney General's Office
55 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

ATTORNEY FOR
RESPONDENTS/DEFENDANTS
California Department of Forestry and Fire
Protection, Office of the State Fire Marshal; and
Daniel Berlant, in his official capacity as State Fire
Marshal

Duncan Joseph Moore
djmoore@paulhastings.com
Benjamin J. Hanelin
benjaminhanelin@paulhastings.com
Natalie C. Rogers
natalierogers@paulhastings.com
PAUL HASTINGS, LLP
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp. and Pacific Pipeline
Company

Jeffrey D. Dintzer
Jeffrey.dintzer@alston.com
Matthew C. Wickersham
Matt.wickersham@alston.com
Garrett B. Stanton
Garrett.stanton@alston.com
ALSTON & BIRD LLP
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp. and Pacific Pipeline
Company

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On June 29, 2025, I served the above document(s) described as **DECLARATION OF JEREMY M. FRANKEL IN SUPPORT OF PETITIONERS AND PLAINTIFFS' OPPOSITION TO REAL PARTIES' EX PARTE APPLICATION** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒ **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 29, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

1
Proof of Service

## SERVICE LIST

Michael S. Dorsi
Michael.Dorsi@doj.ca.gov
California Attorney General's Office
55 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

ATTORNEY FOR
RESPONDENTS/DEFENDANTS
California Department of Forestry and Fire
Protection, Office of the State Fire Marshal; and
Daniel Berlant, in his official capacity as State Fire
Marshal

Duncan Joseph Moore
djmoore@paulhastings.com
Benjamin J. Hanelin
benjaminhanelin@paulhastings.com
Natalie C. Rogers
natalierogers@paulhastings.com
PAUL HASTINGS, LLP
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp. and Pacific Pipeline
Company

Jeffrey D. Dintzer
Jeffrey.dintzer@alston.com
Matthew C. Wickersham
Matt.wickersham@alston.com
Garrett B. Stanton
Garrett.stanton@alston.com
ALSTON & BIRD LLP
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp. and Pacific Pipeline
Company

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
6/30/2025 8:00 AM
By: Narzralli Baksh , Deputy

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and <br><br> SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, <br><br> Real Parties in Interest. | Case No.: 25CV02247 <br><br> **DECLARATION OF RICHARD B. KUPREWICZ** <br><br> [*Filed concurrently with Plaintiffs and Petitioners' Opposition to Ex Parte Application for an Order Requiring Mr. Kuprewicz to Appear at Deposition or, in the alternative, for an Order Shortening Time to Hear Motion to Compel Deposition and Request for Sanctions or, in the alternative, to Strike the Declaration of Mr. Kuprewicz*] <br><br> Date:      June 30, 2025 <br> Time:      8:30 a.m. <br> Dept.:      4 <br> Judge:    Donna D. Geck <br><br> Action Filed: April 15, 2025 <br> Trial: None Set |

**DECLARATION OF RICHARD B. KUPREWICZ**

I, Richard B. Kuprewicz, hereby declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called as a witness, would and could testify competently thereto.

2. I am an expert in oil and gas pipeline safety and risk management analysis based on my training, education, and experience.

3. I was retained by the Environmental Defense Center (EDC) and Center for Biological Diversity (CBD) to evaluate safety and integrity issues regarding the proposal to restart the Las Flores Pipeline System, which includes CA-324 and CA-325A/B ("the Pipelines"). Pursuant to my retention agreements with EDC and CBD, I prepared two reports: (1) a report generally outlining the dangers of restarting the Pipelines dated December 20, 2024 and titled *Evaluation of Las Flores Pipeline System Startup Proposal*, and (2) a report addressing the deficiencies of the State Waivers that the Office of the State Fire Marshal (OSFM) issued for the Pipelines dated February 21, 2025, and titled *Observations on OSFM Letters of Decision for State Waiver Requests on Line CA-324 and CA-325A/B Related to Possible Restart*.

4. On May 28, 2025, I executed a declaration explaining the findings in my reports and concluding, among other things, that the Pipelines are not safe to operate, even if the conditions of the State Waivers are fulfilled. EDC and CBD filed my declaration in support of their respective ex parte applications for an administrative stay, temporary restraining order, and preliminary injunction.

5. On June 5, 2025, I was served with a deposition subpoena by Sable Offshore Corp. and Pacific Pipeline Company. Shortly thereafter, I spoke with counsel for EDC and CBD and explained that I had various health conditions that would prevent me from traveling and could prevent me from meaningfully participating in a deposition. These health conditions stem, in part, from an open-heart surgery that I underwent in November 2024 and from which I am still in the process of recovering. Because of these conditions — which include, among other things, becoming easily fatigued, dizziness, and, just recently, double vision — I expressed to counsel for EDC and CBD that I would not be able to travel to the deposition, and that it would be in Real Parties' interest to divide the deposition into two 3.5-hour sessions to ensure I remain alert and able to participate.

6.      On June 12, 2025, Thomas Stolpman notified me that he had agreed to specially represent me for purposes of Real Parties' attempt to depose me. I explained my various health conditions to him and the recent onset of double vision I was experiencing — a particularly concerning symptom. I also told him that, in light of my double vision, my doctor had ordered imaging for my brain, and an MRI was scheduled for June 23, 2025.

7.      On June 23, 2025, I had an MRI scan of my brain with contrast. The results showed that I have a mass in my head, which is pressing on my optic nerve.

8.      My doctor advised that I immediately seek the consultation of a neurological surgeon to assess whether the mass is operable. I scheduled an appointment with a neurological surgeon for July 1, 2025, which was his earliest available date for an appointment.

9.      In light of my ongoing health conditions, my July 1, 2025, consultation, and the urgent need to operate on the mass that was found in my head, I am not able to participate in a deposition on July 1, 2025, and until I am medically cleared to do so.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27th day of June, 2025, in Nipomo, California.

Richard B. Kuprewicz

3

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On June 29, 2025, I served the above document(s) described as **DECLARATION OF RICHARD B. KUPREWICZ** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒　**By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 29, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

1
Proof of Service

**SERVICE LIST**

Michael S. Dorsi
Michael.Dorsi@doj.ca.gov
California Attorney General's Office
55 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

ATTORNEY FOR
RESPONDENTS/DEFENDANTS
California Department of Forestry and Fire
Protection, Office of the State Fire Marshal; and
Daniel Berlant, in his official capacity as State Fire
Marshal

Duncan Joseph Moore
djmoore@paulhastings.com
Benjamin J. Hanelin
benjaminhanelin@paulhastings.com
Natalie C. Rogers
natalierogers@paulhastings.com
PAUL HASTINGS, LLP
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp. and Pacific Pipeline
Company

Jeffrey D. Dintzer
Jeffrey.dintzer@alston.com
Matthew C. Wickersham
Matt.wickersham@alston.com
Garrett B. Stanton
Garrett.stanton@alston.com
ALSTON & BIRD LLP
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp. and Pacific Pipeline
Company

Trevor D. Large (SBN: 214886)
Victoria C. Diffenderfer (SBN: 350018)
**FAUVER LARGE ARCHBALD & SPRAY**
820 State Street, 4th Floor
Santa Barbara, CA 93101
Tel: (805) 966-7000
Fax: (805) 966-7227
*tlarge@flasllp.com*
*vdiffenderfer@flasllp.com*

Jeffrey D. Dintzer (SBN: 139056)
Lisa L. Garcia (SBN: 301362)
Garrett B. Stanton (SBN: 324775)
**ALSTON & BIRD, LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000; Fax: (213) 576-1100
Jeffrey.Dintzer@alston.com
Lisa.Garcia@alston.com
Garrett.Stanton@alston.com

Duncan Joseph Moore (SBN: 233955)
Benjamin J. Hanelin (SBN: 237595)
Natalie C. Rogers (SBN: 301254)
**PAUL HASTINGS**
1999 Avenue of Stars, 27th Floor
Century City, CA 90067
Telephone: (310) 620-5879; Fax: (310) 620-5899
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

Attorneys for Real Party in Interest
SABLE OFFSHORE CORP.

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
6/30/2025 5:43 PM
By: Gabriel Moreno , Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**
**ANACAPA DIVISION**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an | Case No.: 25CV02247 <br><br> **NOTICE OF ASSOCIATION OF COUNSEL** <br><br><br><br> Initial Complaint Filed:  April 15, 2025 <br><br> [Assigned for Purposes to the Honorable Donna D. Geck, Dept. 4] |

**1**
**NOTICE OF ASSOCIATION OF COUNSEL**

agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10; inclusive,

Respondents/Defendants.

SABLE OFFSHORE CORP., a Delaware Corporation, and PACIFIC PIPELINE COMPANY, a Delaware Corporation.

Real Parties in Interest.

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that the firm Fauver Large Archbald & Spray, has become associated with **ALSTON & BIRD, LLP**, and **PAUL HASTINGS**, as co-counsel for Real Pary in Interest SABLE OFFSHORE CORP.

All correspondence, filing, notices, pleadings and/or briefs pertaining to this action should be served upon Alston & Bird, LLP, Paul Hastings, and Fauver Large Archbald & Spray as follows:

Trevor D. Large (SBN: 214886)
Victoria C. Diffenderfer (SBN: 350018)
**FAUVER LARGE ARCHBALD & SPRAY**
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone: (805) 966-7000; Fax: (805) 966-7227
Email: *tlarge@flasllp.com*
*vdiffenderfer@flasllp.com*

Jeffrey D. Dintzer (SBN: 139056)
Matthew C. Wickersham (SBN: 241733)
Garrett B. Stanton (SBN: 324775)
**ALSTON & BIRD, LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000; Fax: (213) 576-1100
Jeffrey.Dintzer@alston.com
Matt.Wickersham@alston.com
Garrett.Stanton@alston.com

//



**2**
**NOTICE OF ASSOCIATION OF COUNSEL**

Duncan Joseph Moore (SBN: 233955)
Benjamin J. Hanelin (SBN: 237595)
Natalie C. Rogers (SBN: 301254)
**PAUL HASTINGS**
1999 Avenue of Stars, 27th Floor
Century City, CA 90067
Telephone: (310) 620-5879; Fax: (310) 620-5899
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

DATED: June 30, 2025                    FAUVER, LARGE, ARCHBALD & SPRAY, LLP

By: _____
Trevor D. Large
Victoria C. Diffenderfer
Attorneys for Real Party in Interest
SABLE OFFSHORE CORP.

---

**3**
**NOTICE OF ASSOCIATION OF COUNSEL**

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen, and not a party to the within action. My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101. On June 30, 2025, I served the within document:

**NOTICE OF ASSOCIATION OF COUNSEL**

By Mail: By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery: By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery: I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

  X   By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on June 30, 2025, at Santa Barbara, California.

_____
Rachel N. Miles

**4**
**PROOF OF SERVICE**

**SERVICE LIST**

| | |
|---|---|
| Jeffrey D. Dintzer<br>Lisa L. Garcia<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 576-1000; Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Lisa.Garcia@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Telephone: (310) 620-5879; Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Regnifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-1622; (510) 844-7100;<br>Fax: (805) 962-3152; (510) 844-7150<br>Email:<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |

**SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA BARBARA**

Dated and Entered:  06/30/2025                    Time:  8:30 AM
Judicial Officer:      Donna D Geck
Deputy Clerk:        Maria Vidal                         Dept:  SB Dept 4
Bailiff/Court Officer:  Vincenzo Peluso            Case No: 25CV02247
Court Reporter:      FTR

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

| | |
|---|---|
| Jeremy Frankel | Petitioner's Attorney |
| Michael Dorsi | Respondent's Attorney (via Zoom) |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Lisa Garcia | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |

---

**NATURE OF PROCEEDINGS: Real Parties In Interest Ex Parte Application For An Order Requiring Mr. Kuprewicz To Appear At Deposition Or, In The Alternative, For An Order Shortening Time To Hear Motion To Compel Deposition And Request For Sanctions Or, In The Alternative To Strike the Declaration of Mr. Kuprewicz**

Counsel presented oral argument.

The Court reserved the ruling on continuing the OSC re Preliminary Injunction to Wednesday, July 2, 2025 at 8:30 AM in Dept 4.

DARREL E. PARKER, EXECUTIVE OFFICER                    Minutes Prepared by:

                                                                    _____  , Deputy
                                                                              Maria Vidal

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/1/2025 6:53 PM
By: Narzralli Baksh , Deputy

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and <br><br> SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, <br><br> Real Parties in Interest. | Case No.: 25CV02247 <br><br> **NOTICE OF UPDATE REGARDING RICHARD B. KUPREWICZ; DECLARATION OF RICHARD B. KUPREWICZ** <br><br> Date: July 2, 2025 <br> Time: 8:30 a.m. <br> Dept.: 4 <br> Judge: Donna D. Geck <br><br> Action Filed: April 15, 2025 <br> Trial: None Set |

1

Notice of Update Regarding Richard B. Kuprewicz

**NOTICE OF UPDATE REGARDING RICHARD B. KUPREWICZ**

On June 30, 2025, Real Parties Sable Offshore Corp. and Pacific Pipeline Company's ("Real Parties") applied *ex parte* to compel the deposition of Richard B. Kuprewicz, Petitioners' retained expert consultant in this matter. The Court continued the matter to July 2, 2025, so it could consider the results of a medical examination Mr. Kuprewicz had scheduled for July 1, 2025. To assist the Court in resolving Real Parties' application, Petitioners provide the following update on Mr. Kuprewicz's July 1, 2025, examination and his current condition.

*Mr. Kuprewicz's July 1, 2025 Examination*

As was previously disclosed, on June 23, 2025, Mr. Kuprewicz had an MRI scan of his brain after reporting concerning neurological symptoms to his physician, including double vision. (Declaration of Richard B. Kuprewicz, ¶¶ 2, 3 [hereinafter "Kuprewicz Declaration"].) The scan revealed that he has a mass in his head, which, among other things, is pressing on his optic nerve. (*Id.* at ¶ 3.) The results of the scan are attached as **Exhibit A** to Mr. Kuprewicz's declaration, filed herewith.

Today, July 1, 2025, Mr. Kuprewicz was examined by Dr. Muhammad Asif Taqi, a neurovascular specialist, who assessed the results of the scan. (*Id.* at ¶¶ 4-6.) Dr. Taqi informed Mr. Kuprewicz that his condition is incredibly serious, and that urgent surgery is needed to remove the mass. (*Id.* at ¶ 5.) Accordingly, Dr. Taqi referred Mr. Kuprewicz to a neurosurgeon for additional tests and surgical consultation. (*Id.* at ¶ 6.) An initial appointment is scheduled for July 8, 2025, and it is expected that Mr. Kuprewicz will thereafter undergo a series of urgent, further testing to determine the extent of surgery required and how quickly it must be scheduled. (*Id.* at ¶¶ 6-7.)

At his July 1, 2025, appointment with Dr. Taqi, Mr. Kuprewicz specifically asked Dr. Taqi if he could participate in a deposition. Dr. Taqi told him that he was not able to do so in his current condition. (*Id.* at ¶ 5.)

*Proposal for July 18, 2025, OSC Hearing*

Mr. Kuprewicz's diagnosis came as a shock to Petitioners, and it will leave Petitioners materially disadvantaged unless and until they can retain a new pipeline safety expert.

Petitioners understand that the Court wants to ensure that the upcoming July 18, 2025, OSC hearing is conducted equitably and fairly, and that Real Parties' have an adequate opportunity to

challenge Mr. Kuprewicz's opinions. As acknowledged in the cases previously cited by Petitioners, the standard way to challenge an expert declarant's opinion at this stage of the proceedings is not by deposition, but by filing a responsive expert declaration. (*See St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1540; *County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57.) That option remains available to Real Parties.

However, Petitioners additionally offer the following to ensure Petitioners are not somehow advantaged by Mr. Kuprewicz's unavailability, and that the parties will be on equal footing for the July 18, 2025, OSC hearing:

1. Petitioners will not seek to depose the expert declarants on whom Real Parties rely in advance of the July 18, 2025, OSC hearing; and

2. Petitioners will not submit a reply declaration from Mr. Kuprewicz in response to Real Parties' opposition papers.

Dated: July 1, 2025                    Respectfully submitted,

_____

Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

## DECLARATION OF RICHARD B. KUPREWICZ

I, Richard B. Kuprewicz, hereby declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called as a witness, would and could testify competently thereto.

2. Several weeks ago, I began experiencing some concercing neurological symptoms, including, most notably, double vision. When I informed my physician about my symptoms, he immediately ordered imaging for my brain, and an MRI was scheduled for June 23, 2025.

3. On June 23, 2025, I had an MRI scan of my brain with contrast. The results showed that I have a mass in my head, which is pressing on my optic nerve. A true and accurate copy of the result of the MRI scan is attached hereto as **Exhibit A**.

4. After seeing the results of the MRI, my physician advised that I immediately seek the consultation of a neurovascular specialist to assess the mass and whether it is operable. On the recommendation of my physician, I scheduled an appointment with Dr. Muhammad Asif Taqi, a neurovascular specialist, for July 1, 2025 at 1:30 p.m., which was his earliest available date for an appointment.

5. At my July 1, 2025, appointment, Dr. Taqi informed me that my condition is incredibly serious and that urgent surgery is required to remove the mass. When I specifically asked Dr. Taqi if I could participate in a deposition, he told me that I was not able to do so in my current condition, and, if asked, he could not grant authorization for me to participate in a deposition.

6. Dr. Taqi referred me to Dr. Arnau Benet, a neurosurgeon based in Thousand Oaks, for additional tests and consultation for surgery. My first appointment with Dr. Benet is next Tuesday, July 8, 2025.

7. After my initial appointment next Tuesday, it is expected that I will need to conduct additional and extensive testing to determine the extent of surgery required and how quickly it must be scheduled.

8. In light of my ongoing health conditions, the advice of my doctor at my July 1, 2025, consultation, the need for me to conduct additional extensive testing, and the urgent need to operate on the mass in my head, I am not able to participate in a deposition at this time.

2

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 1st day of July, 2025, in Solvang, California.

Richard B. Kuprewicz

# EXHIBIT A

✻ 6/24/2025 16:51    ☏18009380031    chwcarrd14    RRD→18056171743    26/27

KUPREWICZ. RICHARD BERNARD                                1000159889(AMB); 3000651386(AGC); 3000651386(MMC); 3000651386(FHM)
4/8/1950                                                                                                                                    1426177
                                                                         * Auth (Verified) *
          From ANA CRISTINA MERIDA         18058763052              6/24/2025 11:39:22 PDT              Page 4 of 5
                                        To: SEDEEK MD, RAGUI W.  From: (805) 876-3052

## ❀ Dignity Health.
### Arroyo Grande
### Community Hospital

345 South Halcyon Road - Arroyo Grande, CA 93420
Tel: 805-473-7670  Fax: 805-473-7682

| | | | |
|---|---|---|---|
| **PATIENT:** | KUPREWICZ, RICHARD BERNARD | **DOB:** | 04/08/1950 Age: 75 |
| **Sex:** | M | **Location:** | IMAG |
| **Account:** | 76008230799 | **Exam Date:** | 06/23/2025 |
| **MRN:** | 3000651386 | **Accession#:** | 37-MR-25-038530 |
| **Referred by:** | RAGUI W. SEDEEK MD | | |

**PROCEDURE:**   MRI OF THE BRAIN WITHOUT AND WITH CONTRAST

**COMPARISON:**   Arroyo Grande Community Hospital, XR, XR CHEST 2 VIEWS, 12/15/2024, 14:33.

**INDICATIONS:**   Sixth [abducent] nerve palsy, right eye, Ataxia, unspecified

**CLINICAL:**   Ataxia.
**PRIORS:**   No.
**INJURY:**   No.
**CANCER:**   No.
**SURGERY:**   No.

**TECHNIQUE:**   Multisequence, multiplanar MRI was performed on a 1.5T magnet.
**CONTRAST:**   Images obtained before and after contrast. Vueway 7.5 mL vial 5 mL administered IV. 2.5 mL of wasted contrast from the single dose vial.
**SEDATION:**   None.
**MEDICATION GIVEN:**   None.

**FINDINGS:**
**VENTRICLES/SULCI:**   Mild ventriculomegaly.
Poorly defined irregular enhancing mass centered on the left tentorial leaflet. This measures approximately 7.7 x 2.6 x 1.7 cm. Anteriorly this approaches the orbital apex and contacts the left anterior clinoid process. The mass appears to nearly completely involve the left cavernous sinus. The mass straddles the medial left middle cranial fossa and lateral left posterior cranial fossa. Minimal involvement of the sella. Enhancement extends into the left internal auditory canal. Superiorly, the mass extends nearly to the tentorial incisura. Inferiorly, the mass overlies the left dorsal clivus.

**CEREBRUM:**   No evidence of parenchymal hemorrhage, mass, or acute infarction.
Small remote microhemorrhage in the posterior paramedian left frontal lobe.
**CEREBELLUM:**   No mass or mass effect. No tonsillar ectopia.
Small remote cerebellar infarcts.
**BRAINSTEM:**   Unremarkable.
**BASAL CISTERNS:**   Unremarkable.
**SKULL:**   Large left mastoid effusion.

DICOM format may not be available to non-affiliated external healthcare facilities or entities or a secure, audio-free, reciprocally searchable basis with added authorization for at least a 12-month period after the study.

In an effort to expedite delivery, this document was created using voice recognition software. Errors in syntax, grammar, and word selection may be present. Should there be questions regarding the content of this document, please contact us for clarification.

This document is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this document is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the communication in error, please notify us immediately by telephone and return the original message to the address of the facility listed above via U.S. Postal Service. Thank you.

✗ 6/24/2025 16:51        ✗18009380031        chwcarrd14        RRD→18056171743        27/27

KUPREWICZ, RICHARD BERNARD
4/8/1950

1000169889(AMB); 3000651386(AGC); 3000651386(MMC); 3000651386(FHM)
1426177

* Auth (Verified) *

From ANA CRISTINA MERIDA        18058763052        6/24/2025 11:39:22 PDT        Page 5 of 5
To: SEDEEK MD, RAGUI W.   From: (805) 876-3052

PATIENT:   KUPREWICZ, RICHARD BERNARD        DOB:   04/08/1950 Age: 75
Sex:       M                                 Location:   IMAG
Account:   76008230799                       Exam Date:  06/23/2025
MRN:       3000651386                        Accession#: 37-MR-25-038530
Referred by: RAGUI W. SEDEEK MD

OTHER:        Negative.

CONCLUSION:
1. Large enhancing mass centered on the left tentorial leaflet involving the left cavernous sinus and surrounding structures. Differential considerations include an atypical meningioma, solitary fibrous tumor of the dura, metastasis, and sarcoma.
2. Mild ventriculomegaly without clear cause of obstruction. This may be ex vacuo dilation.

Dictated by: D. Kenneth Jamison, M.D. on 06/23/2025 at 16:53
Approved by: D. Kenneth Jamison, M.D. on 06/23/2025 at 16:09

cc's to VISHAL GOYAL MD and DR. NANCY KITSON

Electronically Signed By: Kitson, Nancy
Date 06/24/2025 13:34

In this event is a copy for delivery, this document was created using word recognition software. Errors in syntax, grammar, and word selection may be present. Should there be questions regarding the content of this document, please contact us for clarification.

This document is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this document is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to the address of the facility listed above via U.S. Postal Service. Thank you.

Name: KUPREWICZ, RICHARD        Page 26 of 26        DOB: 04/08/1950
CL MONARCH CTR BERNARD

Added on 06/25/2025 3:07 pm
Signed electronically by Asif Taqi, MD, FAHA on 06/25/2025 3:07 pm in ElationHealth



**Your procedure will take place at Cottage Hospital, please check in at the Main Entrance:** 400 West Pueblo Street, Santa Barbara, CA, 93105 ▪ 805-682-7111

Your angiogram is scheduled on _____

.The check in time is between 6-730am cottage will cl you with exact check in time 24 hours in advance.

## PROCEDURE PREPARATION GUIDELINES:

- **No eating or drinking** after midnight the night before your procedure.

- Please continue medications as instructed.

- Please notify the Office if you are currently on any **diabetic, blood thinning or blood pressure medications.**

- Please **do not stop taking any medications** unless instructed.

- Medications which have been cleared by the Office may be taken with small sips of water the morning of the procedure.

- Please notify the Office if you are **allergic to iodine, shellfish or have had a previous reaction with contrast media.**

- You will need **someone to drive you** home from the procedure if you don't need tbe other procedure.

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On July 1, 2025, I served the above document(s) described as **NOTICE OF UPDATE REGARDING RICHARD B. KUPREWICZ; DECLARATION OF RICHARD B. KUPREWICZ** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒    **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 1, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

---

1

Proof of Service

**SERVICE LIST**

| | |
|---|---|
| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEY FOR RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; and Daniel Berlant, in his official capacity as State Fire Marshal |
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBAL & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:  07/02/2025                    Time:  8:30 AM
Judicial Officer:      Donna D Geck
Deputy Clerk:         Maria Vidal                       Dept:   SB Dept 4
Bailiff/Court Officer:  Kenneth Toste                Case No: 25CV02247
Court Reporter:       Marie Castro

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

Jeremy Frankel          Petitioner's Attorney
Michael Dorsi           Respondent's Attorney (via Zoom)
Jeffrey Dintzer         Attorney for Real Party in Interest
Garrett Stanton         Attorney for Real Party in Interest
Trevor Large            Attorney for Real Party in Interest

---

**NATURE OF PROCEEDINGS***:  **Real Parties In Interest Ex Parte Application For An Order Requiring Mr. Kuprewicz To Appear At Deposition Or, In The Alternative, For An Order Shortening Time To Hear Motion To Compel Deposition And Request For Sanctions Or, In The Alternative To Strike the Declaration of Mr. Kuprewicz**


Counsel presented argument.

The Court made the following order:

The Court stated that Mr. Kuprewicz is unable to go forward with his deposition. Petitioners can file a responsive expert declaration. Petitioners have agreed not to take the depositions of Real Party in Interests' experts. Petitioners will not submit a reply declaration for Mr. Kuprewicz.


DARREL E. PARKER, EXECUTIVE OFFICER              Minutes Prepared by:

                                                           _____  , Deputy
                                                                    Maria Vidal

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:  07/02/2025                    Time:  8:30 AM
Judicial Officer:       Donna D Geck
Deputy Clerk:          Maria Vidal                      Dept:  SB Dept 4
Bailiff/Court Officer:   Kenneth Toste            Case No: 25CV02247
Court Reporter:        Marie Castro

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

Jeremy Frankel          Petitioner's Attorney
Michael Dorsi            Respondent's Attorney (via Zoom)
Jeffrey Dintzer          Attorney for Real Party in Interest
Garrett Stanton          Attorney for Real Party in Interest
Trevor Large            Attorney for Real Party in Interest

---

**NATURE OF PROCEEDINGS***:  **Real Parties In Interest Ex Parte Application For An Order Requiring Mr. Kuprewicz To Appear At Deposition Or, In The Alternative, For An Order Shortening Time To Hear Motion To Compel Deposition And Request For Sanctions Or, In The Alternative To Strike the Declaration of Mr. Kuprewicz**


Counsel presented argument.

The Court made the following order:

The Court stated that Mr. Kuprewicz is unable to go forward with his deposition. Petitioners can file a responsive expert declaration. Petitioners have agreed not to take the depositions of Real Party in Interests' experts. Petitioners will not submit a reply declaration for Mr. Kuprewicz.


DARREL E. PARKER, EXECUTIVE OFFICER          Minutes Prepared by:

                                                    _____ , Deputy
                                                           Maria Vidal

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
DarreE. Parker, Executive Officer
7/7/2025 2:21 PM
By: Terri Chavez , Deputy

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General
MATTHEW BULLOCK (SBN 243377)
MICHAEL S. DORSI (SBN 281865)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3802
  Fax:  (415) 703-5480
  E-mail:  Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants
Department of Forestry and Fire Protection, by and
through the Office of the State Fire Marshal, an
agency of the State of California; Daniel Berlant, in
his official capacity as State Fire Marshal*

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA

**ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,**

**Petitioners and Plaintiffs,**

**v.**

**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,**

**Respondents and Defendants**

**SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,**

**Real Parties in Interest.**

Case Nos.    25CV02247

**STIPULATION ADDRESSING BRIEFING ON ORDERS TO SHOW CAUSE RE: PRELIMINARY INJUNCTIONS AND/OR STAY**

Date:         July 18, 2025
Time:        8:30 a.m.
Dept:        4
Judge:       Hon. Donna Geck

Trial Date:   Not Set
Action Filed: April 15, 2025

THIS STIPULATION IS TO BE FILED IN THIS MATTER AND THE RELATED CASE, NO. 25CV02244

1

**STIPULATION**

Petitioners Center for Biological Diversity, et al. (CBD) and Environmental Defense Center, et al (EDC), Respondents California Department of Forestry and Fire Protection, et al. (CAL FIRE), and Real Parties in Interest Sable Offshore Corp., et al. (Sable) conferred and agree that, in these related cases, *CBD v. CAL FIRE*, Case No. 25CV02244, and *EDC v. CAL FIRE*, Case No. 25CV02247, the Orders to Show Cause re: Preliminary Injunction and/or Stay, entered June 3, 2025, set for hearing on July 18, 2025, should be briefed jointly. Specifically, the parties stipulate:

1.  CAL FIRE will prepare one responding brief, with one set of supporting papers. CAL FIRE will file this brief, along with supporting documents, in both cases.

2.  Like CAL FIRE, Sable will prepare one responding brief, with one set of supporting papers. Sable will file this brief, along with supporting documents, in both cases.

3.  CBD and EDC will each file one reply brief, to be filed in their respective cases, which may address matters raised in either case.

Dated:  July 7, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General

/s/ Michael S. Dorsi
Deputy Attorney General
*Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal*

CENTER FOR BIOLOGICAL DIVERSITY

/s/ Julie Teel Simmonds
*Attorneys for Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation*

2

ENVIRONMENTAL DEFENSE CENTER

/s/ Linda Krop
*Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation; Santa Barbara County Action Network, a California non-profit corporation; Sierra Club, a national non-profit corporation; and Santa Barbara Channelkeeper, a California non-profit corporation*

PAUL HASTINGS LLP

/s/ Duncan Joseph Moore
*Attorneys for Real Parties in Interest Sable Offshore Corp., a Delaware Corporation, Pacific Pipeline Company, a Delaware Corporation*

As the attorney responsible for the filing of this Declaration, I, Michael S. Dorsi, attest that all signatories to this Stipulation authorized me to affix their electronic signatures to this Declaration. /s/ Michael S. Dorsi

LA2025400847
44685576.docx

3

**DECLARATION OF SERVICE**

Case Names:    **ENVIRONMENTAL DEFENSE CENTER, et al. v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.**

Case Nos.:    **25CV02247**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter.

On July 7, 2025, I served the attached:

- **STIPULATION ADDRESSING BRIEFING ON ORDERS TO SHOW CAUSE RE: PRELIMINARY INJUNCTIONS AND /OR STAY**

by transmitting a true copy via electronic mail addressed as follows:

| | |
|---|---|
| Linda Krop<br>lkrop@environmentaldefensecenter.org<br>Jeremy M. Frankel<br>jfrankel@environmentaldefensecenter.org<br>Tara C. Rengifo<br>trengifo@environmentaldefensecenter.org<br>ENVIRONMENTAL DEFENSE CENTER | Julie Teel Simmonds<br>jteelsimmonds@biologicaldiversity.org<br>David Pettit<br>dpettit@biologicaldiversity.org<br>Talia Nimmer<br>tnimmer@biologicaldiversity.org<br>CENTER FOR BIOLOGICAL DIVERSITY |
| Moore, DJ djmoore@paulhastings.com<br>Hanelin, Benjamin J.<br>benjaminhanelin@paulhastings.com<br>Rogers, Natalie C.<br>natalierogers@paulhastings.com<br>PAUL HASTINGS LLP | Bolender, Brooke<br>Brooke.Bolender@alston.com<br>Jeffrey Dintzer jeffrey.dintzer@alston.com<br>ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 7, 2025 at Concord, California.

| | |
|---|---|
| C. Murphy | /s/ C. Murphy |
| Declarant | Signature |

R OB B ONTA
Attorney General of California
M YUNG P ARK
Supervising Deputy Attorney General
M ATTHEW B ULLOCK (SBN 243377)
M ICHAEL S. D ORSI (SBN 281865)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3802
  Fax:  (415) 703-5480
  E-mail:  Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants
Department of Forestry and Fire Protection, by and
through the Office of the State Fire Marshal, an
agency of the State of California; Daniel Berlant, in
his official capacity as State Fire Marshal*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
DarreE. Parker, Executive Officer
7/7/2025 9:24 PM
By: Terri Chavez , Deputy

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

**ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,**

                **Petitioners and Plaintiffs,**

           **v.**

**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,**

           **Respondents and Defendants**

**SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,**

           **Real Parties in Interest.**

Case No. 25CV02247

**RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**

Date:       July 18, 2025
Time:      8:30 a.m.
Dept:      4
Judge:    Hon. Donna Geck

Trial Date:   Not Set
Action Filed: April 15, 2025

CONSISTENT WITH STIPULATION, THIS BRIEF AND SUPPORTING DOCUMENTS ARE FILED IN THIS MATTER AND THE RELATED CASE, NO. 25CV02244

1

Response to Order to Show Cause re: Stay or Preliminary Injunction (25CV02247)

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 6

BACKGROUND .......................................................................................................... 7

    I.      The Las Flores Pipeline System .................................................................. 7

    II.     The 2015 Refugio Oil Spill and Consent Decree ....................................... 8

    III.    The OSFM Waivers and Petitioners' Cases............................................... 8

LEGAL STANDARDS ................................................................................................ 9

ARGUMENT .............................................................................................................. 10

    I.      The Office of the State Fire Marshal Will Prevail on the Merits Because it Acted Consistent with California Law ................................................... 10

        A.    Petitioner's CEQA Claims Lack Merit ..................................... 10

            1.    The OSFM Waivers Are Not a "Project" and Do Not Approve a Project .......................................................... 10

            2.    The Existing Facilities Exemption Applies ................................. 11

            3.    The Las Flores Pipeline is Analyzed in the Existing EIR............. 14

        B.    Petitioners' Procedural Claims Lack Merit .............................................. 15

            1.    Petitioners' Federal Statutory Claims Fail.................................. 15

            2.    CAL FIRE/OSFM Satisfied State Law Requirements ................. 17

    II.     The Equities Favor Government Action Consistent With State Law.................. 19

CONCLUSION ........................................................................................................... 20

2

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Apartment Ass'n of Greater Los Angeles v. City of Los Angeles*
(2001) 90 Cal.App.4th 1162 ............................................................................... 13

*City and County of San Francisco v. U.S. Department of Transportation*
(9th Cir. 2015) 796 F.3d 993 .............................................................................. 16

*City of Pasadena v. State of California*
(1993) 14 Cal.App.4th 810.................................................................................. 12

*Committee for a Progressive Gilroy v. State Water Resources Control Board.*
(1987) 192 Cal.App.3d 847 .......................................................................10, 12, 13

*Common Cause v. Board of Supervisors*
(1989) 49 Cal.3d 432 ........................................................................................... 9

*Craik v. County of Santa Cruz*
(2000) 81 Cal.App.4th 880.................................................................................. 18

*Davidon Homes v. City of San Jose*
(1997) 54 Cal.App.4th 106.................................................................................. 13

*Gonzaga University v. Doe*
(2002) 536 U.S. 273............................................................................................ 17

*In Re Midamerican Energy Co.*
(Jan. 15, 2002) 2002 WL 31155601 ................................................................... 16

*IT Corp. v. County of Imperial*
(1983) 35 Cal.3d 63 ............................................................................................. 9

*Lake Norconian Club Foundation v. Department of Corrections & Rehabilitation*
(2019) 39 Cal.App.5th 1044................................................................................ 11

*Mae M. v. Komrosky*
(2025) 111 Cal.App.5th 198................................................................................ 19

*Maryland v. King*
(2012) 567 U.S. 1301.......................................................................................... 19

*McCoy v. Board of Retirement*
(1986) 183 Cal.App.3d 1044 .............................................................................. 19

*Medina v. Planned Parenthood South Atlantic*
(U.S., June 26, 2025, No. 23-1275) 2025 WL 1758505 ...................................... 17

3

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Moss v. County of Humboldt*
(2008) 162 Cal.App.4th 1041 ............................................................................... 15

*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*
(1977) 434 U.S. 1345 ......................................................................................... 19

*Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*
(8th Cir. 2008) 530 F.3d 724 ............................................................................. 20

*Santa Clara Valley Water Dist. v. San Francisco Bay Regional Water Quality Control Bd.*
(2020) 59 Cal.App.5th 199 .......................................................................... 14, 19

*Simons v. City of Los Angeles*
(1976) 63 Cal.App.3d 455 ........................................................................... 10, 11

*Smith v. Reiskin*
(N.D. Cal. Oct. 10, 2018) No. 4:18-cv-01239-JSW, 2018 WL 7820727 ............................. 20

*Southern Pacific Transportation Co. v. State Bd. of Equalization*
(1987) 191 Cal.App.3d 938 ................................................................................. 18

*Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.*
(1994) 23 Cal.App.4th 1459 ........................................................................... 9, 19

*Tulare Lake Canal Company v. Stratford Public Utility District*
(2023) 92 Cal.App.5th 380 ................................................................................... 9

*U.S. v. Sun-Diamond Growers of California*
(1999) 526 U.S. 398 ........................................................................................... 16

*Western States Petroleum Assn. v. Superior Court*
(1995) 9 Cal.4th 559 .......................................................................................... 12

*Young v. City of Coronado*
(2017) 10 Cal.App.5th 408 ................................................................................. 18

**STATUTES**

42 U.S.C. § 1983 .................................................................................................. 17

4

**TABLE OF AUTHORITIES**
(continued)

**Page**

49 U.S.C.
    § 60118 .......................................................................................................... 15–16
    § 60118, subd. (c)(1)(A) ................................................................................ 16
    § 60118, subd. (c)(1)(B) ................................................................................ 16
    § 60121 ............................................................................................................ 16
    § 60121, subd. (a) .......................................................................................... 17

Code of Civil Procedure
    § 526, subd. (b)(4) ..................................................................................... 9, 20
    § 1094.5, subd. (g) ........................................................................................... 9

Government Code
    §§ 51010–51019.1 .......................................................................................... 17
    §§ 51010–51019.1 .......................................................................................... 19
    § 51011 ............................................................................................................ 17
    § 51011, subd. (b) .......................................................................................... 18
    § 51011, subd. (c) .......................................................................................... 18

Public Resources Code
    § 21005, subd. (a) .......................................................................................... 19
    § 21065, subd. (a) ..................................................................................... 10–11
    § 21080, subd. (a) ..................................................................................... 10, 11
    § 21166 ............................................................................................................ 14
    § 21167.3, subd. (a) ....................................................................................... 10

**REGULATIONS**

California Code of Regulations Title 14
    § 15051, subd. (b) .......................................................................................... 14
    § 15300.2 ......................................................................................................... 13
    § 15301 ...................................................................................................... 11–12
    § 15302 ............................................................................................................ 13
    § 15378 ............................................................................................................ 10

**OTHER AUTHORITIES**

Kostka & Zischke, Practice under the Cal. Environmental Quality Act (2d ed. 2008)
    § 4.22 ............................................................................................................... 11
    § 5.77 ............................................................................................................... 12

Response to Order to Show Cause re: Stay or Preliminary Injunction (25CV02247)

**INTRODUCTION**

California law gives the Office of the State Fire Marshal (OSFM) jurisdiction over safety standards and practices for intrastate oil pipelines. OSFM is charged with ensuring pipeline safety and authorized to impose conditions on pipeline operators to ensure safety. Among those protections are measures addressing the risks presented by corrosion. Oil pipelines often use systems called *cathodic protection* to prevent corrosion. The Las Flores Pipeline System includes just such a system. But the 2015 Refugio Oil Spill exposed that the system did not work as intended due to certain features of the pipelines and their insulation systems.

In response, on March 13, 2020, the United States of America, four agencies of the State of California including the California Department of Forestry and Fire Protection's Office of the State Fire Marshal, and the Regents of the University of California filed a complaint against and consent decree with Plains All American Pipeline, L.P., and Plains Pipeline, L.P. (collectively Plains), who at the time owned and operated the Las Flores Pipeline System. The Consent Decree awarded civil penalties and damages, and imposed rules that the pipeline owner—then Plains, now Real Parties in Interest Sable Offshore Corporation and Pacific Pipeline Company (collectively Sable)—would have to satisfy before restarting the flow of oil in the Las Flores Pipeline System. Among the provisions are requirements for Plains or its successor Sable to obtain a state waiver before restarting the flow of oil.

The term *waiver* comes from the fact that it waives the federal requirement for cathodic protection. As a practical matter, a waiver contains a new set of conditions designed to ensure protection of human health and the environment. OSFM imposed 68 conditions on pipeline CA-325A/B and 67 conditions on pipeline CA-324. (Declaration of Michael S. Dorsi, Exhibits 1 and 2 ["OSFM Waivers"].) In effect, the waivers authorize Sable to restore the Las Flores Pipeline System to use so long as it follows these additional, more stringent, conditions.

Petitioners challenged the waivers, alleging that OSFM was required to perform "subsequent environmental review" under the California Environmental Quality Act (CEQA) and follow other state and federal procedures. Petitioners' argument seeking to compel OSFM to prepare a subsequent EIR fails because (a) the Waivers are not "projects" as defined in CEQA,

6

(b) the pipelines fall within the existing facilities exemption to CEQA, and (c) the matter is fully analyzed in the existing EIR. More, OSFM acted consistent with federal and state procedures, including publishing to Regulations.gov. Rather than enforcing these rules on their own terms, it appears that Petitioners seek to expand the specific requirements into a kind of quasi-CEQA process, despite having no authority for imposing the heavy burden that would entail.

In their applications for preliminary relief, Petitioners ask this Court to substitute its judgment for the considered judgment of the elected and appointed officials of the United States and the State of California. Petitioners present this under the guise of the *equities*, which are a part of the test for preliminary injunctions. But when the executive branch acts lawfully, it suffers an irreparable injury by being prevented from carrying out its responsibilities under the law. The law in California is not a ban on oil production in the Santa Barbara Channel. The law is that Sable may operate only if it does so consistent with the legal rules and standards. Sometimes this places agencies adverse to Sable. (See *Sable Offshore Corp., et al. v. California Coastal Commission*, Case No. 25CV00974.) Other times, as here, it involves state agencies imposing restrictions on Sable. Because OSFM complied with the law when it imposed those conditions by way of state waivers, the Court should deny Petitioners' applications for preliminary relief.

## BACKGROUND

### I.    THE LAS FLORES PIPELINE SYSTEM

America's first offshore oil drilling commenced in 1896 in Santa Barbara County. Originally built on piers, drilling shifted to offshore platforms connected by undersea pipelines, which in turn connected to pipelines on shore. Among these pipeline systems are the pipelines that facilitate operation of the Santa Ynez Unit—three offshore platforms connected to an onshore pipeline system. Prior to 2015, Plains Pipeline, L.P., a subsidiary of Plains All American Pipeline, L.P., operated the onshore pipelines formerly known as Line 901 and Line 903 (now known as CA-324 and CA-325, respectively). These pipelines, collectively known as the Las Flores Pipeline System, formed a connection necessary to bring oil to market after it is brought onshore from the three offshore platforms in the Santa Ynez Unit. In January 1985, the California State Lands Commission and the United States Bureau of Land Management (BLM) published the

Final Environmental Impact Report (EIR) and Environmental Impact Statement (EIS)[1] covering what is now known as the Las Flores Pipeline System. BLM also published a Supplemental EIS.

## II.    THE 2015 REFUGIO OIL SPILL AND CONSENT DECREE

On May 19, 2015, Line 901 failed, resulting in the Refugio Oil Spill. Since the pipelines were deactivated in response to the Refugio Oil Spill, the Las Flores Pipeline System has remained offline. Several government agencies concluded that Plains' poor management resulted in environmental harm, and sought penalties, damages, and conditions. In response to these agencies' positions, Plains entered into a consent decree, approved by the United States District Court for the Central District of California, governing the actions that it would be required to take prior to restart of the Las Flores Pipeline System. (Dorsi Decl., Exh. 3 ["Consent Decree"] at pp. 73–74; see also p. 69 [CAL FIRE agreement to Consent Decree].) Sable, as successor in interest to Plains, is bound by the Consent Decree. (*Id*. at pp. 53–55, ¶¶ 88–92.)

The Consent Decree anticipated that, prior to restart of the Las Flores Pipeline System, Plains (now Sable) would be required to obtain state waivers for both parts of the Las Flores Pipeline System. (*Id.* at p. 80.) The parties to the Consent Decree and the District Court were fully aware of the limited effectiveness of the then-existing cathodic protection system. The Consent Decree provided that Plains agreed not to contest (and bound its successors not to contest) the inclusion of certain terms in the waivers and acknowledged that OSFM might impose additional terms. The Consent Decree contains no indication that any party to the Decree contemplated that an EIS or EIR would be required prior to carrying out any of the terms of the Decree.

## III.    THE OSFM WAIVERS AND PETITIONERS' CASES

Sable acquired the Las Flores Pipeline System and applied for waivers on April 24, 2024. CAL FIRE issued the OSFM Waivers on December 17, 2024, with the federal Pipeline and Hazardous Materials Safety Administration (PHMSA) providing its notices of non-objection to the OSFM Waivers on February 11, 2025. Petitioners filed suit on April 15, 2025, alleging, *inter alia*, that CAL FIRE was required to prepare an EIR prior to issuing the OSFM Waivers. On

---

[1] EIR is the term for California agency environmental document; EIS is the term for the analogous federal document under the National Environmental Policy Act (NEPA).

8

Monday, June 2, 2025, Petitioners gave notice that they would apply, ex parte, for a temporary restraining order (TRO). The Court held a hearing on Tuesday, June 3, 2025, and granted the TROs, setting a hearing on preliminary injunction or stay of the OSFM Waivers on July 18, 2025.

**LEGAL STANDARDS**

To obtain preliminary relief, a moving party must demonstrate (1) likely success on the merits, and (2) that the interim harm that the moving party would suffer, absent an injunction, outweighs the harm the other parties would suffer from an injunction. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69–70.) In cases concerning public rights, such as cases brought pursuant to CEQA, courts weigh not only the interests of the parties, but how the public interest would be served by granting or denying preliminary relief. (See *Tulare Lake Canal Company v. Stratford Public Utility District* (2023) 92 Cal.App.5th 380, 398.) When preliminary relief is sought against a public entity like OSFM, a more strenuous showing of irreparable injury is required because there is "a general rule against enjoining public officers or agencies from performing their duties." (*Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1471.)

Petitioners seek a preliminary injunction and a stay of the OSFM Waivers. The use of injunctions is limited, and "cannot be granted . . . [t]o prevent the execution of a public statute by officers of the law for the public benefit." (Code Civ. Proc., § 526, subd. (b)(4).) Alternatively, Code of Civil Procedure section 1094.5, subdivision (g), provides that a court "may stay the operation of the administrative order . . . However, no such stay shall be imposed or continued if the court is satisfied that it is against the public interest." Unlike a preliminary injunction, which would restrain future conduct, a stay suspends the validity of past approval.

When considering preliminary remedies, "[t]he scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.) Here, Petitioners must demonstrate that the relief they seek here is either (a) the same relief they could obtain after judgment, or (b) ancillary relief that is authorized by statute or equity (e.g., a stay to preserve the court's jurisdiction). And Public Resources Code section 21167.3, subdivision (a), compels a

9

responsible agency, in certain situations, to continue its evaluation of an applicant's submissions.

## ARGUMENT

### I. THE OFFICE OF THE STATE FIRE MARSHAL WILL PREVAIL ON THE MERITS BECAUSE IT ACTED CONSISTENT WITH CALIFORNIA LAW

#### A. Petitioner's CEQA Claims Lack Merit

CEQA does not compel the preparation of an EIR for the OSFM Waivers for several reasons, each outlined below. But more than the specific reasons, this case turns on what is the appropriate baseline for comparison. Petitioners' briefs frame the comparison as between the operation of the Las Flores Pipeline System and stopping that system. But this is the wrong point of comparison for a waiver that addresses an existing pipeline. Petitioners' framing is contrary to established law. Rather than comparing the use versus disuse of the Las Flores Pipeline System, the Court should compare to the pre-2015 use of the system with the use that would be allowed by the OSFM Waivers (and additional approvals by other agencies). (See, e.g., *Simons v. City of Los Angeles* (1976) 63 Cal.App.3d 455, 465 [measure was not a project because it formalized and funded prior use]; *Committee for a Progressive Gilroy v. State Water Resources Control Board.* (1987) 192 Cal.App.3d 847, 865 [project exempt because baseline was approved level of use, not immediately prior level of use].) Applying this understanding to each aspect of CEQA exemption illustrates why no EIR, subsequent or otherwise, is required with the OSFM Waivers.

#### 1. The OSFM Waivers Are Not a "Project" and Do Not Approve a Project

CEQA imposes requirements on activities that fall within the definition of a "project." If an action (or inaction) is not a project, it does not trigger obligations under CEQA. (Pub. Resources Code, § 21080, subd (a).) "The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (Cal. Code Regs., tit. 14, § 15378.) To qualify as a project, an activity must (a) be an activity undertaken by a government agency, including project authorized by a permit granted by the government, and (b) cause a direct or reasonably foreseeable change to the physical environment. (Pub. Resources Code, § 21065, subd. (a) [definition of project].) The OSFM Waivers do not satisfy the second component. This

10

second component addresses the underlying activity, not just a government procedure. (See *Simons v. City of Los Angeles* (1976) 63 Cal.App.3d 455, 465.)

The Court of Appeal decision in *Simons* is instructive. There, petitioners challenged a transfer of land ownership and appropriation of funds for improvements to Los Angeles Police Department firearms training facilities. Neither the change in ownership nor the expenditure and upgrade of facilities created a "project" under CEQA.[2] (Kostka & Zischke, Practice under the Cal. Environmental Quality Act (2d ed. 2008) § 4.22 [explaining that in *Simons* the Court of Appeal concluded that the challenged activity was "not a project because the amendment continued an existing use without an environmental change"].) The same is true here. The resumption of operation under the OSFM Waivers is not a project. The Waivers do not alter the physical environment—they simply authorize resumption of prior activities under specified conditions.

Petitioners' references to the considered-but-abandoned proposal to construct a new pipeline does not change this. (See EDC Br. at pp. 7:16–18, 9:18–27.) The decision not to take a proposed action cannot create a "project" under CEQA. (See *Lake Norconian Club Foundation v. Department of Corrections & Rehabilitation* (2019) 39 Cal.App.5th 1044, 1051.) The issuance of OSFM Waivers necessary for the resumption of use of the existing Las Flores Pipeline does not, by negating the construction of a new pipeline, become a project under CEQA.

Because the OSFM Waivers are not a project, no further analysis under CEQA is required and, this is the end of the inquiry. (See Pub. Resources Code, § 21080, subd (a).)

### 2.    The Existing Facilities Exemption Applies

Even if the Waivers are considered a project, the existing facilities exemption, also known as the Class 1 Exemption, provides that an agency need not prepare an EIR for "the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of existing or former use." (Cal. Code Regs., tit. 14, § 15301, emphasis added.) This includes "work required to bring the [facility] up to established safety and

---

[2] In *Simons*, the Court of Appeal also concluded that even if it was a project, the existing facilities exemption applied, see Argument, Part I.A.4, *infra*, and an exemption for ballot measures, which is not applicable here, would also apply.

11

other standards." (*City of Pasadena v. State of California* (1993) 14 Cal.App.4th 810, 824, *disapproved on other grounds by Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559; see also Cal. Code Regs, tit. 14, § 15301, subd. (d).) The 2018 amendment to the Class 1 Exemption made clear that an agency may "find that a project will not expand the level of use if that level is consistent with historic levels of operations." (Kostka & Zischke, Practice under the Cal. Environmental Quality Act (2d ed. 2008) § 5.77.) That is precisely the case here. The OSFM Waivers, if combined with an approved restart plan, would authorize Sable to restore the Las Flores Pipeline System to its former level of use.

This type of situation—restoring a facility to prior levels—is ordinary. The Court of Appeal's decision in *Committee for a Progressive Gilroy v. State Water Resources Control Board.* (1987) 192 Cal.App.3d 847, 865, is instructive. There, the final EIR for a wastewater treatment plant evaluated "a projected capacity of 6.4 million gallons per day . . . ." (*Id.* at p. 852.) Capacity had been reduced to 5.1 million gallons per day before the challenged orders authorized the plant to restoring part of the lost capacity. The Court explained that, for purposes of determining significance under CEQA, "[i]t is not necessary to consider . . . the magnitude of the increases from 5.15 mgd to 6.1 mgd, since the original EIR clearly considered even a larger flow than this—6.4 mgd." (*Id.* at p. 864–865; see also *City of Pasadena v. State of California*, *supra*, 14 Cal.App.4th at p. 827 [existing use did not fall within unusual circumstances exception].)

To be sure, this case involves more change than *Committee for a Progressive Gilroy*. The interim use of the Las Flores Pipeline System was zero because the system was and is not in use. But the same principle applies. The 1985 EIR analyzed the full use of the Las Flores Pipeline System. It did not set standards for the level of effectiveness of the cathodic protection system. The resumption of use of the Las Flores Pipeline System, for which the OSFM Waivers are a prerequisite, is about restoring flow to prior levels, not approving something new.[3]

---

[3] To the extent that Petitioners view the OSFM Waivers and the resulting construction as exceeding "repair" and "maintenance," those are principally the result of other agencies' requirements (most notably the Coastal Commission). But even if it was entirely the result of OSFM Waivers, the Waivers would then fall within the Class 2 Exemption for "replacement or reconstruction of existing structures and facilities where the new structure will be located on the same site as the structure replaced and will have substantially the same purpose and capacity as

(continued…)

12

"In categorical exemption cases, where the agency establishes that the project is within an exempt class, the burden shifts to the party challenging the exemption to show that the project is not exempt because it falls within one of the exceptions listed in Guideline [Cal. Code Regs., tit. 14, §] 15300.2." (*Davidon Homes v. City of San Jose* (1997) 54 Cal.App.4th 106, 115; see *Apartment Ass'n of Greater Los Angeles v. City of Los Angeles* (2001) 90 Cal.App.4th 1162, 1175 ["Petitioners, not [Respondents], have the burden of proving by substantial evidence an exception to the exemption applies."].) Neither Petitioner group meaningfully addressed the categorical exemption from CEQA for existing facilities.

In the two Petitioners' briefs, there is only a brief discussion relevant to either categorical exemptions generally or the existing facilities exemption in particular. That discussion, in Center for Biological Diversity and Wishtoyo Foundation's brief, first asserts, without explanation, that restarting a pipeline does not fall within the existing facilities exemption. (CBD Br. at pp. 22:27–23:2.) This is wrong and unsupported. The brief then argues that because the project is significant, the exemption does not apply. (*Id.* at p. 23:3–13.) This is circular, and ignores the valuable guidance provided by CEQA exemptions. Many CEQA exemptions are the rubric for determining significance. Under the existing facilities exemption, the question is whether the purported project is significant *as compared to former use*. (*Committee for a Progressive Gilroy v. State Water Resources Control Bd.*, *surpa*, 192 Cal.App.3d at p. 864.) When a purported project does nothing more than restore an existing facility to former use levels, it is not significant compared to the former use level. That is the case here. The purported significant environmental impacts are not greater than they were from the pre-2015 use of the Las Flores Pipeline System. And, as Petitioners concede, that prior use was already analyzed in the 1985 EIR.

This argument should not come as a surprise to Petitioners. Their briefing demonstrates that they understand that the Las Flores Pipeline System existed prior to 2015. They are sophisticated parties, with significant CEQA litigation experience. It was their burden to make the case, in their opening brief, that either (a) the existing facilities exemption does not apply, or (b) this case falls

the structure replaced." (Cal. Code Regs., tit. 14, § 15302.) Aside from falling under a different exemption, the same principles would apply.

13

into an exception to the exemption. They did not do so, and the Court should not permit them to do so in their reply briefs. (See, e.g., *Santa Clara Valley Water Dist. v. San Francisco Bay Regional Water Quality Control Bd.* (2020) 59 Cal.App.5th 199, 219.)

### 3. The Las Flores Pipeline is Analyzed in the Existing EIR

Once an EIR has been certified for a project, both lead and responsible agencies cannot require—and cannot be ordered by a court to prepare—an EIR except in conditions enumerated by statute. (Pub. Resources Code, § 21166.) Here, California's State Lands Commission and the federal Bureau of Land Management completed a joint EIR-EIS in 1985. OSFM was not just allowed, but required, to rely on that EIR.

These analyses considered cathodic protection, but did not require that the Las Flores Pipeline System use a particular form of cathodic protection. (Dorsi Decl., Exh. 4 at pp. 125, 162, 174, 347, 444, and 469–71 [1985 EIR discussions of cathodic protection].) Nor did the EIR/EIS require that cathodic protection achieve any benchmark for effectiveness. (*Ibid.*) Corrosion occurs on pipelines—even pipelines with cathodic protection systems that function as anticipated. That corrosion occurred in the Las Flores Pipeline System is not unique. The EIR acknowledged a level of risk. That a risk came to fruition does not invalidate the EIR.

Both Petitioner groups argue that in order to issue the Waivers, OSFM was required to first complete[4] a subsequent EIR (SEIR). (CBD Br. at p. 23:14–20, EDC Br. at pp. 18:5–20:24.) Petitioners agree that an SEIR is required only if (a) there are substantial changes to the project, (b) there are substantial changes to the circumstances surrounding the project, or (c) new information not known at the time of the EIR becomes available *and* indicates that significant environmental impacts were not addressed in the EIR. While Petitioners attempt to cast their arguments as relevant to all three factors, in fact their arguments are all about the third.

Petitioners attempt to frame the lack of cathodic protection as a change to the project or its circumstances. But the original cathodic protection system remains in place and is active. (See

---

[4] Petitioners' briefs suggest, but do not definitively state, that OSFM must be the agency to prepare an SEIR. (EDC Br. at p. 8:13–14, CBD Br. at p. 21:25.) This is wrong. (See Cal. Code Regs., tit. 14, § 15051, subd. (b).) Petitioners do not address why OSFM should be the lead agency. OSFM contends that there may be a better selection for lead agency, and that the Court should avoid making that determination on this Motion.

14

Dorsi Decl., Exhs. 1 & 2, at p. 2.) The circumstances are also unchanged—the Pipelines runs the same route moving the same substance. Any deterioration of the pipeline itself is not a changed circumstance compared to the original EIR because BLM and State Lands Commission completed the EIR before construction of the Las Flores Pipeline System.

The best understanding of Petitioners' argument is that the discovery that the cathodic protection system failed constitutes new information that the lead agency did not address in the EIR. For example, EDC asserts that "without effective cathodic protection, the pipeline is vulnerable to further pervasive, continuous, and progressive corrosion that was not accounted for in the 1985 EIR." (EDC Br. at p. 19:6–8.) There are two problems with this argument. First, a subsequent EIR based on new information is only required if that information illustrates new significant impacts "not discussed in the previous EIR," that the impacts will "be substantially more severe" than stated in the EIR, or that there are new feasible mitigation measures. (See *Moss v. County of Humboldt* (2008) 162 Cal.App.4th 1041, 1058.) Here, the original EIR/EIS considered impacts like what occurred in 2015 and addressed those impacts either with mitigation or a conclusion that the impacts were unavoidable. The 2015 Refugio Oil Spill did not exceed the scope of potential impacts considered in the 1985 EIR. (See Dorsi Decl., Exh. 5 [Table 4-26 on p. 4-121 of 1985 Draft EIR].) What occurred was within the scope of what BLM and State Lands Commission considered and analyzed. (*Ibid.*) Second, the allegation that corrosion that may occur absent cathodic protection "was not accounted for in the 1985 EIR" is wrong. The EIR/EIS considered numerous risks, and did not require cathodic protection as a mitigation measure or other component of the analysis supporting the decision to approve the original project.

An EIR is not a promise that no harm will come—it is an analysis of what might occur. Here, one of the more damaging scenarios did occur. But it was not beyond the scope of what the EIR/EIS considered, and thus no SEIR is required.

### B.   Petitioners' Procedural Claims Lack Merit

#### 1.   Petitioners' Federal Statutory Claims Fail

Petitioners attempt to invoke a provision of the federal Pipelines Safety Act, 49 U.S.C. § 60118, in state court. Petitioners invoking federal law in state court must take federal law as they

15

find it, not how they wish it would be. Petitioners face two problems with their federal law claim.

First, Petitioners allege that OSFM failed to follow certain procedures under a provision of the federal Pipeline Safety Act, 49 U.S.C. § 60118, subdivision (c)(1)(B). This provision addresses the interests of "an owner or operator of a pipeline facility" to apply for a waiver; there is no indication that this is a public participation statute. (49 U.S.C. § 60118, subd. (c)(1)(A).) This statute does not say that it creates public participation rights for persons wishing to provide input. Petitioners have not cited, and Respondents have not found, a court case treating this requirement as a public participation statute.[5] There is no violation of Section 60118 because this section does not authorize Petitioners to participate in the waiver process, and as a result, they suffered no legal injury. While there are other provisions of the Pipeline Safety Act that a private party may lawfully bring an action to enforce, this provision does not provide the rights that Petitioners claim. (See *U.S. v. Sun-Diamond Growers of California* (1999) 526 U.S. 398, 409 [favoring narrow interpretations of federal statutes that form part of complex regulatory schemes].)

Second, even if Petitioners' proposed participation right did exist, the citizen suit provision does not authorize review of government agencies' regulation of pipelines. In *City and County of San Francisco v. U.S. Department of Transportation* (9th Cir. 2015) 796 F.3d 993, 998, the Ninth Circuit Court of Appeals affirmed the trial court's conclusion that "while § 60121 would authorize a suit against government entities to the extent they engage in activities regulated by the [Pipeline Safety Act]—such as constructing or operating pipelines—it is not an appropriate vehicle for seeking mandamus relief regarding defendants' performance of their regulatory obligations." The Ninth Circuit observed that other statutes, including the Endangered Species Act and the Clean Air Act, "tend to include two separate citizen suit provisions: one that provides for suits alleging a violation of a statute's substantive provisions, and one that authorizes suits against the agency head for failing to perform a nondiscretionary duty. . . [but t]he latter type of

---

[5] Petitioners' only cited authority on this subject, *In Re Midamerican Energy Co.* (Jan. 15, 2002) 2002 WL 31155601, is a decision of the Iowa Utilities Board over 20 years ago. The Iowa Utilities Board did not say that a person other than the applicant must be given an opportunity to comment.  Rather, it concluded that a public notice would be "impracticable and unnecessary," and as a result provided no such notice. *Midamerican* says nothing about the right to judicial enforcement of 49 U.S.C. § 60118, subdivision (c)(1)(B). In addition, *MidAmerican* a non-binding statement by another state's regulatory agency, not a binding court decision.

16

provision, which specifically provides for mandamus relief, is conspicuously absent from the Pipeline Safety Act." (*Id.* at 999.) Congress' choice to omit a citizen suit provision not for this kind of case precludes the relief that Petitioners seek.[6] More, Section 60121, subdivision (a), instructs that a litigant "may bring a civil action in an appropriate district court of the United States . . . ." This is not a federal district court, and Petitioners have not cited any authority indicating that they may assert this claim in a state court.

Finally, Petitioners ignore the federal process that Respondents did complete. Notices, including publication on Regulations.gov, fulfilled all legal requirements. (State of California for Sable Pipeline CA-325 AB, https://www.regulations.gov/docket/PHMSA-2025-0003.) To the extent that there was any required federal procedure, Respondents complied by making public postings. No further procedure was required of OSFM under federal law.

### 2.    CAL FIRE/OSFM Satisfied State Law Requirements

Petitioners allege three errors under the Elder California Pipeline Safety Act of 1981, Government Code sections 51010–51019.1: (1) failure to provide public notice, (2) failure to include a discussion of factors considered by the State Fire Marshal, and (3) error when OSFM concluded that "the risk to public safety is slight and the probability of injury or damage remote." (EDC Br., at pp. 16:25–17:15, CDB Br., at pp. 20:9–21:12, discussing Gov. Code, § 51011.)

First, OSFM did provide public notice on www.regulations.gov. That notice is the standard practice.[7] More, CAL FIRE maintained the website *Pathways for Restarting CA-324 and CA-325*, https://osfm.fire.ca.gov/what-we-do/pipeline-safety-and-cupa/pathways-for-restarting-pipelines, providing updates. But even if these postings failed to meet some technical requirement, it sufficed to place Petitioners on notice, as demonstrated by their submissions to OSFM. (EDC Br. at 10:18–20 [explaining submission of Kuprewicz analysis to OSFM].)

Second, the OSFM Waivers contain the requisite discussion. OSFM discussed the

---

[6] Petitioners also cannot employ 42 U.S.C. §1983 because, to employ Section 1983 to bring a claim arising under another federal statute, the statute "must display 'an unmistakable focus' on individuals like the plaintiff." (*Medina v. Planned Parenthood South Atlantic* (U.S., June 26, 2025, No. 23-1275) 2025 WL 1758505, at *6, quoting *Gonzaga University v. Doe* (2002) 536 U.S. 273, 284.) There is no "unmistakable focus" on review of agency action.

[7] Because the relevant announcement is by a state agency, not a federal agency, the practice is to post on Regulations.gov but not to publish in the Federal Register.

17

background and process of Sable's application and the applicable regulations before enumerating the conditions in each of the two Waivers. While these discussions are shorter than an EIR, they satisfy the requirements in Government Code section 51011, subdivision (c), to "include a discussion of those factors that the State Fire Marshal considers significant." This is not a statutory *back door* to require an EIR-level exposition; it is simply a requirement to make findings, which falls under a much more lenient standard for abbreviated documentation. (Gov. Code, § 51011, subd. (c); see *Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954 ["[A]gency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein."], *Craik v. County of Santa Cruz* (2000) 81 Cal.App.4th 880, 884–885 ["[F]indings need not be stated with the precision required in judicial proceedings. They may properly incorporate matters by reference and even omissions may sometimes be filled by such relevant references [to] the record . . .  [T]he reviewing court must resolve reasonable doubts in favor of the administrative findings and decision."].) A brief review of the OSFM Waivers shows that they satisfy this standard.

Third, OSFM correctly concluded that "the risk to public safety is slight and the probability of injury or damage remote." (Gov. Code, § 51011, subd. (b).) OSMF explained that it "reviewed the materials provided" by Sable, analyzed those submissions, and consulted with officials at PHMSA's Engineering and Research Division. (Dorsi Decl. Exhs. 1 & 2 at p. 2.) OSFM imposed over 65 conditions on each pipeline. And in addition to Sable's proposals and its own conditions, OSFM added "PHMSA's recommended conditions into the state waiver[s]." (*Ibid*.)

But the Court need not reach a conclusion on this argument because Petitioners provided no evidence that points toward the appropriate legal standard. Petitioners incorrectly suggest that this provision creates a process for review of new evidence. That is not how review of agency decisions works. When evaluating whether agencies made the correct judgments, some decisions are unreviewable, while others are reviewed for whether the agency's decision was supported by substantial evidence. (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 418–419.) Still others are reviewed under independent judgment. Rather than engage in substantial evidence review, Petitioners cite to declarations that they presented to this Court, suggesting that this Court

18

has the responsibility to determine, in the first instance, whether "the risk to public safety is slight and the probability of injury or damage remote." Petitioners did not articulate the appropriate legal standard or provide evidence to support their proposed approach, and the Court should not permit them to do so for the first time in their replies. (See, e.g., *Santa Clara Valley Water Dist. v. San Francisco Bay Regional Water Quality Control Bd.* (2020) 59 Cal.App.5th 199, 219.)

More, Petitioners did not demonstrate that they were prejudiced. Petitioners asking a trial court to overturn agency decisions must show prejudicial error. (See *McCoy v. Board of Retirement* (1986) 183 Cal.App.3d 1044, 1054.) For Petitioners' CEQA claims, Public Resources Code section 21005, subdivision (a) states that "noncompliance with the information disclosure provisions . . . of [CEQA] may constitute a prejudicial abuse of discretion . . . regardless of whether a different outcome would have resulted if the public agency had complied with those provisions." But this rule does not apply to the claims arising under the Government Code. Petitioners have not cited and Respondents have not found a similar provision for the Elder California Pipeline Safety Act of 1981. (Gov. Code, §§ 51010–51019.1). If there were any procedural errors, they did not result in prejudice to Petitioners because OSFM maintained transparency with the *Pathways* website and its regulations.gov disclosures.

## II. THE EQUITIES FAVOR GOVERNMENT ACTION CONSISTENT WITH STATE LAW

Courts generally avoid imposing injunctive relief against executive branch officials when those officials are likely to prevail on the merits because an injunction against their lawfully-assigned responsibilities is "a form of irreparable injury." (See *Mae M. v. Komrosky* (2025) 111 Cal.App.5th 198, 2025 WL 1431928, at *15 [certified for publication], citing *Maryland v. King* (2012) 567 U.S. 1301, 1303.) "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.* (1977) 434 U.S. 1345, 1351 [Rehnquist, J., in chambers], *see Maryland v. King*, *supra*, 567 U.S. at p. 1303 [Roberts, C.J., in chambers]; see also *Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1471.). "A more rigorous standard [for preliminary injunctions against the government] 'reflects the idea that governmental policies implemented through legislation or

19

regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" (*Smith v. Reiskin* (N.D. Cal. Oct. 10, 2018) No. 4:18-cv-01239-JSW, 2018 WL 7820727, at *2 [quoting *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds* (8th Cir. 2008) 530 F.3d 724, 731].) These federal court decisions are consistent with California Code of Civil Procedure, section 526, subdivision (b)(4), which states that injunctions "cannot be granted . . . [t]o prevent the execution of a public statute by officers of the law for the public benefit." Because Petitioners are unlikely to prevail on the merits, they have not satisfied this elevated burden, and the Court should deny preliminary relief.

More, imposing preliminary relief against a lawful agency action undercuts state agencies' ability to enter into agreements to protect Californians and the environment. Here, OSFM was one of four state agencies that, alongside the United States and the University of California, entered into the Consent Decree with Plains. The Consent Decree was a judicially-approved agreement that resolved anticipated litigation and required Plains to pay substantial penalties and damages and to follow specified rules. Part of that bargain was that OSFM would review conditions and, if appropriate, issue waivers to Plains or its successor. If this Court imposes injunctive relief contrary to OSFM moving forward with its lawfully-assigned responsibilities, it would undercut OSFM's ability to enter into judicially-approved settlements like the Consent Decree. That would make OSFM an unreliable partner, undermining the ability of OSFM and, by extension other agencies, to enter into such agreements in the future.

If this Court concludes that OSFM acted lawfully but Petitioners have made a showing that other equitable considerations weigh in favor of preliminary relief, the Court should nonetheless reject their request for preliminary relief. If OSFM acted lawfully, it should not be made to suffer the irreparable injury of being unable to carry out the tasks assigned to it by the Legislature. The Court should not interject itself between an agency and its lawful duties.

## CONCLUSION

Petitioners have not shown they are entitled to preliminary relief. The Court should deny their requests for a stay or preliminary injunction and discharge the Order to Show Cause.

20

Dated:  July 7, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

MICHAEL S. DORSI
Deputy Attorney General
*Attorneys for Respondents and Defendants
Department of Forestry and Fire Protection,
by and through the Office of the State Fire
Marshal, an agency of the State of
California; Daniel Berlant, in his official
capacity as State Fire Marshal*

LA2025400827
44687108.docx

21

**DECLARATION OF SERVICE**

Case Names:    **ENVIRONMENTAL DEFENSE CENTER, et al. v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.**

Case Nos.:    **25CV02247**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter.

On July 7, 2025, I served the attached:

- **RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**
- **DECLARATION OF MICHAEL S. DORSI IN SUPPORT OF RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**
- **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**

by transmitting a true copy via electronic mail addressed as follows:

| | |
|---|---|
| Linda Krop<br>lkrop@environmentaldefensecenter.org<br>Jeremy M. Frankel<br>jfrankel@environmentaldefensecenter.org<br>Tara C. Rengifo<br>trengifo@environmentaldefensecenter.org<br>ENVIRONMENTAL DEFENSE CENTER | Julie Teel Simmonds<br>jteelsimmonds@biologicaldiversity.org<br>David Pettit<br>dpettit@biologicaldiversity.org<br>Talia Nimmer<br>tnimmer@biologicaldiversity.org<br>CENTER FOR BIOLOGICAL DIVERSITY |
| Moore, DJ djmoore@paulhastings.com<br>Hanelin, Benjamin J.<br>benjaminhanelin@paulhastings.com<br>Rogers, Natalie C.<br>natalierogers@paulhastings.com<br>PAUL HASTINGS LLP | Bolender, Brooke<br>Brooke.Bolender@alston.com<br>Jeffrey Dintzer jeffrey.dintzer@alston.com<br>ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 7, 2025 at _____Los Angels_____, California.

| E. Marshall | /s/ E. Marshall |
|:---:|:---:|
| Declarant | Signature |

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
DarreE. Parker, Executive Officer
7/7/2025 9:24 PM
By: Terri Chavez , Deputy

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General
MATTHEW BULLOCK (SBN 243377)
MICHAEL S. DORSI (SBN 281865)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3802
  Fax:  (415) 703-5480
  E-mail:  Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants
Department of Forestry and Fire Protection, by and
through the Office of the State Fire Marshal, an
agency of the State of California; Daniel Berlant, in
his official capacity as State Fire Marshal*

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,**<br><br>          **Petitioners and Plaintiffs,**<br><br>          v.<br><br>**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,**<br><br>          **Respondents and Defendants**<br><br>**SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,**<br><br>          **Real Parties in Interest.** | Case No. 25CV02247<br><br>**DECLARATION OF MICHAEL S. DORSI IN SUPPORT OF RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**<br><br>Date:       July 18, 2025<br>Time:      8:30 a.m.<br>Dept:      4<br>Judge:    Hon. Donna Geck<br><br>Trial Date:   Not Set<br>Action Filed: April 15, 2025<br><br>CONSISTENT WITH STIPULATION, THIS DOCUMENT, INCLUDING ITS EXHIBITS, IS FILED IN THIS MATTER AND THE RELATED CASE, NO. 25CV02244 |

1

I, Michael S. Dorsi, declare:

1. I am an attorney licensed to practice before all courts of the State of California. I am a Deputy Attorney General with the California Department of Justice, Office of the Attorney General, and am counsel for Respondents California Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; and Daniel Berland, in his official capacity as State Fire Marshal (collectively CAL FIRE/OSFM).

2. I have personal knowledge of the facts asserted in this Declaration, and if called as a witness, I could and would competently testify to these facts. For each document attached to this Declaration, I confirmed with CAL FIRE/OSFM that the documents are authentic.

3. Attached to this Declaration as Exhibits 1 and 2 are true and correct copies of the State Waivers for the Las Flores Pipeline System, pipelines CA-324 and CA-325A/B, respectively.

4. Attached to this Declaration as Exhibit 3 is a true and correct copy of the Consent Decree entered in *United States, et al. v. Plains All American Pipeline, et al.,* United States District Court for the Central District of California, Case No. 2:20-cv-02415.

5. Exhibits 1–3 are available on CAL FIRE/OSFM's website titled *Pathways for Restarting CA-324 and CA-325*, https://osfm.fire.ca.gov/what-we-do/pipeline-safety-and-cupa/pathways-for-restarting-pipelines.

6. Attached to this Declaration as Exhibit 4 are true and correct copies of selected pages from the 1985 Environmental Impact Report and Environmental Impact Statement by the State Lands Commission and the Bureau of Land Management. The complete document is available at https://cosantabarbara.app.box.com/s/p07x4k8ah41vmggyvm6qr2f7eqwvgwu1/file/1857839180492. I added pagination based on the PDF page numbers to assist in locating cited pages.

7. Attached to this Declaration as Exhibit 5 are true and correct copies of selected pages from the 1985 Environmental Impact Report and Environmental Impact Statement by the State Lands Commission and the Bureau of Land Management. This excerpt addresses the risks and potential responses to oil spills, and includes Table 4-24, showing estimated volumes of potential oil spills. The complete document is available at https://cosantabarbara.app.box.com/s/p07x4k8ah41vmggyvm6qr2f7eqwvgwu1/file/18578319638

2

36. The pages included in this Exhibit can be found at pages 420–427 of the linked .pdf document.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 7th Day of July, 2025.

MICHAEL S. DORSI
DEPUTY ATTORNEY GENERAL

***

**INDEX OF EXHIBITS**

Exhibit 1:   State Waiver for CA-324

Exhibit 2:   State Waiver for CA-325A/B

Exhibit 3:   Consent Decree
*United States, et al. v. Plains All American Pipeline, et al.,*
U.S. District Court for the Central District of California, Case No. 2:20-cv-02415

Exhibit 4:   1985 Final EIR-EIS (Selected Pages)
State Lands Commission and the Bureau of Land Management

Exhibit 5:   1985 Draft EIR-EIS (Selected Pages including Table 4-24)
State Lands Commission and the Bureau of Land Management

LA2025400827
44687107.docx

3

# Exhibit 1

Exhibit 1
to Declaration of
Michael S. Dorsi
dated July 7, 2025

STATE OF CALIFORNIA—NATURAL RESOURCES AGENCY                    Gavin Newsom, Governor



**DEPARTMENT OF FORESTRY AND FIRE PROTECTION**
**OFFICE OF THE STATE FIRE MARSHAL**
P.O. Box 944246
Sacramento, California 94244-2460
(916) 568-3800
Website: www.fire.ca.gov



**CERTIFIED MAIL No: 9589-0710-5270-1475-5353-08**

December 17, 2024

Lance Yearwood
Vice President
Sable Offshore Corp
845 Texas Avenue, Suite 2920
Houston, Texas 77002

**SUBJECT:**   **LETTER OF DECISION ON THE STATE WAIVER REQUEST FOR LIMITED EFECTIVENESS OF CATHODIC PROTECTION ON THERMALLY INSULATED PIPELINE AND CORROSION OF OR ALONG A LONGITUDINAL SEAM WELD (CA-324)**

**Operator:**   Sable Offshore Corp
OPID# 40851
845 Texas Avenue, # 2920
Houston, Texas 77002

**Pipeline:**   OSFM Line ID 0015 - 10.86 miles (Las Flores Canyon to Gaviota) of Sable Offshore Corp CA-324 (OSFM Line ID 0015) located in Santa Barbara County, California as described in the request of state waiver dated April 24, 2024

Dear Mr. Yearwood:

The Office of the State Fire Marshal (OSFM) received Sable Offshore Corp's (*Sable*) state waiver request (*Application*) on April 24, 2024, in accordance with the terms of the Consent Decree (CD) between Plains Pipeline, L.P. and the United States of America and the People of the State of California, DOJ Case REF. NO. 90-5-1-1-1130 (Appendix B, Article 1.1.D).

In addition, Sable requested a regulatory relief from Title 49 Code of Federal Regulations (49 C.F.R.), § 195.452(h)(4)(iii)(H) *Corrosion of or along a longitudinal seam weld* for Sable CA-324.

*"The Department of Forestry and Fire Protection serves and safeguards the people and protects the property and resources of California."*

Docusign Envelope ID: 87148E7A-FB76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 2

Sable explained that its goal is to appropriately manage the risk of corrosion under insulation that may occur as a result of inadequate cathodic protection due to the shielding effects of the polyurethane foam and the polyethylene tape wrap. Sable described the measures it has taken to address this risk and implemented and proposed a number of additional measures designed to mitigate the risk of corrosion under insulation that may result from potential ineffective cathodic protection (CP).

Sable provided the OSFM with its proposed measures to mitigate the risk of corrosion under insulation.  Sable also provided the OSFM information from the completed in-line inspections and additional data requested by our office. The OSFM Pipeline Safety Engineers have reviewed the materials provided and have been in communication with the United States Department of Transportation (USDOT), Pipeline and Hazardous Materials Safety Administration (PHMSA) Engineering and Research Division to incorporate PHMSA's recommended conditions into the state waiver.

The OSFM has regulatory jurisdiction over the safety standards and practices of intrastate hazardous liquid pipeline transportation within California. As a Pipeline Safety Program that is certified under 49 USC § 60105, the OSFM may grant a state waiver with a pipeline safety regulation adopted by the state of California. Title 49 C.F.R., Part 195 was adopted by reference as it relates to hazardous liquid pipelines within Title 19 California Code of Regulations (19 CCR), Section 2000.

This state waiver applies to Sable's Line CA-324 (OSFM Line ID 0015) which consists of a 10.86 mile long, 24-inch outside diameter pipeline segment with the origin and termination points as described in the application. The pipeline is located in Santa Barbara, California and shall be referred herein as *CA-324*.

The state waiver shall not become effective until (1) PHMSA issues an Order approving the waiver or stating it has no objection to the waiver or (2) PHMSA takes no action on the waiver within sixty (60) days after receiving the Letter of Decision from the OSFM.

The state waiver is limited to a term of no more than ten (10) years from the date it becomes effective, which shall be considered as the date of issuance. The OSFM may terminate the state waiver under conditions detailed below.

**Applicable Regulations**

The OSFM hereby grants this state waiver for CA-324, provided that Sable complies with the specific requirements in this state waiver and any additional conditions outlined by PHMSA. The pipeline must be operated and maintained in accordance with the CD, these state waiver conditions and 49 C.F.R. Part 195, with the exception of 49 C.F.R. §195.452(h)(4)(iii)(H). In the event of a conflict between the state waiver conditions and the applicable requirements under 49 C.F.R. Part 195, the state waiver conditions control.

Docusign Envelope ID: 87148E7A-FB76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 3

Should additional federal or State statutory or regulatory requirements come into effect following the implementation of this state waiver, CA-324 shall be subject to those requirements except where they are in conflict with the State Waiver or the safe operation of the pipeline.

## General Conditions

1. The pipeline can only be used to transport crude oil as stated in the application.
2. The maximum operating pressure (MOP) of CA-324 cannot exceed 1003 pounds per square inch gauge (psig).
3. The maximum operating temperature of the crude oil that transports in CA-324 must not exceed 140 Fahrenheit for more than 12 consecutive hours.
4. Prior to startup, Sable must develop and implement procedures for the conditions and requirements described in the state waiver.
5. This state waiver does not relieve Sable from other requirements under 49 C.F.R. Part 195 or the Elder California Pipeline Safety Act of 1981 other than contained herein.
6. This state waiver does not relieve Sable from any requirements imposed by the Consent Decree (United States District Court Central District of California Civil Action No. 2:20-cv-02415).
7. In-line inspection must include:
   a. Use of a tool that is at least capable of reliably detecting and identifying cluster corrosion and general corrosion. Definition of cluster and general corrosion is as follows:
      i. Cluster means two or more adjacent metal loss features in the wall of the pipe or weld that may interact based on interaction criteria.
      ii. General corrosion means uniform or gradually varying loss of wall thickness over an area.
   b. Use of a tool that is at least capable of reliably detecting and sizing corrosion at a 90 percent probability of detection (POD) and probability of identification (POI).
   c. Use of a tool that is at least capable of reliably detecting and sizing cracks or crack-like anomalies at a 90 percent POD and POI.
8. Prior to placing CA-324 in operation, Sable must perform fracture toughness tests on the existing 24" pipe from CA-324 in accordance with ASTM E1820-23B Standard Test Method for Measurement of Fracture Toughness. All of the test specimens must be from the predominant existing 24" pipe, specifically API 5L X65 HF-ERW pipe with a nominal thickness of 0.344" that was manufactured by

Docusign Envelope ID: 87148E7A-FB76-4881-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 4

Nippon Steel Corp. in the 1980s. At least three (3) separate tests must be performed to obtain the fracture toughness values of the pipe body, heat affected zone (HAZ)[1], and the HF-ERW long seam weld on the pipe to represent the fracture toughness of its CA-324 (i.e. three (3) samples for pipe body, three (3) samples for HAZ, and three (3) samples for the HF-ERW long seam weld). The lowest fracture toughness value must be applied to conditions 10, 30, 33, and 48. Sable may use pipe samples taken opportunistically during ongoing pipeline maintenance and repair efforts.[2]

9. All immediate and 180-day repair conditions that are listed in this state waiver must be evaluated and remediated prior to restarting CA-324. Sable must utilize Ultrasonic Thickness Wall Measurement (UTWM) and Ultrasonic Shear Wave Crack Detection (USCD) in-line inspection (ILI) tools within seven (7) days of achieving initial steady state operation in accordance with an ILI survey schedule approved by OSFM. Sable must utilize the most recent Ultrasonic Thickness Wall Measurement (UTWM) and Ultrasonic Shear Wave Crack Detection (USCD) in-line inspection (ILI) results when identifying these repair conditions.

10. Remaining strength of pipe calculation for all metal loss anomalies must be in accordance with the Modified B31G method as described in ASME B31G *Manual for Determining the Remaining Strength of Corroded Pipelines.* If ASME B31G 2012 Edition is used, then it must comply with the conditions in accordance with Section 1.2 and exclusions in accordance with Section 1.3 of ASME B31G 2012 Edition. However, if the metal loss anomaly intersects or is within one (1) inch (circumferentially) of the longitudinal seam weld, Sable must also calculate the predicted failure pressure of the anomaly by using the crack-like flaw evaluation method ASME FFS-1/API 579-1.

11. Sable must utilize cleaning pigs at regular intervals not to exceed a biweekly basis to maintain adequate cleanliness on the internal pipe wall of its CA-324.

**Pressure Testing**

12. Prior to placing the pipeline in operation, Sable must conduct a spike hydrostatic pressure test of the state waiver pipeline segments at a minimum pressure that is at least 1.5 times the MOP or 100% SMYS, for a minimum of 15 minutes after

---

[1] The heat affected zone (HAZ), as used in the state waiver, is defined as a 1-inch-wide area on either side of the longitudinal weld seam.

[2] Sable must submit all fracture toughness results to the OSFM prior to restarting the pipeline.

Lance Yearwood
December 17, 2024
Page 5

the spike test pressure is stabilized.  Sable must field evaluate and remediate the following anomalies before performing the spike hydrostatic test on CA-324:

   a.  All metal loss anomalies that have an ILI reported depth of 40% and greater wall loss.

   b.  All anomalies that have a predicted failure pressure less than or equal to 1.6 times MOP.

13. Immediately following the spike hydrostatic pressure test, Sable must conduct an 8-hour hydrostatic pressure test of the state waiver pipeline segments at a minimum of 1.25 times the MOP.

14. Sable must obtain the Test ID from the OSFM for each hydrostatic pressure test and have the approved independent testing firm forward separately the certified test results to the OSFM.

15. Each hydrostatic pressure test must be performed in accordance with the applicable requirements of 49 C.F.R., Part 195 Subpart E – Pressure Testing and monitored by an independent testing firm listed under the OSFM approved hydrostatic testing companies.

16. Failures resulting from the spike hydrostatic pressure test or the 8-hour strength test shall be immediately reported[3] to the OSFM via email at PipelineNotification@fire.ca.gov
Subject: OSFM State Waiver - Hydrotest Failure

17. Section(s) of the state waiver pipeline segments that failed during the required hydrotesting must be repaired by removing and replacing the failed section. The OSFM reserves the right to revoke the state waiver if failure(s) raise the concern that the pipeline cannot be safely operated.

**In-Line Inspection (ILI) Assessment and Frequency**

18. At least 90 days prior to performing in-line inspections of the state waiver segment, Sable shall provide the OSFM with a written notification to PipelineNotification@fire.ca.gov describing its assessment plan with the following information:

   a)  Dates for integrity assessment

   b)  In-line inspection tool(s) selected, in accordance with API Standard 1163 Section 5 and NACE SP0102[4] to assess the integrity of the subject pipe

---

[3] In addition to the OSFM reporting, Sable shall follow all additional state reporting requirements.

[4] Industry standards that are referenced in this state waiver must utilize the editions that are incorporated by referenced in Title 49 Part 195.3 unless another edition was explicitly specified.

Docusign Envelope ID: 87148E7A-FB76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 6

segment(s) in which ILIs must be capable to detect and size wall loss, dents, internal corrosion, external corrosion, cracks and crack-like indications

c) In-line inspection tool vendor(s)

d) Required tool specifications including operational specifications and anomaly sizing tolerances

e) Tool validation methodology

f) Anomaly feature identification criteria and reporting thresholds – wall loss, dents, internal corrosion, external corrosion, cracks, and crack-like indications

g) Criteria used to identify locations for excavation and field verification

h) Non-destructive examination

19. Within seven (7) days prior to any anticipated ILI tool run, Sable must utilize extensive brush pigs and solvents (xylene or other chemicals) to ensure that the internal pipe wall does not have any corrosive products, wax, and bacteria buildup that may affect the ILI tool performance.

20. Metal Loss Tool(s)

a. Initial ILI tool runs – Each year, during the first two (2) years of operating CA-324, Sable shall conduct at least two (2) ILIs using a UTWM tool with an inertial measurement unit (IMU).  Sable shall compare both runs and evaluate all available information, including these tool runs and corresponding IMU data. Sable shall perform the UTWM tool run every six (6) months not to exceed nine (9) months.  If a UTWM tool run is unsuccessful, Sable shall identify the limitations that prevented the UTWM tool run from being successful, consider changes to increase the likelihood of a successful UTWM tool run, and use best efforts to rerun the UTWM tool within 30 days.

b. Subsequent ILI tool runs – After the first two (2) years of operating CA-324, Sable shall conduct at least one (1) Ultrasonic Wall Measurement tool (UTWM) each calendar year, not to exceed 15 months or the ILI assessment must be assessed at more frequent intervals if the remaining Failure Pressure Ratio will be less than 1.39 times MOP prior to the next ILI assessment, based upon anomaly growth estimates and pressure cycling. If any UTWM tool run is deemed to be unsuccessful, Sable shall document the reasons why the UTWM tool was unsuccessful, consider changes to increase the likelihood of a successful UTWM tool run, and must reassess the pipeline within 30 days after it was deemed to be unsuccessful.  All metal loss tool runs must also utilize an Inertial Measurement Unit (IMU).

21. Crack Detection Tools - Sable shall conduct at least one (1) Ultrasonic Shear Wave Crack Detection (USCD) tool each calendar year, not to exceed 15

Docusign Envelope ID: 87148E7A-FB76-4881-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 7

months[5] or ILI assessment must be assessed at more frequent intervals if condition 48 determined a shorter assessment interval.

   a. These crack tool runs must utilize an Inertial Measurement Unit (IMU) and must be able to detect and size axial and circumferential cracks.

   b. USCD Performance Specification Requirements

      i. The USCD tools must have a probability of detection that is ≥ 90% for axial and circumferential cracks.

      ii. The minimum crack depth that can be detected must be at least 1 mm for axial and circumferential cracks that are located in the base material.

      iii. The minimum crack depth that can be detected must be at least 2 mm for axial and circumferential cracks that are located in the weld.

      iv. The depth sizing accuracy for cracks must be ± 0.8 mm for axial cracks and ± 1 mm for circumferential cracks.

22. Dents and Pipe Deformation: Sable shall conduct a high-resolution deformation ILI tool with each UTWM.

23. Where any ILI tool fails to record data for 5% or more of the external and/or internal surface area of the inspected segment, reassess with the ILI tool to cover the area that is deemed to be inadequate data of the inspected segment. In addition, if the ILI tool travels at a speed that is outside the range of the tool velocity listed in the tool specification for 2% or more of the length of the inspected segment, Sable must rerun the ILI tool to reassess the pipeline segment in which the ILI tool velocity was outside of the specified tool velocity range.

24. All ILI tool runs must obtain the Test ID from the OSFM prior to run.

25. Sable must require its ILI tool vendor(s) to include in the vendor's inspection report all metal loss indications of 10% or greater, based on raw data, prior to adding in any correction for tool tolerance.

26. Sable must incorporate ILI tool accuracy by ensuring that each ILI tool service provider determines the tolerance of each tool, in accordance with API Standard 1163 Second Edition and includes that tolerance in determining the size of each indication reported to Sable.

27. Sable must account for ILI tool tolerance and anomaly growth rates in scheduled response times, repairs, and future reassessment intervals.  Sable must

---

[5] Sable may petition the OSFM to revise the reassessment interval for Crack Detection Tool(s) when sufficient evidence is available to determine if crack growth rates could support a longer reassessment interval. Changes to the reassessment interval are subject to OSFM and PHMSA approval.

Lance Yearwood
December 17, 2024
Page 8

document and justify the values used. Sable must demonstrate ILI tool tolerance accuracy for each ILI tool run by using calibration, excavations, and unity plots[6] that demonstrate ILI tool accuracy to meet the tool accuracy specification provided by the vendor (typical for depth within +10% accuracy for 80% of the time). Sable must compare previous indications to current indications that are significantly different. If a trend is identified where the tool has been consistently over-calling or under-calling, the remaining ILI features must be re-graded accordingly.

28. Prior to the ILI final report being received, Sable must perform at least four (4) separate validation digs that do not interact with each other. At a minimum, Sable must perform validation digs in accordance with Level 2 of API Standard 1163, "In-line Inspection System Qualification" (Second Edition, April 2013).

## **Discovery of Condition**

29. The discovery date must be within 180 days of any ILI tool run for each type of ILI tool.

## **Immediate Repair Conditions[7]**

30. A crack or crack-like anomaly that meets any of the following criteria:
    a. Crack or crack-like anomaly that is equal to or greater than 50% of pipe wall thickness.
    b. Crack or crack-like anomaly that has predicted failure pressure of less than 1.39 times the MOP as calculated using crack-like flaw evaluation method ASME FFS-1/API 579-1.

31. Internal or external metal loss anomalies where the remaining strength of pipe shows a predicted failure pressure less than 1.39 times the MOP.

32. Any external cluster corrosion or external general corrosion that is located on the bottom half of the pipeline (below the 3 and 9 o'clock positions) where the

---

[6] A minimum of four (4) independent direct examination excavations must be used for unity plots.

[7] The criteria outlined in the state waiver is supplemental to the requirements set forth in *§195.452(h)(4)(i) Immediate repair conditions* and does not relieve Sable from complying with §195.452(h)(4)(i). All immediate repair conditions must be remediated with a permanent repair method.

Docusign Envelope ID: 87148E7A-ED76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 9

remaining strength of pipe shows a predicted failure pressure less than 1.5 times the MOP.[8]

**180-Day Repair Conditions**[9]

33. A crack or crack-like anomaly that has predicted failure pressure of less than 1.5 times the MOP.
34. Internal or external metal loss anomalies where the remaining strength of pipe shows a predicted failure pressure less than 1.5 times the MOP.
35. All internal or external metal loss anomalies that have an ILI reported depth of 40% or greater wall loss, including tool sizing tolerance for depth.[10]
36. For any crack (likely crack or possible crack) or crack-like anomaly, regardless of its dimensions, that interacts with metal loss anomalies and are within one (1) inch (circumferentially) of the longitudinal seam weld, Sable must integrate the ILI results from the most recent crack tool run and the most recent metal loss tool run before the discovery date deadline.

**Corrosion Growth Rate Analysis (CGRA)**

37. Sable must develop a CGRA procedure to annually calculate corrosion growth rates between successive ILI's (using most recent ILI compared to prior ILI) and perform pipeline remediations needed to assure the integrity of the pipeline is maintained.[11]  The timing of pipeline remediations under this condition shall be based on the most recent calculation of short-term corrosion rates.
38. The CGRA procedure must include ILI data matching methods[12] to analyze data from successive ILI's, methodologies for growth rate calculations and errors from comparing ILI data.

---

[8]  Cluster means two or more adjacent metal loss features in the wall of the pipe or weld that may interact based on interaction criteria.  General corrosion means uniform or gradually varying loss of wall thickness over an area.

[9] The criteria outlined in the state waiver is supplemental to the requirements set forth in *§195.452(h)(4)(iii) 180-day conditions* and does not relieve Sable from complying with §195.452(h)(4)(iii).  All 180-day repair conditions must be remediated with a permanent repair method.

[10] For example, if the ILI tool reports a 31% metal loss anomaly and the tool sizing tolerance is ±10 for depth, then this anomaly is a 180-day repair condition since it can be considered as an external metal loss anomaly with 41% metal loss depth.  If Sable is unable to remediate such indications within 180 days of discovery, Sable must notify the OSFM, temporarily reduce the operating pressure, and take further remedial action in accordance with 49 C.F.R. §195.452 until the indication is remediated or until otherwise authorized by OSFM.

[11] At a minimum, Sable must include signal matching between ILI data sets.

[12] If there are several matching techniques that can be used, Sable must utilize the most accurate method of comparing ILI data sets.

Docusign Envelope ID: 87148E7A-ED76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 10

39. Sable must identify the projected date when remaining metal loss indications will reach a depth of 70% or greater wall loss.
40. When determining the projected date when remaining metal loss indications will reach a depth of 70% or greater wall loss, Sable must account for reported ILI depth, tool tolerance and corrosion growth rates[13].
41. All metal loss indications that are projected to reach a depth of 70% or greater wall loss prior to the next ILI, will become actionable and must be remediated before the next ILI.

## Pressure Reduction

42. If Sable is unable to perform field evaluation and remediation of any required conditions within the time limit conditions specified in the state waiver, Sable must temporarily implement a minimum 20 percent or greater operating pressure reduction, based on actual operating pressure for two (2) months prior to the date of inspection, until the anomaly is repaired.

## In Field Direct Examination of Pipe

43. Direct examinations[14] of pipe must include appropriate non-destructive examination methods for cracking such as magnetic particle inspection (MPI), shear wave technology or phased array ultrasonic testing (PAUT).[15]  PAUT must be used for sizing any crack or crack-like anomaly lengths and depths.
44. Permanent repairs of metal loss anomalies are required for any section of pipe with wall loss equal to or greater than 40% in accordance with repair method 1, 4b, or 5 of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition.  However, the following additional conditions are applied if Sable chooses repair method 5 for metal loss anomalies:
    a. Method 5 must not be used on metal loss anomalies that are in the HAZ, girth weld, or longitudinal seam weld.

---

[13] Growth projections must use corrosion rates determined in accordance with the CGRA procedure. A default corrosion rate of 32 mpy must be used in determining projections, if corrosion rates determined by CGRA are less than the default value.

[14] Any time the pipeline is exposed for direct examination of an indication or to perform a repair, Sable must document the condition of the coating and carrier pipe (including anomalies) with photographs.

[15] Direct examinations for ILI reported crack or crack-like indications must include a magnetic particle inspection complimented by shear wave technology or inspection by phased array ultrasonic testing.

Lance Yearwood
December 17, 2024
Page 11

    b. Sable must increase the metal loss anomaly's depth by 20% when they input it into the formula for calculating the number of wraps needed for repair method 5.

    c. After the anomaly is repaired via repair method 5, Sable must monitor the anomaly's wall loss depth in subsequent UTWM tool runs.  If the anomaly's wall loss depth increases by more than 15% of the wall thickness in the subsequent UTWM tool runs, Sable must repair this anomaly via repair method 1 or 4b of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition.

45. Permanent repairs are required for all cracks and/or crack-like anomalies discovered during direct examination, regardless of crack depth or crack length in accordance with repair method 1 or 4b of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition.

46. Sable must develop a coating repair procedure for excavated or remediated corrosion anomalies that prevents further external corrosion and seals transition areas from currently insulated pipe to newly coated sections. Any time a shrink sleeve or coating is exposed, remove the shrink sleeve and coating, investigate circumferentially and longitudinally along the pipe for external corrosion and coating deterioration, and recoat with two-part epoxy.  Sable must recoat in accordance with their coating repair procedure.[16]

47. All external polyurethane foam and the polyethylene tape wrap on buried pipe that are exposed during the field evaluation must not be replaced with new insulation or polyethylene tape wrap.

**Integrity Management**

48. A fracture mechanics and pressure cycling evaluation is required for un-remediated cracks and crack-like indications detected by ILI or indirect inspection tools.

    a. Sable must determine the predicted failure pressure, failure stress pressure and crack growth of un-remediated cracks and crack-like anomalies in accordance with 49 C.F.R. §192.712(d)(1).

    b. Sable must perform a fatigue analysis using an applicable fatigue crack growth law or other technically appropriate engineering methodology in accordance with 49 C.F.R. §192.712(d)(2).

49. Sable must analyze a sample of additional indications of varying amounts of metal loss between 10% and 40% for validation. The sample size shall be at least ten (10), unless fewer than ten (10) indications are reported within that range, in which case Sable would examine the number of indications called.

50. When sizing metal loss indications, apply interaction/clustering criteria of 6t by 6t for applicable ILI tool(s).

---

[16] The coating procedure must be submitted to the OSFM prior to the prior to the effective date of the state waiver.

Docusign Envelope ID: 87148E7A-FB76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 12

51. Sable must send all field measurements to the ILI tool vendor within 90 days of completing direct examinations and require the ILI vendor to validate the accuracy of the tool. Sable must conduct annual meetings with the ILI tool vendor to discuss tool performance and incorporate lessons learned.

52. Sable must utilize a third-party expert to review all ILI reports, verification of digs, data integration, ILI tool tolerances, development of unity plots, measured field findings, failure pressure ratios and any other finding that could affect the integrity of the pipeline. The review must be conducted within six (6) months of each ILI assessment. The third-party expert must be approved by the OSFM prior to being selected.

53. Within one (1) year from date of issuance, Sable must use a NACE-certified expert to conduct an evaluation and determine if alternating current (AC) interference or direct current (DC) interference or shorting that could contribute to external corrosion is occurring. The expert must recommend the frequency of subsequent interference surveys. All evaluations must be approved and signed by the NACE-certified expert.

## Data Requirements for Predicted Failure Analysis

54. Unless the defect dimensions have been verified using a direct examination measurements, Sable must explicitly analyze uncertainties in reported assessment results including but not limited to tool tolerance, detection threshold, probability of detection, probability of identification, sizing accuracy, conservative anomaly, interaction criteria, location accuracy, anomaly findings, and unity chart plots or equivalent for determining uncertainties and verifying tool performance, in identifying and characterizing the type and dimensions of anomalies or defects used in the analyses.

55. The analyses performed in accordance with this state waiver must utilize pipe and material properties of the pipe body and longitudinal weld seam that are documented in *traceable, verifiable, and complete* records.

## Recordkeeping

56. Procedures, records of investigations, data, analyses, and other actions made in accordance with the requirements of this state waiver shall be kept for the life of the pipeline and must be submitted to the OSFM, in the manner requested (electronic, hardcopy, or other format) within 30 days.

57. Sable must maintain the following records:
   a. Technical approach used for the analysis
   b. All data used and analyzed
   c. Pipe and longitudinal weld seam properties
   d. Procedures used to implement state waiver conditions

Docusign Envelope ID: 87148E7A-ED76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 13

    e. Evaluation methodology used

    f. Models used

    g. Direct in situ examination data

    h. All in-line inspection tool assessments information evaluated

    i. Pressure test data and results

    j. All in-the-ditch assessments performed on the pipeline segments

    k. All measurement tool, assessment, and evaluation accuracy specifications and tolerances used in technical and operations results

    l. All finite element analysis results

    m. The number of pressure cycles to failure, the equivalent number of annual pressure cycles, and the pressure cycle counting methodology

    n. The predicted fatigue life and predicted failure pressure from the required fatigue life models and fracture mechanics evaluation methods

    o. Safety factors used for fatigue life and/or predicted failure pressure calculations

    p. Reassessment time interval and safety factors

    q. The date of the review

    r. Confirmation of the results by qualified technical subject matter expert(s)

    s. Approval by responsible Sable management personnel

    t. Records of additional preventive and mitigative (P&M) measures performed

    u. Reports required by this State Waiver.

## Reporting

58. Any release on the pipeline shall be reported to the OSFM at the earliest practicable moment following discovery but no later than 24 hours from the time of discovery via email at PipelineNotification@fire.ca.gov, *Subject: OSFM State Waiver – Accident Notification.*[17]

59. An email notification shall be made at least three (3) days prior to the pipeline being exposed for non-emergency purposes of field evaluation and repair via email at PipelineNotification@fire.ca.gov, *Subject: OSFM State Waiver – Pipeline Repair CA-324.* The email notification shall include, if applicable:

    a. Tool type and run date

    b. Unique identifier (e.g. Dig Number, Joint Number, Flaw ID, Condition Type)

    c. Dig sheets

    d. Field contact information for Sable

    e. Time and location of the field evaluation and repair.

60. Sable shall provide a Summary of Conditions Report within 210 days of the last date of an ILI run via email at PipelineNotification@fire.ca.gov, *Subject: OSFM State Waiver – Summary of Conditions CA-324* and include:

---

[17] This requirement does not relieve Sable from spill reporting requirements that might exist under local, state or federal regulations.

Docusign Envelope ID: 87148E7A-FB76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 14

        a. Tool type
        b. Run date
        c. Summary of Conditions Report[18]
        d. Final Vendor Report and Pipe Tally

61. Sable shall provide a report to the OSFM by June 15th of every year for the duration of the state waiver. The report shall be addressed to the OSFM Assistant Deputy Director, Chief of Pipeline Safety via email at PipelineNotification@fire.ca.gov, *Subject: OSFM State Waiver – Annual Report CA-324*. At a minimum, the annual report shall contain the following, if applicable:

    a. A Closure Report for the previous calendar (CY) which contains:
        i. Features that were remediated in previous CY
            1. Provide documentation for the in-the-ditch assessments and repairs
        ii. Identify features that remain to be assessed
        iii. Unity Plots for previous ILI runs
    b. Fracture mechanics and pressure cycling analyses in accordance with Condition 48
    c. The third-party ILI expert reviews in accordance with Condition 52
    d. AC and DC Interference surveys that are due in accordance with Condition 53
    e. A copy of the CGRA for prior year including:
        i. Mean corrosion growth rate for the pipeline
        ii. Distribution graph of the corrosion growth rate for the pipeline (e.g. occurrences (#) vs. corrosion rate (mpy)

## Limitations

62. This state waiver is limited to a term of no more than (10) years from the date of issuance. If Sable elects to seek renewal of this state waiver, it must submit a renewal request to the OSFM at least 180 days prior to the expiration date, including a justification for continuation of the waiver.
63. Should Sable fail to comply with any conditions of this state waiver or should the OSFM determine that this state waiver is no longer appropriate or is inconsistent with pipeline safety, the OSFM may revoke the state waiver and require Sable to comply with all appropriate regulatory requirements.
64. The OSFM may order the pipeline shutdown at any time.
65. The OSFM may issue a compliance order or may initiate proceedings to determine the nature and extent of the violations and appropriate civil penalty for

---

[18] The OSFM may stipulate specific formatting or other information (e.g. Condition Type, Anomaly Details, Remaining Strength Calculation Method, Failure Pressure, CGRA, etc.) to be included in the Summary of Conditions Reports, Closure Report and Annual Reports if information provided is not deemed sufficient.

Docusign Envelope ID: 87148E7A-FB76-4884-86B3-BCE5F180FFD7

Lance Yearwood
December 17, 2024
Page 15

failure to comply with this state waiver. The terms and conditions of any compliance order shall take precedence over the terms of the state waiver.

66. In the event of conflict between the state waiver conditions and industry standards, the state waiver conditions shall prevail.

67. If Sable sells, merges, transfers or otherwise disposes of all or part of the assets covered by the state waiver, Sable must provide the OSFM written notice of the change within 30 days of the consummation date. In the event of such transfer, the OSFM reserves the right to revoke, suspend, or modify the state waiver.

Should you have any questions, please contact Alin Podoreanu, Supervising Pipeline Safety Engineer at (916) 212-8891.

Sincerely,

DocuSigned by:

*James Hosler*

980F8D3AE95C42E...

JAMES HOSLER
Assistant Deputy Director
Chief of Pipeline Safety and CUPA Programs

Enclosure(s): (1) Pacific Pipeline Company State Waiver Application for CA-324

cc:    Doug Allen, Supervising Pipeline Safety Engineer, OSFM
Andy Chau, Supervising Pipeline Safety Engineer, OSFM
Brendan Feery, Supervising Pipeline Safety Engineer, OSFM
Huy Nguyen, Supervising Pipeline Safety Engineer, OSFM
Alin Podoreanu, Supervising Pipeline Safety Engineer, OSFM
Tuan Tran, Pipeline Safety Engineer, OSFM
Josh Cleaver, Staff Counsel, CAL FIRE
Max Kieba, Engineering and Research Division, PHMSA
Joshua Johnson, Engineering and Research Division, PHMSA

# Exhibit 2

Exhibit 2
to Declaration of
Michael S. Dorsi
dated July 7, 2025

STATE OF CALIFORNIA—NATURAL RESOURCES AGENCY

Gavin Newsom, Governor



**DEPARTMENT OF FORESTRY AND FIRE PROTECTION**
**OFFICE OF THE STATE FIRE MARSHAL**
P.O. Box 944246
Sacramento, California 94244-2460
(916) 568-3800
Website: www.fire.ca.gov



CERTIFIED MAIL No: 9589-0710-5270-1475-5353-15

December 17, 2024

Lance Yearwood
Vice President
Sable Offshore Corp
845 Texas Avenue, Suite 2920
Houston, Texas 77002

**SUBJECT:** **LETTER OF DECISION ON THE STATE WAIVER REQUEST FOR LIMITED EFECTIVENESS OF CATHODIC PROTECTION ON THERMALLY INSULATED PIPELINE AND CORROSION OF OR ALONG A LONGITUDINAL SEAM WELD (CA-325A/B)**

**Operator:** Sable Offshore Corp
OPID# 40851
845 Texas Avenue, Suite 2920
Houston, Texas 77002

**Pipeline:** OSFM Line ID 0001 - 113.56 miles (Gaviota to Sisquoc to Pentland) of Sable Offshore Corp CA-325A/B (OSFM Line ID 0001) located in Santa Barbara County, San Luis Obispo County, and Kern County, California as described in the request of state waiver dated April 24, 2024

Dear Mr. Yearwood:

The Office of the State Fire Marshal (OSFM) received Sable Offshore Corp's (*Sable*) state waiver request (*Application*) on April 24, 2024, in accordance with the terms of the Consent Decree (CD) between Plains Pipeline, L.P. and the United States of America and the People of the State of California, DOJ Case REF. NO. 90-5-1-1-1130 (Appendix B, Article 1.1.D).

In addition, Sable requested a regulatory relief from Title 49 Code of Federal Regulations (49 C.F.R.), § 195.452(h)(4)(iii)(H) *Corrosion of or along a longitudinal seam weld* for Sable CA-325 A/B.

Sable explained that its goal is to appropriately manage the risk of corrosion under insulation that may occur as a result of inadequate cathodic protection due to the

*"The Department of Forestry and Fire Protection serves and safeguards the people and protects the property and resources of California."*

Docusign Envelope ID: 166BEEF3-211E-476E-8D10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 2

shielding effects of the polyurethane foam and the polyethylene tape wrap. Sable described the measures it has taken to address this risk and implemented and proposed a number of additional measures designed to mitigate the risk of corrosion under insulation that may result from potential ineffective cathodic protection (CP).

Sable provided the OSFM with its proposed measures to mitigate the risk of corrosion under insulation.  Sable also provided the OSFM information from the completed in-line inspections and additional data requested by our office. The OSFM Pipeline Safety Engineers have reviewed the materials provided and have been in communication with the United States Department of Transportation (USDOT), Pipeline and Hazardous Materials Safety Administration (PHMSA) Engineering and Research Division to incorporate PHMSA's recommended conditions into the state waiver.

The OSFM has regulatory jurisdiction over the safety standards and practices of intrastate hazardous liquid pipeline transportation within California. As a Pipeline Safety Program that is certified under 49 USC § 60105, the OSFM may grant a state waiver with a pipeline safety regulation adopted by the state of California. Title 49 C.F.R., Part 195 was adopted by reference as it relates to hazardous liquid pipelines within Title 19 California Code of Regulations (19 CCR), Section 2000.

This state waiver applies to Sable's Line CA-325A/B (OSFM Line ID 0001) which consists of a 113.56 mile long, 30-inch outside diameter pipeline segment with the origin and termination points as described in the application. The pipeline is located in Santa Barbara County, San Luis Obispo County, and Kern County, California and shall be referred herein as CA-325A/B. CA-325A/B consists of two shorter pipeline segments, CA-325A and CA-325B.  The pipeline segment CA-325A, located completely in Santa Barbara County, starts in Gaviota and ends at Sisquoc.  CA-325A is approximately 38.72 miles long.  The other pipeline segment, CA-325B, which is directly downstream of CA-325A, begins at Sisquoc and terminates in Pentland. CA-325B is approximately 74.84 miles long and traverses Santa Barbara County, San Luis Obispo County, and Kern County, California. The state waiver shall not become effective until (1) PHMSA issues an Order approving the waiver or stating it has no objection to the waiver or (2) PHMSA takes no action on the waiver within sixty (60) days after receiving the Letter of Decision from the OSFM.

The state waiver is limited to a term of no more than ten (10) years from the date it becomes effective, which shall be considered as the date of issuance. The OSFM may terminate the state waiver under conditions detailed below.

**Applicable Regulations**

The OSFM hereby grants this state waiver for CA-325 A/B, provided that Sable complies with the specific requirements in this state waiver and any additional conditions outlined by PHMSA. The pipeline must be operated and maintained in accordance with the CD, these

Docusign Envelope ID: 166BEEF3-241E-476E-8D10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 3

state waiver conditions and 49 C.F.R. Part 195, with the exception of 49 C.F.R. §195.452(h)(4)(iii)(H). In event of a conflict between the state waiver conditions and the applicable requirements under 49 C.F.R. Part 195, the state waiver conditions control. Should additional federal or State statutory or regulatory requirements come into effect following the implementation of this state waiver, CA-325 A/B shall be subject to those requirements except where they are in conflict with the State Waiver or the safe operation of the pipeline.

**General Conditions**

1. The pipeline can only be used to transport crude oil as stated in the application.
2. The maximum operating pressure (MOP) cannot exceed:
   a. 1000 pounds per square inch gauge (psig) for CA-325A.
   b. 1292 psig for CA-325B.
3. The maximum operating temperature of the crude oil must not exceed:
   a. 125 Fahrenheit for more than 12 consecutive hours for CA-325A. Temperature transmitters must be installed on CA-325A at Gaviota station to monitor the temperature of CA-325A/B at this facility.
   b. 110 Fahrenheit for more than 12 consecutive hours for CA-325B. Temperature transmitters must be installed on CA-325A/B at Sisquoc station to monitor the temperature of CA-325A/B at this facility.
4. Prior to startup, Sable must develop and implement procedures for the conditions and requirements described in the state waiver.
5. This state waiver does not relieve Sable from other requirements under 49 C.F.R. Part 195 or the Elder California Pipeline Safety Act of 1981 other than contained herein.
6. This state waiver does not relieve Sable from any requirements imposed by the Consent Decree (United States District Court Central District of California Civil Action No. 2:20-cv-02415).
7. In-line inspection must include:
   a. Use of a tool that is at least capable of reliably detecting and identifying cluster corrosion and general corrosion. Definition of cluster and general corrosion is as follows:
      i. Cluster means two or more adjacent metal loss features in the wall of the pipe or weld that may interact based on interaction criteria.
      ii. General corrosion means uniform or gradually varying loss of wall thickness over an area.
   b. Use of a tool that is at least capable of reliably detecting and sizing corrosion at a 90 percent probability of detection (POD) and probability of identification (POI)
   c. Use of a tool that is at least capable of reliably detecting and sizing crack or crack-like anomalies at a 90 percent POD and POI

Docusign Envelope ID: 166BEEF3-241E-476E-8D10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 4

8. Prior to placing CA-325A/B in operation, Sable must perform fracture toughness tests on the existing 30" pipe from CA-325A/B in accordance with ASTM E1820-23B Standard Test Method for Measurement of Fracture Toughness.  All of the test specimens must be from both of the two following predominant existing 30" pipe specifications:
   a. API 5L X70 pipe with a nominal thickness of 0.281" that was manufactured by the various pipe mills in the 1980s.
   b. API 5L X65 pipe with a nominal thickness of 0.344" that was manufactured by the various pipe mills in the 1980s.

   At least three (3) separate tests must be performed from each pipe mill, for both of the two pipe specifications listed above, to obtain the fracture toughness values of the pipe body, heat affected zone (HAZ)[1], and the DSAW long seam weld on the pipe to represent the fracture toughness of CA-325A/B (i.e. three (3) samples for pipe body, three (3) samples for HAZ, and three (3) samples for the DSAW long seam weld). The lowest fracture toughness value must be applied to conditions 10, 31, 34, and 49. Sable may use pipe samples taken opportunistically during ongoing pipeline maintenance and repair efforts.[2]

9. All immediate and 180-day repair conditions that are listed in this state waiver must be evaluated and remediated prior to restarting CA-325A/B.  Sable must utilize Ultrasonic Thickness Wall Measurement (UTWM) and Ultrasonic Shear Wave Crack Detection (USCD) in-line inspection (ILI) tools within seven (7) days of achieving initial steady state operation in accordance with an ILI survey schedule approved by the OSFM.  Sable must utilize the most recent Ultrasonic Thickness Wall Measurement (UTWM) and Ultrasonic Shear Wave Crack Detection (USCD) in-line inspection (ILI) results when identifying these repair conditions.

10. Remaining strength of pipe calculation for all metal loss anomalies must be in accordance with the Modified B31G method as described in ASME B31G *Manual for Determining the Remaining Strength of Corroded Pipelines.* If ASME B31G 2012 Edition is used, then it must comply with the conditions in accordance with Section 1.2 and exclusions in accordance with Section 1.3 of ASME B31G 2012 Edition. However, if the metal loss anomaly intersects or is within one (1) inch (circumferentially) of the longitudinal seam weld, Sable must also calculate the predicted failure pressure of the anomaly by using the crack-like flaw evaluation method ASME FFS-1/API 579-1.

11. Sable must utilize cleaning pigs at regular intervals not to exceed a biweekly basis to maintain adequate cleanliness on the internal pipe wall of its CA-325A/B.

---

[1] The heat affected zone (HAZ), as used in the state waiver, is defined as a 1-inch-wide area on either side of the longitudinal weld seam.
[2] Sable must submit all fracture toughness results to the OSFM prior to restarting the pipeline.

Lance Yearwood
December 17, 2024
Page 5

## Pressure Testing

12. Prior to placing the pipeline in operation, Sable must conduct a spike hydrostatic pressure test of the state waiver pipeline segment *CA-325A* at a minimum pressure that is at least 1.39 times the MOP, for a minimum of 15 minutes after the spike test pressure is stabilized.  Sable must ensure that the spike hydrostatic pressure at the highest elevation of each testable segment is at least 1.39 times the MOP.  Sable must field evaluate and remediate the following anomalies before performing the spike hydrostatic test on CA-325A:
    a. All metal loss anomalies that have an ILI reported depth of 40% and greater wall loss.
    b. All anomalies that have a predicted failure pressure less than or equal to 1.5 times MOP.

13. Immediately following the spike hydrostatic pressure test, Sable must conduct an 8-hour hydrostatic pressure test of the state waiver pipeline segment *CA-325A* at a minimum of 1.25 times the MOP.

14. Prior to placing the pipeline in operation, Sable must conduct a hydrostatic pressure test of the state waiver pipeline segment *CA-325B* at a minimum pressure of 1.25 times the MOP, for a minimum of 8 hours.  Sable must ensure that the hydrostatic pressure at the highest elevation of each testable segment is at least 1.25 times the MOP.  Sable must field evaluate and remediate the following anomalies before performing the hydrostatic test on CA-325B:
    a. All metal loss anomalies that have an ILI reported depth of 40% and greater wall loss.
    b. All anomalies that have a predicted failure pressure less than or equal to 1.4 times MOP.

15. Sable must obtain the Test ID from the OSFM for each hydrostatic pressure test segment and have the approved independent testing firm forward the certified test results to the OSFM.

16. Each hydrostatic pressure test must be performed in accordance with the applicable requirements of 49 C.F.R., Part 195 E – Pressure Testing and monitored by an independent testing firm listed under the OSFM approved hydrostatic testing companies.

17. Failures resulting from the spike hydrostatic pressure test or the 8-hour strength test shall be immediately reported[3] to the OSFM via email at PipelineNotification@fire.ca.gov
    Subject: OSFM State Waiver - Hydrotest Failure.

18. Section(s) of the state waiver pipeline segments that failed during the required hydrotesting must be repaired by removing and replacing the failed section. The OSFM reserves the right to revoke the state waiver if failure(s) raise the concern that the pipeline cannot be safely operated.

---

[3] In addition to the OSFM reporting, Sable shall follow all additional state reporting requirements.

Lance Yearwood
December 17, 2024
Page 6


## **In-Line Inspection (ILI) Assessment and Frequency**

19. At least 90 days prior to performing in-line inspections of the state waiver segment, Sable shall provide the OSFM with a written notification to PipelineNotification@fire.ca.gov describing its assessment plan with the following information:
    a) Dates for integrity assessment
    b) In-line inspection tool(s) selected, in accordance with API Standard 1163 Section 5 and NACE SP0102[4] to assess the integrity of the subject pipe segment(s) in which ILIs must be capable to detect and size wall loss, dents, internal corrosion, external corrosion, cracks and crack-like indications
    c) In-line inspection tool vendor(s)
    d) Required tool specifications including operational specifications and anomaly sizing tolerances
    e) Tool validation methodology
    f) Anomaly feature identification criteria and reporting thresholds – wall loss, dents, internal corrosion, external corrosion, cracks, and crack-like indications
    g) Criteria used to identify locations for excavation and field verification
    h) Non-destructive examination
20. Within seven (7) days prior to any anticipated ILI tool run, Sable must utilize extensive brush pigs and solvents (xylene or other chemicals) to ensure that the internal pipe wall does not have any corrosive products, wax, and bacteria buildup that may affect the ILI tool performance.
21. Metal Loss Tool(s)
    a. Initial ILI tool runs – Each year, during the first two (2) years of operating CA-325 A/B, Sable shall conduct at least two (2) ILIs using a UTWM tool with an inertial measurement unit (IMU).  Sable shall compare both runs and evaluate all available information, including these tool runs and corresponding IMU data. Sable shall perform the UTWM tool run every six (6) months not to exceed nine (9) months.  If a UTWM tool run is unsuccessful, Sable shall identify the limitations that prevented the UTWM tool run from being successful, consider changes to increase the likelihood of a successful UTWM tool run, and use best efforts to rerun the UTWM tool within 30 days.
    b. Subsequent ILI tool runs – After the first two (2) years of operating CA-325 A/B, Sable shall conduct at least one (1) Ultrasonic Wall Measurement tool (UTWM) each calendar year, not to exceed 15 months or the ILI assessment must be assessed at more frequent intervals if the remaining Failure Pressure Ratio will be less than 1.39 times MOP prior to the next ILI assessment, based upon anomaly growth estimates and pressure cycling. If,

---

[4] Industry standards that are referenced in this state waiver must utilize the editions that are incorporated by referenced in Title 49 Part 195.3 unless another edition was explicitly specified.

Docusign Envelope ID: 166BEEF3-241E-476E-8B10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 7

any UTWM tool run is deemed to be unsuccessful, Sable shall document the reasons why the UTWM tool was unsuccessful, consider changes to increase the likelihood of a successful UTWM tool run, and must reassess the pipeline within 30 days after it was deemed to be unsuccessful.  All metal loss tool runs must also utilize an Inertial Measurement Unit (IMU).

22. Crack Detection Tools - Sable must run at least one (1) Ultrasonic Shear Wave Crack Detection (USCD) tool each calendar year, not to exceed 15 months[5] or the ILI assessment must be assessed at more frequent intervals if Condition 49 determined a shorter assessment interval.

    a. These crack tool runs must utilize an Inertial Measurement Unit (IMU) and must be able to detect and size axial and circumferential cracks.

    b. USCD Performance Specification Requirements

        i. The USCD tools must have a probability of detection that is ≥ 90% for axial and circumferential cracks.

        ii. The minimum crack depth that can be detected must be at least 1 mm for axial and circumferential cracks that are located in the base material.

        iii. The minimum crack depth that can be detected must be at least 2 mm for axial and circumferential cracks that are located in the weld.

        iv. The depth sizing accuracy for cracks must be ± 0.8 mm for axial cracks and ± 1 mm for circumferential cracks.

23. Dents and Pipe Deformation: Sable shall conduct a high-resolution deformation ILI tool with each UTWM.

24. Where any ILI tool fails to record data for 5% or more of the external and/or internal surface area of the inspected segment, reassess with the ILI tool to cover the area that is deemed to be inadequate data of the inspected segment. In addition, if the ILI tool travels at a speed that is outside the range of the tool velocity listed in the tool specification for 2% or more of the length of the inspected segment, Sable must rerun the ILI tool to reassess the pipeline segment in which the ILI tool velocity was outside of the specified tool velocity range.

25. All ILI tool runs must obtain the Test ID from the OSFM prior to run.

26. Sable must require its ILI tool vendor(s) to include in the vendor's inspection report all metal loss indications of 10% or greater, based on raw data, prior to adding in any correction for tool tolerance.

27. Sable must incorporate ILI tool accuracy by ensuring that each ILI tool service provider determines the tolerance of each tool, in accordance with API Standard 1163 Second Edition and includes that tolerance in determining the size of each indication reported to Sable.

---

[5] Sable may petition the OSFM to revise the reassessment interval for Crack Detection Tool(s) when sufficient evidence is available to determine if crack growth rates could support a longer reassessment interval. Changes to the reassessment interval are subject to the OSFM and PHMSA approval.

Lance Yearwood
December 17, 2024
Page 8

28. Sable must account for ILI tool tolerance and anomaly growth rates in scheduled response times, repairs, and future reassessment intervals.  Sable must document and justify the values used. Sable must demonstrate ILI tool tolerance accuracy for each ILI tool run by using calibration, excavations, and unity plots[6] that demonstrate ILI tool accuracy to  meet  the  tool  accuracy specification  provided  by  the vendor (typical for depth within +10% accuracy for 80% of the time). Sable must compare previous indications to current indications that are significantly different.  If a trend is identified where the tool has been consistently over-calling or under-calling, the remaining ILI features must be re-graded accordingly.

29. Prior to the ILI final report being received, Sable must perform at least four (4) separate validation digs that do not interact with each other. At a minimum, Sable must perform validation digs in accordance with Level 2 of API Standard 1163, "In-line Inspection System Qualification" (Second Edition, April 2013).

**Discovery of Condition**

30. The discovery date must be within 180 days of any ILI tool run for each type of ILI tool.

**Immediate Repair Conditions**[7]

31. A crack or crack-like anomaly that meets any of the following criteria:
    a.  Crack or crack-like anomaly that is equal to or greater than 50% of pipe wall thickness.
    b.  Crack or crack-like anomaly that has predicted failure pressure of less than 1.39 times the MOP as calculated using crack-like flaw evaluation method ASME FFS-1/API 579-1.

32. Internal or external metal loss anomalies where the remaining strength of pipe shows a predicted failure pressure less than 1.39 times the MOP.

33. Any external cluster corrosion or external general corrosion that is located on the bottom half of the pipeline (below the 3 and 9 o'clock positions) where the remaining strength of pipe shows a predicted failure pressure less than 1.5 times the MOP.[8]

---

[6] A minimum of four (4) independent direct examination excavations must be used for unity plots.

[7] The criteria outlined in the state waiver is supplemental to the requirements set forth in *§195.452(h)(4)(i) Immediate repair conditions* and does not relieve Sable from complying with §195.452(h)(4)(i).  All immediate repair conditions must be remediated with a permanent repair method.

[8]  Cluster means two or more adjacent metal loss features in the wall of the pipe or weld that may interact based on interaction criteria.  General corrosion means uniform or gradually varying loss of wall thickness over an area.

Docusign Envelope ID: 166BEEF3-241E-476E-8D10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 9

## 180-Day Repair Conditions[9]

34. A crack or crack-like anomaly that has predicted failure pressure of less than 1.5 times the MOP.
35. Internal or external metal loss anomalies where the remaining strength of pipe shows a predicted failure pressure less than 1.5 times the MOP.
36. All internal or external metal loss anomalies that have an ILI reported depth of 40% or greater wall loss, including tool sizing tolerance for depth.[10]
37. For any crack (likely crack or possible crack) or crack-like anomaly, regardless of its dimensions, that interacts with metal loss anomalies and are within one (1) inch (circumferentially) of the longitudinal seam weld, Sable must integrate the ILI results from the most recent crack tool run and the most recent metal loss tool run before the discovery date deadline.

## Corrosion Growth Rate Analysis (CGRA)

38. Sable must develop a CGRA procedure to annually calculate corrosion growth rates between successive ILI's (using most recent ILI compared to prior ILI) and perform pipeline remediations needed to assure the integrity of the pipeline is maintained.[11]  The timing of pipeline remediations under this condition shall be based on the most recent calculation of short-term corrosion rates.
39. The CGRA procedure must include ILI data matching methods[12] to analyze data from successive ILI's, methodologies for growth rate calculations and errors from comparing ILI data.
40. Sable must identify the projected date when remaining metal loss indications will reach a depth of 70% or greater wall loss.
41. When determining the projected date when remaining metal loss indications will reach a depth of 70% or greater wall loss, Sable must account for reported ILI depth, tool tolerance and corrosion growth rates[13].

---

[9] The criteria outlined in the state waiver is supplemental to the requirements set forth in *§195.452(h)(4)(iii) 180-day conditions* and does not relieve Sable from complying with §195.452(h)(4)(iii).  All 180-day repair conditions must be remediated with a permanent repair method.

[10] For example, if the ILI tool reports a 31% metal loss anomaly and the tool sizing tolerance is ±10 for depth, then this anomaly is a 180-day repair condition since it can be considered as an external metal loss anomaly with 41% metal loss depth.  If Sable is unable to remediate such indications within 180 days of discovery, Sable must notify OSFM, temporarily reduce the operating pressure, and take further remedial action in accordance with 49 C.F.R. §195.452 until the indication is remediated or until otherwise authorized by the OSFM.

[11] At a minimum, Sable must include signal matching between ILI data sets.

[12] If there are several matching techniques that can be used, Sable must utilize the most accurate method of comparing ILI data sets.

[13] Growth projections must use corrosion rates determined in accordance with the CGRA procedure. A default corrosion rate of 32 mpy must be used in determining projections, if corrosion rates determined by CGRA are less than the default value.

Docusign Envelope ID: 166BEEF3-241E-476E-8D10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 10

42. All metal loss indications that are projected to reach a depth of 70% or greater wall loss prior to the next ILI, will become actionable and must be remediated before the next ILI.

**Pressure Reduction**

43. If Sable is unable to perform field evaluation and remediation of any required conditions within the time limit conditions specified in the state waiver, Sable must temporarily implement a minimum 20 percent or greater operating pressure reduction, based on actual operating pressure for two (2) months prior to the date of inspection, until the anomaly is repaired.

**In Field Direct Examination of Pipe**

44. Direct examinations[14] of pipe must include appropriate non-destructive examination methods for cracking such as magnetic particle inspection (MPI), shear wave technology or phased array ultrasonic testing (PAUT).[15] PAUT must be used for sizing any crack or crack-like anomaly lengths and depths.

45. Permanent repairs of metal loss anomalies are required for any section of pipe with wall loss equal to or greater than 40% in accordance with repair method 1, 4b, or 5 of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition. However, the following additional conditions are applied if Sable chooses repair method 5 for metal loss anomalies:

    a. Method 5 must not be used on metal loss anomalies that are in the HAZ, girth weld, or longitudinal seam weld.

    b. Sable must increase the metal loss anomaly's depth by 20% when they input it into the formula for calculating the number of wraps needed for repair method 5.

    c. After the anomaly is repaired via repair method 5, Sable must monitor the anomaly's wall loss depth in subsequent UTWM tool runs. If the anomaly's wall loss depth increases by more than 15% of the wall thickness in the subsequent UTWM tool runs, Sable must repair this anomaly via repair method 1 or 4b of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition.

46. Permanent repairs are required for all cracks and/or crack-like anomalies discovered during direct examination, regardless of crack depth or crack length in accordance with repair method 1 or 4b of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition.

---

[14] Any time the pipeline is exposed for direct examination of an indication or to perform a repair, Sable must document the condition of the coating and carrier pipe (including anomalies) with photographs.

[15] Direct examinations for ILI reported crack or crack-like indications must include a magnetic particle inspection complimented by shear wave technology or inspection by phased array ultrasonic testing.

Docusign Envelope ID: 166BEEF3-241E-476E-8D10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 11

47. Sable must develop a coating repair procedure for excavated or remediated corrosion anomalies that prevents further external corrosion and seals transition areas from currently insulated pipe to newly coated sections. Any time a shrink sleeve or coating is exposed, remove the shrink sleeve and coating, investigate circumferentially and longitudinally along the pipe for external corrosion and coating deterioration, and recoat with two-part epoxy.  Sable must recoat in accordance with their coating repair procedure.[16]

48. All external polyurethane foam and the polyethylene tape wrap on buried pipe that are exposed during the field evaluation must not be replaced with new insulation or polyethylene tape wrap.

**Integrity Management**

49. A fracture mechanics and pressure cycling evaluation is required for un-remediated cracks and crack-like indications detected by ILI or indirect inspection tools.
    a. Sable must determine the predicted failure pressure, failure stress pressure and crack growth of un-remediated cracks and crack-like anomalies in accordance with 49 C.F.R. §192.712(d)(1).
    b. Sable must perform a fatigue analysis using an applicable fatigue crack growth law or other technically appropriate engineering methodology in accordance with 49 C.F.R. §192.712(d)(2).

50. Sable must analyze a sample of additional indications of varying amounts of metal loss between 10% and 40% for validation. The sample size shall be at least ten (10), unless fewer than ten (10) indications are reported within that range, in which case Sable would examine the number of indications called.

51. When sizing metal loss indications, apply interaction/clustering criteria of 6t by 6t for applicable ILI tool(s).

52. Sable must send all field measurements to the ILI tool vendor within 90 days of completing direct examinations and require the ILI vendor to validate the accuracy of the tool. Sable must conduct annual meetings with the ILI tool vendor to discuss tool performance and incorporate lessons learned.

53. Sable must utilize a third-party expert to review all ILI reports, verification of digs, data integration, ILI tool tolerances, development of unity plots, measured field findings, failure pressure ratios and any other finding that could affect the integrity of the pipeline. The review must be conducted within six (6) months of each ILI assessment. The third-party expert must be approved by the OSFM prior to being selected.

54. Within one (1) year from date of issuance, Sable must use a NACE-certified expert to conduct an evaluation and determine if alternating current (AC)

---

[16] The coating procedure must be submitted to the OSFM prior to the prior to the effective date of the state waiver.

Lance Yearwood
December 17, 2024
Page 12

interference or direct current (DC) interference or shorting that could contribute to external corrosion is occurring. The expert must recommend the frequency of subsequent interference surveys. All evaluations must be approved and signed by the NACE-certified expert.

## Data Requirements for Predicted Failure Analysis

55. Unless the defect dimensions have been verified using a direct examination measurements, Sable must explicitly analyze uncertainties in reported assessment results including but not limited to tool tolerance, detection threshold, probability of detection, probability of identification, sizing accuracy, conservative anomaly, interaction criteria, location accuracy, anomaly findings, and unity chart plots or equivalent for determining uncertainties and verifying tool performance, in identifying and characterizing the type and dimensions of anomalies or defects used in the analyses.

56. The analyses performed in accordance with this state waiver must utilize pipe and material properties of the pipe body and longitudinal weld seam that are documented in *traceable, verifiable, and complete* records.

## Recordkeeping

57. Procedures, records of investigations, data, analyses, and other actions made in accordance with the requirements of this state waiver shall be kept for the life of the pipeline and must be submitted to the OSFM, in the manner requested (electronic, hardcopy, or other format) within 30 days.

58. Sable must maintain the following records:
    a. Technical approach used for the analysis
    b. All data used and analyzed
    c. Pipe and longitudinal weld seam properties
    d. Procedures used to implement state waiver conditions
    e. Evaluation methodology used
    f. Models used
    g. Direct in situ examination data
    h. All in-line inspection tool assessments information evaluated
    i. Pressure test data and results
    j. All in-the-ditch assessments performed on the pipeline segments
    k. All measurement tool, assessment, and evaluation accuracy specifications and tolerances used in technical and operations results
    l. All finite element analysis results
    m. The number of pressure cycles to failure, the equivalent number of annual pressure cycles, and the pressure cycle counting methodology

Docusign Envelope ID: 166BEEF3-241E-476E-8D10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 13

    n.  The predicted fatigue life and predicted failure pressure from the required fatigue life models and fracture mechanics evaluation methods
    o.  Safety factors used for fatigue life and/or predicted failure pressure calculations
    p.  Reassessment time interval and safety factors
    q.  The date of the review
    r.  Confirmation of the results by qualified technical subject matter expert(s)
    s.  Approval by responsible Sable management personnel
    t.  Records of additional preventive and mitigative (P&M) measures performed
    u.  Reports required by this State Waiver.

## Reporting

59. Any release on the pipeline shall be reported to the OSFM at the earliest practicable moment following discovery but no later than 24 hours from the time of discovery via email at PipelineNotification@fire.ca.gov, *Subject: OSFM State Waiver – Accident Notification.*[17]

60. An email notification shall be made at least three (3) days prior to the pipeline being exposed for non-emergency purposes of field evaluation and repair via email at PipelineNotification@fire.ca.gov, *Subject: OSFM State Waiver – Pipeline Repair CA-325 A/B*. The email notification shall include, if applicable:
    d.  Tool type and run date
    e.  Unique identifier (e.g. Dig Number, Joint Number, Flaw ID, Condition Type)
    f.  Dig sheets
    g.  Field contact information for Sable
    h.  Time and location of the field evaluation and repair.

61. Sable shall provide a Summary of Conditions Report within 210 days of the last date of an ILI run via email at PipelineNotification@fire.ca.gov, *Subject: OSFM State Waiver – Summary of Conditions CA-325 A/B* and include:
    i.  Tool type
    j.  Run date
    k.  Summary of Conditions Report[18]
    l.  Final Vendor Report and Pipe Tally

62. Sable shall provide a report to the OSFM by June 15th of every year for the duration of the state waiver. The report shall be addressed to the OSFM Assistant Deputy Director, Chief of Pipeline Safety via email at PipelineNotification@fire.ca.gov, *Subject: OSFM State Waiver – Annual Report*

---

[17] This requirement does not relieve Sable from spill reporting requirements that might exist under local, state or federal regulations.

[18] The OSFM may stipulate specific formatting or other information (e.g. Condition Type, Anomaly Details, Remaining Strength Calculation Method, Failure Pressure, CGRA, etc.) to be included in the Summary of Conditions Reports, Closure Report and Annual Reports if information provided is not deemed sufficient.

Docusign Envelope ID: 166BEEF3-241E-476E-8D10-BAEB95600F3B

Lance Yearwood
December 17, 2024
Page 14

*CA-325 A/B*. At a minimum, the annual report shall contain the following, if applicable:

   a. A Closure Report for the previous calendar (CY) which contains:
       i. Features that were remediated in previous CY
          1. Provide documentation for the in-the-ditch assessments and repairs
      ii. Identify features that remain to be assessed
      iii. Unity Plots for previous ILI runs
   b. Fracture mechanics and pressure cycling analyses in accordance with Condition 49
   c. The third-party ILI expert reviews in accordance with Condition 53
   d. AC and DC Interference surveys that are due in accordance with Condition 54
   e. A copy of the CGRA for prior year including:
      i. Mean corrosion growth rate for the pipeline
      ii. Distribution graph of the corrosion growth rate for the pipeline (e.g. occurrences (#) vs. corrosion rate (mpy)

## Limitations

63. This state waiver is limited to a term of no more than ten (10) years from the date of issuance. If Sable elects to seek renewal of this state waiver, it must submit a renewal request to the OSFM at least 180 days prior to the expiration date, including a justification for continuation of the waiver.
64. Should Sable fail to comply with any conditions of this state waiver or should the OSFM determine that this state waiver is no longer appropriate or is inconsistent with pipeline safety, the OSFM may revoke the state waiver and require Sable to comply with all appropriate regulatory requirements.
65. The OSFM may order the pipeline shutdown at any time.
66. The OSFM may issue a compliance order or may initiate proceedings to determine the nature and extent of the violations and appropriate civil penalty for failure to comply with this state waiver. The terms and conditions of any compliance order shall take precedence over the terms of the state waiver.
67. In the event of conflict between the state waiver conditions and industry standards, the state waiver conditions shall prevail.
68. If Sable sells, merges, transfers or otherwise disposes of all or part of the assets covered by the state waiver, Sable must provide the OSFM written notice of the change within 30 days of the consummation date. In the event of such transfer, the OSFM reserves the right to revoke, suspend, or modify the state waiver.

Docusign Envelope ID: 166BEFF3-2A1E-476E-8D10-BAFB95600F3B

Lance Yearwood
December 17, 2024
Page 15


Should you have any questions, please contact Alin Podoreanu, Supervising Pipeline Safety Engineer at (916) 212-8891.


Sincerely,

DocuSigned by:

*James Hosler*

980F8D3AE95C42E...

JAMES HOSLER
Assistant Deputy Director
Chief of Pipeline a Safety and CUPA Programs

Enclosure(s): (1) Pacific Pipeline Company State Waiver Application for CA-325 A/B

cc:     Doug Allen, Supervising Pipeline Safety Engineer, OSFM
        Andy Chau, Supervising Pipeline Safety Engineer, OSFM
        Brendan Feery, Supervising Pipeline Safety Engineer, OSFM
        Huy Nguyen, Supervising Pipeline Safety Engineer, OSFM
        Alin Podoreanu, Supervising Pipeline Safety Engineer, OSFM
        Tuan Tran, Pipeline Safety Engineer, OSFM
        Josh Cleaver, Staff Counsel, CAL FIRE
        Max Kieba, Engineering and Research Division, PHMSA
        Joshua Johnson, Engineering and Research Division, PHMSA

# Exhibit 3

Exhibit 3
to Declaration of
Michael S. Dorsi
dated July 7, 2025

Case 2:26-cv-05242-SVW-SSC    Document 5    Filed 05/14/26    Page 362 of 502    Page
ID #:2273
Case 2:20-cv-02415    Document 6-1    Filed 03/13/20    Page 1 of 102    Page ID #:94

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530
BRADLEY R. O'BRIEN (CA Bar Number: 189425)
Senior Attorney
ANGELA MO (CA Bar Number: 262113)
Trial Attorney
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6484;
Tel: (202) 514-1707
E-mail: brad.obrien@usdoj.gov
E-mail: angela.mo@usdoj.gov
Counsel for Plaintiff United States of America

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, and the PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* DEPARTMENT OF FISH AND WILDLIFE, PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* CENTRAL COAST REGIONAL WATER QUALITY CONTROL BOARD, *ex rel.* CALIFORNIA DEPARTMENT OF PARKS AND RECREATION, *ex rel.* CALIFORNIA STATE LANDS COMMISSION, *ex rel.* CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION'S OFFICE OF STATE FIRE MARSHAL, and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | Civil Action No. 2:20-cv-02415 **CONSENT DECREE** |
| Plaintiffs, | |
| v. | |
| PLAINS ALL AMERICAN PIPELINE, L.P. and PLAINS PIPELINE, L.P., | |
| Defendants. | |

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

XAVIER BECERRA
Attorney General of California
ERIC M. KATZ
Supervising Deputy Attorney General
MICHAEL ZARRO (CA Bar Number: 110171)
JESSICA BARCLAY-STROBEL (CA Bar Number: 280361)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Tel: (213) 269-6635
E-mail: Jessica.BarclayStrobel@doj.ca.gov
*Counsel for Plaintiffs California Department of Fish and Wildlife, Central Coast Regional Water Quality Control Board, and California Department of Forestry and Fire Protection's Office of State Fire Marshal*

XAVIER BECERRA
Attorney General of California
CHRISTINA BULL ARNDT
Supervising Deputy Attorney General
NICOLE RINKE (CA Bar Number: 257510)
MITCHELL E. RISHE (CA Bar Number: 193503)
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Tel: (213) 269-6394
E-mail: Mitchell.Rishe@doj.ca.gov
*Counsel for Plaintiffs California Department of Parks and Recreation and California State Lands Commission*

MARGARET WU (CA Bar Number: 116588)
Deputy General Counsel
BARTON LOUNSBURY (CA Bar Number: 253895)
Senior Counsel
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, California 94607-5200
Tel: (510) 987-9800
E-mail: barton.lounsbury@ucop.edu
*Counsel for Plaintiff The Regents of the University of California*

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

Case 2:26-cv-05242-GW-SSC   Document 5   Filed 05/14/26   Page 364 of 502   Page
ID #:96
Case 2:20-cv-02415   Document 6-1   Filed 03/13/20   Page 3 of 102   Page ID #:2275

# TABLE OF CONTENTS

I.      BACKGROUND .................................................................................... - 5 -

II.     JURISDICTION AND VENUE.............................................................. - 6 -

III.    APPLICABILITY ................................................................................. - 7 -

IV.     DEFINITIONS ...................................................................................... - 7 -

V.      CIVIL PENALTIES ............................................................................ - 13 -

VI.     NATURAL RESOURCE DAMAGES .................................................. - 17 -

VII.    TRUSTEES' MANAGEMENT AND APPLICABILITY
        OF JOINT NRD FUNDS ................................................................... - 21 -

VIII.   TRUSTEES' MANAGEMENT OF RECREATIONAL
        USE FUNDS ....................................................................................... - 22 -

IX.     INJUNCTIVE RELIEF ....................................................................... - 23 -

X.      CORRECTIVE ACTION ORDER ...................................................... - 27 -

XI.     STIPULATED PENALTIES ............................................................... - 27 -

XII.    FORCE MAJEURE ............................................................................. - 35 -

XIII.   DISPUTE RESOLUTION ................................................................... - 37 -

XIV.    REPORTING ....................................................................................... - 39 -

XV.     CERTIFICATION ............................................................................... - 40 -

XVI.    INFORMATION COLLECTION AND RETENTION....................... - 40 -

XVII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........... - 43 -

XVIII.  TRANSFER AND ACQUISITION OF ASSETS ............................... - 49 -

XIX.    COSTS ................................................................................................. - 50 -

XX.     NOTICES ............................................................................................ - 51 -

XXI.    EFFECTIVE DATE ............................................................................ - 54 -

XXII.   RETENTION OF JURISDICTION ..................................................... - 54 -

XXIII.  MODIFICATION ................................................................................ - 54 -

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

XXIV.    TERMINATION ........................................................................................- 55 -

XXV.    PUBLIC PARTICIPATION.....................................................................- 56 -

XXVI.    SIGNATORIES/SERVICE ......................................................................- 56 -

XXVII.    INTEGRATION .......................................................................................- 57 -

XXVIII. FINAL JUDGMENT ...............................................................................- 57 -

XXIX.    26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION ................- 57 -

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- ii -

A.      WHEREAS, on or about May 19, 2015, a hazardous liquid pipeline known as the Line 901 pipeline ("Line 901") owned and operated by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline, L.P., (jointly, "Plains" or "Defendants"), failed and discharged approximately 2,934 barrels of heavy crude-oil ("Refugio Incident") in Santa Barbara County, California.  A portion of the oil reached the Pacific Ocean and coastal areas such as Refugio State Beach.  The Refugio Incident adversely impacted Natural Resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States and the State of California ("California" or the "State").

B.      WHEREAS, cleanup actions began immediately after the Refugio Incident at the direction of a Unified Command established by the United States Coast Guard ("USCG") and the State of California Department of Fish and Wildlife ("CDFW"), Office of Spill Prevention and Response ("OSPR").  The Unified Command was comprised of the United States, State agencies, the County of Santa Barbara, and Plains.

C.      WHEREAS, on May 21, 2015, the United States Department of Transportation's Pipeline and Hazardous Materials Safety Administration ("PHMSA") issued Plains a Corrective Action Order ("Original CAO"), CPF No. 5-2015-5011H, which was subsequently amended on June 3, 2015 ("CAO Amendment No. 1"), November 12, 2015 ("CAO Amendment No. 2"), and June 16, 2016 ("CAO Amendment No. 3"), (collectively, "the PHMSA CAO").  The PHMSA CAO directed Plains, among other things, to purge Line 901 and a portion of the adjoining Line 903 pipeline ("Line 903"), between Plains' Gaviota and Pentland pump stations, and to keep Line 901 and the purged sections of Line 903 shut down until the actions required by the PHMSA CAO were satisfactorily completed.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 1 -

D. WHEREAS, on May 19, 2016, PHMSA issued a Failure Investigation Report, which included PHMSA's findings of the "proximate or direct" causes and the "contributing" causes of the Refugio Incident.

E. WHEREAS, Defendants reimbursed Plaintiffs' costs incurred for cleanup, and Plaintiffs have no known unreimbursed claims for cleanup costs arising from the Refugio Incident.

F. WHEREAS, CDFW incurred certain additional costs arising from the administration and civil enforcement of pollution laws, including attorneys' fees that have been reimbursed by Plains.

G. WHEREAS, Plains represents that it has implemented and will continue to utilize an electronic tracking tool and software for maintenance activities, including those activities related to mainline valves. The software tracks which maintenance activities are performed, who performs the activity, when prior notifications of maintenance activities by field personnel are received, when problems requiring maintenance are first discovered, and when maintenance problems are corrected. Plains maintains a separate software program to track the training and qualifications of all maintenance personnel.

H. WHEREAS, Plains represents that, following the Refugio Incident and pursuant to PHMSA's CAO, Plains performed a comprehensive review of its Emergency Response Plan and Training Program, and revised and updated its Response Plan for Onshore Oil Pipelines for Line 901 and Line 903 ("Bakersfield District Response Zone Plan") to reflect modifications resulting from the review and the incorporation of lessons learned. As part of the revision, Plains identified the locations of culverts along the pipelines' rights-of-way and provided containment and recovery techniques for responding to spills that may occur near those culverts. Plains provided drafts of the updated Bakersfield District Response Zone Plan to PHMSA, incorporated comments provided by PHMSA, and received approval of the revised plan from PHMSA on September 26, 2017.

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 2 -

I. WHEREAS, Plains represents that it also created a more detailed Geographic Information System ("GIS") based online Tactical Response Plan for its onshore oil pipelines in Southern California, including Line 2000 and the operational portion of Line 903, that, among other things, identifies culverts along the pipelines' rights-of-way, potential receptors and the equipment, supplies and resources that would be necessary to respond to a spill occurring at any given location along those pipelines, identifies the sources and locations for obtaining those resources, and, in some instances, establishes stored inventories of those resources in specific locations. Plains represents that it intends to keep its Tactical Response Plan updated and available for use in drills and spill response, and that it will make the Tactical Response Plan available to the Plaintiffs upon reasonable request and as needed in connection with a drill or response to a spill.

J. WHEREAS, Plains represents that Plains personnel responding to incidents that trigger the standup of an incident command structure ("ICS") have been provided ICS training appropriate to their responsibilities.

K. WHEREAS, the relevant Natural Resources trustees ("Trustees") for the Refugio Incident are the United States Department of the Interior ("DOI"); United States Department of Commerce, on behalf of the National Oceanic and Atmospheric Administration ("NOAA"); CDFW; California Department of Parks and Recreation ("CDPR"); California State Lands Commission ("CSLC"); and The Regents of the University of California ("UC").

L. WHEREAS, pursuant to Section 1006 of the Oil Pollution Act (''OPA''), 33 U.S.C. 2701, *et seq*., the United States and the State Trustees allege that oil from the Refugio Incident caused injuries to Natural Resources, including birds, marine mammals, shoreline and subtidal habitats, and also had an impact upon human uses of Natural Resources and other public resources. The Federal Trustees are designated pursuant to the National Contingency Plan,

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 3 -

40 C.F.R. § 300.600 and Executive Order 12777.  CDFW and CDPR are designated state trustees pursuant to the National Contingency Plan, 40 C.F.R. § 300.605, and the Governor's Designation of State Natural Resource Trustees pursuant to Section 1006(b)(3) of OPA and the Comprehensive Environmental Response, Compensation and Liability Act of 1980.  In addition, CDFW has state natural resource trustee authority pursuant to California Fish and Game Code §§ 711.7 and 1802 and the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act (California Government Code § 8670.1 *et seq*.).  CDPR and UC have jurisdiction over natural resources within the state park system and the UC Natural Reserve System, respectively, which are held in trust for the people of the State of California.  CSLC is a state trustee pursuant to its jurisdiction under Public Resources Code § 6301 and Civil Code § 670.

M.    WHEREAS, after the Refugio Incident, the Trustees and Defendants entered into a cooperative Natural Resource Damage Assessment process pursuant to 15 C.F.R. § 990.14, whereby the Trustees and Defendants jointly and independently planned and conducted a number of injury assessment activities. These activities included gathering and analyzing data and other information that the Trustees used to determine and quantify resource injuries and damages.  As a result of this process and other activities, the Trustees identified several categories of injured and damaged Natural Resources, including birds, marine mammals, and shoreline and subtidal habitats, as well as effects to human use/recreation resulting from impacts on these Natural Resources, and determined the cost to restore, rehabilitate, replace, or acquire the equivalent of injured Natural Resources.  By entering this Consent Decree, Defendants do not admit or agree that the Trustees' NRD findings and determinations are accurate.

N.    WHEREAS, due to the specific facts surrounding the Refugio Incident, including the timing, degree, and nature of the spill and the affected

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 4 -

Case 2:26-cv-05242-SVW-SSC   Document 503   Filed 05/14/26   Page 370 of 502   Page
Case 2:20-cv-02415   Document 6-1   Filed 03/13/20   Page 9 of 102   Page ID #:102
ID #:2281

environment, the Trustees will not seek additional damages, costs, or expenses for Natural Resources resulting from the Refugio Incident.

O.     WHEREAS, Plains agrees to reimburse costs incurred by the Trustees in connection with the NRDA through November 15, 2018, and will not reimburse costs incurred by the Trustees in connection with the NRDA after that date.

P.     WHEREAS, by entering into this Consent Decree, Plains does not admit the allegations in the Complaint filed in this action, or any liability to the Plaintiffs.

Q.     WHEREAS, on January 28, 2019, PHMSA initiated a regularly-scheduled "Integrated Inspection" of a portion of Defendants' Regulated Pipelines, as described below, and other pipeline facilities and records, pursuant to 49 U.S.C. § 60117.

R.     WHEREAS, the Parties agree that settlement of this matter without further litigation is in the public interest and that the entry of this Consent Decree is the most appropriate means of resolving this action.

S.     WHEREAS, the Parties agree and the Court by entering this Consent Decree finds, that this Consent Decree:  (1) has been negotiated by the Parties at arm's-length and in good faith; (2) will avoid prolonged litigation between the Parties; (3) is fair and reasonable; and (4) furthers the objectives of the federal and state environmental protections, and the federal and state pipeline safety laws.

## I.     BACKGROUND

The United States, on behalf of PHMSA, the United States Environmental Protection Agency ("EPA"), DOI, NOAA, and USCG; and the People of the State of California *Ex Relatione* CDFW, CDPR, CSLC, UC, the California Central Coast Regional Water Quality Control Board ("RWQCB"), and the California Department of Forestry and Fire Protection's - Office of the State Fire

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 5 -

Marshal ("OSFM"), filed a Complaint in this matter pursuant to the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, and associated regulations and orders; OPA, 33 U.S.C. §§ 2701 *et seq.*, and associated regulations and orders; the federal Pipeline Safety Laws, 49 U.S.C. §§ 60101 *et seq.*, and associated regulations and orders; the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, California Government Code §§ 8670.1 *et seq.* and associated regulations; California Fish and Game Code §§ 2014, 5650, 5650.1, 12016, 13013; California Water Code §§ 13350, 13385; and the Elder California Pipeline Safety Act of 1981, California Government Code §§ 51010 *et seq.*  The Complaint against Plains, *inter alia*, asserts allegations of violations, and seeks penalties, injunctive relief, and Natural Resource Damages.

NOW, THEREFORE, before the trial of any claims and without adjudication or admission of any issue of fact or law and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to Section 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E) and (n), Section 1017(b) of OPA, 33 U.S.C. § 2717(b); Sections 60120 and 60122 of the Pipeline Safety Laws, 49 U.S.C. §§ 60120 and 60122; and 28 U.S.C. §§ 1331, 1345, and 1355.  This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.  To the extent the OPA presentment requirement described in 33 U.S.C. § 2713 applies, the United States and the State Agencies have satisfied the requirement.

2.      Venue is proper in this District pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), Section 1017(b) of OPA, 33 U.S.C. § 2717(b); Section 60120 of the Pipeline Safety Laws, 49 U.S.C. § 60120; and 28 U.S.C. §§ 1391 and 1395(a), because Plains

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 6 -

does business in this District and the alleged claims occurred in this District.

3.      For purposes of this Consent Decree or any action to enforce this Consent Decree, Defendants consent to the Court's jurisdiction over this Consent Decree for such action and Defendants consent to venue in this judicial district. For purposes of this Consent Decree and without admission of liability, Defendants agree that the Complaint states claims upon which relief may be granted.

### III.    APPLICABILITY

4.      Subject to the terms herein, the obligations of this Consent Decree apply to and are binding upon the Parties and any successors, assigns, as well as any other entities or persons otherwise bound by law to comply with this Consent Decree.

5.      Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include ensuring compliance with any provision of this Consent Decree, as well as to any contractor retained for the purpose of performing work required under this Consent Decree.  Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree by specifying that contractors are obligated to perform work in compliance with this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### IV.    DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the CWA, OPA, Pipeline Safety Laws, the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, and the Elder California Pipeline Safety Act of 1981 shall

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 7 -

have the meanings assigned to them in these statutes and their regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Appendix A" is the set of maps that generally depict Lines 901, 903, and 2000;

"Appendix B" is the Injunctive Relief that Plains is required to perform under this Consent Decree;

"Appendix C" is intentionally left blank;

"Appendix D" is the list of remaining corrective actions from the PHMSA CAO that Plains is still required to implement under this Consent Decree. For the terms of the PHMSA CAO, *see* https://primis.phmsa.dot.gov/comm/reports/enforce/CaseDetail_cpf_520155011H .html?nocache=4888#_TP_1_tab_1;

"CDFW" shall mean the California Department of Fish and Wildlife and any of its successor departments or agencies;

"CDPR" shall mean the California Department of Parks and Recreation and any of its successor departments or agencies;

"Complaint" shall mean the Complaint filed by the Plaintiffs in this action;

"Consent Decree" shall mean this Consent Decree and all Appendices attached hereto;

"Control Room Management Plan" shall mean Plains' Control Room Management Plan, dated October 2019, and delivered to PHMSA electronically on October 21, 2019, from counsel for Defendants;

"Control Center General Procedures" shall mean Plains' Control Center General Procedures, dated October 2019, and delivered to PHMSA electronically on October 21, 2019, from counsel for Defendants;

"CSLC" shall mean the California State Lands Commission and any of its successor departments or agencies;

"Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, the rules set forth in Rule 6 of the Federal Rules of Civil Procedure shall apply;

"Defendants" shall mean Plains All American Pipeline, L.P. and Plains Pipeline, L.P.;

"Delivery Lines" as stated in Appendix B shall mean any pipeline that generally operates to move oil from a delivery meter on a pipeline or facility to another pipeline or facility in close proximity;

"DOI" shall mean the United States Department of the Interior, including its bureaus and agencies, and any of its successor departments or agencies;

"Elder California Pipeline Safety Act" shall mean the Elder California Pipeline Safety Act of 1981, California Government Code §§ 51010 *et seq.*;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall have the definition provided in Section XXI (Effective Date);

"Federal Trustees" shall mean DOI and NOAA in their capacities as Natural Resource Trustees;

"Integrity Management Plan" or "IMP" shall mean Plains' Integrity Management Plan, dated September 2019, as delivered to PHMSA by letter dated November 19, 2019, from counsel for Defendants;

"Line 901" is Defendants' 24-inch diameter crude-oil pipeline that extends approximately 10.7 miles in length from the Los Flores Pump Station to the Gaviota Pump Station, in Santa Barbara County, California, as generally depicted in Appendix A;

"Line 903" is Defendants' 30-inch diameter crude-oil pipeline that extends approximately 129 miles in length from the Gaviota Pump Station in Santa Barbara County, California to the Emidio Pump Station in Kern County,

Case 2:26-cv-05242-SVW-SSC    Document 5    Filed 05/14/26    Page 375 of 502   Page
ID #:1079
Case 2:20-cv-02415   Document 6-1    Filed 03/13/20    Page 14 of 102   Page ID #:2286

California, with intermediate stations at Sisquoc Mile Post 38.5 and Pentland Mile Post 114.57, as generally depicted in Appendix A;

"Line 2000" is Defendants' 20-inch diameter pipeline that extends approximately 130 miles in length and transports crude-oil produced in the outer continental shelf and the San Joaquin Valley.  Line 2000 runs from Bakersfield, California, over the Tehachapi Mountains and through the Grapevine I-5 corridor and extends to delivery locations in the Los Angeles metropolitan area, as generally depicted in Appendix A;

"Mainline pipeline" as stated in Appendix B shall mean the principal pipeline or the parallel pipeline in a given pipeline system, excluding connected lateral lines or branch lines that are used locally to deliver product either into the mainline pipeline from, or out of the mainline pipeline to, a nearby facility or a third-party line;

"Natural Resource" and "Natural Resources" shall mean land, fish, mammals, birds, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States and/or the State or any subdivision thereof, and shall also mean the services provided by such resources to other resources or to humans;

"Natural Resource Damages" or "NRD" shall mean all damages, including restoration or rehabilitation costs, recoverable by the United States or State Trustees for injuries to, destruction of, loss of, or loss of use of, natural resources including any services such natural resources provide, including the reasonable costs of assessing the damage, as described in 33 U.S.C. § 2702(b)(2)(A), resulting from the Refugio Incident;

"Natural Resource Damage Assessment" or "NRDA" shall mean the process of collecting, compiling, and analyzing information, statistics, or data through prescribed methodologies to determine damages for injuries to Natural

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 10 -

Resources, as described in 15 C.F.R. Part 990, resulting from the Refugio Incident;

"NRD Payment" shall mean the payment Defendants are required to pay for the Natural Resource Damages as described in Section VI (Natural Resource Damages);

"Natural Resource Trustees" or "Trustees" are those federal and state agencies or officials designated or authorized pursuant to the CWA, OPA, and/or applicable state laws to act as Trustees for the Natural Resources belonging to, managed by, controlled by, or appertaining to the United States or the State. Participating Trustees in the Natural Resource Damage Assessment and in this Consent Decree are DOI, NOAA, CDFW, CDPR, CSLC, and UC;

"NOAA" shall mean the National Oceanic and Atmospheric Administration and any of its successor departments or agencies;

"Oil Spill Liability Trust Fund" or "OSLTF" shall mean, *inter alia*, the fund established pursuant to 26 U.S.C. § 9509, including the claim-reimbursement provisions set forth in 33 U.S.C. § 2712;

"OSFM" shall mean the California Department of Forestry and Fire Protection's - Office of the State Fire Marshal and any of its successor departments or agencies;

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral;

"Parties" shall mean the Plaintiffs and Defendants, collectively;

"PHMSA" shall mean the United States Department of Transportation, Pipeline and Hazardous Materials Safety Administration and any of its successor departments or agencies;

"PHMSA Corrective Action Order" or "PHMSA CAO" shall mean the Original CAO issued on May 21, 2015, by PHMSA, which was subsequently amended on June 3, 2015, November 12, 2015, and June 16, 2016;

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

- 11 -

"Pipeline Safety Laws" shall mean 49 U.S.C. §§ 60101 *et seq*., and regulations promulgated thereunder, including 49 C.F.R. Parts 190-199;

"Plaintiffs" shall mean the United States and the State Agencies;

"Refugio Incident" shall mean the release of approximately 2,934 barrels of crude-oil from Plains' Line 901 Pipeline, in Santa Barbara County, California on or about May 19, 2015;

"Regulated Pipeline" shall mean any pipeline operated by Plains subject to regulation under 49 C.F.R. Subchapter D, 19 California Code of Regulations Div. 1 Ch. 14, or the pipeline safety regulations of any other state certified by PHMSA pursuant to 49 U.S.C. § 60105, but excludes facilities other than pipelines;

"Requests for Information" or "RFI" shall mean PHMSA's RFIs dated August 19, 2015, August 21, 2015, and September 1, 2016.  RFIs shall also refer to PHMSA's subpoenas issued to Plains dated July 27, 2016 and June 2, 2017;

"Restore" or "Restoration" shall mean any action or combination of actions to restore, rehabilitate, replace or acquire the equivalent of any Natural Resource and its services, including Natural Resource-based recreational opportunities that were injured, lost, or destroyed as a result of the Refugio Incident;

"RWQCB" shall mean the California Central Coast Regional Water Quality Control Board and any of its successor departments or agencies;

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral;

"Segment" as stated in Appendix B shall mean any contiguous portion of a pipeline system for which a single hydrostatic test or ILI may be performed, as determined by Defendants;

"State Agencies" shall mean the People of the State of California, *Ex Relatione* CDFW, CDPR, CSLC, OSFM, RWQCB, and UC.  The State Agencies do not include any entity or political subdivision of the State of California other than those agencies herein designated the "State Agencies";

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 12 -

"State Trustees" shall mean CDFW, CDPR, CSLC, and UC in their capacities as Natural Resource Trustees;

"United States" shall mean the United States of America, on behalf of PHMSA, EPA, DOI, NOAA, and USCG;

"UC" shall mean The Regents of the University of California and any of its successor departments or agencies; and

"USCG" shall mean the United States Coast Guard and any of its successor departments or agencies.

## V.    CIVIL PENALTIES

A.    Within thirty (30) Days after the Effective Date, Defendants shall pay to the United States, CDFW, and RWQCB a total civil penalty of twenty-four million dollars ($24,000,000), together with interest accruing from the date on which the Consent Decree is lodged with the Court, at a rate specified in 28 U.S.C. § 1961 (the "Penalty Payment"). The Penalty Payment shall be allocated as follows:

8.    <u>Penalty Payment to the United States (PHMSA)</u>. For violations of the Pipeline Safety Laws alleged in the United States' Complaint, Defendants shall pay to the United States a civil penalty of fourteen million five hundred thousand dollars ($14,500,000), together with a proportionate share of the interest accrued on the Penalty Payment. The Penalty Payment shall be made as follows:

a.    Thirteen million two hundred fifty thousand dollars ($13,250,000) attributed to Plains' alleged Pipeline Safety Law violations; and

b.    One million two hundred fifty thousand dollars ($1,250,000) attributed to Plains' alleged non-compliance with the RFIs.

c.    Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice in accordance with written instructions to be provided to Defendants by the

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 13 -

Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California Western Division after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Megan Prout
> Senior Vice President
> Commercial Law and Litigation
> Plains All American Pipeline, L.P.
> 333 Clay Street, Suite 1600
> Houston, TX 77002

on behalf of Defendants. Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States in accordance with Section XX (Notices).

d.      At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state the payment is for the civil penalty owed pursuant to this Consent Decree in the *United States of America and the People of the State of California v. Plains All American Pipeline, L.P., et al*., and shall reference the Civil Action Number assigned to this case, CDCS Number, and DOJ case number 90-5-1-1-11340, to the United States in accordance with Section XX (Notices).

9.      Penalty Payment to the United States (EPA) shared with CDFW and RWQCB.  The Penalty Payment shall be allocated as follows:

a.      As a CWA penalty for violations of 33 U.S.C. § 1321(b) and

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 14 -

the California statutes alleged in the Complaint other than California Government Code § 8670.66(b), Defendants shall pay a civil penalty of nine million four hundred fifty thousand dollars ($9,450,000), together with a proportionate share of the interest accrued on the Penalty Payment. The Penalty Payment shall be made as follows:

1) To CDFW, one million twenty-five thousand dollars ($1,025,000), together with a proportionate share of the interest accrued on the Penalty Payment. The Penalty Payment shall be made by check payable to California Department of Fish and Wildlife. The check shall be sent by overnight or certified mail to:

> California Department of Fish and Wildlife
> Office of Spill Prevention and Response
> Attn: Katherine Verrue-Slater, Senior Counsel
> P.O. Box 160362
> Sacramento, California 95816-0362

The check shall reference the "Refugio Oil Spill." CDFW shall deposit the money as follows: one million dollars ($1,000,000) into the Environmental Enhancement Fund pursuant to California Government Code § 8670.70; and twenty-five thousand dollars ($25,000) into the Fish and Wildlife Pollution Account pursuant to California Fish and Game Code §§ 12017 and 13011.

2) To RWQCB, two million five hundred thousand dollars ($2,500,000), together with a proportionate share of the interest accrued on the Penalty Payment. The Penalty Payment shall be made by check payable to the "State Water Pollution Cleanup and Abatement Account" and sent to:

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 15 -

> State Water Resources Control Board
> Division of Administrative Services, ATTN: Civil Liability Payment
> P.O. Box 1888
> Sacramento, California 95812-1888

The check shall reference the "Refugio Oil Spill."

3)      To the United States, five million nine hundred twenty-five thousand dollars ($5,925,000), together with a proportionate share of the interest accrued on the Penalty Payment, by EFT to the United States Department of Justice, in accordance with instructions to be provided to Defendants by the FLU of the United States Attorney's Office for the Central District of California Western Division.  Such monies are to be deposited in the OSLTF.  The Penalty Payment shall reference the Civil Action Number assigned to this case, DOJ case number 90-5-1-1-11340, and USCG reference numbers FPNs A15017 and A15018, and shall specify that the payment is made for CWA civil penalties to be deposited into the OSLTF pursuant to 33 U.S.C. § 1321(s), Section 4304 of Pub. L. No. 101-380, and 26 U.S.C. § 9509(b)(8).  Any funds received after 11:00 a.m. Eastern Standard Time shall be credited on the next business day.  Defendants shall simultaneously provide notice of payment in writing, together with a copy of any transmittal documentation to EPA and the United States in accordance with Section XX (Notices) of this Consent Decree, and to EPA by email to acctsreceivable.CINWD@epa.gov and to EPA and the National Pollution Funds Center at the following addresses:

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

U.S. Environmental Protection Agency
Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio 45268

and

Patricia V. Kingcade
Attorney Advisor
National Pollution Funds Center
U.S. Coast Guard
2703 Martin Luther King Jr. Avenue SE
Washington, D.C. 20593-7605

10. <u>Penalty Payment to be Paid to CDFW</u>. For alleged violations of California Government Code § 8670.25.5, Defendants shall pay a civil penalty pursuant to California Government Code § 8670.66(b) of fifty thousand dollars ($50,000) together with a proportionate share of the interest accrued on the Penalty Payment. The Penalty Payment shall be made by check payable to California Department of Fish and Wildlife. The check shall be sent by overnight or certified mail to:

California Department of Fish and Wildlife
Office of Spill Prevention and Response
Attn: Katherine Verrue-Slater, Senior Counsel
P.O. Box 160362
Sacramento, California 95816-0362

The check shall reference the "Refugio Oil Spill." CDFW shall deposit the money into the Environmental Enhancement Fund pursuant to California Government Code § 8670.70.

11. Defendants shall not deduct or capitalize any penalties paid under this Section or under Section XI (Stipulated Penalties) in calculating their federal or state income taxes.

## VI.  NATURAL RESOURCE DAMAGES

12. Within thirty (30) Days after the Effective Date, Defendants shall pay an NRD Payment of twenty-two million three hundred twenty-five thousand

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 17 -

Case 2:26-cv-05242-SVW-SSC    Document 5    Filed 05/14/26    Page 383 of 502    Page
ID #:2294
Case 2:20-cv-02415    Document 6-1    Filed 03/13/20    Page 22 of 102    Page ID #:1159

dollars ($22,325,000) together with interest accruing from November 16, 2018, at a rate specified in 28 U.S.C. § 1961.  The NRD Payment shall be allocated as follows:

a.     To DOI, eighteen million four hundred twenty-two thousand dollars ($18,422,000) together with a proportionate share of the interest accrued on the NRD Payment.  Such payment shall be used by the Trustees for the purposes set forth in Section VII (Trustees' Management and Applicability of Joint NRD Funds).  Defendants shall make such payment by EFT to the United States Department of Justice in accordance with instructions that the FLU of the United States Attorney's Office for the Central District of California Western Division shall provide to Defendants following the Effective Date of this Consent Decree by this Court.  At the time of payment, Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Trustees in accordance with Section XX (Notices) of this Consent Decree and to:

Department of the Interior
Natural Resource Damage Assessment and
     Restoration Program
Attention:  Restoration Fund Manager
1849 "C" Street, N.W. Mail Stop 4449
Washington, D.C.  20240

The EFT and transmittal documentation shall reflect that the payment is being made to the Department of the Interior Natural Resources Damage Assessment and Restoration Fund ("Restoration Fund"), Account Number 14X5198.  DOI will maintain these funds as a segregated subaccount named REFUGIO BEACH OIL SPILL NRD Subaccount within the Restoration Fund.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

b.      To CDPR, two million eighty-four thousand dollars ($2,084,000) together with a proportionate share of the interest accrued on the NRD Payment, for deposit into the State Park Contingent Fund.  Payment shall be made by check payable to the California Department of Parks and Recreation.  At the time of payment, Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Trustees in accordance with Section XX (Notices) of this Consent Decree.  The check shall be sent by overnight or certified mail to:

> The California Department of Parks and
>        Recreation
> Attn:  Laura Reimche, Senior Counsel
> 1416 Ninth Street, Room 1404-6
> Sacramento, California  95814

The check shall reference the "Refugio Beach Oil Spill" and reflect that it is a payment to the State Parks Contingent Fund.  CDPR shall use such monies to fund appropriate projects within State Parks' properties from Gaviota to El Capitan State Park to compensate for recreation losses resulting from the Refugio Incident.  CDPR shall manage such monies in accordance with Section VIII (Trustees' Management of Recreational Use Funds).

c.      To the National Fish and Wildlife Foundation ("NFWF"), one million seven hundred ninety-three thousand dollars ($1,793,000) together with a proportionate share of the interest accrued on the NRD Payment, on behalf of the State Trustees for deposit into the California South Coast Shoreline Parks and Outdoor Recreational Use Account established by NFWF.  Payment shall be made by check payable to the National Fish and Wildlife Foundation.  At the time of payment, Defendants shall simultaneously send written

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 19 -

notice of payment and a copy of any transmittal documentation to the Trustees in accordance with Section XX (Notices) of this Consent Decree. The check shall be sent by overnight or certified mail to:

> California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn: Katherine Verrue-Slater, Senior Counsel
> P.O. Box 160362
> Sacramento, California 95816-0362

The check shall reference the "Refugio Beach Oil Spill" and reflect that it is a payment to the California South Coast Shoreline Parks and Outdoor Recreational Use Account. The California South Coast Shoreline Parks and Outdoor Recreational Use Account shall be managed in accordance with the South Coast Shoreline Parks and Outdoor Recreational Use Account Memorandum of Agreement among the State Trustees and NFWF and shall be used by the Trustees for the purposes set forth in Section VIII (Trustees' Management of Recreational Use Funds).

d.    To UC, twenty-six thousand dollars ($26,000) together with a proportionate share of the interest accrued on the NRD Payment, for deposit into Natural Reserve System Account. Payment shall be made by check payable to The Regents of the University of California. At the time of payment, Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Trustees in accordance with Section XX (Notices) of this Consent Decree. The check shall be sent by overnight or certified mail to:

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 20 -

The Regents of the University of California
Attn: Michael Kisgen, Associate Director
Natural Reserve System
University of California, Office of the President
1111 Franklin Street, 6th Floor
Oakland, California 94607-5200

The check shall reference the "Refugio Beach Oil Spill" and reflect that it is a payment to the Natural Reserve System Account. The University of California Natural Reserve System will administer the monies to fund projects selected by the University of California in coordination with the Trustees. The projects shall address the research, education, and outreach missions of the University of California. UC shall manage such monies in accordance with Section VIII (Trustees' Management of Recreational Use Funds).

13. The NRD Payment is in addition to the NRDA costs incurred by the Trustees through November 15, 2018, which have been separately reimbursed by Defendants. To date, Plains has paid approximately ten million dollars ($10,000,000) for NRDA costs incurred by the Trustees through November 15, 2018.

## VII. TRUSTEES' MANAGEMENT AND APPLICABILITY OF JOINT NRD FUNDS

14. DOI shall, in accordance with law, manage and invest funds in the REFUGIO BEACH OIL SPILL NRD Subaccount, paid pursuant to Paragraph 12, and any return on investments or interest accrued on the REFUGIO BEACH OIL SPILL NRD Subaccount for use by the Natural Resource Trustees in connection with Restoration of Natural Resources affected by the Refugio Incident. DOI shall not make any charge against the REFUGIO BEACH OIL SPILL NRD Subaccount for any investment or management services provided.

15. DOI shall hold all funds in the REFUGIO BEACH OIL SPILL NRD

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 21 -

Case 2:26-cv-05242-SVW-SSC Document 5-3 Filed 05/14/26 Page 387 of 502 Page
Case 2:20-cv-02415 Document 6-1 Filed 03/13/20 Page 26 of 102 Page
ID #:2298
ID #:1199

Subaccount, including return on investments or accrued interest, subject to the provisions of this Consent Decree.

16. The Natural Resource Trustees commit to the expenditure of the funds set forth in Paragraph 12 for the design, implementation, permitting (as necessary), monitoring, and oversight of Restoration projects and for the costs of complying with the requirements of the law to conduct a Restoration planning and implementation process. The Natural Resource Trustees will use the funds to Restore, rehabilitate, replace or acquire the equivalent of any Natural Resource and its services, including lost human use of such services, injured, lost, or destroyed as a result of the Refugio Incident and for the administration and oversight of these Restoration projects.

17. The specific projects or categories of projects will be contained in a Restoration Plan prepared and implemented jointly by the Trustees, for which public notice, opportunity for public input, and consideration of public comment will be provided. Plains shall have no responsibility nor liability for implementation of the Restoration Plan or projects relating to the Refugio Incident, including any future project costs other than the payments set forth in Section VII herein. The Trustees jointly retain the ultimate authority and responsibility to use the funds in the REFUGIO BEACH OIL SPILL NRD Subaccount to Restore Natural Resources in accordance with applicable law, this Consent Decree, and any memorandum or other agreement among them.

## VIII. TRUSTEES' MANAGEMENT OF RECREATIONAL USE FUNDS

18. CDPR shall allocate the monies paid pursuant to Paragraph 12 for projects providing human use benefits and for the oversight of those projects in accordance with a Restoration Plan prepared and implemented jointly by the Trustees, this Consent Decree, and in accordance with applicable law and any Trustee memorandum or other agreement among them.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 22 -

19.    The State Trustees shall allocate the funds in the Recreational Use Account held by NFWF for projects providing human use benefits and for the oversight of those projects in accordance with a Restoration Plan prepared and implemented jointly by the Trustees, this Consent Decree, and in accordance with applicable law and any Trustee memorandum or other agreement among them.

20.    UC shall allocate the monies paid pursuant to Paragraph 12 for research, education, and outreach projects in accordance with a Restoration Plan prepared and implemented jointly by the Trustees, this Consent Decree, and in accordance with applicable law and any Trustee memorandum or other agreement among them.

## IX.    INJUNCTIVE RELIEF

21.    Plains agrees to implement the injunctive relief set forth in Appendix B to this Consent Decree for Plains' Regulated Pipelines.

22.    <u>Material Changes to Plains' IMP</u>.

a.    Plains' Integrity Management Plan shall serve as the baseline IMP for purposes of this Consent Decree. Plains agrees that it will not make any material changes to the following parts of the IMP throughout the term of this Consent Decree without following the process set forth in this Paragraph:

1)    Procedure for the Assessment of In-Line Inspection ("ILI") Results;

2)    Section 9.5, "Continual Evaluation and Assessment of Pipeline Integrity;"

3)    White Papers 32-200.09-S001, "Reassessment Interval Determination on Pipelines with Possible Shielded Coatings," and 32-200.09-S002, "Reassessment Interval Determination on Pipelines with Possible Corrosion Under Insulation;"

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 23 -

4) Section 11.3, "Conducting Preventive and Mitigative Evaluation Meetings;"

5) Section 11.4, "Documentation of P&M Evaluation Meetings;" and

6) Section 11.6, "Implementation of P&M Recommendations."

For purposes of this Paragraph, the term "material change" refers to any substantive modification in the IMP Procedures that could affect the outcome or effect of a particular procedure or requirement.

b. At least thirty (30) Days prior to making a material change to the above sections of the IMP, Defendants shall provide written notice to PHMSA that includes a copy of the proposed change(s). In the event PHMSA provides a written objection to Defendants' notice prior to the effective date of the material change and they cannot informally resolve the matter, Defendants shall have the right to submit the issue to Dispute Resolution (Section XIII).

c. In the event Plains cannot reasonably provide the thirty (30) Day notice of material modification to the IMP described in Subparagraph 22.b due to an unanticipated emergency, Plains shall provide written notice to PHMSA within seven (7) Days of the material change, stating the basis for the abbreviated notice. In the event PHMSA provides a written objection to Defendants' modification, Defendants shall have the right to submit the issue to Dispute Resolution (Section XIII).

d. In the event PHMSA provides a written objection to a material modification of Defendants' IMP, PHMSA and Defendants shall have sixty (60) Days for informal consultation. The parties may mutually agree to extend the period by no more than thirty (30)

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 24 -

Days. Following the notice period specified in Subparagraphs 22.b and 22.c, Defendants may implement the modification until the dispute is resolved. If the dispute is not resolved as a result of the informal consultation, PHMSA or Defendants may invoke Dispute Resolution pursuant to Section XIII. Stipulated penalties shall not accrue during the informal consultation period described in this Paragraph.

23. Material Changes in Control Room Management Plan and Control Center General Procedures.

a. Plains' Control Room Management Plan and Control Center General Procedures (collectively, "Control Center Plan and Procedures") shall serve as the baseline Control Center Plan and Procedures for purposes of this Consent Decree. Plains agrees that it will not make any material changes to sections 6.5.5, 6.6.8, 8, 9.6.4, 9.6.9, 9.6.13, and 9.6.14 of its Control Room Management Plan and procedures 100-2, 100-8, 100-9, 200-1, 300-1, 300-3, 300-5, 400-0, and 500-12 of its Control Center General Procedures throughout the term of this Consent Decree without following the process set forth in this Paragraph. For purposes of this Paragraph, the term "material change" refers to any substantive modification in the Control Center Plan and Procedures that could affect the outcome or effect of a particular procedure or requirement.

b. At least thirty (30) Days prior to making a material modification to the above sections of its Control Room Management Plan and Control Center General Procedures, Defendants shall provide written notice to PHMSA that includes a copy of the proposed change(s). In the event PHMSA provides a written objection to Defendants' notice prior to the effective date of

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

- 25 -

the material change(s), Defendants shall have the right to submit the issue to Dispute Resolution (Section XII).

c.     In the event Plains cannot reasonably provide the thirty (30) Day notice of material modification to the Control Room Management Plan and Control Center General Procedures described in Subparagraph 23.b due to an unanticipated emergency, Plains shall provide written notice to PHMSA within seven (7) Days of the material modification, stating the basis for the abbreviated notice.  In the event PHMSA provides a written objection to Defendants' modification, Defendants shall have the right to submit the issue to Dispute Resolution (Section XIII).

d.     In the event PHMSA provides a written objection to a material modification of Defendants' Control Room Management Plan and Control Center General Procedures, PHMSA and Defendants shall have sixty (60) Days for informal consultation. The parties may mutually agree to extend the period by no more than thirty (30) Days.  Following the notice period specified in Subparagraphs 23.b and 23.c, Defendants may implement the modification until the dispute is resolved.  If the dispute is not resolved as a result of the informal consultation, PHMSA or Defendants may invoke Dispute Resolution pursuant to Section XIII. Stipulated penalties shall not accrue during the informal consultation period described in this Paragraph.

24.     Where any compliance obligation under this Consent Decree requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely applications and take all other actions reasonably necessary to obtain all such permits or approvals.  Defendants may seek relief under the provisions of Section XII (Force Majeure) for any delay in the performance of any such

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 26 -

obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely applications and have taken all other actions reasonably necessary to obtain all such permits or approvals.

## X.    CORRECTIVE ACTION ORDER

25.    Upon the Effective Date of this Consent Decree, the PHMSA CAO shall close and be of no further force or effect.  All outstanding terms and obligations under the PHMSA CAO as of the Effective Date and which Plains is still required to implement under this Consent Decree are set forth in Appendix D.

## XI.    STIPULATED PENALTIES

26.    Unless excused under Section XII (Force Majeure), Defendants shall be liable for stipulated penalties for violations of this Consent Decree as specified below.  A violation includes failing to perform any obligation required by the terms of this Consent Decree according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

27.    <u>Late Payment of Civil Penalties and NRD Payment</u>.

a.    If Defendants fail to pay any portion of the Penalty Payment to the United States required under Section V (Civil Penalties) when due, Defendants shall pay to the United States a stipulated penalty of ten thousand dollars ($10,000) per Day for each Day payment is late.

b.    If Defendants fail to pay any portion of the Penalty Payment to the CDFW and/or RWQCB as required under Section V (Civil Penalties) when due, Defendants shall pay to the CDFW and/or RWQCB a stipulated penalty of ten thousand dollars ($10,000) each, as applicable, per Day for each Day payment is late.

c.    If Defendants fail to pay any portion of the NRD Payments

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 27 -

required under Section VI (Natural Resource Damages) when due, Defendants shall pay a stipulated penalty of five thousand dollars ($5,000) to the United States, and five thousand dollars ($5,000) to the State Trustees, per Day for each Day payment is late.

28. <u>Stipulated Penalties for Non-Performance of Injunctive Relief</u>. Unless excused under Section XII (Force Majeure), the stipulated penalties described in this Paragraph shall accrue per violation per Day for Defendants' failure to perform the following injunctive relief required under Section IX (Injunctive Relief) when due:

a. For failure to timely submit to OSFM the applications for State waivers as specified in paragraphs 1.A, 1.B, 1.C, and 1.D of Appendix B;

b. For failure to implement the Integrity Management provisions as specified in paragraphs 4.A.1.a, e, f, g, h, and 4.A.2 of Appendix B;

c. For failure to timely submit to OSFM the EFRD analyses as specified in paragraphs 5.A-5.B of Appendix B;

d. For failure to timely submit to OSFM the risk analysis as specified in paragraph 6.A of Appendix B;

e. For failure to timely submit to PHMSA the modified Section 9.5 of Plains' IMP, as specified in paragraph 9.A.3 of Appendix B;

f. For failure to timely submit to PHMSA the modified P&M Recommendation forms, as specified in paragraph 9.B of Appendix B;

g. For failure to timely conduct EFRD analyses for all Regulated Pipelines for which Plains has not previously conducted an EFRD analysis, as specified in paragraph 10.A of Appendix B;

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 28 -

h.    For failure to timely have in place revised valve maintenance procedures, as specified in paragraph 10.B of Appendix B;

i.    For failure to timely create a list of rupture detection methods utilized, as specified in paragraph 11.A of Appendix B;

j.    For failure to timely conduct annual training for controllers on attributes and benefits of various methods of leak detection, including Analog High/Low Threshold, Alarm Deadband, Creep Deviation, and Analog Rate of Change, as specified in paragraph 11.B of Appendix B;

k.    For failure to timely submit to PHMSA the computational pipeline monitoring ("CPM") systems analysis, as specified in paragraph 11.C of Appendix B;

l.    For failure to timely submit to PHMSA the selection of leak detection method procedure, as specified in paragraph 11.D of Appendix B;

m.    For failure to hold or document periodic (at least annual) meetings regarding potential improvements to leak detection, as provided in paragraph 11.E of Appendix B;

n.    For failure to timely have in place a procedure for tracking when instrumentation has been impeded, as provided in paragraph 11.F of Appendix B;

o.    For failure to complete, prior to resuming operations on Lines 901 or 903, the items identified in paragraph 12.A.1-4 of Appendix B;

p.    For failure to timely submit to OSFM confirmation that all alarm descriptors are accurate, as specified in paragraph 12.B of Appendix B;

q.    For failure to timely conduct the surveys and update the

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

emergency response plans, as specified in paragraph 13.B.1 of Appendix B;

r.    For failure to timely provide emergency response training to employees, as specified in paragraph 13.B.2 of Appendix B;

s.    For failure to timely provide control room supervisor training, as specified in paragraph 13.B.4 of Appendix B;

t.    For failure to timely submit to PHMSA and/or OSFM, and/or OSPR, as applicable, notice of drills, as specified in paragraph 13.B.5 of Appendix B, provided that the penalty under this subsection shall not exceed one Day per drill;

u.    For failure to timely submit to PHMSA the third-party Safety Management System report, as specified in paragraph 14.A.1 of Appendix B;

v.    For failure to timely review and revise the drug and alcohol misuse plans, as specified in paragraph 15 of Appendix B;

w.    For failure to timely submit to PHMSA notice of any material modification to the IMP, as required by Paragraph 22; and

x.    For failure to timely submit to PHMSA notice of any material modification to the Control Room Management Plan or Control Center General Procedures, as required by Paragraph 23;

y.    The penalties stipulated in this Section shall accrue as follows:

| Penalty Per Violation | Per Day Period of Noncompliance |
|---|---|
| $2,000 penalty per Day | 1st to 30th Day |
| $4,000 penalty per Day | 31st to 60th Day |
| $5,500 penalty per Day | 61st Day and beyond |

29.     <u>Stipulated Penalties for Non-Compliance with Corrective Action Order Terms.</u>  Unless excused under Section XII (Force Majeure), the stipulated penalties described in this Paragraph shall accrue per violation per Day for Defendants' failure to perform the following injunctive relief required under Section X (Corrective Action Order) when due:

    a.     For operation of Line 901 in violation of paragraph 1.a of Appendix D;

    b.     For failure to timely submit to OSFM a Line 901 Restart Plan, as specified by paragraph 1.b of Appendix D;

    c.     For failure to comply with the operating pressure restriction, including requirements for removal of the pressure restriction, for Line 901 specified by paragraphs 1.c and 1.d of Appendix D;

    d.     For operation of Line 903, in violation of paragraph 1.e of Appendix D;

    e.     For failure to timely submit to OSFM a Line 903 Restart Plan, as specified by paragraph 1.f of Appendix D;

    f.     For failure to comply with the operating pressure restriction, including requirements for removal of the pressure restriction, for Line 903 specified by paragraphs 1.g and 1.h of Appendix D;

    g.     For failure to timely submit to OSFM any notification specified by paragraph 1.i of Appendix D; and

    h.     For failure to submit to OSFM a final Appendix D Documentation Report, as specified by paragraph 1.j of Appendix D.

    i.     The penalties stipulated in this Section shall accrue as follows:

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

- 31 -

Case 2:26-cv-05242-SVW-SSC   Document 53   Filed 05/14/26   Page 397 of 502   Page
ID #:1299
Case 2:20-cv-02415   Document 6-1   Filed 03/13/20   Page 36 of 102   Page ID #:2308

| Penalty Per Violation | Per Day Period of Noncompliance |
|---|---|
| $2,000 penalty per Day | 1st to 30th Day |
| $4,000 penalty per Day | 31st to 60th Day |
| $5,500 penalty per Day | 61st Day and beyond |

30.     Defendants shall pay stipulated penalties due pursuant to this Section within thirty (30) Days of a written demand.

31.     For stipulated penalties accrued pursuant to Subparagraphs 27.a, 28.e, 28.f, 28.g, 28.h, 28.i, 28.j, 28.k, 28.l, 28.m, 28.n, 28.s, 28.t, 28.u, 28.v, 28.w, or 28.x of this Consent Decree, the United States shall have the right to issue a written demand for stipulated penalties, and Defendants must pay to the United States the full amount of any stipulated penalties due and will not be liable to the State Agencies for any such stipulated penalties.

32.     For stipulated penalties accrued pursuant to Subparagraph 27.b of this Consent Decree, only CDFW and RWQCB shall have the right to issue a written demand for stipulated penalties and Defendants must pay to the CDFW and RWQCB the full amount of any stipulated penalties due and will not be liable to United States for any such stipulated penalties.

33.     For stipulated penalties accrued pursuant to Subparagraphs 28.a, 28.b, 28.c, 28.d, 28.o, 28.p, or Paragraph 29 of this Consent Decree, only OSFM shall have the right to issue a written demand for stipulated penalties, and Defendants must pay to OSFM the full amount of any stipulated penalties due and will not be liable to United States for any such stipulated penalties.

34.     For stipulated penalties accrued pursuant to Paragraphs 28.q, 28.r, 28.t, or Paragraph 30 of this Consent Decree, the United States, CDFW, OSFM, or all, may demand stipulated penalties by sending a joint or individual written demand to Defendants, with a copy simultaneously sent to the other Plaintiff(s).

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 32 -

a.      Where only one or two of the Plaintiffs referenced in Paragraph 35 demand stipulated penalties under Paragraph 35, a copy of the demand will simultaneously be sent to the remaining Plaintiff(s) and they will have forty-five (45) Days to join in the demand.

b.      Where multiple Plaintiffs referenced in Paragraph 35 demand stipulated penalties for the same violation, Defendants shall pay fifty (50) percent to each of the demanding Plaintiffs (when two Plaintiffs join in the demand); one third to each demanding Plaintiff (when all three Plaintiffs join in the demand); or as allocated by the United States, CDFW, and OSFM.

c.      Where only one Plaintiff referenced in Paragraph 35 demands stipulated penalties, and the other Plaintiffs do not join in the demand within forty-five (45) Days of receiving the demand, Defendants shall pay one hundred (100) percent to the Plaintiff making the demand.

d.      If a Plaintiff joins in the demand within forty-five (45) Days but subsequently elects to waive or reduce stipulated penalties, in accordance with Paragraphs 38 or 39 for that violation, Defendants shall not be liable for such portion of the stipulated penalties waived or reduced by such Plaintiff and shall be liable for any stipulated penalties due to the other Plaintiffs joining such demand pursuant to the allocation set forth in Subparagraph 34(b).

35.    For stipulated penalties arising from a failure to perform obligations pursuant to Subparagraph 27.c, the United States and the State Trustees may demand stipulated penalties by sending a joint written demand to Defendants.

36.    For all payments made pursuant to this Section, Defendants must follow the payment instructions set forth in Section V (Civil Penalties).  Any

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 33 -

transmittal correspondence shall state that payment is for stipulated penalties and shall identify the date of the written demand to which the payment corresponds.

37. Stipulated penalties under this Section shall begin to accrue on the Day after the performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed, or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

38. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree.

39. The applicable State Agencies may, in the unreviewable exercise of their discretion, reduce or waive stipulated penalties otherwise due to the applicable State Agencies under this Consent Decree.

40. Stipulated penalties shall continue to accrue as provided in Paragraphs 27 through 29, during any Dispute Resolution, but need not be paid until the following:

    a. If the dispute is resolved by agreement or by a decision of the United States or the State Agencies, as applicable, that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing to the United States or the State Agencies, as applicable, together with interest, within thirty (30) Days of the effective date of the agreement or the receipt of the United States' or the State Agencies' decision.

    b. If the dispute is appealed to the Court and the Plaintiffs prevail in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 34 -

c.      If any Party appeals the Court's decision and a Plaintiff prevails in whole or in part, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

41.      If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State Agencies from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

42.      The payment of stipulated penalties, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

43.      Subject to the provisions of Section XVII (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the State Agencies (including, but not limited to, statutory penalties, additional injunctive relief, mitigation or offsets measures, and/or contempt) for Defendants' violation of this Consent Decree or applicable laws.

## XII.   FORCE MAJEURE

44.      "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

45. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic transmission to the relevant Plaintiff(s), within five (5) Days of when Defendants first knew that the event might cause a delay. Within ten (10) Days thereafter, Defendants shall provide in writing to such Plaintiffs an explanation and description of the reasons for the delay; the anticipated duration of the delay; the actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall provide with any notice the documentation that Defendants are relying on to support the claim that the delay was attributable to a Force Majeure event. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

46. If Plaintiffs agree that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 36 -

Plaintiffs for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. Plaintiffs will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

47. If Plaintiffs do not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, Plaintiffs will notify Defendants in writing of their decision.

48. If Defendants elect to invoke the Dispute Resolution procedures set forth in Section XIII (Dispute Resolution), in response to Plaintiffs' determination in Paragraph 47 above, it shall do so no later than thirty (30) Days after receipt of Plaintiffs' notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 44 and 45. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to Plaintiffs and the Court.

## XIII. DISPUTE RESOLUTION

49. Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by Plaintiffs to enforce any obligation of Defendants arising under this Consent

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

Case 2:26-cv-05242-SVW-SSC Document 53 Filed 05/14/26 Page 403 of 502 Page
Case 2:20-cv-02415 Document 6-1 Filed 03/13/20 Page 42 of 102 Page ID #:1599
ID #:2314

Decree.

50.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the relevant Plaintiff(s) a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed thirty (30) Days from the date the dispute arises, unless that period is modified by written agreement.  If the parties cannot resolve a dispute by informal negotiations, then the position advanced by Plaintiffs shall be considered binding unless, within forty-five (45) Days after the conclusion of the informal negotiation period, Defendants invoke formal Dispute Resolution procedures as set forth below.

51.     Formal Dispute Resolution.  Defendants shall invoke formal Dispute Resolution procedures, within the time period provided in the preceding Paragraph, by serving on Plaintiffs a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

52.     Plaintiffs shall serve their Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position.  Plaintiffs' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Plaintiffs.  Plaintiffs' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

53.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the relevant Plaintiff(s), in accordance with Section XX (Notices), a motion requesting judicial resolution of the dispute.  The motion

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 38 -

Case 2:26-cv-05242-SVW-SSC Document 53 Filed 05/14/26 Page 404 of 502 Page
Case 2:20-cv-02415 Document 6-1 Filed 03/13/20 Page 43 of 102 Page ID #:1309
ID #:2315

must be filed within thirty (30) Days of receipt of Plaintiffs' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

54. Plaintiffs shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court or by a schedule set by the Court. Defendants may file a reply memorandum to the extent permitted by the Local Rules.

55. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 51, Defendants shall bear the burden of demonstrating that its position complies with this Consent Decree, based on the Statements of Position, and under applicable standards of review.

56. The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue until the final resolution of the dispute. Payment shall be stayed pending resolution of the dispute. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XI (Stipulated Penalties).

## XIV. REPORTING

57. After the Effective Date, by March 31 and September 30 of the following years until termination of this Consent Decree per Section XXIV (Termination), Defendants shall submit to the Plaintiffs in accordance with Section XX (Notices) bi-annual reports that shall describe the status of Defendants' compliance with the Consent Decree, including implementation of

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

the injunctive relief requirements set forth in Appendices B and D. The report will be organized to show the measures taken to comply with each of the requirements set forth in Appendices B and D, whether the measures were taken timely, the status of any permitting action that may affect compliance with the Consent Decree, and whether the measures taken have achieved compliance with the requirement.

## XV. CERTIFICATION

58. Each report submitted by Defendants under Section XIV (Reporting) shall be signed by either the Chief Executive Officer, the President, an Executive Vice President, a Senior Vice President, or General Counsel who is an authorized representative of Defendants, and must contain the following statement:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on any personal knowledge and my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## XVI. INFORMATION COLLECTION AND RETENTION

59. Plaintiffs and their representatives shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times and upon reasonable notice, upon presentation of credentials, to:

    a.    monitor the progress of activities required under this Consent Decree;

    b.    verify any data or information submitted to the Plaintiffs in accordance with the terms of this Consent Decree;

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 40 -

      c.     obtain documentary evidence, including photographs and similar data; and

      d.     assess Defendants' compliance with this Consent Decree.

60.    Until one (1) year after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve or deliver to Plains, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Decree. At any time during this information-retention period, upon request by the Plaintiffs, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

61.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State Agencies pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

62.    For any documents, records, or other information required to be submitted to Plaintiffs pursuant to this Consent Decree, Plains may assert a claim of business confidentiality or other protections applicable to the release of information by Plaintiffs, covering part or all of the information required to be submitted to Plaintiffs pursuant to this Consent Decree in accordance with, as applicable, 49 C.F.R. Part 7, 49 C.F.R. Part 190, and 40 C.F.R Part 2. Plains must mark the claim of confidentiality in writing on each page, and include a statement specifying the grounds for each claim of confidentiality.

63.    The federal agency Plaintiffs are subject to applicable laws

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 41 -

governing the disclosure of information under the Freedom of Information Act ("FOIA") (5 U.S.C. § 552 *et seq*.).  If a federal agency Plaintiff receives a request pursuant to FOIA for records produced pursuant to the Consent Decree, that Plaintiff will, to the extent permitted by law, treat those records as exempt from disclosure, and give Defendants a reasonable opportunity to identify portions of documents Defendants have claimed as confidential and that may be subject to the request, and to specify the grounds for each claim of confidentiality.  In accordance with applicable regulations, if the federal agency Plaintiff determines that the records are not exempt from disclosure, the Plaintiff shall provide notice of the determination to Defendants prior to making any record available to the public.

64.     For documents provided to PHMSA under this Consent Decree, Defendants need not provide redacted copies when the documents are produced. Within fourteen (14) Days of notification from PHMSA of a FOIA request, or such other time as agreed upon, Defendants will provide a copy of the relevant records with confidential information redacted along with explanations of the asserted grounds for confidentiality.

65.     State Agency Plaintiffs are subject to the California Public Records Act ("CPRA") (California Government Code §§ 6250 *et seq*.).  If a State Agency Plaintiff receives a request pursuant to the CPRA for records produced pursuant to the Consent Decree, that Plaintiff will, to the maximum extent permitted by law, treat those records as exempt from disclosure, and give Defendants a reasonable opportunity to submit redacted copies of the requested records.  If the Plaintiff determines that the records are not exempt from disclosure, the Plaintiff shall provide notice of the determination to Defendants prior to making any record available to the public.

66.     The requirements of this Paragraph apply to Defendants' production of documents to PHMSA only.  Defendants shall produce all documents required

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

to be produced in connection with this Consent Decree in, at Defendants' option, either native format via electronic media or secure file transfer protocol ("FTP"). Any encryption or access restriction shall be on a container level only, *i.e.*, only the electronic media or the top-level folder containing the documents shall be encrypted and Plaintiffs shall have unrestricted access to the files/folders within the electronic media or the top-level folder without need for additional decryption or access codes.  Regardless of production method or encryption, individual documents shall be produced in a manner that allows the Plaintiffs to view, print, copy, save, download, and share each document within Plaintiffs' own environment without restriction, tracking or monitoring by Defendants, or automatically generated changes to the document (*e.g.*, without entering access codes prior to each download, and without automatically generated watermarks stating the download date and time).

67.    At the conclusion of the information-retention period, Defendants shall provide ninety (90) Days' notice to Plaintiffs of Defendants' resumption of internal document destruction policies for documents, records, or other information subject to the requirements of Paragraph 60.

68.    [*Intentionally left blank.*]

## XVII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

69.    This Consent Decree resolves the civil claims of the United States and the State Agencies for the matters alleged in the Complaint filed in this action for the Refugio Incident.

70.    Subject to the reservations of rights specified in Paragraph 71, this Consent Decree also resolves all civil and administrative penalty claims that could be brought by PHMSA, for violations of the Pipeline Safety Laws specified below that occurred on any of Defendants' Regulated Pipelines prior to January 28, 2019, the date that PHMSA's ongoing "Integrated Inspection" of a portion of Defendants' Regulated Pipelines and other pipeline facilities began.  The specific

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

Pipeline Safety Laws subject to this Paragraph are the following (including other regulations expressly incorporated therein):

      a.     49 C.F.R. Part 194 Subpart B – Response Plans;

      b.     49 C.F.R. Part 195 Subpart B – Reporting;

      c.     49 C.F.R. Part 195 Subpart E – Pressure Testing;

      d.     49 C.F.R. Part 195 Subpart F – Operation and Maintenance, sections 195.402, 195.403, 195.404, 195.406, 195.408, 195.412, 195.420, 195.422, 195.428, 195.436, 195.442, 195.444, 195.446, 195.452;

      e.     49 C.F.R. Part 195 Subpart G – Qualification of Pipeline Personnel, as it relates to valve maintenance;

      f.     49 C.F.R. Part 195 Subpart H – Corrosion Control;

      g.     49 C.F.R. Part 199 – Drug and Alcohol Testing; and

      h.     All recordkeeping, documentation, and document production requirements in the provisions listed in subsections 70.a-70.g, and 49 C.F.R. section 190.203 and Part 195.

71.    The United States, on behalf of PHMSA, reserves all legal and equitable remedies to address violations of the Pipeline Safety Laws described in Paragraph 70 that occur on or after January 28, 2019, including violations that may have begun prior to such date and continued subsequent to January 28, 2019. A separate violation of the Pipeline Safety Laws occurs for each day that the violation continues, pursuant to 49 U.S.C. § 60122(a).

72.    This Consent Decree also resolves all civil and administrative penalty claims that could be brought by OSFM against Defendants for violations of the Pipeline Safety Laws and the Elder California Pipeline Safety Act as specified below relating to Line 901, Line 903, or Line 2000 that occurred prior to January 28, 2019.  OSFM reserves all legal and equitable remedies to address violations of the specified Pipeline Safety Laws that occur on or after

January 28, 2019, including violations that may have begun prior to such date and continued subsequent to January 28, 2019. The specific Pipeline Safety Laws and Elder California Pipeline Safety Act subject to this Paragraph are:

      a.    The Pipeline Safety Laws specified in Paragraph 70; and

      b.    California Government Code §§ 51012.3, 51013, 51013.5, 51014, 51015, 51015.4, 51015.5 (for Line 901 and Line 903 only), and 51018.

73.    For any reportable pipeline accident, as defined in 49 C.F.R. § 195.50, occurring on or after January 28, 2019, on any of Defendants' Regulated Pipelines, Paragraphs 70 and 72 shall not limit the right of PHMSA and OSFM to sue or pursue administrative or other remedies for violations (including penalties) under the Pipeline Safety Laws and the Elder California Pipeline Safety Act for such accident. Nothing in Paragraphs 70 through 72 shall be construed to limit the legal and equitable remedies of the United States or State Agencies, other than PHMSA and OSFM.

74.    The United States and the State Agencies reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States or the State Agencies to obtain penalties, injunctive relief, or other administrative or judicial remedies under the CWA, OPA, Pipeline Safety Laws, or under other federal or state laws, regulations, or permit conditions, except as specified in Paragraphs 69, 70, and 72.

75.    The United States reserves all legal and equitable remedies to address any imminent and substantial endangerment or threat to the public health or welfare or the environment arising at, or posed by, Defendants' operations, whether related to the violations addressed in this Consent Decree or otherwise. PHMSA further reserves the right to issue to Defendants corrective action orders pursuant to 49 C.F.R § 190.233; emergency orders pursuant to 49 C.F.R.

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

§ 190.236; and safety orders pursuant to 49 C.F.R. § 190.239.  The State Agencies reserve all legal and equitable remedies under California Government Code §§ 8670.57, 8670.69.4, 51013.5, 51015.5, 51018.6, 51018.7 and 51018.8, California Water Code §§ 13301, 13304, 13340, and 13386, and California Health & Safety Code § 13107.5 to address (1) conditions threatening to cause or creating a substantial risk of an unauthorized discharge of oil into waters of the State of California, (2) a discharge of waste threatening to cause a condition of pollution or nuisance, or (3) a discharge which poses a substantial probability of harm to persons, property or natural resources.

76.     This Consent Decree also shall not be construed to in any way limit or waive the claims set forth in the case entitled *California State Lands Commission, et al. v. Plains Pipeline, L.P., et al.*, Case No. 18CV02504 (Cal. Sup. Court) and Case No. B295632 (Cal. Ct. App.).

77.     In any subsequent administrative or judicial proceeding initiated by the United States or the State Agencies for injunctive relief, civil penalties, other appropriate relief relating to Defendants' violations alleged in Plaintiffs' Complaint, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State Agencies in the subsequent proceeding should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 69, 70, and 72.

78.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws, or regulations.  Defendants are responsible for achieving and maintaining full compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the State Agencies do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, OPA, Pipeline Safety Laws, or with any other provisions of federal, state, or local laws, regulations, or permits.

79.    This Consent Decree does not limit or affect the rights of Defendants or of the United States or the State Agencies against any third-parties, not party to this Consent Decree, nor does it limit the rights of third-parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

80.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third-party not party to this Consent Decree.

81.    Plaintiffs will not submit any claim for restitution for Natural Resource Damages in *The People of the State of California v. Plains All American Pipeline, L.P.,* Case No. 1495091 (Cal. Sup. Court).

82.    By entering into this settlement, Defendants do not admit the Pipeline Safety Laws violations alleged in the Complaint or described in this Consent Decree by the United States on behalf of PHMSA; therefore, any allegations of violations of these Pipeline Safety Laws do not constitute a finding of violation and may not be used in any civil proceeding of any kind as evidence or proof of any fact, fault or liability, or as evidence of the violation of any law, rule, regulation, order, or requirement, except in a proceeding to enforce the provisions of this Consent Decree.  However, the allegations of violations set forth in the Complaint may be:  (1) considered by PHMSA to constitute prior offenses in any future PHMSA enforcement action brought by the agency against Plains, and (2) used for statistical purposes to identify violations that PHMSA deems as causal to an incident or to increase the consequences of an incident. Notwithstanding the forgoing, alleged violations subject to Paragraph 70 shall not

be considered by PHMSA to constitute prior offenses in any future PHMSA enforcement action brought by the agency against Plains.

83. By entering into this settlement, Defendants do not admit the allegations of California Water Code §§ 13350 and 13385 violations set forth in the Complaint; therefore, any allegations of violations of these statutes do not constitute a finding of violation and may not be used in any civil proceeding of any kind as evidence or proof of any fact, fault or liability, or as evidence of the violation of any law, rule, regulation, order, or requirement, except in a proceeding to enforce the provisions of this Consent Decree. However, the allegations of California Water Code §§ 13350 and 13385 violations set forth in the Complaint may be considered by the State Water Resources Control Board or Regional Water Quality Control Boards to constitute prior offenses in any future enforcement action brought by any of these agencies against Plains.

84. Subject to the terms of this Consent Decree, no provision contained herein affects or relieves Plains of their responsibilities to comply with all applicable requirements of the CWA, OPA, the Pipeline Safety Laws, federal or state laws, and the regulations and orders issued thereunder. Subject to the terms of this Consent Decree, nothing herein shall limit or reduce the Plaintiffs' right of access, entry, inspection, and information-gathering or their authority to bring enforcement actions against Defendants pursuant to the CWA, OPA, the Pipeline Safety Laws, federal or state laws, the regulations and orders issued thereunder, or any other applicable provision of federal or state law.

85. Defendants hereby covenant not to sue Plaintiffs for any claims related to the Refugio Incident, or response activities in connection with the Incident, pursuant to the CWA, OPA, the Pipeline Safety Laws, federal or state laws, or any other law or regulation for acts or omissions through the date on which this Consent Decree is lodged with the Court.

86. Defendants covenant not to sue and agree not to assert any direct or

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 48 -

indirect claim for reimbursement related to the Refugio Incident from the OSLTF or pursuant to any other provision of law.

87. The United States reserves the right to seek reimbursement from Defendants for claims relating to the Refugio Incident paid after the date on which the Consent Decree is lodged with the Court from the OSLTF pursuant to 33 U.S.C. § 2712.

## XVIII.  TRANSFER AND ACQUISITION OF ASSETS

88. In the event Defendants sell or transfer ownership of or operating responsibility for Lines 901, 903, or 2000, or any lines built to replace Lines 901 or 903, Defendants will obtain from the transferee an agreement to be bound by those provisions of this Consent Decree and Appendices B and D that are specifically applicable to the asset(s) acquired, unless Defendants have already completed the required action or unless OSFM agrees to relieve the transferee of the obligations of any otherwise applicable provision.  Those provisions of Appendix B are:

        a. For existing but non-operational segments of Lines 901 and 903, paragraphs 1.A, 1.B, 1.E, 2.B, 2.C., 4, 5, 6, 7.A, 12.A of Appendix B;

        b. For the operational segment of Line 903 from Pentland to Emidio, paragraphs 1.C, 1.E, 4, 5, 6, 7.A of Appendix B;

        c. For any lines built to replace Lines 901 or 903, paragraphs 2.A.1, 5, 7.B, 12.A of Appendix B; and

        d. For Line 2000, paragraphs 1.D, 1.E, 4, 5, 6, 7.A, 12.B. of Appendix B.

89. In the event Defendants sell or transfer ownership of or operating responsibility for Lines 901, 903, or 2000, or any lines built to replace Lines 901 or 903, Defendants shall provide a copy of this Consent Decree to the prospective transferee at least fourteen (14) Days prior to such transfer.  Defendants shall

provide written notice of any such transfer to OSFM within ten (10) Days after the date Defendants publicly disclose the transaction or the date the transaction is closed, whichever is earlier.  Prior to the transfer, Defendants may notify OSFM that Defendants have completed certain required actions of this Consent Decree, or request that OSFM relieve the transferee of certain obligations of otherwise applicable provisions, such that the transferee will not be bound by those requirements.  Defendants shall provide to Plaintiffs documentation demonstrating the transferee's agreement to be bound by the relevant provisions of the Consent Decree.  Defendants shall provide to the transferee copies of those portions of relevant emergency response plans that relate to the transferred asset.

90.    In the event of the sale or transfer pursuant to an arm's-length transaction of Defendants' Regulated Pipelines other than Lines 901, 903, or 2000, or any lines built to replace Lines 901 or 903, to an independent third-party transferee, the transferee shall not be subject to the requirements of this Consent Decree.  Defendants shall provide a copy of this Consent Decree to the transferee at least fourteen (14) Days prior to such transfer.  Defendants shall provide written notice of any such transfer, including documentation demonstrating that the Consent Decree was provided to the transferee, to PHMSA within ten (10) Days after the date Defendants publicly disclose the transaction or the date the transaction is closed, whichever is earlier.  Defendants' obligations under this Consent Decree with respect to all non-transferred assets shall not be affected.

91.    For all Regulated Pipeline assets that Defendants assume operating responsibility for after the Effective Date, Plains is obligated to apply Article II (Company Wide Provisions) of Appendix B of this Consent Decree to the newly acquired assets.

## XIX.  COSTS

92.    Except as otherwise stated in this Consent Decree, the Parties shall bear their own costs related to this action and this Consent Decree, including

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 50 -

attorneys' fees; provided, however, the United States and the State Agencies shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XX.   NOTICES

93.     Unless otherwise specified in this Consent Decree, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing, sent electronically by email provided by the Parties, and addressed to all Parties as follows:

As to the United States by email:   eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-11340

As to the United States by mail:   EES Case Management Unit
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-1130

As to PHMSA:   James M. Pates
Assistant Chief Counsel
for Pipeline Safety
U.S. Department of Transportation
Pipeline and Hazardous Materials
Safety Administration
1200 New Jersey Ave. SE. E-26
Washington, DC. 20590

As to EPA:   Andrew Helmlinger
Attorney Advisor
U.S. EPA Region IX
75 Hawthorne Street (ORC-3)
San Francisco, California 94104

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 51 -

Case 2:26-cv-05342-SVW-SSC   Document 53   Filed 05/14/26   Page 417 of 502   Page
ID #:2328
Case 2:20-cv-02415   Document 6-1   Filed 03/13/20   Page 96 of 102   Page ID #:1499

As to DOI:                                  Clare Cragan
                                            U.S. Department of the Interior
                                            Office of the Solicitor
                                            755 Parfet St., Suite 151
                                            Lakewood, Colorado 80215

As to NOAA:                                 National Oceanic and Atmospheric
                                                Administration
                                            Office of General Counsel
                                            Natural Resources Section
                                            ATTN:  Christopher J. Plaisted
                                            501 W. Ocean Blvd, Suite 4470
                                            Long Beach, California  90802

As to USCG:                                 Patricia V. Kingcade
                                            Attorney Advisor
                                            National Pollution Funds Center,
                                                US Coast Guard
                                            2703 Martin Luther King Jr. Ave SE
                                            Washington, DC 20593-7605

As to the State Agencies:                   Michael Zarro
                                            Deputy Attorney General
                                            Office of the Attorney General
                                            Natural Resources Law Section
                                            300 S. Spring St., Suite 11220
                                            Los Angeles, California 90013

As to CDFW:                                 California Department of Fish
                                                and Wildlife
                                            Office of Spill Prevention and Response
                                            Attn: Katherine Verrue-Slater
                                            Senior Counsel
                                            P.O. Box 160362
                                            Sacramento, California  95816-0362

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

Case 2:26-cv-05242-SVW-SSC    Document 53    Filed 05/14/26    Page 418 of 502    Page
ID #:1509
Case 2:20-cv-02415    Document 6-1    Filed 03/13/20    Page 57 of 102    Page ID #:2329

As to CDPR:                  California Department of Parks and
                                Recreation
                             Attn: Laura A. Reimche, Senior Counsel
                             1416 Ninth Street, Room 1404-6
                             Sacramento, California 95814

As to CSLC:                  California State Lands Commission
                             Attn: Patrick Huber, Legal Division
                             100 Howe Avenue, Suite 100-South
                             Sacramento, California 95825

As to OSFM:                  California Department of Forestry and
                                Fire Protection
                             Legal Services Office
                             Attn: Joshua Cleaver, Staff Counsel
                             P.O. Box 944246
                             Sacramento, California 94244-2460

As to RWQCB:                 California Central Coast Regional Water
                             Quality Control Board
                             Attn: Naomi Rubin, Attorney III
                             801 K Street
                             Sacramento, California 95814

As to UC:                    Barton Lounsbury, Senior Counsel
                             University of California
                             Office of the General Counsel
                             1111 Franklin Street, 8th Floor
                             Oakland, California  94607

As to Defendants:            Megan Prout
                             Senior Vice President
                             Commercial Law and Litigation
                             333 Clay Street, Suite 1600
                             Houston, Texas  77002

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 53 -

Henry Weissmann
Daniel B. Levin
Colin Devine
Munger, Tolles & Olson LLP
350 S. Grand Ave, 50th Floor
Los Angeles, California 90071

Steven H. Goldberg
Nicole Granquist
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, California  95814

94.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

95.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, or emailing unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

### XXI.    EFFECTIVE DATE

96.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

### XXII.    RETENTION OF JURISDICTION

97.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of effectuating or enforcing compliance with the terms of this Consent Decree.

### XXIII.    MODIFICATION

98.    The terms of this Consent Decree, including any attached Appendices, may be modified only by a subsequent written agreement signed by the Parties.  Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval of the Court.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 54 -

99. Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XIII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 55, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXIV. TERMINATION

100. After Defendants have: (a) operated under this Consent Decree for five (5) years and three (3) months from the Effective Date; and (b) complied with the requirements of this Consent Decree, including payment of all penalties and accrued stipulated penalties required by this Consent Decree, Defendants may serve on Plaintiffs a Request for Termination, stating that Defendants have satisfied these requirements, together with all necessary supporting documentation. Plaintiffs shall respond within ninety (90) Days to Defendants' Request for Termination. If Plaintiffs agree that the requirements for termination have been satisfied, the Parties shall submit for the Court's approval a joint stipulation terminating the Consent Decree.

101. Following receipt by Plaintiffs of Defendants' Request for Termination, Plaintiffs shall respond within ninety (90) Days regarding any disagreement that the Consent Decree may be terminated and state the reason for such disagreement. The Parties shall confer informally concerning the Request for Termination and any disagreement that the Parties may have as to whether Defendants have complied with the requirements for termination of this Consent Decree. If Plaintiffs agree that the requirements for termination have been satisfied, the Parties shall submit for the Court's approval a joint stipulation terminating the Consent Decree.

102. If Plaintiffs do not agree that the requirements for termination have been satisfied, Defendants may invoke Dispute Resolution under Section XIII (Dispute Resolution). However, Defendants shall not seek Dispute Resolution of

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

- 55 -

any dispute regarding termination until sixty (60) Days after receipt of the Plaintiffs' response to Defendants' Request for Termination.

## XXV.  PUBLIC PARTICIPATION

103.  This Consent Decree shall be lodged with the Court for a period of not fewer than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The Parties agree and acknowledge that the final approval by Plaintiffs and entry of this Consent Decree are subject to notice of lodging of the Consent Decree and a public comment period.  Plaintiffs reserve the right to withdraw or withhold consent if the comments disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate.

104.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless Plaintiffs have notified Defendants in writing that Plaintiffs no longer support entry of the Consent Decree.

## XXVI.  SIGNATORIES/SERVICE

105.  Each undersigned representative of Defendants, the State of California Attorney General's Office, CDFW, CDPR, CSLC, OSFM, RWQCB, UC, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, PHMSA, and EPA certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Consent Decree.

106.  This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.  For purposes of this Consent Decree, a signature page that is transmitted electronically (*e.g.*, by emailed PDF) shall have the same effect as an original.

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

## XXVII.  INTEGRATION

107.   This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXVIII.    FINAL JUDGMENT

108.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Parties.

## XXIX.   26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

109.   For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section III (Applicability), Paragraph 5; Section VI (Natural Resource Damages), Paragraph 12; Section IX (Injunctive Relief), Subparagraphs 22.a, 22.b, 22.c, 23.a, 23.b, 23.c, Paragraph 24, and related Appendix B; Section XIV (Reporting), Paragraph 57; Section XV (Certification), Paragraph 58; and Section XVI (Information Collection and Retention), Paragraphs 59, 60, and 66 is restitution or required to come into compliance with law to the extent it applies to federal agencies.

Dated and entered this _____ day of _____, 20__.

_____
UNITED STATES DISTRICT JUDGE

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 57 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE UNITED STATES OF AMERICA:

3/12/2020
Date

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources
    Division U.S. Department of Justice

3/13/2020
Date

BRADLEY R. O'BRIEN
ANGELA MO
Environmental Enforcement Section
Environment and Natural Resources

Division

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 58 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P and Plains Pipeline, L.P.*

FOR THE UNITED STATES DEPARTMENT OF TRANSPORTATION, PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION:

3 March 2020
Date

PAUL ROBERTI
Chief Counsel
U.S. Department of Transportation
Pipeline and Hazardous Materials Safety
Administration
1200 New Jersey Avenue, SE
Washington, DC 20590

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

3-2-20

Date

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance
Assurance

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

2/26/2020
_____
Date

AMY C. MILLER
Region 9 Director
Enforcement and Compliance Assurance
    Division
U.S. EPA Region 9
Mail Code ENF-1
75 Hawthorne Street
San Francisco, CA 94105

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA DEPARTMENT OF FISH and WILDLIFE:

3/4/2020

Date

THOMAS M. CULLEN, JR.
Administrator
Office of Spill Prevention and Response

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 62 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA DEPARTMENT OF PARKS AND RECREATION:

\_\_\_\_3/2/20\_\_\_\_
Date

_____
LISA ANN L. MANGAT
Director
California Department of Parks
  and Recreation

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 63 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA STATE LANDS COMMISSION:


__2/28/2020__
Date

_____
JENNIFER LUCCHESI
Executive Officer
California State Lands Commission

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 64 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION'S - OFFICE OF THE STATE FIRE MARSHAL:

3/4/2020
Date

THOMAS W. PORTER
Director
California Department of Forestry and
Fire Protection

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

Consent Decree

- 65 -

Case 2:26-cv-05242-SVW-SSC   Document 5-3   Filed 05/14/26   Page 431 of 502   Page
ID #:2342
Case 2:20-cv-02415   Document 6-1   Filed 03/13/20   Page 70 of 102   Page ID #:1639

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, CENTRAL COAST REGION:

March 2, 2020
_____
Date

JOHN ROBERTSON
Executive Officer
Central Coast Regional Water
　　　Quality Control Board

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 66 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE REGENTS OF THE UNIVERSITY OF CALIFORNIA:

3/3/20
Date

BARTON LOUNSBURY
Senior Counsel
Office of the General Counsel

_____
Date

PEGGY FIEDLER
Executive Director
UC Natural Reserve System

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 67 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE REGENTS OF THE UNIVERSITY OF CALIFORNIA:

_____
Date

BARTON LOUNSBURY
Senior Counsel
Office of the General Counsel

3 March 2020
_____
Date

PEGGY FIEDLER
Executive Director
UC Natural Reserve System

*United States of America and the People of the State of California v.
Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 67A -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR PLAINS ALL AMERICAN PIPELINE, L.P.


2/25/2020
Date

HARRY PEFANIS
President


*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 68 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR PLAINS PIPELINE, L.P.

2/25/2020
Date

HARRY PEFANIS
President

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 69 -

Case 2:26-cv-05242-SVW-SSC   Document 53   Filed 05/14/26   Page 436 of 502   Page
Case 2:20-cv-02415   Document 6-1   Filed 03/13/20   Page 75 of 102   Page ID #:169
ID #:2347

# APPENDIX A

## *(Set of maps that generally depict Lines 901, 903, and 2000)*

*United States of America and the People of the State of California v.
Plains All American Pipeline, L.P. and Plains Pipeline, L.P.
Consent Decree*

-70-



*Appendix A – Line 901*

Scale:  1:100,000

Sheet No:   1/1

Owner:

PLAINS
ALL AMERICAN
PIPELINE, L.P.



*Appendix A – Line 903*

Scale: 1:700,000

Sheet No: 1/1

Owner:

PLAINS
ALL AMERICAN
PIPELINE, L.P.



*Appendix A – Line 2000*

Scale:  1:966,574

Sheet No:  1/1

Owner:

# APPENDIX B

# *(PHMSA Injunctive Relief)*

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
*Consent Decree*

-74-

# APPENDIX B

## ARTICLE I – CALIFORNIA-SPECIFIC PROVISIONS

1. **State Waivers for Lines 901, 903, and 2000 (not to include any replacement lines):**

   A. Prior to restarting Line 901, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 901. Plains must receive a State Waiver from the OSFM prior to restarting Line 901.

   B. Prior to restarting non-operational segments of Line 903, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. Plains must receive a State Waiver from the OSFM prior to restarting Line 903.

   C. Within 90 days of entry of the Consent Decree (CD), Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. The State Waiver shall apply to the currently operational segment of Line 903 from Pentland to Emidio.

   D. Within 90 days of entry of the CD, Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 2000.

   E. To the extent that a State Waiver directly incorporates terms identified in section 4 (Integrity Management) below, as being applicable to Lines 901, 903, or 2000, Plains shall not contest the inclusion of those terms in the relevant State Waiver. Plains reserves its rights to contest on any grounds any additional terms that the OSFM may require as part of each State Waiver if one is received. Nothing in this CD shall be construed to limit the authority of the OSFM to require additional terms or conditions in the State Waiver. Further, nothing in the State Waiver shall be construed to limit the applicability of the terms set forth in the CD.

2. **Replacement, Restart, or Abandonment of Lines 901 and 903:**

   A. Plains shall replace the existing Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland with non-insulated pipe, if Plains is able to timely obtain: (1) agreements from shippers to transport sufficient quantities of product to make the cost of replacing the segments economically viable; (2) the Federal, State, and Local permits that may be required; and (3) whatever additional rights are needed, including rights-of-way that may be needed from landowners. Obtaining required commercial commitments, permits, rights-of-way, and any other rights necessary for replacement is the sole responsibility of Plains.

1

1. On any replacement segments of Lines 901 or 903, Plains shall, prior to commencing operation of such segment(s):

   a. Test for potential AC/DC interference. Where potential AC/DC interference exists, proper mitigation of interference shall be designed and installed during construction of replacement lines.

   b. Conduct a close interval survey (CIS) and AC/DC interference survey.

   c. Based on the CIS and AC/DC interference surveys, place additional cathodic-protection test stations at locations where the surveys demonstrate potential cathodic-protection deficiencies, following review and consultation with the OSFM regarding proposed test station locations.

B. As an alternative to replacement of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may restart the existing pipelines in accordance with the CD (including Appendix D) and applicable law.

C. As an alternative to replacement or restart of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may abandon all or any segments in accordance with all applicable laws and regulations.

3. **Third-Party Analysis of Line 2000 ILI Data**

A. Plains shall select, subject to OSFM's approval, a third-party consultant to review and analyze ILI data for Line 2000 and provide a report to the OSFM on its findings.

B. The consultant shall:

   1. Review all ILI results and reports that Plains has received from ILI vendors for Line 2000;

   2. Review Plains' processes and procedures for analyzing ILI data, and Plains' analysis of Line 2000 ILI results, and suggest potential improvements, if any, to Plains' current processes or procedures for analyzing ILI data;

   3. Analyze Plains' implementation of its ILI assessment procedures for Line 2000.

   4. Evaluate ILI vendor specifications to ensure that proper criteria and technology considerations are taken in to account in selecting the specific inspection tool(s) used in the future, with consideration given to best available technology for reliably detecting corrosion, general corrosion, selective seam-weld corrosion, and seam anomalies;

2

5. Consider disclosed industry standards and regulations, including, but not limited to: 49 CFR § 195.452, the California Elder Pipeline Safety Act, ASME B31.4 (Pipeline Transportation Systems for Liquids and Slurries), ASME B31G (Manual for Determining Strength of Corroded Pipelines) or RSTRENG, API 1160 (Managing System Integrity for Hazardous Liquid Pipelines), API 1163 (In-Line Inspection Systems Qualification), ANSI/ASNT ILI-PQ (In-Line Inspection Personnel Qualification and Certification), NACE SP0169 (Control of External Corrosion on Underground or Submerged Metallic Piping Systems), and the PRCI Pipeline Repair Manual;

6. Comply with additional requirements specified in the scope of work.

C. The third-party consultant shall prepare a written report reflecting its findings, conclusions, and any recommendations for improvement found in conducting the analysis.

1. The consultant may recommend improvements to Plains' ILI analysis process and procedures to improve the quality and integration of ILI data into its IMP going forward. Plains shall give due consideration to the results of the analysis and recommendations of the consultant but will maintain discretion over whether and how to implement any recommendations.

2. The report shall include a list of documents and data reviewed in conducting the analysis, which shall be provided to the OSFM, if requested.

3. Within 150 days of entry of the CD, the consultant shall provide a draft report to the OSFM and Plains for comment at the same time. Plains and the OSFM may provide comments to the consultant on the report within 21 days of receipt of the draft.

4. Within 45 days after receiving comments (if any) from Plains and the OSFM, the consultant shall provide a final report to PHMSA, the OSFM and Plains.

4. **Integrity Management**

A. For any operating segments of Lines 901, 903, and 2000 (not to include any replacement lines):

1. Plains shall implement the following measures and amend its IMP, as needed, to include the requirements of this section for the applicable lines:

a. In addition to other dig criteria specified by regulation or in its IMP, Plains shall remediate all internal or external metal loss anomalies that have an ILI reported depth of 40% or greater wall

3

loss, within one year of discovery.  If Plains is unable to remediate such anomalies within one year of discovery, Plains shall notify OSFM and temporarily reduce the operating pressure and/or take further remedial action in accordance with 49 C.F.R. § 195.452 until the anomaly is remediated (or until otherwise authorized by OSFM).

b. Analyze a sample of additional anomalies of varying amounts of metal loss between 10% and 40% for validation. The sample size shall be at least ten, unless fewer than ten anomalies are reported within that range, in which case Plains would examine the number of anomalies called.

c. When sizing anomalies, apply interaction/clustering criteria of 6t by 6t for applicable ILI tools;

d. Require its ILI tool vendor to include in the vendor's inspection report all metal loss anomalies of 10% or greater, based on raw data, prior to adding in any correction for tool tolerance;

e. Any time a shrink sleeve is exposed during an anomaly investigation, remove the shrink sleeve, investigate circumferentially and longitudinally along the pipe for external corrosion and coating deterioration, and recoat with two-part epoxy;

f. Send all field measurements to the tool vendor within 90 days of completing all digs for any ILI, provided that available data must be submitted prior to the next ILI run, and conduct annual meetings with the tool vendor to discuss tool performance;

g. For any use of magnetic flux leakage (MFL) tools, require its ILI tool vendor to manually grade any metal loss anomalies initially identified by the ILI tool as greater than or equal to 20% of wall loss (i.e., have human eyes on the raw data and not simply rely on a computer algorithm), and require that the vendor's ILI report note any differences between what the computer algorithm reported and the vendor's manual grade;

h. Where any ILI tool fails to record data for 5% or more of the external and/or internal surface area of the inspected segment, re-run the ILI tool to cover the area of failure;

i. Integrate and analyze available data in its P&M process, including:

   i. Assessment data from ILI tool runs;

   ii. Dig and repair data;

4

iii. Corrosion data, such as survey results, chemical treatments, and cleaning-pig results;

iv. Operational data, such as pressure and flow data;

v. Emergency response data, such as tactical response plans and results of recent drills on the pipeline, including locations of conduits to water, as identified in emergency response plans;

vi. Evaluation of the capability of the leak detection system, which shall include identification of each leak detection segment between block valves, consideration of length and size of the pipeline, type of product carried, proximity to high consequence areas, swiftness of leak detection (the time period required for a leak to be operationally isolated and/or the pipeline to be shut down), type and location of valves, valve closure time, EFRD analysis results, the location of nearest response personnel, leak history, and risk assessment results;

vii. Other pipeline characteristics, such as length, diameter, presence in HCAs and Environmentally and Ecologically Sensitive Areas (as defined in regulations promulgated pursuant to California Government Code § 8574.7(d), including 14 CCR 817.04(k)(3)(A)), maximum operating pressure, normal operating pressure, coating type, elevation data, water crossings, proximity to water bodies, casings, geohazard threats, maximum flow rate, and maximum rupture volume.

2. ILI Measures

a. <u>Initial ILI Runs</u>. Each year during the first two years after entry of the CD, Plains shall conduct at least two ILIs using: (1) a high-resolution MFL tool; and (2) a UT tool with an inertial measurement unit (IMU). Plains shall compare both runs and evaluate all available information, including these tool runs and corresponding IMU data. If a UT tool run is unsuccessful, Plains shall identify the limitations that prevented the UT tool run from being successful, consider changes to increase the likelihood of a successful UT tool run, and use best efforts to rerun the UT tool within six months (subject to tool availability).

i. All ILI assessments in the first two years shall include a sizing tool and a tool capable of identifying dents.

5

Case 2:26-cv-05242-SVW-SSC Document 53 Filed 05/14/26 Page 446 of 502 Page
Case 2:20-cv-02415 Document 6-1 Filed 03/13/20 Page 85 of 102 Page ID #:1709
ID #:2357

ii. In each of the first two years, Plains shall run the second ILI tool as soon as practicable after running the first ILI tool, but no later than 90 days after completion of the first ILI tool run. If one of the two tool runs is unsuccessful, Plains shall re-run the tool that was unsuccessful (but need not re-run the tool that was successful) even if the re-run of the unsuccessful tool run would occur more than 90 days from the successful tool run.

b. <u>Subsequent ILI Runs</u>. After the first two years, Plains shall run at least one MFL or one UT tool every year, using a different ILI tool type (MFL or UT) in each alternating year. Alternatively, Plains may run a UT tool each year. If, however, any UT tool run is unsuccessful, Plains shall document the reasons why the UT tool was unsuccessful, consider changes to increase the likelihood of a successful UT tool run, and may use MFL technology to complete that year's ILI, but must run a UT tool the following year.

c. <u>All ILI Runs</u>. Plains shall provide ILI results and reports to the OSFM within 30 days from its availability to Plains.

5. **Valves**

A. Within one year after entry of the CD for any operating segments of Lines 901, 903, and 2000, and for any new pipeline segments replacing those lines, Plains shall conduct EFRD analyses, which shall include consideration of:

1. Swiftness of leak detection and pipeline shutdown capabilities, type of commodity carried, rate of potential leakage, volume that can be released, topography or pipeline profile, potential for ignition (for spilled commodity), proximity to power sources, location of nearest response personnel, specific terrain between the pipeline and the HCA, and benefits expected by reducing the spill size.

2. Valve placement and method of valve actuation for all valves (not including valves used for instrumentation purposes, such as on tubing on transmitter calibration manifolds).

B. Plains shall submit the EFRD analyses to OSFM within one year of entry of the CD.

C. Where practical, Plains shall confirm that check valves that are necessary for the safe operation of the pipeline are in good working order at intervals required by other valve maintenance activities and associated procedures.

6

6. **Risk Analysis**

    A.    For any operating segments of Lines 901, 903, or 2000 (not to include any replacement lines):

        1.    Plains shall submit a risk analysis under proposed regulation 19 CCR § 2111(c) to OSFM (dated January 17, 2019 and publicly noticed in the California Regulatory Notice Register on February 15, 2019), or the final version of such regulation as it may be made effective in the future, regardless of whether or not those lines would otherwise be subject to the proposed regulations.

            a.    The information in the risk analysis shall be limited to the information listed in proposed regulation 19 CCR § 2111(c).

            b.    Plains' responsibility under this subsection is limited to providing the risk analysis to OSFM; Plains will maintain discretion over whether and how to implement the results of the analysis. The OSFM may review and comment on the risk analysis submitted by Plains consistent with provisions found in the proposed regulations, 19 CCR 2100 et seq.

            c.    The risk analysis shall be due within one year from entry of the CD.

7. **Leak Detection**

    A.    For any operating segments of Lines 901, 903, or 2000 (not to include any replacement lines), Plains shall confirm in writing to the OSFM within 30 days of entry of the CD that it has installed a Computational Pipeline Monitoring (CPM) Real Time Transient Model (RTTM) that is compliant with API 1130.

    B.    Within 12 months after initiating operation of any replacement lines for Lines 901 or 903, Plains shall verify and certify to the OSFM that all Pipeline and Instrumentation Drawings (P&IDs) reflect correct "as-built" information.

8. **Non-waiver**

    A.    Nothing in this CD shall excuse Plains from otherwise complying with the AB 864 regulations when they are promulgated.

**ARTICLE II – COMPANY-WIDE PROVISIONS ON REGULATED PIPELINES**

9. **Integrity Management**

    A.    New Procedures for Interim Reviews and Assessments

7

1.  Plains shall modify Section 9.5 of its Integrity Management Plan ("Continual Evaluation and Assessment of Pipeline Integrity") to provide for an annual, but not to exceed 15 months, Interim Review of each pipeline segment it operates to determine whether, since the last assessment (whether it was an Interim Assessment or a full periodic assessment under Section 6), conditions have changed or new information has been obtained that could significantly impact already-identified threats or create new threats for that segment.  If so, Plains shall evaluate whether it should implement any P&M measure(s) to address that threat prior to the next regularly-scheduled assessment.  Section 9.5 shall list all the categories of potential threats to be considered as part of the Interim Review and the types of conditions, information and data that will be included in the information analysis conducted under 49 CFR § 195.452(g).

2.  Plains shall modify Section 9.5 of its IMP to provide new forms for P&M measures or actions to be taken as a result of an Interim Review.  Section 9.5 shall provide that Plains' Integrity Engineer may recommend any P&M measures that may be appropriate, including any P&M measures that could be recommended following a full assessment performed under Section 6 of its IMP.

3.  Plains shall submit its proposed modifications of Section 9.5 to PHMSA no later than 60 days after entry of the CD.  If PHMSA does not object or request any modification within 60 days, Plains shall proceed to implement the revised procedures in Section 9.5, which shall be completed within 18 months from entry of the CD.

B.  Documentation for P&M Recommendations

1.  Within 90 days from entry of the CD, Plains shall revise Part B of its P&M Recommendation form (F11-2), to expand the scope and content of comments in the "Basis of Recommendation" field to provide a narrative explanation that reflects, at a minimum:

    a.  What drew the engineer's attention and caused him or her to make the recommendation (such as an anomaly, pattern, trend or potential correlation observed in the data, a particular event or occurrence, a particular change in the operation or configuration of the line or in its surrounding environment, "lessons learned" from another event or occurrence, a corporate goal or initiative, etc.);

    b.  The specific risk (likelihood or consequence of failure, or both) or concern that the recommended measure is intended to investigate or address; and

8

c.      The goal or intended outcome that the recommended P&M measure is intended to achieve with regard to that specific risk or concern.

2.      In the new forms for the Interim Review procedure described in Paragraph A above, Plains shall likewise provide a narrative explanation of the bases for any recommended P&M measures.

3.      In Part B of its Preventive and Mitigative Evaluation Recommendation Form (F11-2), Plains shall continue to identify the anticipated completion date for the P&M measure in the column titled "Deadline Date."

C.      Tracking of P&M Measures

Plains shall document P&M measures recommended but not implemented. Plains shall document implemented P&M measures through to completion, whether undertaken pursuant to an Interim Review under Section 9.5 or a full assessment under Section 6, such that these actions will be properly documented under 49 CFR § 195.452(l).

10.   **Valves and O&M**

A.      Within two years after entry of the CD, Plains shall conduct EFRD analyses for all Regulated Pipelines for which it has not previously completed an EFRD analysis.

B.      Within two years of entry of the CD, Plains shall develop and implement procedures to:

1.      If a valve fails to respond properly on first actuation command, document the failure and review historical records for that valve to identify any systemic issues.

2.      Adjust Plains' surge analyses and Emergency Response Plans, if necessary, to account for identified systemic issues associated with valve closure times.

3.      Timely communicate to the Control Room the status of valve maintenance activity for those valves on Regulated Pipelines that are capable of being operated by the Control Room.

4.      Verify that personnel assigned to operator-qualification tasks for valve maintenance are qualified to perform those tasks.

C.      Plains shall make all repairs necessary to keep valves in good working order within one year of discovery that the valve is not operating as intended, or, if not possible, Plains shall provide timely notification (including justification) to PHMSA or OSFM as applicable.

9

D.   For all field personnel who perform maintenance on facilities, equipment, or devices, Plains shall provide training:

1.   Within two years of entry of the CD, that addresses the importance of complying with Plains' policy requiring notification of Control Room personnel before beginning maintenance activities on any such facility, equipment, or device that could change the status of any pump, valve, CPM device, SCADA device, pressure or flow metering or rate that is monitored by the Control Room. Plains shall include in the training a requirement that employees shall notify the Control Room before entering a facility to perform maintenance, or, if not possible, immediately after entering.

E.   Plains shall improve existing valve maintenance recordkeeping to include confirmation whether the valve has been actually operated during maintenance.

11.   **Leak Detection**

A.   Within 90 days after entry of the CD, Plains shall create and maintain a list of its regulated mainline pipelines, excluding gathering lines and Delivery Lines, to indicate which of the following three rupture-detection methods, if any, are used on each line: (1) Rate of Change Combination alarm; (2) low discharge pressure alarm; or (3) 5-minute computational pipeline monitoring (CPM) alarm.

1.   Within one year after entry of the CD, for any regulated mainline pipeline identified in the list created pursuant to this paragraph that does not utilize at least one of the three rupture detection methods, Plains shall implement at least one.

B.   For the term of the CD, Plains shall conduct annual training for controllers on attributes and benefits of various methods of leak detection, including Analog High/Low Threshold, Alarm Deadband, Creep Deviation, and Analog Rate of Change.

C.   Within 18 months of entry of the CD, for its CPM systems, Plains shall analyze and evaluate the use of accumulated deviation rolling time periods longer than 24 hours.

1.   Plains shall document its analysis and provide it to PHMSA for comment, but Plains shall maintain discretion over what actions to take, if any, and how to implement the results of its analysis.

D.   Within six months of entry of the CD, Plains shall have in place a written procedure for Selection of Leak Detection Method for its Regulated Pipelines.

1.   Plains shall provide the Selection of Leak Detection Method procedure to PHMSA for comment, but Plains shall maintain discretion over and be

10

responsible for the final content and implementation of the Selection of Leak Detection Method procedure.

E. Plains will hold periodic (at least annual) meetings to solicit feedback from Control Room and operations maintenance personnel regarding potential improvements to leak detection. The results of the meetings will be documented and shared with appropriate personnel. The recommendations will be evaluated and documented.

F. Instrumentation and Display

    1. To minimize and prevent false operating conditions from being displayed, Plains shall, per API 1175 (Pipeline Leak Detection – Program Management (1st Edition, December 2015)), within three years from entry of the CD or such earlier time as required by regulations:

        a. Provide a procedure by which operations maintenance personnel and/or Control Room personnel identify and record when instrumentation has been impeded on an unplanned basis and is no longer providing accurate and updated values on pressure, flow, or temperature due to scheduled or planned maintenance activities.

        b. Track these conditions through to resolution, including instrumentation relocation when necessary.

12. **Control Room Management**

A. For Lines 901 and 903, prior to resuming operations on segments currently not in service or commencing operations on any replacement for those lines, Plains shall:

    1. Complete point-to-point verification reviews for all components of its SCADA system, including displays, alarm setpoint values, and alarm log descriptors;

    2. Update its piping and instrumentation diagrams, software, manuals, and operating procedures to accurately reflect the existing field configuration;

    3. Confirm that all Lo-Lo and Hi-Hi SCADA alarms are configured and programmed as critical safety related alarms for pressures and flows, and that alert notifications are correct and accurate; and

    4. Update the names of all facilities, equipment, devices, measurement points and locations in console displays, the Control Room Management Plan and Control Center General Procedures, shift reports, and form templates to reflect current operating conditions (updating or removing out-of-date names).

11

B.  For Line 2000, within six months after entry of the CD, Plains shall confirm to the OSFM that all Alarm Descriptors on the control console are accurate.

C.  Plains shall implement the Control Room Management Plan measures and Control Center General Procedures measures referenced in paragraph 23(a) of the CD.

13.  **Emergency Response and Oil Spill Response Plans**

A.  California-Specific Provisions:

1.  Plains shall review and update its Bakersfield District Response Zone Plan periodically, as required by applicable regulations, including 14 CCR 816.05.  Plains' review shall include the portions of its Response Plan that address identification of culverts along the pipelines' rights-of-way, potential receptors, access to potential spill sites, and procedures to assure protection of the environment from oil spills. To the extent that Plains has a Tactical Response Plan, Plains shall make it available to the Governments upon reasonable request and as needed in connection with a drill or response to a spill.

B.  Company-Wide Provisions

1.  Plains shall, at least once before two years from the date of entry of the CD, and at least one additional time prior to termination of the CD, survey its rights-of-way for all regulated mainline pipelines of at least 24" diameter, by foot or air patrol, to identify all culverts and shall ensure the emergency response plans covering those pipelines (a) reflect the locations of all culverts identified, and (b) address potential containment and recovery techniques for spills that may occur near identified culverts.

2.  Within 180 days of entry of the CD (or within 180 days of a new employee being hired, or an existing employee being assigned to relevant duties) Plains shall provide or confirm that it has provided all employees who may reasonably be involved in spill response with NIMS ICS training at the 100 and 200 levels. Within 180 days of entry of the CD, Plains shall also provide or confirm that it has provided ICS training at the 300 and 400 level to any employee who may reasonably be expected to coordinate with the Incident Management Team during a spill response.  Plains shall provide refresher training to employees within two years after initial training and shall maintain certification of such training and make such documents available to Plaintiffs upon request.

3.  Going forward from the date of the CD, Plains shall include in its contracts with all Oil Spill Response Organizations (OSROs) a requirement that the OSROs' employees and contract employees receive training at the same level specified for Plains employees, based on their responsibilities, prior to participating in any incident response on behalf of

12

-86-

Plains. Plains shall require its OSRO contractors and subcontractors to register with a third-party online compliance verification system and shall use that online verification system to spot-check the NIMS ICS Training histories for randomly-selected OSRO personnel who participate in Plains' table-top drills. Plains' spot-check shall include a reasonable number of OSRO personnel participating in the drills to help ensure that all OSRO personnel participating in incident response are trained at the ICS levels specified herein.

4. Within 180 days of entry of the CD, Plains shall provide or confirm that it has provided all Control Room supervisors with training regarding the Control Room's emergency response responsibilities and procedures. Plains shall provide this training annually thereafter. Plains shall maintain auditable documentation that supervisors have received such training and shall make such documentation available to PHMSA upon request.

5. Plains shall notify PHMSA (and, for California Lines, California OSPR and OSFM) of company-sponsored and organized drills in accordance with applicable regulations, including table tops (either with or without equipment deployment). Plains shall provide PHMSA (and, for California Lines, California OSPR and OSFM) with after-action reports for each table-top drill involving equipment deployment within 90 days of completion of the drill. Plains shall include lessons learned in such after-action reports and shall consider such lessons learned for incorporation into future drills or exercises.

6. For the term of the CD, a representative of Plains' Control Room management team shall participate in any after-action or "hot wash" activity designed to identify areas of improvement following a release, and shall share, in documented form, the information obtained with relevant Control Room personnel.

14. **Safety Management System (SMS)**

A. Plains shall continue to implement its SMS, which is based on recommended practices in American Petroleum Institute (API) RP 1173 (Pipeline Safety Management Systems (1st Edition, July 2015)).

1. Prior to the termination of the CD, Plains shall hire a third party to assess the conformance of its SMS to API RP 1173. Plains shall direct the third party to transmit a copy of the final report to PHMSA. Plains' responsibility under this paragraph shall be limited to engaging the third party to prepare the report and providing the report to PHMSA. Any nonconformance identified by the third party shall not be a violation of the CD.

13

B.   Plains shall participate in the API Pipeline SMS Group to exchange ideas, information, and lessons learned about implementation of API RP 1173.

15.   **Drug and Alcohol Program**

A.   Within one year of entry of the CD, Plains shall review and revise its drug and alcohol misuse plans to comply with post-accident and random drug and alcohol testing required by 49 C.F.R. §§ 199.105(b), (c), and 49 C.F.R. § 199.225(a). This shall include a review of all covered positions among Control Room personnel and field personnel for inclusion in the plans for post-accident testing. Covered positions shall include any person with authority to shut down a pipeline, including Control Room shift supervisors. Plains shall ensure adequate implementation and documentation for all post-accident drug/alcohol tests as required by 49 C.F.R. § 199.117(a)(5) and 49 C.F.R. §§ 199.227(b)(4), (c)(1)(v) and in accordance with its procedures. Should Plains determine that it is not possible to administer a post-accident drug/alcohol test on a covered employee whose performance of a covered function either contributed to the accident or could not be completely discounted as a contributing factor within the time specified in the regulations, Plains shall document why the test was not administered within such time.

14

# APPENDIX C

## (*Intentionally left blank*)

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
*Consent Decree*

Case 2:26-cv-05242-SVW-SSC   Document 5-3   Filed 05/14/26   Page 456 of 502   Page
Case 2:20-cv-02415   Document 6-1   Filed 03/13/20   Page 95 of 102   Page ID #:1889
ID #:2367

# APPENDIX D

## *(Remaining Corrective Actions from the PHMSA CAO)*

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
*Consent Decree*

# APPENDIX D

1.      All outstanding corrective actions in PHMSA's closed Corrective Action Order (CAO), CPF No. 5-2015-5011H, as amended, are hereby merged into this Consent Decree, as outlined below, and subject to the sole regulatory oversight of the OSFM.

   a. **Line 901 Shutdown.** Plains shall not operate Line 901 until authorized to do so by the OSFM.

   b. **Restart Plan for Line 901.** If Plains seeks to restart Line 901, Plains shall develop and submit, at least 60 days in advance of a scheduled restart, a written Restart Plan for Line 901 to the OSFM for review and approval. Once approved by the OSFM, the Restart Plan shall be incorporated by reference into this Consent Decree. The Restart Plan shall include:

   1)      Documentation of the completion of all mandated actions, and a management of change plan to ensure that all procedural modifications are incorporated into Plains' operations and maintenance procedures manual;

   2)      Provisions for adequate patrolling of Line 901 during the restart process and shall include incremental pressure increases during start-up, with each increment to be held for at least two hours;

   3)      Sufficient surveillance of the pipeline during each pressure increment to ensure that no leaks are present when operation of the line resumes;

   4)      A specific day-light restart that includes advance communications with local emergency response officials;

   5)      Master Control Room enhancements, including:

   a) Implementation of advanced leak-detection

- 1 -

capabilities that include mass balance and line pack calculations (the total volume of liquid present in a pipeline section). The leak-detection improvements shall include:

1. Revised alarm threshold adjustments;

2. Additional required instrumentation; installation of additional safety valves as a result of Plains' EFRD evaluation;

b) Review and update of the alarm set-point values of pressures and flows to account for hydraulics and the interaction of topography, pipeline status (running and shutdown), sensor location, and historical pressure and flow values by configuration, in order to provide a basic level of leak detection when the pipeline is down and not running.  Dynamic alarm limits based on pipeline status shall be used if hydraulically required;

c) Implementation of modifications to the existing alarm priority/severity system to incorporate low and high pressure and flow values in major or safety-related alarm (SRA) categories;

d) Implementation of emergency shutdown programming associated with Line 901 that can be executed by the Shift Supervisor or Controller;

e) Development and implementation of training associated with the emergency shutdown programming described above; and

f) Provision of additional controller training that

incorporates awareness of abnormal operations and reduced-pressure operational characteristics, including alarm set-point revisions for conditions similar to the Refugio Incident.

6)      Elimination and documentation of actions taken to prevent inappropriate uncommanded Valve 460 (Sisquoc Conoco) status and position changes;

7)      Installation of additional safety valves as a result of Plains' EFRD evaluation;

8)      Installation of additional pressure sensors as a result of Plains' surge study;

9)      Initiation of a UT ILI within seven days after steady-state operation is achieved in accordance with an ILI schedule approved by the OSFM.  The tool run shall be initiated during daylight hours.  If the tool run does not collect a complete data set, the UT tool shall be promptly re-run.  A report from the ILI tool vendor shall be completed within 30 days of running the tool. Plains shall complete its review and analysis of the ILI report within 15 days of receiving the report.  Provisions shall be made to address any immediate repairs that result from an initial data analysis of the UT ILI run; and

10)     **Corrosion Prevention.**  Plains shall include a long-term plan to address corrosion under insulation (CUI) on Line 901 that meets the requirements of 49 C.F.R. Part 195, Subpart H, in any Restart Plan.  Plains may address the inadequate corrosion prevention through any method approved by the OSFM, including but not limited to the provisions contained in CAO Amendment No. 3, Section 2(a)-(c).

c. **Return to Service of Line 901.** After the OSFM approves the Restart Plan, Plains may return Line 901 to service but the operating pressure shall not exceed eighty percent (80%) of the actual operating pressure in effect immediately prior to the Refugio Incident on May 19, 2015.

d. **Removal of Pressure Restriction of Line 901.** The OSFM may allow the removal or modification of the pressure restriction upon a written request from Plains demonstrating that restoring the pipeline to its pre-Refugio Incident operating pressure is justified, based on a reliable engineering analysis showing that the pressure increase is safe, considering all known defects, anomalies, and operating parameters of the pipeline. The OSFM may allow the temporary removal or modification of the pressure restriction upon a written request from Plains demonstrating that temporary Preventive and Mitigative (P&M) measures will be implemented prior to and during the temporary removal or modification of the pressure restriction. The OSFM's determination shall be based on consideration of the Refugio Incident's cause and Plains' evidence that P&M measures provide for the safe operation of Line 901 during the temporary removal or modification of the pressure restriction.

e. **Line 903 Shutdown.** After purging Line 903, Plains shall not operate Line 903 between Gaviota and Pentland stations until authorized to do so by the OSFM.

f. **Restart Plan for Line 903.** If Plains seeks to restart the Gaviota-to-Pentland segment of Line 903, Plains shall develop and submit, at least 60 days in advance of a scheduled restart, a written Restart Plan for the Gaviota-to-Pentland segment of Line

903 to the OSFM for review and approval.  Once approved by the OSFM, the Restart Plan shall be incorporated by reference into this Consent Decree.  In addition to all the requirements set forth in the above subparagraphs 1.b.1)-11), excluding subparagraph 1.b.6), the Restart Plan shall include:

1)      Provisions for adequate patrolling during the restart process and the inclusion of incremental pressure increases during start-up, with each increment to be held for at least two hours;

2)      Sufficient surveillance of the pipeline during each pressure increment to ensure that no leaks are present when operation of the line resumes; and

3)      Provisions for a daylight restart and advance communications with local emergency response officials.

g. **Line 903 Return to Service.**  After the OSFM approves the Restart Plan for the Gaviota-to-Pentland segment of Line 903, Plains may return that segment to service, but the operating pressure shall not exceed eighty percent (80%) of the highest pressure sustained for a continuous 8-hour period between April 19, 2015, and May 19, 2015, for Line 903 (Gaviota-to-Sisquoc and Sisquoc-to-Pentland segments).

h. **Removal of Pressure Restriction for Line 903.**  After a return to service, Plains may request the OSFM to remove the pressure restriction for the Gaviota-to-Pentland segment of Line 903.

1)      The OSFM may allow removal or modification of the pressure restriction upon a written request from Plains demonstrating that restoring the pipeline to its pre-Refugio Incident operating pressure is justified, based on a reliable

engineering analysis showing that the pressure increase is safe, considering all known defects, anomalies, and operating parameters of the pipeline.

2)    The OSFM may allow the temporary removal or modification of the pressure restriction upon a written request from Plains demonstrating that temporary P&M measures will be implemented prior to and during the temporary removal or modification of the pressure restriction. The OSFM's determination shall be based on consideration of the Refugio Incident's cause and Plains' evidence that P&M measures provide for the safe operation of Line 903 during the temporary removal or modification of the pressure restriction.  Requests for removal of the pressure restriction may be submitted by pipeline segment.

i.  **Notifications.**  Plains shall provide notification to the OSFM within five business days of any of the following events: any investigation and remediation field actions for identified anomalies (i.e., digs and repairs), ILI tool runs, and/or startup dates.

j.  **Reporting Requirements for Lines 901 and 903.**  If and when Plains has concluded all items in this Appendix D, Plains shall submit a final Appendix D Documentation Report to the OSFM for review and approval.

1)    The OSFM may approve the Appendix D Documentation Report incrementally without approving it in its entirety.

2)    Once approved by the OSFM, the Appendix D Documentation Report shall be incorporated by reference into this Consent Decree.

Case 2:20-cv-02415 Document 6-1 Filed 03/13/20 Page 102 of 102 Page ID #:195

3)    The Appendix D Documentation Report shall include but not be limited to:

> A.   Table of Contents;
>
> B.   [*intentionally left blank.*]
>
> C.   [*intentionally left blank.*]
>
> D.   Summary of all tests, inspections, assessments, evaluations, and analysis to the extent required under this Appendix D;
>
> E.   [*intentionally left blank.*]
>
> F.   [*intentionally left blank.*]
>
> G.   Lessons learned while fulfilling the requirements of this Appendix D.

# Exhibit 4

Exhibit 4
to Declaration of
Michael S. Dorsi
dated July 7, 2025

# FINAL
# ENVIRONMENTAL IMPACT REPORT
# ENVIRONMENTAL IMPACT STATEMENT



# PROPOSED CELERON / ALL AMERICAN AND GETTY PIPELINE PROJECTS

## CALIFORNIA STATE LANDS COMMISSION
AND
## BUREAU OF LAND MANAGEMENT
## DEPARTMENT OF THE INTERIOR

State Clearing House No. 83110902
Contract No. R-8353



A COMSAT COMPANY
ENVIRONMENTAL RESEARCH & TECHNOLOGY, INC.
ANCHORAGE · CHICAGO · CONCORD, MA · FORT COLLINS, CO
HOUSTON · LOS ANGELES · PITTSBURGH · WASHINGTON, DC

# JANUARY 1985

EIR (Exh. 4) p. 000001

EIR (Exh. 4) p. 000002

STATE OF CALIFORNIA                                                GEORGE DEUKMEJIAN, *Governor*

**STATE LANDS COMMISSION**                                        **EXECUTIVE OFFICE**
                                                                  **1807 - 13th Street**
**KENNETH CORY,** *Controller*                                    **Sacramento, California 95814**
**LEO T. McCARTHY,** *Lieutenant Governor*
**JESSE R. HUFF,** *Director of Finance*                          **CLAIRE T. DEDRICK**
                                                                  **Executive Officer**



December 9, 1984

TO:  ALL INTERESTED PARTIES

    Enclosed is a copy of the Finalizing Addendum for the Environmental Impact Report/Environmental Impact Statement on the following projects:

    Celeron/All American Pipeline Companies  propose to construct a 1200 mile, buried pipeline to transport heated crude oil from the Santa Barbara and Santa Maria Basins through Emidio Station, California to McCamey, Texas.

    Getty Trading and Transportation Company proposes to construct a 113 mile, buried pipeline to transport heated crude oil from Gaviota, California, to Emidio Station, California.

    This addendum, combined with the Draft EIR/EIS, is the Final EIR/EIS for these projects.

    Certification of this document is tentatively scheduled for State Lands Commission consideration at their January 31, 1985, meeting, beginning at 10:00 a.m.  The location will be Room 447 of the State Capitol, Sacramento, California.

    Those desiring further information on the Commission meeting or the project should call Mary Griggs at (916) 322-0354.

                              CLAIRE T. DEDRICK
                              Executive Officer

EIR (Exh. 4) p. 000003

EIR (Exh. 4) p. 000004

CALIFORNIA STATE LANDS COMMISSION AND
BUREAU OF LAND MANAGEMENT, DEPARTMENT OF THE INTERIOR


FINAL

ENVIRONMENTAL IMPACT REPORT/ENVIRONMENTAL IMPACT
STATEMENT FOR THE CELERON/ALL AMERICAN AND
GETTY PIPELINE PROJECTS


Prepared by

ENVIRONMENTAL RESEARCH & TECHNOLOGY, INC.


Prepared for

STATE LANDS COMMISSION AND BUREAU OF LAND MANAGEMENT


January 1985

_____
Claire Dedrick, Executive Officer, State Lands Commission


_____
Edward Hastey, California State Director, Bureau of Land Management

State Clearing House Number 83110902
Contract Number R 8353

EIR (Exh. 4) p. 000005

EIR (Exh. 4) p. 000006

## COVER SHEET

## CELERON/ALL AMERICAN AND GETTY PIPELINE PROJECT

() DRAFT                                                    (X) FINAL

Joint Review Panel          California State Lands Commission
                            Sacramento, CA  (CEQA Lead)

                            U.S. Department of the Interior
                              Bureau of Land Management (NEPA Lead)
                              California Desert District, Riverside, CA

                            Santa Barbara County
                            Resource Management Department
                            Santa Barbara, CA

Cooperating Agencies        U.S. Department of Agriculture
                            Forest Service

                            U.S. Department of the Interior
                            Fish and Wildlife Service

                            U.S. Department of Transportation
                            Federal Highway Administration

                            California Secretary of Environmental
                            Affairs
                            Sacramento, CA

EIS Contact
Comments on this EIR/EIS should be directed to:
    Mary Griggs
    State Lands Commission
    1807 - 13th Street
    Sacramento, California  95814
    (916) 322-0354

Dates EIR/EIS Made Available to the Public
Draft:  August 1, 1984
Final:  January 9, 1985

## ABSTRACT

The Celeron and All American Pipeline Companies propose to construct a 1,200-mile pipeline that would transport Outer Continental Shelf and other locally produced crude oils from the Santa Barbara and Santa Maria Basins through Emidio station, CA, to McCamey, TX.  The 122-mile Celeron segment would extend from Las Flores, CA to Emidio, CA and the 1,084-mile All American segment would extend from Emidio, CA to McCamey, TX; both would transport heated crude oil.  Getty Trading and Transportation Company (Getty) proposes to construct a 113-mile buried pipeline that would transport heated crude oil from Getty's existing

EIR (Exh. 4) p. 000007

marine terminal facility at Gaviota, CA, to Emidio station, CA.  The Celeron/All American pipeline proposal and the Getty pipeline proposal are not dependent upon each other.  Both projects could be approved or either project could be approved independently of the other.

The Celeron/All American and Getty Pipeline Projects Environmental Impact Report/Environmental Impact Statement (EIR/EIS) addresses both applications to construct pipelines from the Santa Barbara coast to Emidio in Kern County.  The EIR/EIS also addresses Celeron/All American's application for a pipeline from Emidio to McCamey, Texas.

The EIR/EIS analyzes the environmental effects of the proposed pipelines; pump, heating, and delivery stations; and a tank farm through construction, operation, maintenance, and abandonment.  This report analyzes the impacts of the Celeron/All American and Getty Proposals and four routing alternatives that have been identified.  These are the Santa Maria Canyon, Desert Plan Utility Corridor, Brenda, and McCamey to Freeport Alternatives.  The Santa Maria Canyon Alternative crosses a portion of the Los Padres National Forest in Santa Barbara County; the Desert Plan Alternative is in the Mojave Desert in eastern California; the Brenda Alternative is in western Arizona near the Kofa National Wildlife Refuge; and the McCamey to Freeport Alternative extends from West Texas to the Gulf Coast.  These alternatives were identified to provide optional locations for the pipelines in sensitive areas.  The No Project Alternative is also analyzed.

The EIR/EIS has been prepared according to the requirements of the National Environmental Policy Act of 1969 (NEPA), the Council of Environmental Quality's regulations for implementing NEPA, effective July 30, 1979, and the California Environmental Quality Act (CEQA) as amended.  Based on the issues and concerns identified during the scoping process, the EIR/EIS focuses on the impacts to river crossings, access, hydrology, restoration, employment, and oil spills.

## PREFACE

The Final Environmental Impact Report/Environmental Impact Statement (FEIR/EIS) for the Celeron/All American and Getty crude oil pipeline projects has been prepared in an abbreviated format under Council on Environmental Quality regulations (40 CFR 1503.4 (3)(c). This document should be used in conjunction with, rather than in place of, the Draft EIR/EIS that was released for public review on August 1, 1984.

The FEIR/EIS contains four chapters. The first chapter (Introduction) is a summary of the pipeline projects that briefly describes the projects, areas of controversy, major impact conclusions, and the Federal preferred alternatives.

The second chapter (Consultation and Coordination) presents the results of agency and public review of the Draft EIR/EIS. Comments received at public hearings and by letter, and responses to those comments, are presented.

The third chapter (Modifications and Corrections) includes changes made to the text and tables of the DEIR/EIS. These have been made in response to public comments and are referenced to the appropriate page number in the DEIR/EIS.

The final chapter contains appendices that discuss a variety of topics. Appendix 4.1 contains an updated and modified set of the mitigation measures and agency stipulations that were presented in the DEIR/EIS. A revised list of recommended mitigation measures is also included. Appendix 4.2 presents the Biological Opinions (dealing with Federally-listed Threatened and Endangered species) prepared by the U.S. Fish and Wildlife Service and the National Marine Fisheries Service. Appendix 4.3 is a summary table dealing with the system safety aspects of the operation of each pipeline project. Appendix 4.4 presents a draft Oil Spill Contingency Plan for All American's crossing of the Colorado River at the California/Arizona border. The Draft EIR/EIS Air Quality Appendix has been revised and is included as Appendix 4.5. It contains revised modeling results based on changes in the equipment that would be used at pump/heater stations as well as additional detail on modeling assumptions and procedures. Appendix 4.6 contains a revised analysis of visual resource impacts on the Los Padres National Forest. This reanalysis, first prepared as Appendix E in the DEIR/EIS, is based on additional detail provided by the Applicants and the Forest Service on route locations and construction techniques.

Copies of the Draft EIR/EIS can be obtained by writing to the following address:

District Manager
Bureau of Land Management
1692 Spruce Street
Riverside, California  92507

i

EIR (Exh. 4) p. 000009

## TABLE OF CONTENTS

|  | Page |
|---|---|
| PREFACE | i |
| 1.0 SUMMARY | 1-1 |
| 1.1 Introduction | 1-1 |
| 1.2 Areas of Controversy | 1-3 |
| 1.3 Major Impact Conclusions | 1-5 |
| 1.4 Agency Preferred Alternative | 1-5 |
| 2.0 CONSULTATION AND COORDINATION | 2-1 |
| 2.1 Draft EIR/EIS Review | 2-1 |
| 2.2 Public Hearings | 2-10 |
| 2.3 Comments and Responses | 2-15 |
| 3.0 MODIFICATIONS AND CORRECTIONS | 3-1 |
| 3.1 Text and Table Revisions to the DEIR/EIS | 3-2 |
| 3.2 Additional Revisions to the DEIR/EIS | 3-10 |
| 3.3 New Material and Modifications | 3-19 |
| 4.0 APPENDICES | 4-1 |
| 4.1 Mitigation Measures, Agency Stipulations, and Recommended Mitigation Measures | 4-1 |
| 4.1.1 Mitigation Measures | 4-1 |
| 4.1.2 Additional Agency Right-of-Way Stipulations | 4-17 |
| 4.1.3 Recommended Mitigation Measures | 4-21 |
| 4.2 Biological Opinion | 4-23 |
| 4.3 System Safety | 4-52 |
| 4.4 Draft Colorado River Oil Spill Contingency Plan | 4-61 |
| 4.5 Air Quality Addendum | 4-93 |
| 4.6 Visual Resources Analysis on Los Padres National Forest | 4-174 |
| ACRONYMS AND ABBREVIATIONS | 2-18 |
| REFERENCES | |

EIR (Exh. 4) p. 000010

## LIST OF TABLES

| Table | | Page |
|---|---|---|
| | Impact Summary Table for the Celeron/All American Proposal | 1-7 |
| | Impact Summary Table for the Getty Proposal | 1-18 |
| | Impact Summary Table for the Santa Maria Canyon Alternative | 1-26 |
| | Impact Summary Table for the Desert Plan Utility Corridor Alternative | 1-33 |
| | Impact Summary Table for the Brenda Alternative | 1-39 |
| | Impact Summary Table for the McCamey to Freeport Alternative | 1-44 |
| 2-1 | Comment Letters | 2-15 |
| 2-8 | Summary of Significant Impacts and Hazards for the Celeron/All American and Getty Pipeline | 3-12 |
| 2-9 | Comprison of Significant Impacts and Hazards for the Celeron/All American and Getty Proposals and Alternatives | 3-15 |
| 10-2 | Sensitive Areas Along the Pipeline Routes Where Oil Spills Would Have Significant Impacts | 3-17 |
| 39-2 | Sensitive Land Uses Adjacent to Limited Access Highway Crossings Along the Proposed Pipeline Routes and Alternatives | 3-21 |
| 47-32 | Vegetation Cover Types Affected by the Proposed Pipeline Routes and Santa Maria Canyon Alternative Foxen Canyon Road to Cuyama Tie Point | 3-24 |

Appendices Tables

Appendix 4.3
| 4.3 | Summary Table for System Safety | 4-53 |

Appendix 4.4
| 1.1 | Logistical Requirements for the Vacuum Truck Technique | 4-85 |
| 2.2 | Logistical Requirements for Portable Skimmers/Pumps | 4-88 |

EIR (Exh. 4) p. 000011

LIST OF TABLES (Continued)

Appendices Tables                                                    Page

Appendix 4.5

2-1   National and California Ambient Air Quality
      Standards                                                      4-96

2-2   New Mexico Air Quality Standards                              4-97

2-3   PSD Increment Ceilings                                         4-98

2-4   Santa Barbara County Rule 205.C Air Quality
      Increments                                                     4-98

3-1   Summary of Relevant Santa Barbara County Air
      Quality Data                                                   4-100

3-2   Summary of Relevant San Luis Obisbo County Air
      Quality Data                                                   4-101

3-3   Summary of Relevant Kern County Air Quality Data              4-102

3-4   Summary of Relevant Air Quality Data in Southeast
      Desert Air Basin                                               4-103

3-5   Summary of Relevant Arizona Air Quality Data                  4-104

3-6   Summary of Relevant New Mexico Air Quality Data               4-105

3-7   Summary of Relevant Texas Air Quality Data                    4-106

4-1   Operational Parameters Used to Calculate
      Construction Emissions for the Proposed Getty
      Pipeline                                                       4-108

4-2   Operational Parameters Use to Calculate Construction
      Emissions for the Proposed Celeron/All American
      Pipeline                                                       4-109

4-3   Emissions Inventory for Construction Phase for the
      Getty and Celeron/All American Pipeline                       4-110

4-4   Operational Parameters Used to Calculate Pump
      Station Emissions for the Proposed Celeron/All
      American Project                                               4-111

4-5   Emissions Inventory for the Operation Phase
      for the Getty and Celeron/All American Pipeline               4-112

5-1   Model Impacts Used in the ISC Model for the
      Construction Analysis                                          4-117

iv

LIST OF TABLES (Continued)

| Appendices Tables | | Page |
|---|---|---|
| 5-2 | Model Inputs Used in the COMPLEX I Model for the Operational Analysis | 4-119 |
| 5-3 | Model Inputs Used in the VALLEY Model for the Operational Analysis | 4-121 |
| 5-4 | Schedule of Meteorological Inputs Used in the Cadiz Ozone Modeling | 4-123 |
| 5-5 | Initial Pollutant Concentrations Used in the Reactive Modeling | 4-124 |
| 5-6 | Dimensions of Cells in PLMSTAR Air Parcel | 4-125 |
| 6-1 | Summary of Air Quality Impacts From the Construction of the Proposed Celeron and Getty Pipelines from Las Flores to Emidio | 4-129 |
| 6-2 | Summary of Air Quality Impacts from the Operation of the Proposed Pipelines from Las Flores to Blythe | 4-131 |
| 6-3 | Summary of Air Quality Impacts From the Construction of the Proposed All American Pipeline from Emidio to Blythe | 4-133 |
| 6-4 | Summary of Air Quality Impacts From the Construction of the Proposed All American Pipeline From Blythe to McCamey | 4-135 |
| 6-5 | Summary of Air Quality Impacts From the Operation of the Proposed All American Pipeline From Blythe to McCamey | 4-137 |
| 6-6 | Predicted Ozone Concentration of Background Only and Background-Plus Project for Typical and High Initial Concentrations | 4-140 |

Appendix 4.6

| 4.6 | Comparison of Alternatives | 4-179 |

EIR (Exh. 4) p. 000013

## LIST OF MAPS

| Map | | Page |
|---|---|---|
| 1-1 | Regional Setting | 1-2 |
| 3.3-1 | Santa Maria Canyon Alternative | 3-23 |
| 3.3-2 | Hudson Ranch Modification | 3-26 |
| 3.3-3 | Blythe Area Modification | 3-29 |
| 3.3-4 | Guadalupe Mountains National Park Modification | 3-31 |

EIR (Exh. 4) p. 000014

# 1.0 SUMMARY

EIR (Exh. 4) p. 000015

EIR (Exh. 4) p. 000016

## 1.0  SUMMARY

### 1.1  Introduction

The Celeron/All American and Getty Pipeline Projects EIR/EIS is a joint document prepared for the California State Lands Commission (SLC); and the U.S. Department of the Interior, Bureau of Land Management (BLM).  SLC is acting as lead agency pursuant to the California Environmental Quality Act (CEQA) and BLM, as lead agency pursuant to the National Environmental Policy Act (NEPA).  SLC, BLM and Santa Barbara County have formed a Joint Review Panel (JRP) to direct the completion of this joint State and Federal document.

The Celeron/All American and Getty Pipeline projects are not dependent upon each other and either or both pipelines could be approved by the agencies independently of the other.  Celeron/All American has applied for right-of-way permits from the BLM to cross Federal land managed by the BLM, Forest Service, Fish and Wildlife Service, Air Force, Army, and the Bureau of Reclamation, and from SLC for crossing land at the Colorado River.

Getty has applied for ROW permits from the BLM for crossing Federal lands managed by BLM and by the Los Padres National Forest (LPNF) and for a Conditional Use Permit from Santa Barbara County. Both applicants must receive U.S. Army Corps of Engineers 404 Permits and various county and local permits. Since the two proposed projects are independent of each other, authorization of the two ROW applications is not an either/or situation.  Each project must be reviewed and approved or denied on its own merits.

The two pipeline projects would transport Outer Continental Shelf (OCS) and other locally produced crude oil from the Santa Barbara and Santa Maria Basins to other crude oil transportation networks that serve refiners in the San Joaquin Valley, San Francisco, Los Angeles, and Gulf Coast areas.  The Celeron/All American Pipeline would transport up to 300,000 barrels per day (BPD).  The 1,200-mile, 24 to 30-inch pipeline would travel from Exxon's proposed Santa Ynez Unit processing facility in Las Flores Canyon, west of Santa Barbara, California, across the Sierra Madre Mountains to the Bakersfield, California area, then to Blythe, California, and across Arizona and New Mexico to the McCamey, Texas area (Map 1-1).  The Getty pipeline would transport up to 400,000 BPD in a 20 to 30-inch pipeline from Getty's proposed Consolidated Coastal Facility at Gaviota, west of Santa Barbara (and 6 miles east of Las Flores Canyon), to the Bakersfield area (about 113 miles).

The two proposals have similar proposed right-of-ways (ROW) from the coast to a terminal facility at Emidio, southwest of Bakersfield. Therefore, they are being considered in the same document.  Getty's Consolidated Coastal Facility was evaluated in an EIR prepared for Santa Barbara County and released for public review in July, 1984; that document is incorporated by reference into this EIR/EIS.  Exxon's facility was also evaluated in an EIS/EIR prepared for the County, released for public review in April 1984, finalized in July 1984, and is incorporated by reference into this EIR/EIS.

1-1

EIR (Exh. 4) p. 000017

## COMMENT LETTER 18 (CONTINUED)

-5-

18-51 cont. now by the McCamey to Freeport route. The reviewer will not get concerns answered otherwise. This seems to us to be a major oversight. In addition you should list specific mitigation measures to show how each Federal and state sensitive species will be protected.

18-52 52.) On page 4-143 you need the information on cultural resources now. Later is not good enough.

18-53 53.) On page 4-153 where will low permeability backfill be used. Please name sites.

18-54 54.) On page 4-154 as mentioned before measure 11 should be done for all sections of the pipeline.

18-55 55.) On page 4-156, measure 17 needs to be utilized for all major stream crossings. Spill equipment must be in place at sensitive sites and pump stations.

18-56 56.) On page 4-162 it is absurd to say no additional oil spill mitigation is needed. Surely a more specific oil spill contingency plan is needed.

18-57 57.) On page 4-174, Table 4-33 since it is not clear how you will prevent ground-water contamination we feel it is premature to say short or long-term impacts are not anticipated.

18-58 58.) On page B-33 you list state species of concern but you still say nothing about how damage to each will be mitigated.

18-59 59.) On page G-1 you say nothing here of the higher SO2, VOC, metals, and O3 levels that are expected in Houston as a result of this pipeline and loading and unloading barges and tankers. This is especially important because the entire area is nonattainment for O3 and because ship loading and unloading emissions of VOC's are not now controlled by Either TACB or EPA. In addition you need to explain how

18-60 a heavy crude oil spill, like the one that happened about a month ago - the Alvenus, will react differently than lighter crude oil spills, how easy it will be to clean-up, its effects, etc.

18-61 60.) On page G-11 you again say most of the oil will be loaded on ships and barges to be taken to refineries from Corpus to Mississippi but you do not discuss air pollution and oil spill problems.

18-62 61.) On page H-34, Table 10-2 you fail to take into account the McCamey to Freeport route and its sensitive areas.

In summary we find that this document does not give sufficient information on different types of alternative, does not explore all alternatives equally, piecemeals the project, does not look adequately at oil spill prevention and control measures, does not give adequate coverage to state and Federal species of concern and minimising the impacts of the project on them, and does not treat the problems of air pollution at the end of the pipeline, and does not look closely at impacts on groundwater and sensitive area and how to mitigate them. Finally the statement does not address the unequal and unfair Public participation program provided Texas as compared to all other states effected. We request that this document be redrafted and brought out again for Public comment.

Sincerely,    Brandt Mannchen, Wildlife Chairperson, Lone Star Chapter, Sierra Club, 1822 Richmond #2, Houston, Texas 77098, H713-522-1489, W713-645-5316

## RESPONSE TO COMMENT LETTER 18 (CONTINUED)

18-27 Should Celeron of Texas proceed with construction of a McCamey to Freeport pipeline, they would need to complete geological studies to determine the vulnerability of the pipeline to surface faults and provide an appropriate design that would meet all Federal, state and local requirements. See Mitigation Measures 1, 2, and 3.

18-28 Slope instability is not a common failure for large diameter pipelines and documentation in the literature is limited. Thus, there are no statistics per se to estimate the frequency of this failure. The risk of such a break would be similar to other portions of the pipeline which is 0.0003 spill/mile/year for a new pipeline.

18-29 Based on your comment, text changes to page 3-123 in the DEIR/EIS are included in the Modifications and Corrections Section.

18-30 Although the risk of spills or leaks occurring is low (Section 4.2.15 of DEIR/EIS), the potential impacts from such a spill are significant. Potential aquifer contamination from oil spills or pipeline leaks would be a non-mitigable impact. Mitigation Measures 5, 6, 7, and 7a would reduce the potential impacts in identified sensitive groundwater basins by reducing the likelihood of pipeline breaks, providing for early leak detection and prompt spill response. These measures cannot, however, completely eliminate the potential for aquifer contamination.

Additional pipeline design criteria, construction procedures, and operational leak detection systems are described in Chapter 2 of the DEIR/EIS for the proposed pipelines. These are procedures used throughout the industry and are in accordance with D.O.T. regulations. They are included in the Applicants' proposals and are not listed as mitigation measures. These measures would be very effective in reducing the risk of groundwater contamination along the entire pipeline alignment. Among the procedures described in Chapter 2 are pipeline coating, hydrostatic testing, burial 4 feet below the 100-year, 24-hour storm stream scour depth, cathodic corrosion protection, welding and x-ray inspection of joints, leak detection by volumetric balance, pressure loss and flow measurements, and aerial reconnaissance during pipeline operation. All below-ground connections would be welded; there would be no flanged joints below ground.

18-31 Appropriate environmental documentation and agency approvals would be required and would consider sensitive fish, animal, and plant populations if the McCamey to Freeport Alternative is proposed by Celeron of Texas.

18-32 Golden-cheeked warblers are known to nest in the region where the pipeline could cross. Site-specific impacts and mitigation measures for this and other state-listed sensitive species would be evaluated as required.

18-33 See Mitigation Measure 30.

EIR (Exh. 4) p. 000125

## COMMENT LETTER 31



**United States Department of the Interior**

GEOLOGICAL SURVEY
RESTON, VA. 22092

In Reply Refer To:
WGS-Mail Stop 423

OCT 3 1984

Ms. Mary Griggs
State Lands Commission
1807 13th Street
Sacramento, California 95814

Dear Ms. Griggs:

We have reviewed the environmental impact report/statement for the Celeron/All American and Getty Pipeline projects and have the following comments:

**31-1** The document indicates that in sensitive ground-water areas the bottom and sides of trenches will be covered with low-permeability backfill materials before the pipeline is laid (p. 4-153). We suggest that in especially sensitive situations the low-permeability materials should surround the pipeline to hinder lateral movement of contaminants from leaks or breaks in the pipe. For example, such a measure would be useful near the margins of valleys or prior to descending steep slopes into valleys where permeable materials such as alluvium can be anticipated. Other examples could be found in approaching features of high permeability in karstic terrains or when approaching a slope above a municipal water supply.

**31-2** If any of the cathodic protection devices to be used (p. 2-35, 4-117) will be of the deep well type discussed by Ritchie (Ritchie, E.A., 1976, Cathodic protection wells and ground-water pollution: Ground Water, vol. 14, no. 3, p. 146-149), the statement should indicate how the aquifer(s) involved will be protected against pollutants traveling down the well annulus.

**31-3** Heavy rainfall during or following an oilspill can increase greatly the infiltration rate and distance traveled by components of crude oil, particularly water-soluble components (Duffy, J.J., Mohtadi, M.F., and Peake, E., 1977, Subsurface persistence of crude oil spilled on land and its transport in groundwater: in Proceedings 1977 Oilspill Conference of American Petroleum Institute, Environmental Protection Agency, and U.S. Coast Guard, New Orleans, March 8-10, 1977, p. 475-478). This should be considered in evaluating the potential for impacts on ground water. Effects of petroleum

## RESPONSE TO COMMENT LETTER 31

**31-1** See response to Comment 8-1.

**31-2** The cathodic protection system would be designed to minimize impacts on groundwater. The design would include a) locating the anode bed away from shallow groundwater aquifers; b) case the bore, grout between the case and the bore, and seal the annulus where an anode proceeds into a shallow groundwater aquifer; or c) install a shallowbed anode system.

**31-3** These conditions have been considered in the evaluation of potential oil spills and associated impacts to groundwater as described in the DEIR/EIS. The adverse effects of taste and odor have also been addressed (page 4-35) and the broad significance criteron (page 4-34) defines any contamination of groundwater by crude oil to be a significant impact, even though toxic concentration levels might not be exceeded.

EIR (Exh. 4) p. 000162

## COMMENT LETTER 37 (CONTINUED)

## RESPONSE TO COMMENT LETTER 37 (CONTINUED)

State Lands Commission
Page - 3
October 9, 1984

**37-4** In discussing the operational impacts of the pipelines, the DEIR/S could be improved by including a mitigation measure to improve or replace pipeline segments as they age and deteriorate. Mitigation should be accomplished by regular on-site visual and x-ray inspections. This would supplement the operation and maintenance plans discussed on page 2-30 et seq. and would provide additional protection from pipelines failures which occur as the facilities age. This level of protection seems warranted especially where the right-of-way traverses areas with unique environmental characteristics such as the Los Padres National Forest and lands which are part of the California Desert Conservation Area.

### Relationship of Projects to Regional Policies

Given the route location and associated facilities for the proposed Celeron/All American project, this pipeline is generally favorable when assessed in terms of regional policies. Adverse impacts on areas with regionally significant environmental resources can be mitigated. By routing OCS crude directly to the Gulf Coast, the potential policy conflicts outlined in the attached comments on the Santa Barbara OTP can be avoided.

**37-5** It is ironic that the DEIR/S states that one of the reasons that the Southern California Pipeline project is not evaluated as an alternative is that it would require "inordinate amounts of analysis to consider in detail" (p. 2-40). This statement is probably very true, but provides an extremely weak rationale for not evaluating this project as an alternative. From all indications, the transportation of OCS crude, even a quantity as small as 100,000 barrels per day through existing pipelines, could have significant adverse impacts on Southern California. No analysis has been completed to verify the nature of the impacts whether positive or negative. Without this information, the Getty project cannot be evaluated relative to regional policies. Also, without this analysis it appears that this report fails to meet the mandate of the CEQA to assess all impacts within the State of California. In reviewing these comments, SCAG's Executive Committee has concluded that this report should not be finalized or certified unless this data is included in the report.

In addressing the DEIR for the Santa Barbara OTP and the findings of SCAG's OCS Task Force, SCAG's Executive Committee adopted a series of policies which are directly relevant to this DEIR/S. The policies state that pipelining is the preferred long-term transportation mode for California offshore oil; that stringent environmental requirements, including offsets and Best Available Control Technology(BACT), and other measures to prevent or mitigate potential adverse impacts disclosed in compliance with CEQA,

scag

600 South Commonwealth Avenue · Suite 1000 · Los Angeles · California · 90005 · 213/385-1000

**37-4** The two proposed pipelines would have service lives of approximately 30 years. Current construction standards are superior to those reflected in the data base used for risk assessment. The various inspections before and after the pipe is installed in the trench, hydrostatic testing, cathodic protection systems, and monitoring systems collectively suggest that these modern pipelines would be much safer than their predecessors. Regular visual inspections and cathodic protection checks would be conducted during the life of the projects since it is not possible to X-ray the pipeline once it has been buried. Faulty protection equipment or segments of pipe would be replaced as necessary. See Appendix 4.3 for a summary of System Safety.

**37-5** See response to Comments 18-2, 37-1, 37-2 and 37-3. We acknowledge the possibility of an oil shipper refining OCS crude oil in the Los Angeles area. CEQA requires that when impacts cannot be reasonably ascertained or when forecasting becomes a speculative excercise, that the document shall acknowledge this fact and terminate the analysis. For the reasons cited in comments 18-2, 37-1, 37-2, 37-3 and others, a detailed analyses of impacts in Los Angeles, Gulf Coast, Kern County, and San Francisco refining areas were not performed. If other projects or specific refinery modifications are proposed, we anticipate that those proposals will be fully analyzed in accordance with the requirements of NEPA and CEQA at the appropriate time.

EIR (Exh. 4) p. 000174

## COMMENT LETTER 71

## RESPONSE TO COMMENT LETTER 71

*Southern California Edison Company*

SCE

P.O. BOX 410
100 LONG BEACH BOULEVARD
LONG BEACH, CALIFORNIA 90801

R. J. JULIFF
MANAGER
OF
REAL PROPERTIES DEPARTMENT

Ms. Mary Giggs                              November 1, 1984
State Lands Commission
1807 - 13th Street
Sacramento, Ca  95814

Dear Ms. Giggs:

SUBJECT:  Draft - Environmental Impact Report/
          Environmental Impact Statement
          Proposed Celeron/All American and Getty
          Pipeline Projects

We have reviewed the subject EIR/EIS and have the following comments and concerns regarding the proposed pipeline project.

It is apparent that the proposed pipeline will cross Edison's rights of way and/or access roads at various locations. It is therefore imperative that the project proponent submit development plans together with a request for our granting of the necessary land rights in order to accommodate the utilization of our rights of way. This should be accomplished as soon as possible in order that we may review the plans to insure that construction of the pipeline will not adversely affect the operation and maintenance of our existing facilities or impair our ability to utilize the rights of way for future facilities.

In areas where the pipeline parallels existing Edison transmission lines, cathodic protection should be utilized on the pipeline due to the electromagnetic fields that often exist within approximately 500 feet of our lines. It should also be noted at this point that it is the policy of this Company not to permit parallel encroachments within our transmission line rights of way as it is essential to maintain our rights of way in such a manner to accommodate future electric facilities.

It should also be noted that Edison plans to construct a second 500kV transmission line, parallel to our existing line extending from Palo Verde Nuclear Generating Station (Arizona) to Devers Substation (Palm Springs, CA). We anticipate siting the future 500kV line parallel to and approximately 130 feet southerly of the existing transmission line from the Palo Verde Plant to the eastern edge of Cooper Bottom Pass. Through the pass, the line will be located on existing double circuit towers. From the

EIR (Exh. 4) p. 000347

State Director, Bureau of Land Management, Sacramento, CA   1-RO-84-F-62
Page four

Celeron/All American Pipeline.  Celeron/All American proposes to
transport up to 300,000 barrels per day of oil from the Santa Barbara
coast near Gaviota to McCamey, Texas.  An additional alternative may
continue the pipeline to Freeport, Texas.  The 24- to 30-inch buried
pipeline would be about 1,200 miles long and include 78 block and check
valves, 5 pumping stations, 10 pumping and heating stations, 1 heating
station, 3 delivery stations and a 20-acre tank farm at Cadiz,
California.  No new roads would be required, however, utility taps would
be required.

Pipeline Construction.  Construction methods will be similar for both
pipelines.  Construction of the Getty pipeline would require about six
months, while the Celeron/All American pipeline would require about two
years.  A construction right-of-way (ROW) would be 100 feet wide for
either line, except where a smaller ROW is feasible.  Permanent ROW's
would be 20 feet for Getty and 50 feet for Celeron/All American.  Laying
of the pipeline would progress at an average of 1.5 to 2 miles per day
per "spread", slowing to about 0.5 miles per day in rough terrain.  A
"spread" is each construction crew cleaning, digging, placing, and
covering the pipeline.  Getty plans to use 3 spreads, and Celeron/All
American plans to use 6 spreads.

Ditching would be accomplished by mechanical excavation.  In some areas,
blasting will be used.  The ROW will be cleaned up after pipeline
burial.  The most common methods of surface restoration are:  removal of
debris, surface contouring, water control structures, surface
cultivation, mulching, application of soil amendments, and replanting.

Operation and Maintenance of Pipelines.  Operation of the pipeline is
primarily automated.  Maintenance of the pipelines and ROW's would
include observation for construction activities in the ROW's; inspection
and maintenance of cathodic protection systems; inspection of block
valves; inspection of pipeline mile-post and road-crossing markers; and
inspection of crossings at highways, utilities and other pipelines.  An
aerial reconnaissance of the pipeline ROW's would be made at least every
two weeks of the Celeron/All American pipeline, and twice weekly of the
Getty pipeline.

Species Accounts

The Biological Assessment for Threatened and Endangered Species for the
Proposed Celeron/All American and Getty Pipeline projects thoroughly
covers the biology and ecology of the species discussed in this Opinion.
Only minor discrepancies were noted by our staff, and these will be
discussed where needed in the section describing effects of the action.

4-28

SUMMARY TABLE FOR SYSTEM SAFETY

| Event | Probability | Consequences | Design Specifications (Chapter 2 and Appendices H and I) | Mitigation Measures | | Effectiveness |
|---|---|---|---|---|---|---|
| | | | | Reduce Probability | Reduce Consequences | |
| Oil spill onto irrigated agricultural lands (see Tables 3-22, 3-25, and 4-5) caused by: seam failure corrosion excavation equipment natural causes flow control error. | Gaviota to Emidio[1] 21 miles irrigated 6.3 x 10$^{-3}$ spills/yr (> 50 bbl) 0.19 spills during life of project (30 yrs) Las Flores to Blythe[1] 50 miles irrigated 1.5 x 10$^{-2}$ spills/yr (> 50 bbl) 0.45 spills during life of project (30 yrs) Blythe to McCamey[1] 52.8 miles irrigated 1.6 x 10$^{-2}$ spills/yr (> 50 bbl) 0.48 spills during life of project (30 yrs) | Contamination of soils, reduced productivity, maximum of 16 acres affected per spill. | Minimum cover 42 inches, cathodic protection, block and check values, 3 ft minimum cover, x-ray and hydrostatic testing, leak detection system, aerial surveys, spill contingency plan. Continuous manned monitoring and control of all data. | Design and construct pipeline to accommodate geologic hazards (M-1, 2, and 3). Pipeline location markers above ground. Buried cable or fluorescent plastic below ground just above pipeline. Periodic information contact with land owner. Provide extra pipeline depth in areas where deep plowing or ripping could result in damage to pipeline. Depth should be at least 1 ft below maximum plow depth. | | Earthquake-resistant design is sufficiently advanced so that these measures should prove very effective. Increase awareness of pipeline location thereby reducing potential of mechanical damage occurring. Same as above. Will reduce risk of mechanical damage. |
| | | | | | Replace contaminated soil. | Decrease loss of productivity. |
| | | | | | Monetary compensation for lost product. | Eliminate financial loss to landowner/tenant. |
| Oil spill into a stream[2] (see Tables 3-11 and 3-12) caused by: seam failure weld failure corrosion excavation equipment natural causes flow control error. | Gaviota to Emidio 11 miles 3.3 x 10$^{-3}$ spills/yr (> 50 bbl) 0.09 spill during life of project (30 yrs) Las Flores to Blythe 25 miles 7.5 x 10$^{-3}$ spills/yr (> 50 bbl) 0.23 spill during life of project (30 yrs) | Contamination of surface water lasting up to several weeks. Loss of aquatic life up to 2 years. | Concrete casing, cathodic protection, block and check valves, 100-year scour, x-ray and hydrostatic testing, leak detection system, aerial surveys, spill contingency plan (see Appendix H). Continuous manned monitoring and control of all operational data. | Monitor pipe burial depth at stream crossings (M-5). Periodic site inspections. Design and construct pipeline to accommodate geologic hazards (M-1, 2, and 3). | | Early indication of abnormal bottom scouring. Earthquake-resistant design is sufficiently advanced so that these measures should prove very effective. |

4-53

EIR (Exh. 4) p. 000469

SUMMARY TABLE FOR SYSTEM SAFETY

| Event | Probability | Consequences | Design Specifications (Chapter 2 and Appendices H and I) | Mitigation Measures Reduce Probability | Reduce Consequences | Effectiveness |
|---|---|---|---|---|---|---|
| | Blythe to McCamey 17 miles $5.1 \times 10^3$ spills/yr (>50 bbl) 0.15 spill for life of project (30 yrs) | | | | | |
| Oil spill into a sensitive ground-water basin (see Table 3-14) caused by: seam failure weld failure corrosion excavation equipment natural causes flow control error. | Gaviota to Emidio 30 miles $9.0 \times 10^{-3}$ spill/yr (> 50 bbl) 0.27 spill during life of project (30 yrs)<br><br>Las Flores to Blythe 42 miles $1.3 \times 10^{-2}$ spill/year (> 50 bbl) 0.39 spill during life of project (30 yrs)<br><br>Blythe to McCamey 395 miles $1.2 \times 10^{-1}$ spill/yr (> 50 bbl) 3.60 spills during life of project (30 yrs) | Contamination of groundwater by a small leak (less than 3 BPH). | Cathodic protection, block and check valves, 3 ft minimum cover, x-ray and hydrostatic testing, leak detection system, aerial surveys, spill contingency plan. | Design and construct pipeline to accommodate geologic hazards (M-1, 2, and 3). | Identify areas to monitor in case of spill (M-6); use low permeability backfill in sensitive areas (M-7). | It is possible to design the pipeline to survive most geohazards through the latest seismic design and engineering practices. |
| Oil spill into a sensitive stream[2] (see Table 4-6) caused by: seam failure weld failure corrosion excavation equipment natural causes flow control error | Gaviota to Emidio 1 mile $3.0 \times 10^{-4}$ spills/yr (> 50 bbl) 0.01 spill during life of project (30 yrs)<br><br>Las Flores to Blythe 3 miles $9.0 \times 10^{-4}$ spills/yr (> 50 bbl) 0.03 spill during life of project (30 yrs)<br><br>Blythe to McCamey 4 miles $1.2 \times 10^{-3}$ spills/yr (> 50 bbl) 0.04 spill during life of project (30 yrs) | Game and T&E fishes could be affected for several months to 2 years (see Appendix B). | Concrete casing, cathodic protection, block and check valves, 4 ft below 100-year scour, x-ray and hydrostatic tesing, leak detection system, aerial surveys, spill contingency plan. | Design and construct pipeline to accomodate geologic hazards (M-1, 2, and 3).<br><br>Monitor pipeline burial depths at crossings including periodic diving inspections of deep water crossings (M-S). | | It is possible to design the pipeline to survive most geohazards through the latest seismic design and engineering practices. Early indication of abnormal bottom scouring. |

4-54

EIR (Exh. 4) p. 000470

SUMMARY TABLE FOR SYSTEM SAFETY

| Event | Probability | Consequences | Design Specifications (Chapter 2 and Appendices H and I) | Mitigation Measures Reduce Probability | Mitigation Measures Reduce Consequences | Effectiveness |
|---|---|---|---|---|---|---|
| Oil spill into sensitive terrestrial habitats (see Table 4-8) caused by: seam failure weld failure corrosion excavation equipment natural causes flow control error. | Gaviota to Emidio 50 miles sensitive habitat $1.5 \times 10^{-2}$ spills/yr 0.45 spill during life of project (30 yrs)  Las Flores to Blythe 314 miles sensitive habitat $9.5 \times 10^{-2}$ spills/yr ($\geq$ 50 bbl) 2.85 spills during life of project (30 yrs)  Blythe to McCamey 15 miles sensitive habitat $4.5 \times 10^{-3}$ spills/yr ($\geq$ 50 bbl) 0.14 spill during life of project (30 yrs) | Destruction of T&E species and/or their habitats (see Appendix B). | Cathodic protection, block and check valves, 3 ft minimum cover, x-ray and hydrostatic testing, leak detection system, aerial surveys, spill contingency plan. | Design and construct pipeline to accommodate geological hazards (M-1, 2, and 3). | Relocate pipeline out of sensitive habitats in the Cuyama Valley (M-15). | Eliminates potential exposure for sensitive wildlife and terrestrial habitats. |
| Oil spill into the Colorado River or Hot Springs Creek[2] caused by: seam failure weld failure corrosion excavation equipment natural causes flow control error. | Celeron/All American $6.0 \times 10^{-4}$ spills/yr ($\geq$ 50 bbl) 0.02 spill during life of project (30 yrs) | Destruction of riparian habitat and possible effects on T&E species (see Appendix B); disruption of water recreational activities. | Concrete casing, cathodic protection, block and check valves, 4 ft below 100-year scour, x-ray and hydrostatic testing, leak detection system, aerial surveys, spill contingency plan. | Monitor pipe burial depths at crossings (M-5). | Oil spill booms to redirect oil to skimmers and to block entry into backwaters of the Colorado River (M-17). | For the Colorado River this will protect nearby backwaters from contamination and aid in the clean-up downstream. For Hot Springs Creek the impacts will be minimized. The methods will not be 100% effective. |
| Oil spill into a coastal stream[3] (see Table 3-11) caused by: seam failure weld failure corrosion excavation equipment natural causes flow control error. | Celeron/All American $2.4 \times 10^{-3}$ spills/yr (>50 bbl) 0.07 spill during life of project (30 yrs)  Getty $3.0 \times 10^{-4}$ spills/yr ($\geq$ 50 bbl) 0.01 spill during life of project (30 yrs) | Oil spills could reach recreational beaches along the Gaviota coast. | Concrete casing, cathodic protection, block and check valves, 4 ft below 100-year scour, x-ray and hydrostatic testing, leak detection system, aerial surveys, spill contingency plan. | Monitor pipe burial depths at crossings (M-5).  Design and construct pipeline to accommodate geological hazards (M-1, 2, and 3). | | If all designs and plans are implemented properly, oil will not reach the coastal waters and impacts to the streams will be minimized. |

4-55

EIR (Exh. 4) p. 000471

# Exhibit 5

Exhibit 5
to Declaration of
Michael S. Dorsi
dated July 7, 2025

TABLE 4-25

CURRENT AND FUTURE PROBABILITIES OF TANK FARM SPILLS

| Spill Volume (bbls) | Spills/Barrel Year of Storage | 1,500,000 bbl (3 tanks)/Barrel Year of Storage | Spills Over Life of Project (30 years) |
|---|---|---|---|
| $\geq 10$ | $2.52 \times 10^{-7}$ | $3.8 \times 10^{-1}$ | 11.4 |
| $\geq 100$ | $5.7 \times 10^{-8}$ | $8.6 \times 10^{-2}$ | 2.58 |
| $\geq 1,000$ | $4.9 \times 10^{-9}$ | $7.5 \times 10^{-3}$ | 0.225 |
| $\geq 10,000$ | 0 | 0 | 0 |

Source: OIW (1978)

The pipe would be 0.344 to 0.562-inch wall thickness for Celeron/All American and 0.5-inch wall thickness for Getty. The pipe would be buried a minimum of 3 ft deep and its location would be marked by signs to DOT standards. All stream crossings would be analyzed for 100-year scour depth and the pipeline would be buried 4 ft below that depth. In bedrock the pipe would be buried to a depth of 18 inches. A concrete coating would also be applied at underwater crossings and a double casing used at road crossings.

Before burial, the welds would be subjected to nondestructive tests including radiography (x-ray), magnetic particle inspection, and dye penetrant or ultrasonic tests. A minimum of 10 percent of the welds made by each welder each day would be radiographically inspected. Hydrostatic testing of the pipeline would be completed at a pressure 1.25 times (or greater) than the maximum operating pressures.

The corrosion protection system includes special pipe coating on the exterior and a cathodic protection system. The pipeline coating would be tested before burial. The cathodic protection system would be inspected and maintained at 6-month intervals.

Block valve and check valve systems would be installed at sensitive water crossings to minimize oil losses into streams should the pipeline fail or be damaged (see individual resource sections for discussions of oil spill impacts).

4.2.15.5 _Oil Spill Contingency and Cleanup Plans._ Despite the engineering design, specifications, and safeguards built into a pipeline system, the potential for oil spills still exist and additional containment and cleanup measures must be addressed. The conceptual oil spill contingency plans reviewed for Getty and Celeron/All American incorporate procedures for responding to an oil spill. These procedures begin with personnel training, an established communications network, standard reporting system, and defined responsibilities and lines of authority.

Appendix H of this EIS/EIR contains a preliminary draft of the applicants' oil spill contingency plan. The preliminary draft oil spill contingency plan incorporates much of the general information found in

4-117

the applicants' conceptual plans. However, information that should be incorporated (by the applicants) into the final plan when final project design is complete, has been specifically identified. For example, the applicants have identified appropriate general containment and cleanup procedures (which are summarized below) but have not yet developed specific procedures for sensitive areas along the pipeline route. When final design is complete, the applicants will be required to develop specific procedures.

The actual containment and cleanup procedures adopted, after a leak has been detected and located, depend on whether the spill is in a confined (populated) or unconfined (rural) area. The first priority in a confined area is to ensure human safety, followed by appropriate containment and cleanup procedures. Containment and cleanup procedures utilized would depend on the size of the spill and surrounding terrain (flat terrain, steep slopes, depressions, streams or rivers, etc.).

On flat terrain, where oil would spread in all directions, dams or berms would be constructed around the perimeter of the spill. In steeper areas where the oil may spread by following natural drainages or water ways, the following techniques would be used to contain and divert oil:

- blocking dams
- underflow dams
- diversion dams
- overflow berms
- culvert blocking

Cleanup procedures would generally require removal of soil or other natural substrates that become contaminated with oil. The motor grader/ elevating scraper technique would be used for cleanup of relatively flat areas except where trees or heavy vegetation creates difficulties. Steep slopes or uneven terrain often require a bulldozer or front-end loader for sediment removal. Excessively steep or rough terrain may be cleaned using low pressure water flushing. This technique can also be used to remove oil from vegetation. On disturbed areas, reseeding and/or replasting would be undertaken as necessary to control erosion and return the area to a stable condition.

Oil which has formed pools in natural depressions or containment areas can be picked up with vacuum trucks. In less accessible areas, portable pumps discharging into barrels can be used. Sorbents may be used to remove small pools of oil, to clean light accumulations of oil from impervious surfaces, or to complete clean up. There are two techniques involving pumping that apply to oil spill cleanup of groundwater: water flooding (floation) and pumping oily water to the surface.

4.2.15.6 <u>Federal and State Oil Spill Response Teams</u>. In addition to individual operator contingency plans, Federal and state contingency plans and oil spill response teams are also in effect. These governmental levels of response and their relationship to Getty and All American/Celeron contingency plans in the event of a major spill

incident is described below. The conceptual contingency plans clearly address the responsibilities, interaction, and lines of communications between the applicants response teams and Federal and State response teams (Getty 1983c).

Federal Response. A Federal response is comprised of several different levels of repsonse. These are the National Response Team, National Strike Force, the Regional Response Teams and at the local level, the designated On-Scene Coordinator (OSC).

The Department of Transportation, U.S. Coast Guard, is responsible for the protection of coastal waters, the Great Lakes, and for ports and harbors. As such, the U.S. Coast Guard has established strike forces and Regional Response Teams to provide this protection. The southern California coastal area is the jurisdiction of the Pacific Strike Team, based in San Francisco. Within 2 hours of notification, the Pacific Strike Team can provide at least four trained personnel to the spill site at the request of the OSC, the Coast Guard or the commanding officer of the Strike Team.

The governing contingency plan for the southern California coastal region is the Region IX Multi-Agency Oil and Hazardous Materials Pollution Contingency Plan, subregional Plan for Zone One, Southern California. Zone One is contained within the jurisdiction of the 11th Coast Guard District, the commander of which serves as the OSC for all spills and is the key Federal official onsite. The Regional Response Team is under the direction of the OSC and is composed of the following knowledgeable agency officials: The Director of Surveillance and Analysis Division of the Regional Environmental Protection Agency, Commander of the U.S. Western Air Force Reserve Region; Director of the California Office of Emergency Services; and representatives from the U.S. Corps of Engineers, the 11th Naval District, 6th U.S. Army Headquarters, U.S. Fish and Wildlife Service, and Regional oil and Gas Division of the U.S. Geological Survey.

The onshore and inland spills are under the jurisdiction of the U.S. Regional EPA. Title 40, Part 112 requires a Spill Prevention and Control and Countermeasure Plan be submitted to EPA within six months after the facility begins operation. In the Plan the OSC coordinator and supporting agencies are identified for each segment of the pipeline.

In responding to a spill incident, the OSC will encourage the responsible parties to take the initiative in correcting the problem if they are able; if they are not, the OSC will activate the Regional Response Team, Pacific Strike Team and State Response Teams, as necessary. The OSC is responsible for the adquacy of the spill response operation and will maintain surveillance over operations until completed satisfactorily. For onshore and inland spills, the cleanup is supervised by the OSC but may be executed by a private contractor.

State Response. The State of California Oil Spill Contingency Plan provides for a coordinated response of State agencies to an oil spill. The plan designates a State Operating Authority (SOA) who will represent the state on the Federal Regional Response Team and have the authority

4-119

to declare an oil spill emergency requiring the activation of the State Contingency Plan.  A representative of the California Department of Fish and Game has been designated as the current SOA.

The State's organizational framework for response to a major spill is multi-level.  A State Support Team consisting of various State Department directors will authorize the SOA and administer a standing State Inter-agency Oil Spill Committee (SIOSC).  The SIOSC functions as a liaison with public and private oil pollution control organization, reviews the State Contingency Plan, and recommends research and development.  The SIOSC does not, however, have any direct-line authority during an oil spill.  The SOA appoints a State Agency Coordinator who will be in charge of all state agencies engaged in combating a pollution incident.  These agencies comprise the State Operating Team.  The State Agency Coordinator will also act in a capacity similar to that of the Federal OSC.

4.2.15.7  Potential Oil Spill Effects.  The proposed Celeron/All American and Getty pipelines would cross a variety of ecosystems between the California coast and Texas.  Along the route numerous resources are considered at risk from potential oil spill.  Table 4-26 summarizes areas along the pipeline route identified by resource specialists as being sensitive to an oil spill event.  Based on the locations of these sensitive areas, maximum spill size volumes were estimated for each area.  Factors such as elevation, location of check valves, and system shut-off response time were considered, if available, to calculate spill volumes.  The automatic shutdown system would generally reduce the amount of the spill by two to three times.  Potential impacts of spills at these sensitive areas are addressed in the individual resource sections of this document.  When final project design is completed, the applicants will be required to develop specific contingency and cleanup plans for these sensitive areas.

Probably the best documented case of an inland pipeline oil spill involved a pipeline rupture near Glenrock, Wyoming on April 8, 1980 (U.S. EPA 1982b).  The ruptured pipeline was owned by Platte Pipe Line Company.  An estimated 8,552 barrels of crude oil escaped into the North Platte River and contaminated approximately 60 miles of river from the spill site downstream to Glendo Reservoir.  The North Platte River oil spill site is located in east-central Wyoming, approximately 15 miles east of Casper, Wyoming.  The following is a summary of the damage caused, effectiveness of oil spill contingencies utilized, and the recovery observed.

Flow in the river at the time of the spill was 13,000 cubic feet per second (cfs), but was intentionally reduced at an upstream reservoir to 400 cfs to slow the downstream movement of oil until containment areas could be established.  Flow was then gradually increased and beached oil was refloated to downstream containment areas.  A total of 11 boom deployment/oil recovery points were established.  At each site, 6-inch diameter polyurethane pipe was deployed at a severe angle to the current.  The pipes diverted significant amounts of oil to the shore for vacuum truck recovery.  By April 20, most of the recoverable oil had been removed from the river.  According to Platte Pipe Line Company, of

TABLE 4-26

ESTIMATES OF POTENTIAL SPILL VOLUMES AT SENSITIVE OR POTENTIALLY HAZARDOUS
AREAS ALONG THE PIPELINE ROUTE

| | Celeron/All American (Automatic Shutdown) | | Getty (Automatic Shutdown) | |
|---|---|---|---|---|
| | (bbl) | (gal) | (bbl) | (gal) |
| Refugio Creek | 1,753 | 73,626 | NA[1] | NA |
| Gaviota Creek | 1,753 | 73,626 | 1,162 | 48,804 |
| South Branch Santa Ynez Fault[2] | 6,157 | 258,594 | 4,934 | 207,228 |
| Santa Ynez River | 3,244 | 136,248 | 2,240 | 94,080 |
| Sisquoc River | 2,620 | 110,040 | 3,120 | 131,040 |
| La Brea Creek | 1,753 | 73,626 | 2,023 | 84,966 |
| Cuyama River | 2,192 | 92,064 | 2,120 | 89,040 |
| San Luis Obispo/Kern County Line[2] | 8,370 | 351,540 | 3,160 | 132,720 |
| San Andreas Fault | 4,635 | 194,670 | 2,200 | 92,400 |
| Garlock Fault[2] | 5,465 | 229,530 | NA | NA |
| Mojave River | 3,945 | 165,690 | NA | NA |
| Colorado River | 3,506 | 147,252 | NA | NA |
| Gila River | 4,383 | 184,086 | NA | NA |
| Wild Cat Canyon Creek | 1,981 | 83,202 | NA | NA |
| Bass Canyon Creek | 3,068 | 128,856 | NA | NA |
| Rio Grande River | 2,629 | 110,418 | NA | NA |
| Pecos River | 4,821 | 202,482 | NA | NA |

Source:  Celeron/All American, and Getty

[1]Not Applicable.

[2]No valves at the crossing location.

the 8,552 barrels of oil released, approximately 6,500 barrels were recovered. The remainder evaporated or was dispersed into the environment.

The most damaging effects from this oil spill were short term and affected benthic invertebrates and terrestrial wildlife. Macroinvertebrates were almost completely destroyed and some 355 birds (mainly mallards and mergansers) and 33 mammals (primarily beaver, muskrat, and mule deer) died as a result of the spill. The invertebrates had completely recovered at most sampling and monitoring sites several months after the spill. No fish mortality was noted although disagreeable odors and taste occurred in some game fish species for about 2 months after the spill. Oil concentrations on the river surface exceeded the State limit of 10 milligrams/liter (mg/l) immediately after the spill (2.8 mg/l to 8,195.0 mg/l), but were below 10 mg/l within 7 days after the spill. Dissolved and/or emulsified oil in the water column never exceeded 10 mg/l.

Surveys of groundwater were conducted at 16 wells along the river system. The filtering action of sands and gravel was low and allowed oil inflow into some shallow wells (4 total) particularly the dissolved fraction. The contaminated wells were within 45 ft of the river bank, however, contamination was evident for only 24 hours. There was some oiling of the river sediment above background level (April 16) primarily near the river banks. As the river flow increased much of the oil was probably washed from the sediments. A direct correlation was found in the laboratory between water temperature and dissolved/emulsified oil.

Long-term effects of the spill included a slightly depressed muskrat population and Canada goose reproduction effort. Many nests of Canada geese were oiled, as were the eggs in all of the oiled nests. The result may have been smaller than normal brood sizes for this species in 1981.

The EPA damage assessment study demonstrated that though short-term impacts from a massive oil spill into an inland waterway can be severe, the ecosystem is resilient and can recover when aided by rapid and effective cleanup efforts. Of course, the severity and duration of the spill impacts would also depend on the nature of the spilled product and the environmental conditions prevalent at the time of the spill (e.g., temperature, river flow, etc.). Tradeoffs must often be made: in this case, when a reduction was made in the river flow rate to aid effectiveness of the oil spill booms, oil was deposited onto sediments near the river banks.

4.2.15.8 Summary. Assuming a 40-year project life, it is unlikely that any spills would occur for the 113-mile Getty and 122-mile Celeron pipeline segements. However, for the 1,084-mile All American segment, 4.87 spills greater than 9.5 barrels and 2.49 spills greater than 50 barrels have been projected. Any spills greater than 5 barrels would be considered significant; however, the duration and magnitude of impact and resources at risk would be dependent upon the locations of spill incidents, volumes spilled, and application of oil spill contingency measures.

Maximum possible spill volumes at stream or river crossings (given a pipeline rupture) would have significant impacts on environmental resources, but these impacts may be of short duration.

Tank farm spills greater than 100 barrels but less than 1,000 barrels would be likely to occur over an assumed 30-year life of project. However, these spills are unlikely to pose a risk to the environment due to containment within the diked and bermed tank farm area.

## 4.3 Santa Maria Canyon Alternative

### 4.3.1 Air Quality

Impacts to air quality would be the same as described for the Celeron/All American and Getty proposals.

### 4.3.2 Geology

The only potentially significant geologic hazards which may affect the Santa Maria Canyon Alternative route involve slope stability, and seismicity and faulting (see Table 4-4). As shown on Map 1-2, this route traverses areas characterized by existing slope failures or susceptible to new failures. The route crosses the Rinconada and south Cuyama faults of Quaternary age. On the basis of presently available information (Dibblee 1984, personal communication; ESA photointerpre-tation; Livingston and Associates, Moore and Taber 1979), the probability of surface rupture on these faults during the project life is judged very low.

The discussion of seismicity in section 4.2.2.1 is directly applicable to this alternative.

No other significant impacts or geologic hazards which could lead to an oil spill and consequent impacts have been identified for this alternative.

### 4.3.3 Soils

Impacts to soils would be similar to those discussed in Section 4.2.3.1. Short-term impacts would include accelerated soil erosion and deposition, decreased productivity from compaction, and increased soil slumping potential. Sensitive soil units along this alternative route are shown on Map 1-2 and are described in Table 4-5.

### 4.3.4 Surface Water

The Santa Maria Canyon Alternative would cross Tepusquet Creek and parallel the creek along a ridge on its north side. Impacts to Tepusquet Creek would include short-term sedimentation and potential oil spills. No municipal water supplies are near the proposed crossing. The likelihood of channel changes affecting the flow regime of Tepusquet Creek would be small. Impacts for crossing the Sisquoc and Cuyama Rivers would be the same as those discussed for the Celeron/All American and Getty proposals.

28—78571

**DECLARATION OF SERVICE**

Case Names:    **ENVIRONMENTAL DEFENSE CENTER, et al. v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.**

Case Nos.:    **25CV02247**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter.

On July 7, 2025, I served the attached:

- **RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**
- **DECLARATION OF MICHAEL S. DORSI IN SUPPORT OF RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**
- **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**

by transmitting a true copy via electronic mail addressed as follows:

| | |
|---|---|
| Linda Krop<br>lkrop@environmentaldefensecenter.org<br>Jeremy M. Frankel<br>jfrankel@environmentaldefensecenter.org<br>Tara C. Rengifo<br>trengifo@environmentaldefensecenter.org<br>ENVIRONMENTAL DEFENSE CENTER | Julie Teel Simmonds<br>jteelsimmonds@biologicaldiversity.org<br>David Pettit<br>dpettit@biologicaldiversity.org<br>Talia Nimmer<br>tnimmer@biologicaldiversity.org<br>CENTER FOR BIOLOGICAL DIVERSITY |
| Moore, DJ djmoore@paulhastings.com<br>Hanelin, Benjamin J.<br>benjaminhanelin@paulhastings.com<br>Rogers, Natalie C.<br>natalierogers@paulhastings.com<br>PAUL HASTINGS LLP | Bolender, Brooke<br>Brooke.Bolender@alston.com<br>Jeffrey Dintzer jeffrey.dintzer@alston.com<br>ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 7, 2025 at _____Los Angels_____, California.

| E. Marshall | /s/ E. Marshall |
|---|---|
| Declarant | Signature |

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
DarreE. Parker, Executive Officer
7/7/2025 9:24 PM
By: Terri Chavez , Deputy

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General
MATTHEW BULLOCK (SBN 243377)
MICHAEL S. DORSI (SBN 281865)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3802
  Fax:  (415) 703-5480
  E-mail:  Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants
Department of Forestry and Fire Protection, by and
through the Office of the State Fire Marshal, an
agency of the State of California; Daniel Berlant, in
his official capacity as State Fire Marshal*

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,** | Case No. 25CV02247 |
| **Petitioners and Plaintiffs,** | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION** |
| v. | |
| **CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,** | Date:      July 18, 2025<br>Time:     8:30 a.m.<br>Dept:     4<br>Judge:   Hon. Donna Geck<br><br>Trial Date:  Not Set<br>Action Filed: April 15, 2025 |
| **Respondents and Defendants** | CONSISTENT WITH STIPULATION, THIS DOCUMENTS IS FILED IN THIS MATTER AND THE RELATED CASE, NO. 25CV02244 |
| **SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,** | |
| **Real Parties in Interest.** | |

1

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that Respondents California Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; and Daniel Berland, in his official capacity as State Fire Marshal (collectively CAL FIRE/OSFM) request that the court take judicial notice of the following documents and their legal effect, all of which are attached to the Declaration of Michael S. Dorsi (Dorsi Declaration).

1. State Waivers for the Las Flores Pipeline System, pipelines CA-324 and CA-325A/B, attached to the Dorsi Declaration as Exhibits 1 and 2, respectively.

2. The Consent Decree entered in *United States, et al. v. Plains All American Pipeline, et al.,* United States District Court for the Central District of California, Case No. 2:20-cv-02415, attached to the Dorsi Declaration as Exhibit 3.

3. The 1985 Final and Draft Environmental Impact Report and Environmental Impact Statement by the State Lands Commission and the Bureau of Land Management. Selected pages are attached to the Dorsi Declaration as Exhibits 4 (Final) and 5 (Draft).

***

The Court may take judicial notice of item 1—the OSFM Waivers—under Evidence Code section 452, subdivision (c), as official acts of an executive department of the State of California, and subdivision (h), as facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate. This can be verified by review of CAL FIRE/OSFM's website, *Pathways for Restarting CA-324 and CA-325*, https://osfm.fire.ca.gov/what-we-do/pipeline-safety-and-cupa/pathways-for-restarting-pipelines.

The Court may take judicial notice of item 2—the Consent Decree— under Evidence Code section 452, subdivision (c), as official acts of a judicial department of the United States, and subdivision (h), as facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination. This can be verified by review of the docket on PACER or of CAL FIRE/OSFM's website, *Pathways for Restarting CA-324 and CA-325*.

The Court may take judicial notice of item 3—the 1985 Final and Draft EIR/EIS—under Evidence Code section 452, subdivision (c), as official acts of executive departments of the

2

Untied States and the State of California, and subdivision (h), as facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate. This can be verified by review of the County of Santa Barbara box.com folder that contains both documents: https://cosantabarbara.app.box.com/s/p07x4k8ah41vmggyvm6qr2f7eqwvgwu1/folder/320507419062.

Of note, CAL FIRE/OSFM seeks judicial notice of the entire documents. Because of the length of the documents and limitations of court filing systems, CAL FIRE/OSFM have attached only selected pages from these documents to the Dorsi Declaration.

\*\*\*

Center for Biological Diversity, et al. (CBD), and Environmental Defense Center, et al. (EDC) sought judicial notice of at least excerpts of each of these items as part of their moving papers, with the exception that CBD did not seek judicial the 1985 Final EIR/EIS. CAL FIRE/OSFM expects that Real Parties in Interest Sable Offshore Corp., et al, will not object to this Request for Judicial Notice. Given the agreement among the parties, the Court should take judicial notice of these documents.

Dated:  July 7, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

MICHAEL S. DORSI
Deputy Attorney General
*Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal*

LA2025400827
44687109.docx

3

**DECLARATION OF SERVICE**

Case Names:    **ENVIRONMENTAL DEFENSE CENTER, et al. v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.**

Case Nos.:    **25CV02247**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter.

On July 7, 2025, I served the attached:

- **RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**
- **DECLARATION OF MICHAEL S. DORSI IN SUPPORT OF RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**
- **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S RESPONSE TO ORDER TO SHOW CAUSE RE: STAY OR PRELIMINARY INJUNCTION**

by transmitting a true copy via electronic mail addressed as follows:

| | |
|---|---|
| Linda Krop lkrop@environmentaldefensecenter.org Jeremy M. Frankel jfrankel@environmentaldefensecenter.org Tara C. Rengifo trengifo@environmentaldefensecenter.org ENVIRONMENTAL DEFENSE CENTER | Julie Teel Simmonds jteelsimmonds@biologicaldiversity.org David Pettit dpettit@biologicaldiversity.org Talia Nimmer tnimmer@biologicaldiversity.org CENTER FOR BIOLOGICAL DIVERSITY |
| Moore, DJ djmoore@paulhastings.com Hanelin, Benjamin J. benjaminhanelin@paulhastings.com Rogers, Natalie C. natalierogers@paulhastings.com PAUL HASTINGS LLP | Bolender, Brooke Brooke.Bolender@alston.com Jeffrey Dintzer jeffrey.dintzer@alston.com ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 7, 2025 at _____Los Angels_____, California.

| E. Marshall | /s/ E. Marshall |
|---|---|
| Declarant | Signature |