# EXHIBIT U

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/14/2025 5:37 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:    (213) 576-1000
Facsimile:    (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:    (310) 620-5879
Facsimile:    (310) 620-5899

*Attorneys for Real Parties in Interest*
*SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY*

*Additional Counsel Listed on Signature Page*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA BARBARA**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, et al.<br><br>       Petitioners and Plaintiffs,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et. al<br><br>       Respondents and Defendants.<br><br>    and<br><br>SABLE OFFSHORE CORP., et al.<br><br>       Real Parties in Interest. | Case No. 25CV02247<br><br>Assigned for all purposes to the Honorable Judge Donna D. Geck<br><br>**REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF RICHARD B. KUPREWICZ**<br><br>Date:       July 18, 2025<br>Time:      10:00 a.m.<br>Dept.:     4<br><br>Complaint Filed:   June 3, 2025<br>Trial Date:     None set |

- 1 -

REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF RICHARD B. KUPREWICZ

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to the California Supreme Court's holding of *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 ("*Sargon*"), and Evidence Code Sections 402, 801, and 802, Real Parties[1] moved to strike the Kuprewicz Declaration for reasons including lack of foundation. Rather than explain how Mr. Kuprewicz's declaration lays a proper foundation, Petitioners attempt to reframe Real Parties' motion as an attack on credibility.[2] It is not.

As explained in the Motion, *Sargon* requires the Court to act as a gatekeeper to exclude expert testimony that lacks foundation. (Mtn. at pp. 11-13 & Fn. 2; *citing Sargon*, *supra*, 55 Cal.4th at pp. 771-772.) Contrary to Petitioners' claims, this gatekeeping responsibility has nothing to do with credibility. "The trial court's preliminary determination whether the expert opinion is founded on sound logic is not a decision on its persuasiveness. (*Id*. at p. 772 [directing courts "not [to] weigh [the] probative value. . . ."].) Instead, the trial court must conduct a "'circumscribed inquiry' to 'determine whether, as a matter of logic, the studies and other information cited by experts adequately support the conclusions that the expert's general theory of technique is valid.'" (*Ibid*.) In performing its gatekeeping function, the trial court is required to focus "solely on principles and methodology, and not on the conclusions they generate." (*Lowery v. Kindred Healthcare Operating, Inc.*, (2020) 49 Cal.App.5th 119, 124; *San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 962.)

Petitioners rely significantly on argument made by implication, presumably due to the fact that their arguments, when made expressly, have been rejected by California courts. For example, Petitioners argue that Mr. Kuprewicz is a "well-recognized pipeline safety expert with decades of experience." (Opp. at 9.) After identifying Mr. Kuprewicz's purported qualifications, Petitioners conclude that striking his **declaration** would "overstep[ ] [the Court's] limited role as an evidentiary gatekeeper." (*Ibid*.) Petitioners do not, however, explain any supposed logical connection between

---

[1] Capitalized terms used herein but not defined have the meaning ascribed to them in the Motion.

[2] Petitioners also argue that *Sargon* does not apply because Mr. Kuprewicz is not testifying at trial. However, courts hold experts to the same standard of admissibility whether the testimony is offered at trial or by declaration. (See, e.g., *Lowery v. Kindred Healthcare Operating, Inc*. (2020) 49 Cal.App.5th 119, 122 [striking expert declaration]; *Lynn v. Tatitlek Support Services, Inc.* (2017) 8 Cal.App.5th 1096, 1115 [striking expert declaration]; *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 229 [striking expert declaration].)

- 2 -

REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF RICHARD B. KUPREWICZ

Mr. Kuprewicz's qualifications and their conclusion, but the implied argument is that Mr. Kuprewicz's qualifications standing alone satisfy *Sargon* and any further scrutiny constitutes evidence weighing. This argument necessarily fails because it is well-established that qualifications do not provide a foundation for an expert's opinion. (See, e.g., *People v. Wright* (2016) 4 Cal.App.5th 537, 545 ["an expert's opinions cannot rest on his or her qualifications alone. 'even when the witness qualifies as an expert, he or she does not possess a carte blanche to express any opinion within the area of expertise.'"].) Qualifications are not reasons, explanations, methodologies, principles, or analysis, and they are, thus, not a foundation for the expert's opinions.

Once Petitioners finally get around to attempting to explain the foundation for Mr. Kuprewicz's opinions (which they do in a single paragraph), they cite Mr. Kuprewicz's reports, not his testimony. (Opp. at p. 10 [arguing that Mr. Kuprewicz's "reports demonstrate crucial information that form the basis of his opinion."].) Mr. Kuprewicz's reports are not testimony; they are hearsay and may not be considered. [See Motion at pp. 14-15; *see also* Evidentiary Objections.] Also, in violation of at least the spirit, if not the letter, of the Court's determination regarding the rights the Real Parties to cross-examine witnesses upon whose testimony the preliminary injunction may be based, it is telling that Petitioners filed yet another purported expert declaration in support of their requested preliminary injunction (which is improper and should not be considered as well; see Real Parties' separately filed evidentiary objections), presumably in recognition that Mr. Kuprewicz's declaration must be stricken.

Petitioners have made several other specious arguments, particularly with respect to the due process rights of Real Parties to cross-examine Mr. Kuprewicz. While there is ample material to rebut, Real Parties' Motion adequately addressed this issue, which separately justifies the requested relief. Nothing raised by Petitioners' opposition explains how edicts of fairness and justice are satisfied by allowing this Court to render a decision on the merits while refusing Real Parties any opportunity to fully and fairly cross-examine Petitioners' key witness in support of their request.

///

///

///

- 3 -

REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF RICHARD B. KUPREWICZ

For these reasons, and those stated in the moving papers, Real Parties request that the Court enter an order striking the Kuprewicz Declaration.

Dated:  July 14, 2025

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHIBALD & SPRAY LLP**
TREVOR D. LARGE

By:  _____
                    Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

- 4 -
REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF RICHARD B. KUPREWICZ

**PROOF OF SERVICE**

I, Martha Serrano, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071.

On July 14, 2025, I served the document(s) described as **REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF RICHARD B. KUPREWICZ** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: See Attached Service List

☒   BY ELECTRONIC SERVICE: A true and correct copy of the foregoing document was electronically served on the parties listed in the attached service list.

☐   BY MAIL: I am readily familiar with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service with postage fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California 90071.

☐   By ☐ UPS NEXT DAY AIR   ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ UPS      ☐ Overnight Delivery [specify name of service:  ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ UPS   ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California 90071.

☒   [State] I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 14, 2025, at Los Angeles, California.

_____
Martha Serrano

- 5 -

REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF RICHARD B. KUPREWICZ

***Environmental Defense Center, et al. v.
California Department of Forestry and Fire Protection, et al.***
**Santa Barbara County Superior Court, Case No. 25CV02247**

**SERVICE LIST**

| | |
|---|---|
| Julie Teel Simmons, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>Center for Biological Diversity<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612 | ATTORNEYS FOR PETITIONERS<br>CENTER FOR BIOLOGICAL DIVERSITY and<br>WISHTOYO FOUNDATION<br><br>Tel.:   (510) 844-7100<br>Fax:   (510) 844-7150<br>Email: jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>        tnimmer@biologicaldiversity.org |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Regnifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Phone: (805) 963-1622; Fax: (805) 962-3152 | ATTORNEYS FOR PETITIONERS<br>ENVIRONMENTAL DEFENSE CENTER, a<br>California non-profit corporation; GET OIL<br>OUT!, a California non-profit corporation;<br>SANTA BARBARA COUNTY ACTION<br>NETWORK, a California non-profit corporation;<br>SIERRA CLUB, a national non-profit<br>corporation; and SANTA BARBARA<br>CHANNELKEEPER, a California non-profit<br>corporation<br><br>Tel.:   (510) 844-7100<br>Fax:   (510) 844-7150<br>Email: lkrop@environmentaldefensecenter.org<br>        jfrankel@environmentaldefensecenter.org<br>        trengifo@environmentaldefensecenter.org |
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000,<br>San Francisco, CA 94102 | ATTORNEYS FOR RESPONDENTS/<br>DEFENDANTS<br>California Department of Forestry and Fire<br>Protection, Office of the State Fire Marshal;<br>Daniel Berlant, in his official capacity as State<br>Fire Marshal<br><br>Tel.:   (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov |
| Duncan Joseph Moore, Esq.<br>Benjamin J. Hanelin, Esq.<br>Natalie C. Rogers, Esq.<br>PAUL HASTINGS LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, California, 90067 | ATTORNEYS FOR REAL PARTIES IN<br>INTEREST<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:   (310) 620-5879<br>Email: djmoore@paulhastings.com<br>        benjaminhanelin@paulhastings.com<br>        natalierogers@paulhastings.com |

- 6 -

Trevor D. Large, Esq.
FAUVER, LARGE, ARCHBALD & SPRAY LLP
820 State Street, 4th Floor
Santa Barbara, CA 93101

ATTORNEYS FOR REAL PARTIES IN INTEREST
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 966-7000
Email: TLarge@FLASllp.com

- 7 -
REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF RICHARD B. KUPREWICZ

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Linda Krop (118773); Jeremy Frankel (344500); Tara Rengifo (307670)
FIRM NAME: Environmental Defense Center
STREET ADDRESS: 906 Garden Street
CITY: Santa Barbara    STATE: CA    ZIP CODE: 93101
TELEPHONE NO.: (805) 963-1622    FAX NO.:
EMAIL ADDRESS: lkrop@environmentaldefensecenter.org
ATTORNEY FOR (name): Petitioners/Plaintiffs Environmental Defense Center et al.

*FOR COURT USE ONLY*
**ELECTRONICALLY FILED**
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/15/2025 12:57 PM
By: Narzralli Baksh , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SANTA BARBARA**
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa

PLAINTIFF/PETITIONER: Environmental Defense Center et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  [X] **UNLIMITED CASE** (Amount demanded exceeds $35,000)    [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 25CV00247 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: August 1, 2025    Time: 8:30 a.m.    Dept.: 4    Div.: Anacapa    Room:

Address of court (if different from the address above):

[ ] **Notice of Intent to Appear by Telephone,  by (name):**

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [ ]  This statement is submitted by party *(name):*
   b. [X]  This statement is submitted **jointly** by parties *(names):* Plaintiffs/Petitioners Environmental Defense Center et al.

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*  April 15, 2025
   b. [ ]  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [X]  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ]  The following parties named in the complaint or cross-complaint
      (1) [ ]  have not been served *(specify names and explain why not):*

      (2) [ ]  have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ]  have had a default entered against them *(specify names):*

   c. [ ]  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a.  Type of case in  [X] complaint    [ ] cross-complaint    *(Describe, including causes of action):*
      Petitioners challenge, under CCP 1085 and 1094.5, the Office of the State Fire Marshal's issuance of State Waivers from certain pipeline safety regulations. Petitioners allege that OSFM failed to comply with federal and state pipeline safety acts, failed to comply with the California Environmental Quality Act, and otherwise abused its discretion in issuing the waivers.

**Page 1 of 5**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |

CM-110

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV00247 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
See Attachment 4b

☒ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  ☐ The trial has been set for *(date):*

b.  ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
October 16 and 17 - attorneys for Petitioners will be attending an environmental law conference in Yosemite.

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  ☒ days *(specify number):* 1-2

b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:                                    f.  Fax number:

e.  Email address:                                        g.  Party represented:

☐ Additional representation is described in Attachment 8.

9.  **Preference**

☒ This case is entitled to preference *(specify code section):* Pub. Res. Code § 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☒ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
Cal. Rules of Court, rule 3.811(b)(1)

CM-110 [Rev. January 1, 2024]                    **CASE MANAGEMENT STATEMENT**                    **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER:  Environmental Defense Center et al.<br>DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | CASE NUMBER:<br>25CV00247 |
|---|---|

10. c.   In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | [x] | [x] Mediation session not yet scheduled<br>[ ] Mediation session scheduled for *(date)*:<br>[ ] Agreed to complete mediation by *(date)*:<br>[ ] Mediation completed on *(date)*: |
| (2) Settlement conference | [x] | [ ] Settlement conference not yet scheduled<br>[ ] Settlement conference scheduled for *(date)*:<br>[ ] Agreed to complete settlement conference by *(date)*:<br>[x] Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | [ ] | [ ] Neutral evaluation not yet scheduled<br>[ ] Neutral evaluation scheduled for *(date)*:<br>[ ] Agreed to complete neutral evaluation by *(date)*:<br>[ ] Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | [ ] | [ ] Judicial arbitration not yet scheduled<br>[ ] Judicial arbitration scheduled for *(date)*:<br>[ ] Agreed to complete judicial arbitration by *(date)*:<br>[ ] Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | [ ] | [ ] Private arbitration not yet scheduled<br>[ ] Private arbitration scheduled for *(date)*:<br>[ ] Agreed to complete private arbitration by *(date)*:<br>[ ] Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | [ ] | [ ] ADR session not yet scheduled<br>[ ] ADR session scheduled for *(date)*:<br>[ ] Agreed to complete ADR session by *(date)*:<br>[ ] ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV00247 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes   ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy   ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

   (1) Name of case: Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.

   (2) Name of court: Santa Barbara County Superior Court

   (3) Case number: 25CV02444

   (4) Status: Pending

   ☐ Additional cases are described in Attachment 13a.

b. ☒ A motion to ☒ consolidate ☐ coordinate will be filed by *(name party):*
Petitioners Environmental Defense Center et al.

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
Petitioners intend to request that the action be bifurcated into two phases: consideration of (1) Petitioners' procedural claims under CEQA and federal/state pipeline safety acts, and (2) substantive pipeline safety claims.

**15. Other motions**

☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
Real Parties have filed a demurrer and motion to strike, which is set to be heard on September 19, 2025.

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
Should the action be bifurcated as suggested by Petitioners, Petitioners believe discovery is not necessary or appropriate for Phase 1 of this action, and thus should be prohibited or strictly limited.

CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV00247 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*
On April 23, 2025, counsel for OSFM denied Petitioners' request to prepare the administrative record. Counsel has told Petitioners that an index of the draft record will be shared with Petitioners shortly. Additionally, pursuant to the Court's June 3, 2025, Minute Order, Petitioners in both this case and the related case brought by Center for Biological Diversity et al. (25CV02244) request that the Court consolidate the two cases on its own motion for judicial efficiency.

**19. Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
On June 12, 2025, the Parties participated in a CEQA settlement conference and met and conferred about a number of issues, including Real Parties' anticipated Demurrer, the administrative record, and case consolidation.
The Parties will continue to meet and confer about case management issues as needed.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 6_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: July 15, 2025

Linda Krop
_____
(TYPE OR PRINT NAME)

► *Cdakp*
_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Environmental Defense Center et al. v. Cal Fire et al. | 25CV02247 |

**ATTACHMENT** *(Number):* 4b

*(This Attachment may be used with any Judicial Council form.)*

This case arises from the efforts of Sable Offshore Corp. and its wholly-owned subsidiary Pacific Pipeline Company ("Real Parties") to restart the Las Flores Pipeline System — a defective pipeline system that ruptured in 2015, causing one of the worst oil disasters in California history.

Upon investigation, the Pipeline Hazardous Materials Safety Administration (PHMSA) determined that the rupture was a result of "progressive external corrosion," and that the pipeline's cathodic protection system — intended to prevent such corrosion — had failed. Concerningly, PHMSA ultimately determined that, by flaw of design, cathodic protection is ineffective on the Las Flores Pipeline System, leaving it vulnerable to pervasive corrosion.

Because of the Las Flores Pipeline System's extensive corrosion issues, in order to restart it, Sable must obtain waivers from the Office of the State Fire Marshal (OSFM) that excuse it from complying with certain regulatory requirements. Real Parties thus applied for State Waivers "for the limited effectiveness of cathodic protection" on CA-324 and CA-325, the two pipeline segments that comprise the Las Flores Pipeline System. Over considerable public outcry, OSFM granted these State Waivers to Real Parties without providing a public process, without providing any justification for its decisions, and without conducting necessary environmental review.

Petitioners challenge OSFM's issuance of the State Waivers under Code of Civil Procedure sections 1085 and 1094.5. Petitioners allege that Respondents (1) failed to comply with mandatory procedures outlined in state and federal pipeline safety laws, (2) failed to comply with the California Environmental Quality Act's review process, and (3) otherwise prejudicially abused its discretion in issuing the State Waivers.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __6__ of __6__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On July 15, 2025, I served the above document(s) described as **CASE MANAGEMENT STATEMENT** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒      **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 15, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

1
Proof of Service

**SERVICE LIST**

| | |
|---|---|
| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEY FOR<br>RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; and Daniel Berlant, in his official capacity as State Fire Marshal |
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBAL & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/16/2025 11:49 AM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:      (213) 576-1000
Facsimile:      (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:      (310) 620-5879
Facsimile:      (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA BARBARA**

| | |
|---|---|
| EVIRONMENTAL DEFENSE CENTER, et al.<br><br>Petitioners and Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et. al<br><br>Respondents and Defendants.<br><br>and<br><br>SABLE OFFSHORE CORP., et al.<br><br>Real Parties in Interest. | Case No. 25CV02247<br><br>Assigned for all purposes to Hon/ Donna D. Geck<br><br>**REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED WITH REPLY BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; AND MOTION TO STRIKE UNTIMELY EVIDENCE SUBMITTED WITH PETITIONERS' REPLY**<br><br>Hearing Date:  July 18, 2025<br>Time:  10:00 a.m.<br>Dept. 3<br>Complaint Filed:      April 15, 2025<br>Trial Date:      None set |

- 1 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company ("Real Parties") hereby object and request that the Court strike all the evidence submitted by Petitioners Center for Biological Diversity, Wishtoyo Foundation, and Environmental Defense Center ("Petitioners") concurrently with their Reply Brief in support of their *Ex Parte Application For Order to Show Cause and Temporary Restraining Order*. On June 3, 2025, the Court heard Petitioners' *ex parte* application, entered a temporary restraining order ("TRO"), and set a hearing for July 18, 2025, on the order to show cause re preliminary injunction. The evidence that Petitioners wanted the Court to consider in connection with the application for TRO and OSC Re: Preliminary Injunction could have – *and should have* – been filed at the time the original application was filed.  Further, at the hearing on the *ex parte* application, the Court specifically advised the parties that briefing would be done pursuant to the California Code of Civil Procedure.  So, if Petitioners wished to file additional evidence in support of their Motion for Preliminary Injunction after the hearing on the TRO, the last day to do so was June 26, 2025.  (Code Civ. Proc. 1005, subd. (b) ["[A]ll moving and supporting papers **shall** be served and filed at least 16 court days before the hearing."], italics and emphasis added.)  Petitioners filed no further evidence in support of their motion until July 11, 2025, with their reply papers.  At no time did Petitioners request leave or otherwise seek permission to file any other evidence supporting the extraordinary relief they requested.

The filing of affirmative evidence with reply papers to support a motion for preliminary injunction is prohibited in California, and therefore the evidence submitted by way of declarations, exhibits, and requests for judicial notice should be stricken from the record and not considered by the Court in connection with the pending motion.  (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-38.)  Petitioners offer no justification for the belated submission of evidence along with their reply brief, and no such justification exists.

Petitioners bear the burden of producing evidence that supports both a likelihood of success on the merits and a showing of irreparable harm. Declarations that support the Petitioners' Motion for Preliminary Injunction must be based on personal knowledge, may only set forth admissible evidence, and must affirmatively show that the declarant is competent to testify to the matters stated in the declaration.  Affidavits or declarations (or any portion thereof) that are not based on personal

- 2 -

knowledge or that assert only inadmissible conclusions, opinions, or ultimate facts must be disregarded by the Court. (Cal. Evid. Code § 702(a); *Floveyor v. Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 796; *Hayman v. Block* (1986) 176 Cal.App.3d 629, 638-39 ["Personal knowledge and competency must be shown in the supporting and opposing affidavits and declarations. The affidavits must cite evidentiary facts, not legal conclusions or 'ultimate facts.'"].) The bulk of Petitioners' evidence submitted on reply fails to satisfy the foregoing requirements and further should not be considered because they are untimely submitted.

## I.    INTRODUCTION

Despite having *since December 17, 2024*, when the Office of State Fire Marshal ("OSFM") first issued the State Waivers, to gather evidence in support of their application for preliminary injunction, Petitioners waited until submitting their Reply Brief to inappropriately introduce a mountain of improper evidence plainly against California law.  So, Petitioners had over six (6) months to prepare their moving papers along with the evidence they wanted the Court to consider in connection with their motion for preliminary injunctive relief.

With their Reply Brief, Petitioners have submitted ***well over a 1,000 pages of new evidence,*** including a new expert declaration after Real Parties were first refrained from deposing Mr. Kuprewicz and for which Real Parties are afforded no opportunity to cross-examine now.  Notably, Petitioners attempt this last-ditch maneuver after the Court overruled Petitioners' original Requests for Judicial Notice submitted in support of their moving papers. (June 3, 2025 Orders Denying Petitioners' Requests for Judicial Notice.)  Without seeking or receiving any permission to do so, Petitioners submitted the following to circumvent the orderly presentation of evidence and seek a second bite at the apple only  five court days before the hearing on Petitioners' application for preliminary injunction:

***Center for Biological Diversity & Wishtoyo Foundation (Case No. 25CV02244)***

- A Second Declaration of Julie Teel Simmonds attaching seventeen new exhibits (consisting of 320 pages);

- A new Request for Judicial Notice for thirteen of the exhibits attached to the Second Declaration of Julie Teel Simmonds;

- 3 -

- A new expert declaration of Paasha Madhavi with two exhibits consisting of twenty-two pages);

### *Environmental Defense Center (Case No. 25CV02247)*

- Three volumes of a new Request for Judicial Notice for fourteen exhibits (consisting of 879 pages);

- A new expert declaration of Paasha Madhavi with two exhibits consisting of twenty-two pages;

- Declaration of Linda Krop with one exhibit (consisting of nine pages);

- Declaration of Walter Edward Morton;

- Declaration of Michael Lyons;

- Declaration of Alex Katz;

- Declaration of Maureen Ellenberger;

- Declaration of Ken Hough.

Petitioners' introduction of all this new evidence is patently unfair to Real Parties and should not be considered by the Court now. The Court set an Order to Show Cause regarding a preliminary injunction for July 18, 2025.  The parties agreed to this date.  Real Parties have submitted unrefuted evidence demonstrating severe and material damages each day the Court's TRO remains in place and are entitled to a ***timely and fair*** hearing on July 18, 2025. Real Parties would be harmed by any extension of the hearing on the preliminary injunction and object to any continuation of the scheduled hearing.  Moreover, there is no reason to extend the July 18, 2025 hearing or consider the belated submission of new evidence because the untimely presentation of this new material is solely due to Petitioners' lack of diligence.  As the Court has recognized, Petitioners are seeking "extraordinary relief" that undoubtedly could have grave impacts on Real Parties' business operations, as well as its employees and public investors.  Petitioners do so without any imposition of an undertaking– marking this attempt for relief as virtually risk-free to Petitioners, while potentially extremely perilous for Real Parties.  In pursuit of such extraordinary relief, Petitioners are seeking to rely on several pieces of improperly submitted evidence, gatekeeping Real Parties from any opportunity to cross-examine the evidence.  In light of the record, and for several reasons

- 4 -

described below, the Court should not consider any of the Petitioners' new evidence submitted with the Reply Brief.

## II.    EVIDENCE ON REPLY IS IMPROPER, NOT JUSTIFIED, AND EXTREMELY PREJUDICIAL TO REAL PARTIES

The purpose of a reply brief is to address arguments made in the Opposition; it may not be used to raise new arguments, present new authorities, or introduce new evidence.  Points raised for the first time in a reply brief ordinarily will not be considered because such consideration would either deprive respondent of an opportunity to counter the argument or require the effort and delay of additional brief by permission. (See e.g., *Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief[.]"])  Courts regularly find that "[t]he general rule of motion practice… is that new evidence is not permitted with reply papers… [and] should only be allowed in the exceptional case…." (*Jay v. Mahaffey*, *supra*, 218 Cal.App.4th at pp. 1537-38.)  "This rule is based on the same solid logic applied in the appellate courts, specifically, that '[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.'" (*Id.* at 1538, citing *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453; see *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 720, fn. 10; see also *San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 316 [submission of new evidence with reply violates opposing party's due process rights].)

Nothing here warrants the Court's consideration of Petitioners' new, additional evidence. Real Parties should not be prejudiced from Petitioners' lack of diligence.  Petitioners have been on notice of the issuance of the State Waivers since December 17, 2024, and Petitioners well understood that Real Parties were working with the OSFM concerning a restart plan for the Pipelines.  Petitioners waited over six (6) months until June 2, 2025 to give *ex parte* notice for a hearing seeking preliminary injunctive relief.  At that time, Petitioners had a fair opportunity to submit the evidence they would need to submit in support of their requested relief.  No new change of circumstance permits the filing of ***over 1,000 pages of evidence with Petitioners' reply brief***,

- 5 -

which Real Parties cannot (and should not have to) meaningfully respond to before the July 18, 2025 hearing.

### III. PAASHA MADHAVI'S DECLARATION SHOULD NOT BE CONSIDERED

#### A. Prejudice to Real Parties Ensues Without an Opportunity to Cross-Examine or Meaningfully Respond to the Expert Opinions

Petitioners' late submission of their new expert declaration on reply, the Declaration of Paasha Madhavi, fails to afford Real Parties' their due process right to cross-examine the expert and key declarant. Real Parties have a fundamental right to cross-examine Mr. Madhavi and are severely prejudiced without an adequate and sufficient opportunity to depose Mr. Maadhavi about his opinions and declaration before their Opposition to the preliminary injunction was due on July 7, 2025. Had Mr. Madhavi's declaration been submitted with Petitioners' moving papers, Real Parties would have had the opportunity to take his deposition and cross-examine him to test the foundation of his conclusory opinions and test his credibility. Real Parties would also have had the opportunity to have their own expert critique Mr. Madhavi's statements. But because his declaration was served along with the Reply, neither element of due process was afforded here.

Parties are entitled to cross-examine witnesses who submit testimony in support of a preliminary injunction. (*See In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 ["A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses."]; *Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350, 356 ["Before issuing a preliminary injunction, the trial court must 'carefully weigh the evidence and decide whether the facts require . . . such relief. The court evaluates the credibility of witnesses and makes factual findings on disputed evidence."].) The "confrontation of witnesses against him in noncriminal proceedings is a part of procedural due process guaranteed by the Fifth Amendment and the Fourteenth Amendment to the federal Constitution." (*August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 60 [finding hearing met requirements of due process where sworn statement was considered but there was no subsequent request to cross-examine the declarant]; *see also* Cal. Const. Art. I. § 7.) In fact, "[b]ecause it relates to the fundamental fairness of the proceedings, cross-examination is said to represent an 'absolute right,' not merely a privilege." (*Fost v. Marin County Superior Court* (2000)

- 6 -

80 Cal.App.4th 724, 733 [if "a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude the witness's testimony"].) Further, "[t]he lack of an opportunity to cross-examine the declarant deprives the opposing party of important evidence concerning the credibility of the declarant and the reliability of testimony in the declaration." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 841-842 [holding trial court improperly relied on declaration in support of motion for preliminary relief where declarant was not made available for cross-examination or live testimony].)

Injunctive relief cannot rest on untested expert assertions shielded from scrutiny. Indeed, this Court previously recognized Real Parties' right to take the deposition of Mr. Kuprewicz in light of the extraordinary relief Petitioners are seeking now. Real Parties were only unable to do so due to Mr. Kuprewicz's health condition. But with respect to Mr. Madhavi, Real Parties have no opportunity to cross-examine Mr. Madhavi or meaningfully respond to any of his opinions because Real Parties have already submitted their Opposition to the preliminary injunction. There's no time left for Real Parties to depose Mr. Maadhavi now that the hearing is on July 18, 2025. It is also extremely prejudicial to further extend the hearing date while a TRO remains in place, and only Petitioners' dilatory efforts are to blame. Therefore, the Court should not consider Mr. Madhavi's opinions because, as a preliminary manner, Real Parties' due process rights would be violated. (See *Fost*, *supra*, 80 Cal.App.4th at p. 733.)

B.  Mr. Madhavi's Declaration Does Not Meet Sargon's Admissibility Standard

Mr. Madhavi's expert declaration and opinions and report included therein should not be considered by the Court because they lack any foundation. The trial court has the duty to act as a "gatekeeper" in determining whether to exclude expert testimony from trial. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770.) An expert must "state on direct examination the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion." (Evid. Code § 802.) "[T]he trial court must exclude speculative or irrelevant expert opinion." (*Garner v. BNSF Railway Co.* (2024) 98 Cal.App.5th 660, 675.) An expert's opinion "may not be based 'on assumptions of

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

fact without evidentiary support, or on speculative or conjectural factors." (*Sargon*, *supra*, 55 Cal.4th at pp. 769-770 [internal citations omitted].)

Moreover, while the Evidence Code allows expert witnesses to rely on hearsay evidence when forming their opinions, it does not authorize expert witnesses to launder otherwise inadmissible hearsay. (*I-CA Enterprises. Inc. v. Palram Americas. Inc.* (2015) 235 Cal.App.4th 257, 266 ["[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay"].) Here, Mr. Madhavi repeatedly cites his own unsworn report without ever adopting the conclusions in those reports. (See Madhavi Decl. ¶5.) Mr. Madhavi merely summarizes the report's opinions, failing to offer any sworn testimony as to the truth of their conclusions. (Madhavi Decl. ¶¶ 6-7.) This alone renders the report as hearsay. (See *People v. Campos* (1995) 32 Cal.App.4th 304 [holding that unsworn expert reports were inadmissible hearsay].)

Further, while an expert may rely on otherwise inadmissible hearsay to provide background information and context (see *People v. Veamatahau* (2020) 9 Cal.5th 16, 21), "[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*People v. Sanchez* (2016) 63 Cal.4th 665, 686.) Here, Mr. Madhavi repeatedly relies upon his own unsworn report, not as a source of background information or context, but as the factual basis for his submission as a whole.  An expert cannot simply serve as a conduit for hearsay. (*See Fuller v. Department of Transportation* (2019) 38 Cal.App.5th 1034, 1044.)  Because the materials upon which Mr. Madhavi relies for his testimony is hearsay, neither the testimony nor the materials should be allowed.

## IV.   PETITIONERS' NEW EVIDENCE LACKS PROPER FOUNDATION, PERSISTS WITH HEARSAY, AND IS HIGHLY SPECULATIVE

Petitioners also submit a plethora of declarations, exhibits, and requests for judicial notice that are riddled with improper hearsay and which lack any foundation.

A.  Environmental Defense Center's Request for Judicial Notice Lacks Any Foundation

In support of its Reply Brief, Environmental Defense Center has submitted another Request for Judicial Notice, consisting of 14 exhibits (Exhibits A – N) and 897 pages.   The Request for

- 8 -

Judicial Notice asks, without authenticating any of the documents, that "this Court take judicial notice of the following documents, true and correct copies of which are attached hereto…." The Request for Judicial Notice as to the documents described specifically bellow should be denied because Petitioners do not provide any basis to authenticate the records. (Evid. Code § 1401 [authentication is required to receive evidence].)

Evidence Code section 1400 requires a writing to be authenticated by the "introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is…." Evidence Code section 1413 proves that "a writing may be authenticated by anyone who saw the writing made or executed, including a subscribing witness." "The statutory definition ties authentication to relevance. As explained by the California Law Revision Commission's comment to [Evidence Code] section 1400, '[b]efore any tangible object may be admitted into evidence, the party seeking to introduce the object must make a preliminary showing that the object is in some way relevant to the issues to be decided in the action. When the object sought to be introduced is a writing, this preliminary showing of relevancy usually entails some proof that the writing is authentic—*i.e.*, that the writing was made or signed by its purported maker." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266 ["authentication is essentially a subset of relevance"].) The "first step" in authenticating a piece of evidence "is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered." (*Id.*, at p. 267, citing *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1434-1435.)

Here, there is nothing offered to authenticate or state the relevance of these exhibits.  Plainly, the exhibits are not attached to a declaration authenticating the records.  Nor is there any description or detail as to how these records were searched for or obtained, all necessary information to confirm the authenticity of these records.  Without such information, there is no foundation to introduce these exhibits into evidence, especially with Petitioners' reply brief now.

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

B. Petitioners' Counsel's Declarations Lack Foundation, Serve as Improper Conduits to Hearsay, and Include Improper Expert Opinions

To support their Motion for Preliminary Injunction, Petitioners have also submitted new attorney declarations (Declaration of Linda Krop and Second Declaration of Julie Teel Simmonds and), attaching exhibits for which each declarant lacks any personal knowledge to establish the necessary foundation and authenticity of the records presented.

The Second Declaration of Julie Teel Simmonds attaches seventeen (17) separate exhibits that have not been properly authenticated, and which consist of hearsay without any applicable exception. The Second Simmonds declaration includes various purported records "obtained" from webpages, but as counsel, this witness lacks personal knowledge and foundation to authenticate the documents or the hearsay therein. (Evid. Code §§702(a), 800, 1200, 1400, 1401.) Moreover, the Declaration of Linda Krop similarly attaches and references Sable Offshore Corp.'s "Form 8-K," purportedly found online which is similarly not properly authenticated. (Evid. Code §§ 702(a) & 800.) The Krop Declaration also includes statements amounting to improper and irrelevant expert opinion about potential greenhouse gas emissions resulting from Pipeline restart without any proper bases for such statements. Ms. Krop is an attorney and not an expert qualified to opine regarding impacts from Real Parties' potential restart of the Pipelines, which is also highly speculative in nature.

C. The Lay Witness Declarations Are Irrelevant, Hearsay, And Based on Speculation

In addition, Environmental Defense Center submitted five additional untimely declarations from its members describing, with only hearsay and speculation, the worries and concerns its members share and the alleged reasons Environmental Defense Center seeks its preliminary injunction. These statements are all irrelevant to the legal analysis surrounding Petitioners' Motion for Preliminary Injunction, hearsay without any exception, and based completely on speculation.

V. **REAL PARTIES' SPECIFIC OBJECTIONS TO EVIDENCE**

**OBJECTIONS TO THE DECLARATION OF PAASHA MADHAVI**

Real Parties object to the declaration of Paasha Madhavi ("Madhavi Decl.") as follows:

- 10 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 1. | Declaration of Paasha Mahdavi in Support of Petitioners and Plaintiffs' Application for Stay or Preliminary Injunction | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | ☐ Sustained<br><br>☐ Overruled |

- 11 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 2. | Mahdavi Decl. Page 2, Paragraph 4, Lines 15-17: "I evaluated the evidence relating to these claims in my report, titled Economic Analysis of Market Impacts of Resuming Oil and Gas Production from the Santa Ynez Unit, dated February 2025. A true and correct copy of this report is attached hereto as **Exhibit B**." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | ☐ Sustained<br><br>☐ Overruled |

- 12 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 3. | Mahdavi Decl. Page 2, lines 18-28: "The report sets forth my opinion, based on my review of historical data on oil supply offers, Sable's 2024 investor reports, California agency energy reports, and economic and statistics studies, including: crude oil supply data sourced from California Air Resources Board; Sable Offshore Corp.'s 'Investor Presentation September 2024' and 'Investor Presentation November 2024;' California Energy Commission's 'Draft 2024 Integrated Energy Policy Report Update' and 'Foreign Sources of Crude Oil Imports to California;' and 'Estimated Carbon Intensity Values for the Crude Lookup Table, App. F to Proposed Amendments to the Low Carbon Fuel Standard Regulations,' authored by California Greenhouse gas Emissions (OPGEE).' Authored by researchers at Stanford University and California Air Resources Board, and supported by California Environmental Protection Agency and California Air Resources Board." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |

- 13 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 4. | Mahdavi Decl. Page 3, lines 2-4: "Restarting SYU production will not significantly reduce foreign imports, based on both statistical analysis of the 2015 pause and an economic analysis of costs compared to major suppliers of crude oil." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). <br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. <br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. <br><br>**Speculation.** *Evid Code* § 702, 800, | ☐ Sustained <br><br> ☐ Overruled |

- 14 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | and 801(b). | |
| 5. | Mahdavi Decl. Page 3, lines 5-7: "Not restarting SYU will not have significant impacts on consumer markets over time, given declining demand for petroleum products in California through 2045 outpaces the loss of supply from SYU production." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). <br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. <br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | ☐ Sustained <br><br> ☐ Overruled |

- 15 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 6. | Mahdavi Decl. Page 3, lines 8-10: "Production from SYU will increase global greenhouse gas emissions given the higher greenhouse gas intensity of operations compared to industry averages for operations from commensurate fields." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the | |

- 16 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 7. | Mahdavi Decl. Page 3, lines 11-12: "Based on the facts I have reviewed and my professional analysis, in my opinion restarting the Las Flores Pipeline will not markedly benefit California's environment or economy." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without | ☐ Sustained<br><br>☐ Overruled |

- 17 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | an opportunity to cross-examine the expert violates Real Parties' due process rights. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 8. | Mahdavi Decl., Ex. A, CV | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | ☐ Sustained ☐ Overruled |
| 9. | Mahdavi Decl., Ex. B, page 1, paragraph 2: "An economic analysis shows little evidence to support these claims. By contrast, well-established economic models of oil supply and statistical evaluation of the SYU show that (1) foreign imports are not likely to increase in the absence of SYU production and (2) restarting oil production will have limited to no impacts on California oil markets through 2045." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 18 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 10. | Mahdavi Decl., Ex. B, page 1, paragraph 3: "The most substantial impacts of restarting the SYU are on emissions: if production resumes, global greenhouse gas emissions are likely to increase by 2.5 million tons of CO2e, given higher greenhouse gas intensity of SYU oil and gas production compared to the typical blend of crude oil around the world." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 11. | Mahdavi Decl., Ex. B, page 2, Figure 1 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 20 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 12. | Mahdavi Decl., Ex. B, page 2, paragraph 1: "Production from the SYU averaged 29,000 barrels of oil per day and 27 million cubic feet of gas per day in 2014, the last complete year of production prior to the 2015 pipeline spill and subsequent pause in extraction.3 This is roughly 30% of peak production from the SYU in 1996, consistent with expected depletion of the reservoir." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 13. | Mahdavi Decl., Ex. B, page 2, paragraph 2: "For the last full year of production, SYU oil supply averaged 1.8% of total statewide crude oil supply, including domestic and foreign imports (Figure 1).4 These data also show that crude oil supplied to California has noticeably declined since 2018, reflective not just of the pandemic shock in 2020 but a reduction in consumer demand for petroleum products." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 22 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 14. | Mahdavi Decl., Ex. B, page 2, footnote 4: "CARB, Major Sources of Crude Supplied to California. Updated 2024, Accessed in February 2025 from https://ww2.arb.ca.gov/sites/default/files/2024-12/LCFS%20Crude%20Sources_0.xlsx. | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 15. | Mahdavi Decl., Ex. B, page 2, footnote 5: "California Energy Commission. (2024). Report - Draft 2024 Integrated Energy Policy Report Update." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 24 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 16. | Mahdavi Decl., Ex. B, page 3: **"The SYU pause had no statistical effect on imports of foreign oil"** | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | |

- 25 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  |  | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. |  |
| 17. | Mahdavi Decl., Ex. B, page 3, paragraph 1: "Historical data on oil supply offers an opportunity to assess whether not restarting SYU production would lead to increases in foreign supply, given that markets responded to the loss of production from the SYU in 2015." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 18. | Mahdavi Decl., Ex. B, page 3, paragraph 2: "Data on crude oil supplied to California refineries from 2010 to 2023, while imports increased over the same timespan (Figure 1). The primary shift in foreign import supply came during the 2010- 2014 period of high prices, as foreign sources of crude exceeded domestic supply in 2011. Aside from a peak in imports in 2017-2019, and the pandemic collapse in 2020, foreign import levels in 2023 were roughly the same as in 2014-2015 (Figure 2). <u>Looking at the period directly after the SYU went offline, there was no increase in foreign imports</u>: imports actually fell to 316 million barrels in 2016 from 320 million barrels in 2014 and 318 million barrels in 2015. " | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 19. | Mahdavi Decl., Ex. B, page 3 paragraph 3: "Applying a statistical model to the data shows that the pause in SYU production since May 2015 did not significantly impact changes in foreign imports despite declining domestic supply. Specifically, using the difference-in-difference estimator widely used in statistics and econometrics,6 modeling indicates that the SYU pause caused a modest annual increase in imports by 463,936 barrels per year, though the increase is not statistically distinguishable from a scenario in which the pause had no effect." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 28 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 20. | Mahdavi Decl., Ex. B, page 3, paragraph 4: "To put this number in perspective, all three SYU fields produced roughly 11 million barrels in 2014. Putting these numbers together, for every 1 barrel not produced from SYU fields, there was only a 0.04 barrel replacement by foreign imports to California refineries; the remaining 0.96 barrels to account for the loss of SYU production were offset by reduced demand, and to a lesser extent, increased Alaskan oil supply." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 29 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 21. | Mahdavi Decl., Ex. B, page 3, paragraph 5: "Comparing non-SYU OCS production to imports also shows little impact. Here a model is applied to estimate how changes in non-SYU OCS production influence imports pre/post SYU pause. Results from this model show that declining production from non-SYU OCS had no statistical effect on changes in imports over the 2015-2023 period." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 22. | Mahdavi Decl., Ex. B, page 3, footnote 6: "Abadie, A. (2005). Semiparametric difference-in-differences estimators. Review of Economic Studies, 72(1), 1-19." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|----------------------|--------|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 23. | Mahdavi Decl., Ex. B, page 3, footnote 7: "The model-estimated increase in foreign imports relative to declining domestic imports is 463,936 barrels per year with a p-value of 0.917, indicating that the difference in imports is not statistically significantly different from 0." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 32 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 24. | Mahdavi Decl., Ex. B, page 3, footnote 8: "Based on data from the California Energy Commission, crude oil supply to California from Alaska increased from 70.4 million barrels in 2014 and 73.6 million barrels in 2015 to 84.2 million barrels in 2023, though this increase primarily replaced the loss of crude oil supply from California (onshore and state offshore) over the same period. See footnote 3 for a review of declining consumer demand over time." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 25. | Mahdavi Decl., Ex. B, page 3, footnote 9: "The model-estimated effect on foreign imports relative to declining non-SYU OCS production is 30,237 barrels per day with a p-value of 0.759, indicating that the difference in imports is not statistically significantly different from 0." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 34 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 26. | Mahdavi Decl., Ex. B, Figure 2 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 35 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 27. | Mahdavi Decl., Ex. B, page 4, paragraph 1: "One objection to the above finding would be that SYU barrels would replace production from California onshore fields given SYU's lower operating costs on a per-barrel basis. Purely from an operating cost and up-front capital cost perspective, the SYU is more cost-competitive than roughly 80% of California's onshore oil fields using data from a widely-used industry database." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc., supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 36 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 28. | Mahdavi Decl., Ex. B, page 4, paragraph 2: "These figures are likely underestimated given non-accounting of remediation and retirement costs, which the BSEE estimates to range between $34,700,743 and $38,149,826 per platform given the SYU's platform depths of 850'-1,200', which are roughly 10 times the remediation costs for onshore California wells on a per-well basis." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br>☐ Overruled |

- 37 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 29. | Mahdavi Decl., Ex. B, page 4, footnote 10: "This estimate is a comparison of Sable's projected costs from the November 2024 Investor Presentation (see footnote 1), and statewide data from Rystad Energy's UCube. Sable's projected revenues from a low-estimate base forecast of 133 total MMBoe of oil, gas, and NGL resources give an estimated present value cash flow of $2.3 billion assuming a 10% discount rate. Backing out operating costs based on Sable's market price assumptions gives an estimated break-even price between $41 and $47 per barrel, depending on assumed depletion rates over a 5-year period. By comparison, the cost curve for California's onshore and state-water offshore fields projected out to 2030 indicates that roughly 20% of fields have a break-even price below $44/barrel." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 30. | Mahdavi Decl., Ex. B, page 4, footnote 11: "Bureau of Safety and Environmental Enforcement and ICF International, Decommissioning Methodology and Cost Evaluation. BPA No. E13PA00010. These estimates are based on an assumed 60 wells per platform, which is roughly in line with Sable's development plans given 112 existing wells and 102 infill drilling and step-out opportunities across three platforms." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 31. | Mahdavi Decl., Ex. B, page 4: "**Future SYU production will not displace foreign imports on a cost basis**" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc., supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 40 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 32. | Mahdavi Decl., Ex. B, page 5, paragraph 1: "Yet even without accounting for retirement costs, SYU's barrels are not more costcompetitive than existing foreign suppliers to California. Assuming operating costs of roughly $44/barrel for SYU,12 this would still exceed average per-barrel total costs— including capital expenditures, taxes, transport, and administrative costs—for California's top foreign suppliers of oil. This includes Saudi Arabia ($9/barrel), Iraq ($11/barrel), Colombia ($11/barrel), Ecuador ($7-$20/barrel), and Brazil ($21- 28/barrel)." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. | ☐ Sustained<br><br>☐ Overruled |

- 41 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 33. | Mahdavi Decl., Ex. B, page 5, paragraph 2: "This suggests that restarting SYU production would not lead to a reduction in imports on a strictly economic basis." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological | |

- 42 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. **Speculation**. *Evid Code* § 702, 800, and 801(b). | |
| 34. | Mahdavi Decl., Ex. B, page 5: "**SYU production will have limited impacts on statewide oil consumption**" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. | ☐ Sustained ☐ Overruled |

- 43 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 35. | Mahdavi Decl., Ex. B, page 5, paragraph 3: "From a demand perspective, there is limited opportunity cost to consumption for not restarting SYU oil production. This is because there is no "perfect substitution" of supply and demand in global oil markets at the local level: one barrel not produced locally is not perfectly replaced by one barrel produced elsewhere to fill local demand. As a result, a production shock tends to reduce demand despite the relative fungibility of global oil markets." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; | ☐ Sustained<br><br>☐ Overruled |

- 44 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
| | | *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 36. | Mahdavi Decl., Ex. B, page 5, paragraph 4: "This pattern particularly holds for oil produced in California, where studies estimate that for every barrel of oil not produced in California, oil consumption declines by between 0.2 and 0.6 barrels.14 This estimate is consistent with a broad range of economic models from government sources, think tanks, energy consultants, and academic researchers, showing that a one-barrel loss in production corresponds to an average reduction in consumption by 0.5 barrels.15 Extrapolating these results to the SYU based on hypothetical production at 10 million barrels per year in 2025, this suggests that on average there would be a 0.93% reduction in annual statewide | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained<br><br>☐ Overruled |

- 45 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | consumption if production from the SYU is not restarted." | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 37. | Mahdavi Decl., Ex. B, page 5, footnote 12: "See footnote 10 for sources on estimated opex at $44/barrel. Even sell-side models which reflect a lower opex in the $27/barrel range would show that SYU crude is still not competitive with imports, with the exception of a small range of Brazilian crudes." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony** (*Sargon*): Evid. Code §§ 402, 801, | ☐ Sustained<br><br>☐ Overruled |

- 46 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 38. | Mahdavi Decl., Ex. B, page 5, footnote 13: "Saudi and Iraqi oil costs are drawn from Rystad Energy; Colombia estimates are from Ecopetrol via the Rio Times; Ecuador estimates are from PetroAmazonas via the Baker Institute; and Brazil estimates are drawn from Enverus data on pre-salt breakeven costs, plus an assumed $3/barrel administrative and transportation cost. For a list of all foreign suppliers to California, see California Energy Commision, Foreign Sources of Crude Oil Imports to California, Accessed from: https://www.energy.ca.gov/data-reports/energy-almanac/californias-petroleum-market/foreignsources-crude-oil-imports" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony** (*Sargon*): Evid. Code §§ 402, 801, | ☐ Sustained ☐ Overruled |

- 47 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 39. | Mahdavi Decl., Ex. B, page 5, footnote 14: "Erickson, P. and Lazarus, M. (2018). How limiting oil production could help California meet its climate goals. Stockholm Environment Institute discussion briefing report; Erickson, P. and Lazarus, M. (2014). Impact of the Keystone XL pipeline on global oil markets and greenhouse gas emissions. Nature Climate Change, 4(9). 778–81." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained ☐ Overruled |

- 48 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 40. | Mahdavi Decl., Ex. B, page 5, footnote 15: "Wolvovsky, E. and Anderson, W. (2016). OCS Oil and Natural Gas: Potential Lifecycle Greenhouse Gas Emissions and Social Cost of Carbon. BOEM OCS Report 2016-065. U.S. Department of Interior, Bureau of Ocean Energy Management; Metcalf, G. (2016). The Impact of Removing Tax Preferences for U.S. Oil and Gas Production. Council on Foreign Relations; ICF and Ensys (2014). The Impacts of U.S. Crude Oil Exports on Domestic Crude Production, GDP, Employment, Trade, and Consumer Costs. ICF International for the American Petroleum Institute; Bordoff, J. and Houser, T. (2015). Navigating the U.S. Oil Export | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  | Debate. Columbia University, Center on Global Energy Policy and Rhodium Group; and Rajagopal, D. and Plevin, R. J. (2013). Implications of market-mediated emissions and uncertainty for biofuel policies. Energy Policy, 56 75–82." | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. |  |
| 41. | Mahdavi Decl., Ex. B, page 6, paragraph 1: "Looking at future consumption, there is no support in existing demand models for additional supply needed over time. Modeling by the Institute for Transportation Studies (ITS) shows that under a conservative business-as-usual forecast—based on historical demand and future demand in the absence of new policies—there is an expected 30% decline in fuel consumption, from roughly 19 billion gasoline gallonequivalent (GGE) in 2020 to roughly 13 GGE in 2045, corresponding to a 1.5% compound annual decline rate.17 In this scenario, demand is still driven predominantly by petroleum-based fuels, but consumption declines due to efficiency improvements. In more extreme cases | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | with substantial fuel replacement, such as the CARB 2022 Scoping Plan, demand reduction for liquid petroleum fuels declines 94% from 2020 to 2045, for a 10.9% compound annual decline rate." | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 42. | Mahdavi Decl., Ex. B, page 6, paragraph 2: "In either extreme—from business-as-usual with no change in statewide policy to a considerable shift in energy policy to achieve carbon neutrality—the impact of the loss of supply from not restarting the SYU is outweighed by declining consumer demand. Instead, it is likely that the over-time economic gains Sable aims to achieve from restarting the SYU will come from exporting the oil from California to other markets." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony** | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | (**Sargon**): Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 43. | Mahdavi Decl., Ex. B, page 6: **"Restarting the SYU will increase global greenhouse gas emissions"** | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc., supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  |  | **Inadmissible Expert Testimony** (*Sargon*): Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). |  |
| 44. | Mahdavi Decl., Ex. B, page 6, paragraph 3: "If production were to resume from the SYU, estimates from the Oil Production Greenhouse Gas Emissions Estimator (OPGEE) used by CARB suggest that per-unit emissions from production from the Hondo, Pescado, and Sacate fields would be roughly 87% higher than per-unit emissions from the onshore Aliso Canyon fields in LA County. Existing models of the greenhouse gas intensity of oil and gas production show that these carbon intensity levels are underestimated as they do not capture methane emissions and poorly estimate emissions from flaring.20 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Nonetheless, they provide a comparison on an emissions basis to the SYU." | consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 45. | Mahdavi Decl., Ex. B, page 6, footnote 16: "SYU annual production of 10 million barrels/year is estimated from an expected 28,100 barrels/day production once online, from Sable Offshore Corp. (2024). Investor Presentation September 2024, accessed from https://sableoffshore.com/events-and-presentations/default.aspx. This is compared to 2023 statewide consumption of 532 million barrels based on CARB data." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc., supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony** (***Sargon***): Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 46. | Mahdavi Decl., Ex. B, page 6, footnote 17: "Brown, A. L; Sperling, D.; Austin, B.; DeShazo, JR; Fulton, L.; Lipman, T., et al. (2021). Driving California's Transportation Emissions to Zero. UC Office of the President: University of California Institute of Transportation Studies. http://dx.doi.org/10.7922/G2MC8X9X." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). <br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained <br><br> ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 47. | Mahdavi Decl., Ex. B, page 6, footnote 18: "California Air Resources Board. (2022). 2022 Scoping Plan for Achieving Carbon Neutrality. Data extracted from: https://ww2.arb.ca.gov/sites/default/files/2022-11/2022-sp-PATHWAYS-data-E3.xlsx." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained<br><br>☐ Overruled |

- 56 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 48. | Mahdavi Decl., Ex. B, page 7, paragraph 1: "Using Aliso Canyon as an emissions-intensity comparison, the operational emissions intensity of production from the SYU would be roughly 440 kg CO2e per barrel of oil and barrel-equivalent of gas using the OCI+ metrics of emissions intensity.21 This is considerably higher than nearly all other fields rated by OCI+, which typically range between 80 kg CO2e/mboe and 400 kg CO2e/mboe. Iraqi crude, for example, has intensities of 175 CO2e/mboe (Rumaila, medium oil), 234 CO2e/mboe (Ahdab, medium/heavy oil), and 255 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained<br><br>☐ Overruled |

- 57 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | CO2e/mboe (Fakka, heavy oil), all of which include emissions from production, gathering, storage, and transportation." | tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 49. | Mahdavi Decl., Ex. B, page 7, paragraph 2: "The quality of SYU crude is a mix of heavy oil (18° API gravity) from the primary reservoir and light oil (37° API gravity) from the secondary reservoir.23 Comparisons by quality also show that the greenhouse gas intensity of SYU crude exceeds that of commensurate foreign imports. Among heavy oil comparisons, SYU greenhouse gas intensity would be higher than any field rated by OCI+.24 Among light oil comparisons, SYU greenhouse gas intensity exceeds all estimated fields | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | with the exception of four that are not currently exported to California." | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 50. | Mahdavi Decl., Ex. B, page 7, paragraph 3: "Compared to production from Elk Hills in Kern County—which produces medium/light oil that is near global averages in emissions intensity taking methane emissions into account, and approximately equivalent to SYU barrels in terms of estimated break-even price per barrel—every barrel of oil from SYU would add 245 kg CO2e above and beyond emissions from barrels from Elk Hills (195 kg CO2e/mboe). Considering the anticipated annual volume of production, this translates to roughly | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | 2.5 million tons of CO2e above what would be emitted if the SYU were not producing." | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 51. | Mahdavi Decl., Ex. B, page 7, footnote 19: "CARB. (2023). Estimated Carbon Intensity Values for the Crude Lookup Table, App. F to Proposed Amendments to the Low Carbon Fuel Standard Regulations. These values are roughly double what Sable stated at the October 30, 2024, Planning Commission hearing (see footnote 1). The 2010 carbon intensity (gCO2/MJ) for Hondo, Pescado, and Sacate is estimated at 6.84, 6.13, and 4.85, respectively, with a production-weighted average at 6.09 gCO2/MJ. This is compared to Aliso Canyon with | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | carbon intensity of 3.26 gCO2/MJ." | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 52. | Mahdavi Decl., Ex. B, page 7, footnote 20: "RMI, Oil Climate Index plus Gas Model v.2.1.0 (2024); Mohammad S. Masnadi et al., Global carbon intensity of crude oil production. Science 361,851-853 (2018); Scarpelli, T. R., Jacob, D. J., Grossman, S., Lu, X., Qu, Z., Sulprizio, M. P., Zhang, Y., Reuland, F., Gordon, D., and Worden, J. R.: Updated Global Fuel Exploitation Inventory (GFEI) for methane emissions from the oil, gas, and coal sectors: evaluation with inversions of atmospheric methane observations. Atmos. Chem. Phys., 22, | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | 3235–3249 (2022)." | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 53. | Mahdavi Decl., Ex. B, page 7, footnote 21: "Based on data from the Oil Climate Index plus Gas (OCI+), accessed from https://ociplus.rmi.org/analysis. Aliso Canyon is rated at 235.84 kg $CO_2e$/mboe industry GHG emissions intensity." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained<br><br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. | |

- 62 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  |  | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. |  |
| 54. | Mahdavi Decl., Ex. B, page 7, footnote 22: "Ibid." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 55. | Mahdavi Decl., Ex. B, page 7, footnote 23: "Based on information for Platform Hondo from: Air Pollution Control District, Santa Barbara County. (April 2024). Draft Permit to Operate 9100 – R8 and Part 70 Operating Permit 9100: Sable Offshore – SYU Project Platform Hondo. Accessed in February 2025 from https://www.ourair.org/wp-content/uploads/Draft-PT-70-09100-R8-Platform-Hondo-4-8-2024.pdfBased on information for Platform Hondo from: Air Pollution Control District, Santa Barbara County. (April 2024). Draft Permit to | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Operate 9100 – R8 and Part 70 Operating Permit 9100: Sable Offshore – SYU Project Platform Hondo. Accessed in February 2025 from https://www.ourair.org/wp-content/uploads/Draft-PT-70-09100-R8- Platform-Hondo-4-8-2024.pdf" | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 56. | Mahdavi Decl., Ex. B, page 7, footnote 24: "The highest intensity rated among heavy or extra heavy oil is Canada Peace River at 419 CO2e/mboe. Data drawn from OCI+ (see footnote 21)." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

- 65 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 57. | Mahdavi Decl., Ex. B, page 7, footnote 25: "The exceptions are industry GHG intensities of 490 CO2e/mboe (Gabon Koula), 639 CO2e/mboe (Iran Agha Jari), 806 CO2e/mboe (Russia Kuyumbinskoye), and 964 CO2e/mboe (Mexico Teotleco). Data drawn from OCI+ (see footnote 21)." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (_Sargon_)**: Evid. Code §§ 402, 801, 802; _Sargon_, _supra_, 55 Cal.4th at 770; _Lowery_, _supra_, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. _Fost_, _supra_, 80 Cal.App.4th at p. 733; _In re Crystal J._, _supra_, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 58. | Mahdavi Decl., Ex. B, page 8, paragraph 1: "An overview of the economic analysis performed here of the market impacts of production from the SYU finds support for the following three claims:" | **Hearsay**: Evid. Code, § 1200; _I-CA Enterprises. Inc._, _supra_, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); _Veamatahau_, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained ☐ Overruled |

- 67 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 59. | Mahdavi Decl., Ex. B, page 8, paragraph 2: "(1) Restarting SYU production will not reduce foreign imports, based on both statistical analysis of the 2015 pause and an economic analysis of costs compared to major suppliers of crude;" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

- 68 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 60. | Mahdavi Decl., Ex. B, page 8, paragraph 3: "(2) Not restarting SYU will not have significant impacts on consumer markets over time, given declining demand for petroleum products in California through 2045 outpaces the loss of supply from SYU production;" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained<br>☐ Overruled |

- 69 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 61. | Mahdavi Decl., Ex. B, page 8, paragraph 4: "(3) Production from the SYU will increase global greenhouse gas emissions given the higher greenhouse gas intensity of operations compared to industry averages for operations from commensurate fields." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay | |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | exception"). | |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |

**OBJECTIONS TO THE DECLARATION OF SECOND DECLARATION OF JULIE TEEL SIMMONDS**

Real Parties object to the second declaration of Julie Teel Simmonds, ("Second Simmonds Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 62. | Second Declaration of Julie Teel Simmonds Re: Petitioners' Combined Reply In Support Of | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert | ☐ Sustained ☐ Overruled |

- 71 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Application for an Administrative Stay or Preliminary Injunction | may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| 63. | Second Simmonds Decl.¶ 1: "I am at attorney at law admitted to practice…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |
| 64. | Second Simmonds Decl.¶ 2: "Attached as Exhibit 1 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 65. | Second Simmonds Decl.¶ 3: "Attached as Exhibit 2 is a true | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement | ☐ Sustained |

- 72 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | and correct copy…" | offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Overruled |
| 66. | Second Simmonds Decl.¶ 4: "Attached as Exhibit 3 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |
| 67. | Second Simmonds Decl.¶ 5: "Attached as Exhibit 4 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |

- 73 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 68. | Second Simmonds Decl.¶ 6: "Attached as Exhibit 5 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 69. | Second Simmonds Decl.¶ 7: "Attached as Exhibit 6 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they | |

- 74 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 70. | Second Simmonds Decl.¶ 8: "Attached as Exhibit 7 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained  ☐ Overruled |
| 71. | Second Simmonds Decl.¶ 9: "Attached as Exhibit 8 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained  ☐ Overruled |

- 75 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 72. | Second Simmonds Decl.¶ 10: "Attached as Exhibit 9 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 73. | Second Simmonds Decl.¶ 11: "Attached as Exhibit 10 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 74. | Second Simmonds Decl.¶ 12: "Attached as Exhibit 11 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter | ☐ Sustained<br>☐ Overruled |

- 76 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | asserted. | |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 75. | Second Simmonds Decl.¶ 13: "Attached as Exhibit 12 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 76. | Second Simmonds Decl.¶ 14: "Attached as Exhibit 13 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of | |

- 77 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 77. | Second Simmonds Decl.¶ 15: "Attached as Exhibit 14 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |
| 78. | Second Simmonds Decl.¶ 16: "Attached as Exhibit 15 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 79. | Second Simmonds Decl.¶ 17: "Attached as Exhibit 16 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained <br> ☐ Overruled |
| 80. | Second Simmonds Decl.¶ 18: "Attached as Exhibit 17 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, | ☐ Sustained <br> ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | and accurate copy of the document purportedly attached. | |
| 81. | Exhibit 1 OSFM Line ID No. 0015 Line 324 (Las Flores to Gaviota 24") Restart Plan | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 82. | Exhibit 2 OSFM Line ID No. 0001 Line 325 (Gaviota to Sisquoc 30" and Sisquoc to Pentland 30") Restart Plan | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 83. | Exhibit 3 Sable Offshore Corp. Form 8-K (June 3, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 84. | Exhibit 4 Mitigated Negative Declaration ExxonMobile Santa Ynez Unit (SYU) Offshore Power System Reliability – B Phase 2 Project (July 2014) (Excerpts) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained <br><br> ☐ Overruled |
| 85. | Exhibit 5 Letter, CBD to PHMSA and Office of the State Fire Marshal (Dec. 23, 2024) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained <br><br> ☐ Overruled |
| 86. | Exhibit 7 Liquid Pipeline Advisory Committee (LPAC) Committee Roster and Biographies (last updated Jan. 15, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Authentication/Personal Knowledge/Foundation.** Evid. Code, | ☐ Sustained <br><br> ☐ Overruled |

- 81 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 87. | Exhibit 8 Letter, PHMSA to Office of the State Fire Marshal (May 18, 2016) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 88. | Exhibit 9 Final Environmental Impact Statement/Report for Santa Ynez Unit/Las Flores Canyon Development and Production Plan (June 1984) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 89. | Exhibit 10 BSEE – Platforms Operated by Sable Offshore Corp. (undated) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of | ☐ Sustained<br>☐ Overruled |

- 82 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 90. | Exhibit 11 Press Release, ExxonMobil Sets Drilling Records (Apr. 16, 2010) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 91. | Exhibit 12 Sable Offshore Corp. Form 8-K (July 10, 2024) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 92. | Exhibit 13 Draft EIR/EIS Proposed Celeron/All American and Getty Pipeline Projects (August 1984) (EXCERPTS) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |

- 83 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 93. | Exhibit 14 Final EIR/EIS Proposed Celeron/All American and Getty Pipeline Projects (January 1985) (EXCERPTS) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 94. | Exhibit 15 PHMSA, Pipeline Special Permits and State Waivers Overview (last updated June 30, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 95. | Exhibit 16 Letter, PHMSA to CBD (Jan. 17, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |
| 96. | Exhibit 17 U.S. Department of Transportation, Procedures for Considering Environmental Impacts – DOT Order 5610.1D (July 1, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |

### OBJECTIONS TO THE DECLARATION OF ALEX KATZ

Real Parties object to the declaration of Alex Katz ("Katz Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 97. | Katz Decl. ¶ 1: "I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 98. | Katz Decl. ¶ 2: "I currently reside in Santa Barbara, California, and I have lived in Santa Barbara County for more than two years." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |
| 99. | Katz Decl. ¶ 3: "I am the Executive Director of the Environmental Defense Center ("EDC"). My business address and phone number are 906 Garden Street, Santa Barbara, CA 93101, (805) 963-1622. I have served as the Executive Director of EDC since March 2023." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | disprove a fact of consequence in the case. **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| 100. | Katz Decl. ¶ 4: "EDC is a non-profit public interest environmental law firm that was founded in 1977…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | ☐ Sustained ☐ Overruled |

- 87 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 101. | Katz Decl. ¶ 5: "Since our founding…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 102. | Katz Decl. ¶ 6: "Many of EDC's members live…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the | ☐ Sustained<br>☐ Overruled |

- 89 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 103. | Katz Decl. ¶ 7: "Restarting the Las Flores Pipeline System…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony** (*Sargon*): Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological | ☐ Sustained ☐ Overruled |

- 90 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 104. | Katz Decl. ¶ 8: "EDC's members are also affected…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & | ☐ Sustained<br><br>☐ Overruled |

- 91 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
|     |                        | 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Speculation.** *Evid Code* § 702, 800, and 801(b). |  |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 105. | Katz Decl. ¶ 9: "I personally would be negatively affected…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony** (**Sargon**): Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court | ☐ Sustained<br><br>☐ Overruled |

- 93 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | against the Real Parties, and has no probative value. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 106. | Katz Decl. ¶ 10: "EDC seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained ☐ Overruled |

- 94 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra,* 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Speculation.** *Evid Code § 702, 800, and 801(b).* **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 107. | Katz Decl. ¶ 11: "EDC also seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra,* 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained  ☐ Overruled |
| 108. | Katz Decl. ¶ 12: "The OSFM's decision to grant waivers…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or | ☐ Sustained  ☐ Overruled |

- 95 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|----------------------|--------|
|     |                        | disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Speculation.** *Evid Code* § 702, 800, and 801(b). **Improper Argument and Opinion.** *Evid. Code § 803, In re* |        |

- 96 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |

**OBJECTIONS TO THE DECLARATION OF KEN HOUGH**

Real Parties object to the declaration of Ken Hough ("Hough Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 109. | Hough Decl. ¶ 1: "I am over eighteen years old. I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant.** Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process.** *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |
| 110. | Hough Decl. ¶ 2: "My current address is…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant.** Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process.** *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |

- 97 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 111. | Hough Decl. ¶ 3: "I have been a member of Santa Barbara County Action Network…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |
| 112. | Hough Decl. ¶ 4: "For twenty-three years SBCAN has worked…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br>☐ Overruled |
| 113. | Hough Decl. ¶ 5: "SBCAN currently has approximately 120 active members…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | asserted. | |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 114. | Hough Decl. ¶ 6: "When the Santa Ynez Unit (SYU) pipelines …" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias | |

- 99 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | by the court against the Real Parties, and has no probative value. | |
| 115. | Hough Decl. ¶ 7: "I will be harmed if the SYU pipeline is restarted…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |
| 116. | Hough Decl. ¶ 8: "SBCAN's members' interests in protecting…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code § 702, 800*, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 117. | Hough Decl. ¶ 9: "SBCAN also has an interest in public participation…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias | ☐ Sustained<br><br>☐ Overruled |

- 101 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | by the court against the Real Parties, and has no probative value. | |
| 118. | Hough Decl. ¶ 10: "SBCAN's members are harmed by the failure…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |
| 119. | Hough Decl. ¶ 11: "SBCAN seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal* | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 120. | Hough Decl. ¶ 12: "SBCAN also seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant.** Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process.** *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |

- 103 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | | |
| 121. | Hough Decl. ¶ 13: "The Office of State Fire Marshal's decision…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |

## OBJECTIONS TO THE DECLARATION OF LINDA KROP

Real Parties object to the declaration of Linda Krop ("Krop Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 122. | Krop Decl. ¶ 1: "I am Chief Counsel for the non-profit…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc., supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| 123. | Krop Decl. ¶ 2: "On July 11, 2025, Sable Offshore Corp…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Lack of Foundation/Personal Knowledge.** *Evid. Code §§* 702(a), 800. | ☐ Sustained<br><br>☐ Overruled |
| 124. | Krop Decl. ¶ 3: "On July 11, 2025, I visited the California Air Resources Board…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| 125. | Krop Decl. ¶ 4: "On July 11, 2025, I used the publicly available…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical | ☐ Sustained<br><br>☐ Overruled |

- 106 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| 126. | Krop Decl. ¶ 5: "In other words, when last active…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; | ☐ Sustained ☐ Overruled |

- 107 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *Lowery*, supra, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, supra, 80 Cal.App.4th at p. 733; *In re Crystal J.*, supra, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code § 702, 800, and 801(b).* | |
| | | **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| | | **Lack of Foundation/Personal Knowledge.** *Evid. Code §§ 702(a), 800.* | |
| 127. | Krop Decl. ¶ 6: "According to the Pollution Mapping Tool…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, supra, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay | ☐ Sustained<br>☐ Overruled |

- 108 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted. | |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |

- 109 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 128. | Krop Decl. Exhibit A | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Lack of Foundation/Personal Knowledge.** *Evid. Code* §§ 702(a), 800. | ☐ Sustained<br>☐ Overruled |

**OBJECTIONS TO THE DECLARATION OF MAUREEN ELLENBERGER**

Real Parties object to the declaration of Maureen Ellenberger ("Ellenberger Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 129. | Ellenberger Decl. ¶ 1: "I am over eighteen years old…" | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |
| 130. | Ellenberger Decl. ¶ 2: "My current address is 1401 Shoreline Drive…" | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| 131. | Ellenberger Decl. ¶ 3: "I have been a member of the Santa Barbara-Ventura Chapter of the Sierra Club…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine | ☐ Sustained<br>☐ Overruled |

- 110 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 132. | Ellenberger Decl. ¶ 4: "I am familiar with the Santa Barbara-Ventura Chapter's membership records…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |
| 133. | Ellenberger Decl. ¶ 5: "Sierra Club has long engaged in efforts to support the transition away from oil…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal* | ☐ Sustained<br><br>☐ Overruled |

- 111 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.**   Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 134. | Ellenberger Decl. ¶ 6: " Personally, I moved to Santa Barbara County because I, along with my husband, wanted to spend our retirement outdoors, enjoying the beaches and coastal areas of our county…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.**   Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |
| 135. | Ellenberger Decl. ¶ 7: "We bought our home in Santa Barbara in September of 2015 in the immediate aftermath of the All-American Plains pipeline spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 136. | Ellenberger Decl. ¶ 8: "Sierra Club has a real concern about the risk of an oil spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, | ☐ Sustained<br><br>☐ Overruled |

- 113 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | and 801(b). | |
| 137. | Ellenberger Decl. ¶ 9: "Sierra Club also has an interest in public participation…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 138. | Ellenberger Decl. ¶ 10: "Sierra Club's members are harmed by the failure of the Fire Marshal…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is | |

- 114 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 139. | Ellenberger Decl. ¶ 11: "Sierra Club seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |
| 140. | Ellenberger Decl. ¶ 12: "Restarting the Las Flores Pipeline System would cause…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal* | ☐ Sustained<br><br>☐ Overruled |

- 115 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 141. | Ellenberger Decl. ¶ 13: "Sierra Club also seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |

- 116 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 142. | Ellenberger Decl. ¶ 14: "The Office of State Fire Marshal's decision to grant waivers…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |

### OBJECTIONS TO THE DECLARATION OF MICHAEL LYONS

Real Parties object to the declaration of Michael Lyons ("Lyons Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 143. | Lyons Decl. ¶ 1: "I am over eighteen years old. I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto." | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter | ☐ Sustained<br><br>☐ Overruled |

- 117 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | asserted. | |
| 144. | Lyons Decl. ¶ 2: "My current address is 223 West Figueroa Street, Unit A, Santa Barbara, California. I have lived in Santa Barbara County for fifty-six years." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |
| 145. | Lyons Decl. ¶ 3: "I have been a member of Get Oil Out! for twenty-six years; I remain a current member and am the current Board president." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |
| 146. | Lyons Decl. ¶ 4: "Founded in response to the devastating 1969 Santa Barbara Oil Spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 147. | Lyons Decl. ¶ 5: "Get Oil Out! has approximately 1,500 members…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias | ☐ Sustained  ☐ Overruled |

- 119 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | by the court against the Real Parties, and has no probative value. | |
| 148. | Lyons Decl. ¶ 6: "I am an avid outdoorsman and I frequently use, and recreate in and around, the area where the Santa Ynez Unit facilities are located…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br>☐ Overruled |
| 149. | Lyons Decl. ¶ 7: "I was in the Santa Barbara area when the Plains All American Pipeline failed…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 150. | Lyons Decl. ¶ 8: "Following the 2015 Plains All American Oil Spill, I received calls from people all over the world. I spent a lot of time responding to their questions and concerns…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |
| 151. | Lyons Decl. ¶ 9: "Because of the spill, I was not able to go to the beach…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of | ☐ Sustained<br><br>☐ Overruled |

- 121 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 152. | Lyons Decl. ¶ 10: "Get Oil Out! is concerned about Sable's operational and financial capacity to safely operate the Santa Ynez Unit or respond to an oil spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Speculation.** *Evid Code* § 702, 800, | |

- 122 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | and 801(b). | |
| 153. | Lyons Decl. ¶ 11: "Get Oil Out! also has an interest in public participation and informed decision-making. Our organization strives to educate and engage our members and the public when oil development activities threaten our community and the environment…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br>☐ Overruled |
| 154. | Lyons Decl. ¶ 12: "Get Oil Out's members are harmed by the failure of the Fire Marshal to conduct environmental review, solicit public comments, or hold a public hearing…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |

- 123 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 155. | Lyons Decl. ¶ 13: "Get Oil Out! seeks a preliminary injunction because our members live and recreate in and around the areas where the Santa Ynez Unit facilities are located…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, | ☐ Sustained<br><br>☐ Overruled |

- 124 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | n.3) | |
| 156. | Lyons Decl. ¶ 14: "Get Oil Out! also seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 157. | Lyons Decl. ¶ 15: "The Office of State Fire Marshal's decision to grant waivers…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine | |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |

### OBJECTIONS TO THE DECLARATION OF WALTER EDWARD MORTON

Real Parties object to the declaration of Walter Edward Morton ("Morton Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 158. | Morton Decl. ¶ 1: "I am over eighteen years old…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br><br>☐ Overruled |
| 159. | Morton Decl. ¶ 2: "My current address is 96 Willow Springs | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter | ☐ Sustained |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Court #202, Goleta, California…" | asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Overruled |
| 160. | Morton Decl. ¶ 3: "I have served as the Executive Director…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |
| 161. | Morton Decl. ¶ 4: "SBCK is a California nonprofit organization that was founded in 1999…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |

- 127 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 162. | Morton Decl. ¶ 5: "SBCK has members who live, work, and recreate throughout Santa Barbara County…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br>☐ Overruled |
| 163. | Morton Decl. ¶ 6: "SBCK's | **Hearsay.** Evid. Code, § 1200. The | ☐ Sustained |

- 128 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | interest in this case stems from our longstanding efforts…" | statement is an out of court statement offered for the truth of the matter asserted. | ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 164. | Morton Decl. ¶ 7: "I live in Goleta, the closest population center to the Santa Ynez Unit…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |

- 129 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 165. | Morton Decl. ¶ 8: "SBCK staff and members were impacted by the 2015 American All Plains oil spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br>☐ Overruled |
| 166. | Morton Decl. ¶ 9: "SBCK has a real concern about the risk of another oil spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 167. | Morton Decl. ¶ 10: "SBCK also has an interest in public participation and informed decision-making…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |

- 131 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 168. | Morton Decl. ¶ 11: "SBCK's members are harmed by the failure of the Fire Marshal…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |
| 169. | Morton Decl. ¶ 12: "SBCK seeks a preliminary injunction because our members live, work, and recreate…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 170. | Morton Decl. ¶ 13: "SBCK also seeks a preliminary injunction to ensure that no further action is taken…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |

- 133 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 171. | Morton Decl. ¶ 14: "The Office of State Fire Marshal's decision to grant waivers of pipeline safety laws…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |

**OBJECTIONS TO ENVIRONMENTAL DEFENSE CENTER'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF APPLICATION FOR STAY OR PRELIMINARY INJUNCTION**

Real Parties object to Environmental Defense Center's Request for Judicial Notice in Support of Application for Stay or Preliminary Injunction as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 172. | **Exhibit A** California Department of Fish and Wildlife (CDFW), *et al.*, Refugio Beach Oil Spill Final Damage Assessment and Restoration Plan/Environmental Assessment, dated | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau,* | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | June 2021 | 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 173. | **Exhibit C** Staff Report Recommending that the California Coastal Commission (CCC) issue a Cease and Desist Order (CDO), Restoration Order, and Administrative Civil Penalty to Sable Offshore Corp. ("Sable"), dated March 28, 2025 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is | ☐ Sustained<br><br>☐ Overruled |

- 135 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 174. | **Exhibit F** Notice of Violation from the Regional Water Quality Control Board to Sable, dated April 15, 2025. | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained ☐ Overruled |
| 175. | **Exhibit I** Excerpts from Draft Environmental Impact Report (EIR) and Environmental Impact Statement (EIS) for the Proposed Celeron/All American and Getty Pipeline Projects prepared by the California State Lands Commission (CSLC) and Bureau of Land | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Management, Department of the Interior (BLM) dated August 1984 | equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 176. | **Exhibit J** Excerpts from Final EIR and EIS for the Proposed Celeron/All American and Getty Pipeline Projects prepared by CSLC and BLM dated January 1985 | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 177. | **Exhibit K** Santa Barbara County ("County") Webpage "901/903 Replacement Pipeline Project" (last accessed July 11, 2025) | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is | ☐ Sustained<br>☐ Overruled |

- 137 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 178. | **Exhibit L** PHMSA Webpage "Pipeline Special Permits and State Waivers Overview" (last accessed July 11, 2025) | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). <br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained <br> ☐ Overruled |
| 179. | **Exhibit M** California Natural Resources Agency's (CNRA) summary of state regulation of crude oil pipelines in the County prepared and maintained by CNRA, last updated on June 4, 2025 (last accessed July 11, 2025) | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay | ☐ Sustained <br> ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 180. | **Exhibit N** Excerpt of PHMSA's "Guidelines for State Participating in the Pipeline Safety Program" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an | ☐ Sustained ☐ Overruled |

- 139 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
|     |                        | authentic, true, and accurate copy of the document purportedly attached. |        |

Dated:  July 15, 2025

Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
TREVOR LARGE

By: _____
              Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE
COMPANY

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

**PROOF OF SERVICE**

1.      I, Garrett Stanton, declare:

2.      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On July 15, 2025, I served the document **REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** on the interested parties in this action addressed as follows:  **See Attached Service List**

**I.**      ☒      BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 15, 2025, at Los Angeles, California.

_/s/ Garrett Stanton_
Garrett Stanton

- 141 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

**SERVICE LIST**

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA 94612

**ATTORNEYS FOR PETITIONERS**
CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION

Tel.:   (510) 844-7100
Fax:   (510) 844-7150
Email: jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:   (510) 844-7100
Fax:   (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
jfrankel@environmentaldefensecenter.org
trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:   (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:   (310) 620-5879
Email: djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

Trevor D. Large, Esq.
**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
820 State Street, 4th Floor
Santa Barbara, CA 93101

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:   (805) 966-7000
Email: TLarge@FLASllp.com

- 142 -

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/16/2025 5:47 PM
By: Narzralli Baksh , Deputy

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br> Respondents and Defendants, <br><br> and <br><br> SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, <br><br> Real Parties in Interest. | Case No.: 25CV02247 <br><br> **PETITIONERS AND PLAINTIFFS' RESPONSE TO REAL PARTIES IN INTERESTS' OBJECTIONS TO EVIDENCE SUBMITTED WITH REPLY BRIEF; DECLARATION OF LINDA KROP** <br><br> Date:     July 18, 2025 <br> Time:    10:00 a.m. <br> Dept.:    4 <br> Judge:   Honorable Donna D. Geck <br><br> Action Filed: April 15, 2025 <br> Trial: None Set |

1

Petitioners and Plaintiffs' Response to Real Parties in Interests' Objections to Evidence Submitted with Reply Brief

Petitioners and Plaintiffs Environmental Defense Center ("EDC"), Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (collectively, "Petitioners") hereby submit the following Response to the Objections filed by Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Real Parties") to evidence submitted in support of Petitioners' request for preliminary relief.

## I.   Petitioners Properly Submitted − and Resbumitted − with Their Reply to Rebut Evidence Raised by Real Parties in Their Opposition.

Real Parties contend that the Court should disregard all evidence that Petitioners submitted with their Reply, pointing primarily to *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522. While *Jay* does state that the "[t]he general rule of motion practice . . . is that new evidence is not permitted with reply papers," Real Parties omit from their papers important context and exceptions to that rule. (*Id.* at 1538.)

In *Jay*, defendants raised a new legal theory for the first time in their reply brief, and they submitted new evidence in support thereof. (*Id.* at 1534.) Because plaintiffs did not have an opportunity to address that new theory in their opposition, the court found that defendants had improperly proceeded. (*Id.* at 1538.) In short, the court observed that "Defendants' decision to wait until the reply briefs to bring forth *any* evidence at all, when the [plaintiffs] would have no opportunity to respond, was simply unfair." (*Id.*)

Despite Real Parties contentions, *Jay* did not state that submitting evidence on reply is strictly prohibited. In fact, the court in *Jay* specifically acknowledged that, "[t]o the extent defendants argue they had the right to file any reply declarations at all, *they are not wrong*." (*Id.* (emphasis added).) The court reasoned that reply evidence is admissible where it "fill[s] gaps in the evidence created by the . . . opposition." (*Id.*) As other courts have suggested, that is because "where evidence is 'submitted in direct response to proof adduced in opposition to a motion' it is not 'new.'" (*Zkey Invs., LLC v. Facebook Inc.* (C.D. Cal. 2016) 225 F.Supp.3d 1147, 1158.)

Importantly, unlike in *Jay*, Petitioners did not raise any new legal theories in their Reply. Petitioners merely responded to the arguments made by Real Parties in their Opposition and submitted evidence bearing on their *initial* claims. Real Parties had every opportunity to respond to Petitioners' arguments — five weeks, in fact — and submit countervailing evidence. The evidence submitted by

Petitioners on Reply was merely offered to rebut that evidence — i.e., "fill[] in gaps created by the . . . opposition." (*Id.* at 1538.) That is proper on reply, and indeed, is germane to its purpose.

For example, the declaration of Dr. Paasha Mahdavi, regarding foreign import, consumer market, and greenhouse gas impacts (or lack thereof) associated with the Santa Ynez Unit, directly responds to Real Parties' *numerous* expert declarations opining that "[i]f Sable's oil production cannot be supplied through the Pipelines, California will become increasingly reliant on foreign oil, resulting in significantly higher greenhouse gas . . . [and exacerbating] California's ongoing oil crisis, leading to higher gasoline prices, lost jobs, lost tax revenue, lost royalties, and higher prices across California's economy." (Real Parties' Opp. at 20-21 (citing Leininger and Mische Decs.).) Declarations from Petitioners' client representatives were similarly submitted to rebut Real Parties' generalizations that "Petitioners, the public, and the environment would suffer no harm if no injunction is issued," and related evidence submitted in support thereof. (Real Parties' Opp. at 7, 20 (citing Leininger Dec.).)

Petitioners' Request for Judicial Notice was likewise submitted to fill in gaps created by Real Parties' opposition. Importantly, however, Petitioners' request was actually a *resubmission* of their prior Request for Judicial Notice, which was filed in support of their initial application for preliminary relief. Since it was unclear to Petitioners if that request would still be considered by the Court, Petitioners resubmitted it out of an abundance of caution and noted as much in the request itself. Save for the addition of Exhibit N, which refutes Real Parties' arguments regarding the interpretation of 49 U.S.C. section 60118, the two requests are identical. Real Parties have thus had adequate opportunity to consider the proffered documents, many of which Real Parties themselves submitted as attachments to their expert declarations.

Accordingly, the evidence that Petitioners submitted with their Reply can, and should, be considered by the Court.

**II.    Petitioners' Request for Judicial Notice is Otherwise Proper.**

As to Petitioners' Request for Judicial Notice, Real Parties additionally argue that the Court should deny the request because the proffered documents were not properly authenticated.

The documents proffered by Petitioners are agency records that are publicly accessible at each respective agency's website and can be readily verified by the Court. The authenticity of these

Petitioners and Plaintiffs' Response to Real Parties in Interests' Objections to Evidence Submitted with Reply Brief

documents is not subject to reasonable dispute, and indeed, Real Parties do not appear to argue as much. In fact, Real Parties submitted many of the same documents in support of their Opposition, including Exhibits B, G, H, I, and J of Petitioners' Request for Judicial Notice. The attached Declaration of Linda Krop explains where each document can be found, and it resolves any purported authentication issues raised by Real Parties.

All that is required for the Court to take judicial notice of a document is that Petitioners "furnish the court with sufficient information to enable it to [do so]." (Ev. Code § 453(b).) Petitioners' Request for Judicial Notice describes in detail what each proffered document is, what agency it was prepared by, and, where not self-evident, why it is relevant to this matter. Thus, Petitioners have more than met their burden to provide the Court with "sufficient information" here, and the Court should accordingly grant their request.

**III.    Real Parties' Objections to the Declaration of Dr. Mahdavi are Without Merit.**

**A.    That Real Parties Do Not Have an Opportunity to Depose Dr. Mahdavi Absent a Continuance Is Not Grounds to Strike His Testimony.**

First, Real Parties have already made a nearly identical request to strike the Declaration of Richard Kuprewicz, Petitioners' expert pipeline safety consultant, to no avail. As Petitioners previously pointed out, premature expert discovery is generally prohibited. (*See County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1456-57 (recognizing that expert discovery is generally "not appropriate until and unless" experts are formally designated pursuant to Code of Civil Procedure section 2034.010, *et seq*).) The only recognized exception to that rule is limited to summary judgment proceedings and does not apply here. (*See St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531.) Thus, Real Parties are not being deprived of any right to depose Dr. Mahdavi.

Nor do Real Parties have some sort of "fundamental right to cross-examine" Dr. Mahdavi under the circumstances — an argument that was likewise previously briefed by Petitioners and which the Court was not persuaded by. None of the cases Real Parties cite support their position or even bear a resemblance to the pending proceeding:

- *August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52. This was a driver's license revocation case in which the court found that due process was *satisfied* even though charges

4

against the driver were brought ex parte and the arresting officer did not appear at the hearing. The case is entirely inapposite and does not once mention discovery procedures or the reliance on declarations in support of an application for injunctive relief.

- *Fost v. Marin County Superior Court* (2000) 80 Cal.App.4th 724. Real Parties make much of this case, citing it for the proposition that they have an "absolute right" to cross-examine — *not depose —* Mr. Kuprewicz. *Fost* addressed the right of a criminal defendant to cross-examine a witness *at trial*; it did not discuss the propriety of discovery procedures or the reliance on declarations in support of an application for injunctive relief. This case has no bearing on whether Real Parties had a right to depose Dr. Mahdavi.

- *In re Marriage of Swain* (2018) 21 Cal.App.5th 830. In this spousal support case, the court held that, under a specific provision of the Family Code, a declaration was inadmissible and could not replace live, competent testimony. This case, however, specifically addressed evidence permitted in family law cases and did not address the propriety of submitting a declaration in support of an application for a preliminary injunction.

Additionally, in advancing this argument, Real Parties conflate the right of cross-examination at trial with the limited right of expert discovery. Law and motion practice does not involve live testimony unless expressly authorized by the Court; it is generally limited to an exchange of declarations. (*See* Cal. Rules of Court, rule 3.1306(a) ("Evidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown.").)

Indeed, it is well settled that a Court may issue an injunction based on declarations. (*See Fleishman*, 102 Cal.App.4th 350, at 356-57 (finding that the trial court properly issued an injunction based on a verified complaint and a declaration) (quoting *Ancora-Citronelle Corp. v. Green* (1974) 41 Cal.App.3d 146, 150 (An injunction may be permitted "upon a sufficient factual showing, by someone having knowledge thereof, made under oath or by declaration under penalty of perjury.")).) In *Fleishman*, the court rejected the notion that a preliminary injunction can only issue after a full evidentiary hearing. (*Id.* at 356.)

Petitioners and Plaintiffs' Response to Real Parties in Interests' Objections to Evidence Submitted with Reply Brief

As usual, the Court may consider both the declaration of Dr. Mahdavi as well as the declarations submitted by Real Parties in reaching a decision on whether to issue a stay or injunction.

**B.**     ***Sargon Enterprises Inc. v. University of Southern California* (2012) 55 Cal.4th 747**

Real Parties overstate the holdings from *Saigon* and its progeny, advancing arguments that, in essence, bear on the *weight* the Court ought to afford Dr. Mahdavi's testimony, not its admissibility. By couching these arguments as evidentiary objections, they improperly invade the province of the Court's role as fact-finder.

In *Sargon*, the Supreme Court explained the limited role courts play as gatekeepers of expert opinion testimony. That role is limited to assessing an opinion's reliability, and the court's decision on that matter is entrusted to its sound discretion. As the Supreme Court explained, the role of the court is to "simply determine whether the matter relied on can provide a reasonable basis for the opinion or whether that opinion is based on a leap of logic or conjecture." (*Id*. at 772.) In particular, the court must "determine whether, as a matter of logic, the studies and other information cited by experts adequately support the conclusion that the expert's general theory or technique is valid." (*Id*. (quoting Imwinkelried & Faigman, *Evidence Code Section 802: The Neglected Key to Rationalizing the California Law of Expert Testimony* (2009) 42 Loyola L.A. L.Rev. 427, 449).)

The Supreme Court later clarified the scope of *Sargon*'s holding in *People v. Veametahau* (2020) 9 Cal.5th 16, 34 at n.6, a case regarding drug identification by a criminology expert:

> [I]t is the jury's role to decide the weight to accord to the expert testimony and "courts must . . . be cautious in excluding expert testimony" so as not to usurp that role. ([*Sargon*, 55 Cal.4th 747, 772.]) Although "'[t]here is no bright line that divides evidence worthy of consideration by a jury . . . from evidence that is not,'" many of defendant's arguments concerning reliability may be better understood as directed at the weight of the expert testimony, not its admissibility. ([*Id*. at p. 769].)

It is indisputable that Dr. Mahdavi is an expert in his field. (*See* Mahdavi Declaration, Exhibit A.) What must be analyzed under *Sargon* is whether his conclusions have a proper basis. Dr. Mahdavi plainly states in his declaration the underlying bases of his conclusions, including his review of historical date on oil supply offers, Sable's 2024 investor reports, California agency energy reports, and a number of economic and statistics studies. (Mahdavi Dec. ¶ 5.) Real Parties do not argue that any of the documents upon which Dr. Mahdavi relies are inaccurate. This is enough to satisfy the Court's

gatekeeping role highlighted by *Sargon*. Real Parties are free to argue, as a separate issue, that the conclusions of their expert witnesses are entitled to greater weight than those of Dr. Mahdavi.

### C. Real Parties' Hearsay Objections are Meritless.

Under Evidence Code section 801, experts may rely upon hearsay, and indeed upon any material on which experts in the field at hand traditionally rely. Despite this rule, Real Parties raise numerous hearsay objections to Dr. Mahdavi's declaration regarding the materials upon which he relies, while, at the same time, submitting their own declarations in which their experts cite to material that would normally constitute inadmissible hearsay. (*See, e.g.,* Leininger Dec., Exhs. A (an excerpt from an environmental review document), B (final EIR), and C (draft EIR); Rosenfeld Dec., Exhs. C (federal corrective action order) D (consent decree), and G (PHMSA failure report).) Further, one expert's speculation is another person's educated guesswork about the future, as is demonstrated by the expert declarations submitted by Real Parties in which experts opine about future oil supply, California and global prices, and Sable's future revenues.

Moreover, Dr. Mahdavi's expert report, attached to his declaration as Exhibit B, is not hearsay. "As a general rule, out-of-court statements offered to support an expert's opinion are not hearsay because they are not offered for the truth of the matter asserted. Instead, they are offered for the purpose of assessing the value of the expert's opinion." (*People v. Dean* (2009) 174 Cal.App.4th 186, 193.)

### IV. <u>Remaining Objections</u>

Real Parties raise hundreds of boiler-plate, conclusory, and repetitive objections to the various declarations submitted by Petitioners, objecting to nearly every single statement. That includes boilerplate hearsay and relevance objections to statements merely setting forth who the declarant is, where they reside, their age, and that they have personal knowledge of the facts stated therein.

Where a trial court is confronted "with a large number of nebulous evidentiary objections, a fair sample of which appear to be meritless, the court can properly overrule . . . *all* of the objections on the ground that they constitute oppression of the opposing party and an imposition on the resources of the court." (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 764 n.6.) The Court is confronted with that situation here and should overrule Real Parties' objections in their entirety.

//

Petitioners and Plaintiffs' Response to Real Parties in Interests' Objections to Evidence Submitted with Reply Brief

Dated: July 16, 2025

Respectfully submitted,



Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

Petitioners and Plaintiffs' Response to Real Parties in Interests' Objections to Evidence Submitted with Reply Brief

**DECLARATION OF LINDA KROP**

I, Linda Krop, hereby declare as follows:

1. I am Chief Counsel for the non-profit, public interest law firm Environmental Defense Center (EDC) and am counsel for Petitioners in this action. I am duly licensed to practice law before this Court. I have personal knowledge of the following and, if called as a witness, would and could testify competently thereto.

2. Exhibit A of Petitioner's Request for Judicial Notice is a true and accurate copy of a report prepared and published by the California Department of Fish and Wildlife, California State Lands Commission, California Department of Parks and Recreation, Regents of the University of California, U.S. Department of the Interior, U.S. Fish and Wildlife Service, and National Oceanic and Atmospheric Administration (NOAA), which are state and federal agencies. The report quantifies and describes the injuries to natural resources resulting from the 2015 Refugio Oil Spill and outlines the restoration projects intended to compensate the public for those injuries. I downloaded the report from NOAA's website at https://www.darrp.noaa.gov/oil-spills/22-million-approved-restore-habitats-wildlife-and-recreation-impacted-refugio-beach-oil, where it is publicly accessible.

3. Exhibit B of Petitioner's Request for Judicial Notice is a true and accurate copy of the Failure Investigation Report prepared and published by the U.S. Department of Transportation (DOT) Pipeline and Hazardous Materials Safety Administration (PHMSA). The report includes PHMSA's investigation and findings regarding the cause of the Line 901 pipeline oil spill on May 19, 2015. I downloaded the report from DOT's website at https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/docs/PHMSA_Failure_Investigation_Report_Plains_Pipeline_LP_Line_901_Public.pdf, where it is publicly accessible.

4. Exhibit C of Petitioner's Request for Judicial Notice is a true and accurate copy of a report prepared and published by the California Coastal Commission (CCC) in support of a Cease and Desist Order (CDO), Restoration Order, and Administrative Civil Penalty to Sable Offshore Corp. The report sets forth Sable's violations of the Coastal Act and the impacts caused by such violations. I downloaded the report from the CCC's website at https://www.coastal.ca.gov/meetings/agenda/#/2025/4, where it is publicly accessible.

5.      Exhibit D of Petitioner's Request for Judicial Notice is a true and accurate copy of a letter prepared by PHMSA in response to the Office of the State Fire Marshal's (OSFM) State Waiver for the CA-324 pipeline. The letter states that PHMSA did not object to OSFM's granting of the waiver. I downloaded the report from PHMSA's website at https://www.regulations.gov/document/PHMSA-2025-0002-0007, where it is publicly accessible.

6.      Exhibit E of Petitioner's Request for Judicial Notice is a true and accurate copy of a letter prepared by PHMSA in response to OSFM's State Waiver for the CA-325A/B pipeline. The letter states that PHMSA did not object to OSFM's granting of the waiver. I downloaded the report from PHMSA's website at https://www.regulations.gov/document/PHMSA-2025-0003-0006, where it is publicly accessible.

7.      Exhibit F of Petitioner's Request for Judicial Notice is a true and accurate copy of a Notice of Violation issued to Sable for continuous violations of state law associated with its construction work on the Las Flores Pipeline System. The Notice was emailed to me on April 21, 2025, at 8:12 a.m. by an environmental scientist in the employ of the Regional Water Quality Control Board and acting in her official capacity.

8.      Exhibit G of Petitioner's Request for Judicial Notice is a true and accurate copy of the State Waiver that OSFM issued to Real Parties for pipeline CA-324. I downloaded the report from OSFM's website at https://34c031f8-c9fd-4018-8c5a-4159cdff6b0d-cdn-endpoint.azureedge.net/-/media/osfm-website/what-we-do/pipeline-safety-and-hazardous-materials/pathways-to-restoring-pipeline-docs/state-waiver-sable-ca324-osfm-line-0015-lod.pdf?rev=be79b9ad20814e34a8d57e8c94f922e4&hash=A1A9FE56C8A57A646CF4524994C5C22F, where it is publicly accessible.

9.      Exhibit H of Petitioner's Request for Judicial Notice is a true and accurate copy of the State Waiver that OSFM issued to Real Parties for pipeline CA-325. I downloaded the report from OSFM's website at  https://34c031f8-c9fd-4018-8c5a-4159cdff6b0d-cdn-endpoint.azureedge.net/-/media/osfm-website/what-we-do/pipeline-safety-and-hazardous-materials/pathways-to-restoring-pipeline-docs/state-waiver-sable-ca325ab-osfm-line-0001-

lod.pdf?rev=556af39b35804434b52e1272bb20b0ed&hash=251194D16C74105DCF520F69669072FC, where it is publicly accessible.

10. Exhibit I of Petitioners' Request for Judicial Notice are true and accurate excerpts from the Draft Environmental Impact Report (EIR) and Environmental Impact Statement (EIS) for the Proposed Celeron/All American and Getty Pipeline Projects prepared by the California State Lands Commission (CSLC) and Bureau of Land Management, Department of the Interior (BLM) dated August 1984. I downloaded the Draft EIR/EIS from the County of Santa Barbara's website at https://cosantabarbara.app.box.com/s/gc3vhh8ns8aiwketnq35vwbehnhre672, where it is publicly accessible.

11. Exhibit J of Petitioners' Request for Judicial Notice are true and accurate excerpts from the Final EIR/EIS for the Proposed Celeron/All American and Getty Pipeline Projects prepared by CSLC and BLM dated January 1985. I downloaded the Final EIR/EIS from the County of Santa Barbara's website at https://cosantabarbara.app.box.com/s/lkl9oo9xdsaangevdp6pasfo0cmimvlt, where it is publicly accessible.

12. Exhibit K is a true and accurate copy of information posted on a County of Santa Barbara webpage dedicated to the 901/903 Replacement Pipeline Project. I downloaded the information from the County's website at  https://www.countyofsb.org/3801/901903-Replacement-Pipeline-Project, where it is publicly accessible.

13. Exhibit L of Petitioner's Request for Judicial Notice is a true and accurate copy of information posted on a PHMSA webpage that provides an overview of special permits (the federal equivalent of state waivers). I downloaded the information from PHMSA's website at https://www.phmsa.dot.gov/pipeline/special-permits-state-waivers/special-permits-and-state-waivers-overview, where it is publicly accessible.

14. Exhibit M of Petitioner's Request for Judicial Notice is a true and accurate copy of a California Natural Resources Agency (CNRA) record prepared and maintained by CNRA that summarizes state regulations for crude oil pipelines in Santa Barbara County. I downloaded the record from CNRA's website at https://resources.ca.gov/-/media/CNRA-

Website/Files/NewsRoom/Educational-Portal/Pipeline-Summary-060425.pdf, where it is publicly accessible.

15.     Exhibit N of Petitioner's Request for Judicial Notice is a true and accurate copy of an excerpt from guidelines published by PHMSA entitled "Guidelines for States Participating in the Pipeline Safety Program." I downloaded the report from PHMSA's website at https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/2024-06/2024-State-Guidelines-with-Appendices-2023-12-18.pdf, where it is publicly accessible.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 16th day of July, 2025, in Santa Barbara, California.

_____

Linda Krop

Declaration of Linda Krop

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On July 16, 2025, I served the above document(s) described as **PETITIONERS AND PLAINTIFFS' RESPONSE TO REAL PARTIES IN INTERESTS' OBJECTIONS TO EVIDENCE** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒     **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 16, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

1
Proof of Service

**SERVICE LIST**

| | |
|---|---|
| Michael S. Dorsi<br>Michael.Dorsie@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEY FOR RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; and Daniel Berlant, in his official capacity as State Fire Marshal |
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBALD & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 139056 | FOR COURT USE ONLY |
|---|---|---|

NAME: Jeffrey D. Dintzer
FIRM NAME: Alston & Bird LLP
STREET ADDRESS: 350 South Grand Avenue, 51st Floor
CITY: Los Angeles          STATE: CA     ZIP CODE: 90071-1410
TELEPHONE NO.: (213) 576-1000     FAX NO.: (213) 576-1100
EMAIL ADDRESS: jeffrey.dintzer@alston.com
ATTORNEY FOR (name): Sable Offshore Corp., Pacific Pipeline Company

**ELECTRONICALLY FILED**
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/17/2025 4:10 PM
By: Laura Kenny , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
STREET ADDRESS: 1100 Anapaca St.
MAILING ADDRESS: 1100 Anapaca St.
CITY AND ZIP CODE: Santa Barbara, 93101
BRANCH NAME: Anapaca Division

PLAINTIFF/PETITIONER: Environmental Defense Center et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one):  [X] **UNLIMITED CASE**          [ ] **LIMITED CASE** <br> (Amount demanded          (Amount demanded is $35,000 <br> exceeds $35,000)          or less) | 25CV02247 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: August 1, 2025          Time: 8:30 a.m.     Dept.: 4          Div.:          Room:

Address of court (if different from the address above):

[ ]   **Notice of Intent to Appear by Telephone,  by (name):**

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a.  [X]   This statement is submitted by party (name): Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.
   b.  [ ]   This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a.  The complaint was filed on (date):   April 15, 2025
   b.  [ ]   The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a.  [X]   All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b.  [ ]   The following parties named in the complaint or cross-complaint

      (1) [ ]   have not been served (specify names and explain why not):

      (2) [ ]   have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ]   have had a default entered against them (specify names):

   c.  [ ]   The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a.  Type of case in  [X] complaint     [ ] cross-complaint     (Describe, including causes of action):
      Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

Page 1 of 5

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, <br> rules 3.720–3.730 <br> www.courts.ca.gov |
|---|---|---|

CM-110

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief)*:
See Attachment 4b.

[ **x** ] *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request [ ] a jury trial [ **x** ] a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  [ ] The trial has been set for *(date):*

b.  [ **x** ] No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  [ **x** ] days *(specify number):* 1

b.  [ ] hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial [ **x** ] by the attorney or party listed in the caption [ ] by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:            f.  Fax number:

e.  Email address:            g.  Party represented:

[ **x** ] Additional representation is described in Attachment 8.

9.  **Preference**

[ **x** ] This case is entitled to preference *(specify code section):* Public Resources Code section 21167.1(a)

10.  **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel [ **x** ] has [ ] has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party [ ] has [ ] has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) [ ] This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) [ ] Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) [ ] This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Center for Biological Diversity et al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02247 |

**11. Insurance**

a. ☐  Insurance carrier, if any, for party filing this statement *(name):*

b.  Reservation of rights: ☐ Yes  ☐ No

c. ☐  Coverage issues will significantly affect resolution of this case  *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy  ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒  There are companion, underlying, or related cases.

   (1)  Name of case: Center for Biological Diversity et al. v. Cal. Dept. of Forestry & Fire Protection et al.

   (2)  Name of court: Santa Barbara Superior Court

   (3)  Case number:  25CV02244

   (4)  Status: Pending

   ☐  Additional cases are described in Attachment 13a.

b. ☐  A motion to ☐ consolidate ☐ coordinate  will be filed by *(name party):*

**14. Bifurcation**

☐  The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☒  The party or parties expect to file the following motions before trial  *(specify moving party, type of motion, and issues):*
Real Parties intend to demur to the Petition/Complaint and move to strike relief sought in the Petition/Complaint.

**16. Discovery**

a. ☐  The party or parties have completed all discovery.

b. ☐  The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐  The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated  *(specify):*

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
On June 12, 2025, the parties met and conferred about Real Parties' anticipated demurrer, the status of the administrative record, case consolidation, and CEQA settlement. The parties will continue to meet and confer as needed.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 2_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: July 17, 2025

Jeffrey D. Dintzer
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CM-110 [Rev. January 1, 2024]               **CASE MANAGEMENT STATEMENT**                               **Page 5 of 5**

**Attachment 4b**

4.b. Provide a brief statement of the case, including any damages:


Plaintiffs and Petitioners Environmental Defense Center et al. ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees.

1

**Attachment 8**

Real Parties in Interest will be represented by the following attorneys:

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:      (213) 576-1000
Facsimile:      (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
Telephone:      (310) 620-5879
Facsimile:      (310) 620-5899

**FAUVER LARGE ARCHIBALD & SPRAY**
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flasllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone:      (805) 966-7000
Facsimile:      (805) 966-7227

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On July 17, 2025, I served the document(s) **CASE MANAGEMENT STATEMENT** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☐ (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐ (BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒ BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 17, 2025, at Los Angeles, California.

_____
             */s/ Kim Niz*
                Kim Niz

**SERVICE LIST**

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA  94612

**ATTORNEYS FOR PETITIONERS**
CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION

TEL.:    (510) 844-7100
FAX:    (510) 844-7150
Email:    jteelsimmonds@biologicaldiversity.org
        depettit@biologicaldiversity.org
        tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
        jfrankel@environmentaldefensecenter.org
        trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
        benjaminhanelin@paulhastings.com
        natalierogers@paulhastings.com

Trevor D. Large, Esq.
**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
820 State Street, 4ᵗʰ Floor
Santa Barbara, CA  93101

**ATTORNEYS FOR REAL PARTIES IN I INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 996-7000
Email:  TLarge@FLASllp.com

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered: 07/18/2025                    Time:   10:00 AM
Judicial Officer:    Donna D Geck
Deputy Clerk:        Maria Vidal                  Dept:   SB Dept 4
Bailiff/Court Officer:   Kenneth Toste            Case No: 25CV02247
Court Reporter:      Marie Castro

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

Linda Krop              Petitioner's Attorney
Jeremy Frankel          Petitioner's Attorney
Michael Dorsi           Respondent's Attorney
Jeffrey Dintzer         Attorney for Real Party in Interest
Garrett Stanton         Attorney for Real Party in Interest
Trevor Large            Attorney for Real Party in Interest

---

**NATURE OF PROCEEDINGS***:  **Motion: Compel re Deposition of Richard B Kuprewicz; Motion: Strike; Order to Show Cause and TRO**

Counsel presented argument.

The Court adopted the tentative ruling as follows:

**RULING**:


(1)      The applications of petitioners in case numbers 25CV02244 and 25CV02247 for issuance of preliminary injunctions are, respectively, granted in part. The applications are granted to enjoin, pending the disposition of these proceedings or further order of the court, the restart of the Las Flores Pipelines, as herein defined, until 10 court days following the filing and service of notice by or on behalf of real parties in interest Sable Offshore Corp., and Pacific Pipeline Company (collectively, Sable) that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree identified herein. To be effective to commence the 10-court-day period, such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025. The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing or the date of service. The temporary restraining order remains in place until a written order of the court is entered on this preliminary injunction.

(2)      On or before July 25, 2025, petitioners in each case shall lodge with the court an order for signature and filing.

---

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

(3)      The court fixes the undertaking required by Code of Civil Procedure section 529 in the amount of $1,000.00, to be filed in each case by the respective petitioners. Petitioners shall file such undertaking on or before July 25, 2025.

(4)      For the reasons set forth herein, the motion of Sable (case No. 25CV02244) to compel the deposition of Richard B. Kuprewicz, the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions, the motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz, and the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions are all denied.

---

(1)      OSC re Preliminary Injunction

These are two related cases involving the same underlying incidents and activity. Pursuant to the parties' stipulation, the responding parties and real parties in interest have filed the same brief addressing both cases in each of these cases and the respective petitioners have filed reply papers in each of their respective cases. The court therefore will address the orders to show cause re issuance of preliminary injunctions (OSCs) together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

The parties have submitted voluminous evidence in support of, and in opposition to, these OSCs. The court has reviewed all of the papers presented by the parties, and has relied only upon admissible evidence in making this ruling. The discussion herein is not intended to be exhaustive, but to provide context for the court's analysis and ruling.

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a

wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (Rusch decl., ¶ 33 & exhibit N [the Federal Consent Decree].)

The Federal Consent Decree includes the following provisions:

"1.      State Waivers for Lines 901, 903, and 2000 (not to include any replacement lines):

"A.      Prior to restarting Line 901, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 901. Plains must receive a State Waiver from the OSFM prior to restarting Line 901.

"B.      Prior to restarting non-operational segments of Line 903, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic

protection on Line 903. Plains must receive a State Waiver from the OSFM prior

to restarting Line 903.

"C.      Within 90 days of entry of the Consent Decree (CD), Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. The State Waiver shall apply to the currently operational segment of Line 903 from Pentland to Emidio.

"D.      Within 90 days of entry of the CD, Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 2000.

"E.      To the extent that a State Waiver directly incorporates terms identified in section 4 (Integrity Management) below, as being applicable to Lines 901, 903, or 2000, Plains shall not contest the inclusion of those terms in the relevant State Waiver. Plains reserves its rights to contest on any grounds any additional terms that the OSFM may require as part of each State Waiver if one is received. Nothing in this CD shall be construed to limit the authority of the OSFM to require additional terms or conditions in the State Waiver. Further, nothing in the State Waiver shall be construed to limit the applicability of the terms set forth in the CD.

"2.      Replacement, Restart, or Abandonment of Lines 901 and 903:

"A.      Plains shall replace the existing Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland with non-insulated pipe, if Plains is able to timely obtain: (1) agreements from shippers to transport sufficient quantities of product to make the cost of replacing the segments economically viable; (2) the Federal, State, and Local permits that may be required; and (3) whatever additional rights are needed, including rights-of-way that may be needed from landowners. Obtaining required commercial commitments, permits, rights-of- way, and any other rights necessary for replacement is the sole responsibility of

Plains.

"1.      On any replacement segments of Lines 901 or 903, Plains shall, prior to commencing operation of such segment(s):

"a.      Test for potential AC/DC interference. Where potential AC/DC interference exists, proper mitigation of interference shall be designed and installed during construction of replacement lines.

"b.      Conduct a close interval survey (CIS) and AC/DC interference survey.

"c.      Based on the CIS and AC/DC interference surveys, place additional cathodic-protection test stations at locations where the surveys demonstrate potential cathodic-protection deficiencies, following review and consultation with the OSFM regarding proposed test station locations.

"B.      As an alternative to replacement of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may restart the existing pipelines in accordance with the CD (including Appendix D) and applicable law.

"C.      As an alternative to replacement or restart of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may abandon all or any segments in accordance with all applicable laws and regulations." (Federal Consent Decree, appen. B, art. I, §§ 1, 2.)


In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)


In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)


In May 2024, Sable began conducting repair and maintenance activities to the Las Flores Pipelines. (Rusch decl., ¶ 5.) According to Sable, these activities were completed pursuant to previously granted coastal development permits, approvals, and EIR. (*Ibid.*)


On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

---

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id.* & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (Rusch decl., ¶ 7 & exhibits B, C.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (Rusch decl., ¶ 9 & exhibit E.)

On April 2, 2025, OSFM issued letters noting its receipt of PHMSA's decision stating that it has no objection to granting the State Waivers. (Rusch decl., ¶ 10 & exhibits F, G.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On June 3, 2025, the court heard petitioners' ex parte applications for an administrative stay, or for an OSC re preliminary injunction and temporary restraining order (TRO). The court granted the petitioners' requests for a TRO and set a hearing on the OSCs for this date.

The applications for issuance of a preliminary injunction are opposed by OSFM and by Sable.

**Analysis:**

---

**MINUTE ORDER**

Notwithstanding the issuance of the TRO, the burden is on petitioners, as the parties seeking injunctive relief, to show all elements necessary to support issuance of a preliminary injunction. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.) A preliminary injunction is available "[w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action." (Code Civ. Proc., § 526, subd. (a)(2).)

"The trial courts consider two interrelated questions in deciding whether to issue a preliminary injunction: 1) are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant; and 2) is there a reasonable probability that the plaintiffs will prevail on the merits. [Citations.] '[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.]" (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206.)

    (A)    Likelihood of Success on the Merits

Petitioners raise multiple claims in their petitions that separately could support issuance of an injunction. It is therefore necessary to address these claims in turn.

    (i)    CEQA

Petitioners each assert a claim under CEQA based upon OSFM's issuance of the State Waivers without preparing environmental documentation, without providing public notice, and without providing an opportunity for public comment. (CBD Petition, ¶¶ 128-129; EDC Petition, ¶ 224.)

"[CEQA] and the regulations implementing it (Cal. Code Regs., tit. 14, § 15000 et seq.) embody California's strong public policy of protecting the environment. 'The basic purposes of CEQA are to: [¶] (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved.' [Citation.]" (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285–286 (*Tomlinson*).)

"To achieve these goals, CEQA and the implementing regulations provide for a three-step process. In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency. (§ 21065.)" (*Tomlinson, supra*, 54 Cal.4th at p. 286.)

"The second step of the process is required if the proposed activity is a 'project.' The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption (§ 21080) or a categorical exemption set forth in the regulations (§ 21084, subd. (a); Cal. Code Regs., tit. 14, § 15300). A categorically exempt project is not subject to CEQA, and no further environmental review is required. [Citations.] If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' [Citations.] Otherwise, the agency must proceed to the third step, which entails preparation of an environmental impact report before approval of the project. (§§ 21100, subd. (a), 21151, subd. (a).)" (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

CBD asserts that restarting the Las Flores Pipelines by issuance of the State Waivers is a "project" under CEQA requiring environmental review. (CBD Application, at pp. 21-23.) OSFM and Sable argue that the issuance of the State Waivers is not a "project" or is otherwise not subject to CEQA.

" 'Project' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] … [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Pub. Resources Code, § 21065.)

"The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (Cal. Code Regs., tit. 14, § 15378, subd. (c).)

Under this definition, the issuance of the State Waivers does not appear to constitute a "project" separately subject to CEQA review. The State Waivers would at most constitute a separate governmental approval for the underlying activity, which is the restart of the Las Flores Pipelines. The court concludes that the issuance of the State Waivers does not itself cause a change or authorize a change in the environment. (See *Simons v. City of Los Angeles* (1976) 63 Cal.App.3d 455, 466.)

If the State Waivers were considered more broadly, i.e., as a proxy for the restart of the Las Flores Pipelines, the resolution under CEQA is not clear. OSFM and Sable argue that, in such instance, the categorical existing facilities exemption applies.

"Class 1 consists of the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of existing or former use. The types of 'existing facilities' itemized below are not intended to be all-inclusive of the types of projects which might fall within Class 1." (Cal. Code Regs., tit. 14, § 15301; see also Pub. Resources Code, § 21084; Cal. Code Regs., tit. 14, § 15300.)

"Examples include but are not limited to: [¶] … [¶] (d) Restoration or rehabilitation of deteriorated or damaged structures, facilities, or mechanical equipment to meet current standards of public health and

safety, unless it is determined that the damage was substantial and resulted from an environmental hazard such as earthquake, landslide, or flood." (Cal. Code Regs., tit. 14, § 15301, subd. (d).)

An issue now before the California Supreme Court is whether "negligible" in this exemption pertains to a negligible change in use or to a change that presents a negligible risk of environmental harm. (*Sunflower Alliance v. Department of Conservation* (2024) 105 Cal.App.5th 771, review granted Dec. 18, 2024, S287414 (*Sunflower*).) Under broader circumstances, this issue may bear upon the application of the exemption. But as the issue is presented here, such analysis is premature because the State Waivers are not themselves directly or indirectly causing change to the environment.

EDC, in particular, focuses its argument on the need for updated environmental review:

"When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs:

        "(a)    Substantial changes are proposed in the project which will require major revisions of the environmental impact report.

        "(b)    Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report.

        "(c)    New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." (Pub. Resources Code, § 21166.)

"When an EIR has been certified or a negative declaration adopted for a project, no subsequent EIR shall be prepared for that project unless the lead agency determines, on the basis of substantial evidence in the light of the whole record, one or more of the following:

        "(1)    Substantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects;

        "(2)    Substantial changes occur with respect to the circumstances under which the project is undertaken which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects; or

        "(3)    New information of substantial importance, which was not known and could not have been known with the exercise of reasonable diligence at the time the previous EIR was certified as complete or the negative declaration was adopted, shows any of the following:

                "(A)    The project will have one or more significant effects not discussed in the previous EIR or negative declaration;

                "(B)    Significant effects previously examined will be substantially more severe than shown in the previous EIR;

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

"(C)    Mitigation measures or alternatives previously found not to be feasible would in fact be feasible and would substantially reduce one or more significant effects of the project, but the project proponents decline to adopt the mitigation measure or alternative; or

"(D)    Mitigation measures or alternatives which are considerably different from those analyzed in the previous EIR would substantially reduce one or more significant effects on the environment, but the project proponents decline to adopt the mitigation measure or alternative."

(Cal. Code Regs., tit. 14, § 15162, subd. (a).)

EDC argues that a subsequent EIR is required because: (1) operating the pipeline system without an effective cathodic protection system throughout the entire length of the pipeline constitutes a change in the project that increases the risk and severity of impacts, requiring major revisions to the 1985 EIR; (2) the failure of the pipeline system's cathodic protection system and resulting corrosion constitutes a change in circumstances; (3) it was only after the 2015 oil spill that the pipeline system was discovered to lack effective cathodic protection, which constitutes new information showing that the risk of an oil spill is substantially more severe than previously determined.

The petitioners rely largely upon the declaration and reports of expert Richard Kuprewicz for evidence regarding pipeline safety. The testimony of Kuprewicz is the subject of other motions also pending before the court (discussed below) based in part upon Kuprewicz's present unavailability to be subject to a deposition. For purposes of these motions, the court will consider Kuprewicz's evidence with Kuprewicz's unavailability going to the weight of the evidence in the context of these applications for preliminary injunctions.

"After an initial EIR is certified, CEQA establishes a presumption against additional environmental review. An agency has jurisdiction to prepare a subsequent or supplemental EIR only if the agency grants a 'discretionary' approval on the project [citation, fn.], and certain statutorily enumerated new circumstances occur." (*San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 928.)

The 1985 EIR addressed the potential for an oil spill from pipeline operation. (Dorsi decl., exhibit 5.) There is a dispute among the parties as to whether the 2015 spill and the failure of effective cathodic protection demonstrate new information requiring more or different analysis than present the 1985 EIR. However, this analysis, like the discussion above, is an analysis of a "project," and in particular the restart of pipeline operations as compared with the State Waivers at issue here.

The court concludes that, in the present administrative posture, petitioners are not likely to succeed on the merits of showing a violation of CEQA. Nonetheless, the court finds that petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

(ii)    Federal Claims

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

In addition to violations of CEQA, petitioners assert violations of the FPSA in failing to provide a public process and failing to provide a statement of reasons.

"General requirements.--A person owning or operating a pipeline facility shall--

"(1)    comply with applicable safety standards prescribed under this chapter, except as provided in this section or in section 60126;

"(2)    prepare and carry out a plan for inspection and maintenance required under section 60108(a) and (b) of this title;

"(3)    allow access to or copying of records, make reports and provide information, and allow entry or inspection required under subsections (a) through (e) of section 60117 of this title; and

"(4)    conduct a risk analysis, and adopt and implement an integrity management program, for pipeline facilities as required under section 60109(c)." (49 U.S.C. § 60118(a).)

"Waivers by Secretary.--

(1)    Nonemergency waivers.--

"(A)    In general.--On application of an owner or operator of a pipeline facility, the Secretary by order may waive compliance with any part of an applicable standard prescribed under this chapter with respect to such facility on terms the Secretary considers appropriate if the Secretary determines that the waiver is not inconsistent with pipeline safety.

"(B) Hearing.--The Secretary may act on a waiver under this paragraph only after notice and an opportunity for a hearing."

(49 U.S.C. § 60118(c)(1).)

"Statement of reasons.--The Secretary shall state in an order issued under this subsection the reasons for granting the waiver." (49 U.S.C. § 60118(c)(3).)

"Waivers by State authorities.--If a certification under section 60105 of this title or an agreement under section 60106 of this title is in effect, the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c) of this section. However, the authority must give the Secretary written notice of the waiver at least 60 days before its effective date. If the Secretary makes a written objection before the effective date of the waiver, the waiver is stayed. After notifying the authority of the objection, the Secretary shall provide a prompt opportunity for a hearing. The Secretary shall make the final decision on granting the waiver." (49 U.S.C. § 60118(d).)

Petitioners argue that, because "the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c)" and because the Secretary may act on a waiver only after notice and an opportunity for a hearing and by stating reasons, petitioners may set aside the State Waivers until the OSFM complies with section 60118.

---

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

OSFM and Sable argue that petitioners may not seek such remedies under federal law for violation of these non-discretionary procedural requirements, citing *City and County of San Francisco v. U.S. Dept. of Transp.* (9th Cir. 2015) 796 F.3d 993 (*San Francisco*). In *San Francisco*, the litigation was initiated following an explosion of a natural gas transmission pipeline. (*Id.* at p. 995.) Fearing a recurrence, the City and County of San Francisco sued under the FPSA's citizen suit provision alleging that the PHMSA failed to comply with the FPSA. (*Ibid.*) The city sought declaratory and injunctive relief to compel the FPSA to comply with its duties under the FPSA. (*Id.* at pp. 997-998.) The District Court dismissed the suit with leave to amend, finding that the citizen suit provision (49 U.S.C. § 60121) was " 'not an appropriate vehicle for seeking mandamus relief regarding defendants' performance of their regulatory obligations.' " (*Id.* at p. 998.) The city amended its complaint to include claims under the Administrative Procedures Act, arguing that the PHMSA approval of the state agency's certification was arbitrary and capricious, and a failure to act, in violation of title 5, United States Code section 706. (*Ibid.*) The District Court dismissed these claims as well. (*Ibid.*)

On appeal in *San Francisco*, the Ninth Circuit affirmed. (*San Francisco, supra*, 796 F.3d at p. 1004.) "The Pipeline Safety Act, by its plain language, allows only a very limited private right of action. It permits injunctive citizen suits against the United States or other entities 'for a violation of this chapter or a regulation prescribed or order issued under this chapter.' [Citation.] In other words, private citizen suits are authorized for substantive statutory or regulatory violations. By its terms, the provision does not authorize a mandamus-type action to compel the Agency to perform non-discretionary regulatory duties." (*Id.* at pp. 998–999.)

The OSFM also argues that the notice and hearing requirements of section 60121 appear in the FPSA as procedural protections for the benefit of the applicant seeking the waiver and not for the more general purpose of public participation. This latter point is consistent with the corresponding regulations: "Hearing means an informal conference or a proceeding for oral presentation. Unless otherwise specifically prescribed in this part, the use of 'hearing' is not intended to require a hearing on the record in accordance with section 554 of title 5, U.S.C." (49 C.F.R. § 190.3 (2025).)

Considering these regulations and the reasoning of *San Francisco*, there is a reasonable basis to find that federal law does not require a hearing with generalized public participation and hence to find no violation of the procedural aspects of the FPSA. Despite this lack of requirement, petitioners, nonetheless, actually submitted evidence to the OSFM. (CDB Petition, ¶¶ 68-74; EDC Petition, ¶ 116.) A reasonable inference is that the petitioners have had an opportunity to present evidence to OSFM regardless of whether there is a public participation requirement.

The court finds that petitioners have not shown a likelihood of success on the merits as to claims based on federal law, but again petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

(iii)    State Claims

Corresponding to their FPSA claims, petitioners also assert violations of the CPSA.

**MINUTE ORDER**

"It is the intent of the Legislature, in enacting this chapter, that the State Fire Marshal shall exercise exclusive safety regulatory and enforcement authority over intrastate hazardous liquid pipelines and, to the extent authorized by agreement between the State Fire Marshal and the United States Secretary of Transportation, may act as agent for the United States Secretary of Transportation to implement the federal Hazardous Liquid Pipeline Safety Act of 1979 (49 U.S.C. Sec. 60101 et seq.) and federal pipeline safety regulations as to those portions of interstate pipelines located within this state, as necessary to obtain annual federal certification." (Gov. Code, § 51010.)

"The State Fire Marshal shall adopt hazardous liquid pipeline safety regulations in compliance with the federal law relating to hazardous liquid pipeline safety, including, but not limited to, compliance orders, penalties, and inspection and maintenance provisions, and including amendments to those laws and regulations that may be hereafter enacted and adopted." (Gov. Code, § 51011, subd. (a).)

"The State Fire Marshal may exempt the application of regulations adopted pursuant to this section to any pipeline, or portion thereof, when it is determined that the risk to public safety is slight and the probability of injury or damage remote." (Gov. Code, § 51011, subd. (b).)

"Notification of exemptions shall be written, and shall include a discussion of those factors that the State Fire Marshal considers significant to the granting of the exemption." (Gov. Code, § 51011, subd. (c).)

"Title 49 of the Code of Federal Regulations, Part 195 is hereby adopted by reference as it relates to hazardous liquid pipelines." (Cal. Code Regs., tit. 19, § 2000.)

While federal procedural law may not separately provide for mandate remedies, California procedural law generally provides for writs of mandate to command California officials to comply with the law. (See Code Civ. Proc., §§ 1085, 1094.5.)

Reviewing the State Waivers, the court concludes that the State Waivers do not contain a discussion of factors that the OSFM considered significant in granting the exemption beyond conclusions.

"Administrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein. [Citation.] However, findings by implication cannot be substituted for specific findings when they are required by law." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.)

Given the specific findings required by section 51011, subdivision (b), it appears that the statutorily-required discussion of subdivision (c) must in some appropriate way at least connect the factors stated (and their significance) to the findings that the risk to public safety is slight and the probability of injury or damage remote. The court finds that petitioners have established a reasonable probability of success on the merits on this claim.

---

**MINUTE ORDER**

(B)    Greater Harms

Petitioners argue that they, and the portion of the public they represent, would suffer the greater harm by the erroneous denial of a preliminary injunction. In particular, petitioners argue that the potential harm to natural resources and the failure to consider impacts of the project or to allow public input outweigh any delay for Sable. Sable argues that such harm is purely speculative and that it, and the general public, would suffer economic harms delaying or preventing the domestic oil production from Sable's use of the pipelines by the erroneous issuance of a preliminary injunction. The OSFM argues that erroneous issuance of an injunction against public officers in performing their duties is a form of irreparable injury.

As discussed below, because the petitions focus on deficiencies in the State Waivers as issued by OSFM and because additional approvals are required before the pipelines subject to the State Waivers may be restarted, the court finds that no party has made a strong showing that it would suffer greater harm by the erroneous grant or denial of the preliminary injunction.

(C)    Balance of Equities

In arguing that CEQA is inapplicable, Sable and OSFM make the point that the State Waivers constitute but one approval of several necessary to restart the Las Flores Pipelines. This argument is carried forward into their analysis of the relative harms: "Petitioners' alleged harm from restart of the Pipelines [citations] is purely speculative due to the additional approval Sable must obtain before the Pipelines are operational. [Citation.] As Petitioners acknowledge, and as required by the Consent Decree, OSFM must approve a Restart Plan before Sable can restart the Pipelines. [Citations.] When reviewing Sable's Restart Plan, OSFM will necessarily consider the safety of operations and integrity of the pipelines to minimize potential safety risks." (Sable Opposition, at p. 19.)

The principal harms argued both by petitioners and by Sable are based upon what would or would not happen when the Las Flores Pipelines are restarted. The evidence presented by all parties, however, shows that the restart of the Las Flores Pipelines is dependent upon approvals that have not yet been given. The respective potential harms are thus premature in this analysis. As the OSFM argues, there are potential harms in premature and potentially unnecessary judicial interference with the activities of regulators.

As the evidence and arguments of the petitioners most strongly demonstrate, the principal harm to be avoided is the restart of the Las Flores Pipelines without compliance with all applicable law. Because such a restart requires additional approvals, this harm may be avoided in the present by having adequate notice that a restart has been approved and so providing petitioners with a reasonable opportunity to address compliance issues of such a restart based upon such future approvals. By the same token, Sable would not be materially harmed by being restrained from restarting the Las Flores Pipelines without first providing such adequate notice. The OSFM would not be restrained or constrained in the interim to address all such matters within its regulatory purview.

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

Accordingly, the court will narrowly grant the motions for preliminary injunctions to enjoin the restart of the Las Flores Pipelines, as herein defined, until 10 court days following Sable's filing and service of notice that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree. Such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025 (the date of the court's grant of the TRO in these matters). The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing and the date of service.

Under these terms of the preliminary injunction, absent further order of the court, Sable may restart the Las Flores Pipelines 10 court days following the giving of notice of receiving all necessary approvals and permits. Sable is not prevented by this injunction from taking steps towards restarting the Las Flores Pipelines short of actual restart. The OSFM is not impeded by the injunction from taking steps it finds appropriate in its regulatory capacity, including any steps OSFM may find desirable following this order. The conditions of the injunction do not allow restart without prior notice. This notice requirement and intervening waiting period provides reasonable time and opportunity for the petitioners and for the OSFM to take any requisite procedural step they may find appropriate before restart is to occur. The ruling is without prejudice to petitioners to seek additional, further, or other relief from the court, if any is warranted, before such restart. The court would be in a position to assess the evidence and arguments of the parties as they then exist, including, presumably, the fact and effects of actions taken as a result of obtaining the remaining necessary approvals and permits.

(D)    Bond

"On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (Code Civ. Proc., § 529, subd. (a).)

In view of the nature of the injunction issued, the potential damages caused by a wrongful injunction are minimal. The court fixes the amount of the undertaking required by section 529 at $1,000.00, to be filed by CBD and EDU, respectively in each case, on or before July 25, 2025.

(2)    Motions re Richard B. Kuprewicz

In addition to the applications for issuance of preliminary injunctions, the parties have filed motions related to petitioners' expert witness Richard B. Kuprewicz: (1)

motion of Sable (case No. 25CV02244) to compel the deposition of Kuprewicz; (2) the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions; (3) motion of Sable (case No. 25CV02247) to compel the deposition of

Kuprewicz; and (4) the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions. There are also motions now set for hearing in October in each case to quash Sable's deposition subpoena and notice of deposition, and to stay the deposition of Kuprewicz.

As discussed briefly above, the court has considered, but does not rely upon, the substance of the declaration of Kuprewicz to reach its conclusions in this ruling. The motions to strike the declaration will be denied. The motions to compel the deposition of Kuprewicz are denied as moot. To the extent these ruling moot the pending motions to quash, the court expects the parties to advise the court of that fact.

Based upon the court's ruling on the merits of the applications for preliminary injunction, it is not necessary at this time to determine what role, if any, the testimony of Kuprewicz may have in further proceedings. The court expects that petitioners will fully consider the issues raised by Sable in these motions in any further filings with the court.

DARREL E. PARKER, EXECUTIVE OFFICER          Minutes Prepared by:

                                                        _____ Maria Vidal _____ , Deputy

SC-2411 (Revised July 1, 2013)          **MINUTE ORDER**

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:  07/18/2025                          Time:   10:00 AM
Judicial Officer:      Donna D Geck
Deputy Clerk:         Maria Vidal                        Dept:   SB Dept 4
Bailiff/Court Officer:  Kenneth Toste                    Case No: 25CV02247
Court Reporter:       Marie Castro

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

| | |
|---|---|
| Linda Krop | Petitioner's Attorney |
| Jeremy Frankel | Petitioner's Attorney |
| Michael Dorsi | Respondent's Attorney |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Garrett Stanton | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |

---

**NATURE OF PROCEEDINGS**:  **Motion: Compel re Deposition of Richard B Kuprewicz; Motion: Strike; Order to Show Cause and TRO**

Counsel presented argument.

The Court adopted the tentative ruling as follows:

**RULING**:

(1)      The applications of petitioners in case numbers 25CV02244 and 25CV02247 for issuance of preliminary injunctions are, respectively, granted in part. The applications are granted to enjoin, pending the disposition of these proceedings or further order of the court, the restart of the Las Flores Pipelines, as herein defined, until 10 court days following the filing and service of notice by or on behalf of real parties in interest Sable Offshore Corp., and Pacific Pipeline Company (collectively, Sable) that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree identified herein. To be effective to commence the 10-court-day period, such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025. The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing or the date of service. The temporary restraining order remains in place until a written order of the court is entered on this preliminary injunction.

(2)      On or before July 25, 2025, petitioners in each case shall lodge with the court an order for signature and filing.

---

SC-2411 (Revised July 1, 2013)                **MINUTE ORDER**

(3)    The court fixes the undertaking required by Code of Civil Procedure section 529 in the amount of $1,000.00, to be filed in each case by the respective petitioners. Petitioners shall file such undertaking on or before July 25, 2025.

(4)    For the reasons set forth herein, the motion of Sable (case No. 25CV02244) to compel the deposition of Richard B. Kuprewicz, the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions, the motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz, and the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions are all denied.

---

(1)    OSC re Preliminary Injunction

These are two related cases involving the same underlying incidents and activity. Pursuant to the parties' stipulation, the responding parties and real parties in interest have filed the same brief addressing both cases in each of these cases and the respective petitioners have filed reply papers in each of their respective cases. The court therefore will address the orders to show cause re issuance of preliminary injunctions (OSCs) together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

The parties have submitted voluminous evidence in support of, and in opposition to, these OSCs. The court has reviewed all of the papers presented by the parties, and has relied only upon admissible evidence in making this ruling. The discussion herein is not intended to be exhaustive, but to provide context for the court's analysis and ruling.

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a

wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (Rusch decl., ¶ 33 & exhibit N [the Federal Consent Decree].)

The Federal Consent Decree includes the following provisions:

"1.     State Waivers for Lines 901, 903, and 2000 (not to include any replacement lines):

"A.     Prior to restarting Line 901, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 901. Plains must receive a State Waiver from the OSFM prior to restarting Line 901.

"B.     Prior to restarting non-operational segments of Line 903, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic

protection on Line 903. Plains must receive a State Waiver from the OSFM prior

to restarting Line 903.

"C.     Within 90 days of entry of the Consent Decree (CD), Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. The State Waiver shall apply to the currently operational segment of Line 903 from Pentland to Emidio.

"D.     Within 90 days of entry of the CD, Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 2000.

"E.     To the extent that a State Waiver directly incorporates terms identified in section 4 (Integrity Management) below, as being applicable to Lines 901, 903, or 2000, Plains shall not contest the inclusion of those terms in the relevant State Waiver. Plains reserves its rights to contest on any grounds any additional terms that the OSFM may require as part of each State Waiver if one is received. Nothing in this CD shall be construed to limit the authority of the OSFM to require additional terms or conditions in the State Waiver. Further, nothing in the State Waiver shall be construed to limit the applicability of the terms set forth in the CD.

"2.    Replacement, Restart, or Abandonment of Lines 901 and 903:

"A.    Plains shall replace the existing Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland with non-insulated pipe, if Plains is able to timely obtain: (1) agreements from shippers to transport sufficient quantities of product to make the cost of replacing the segments economically viable; (2) the Federal, State, and Local permits that may be required; and (3) whatever additional rights are needed, including rights-of-way that may be needed from landowners. Obtaining required commercial commitments, permits, rights-of- way, and any other rights necessary for replacement is the sole responsibility of

Plains.

"1.    On any replacement segments of Lines 901 or 903, Plains shall, prior to commencing operation of such segment(s):

"a.    Test for potential AC/DC interference. Where potential AC/DC interference exists, proper mitigation of interference shall be designed and installed during construction of replacement lines.

"b.    Conduct a close interval survey (CIS) and AC/DC interference survey.

"c.    Based on the CIS and AC/DC interference surveys, place additional cathodic-protection test stations at locations where the surveys demonstrate potential cathodic-protection deficiencies, following review and consultation with the OSFM regarding proposed test station locations.

"B.    As an alternative to replacement of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may restart the existing pipelines in accordance with the CD (including Appendix D) and applicable law.

"C.    As an alternative to replacement or restart of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may abandon all or any segments in accordance with all applicable laws and regulations." (Federal Consent Decree, appen. B, art. I, §§ 1, 2.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

In May 2024, Sable began conducting repair and maintenance activities to the Las Flores Pipelines. (Rusch decl., ¶ 5.) According to Sable, these activities were completed pursuant to previously granted coastal development permits, approvals, and EIR. (*Ibid.*)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id.* & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (Rusch decl., ¶ 7 & exhibits B, C.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (Rusch decl., ¶ 9 & exhibit E.)

On April 2, 2025, OSFM issued letters noting its receipt of PHMSA's decision stating that it has no objection to granting the State Waivers. (Rusch decl., ¶ 10 & exhibits F, G.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On June 3, 2025, the court heard petitioners' ex parte applications for an administrative stay, or for an OSC re preliminary injunction and temporary restraining order (TRO). The court granted the petitioners' requests for a TRO and set a hearing on the OSCs for this date.

The applications for issuance of a preliminary injunction are opposed by OSFM and by Sable.

**Analysis:**

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

Notwithstanding the issuance of the TRO, the burden is on petitioners, as the parties seeking injunctive relief, to show all elements necessary to support issuance of a preliminary injunction. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.) A preliminary injunction is available "[w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action." (Code Civ. Proc., § 526, subd. (a)(2).)

"The trial courts consider two interrelated questions in deciding whether to issue a preliminary injunction: 1) are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant; and 2) is there a reasonable probability that the plaintiffs will prevail on the merits. [Citations.] '[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.]" (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206.)

### (A)     Likelihood of Success on the Merits

Petitioners raise multiple claims in their petitions that separately could support issuance of an injunction. It is therefore necessary to address these claims in turn.

### (i)     CEQA

Petitioners each assert a claim under CEQA based upon OSFM's issuance of the State Waivers without preparing environmental documentation, without providing public notice, and without providing an opportunity for public comment. (CBD Petition, ¶¶ 128-129; EDC Petition, ¶ 224.)

"[CEQA] and the regulations implementing it (Cal. Code Regs., tit. 14, § 15000 et seq.) embody California's strong public policy of protecting the environment. 'The basic purposes of CEQA are to: [¶] (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved.' [Citation.]" (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285–286 (*Tomlinson*).)

"To achieve these goals, CEQA and the implementing regulations provide for a three-step process. In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency. (§ 21065.)" (*Tomlinson, supra*, 54 Cal.4th at p. 286.)

"The second step of the process is required if the proposed activity is a 'project.' The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption (§ 21080) or a categorical exemption set forth in the regulations (§ 21084, subd. (a); Cal. Code Regs., tit. 14, § 15300). A categorically exempt project is not subject to CEQA, and no further environmental review is required. [Citations.] If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' [Citations.] Otherwise, the agency must proceed to the third step, which entails preparation of an environmental impact report before approval of the project. (§§ 21100, subd. (a), 21151, subd. (a).)" (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

CBD asserts that restarting the Las Flores Pipelines by issuance of the State Waivers is a "project" under CEQA requiring environmental review. (CBD Application, at pp. 21-23.) OSFM and Sable argue that the issuance of the State Waivers is not a "project" or is otherwise not subject to CEQA.

" 'Project' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] … [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Pub. Resources Code, § 21065.)

"The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (Cal. Code Regs., tit. 14, § 15378, subd. (c).)

Under this definition, the issuance of the State Waivers does not appear to constitute a "project" separately subject to CEQA review. The State Waivers would at most constitute a separate governmental approval for the underlying activity, which is the restart of the Las Flores Pipelines. The court concludes that the issuance of the State Waivers does not itself cause a change or authorize a change in the environment. (See *Simons v. City of Los Angeles* (1976) 63 Cal.App.3d 455, 466.)

If the State Waivers were considered more broadly, i.e., as a proxy for the restart of the Las Flores Pipelines, the resolution under CEQA is not clear. OSFM and Sable argue that, in such instance, the categorical existing facilities exemption applies.

"Class 1 consists of the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of existing or former use. The types of 'existing facilities' itemized below are not intended to be all-inclusive of the types of projects which might fall within Class 1." (Cal. Code Regs., tit. 14, § 15301; see also Pub. Resources Code, § 21084; Cal. Code Regs., tit. 14, § 15300.)

"Examples include but are not limited to: [¶] … [¶] (d) Restoration or rehabilitation of deteriorated or damaged structures, facilities, or mechanical equipment to meet current standards of public health and

safety, unless it is determined that the damage was substantial and resulted from an environmental hazard such as earthquake, landslide, or flood." (Cal. Code Regs., tit. 14, § 15301, subd. (d).)

An issue now before the California Supreme Court is whether "negligible" in this exemption pertains to a negligible change in use or to a change that presents a negligible risk of environmental harm. (*Sunflower Alliance v. Department of Conservation* (2024) 105 Cal.App.5th 771, review granted Dec. 18, 2024, S287414 (*Sunflower*).) Under broader circumstances, this issue may bear upon the application of the exemption. But as the issue is presented here, such analysis is premature because the State Waivers are not themselves directly or indirectly causing change to the environment.

EDC, in particular, focuses its argument on the need for updated environmental review:

"When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs:

"(a)    Substantial changes are proposed in the project which will require major revisions of the environmental impact report.

"(b)    Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report.

"(c)    New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." (Pub. Resources Code, § 21166.)

"When an EIR has been certified or a negative declaration adopted for a project, no subsequent EIR shall be prepared for that project unless the lead agency determines, on the basis of substantial evidence in the light of the whole record, one or more of the following:

"(1)    Substantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects;

"(2)    Substantial changes occur with respect to the circumstances under which the project is undertaken which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects; or

"(3)    New information of substantial importance, which was not known and could not have been known with the exercise of reasonable diligence at the time the previous EIR was certified as complete or the negative declaration was adopted, shows any of the following:

"(A)    The project will have one or more significant effects not discussed in the previous EIR or negative declaration;

"(B)    Significant effects previously examined will be substantially more severe than shown in the previous EIR;

SC-2411 (Revised July 1, 2013)                          **MINUTE ORDER**

"(C)    Mitigation measures or alternatives previously found not to be feasible would in fact be feasible and would substantially reduce one or more significant effects of the project, but the project proponents decline to adopt the mitigation measure or alternative; or

"(D)    Mitigation measures or alternatives which are considerably different from those analyzed in the previous EIR would substantially reduce one or more significant effects on the environment, but the project proponents decline to adopt the mitigation measure or alternative."

(Cal. Code Regs., tit. 14, § 15162, subd. (a).)

EDC argues that a subsequent EIR is required because: (1) operating the pipeline system without an effective cathodic protection system throughout the entire length of the pipeline constitutes a change in the project that increases the risk and severity of impacts, requiring major revisions to the 1985 EIR; (2) the failure of the pipeline system's cathodic protection system and resulting corrosion constitutes a change in circumstances; (3) it was only after the 2015 oil spill that the pipeline system was discovered to lack effective cathodic protection, which constitutes new information showing that the risk of an oil spill is substantially more severe than previously determined.

The petitioners rely largely upon the declaration and reports of expert Richard Kuprewicz for evidence regarding pipeline safety. The testimony of Kuprewicz is the subject of other motions also pending before the court (discussed below) based in part upon Kuprewicz's present unavailability to be subject to a deposition. For purposes of these motions, the court will consider Kuprewicz's evidence with Kuprewicz's unavailability going to the weight of the evidence in the context of these applications for preliminary injunctions.

"After an initial EIR is certified, CEQA establishes a presumption against additional environmental review. An agency has jurisdiction to prepare a subsequent or supplemental EIR only if the agency grants a 'discretionary' approval on the project [citation, fn.], and certain statutorily enumerated new circumstances occur." (*San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 928.)

The 1985 EIR addressed the potential for an oil spill from pipeline operation. (Dorsi decl., exhibit 5.) There is a dispute among the parties as to whether the 2015 spill and the failure of effective cathodic protection demonstrate new information requiring more or different analysis than present the 1985 EIR. However, this analysis, like the discussion above, is an analysis of a "project," and in particular the restart of pipeline operations as compared with the State Waivers at issue here.

The court concludes that, in the present administrative posture, petitioners are not likely to succeed on the merits of showing a violation of CEQA. Nonetheless, the court finds that petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

(ii)    Federal Claims

In addition to violations of CEQA, petitioners assert violations of the FPSA in failing to provide a public process and failing to provide a statement of reasons.

"General requirements.--A person owning or operating a pipeline facility shall--

"(1)    comply with applicable safety standards prescribed under this chapter, except as provided in this section or in section 60126;

"(2)    prepare and carry out a plan for inspection and maintenance required under section 60108(a) and (b) of this title;

"(3)    allow access to or copying of records, make reports and provide information, and allow entry or inspection required under subsections (a) through (e) of section 60117 of this title; and

"(4)    conduct a risk analysis, and adopt and implement an integrity management program, for pipeline facilities as required under section 60109(c)." (49 U.S.C. § 60118(a).)

"Waivers by Secretary.--

(1)    Nonemergency waivers.--

"(A)    In general.--On application of an owner or operator of a pipeline facility, the Secretary by order may waive compliance with any part of an applicable standard prescribed under this chapter with respect to such facility on terms the Secretary considers appropriate if the Secretary determines that the waiver is not inconsistent with pipeline safety.

"(B) Hearing.--The Secretary may act on a waiver under this paragraph only after notice and an opportunity for a hearing."

(49 U.S.C. § 60118(c)(1).)

"Statement of reasons.--The Secretary shall state in an order issued under this subsection the reasons for granting the waiver." (49 U.S.C. § 60118(c)(3).)

"Waivers by State authorities.--If a certification under section 60105 of this title or an agreement under section 60106 of this title is in effect, the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c) of this section. However, the authority must give the Secretary written notice of the waiver at least 60 days before its effective date. If the Secretary makes a written objection before the effective date of the waiver, the waiver is stayed. After notifying the authority of the objection, the Secretary shall provide a prompt opportunity for a hearing. The Secretary shall make the final decision on granting the waiver." (49 U.S.C. § 60118(d).)

Petitioners argue that, because "the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c)" and because the Secretary may act on a waiver only after notice and an opportunity for a hearing and by stating reasons, petitioners may set aside the State Waivers until the OSFM complies with section 60118.

OSFM and Sable argue that petitioners may not seek such remedies under federal law for violation of these non-discretionary procedural requirements, citing *City and County of San Francisco v. U.S. Dept. of Transp.* (9th Cir. 2015) 796 F.3d 993 (*San Francisco*). In *San Francisco*, the litigation was initiated following an explosion of a natural gas transmission pipeline. (*Id.* at p. 995.) Fearing a recurrence, the City and County of San Francisco sued under the FPSA's citizen suit provision alleging that the PHMSA failed to comply with the FPSA. (*Ibid.*) The city sought declaratory and injunctive relief to compel the FPSA to comply with its duties under the FPSA. (*Id.* at pp. 997-998.) The District Court dismissed the suit with leave to amend, finding that the citizen suit provision (49 U.S.C. § 60121) was " 'not an appropriate vehicle for seeking mandamus relief regarding defendants' performance of their regulatory obligations.' " (*Id.* at p. 998.) The city amended its complaint to include claims under the Administrative Procedures Act, arguing that the PHMSA approval of the state agency's certification was arbitrary and capricious, and a failure to act, in violation of title 5, United States Code section 706. (*Ibid.*) The District Court dismissed these claims as well. (*Ibid.*)

On appeal in *San Francisco*, the Ninth Circuit affirmed. (*San Francisco, supra*, 796 F.3d at p. 1004.) "The Pipeline Safety Act, by its plain language, allows only a very limited private right of action. It permits injunctive citizen suits against the United States or other entities 'for a violation of this chapter or a regulation prescribed or order issued under this chapter.' [Citation.] In other words, private citizen suits are authorized for substantive statutory or regulatory violations. By its terms, the provision does not authorize a mandamus-type action to compel the Agency to perform non-discretionary regulatory duties." (*Id.* at pp. 998–999.)

The OSFM also argues that the notice and hearing requirements of section 60121 appear in the FPSA as procedural protections for the benefit of the applicant seeking the waiver and not for the more general purpose of public participation. This latter point is consistent with the corresponding regulations: "Hearing means an informal conference or a proceeding for oral presentation. Unless otherwise specifically prescribed in this part, the use of 'hearing' is not intended to require a hearing on the record in accordance with section 554 of title 5, U.S.C." (49 C.F.R. § 190.3 (2025).)

Considering these regulations and the reasoning of *San Francisco*, there is a reasonable basis to find that federal law does not require a hearing with generalized public participation and hence to find no violation of the procedural aspects of the FPSA. Despite this lack of requirement, petitioners, nonetheless, actually submitted evidence to the OSFM. (CDB Petition, ¶¶ 68-74; EDC Petition, ¶ 116.) A reasonable inference is that the petitioners have had an opportunity to present evidence to OSFM regardless of whether there is a public participation requirement.

The court finds that petitioners have not shown a likelihood of success on the merits as to claims based on federal law, but again petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

      (iii)    State Claims

Corresponding to their FPSA claims, petitioners also assert violations of the CPSA.

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

"It is the intent of the Legislature, in enacting this chapter, that the State Fire Marshal shall exercise exclusive safety regulatory and enforcement authority over intrastate hazardous liquid pipelines and, to the extent authorized by agreement between the State Fire Marshal and the United States Secretary of Transportation, may act as agent for the United States Secretary of Transportation to implement the federal Hazardous Liquid Pipeline Safety Act of 1979 (49 U.S.C. Sec. 60101 et seq.) and federal pipeline safety regulations as to those portions of interstate pipelines located within this state, as necessary to obtain annual federal certification." (Gov. Code, § 51010.)

"The State Fire Marshal shall adopt hazardous liquid pipeline safety regulations in compliance with the federal law relating to hazardous liquid pipeline safety, including, but not limited to, compliance orders, penalties, and inspection and maintenance provisions, and including amendments to those laws and regulations that may be hereafter enacted and adopted." (Gov. Code, § 51011, subd. (a).)

"The State Fire Marshal may exempt the application of regulations adopted pursuant to this section to any pipeline, or portion thereof, when it is determined that the risk to public safety is slight and the probability of injury or damage remote." (Gov. Code, § 51011, subd. (b).)

"Notification of exemptions shall be written, and shall include a discussion of those factors that the State Fire Marshal considers significant to the granting of the exemption." (Gov. Code, § 51011, subd. (c).)

"Title 49 of the Code of Federal Regulations, Part 195 is hereby adopted by reference as it relates to hazardous liquid pipelines." (Cal. Code Regs., tit. 19, § 2000.)

While federal procedural law may not separately provide for mandate remedies, California procedural law generally provides for writs of mandate to command California officials to comply with the law. (See Code Civ. Proc., §§ 1085, 1094.5.)

Reviewing the State Waivers, the court concludes that the State Waivers do not contain a discussion of factors that the OSFM considered significant in granting the exemption beyond conclusions.

"Administrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein. [Citation.] However, findings by implication cannot be substituted for specific findings when they are required by law." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.)

Given the specific findings required by section 51011, subdivision (b), it appears that the statutorily-required discussion of subdivision (c) must in some appropriate way at least connect the factors stated (and their significance) to the findings that the risk to public safety is slight and the probability of injury or damage remote. The court finds that petitioners have established a reasonable probability of success on the merits on this claim.

**MINUTE ORDER**

(B)    Greater Harms

Petitioners argue that they, and the portion of the public they represent, would suffer the greater harm by the erroneous denial of a preliminary injunction. In particular, petitioners argue that the potential harm to natural resources and the failure to consider impacts of the project or to allow public input outweigh any delay for Sable. Sable argues that such harm is purely speculative and that it, and the general public, would suffer economic harms delaying or preventing the domestic oil production from Sable's use of the pipelines by the erroneous issuance of a preliminary injunction. The OSFM argues that erroneous issuance of an injunction against public officers in performing their duties is a form of irreparable injury.

As discussed below, because the petitions focus on deficiencies in the State Waivers as issued by OSFM and because additional approvals are required before the pipelines subject to the State Waivers may be restarted, the court finds that no party has made a strong showing that it would suffer greater harm by the erroneous grant or denial of the preliminary injunction.

(C)    Balance of Equities

In arguing that CEQA is inapplicable, Sable and OSFM make the point that the State Waivers constitute but one approval of several necessary to restart the Las Flores Pipelines. This argument is carried forward into their analysis of the relative harms: "Petitioners' alleged harm from restart of the Pipelines [citations] is purely speculative due to the additional approval Sable must obtain before the Pipelines are operational. [Citation.] As Petitioners acknowledge, and as required by the Consent Decree, OSFM must approve a Restart Plan before Sable can restart the Pipelines. [Citations.] When reviewing Sable's Restart Plan, OSFM will necessarily consider the safety of operations and integrity of the pipelines to minimize potential safety risks." (Sable Opposition, at p. 19.)

The principal harms argued both by petitioners and by Sable are based upon what would or would not happen when the Las Flores Pipelines are restarted. The evidence presented by all parties, however, shows that the restart of the Las Flores Pipelines is dependent upon approvals that have not yet been given. The respective potential harms are thus premature in this analysis. As the OSFM argues, there are potential harms in premature and potentially unnecessary judicial interference with the activities of regulators.

As the evidence and arguments of the petitioners most strongly demonstrate, the principal harm to be avoided is the restart of the Las Flores Pipelines without compliance with all applicable law. Because such a restart requires additional approvals, this harm may be avoided in the present by having adequate notice that a restart has been approved and so providing petitioners with a reasonable opportunity to address compliance issues of such a restart based upon such future approvals. By the same token, Sable would not be materially harmed by being restrained from restarting the Las Flores Pipelines without first providing such adequate notice. The OSFM would not be restrained or constrained in the interim to address all such matters within its regulatory purview.

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

Accordingly, the court will narrowly grant the motions for preliminary injunctions to enjoin the restart of the Las Flores Pipelines, as herein defined, until 10 court days following Sable's filing and service of notice that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree. Such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025 (the date of the court's grant of the TRO in these matters). The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing and the date of service.

Under these terms of the preliminary injunction, absent further order of the court, Sable may restart the Las Flores Pipelines 10 court days following the giving of notice of receiving all necessary approvals and permits. Sable is not prevented by this injunction from taking steps towards restarting the Las Flores Pipelines short of actual restart. The OSFM is not impeded by the injunction from taking steps it finds appropriate in its regulatory capacity, including any steps OSFM may find desirable following this order. The conditions of the injunction do not allow restart without prior notice. This notice requirement and intervening waiting period provides reasonable time and opportunity for the petitioners and for the OSFM to take any requisite procedural step they may find appropriate before restart is to occur. The ruling is without prejudice to petitioners to seek additional, further, or other relief from the court, if any is warranted, before such restart. The court would be in a position to assess the evidence and arguments of the parties as they then exist, including, presumably, the fact and effects of actions taken as a result of obtaining the remaining necessary approvals and permits.

(D)    Bond

"On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (Code Civ. Proc., § 529, subd. (a).)

In view of the nature of the injunction issued, the potential damages caused by a wrongful injunction are minimal. The court fixes the amount of the undertaking required by section 529 at $1,000.00, to be filed by CBD and EDU, respectively in each case, on or before July 25, 2025.

(2)    Motions re Richard B. Kuprewicz

In addition to the applications for issuance of preliminary injunctions, the parties have filed motions related to petitioners' expert witness Richard B. Kuprewicz: (1)

motion of Sable (case No. 25CV02244) to compel the deposition of Kuprewicz; (2) the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions; (3) motion of Sable (case No. 25CV02247) to compel the deposition of

Kuprewicz; and (4) the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions. There are also motions now set for hearing in October in each case to quash Sable's deposition subpoena and notice of deposition, and to stay the deposition of Kuprewicz.

As discussed briefly above, the court has considered, but does not rely upon, the substance of the declaration of Kuprewicz to reach its conclusions in this ruling. The motions to strike the declaration will be denied. The motions to compel the deposition of Kuprewicz are denied as moot. To the extent these ruling moot the pending motions to quash, the court expects the parties to advise the court of that fact.

Based upon the court's ruling on the merits of the applications for preliminary injunction, it is not necessary at this time to determine what role, if any, the testimony of Kuprewicz may have in further proceedings. The court expects that petitioners will fully consider the issues raised by Sable in these motions in any further filings with the court.

DARREL E. PARKER, EXECUTIVE OFFICER            Minutes Prepared by:

_____ Maria Vidal _____ , Deputy

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/25/2025 4:53 PM
By: Narzralli Baksh , Deputy

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, | Case No.: 25CV02247 |
| Petitioners and Plaintiffs, | **NOTICE OF FILING UNDERTAKING** |
| vs. | Dept.: 4 |
| | Judge: Hon. Donna D. Geck |
| CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, | Action Filed: April 15, 2025 |
| | Trial: None Set |
| Respondents and Defendants, | |
| and | |
| SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation, | |
| Real Parties in Interest. | |

1

Notice of Filing Undertaking

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Petitioners and Plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (collectively, "Petitioners") have filed with the Court a check in the amount of $1,000, made out to the Superior Court of Santa Barbara County, in satisfaction of the Court's July 18, 2025, order to file a $1,000 undertaking as security for the preliminary injunction granted in favor of Petitioners.

Dated: July 25, 2025                                    Respectfully submitted,



Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On July 25, 2025, I served the above document(s) described as **NOTICE OF FILING UNDERTAKING** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒    **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 25, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

**SERVICE LIST**

| | |
|---|---|
| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>Myung Park<br>Myung.Park@doj.ca.gov<br>Matthew Bullock<br>Matthew.Bullock@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEYS FOR RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; and Daniel Berlant, in his official capacity as State Fire Marshal |
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBAL & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |

Pursuant to CRC 2.259 this document has been electronically filed by the Superior Court of California, County of Santa Barbara, on 7/25/2025

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**07/29/2025**
Darrel E. Parker, Executive Officer
BY   Chavez, Terri
_____
Deputy Clerk

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA BARBARA**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,<br><br>           Petitioners and Plaintiffs,<br><br>   vs.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,<br><br>           Respondents and Defendants,<br><br>   and<br><br>SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,<br><br>           Real Parties in Interest. | Case No.: 25CV02247<br><br>**[~~PROPOSED~~] ORDER FOR PRELIMINARY INJUNCTION AND UNDERTAKING**<br><br>Dept.:    4<br>Judge:   Hon. Donna D. Geck<br><br>Action Filed: April 15, 2025<br>Trial: None Set |

**TO RESPONDENTS AND REAL PARTIES IN INTEREST IN THE ABOVE-CAPTIONED ACTION:**

The application of Petitioners and Plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (collectively, "Petitioners") for a preliminary injunction was heard on July 18, 2025, at 10:00 A.M. in Department 4 of the above-captioned Court. Appearing as attorneys were Linda Krop and Jeremy Frankel for Petitioners; Michael Dorsi for Respondents California Department of Fire and Forestry and State Fire Marshal Daniel Berlant (collectively, "Respondents"); and Jeffrey Dintzer, Garret Stanton, and Trevor Large for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable").

At the hearing, the Court adopted its tentative ruling to grant, in part, Petitioners' application. The order of the Court is set forth in its tentative — and now final — ruling, attached hereto as **Exhibit A.**

**IT IS SO ORDERED.**

DATED: _____, 2025

07/29/2025

_Donna D. Geck_

JUDGE OF THE SUPERIOR COURT
**Donna D. Geck**

# EXHIBIT A

We're currently experiencing a technical issue with the Jury eResponse login link:
Click here for more information

Notice: The court is aware of fraudulent messages and scams being sent to the
public. For more information please click here.

# Environmental Defense Center et al vs California Dept of Forestry and Fire Protection

## Case Number

25CV02247

## Case Type

Civil Law & Motion

## Hearing Date / Time

Fri, 07/18/2025 - 10:00

## Nature of Proceedings

OSC; Motion to Compel; Motion to Strike

## Tentative Ruling

Case 2:26-cv-05242-SVW-SSC   Document 17   Filed 05/14/26   Page 220 of 423   Page ID #:8516

(1) The applications of petitioners in case numbers 25CV02244 and 25CV02247 for issuance of preliminary injunctions are, respectively, granted in part. The applications are granted to enjoin, pending the disposition of these proceedings or further order of the court, the restart of the Las Flores Pipelines, as herein defined, until 10 court days following the filing and service of notice by or on behalf of real parties in interest Sable Offshore Corp., and Pacific Pipeline Company (collectively, Sable) that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree identified herein. To be effective to commence the 10-court-day period, such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025. The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing or the date of service. The temporary restraining order remains in place until a written order of the court is entered on this preliminary injunction.

(2) On or before July 25, 2025, petitioners in each case shall lodge with the court an order for signature and filing.

(3) The court fixes the undertaking required by Code of Civil Procedure section 529 in the amount of $1,000.00, to be filed in each case by the respective petitioners. Petitioners shall file such undertaking on or before July 25, 2025.

(4) For the reasons set forth herein, the motion of Sable (case No. 25CV02244) to compel the deposition of Richard B. Kuprewicz, the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions, the motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz, and the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions are all denied.

(1) OSC re Preliminary Injunction

These are two related cases involving the same underlying incidents and activity. Pursuant to the parties' stipulation, the responding parties and real parties in interest have filed the same brief addressing both cases in each of these cases and the respective petitioners have filed reply papers in each of their respective cases. The court therefore will address the orders to show cause re issuance of preliminary injunctions (OSCs) together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

## Background:

The parties have submitted voluminous evidence in support of, and in opposition to, these OSCs. The court has reviewed all of the papers presented by the parties, and has relied only upon admissible evidence in making this ruling. The discussion herein is not intended to be exhaustive, but to provide context for the court's analysis and ruling.

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (Rusch decl., ¶ 33 & exhibit N [the Federal Consent Decree].)

The Federal Consent Decree includes the following provisions:

"1.    State Waivers for Lines 901, 903, and 2000 (not to include any replacement lines):

"A.    Prior to restarting Line 901, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 901. Plains must receive a State Waiver from the OSFM prior to restarting Line 901.

"B.    Prior to restarting non-operational segments of Line 903, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. Plains must receive a State Waiver from the OSFM prior to restarting Line 903.

"C.    Within 90 days of entry of the Consent Decree (CD), Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. The State Waiver shall apply to the currently operational segment of Line 903 from Pentland to Emidio.

"D.    Within 90 days of entry of the CD, Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 2000.

"E.     To the extent that a State Waiver directly incorporates terms identified in section 4 (Integrity Management) below, as being applicable to Lines 901, 903, or 2000, Plains shall not contest the inclusion of those terms in the relevant State Waiver. Plains reserves its rights to contest on any grounds any additional terms that the OSFM may require as part of each State Waiver if one is received. Nothing in this CD shall be construed to limit the authority of the OSFM to require additional terms or conditions in the State Waiver. Further, nothing in the State Waiver shall be construed to limit the applicability of the terms set forth in the CD.

"2.     Replacement, Restart, or Abandonment of Lines 901 and 903:

"A.     Plains shall replace the existing Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland with non-insulated pipe, if Plains is able to timely obtain: (1) agreements from shippers to transport sufficient quantities of product to make the cost of replacing the segments economically viable; (2) the Federal, State, and Local permits that may be required; and (3) whatever additional rights are needed, including rights-of-way that may be needed from landowners. Obtaining required commercial commitments, permits, rights-of-way, and any other rights necessary for replacement is the sole responsibility of Plains.

"1.     On any replacement segments of Lines 901 or 903, Plains shall, prior to commencing operation of such segment(s):

"a.     Test for potential AC/DC interference. Where potential AC/DC interference exists, proper mitigation of interference shall be designed and installed during construction of replacement lines.

"b.     Conduct a close interval survey (CIS) and AC/DC interference survey.

"c.     Based on the CIS and AC/DC interference surveys, place additional cathodic-protection test stations at locations where the surveys demonstrate potential cathodic-protection deficiencies, following review and consultation with the OSFM regarding proposed test station locations.

"B.     As an alternative to replacement of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may restart the existing pipelines in accordance with the CD (including Appendix D) and applicable law.

"C.    As an alternative to replacement or restart of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may abandon all or any segments in accordance with all applicable laws and regulations." (Federal Consent Decree, appen. B, art. I, §§ 1, 2.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

In May 2024, Sable began conducting repair and maintenance activities to the Las Flores Pipelines. (Rusch decl., ¶ 5.) According to Sable, these activities were completed pursuant to previously granted coastal development permits, approvals, and EIR. (*Ibid.*)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id.* & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (Rusch decl., ¶ 7 & exhibits B, C.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (Rusch decl., ¶ 9 & exhibit E.)

On April 2, 2025, OSFM issued letters noting its receipt of PHMSA's decision stating that it has no objection to granting the State Waivers. (Rusch decl., ¶ 10 & exhibits F, G.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On June 3, 2025, the court heard petitioners' ex parte applications for an administrative stay, or for an OSC re preliminary injunction and temporary restraining order (TRO). The court granted the petitioners' requests for a TRO and set a hearing on the OSCs for this date.

The applications for issuance of a preliminary injunction are opposed by OSFM and by Sable.

**Analysis:**

Notwithstanding the issuance of the TRO, the burden is on petitioners, as the parties seeking injunctive relief, to show all elements necessary to support issuance of a preliminary injunction. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.) A preliminary injunction is available "[w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action." (Code Civ. Proc., § 526, subd. (a)(2).)

"The trial courts consider two interrelated questions in deciding whether to issue a preliminary injunction: 1) are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant; and 2) is there a reasonable probability that the plaintiffs will prevail on the merits. [Citations.] '[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.]" (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206.)

(A)    Likelihood of Success on the Merits

Petitioners raise multiple claims in their petitions that separately could support issuance of an injunction. It is therefore necessary to address these claims in turn.

(i)    CEQA

Petitioners each assert a claim under CEQA based upon OSFM's issuance of the State Waivers without preparing environmental documentation, without providing public notice, and without providing an opportunity for public comment. (CBD Petition, ¶¶ 128-129; EDC Petition, ¶ 224.)

"[CEQA] and the regulations implementing it (Cal. Code Regs., tit. 14, § 15000 et seq.) embody California's strong public policy of protecting the environment. 'The basic purposes of CEQA are to: [¶] (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved.' [Citation.]" (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285–286 (*Tomlinson*).)

"To achieve these goals, CEQA and the implementing regulations provide for a three-step process. In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency. (§ 21065.)" (*Tomlinson, supra,* 54 Cal.4th at p. 286.)

"The second step of the process is required if the proposed activity is a 'project.' The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption (§ 21080) or a categorical exemption set forth in the regulations (§ 21084, subd. (a); Cal. Code Regs., tit. 14, § 15300). A categorically exempt project is not subject to CEQA, and no further environmental review is required. [Citations.] If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' [Citations.] Otherwise, the agency must proceed to the third step, which entails preparation of an environmental impact report before approval of the project. (§§ 21100, subd. (a), 21151, subd. (a).)" (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

CBD asserts that restarting the Las Flores Pipelines by issuance of the State Waivers is a "project" under CEQA requiring environmental review. (CBD Application, at pp. 21-23.) OSFM and Sable argue that the issuance of the State Waivers is not a "project" or is otherwise not subject to CEQA.

" 'Project' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] … [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Pub. Resources Code, § 21065.)

"The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (Cal. Code Regs., tit. 14, § 15378, subd. (c).)

Under this definition, the issuance of the State Waivers does not appear to constitute a "project" separately subject to CEQA review. The State Waivers would at most constitute a separate governmental approval for the underlying activity, which is the restart of the Las Flores Pipelines. The court concludes that the issuance of the State Waivers does not itself cause a change or authorize a change in the environment. (See *Simons v. City of Los Angeles* (1976) 63 Cal.App.3d 455, 466.)

If the State Waivers were considered more broadly, i.e., as a proxy for the restart of the Las Flores Pipelines, the resolution under CEQA is not clear. OSFM and Sable argue that, in such instance, the categorical existing facilities exemption applies.

"Class 1 consists of the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of existing or former use. The types of 'existing facilities' itemized below are not intended to be all-inclusive of the types of projects which might fall within Class 1." (Cal. Code Regs., tit. 14, § 15301; see also Pub. Resources Code, § 21084; Cal. Code Regs., tit. 14, § 15300.)

"Examples include but are not limited to: [¶] … [¶] (d) Restoration or rehabilitation of deteriorated or damaged structures, facilities, or mechanical equipment to meet current standards of public health and safety, unless it is determined that the damage was substantial and resulted from an environmental hazard such as earthquake, landslide, or flood." (Cal. Code Regs., tit. 14, § 15301, subd. (d).)

An issue now before the California Supreme Court is whether "negligible" in this exemption pertains to a negligible change in use or to a change that presents a negligible risk of environmental harm. (*Sunflower Alliance v. Department of Conservation* (2024) 105 Cal.App.5th 771, review granted Dec. 18, 2024, S287414 (*Sunflower*).) Under broader circumstances, this issue may bear upon the application of the exemption. But as the issue is presented here, such analysis is premature because the State Waivers are not themselves directly or indirectly causing change to the environment.

EDC, in particular, focuses its argument on the need for updated environmental review:

"When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs:

"(a)    Substantial changes are proposed in the project which will require major revisions of the environmental impact report.

"(b)    Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report.

"(c)    New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." (Pub. Resources Code, § 21166.)

"When an EIR has been certified or a negative declaration adopted for a project, no subsequent EIR shall be prepared for that project unless the lead agency determines, on the basis of substantial evidence in the light of the whole record, one or more of the following:

"(1)    Substantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects;

"(2)    Substantial changes occur with respect to the circumstances under which the project is undertaken which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects; or

"(3)    New information of substantial importance, which was not known and could not have been known with the exercise of reasonable diligence at the time the previous EIR was certified as complete or the negative declaration was adopted, shows any of the following:

"(A)    The project will have one or more significant effects not discussed in the previous EIR or negative declaration;

"(B)    Significant effects previously examined will be substantially more severe than shown in the previous EIR;

"(C)    Mitigation measures or alternatives previously found not to be feasible would in fact be feasible and would substantially reduce one or more significant effects of the project, but the project proponents decline to adopt the mitigation measure or alternative; or

"(D)    Mitigation measures or alternatives which are considerably different from those analyzed in the previous EIR would substantially reduce one or more significant effects on the environment, but the project proponents decline to adopt the mitigation measure or alternative."

(Cal. Code Regs., tit. 14, § 15162, subd. (a).)

EDC argues that a subsequent EIR is required because: (1) operating the pipeline system without an effective cathodic protection system throughout the entire length of the pipeline constitutes a change in the project that increases the risk and severity of impacts, requiring major revisions to the 1985 EIR; (2) the failure of the pipeline system's cathodic protection system and resulting corrosion constitutes a change in circumstances; (3) it was only after the 2015 oil spill that the pipeline system was discovered to lack effective cathodic protection, which constitutes new information showing that the risk of an oil spill is substantially more severe than previously determined.

The petitioners rely largely upon the declaration and reports of expert Richard Kuprewicz for evidence regarding pipeline safety. The testimony of Kuprewicz is the subject of other motions also pending before the court (discussed below) based in part upon Kuprewicz's present unavailability to be subject to a deposition. For purposes of these motions, the court will consider Kuprewicz's evidence with Kuprewicz's unavailability going to the weight of the evidence in the context of these applications for preliminary injunctions.

"After an initial EIR is certified, CEQA establishes a presumption against additional environmental review. An agency has jurisdiction to prepare a subsequent or supplemental EIR only if the agency grants a 'discretionary' approval on the project [citation, fn.], and certain statutorily enumerated new circumstances occur." (*San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 928.)

The 1985 EIR addressed the potential for an oil spill from pipeline operation. (Dorsi decl., exhibit 5.) There is a dispute among the parties as to whether the 2015 spill and the failure of effective cathodic protection demonstrate new information requiring more or different analysis than present the 1985 EIR. However, this analysis, like the discussion above, is an analysis of a "project," and in particular the restart of pipeline operations as compared with the State Waivers at issue here.

The court concludes that, in the present administrative posture, petitioners are not likely to succeed on the merits of showing a violation of CEQA. Nonetheless, the court finds that petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

(ii)    Federal Claims

In addition to violations of CEQA, petitioners assert violations of the FPSA in failing to provide a public process and failing to provide a statement of reasons.

Case 2:26-cv-05242-SVW-SSC Document 17 Filed 05/14/26 Page 231 of 423 Page ID #:8527

"General requirements.--A person owning or operating a pipeline facility shall--

"(1)    comply with applicable safety standards prescribed under this chapter, except as provided in this section or in section 60126;

"(2)    prepare and carry out a plan for inspection and maintenance required under section 60108(a) and (b) of this title;

"(3)    allow access to or copying of records, make reports and provide information, and allow entry or inspection required under subsections (a) through (e) of section 60117 of this title; and

"(4)    conduct a risk analysis, and adopt and implement an integrity management program, for pipeline facilities as required under section 60109(c)." (49 U.S.C. § 60118(a).)

"Waivers by Secretary.--

(1)    Nonemergency waivers.--

"(A)    In general.--On application of an owner or operator of a pipeline facility, the Secretary by order may waive compliance with any part of an applicable standard prescribed under this chapter with respect to such facility on terms the Secretary considers appropriate if the Secretary determines that the waiver is not inconsistent with pipeline safety.

"(B) Hearing.--The Secretary may act on a waiver under this paragraph only after notice and an opportunity for a hearing."

(49 U.S.C. § 60118(c)(1).)

"Statement of reasons.--The Secretary shall state in an order issued under this subsection the reasons for granting the waiver." (49 U.S.C. § 60118(c)(3).)

"Waivers by State authorities.--If a certification under section 60105 of this title or an agreement under section 60106 of this title is in effect, the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c) of this section. However, the authority must give the Secretary written notice of the waiver at least 60 days before its effective date. If the Secretary makes a written objection before the effective date of the waiver, the waiver is stayed. After notifying the authority of the objection, the Secretary shall provide a prompt opportunity for a hearing. The Secretary shall make the final decision on granting the waiver." (49 U.S.C. § 60118(d).)

Petitioners argue that, because "the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c)" and because the Secretary may act on a waiver only after notice and an opportunity for a hearing and by stating reasons, petitioners may set aside the State Waivers until the OSFM complies with section 60118.

OSFM and Sable argue that petitioners may not seek such remedies under federal law for violation of these non-discretionary procedural requirements, citing *City and County of San Francisco v. U.S. Dept. of Transp.* (9th Cir. 2015) 796 F.3d 993 (*San Francisco*). In *San Francisco*, the litigation was initiated following an explosion of a natural gas transmission pipeline. (*Id.* at p. 995.) Fearing a recurrence, the City and County of San Francisco sued under the FPSA's citizen suit provision alleging that the PHMSA failed to comply with the FPSA. (*Ibid.*) The city sought declaratory and injunctive relief to compel the FPSA to comply with its duties under the FPSA. (*Id.* at pp. 997-998.) The District Court dismissed the suit with leave to amend, finding that the citizen suit provision (49 U.S.C. § 60121) was " 'not an appropriate vehicle for seeking mandamus relief regarding defendants' performance of their regulatory obligations.' " (*Id.* at p. 998.) The city amended its complaint to include claims under the Administrative Procedures Act, arguing that the PHMSA approval of the state agency's certification was arbitrary and capricious, and a failure to act, in violation of title 5, United States Code section 706. (*Ibid.*) The District Court dismissed these claims as well. (*Ibid.*)

On appeal in *San Francisco*, the Ninth Circuit affirmed. (*San Francisco*, *supra*, 796 F.3d at p. 1004.) "The Pipeline Safety Act, by its plain language, allows only a very limited private right of action. It permits injunctive citizen suits against the United States or other entities 'for a violation of this chapter or a regulation prescribed or order issued under this chapter.' [Citation.] In other words, private citizen suits are authorized for substantive statutory or regulatory violations. By its terms, the provision does not authorize a mandamus-type action to compel the Agency to perform non-discretionary regulatory duties." (*Id*. at pp. 998–999.)

The OSFM also argues that the notice and hearing requirements of section 60121 appear in the FPSA as procedural protections for the benefit of the applicant seeking the waiver and not for the more general purpose of public participation. This latter point is consistent with the corresponding regulations: "Hearing means an informal conference or a proceeding for oral presentation. Unless otherwise specifically prescribed in this part, the use of 'hearing' is not intended to require a hearing on the record in accordance with section 554 of title 5, U.S.C." (49 C.F.R. § 190.3 (2025).)

Considering these regulations and the reasoning of *San Francisco*, there is a reasonable basis to find that federal law does not require a hearing with generalized public participation and hence to find no violation of the procedural aspects of the FPSA. Despite this lack of requirement, petitioners, nonetheless, actually submitted evidence to the OSFM. (CDB Petition, ¶¶ 68-74; EDC Petition, ¶ 116.) A reasonable inference is that the petitioners have had an opportunity to present evidence to OSFM regardless of whether there is a public participation requirement.

The court finds that petitioners have not shown a likelihood of success on the merits as to claims based on federal law, but again petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

(iii)   State Claims

Corresponding to their FPSA claims, petitioners also assert violations of the CPSA.

"It is the intent of the Legislature, in enacting this chapter, that the State Fire Marshal shall exercise exclusive safety regulatory and enforcement authority over intrastate hazardous liquid pipelines and, to the extent authorized by agreement between the State Fire Marshal and the United States Secretary of Transportation, may act as agent for the United States Secretary of Transportation to implement the federal Hazardous Liquid Pipeline Safety Act of 1979 (49 U.S.C. Sec. 60101 et seq.) and federal pipeline safety regulations as to those portions of interstate pipelines located within this state, as necessary to obtain annual federal certification." (Gov. Code, § 51010.)

"The State Fire Marshal shall adopt hazardous liquid pipeline safety regulations in compliance with the federal law relating to hazardous liquid pipeline safety, including, but not limited to, compliance orders, penalties, and inspection and maintenance provisions, and including amendments to those laws and regulations that may be hereafter enacted and adopted." (Gov. Code, § 51011, subd. (a).)

"The State Fire Marshal may exempt the application of regulations adopted pursuant to this section to any pipeline, or portion thereof, when it is determined that the risk to public safety is slight and the probability of injury or damage remote." (Gov. Code, § 51011, subd. (b).)

"Notification of exemptions shall be written, and shall include a discussion of those factors that the State Fire Marshal considers significant to the granting of the exemption." (Gov. Code, § 51011, subd. (c).)

"Title 49 of the Code of Federal Regulations, Part 195 is hereby adopted by reference as it relates to hazardous liquid pipelines." (Cal. Code Regs., tit. 19, § 2000.)

While federal procedural law may not separately provide for mandate remedies, California procedural law generally provides for writs of mandate to command California officials to comply with the law. (See Code Civ. Proc., §§ 1085, 1094.5.)

Reviewing the State Waivers, the court concludes that the State Waivers do not contain a discussion of factors that the OSFM considered significant in granting the exemption beyond conclusions.

"Administrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein. [Citation.] However, findings by implication cannot be substituted for specific findings when they are required by law." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.)

Case 2:26-cv-05242-SVW-SSC   Document 17   Filed 05/14/26   Page 235 of 423   Page
ID #:8531

Given the specific findings required by section 51011, subdivision (b), it appears that the statutorily-required discussion of subdivision (c) must in some appropriate way at least connect the factors stated (and their significance) to the findings that the risk to public safety is slight and the probability of injury or damage remote. The court finds that petitioners have established a reasonable probability of success on the merits on this claim.

(B)    Greater Harms

Petitioners argue that they, and the portion of the public they represent, would suffer the greater harm by the erroneous denial of a preliminary injunction. In particular, petitioners argue that the potential harm to natural resources and the failure to consider impacts of the project or to allow public input outweigh any delay for Sable. Sable argues that such harm is purely speculative and that it, and the general public, would suffer economic harms delaying or preventing the domestic oil production from Sable's use of the pipelines by the erroneous issuance of a preliminary injunction. The OSFM argues that erroneous issuance of an injunction against public officers in performing their duties is a form of irreparable injury.

As discussed below, because the petitions focus on deficiencies in the State Waivers as issued by OSFM and because additional approvals are required before the pipelines subject to the State Waivers may be restarted, the court finds that no party has made a strong showing that it would suffer greater harm by the erroneous grant or denial of the preliminary injunction.

(C)    Balance of Equities

In arguing that CEQA is inapplicable, Sable and OSFM make the point that the State Waivers constitute but one approval of several necessary to restart the Las Flores Pipelines. This argument is carried forward into their analysis of the relative harms: "Petitioners' alleged harm from restart of the Pipelines [citations] is purely speculative due to the additional approval Sable must obtain before the Pipelines are operational. [Citation.] As Petitioners acknowledge, and as required by the Consent Decree, OSFM must approve a Restart Plan before Sable can restart the Pipelines. [Citations.] When reviewing Sable's Restart Plan, OSFM will necessarily consider the safety of operations and integrity of the pipelines to minimize potential safety risks." (Sable Opposition, at p. 19.)

Case 2:26-cv-05242-SVW-SSC   Document 17   Filed 05/14/26   Page 236 of 423   Page ID #:8532

The principal harms argued both by petitioners and by Sable are based upon what would or would not happen when the Las Flores Pipelines are restarted. The evidence presented by all parties, however, shows that the restart of the Las Flores Pipelines is dependent upon approvals that have not yet been given. The respective potential harms are thus premature in this analysis. As the OSFM argues, there are potential harms in premature and potentially unnecessary judicial interference with the activities of regulators.

As the evidence and arguments of the petitioners most strongly demonstrate, the principal harm to be avoided is the restart of the Las Flores Pipelines without compliance with all applicable law. Because such a restart requires additional approvals, this harm may be avoided in the present by having adequate notice that a restart has been approved and so providing petitioners with a reasonable opportunity to address compliance issues of such a restart based upon such future approvals. By the same token, Sable would not be materially harmed by being restrained from restarting the Las Flores Pipelines without first providing such adequate notice. The OSFM would not be restrained or constrained in the interim to address all such matters within its regulatory purview.

Accordingly, the court will narrowly grant the motions for preliminary injunctions to enjoin the restart of the Las Flores Pipelines, as herein defined, until 10 court days following Sable's filing and service of notice that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree. Such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025 (the date of the court's grant of the TRO in these matters). The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing and the date of service.

Under these terms of the preliminary injunction, absent further order of the court, Sable may restart the Las Flores Pipelines 10 court days following the giving of notice of receiving all necessary approvals and permits. Sable is not prevented by this injunction from taking steps towards restarting the Las Flores Pipelines short of actual restart. The OSFM is not impeded by the injunction from taking steps it finds appropriate in its regulatory capacity, including any steps OSFM may find desirable following this order. The conditions of the injunction do not allow restart without prior notice. This notice requirement and intervening waiting period provides reasonable time and opportunity for the petitioners and for the OSFM to take any requisite procedural step they may find appropriate before restart is to occur. The ruling is without prejudice to petitioners to seek additional, further, or other relief from the court, if any is warranted, before such restart. The court would be in a position to assess the evidence and arguments of the parties as they then exist, including, presumably, the fact and effects of actions taken as a result of obtaining the remaining necessary approvals and permits.

(D)    Bond

"On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (Code Civ. Proc., § 529, subd. (a).)

In view of the nature of the injunction issued, the potential damages caused by a wrongful injunction are minimal. The court fixes the amount of the undertaking required by section 529 at $1,000.00, to be filed by CBD and EDU, respectively in each case, on or before July 25, 2025.

(2)    Motions re Richard B. Kuprewicz

In addition to the applications for issuance of preliminary injunctions, the parties have filed motions related to petitioners' expert witness Richard B. Kuprewicz: (1) motion of Sable (case No. 25CV02244) to compel the deposition of Kuprewicz; (2) the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions; (3) motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz; and (4) the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions. There are also motions now set for hearing in October in each case to quash Sable's deposition subpoena and notice of deposition, and to stay the deposition of Kuprewicz.

Case 2:26-cv-05242-SVW-SSC   Document 17   Filed 05/14/26   Page 238 of 423   Page
ID #:8534

As discussed briefly above, the court has considered, but does not rely upon, the substance of the declaration of Kuprewicz to reach its conclusions in this ruling. The motions to strike the declaration will be denied. The motions to compel the deposition of Kuprewicz are denied as moot. To the extent these ruling moot the pending motions to quash, the court expects the parties to advise the court of that fact.

Based upon the court's ruling on the merits of the applications for preliminary injunction, it is not necessary at this time to determine what role, if any, the testimony of Kuprewicz may have in further proceedings. The court expects that petitioners will fully consider the issues raised by Sable in these motions in any further filings with the court.

## JUDGES

### JUDGE DONNA GECK

Dept. 4 SB-Anacapa

1100 Anacapa Street P.O. Box 21107

Santa Barbara, CA 93121-1107

US

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 281865 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY
NAME: Michael S. Dorsi, Deputy Attorney General
STATE BAR NUMBER: 281865
FIRM NAME: California Attorney General's Office
STREET ADDRESS: 455 Golden Gate Avenue, Suite 11000
CITY: San Francisco          STATE: CA     ZIP CODE: 94102
TELEPHONE NO.: 415-510-3802      FAX NO.:
EMAIL ADDRESS: Michael.Dorsi@doj.ca.gov
ATTORNEY FOR (name): Respondents California Department of Forestry and Fire Protection, et a

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
DarreE. Parker, Executive Officer
7/30/2025 10:34 AM
By: Yadira De La Cruz , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Barbara
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa Divsiion

PLAINTIFF/PETITIONER: Environmental Defense Center, et al
DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one):   [X] **UNLIMITED CASE** (Amount demanded exceeds $35,000)     [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 25CV02247 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: August 1, 2025      Time: 8:30 a.m.      Dept.: 4      Div.:      Room:

Address of court (if different from the address above):

[X]   **Notice of Intent to Appear by Telephone,  by** *(name):* Michael S. Dorsi (by videoconfernce)

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [X] This statement is submitted by party *(name):* Respondents California Department of Forestry and Fire Protection, et al.
   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*  April 15, 2025
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint

      (1) [ ] have not been served *(specify names and explain why not):*

      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ] have had a default entered against them *(specify names):*

   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in [X] complaint     [ ] cross-complaint     *(Describe, including causes of action):*
      Petition for writ of mandate and complaint challenging California Department of Forestry and Fire Protection's Office of the State Fire Marshal issuance of State Waivers for Las Flores Pipeline System

**Page 1 of 5**

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

CM-110

| PLAINTIFF/PETITIONER: Environmental Defense Center, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02247 |

4.  b.   Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

Petitioners violations of federal and state procedures for pipeline safety regulations and California Environmental Quality Act

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a. ☐ The trial has been set for *(date):*

b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a. ☒ days *(specify number):* 1

b. ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a. Attorney:

b. Firm:

c. Address:

d. Telephone number:       f. Fax number:

e. Email address:       g. Party represented:

☐ Additional representation is described in Attachment 8.

9.  **Preference**

☒ This case is entitled to preference *(specify code section):* Public Resources Code § 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
Cal. Rules of Court, Rule 3.811(b)(1) [equitable relief]

CM-110 [Rev. January 1, 2024]       **CASE MANAGEMENT STATEMENT**       **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02247 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: Environmental Defense Center, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02247 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.

(2) Name of court: Santa Babara County Superior Court

(3) Case number: 25CV02244

(4) Status: Pending

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
Possible, should be discussed at case management conference

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
Respondent is preparing the administrative record but, given the nature of the relevant agency process, this is more time-consuming than had initially been expected.

CM-110 [Rev. January 1, 2024] **CASE MANAGEMENT STATEMENT** **Page 4 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02247 |

17. **Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

   ☒ The party or parties request that the following additional matters be considered or determined at the case management conference  (specify):
This Court should address how to approach future requests for ex parte relief.

19. **Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
The parties conferred on some subjects and expect to confer on other subjects between now and the date of the case management conference.

   b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:  July 30, 2025

| Michael S. Dorsi, Deputy Attorney General | ▶ */s Michael S. Dorsi* |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

| | ▶ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

## DECLARATION OF SERVICE

Case Names:    **ENVIRONMENTAL DEFENSE CENTER, et al. v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.**

Case Nos.:    **25CV02247**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter.

On July 30, 2025, I served the attached:

**CASE MANAGEMENT STATEMENT**

by transmitting a true copy via electronic mail addressed as follows:

| | |
|---|---|
| Linda Krop<br>lkrop@environmentaldefensecenter.org<br>Jeremy M. Frankel<br>jfrankel@environmentaldefensecenter.org<br>Tara C. Rengifo<br>trengifo@environmentaldefensecenter.org<br>ENVIRONMENTAL DEFENSE CENTER | Julie Teel Simmonds<br>jteelsimmonds@biologicaldiversity.org<br>David Pettit<br>dpettit@biologicaldiversity.org<br>Talia Nimmer<br>tnimmer@biologicaldiversity.org<br>CENTER FOR BIOLOGICAL DIVERSITY |
| Moore, DJ djmoore@paulhastings.com<br>Hanelin, Benjamin J.<br>benjaminhanelin@paulhastings.com<br>Rogers, Natalie C.<br>natalierogers@paulhastings.com<br>PAUL HASTINGS LLP | Bolender, Brooke<br>Brooke.Bolender@alston.com<br>Jeffrey Dintzer jeffrey.dintzer@alston.com<br>ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 30, 2025 at San Francisco, California.

| J. Mirarchi | */s/ J. Mirarchi* |
|:---:|:---:|
| Declarant | Signature |

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 139056 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Jeffrey D. Dintzer | | *ELECTRONICALLY FILED* |

ATTORNEY OR PARTY WITHOUT ATTORNEY   STATE BAR NUMBER: 139056
NAME: Jeffrey D. Dintzer
FIRM NAME: Alston & Bird LLP
STREET ADDRESS: 350 South Grand Avenue, 51st Floor
CITY: Los Angeles     STATE: CA     ZIP CODE: 90071-1410
TELEPHONE NO.: (213) 576-1000     FAX NO.: (213) 576-1100
EMAIL ADDRESS: jeffrey.dintzer@alston.com
ATTORNEY FOR *(name):* Sable Offshore Corp., Pacific Pipeline Company

**FOR COURT USE ONLY**
ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/31/2025 2:56 PM
By: Narzralli Baksh , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
STREET ADDRESS: 1100 Anacapa St.
MAILING ADDRESS: 1100 Anacapa St.
CITY AND ZIP CODE: Santa Barbara, 93101
BRANCH NAME: Anacapa Division

PLAINTIFF/PETITIONER: Environmental Defense Center et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*   [X] **UNLIMITED CASE**     [ ] **LIMITED CASE** | 25CV02247 |
| (Amount demanded exceeds $35,000)     (Amount demanded is $35,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: August 1, 2025     Time: 8:30 a.m.     Dept.: 4     Div.:     Room:

Address of court *(if different from the address above):*

[ ] **Notice of Intent to Appear by Telephone, by** *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [X] This statement is submitted by party *(name):* Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.
   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):* April 15, 2025
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served *(specify names and explain why not):*

      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ] have had a default entered against them *(specify names):*

   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in   [X] complaint     [ ] cross-complaint     *(Describe, including causes of action):*
   Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

Page 1 of 5

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

4. b. Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
See Attachment 4b.

☒ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**

   a. ☐ The trial has been set for *(date):*

   b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

   a. ☒ days *(specify number):* 1

   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

   a. Attorney:

   b. Firm:

   c. Address:

   d. Telephone number:          f. Fax number:

   e. Email address:             g. Party represented:

   ☒ Additional representation is described in Attachment 8.

9. **Preference**

   ☒ This case is entitled to preference *(specify code section):* Public Resources Code section 21167.1(a)

10. **Alternative dispute resolution (ADR)**

   a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

   (1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

   (2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

   b. **Referral to judicial arbitration or civil action mediation** (if available).

   (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

   (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

   (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

---

CM-110 [Rev. January 1, 2024]    **CASE MANAGEMENT STATEMENT**    **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

|  | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER:  Environmental Defense Center et al.<br>DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | CASE NUMBER:<br>25CV02247 |
|---|---|

11. **Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

12. **Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

13. **Related cases, consolidation, and coordination**

   a. ☒ There are companion, underlying, or related cases.

     (1) Name of case: Center for Biological Diversity et al. v. Cal. Dept. of Forestry & Fire Protection et al.

     (2) Name of court: Santa Barbara Superior Court

     (3) Case number: 25CV02244

     (4) Status: Pending

     ☐ Additional cases are described in Attachment 13a.

   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

14. **Bifurcation**

   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

15. **Other motions**

   ☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
The Court has ordered Real Parties to provide 10 days notice of the approval of the "Restart Plan" as referenced in the Consent Decree. Based on meet and confer with Petitioners, Real Parties anticipate Petitioners will seek a temporary restraining order preventing the restart of the Pipelines. A proposed briefing schedule is included in Attachment 15.

16. **Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

   c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
The Parties are awaiting preparation and certification of the administrative record by Respondent, Office of State Fire Marshall.

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 3

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: July 31, 2025

Jeffrey D. Dintzer
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**Attachment 4b**

4.b. Provide a brief statement of the case, including any damages:


Plaintiffs and Petitioners Center for Biological Diversity and Wishtoyo Foundation and Environmental Defense Center, et al. ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

By way of their petitions, Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees.

1

**Attachment 8**

Real Parties in Interest will be represented by the following attorneys:


**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100


**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899


**FAUVER LARGE ARCHBALD & SPRAY**
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flasllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone:     (805) 966-7000
Facsimile:     (805) 966-7227

2

**Attachment 15**

As proposed by the Office of State Fire Marshal regarding the Court's 10-day notice period, Real Parties are in agreement with the following briefing schedule for an anticipated request for temporary restraining order that may be brought by the Petitioners upon issuance of notice of the approval of the "Restart Plan":

| Briefs & Hearing | Proposed Deadline During 10-Day Notice Period |
|---|---|
| Petitioners' Opening Joint Brief for A Temporary Restraining Order | 5th Court Day |
| Real Parties' and Respondents' Opposition Briefs | 8th Court Day |
| Hearing on Temporary Restraining Order | 10th Court Day |

3

**PROOF OF SERVICE**

1.    I, Kim Niz, declare:

2.    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On July 31, 2025, I served the document **CASE MANAGEMENT STATEMENT** on the interested parties in this action addressed as follows:  **See Attached Service List**

☒    BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 31, 2025, at Los Angeles, California.

_____
/s/ *Kim Niz*
Kim Niz

1
PROOF OF SERVICE

**SERVICE LIST**

| | |
|---|---|
| Julie Teel Simmons, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>**Center for Biological Diversity**<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612 | **ATTORNEYS FOR PETITIONERS**<br>CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION<br><br>Tel.:    (510) 844-7100<br>Fax:    (510) 844-7150<br>Email: jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>          tnimmer@biologicaldiversity.org |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Regnifo, Esq.<br>**ENVIRONMENTAL DEFENSE CENTER**<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Phone: (805) 963-1622; Fax: (805) 962-3152 | **ATTORNEYS FOR PETITIONERS**<br>ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation<br><br>Tel.:    (510) 844-7100<br>Fax:    (510) 844-7150<br>Email: lkrop@environmentaldefensecenter.org<br>          jfrankel@environmentaldefensecenter.org<br>          trengifo@environmentaldefensecenter.org |
| Michael S. Dorsi, Esq.<br>**California Attorney General's Office**<br>55 Golden Gate Ave, Ste 11000,<br>San Francisco, CA 94102 | **ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal<br><br>Tel.:    (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov |
| Duncan Joseph Moore, Esq.<br>Benjamin J. Hanelin, Esq.<br>Natalie C. Rogers, Esq.<br>**PAUL HASTINGS LLP**<br>1999 Avenue of the Stars, 27th Floor<br>Century City, California, 90067 | **ATTORNEYS FOR REAL PARTIES IN INTEREST**<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:    (310) 620-5879<br>Email: djmoore@paulhastings.com<br>          benjaminhanelin@paulhastings.com<br>          natalierogers@paulhastings.com |
| Trevor D. Large, Esq.<br>**FAUVER, LARGE, ARCHBALD & SPRAY LLP**<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | **ATTORNEYS FOR REAL PARTIES IN INTEREST**<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:    (805) 966-7000<br>Email: TLarge@FLASllp.com |

2

PROOF OF SERVICE

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:   08/01/2025                              Time:   8:30 AM
Judicial Officer:   Donna D Geck
Deputy Clerk:   Maria Vidal                                     Dept:   SB Dept 4
Deputy Sheriff:   Marco Diaz
Bailiff/Court Officer:                                          Case No: 25CV02247
Court Reporter:   Elizabeth Mooy

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

| | |
|---|---|
| Linda Krop | Petitioner's Attorney |
| Jeremy Frankel | Petitioner's Attorney |
| Michael Dorsi | Respondent's Attorney |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Garrett Stanton | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |

---

**NATURE OF PROCEEDINGS:** Case Management Conference


The Court took the Motion to Quash scheduled for 10/24/25 off calendar.

The Case Management Conference was continued as follows:

September 19, 2025 10:00 AM
Case Management Conference
Geck, Donna D
SB Dept 4




DARREL E. PARKER, EXECUTIVE OFFICER              Minutes Prepared by:

                                    _____ , Deputy
                                                Maria Vidal

---

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
8/27/2025 5:17 PM
By: Narzralli Baksh , Deputy

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,<br><br>     Petitioners and Plaintiffs,<br><br>  vs.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,<br><br>     Respondents and Defendants,<br><br>  and<br><br>SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,<br><br>     Real Parties in Interest. | Case No.: 25CV02247<br><br>**PETITIONERS AND PLAINTIFFS' NOTICE OF MOTION AND MOTION TO BIFURCATE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with [Proposed] Order]*<br><br>Date: September 19, 2025<br>Time: 10:00 a.m.<br>Dept.: 4<br>Judge: Honorable Donna D. Geck<br><br>Action Filed: April 15, 2025<br>Trial: None Set |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 19, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Department 4 of the California Superior Court for the County of Santa Barbara, Anacapa Division, located at 1100 Anacapa Street, Santa Barbara, CA 93101, Petitioners and Plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (collectively, "Petitioners") will and hereby do move this Court for an order bifurcating the procedural and substantive claims of this action and thereby phasing the case so that the straightforward procedural claims precede, and potentially obviate the need to litigate, the more technical substantive claims.

Pursuant to California Code of Civil Procedure sections 598 and 1048(b), the Court has discretion to bifurcate claims for a range of reasons, including the economy and efficiency of handling the litigation. Here, bifurcating Petitioners' procedural claims (First, Second, Third, Fifth, Seventh, and Eighth Causes of Action) from their substantive claims (Fourth and Sixth Causes of Action) will further the interests of judicial economy, case management efficiency, and preventing wasted time and expense to the parties. It will also further the express legislative policy to prioritize CEQA claims.

Petitioners' request is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other and further evidence as the Court may consider at the hearing on this Motion.

Dated: August 27, 2025                    Respectfully submitted,



Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Petitioners' action challenging the Office of the State Fire Marshal's (OSFM) issuance of State Waivers for pipelines CA-324 and CA-325 (the "Las Flores Pipeline System") is the perfect candidate for bifurcation. The filed Petition and Complaint includes two distinct types of claims: (1) straightforward procedural claims that OSFM failed to adhere to the legal processes required by the California Environmental Quality Act (CEQA) and pipeline safety laws, and (2) more technical and fact intensive substantive claims that OSFM failed to establish, as required, that the Waivers are consistent with pipeline and public safety. Should Petitioners prevail on one or more of its procedural claims, the Court need not reach Petitioners' substantive claims.

Bifurcation makes logical sense for case management, simplifies the issues, and promotes the goals of judicial economy and efficiency by streamlining the litigation and opening the door for potential early resolution by potentially obviating the need to litigate the substantive claims. Moreover, bifurcation of the procedural and substantive claims furthers the express legislative policy that courts prioritize CEQA claims (which, here, are procedural). Accordingly, Petitioners respectfully request that the Court bifurcate the procedural and substantive claims of this action and phase the trial so that the procedural claims precede the substantive claims.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

**A.   Real Parties' Efforts to Restart the Defective Las Flores Pipeline System**

This case arises from Real Parties' efforts to restart the Santa Ynez Unit oil and gas activities using the Las Flores Pipeline System — a defective pipeline system that ruptured in 2015 at Refugio State Beach, causing one of the worst oil disasters in California history. As was discovered after the spill, the pipeline system suffers from a critical design defect that leaves it vulnerable to pervasive corrosion and, consequently, another catastrophic rupture. Importantly, the pipeline system does not just threaten coastal resources; it passes through major sources of water supply; renowned parks and ecological reserves; and a populated suburban neighborhood in Buellton, California, complete with schools, parks, and dozens of residential homes.

Petitioners and Plaintiffs' Notice of Motion and Motion to Bifurcate

Rather than replacing the pipeline system or retrofitting it with an effective means of corrosion prevention, Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (together, "Sable") intend to simply restart the existing pipeline system under State Waivers issued by OSFM. The State Waivers, which excuse Sable from complying with critical corrosion prevention and remediation requirements, were approved without a public process, environmental review, or any analysis as to why the pipeline system can be safely restarted.

**B.    Petitioners' Procedural and Substantive Claims**

The Petition and Complaint challenging the State Waivers contains eight causes of actions: six raise purely procedural claims, and two mount substantive challenges to the decisions.

The procedural claims include the following:

- First Cause of Action: OSFM failed to provide a public process, including adequate public notice and a public hearing, as required by the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101 *et seq.* (the "FPSA").

- Second Cause of Action: OSFM failed to provide a statement of reasons in its Waiver approvals, as required by the FPSA.

- Third Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the FPSA.

- Fifth Cause of Action: OSFM failed to provide a discussion of significant factors in its Waiver approvals, as required by California's Elder Pipeline Safety Act, Gov. Code section 51010 *et seq.* (the "CPSA").

- Sixth Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the CPSA.

- Eighth Cause of Action: OSFM failed to prepare a subsequent Environmental Impact Report (EIR), as required by CEQA.

These claims are straightforward in that they require Petitioners merely to establish that OSFM failed to comply with its procedural mandates, and the only relevant facts are whether OSFM did or did not do so.

Petitioners and Plaintiffs' Notice of Motion and Motion to Bifurcate

Petitioners' substantive claims include their remaining two causes of action:

- Fourth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that "the waiver is not inconsistent with pipeline safety" — the relevant legal standard under the FPSA. (49 U.S.C. § 60118(c)(1)(A), (d).)

- Sixth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that "the risk to public safety is slight and the probability of injury or damage remote" — the relevant legal standard under the CPSA. (Gov. Code § 51011(b).)

These substantive claims are fact intensive, time intensive, and require the Court to delve into the technical details of pipeline safety.

## III.    LEGAL STANDARD

Courts have broad discretion to bifurcate claims. (*See, e.g., Regents of Univ. of Cal. v. Sheily* (2004) 122 Cal.App.4th 824, 833.) Pursuant to Code of Civil Procedure section 1048(b), courts may bifurcate issues or claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Under Code of Civil Procedure section 598, a party may move the court to order trial of any issue before trial of any other issue "when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted." Additionally, "[t]he statutory provisions for severance and separate trials (Code Civ. Proc. §§ 598, 1048) are not limited to the separate trial of a 'cause of action' but also authorize a separate trial of any 'issue'." (*Am. Motorists Ins. Co. v. Superior Court* (1998) 68 Cal.App.4th 864, 872.)

## IV.    ARGUMENT

### A.    Bifurcation Furthers Interests of Judicial Economy, Efficient Case Management, and Preventing Wasted Time and Expense to the Parties

One "objective" of bifurcation pursuant to Code of Civil Procedure section 598 "is avoidance of the waste of time and money caused by the unnecessary trial" of issues. (*Trickey v. Superior Court* (1967) 252 Cal.App.2d 650, 653.) Should Petitioners prevail on any of their procedural claims, it would obviate the need to litigate the substantive claims in this case, as OSFM would be required to vacate and

reconsider the Waivers in a procedurally compliant manner. (*See Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 (if the court's determination of issues it chooses to hear first are dispositive of the remaining issues, nothing further remains to be tried); *see also Regents of Univ. of Cal.*, *supra*, 122 Cal.App.4th at 833 (finding a "paradigm example of the propriety of bifurcation" where a second "issue to be decided by the court" is "dependent upon the first").) Thus, hearing the procedural claims first may very well conserve judicial resources and save the Parties much time and expense, especially considering that the Court has already found Petitioners likely to prevail on at least one procedural claim. (Order on Petitioners' Application for Preliminary Injunction, p. 16.)

Separately, bifurcation of proceedings into phases allows the court "to expedite and simplify the presentation of evidence," (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 888), and is a tool often used by courts to streamline litigation (*see Buran Equip. Co. v. H & C Inv. Co.* (1983) 142 Cal.App.3d 338, 343). Bifurcation here would so allow the Court to simplify and appropriately streamline the litigation. The Court can discretely consider the Petitioners' straightforward procedural claims without having to simultaneously delve into the technical details of pipeline safety. Plus, how the Court considers and rules on the procedural claims may very well inform how the Court evaluates and decides upon the substantive claims, since Petitioners allege that OSFM's procedural failures lend themselves to a finding of abuse of discretion.

**B.    Bifurcation Is Necessary to Achieve Prompt Determination of Petitioners' CEQA Claim**

Beyond judicial economy and case management efficiency, there is another reason why bifurcation is advisable here: to further the express legislative policy that CEQA claims be promptly brought, briefed, and resolved pursuant to Public Resources Code section 21167.1. (*Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1134, fn. 13 ("Obviously, the rationale of the statutory scheme is to avoid delay and achieve prompt resolution of CEQA claims.").)

Although CEQA claims can be both procedural and substantive, OSFM's failure to conduct subsequent environmental review amounts to a clear procedural violation. Hearing Petitioners' procedural CEQA claim prior to, and separate from, Petitioners' time and fact intensive substantive claims will expedite resolution of the CEQA claim, consistent with the Legislative intent.

**V.      CONCLUSION**

For the above reasons, Petitioners respectfully request that this Court bifurcate the procedural and substantive claims of this action and phase the trial so that the procedural claims precede the substantive claims.

Dated: August 27, 2025                    Respectfully submitted,

Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On August 27, 2025, I served the above document(s) described as **PETITIONERS AND PLAINTIFFS' NOTICE OF MOTION AND MOTION TO BIFURCATE** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒ **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 27, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

**SERVICE LIST**

| | |
|---|---|
| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>Myung Park<br>Myung.Park@doj.ca.gov<br>Matthew Bullock<br>Matthew.Bullock@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEYS FOR<br>RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire<br>Protection, Office of the State Fire Marshal; and<br>Daniel Berlant, in his official capacity as State Fire<br>Marshal |
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN<br>INTEREST<br>Sable Offshore Corp. and Pacific Pipeline<br>Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN<br>INTEREST<br>Sable Offshore Corp. and Pacific Pipeline<br>Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBALD & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN<br>INTEREST<br>Sable Offshore Corp. and Pacific Pipeline<br>Company |

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Linda Krop (118773); Jeremy Frankel (344500); Tara Rengifo (307670)
FIRM NAME: Environmental Defense Center
STREET ADDRESS: 906 Garden Street
CITY: Santa Barbara     STATE: CA     ZIP CODE: 93101
TELEPHONE NO.: (805) 963-1622     FAX NO.:
EMAIL ADDRESS: lkrop@environmentaldefensecenter.org
ATTORNEY FOR (name): Petitioners/Plaintiffs Environmental Defense Center et al.

*FOR COURT USE ONLY*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/4/2025 3:08 PM
By: Narzralli Baksh , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa

PLAINTIFF/PETITIONER: Environmental Defense Center et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):** [X] **UNLIMITED CASE** (Amount demanded exceeds $35,000)    [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 25CV00247 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: September 19, 2025     Time: 10:00 a.m.     Dept.: 4     Div.: Anacapa     Room:

Address of court *(if different from the address above):*

[ ] **Notice of Intent to Appear by Telephone, by** *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*

   a. [ ]   This statement is submitted by party *(name):*

   b. [X]   This statement is submitted **jointly** by parties *(names):* Plaintiffs/Petitioners Environmental Defense Center et al.

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*

   a. The complaint was filed on *(date):* April 15, 2025

   b. [ ]   The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*

   a. [X]   All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [ ]   The following parties named in the complaint or cross-complaint

      (1) [ ]   have not been served *(specify names and explain why not):*

      (2) [ ]   have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ]   have had a default entered against them *(specify names):*

   c. [ ]   The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**

   a. Type of case in   [X] complaint   [ ] cross-complaint   *(Describe, including causes of action):*
   Petitioners challenge, under CCP 1085 and 1094.5, the Office of the State Fire Marshal's issuance of State Waivers for the Las Flores Pipeline System. Petitioners allege that, in issuing the waivers, OSFM failed to comply with federal and state pipeline safety laws, failed to comply with the California Environmental Quality Act, and otherwise abused its discretion.

Page 1 of 5

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV00247 |

4. b. Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
See Attachment 4b

[ **x** ] *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request [ ] a jury trial [ **x** ] a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**

a. [ ] The trial has been set for *(date):*

b. [ **x** ] No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
October 16-17: attorneys for Petitioners will be attending an environmental law conference in Yosemite.
December 22 - January 2: attorneys for Petitioners will be out of town and their offices closed for the holidays

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a. [ **x** ] days *(specify number):* 1-2

b. [ ] hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial [ **x** ] by the attorney or party listed in the caption [ ] by the following:

a. Attorney:

b. Firm:

c. Address:

d. Telephone number:            f. Fax number:

e. Email address:               g. Party represented:

[ ] Additional representation is described in Attachment 8.

9. **Preference**

[ **x** ] This case is entitled to preference *(specify code section):* Pub. Res. Code § 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel [ **x** ] has [ ] has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party [ ] has [ ] has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) [ ] This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) [ ] Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) [ **x** ] This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
Cal. Rules of Court, rule 3.811(b)(1)

---

CM-110 [Rev. January 1, 2024]                **CASE MANAGEMENT STATEMENT**                **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV00247 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | [x] | [x] Mediation session not yet scheduled<br>[ ] Mediation session scheduled for *(date)*:<br>[ ] Agreed to complete mediation by *(date)*:<br>[ ] Mediation completed on *(date)*: |
| (2) Settlement conference | [x] | [ ] Settlement conference not yet scheduled<br>[ ] Settlement conference scheduled for *(date)*:<br>[ ] Agreed to complete settlement conference by *(date)*:<br>[x] Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | [ ] | [ ] Neutral evaluation not yet scheduled<br>[ ] Neutral evaluation scheduled for *(date)*:<br>[ ] Agreed to complete neutral evaluation by *(date)*:<br>[ ] Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | [ ] | [ ] Judicial arbitration not yet scheduled<br>[ ] Judicial arbitration scheduled for *(date)*:<br>[ ] Agreed to complete judicial arbitration by *(date)*:<br>[ ] Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | [ ] | [ ] Private arbitration not yet scheduled<br>[ ] Private arbitration scheduled for *(date)*:<br>[ ] Agreed to complete private arbitration by *(date)*:<br>[ ] Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | [ ] | [ ] ADR session not yet scheduled<br>[ ] ADR session scheduled for *(date)*:<br>[ ] Agreed to complete ADR session by *(date)*:<br>[ ] ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER:  Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV00247 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.

(2) Name of court: Santa Barbara County Superior Court

(3) Case number:  25CV02444

(4) Status: Pending

☐ Additional cases are described in Attachment 13a.

b. ☒ A motion to ☒ consolidate ☐ coordinate  will be filed by *(name party):*
Petitioners Environmental Defense Center et al.

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
On August 27, 2025, Petitioners filed a motion to bifurcate this action into two phases: consideration of (1) Petitioners' procedural claims under CEQA and federal/state pipeline safety acts, and (2) substantive pipeline safety claims.

**15. Other motions**

☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
Real Parties have filed a demurrer and motion to strike, which is set to be heard on September 19, 2025.

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
Should the action be bifurcated as suggested by Petitioners, Petitioners believe discovery is not necessary or appropriate for Phase 1 of this action, and thus should be prohibited or strictly limited.

**CM-110**

| PLAINTIFF/PETITIONER:   Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   California Department of Forestry and Fire Protection et al. | 25CV00247 |

17. **Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

    ☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*
On April 23, 2025, counsel for OSFM denied Petitioners' request to prepare the administrative record. Counsel has told Petitioners that an index of the draft record will be shared with Petitioners shortly.
On August 1, 2025, the Court orally granted Petitioners' request to take their Motion to Quash off calendar. However, the Motion still appears to be on the Court's calendar for October 24, 2025.

19. **Meet and confer**

    a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
On June 12, 2025, the parties participated in a CEQA settlement conference and met and conferred about a number of issues, including Real Parties' Demurrer, the administrative record, case consolidation, and bifurcation. The parties have met and conferred about case management issues on several other occasions, and will continue to do so as needed.

    b. ☒ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*
The parties have agreed, in principle, to stipulate to consolidating Case No. 25CV02247 and Case No. 25CV02444. The parties are also continuing to discuss a possible stipulation regarding a briefing schedule for Petitioners to request further relief if/when Real Parties file a 10-day notice of intent to restart the Las Flores Pipeline System.

20. Total number of pages attached *(if any):* 1_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:  September 4, 2025

| Linda Krop | _Ldakp_ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Environmental Defense Center et al. v. Cal Fire et al. | 25CV02247 |

**ATTACHMENT** *(Number):*  4b

*(This Attachment may be used with any Judicial Council form.)*

This case arises from the efforts of Sable Offshore Corp. and its wholly-owned subsidiary Pacific Pipeline Company ("Real Parties") to restart the Las Flores Pipeline System — a defective pipeline system that ruptured in 2015, causing one of the worst oil disasters in California history.

Upon investigation, the Pipeline Hazardous Materials Safety Administration (PHMSA) determined that the rupture was a result of "progressive external corrosion," and that the pipeline's cathodic protection system — intended to prevent such corrosion — had failed. Concerningly, PHMSA ultimately determined that, by flaw of design, cathodic protection is ineffective on the Las Flores Pipeline System, leaving it vulnerable to pervasive corrosion.

Because of the Las Flores Pipeline System's extensive corrosion issues, in order to restart it, Sable must obtain waivers from the Office of the State Fire Marshal (OSFM) that excuse it from complying with certain regulatory requirements. Real Parties thus applied for State Waivers "for the limited effectiveness of cathodic protection" on CA-324 and CA-325, the two pipeline segments that comprise the Las Flores Pipeline System. OSFM granted these State Waivers to Real Parties without providing a public process, without providing any justification for its decisions, and without conducting necessary environmental review.

Petitioners challenge OSFM's issuance of the State Waivers under Code of Civil Procedure sections 1085 and 1094.5. Petitioners allege that Respondents (1) failed to comply with mandatory procedures outlined in state and federal pipeline safety laws, (2) failed to comply with the California Environmental Quality Act's  review process, and (3) otherwise prejudicially abused its discretion in issuing the State Waivers.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

**Page** 6 **of** 6

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

*www.courtinfo.ca.gov*

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On September 4, 2025, I served the above document(s) described as **CASE MANAGEMENT STATEMENT** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒      **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 4, 2025, at Santa Barbara, California.

_____
Jeremy M. Frankel

1
Proof of Service

**SERVICE LIST**

| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>Myung Park<br>Myung.Park@doj.ca.gov<br>Matthew Bullock<br>Matthew.Bullock@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEYS FOR RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; and Daniel Berlant, in his official capacity as State Fire Marshal |
|---|---|
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBAL & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:      (213) 576-1000
Facsimile:      (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:      (310) 620-5879
Facsimile:      (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/8/2025 11:53 AM
By: Sarah Sisto , Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA BARBARA**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, et al. | Case No. 25CV02247 |
| Petitioners and Plaintiffs, | Assigned for all purposes to Hon. Donna D. Geck |
| v. | |
| CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et. al | **SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S NOTICE OF WITHDRAWAL OF DEMURRER AND MOTION TO STRIKE TO PETITIONERS' COMPLAINT** |
| Respondents and Defendants. | |
| and | Date:  September 19, 2025 |
| SABLE OFFSHORE CORP., et al. | Time: 10:00 a.m. Dept.: 4 |
| Real Parties in Interest. | Complaint Filed:      April 15, 2025 Trial Date:      None set |

- 1 -
REAL PARTIES' NOTICE OF WITHDRAWAL OF DEMURRER AND MOTION TO STRIKE TO PETITIONERS' COPMLAINT

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, the "Real Parties") hereby withdraw their Demurrer and Motion to Strike to Petitioners' Complaint, which are set to be heard on September 19, 2025, at 10:00 a.m.

Dated:  September 8, 2025                    Respectfully submitted,

                                            **ALSTON & BIRD**
                                            JEFFREY D. DINTZER
                                            GARRETT B. STANTON

                                            **PAUL HASTINGS LLP**
                                            DUNCAN JOSEPH MOORE

                                            **FAUVER, LARGE, ARCHBALD & SPRAY LLP**
                                            TREVOR LARGE

                                            By:  _____
                                                        Jeffrey D. Dintzer

                                            Attorneys for Real Parties in Interest
                                            SABLE OFFSHORE CORP.; PACIFIC PIPELINE
                                            COMPANY

**PROOF OF SERVICE**

1.      I, Kim Niz, declare:

2.      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On September 8, 2025, I served the document **SABLE OFFSHORE CORP.'s AND PACIFIC PIPELINE COMPANY's NOTICE OF WITHDRAWAL OF DEMURRER AND MOTION TO STRIKE TO PETITIONERS' COMPLAINT** on the interested parties in this action addressed as follows:  **See Attached Service List**

**I.**      ☒      BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 8, 2025, at Los Angeles, California.

/s/ *Kim Niz*

Kim Niz

---

REAL PARTIES' NOTICE OF WITHDRAWAL OF DEMURRER AND MOTION TO STRIKE TO PETITIONERS' COPMLAINT

## SERVICE LIST

| | |
|---|---|
| Julie Teel Simmons, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>**Center for Biological Diversity**<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612 | **ATTORNEYS FOR PETITIONERS**<br>CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION<br><br>Tel.:    (510) 844-7100<br>Fax:    (510) 844-7150<br>Email: jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>          tnimmer@biologicaldiversity.org |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Regnifo, Esq.<br>**ENVIRONMENTAL DEFENSE CENTER**<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Phone: (805) 963-1622; Fax: (805) 962-3152 | **ATTORNEYS FOR PETITIONERS**<br>ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation<br><br>Tel.:    (510) 844-7100<br>Fax:    (510) 844-7150<br>Email: lkrop@environmentaldefensecenter.org<br>          jfrankel@environmentaldefensecenter.org<br>          trengifo@environmentaldefensecenter.org |
| Michael S. Dorsi, Esq.<br>**California Attorney General's Office**<br>55 Golden Gate Ave, Ste 11000,<br>San Francisco, CA 94102 | **ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal<br><br>Tel.:    (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov |
| Duncan Joseph Moore, Esq.<br>Benjamin J. Hanelin, Esq.<br>Natalie C. Rogers, Esq.<br>**PAUL HASTINGS LLP**<br>1999 Avenue of the Stars, 27th Floor<br>Century City, California, 90067 | **ATTORNEYS FOR REAL PARTIES IN INTEREST**<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:    (310) 620-5879<br>Email: djmoore@paulhastings.com<br>          benjaminhanelin@paulhastings.com<br>          natalierogers@paulhastings.com |
| Trevor D. Large, Esq.<br>**FAUVER, LARGE, ARCHBALD & SPRAY LLP**<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | **ATTORNEYS FOR REAL PARTIES IN INTEREST**<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:    (805) 966-7000<br>Email: TLarge@FLASllp.com |

- 4 -

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Trevor D. Large (SBN 214886) | Victoria C. Diffenderfer (SBN 350018)
FIRM NAME: Fauver, Large, Archbald & Spray LLP
STREET ADDRESS: 820 State Street, 4th Floor
CITY: Santa Barbara                    STATE: CA        ZIP CODE: 93101
TELEPHONE NO.: (805) 966-7000         FAX NO.: (805) 966-7227
EMAIL ADDRESS: tlarge@flasllp.com
ATTORNEY FOR (name): Sable Offshore Corp., Pacific Pipeline Company

*FOR COURT USE ONLY*
**ELECTRONICALLY FILED**
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/8/2025 2:17 PM
By: Narzralli Baksh , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
STREET ADDRESS: 1100 Anapaca St.
MAILING ADDRESS: 1100 Anapaca St.
CITY AND ZIP CODE: Santa Barbara, 93101
BRANCH NAME: Anapaca Division

PLAINTIFF/PETITIONER: Environmental Defense Center et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| CORRECTED **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):**  [X] **UNLIMITED CASE**      [ ] **LIMITED CASE** | 25CV02247 |
| (Amount demanded exceeds $35,000)     (Amount demanded is $35,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: September 19, 2025        Time: 10:00 a.m.    Dept.: 4        Div.: Anacapa        Room:

Address of court (if different from the address above):

[ ] **Notice of Intent to Appear by Telephone, by** (name):

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [X] This statement is submitted by party (name): Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.
   b. [ ] This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date): April 15, 2025
   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served (specify names and explain why not):

      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ] have had a default entered against them (specify names):

   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in  [X] complaint    [ ] cross-complaint    (Describe, including causes of action):
      Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

**Page 1 of 5**

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | CORRECTED **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

CM-110

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
See Attachment 4b.

   ☒  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

   The party or parties request  ☐ a jury trial  ☒ a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

   a.  ☐  The trial has been set for  *(date):*

   b.  ☒  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

   The party or parties estimate that the trial will take *(check one)*

   a.  ☒  days *(specify number):* 1

   b.  ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

   The party or parties will be represented at trial  ☒ by the attorney or party listed in the caption  ☐ by the following:

   a.  Attorney:
   b.  Firm:
   c.  Address:
   d.  Telephone number:                                           f.  Fax number:
   e.  Email address:                                              g.  Party represented:

   ☒  Additional representation is described in Attachment 8.

9.  **Preference**

   ☒  This case is entitled to preference *(specify code section):* Public Resources Code section 21167.1(a)

10. **Alternative dispute resolution (ADR)**

   a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

      (1)  For parties represented by counsel: Counsel  ☒ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

      (2)  For self-represented parties: Party  ☐ has  ☐ has not  reviewed the ADR information package identified in rule 3.221.

   b.  **Referral to judicial arbitration or civil action mediation** (if available).

      (1)  ☐  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

      (2)  ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

      (3)  ☐  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110 [Rev. January 1, 2024]   CORRECTED  **CASE MANAGEMENT STATEMENT**   **Page 2 of 5**

Case 2:26-cv-05242-SVW-SSC    Document 17    Filed 05/14/26    Page 279 of 423   Page ID #:8575

**CM-110**

| PLAINTIFF/PETITIONER:   Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   California Department of Forestry and Fire Protection et al. | 25CV02247 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☒ Settlement conference completed on *(date):* June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

CM-110

| PLAINTIFF/PETITIONER:   Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   California Department of Forestry and Fire Protection et al. | 25CV02247 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy   ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al

(2) Name of court: Santa Barbara Superior Court

(3) Case number:  25CV02444

(4) Status: Pending

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
Petitioner's have filed a motion to bifurcate the CEQA claims from certain substantive pipeline claims, Real Parties are not agreeable to such bifurcation and continue to oppose this motion which is set to be heard concurrent to the September 19, 2025 Case Management Conference.

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110 [Rev. January 1, 2024]       CORRECTED **CASE MANAGEMENT STATEMENT**                    **Page 4 of 5**

CM-110

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 2_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: September 8, 2025

Trevor D. Large
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

| CM-110 [Rev. January 1, 2024] | CORRECTED **CASE MANAGEMENT STATEMENT** | **Page 5 of 5** |

**Attachment 4b**

4.b. Provide a brief statement of the case, including any damages:


Plaintiffs and Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees. Responding Parties oppose and deny the claims by Plaintiffs.

1

**Attachment 8**

Real Parties in Interest will be represented by the following attorneys:


**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100


**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899


**FAUVER LARGE ARCHBALD & SPRAY**
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flasllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone:     (805) 966-7000
Facsimile:     (805) 966-7227

2

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen, and not a party to the within action.  My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101. On September 8, 2025, I served the within document:

**SABLE'S CASE MANAGEMENT STATEMENT**

By Mail:  By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery:  By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery:  I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

  X   By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on September 8, 2025, at Santa Barbara, California.

_____
Rachel N. Miles

**1**
**PROOF OF SERVICE**

**SERVICE LIST**

| | |
|---|---|
| Jeffrey D. Dintzer<br>Lisa L. Garcia<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 576-1000; Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Lisa.Garcia@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Telephone: (310) 620-5879; Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Rengifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-1622; (510) 844-7100;<br>Fax: (805) 962-3152; (510) 844-7150<br>Email:<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |



FAUVER · LARGE · ARCHBALD · SPRAY

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/8/2025 6:31 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

*Additional Counsel Listed on Signature Page*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, et al., <br><br> Petitioners and Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al., <br><br> Respondents and Defendants, <br><br> and <br><br> SABLE OFFSHORE CORP., et al., <br><br> Real Parties in Interest. | Case No. 25CV02247 <br> [Coordinated with Case No. 25CV02244] <br><br> Assigned for all purposes to: <br> Hon. Donna D. Geck <br><br> **SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO PETITIONERS' MOTION TO BIFURCATE** <br><br> Date:        September 19, 2025 <br> Time:        10:00 AM <br> Dept.:        4 <br><br> Complaint Filed:        April 15, 2025 <br> Trial Date:        None set |

1

OPPOSITION TO MOTION TO BIFURCATE

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................5

II.    FACTUAL AND LEGAL BACKGROUND ........................................................5

III.   EDC'S "PROCEDURAL CLAIMS" SHOULD NOT BE BIFURCATED FROM THEIR "SUBSTANTIVE CLAIMS"........................................................................8

     A.    All Claims Should Be Tried Together As They Are Based on the Same Factual And Legal Issues.................................................................................9

     B.    Bifurcation Between "Procedural" and "Substantive" Claims Will Waste Judicial Resources and Prejudice Sable. ...........................................................9

     C.    EDC's CEQA Claim Requires Concurrent Adjudication With Their Remaining Claims. ......................................................................................10

IV.   CONCLUSION.................................................................................................11

## TABLE OF AUTHORITIES

STATE CASES                                                                    Page(s)

*City of Morgan Hill v. Bay Area Air Quality Mgmt. Dist.*
(2004) 118 Cal.App.4th 861 ...............................................................................10, 11

*Pilliod v. Monsanto Company*
(2021) 67 Cal.App.5th 591 ...................................................................................10

FEDERAL STATUTES

49 C.F.R. pt. 195 ...................................................................................................6

49 U.S.C. § 60105 .................................................................................................6

49 U.S.C. § 60118, subd. (c)(1)(a) .......................................................................6

49 USC § 60118, subd. (c), (d) .........................................................................6, 8

49 U.S.C. § 60101 et seq.......................................................................................6

STATE STATUTES

Cal. Code Regs., Title 19, § 2000 ........................................................................6

CEQA Guidelines, § 15378, subd. (a) .................................................................10

Code Civ. Proc., § 1048, subd. (a) ........................................................................9

Code Civ. Proc., § 1048, subd. (b) ........................................................................9

Code of Civil Procedure § 598...............................................................................9

Gov. Code, § 51010 ...............................................................................................6

Government Code § 51011(c)................................................................................8

Public Resources Code § 21167.1 ......................................................................10

OTHER AUTHORITIES

Draft Environmental Impact Report/ Environmental Impact Statement, available at
*https://cosantabarbara.app.box.com/s/gc3vhh8ns8aiwketnq35vwbehnhre672* .......................6

Final Environmental Impact Report/ Environmnetal Impact Statement, available at:
*https://cosantabarbara.app.box.com/s/lkl9oo9xdsaangevdp6pasfo0cmimvlt* ........................6

Pathways for Restarting Pipelines, available at, *https://osfm.fire.ca.gov/what-we-do/pipeline-
safety-and-cupa/pathways-for-restarting-pipelines*) .................................................................8

3

Consent Decree entered in in the United States District Court, Central District of California (Civil Action No. 2:20-cv-02415), available at *https://www.epa.gov/sites/default/files/2020-03/documents/plainsallamericanpipelinelp.pdf* ...........................................................................7

OPPOSITION TO MOTION TO BIFURCATE

## I.    INTRODUCTION

The Court should deny the Motion to Bifurcate ("Motion") filed by Petitioners Environmental Defense Center, et al. ("EDC").  EDC's lawsuit challenges the Office of State Fire Marshal's ("OSFM") December 17, 2024 approval of alternative safety requirements (the "State Waivers").  Now, EDC greatly oversimplifies the claims raised in their Complaint to seek an order bifurcating their "procedural claims" (EDC's First, Second, Third, Fifth, Seventh, and Eighth Causes of Action) from their "substantive claims" (EDC's Fourth and Sixth Causes of Action).  But as the Court is familiar based on its prior ruling concerning Petitioners' Order to Show Cause regarding a Preliminary Injunction, EDC's claims do not raise purely "procedural" issues. All of EDC's claims are entangled with each other as they are based on the same set of facts and parallel legal theories.  EDC's bifurcation request would accomplish none of the foregoing statutory goals and would instead create unnecessary piecemeal litigation that prejudices Real Parties' ability to defend against those claims at trial.  Additionally, bifurcation would require the parties to incur even greater costs and waste significant judicial resources by dragging out this litigation even further and conducting multiple trials. In contrast, EDC cannot articulate and will not suffer any prejudice if their claims are tried all together at once.  EDC's request for bifurcation should be denied.

## II.    FACTUAL AND LEGAL BACKGROUND

In January 1985, the California State Lands Commission and federal Bureau of Land Management certified a joint EIR/EIS for what was then known as the "Celeron Pipeline Project," which included the construction of what are now called the Las Flores Pipelines.[1]  The EIR/EIS analyzed the Pipelines' construction, "operation," and "maintenance." (See Petition, ¶ 54, n. 1 [Final EIR/EIS] at Abstract, p. 2.) [2] After certification of the EIR/EIS, "all necessary approvals for construction and

---

[1] Two pipelines make up the Las Flores Pipelines. One is the Las Flores Pipeline CA-324 ("Line CA-324") (previously known as Line 901), which transports crude oil approximately 10.9 miles from the Las Flores Pump Station in Las Flores Canyon to the existing Gaviota Pump Station. The other is Las Flores Pipeline CA-325 ("Line CA-325") (previously known as Line 903), which transports crude oil approximately 113.5 miles north from the Gaviota Pump Station to the existing Pentland Delivery Point in Kern County.

[2] For background information purposes, the Draft and Final EIR/EIS referenced by the Petition are publicly available: The Draft EIR/EIS is available on the County's website, at *https://cosantabarbara.app.box.com/s/gc3vhh8ns8aiwketnq35vwbehnhre672.* The Final EIR/EIS is available at: *https://cosantabarbara.app.box.com/s/lkl9oo9xdsaangevdp6pasfo0cmimvlt.*

OPPOSITION TO MOTION TO BIFURCATE

operation of the Las Flores Pipeline" were obtained, the pipeline was constructed, and it "went into service in or around 1992." (Petition, ¶ 67.)

As the Las Flores Pipelines transport crude oil, they are subject to the federal Hazardous Liquid Pipeline Safety Act ("Pipeline Safety Act") (codified at 49 U.S.C. §§ 60101 et seq.), which is administered by the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). In turn, PHMSA adopted detailed regulations governing the design, construction, pressure testing, and maintenance of hazardous liquid pipelines. (See 49 C.F.R. Part 195.) The Act also grants PHMSA the authority to "waive compliance with any part of an applicable standard … on terms [PHMSA] considers appropriate if [it] determines that the waiver is not inconsistent with pipeline safety." (49 U.S.C. § 60118, subd. (c)(1)(a).)

The Pipeline Safety Act allows state agencies to apply and become certified to enforce equivalent or more stringent regulations with respect to intrastate pipelines. (See 49 U.S.C. § 60105.) In California, the State Legislature vested OSFM with the "exclusive safety[,] regulatory and enforcement authority over intrastate hazardous liquid pipelines and … to implement the [Pipeline Safety Act] and federal pipeline safety regulations as to those portions of interstate pipelines located within [California] as necessary to obtain annual federal certification." (Gov. Code, § 51010.) OSFM adopted PHMSA's regulations, and PHMSA certified OSFM to implement the Pipeline Safety Act. (Cal. Code Regs., tit. 19, § 2000.)

OSFM may "waive compliance with a safety standard" if the requested modification is not inconsistent with pipeline safety. (49 USC § 60118, subd. (c), (d).) Any such "State Waiver" may become effective only after OSFM provides PHMSA with 60 days' notice and the opportunity to make a written objection to its issuance. (See *ibid*.)

On March 13, 2020, the prior owner and operator of the Las Flores Pipelines entered into a Consent Decree with the United States and the State of California on behalf of several federal and state regulatory agencies—including OSFM and PHMSA—in the United States District Court, Central District of California (Civil Action No. 2:20-cv-02415) to resolve issues related to the 2015 Refugio oil spill that resulted from a leak in Line CA-324. (Petition, ¶ 85 n. 3 [incorporating the Consent Decree by

reference].)[3]

The Consent Decree imposes a series of prerequisites must be satisfied before restarting either of the Las Flores Pipelines. The Consent Decree requires that the operator must, with respect to both Lines CA-324 and CA-325, "apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection" "prior to restarting" the pipelines. (Petition, ¶ 85 n. 3 [Consent Decree], Appendix B, ¶¶ 1.A, 1.B.)  Said, differently, the Consent Decree required Sable Offshore Corp. and Pacific Pipeline Company (collectively "Sable") to apply for the waivers that Petitioners now challenge as a condition precedent to restart.

After Sable acquired the Las Flores Pipelines in February 2024, Sable submitted State Waiver applications to OSFM with respect to both Lines CA-324 and CA-325, as required under the Consent Decree. (See Petition, Ex. B [April 24, 2024 Sable letter to OSFM and July 10, 2023 Pacific Pipeline State Waiver Application materials].) In May 2024, Sable began repair and maintenance work on the pipelines as required under the Consent Decree and consistent with Sable's understanding that such work was authorized by the Pipeline's existing approvals and permits.

Following several months of consideration of Sable's State Waiver applications, OSFM granted both State Waivers on December 17, 2024, and imposed over sixty separate conditions on Sable's operation of the Las Flores Pipelines to reflect the modified regulatory standards required under the Consent Decree. (Petition, Exs. F and G [State Waivers].)  This grant was conditioned on PHMSA either issuing an Order approving the State Waivers or taking no action within 60 days after receiving the OSFM's Letter of Decision on the State Waivers.  On February 11, 2025, PHMSA notified OSFM that it had no objection to its issuance of the State Waivers, and the State Waivers became effective. (Petition, ¶ 117.)  PHMSA's notice did not identify any deficiencies with OSFM's grant of the State Waivers.

The Consent Decree separately requires Sable to submit and obtain OSFM's approval of a written "Restart Plan" before restarting either Line CA-324 or Line CA-325. (Petition, ¶ 85 n. 3 [Consent

---

[3] For background information purposes, the Consent Decree is referenced by the Petition and is publicly available: "The Consent Decree is available on the U.S. Environmental Protection Agency's website, at *https://www.epa.gov/sites/default/files/2020-03/documents/plainsallamericanpipelinelp.pdf*." (Petition, ¶ 85, n. 3, emphasis added.)

Decree], Appendix D, ¶¶ 1.b, 1.f.) Sable submitted a draft Restart Plan to OSFM on July 29, 2024.[4] OSFM has taken no final action on the Restart Plan and it remains under review.

EDC filed its Complaint on April 15, 2025, asserting eight causes of action challenging OSFM's grant of the State Waivers: (1) "failure to provide a public process" pursuant to 49 U.S.C. section 60118, (2) failure to provide a statement of reasons" pursuant to 49 U.S.C. section 60118, (3) declaratory relief related to OSFM's failure to provide a public process, (4) declaratory relief  and abuse of discretion based on Petitioners' first two causes of action, (5) "failure to provide a discussion of significant factors" pursuant to Government Code section 51011(c), (6) declaratory relief related to OSFM's failure to provide discussion of significant factors, (7) abuse of discretion related to OSFM's failure to provide a discussion of significant factors, (8) "failure to prepare a subsequent EIR" pursuant to CEQA. (See generally, Petition.)

## III.     EDC'S "PROCEDURAL CLAIMS" SHOULD NOT BE BIFURCATED FROM THEIR "SUBSTANTIVE CLAIMS"

EDC oversimplifies and mischaracterizes their claims in an effort to split them into separate buckets of "procedural" and "substantive" claims for trial purposes.  EDC's arbitrary distinction, however, will not create any judicial efficiencies as all of EDC's claims hinge on the same set of facts and circumstances.  Many of EDC's legal theories are also derivative of one another, making it wholly inefficient to require they be tried separately and twice.  EDC fails to clarify any satisfactory reasons to the contrary.  Moreover, EDC incorrectly claims that its eighth cause of action under CEQA should proceed purely as a procedural issue and should, thus, proceed before any of the other "substantive" claims.  The litigation process EDC now proposes only stands to confuse the issues for the Court's review and cause the parties and the court to waste judicial resources, when all such inefficiencies could be avoided by a single trial.  Indeed, Sable supports a single trial promptly take place, which would more than sufficiently address the relief EDC seeks by this Motion.

---

[4]  For background information purposes, the Restart Plan is publicly available at a website referenced in the Petition: "OSFM has consistently construed this standard to mean that a State Waiver can only be granted where the operator's 'proposed alternative measures can provide an equal or greater level of safety than the required regulation.' (Pathways for Restarting Pipelines, OSFM, *https://osfm.fire.ca.gov/what-we-do/pipeline-safety-and-cupa/pathways-for-restarting-pipelines*)." (Petition, ¶ 171, emphasis added.) The Restart Plan is accessible at the website under "#6: Startup Plan."

**A.** **All Claims Should Be Tried Together As They Are Based on the Same Factual And Legal Issues.**

While EDC is correct that a trial court may order a separate trial of causes of action or issues under Code of Civil Procedure sections 598 and 1048, subdivision (b), EDC ignores that section 1048, subdivision (a) specifically provides for a joint hearing or trial when actions "involv[e] a common question of law or fact." (Code Civ. Proc., § 1048, subd. (a).)  Here, it is undisputed that EDC's "procedural" and "substantive" claims involve the same factual and legal issues.  EDC's "substantive claims" are derivative of the "procedural claims." (See Opp. at p. 6 [describing "how the Court considers and rules on the procedural claims may very well inform how the Court evaluates and decides upon the substantive claims…."].)  But EDC's claims allege concerns with the OSFM's approval and issuance of State Waivers, which underly all of EDC's concerns with Sable's efforts to restart the Las Flores Pipelines.  EDC's manufactured distinction between its "procedural" and "substantive" claims does not warrant bifurcation.

**B.** **Bifurcation Between "Procedural" and "Substantive" Claims Will Waste Judicial Resources and Prejudice Sable.**

EDC argues that bifurcation could "obviate the need to litigate the substantive claims in this case, as OSFM would be required to vacate and reconsider the Waivers in a procedurally compliant manner." (Opposition ("Opp.") at pp. 5-6.)  However, EDC's request to bifurcate will not promote the interests of judicial convenience, economy, and expedition or avoid prejudice.  Because the claims involve "common issues of fact and law," bifurcation would result in a wasteful duplicity of litigation. See Code Civ. Proc., § 1048, subd. (a) [consolidating "actions involving a common question or law or fact . . . may tend to avoid unnecessary costs or delays"].)  Indeed, granting EDC's Motion would likely compound the very same ills EDC now complains about.  The parties would incur even greater costs and waste significant judicial resources by dragging out this litigation even further and requiring multiple trials.

A single proceeding on all of EDC's claims will promote judicial economy.  As all of EDC's claims rest on the same set of factual circumstances and similar legal theories, briefing, argument, and adjudication on EDC's claims can and should all be completed together.  Proceeding with a single trial

9

will reduce the amount of briefing in this litigation and allow the Court to issue a ruling without having to hold a second trial that will require a second round of briefing and argument.  On the other hand, EDC will not be prejudiced by trying all of their claims together.  EDC does not claim how any prejudice will arise if the request for bifurcation is denied.  The Court is perfectly capable of evaluating EDC's claims and applying the correct evidentiary and legal standards to each challenge.  (See *Pilliod v. Monsanto Company* (2021) 67 Cal.App.5th 591, 626 [affirming denial of motion for severance because "[m]ost of the evidence at trial pertained to both plaintiffs, including the evidence of general causation and [defendant's] conduct," and the "the jury instructions emphasized consistently that each plaintiff's case was to be considered separately"].)  This is particularly true here where there is no risk of confusion to a jury.

C.      **EDC's CEQA Claim Requires Concurrent Adjudication With Their Remaining Claims.**

EDC argues that "[b]eyond judicial economy and case management efficiency," EDC's CEQA claim should be bifurcated into an initial phase of trial, separate from its "substantive claims" and should "be promptly brought, briefed, and resolved pursuant to Public Resources Code section 21167.1" (Opp. at p. 6.)  Although there are public policy reasons to hear CEQA claims promptly, which Sable does not dispute, EDC fails to articulate any justifiable reason why EDC's CEQA claim should be bifurcated and heard separately as a "procedural claim" separate and apart from EDC's remaining "substantive claims."

As EDC plainly acknowledges, CEQA imposes *procedural and substantive* requirements on public agencies when those agencies undertake certain discretionary activities – "projects" in CEQA's terminology – that have the potential to result in physical changes in the environment. (CEQA Guidelines, § 15378, subd. (a); see Opp. at p. 6 ["Although CEQA claims ***can be both procedural and substantive***, OSFM's failure to conduct subsequent environmental review amounts to a clear procedural violation."] (italics and emphasis added).)  EDC alleges that CEQA applies to OSFM's State Waivers (it does not) and OSFM's failure to conduct environmental review and prepare a subsequent EIR violates CEQA (it did not).  Sable, however, maintains CEQA does not apply to OSFM's issuance of the State Waivers as OSFM was implementing a *federal* safety program pursuant to its delegated authority under *federal* law. (See *City of Morgan Hill v. Bay Area Air Quality Mgmt. Dist.* (2004) 118 Cal.App.4th 861,

10

OPPOSITION TO MOTION TO BIFURCATE

871 ["the conclusion that the [air] permit is a federal one would seem to preclude the application of any state law such as CEQA. The [Air] District issued the permit acting on behalf of federal authorities who are not bound by state law"].) Sable also maintains that the State Waivers do not constitute a "project" under CEQA and further were ministerial in nature and thus do not trigger CEQA at all.

But even assuming *arguendo* that CEQA may apply for mapping out how to adjudicate EDC's claims, Sable further maintains that exemptions would apply and sufficient environmental review was captured by the existing EIR/EIS. Such exemption and EIR analysis under CEQA would require close examination of the existing EIR/EIS, which asks the Court, in turn, to review highly substantive issues at the juncture EDC asks for the Court to consider their "procedural claims." This makes no sense as a practical matter as it asks the Court to perform piecemeal analysis that could otherwise be avoided by holding one, single trial. Even still, EDC argues this should be done first, before its "substantive claims" are adjudicated. But EDC offers no reason why the CEQA claim should be heard without considering their other "substantive claims," especially when those claims all hinge on the same set of facts and circumstances. This deficiency is only further highlighted by EDC's unsupported argument that "[h]earing Petitioners' procedural CEQA claim prior to, and separate from, Petitioners' time and fact intensive substantive claims will expedite resolution of the CEQA claim, consistent with the Legislative intent." (Opp. at p. 6.) But in truth, bifurcation of EDC's CEQA claim will require the Court to conduct fragmented analysis and will further waste judicial resources by creating piecemeal litigation.

## IV.   CONCLUSION

For the foregoing reasons, the EDC's Motion to Bifurcate should be denied.

/ / /

/ / /

/ / /

/ / /

DATED:   September 8, 2025        Respectfully submitted,

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
TREVOR D. LARGE


_____
        Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

OPPOSITION TO MOTION TO BIFURCATE

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On September 8, 2025, I served the document(s) **SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO PETITIONERS' MOTION TO BIFURCATE** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☒    BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 8, 2025, at Los Angeles, California.

*/s/ Kim Niz*
Kim Niz

**SERVICE LIST**

| | |
|---|---|
| Julie Teel Simmons, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>Center for Biological Diversity<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612 | ATTORNEYS FOR PETITIONERS<br>CENTER FOR BIOLOGICAL DIVERSITY and<br>WISHTOYO FOUNDATION<br><br>Tel.:   (510) 844-7100<br>Fax:   (510) 844-7150<br>Email: jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>        tnimmer@biologicaldiversity.org |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Regnifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Phone: (805) 963-1622; Fax: (805) 962-3152 | ATTORNEYS FOR PETITIONERS<br>ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation<br><br>Tel.:   (510) 844-7100<br>Fax:   (510) 844-7150<br>Email: lkrop@environmentaldefensecenter.org<br>        jfrankel@environmentaldefensecenter.org<br>        trengifo@environmentaldefensecenter.org |
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000,<br>San Francisco, CA 94102 | ATTORNEYS FOR RESPONDENTS/<br>DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal<br><br>Tel.:   (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov |
| Duncan Joseph Moore, Esq.<br>Benjamin J. Hanelin, Esq.<br>Natalie C. Rogers, Esq.<br>PAUL HASTINGS LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, California, 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:   (310) 620-5879<br>Email: djmoore@paulhastings.com<br>        benjaminhanelin@paulhastings.com<br>        natalierogers@paulhastings.com |
| Trevor D. Large, Esq.<br>FAUVER, LARGE, ARCHBALD & SPRAY LLP<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:   (805) 966-7000<br>Email: TLarge@FLASllp.com |

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | | FOR COURT USE ONLY |
|---|---|---|---|
| NAME: Trevor D. Large (SBN 214886) \| Victoria C. Diffenderfer (SBN 350018) | STATE BAR NUMBER: | | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>9/8/2025 2:17 PM<br>By: Narzralli Baksh , Deputy |

ATTORNEY OR PARTY WITHOUT ATTORNEY

NAME: Trevor D. Large (SBN 214886) | Victoria C. Diffenderfer (SBN 350018)

FIRM NAME: Fauver, Large, Archbald & Spray LLP

STREET ADDRESS: 820 State Street, 4th Floor

CITY: Santa Barbara   STATE: CA   ZIP CODE: 93101

TELEPHONE NO.: (805) 966-7000   FAX NO.: (805) 966-7227

EMAIL ADDRESS: tlarge@flasllp.com

ATTORNEY FOR (name): Sable Offshore Corp., Pacific Pipeline Company

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**

STREET ADDRESS: 1100 Anapaca St.

MAILING ADDRESS: 1100 Anapaca St.

CITY AND ZIP CODE: Santa Barbara, 93101

BRANCH NAME: Anapaca Division

PLAINTIFF/PETITIONER: Environmental Defense Center et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| CORRECTED **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):**  [X] **UNLIMITED CASE**<br>(Amount demanded<br>exceeds $35,000)   [ ] **LIMITED CASE**<br>(Amount demanded is $35,000<br>or less) | 25CV02247 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: September 19, 2025   Time: 10:00 a.m.   Dept.: 4   Div.: Anacapa   Room:

Address of court (if different from the address above):

[ ] **Notice of Intent to Appear by Telephone, by** (name):

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):

   a. [X] This statement is submitted by party (name): Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.

   b. [ ] This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)

   a. The complaint was filed on (date): April 15, 2025

   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)

   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [ ] The following parties named in the complaint or cross-complaint

      (1) [ ] have not been served (specify names and explain why not):

      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ] have had a default entered against them (specify names):

   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**

   a. Type of case in [X] complaint   [ ] cross-complaint   (Describe, including causes of action):
   Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

**Page 1 of 5**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2024] | CORRECTED **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

CM-110

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief)*:
See Attachment 4b.

[ x ]  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request  [ ] a jury trial  [ x ] a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial)*:

6.  **Trial date**

a.  [ ]  The trial has been set for  *(date)*:

b.  [ x ]  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain)*:

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability)*:

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  [ x ]  days *(specify number)*: 1

b.  [ ]  hours (short causes) *(specify)*:

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial  [ x ] by the attorney or party listed in the caption  [ ] by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:          f.  Fax number:

e.  Email address:          g.  Party represented:

[ x ]  Additional representation is described in Attachment 8.

9.  **Preference**

[ x ]  This case is entitled to preference *(specify code section)*: Public Resources Code section 21167.1(a)

10.  **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel  [ x ] has  [ ] has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party  [ ] has  [ ] has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1)  [ ]  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)  [ ]  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)  [ ]  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption)*:

CM-110 [Rev. January 1, 2024]          CORRECTED    **CASE MANAGEMENT STATEMENT**          **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER:   Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   California Department of Forestry and Fire Protection et al. | 25CV02247 |

10. c.   In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date):* <br> ☐ Agreed to complete mediation by *(date):* <br> ☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date):* <br> ☐ Agreed to complete settlement conference by *(date):* <br> ☒ Settlement conference completed on *(date):* June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date):* <br> ☐ Agreed to complete neutral evaluation by *(date):* <br> ☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date):* <br> ☐ Agreed to complete judicial arbitration by *(date):* <br> ☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date):* <br> ☐ Agreed to complete private arbitration by *(date):* <br> ☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date):* <br> ☐ Agreed to complete ADR session by *(date):* <br> ☐ ADR completed on *(date):* |

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02247 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

    (1) Name of case: Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al

    (2) Name of court: Santa Barbara Superior Court

    (3) Case number: 25CV02444

    (4) Status: Pending

    ☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
Petitioner's have filed a motion to bifurcate the CEQA claims from certain substantive pipeline claims, Real Parties are not agreeable to such bifurcation and continue to oppose this motion which is set to be heard concurrent to the September 19, 2025 Case Management Conference.

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

    **CORRECTED CASE MANAGEMENT STATEMENT**    

**CM-110**

| PLAINTIFF/PETITIONER:  Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02247 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 2_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: September 8, 2025

Trevor D. Large
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CM-110 [Rev. January 1, 2024]    CORRECTED  **CASE MANAGEMENT STATEMENT**    **Page 5 of 5**

**Attachment 4b**

4.b. Provide a brief statement of the case, including any damages:


Plaintiffs and Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees. Responding Parties oppose and deny the claims by Plaintiffs.

1

**Attachment 8**

Real Parties in Interest will be represented by the following attorneys:

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:    (213) 576-1000
Facsimile:    (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
Telephone:    (310) 620-5879
Facsimile:    (310) 620-5899

**FAUVER LARGE ARCHBALD & SPRAY**
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flasllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone:    (805) 966-7000
Facsimile:    (805) 966-7227

2

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen, and not a party to the within action. My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101. On September 8, 2025, I served the within document:

**SABLE'S CASE MANAGEMENT STATEMENT**

By Mail: By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery: By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery: I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

X By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on September 8, 2025, at Santa Barbara, California.

_____
Rachel N. Miles

**1**
**PROOF OF SERVICE**

**SERVICE LIST**

| | |
|---|---|
| Jeffrey D. Dintzer<br>Lisa L. Garcia<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 576-1000; Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Lisa.Garcia@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Telephone: (310) 620-5879; Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Rengifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-1622; (510) 844-7100;<br>Fax: (805) 962-3152; (510) 844-7150<br>Email:<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 281865 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY
NAME: Michael S. Dorsi, Deputy Attorney General
FIRM NAME: California Attorney General's Office
STREET ADDRESS: 455 Golden Gate Avenue, Suite 11000
CITY: San Francisco        STATE: CA        ZIP CODE: 94102
TELEPHONE NO.: 415-510-3802        FAX NO.:
EMAIL ADDRESS: Michael.Dorsi@doj.ca.gov
ATTORNEY FOR (name): Respondents California Department of Forestry and Fire Protection, et al

STATE BAR NUMBER: 281865

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/9/2025 4:20 PM
By: Gabriel Moreno , Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa Divsiion

PLAINTIFF/PETITIONER: Environmental Defense Center, et al
DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one):   [X] UNLIMITED CASE           [ ] LIMITED CASE<br>(Amount demanded exceeds $35,000)         (Amount demanded is $35,000 or less) | 25CV02247 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: September 19, 2025        Time: 10:0 a.m.        Dept.: 4        Div.:        Room:

Address of court (if different from the address above):

[X]   **Notice of Intent to Appear by Telephone,  by (name):** Michael S. Dorsi (by videoconfernce)

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [X]  This statement is submitted by party (name): Respondents California Department of Forestry and Fire Protection, et al.
   b. [ ]  This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date):   April 15, 2025
   b. [ ]  The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [X]  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ]  The following parties named in the complaint or cross-complaint
      (1) [ ]  have not been served (specify names and explain why not):

      (2) [ ]  have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ]  have had a default entered against them (specify names):

   c. [ ]  The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in  [X] complaint      [ ] cross-complaint      (Describe, including causes of action):
      Petition for writ of mandate and complaint challenging California Department of Forestry and Fire Protection's Office of the State Fire Marshal issuance of State Waivers for Las Flores Pipeline System

**Page 1 of 5**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

CM-110

| PLAINTIFF/PETITIONER: Environmental Defense Center, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02247 |

4. b. Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

Petitioners violations of federal and state procedures for pipeline safety regulations and California Environmental Quality Act

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request   ☐ a jury trial   ☒ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**

a. ☐ The trial has been set for  *(date):*

b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a. ☒ days *(specify number):* 1

b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial   ☒ by the attorney or party listed in the caption   ☐ by the following:

a. Attorney:

b. Firm:

c. Address:

d. Telephone number:          f. Fax number:

e. Email address:          g. Party represented:

☐ Additional representation is described in Attachment 8.

9. **Preference**

☒ This case is entitled to preference *(specify code section):* Public Resources Code § 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
Cal. Rules of Court, Rule 3.811(b)(1) [equitable relief]

CM-110 [Rev. January 1, 2024]          **CASE MANAGEMENT STATEMENT**          **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02247 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date)*: <br> ☐ Agreed to complete mediation by *(date)*: <br> ☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date)*: <br> ☐ Agreed to complete settlement conference by *(date)*: <br> ☒ Settlement conference completed on *(date)*:  June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date)*: <br> ☐ Agreed to complete neutral evaluation by *(date)*: <br> ☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date)*: <br> ☐ Agreed to complete judicial arbitration by *(date)*: <br> ☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date)*: <br> ☐ Agreed to complete private arbitration by *(date)*: <br> ☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date)*: <br> ☐ Agreed to complete ADR session by *(date)*: <br> ☐ ADR completed on *(date)*: |

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02247 |

11. **Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

12. **Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

13. **Related cases, consolidation, and coordination**

   a. ☒ There are companion, underlying, or related cases.

     (1) Name of case: Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.

     (2) Name of court: Santa Babara County Superior Court

     (3) Case number: 25CV02244

     (4) Status: Pending

     ☐ Additional cases are described in Attachment 13a.

   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

14. **Bifurcation**

   ☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
Possible, should be discussed at case management conference

15. **Other motions**

   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

16. **Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

   c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
Respondent is preparing the administrative record but, given the nature of the relevant agency process, this is more time-consuming than had initially been expected.

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02247 |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference  (specify):
This Court should address how to approach future requests for ex parte relief.

19. **Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
The parties conferred on some subjects and expect to confer on other subjects between now and the date of the case management conference.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: September 8, 2025

Michael S. Dorsi, Deputy Attorney General
_____
(TYPE OR PRINT NAME)

▶ s/ Michael S. Dorsi
_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶
_____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

## DECLARATION OF SERVICE

Case Names:     **ENVIRONMENTAL DEFENSE CENTER, et al. v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.**

Case No.:       **25CV02247**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter.

On, September 9, 2025, I served the attached:

- **CASE MANAGEMENT STATEMENT - EDC**

by transmitting a true copy via electronic mail addressed as follows:

| | |
|---|---|
| Linda Krop<br>lkrop@environmentaldefensecenter.org<br>Jeremy M. Frankel<br>jfrankel@environmentaldefensecenter.org<br>Tara C. Rengifo<br>trengifo@environmentaldefensecenter.org<br>ENVIRONMENTAL DEFENSE CENTER | Julie Teel Simmonds<br>jteelsimmonds@biologicaldiversity.org<br>David Pettit<br>dpettit@biologicaldiversity.org<br>Talia Nimmer<br>tnimmer@biologicaldiversity.org<br>CENTER FOR BIOLOGICAL DIVERSITY |
| Moore, DJ djmoore@paulhastings.com<br>Hanelin, Benjamin J.<br>benjaminhanelin@paulhastings.com<br>Rogers, Natalie C.<br>natalierogers@paulhastings.com<br>PAUL HASTINGS LLP | Bolender, Brooke<br>Brooke.Bolender@alston.com<br>Jeffrey Dintzer jeffrey.dintzer@alston.com<br>ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on September 9, 2025 at Oakland, California.

|  |  |
|---|---|
| Tania Martinez | *Tania Martinez* |
| Declarant | Signature |

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/12/2025 9:49 AM
By: Narzralli Baksh , Deputy

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

*Attorneys for Petitioners/Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,<br><br>Petitioners and Plaintiffs,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,<br><br>Respondents and Defendants,<br><br>and<br><br>SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,<br><br>Real Parties in Interest. | Case No.: 25CV02247<br><br>**PETITIONERS AND PLAINTIFFS' REPLY TO REAL PARTIES IN INTEREST'S OPPOSITION TO PETITIONERS' MOTION TO BIFURCATE**<br><br>Date:   September 19, 2025<br>Time:   10:00 a.m.<br>Dept.:   4<br>Judge:   Honorable Donna D. Geck<br><br>Action Filed: April 15, 2025<br>Trial: None Set |

1

Petitioners and Plaintiffs' Reply to RPI Opposition to Motion to Bifurcate

## I.   INTRODUCTION

In their Opposition, Real Parties In Interest erroneously assert that the Petitioners' claims involve such common issues of fact and law that bifurcation would result in duplicative briefing and adjudication. Opp. at 9-10. But the Opposition disregards a key aspect of Petitioners' claims: disposition of the six procedural claims will directly affect the viability of the two remaining substantive claims such that it is in the interest of efficiency and judicial economy for the Court to bifurcate this proceeding. As detailed below, if the Court rules favorably on any of Petitioners' claims, Respondents will be required to perform an entirely new proceeding on the State Waivers involving a public process and new decision. Vacating and reconsidering the Waivers would therefore obviate the need to litigate the substantive claims in the case, thereby *substantially reducing* briefing, argument, and adjudication in this case. On the other hand, if Respondents are successful on any of the procedural claims, depending on how this Court rules, the second phase of the litigation would narrow the substantive claims based on the confines of this Court's prior ruling.

## II.   ARGUMENT

### A.   The Petition and Complaint in This Dispute Involve Two Distinct Sets of Claims That can be Appropriately Bifurcated to Streamline the Litigation in the Interest of Efficiency.

The Petition and Complaint asserts eight causes of actions: six claims allege purely procedural violations, and two claims are substantive. The procedural claims merely require Petitioners to demonstrate that the Office of State Fire Marshal (OSFM) failed to comply with its procedural mandates, as demonstrated below. By contrast, Petitioners' substantive claims (Fourth and Sixth Causes of Action) are exclusively raised under California's administrative writ procedures to challenge the *merits* of OSFM's decision based on the record before the agency at the time of the decision.[1] C.C.P. § 1094.5. These claims necessitate that the Court probe the technical details of pipeline safety and

[1] The Opposition cites to Code of Civil Procedure section 1048, subsection (a), as support for trying the claims together but this provision governs *consolidation* of actions. C.C.P. § 1048(a). Rather, pursuant to section 1048, subsection (b) pertaining to *bifurcation*, the court has the discretion to determine whether to have a separate trial of any cause of action or issues "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," which apply here for the reasons set forth herein and in Petitioners' Motion to Bifurcate. C.C.P. § 1048(b).

specifically, whether the Waivers ensure that the Las Flores Pipeline System will be "as safe or safer" as if it complied with all applicable regulations, and whether the "risk to public safety is slight and the probably of injury or damage remote." 49 C.F.R. § 195.452(h)(4)(iii)(H); Gov. Code § 51011(b). It is not a matter of whether the Fire Marshal did in fact make the requisite determination or not (which it failed to do), but rather whether, based on the record, the Fire Marshal could even make the findings required by the federal and state statutes.

To the contrary, as demonstrated below, the Court's ruling on the procedural claims will shape its evaluation of the substantive claims, as Petitioners contend that OSFM's procedural failures demonstrate a finding of abuse of discretion. The Opposition relies on *Pilliod v. Monsanto Co.* (2021) 67 Cal.App.5th 591, 626, which concerned the denial of Monsanto's motion to sever a single case brought by spouses against Monsanto related to their development of cancer. This case did not involve similar issues or claims, as here, and fails to support a denial. The question here is not the *ability* of the Court to evaluate Petitioners' claims all at once, but the advisability and efficiency of doing so.

　　　　　　　　1.　　　First Cause of Action: OSFM Failed to Provide a Public Process, as Required by the Federal Hazardous Liquid Pipeline Safety Act ("FPSA").

Petitioners' First Cause of Action pertains to OSFM's mandatory and nondiscretionary duty under the FPSA to provide the public with notice and an opportunity for a hearing prior to granting the State Waivers for CA-324 and CA-325. 49 U.S.C. § 60118(c), (d). Here, OSFM did not provide a public process prior to granting the State Waivers. Specifically, OSFM did not provide formal notice to the public of its intent to consider the State Waiver applications; did not invite or consider public comment on the applications; and did not provide the public with any opportunity for a hearing.

Petitioners ask this Court to set aside and vacate OSFM's approval of the State Waivers and require OSFM to provide a public process to satisfy its obligations under the FPSA, i.e., public notice, public comment, and public hearing. Unlike Petitioners' substantive claims, the only relevant consideration for this First Cause of Action is whether OSFM did or did not provide a public process. Should this Court order OSFM to perform its duties under the FPSA, OSFM's process to review the applications would begin anew—with new evidence and an entirely new process—as well as a new decision. It would therefore promote efficiency and appropriately streamline the litigation for the Court

to hear this procedural claim first and before the substantive claims, which concern the technical details of pipeline safety.

### 2. Second Cause of Action: OSFM Failed to Provide a Statement of Reasons in the Approved Waivers, as Required by the FPSA.

Petitioners' Second Cause of Action relates to OSFM's mandatory and nondiscretionary duty under the FPSA to provide a statement of reasons for granting each Waiver. 49 U.S.C. § 60118(c), (d). OSFM failed to do so, and Petitioners are now asking this Court to order OSFM to comply with its obligations under the FPSA by withdrawing the previous approvals, performing a public process (see First Cause of Action), and issuing a new decision along with a statement of reasons if granting a State Waiver for either CA-324 or CA-325. As distinguished from Petitioners' substantive claims, the relevant consideration for this Second Cause of Action is whether OSFM provided a statement of reasons to support the approved Waivers. If the Court agrees with the Petitioners and orders OSFM to perform its duties under the FPSA, it would be entirely premature for the Court to also decide the substantive issues because OSFM would be starting at the beginning of the process. Bifurcation of the claims is therefore proper to resolve any procedural errors prior to addressing substantive issues.

### 3. Fifth Cause of Action: OSFM Failed to Provide a Discussion of Significant Factors in its Waiver Approvals, as required by the California Elder Pipeline Safety Act ("CPSA").

The Fifth Cause of Action is likewise purely procedural but concerns the *State's* PSA. Petitioners argue that in granting the State Waivers, OSFM had a mandatory and nondiscretionary duty to include in its decision a discussion of factors significant to each decision. Gov. Code, § 51011(c).  Notably, neither OSFM nor the State Fire Marshal provided any justification, supporting analysis, or reasoning for the Waiver approvals. *Id.* A successful outcome for Petitioners after trial on this claim, along with the aforementioned initial procedural claims, would vacate the original approvals and require OSFM to perform its duties anew in accordance with the requirements under the FPSA and CPSA. (*See* Order for Preliminary Injunction and Undertaking, Exhibit A at 17: "Given the specific findings required by section 51011,  subdivision (b), it appears that the statutorily-required discussion of subdivision (c) must in some appropriate way at least connect the factors stated (and their significance) to the findings that

the risk to public safety is slight and the probability of injury or damage remote.") Only after OSFM provides the required discussion of factors will this matter be appropriate for consideration on the merits.

4.    Third and Seventh[2] Causes of Action: Declaratory Relief Regarding the Scope of OSFM's Procedural Obligations under the Federal and State PSAs.

As discussed above, OSFM did not provide the requisite public process under the FPSA or the CPSA before granting the State Waivers. Petitioners' Third Cause of Action under the FPSA and Seventh Cause of Action under the CPSA seek a judicial determination regarding the scope of OSFM's obligations under the relevant PSA. 49 U.S.C. § 60118(c); Gov. Code § 51011(c). It is imperative to resolve these procedural issues as early as possible given that a ruling in Petitioners' favor would require the OSFM to begin anew with the State Waiver review process and issue a new decision. Thus, the ends of justice would be served by permitting bifurcation to focus the first phase of this proceeding on the discrete subset of procedural claims.

5.    Eighth Cause of Action: OSFM Failed to Prepare a Subsequent Environmental Impact Report (EIR), as required by the California Environmental Quality Act (CEQA).

Petitioners' Eighth Cause of Action involves OSFM's failure to comply with CEQA by approving the State Waivers without making an initial determination of the applicability of the subsequent environmental review standards—a procedural flaw that constitutes an abuse of discretion. Judicial review for abuse of discretion under CEQA "is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." Pub. Res. Code § 21168.5. "An agency fails to proceed in a manner required by law and thus abuses its discretion when it does not comply with the informational requirements of CEQA. Harmless error analysis is inapplicable in these circumstances." *Californians for Alternatives to Toxics v. Dep't of Food & Agric.* (2005) 136 Cal. App. 4th 1, 12 (*citing Protect the Historic Amador Waterways v. Amador Water Agency* (2004) 116 Cal.App.4th 1099, 1105–1106). "A failure to comply with mandatory

---

[2] In their Motion to Bifurcate, Petitioners' mistakenly cited the Sixth Cause of Action on page 4, but used the correct citations thereafter.

procedures is presumptively prejudicial." *Martis Camp Cmty. Assn. v. Cnty. of Placer* (2020) 53 Cal. App. 5th 569, 607.

Here, Petitioners allege that OSFM failed to comply with CEQA.[3] After an initial EIR is certified, a subsequent EIR is required if any of the three conditions under Public Resources Code section 21166 and CEQA Guidelines section 15162 apply. Pub. Res. Code § 21166; CEQA Guidelines § 15162.[4] OSFM did not consider these three criteria, in violation of CEQA. Conversely, OSFM also failed to follow CEQA's procedures, even if no further CEQA analysis was necessary. CEQA Guidelines require that an agency provide "[a] brief explanation [supported by substantial evidence] of [a] decision not to prepare a subsequent EIR pursuant to Section 15162" at least somewhere in the record. CEQA Guidelines § 15164(e). OSFM failed to make *any* determination about subsequent environmental review under CEQA.

As explained in *Martis Camp Cmty. Assn.*, when there are changes to a project or circumstances, the reviewing agency must first consider whether the original EIR retains relevance or whether subsequent environmental review is required. 53 Cal. App. 5th at 608-09. In that case, the court found that the county's failure to make this determination constituted a prejudicial failure to comply with the requirements of CEQA. *Id*. at 607 ("Here, prejudice is apparent because the County failed to consider whether the [project] will require major revisions to the [] EIR due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects."). (*See also City of San Jose v. Great Oaks Water Co.* (1987) 192 Cal. App. 3d 1005, 1017, wherein the court found that the City violated CEQA by failing to make a determination whether subsequent environmental review was required for a change in the project design.)

---

[3] The Opposition makes a faulty argument that approval of the State Waivers was a federal action and thus not subject to CEQA, citing to *City of Morgan Hill v. Bay Area Air Quality Mgmt. Dist.* (2004) 118 Cal.App.4th 861, 871. That case involved an air district's authority to approve a federal permit pursuant to federal law. The court held that although CEQA did not apply to the district's approval of a federal permit, it did apply as a matter of state law pursuant to district regulations. *Id*. at 874-876. The court found that the district complied with CEQA by relying on a CEQA equivalent document. *Id*. at 876. Here, OSFM issued State Waivers pursuant, in part, to Government Code section 51011. As in *Morgan Hill*, CEQA applies to the state action taken by OSFM.

[4] The CEQA Guidelines are set forth in 14 California Code of Regulations section 15000 *et seq*.

Because OSFM failed to comply with this procedural mandate under CEQA, the Court should consider this claim before proceeding with the merits of the case. If OSFM subsequently provides an explanation why a subsequent EIR is not required (as required by CEQA Guidelines section 15164(e)), Petitioners will have an opportunity to review the explanation and decide whether to challenge it. On the other hand, after reviewing the factors set forth in Public Resources Code section 21166 and CEQA Guidelines section 15162, OSFM may determine that a subsequent EIR is required. Either way, the Court should address OSFM's procedural violation first. *Martis Camp Cmty. Assn.*, 53 Cal. App. 5th at 608-09.

The Opposition attempts to analogize Petitioners' CEQA claim—rooted in a procedural flaw—with their substantive claims involving highly complex and technical pipeline safety laws at both the federal and state level. Opp. at 11. Their argument is unconvincing. Whether the OSFM considered CEQA at all prior to approving the State Waivers can be swiftly adduced based on the record in this case and resolved by this Court—it either did or did not.

Moreover, like the claims described above, a ruling favorable to Petitioners on this CEQA claim—i.e., that the OSFM failed to follow the procedures under CEQA in approving the State Waivers—would require the OSFM to go back and determine whether the Waivers require further environmental review. This determination must be made as soon as practicable to ensure the underlying decision is supported by the requisite environmental analysis. *Laurel Heights Improvement Assn. v. Regents of Univ. of California* (1988) 47 Cal. 3d 376, 395 (1988), *as modified on denial of reh'g* (Jan. 26, 1989) ("A basic tenet of CEQA is that an environmental analysis 'should be prepared as early as feasible in the planning process to enable environmental considerations to influence project program and design....'"). In the interests of efficiency and ensuring adequate environmental review in compliance with CEQA, this CEQA claim must be heard in the first phase of this litigation along with the procedural claims discussed above.

Finally, allowing Petitioners' procedural CEQA claim to be heard prior to, and apart from, the substantive claims related to the technical aspects of the Las Flores Pipeline System will also expedite resolution of the CEQA claim, consistent with the Legislative intent to hear CEQA claims promptly

(which the Opposition does not dispute). Opp. at 10; *Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1134, fn. 13.

## III.     CONCLUSION

Taken together, a clear distinction exists between Petitioners' procedural causes of action and their substantive claims in terms of the time and judicial resources necessary to resolve these issues. It is also obvious that resolution of Petitioners' procedural claims could require an entirely new decision-making process by OSFM, thereby wholly eliminating the need for the second phase of the litigation. Such a result is squarely within the interests of judicial economy, efficient case management, and preventing wasted time and expense to the Parties.

For these reasons, Petitioners respectfully request that this Court bifurcate the procedural and substantive claims of this action and phase the trial so that the procedural claims precede the substantive claims.

Dated: September 12, 2025              Respectfully submitted,



Linda Krop
Jeremy M. Frankel
Tara C. Rengifo
ENVIRONMENTAL DEFENSE CENTER
Counsel for Petitioners

**PROOF OF SERVICE**

I, Lauren Partch, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On September 12, 2025, I served the above document(s) described as **PETITIONERS AND PLAINTIFFS' REPLY TO REAL PARTIES IN INTEREST'S OPPOSITION TO PETITIONERS' MOTION TO BIFURCATE** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒     **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 12, 2025, at Santa Barbara, California.

_Lauren Partch_

_____
Lauren Partch

**SERVICE LIST**

| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>Myung Park<br>Myung.Park@doj.ca.gov<br>Matthew Bullock<br>Matthew.Bullock@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEYS FOR RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; and Daniel Berlant, in his official capacity as State Fire Marshal |
|---|---|
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBALD & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/12/2025 1:37 PM
By: Narzralli Baksh , Deputy

Rob Bonta
Attorney General of California
Myung Park
Supervising Deputy Attorney General
Matthew Bullock (SBN 243377)
Michael S. Dorsi (SBN 281865)
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3802
 Fax:  (415) 703-5480
 E-mail:  Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants
Department of Forestry and Fire Protection, by and
through the Office of the State Fire Marshal, an
agency of the State of California; Daniel Berlant, in
his official capacity as State Fire Marshal*

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,** | Case No. 25CV02247 |
| **Petitioners and Plaintiffs,** | **RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S STATEMENT OF NO POSITION ON MOTIONS TO BIFURCATE** |
| v. | Date:　　　September 19, 2025 |
| **CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,** | Time:　　　10:00 a.m.<br>Dept:　　　4<br>Judge:　　　Hon. Donna Geck<br><br>Trial Date:　　Not Set<br>Action Filed: April 15, 2025 |
| **Respondents and Defendants** | |
| **SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,** | |
| **Real Parties in Interest.** | |

1

Respondents' Statement of No Position re Motions to Bifurcate (25CV02244 and 25CV02247)

## STATEMENT

Respondents California Department of Forestry and Fire Protection, et al., are aware of the Motions to Bifurcate and take no position on those motions.


Dated:  September 11, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General

*/s/ Michael S. Dorsi*
MICHAEL S. DORSI
Deputy Attorney General
*Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, et al.*

LA2025400847

Respondents' Statement of No Position re Motions to Bifurcate (25CV02244 and 25CV02247)

## DECLARATION OF SERVICE BY E-MAIL

**Case Name:**          Environmental Defense Center v. CalFire/OSFM

**Case Number:**       25CV02247

**Party Represented:**   Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal

**Declaration of Electronic Service**

1. I am at least 18 years of age and not a party to this matter.

2. I am employed in the Office of the Attorney General of the State of California.  My business address is 1515 Clay Street, 20th Floor, P.O. Box 70550, Oakland, CA  94612-0550, County of Alameda.

3. My electronic service address is Tania.Martinez@doj.ca.gov.

4. On September 12, 2025, I electronically served the following document[s]:

   a. **RESPONDENT'S CALIFORIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL'S STATEMENT OF NO POSITION ON MOTIONS TO BIFURCATE**

5. I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

| | |
|---|---|
| Linda Krop<br>lkrop@environmentaldefensecenter.org<br>Jeremy M. Frankel<br>jfrankel@environmentaldefensecenter.org<br>Tara C. Rengifo<br>trengifo@environmentaldefensecenter.org<br>ENVIRONMENTAL DEFENSE CENTER<br>Moore, DJ djmoore@paulhastings.com<br>Hanelin, Benjamin J.<br>benjaminhanelin@paulhastings.com<br>Rogers, Natalie C.<br>natalierogers@paulhastings.com<br>PAUL HASTINGS LLP | Julie Teel Simmonds<br>jteelsimmonds@biologicaldiversity.org<br>David Pettit<br>dpettit@biologicaldiversity.org<br>Talia Nimmer<br>tnimmer@biologicaldiversity.org<br>CENTER FOR BIOLOGICAL DIVERSITY<br>Bolender, Brooke<br>Brooke.Bolender@alston.com<br>Jeffrey Dintzer jeffrey.dintzer@alston.com<br>ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on September 12, 2025.

| Tania Martinez | *Tania Martinez* |
|----------------|------------------|
| Declarant | Signature |

LA2025400827
92031872.docx

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/17/2025 10:16 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

*Additional Counsel Listed on Signature Page*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br>     Petitioners and Plaintiffs, <br><br>   v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive, <br><br>     Respondents and Defendants, | Case No. 25CV02247 <br><br> Assigned for all purposes to: <br> Hon. Donna G. Geck <br><br> **REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO PETITIONERS' VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Complaint Filed:     April 15, 2025 <br> Trial Date:            None set |

1

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

and

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

    Real Parties in Interest.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Real Parties" or "Sable") will and hereby do respond to the Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief ("Petition") filed by Petitioners and Plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Santa Barbara/Ventura Chapter Chair of Sierra Club, and Santa Barbara Channelkeeper ("Petitioners") and state as follows:

## INTRODUCTION

1. Answering the allegations in Paragraph 1, Sable admits that Pacific Pipeline Company is a wholly owned subsidiary of Sable Offshore Corp. and the legal owner of the pipelines CA-324, CA-325A and CA-325B (the "Las Flores Pipeline System"). Sable admits that on May 19, 2015, CA-324 ruptured (the "2015 rupture"). Further answering the allegations in Paragraph 1, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. Except as expressly admitted, Sable denies each and every allegation in this paragraph.

2. Answering the allegations Paragraph 2, Sable admits that on May 19, 2015, a segment of the Las Flores Pipeline System experienced a rupture on pipeline CA-324. Further answering the allegations in Paragraph 2, this paragraph contains legal conclusions and Petitioners' characterizations of the rupture, to which no response is required. Except as expressly admitted, Sable denies each and every allegation in this paragraph.

3. Answering the allegations in Paragraph 3, Sable admits that PHMSA investigated the 2015 rupture and issued a "Failure Report," the contents of which speaks for themselves, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

4. Answering the allegations in Paragraph 4, Sable admits that no crude oil has traveled through the Las Flores Pipeline System since the 2015 rupture. Further answering the allegations in Paragraph 4, this paragraph contains legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

5. Answering the allegations in Paragraph 5, this paragraph contains legal conclusions

3

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

and Petitioners' characterizations of their legal claims, to which no response is required. Except as expressly admitted, Sable denies each and every allegation in this paragraph.

6.    Answering the allegations in Paragraph 6, Sable admits that Respondent and Defendant Office of State Fire Marshal ("OSFM") issued letters granting pipeline safety regulation waivers ("State Waivers") to Sable, dated December 17, 2024, and the contents of those State Waivers speak for themselves. Sable admits it submitted applications for the State Waivers in April 2024. Further answering the allegations in Paragraph 6, this paragraph contains legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

7.    Answering the allegations in Paragraph 7, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, and no response is required. Further answering the allegations in Paragraph 7, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

8.    Answering the allegations in Paragraph 8, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, and no response is required. Further answering the allegations in Paragraph 8, to the extent this paragraph characterizes documents prepared by OFSM, those documents speak for themselves and no response is required.  Further answering the allegations in Paragraph 8, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

9.    Answering the allegations in Paragraph 9, Sable admits that the Las Flores Pipeline System is located in Buellton, California. Further answering the allegations in Paragraph 9, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization

of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

10.     Answering the allegations in Paragraph 10, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, and no response is required. Further answering the allegations in Paragraph 10, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

11.     Answering the allegations in Paragraph 11, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 11, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph not specifically admitted herein.

12.     Answering the allegations in Paragraph 12, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

13.     Answering the allegations in Paragraph 13, Sable admits that OSFM issued the State Waivers, dated December 17, 2024, and to the extent this paragraph characterizes the contents of these letters, the documents speak for themselves, and no response is required. Sable further responds that

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 13, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph not specifically admitted herein.

14.     Answering the allegations in Paragraph 14, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  Sable further responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

15.     Answering the allegations in Paragraph 15, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. To the extent a response is required, Sable denies each and every allegation in this paragraph not specifically admitted herein.

16.     Answering the allegations in Paragraph 16, Sable responds that to the extent this paragraph characterizes the contents of the State Waivers, the documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 16, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph not specifically admitted herein.

17.     Answering the allegations in Paragraph 17, Sable responds that to the extent this paragraph characterizes the contents of the State Waivers, the documents speak for themselves, and

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

no response is required. Further answering the allegations in Paragraph 17, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph not specifically admitted herein.

18.     Answering the allegations in Paragraph 18, Sable responds that to the extent this paragraph characterizes the contents of the State Waivers, the documents speak for themselves, and no response is required. Sable further responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 18, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph not specifically admitted herein.

19.     Answering the allegations in Paragraph 19, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph not specifically admitted herein.

**JURISDICTION AND VENUE**

20.     Answering the allegations in Paragraph 20, Sable incorporates its responses to Paragraphs 1-19 of the Petition, inclusive.

21.     Answering the allegations in Paragraph 21, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions for which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

22.     Answering the allegations in Paragraph 22, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions for which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

23.     Answering the allegations in Paragraph 23, this paragraph contains characterizations

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

of law, for which the law speaks for itself, and legal conclusions for which no response is required. To the extent a response is required, Sable admits that venue is proper in this court. Except as expressly admitted, Sable denies each and every allegation in this paragraph.

24.     Answering the allegations in Paragraph 24, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions for which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

**THE PARTIES**

25.     Answering the allegations in Paragraph 25, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph not specifically admitted herein.

26.     Answering the allegations in Paragraph 26, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph not specifically admitted herein.

27.     Answering the allegations in Paragraph 27, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph not specifically admitted herein.

28.     Answering the allegations in Paragraph 28, Sable lacks sufficient information or belief to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

29.     Answering the allegations in Paragraph 29, Sable lacks sufficient information or belief to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

30.     Answering the allegations in Paragraph 30, Sable admits that Respondent and Defendant California Department of Forestry and Fire Protection is a political subdivision of the State of California, organized and existing under the laws of the State of California, and includes several organizational programs, including the Office of the State Fire Marshal. The remaining allegations in this paragraph contain legal conclusions to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

31.     Answering the allegations in Paragraph 31, based on information and belief, Sable admits that Daniel Berlant serves as California's State Fire Marshal. The remaining allegations in this paragraph contain legal conclusions to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

32.     Answering the allegations in Paragraph 32, Sable admits that Sable Offshore Corp. is a Delaware corporation based in Houston, Texas, and the "the operator of the Las Flores Pipeline System and applied for the State Waivers at issue."  Further answering Paragraph 32, this paragraph contains legal conclusions, to which no response is required.  Except as expressly admitted, Sable denies each and every allegation in this paragraph.

33.     Answering the allegations in Paragraph 33, Sable admits that Pacific Pipeline Company is a Delaware corporation based in Houston, Texas, a wholly owned subsidiary of Sable Offshore Corp., and the legal owner of the Las Flores Pipeline System, and "together with Sable Offshore Corp., applied for the State Waivers at issue." Further answering the allegations Paragraph 33, this paragraph contains legal conclusions, to which no response is required.  Except as expressly admitted, Sable denies each and every allegation in this paragraph.

34.     Answering the allegations in Paragraph 34, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

**AUTHENTICITY OF EXHIBITS ATTACHED**

35.     Answering the allegations in Paragraph 35, Sable incorporates its responses to Paragraphs 1-34 of the Petition, inclusive.

36.     Answering the allegations in Paragraph 36, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

**FACTUAL AND PROCEDURAL BACKGROUND**

37.     Answering the allegations in Paragraph 37, Sable incorporates its responses to Paragraphs 1-36 of the Petition, inclusive.

/ / /

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**Overview of the Las Flores Pipeline System**

38.     Answering the allegations in Paragraph 38, Sable admits that the Las Flores Pipeline System was constructed from 1988 to 1991 "to transport crude oil produced off the coast of Santa Barbara County to inland refineries." Sable admits that the Las Flores Pipeline System was designed to transport oil from the "Santa Ynez Unit" ("SYU"). The remaining allegations in this paragraph contain legal conclusions to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

39.     Answering the allegations in Paragraph 39, Sable admits that "the SYU produces crude oil and natural gas from three offshore platforms that sit in federal waters: Harmony, Heritage, and Hondo," and that "[o]nce extracted, oil and gas are transported via subsea pipelines to a . . . facility located in Las Flores Canyon . . . west of Goleta, California," and that "[f]rom there, crude oil is transported inland through the Las Flores Pipeline System." Further answering the allegations in Paragraph 39, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

40.     Answering the allegations in Paragraph 40, Sable admits that the Las Flores Pipeline System travels approximately 120 miles, traversing three counties to Pentland Station. Further answering the allegations in Paragraph 40, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

41.     Answering the allegations in Paragraph 41, Sable admits that "the Las Flores Pipeline System consists of two . . . sections: line CA-324 (formerly 'Line 901') and line CA-325 (formerly 'Line 903')" and that "CA-325 is further subdivided into sections A and B." Further answering the allegations in Paragraph 41, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly

10

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

admitted, Sable denies each and every allegation in this paragraph.

42. Answering the allegations in Paragraph 42, Sable admits the line known as CA-324 is "is a 24-inch diameter pipeline that travels westward along . . . from the Las Flores Canyon Processing facility approximately eleven miles to Gaviota Station." Further answering the allegations in Paragraph 42, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

43. Answering the allegations in Paragraph 43, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

44. Answering the allegations in Paragraph 44, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

45. Answering the allegations in Paragraph 45, Sable admits that the line known as CA-325A is "a 30-inch diameter pipeline that extends approximately thirty-eight miles to Sisquoc Station." Further answering the allegations in Paragraph 45, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

46. Answering the allegations in Paragraph 46, Sable admits that CA-325A crosses Gaviota State Park. Further answering the allegations in Paragraph 46, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

47. Answering the allegations in Paragraph 47, Sable responds that the allegations

11

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

48.     Answering the allegations in Paragraph 48, Sable admits that "CA-325A" is located in Buellton, California. Further answering the allegations in Paragraph 48, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

49.     Answering the allegations in Paragraph 49, Sable admits that "[a]t Sisquoc Station, oil transfers to CA-325B[,]" and "CA-325B is a 30-inch pipeline that runs the remaining [approximately] seventy-four miles to Pentland Station." Further answering the allegations in Paragraph 49, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

50.     Answering the allegations in Paragraph 50, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

51.     Answering the allegations in Paragraph 51, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

52.     Answering the allegations in Paragraph 52, Sable admits that line CA-325B "ultimately terminates at Pentland Station in Kern County, which marks the end of the Las Flores Pipeline System." Further answering the allegations in Paragraph 52, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

**Design, Construction, and Environmental Review of the Las Flores Pipeline System**

53.    Answering the allegations in Paragraph 53, Sable lacks sufficient information or belief to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

54.    Answering the allegations in Paragraph 54, Sable responds that to the extent this paragraph characterizes the contents of a "joint Environmental Impact Report (EIR) and Environmental Impact Statement (EIS) for the project," the document speaks for itself, and no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

55.    Answering the allegations in Paragraph 55, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, and no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

56.    Answering the allegations in Paragraph 56, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, and no response is required. Further answering the allegations in Paragraph 56, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

57.    Answering the allegations in Paragraph 57, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, and no response is required. Further answering the allegations in Paragraph 57, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which

no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

58.    Answering the allegations in Paragraph 58, Sable admits the Las Flores Pipeline System pipelines were initially coated with coal tar urethane and covered with foam insulation covered by a tape wrap. Further answering the allegations in Paragraph 58, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

59.    Answering the allegations in Paragraph 59, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

60.    Answering the allegations in Paragraph 60, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

61.    Answering the allegations in Paragraph 61, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

62.    Answering the allegations in Paragraph 62, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

63.    Answering the allegations of Paragraph 63, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

64.    Answering the allegations of Paragraph 64, Sable responds that the allegations contained in this paragraph contain characterizations of law, for which the law speaks for itself. Sable further responds that to the extent this paragraph characterizes the contents of the "Draft EIR/EIS," the document speaks for itself, and no response is required. Further answering the allegations in Paragraph 64, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

65.    Answering the allegations in Paragraph 65, Sable responds that to the extent this paragraph characterizes the contents of the "Draft EIR/EIS," the document speaks for itself, and no response is required. Further answering the allegations in Paragraph 65, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

66.    Answering the allegations in Paragraph 66, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, and no response is required. Further answering the allegations in Paragraph 66, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

67.    Answering the allegations in Paragraph 67, Sable admits that the Las Flores Pipeline System was constructed from 1988 to 1991. Further answering the allegations in Paragraph 67, Sable lacks sufficient information or belief to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

68.    Answering the allegations in Paragraph 68, based on information and belief, Sable admits that Plains Pipeline, L.P. acquired the Las Flores Pipeline System in 1998. Further answering the allegations in Paragraph 68, Sable responds that the remaining allegations contained in this

15

paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

**The 2015 Refugio Oil Spill and Ineffectiveness of Cathodic Protection**

69.     Answering the allegations of Paragraph 69, Sable admits that on May 19, 2015, CA-324 ruptured and that PHMSA prepared and issued a "Failure Report," the contents of which speaks for themselves and to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

70.     Answering the allegations in Paragraph 70, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

71.     Answering the allegations in Paragraph 71, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required.  To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

72.     Answering the allegations in Paragraph 72, Sable responds that PHMSA's  "Failure Report" speaks for itself, to which no response is required.  To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

73.     Answering the allegations in Paragraph 73, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required.  To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

74.     Answering the allegations in Paragraph 74, Sable responds that PHMSA's  "Failure Report" speaks for itself, to which no response is required.  To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

75.     Answering the allegations in Paragraph 75, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required.  To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

76.     Answering the allegations in Paragraph 76, Sable responds that PHMSA's "Failure

16

Report" speaks for itself, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

77. Answering the allegations in Paragraph 77, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

78. Answering the allegations in Paragraph 78, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

79. Answering the allegations in Paragraph 79, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

80. Answering the allegations of Paragraph 80, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

81. Answering the allegations in Paragraph 81, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

82. Answering the allegations in Paragraph 82, Sable admits that no crude oil has traveled through the Las Flores Pipeline System since the 2015 rupture. Further answering the allegations in Paragraph 82, Sable responds that PHMSA's "Corrective Action Orders" speak for themselves, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

**Transfer of Jurisdiction to OSFM and Conditions for Restarting**

83. Answering the allegations in Paragraph 83, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 83, Sable lacks sufficient information or belief to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

allegation in this paragraph.

84. Answering the allegations in Paragraph 84, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 84, Sable lacks sufficient information or belief to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

85. Answering the allegations in Paragraph 85, Sable admits that a Consent Decree was entered in a case entitled *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415, and that the contents of the Consent Decree speak for themselves, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

86. Answering the allegations in Paragraph 86, Sable admits that a Consent Decree was entered in a case entitled *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415, and that the contents of the Consent Decree speak for themselves, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

87. Answering the allegations in Paragraph 87, Sable admits that a Consent Decree was entered in a case entitled *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415, and that the contents of the Consent Decree speak for themselves, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

88. Answering the allegations in Paragraph 88, Sable admits that a Consent Decree was entered in a case entitled *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415, and that the contents of the Consent Decree speak for themselves, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

**Interim Efforts to Restart the SYU and the Las Flores Pipeline System**

89.     Answering the allegations in Paragraph 89, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

90.     Answering the allegations in Paragraph 90, Sable admits "ExxonMobil … applied to the County for permission to truck, rather than pipe, its oil…."  Further answering the allegations in Paragraph 90, Sable admits "[t]he County denied Exxon's applications in March 2022."  Further answering the allegations in Paragraph 90, Sable responds that to the extent this paragraph characterizes ExxonMobil's application to the County "for permission to truck . . . its oil from Las Flores Canyon to Kern County" and the County's response to the application, the documents speak for themselves, and no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

91.     Answering the allegations in Paragraph 91, Sable lacks sufficient information or belief to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

92.     Answering the allegations in Paragraph 92, Sable responds that to the extent this paragraph characterizes Plains' application to the County and the "Draft EIR," the documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 92, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

93.     Answering the allegations in Paragraph 93, Sable admits that Plains sold the Las Flores Pipeline System to PPC. Further answering the allegations in Paragraph 93, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph..

94.     Answering the allegations in Paragraph 94,  Sable responds that to the extent the paragraph characterizes the Consent Decree and applications submitted to OSFM, the documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 94,

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

95. Answering the allegations in Paragraph 95, Sable lacks sufficient information or belief to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph..

96. Answering the allegations in Paragraph 96, Sable responds that to the extent the paragraph characterizes a settlement agreement entered by the parties in "United States District Court for the Central District of California, Case No. 2:23-cv-09218-DMG-MRW," the document speaks for itself, and no response is required. Further, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph..

97. Answering the allegations in Paragraph 97, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

**Sable's Acquisition and Haphazard Efforts to Restart the Las Flores Pipeline System**

98. Answering the allegations in Paragraph 98, Sable admits it was founded in 2020. Further answering the allegations in Paragraph 98, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

99. Answering the allegations in Paragraph 99, Sable admits it acquired the Las Flores Pipeline System and other assets from ExxonMobil associated with the SYU in 2024. Further answering the allegations in Paragraph 99, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

100. Answering the allegations in Paragraph 100, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

101. Answering the allegations in Paragraph 101, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

102. Answering the allegations in Paragraph 102, Sable denies each and every allegation in this paragraph.

103. Answering the allegations in Paragraph 103, Sable admits that it is pursuing restart of the Las Flores Pipeline System pursuant to the Consent Decree. Further answering the allegations in Paragraph 103, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

104. Answering the allegations in Paragraph 104, Sable admits that it is pursuing restart of the Las Flores Pipeline System pursuant to the Consent Decree. Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

105. Answering the allegations in Paragraph 105, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings,

21

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

106.    Answering the allegations in Paragraph 106, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

107.    Answering the allegations in Paragraph 107, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. . Further answering the allegations in Paragraph 107, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph

108.    Answering the allegations in Paragraph 108, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. .  Further answering the allegations in Paragraph 108, this paragraph contains legal conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

109.    Answering the allegations in Paragraph 109, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the

remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. Further answering the allegations in Paragraph 109, this paragraph contains legal conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

**OSFM Grants State Waivers with No Public Process, Environmental Review, or Justification**

110.    Answering the allegations in Paragraph 110, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

111.    Answering the allegations in Paragraph 111, responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 111, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

112.    Answering the allegations in Paragraph 112, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that to the extent the paragraph characterizes the "letter to OSFM" attached as Exhibit C, the document speaks for itself, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every remaining allegation in this paragraph.

113.    Answering the allegations in Paragraph 113, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that to the extent the paragraph characterizes the "letter" attached as Exhibit D, the document speaks for itself, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every remaining allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

114.    Answering the allegations in Paragraph 114, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself, Further, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

115.    Answering the allegations in Paragraph 115, Sable admits that Cal Fire approved the State Waivers. The State Waivers speak for themselves, to which no response is required. Further answering the allegations in Paragraph 115, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

116.    Answering the allegations in Paragraph 116, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

117.    Answering the allegations in Paragraph 117, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 117, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

118.    Answering the allegations in Paragraph 118, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

contents of the State Waivers speak for themselves, to which no response is required. Further answering the allegations in Paragraph 118, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

119. Answering the allegations in Paragraph 119, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the contents of the State Waivers speak for themselves, to which no response is required. Further answering the allegations in Paragraph 119, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

120. Answering the allegations in Paragraph 120, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the contents of the State Waivers speak for themselves, to which no response is required. Further answering the allegations in Paragraph 120, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

121. Answering the allegations in Paragraph 121, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the contents of the State Waivers speak for themselves, to which no response is required. Further answering the allegations in Paragraph 121, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. Except as specifically admitted herein, Sable

denies each and every allegation in this paragraph.

122. Answering the allegations in Paragraph 122, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that this paragraph asserts legal conclusions to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph..

123. Answering the allegations in Paragraph 123, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the contents of the State Waivers speak for themselves, to which no response is required. Further answering the allegations in Paragraph 123, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

124. Answering the allegations in Paragraph 124, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that this paragraph asserts legal conclusions to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

125. Answering the allegations in Paragraph 125, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the contents of the State Waivers speak for themselves, to which no response is required. Further answering the allegations in Paragraph 125, Sable responds that the remaining allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

## LEGAL BACKGROUND

126. Answering the allegations in Paragraph 126, Sable incorporates its responses to Paragraphs 1-125 of the Petition, inclusive.

127. Answering the allegations in Paragraph 127, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

128. Answering the allegations in Paragraph 128, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

129. Answering the allegations in Paragraph 129, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

130. Answering the allegations in Paragraph 130, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

131. Answering the allegations in Paragraph 131, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

### State Waivers under the Federal PSA

132. Answering the allegations in Paragraph 132, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

133. Answering the allegations in Paragraph 133, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

134. Answering the allegations in Paragraph 134, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

135. Answering the allegations in Paragraph 135, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

136. Answering the allegations in Paragraph 136, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

137. Answering the allegations in Paragraph 137, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

**Additional Waiver Requirements under the State Elder Pipeline Safety Act**

138. Answering the allegations in Paragraph 138, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

139. Answering the allegations in Paragraph 139, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

140. Answering the allegations in Paragraph 140, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

141. Answering the allegations in Paragraph 141, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

**California Environmental Quality Act**

142. Answering the allegations in Paragraph 142, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

143. Answering the allegations in Paragraph 143, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To

the extent a response is required, Sable denies each and every allegation in this paragraph.

144. Answering the allegations in Paragraph 144, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

145. Answering the allegations in Paragraph 145, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

146. Answering the allegations in Paragraph 146, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

147. Answering the allegations in Paragraph 147, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

148. Answering the allegations in Paragraph 148, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

**FIRST CAUSE OF ACTION**

**Violation of the Federal PSA — Failure to Provide a Public Process**

**(Code Civ. Proc., § 1085; 49 U.S.C. § 60118(d))**

149. Answering the allegations in Paragraph 149, Sable incorporates its responses to Paragraphs 1-148 of the Petition, inclusive.

150. Answering the allegations in Paragraph 150, this paragraph contains characterizations of law, for which the law speaks for itself, and  legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

151. Answering the allegations in Paragraph 151, this paragraph characterizes the content of the State Waivers, which documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 151, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

required, Sable denies each and every allegation in this paragraph.

152.    Answering the allegations in Paragraph 152, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

153.    Answering the allegations in Paragraph 153, Sable admits that the "State Waivers for both CA-324 and CA-325 became final and effective on February 11, 2025…."  Further answering the allegations in Paragraph 153, Sable responds that the allegations reference the "State Waivers" and PHMSA's notification "that it would not object to either State Waiver," the contents of which speak for themselves, to which no response is required.  Further answering the allegations in Paragraph 153, Sable responds that this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

154.    Answering the allegations in Paragraph 154, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

155.    Answering the allegations in Paragraph 155, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

**SECOND CAUSE OF ACTION**

**Violation of the Federal PSA — Failure to Provide a Statement of Reasons**

**(Code Civ. Proc., § 1085; 49 U.S.C. § 60118(d))**

156.    Answering the allegations in Paragraph 156, Sable incorporates its responses to Paragraphs 1-155 of the Petition, inclusive.

157.    Answering the allegations in Paragraph 157, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

158.    Answering the allegations in Paragraph 158, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  Further

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

answering the allegations in Paragraph 158, Sable responds that the State Waiversspeak for themselves, and no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

159.    Answering the allegations in Paragraph 159, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

160.    Answering the allegations in Paragraph 160, Sable admits that the "State Waivers for both CA-324 and CA-325 became final and effective on February 11, 2025…."  Further answering the allegations in Paragraph 160, Sable responds that the allegations reference the "State Waivers" and PHMSA's notification "that it would not object to either State Waiver," the contents of which speak for themselves, to which no response is required.  Further answering the allegations in Paragraph 160, Sable responds that this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

161.    Answering the allegations in Paragraph 161, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

162.    Answering the allegations in Paragraph 162, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

**THIRD CAUSE OF ACTION**

**Declaratory Relief — State Waiver Procedures Required under the Federal PSA**

**(Code Civ. Proc., § 1060; 49 U.S.C. § 60118(d))**

163.    Answering the allegations in Paragraph 163, Sable incorporates its responses to Paragraphs 1-162 of the Petition, inclusive.

164.    Answering the allegations in Paragraph 164, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

165. Answering the allegations in Paragraph 165, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

166. Answering the allegations in Paragraph 166, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

**FOURTH CAUSE OF ACTION**

**Abuse of Discretion under the Federal PSA**

**(Code Civ. Proc., § 1094.5; 49 U.S.C. § 60118(d))**

167. Answering the allegations in Paragraph 167, Sable incorporates its responses to Paragraphs 1-166 of the Petition, inclusive.

168. Answering the allegations in Paragraph 168, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

169. Answering the allegations in Paragraph 169, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

170. Answering the allegations in Paragraph 170, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

171. Answering the allegations in Paragraph 171, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required. Further, this paragraph purports to characterize the State Waivers and website, which speak for themselves and to which no response is required. To the extent a response is required, and except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

172. Answering the allegations in Paragraph 172, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 172, this paragraph contains legal

32

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

173. Answering the allegations in Paragraph 173, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

174. Answering the allegations in Paragraph 174, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 174, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

175. Answering the allegations in Paragraph 175, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

176. Answering the allegations in Paragraph 176, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 176, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

177. Answering the allegations in Paragraph 177, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

178. Answering the allegations in Paragraph 178, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

179. Answering the allegations in Paragraph 179, Sable responds that to extent the paragraph

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

characterizes the content of the State Waivers, those documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 179, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

180. Answering the allegations in Paragraph 180, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 180, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

181. Answering the allegations in Paragraph 181, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 181, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

182. Answering the allegations in Paragraph 182, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 182, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

183. Answering the allegations in Paragraph 183, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 183, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

184. Answering the allegations in Paragraph 184, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

34

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

185.   Answering the allegations in Paragraph 185, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

186.   Answering the allegations in Paragraph 186, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

187.   Answering the allegations in Paragraph 187, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

**FIFTH CAUSE OF ACTION**

**Violation of the State PSA — Failure to Provide a Discussion of Significant Factors**

**(Code Civ. Proc., § 1085; Gov. Code, § 51011(c))**

188.   Answering the allegations in Paragraph 188, Sable incorporates its responses to Paragraphs 1-187 of the Petition, inclusive.

189.   Answering the allegations in Paragraph 189, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

190.   Answering the allegations in Paragraph 190, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

191.   Answering the allegations in Paragraph 191, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 191, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

192.   Answering the allegations in Paragraph 192, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the

35

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

extent a response is required, Sable denies each and every allegation in this paragraph.

193. Answering the allegations in Paragraph 193, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 193, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

194. Answering the allegations in Paragraph 194, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

195. Answering the allegations in Paragraph 195, Sable admits that the "Waivers for both CA-324 and CA-325 became final and effective on February 11, 2025." Further answering the allegations in Paragraph 195, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, and no response is required. Further answering the allegations in Paragraph 195, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

196. Answering the allegations in Paragraph 196, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

197. Answering the allegations in Paragraph 197, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

**SIXTH CAUSE OF ACTION**

**Abuse of Discretion under the State PSA**

**(Code Civ. Proc., § 1094.5; Gov. Code, § 51011(b))**

198. Answering the allegations in Paragraph 198, Sable incorporates its responses to Paragraphs 1-197 of the Petition, inclusive.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

199.    Answering the allegations in Paragraph 199, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

200.    Answering the allegations in Paragraph 200, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

201.    Answering the allegations in Paragraph 201, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

202.    Answering the allegations in Paragraph 202, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 202, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. Paragraph 202 also contains characterizations of law, for which the law speaks for itself. To the extent a response is required, Sable denies each and every allegation in this paragraph.

203.    Answering the allegations in Paragraph 203, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 203, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

204.    Answering the allegations in Paragraph 204, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 204, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

205.    Answering the allegations in Paragraph 205, Sable responds that to extent the paragraph characterizes the content of the State Waivers, those documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 205, this paragraph contains legal

37

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

206. Answering the allegations in Paragraph 206, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

207. Answering the allegations in Paragraph 207, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

## SEVENTH CAUSE OF ACTION

### Declaratory Relief — Standards and Procedures Required under the State PSA

### (Code Civ. Proc., § 1060; Gov. Code, § 51011(b), (c))

208. Answering the allegations in Paragraph 208, Sable incorporates its responses to Paragraphs 1-207 of the Petition, inclusive.

209. Answering the allegations in Paragraph 209, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

210. Answering the allegations in Paragraph 210, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

211. Answering the allegations in Paragraph 211, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

212. Answering the allegations in Paragraph 212, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

/ / /

/ / /

/ / /

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**EIGHTH CAUSE OF ACTION**

**CEQA — Failure to Prepare a Subsequent EIR**

**(Code Civ. Proc., § 1085; Pub. Res. Code, § 21166 ; 14 Cal. Code Regs. § 15162)**

213.    Answering the allegations in Paragraph 213, Sable incorporates its responses to Paragraphs 1-212 of the Petition, inclusive.

214.    Answering the allegations in Paragraph 224, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

215.    Answering the allegations in Paragraph 215, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions to which no response is required.  Further answering the allegations in Paragraph 215, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

216.    Answering the allegations in Paragraph 216, this paragraph contains Petitioners' own characterization of their legal claims and legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

217.    Answering the allegations in Paragraph 217, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, to which no response is required. Further answering the allegations in Paragraph 217, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

218.    Answering the allegations in Paragraph 218, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

219.    Answering the allegations in Paragraph 219, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS and the State Waivers, the documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 219, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

220.    Answering the allegations in Paragraph 220, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS and the State Waivers, the documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 220, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

221.    Answering the allegations in Paragraph 221, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS and the State Waivers, the documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 221, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

222.    Answering the allegations in Paragraph 222, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, to which no response is required. Further answering the allegations in Paragraph 219, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

223. Answering the allegations in Paragraph 223, Sable responds that to the extent this paragraph characterizes the contents of the 1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, the document speaks for itself, to which no response is required. Further answering the allegations in Paragraph 219, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

224. Answering the allegations in Paragraph 224, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

225. Answering the allegations in Paragraph 225, this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

226. Answering the allegations in Paragraph 226, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

227. Answering the allegations in Paragraph 227, this paragraph contains Petitioners' characterization of their legal claims and legal conclusions to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

## PETITIONERS' PRAYER FOR RELIEF

Answering Petitioners prayer for relief, Sable denies that Petitioners are entitled to any of the relief requested or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

As separate and distinct answers and defenses to the Petition, and on the basis that it has evidentiary support, or may obtain evidentiary support after a reasonable opportunity for further investigation or discovery, Sable asserts the following affirmative defenses:

41

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Exhaustion of Administrative Remedies)

1. Petitioners are barred from maintaining this action, either in whole or in part, by their failure to exhaust all administrative remedies.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

2. Petitioners are barred from maintaining this action, either in whole or in part, by applicable statutes of limitations, including but not limited to limitations periods expressed in the Government Code and Public Resources Code section 21167(c).

## THIRD AFFIRMATIVE DEFENSE

### (Standing)

3. Petitioners lack standing to assert some or all of the claims set forth in the Petition.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

4. Petitioners are barred from maintaining this action, either in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

5. The Petition fails to state facts sufficient to constitute a cause of action.

## SIXTH AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

6. Petitioners are barred from maintaining this action, either in whole or in part, by the doctrine of equitable estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

### (*Res Judicata*, Collateral Estoppel, Plea in Abatement)

7. Petitioners are barred from maintaining this action, either in whole or in part, by the doctrines of *res judicata*, collateral estoppel, and/or plea in abatement.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**EIGHTH AFFIRMATIVE DEFENSE**

**(Laches)**

8.       Petitioners are barred from maintaining this action, either in whole or in part, by the doctrine of laches.

**NINTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

9.       Petitioners are barred from maintaining this action, either in whole or in part, by the doctrine of "unclean hands."

**TENTH AFFIRMATIVE DEFENSE**

**(Public Interest Against Injunction)**

10.       Petitioners are barred from maintaining this action, either in whole or in part, because the balancing of hardships and considerations of public interest mandate against issuance of an injunction.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Non-Justiciable Political Question)**

11.       Petitioners are barred from maintaining this action, either in whole or in part, because the issues raised in the Petition are non-justiciable political questions.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Ripeness)**

12.       Petitioners are barred from maintaining this action, either in whole or in part, on the grounds that some or all of the claims are not ripe for adjudication.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Mootness)**

13.       Petitioners are barred from maintaining this action, either in whole or in part, on the grounds that some or all of the claims are barred by the doctrine of mootness.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Notice)**

14.       Petitioners are barred from maintaining this action, either in whole or in part, for failure

to give legally adequate notice of the action required under the California Environmental Quality Act (Cal. Public Resources Code, §§ 21000 *et seq.*)

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Compliance with All Applicable Law)

15.    Petitioners are barred from maintaining this action, either in whole or in part, because the Office of State Fire Marshall and Real Parties at all times complied with all provisions of applicable law.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Cal. Public Resources Code, § 21166)

16.    Petitioners are barred from maintaining this action, either in whole or in part, because none of the circumstances enumerated in Public Resources Code, § 21166 are present to require the preparation of a subsequent or supplemental environmental impact report.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Lack of Jurisdiction)

17.    Petitioners are barred from maintaining this action, either in whole or in part, because the Court lacks jurisdiction to provide the requested relief due to the Consent Decree entered in a case entitled *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Lack of Irreparable Harm)

18.    Petitioners are barred from maintaining this action, either in whole or in part, because Petitioners fail to allege any irreparable harm or prejudice.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Future Defenses)

19.    Sable reserves the right to amend this Answer and its defenses, to assert additional affirmative defenses, and to supplement, alter, or change this Answer upon revelation of more definite facts by Petitioners or other parties, and upon the undertaking of an investigation of this matter.

**RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES**

Sable hereby gives notice that it intends to rely upon such other and further defenses as may become known or available during discovery proceedings and hereby reserves its right to amend this Answer and assert such defenses.

DATED: September 17, 2025 Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE

_____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**VERIFICATION**

I, Steven P. Rusch, am Vice President of Regulatory and Environmental Affairs of Sable Offshore Corp., and I am an Authorized Representative of Pacific Pipeline Company. I am authorized to execute this verification on behalf of them. I have read the attached Verified Answer to Petitioners' Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief and am familiar with its contents. The facts provided in the petition and complaint are true of my personal knowledge, except for those alleged on information and belief, and I believe those to be true.

DATED: September 17, 2025

_____
Steven P. Rusch

---

46

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**PROOF OF SERVICE**

I, Garrett Stanton, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On September 17, 2025, I served the document(s) **REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES** on the interested parties stated below, by the following means of service:

**See Attached Service List**

(BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

(BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

(BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒   BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 17, 2025, at Los Angeles, California.

_____
Garrett Stanton

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**SERVICE LIST**

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA  94612

**ATTORNEYS FOR PETITIONERS**
   CENTER FOR BIOLOGICAL DIVERSITY
   and
WISHTOYO FOUNDATION

TEL.:    (510) 844-7100
FAX:    (510) 844-7150
Email:
   jteelsimmonds@biologicaldiversity.org
           depettit@biologicaldiversity.org
           tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a
   California non-profit corporation; GET OIL
   OUT!, a California non-profit corporation;
   SANTA BARBARA COUNTY ACTION
   NETWORK, a California non-profit
   corporation; SIERRA CLUB, a national non-
   profit corporation; and SANTA BARBARA
   CHANNELKEEPER, a California non-profit
   corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
           jfrankel@environmentaldefensecenter.org
           trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/
   DEFENDANTS**
   California Department of Forestry and Fire
   Protection, Office of the State Fire Marshal;
   Daniel Berlant, in his official capacity as
   State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN
   INTEREST**
   Sable Offshore Corp.; Pacific Pipeline
   Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
           benjaminhanelin@paulhastings.com
           natalierogers@paulhastings.com

Trevor D. Large, Esq.

**ATTORNEYS FOR REAL PARTIES IN I**

48

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
820 State Street, 4th Floor
Santa Barbara, CA  93101

INTEREST
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 996-7000
Email:  TLarge@FLASllp.com

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:   09/19/2025                                  Time:   10:00 AM
Judicial Officer:      Donna D Geck
Deputy Clerk:         Maria Vidal                                  Dept:   SB Dept 4
Deputy Sheriff:       Marco Diaz
Bailiff/Court Officer:                                            Case No: 25CV02247
Court Reporter:       Shelley Cockrell

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

| Linda Krop | Petitioner's Attorney |
|---|---|
| Tara Rengifo | Petitioner's Attorney |
| Tiffany Yee | Respondent's Attorney (via Zoom) |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Garrett Stanton | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |

---

**NATURE OF PROCEEDINGS***:*  **Case Management Conference; Motion: Bifurcation**


The Court adopted the tentative ruling and set a hearing as follows:

December 05, 2025 8:30 AM
Case Management Conference
Geck, Donna D
SB Dept 4

Mr. Dintzer was directed to give notice.

**RULING**:

(1)      For the reasons set forth herein, the motion of petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) to bifurcate trial of this action is denied.
(2)      For the reasons set forth herein, the motion of petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) to bifurcate trial of this action is denied.
(3)      As discussed herein, the parties shall meet and confer as to the desirability of consolidation of these actions and report to the court the results of such discussions at the next case management conference.

---

These are two related cases involving the same underlying incidents and activity. The petitioners and plaintiffs in their respective actions make essentially the same motions, and on the same grounds, to bifurcate trial; defendants oppose both motions on essentially the same grounds. The court will therefore address both motions together.

---

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

As alleged in the petitioners' respective petitions:

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (CBD Petition, ¶¶ 59-62; EDC Petition, ¶¶ 85-88 & fn. 3 [the Federal Consent Decree].)

The Federal Consent Decree required the operator to "remediate all internal or external metal loss anomalies that have an ILI reported depth of 40 [percent] or greater wall loss, within one year of discovery." (CBD Petition, ¶ 60.) The Federal Consent Decree also expressly required that prior to any restart, the operator
"shall apply for a State Waiver through [OSFM] for the limited effectiveness of cathodic protection" and that it "must receive a State Waiver from [OSFM] prior to restarting." (CBD Petition, ¶ 61.) The Federal Consent Decree stated that OSFM has the discretion to require additional terms and conditions if it grants any request for a State Waiver. (CBD Petition, ¶ 62.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id.* & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (EDC Petition, ¶ 115; CBD Petition, ¶ 71.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (EDC Petition, ¶ 117.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On July 8, 2025, Sable filed their demurrers and their motions to strike as to the CBD Petition and EDC Petition. These demurrers and motions to strike were originally set for this hearing date of September 19.

On August 27, 2025, CBD and EDC filed motions in their respective cases to bifurcate what they describe as their "procedural claims" from their "substantive claims."

CBD identifies their procedural claims as:

"(1) OSFM violated sections 60118(c)(1)(B), (d) of the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101, *et seq.* (the 'FPSA'), by failing to provide public notice and a hearing (First Cause of Action, Petition at ¶¶ 115, 117);

"(2) OSFM violated sections 60118(c)(3), (d) of the FPSA by failing to provide an order containing the reasons for granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 118);

"(3) OSFM violated sections 60118(d) of the FPSA by failing to conduct environmental review before granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 119);

**MINUTE ORDER**

"(4) OSFM violated section 51011(c) of California's Elder Pipeline Safety Act, Gov. Code section 51010, *et seq.* (the 'CPSA'), by failing to include a discussion of those factors that OSFM considered significant to the granting of the Waivers (Second Cause of Action, Petition at ¶¶ 123-124); and

"(5) OSFM violated CEQA, Pub. Resources Code § 2100, *et seq.*, by failing to prepare an environmental document for the Project and include the public in the decisionmaking process (Third Cause of Action)." (CBD Motion, at p. 4.)

EDC similarly identifies their procedural claims as:

"First Cause of Action: OSFM failed to provide a public process, including adequate public notice and a public hearing, as required by the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101 et seq. (the 'FPSA').

"Second Cause of Action: OSFM failed to provide a statement of reasons in its Waiver approvals, as required by the FPSA.

"Third Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the FPSA.

"Fifth Cause of Action: OSFM failed to provide a discussion of significant factors in its Waiver approvals, as required by California's Elder Pipeline Safety Act, Gov. Code section 51010 et seq. (the 'CPSA').

"Sixth Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the CPSA.

"Eighth Cause of Action: OSFM failed to prepare a subsequent Environmental Impact Report (EIR), as required by CEQA." (EDC Motion, at p. 4.)

CBD identifies their substantive claims as:

"(1) OSFM violated sections 60118(c)(1)(A), (d) of the FPSA by failing to demonstrate that the Waivers are 'not inconsistent with pipeline safety' (First Cause of Action, Petition at ¶¶ 115, 116); and

"(2) OSFM violated section 51011(b) of the CPSA by failing to demonstrate that in issuing the State Waivers, the 'risk to public safety is slight and the probability of injury or damage remote' (Second Cause of Action, Petition at ¶ 122.)" (CBD Motion, at p. 5.)

EDC similarly identifies their substantive claims as:

"Fourth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the waiver is not inconsistent with pipeline safety'—the relevant legal standard under the FPSA. (49 U.S.C. § 60118(c)(1)(A), (d).)

"Sixth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the risk to public safety is slight and the probability of injury or damage remote'—the relevant legal standard under the CPSA. (Gov. Code § 51011(b).)" (EDC Motion, at p. 5.)

CBD and EDC argue that the procedural claims are straightforward in that they require petitioners to establish only that OSFM failed to comply with its procedural mandates and that the only relevant facts are whether OSFM did or did not do so. The substantive claims, by contrast, require fact and time-

intensive inquires as to whether OSFM adequately demonstrated that the State Waivers protect public and pipeline safety. CBD and EDC seek orders to resolve the procedural claims first. If CBD and EDC are able to succeed on their procedural claims, the substantive claims need not be resolved by the court now but would await further administrative proceedings which may make the substantive claims moot.

Sable opposes both motions. Sable argues that all claims, including both procedural and substantive claims, are so entangled with each other that bifurcation would not likely result in judicial efficiency for the court or for the litigants.

On September 8, 2025, Sable filed notices withdrawing their demurrers and motions to strike. The demurrers and motions to strike accordingly were taken off calendar.

On September 12, 2025, OSFM filed notices that OSFM takes no position with respect to the petitioners' motions to bifurcate.

**Analysis:**

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States." (Code Civ. Proc., § 1048, subd. (b).)

"The court may, when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby, on motion of a party, after notice and hearing, make an order, no later than the close of pretrial conference in cases in which such pretrial conference is to be held, or, in other cases, no later than 30 days before the trial date, that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case, except for special defenses which may be tried first pursuant to Sections 597 and 597.5." (Code Civ. Proc., § 598.)

Under sections 598 and 1048, the court has discretion to bifurcate actions to accomplish the statutory purposes of expedition and economy. (See *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 833.)

A lengthy discourse on the nature of the petitioners' claims is neither necessary nor helpful here. While the petitioners' distinction between procedural and substantive claims is useful for some purposes, all of the claims are closely connected to a common set of facts. In short, the procedural claims do not exist in a vacuum. Among other things, the court's understanding of the factual basis for the substantive claims informs the court so as to assist in the determination of the procedural claims. In these circumstances, limiting a first phase of trial to one set of claims has the potential to exclude evidence or argument useful, and perhaps necessary, to the adjudication of the procedural issues.

Based upon the present procedural posture of the case and the arguments of the parties, the court does not find that bifurcation is likely to promote expeditious or efficient adjudication. Accordingly, the court will deny the motions to bifurcate.

At the same time, the petitioners mention the potential of consolidation of case No. 25CV02244 with case No. 25CV02247. This issue is not now before the court. However, as these motions demonstrate, the overlap in facts and law between the cases appears to make disposition of these cases together more efficient than addressing each case separately. (See Code Civ. Proc., § 1048, subd. (a).) The parties shall meet and confer as to the desirability of consolidation of these actions, for all purposes or for

---

purposes of trial only, and report to the court at the next case management conference the results of such discussions.


DARREL E. PARKER, EXECUTIVE OFFICER          Minutes Prepared by:

_____Maria Vidal_____ , Deputy

**MINUTE ORDER**

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA BARBARA

Dated and Entered:   09/19/2025                    Time:   10:00 AM
Judicial Officer:      Donna D Geck
Deputy Clerk:        Maria Vidal                     Dept:   SB Dept 4
Deputy Sheriff:       Marco Diaz
Bailiff/Court Officer:                                  Case No: 25CV02247
Court Reporter:      Shelley Cockrell

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

| | |
|---|---|
| Linda Krop | Petitioner's Attorney |
| Tara Rengifo | Petitioner's Attorney |
| Tiffany Yee | Respondent's Attorney (via Zoom) |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Garrett Stanton | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |

---

**NATURE OF PROCEEDINGS***:*  **Case Management Conference; Motion: Bifurcation**


The Court adopted the tentative ruling and set a hearing as follows:

December 05, 2025 8:30 AM
Case Management Conference
Geck, Donna D
SB Dept 4

Mr. Dintzer was directed to give notice.

**RULING**:


(1)      For the reasons set forth herein, the motion of petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) to bifurcate trial of this action is denied.
(2)      For the reasons set forth herein, the motion of petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) to bifurcate trial of this action is denied.
(3)      As discussed herein, the parties shall meet and confer as to the desirability of consolidation of these actions and report to the court the results of such discussions at the next case management conference.

---

These are two related cases involving the same underlying incidents and activity. The petitioners and plaintiffs in their respective actions make essentially the same motions, and on the same grounds, to bifurcate trial; defendants oppose both motions on essentially the same grounds. The court will therefore address both motions together.

---

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

As alleged in the petitioners' respective petitions:

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (CBD Petition, ¶¶ 59-62; EDC Petition, ¶¶ 85-88 & fn. 3 [the Federal Consent Decree].)

The Federal Consent Decree required the operator to "remediate all internal or external metal loss anomalies that have an ILI reported depth of 40 [percent] or greater wall loss, within one year of discovery." (CBD Petition, ¶ 60.) The Federal Consent Decree also expressly required that prior to any restart, the operator
"shall apply for a State Waiver through [OSFM] for the limited effectiveness of cathodic protection" and that it "must receive a State Waiver from [OSFM] prior to restarting." (CBD Petition, ¶ 61.) The Federal Consent Decree stated that OSFM has the discretion to require additional terms and conditions if it grants any request for a State Waiver. (CBD Petition, ¶ 62.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id.* & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (EDC Petition, ¶ 115; CBD Petition, ¶ 71.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (EDC Petition, ¶ 117.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On July 8, 2025, Sable filed their demurrers and their motions to strike as to the CBD Petition and EDC Petition. These demurrers and motions to strike were originally set for this hearing date of September 19.

On August 27, 2025, CBD and EDC filed motions in their respective cases to bifurcate what they describe as their "procedural claims" from their "substantive claims."

CBD identifies their procedural claims as:

"(1) OSFM violated sections 60118(c)(1)(B), (d) of the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101, *et seq.* (the 'FPSA'), by failing to provide public notice and a hearing (First Cause of Action, Petition at ¶¶ 115, 117);

"(2) OSFM violated sections 60118(c)(3), (d) of the FPSA by failing to provide an order containing the reasons for granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 118);

"(3) OSFM violated sections 60118(d) of the FPSA by failing to conduct environmental review before granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 119);

**MINUTE ORDER**

"(4) OSFM violated section 51011(c) of California's Elder Pipeline Safety Act, Gov. Code section 51010, *et seq.* (the 'CPSA'), by failing to include a discussion of those factors that OSFM considered significant to the granting of the Waivers (Second Cause of Action, Petition at ¶¶ 123-124); and

"(5) OSFM violated CEQA, Pub. Resources Code § 2100, *et seq.*, by failing to prepare an environmental document for the Project and include the public in the decisionmaking process (Third Cause of Action)." (CBD Motion, at p. 4.)

EDC similarly identifies their procedural claims as:

"First Cause of Action: OSFM failed to provide a public process, including adequate public notice and a public hearing, as required by the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101 et seq. (the 'FPSA').

"Second Cause of Action: OSFM failed to provide a statement of reasons in its Waiver approvals, as required by the FPSA.

"Third Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the FPSA.

"Fifth Cause of Action: OSFM failed to provide a discussion of significant factors in its Waiver approvals, as required by California's Elder Pipeline Safety Act, Gov. Code section 51010 et seq. (the 'CPSA').

"Sixth Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the CPSA.

"Eighth Cause of Action: OSFM failed to prepare a subsequent Environmental Impact Report (EIR), as required by CEQA." (EDC Motion, at p. 4.)

CBD identifies their substantive claims as:

"(1) OSFM violated sections 60118(c)(1)(A), (d) of the FPSA by failing to demonstrate that the Waivers are 'not inconsistent with pipeline safety' (First Cause of Action, Petition at ¶¶ 115, 116); and

"(2) OSFM violated section 51011(b) of the CPSA by failing to demonstrate that in issuing the State Waivers, the 'risk to public safety is slight and the probability of injury or damage remote' (Second Cause of Action, Petition at ¶ 122.)" (CBD Motion, at p. 5.)

EDC similarly identifies their substantive claims as:

"Fourth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the waiver is not inconsistent with pipeline safety'—the relevant legal standard under the FPSA. (49 U.S.C. § 60118(c)(1)(A), (d).)

"Sixth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the risk to public safety is slight and the probability of injury or damage remote'—the relevant legal standard under the CPSA. (Gov. Code § 51011(b).)" (EDC Motion, at p. 5.)

CBD and EDC argue that the procedural claims are straightforward in that they require petitioners to establish only that OSFM failed to comply with its procedural mandates and that the only relevant facts are whether OSFM did or did not do so. The substantive claims, by contrast, require fact and time-

intensive inquires as to whether OSFM adequately demonstrated that the State Waivers protect public and pipeline safety. CBD and EDC seek orders to resolve the procedural claims first. If CBD and EDC are able to succeed on their procedural claims, the substantive claims need not be resolved by the court now but would await further administrative proceedings which may make the substantive claims moot.

Sable opposes both motions. Sable argues that all claims, including both procedural and substantive claims, are so entangled with each other that bifurcation would not likely result in judicial efficiency for the court or for the litigants.

On September 8, 2025, Sable filed notices withdrawing their demurrers and motions to strike. The demurrers and motions to strike accordingly were taken off calendar.

On September 12, 2025, OSFM filed notices that OSFM takes no position with respect to the petitioners' motions to bifurcate.

**Analysis:**

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States." (Code Civ. Proc., § 1048, subd. (b).)

"The court may, when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby, on motion of a party, after notice and hearing, make an order, no later than the close of pretrial conference in cases in which such pretrial conference is to be held, or, in other cases, no later than 30 days before the trial date, that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case, except for special defenses which may be tried first pursuant to Sections 597 and 597.5." (Code Civ. Proc., § 598.)

Under sections 598 and 1048, the court has discretion to bifurcate actions to accomplish the statutory purposes of expedition and economy. (See *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 833.)

A lengthy discourse on the nature of the petitioners' claims is neither necessary nor helpful here. While the petitioners' distinction between procedural and substantive claims is useful for some purposes, all of the claims are closely connected to a common set of facts. In short, the procedural claims do not exist in a vacuum. Among other things, the court's understanding of the factual basis for the substantive claims informs the court so as to assist in the determination of the procedural claims. In these circumstances, limiting a first phase of trial to one set of claims has the potential to exclude evidence or argument useful, and perhaps necessary, to the adjudication of the procedural issues.

Based upon the present procedural posture of the case and the arguments of the parties, the court does not find that bifurcation is likely to promote expeditious or efficient adjudication. Accordingly, the court will deny the motions to bifurcate.

At the same time, the petitioners mention the potential of consolidation of case No. 25CV02244 with case No. 25CV02247. This issue is not now before the court. However, as these motions demonstrate, the overlap in facts and law between the cases appears to make disposition of these cases together more efficient than addressing each case separately. (See Code Civ. Proc., § 1048, subd. (a).) The parties shall meet and confer as to the desirability of consolidation of these actions, for all purposes or for

---

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

purposes of trial only, and report to the court at the next case management conference the results of such discussions.


DARREL E. PARKER, EXECUTIVE OFFICER          Minutes Prepared by:

                                             _____Maria Vidal_____ , Deputy

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/22/2025 12:10 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:        (213) 576-1000
Facsimile:        (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:        (310) 620-5879
Facsimile:        (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA BARBARA**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, et al. <br><br> Petitioners and Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et. al <br><br> Respondents and Defendants. <br><br> and <br><br> SABLE OFFSHORE CORP., et al. <br><br> Real Parties in Interest. | Case No. 25CV02247 <br><br> Assigned for all purposes to <br> Hon. Donna D. Geck <br><br> **SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S NOTICE OF RULING** <br><br> Complaint Filed:     April 15, 2025 <br> Trial Date:           None set |

- 1 -

REAL PARTIES' NOTICE OF RULING

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 19, 2025, the Court held a hearing concerning Petitioners' Motion to Bifurcate and a Case Management Conference.  The Court adopted its tentative order to deny Petitioners' Motion to Bifurcate, which is attached hereto as **Exhibit A**.  The parties stipulated on the record to consolidate this case with Case No. 25CV02244.  The Court set a Further Case Management Conference for December 5, 2025, at 8:30 a.m. in Department 4.  Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company were ordered to give notice.

Dated:  September 22, 2025              Respectfully submitted,

                                                **ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
TREVOR LARGE

By: _____
                                 Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE
COMPANY

- 2 -

REAL PARTIES' NOTICE OF RULING

# EXHIBIT A



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

≡

Notice: The court is aware of fraudulent messages and scams being sent to the public. For more information please click <u>here</u>.

# Environmental Defense Center et al vs California Dept of Forestry and Fire Protection

## Case Number

25CV02247

## Case Type

Civil Law & Motion

## Hearing Date / Time

Fri, 09/19/2025 - 10:00

## Nature of Proceedings

CMC; Bifurcation

## Tentative Ruling

(1)     For the reasons set forth herein, the motion of petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) to bifurcate trial of this action is denied.

(2)     For the reasons set forth herein, the motion of petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) to bifurcate trial of this action is denied.

(3)     As discussed herein, the parties shall meet and confer as to the desirability of consolidation of these actions and report to the court the results of such discussions at the next case management conference.

These are two related cases involving the same underlying incidents and activity. The petitioners and plaintiffs in their respective actions make essentially the same motions, and on the same grounds, to bifurcate trial; defendants oppose both motions on essentially the same grounds. The court will therefore address both motions together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

As alleged in the petitioners' respective petitions:

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (CBD Petition, ¶¶ 59-62; EDC Petition, ¶¶ 85-88 & fn. 3 [the Federal Consent Decree].)

The Federal Consent Decree required the operator to "remediate all internal or external metal loss anomalies that have an ILI reported depth of 40 [percent] or greater wall loss, within one year of discovery." (CBD Petition, ¶ 60.) The Federal Consent Decree also expressly required that prior to any restart, the operator "shall apply for a State Waiver through [OSFM] for the limited effectiveness of cathodic protection" and that it "must receive a State Waiver from [OSFM] prior to restarting." (CBD Petition, ¶ 61.) The Federal Consent Decree stated that OSFM has the discretion to require additional terms and conditions if it grants any request for a State Waiver. (CBD Petition, ¶ 62.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id.* & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (EDC Petition, ¶ 115; CBD Petition, ¶ 71.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (EDC Petition, ¶ 117.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On July 8, 2025, Sable filed their demurrers and their motions to strike as to the CBD Petition and EDC Petition. These demurrers and motions to strike were originally set for this hearing date of September 19.

On August 27, 2025, CBD and EDC filed motions in their respective cases to bifurcate what they describe as their "procedural claims" from their "substantive claims."

CBD identifies their procedural claims as:

"(1) OSFM violated sections 60118(c)(1)(B), (d) of the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101, *et seq.* (the 'FPSA'), by failing to provide public notice and a hearing (First Cause of Action, Petition at ¶¶ 115, 117);

"(2) OSFM violated sections 60118(c)(3), (d) of the FPSA by failing to provide an order containing the reasons for granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 118);

"(3) OSFM violated sections 60118(d) of the FPSA by failing to conduct environmental review before granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 119);

"(4) OSFM violated section 51011(c) of California's Elder Pipeline Safety Act, Gov. Code section 51010, *et seq.* (the 'CPSA'), by failing to include a discussion of those factors that OSFM considered significant to the granting of the Waivers (Second Cause of Action, Petition at ¶¶ 123-124); and

"(5) OSFM violated CEQA, Pub. Resources Code § 2100, *et seq.*, by failing to prepare an environmental document for the Project and include the public in the decisionmaking process (Third Cause of Action)." (CBD Motion, at p. 4.)

EDC similarly identifies their procedural claims as:

"First Cause of Action: OSFM failed to provide a public process, including adequate public notice and a public hearing, as required by the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101 et seq. (the 'FPSA').

"Second Cause of Action: OSFM failed to provide a statement of reasons in its Waiver approvals, as required by the FPSA.

"Third Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the FPSA.

"Fifth Cause of Action: OSFM failed to provide a discussion of significant factors in its Waiver approvals, as required by California's Elder Pipeline Safety Act, Gov. Code section 51010 et seq. (the 'CPSA').

"Sixth Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the CPSA.

"Eighth Cause of Action: OSFM failed to prepare a subsequent Environmental Impact Report (EIR), as required by CEQA." (EDC Motion, at p. 4.)

CBD identifies their substantive claims as:

"(1) OSFM violated sections 60118(c)(1)(A), (d) of the FPSA by failing to demonstrate that the Waivers are 'not inconsistent with pipeline safety' (First Cause of Action, Petition at ¶¶ 115, 116); and

"(2) OSFM violated section 51011(b) of the CPSA by failing to demonstrate that in issuing the State Waivers, the 'risk to public safety is slight and the probability of injury or damage remote' (Second Cause of Action, Petition at ¶ 122.)" (CBD Motion, at p. 5.)

EDC similarly identifies their substantive claims as:

"Fourth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the waiver is not inconsistent with pipeline safety'—the relevant legal standard under the FPSA. (49 U.S.C. § 60118(c)(1)(A), (d).)

"Sixth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the risk to public safety is slight and the probability of injury or damage remote'—the relevant legal standard under the CPSA. (Gov. Code § 51011(b).)" (EDC Motion, at p. 5.)

CBD and EDC argue that the procedural claims are straightforward in that they require petitioners to establish only that OSFM failed to comply with its procedural mandates and that the only relevant facts are whether OSFM did or did not do so. The substantive claims, by contrast, require fact and time-intensive inquires as to whether OSFM adequately demonstrated that the State Waivers protect public and pipeline safety. CBD and EDC seek orders to resolve the procedural claims first. If CBD and EDC are able to succeed on their procedural claims, the substantive claims need not be resolved by the court now but would await further administrative proceedings which may make the substantive claims moot.

Sable opposes both motions. Sable argues that all claims, including both procedural and substantive claims, are so entangled with each other that bifurcation would not likely result in judicial efficiency for the court or for the litigants.

On September 8, 2025, Sable filed notices withdrawing their demurrers and motions to strike. The demurrers and motions to strike accordingly were taken off calendar.

On September 12, 2025, OSFM filed notices that OSFM takes no position with respect to the petitioners' motions to bifurcate.

**Analysis:**

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States." (Code Civ. Proc., § 1048, subd. (b).)

"The court may, when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby, on motion of a party, after notice and hearing, make an order, no later than the close of pretrial conference in cases in which such pretrial conference is to be held, or, in other cases, no later than 30 days before the trial date, that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case, except for special defenses which may be tried first pursuant to Sections 597 and 597.5." (Code Civ. Proc., § 598.)

Under sections 598 and 1048, the court has discretion to bifurcate actions to accomplish the statutory purposes of expedition and economy. (See *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 833.)

A lengthy discourse on the nature of the petitioners' claims is neither necessary nor helpful here. While the petitioners' distinction between procedural and substantive claims is useful for some purposes, all of the claims are closely connected to a common set of facts. In short, the procedural claims do not exist in a vacuum. Among other things, the court's understanding of the factual basis for the substantive claims informs the court so as to assist in the determination of the procedural claims. In these circumstances, limiting a first phase of trial to one set of claims has the potential to exclude evidence or argument useful, and perhaps necessary, to the adjudication of the procedural issues.

Based upon the present procedural posture of the case and the arguments of the parties, the court does not find that bifurcation is likely to promote expeditious or efficient adjudication. Accordingly, the court will deny the motions to bifurcate.

At the same time, the petitioners mention the potential of consolidation of case No. 25CV02244 with case No. 25CV02247. This issue is not now before the court. However, as these motions demonstrate, the overlap in facts and law between the cases appears to make disposition of these cases together more efficient than addressing each case separately. (See Code Civ. Proc., § 1048, subd. (a).) The parties shall meet and confer as to the desirability of consolidation of these actions, for all purposes or for purposes of trial only, and report to the court at the next case management conference the results of such discussions.


## JUDGES

### JUDGE DONNA GECK

Dept. 4 SB-Anacapa

1100 Anacapa Street P.O. Box 21107

Santa Barbara, CA 93121-1107

US

**PROOF OF SERVICE**

I, Martha Serrano, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 1900 Avenue of the Stars, Suite 450, Los Angeles, California 90067.

On September 22, 2025, I served the document **SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S NOTICE OF RULING** on the interested parties in this action addressed as follows: **See Attached Service List**

**I.**    ☒    BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 22, 2025, at Los Angeles, California.

_____
Martha Serrano

**SERVICE LIST**

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA 94612

**ATTORNEYS FOR PETITIONERS**
CENTER FOR BIOLOGICAL DIVERSITY and
WISHTOYO FOUNDATION

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a
California non-profit corporation; GET OIL
OUT!, a California non-profit corporation;
SANTA BARBARA COUNTY ACTION
NETWORK, a California non-profit corporation;
SIERRA CLUB, a national non-profit
corporation; and SANTA BARBARA
CHANNELKEEPER, a California non-profit
corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
jfrankel@environmentaldefensecenter.org
trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/
DEFENDANTS**
California Department of Forestry and Fire
Protection, Office of the State Fire Marshal;
Daniel Berlant, in his official capacity as State
Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN
INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

Trevor D. Large, Esq.
**FAUVER, LARGE, ARCHBALD &
SPRAY LLP**
820 State Street, 4th Floor
Santa Barbara, CA 93101

**ATTORNEYS FOR REAL PARTIES IN
INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 966-7000
Email: TLarge@FLASllp.com

---

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Linda Krop (118773); Jeremy Frankel (344500); Tara Rengifo (307670)
FIRM NAME: Environmental Defense Center
STREET ADDRESS: 906 Garden Street
CITY: Santa Barbara    STATE: CA    ZIP CODE: 93101
TELEPHONE NO.: (805) 963-1622    FAX NO.:
EMAIL ADDRESS: lkrop@environmentaldefensecenter.org
ATTORNEY FOR (name): Petitioners/Plaintiffs Environmental Defense Center et al.

**ELECTRONICALLY FILED**
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
11/20/2025 10:19 AM
By: Laura Kenny , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa

PLAINTIFF/PETITIONER: Environmental Defense Center et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one):  [X] **UNLIMITED CASE** (Amount demanded exceeds $35,000)   [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 25CV00247 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: December 5, 2025    Time: 8:30 a.m.    Dept.: 4    Div.: Anacapa    Room:

Address of court (if different from the address above):

[ ]  **Notice of Intent to Appear by Telephone, by** (name):

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [ ]  This statement is submitted by party (name):
   b. [X]  This statement is submitted **jointly** by parties (names): Plaintiffs/Petitioners Environmental Defense Center et al.

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date): April 15, 2025
   b. [ ]  The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [X]  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ]  The following parties named in the complaint or cross-complaint
      (1) [ ]  have not been served (specify names and explain why not):

      (2) [ ]  have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ]  have had a default entered against them (specify names):

   c. [ ]  The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in  [X] complaint   [ ] cross-complaint    (Describe, including causes of action):
      Petitioners challenge, under CCP 1085 and 1094.5, the Office of the State Fire Marshal's (OSFM) issuance of State Waivers for the Las Flores Pipeline System. Petitioners allege that, in issuing the waivers, OSFM failed to comply with federal and state pipeline safety laws, failed to comply with the California Environmental Quality Act, and otherwise abused its discretion.

Page 1 of 5

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

**CM-110**

| PLAINTIFF/PETITIONER: Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV00247 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
        See Attachment 4b

   ☒ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

    The party or parties request  ☐ a jury trial  ☒ a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

    a.  ☐  The trial has been set for *(date):*

    b.  ☒  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

    c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

    The party or parties estimate that the trial will take *(check one)*

    a.  ☒  days *(specify number):* 1-2

    b.  ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

    The party or parties will be represented at trial  ☒ by the attorney or party listed in the caption  ☐ by the following:

    a.  Attorney:

    b.  Firm:

    c.  Address:

    d.  Telephone number:              f.  Fax number:

    e.  Email address:                 g.  Party represented:

    ☐  Additional representation is described in Attachment 8.

9.  **Preference**

    ☒  This case is entitled to preference *(specify code section):* Pub. Res. Code § 21167.1(a)

10.  **Alternative dispute resolution (ADR)**

    a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

    (1)  For parties represented by counsel: Counsel  ☒ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

    (2)  For self-represented parties: Party  ☐ has  ☐ has not  reviewed the ADR information package identified in rule 3.221.

    b.  **Referral to judicial arbitration or civil action mediation** (if available).

    (1) ☐  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

    (2) ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    (3) ☒  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
          Cal. Rules of Court, rule 3.811(b)(1)

CM-110 [Rev. January 1, 2024]                    **CASE MANAGEMENT STATEMENT**                    **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER:  Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV00247 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | [x] | [x] Mediation session not yet scheduled<br>[ ] Mediation session scheduled for *(date)*:<br>[ ] Agreed to complete mediation by *(date)*:<br>[ ] Mediation completed on *(date)*: |
| (2) Settlement conference | [x] | [ ] Settlement conference not yet scheduled<br>[ ] Settlement conference scheduled for *(date)*:<br>[ ] Agreed to complete settlement conference by *(date)*:<br>[x] Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | [ ] | [ ] Neutral evaluation not yet scheduled<br>[ ] Neutral evaluation scheduled for *(date)*:<br>[ ] Agreed to complete neutral evaluation by *(date)*:<br>[ ] Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | [ ] | [ ] Judicial arbitration not yet scheduled<br>[ ] Judicial arbitration scheduled for *(date)*:<br>[ ] Agreed to complete judicial arbitration by *(date)*:<br>[ ] Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | [ ] | [ ] Private arbitration not yet scheduled<br>[ ] Private arbitration scheduled for *(date)*:<br>[ ] Agreed to complete private arbitration by *(date)*:<br>[ ] Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | [ ] | [ ] ADR session not yet scheduled<br>[ ] ADR session scheduled for *(date)*:<br>[ ] Agreed to complete ADR session by *(date)*:<br>[ ] ADR completed on *(date)*: |

CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

**Page 3 of 5**

CM-110

| PLAINTIFF/PETITIONER:   Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   California Department of Forestry and Fire Protection et al. | 25CV00247 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al.

(2) Name of court: Santa Barbara County Superior Court

(3) Case number:  25CV02444

(4) Status:  Pending

☐ Additional cases are described in Attachment 13a.

b. ☒ A motion to ☒ consolidate ☐ coordinate will be filed by *(name party):*
Petitioners Environmental Defense Center et al., in the event the parties are unable to finalize a stipulation. (See section 19.)

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
On August 27, 2025, Petitioners filed a motion to bifurcate this action into two phases: consideration of (1) Petitioners' procedural claims under CEQA and federal/state pipeline safety acts, and (2) substantive pipeline safety claims. On September 19, 2025, the Court denied Petitioners' motion.

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
Petitioners believe discovery is not necessary or appropriate for this action, and thus should be prohibited or strictly limited.

CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

Page 4 of 5

**CM-110**

| PLAINTIFF/PETITIONER:  Environmental Defense Center et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV00247 |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*
On April 23, 2025, counsel for OSFM denied Petitioners' request to prepare the administrative record. OSFM has not yet prepared the administrative record, and there is no estimated date for its completion at this time. Petitioners have submitted a proposed record index to counsel for OSFM. The case cannot move forward until the record is prepared.

19. **Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
On June 12, 2025, the parties participated in a CEQA settlement conference and met and conferred about a number of issues, including case consolidation. The parties have since met and conferred about additional case management issues, and have attempted to reach an agreement regarding what procedures to follow should Real Parties file a 10-day notice of intent to restart the Pipeline System, which will call for further briefing and amendment of the Petition/Complaint.

b. ☒ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*
The parties have agreed, in principle, to stipulate to consolidating Case Nos. 25CV02247 and 25CV02444. Further, it is Petitioners' understanding that, in the event Real Parties file a 10-day notice of restart, all parties are amendable to Petitioners filing an amended Petition/Complaint under certain conditions. However, the parties were not able to reach an agreement regarding a schedule for further briefing. Petitioners have reached out to Real Parties several times to try and finalize a stipulation addressing consolidation and pleading amendments, but have not received a response.

20. Total number of pages attached *(if any):*  1_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: November 20, 2025

Linda Krop
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**MC-025**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Environmental Defense Center et al. v. Cal Fire et al. | 25CV02247 |

**ATTACHMENT** *(Number):*  4b

*(This Attachment may be used with any Judicial Council form.)*

This case arises from the efforts of Sable Offshore Corp. and its wholly-owned subsidiary Pacific Pipeline Company ("Real Parties") to restart the Las Flores Pipeline System — a defective pipeline system that ruptured in 2015, causing one of the worst oil disasters in California history.

Upon investigation, the Pipeline Hazardous Materials Safety Administration (PHMSA) determined that the rupture was a result of "progressive external corrosion," and that the pipeline's cathodic protection system — intended to prevent such corrosion — had failed. Concerningly, PHMSA ultimately determined that, by flaw of design, cathodic protection is ineffective on the Las Flores Pipeline System, leaving it vulnerable to pervasive corrosion.

Because of the Las Flores Pipeline System's extensive corrosion issues, in order to restart it, Sable must obtain waivers from the Office of the State Fire Marshal (OSFM) that excuse it from complying with certain regulatory requirements. Real Parties thus applied for State Waivers "for the limited effectiveness of cathodic protection" on CA-324 and CA-325, the two pipeline segments that comprise the Las Flores Pipeline System. OSFM granted these State Waivers to Real Parties without providing a public process, without providing any justification for its decisions, and without conducting necessary environmental review.

Petitioners challenge OSFM's issuance of the State Waivers under Code of Civil Procedure sections 1085 and 1094.5. Petitioners allege that Respondents (1) failed to comply with mandatory procedures outlined in state and federal pipeline safety laws, (2) failed to comply with the California Environmental Quality Act's review process, and (3) otherwise prejudicially abused its discretion in issuing the State Waivers.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __6__ of __6__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On November 20, 2025, I served the above document(s) described as **CASE MANAGEMENT STATEMENT** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒      **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 20, 2025, at Santa Barbara, California.

_____

Jeremy M. Frankel

1
Proof of Service

**SERVICE LIST**

| | |
|---|---|
| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>Myung Park<br>Myung.Park@doj.ca.gov<br>Matthew Bullock<br>Matthew.Bullock@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEYS FOR RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; and Daniel Berlant, in his official capacity as State Fire Marshal |
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBAL & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 281865 | FOR COURT USE ONLY |
|---|---|---|

NAME: Michael S. Dorsi, Deputy Attorney General
FIRM NAME: California Attorney General's Office
STREET ADDRESS: 455 Golden Gate Avenue, Suite 11000
CITY: San Francisco        STATE: CA        ZIP CODE: 94102
TELEPHONE NO.: 415-510-3802        FAX NO.:
EMAIL ADDRESS: Michael.Dorsi@doj.ca.gov
ATTORNEY FOR (name): Respondents California Dept. of Forestry and Fire Protection, et al.

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
11/26/2025 2:38 PM
By: Terri Chavez , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara**
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa Division

PLAINTIFF/PETITIONER: Environmental Defense Center, et al.

DEFENDANT/RESPONDENT: California Dept. of Forestry & Fire Protection, et al.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| **(Check one):** [X] **UNLIMITED CASE** (Amount demanded exceeds $35,000)   [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 25CV02247 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: December 5, 2025        Time: 9:30 a.m.        Dept.: 4        Div.:        Room:

Address of court (if different from the address above):

[X] **Notice of Intent to Appear by Telephone, by** (name): Michael S. Dorsi, Deputy Attorney General (by videoconference)

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):

   a. [X] This statement is submitted by party (name): Respondents California Dept. of Forestry and Fire Protection, et al.

   b. [ ] This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)

   a. The complaint was filed on (date): April 15, 2025

   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)

   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [ ] The following parties named in the complaint or cross-complaint

      (1) [ ] have not been served (specify names and explain why not):

      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ] have had a default entered against them (specify names):

   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**

   a. Type of case in [X] complaint   [ ] cross-complaint   (Describe, including causes of action):

   Petition for writ of mandate and complaint challenging California Department of Forestry and Fire Protection's Office of the State Fire Marshal issuance of State Waivers for Las Flores Pipeline System.

Page 1 of 5

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

Petitioners allege violations of federal and state procedures for pipeline regulations and California Environmental Quality Act

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  ☐ The trial has been set for *(date):*

b.  ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
March 2-20 (counsel unavailable). Also, counsel expects trial setting in other cases before CMC in this case.

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  ☒ days *(specify number):* 1

b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:          f.  Fax number:

e.  Email address:          g.  Party represented:

☐ Additional representation is described in Attachment 8.

9.  **Preference**

☒ This case is entitled to preference *(specify code section):* PRC 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
CRC 3.811(b)(1)

CM-110 [Rev. January 1, 2024]    **CASE MANAGEMENT STATEMENT**    **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for  *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for  *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: June 12, 2025 |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for  *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on  *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110 [Rev. January 1, 2024]    **CASE MANAGEMENT STATEMENT**    **Page 3 of 5**

**CM-110**

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

**11. Insurance**

a.  ☐  Insurance carrier, if any, for party filing this statement *(name):*

b.  Reservation of rights: ☐ Yes   ☐ No

c.  ☐  Coverage issues will significantly affect resolution of this case   *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy   ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a.  ☐   There are companion, underlying, or related cases.

(1)  Name of case:

(2)  Name of court:

(3)  Case number:

(4)  Status:

☐   Additional cases are described in Attachment 13a.

b.  ☐   A motion to   ☒ consolidate   ☐ coordinate   will be filed by *(name party):*
See stipulation to consolidate, filed concurrently.

**14. Bifurcation**

☐   The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐   The party or parties expect to file the following motions before trial  *(specify moving party, type of motion, and issues):*

**16. Discovery**

a.  ☐   The party or parties have completed all discovery.

b.  ☐   The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c.  ☐   The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated  *(specify):*

CM-110 [Rev. January 1, 2024]               **CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*
This case addresses the first of two approvals required for Real Parties to restart the Las Flores Pipeline System.

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
The parties conferred on some subjects and expect to confer on other subjects between now and the date of the case management conference.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:  November 25, 2025

Michael S. Dorsi, Deputy Attorney General
_____
(TYPE OR PRINT NAME)

▶
_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶
_____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | Clear this form |

## DECLARATION OF SERVICE BY E-MAIL

**Case Name:** Environmental Defense Center v. CalFire/OSFM
**Case Number:** 25CV02247
**Party Represented:** Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal

**Declaration of Electronic Service**

1. I am at least 18 years of age and not a party to this matter.

2. I am employed in the Office of the Attorney General of the State of California. My business address is 1515 Clay Street, 20th Floor, P.O. Box 70550, Oakland, CA 94612-0550, County of Alameda.

3. My electronic service address is Tania.Martinez@doj.ca.gov.

4. On November 26, 2025, I electronically served the following document[s]:

   a. **CASE MANAGEMENT STATEMENT**

5. I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

| | |
|---|---|
| Linda Krop<br>Jeremy M. Frankel<br>Tara C. Rengifo<br>ENVIRONMENTAL DEFENSE CENTER<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org<br>***Attorneys for Petitioners***<br>***Environmental Defense Center*** | Julie Teel Simmonds<br>David Pettit<br>Talia Nimmer<br>CENTER FOR BIOLOGICAL DIVERSITY<br>**Email Addresses:**<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org<br>***Attorneys for Petitioners Center for***<br>***Biological Diversity*** |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>PAUL HASTINGS, LLP<br>**Email Addresses:**<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline Company*** | Brooke Bolender<br>Jeffrey Dintzer<br>ALSTON & BIRD, LLP<br>**Email Addresses:**<br>Brooke.Bolender@alston.com<br>jeffrey.dintzer@alston.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline***<br>***Company*** |

| Trevor D. Large<br>FAUVER, LARGE, ARCHIBALD & SPRAY, LLP<br>**Email Address:** TLarge@FLASllp.com<br>*Attorney for Real Parties in Interest*<br>*Sable Offshore Corp Pacific Pipeline Company* | |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on November 26, 2025.

|  |  |
|---|---|
| Tania Martinez | *Tania Martinez* |
| Declarant | Signature |

LA2025400827
92059557.docx

Pursuant to CRC 2.259 this document has been electronically filed by the Superior Court of California, County of Santa Barbara, on 11/26/2025

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General
MATTHEW BULLOCK (SBN 243377)
MICHAEL S. DORSI (SBN 281865)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3802
  Fax:  (415) 703-5480
  E-mail:  Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants*
*Department of Forestry and Fire Protection, by and*
*through the Office of the State Fire Marshal, an*
*agency of the State of California; Daniel Berlant, in*
*his official capacity as State Fire Marshal*

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

**12/02/2025**
Darrel E. Parker, Executive Officer
BY  Chavez, Terri
Deputy Clerk

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,**<br><br>           **Petitioners and Plaintiffs,**<br><br>           v.<br><br>**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,**<br><br>           **Respondents and Defendants**<br><br>**SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,**<br><br>           **Real Parties in Interest.** | Case No. 25CV02247<br><br><br>**STIPULATION RE: CONSOLIDATION OF CASES**<br><br>Date:        December 5, 2025<br>Time:        8:30 a.m.<br>Dept:        4<br>Judge:      Hon. Donna Geck<br><br>Trial Date:   Not Set<br>Action Filed: April 15, 2025<br><br>THIS DOCUMENTS IS FILED IN THIS MATTER AND THE RELATED CASE, NO. 25CV02244 |

1

**STIPULATION**

The Parties in *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247,[1] conferred, as requested by the Court, regarding consolidation of the two cases. The Parties all agree that the two cases should be consolidated, as the Petitions and Complaints challenge the same agency actions on overlapping theories, and therefore jointly request that the Court order, that the cases be consolidated for all purposes, including trial. All future filings shall be in the case with the lower case number, 25CV02244.

Dated:  November 25, 2025

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General

*/s/ Michael S. Dorsi*
Deputy Attorney General
*Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal*

ALSTON & BIRD

*/s/ Jeffrey Dintzer*
*Attorneys for Real Parties in Interest Sable Offshore Corp., a Delaware Corporation; and Pacific Pipeline Company, a Delaware Corporation*

Respectfully submitted,

ENVIRONMENTAL DEFENSE CENTER

*/s/ Linda Krop*
*Attorneys for Petitioners and Plaintiffs Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation; Santa Barbara County Action Network, a California non-profit corporation; Sierra Club, a national non-profit corporation; and Santa Barbara Channelkeeper, a California non-profit corporation*

CENTER FOR BIOLOGICAL DIVERSITY

*/s/ Talia Nimmer*
*Attorneys for Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation*

As the attorney responsible for the filing of this Stipulation and Proposed Order, I attest that the attorneys for all parties approved of my affixing their electronic signatures to this document. */s/*

---

[1] The Parties intend to file this Stipulation in both cases, with different cover pages and footers, but the content of the Stipulation is otherwise identical in the two filings.

2

## ~~[PROPOSED]~~ ORDER

The Parties in the cases *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247, entered into a stipulation seeking that the Court enter this Order addressing consolidation. All parties having agreed, and for good cause shown, the Court adopts the proposed order, as follows:

As authorized by Code of Civil Procedure section 1048, the matters of *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247, are consolidated for all purposes. All future filings shall be in the case with the lower case number, 25CV02244.

**IT IS SO ORDERED.**

Date: **12/02/2025**

HON. DONNA GECK
JUDGE OF SUPERIOR COURT

LA2025400827
44687109.docx

3

Stipulation re: Consolidation of Cases (25CV02247)

**<u>DECLARATION OF SERVICE BY E-MAIL</u>**

**Case Name:**　　　　Environmental Defense Center v. CalFire/OSFM
**Case Number:**　　　25CV02247
**Party Represented:**　Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal

**Declaration of Electronic Service**

1. I am at least 18 years of age and not a party to this matter.

2. I am employed in the Office of the Attorney General of the State of California.  My business address is 1515 Clay Street, 20th Floor, P.O. Box 70550, Oakland, CA  94612-0550, County of Alameda.

3. My electronic service address is Tania.Martinez@doj.ca.gov.

4. On <u>November 26, 2025</u>, I electronically served the following document[s]:

   **a.  STIPULATION RE: CONSOLIDATION OF CASES**

5. I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

| | |
|---|---|
| Linda Krop<br>Jeremy M. Frankel<br>Tara C. Rengifo<br>ENVIRONMENTAL DEFENSE CENTER<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org<br>***Attorneys for Petitioners***<br>***Environmental Defense Center*** | Julie Teel Simmonds<br>David Pettit<br>Talia Nimmer<br>CENTER FOR BIOLOGICAL DIVERSITY<br>**Email Addresses:**<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org<br>***Attorneys for Petitioners Center for***<br>***Biological Diversity*** |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>PAUL HASTINGS, LLP<br>**Email Addresses:**<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline Company*** | Brooke Bolender<br>Jeffrey Dintzer<br>ALSTON & BIRD, LLP<br>**Email Addresses:**<br>Brooke.Bolender@alston.com<br>jeffrey.dintzer@alston.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline***<br>***Company*** |

| Trevor D. Large<br>FAUVER, LARGE, ARCHIBALD & SPRAY, LLP<br>**Email Address:** TLarge@FLASllp.com<br>*Attorney for Real Parties in Interest*<br>*Sable Offshore Corp Pacific Pipeline Company* | |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on November 26, 2025.

|                   |                    |
|-------------------|--------------------|
| Tania Martinez    | *Tania Martinez*   |
| Declarant         | Signature          |

LA2025400827
92059564.docx

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:   12/05/2025                    Time:   8:30 AM
Judicial Officer:       Donna D Geck
Deputy Clerk:         Maria Vidal                       Dept:   SB Dept 4
Bailiff/Court Officer:  Eduardo Munoz            Case No: 25CV02247
Court Reporter:       Robyn Van Tuyl

---

**Environmental Defense Center et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

Linda Krop              Petitioner's Attorney
Jeremy Frankel      Petitioner's Attorney
Michael Dorsi         Respondent's Attorney (via Zoom)
Jeffrey Dintzer        Attorney for Real Party in Interest
Trevor Large           Attorney for Real Party in Interest

---

**NATURE OF PROCEEDINGS***:* **Case Management Conference**

The Court informed counsel that this case has been consolidated with case # 25CV02244.

The matter was continued as follows through the lead case #25CV02244:

February 27, 2026 8:30 AM
Case Management Conference
Geck, Donna D
SB Dept 4

All counsel waived notice.

DARREL E. PARKER, EXECUTIVE OFFICER            Minutes Prepared by:

_____  , Deputy
                              Maria Vidal

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**