# EXHIBIT JJ

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/15/2025 9:06 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:    (213) 576-1000
Facsimile:    (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:    (310) 620-5879
Facsimile:    (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SANTA BARBARA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al. <br><br> Petitioners and Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et. al <br><br> Respondents and Defendants. <br><br> and <br><br> SABLE OFFSHORE CORP., et al. <br><br> Real Parties in Interest. | Case No. 25CV02244 <br><br> Assigned for all purposes to the Honorable Judge Donna D. Geck <br><br> **REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED WITH REPLY BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; AND MOTION TO STRIKE UNTIMELY EVIDENCE SUBMITTED WITH PETITIONERS' REPLY** <br><br> Complaint Filed:    June 3, 2025 <br> Trial Date:    None set |

- 1 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company ("Real Parties") hereby object and request that the Court strike all the evidence submitted by Petitioners Center for Biological Diversity, Wishtoyo Foundation, and Environmental Defense Center ("Petitioners") concurrently with their Reply Brief in support of their *Ex Parte Application For Order to Show Cause and Temporary Restraining Order*. On June 3, 2025, the Court heard Petitioners' *ex parte* application, entered a temporary restraining order ("TRO"), and set a hearing for July 18, 2025, on the order to show cause re preliminary injunction. The evidence that Petitioners wanted the Court to consider in connection with the application for TRO and OSC Re: Preliminary Injunction could have – *and should have* – been filed at the time the original application was filed.  Further, at the hearing on the *ex parte* application, the Court specifically advised the parties that briefing would be done pursuant to the California Code of Civil Procedure.  So, if Petitioners wished to file additional evidence in support of their Motion for Preliminary Injunction after the hearing on the TRO, the last day to do so was June 26, 2025.  (Code Civ. Proc. 1005, subd. (b) ["[A]ll moving and supporting papers **shall** be served and filed at least 16 court days before the hearing."], italics and emphasis added.)  Petitioners filed no further evidence in support of their motion until July 11, 2025, with their reply papers.  At no time did Petitioners request leave or otherwise seek permission to file any other evidence supporting the extraordinary relief they requested.

The filing of affirmative evidence with reply papers to support a motion for preliminary injunction is prohibited in California, and therefore the evidence submitted by way of declarations, exhibits, and requests for judicial notice should be stricken from the record and not considered by the Court in connection with the pending motion.  (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-38.)  Petitioners offer no justification for the belated submission of evidence along with their reply brief, and no such justification exists.

Petitioners bear the burden of producing evidence that supports both a likelihood of success on the merits and a showing of irreparable harm. Declarations that support the Petitioners' Motion for Preliminary Injunction must be based on personal knowledge, may only set forth admissible evidence, and must affirmatively show that the declarant is competent to testify to the matters stated in the declaration.  Affidavits or declarations (or any portion thereof) that are not based on personal

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

knowledge or that assert only inadmissible conclusions, opinions, or ultimate facts must be disregarded by the Court. (Cal. Evid. Code § 702(a); *Floveyor v. Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 796; *Hayman v. Block* (1986) 176 Cal.App.3d 629, 638-39 ["Personal knowledge and competency must be shown in the supporting and opposing affidavits and declarations. The affidavits must cite evidentiary facts, not legal conclusions or 'ultimate facts.'"].) The bulk of Petitioners' evidence submitted on reply fails to satisfy the foregoing requirements and further should not be considered because they are untimely submitted.

## I.      INTRODUCTION

Despite having *since December 17, 2024*, when the Office of State Fire Marshal ("OSFM") first issued the State Waivers, to gather evidence in support of their application for preliminary injunction, Petitioners waited until submitting their Reply Brief to inappropriately introduce a mountain of improper evidence plainly against California law.  So, Petitioners had over six (6) months to prepare their moving papers along with the evidence they wanted the Court to consider in connection with their motion for preliminary injunctive relief.

With their Reply Brief, Petitioners have submitted ***well over a 1,000 pages of new evidence,*** including a new expert declaration after Real Parties were first refrained from deposing Mr. Kuprewicz and for which Real Parties are afforded no opportunity to cross-examine now.  Notably, Petitioners attempt this last-ditch maneuver after the Court overruled Petitioners' original Requests for Judicial Notice submitted in support of their moving papers. (June 3, 2025 Orders Denying Petitioners' Requests for Judicial Notice.)  Without seeking or receiving any permission to do so, Petitioners submitted the following to circumvent the orderly presentation of evidence and seek a second bite at the apple only  five court days before the hearing on Petitioners' application for preliminary injunction:

***Center for Biological Diversity & Wishtoyo Foundation (Case No. 25CV02244)***

- A Second Declaration of Julie Teel Simmonds attaching seventeen new exhibits (consisting of 320 pages);
- A new Request for Judicial Notice for thirteen of the exhibits attached to the Second Declaration of Julie Teel Simmonds;

- 3 -

- A new expert declaration of Paasha Madhavi with two exhibits consisting of twenty-two pages);

### *Environmental Defense Center (Case No. 25CV02247)*

- Three volumes of a new Request for Judicial Notice for fourteen exhibits (consisting of 879 pages);

- A new expert declaration of Paasha Madhavi with two exhibits consisting of twenty-two pages;

- Declaration of Linda Krop with one exhibit (consisting of nine pages);

- Declaration of Walter Edward Morton;

- Declaration of Michael Lyons;

- Declaration of Alex Katz;

- Declaration of Maureen Ellenberger;

- Declaration of Ken Hough.

Petitioners' introduction of all this new evidence is patently unfair to Real Parties and should not be considered by the Court now. The Court set an Order to Show Cause regarding a preliminary injunction for July 18, 2025.  The parties agreed to this date.  Real Parties have submitted unrefuted evidence demonstrating severe and material damages each day the Court's TRO remains in place and are entitled to a ***timely and fair*** hearing on July 18, 2025. Real Parties would be harmed by any extension of the hearing on the preliminary injunction and object to any continuation of the scheduled hearing.  Moreover, there is no reason to extend the July 18, 2025 hearing or consider the belated submission of new evidence because the untimely presentation of this new material is solely due to Petitioners' lack of diligence.  As the Court has recognized, Petitioners are seeking "extraordinary relief" that undoubtedly could have grave impacts on Real Parties' business operations, as well as its employees and public investors.  Petitioners do so without any imposition of an undertaking– marking this attempt for relief as virtually risk-free to Petitioners, while potentially extremely perilous for Real Parties.  In pursuit of such extraordinary relief, Petitioners are seeking to rely on several pieces of improperly submitted evidence, gatekeeping Real Parties from any opportunity to cross-examine the evidence.  In light of the record, and for several reasons

- 4 -

described below, the Court should not consider any of the Petitioners' new evidence submitted with the Reply Brief.

## II.   EVIDENCE ON REPLY IS IMPROPER, NOT JUSTIFIED, AND EXTREMELY PREJUDICIAL TO REAL PARTIES

The purpose of a reply brief is to address arguments made in the Opposition; it may not be used to raise new arguments, present new authorities, or introduce new evidence. Points raised for the first time in a reply brief ordinarily will not be considered because such consideration would either deprive respondent of an opportunity to counter the argument or require the effort and delay of additional brief by permission. (See e.g., *Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief[.]"])  Courts regularly find that "[t]he general rule of motion practice… is that new evidence is not permitted with reply papers… [and] should only be allowed in the exceptional case…." (*Jay v. Mahaffey*, *supra*, 218 Cal.App.4th at pp. 1537-38.)  "This rule is based on the same solid logic applied in the appellate courts, specifically, that '[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.'" (*Id.* at 1538, citing *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453; see *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 720, fn. 10; see also *San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 316 [submission of new evidence with reply violates opposing party's due process rights].)

Nothing here warrants the Court's consideration of Petitioners' new, additional evidence. Real Parties should not be prejudiced from Petitioners' lack of diligence.  Petitioners have been on notice of the issuance of the State Waivers since December 17, 2024, and Petitioners well understood that Real Parties were working with the OSFM concerning a restart plan for the Pipelines.  Petitioners waited over six (6) months until June 2, 2025 to give *ex parte* notice for a hearing seeking preliminary injunctive relief.  At that time, Petitioners had a fair opportunity to submit the evidence they would need to submit in support of their requested relief.  No new change of circumstance permits the filing of ***over 1,000 pages of evidence with Petitioners' reply brief***,

- 5 -

which Real Parties cannot (and should not have to) meaningfully respond to before the July 18, 2025 hearing.

### III.    PAASHA MADHAVI'S DECLARATION SHOULD NOT BE CONSIDERED

A. Prejudice to Real Parties Ensues Without an Opportunity to Cross-Examine or Meaningfully Respond to the Expert Opinions

Petitioners' late submission of their new expert declaration on reply, the Declaration of Paasha Madhavi, fails to afford Real Parties' their due process right to cross-examine the expert and key declarant. Real Parties have a fundamental right to cross-examine Mr. Madhavi and are severely prejudiced without an adequate and sufficient opportunity to depose Mr. Maadhavi about his opinions and declaration before their Opposition to the preliminary injunction was due on July 7, 2025. Had Mr. Madhavi's declaration been submitted with Petitioners' moving papers, Real Parties would have had the opportunity to take his deposition and cross-examine him to test the foundation of his conclusory opinions and test his credibility. Real Parties would also have had the opportunity to have their own expert critique Mr. Madhavi's statements. But because his declaration was served along with the Reply, neither element of due process was afforded here.

Parties are entitled to cross-examine witnesses who submit testimony in support of a preliminary injunction. (*See In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 ["A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses."]; *Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350, 356 ["Before issuing a preliminary injunction, the trial court must 'carefully weigh the evidence and decide whether the facts require . . . such relief. The court evaluates the credibility of witnesses and makes factual findings on disputed evidence."].) The "confrontation of witnesses against him in noncriminal proceedings is a part of procedural due process guaranteed by the Fifth Amendment and the Fourteenth Amendment to the federal Constitution." (*August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 60 [finding hearing met requirements of due process where sworn statement was considered but there was no subsequent request to cross-examine the declarant]; *see also* Cal. Const. Art. I. § 7.) In fact, "[b]ecause it relates to the fundamental fairness of the proceedings, cross-examination is said to represent an 'absolute right,' not merely a privilege." (*Fost v. Marin County Superior Court* (2000)

- 6 -

80 Cal.App.4th 724, 733 [if "a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude the witness's testimony"].) Further, "[t]he lack of an opportunity to cross-examine the declarant deprives the opposing party of important evidence concerning the credibility of the declarant and the reliability of testimony in the declaration." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 841-842 [holding trial court improperly relied on declaration in support of motion for preliminary relief where declarant was not made available for cross-examination or live testimony].)

Injunctive relief cannot rest on untested expert assertions shielded from scrutiny. Indeed, this Court previously recognized Real Parties' right to take the deposition of Mr. Kuprewicz in light of the extraordinary relief Petitioners are seeking now. Real Parties were only unable to do so due to Mr. Kuprewicz's health condition. But with respect to Mr. Madhavi, Real Parties have no opportunity to cross-examine Mr. Madhavi or meaningfully respond to any of his opinions because Real Parties have already submitted their Opposition to the preliminary injunction. There's no time left for Real Parties to depose Mr. Maadhavi now that the hearing is on July 18, 2025. It is also extremely prejudicial to further extend the hearing date while a TRO remains in place, and only Petitioners' dilatory efforts are to blame. Therefore, the Court should not consider Mr. Madhavi's opinions because, as a preliminary manner, Real Parties' due process rights would be violated. (See *Fost*, *supra*, 80 Cal.App.4th at p. 733.)

B.  Mr. Madhavi's Declaration Does Not Meet Sargon's Admissibility Standard

Mr. Madhavi's expert declaration and opinions and report included therein should not be considered by the Court because they lack any foundation. The trial court has the duty to act as a "gatekeeper" in determining whether to exclude expert testimony from trial. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770.) An expert must "state on direct examination the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion." (Evid. Code § 802.) "[T]he trial court must exclude speculative or irrelevant expert opinion." (*Garner v. BNSF Railway Co.* (2024) 98 Cal.App.5th 660, 675.) An expert's opinion "may not be based 'on assumptions of

fact without evidentiary support, or on speculative or conjectural factors." (*Sargon*, *supra*, 55 Cal.4th at pp. 769-770 [internal citations omitted].)

Moreover, while the Evidence Code allows expert witnesses to rely on hearsay evidence when forming their opinions, it does not authorize expert witnesses to launder otherwise inadmissible hearsay. (*I-CA Enterprises. Inc. v. Palram Americas. Inc.* (2015) 235 Cal.App.4th 257, 266 ["[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay"].) Here, Mr. Madhavi repeatedly cites his own unsworn report without ever adopting the conclusions in those reports. (See Madhavi Decl. ¶5.) Mr. Madhavi merely summarizes the report's opinions, failing to offer any sworn testimony as to the truth of their conclusions. (Madhavi Decl. ¶¶ 6-7.) This alone renders the report as hearsay. (See *People v. Campos* (1995) 32 Cal.App.4th 304 [holding that unsworn expert reports were inadmissible hearsay].)

Further, while an expert may rely on otherwise inadmissible hearsay to provide background information and context (see *People v. Veamatahau* (2020) 9 Cal.5th 16, 21), "[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*People v. Sanchez* (2016) 63 Cal.4th 665, 686.) Here, Mr. Madhavi repeatedly relies upon his own unsworn report, not as a source of background information or context, but as the factual basis for his submission as a whole.  An expert cannot simply serve as a conduit for hearsay. (*See Fuller v. Department of Transportation* (2019) 38 Cal.App.5th 1034, 1044.)  Because the materials upon which Mr. Madhavi relies for his testimony is hearsay, neither the testimony nor the materials should be allowed.

## IV.    PETITIONERS' NEW EVIDENCE LACKS PROPER FOUNDATION, PERSISTS WITH HEARSAY, AND IS HIGHLY SPECULATIVE

Petitioners also submit a plethora of declarations, exhibits, and requests for judicial notice that are riddled with improper hearsay and which lack any foundation.

A. Environmental Defense Center's Request for Judicial Notice Lacks Any Foundation

In support of its Reply Brief, Environmental Defense Center has submitted another Request for Judicial Notice, consisting of 14 exhibits (Exhibits A – N) and 897 pages.   The Request for

- 8 -

Judicial Notice asks, without authenticating any of the documents, that "this Court take judicial notice of the following documents, true and correct copies of which are attached hereto…." The Request for Judicial Notice as to the documents described specifically bellow should be denied because Petitioners do not provide any basis to authenticate the records. (Evid. Code § 1401 [authentication is required to receive evidence].)

Evidence Code section 1400 requires a writing to be authenticated by the "introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is…." Evidence Code section 1413 proves that "a writing may be authenticated by anyone who saw the writing made or executed, including a subscribing witness." "The statutory definition ties authentication to relevance. As explained by the California Law Revision Commission's comment to [Evidence Code] section 1400, '[b]efore any tangible object may be admitted into evidence, the party seeking to introduce the object must make a preliminary showing that the object is in some way relevant to the issues to be decided in the action. When the object sought to be introduced is a writing, this preliminary showing of relevancy usually entails some proof that the writing is authentic—*i.e.*, that the writing was made or signed by its purported maker." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266 ["authentication is essentially a subset of relevance"].) The "first step" in authenticating a piece of evidence "is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered." (*Id.*, at p. 267, citing *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1434-1435.)

Here, there is nothing offered to authenticate or state the relevance of these exhibits. Plainly, the exhibits are not attached to a declaration authenticating the records. Nor is there any description or detail as to how these records were searched for or obtained, all necessary information to confirm the authenticity of these records. Without such information, there is no foundation to introduce these exhibits into evidence, especially with Petitioners' reply brief now.

- 9 -

B.  <u>Petitioners' Counsel's Declarations Lack Foundation, Serve as Improper Conduits to Hearsay, and Include Improper Expert Opinions</u>

To support their Motion for Preliminary Injunction, Petitioners have also submitted new attorney declarations (Declaration of Linda Krop and Second Declaration of Julie Teel Simmonds and), attaching exhibits for which each declarant lacks any personal knowledge to establish the necessary foundation and authenticity of the records presented.

The Second Declaration of Julie Teel Simmonds attaches seventeen (17) separate exhibits that have not been properly authenticated, and which consist of hearsay without any applicable exception. The Second Simmonds declaration includes various purported records "obtained" from webpages, but as counsel, this witness lacks personal knowledge and foundation to authenticate the documents or the hearsay therein. (Evid. Code §§702(a), 800, 1200, 1400, 1401.) Moreover, the Declaration of Linda Krop similarly attaches and references Sable Offshore Corp.'s "Form 8-K," purportedly found online which is similarly not properly authenticated. (Evid. Code §§ 702(a) & 800.) The Krop Declaration also includes statements amounting to improper and irrelevant expert opinion about potential greenhouse gas emissions resulting from Pipeline restart without any proper bases for such statements. Ms. Krop is an attorney and not an expert qualified to opine regarding impacts from Real Parties' potential restart of the Pipelines, which is also highly speculative in nature.

C.  <u>The Lay Witness Declarations Are Irrelevant, Hearsay, And Based on Speculation</u>

In addition, Environmental Defense Center submitted five additional untimely declarations from its members describing, with only hearsay and speculation, the worries and concerns its members share and the alleged reasons Environmental Defense Center seeks its preliminary injunction. These statements are all irrelevant to the legal analysis surrounding Petitioners' Motion for Preliminary Injunction, hearsay without any exception, and based completely on speculation.

V.    **REAL PARTIES' SPECIFIC OBJECTIONS TO EVIDENCE**

**OBJECTIONS TO THE DECLARATION OF PAASHA MADHAVI**

Real Parties object to the declaration of Paasha Madhavi ("Madhavi Decl.") as follows:

- 10 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 1. | Declaration of Paasha Mahdavi in Support of Petitioners and Plaintiffs' Application for Stay or Preliminary Injunction | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | ☐ Sustained<br>☐ Overruled |

- 11 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 2. | Mahdavi Decl. Page 2, Paragraph 4, Lines 15-17: "I evaluated the evidence relating to these claims in my report, titled Economic Analysis of Market Impacts of Resuming Oil and Gas Production from the Santa Ynez Unit, dated February 2025. A true and correct copy of this report is attached hereto as **Exhibit B**." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 3. | Mahdavi Decl. Page 2, lines 18-28: "The report sets forth my opinion, based on my review of historical data on oil supply offers, Sable's 2024 investor reports, California agency energy reports, and economic and statistics studies, including: crude oil supply data sourced from California Air Resources Board; Sable Offshore Corp.'s 'Investor Presentation September 2024' and 'Investor Presentation November 2024;' California Energy Commission's 'Draft 2024 Integrated Energy Policy Report Update' and 'Foreign Sources of Crude Oil Imports to California;' and 'Estimated Carbon Intensity Values for the Crude Lookup Table, App. F to Proposed Amendments to the Low Carbon Fuel Standard Regulations,' authored by California Greenhouse gas Emissions (OPGEE).' Authored by researchers at Stanford University and California Air Resources Board, and supported by California Environmental Protection Agency and California Air Resources Board." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |

- 13 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 4. | Mahdavi Decl. Page 3, lines 2-4: "Restarting SYU production will not significantly reduce foreign imports, based on both statistical analysis of the 2015 pause and an economic analysis of costs compared to major suppliers of crude oil." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. **Speculation.** *Evid Code* § 702, 800, | ☐ Sustained<br><br>☐ Overruled |

- 14 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | and 801(b). | |
| 5. | Mahdavi Decl. Page 3, lines 5-7: "Not restarting SYU will not have significant impacts on consumer markets over time, given declining demand for petroleum products in California through 2045 outpaces the loss of supply from SYU production." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 6. | Mahdavi Decl. Page 3, lines 8-10: "Production from SYU will increase global greenhouse gas emissions given the higher greenhouse gas intensity of operations compared to industry averages for operations from commensurate fields." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained<br><br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the | |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | expert violates Real Parties' due process rights. ___ Speculation. *Evid Code* § 702, 800, and 801(b). | |
| 7. | Mahdavi Decl. Page 3, lines 11-12: "Based on the facts I have reviewed and my professional analysis, in my opinion restarting the Las Flores Pipeline will not markedly benefit California's environment or economy." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). ___ **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. ___ **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. ___ **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without | ☐ Sustained ___ ☐ Overruled |

- 17 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 8. | Mahdavi Decl., Ex. A, CV | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | ☐ Sustained<br><br>☐ Overruled |
| 9. | Mahdavi Decl., Ex. B, page 1, paragraph 2: "An economic analysis shows little evidence to support these claims. By contrast, well-established economic models of oil supply and statistical evaluation of the SYU show that (1) foreign imports are not likely to increase in the absence of SYU production and (2) restarting oil production will have limited to no impacts on California oil markets through 2045." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 10. | Mahdavi Decl., Ex. B, page 1, paragraph 3: "The most substantial impacts of restarting the SYU are on emissions: if production resumes, global greenhouse gas emissions are likely to increase by 2.5 million tons of CO2e, given higher greenhouse gas intensity of SYU oil and gas production compared to the typical blend of crude oil around the world." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 19 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 11. | Mahdavi Decl., Ex. B, page 2, Figure 1 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 20 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 12. | Mahdavi Decl., Ex. B, page 2, paragraph 1: "Production from the SYU averaged 29,000 barrels of oil per day and 27 million cubic feet of gas per day in 2014, the last complete year of production prior to the 2015 pipeline spill and subsequent pause in extraction.3 This is roughly 30% of peak production from the SYU in 1996, consistent with expected depletion of the reservoir." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 21 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 13. | Mahdavi Decl., Ex. B, page 2, paragraph 2: "For the last full year of production, SYU oil supply averaged 1.8% of total statewide crude oil supply, including domestic and foreign imports (Figure 1).4 These data also show that crude oil supplied to California has noticeably declined since 2018, reflective not just of the pandemic shock in 2020 but a reduction in consumer demand for petroleum products." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | □ Sustained<br><br>□ Overruled |

- 22 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 14. | Mahdavi Decl., Ex. B, page 2, footnote 4: "CARB, Major Sources of Crude Supplied to California. Updated 2024, Accessed in February 2025 from https://ww2.arb.ca.gov/sites/default/files/2024-12/LCFS%20Crude%20Sources_0.xlsx. | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 23 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 15. | Mahdavi Decl., Ex. B, page 2, footnote 5: "California Energy Commission. (2024). Report - Draft 2024 Integrated Energy Policy Report Update." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 16. | Mahdavi Decl., Ex. B, page 3: "**The SYU pause had no statistical effect on imports of foreign oil**" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 17. | Mahdavi Decl., Ex. B, page 3, paragraph 1: "Historical data on oil supply offers an opportunity to assess whether not restarting SYU production would lead to increases in foreign supply, given that markets responded to the loss of production from the SYU in 2015." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 26 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 18. | Mahdavi Decl., Ex. B, page 3, paragraph 2: "Data on crude oil supplied to California refineries from 2010 to 2023, while imports increased over the same timespan (Figure 1). The primary shift in foreign import supply came during the 2010- 2014 period of high prices, as foreign sources of crude exceeded domestic supply in 2011. Aside from a peak in imports in 2017-2019, and the pandemic collapse in 2020, foreign import levels in 2023 were roughly the same as in 2014-2015 (Figure 2). <u>Looking at the period directly after the SYU went offline, there was no increase in foreign imports</u>: imports actually fell to 316 million barrels in 2016 from 320 million barrels in 2014 and 318 million barrels in 2015. " | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
|     |                        | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. |  |
| 19. | Mahdavi Decl., Ex. B, page 3 paragraph 3: "Applying a statistical model to the data shows that the pause in SYU production since May 2015 did not significantly impact changes in foreign imports despite declining domestic supply. Specifically, using the difference-in-difference estimator widely used in statistics and econometrics,6 modeling indicates that the SYU pause caused a modest annual increase in imports by 463,936 barrels per year, though the increase is not statistically distinguishable from a scenario in which the pause had no effect." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 28 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 20. | Mahdavi Decl., Ex. B, page 3, paragraph 4: "To put this number in perspective, all three SYU fields produced roughly 11 million barrels in 2014. Putting these numbers together, for every 1 barrel not produced from SYU fields, there was only a 0.04 barrel replacement by foreign imports to California refineries; the remaining 0.96 barrels to account for the loss of SYU production were offset by reduced demand, and to a lesser extent, increased Alaskan oil supply." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 29 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  |  | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. |  |
| 21. | Mahdavi Decl., Ex. B, page 3, paragraph 5: "Comparing non-SYU OCS production to imports also shows little impact. Here a model is applied to estimate how changes in non-SYU OCS production influence imports pre/post SYU pause. Results from this model show that declining production from non-SYU OCS had no statistical effect on changes in imports over the 2015-2023 period." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 22. | Mahdavi Decl., Ex. B, page 3, footnote 6: "Abadie, A. (2005). Semiparametric difference-in-differences estimators. Review of Economic Studies, 72(1), 1-19." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 31 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 23. | Mahdavi Decl., Ex. B, page 3, footnote 7: "The model-estimated increase in foreign imports relative to declining domestic imports is 463,936 barrels per year with a p-value of 0.917, indicating that the difference in imports is not statistically significantly different from 0." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 24. | Mahdavi Decl., Ex. B, page 3, footnote 8: "Based on data from the California Energy Commission, crude oil supply to California from Alaska increased from 70.4 million barrels in 2014 and 73.6 million barrels in 2015 to 84.2 million barrels in 2023, though this increase primarily replaced the loss of crude oil supply from California (onshore and state offshore) over the same period. See footnote 3 for a review of declining consumer demand over time." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc., supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 25. | Mahdavi Decl., Ex. B, page 3, footnote 9: "The model-estimated effect on foreign imports relative to declining non-SYU OCS production is 30,237 barrels per day with a p-value of 0.759, indicating that the difference in imports is not statistically significantly different from 0." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc., supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 34 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
|     |                        | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 26. | Mahdavi Decl., Ex. B, Figure 2 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 35 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 27. | Mahdavi Decl., Ex. B, page 4, paragraph 1: "One objection to the above finding would be that SYU barrels would replace production from California onshore fields given SYU's lower operating costs on a per-barrel basis. Purely from an operating cost and up-front capital cost perspective, the SYU is more cost-competitive than roughly 80% of California's onshore oil fields using data from a widely-used industry database." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 28. | Mahdavi Decl., Ex. B, page 4, paragraph 2: "These figures are likely underestimated given non-accounting of remediation and retirement costs, which the BSEE estimates to range between $34,700,743 and $38,149,826 per platform given the SYU's platform depths of 850'-1,200', which are roughly 10 times the remediation costs for onshore California wells on a per-well basis." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained ☐ Overruled |

- 37 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 29. | Mahdavi Decl., Ex. B, page 4, footnote 10: "This estimate is a comparison of Sable's projected costs from the November 2024 Investor Presentation (see footnote 1), and statewide data from Rystad Energy's UCube. Sable's projected revenues from a low-estimate base forecast of 133 total MMBoe of oil, gas, and NGL resources give an estimated present value cash flow of $2.3 billion assuming a 10% discount rate. Backing out operating costs based on Sable's market price assumptions gives an estimated break-even price between $41 and $47 per barrel, depending on assumed depletion rates over a 5-year period. By comparison, the cost curve for California's onshore and state-water offshore fields projected out to 2030 indicates that roughly 20% of fields have a break-even price below $44/barrel." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 30. | Mahdavi Decl., Ex. B, page 4, footnote 11: "Bureau of Safety and Environmental Enforcement and ICF International, Decommissioning Methodology and Cost Evaluation. BPA No. E13PA00010. These estimates are based on an assumed 60 wells per platform, which is roughly in line with Sable's development plans given 112 existing wells and 102 infill drilling and step-out opportunities across three platforms." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

- 39 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 31. | Mahdavi Decl., Ex. B, page 4: "**Future SYU production will not displace foreign imports on a cost basis**" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony** (*Sargon*): Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  |  | the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). |  |
| 32. | Mahdavi Decl., Ex. B, page 5, paragraph 1: "Yet even without accounting for retirement costs, SYU's barrels are not more costcompetitive than existing foreign suppliers to California. Assuming operating costs of roughly $44/barrel for SYU,12 this would still exceed average per-barrel total costs— including capital expenditures, taxes, transport, and administrative costs—for California's top foreign suppliers of oil. This includes Saudi Arabia ($9/barrel), Iraq ($11/barrel), Colombia ($11/barrel), Ecuador ($7-$20/barrel), and Brazil ($21- 28/barrel)." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. | ☐ Sustained<br><br>☐ Overruled |

- 41 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 33. | Mahdavi Decl., Ex. B, page 5, paragraph 2: "This suggests that restarting SYU production would not lead to a reduction in imports on a strictly economic basis." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological | ☐ Sustained<br>☐ Overruled |

- 42 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 34. | Mahdavi Decl., Ex. B, page 5: "**SYU production will have limited impacts on statewide oil consumption**" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc., supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon, supra*, 55 Cal.4th at 770; *Lowery, supra*, 49 Cal.App.5th at 124. | |

- 43 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 35. | Mahdavi Decl., Ex. B, page 5, paragraph 3: "From a demand perspective, there is limited opportunity cost to consumption for not restarting SYU oil production. This is because there is no "perfect substitution" of supply and demand in global oil markets at the local level: one barrel not produced locally is not perfectly replaced by one barrel produced elsewhere to fill local demand. As a result, a production shock tends to reduce demand despite the relative fungibility of global oil markets." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; | ☐ Sustained ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 36. | Mahdavi Decl., Ex. B, page 5, paragraph 4: "This pattern particularly holds for oil produced in California, where studies estimate that for every barrel of oil not produced in California, oil consumption declines by between 0.2 and 0.6 barrels.14 This estimate is consistent with a broad range of economic models from government sources, think tanks, energy consultants, and academic researchers, showing that a one-barrel loss in production corresponds to an average reduction in consumption by 0.5 barrels.15 Extrapolating these results to the SYU based on hypothetical production at 10 million barrels per year in 2025, this suggests that on average there would be a 0.93% reduction in annual statewide | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained<br><br>☐ Overruled |

- 45 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | consumption if production from the SYU is not restarted." | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 37. | Mahdavi Decl., Ex. B, page 5, footnote 12: "See footnote 10 for sources on estimated opex at $44/barrel. Even sell-side models which reflect a lower opex in the $27/barrel range would show that SYU crude is still not competitive with imports, with the exception of a small range of Brazilian crudes." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 38. | Mahdavi Decl., Ex. B, page 5, footnote 13: "Saudi and Iraqi oil costs are drawn from Rystad Energy; Colombia estimates are from Ecopetrol via the Rio Times; Ecuador estimates are from PetroAmazonas via the Baker Institute; and Brazil estimates are drawn from Enverus data on pre-salt breakeven costs, plus an assumed $3/barrel administrative and transportation cost. For a list of all foreign suppliers to California, see California Energy Commision, Foreign Sources of Crude Oil Imports to California, Accessed from: https://www.energy.ca.gov/data-reports/energy-almanac/californias-petroleum-market/foreignsources-crude-oil-imports" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained ☐ Overruled |

- 47 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 39. | Mahdavi Decl., Ex. B, page 5, footnote 14: "Erickson, P. and Lazarus, M. (2018). How limiting oil production could help California meet its climate goals. Stockholm Environment Institute discussion briefing report; Erickson, P. and Lazarus, M. (2014). Impact of the Keystone XL pipeline on global oil markets and greenhouse gas emissions. Nature Climate Change, 4(9). 778–81." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 40. | Mahdavi Decl., Ex. B, page 5, footnote 15: "Wolvovsky, E. and Anderson, W. (2016). OCS Oil and Natural Gas: Potential Lifecycle Greenhouse Gas Emissions and Social Cost of Carbon. BOEM OCS Report 2016-065. U.S. Department of Interior, Bureau of Ocean Energy Management; Metcalf, G. (2016). The Impact of Removing Tax Preferences for U.S. Oil and Gas Production. Council on Foreign Relations; ICF and Ensys (2014). The Impacts of U.S. Crude Oil Exports on Domestic Crude Production, GDP, Employment, Trade, and Consumer Costs. ICF International for the American Petroleum Institute; Bordoff, J. and Houser, T. (2015). Navigating the U.S. Oil Export | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained ☐ Overruled |

- 49 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Debate. Columbia University, Center on Global Energy Policy and Rhodium Group; and Rajagopal, D. and Plevin, R. J. (2013). Implications of market-mediated emissions and uncertainty for biofuel policies. Energy Policy, 56 75–82." | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 41. | Mahdavi Decl., Ex. B, page 6, paragraph 1: "Looking at future consumption, there is no support in existing demand models for additional supply needed over time. Modeling by the Institute for Transportation Studies (ITS) shows that under a conservative business-as-usual forecast—based on historical demand and future demand in the absence of new policies—there is an expected 30% decline in fuel consumption, from roughly 19 billion gasoline gallonequivalent (GGE) in 2020 to roughly 13 GGE in 2045, corresponding to a 1.5% compound annual decline rate.17 In this scenario, demand is still driven predominantly by petroleum-based fuels, but consumption declines due to efficiency improvements. In more extreme cases | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, | ☐ Sustained ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | with substantial fuel replacement, such as the CARB 2022 Scoping Plan, demand reduction for liquid petroleum fuels declines 94% from 2020 to 2045, for a 10.9% compound annual decline rate." | 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 42. | Mahdavi Decl., Ex. B, page 6, paragraph 2: "In either extreme—from business-as-usual with no change in statewide policy to a considerable shift in energy policy to achieve carbon neutrality—the impact of the loss of supply from not restarting the SYU is outweighed by declining consumer demand. Instead, it is likely that the over-time economic gains Sable aims to achieve from restarting the SYU will come from exporting the oil from California to other markets." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony** | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | (**Sargon**): Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 43. | Mahdavi Decl., Ex. B, page 6: **"Restarting the SYU will increase global greenhouse gas emissions"** | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Inadmissible Expert Testimony** (*Sargon*): Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 44. | Mahdavi Decl., Ex. B, page 6, paragraph 3: "If production were to resume from the SYU, estimates from the Oil Production Greenhouse Gas Emissions Estimator (OPGEE) used by CARB suggest that per-unit emissions from production from the Hondo, Pescado, and Sacate fields would be roughly 87% higher than per-unit emissions from the onshore Aliso Canyon fields in LA County. Existing models of the greenhouse gas intensity of oil and gas production show that these carbon intensity levels are underestimated as they do not capture methane emissions and poorly estimate emissions from flaring.20 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of | ☐ Sustained ☐ Overruled |

- 53 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Nonetheless, they provide a comparison on an emissions basis to the SYU." | consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 45. | Mahdavi Decl., Ex. B, page 6, footnote 16: "SYU annual production of 10 million barrels/year is estimated from an expected 28,100 barrels/day production once online, from Sable Offshore Corp. (2024). Investor Presentation September 2024, accessed from https://sableoffshore.com/events-and-presentations/default.aspx. This is compared to 2023 statewide consumption of 532 million barrels based on CARB data." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 46. | Mahdavi Decl., Ex. B, page 6, footnote 17: "Brown, A. L; Sperling, D.; Austin, B.; DeShazo, JR; Fulton, L.; Lipman, T., et al. (2021). Driving California's Transportation Emissions to Zero. UC Office of the President: University of California Institute of Transportation Studies. http://dx.doi.org/10.7922/G2MC8X9X." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 47. | Mahdavi Decl., Ex. B, page 6, footnote 18: "California Air Resources Board. (2022). 2022 Scoping Plan for Achieving Carbon Neutrality. Data extracted from: https://ww2.arb.ca.gov/sites/default/files/2022-11/2022-sp-PATHWAYS-data-E3.xlsx." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained <br><br> ☐ Overruled |

- 56 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 48. | Mahdavi Decl., Ex. B, page 7, paragraph 1: "Using Aliso Canyon as an emissions-intensity comparison, the operational emissions intensity of production from the SYU would be roughly 440 kg $CO_2e$ per barrel of oil and barrel-equivalent of gas using the OCI+ metrics of emissions intensity.21 This is considerably higher than nearly all other fields rated by OCI+, which typically range between 80 kg $CO_2e$/mboe and 400 kg $CO_2e$/mboe. Iraqi crude, for example, has intensities of 175 $CO_2e$/mboe (Rumaila, medium oil), 234 $CO_2e$/mboe (Ahdab, medium/heavy oil), and 255 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | CO2e/mboe (Fakka, heavy oil), all of which include emissions from production, gathering, storage, and transportation." | tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 49. | Mahdavi Decl., Ex. B, page 7, paragraph 2: "The quality of SYU crude is a mix of heavy oil (18° API gravity) from the primary reservoir and light oil (37° API gravity) from the secondary reservoir.23 Comparisons by quality also show that the greenhouse gas intensity of SYU crude exceeds that of commensurate foreign imports. Among heavy oil comparisons, SYU greenhouse gas intensity would be higher than any field rated by OCI+.24 Among light oil comparisons, SYU greenhouse gas intensity exceeds all estimated fields | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | with the exception of four that are not currently exported to California." | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 50. | Mahdavi Decl., Ex. B, page 7, paragraph 3: "Compared to production from Elk Hills in Kern County—which produces medium/light oil that is near global averages in emissions intensity taking methane emissions into account, and approximately equivalent to SYU barrels in terms of estimated break-even price per barrel—every barrel of oil from SYU would add 245 kg CO2e above and beyond emissions from barrels from Elk Hills (195 kg CO2e/mboe). Considering the anticipated annual volume of production, this translates to roughly | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | 2.5 million tons of CO2e above what would be emitted if the SYU were not producing." | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 51. | Mahdavi Decl., Ex. B, page 7, footnote 19: "CARB. (2023). Estimated Carbon Intensity Values for the Crude Lookup Table, App. F to Proposed Amendments to the Low Carbon Fuel Standard Regulations. These values are roughly double what Sable stated at the October 30, 2024, Planning Commission hearing (see footnote 1). The 2010 carbon intensity (gCO2/MJ) for Hondo, Pescado, and Sacate is estimated at 6.84, 6.13, and 4.85, respectively, with a production-weighted average at 6.09 gCO2/MJ. This is compared to Aliso Canyon with | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained ☐ Overruled |

- 60 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | carbon intensity of 3.26 gCO2/MJ." | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 52. | Mahdavi Decl., Ex. B, page 7, footnote 20: "RMI, Oil Climate Index plus Gas Model v.2.1.0 (2024); Mohammad S. Masnadi et al., Global carbon intensity of crude oil production. Science 361,851-853 (2018); Scarpelli, T. R., Jacob, D. J., Grossman, S., Lu, X., Qu, Z., Sulprizio, M. P., Zhang, Y., Reuland, F., Gordon, D., and Worden, J. R.: Updated Global Fuel Exploitation Inventory (GFEI) for methane emissions from the oil, gas, and coal sectors: evaluation with inversions of atmospheric methane observations. Atmos. Chem. Phys., 22, | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | 3235–3249 (2022).” | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 53. | Mahdavi Decl., Ex. B, page 7, footnote 21: "Based on data from the Oil Climate Index plus Gas (OCI+), accessed from https://ociplus.rmi.org/analysis. Aliso Canyon is rated at 235.84 kg CO2e/mboe industry GHG emissions intensity." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 54. | Mahdavi Decl., Ex. B, page 7, footnote 22: "Ibid." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 55. | Mahdavi Decl., Ex. B, page 7, footnote 23: "Based on information for Platform Hondo from: Air Pollution Control District, Santa Barbara County. (April 2024). Draft Permit to Operate 9100 – R8 and Part 70 Operating Permit 9100: Sable Offshore – SYU Project Platform Hondo. Accessed in February 2025 from https://www.ourair.org/wp-content/uploads/Draft-PT-70-09100-R8- Platform-Hondo-4-8-2024.pdfBased on information for Platform Hondo from: Air Pollution Control District, Santa Barbara County. (April 2024). Draft Permit to | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained ☐ Overruled |

- 64 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Operate 9100 – R8 and Part 70 Operating Permit 9100: Sable Offshore – SYU Project Platform Hondo. Accessed in February 2025 from https://www.ourair.org/wp-content/uploads/Draft-PT-70-09100-R8- Platform-Hondo-4-8-2024.pdf" | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 56. | Mahdavi Decl., Ex. B, page 7, footnote 24: "The highest intensity rated among heavy or extra heavy oil is Canada Peace River at 419 CO2e/mboe. Data drawn from OCI+ (see footnote 21)." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). **Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained ☐ Overruled |

- 65 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 57. | Mahdavi Decl., Ex. B, page 7, footnote 25: "The exceptions are industry GHG intensities of 490 CO2e/mboe (Gabon Koula), 639 CO2e/mboe (Iran Agha Jari), 806 CO2e/mboe (Russia Kuyumbinskoye), and 964 CO2e/mboe (Mexico Teotleco). Data drawn from OCI+ (see footnote 21)." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  |  | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. |  |
| 58. | Mahdavi Decl., Ex. B, page 8, paragraph 1: "An overview of the economic analysis performed here of the market impacts of production from the SYU finds support for the following three claims:" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

- 67 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| 59. | Mahdavi Decl., Ex. B, page 8, paragraph 2: "(1) Restarting SYU production will not reduce foreign imports, based on both statistical analysis of the 2015 pause and an economic analysis of costs compared to major suppliers of crude;" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 60. | Mahdavi Decl., Ex. B, page 8, paragraph 3: "(2) Not restarting SYU will not have significant impacts on consumer markets over time, given declining demand for petroleum products in California through 2045 outpaces the loss of supply from SYU production;" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained<br>☐ Overruled |

- 69 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 61. | Mahdavi Decl., Ex. B, page 8, paragraph 4: "(3) Production from the SYU will increase global greenhouse gas emissions given the higher greenhouse gas intensity of operations compared to industry averages for operations from commensurate fields." | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay | |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | exception"). | |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |

### OBJECTIONS TO THE DECLARATION OF SECOND DECLARATION OF JULIE TEEL SIMMONDS

Real Parties object to the second declaration of Julie Teel Simmonds, ("Second Simmonds Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 62. | Second Declaration of Julie Teel Simmonds Re: Petitioners' Combined Reply In Support Of | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert | ☐ Sustained<br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Application for an Administrative Stay or Preliminary Injunction | may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| 63. | Second Simmonds Decl.¶ 1: "I am at attorney at law admitted to practice…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |
| 64. | Second Simmonds Decl.¶ 2: "Attached as Exhibit 1 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 65. | Second Simmonds Decl.¶ 3: "Attached as Exhibit 2 is a true | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement | ☐ Sustained |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | and correct copy…" | offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Overruled |
| 66. | Second Simmonds Decl.¶ 4: "Attached as Exhibit 3 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |
| 67. | Second Simmonds Decl.¶ 5: "Attached as Exhibit 4 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |

- 73 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 68. | Second Simmonds Decl.¶ 6: "Attached as Exhibit 5 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 69. | Second Simmonds Decl.¶ 7: "Attached as Exhibit 6 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they | ☐ Sustained<br>☐ Overruled |

- 74 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  |  | have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. |  |
| 70. | Second Simmonds Decl.¶ 8: "Attached as Exhibit 7 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 71. | Second Simmonds Decl.¶ 9: "Attached as Exhibit 8 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 72. | Second Simmonds Decl.¶ 10: "Attached as Exhibit 9 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 73. | Second Simmonds Decl.¶ 11: "Attached as Exhibit 10 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 74. | Second Simmonds Decl.¶ 12: "Attached as Exhibit 11 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter | ☐ Sustained<br>☐ Overruled |

- 76 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
|  |  | asserted. |  |
|  |  | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. |  |
|  |  | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. |  |
| 75. | Second Simmonds Decl.¶ 13: "Attached as Exhibit 12 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
|  |  | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. |  |
|  |  | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. |  |
| 76. | Second Simmonds Decl.¶ 14: "Attached as Exhibit 13 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
|  |  | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of |  |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 77. | Second Simmonds Decl.¶ 15: "Attached as Exhibit 14 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |
| 78. | Second Simmonds Decl.¶ 16: "Attached as Exhibit 15 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The | ☐ Sustained<br><br>☐ Overruled |

- 78 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
| | | witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 79. | Second Simmonds Decl.¶ 17: "Attached as Exhibit 16 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 80. | Second Simmonds Decl.¶ 18: "Attached as Exhibit 17 is a true and correct copy…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, | ☐ Sustained<br>☐ Overruled |

- 79 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | and accurate copy of the document purportedly attached. | |
| 81. | Exhibit 1 OSFM Line ID No. 0015 Line 324 (Las Flores to Gaviota 24") Restart Plan | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |
| 82. | Exhibit 2 OSFM Line ID No. 0001 Line 325 (Gaviota to Sisquoc 30" and Sisquoc to Pentland 30") Restart Plan | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |
| 83. | Exhibit 3 Sable Offshore Corp. Form 8-K (June 3, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 84. | Exhibit 4 Mitigated Negative Declaration ExxonMobile Santa Ynez Unit (SYU) Offshore Power System Reliability – B Phase 2 Project (July 2014) (Excerpts) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained <br> ☐ Overruled |
| 85. | Exhibit 5 Letter, CBD to PHMSA and Office of the State Fire Marshal (Dec. 23, 2024) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained <br> ☐ Overruled |
| 86. | Exhibit 7 Liquid Pipeline Advisory Committee (LPAC) Committee Roster and Biographies (last updated Jan. 15, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Authentication/Personal Knowledge/Foundation.** Evid. Code, | ☐ Sustained <br> ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 87. | Exhibit 8 Letter, PHMSA to Office of the State Fire Marshal (May 18, 2016) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 88. | Exhibit 9 Final Environmental Impact Statement/Report for Santa Ynez Unit/Las Flores Canyon Development and Production Plan (June 1984) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 89. | Exhibit 10 BSEE – Platforms Operated by Sable Offshore Corp. (undated) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 90. | Exhibit 11 Press Release, ExxonMobil Sets Drilling Records (Apr. 16, 2010) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |
| 91. | Exhibit 12 Sable Offshore Corp. Form 8-K (July 10, 2024) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |
| 92. | Exhibit 13 Draft EIR/EIS Proposed Celeron/All American and Getty Pipeline Projects (August 1984) (EXCERPTS) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br><br>☐ Overruled |

- 83 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 93. | Exhibit 14 Final EIR/EIS Proposed Celeron/All American and Getty Pipeline Projects (January 1985) (EXCERPTS) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 94. | Exhibit 15 PHMSA, Pipeline Special Permits and State Waivers Overview (last updated June 30, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 95. | Exhibit 16 Letter, PHMSA to CBD (Jan. 17, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |
| 96. | Exhibit 17 U.S. Department of Transportation, Procedures for Considering Environmental Impacts – DOT Order 5610.1D (July 1, 2025) | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The witness has not established that they have personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br><br>☐ Overruled |

### OBJECTIONS TO THE DECLARATION OF ALEX KATZ

Real Parties object to the declaration of Alex Katz ("Katz Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 97. | Katz Decl. ¶ 1: "I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 98. | Katz Decl. ¶ 2: "I currently reside in Santa Barbara, California, and I have lived in Santa Barbara County for more than two years." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained ☐ Overruled |
| 99. | Katz Decl. ¶ 3: "I am the Executive Director of the Environmental Defense Center ("EDC"). My business address and phone number are 906 Garden Street, Santa Barbara, CA 93101, (805) 963-1622. I have served as the Executive Director of EDC since March 2023." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or | ☐ Sustained ☐ Overruled |

- 86 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| 100. | Katz Decl. ¶ 4: "EDC is a non-profit public interest environmental law firm that was founded in 1977…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 101. | Katz Decl. ¶ 5: "Since our founding…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 102. | Katz Decl. ¶ 6: "Many of EDC's members live…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the | ☐ Sustained ☐ Overruled |

- 89 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 103. | Katz Decl. ¶ 7: "Restarting the Las Flores Pipeline System…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 104. | Katz Decl. ¶ 8: "EDC's members are also affected…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & | ☐ Sustained<br><br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
|     |                        | 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). |  |

- 92 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 105. | Katz Decl. ¶ 9: "I personally would be negatively affected…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court | ☐ Sustained<br><br>☐ Overruled |

- 93 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | against the Real Parties, and has no probative value. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 106. | Katz Decl. ¶ 10: "EDC seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained ☐ Overruled |

- 94 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Speculation.** *Evid Code* § 702, 800, and 801(b). **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 107. | Katz Decl. ¶ 11: "EDC also seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained ☐ Overruled |
| 108. | Katz Decl. ¶ 12: "The OSFM's decision to grant waivers…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or | ☐ Sustained ☐ Overruled |

- 95 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
|  |  | disprove a fact of consequence in the case. |  |
|  |  | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. |  |
|  |  | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. |  |
|  |  | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. |  |
|  |  | **Speculation.** *Evid Code* § 702, 800, and 801(b). |  |
|  |  | **Improper Argument and Opinion.** *Evid. Code § 803, In re* |  |

- 96 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |

### OBJECTIONS TO THE DECLARATION OF KEN HOUGH

Real Parties object to the declaration of Ken Hough ("Hough Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 109. | Hough Decl. ¶ 1: "I am over eighteen years old. I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |
| 110. | Hough Decl. ¶ 2: "My current address is…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 111. | Hough Decl. ¶ 3: "I have been a member of Santa Barbara County Action Network…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |
| 112. | Hough Decl. ¶ 4: "For twenty-three years SBCAN has worked…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br>☐ Overruled |
| 113. | Hough Decl. ¶ 5: "SBCAN currently has approximately 120 active members…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter | ☐ Sustained<br>☐ Overruled |

- 98 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | asserted. | |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 114. | Hough Decl. ¶ 6: "When the Santa Ynez Unit (SYU) pipelines …" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias | |

- 99 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | by the court against the Real Parties, and has no probative value. | |
| 115. | Hough Decl. ¶ 7: "I will be harmed if the SYU pipeline is restarted…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |
| 116. | Hough Decl. ¶ 8: "SBCAN's members' interests in protecting…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |

- 100 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| | | **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 117. | Hough Decl. ¶ 9: "SBCAN also has an interest in public participation…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained  ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias | |

- 101 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | by the court against the Real Parties, and has no probative value. | |
| 118. | Hough Decl. ¶ 10: "SBCAN's members are harmed by the failure…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br>☐ Overruled |
| 119. | Hough Decl. ¶ 11: "SBCAN seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal* | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
| | | *J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 120. | Hough Decl. ¶ 12: "SBCAN also seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |

- 103 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | | |
| 121. | Hough Decl. ¶ 13: "The Office of State Fire Marshal's decision…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |

**OBJECTIONS TO THE DECLARATION OF LINDA KROP**

Real Parties object to the declaration of Linda Krop ("Krop Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 122. | Krop Decl. ¶ 1: "I am Chief Counsel for the non-profit…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| 123. | Krop Decl. ¶ 2: "On July 11, 2025, Sable Offshore Corp…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Lack of Foundation/Personal Knowledge.** *Evid. Code* §§ 702(a), 800. | ☐ Sustained<br><br>☐ Overruled |
| 124. | Krop Decl. ¶ 3: "On July 11, 2025, I visited the California Air Resources Board…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for | ☐ Sustained<br><br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| 125. | Krop Decl. ¶ 4: "On July 11, 2025, I used the publicly available…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical | ☐ Sustained<br><br>☐ Overruled |

- 106 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| 126. | Krop Decl. ¶ 5: "In other words, when last active…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Speculation.** *Evid Code § 702, 800, and 801(b).* | |
| | | **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| | | **Lack of Foundation/Personal Knowledge.** *Evid. Code §§ 702(a), 800.* | |
| 127. | Krop Decl. ¶ 6: "According to the Pollution Mapping Tool…" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay | ☐ Sustained<br>☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
|     |                        | statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). The statement is an out of court statement offered for the truth of the matter asserted. |        |
|     |                        | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. |        |
|     |                        | **Inadmissible Expert Testimony (*Sargon*)**: Evid. Code §§ 402, 801, 802; *Sargon*, *supra*, 55 Cal.4th at 770; *Lowery*, *supra*, 49 Cal.App.5th at 124. The declaration lacks methodological transparency and proper foundation. The declaration also fails to articulate the analytical process, technical approach, or evidentiary basis supporting the stated conclusion and provides no substantive explanation of the reasoning or factual predicates applied to reach its determination. Absent such foundational elements, the opinion constitutes mere speculation rather than reliable expert testimony. |        |
|     |                        | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of expert opinion without an opportunity to cross-examine the expert violates Real Parties' due process rights. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. |        |
|     |                        | **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) |        |

- 109 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 128. | Krop Decl. Exhibit A | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Lack of Foundation/Personal Knowledge.** *Evid. Code* §§ 702(a), 800. | ☐ Sustained<br>☐ Overruled |

### OBJECTIONS TO THE DECLARATION OF MAUREEN ELLENBERGER

Real Parties object to the declaration of Maureen Ellenberger ("Ellenberger Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 129. | Ellenberger Decl. ¶ 1: "I am over eighteen years old…" | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |
| 130. | Ellenberger Decl. ¶ 2: "My current address is 1401 Shoreline Drive…" | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| 131. | Ellenberger Decl. ¶ 3: "I have been a member of the Santa Barbara-Ventura Chapter of the Sierra Club…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 132. | Ellenberger Decl. ¶ 4: "I am familiar with the Santa Barbara-Ventura Chapter's membership records…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.**    Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |
| 133. | Ellenberger Decl. ¶ 5: "Sierra Club has long engaged in efforts to support the transition away from oil…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal* | ☐ Sustained<br><br>☐ Overruled |

- 111 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 134. | Ellenberger Decl. ¶ 6: " Personally, I moved to Santa Barbara County because I, along with my husband, wanted to spend our retirement outdoors, enjoying the beaches and coastal areas of our county…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained ☐ Overruled |
| 135. | Ellenberger Decl. ¶ 7: "We bought our home in Santa Barbara in September of 2015 in the immediate aftermath of the All-American Plains pipeline spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical | ☐ Sustained ☐ Overruled |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 136. | Ellenberger Decl. ¶ 8: "Sierra Club has a real concern about the risk of an oil spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, | ☐ Sustained<br><br>☐ Overruled |

- 113 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|------------------------|--------|
|     |                        | and 801(b).            |        |
| 137. | Ellenberger Decl. ¶ 9: "Sierra Club also has an interest in public participation…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
|      |                        | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. |      |
|      |                        | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. |      |
|      |                        | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. |      |
| 138. | Ellenberger Decl. ¶ 10: "Sierra Club's members are harmed by the failure of the Fire Marshal…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
|      |                        | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. |      |
|      |                        | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. |      |
|      |                        | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is |      |

- 114 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| | | **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 139. | Ellenberger Decl. ¶ 11: "Sierra Club seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 140. | Ellenberger Decl. ¶ 12: "Restarting the Las Flores Pipeline System would cause…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal* | |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | *J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Speculation.** *Evid Code* § 702, 800, and 801(b). **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3)* | |
| 141. | Ellenberger Decl. ¶ 13: "Sierra Club also seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 142. | Ellenberger Decl. ¶ 14: "The Office of State Fire Marshal's decision to grant waivers…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br><br>☐ Overruled |

**OBJECTIONS TO THE DECLARATION OF MICHAEL LYONS**

Real Parties object to the declaration of Michael Lyons ("Lyons Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 143. | Lyons Decl. ¶ 1: "I am over eighteen years old. I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto." | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter | ☐ Sustained<br><br>☐ Overruled |

- 117 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | asserted. | |
| 144. | Lyons Decl. ¶ 2: "My current address is 223 West Figueroa Street, Unit A, Santa Barbara, California. I have lived in Santa Barbara County for fifty-six years." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br><br>☐ Overruled |
| 145. | Lyons Decl. ¶ 3: "I have been a member of Get Oil Out! for twenty-six years; I remain a current member and am the current Board president." | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |
| 146. | Lyons Decl. ¶ 4: "Founded in response to the devastating 1969 Santa Barbara Oil Spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. | ☐ Sustained<br><br>☐ Overruled |

- 118 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 147. | Lyons Decl. ¶ 5: "Get Oil Out! has approximately 1,500 members…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias | ☐ Sustained ☐ Overruled |

- 119 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | by the court against the Real Parties, and has no probative value. | |
| 148. | Lyons Decl. ¶ 6: "I am an avid outdoorsman and I frequently use, and recreate in and around, the area where the Santa Ynez Unit facilities are located…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br><br>☐ Overruled |
| 149. | Lyons Decl. ¶ 7: "I was in the Santa Barbara area when the Plains All American Pipeline failed…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine | ☐ Sustained<br><br>☐ Overruled |

- 120 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 150. | Lyons Decl. ¶ 8: "Following the 2015 Plains All American Oil Spill, I received calls from people all over the world. I spent a lot of time responding to their questions and concerns…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br>☐ Overruled |
| 151. | Lyons Decl. ¶ 9: "Because of the spill, I was not able to go to the beach…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 152. | Lyons Decl. ¶ 10: "Get Oil Out! is concerned about Sable's operational and financial capacity to safely operate the Santa Ynez Unit or respond to an oil spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, | ☐ Sustained<br>☐ Overruled |

- 122 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | and 801(b). | |
| 153. | Lyons Decl. ¶ 11: "Get Oil Out! also has an interest in public participation and informed decision-making. Our organization strives to educate and engage our members and the public when oil development activities threaten our community and the environment…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained ☐ Overruled |
| 154. | Lyons Decl. ¶ 12: "Get Oil Out's members are harmed by the failure of the Fire Marshal to conduct environmental review, solicit public comments, or hold a public hearing…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained ☐ Overruled |

- 123 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 155. | Lyons Decl. ¶ 13: "Get Oil Out! seeks a preliminary injunction because our members live and recreate in and around the areas where the Santa Ynez Unit facilities are located…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, | ☐ Sustained<br><br>☐ Overruled |

- 124 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
| | | n.3) | |
| 156. | Lyons Decl. ¶ 14: "Get Oil Out! also seeks a preliminary injunction…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. <br><br> **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. <br><br> **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained <br><br> ☐ Overruled |
| 157. | Lyons Decl. ¶ 15: "The Office of State Fire Marshal's decision to grant waivers…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine | ☐ Sustained <br><br> ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
| | | violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| | | **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |

## OBJECTIONS TO THE DECLARATION OF WALTER EDWARD MORTON

Real Parties object to the declaration of Walter Edward Morton ("Morton Decl.") as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|-----------------------|--------|
| 158. | Morton Decl. ¶ 1: "I am over eighteen years old…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br><br>☐ Overruled |
| 159. | Morton Decl. ¶ 2: "My current address is 96 Willow Springs | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter | ☐ Sustained |

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Court #202, Goleta, California…” | asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Overruled |
| 160. | Morton Decl. ¶ 3: "I have served as the Executive Director…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | ☐ Sustained<br>☐ Overruled |
| 161. | Morton Decl. ¶ 4: "SBCK is a California nonprofit organization that was founded in 1999…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |

- 127 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|-----|------------------------|----------------------|--------|
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 162. | Morton Decl. ¶ 5: "SBCK has members who live, work, and recreate throughout Santa Barbara County…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| 163. | Morton Decl. ¶ 6: "SBCK's | **Hearsay.** Evid. Code, § 1200. The | ☐ Sustained |

- 128 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | interest in this case stems from our longstanding efforts…" | statement is an out of court statement offered for the truth of the matter asserted. | ☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 164. | Morton Decl. ¶ 7: "I live in Goleta, the closest population center to the Santa Ynez Unit…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |

- 129 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 165. | Morton Decl. ¶ 8: "SBCK staff and members were impacted by the 2015 American All Plains oil spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | ☐ Sustained<br>☐ Overruled |
| 166. | Morton Decl. ¶ 9: "SBCK has a real concern about the risk of another oil spill…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | ☐ Sustained<br>☐ Overruled |

- 130 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |
| | | **Speculation.** *Evid Code* § 702, 800, and 801(b). | |
| 167. | Morton Decl. ¶ 10: "SBCK also has an interest in public participation and informed decision-making…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. | |
| | | **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. | |

- 131 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 168. | Morton Decl. ¶ 11: "SBCK's members are harmed by the failure of the Fire Marshal…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom, supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br>☐ Overruled |
| 169. | Morton Decl. ¶ 12: "SBCK seeks a preliminary injunction because our members live, work, and recreate…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost, supra*, 80 Cal.App.4th at p. 733; *In re Crystal J., supra*, 12 Cal.App.4th at 413. The admission of the declaration without | ☐ Sustained<br>☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | |
| 170. | Morton Decl. ¶ 13: "SBCK also seeks a preliminary injunction to ensure that no further action is taken…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted. **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. **Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights. **Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value. **Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained ☐ Overruled |

- 133 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 171. | Morton Decl. ¶ 14: "The Office of State Fire Marshal's decision to grant waivers of pipeline safety laws…" | **Hearsay.** Evid. Code, § 1200. The statement is an out of court statement offered for the truth of the matter asserted.<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Due Process**. *Fost*, *supra*, 80 Cal.App.4th at p. 733; *In re Crystal J.*, *supra*, 12 Cal.App.4th at 413. The admission of the declaration without an opportunity to cross-examine violates Real Parties' due process rights.<br><br>**Inflammatory/Prejudicial.** Evid. Code § 352; *Odom*, *supra*, 110 Cal.App.5th at 493. The statement is intended to evoke an emotional bias by the court against the Real Parties, and has no probative value.<br><br>**Speculation.** *Evid Code* § 702, 800, and 801(b).<br><br>**Improper Argument and Opinion.** *Evid. Code § 803, In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, n.3) | ☐ Sustained<br>☐ Overruled |

**OBJECTIONS TO ENVIRONMENTAL DEFENSE CENTER'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF APPLICATION FOR STAY OR PRELIMINARY INJUNCTION**

Real Parties object to Environmental Defense Center's Request for Judicial Notice in Support of Application for Stay or Preliminary Injunction as follows:

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| 172. | **Exhibit A** California Department of Fish and Wildlife (CDFW), *et al.*, Refugio Beach Oil Spill Final Damage Assessment and Restoration Plan/Environmental Assessment, dated | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, | ☐ Sustained<br>☐ Overruled |

- 134 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | June 2021 | 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 173. | **Exhibit C** Staff Report Recommending that the California Coastal Commission (CCC) issue a Cease and Desist Order (CDO), Restoration Order, and Administrative Civil Penalty to Sable Offshore Corp. ("Sable"), dated March 28, 2025 | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained<br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is | |

- 135 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 174. | **Exhibit F** Notice of Violation from the Regional Water Quality Control Board to Sable, dated April 15, 2025. | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). <br><br> **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained <br><br> ☐ Overruled |
| 175. | **Exhibit I** Excerpts from Draft Environmental Impact Report (EIR) and Environmental Impact Statement (EIS) for the Proposed Celeron/All American and Getty Pipeline Projects prepared by the California State Lands Commission (CSLC) and Bureau of Land | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br> **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is | ☐ Sustained <br><br> ☐ Overruled |

- 136 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | Management, Department of the Interior (BLM) dated August 1984 | equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 176. | **Exhibit J** Excerpts from Final EIR and EIS for the Proposed Celeron/All American and Getty Pipeline Projects prepared by CSLC and BLM dated January 1985 | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained<br>☐ Overruled |
| 177. | **Exhibit K** Santa Barbara County ("County") Webpage "901/903 Replacement Pipeline Project" (last accessed July 11, 2025) | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception").<br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case.<br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is | ☐ Sustained<br>☐ Overruled |

- 137 -

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 178. | **Exhibit L** PHMSA Webpage "Pipeline Special Permits and State Waivers Overview" (last accessed July 11, 2025) | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). <br><br>**Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. <br><br>**Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | ☐ Sustained <br> ☐ Overruled |
| 179. | **Exhibit M** California Natural Resources Agency's (CNRA) summary of state regulation of crude oil pipelines in the County prepared and maintained by CNRA, last updated on June 4, 2025 (last accessed July 11, 2025) | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay | ☐ Sustained <br> ☐ Overruled |

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an authentic, true, and accurate copy of the document purportedly attached. | |
| 180. | **Exhibit N** Excerpt of PHMSA's "Guidelines for State Participating in the Pipeline Safety Program" | **Hearsay**: Evid. Code, § 1200; *I-CA Enterprises. Inc.*, *supra*, 235 Cal.App.4th at 266 ("[T]he expert may not serve as a mere conduit for the admission of otherwise inadmissible hearsay."); *Veamatahau*, 9 Cal. 5th at 21 ("[w]hat an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"). | ☐ Sustained<br><br>☐ Overruled |
| | | **Irrelevant**. Evid. Code §§ 210 & 350. The evidence submitted has no logical tendency to prove or disprove a fact of consequence in the case. | |
| | | **Authentication/Personal Knowledge/Foundation.** Evid. Code, §§ 702, 1400-1401. The RJN has not established that anyone is equipped with personal knowledge that the exhibit attached is an | |

- 139 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

| No. | Objectionable Material | Grounds for Objection | Ruling |
|---|---|---|---|
| | | authentic, true, and accurate copy of the document purportedly attached. | |

Dated:  July 15, 2025

Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
TREVOR LARGE

By: _____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

- 140 -

**PROOF OF SERVICE**

1.      I, Garrett Stanton, declare:

2.      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On July 15, 2025, I served the document **REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** on the interested parties in this action addressed as follows:  **See Attached Service List**

**I.**      ☒      BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 15, 2025, at Los Angeles, California.

_____
/s/ *Garrett Stanton*
Garrett Stanton

- 141 -

**SERVICE LIST**

| | |
|---|---|
| Julie Teel Simmons, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>**Center for Biological Diversity**<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612 | **ATTORNEYS FOR PETITIONERS**<br>CENTER FOR BIOLOGICAL DIVERSITY and<br>WISHTOYO FOUNDATION<br><br>Tel.:    (510) 844-7100<br>Fax:    (510) 844-7150<br>Email: jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>        tnimmer@biologicaldiversity.org |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Regnifo, Esq.<br>**ENVIRONMENTAL DEFENSE CENTER**<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Phone: (805) 963-1622; Fax: (805) 962-3152 | **ATTORNEYS FOR PETITIONERS**<br>ENVIRONMENTAL DEFENSE CENTER, a<br>California non-profit corporation; GET OIL<br>OUT!, a California non-profit corporation;<br>SANTA BARBARA COUNTY ACTION<br>NETWORK, a California non-profit corporation;<br>SIERRA CLUB, a national non-profit<br>corporation; and SANTA BARBARA<br>CHANNELKEEPER, a California non-profit<br>corporation<br><br>Tel.:    (510) 844-7100<br>Fax:    (510) 844-7150<br>Email: lkrop@environmentaldefensecenter.org<br>        jfrankel@environmentaldefensecenter.org<br>        trengifo@environmentaldefensecenter.org |
| Michael S. Dorsi, Esq.<br>**California Attorney General's Office**<br>55 Golden Gate Ave, Ste 11000,<br>San Francisco, CA 94102 | **ATTORNEYS FOR RESPONDENTS/<br>DEFENDANTS**<br>California Department of Forestry and Fire<br>Protection, Office of the State Fire Marshal;<br>Daniel Berlant, in his official capacity as State<br>Fire Marshal<br><br>Tel.:    (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov |
| Duncan Joseph Moore, Esq.<br>Benjamin J. Hanelin, Esq.<br>Natalie C. Rogers, Esq.<br>**PAUL HASTINGS LLP**<br>1999 Avenue of the Stars, 27th Floor<br>Century City, California, 90067 | **ATTORNEYS FOR REAL PARTIES IN<br>INTEREST**<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:    (310) 620-5879<br>Email: djmoore@paulhastings.com<br>        benjaminhanelin@paulhastings.com<br>        natalierogers@paulhastings.com |
| Trevor D. Large, Esq.<br>**FAUVER, LARGE, ARCHBALD &<br>SPRAY LLP**<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | **ATTORNEYS FOR REAL PARTIES IN<br>INTEREST**<br>Sable Offshore Corp.; Pacific Pipeline Company<br><br>Tel.:    (805) 966-7000<br>Email: TLarge@FLASllp.com |

- 142 -

REAL PARTIES IN INTEREST'S OBJECTIONS TO EVIDENCE SUBMITTED IN
SUPPORT OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/16/2025 5:12 PM
By: Narzralli Baksh , Deputy

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100 / Fax: (510) 844-7150

*Attorneys for Petitioners Center for Biological
Diversity and Wishtoyo Foundation*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA BARBARA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive,<br><br>Respondents/Defendants.<br><br>―――――――――――――――――<br><br>SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,<br><br>Real Parties in Interest. | Case No.: 25CV02244<br><br>**PETITIONERS' OPPOSITION TO REAL PARTIES IN INTEREST'S MOTION TO STRIKE EVIDENCE SUBMITTED WITH PETITIONERS' REPLY**<br><br>Date:    July 18, 2025<br>Time:    10:00 a.m.<br>Dept.:    4<br>Judge:    Honorable Donna D. Geck<br><br>Action Filed: April 15, 2025<br>Trial: None Set |

Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") oppose Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company's ("Sable") Motion to Strike evidence submitted with Petitioners' Reply Brief in support of a Stay or Preliminary Injunction.

Although Sable relies on *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-38 to contend that Petitioners' reply brief evidence is not permissible because "[t]he general rule of motion practice… is that new evidence is not permitted with reply papers" (Motion at 5), it tellingly omits the exceptions to the general rule, including that evidence submitted with reply may be admissible where it "fill[s] gaps in the evidence created by the … opposition." (*Jay v. Mahaffey*, *supra*, 218 Cal.App.4th at 1538; *Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 711.) Indeed, for this reason, some courts have found that "where evidence is 'submitted in direct response to proof adduced in opposition to a motion' it is not 'new'". (*Zkey Invs., LLC v. Facebook Inc.* (C.D.Cal. 2016) 225 F.Supp.3d 1147, 1158.)

Here, Petitioners' reply evidence was submitted to directly rebut arguments asserted in Sable and Cal Fire's Oppositions. For example, the declaration of Paasha Mahdavi, regarding foreign import, consumer market, and greenhouse gas impacts (or lack thereof) associated with the Santa Ynez unit, directly responds to Real Parties' *numerous* expert declarations opining that "[i]f Sable's oil production cannot be supplied through the Pipelines, California will become increasingly reliant on foreign oil, resulting in significantly higher greenhouse gas . . . [and exacerbating] California's ongoing oil crisis, leading to higher gasoline prices, lost jobs, lost tax revenue, lost royalties, and higher prices across California's economy." (Sable PI Opp. at 20-21 [citing Leininger and Mische Decls.].) The Second Declaration of Julie Teel Simmonds was similarly submitted to rebut arguments and fill gaps created by the Oppositions. Accordingly, Petitioners' reply evidence is proper and the Court should deny Sable's Motion.

Dated: July 16, 2025

Respectfully submitted,

*/s/ Talia Nimmer*
Talia Nimmer (Bar No. 331002)
Julie Teel Simmonds (Bar No. 208282)
David Pettit (Bar No. 67128)
CENTER FOR BIOLOGICAL DIVERSITY
*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

**PROOF OF SERVICE**

I, Talia Nimmer, state:

I am over the age of 18 and not a party to the foregoing action. My business address is Center for Biological Diversity, 2100 Franklin St., Ste. 375, Oakland CA 94612. On July 16, 2025, I served a true and correct copy of:

**PETITIONERS' OPPOSITION TO REAL PARTIES IN INTEREST'S MOTION TO STRIKE EVIDENCE SUBMITTED WITH PETITIONERS' REPLY**

[X] BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy to the email addresses shown below pursuant to California Rule of Court Section 2.251(c)(3) and Local Rule 1012.

Michael S. Dorsi
California Attorney General's Office
55 Golden Gate Ave, Ste 11000
San Francisco, CA 94102
Michael.Dorsi@doj.ca.gov
*Attorney for Respondents/Defendants*

Jeffrey Dintzer
Matthew C. Wickersham
Garrett Stanton
ALSTON & BIRD
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Jeffrey.dintzer@alston.com
Matt.wickersham@alston.com
Garrett.stanton@alston.com
*Attorneys for Real Parties in Interest*

DJ Moore
Benjamin Hanelin
Natalie Rogers
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com
*Attorneys for Real Parties in Interest*

3

Trevor D. Large
Victoria C. Diffenderfer
FAUVER LARGE ARCHBALD & SPRAY
820 State Street, 4th Floor
Santa Barbara, CA 93101
tlarge@flasllp.com
vdiffenderfer@flasllp.com
*Attorneys for Real Parties in Interest*

I declare under penalty of perjury under the law of California that the foregoing is true and correct. Executed on July 16, 2025, in Los Angeles, California.

_____
Talia Nimmer

Petitioners' Opposition to Real Parties' Motion to Strike Evidence Submitted with Petitioners' Reply

CM-110

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY**<br>NAME: Jeffrey D. Dintzer     STATE BAR NUMBER: 139056<br>FIRM NAME: Alston & Bird LLP<br>STREET ADDRESS: 350 South Grand Avenue, 51st Floor<br>CITY: Los Angeles     STATE: CA     ZIP CODE: 90071-1410<br>TELEPHONE NO.: (213) 576-1000     FAX NO.: (213) 576-1100<br>EMAIL ADDRESS: jeffrey.dintzer@alston.com<br>ATTORNEY FOR (name): Sable Offshore Corp., Pacific Pipeline Company | ***FOR COURT USE ONLY***<br>ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>7/17/2025 3:59 PM<br>By: Narzralli Baksh , Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
STREET ADDRESS: 1100 Anapaca St.
MAILING ADDRESS: 1100 Anapaca St.
CITY AND ZIP CODE: Santa Barbara, 93101
BRANCH NAME: Anapaca Division

PLAINTIFF/PETITIONER: Center for Biological Diversity et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| | |
|---|---|
| **CASE MANAGEMENT STATEMENT**<br>***(Check one):***  [ X ] **UNLIMITED CASE**          [ ] **LIMITED CASE**<br>(Amount demanded          (Amount demanded is $35,000<br>exceeds $35,000)            or less) | CASE NUMBER:<br>25CV02244 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: July 18, 2025          Time: 8:30 a.m.     Dept.: 4          Div.:          Room:

Address of court (if different from the address above):

[ ] **Notice of Intent to Appear by Telephone, by (name):**

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [ X ] This statement is submitted by party (name): Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.
   b. [ ] This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date):  April 15, 2025
   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [ X ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served (specify names and explain why not):

      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ] have had a default entered against them (specify names):

   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in  [ X ] complaint     [ ] cross-complaint     (Describe, including causes of action):
      Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

**Page 1 of 5**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief)*:
See Attachment 4b.

☒ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  ☐ The trial has been set for *(date):*

b.  ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  ☒ days *(specify number):* 1

b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:                                          f.  Fax number:

e.  Email address:                                              g.  Party represented:

☒ Additional representation is described in Attachment 8.

9.  **Preference**

☒ This case is entitled to preference *(specify code section):* Public Resources Code section 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110 [Rev. January 1, 2024]          **CASE MANAGEMENT STATEMENT**          **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

10. c. In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER:  Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02244 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case  *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy   ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Environmental Defense Center et al. v. Cal. Dept. of Forestry & Fire Protection et al.

(2) Name of court: Santa Barbara Superior Court

(3) Case number:  25CV02247

(4) Status: Pending

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate   will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☒ The party or parties expect to file the following motions before trial  *(specify moving party, type of motion, and issues):*
Real Parties intend to demur to the Petition/Complaint and move to strike relief sought in the Petition/Complaint.

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

---

**CM-110**

| PLAINTIFF/PETITIONER:   Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   California Department of Forestry and Fire Protection et al. | 25CV02244 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
On June 12, 2025, the parties met and conferred about Real Parties' anticipated demurrer, the status of the administrative record, case consolidation, and CEQA settlement. The parties will continue to meet and confer as needed.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 2_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:  July 17, 2025

Jeffrey D. Dintzer
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**Attachment 4b**

4.b. Provide a brief statement of the case, including any damages:


Plaintiffs and Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees.

1

**Attachment 8**

Real Parties in Interest will be represented by the following attorneys:


**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100


**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899


**FAUVER LARGE ARCHIBALD & SPRAY**
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flasllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone:     (805) 966-7000
Facsimile:     (805) 966-7227

2

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On July 17, 2025, I served the document **CASE MANAGEMENT CONFERENCE** on the interested parties in this action addressed as follows:

**See Attached Service List**

☒        BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 17, 2025, at Los Angeles, California.


                                                              /s/ *Kim Niz*
                                                   _____
                                                              Kim Niz

**SERVICE LIST**

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA  94612

**ATTORNEYS FOR PETITIONERS**
CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION

TEL.:    (510) 844-7100
FAX:    (510) 844-7150
Email:    jteelsimmonds@biologicaldiversity.org
depettit@biologicaldiversity.org
tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
jfrankel@environmentaldefensecenter.org
trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

Trevor D. Large, Esq.
**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
820 State Street, 4th Floor
Santa Barbara, CA  93101

**ATTORNEYS FOR REAL PARTIES IN I INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 996-7000
Email:  TLarge@FLASllp.com

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:  07/18/2025             Time:  10:00 AM
Judicial Officer:  Donna D Geck
Deputy Clerk:  Maria Vidal             Dept:  SB Dept 4
Bailiff/Court Officer:  Kenneth Toste        Case No: 25CV02244
Court Reporter:  Marie Castro

---

### Center for Biological Diversity  et al vs California Department of Forestry and Fire Protection  et al

Parties Present:

| | |
|---|---|
| Talia Nimmer | Petitioner's Attorney |
| Michael Dorsi | Respondent's Attorney |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Garrett Stanton | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |
| Linda Krop | Attorney for Non-Party |
| Jeremy Frankel | Attorney for Non-Party |

---

**NATURE OF PROCEEDINGS***:*  **Case Management Conference; Motion: Compel re Deposition of Richard B Kuprewicz; Motion: Strike Declaration of Richard B Kuprewicz; Order to Show Cause: Preliminary Injunction**

Counsel presented argument.

The Court set the following hearing:

August 01, 2025 8:30 AM
Case Management Conference
Geck, Donna D
SB Dept 4

The Court adopted the tentative ruling as follows:

**RULING**:

(1)    The applications of petitioners in case numbers 25CV02244 and 25CV02247 for issuance of preliminary injunctions are, respectively, granted in part. The applications are granted to enjoin, pending the disposition of these proceedings or further order of the court, the restart of the Las Flores Pipelines, as herein defined, until 10 court days following the filing and service of notice by or on behalf of real parties in interest Sable Offshore Corp., and Pacific Pipeline Company (collectively, Sable) that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree identified herein. To be effective to commence the 10-court-day period, such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025. The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure

---

SC-2411 (Revised July 1, 2013)               **MINUTE ORDER**

sections 1013 and 1010.6, and shall be calculated from the later of the date of filing or the date of service. The temporary restraining order remains in place until a written order of the court is entered on this preliminary injunction.

(2)      On or before July 25, 2025, petitioners in each case shall lodge with the court an order for signature and filing.

(3)      The court fixes the undertaking required by Code of Civil Procedure section 529 in the amount of $1,000.00, to be filed in each case by the respective petitioners. Petitioners shall file such undertaking on or before July 25, 2025.

(4)      For the reasons set forth herein, the motion of Sable (case No. 25CV02244) to compel the deposition of Richard B. Kuprewicz, the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions, the motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz, and the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions are all denied.

---

(1)      OSC re Preliminary Injunction

These are two related cases involving the same underlying incidents and activity. Pursuant to the parties' stipulation, the responding parties and real parties in interest have filed the same brief addressing both cases in each of these cases and the respective petitioners have filed reply papers in each of their respective cases. The court therefore will address the orders to show cause re issuance of preliminary injunctions (OSCs) together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

The parties have submitted voluminous evidence in support of, and in opposition to, these OSCs. The court has reviewed all of the papers presented by the parties, and has relied only upon admissible evidence in making this ruling. The discussion herein is not intended to be exhaustive, but to provide context for the court's analysis and ruling.

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las

Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (Rusch decl., ¶ 33 & exhibit N [the Federal Consent Decree].)

The Federal Consent Decree includes the following provisions:

"1.      State Waivers for Lines 901, 903, and 2000 (not to include any replacement lines):

"A.      Prior to restarting Line 901, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 901. Plains must receive a State Waiver from the OSFM prior to restarting Line 901.

"B.      Prior to restarting non-operational segments of Line 903, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic

protection on Line 903. Plains must receive a State Waiver from the OSFM prior

to restarting Line 903.

"C.      Within 90 days of entry of the Consent Decree (CD), Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. The State Waiver shall apply to the currently operational segment of Line 903 from Pentland to Emidio.

"D.      Within 90 days of entry of the CD, Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 2000.

"E.      To the extent that a State Waiver directly incorporates terms identified in section 4 (Integrity Management) below, as being applicable to Lines 901, 903, or 2000, Plains shall not contest the inclusion of those terms in the relevant State Waiver. Plains reserves its rights to contest on any grounds any additional terms that the OSFM may require as part of each State Waiver if one is received. Nothing in this CD shall be construed to limit the authority of the OSFM to require additional terms or conditions in the State Waiver. Further, nothing in the State Waiver shall be construed to limit the applicability of the terms set forth in the CD.

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

"2.      Replacement, Restart, or Abandonment of Lines 901 and 903:

"A.      Plains shall replace the existing Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland with non-insulated pipe, if Plains is able to timely obtain: (1) agreements from shippers to transport sufficient quantities of product to make the cost of replacing the segments economically viable; (2) the Federal, State, and Local permits that may be required; and (3) whatever additional rights are needed, including rights-of-way that may be needed from landowners. Obtaining required commercial commitments, permits, rights-of- way, and any other rights necessary for replacement is the sole responsibility of

Plains.

"1.      On any replacement segments of Lines 901 or 903, Plains shall, prior to commencing operation of such segment(s):

"a.      Test for potential AC/DC interference. Where potential AC/DC interference exists, proper mitigation of interference shall be designed and installed during construction of replacement lines.

"b.      Conduct a close interval survey (CIS) and AC/DC interference survey.

"c.      Based on the CIS and AC/DC interference surveys, place additional cathodic-protection test stations at locations where the surveys demonstrate potential cathodic-protection deficiencies, following review and consultation with the OSFM regarding proposed test station locations.

"B.      As an alternative to replacement of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may restart the existing pipelines in accordance with the CD (including Appendix D) and applicable law.

"C.      As an alternative to replacement or restart of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may abandon all or any segments in accordance with all applicable laws and regulations." (Federal Consent Decree, appen. B, art. I, §§ 1, 2.)


In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)


In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)


In May 2024, Sable began conducting repair and maintenance activities to the Las Flores Pipelines. (Rusch decl., ¶ 5.) According to Sable, these activities were completed pursuant to previously granted coastal development permits, approvals, and EIR. (*Ibid*.)


On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id*. & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (Rusch decl., ¶ 7 & exhibits B, C.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (Rusch decl., ¶ 9 & exhibit E.)

On April 2, 2025, OSFM issued letters noting its receipt of PHMSA's decision stating that it has no objection to granting the State Waivers. (Rusch decl., ¶ 10 & exhibits F, G.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On June 3, 2025, the court heard petitioners' ex parte applications for an administrative stay, or for an OSC re preliminary injunction and temporary restraining order (TRO). The court granted the petitioners' requests for a TRO and set a hearing on the OSCs for this date.

The applications for issuance of a preliminary injunction are opposed by OSFM and by Sable.

**Analysis:**

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

Notwithstanding the issuance of the TRO, the burden is on petitioners, as the parties seeking injunctive relief, to show all elements necessary to support issuance of a preliminary injunction. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.) A preliminary injunction is available "[w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action." (Code Civ. Proc., § 526, subd. (a)(2).)

"The trial courts consider two interrelated questions in deciding whether to issue a preliminary injunction: 1) are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant; and 2) is there a reasonable probability that the plaintiffs will prevail on the merits. [Citations.] '[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.]" (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206.)

### (A)    Likelihood of Success on the Merits

Petitioners raise multiple claims in their petitions that separately could support issuance of an injunction. It is therefore necessary to address these claims in turn.

#### (i)    CEQA

Petitioners each assert a claim under CEQA based upon OSFM's issuance of the State Waivers without preparing environmental documentation, without providing public notice, and without providing an opportunity for public comment. (CBD Petition, ¶¶ 128-129; EDC Petition, ¶ 224.)

"[CEQA] and the regulations implementing it (Cal. Code Regs., tit. 14, § 15000 et seq.) embody California's strong public policy of protecting the environment. 'The basic purposes of CEQA are to: [¶] (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved.' [Citation.]" (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285–286 (*Tomlinson*).)

"To achieve these goals, CEQA and the implementing regulations provide for a three-step process. In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency. (§ 21065.)" (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

"The second step of the process is required if the proposed activity is a 'project.' The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption (§ 21080) or a categorical exemption set forth in the regulations (§ 21084, subd. (a); Cal. Code Regs., tit. 14, § 15300). A categorically exempt project is not subject to CEQA, and no further environmental review is required. [Citations.] If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' [Citations.] Otherwise, the agency must proceed to the third step, which entails preparation of an environmental impact report before approval of the project. (§§ 21100, subd. (a), 21151, subd. (a).)" (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

CBD asserts that restarting the Las Flores Pipelines by issuance of the State Waivers is a "project" under CEQA requiring environmental review. (CBD Application, at pp. 21-23.) OSFM and Sable argue that the issuance of the State Waivers is not a "project" or is otherwise not subject to CEQA.

" 'Project' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] … [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Pub. Resources Code, § 21065.)

"The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (Cal. Code Regs., tit. 14, § 15378, subd. (c).)

Under this definition, the issuance of the State Waivers does not appear to constitute a "project" separately subject to CEQA review. The State Waivers would at most constitute a separate governmental approval for the underlying activity, which is the restart of the Las Flores Pipelines. The court concludes that the issuance of the State Waivers does not itself cause a change or authorize a change in the environment. (See *Simons v. City of Los Angeles* (1976) 63 Cal.App.3d 455, 466.)

If the State Waivers were considered more broadly, i.e., as a proxy for the restart of the Las Flores Pipelines, the resolution under CEQA is not clear. OSFM and Sable argue that, in such instance, the categorical existing facilities exemption applies.

"Class 1 consists of the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of existing or former use. The types of 'existing facilities' itemized below are not intended to be all-inclusive of the types of projects which might fall within Class 1." (Cal. Code Regs., tit. 14, § 15301; see also Pub. Resources Code, § 21084; Cal. Code Regs., tit. 14, § 15300.)

"Examples include but are not limited to: [¶] … [¶] (d) Restoration or rehabilitation of deteriorated or damaged structures, facilities, or mechanical equipment to meet current standards of public health and

safety, unless it is determined that the damage was substantial and resulted from an environmental hazard such as earthquake, landslide, or flood." (Cal. Code Regs., tit. 14, § 15301, subd. (d).)

An issue now before the California Supreme Court is whether "negligible" in this exemption pertains to a negligible change in use or to a change that presents a negligible risk of environmental harm. (*Sunflower Alliance v. Department of Conservation* (2024) 105 Cal.App.5th 771, review granted Dec. 18, 2024, S287414 (*Sunflower*).) Under broader circumstances, this issue may bear upon the application of the exemption. But as the issue is presented here, such analysis is premature because the State Waivers are not themselves directly or indirectly causing change to the environment.

EDC, in particular, focuses its argument on the need for updated environmental review:

"When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs:

    "(a)    Substantial changes are proposed in the project which will require major revisions of the environmental impact report.

    "(b)    Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report.

    "(c)    New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." (Pub. Resources Code, § 21166.)

"When an EIR has been certified or a negative declaration adopted for a project, no subsequent EIR shall be prepared for that project unless the lead agency determines, on the basis of substantial evidence in the light of the whole record, one or more of the following:

    "(1)    Substantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects;

    "(2)    Substantial changes occur with respect to the circumstances under which the project is undertaken which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects; or

    "(3)    New information of substantial importance, which was not known and could not have been known with the exercise of reasonable diligence at the time the previous EIR was certified as complete or the negative declaration was adopted, shows any of the following:

        "(A)    The project will have one or more significant effects not discussed in the previous EIR or negative declaration;

        "(B)    Significant effects previously examined will be substantially more severe than shown in the previous EIR;

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

"(C)    Mitigation measures or alternatives previously found not to be feasible would in fact be feasible and would substantially reduce one or more significant effects of the project, but the project proponents decline to adopt the mitigation measure or alternative; or

"(D)    Mitigation measures or alternatives which are considerably different from those analyzed in the previous EIR would substantially reduce one or more significant effects on the environment, but the project proponents decline to adopt the mitigation measure or alternative."

(Cal. Code Regs., tit. 14, § 15162, subd. (a).)

EDC argues that a subsequent EIR is required because: (1) operating the pipeline system without an effective cathodic protection system throughout the entire length of the pipeline constitutes a change in the project that increases the risk and severity of impacts, requiring major revisions to the 1985 EIR; (2) the failure of the pipeline system's cathodic protection system and resulting corrosion constitutes a change in circumstances; (3) it was only after the 2015 oil spill that the pipeline system was discovered to lack effective cathodic protection, which constitutes new information showing that the risk of an oil spill is substantially more severe than previously determined.

The petitioners rely largely upon the declaration and reports of expert Richard Kuprewicz for evidence regarding pipeline safety. The testimony of Kuprewicz is the subject of other motions also pending before the court (discussed below) based in part upon Kuprewicz's present unavailability to be subject to a deposition. For purposes of these motions, the court will consider Kuprewicz's evidence with Kuprewicz's unavailability going to the weight of the evidence in the context of these applications for preliminary injunctions.

"After an initial EIR is certified, CEQA establishes a presumption against additional environmental review. An agency has jurisdiction to prepare a subsequent or supplemental EIR only if the agency grants a 'discretionary' approval on the project [citation, fn.], and certain statutorily enumerated new circumstances occur." (*San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 928.)

The 1985 EIR addressed the potential for an oil spill from pipeline operation. (Dorsi decl., exhibit 5.) There is a dispute among the parties as to whether the 2015 spill and the failure of effective cathodic protection demonstrate new information requiring more or different analysis than present the 1985 EIR. However, this analysis, like the discussion above, is an analysis of a "project," and in particular the restart of pipeline operations as compared with the State Waivers at issue here.

The court concludes that, in the present administrative posture, petitioners are not likely to succeed on the merits of showing a violation of CEQA. Nonetheless, the court finds that petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

(ii)    Federal Claims

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

In addition to violations of CEQA, petitioners assert violations of the FPSA in failing to provide a public process and failing to provide a statement of reasons.

"General requirements.--A person owning or operating a pipeline facility shall--

"(1)    comply with applicable safety standards prescribed under this chapter, except as provided in this section or in section 60126;

"(2)    prepare and carry out a plan for inspection and maintenance required under section 60108(a) and (b) of this title;

"(3)    allow access to or copying of records, make reports and provide information, and allow entry or inspection required under subsections (a) through (e) of section 60117 of this title; and

"(4)    conduct a risk analysis, and adopt and implement an integrity management program, for pipeline facilities as required under section 60109(c)." (49 U.S.C. § 60118(a).)

"Waivers by Secretary.--

(1)    Nonemergency waivers.--

"(A)    In general.--On application of an owner or operator of a pipeline facility, the Secretary by order may waive compliance with any part of an applicable standard prescribed under this chapter with respect to such facility on terms the Secretary considers appropriate if the Secretary determines that the waiver is not inconsistent with pipeline safety.

"(B) Hearing.--The Secretary may act on a waiver under this paragraph only after notice and an opportunity for a hearing."

(49 U.S.C. § 60118(c)(1).)

"Statement of reasons.--The Secretary shall state in an order issued under this subsection the reasons for granting the waiver." (49 U.S.C. § 60118(c)(3).)

"Waivers by State authorities.--If a certification under section 60105 of this title or an agreement under section 60106 of this title is in effect, the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c) of this section. However, the authority must give the Secretary written notice of the waiver at least 60 days before its effective date. If the Secretary makes a written objection before the effective date of the waiver, the waiver is stayed. After notifying the authority of the objection, the Secretary shall provide a prompt opportunity for a hearing. The Secretary shall make the final decision on granting the waiver." (49 U.S.C. § 60118(d).)

Petitioners argue that, because "the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c)" and because the Secretary may act on a waiver only after notice and an opportunity for a hearing and by stating reasons, petitioners may set aside the State Waivers until the OSFM complies with section 60118.

OSFM and Sable argue that petitioners may not seek such remedies under federal law for violation of these non-discretionary procedural requirements, citing *City and County of San Francisco v. U.S. Dept. of Transp.* (9th Cir. 2015) 796 F.3d 993 (*San Francisco*). In *San Francisco*, the litigation was initiated following an explosion of a natural gas transmission pipeline. (*Id*. at p. 995.) Fearing a recurrence, the City and County of San Francisco sued under the FPSA's citizen suit provision alleging that the PHMSA failed to comply with the FPSA. (*Ibid*.) The city sought declaratory and injunctive relief to compel the FPSA to comply with its duties under the FPSA. (*Id*. at pp. 997-998.) The District Court dismissed the suit with leave to amend, finding that the citizen suit provision (49 U.S.C. § 60121) was " 'not an appropriate vehicle for seeking mandamus relief regarding defendants' performance of their regulatory obligations.' " (*Id*. at p. 998.) The city amended its complaint to include claims under the Administrative Procedures Act, arguing that the PHMSA approval of the state agency's certification was arbitrary and capricious, and a failure to act, in violation of title 5, United States Code section 706. (*Ibid*.) The District Court dismissed these claims as well. (*Ibid*.)

On appeal in *San Francisco*, the Ninth Circuit affirmed. (*San Francisco*, *supra*, 796 F.3d at p. 1004.) "The Pipeline Safety Act, by its plain language, allows only a very limited private right of action. It permits injunctive citizen suits against the United States or other entities 'for a violation of this chapter or a regulation prescribed or order issued under this chapter.' [Citation.] In other words, private citizen suits are authorized for substantive statutory or regulatory violations. By its terms, the provision does not authorize a mandamus-type action to compel the Agency to perform non-discretionary regulatory duties." (*Id*. at pp. 998–999.)

The OSFM also argues that the notice and hearing requirements of section 60121 appear in the FPSA as procedural protections for the benefit of the applicant seeking the waiver and not for the more general purpose of public participation. This latter point is consistent with the corresponding regulations: "Hearing means an informal conference or a proceeding for oral presentation. Unless otherwise specifically prescribed in this part, the use of 'hearing' is not intended to require a hearing on the record in accordance with section 554 of title 5, U.S.C." (49 C.F.R. § 190.3 (2025).)

Considering these regulations and the reasoning of *San Francisco*, there is a reasonable basis to find that federal law does not require a hearing with generalized public participation and hence to find no violation of the procedural aspects of the FPSA. Despite this lack of requirement, petitioners, nonetheless, actually submitted evidence to the OSFM. (CDB Petition, ¶¶ 68-74; EDC Petition, ¶ 116.) A reasonable inference is that the petitioners have had an opportunity to present evidence to OSFM regardless of whether there is a public participation requirement.

The court finds that petitioners have not shown a likelihood of success on the merits as to claims based on federal law, but again petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

       (iii)    State Claims

Corresponding to their FPSA claims, petitioners also assert violations of the CPSA.

"It is the intent of the Legislature, in enacting this chapter, that the State Fire Marshal shall exercise exclusive safety regulatory and enforcement authority over intrastate hazardous liquid pipelines and, to the extent authorized by agreement between the State Fire Marshal and the United States Secretary of Transportation, may act as agent for the United States Secretary of Transportation to implement the federal Hazardous Liquid Pipeline Safety Act of 1979 (49 U.S.C. Sec. 60101 et seq.) and federal pipeline safety regulations as to those portions of interstate pipelines located within this state, as necessary to obtain annual federal certification." (Gov. Code, § 51010.)

"The State Fire Marshal shall adopt hazardous liquid pipeline safety regulations in compliance with the federal law relating to hazardous liquid pipeline safety, including, but not limited to, compliance orders, penalties, and inspection and maintenance provisions, and including amendments to those laws and regulations that may be hereafter enacted and adopted." (Gov. Code, § 51011, subd. (a).)

"The State Fire Marshal may exempt the application of regulations adopted pursuant to this section to any pipeline, or portion thereof, when it is determined that the risk to public safety is slight and the probability of injury or damage remote." (Gov. Code, § 51011, subd. (b).)

"Notification of exemptions shall be written, and shall include a discussion of those factors that the State Fire Marshal considers significant to the granting of the exemption." (Gov. Code, § 51011, subd. (c).)

"Title 49 of the Code of Federal Regulations, Part 195 is hereby adopted by reference as it relates to hazardous liquid pipelines." (Cal. Code Regs., tit. 19, § 2000.)

While federal procedural law may not separately provide for mandate remedies, California procedural law generally provides for writs of mandate to command California officials to comply with the law. (See Code Civ. Proc., §§ 1085, 1094.5.)

Reviewing the State Waivers, the court concludes that the State Waivers do not contain a discussion of factors that the OSFM considered significant in granting the exemption beyond conclusions.

"Administrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein. [Citation.] However, findings by implication cannot be substituted for specific findings when they are required by law." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.)

Given the specific findings required by section 51011, subdivision (b), it appears that the statutorily-required discussion of subdivision (c) must in some appropriate way at least connect the factors stated (and their significance) to the findings that the risk to public safety is slight and the probability of injury or damage remote. The court finds that petitioners have established a reasonable probability of success on the merits on this claim.

(B)    Greater Harms

Petitioners argue that they, and the portion of the public they represent, would suffer the greater harm by the erroneous denial of a preliminary injunction. In particular, petitioners argue that the potential harm to natural resources and the failure to consider impacts of the project or to allow public input outweigh any delay for Sable. Sable argues that such harm is purely speculative and that it, and the general public, would suffer economic harms delaying or preventing the domestic oil production from Sable's use of the pipelines by the erroneous issuance of a preliminary injunction. The OSFM argues that erroneous issuance of an injunction against public officers in performing their duties is a form of irreparable injury.

As discussed below, because the petitions focus on deficiencies in the State Waivers as issued by OSFM and because additional approvals are required before the pipelines subject to the State Waivers may be restarted, the court finds that no party has made a strong showing that it would suffer greater harm by the erroneous grant or denial of the preliminary injunction.

(C)    Balance of Equities

In arguing that CEQA is inapplicable, Sable and OSFM make the point that the State Waivers constitute but one approval of several necessary to restart the Las Flores Pipelines. This argument is carried forward into their analysis of the relative harms: "Petitioners' alleged harm from restart of the Pipelines [citations] is purely speculative due to the additional approval Sable must obtain before the Pipelines are operational. [Citation.] As Petitioners acknowledge, and as required by the Consent Decree, OSFM must approve a Restart Plan before Sable can restart the Pipelines. [Citations.] When reviewing Sable's Restart Plan, OSFM will necessarily consider the safety of operations and integrity of the pipelines to minimize potential safety risks." (Sable Opposition, at p. 19.)

The principal harms argued both by petitioners and by Sable are based upon what would or would not happen when the Las Flores Pipelines are restarted. The evidence presented by all parties, however, shows that the restart of the Las Flores Pipelines is dependent upon approvals that have not yet been given. The respective potential harms are thus premature in this analysis. As the OSFM argues, there are potential harms in premature and potentially unnecessary judicial interference with the activities of regulators.

As the evidence and arguments of the petitioners most strongly demonstrate, the principal harm to be avoided is the restart of the Las Flores Pipelines without compliance with all applicable law. Because such a restart requires additional approvals, this harm may be avoided in the present by having adequate notice that a restart has been approved and so providing petitioners with a reasonable opportunity to address compliance issues of such a restart based upon such future approvals. By the same token, Sable would not be materially harmed by being restrained from restarting the Las Flores Pipelines without first providing such adequate notice. The OSFM would not be restrained or constrained in the interim to address all such matters within its regulatory purview.

SC-2411 (Revised July 1, 2013)    **MINUTE ORDER**

Accordingly, the court will narrowly grant the motions for preliminary injunctions to enjoin the restart of the Las Flores Pipelines, as herein defined, until 10 court days following Sable's filing and service of notice that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree. Such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025 (the date of the court's grant of the TRO in these matters). The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing and the date of service.

Under these terms of the preliminary injunction, absent further order of the court, Sable may restart the Las Flores Pipelines 10 court days following the giving of notice of receiving all necessary approvals and permits. Sable is not prevented by this injunction from taking steps towards restarting the Las Flores Pipelines short of actual restart. The OSFM is not impeded by the injunction from taking steps it finds appropriate in its regulatory capacity, including any steps OSFM may find desirable following this order. The conditions of the injunction do not allow restart without prior notice. This notice requirement and intervening waiting period provides reasonable time and opportunity for the petitioners and for the OSFM to take any requisite procedural step they may find appropriate before restart is to occur. The ruling is without prejudice to petitioners to seek additional, further, or other relief from the court, if any is warranted, before such restart. The court would be in a position to assess the evidence and arguments of the parties as they then exist, including, presumably, the fact and effects of actions taken as a result of obtaining the remaining necessary approvals and permits.

(D)    Bond

"On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (Code Civ. Proc., § 529, subd. (a).)

In view of the nature of the injunction issued, the potential damages caused by a wrongful injunction are minimal. The court fixes the amount of the undertaking required by section 529 at $1,000.00, to be filed by CBD and EDU, respectively in each case, on or before July 25, 2025.

(2)    Motions re Richard B. Kuprewicz

In addition to the applications for issuance of preliminary injunctions, the parties have filed motions related to petitioners' expert witness Richard B. Kuprewicz: (1)

motion of Sable (case No. 25CV02244) to compel the deposition of Kuprewicz; (2) the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions; (3) motion of Sable (case No. 25CV02247) to compel the deposition of

---

Kuprewicz; and (4) the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions. There are also motions now set for hearing in October in each case to quash Sable's deposition subpoena and notice of deposition, and to stay the deposition of Kuprewicz.

As discussed briefly above, the court has considered, but does not rely upon, the substance of the declaration of Kuprewicz to reach its conclusions in this ruling. The motions to strike the declaration will be denied. The motions to compel the deposition of Kuprewicz are denied as moot. To the extent these ruling moot the pending motions to quash, the court expects the parties to advise the court of that fact.

Based upon the court's ruling on the merits of the applications for preliminary injunction, it is not necessary at this time to determine what role, if any, the testimony of Kuprewicz may have in further proceedings. The court expects that petitioners will fully consider the issues raised by Sable in these motions in any further filings with the court.

DARREL E. PARKER, EXECUTIVE OFFICER            Minutes Prepared by:

                                               _____Maria Vidal_____ , Deputy

SC-2411 (Revised July 1, 2013)                 **MINUTE ORDER**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/25/2025 4:20 PM
By: Narzralli Baksh , Deputy

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100 / Fax: (510) 844-7150

*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA BARBARA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION, | Case No.: 25CV02244 |
| Petitioners/Plaintiffs, | **NOTICE OF POSTING BOND** |
| v. | Hearing: July 18, 2025 |
| CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive, | Time:    10:00 a.m.<br>Dept.:    4<br>Judge:   Hon. Donna D. Geck |
| Respondents/Defendants. | Action Filed: April 15, 2025<br>Trial: None Set |
| SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive, | |
| Real Parties in Interest. | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 25, 2025, Petitioners Center for Biological Diversity and Wishtoyo Foundation posted a bond in the amount of $1,000.00 with Santa Barbara Superior Court. A true and correct copy of the Court receipt is attached hereto as **Exhibit A**.

DATED: July 25, 2025                    Respectfully Submitted

 /s/ *Talia Nimmer*
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375 Oakland, CA 94612
Tel. (510) 844–7100 / Fax: (510) 844–7150

*Attorneys for Petitioners Center for*
*Biological Diversity and Wishtoyo Foundation*

# EXHIBIT A

# OFFICIAL RECEIPT

## Superior Court of California, County of Santa Barbara Darrel E Parker, Court Executive Officer www.sbcourts.org

Payor
Center for Biological Diversity
PO Box 710
Tuscon AZ 85702

Receipt No.
**2025-49132**

Transaction Date
07/25/2025

| Description | Amount Paid |
|---|---|

On Behalf Of  Center for Biological Diversity
25CV02244
Center for Biological Diversity et al vs California Department of Forestry and Fire
Protection et al
Trust-Interpleader

| | |
|---|---|
| Trust - Interpleader | 1,000.00 |
| **SUBTOTAL** | **1,000.00** |

| **PAYMENT TOTAL** | **1,000.00** |
|---|---|

| | |
|---|---|
| Check/Money Order (Ref #002170) Tendered | 1,000.00 |
| Total Tendered | **1,000.00** |
| Change | 0.00 |

| 07/25/2025 | Cashier | Audit |
|---|---|---|
| 11:06 AM | Station CIVIL16SB | 8347835 |

# OFFICIAL RECEIPT

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/25/2025 4:20 PM
By: Narzralli Baksh , Deputy

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100 / Fax: (510) 844-7150

*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA BARBARA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive, <br><br> Respondents/Defendants. <br> ——————————————————— <br> SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive, <br><br> Real Parties in Interest. | Case No.: 25CV02244 <br><br><br> **NOTICE OF LODGING [PROPOSED] ORDER RE: PRELIMINARY INJUNCTION AND UNDERTAKING** <br><br> Hearing: July 18, 2025 <br> Time:    10:00 a.m. <br> Dept.:    4 <br> Judge:    Hon. Donna D. Geck <br><br> Action Filed: April 15, 2025 <br> Trial: None Set |

1
Notice of Lodging [Proposed] Order

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 25, 2025, Petitioners Center for Biological Diversity and Wishtoyo Foundation lodged with the Court a [Proposed] Order re: Preliminary Injunction and Undertaking, a true and correct copy of which is attached hereto as **Exhibit 1**.


DATED: July 25, 2025                    Respectfully Submitted

                                         /s/ *Talia Nimmer*
                                        Talia Nimmer (Bar No. 331002)
                                        tnimmer@biologicaldiversity.org
                                        Julie Teel Simmonds (Bar No. 208282)
                                        jteelsimmonds@biologicaldiversity.org
                                        David Pettit (Bar No. 67128)
                                        dpettit@biologicaldiversity.org
                                        CENTER FOR BIOLOGICAL DIVERSITY
                                        2100 Franklin St., Ste. 375 Oakland, CA 94612
                                        Tel. (510) 844–7100 / Fax: (510) 844–7150

                                        *Attorneys for Petitioners Center for*
                                        *Biological Diversity and Wishtoyo Foundation*

# EXHIBIT 1

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100 / Fax: (510) 844-7150

*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA BARBARA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive, <br><br> Respondents/Defendants. <br> ———————————————— <br> SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive, <br><br> Real Parties in Interest. | Case No.: 25CV02244 <br><br> **[PROPOSED] ORDER RE: PRELIMINARY INJUNCTION AND UNDERTAKING** <br><br> Hearing: July 18, 2025 <br> Time:    10:00 a.m. <br> Dept.:    4 <br> Judge:   Hon. Donna D. Geck <br><br> Action Filed: April 15, 2025 <br> Trial: None Set |

1

[Proposed] Order Re: Preliminary Injunction and Undertaking

**TO RESPONDENTS AND REAL PARTIES IN INTEREST IN THE ABOVE-CAPTIONED ACTION:**

The application of Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") for a preliminary injunction was heard on July 18, 2025, at 10:00 A.M. in Department 4 of the above-captioned Court. Appearing as attorneys were Talia Nimmer for Petitioners; Michael Dorsi for Respondents California Department of Fire and Forestry and State Fire Marshal Daniel Berlant (collectively, "Respondents"); and Jeffrey Dintzer, Garret Stanton, and Trevor Large for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable").

At the hearing, the Court adopted its tentative ruling to grant, in part, Petitioners' application. The order of the Court is set forth in its tentative — and now final — ruling, attached hereto as **Exhibit A.**

**IT IS SO ORDERED.**

DATED: _____, 2025          _____

                                                                    JUDGE OF THE SUPERIOR COURT

[Proposed] Order Re: Preliminary Injunction and Undertaking

# <u>EXHIBIT A</u>

Case 2:26-cv-05242-SVW-SSC    Document 32    Filed 05/14/26    Page 182 of 485    Page ID #:15940



SUPERIOR COURT OF CALIFORNIA
**COUNTY OF SANTA BARBARA**

NOTICE: Effective September 1, 2025, the cost of e-filing will increase from $6.45 to $10.00 per envelope. For more information click here .

Notice: The court is aware of fraudulent messages and scams being sent to the public. For more information please click here.

# Center for Biological Diversity et al vs California Dept of Forestry and Fire Protection et al

## Case Number

25CV02244

## Case Type

Civil Law & Motion

## Hearing Date / Time

Fri, 07/18/2025 - 10:00

## Nature of Proceedings

CMC; OSC Preliminary Injunction; Motion to Compel; Motion to Strike

## Tentative Ruling

(1)     The applications of petitioners in case numbers 25CV02244 and 25CV02247 for issuance of preliminary injunctions are, respectively, granted in part. The applications are granted to enjoin, pending the disposition of these proceedings or further order of the court, the restart of the Las Flores Pipelines, as herein defined, until 10 court days following the filing and service of notice by or on behalf of real parties in interest Sable Offshore Corp., and Pacific Pipeline Company (collectively, Sable) that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree identified herein. To be effective to commence the 10-court-day period, such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025. The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing or the date of service. The temporary restraining order remains in place until a written order of the court is entered on this preliminary injunction.

(2)     On or before July 25, 2025, petitioners in each case shall lodge with the court an order for signature and filing.

(3)     The court fixes the undertaking required by Code of Civil Procedure section 529 in the amount of $1,000.00, to be filed in each case by the respective petitioners. Petitioners shall file such undertaking on or before July 25, 2025.

(4)     For the reasons set forth herein, the motion of Sable (case No. 25CV02244) to compel the deposition of Richard B. Kuprewicz, the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions, the motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz, and the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions are all denied.

(1)     OSC re Preliminary Injunction

These are two related cases involving the same underlying incidents and activity. Pursuant to the parties' stipulation, the responding parties and real parties in interest have filed the same brief addressing both cases in each of these cases and the respective petitioners have filed reply papers in each of their respective cases. The court therefore will address the orders to show cause re issuance of preliminary injunctions (OSCs) together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

The parties have submitted voluminous evidence in support of, and in opposition to, these OSCs. The court has reviewed all of the papers presented by the parties, and has relied only upon admissible evidence in making this ruling. The discussion herein is not intended to be exhaustive, but to provide context for the court's analysis and ruling.

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (Rusch decl., ¶ 33 & exhibit N [the Federal Consent Decree].)

The Federal Consent Decree includes the following provisions:

"1.      State Waivers for Lines 901, 903, and 2000 (not to include any replacement lines):

"A.      Prior to restarting Line 901, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 901. Plains must receive a State Waiver from the OSFM prior to restarting Line 901.

"B.      Prior to restarting non-operational segments of Line 903, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic

protection on Line 903. Plains must receive a State Waiver from the OSFM prior

to restarting Line 903.

"C.      Within 90 days of entry of the Consent Decree (CD), Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. The State Waiver shall apply to the currently operational segment of Line 903 from Pentland to Emidio.

"D.      Within 90 days of entry of the CD, Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 2000.

"E.      To the extent that a State Waiver directly incorporates terms identified in section 4 (Integrity Management) below, as being applicable to Lines 901, 903, or 2000, Plains shall not contest the inclusion of those terms in the relevant State Waiver. Plains reserves its rights to contest on any grounds any additional terms that the OSFM may require as part of each State Waiver if one is received. Nothing in this CD shall be construed to limit the authority of the OSFM to require additional terms or conditions in the State Waiver. Further, nothing in the State Waiver shall be construed to limit the applicability of the terms set forth in the CD.

"2.      Replacement, Restart, or Abandonment of Lines 901 and 903:

"A.      Plains shall replace the existing Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland with non-insulated pipe, if Plains is able to timely obtain: (1) agreements from shippers to transport sufficient quantities of product to make the cost of replacing the segments economically viable; (2) the Federal, State, and Local permits that may be required; and (3) whatever additional rights are needed, including rights-of-way that may be needed from landowners. Obtaining required commercial commitments, permits, rights-of-way, and any other rights necessary for replacement is the sole responsibility of

Plains.

"1.      On any replacement segments of Lines 901 or 903, Plains shall, prior to commencing operation of such segment(s):

"a.      Test for potential AC/DC interference. Where potential AC/DC interference exists, proper mitigation of interference shall be designed and installed during construction of replacement lines.

"b.      Conduct a close interval survey (CIS) and AC/DC interference survey.

"c.      Based on the CIS and AC/DC interference surveys, place additional cathodic-protection test stations at locations where the surveys demonstrate potential cathodic-protection deficiencies, following review and consultation with the OSFM regarding proposed test station locations.

"B.      As an alternative to replacement of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may restart the existing pipelines in accordance with the CD (including Appendix D) and applicable law.

"C.    As an alternative to replacement or restart of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may abandon all or any segments in accordance with all applicable laws and regulations." (Federal Consent Decree, appen. B, art. I, §§ 1, 2.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

In May 2024, Sable began conducting repair and maintenance activities to the Las Flores Pipelines. (Rusch decl., ¶ 5.) According to Sable, these activities were completed pursuant to previously granted coastal development permits, approvals, and EIR. (*Ibid*.)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id*. & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (Rusch decl., ¶ 7 & exhibits B, C.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (Rusch decl., ¶ 9 & exhibit E.)

On April 2, 2025, OSFM issued letters noting its receipt of PHMSA's decision stating that it has no objection to granting the State Waivers. (Rusch decl., ¶ 10 & exhibits F, G.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On June 3, 2025, the court heard petitioners' ex parte applications for an administrative stay, or for an OSC re preliminary injunction and temporary restraining order (TRO). The court granted the petitioners' requests for a TRO and set a hearing on the OSCs for this date.

The applications for issuance of a preliminary injunction are opposed by OSFM and by Sable.

**Analysis:**

Notwithstanding the issuance of the TRO, the burden is on petitioners, as the parties seeking injunctive relief, to show all elements necessary to support issuance of a preliminary injunction. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.) A preliminary injunction is available "[w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action." (Code Civ. Proc., § 526, subd. (a)(2).)

"The trial courts consider two interrelated questions in deciding whether to issue a preliminary injunction: 1) are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant; and 2) is there a reasonable probability that the plaintiffs will prevail on the merits. [Citations.] '[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.]" (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206.)

(A)    Likelihood of Success on the Merits

Petitioners raise multiple claims in their petitions that separately could support issuance of an injunction. It is therefore necessary to address these claims in turn.

(i)    CEQA

Petitioners each assert a claim under CEQA based upon OSFM's issuance of the State Waivers without preparing environmental documentation, without providing public notice, and without providing an opportunity for public comment. (CBD Petition, ¶¶ 128-129; EDC Petition, ¶ 224.)

"[CEQA] and the regulations implementing it (Cal. Code Regs., tit. 14, § 15000 et seq.) embody California's strong public policy of protecting the environment. 'The basic purposes of CEQA are to: [¶] (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved.' [Citation.]" (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285–286 (*Tomlinson*).)

"To achieve these goals, CEQA and the implementing regulations provide for a three-step process. In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency. (§ 21065.)" (*Tomlinson, supra*, 54 Cal.4th at p. 286.)

"The second step of the process is required if the proposed activity is a 'project.' The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption (§ 21080) or a categorical exemption set forth in the regulations (§ 21084, subd. (a); Cal. Code Regs., tit. 14, § 15300). A categorically exempt project is not subject to CEQA, and no further environmental review is required. [Citations.] If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' [Citations.] Otherwise, the agency must proceed to the third step, which entails preparation of an environmental impact report before approval of the project. (§§ 21100, subd. (a), 21151, subd. (a).)" (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

CBD asserts that restarting the Las Flores Pipelines by issuance of the State Waivers is a "project" under CEQA requiring environmental review. (CBD Application, at pp. 21-23.) OSFM and Sable argue that the issuance of the State Waivers is not a "project" or is otherwise not subject to CEQA.

" 'Project' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] ... [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Pub. Resources Code, § 21065.)

"The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (Cal. Code Regs., tit. 14, § 15378, subd. (c).)

Under this definition, the issuance of the State Waivers does not appear to constitute a "project" separately subject to CEQA review. The State Waivers would at most constitute a separate governmental approval for the underlying activity, which is the restart of the Las Flores Pipelines. The court concludes that the issuance of the State Waivers does not itself cause a change or authorize a change in the environment. (See *Simons v. City of Los Angeles* (1976) 63 Cal.App.3d 455, 466.)

If the State Waivers were considered more broadly, i.e., as a proxy for the restart of the Las Flores Pipelines, the resolution under CEQA is not clear. OSFM and Sable argue that, in such instance, the categorical existing facilities exemption applies.

"Class 1 consists of the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of existing or former use. The types of 'existing facilities' itemized below are not intended to be all-inclusive of the types of projects which might fall within Class 1." (Cal. Code Regs., tit. 14, § 15301; see also Pub. Resources Code, § 21084; Cal. Code Regs., tit. 14, § 15300.)

"Examples include but are not limited to: [¶] ... [¶] (d) Restoration or rehabilitation of deteriorated or damaged structures, facilities, or mechanical equipment to meet current standards of public health and safety, unless it is determined that the damage was substantial and resulted from an environmental hazard such as earthquake, landslide, or flood." (Cal. Code Regs., tit. 14, § 15301, subd. (d).)

An issue now before the California Supreme Court is whether "negligible" in this exemption pertains to a negligible change in use or to a change that presents a negligible risk of environmental harm. (*Sunflower Alliance v. Department of Conservation* (2024) 105 Cal.App.5th 771, review granted Dec. 18, 2024, S287414 (*Sunflower*).) Under broader circumstances, this issue may bear upon the application of the exemption. But as the issue is presented here, such analysis is premature because the State Waivers are not themselves directly or indirectly causing change to the environment.

EDC, in particular, focuses its argument on the need for updated environmental review:

"When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs:

"(a)    Substantial changes are proposed in the project which will require major revisions of the environmental impact report.

"(b)    Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report.

"(c)    New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." (Pub. Resources Code, § 21166.)

"When an EIR has been certified or a negative declaration adopted for a project, no subsequent EIR shall be prepared for that project unless the lead agency determines, on the basis of substantial evidence in the light of the whole record, one or more of the following:

"(1)    Substantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects;

"(2)    Substantial changes occur with respect to the circumstances under which the project is undertaken which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects; or

"(3)    New information of substantial importance, which was not known and could not have been known with the exercise of reasonable diligence at the time the previous EIR was certified as complete or the negative declaration was adopted, shows any of the following:

"(A)    The project will have one or more significant effects not discussed in the previous EIR or negative declaration;

"(B)    Significant effects previously examined will be substantially more severe than shown in the previous EIR;

"(C)    Mitigation measures or alternatives previously found not to be feasible would in fact be feasible and would substantially reduce one or more significant effects of the project, but the project proponents decline to adopt the mitigation measure or alternative; or

"(D)    Mitigation measures or alternatives which are considerably different from those analyzed in the previous EIR would substantially reduce one or more significant effects on the environment, but the project proponents decline to adopt the mitigation measure or alternative."

(Cal. Code Regs., tit. 14, § 15162, subd. (a).)

EDC argues that a subsequent EIR is required because: (1) operating the pipeline system without an effective cathodic protection system throughout the entire length of the pipeline constitutes a change in the project that increases the risk and severity of impacts, requiring major revisions to the 1985 EIR; (2) the failure of the pipeline system's cathodic protection system and resulting corrosion constitutes a change in circumstances; (3) it was only after the 2015 oil spill that the pipeline system was discovered to lack effective cathodic protection, which constitutes new information showing that the risk of an oil spill is substantially more severe than previously determined.

The petitioners rely largely upon the declaration and reports of expert Richard Kuprewicz for evidence regarding pipeline safety. The testimony of Kuprewicz is the subject of other motions also pending before the court (discussed below) based in part upon Kuprewicz's present unavailability to be subject to a deposition. For purposes of these motions, the court will consider Kuprewicz's evidence with Kuprewicz's unavailability going to the weight of the evidence in the context of these applications for preliminary injunctions.

"After an initial EIR is certified, CEQA establishes a presumption against additional environmental review. An agency has jurisdiction to prepare a subsequent or supplemental EIR only if the agency grants a 'discretionary' approval on the project [citation, fn.], and certain statutorily enumerated new circumstances occur." (*San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 928.)

The 1985 EIR addressed the potential for an oil spill from pipeline operation. (Dorsi decl., exhibit 5.) There is a dispute among the parties as to whether the 2015 spill and the failure of effective cathodic protection demonstrate new information requiring more or different analysis than present the 1985 EIR. However, this analysis, like the discussion above, is an analysis of a "project," and in particular the restart of pipeline operations as compared with the State Waivers at issue here.

The court concludes that, in the present administrative posture, petitioners are not likely to succeed on the merits of showing a violation of CEQA. Nonetheless, the court finds that petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

   (ii)  Federal Claims

In addition to violations of CEQA, petitioners assert violations of the FPSA in failing to provide a public process and failing to provide a statement of reasons.

"General requirements.--A person owning or operating a pipeline facility shall--

"(1)    comply with applicable safety standards prescribed under this chapter, except as provided in this section or in section 60126;

"(2)    prepare and carry out a plan for inspection and maintenance required under section 60108(a) and (b) of this title;

"(3)    allow access to or copying of records, make reports and provide information, and allow entry or inspection required under subsections (a) through (e) of section 60117 of this title; and

"(4)    conduct a risk analysis, and adopt and implement an integrity management program, for pipeline facilities as required under section 60109(c)." (49 U.S.C. § 60118(a).)

"Waivers by Secretary.--

(1)    Nonemergency waivers.--

"(A)    In general.--On application of an owner or operator of a pipeline facility, the Secretary by order may waive compliance with any part of an applicable standard prescribed under this chapter with respect to such facility on terms the Secretary considers appropriate if the Secretary determines that the waiver is not inconsistent with pipeline safety.

"(B) Hearing.--The Secretary may act on a waiver under this paragraph only after notice and an opportunity for a hearing."

(49 U.S.C. § 60118(c)(1).)

"Statement of reasons.--The Secretary shall state in an order issued under this subsection the reasons for granting the waiver." (49 U.S.C. § 60118(c)(3).)

"Waivers by State authorities.--If a certification under section 60105 of this title or an agreement under section 60106 of this title is in effect, the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c) of this section. However, the authority must give the Secretary written notice of the waiver at least 60 days before its effective date. If the Secretary makes a written objection before the effective date of the waiver, the waiver is stayed. After notifying the authority of the objection, the Secretary shall provide a prompt opportunity for a hearing. The Secretary shall make the final decision on granting the waiver." (49 U.S.C. § 60118(d).)

Petitioners argue that, because "the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c)" and because the Secretary may act on a waiver only after notice and an opportunity for a hearing and by stating reasons, petitioners may set aside the State Waivers until the OSFM complies with section 60118.

OSFM and Sable argue that petitioners may not seek such remedies under federal law for violation of these non-discretionary procedural requirements, citing *City and County of San Francisco v. U.S. Dept. of Transp.* (9th Cir. 2015) 796 F.3d 993 (*San Francisco*). In *San Francisco*, the litigation was initiated following an explosion of a natural gas transmission pipeline. (*Id.* at p. 995.) Fearing a recurrence, the City and County of San Francisco sued under the FPSA's citizen suit provision alleging that the PHMSA failed to comply with the FPSA. (*Ibid.*) The city sought declaratory and injunctive relief to compel the FPSA to comply with its duties under the FPSA. (*Id.* at pp. 997-998.) The District Court dismissed the suit with leave to amend, finding that the citizen suit provision (49 U.S.C. § 60121) was " 'not an appropriate vehicle for seeking mandamus relief regarding defendants' performance of their regulatory obligations.' " (*Id.* at p. 998.) The city amended its complaint to include claims under the Administrative Procedures Act, arguing that the PHMSA approval of the state agency's certification was arbitrary and capricious, and a failure to act, in violation of title 5, United States Code section 706. (*Ibid.*) The District Court dismissed these claims as well. (*Ibid.*)

On appeal in *San Francisco*, the Ninth Circuit affirmed. (*San Francisco*, *supra*, 796 F.3d at p. 1004.) "The Pipeline Safety Act, by its plain language, allows only a very limited private right of action. It permits injunctive citizen suits against the United States or other entities 'for a violation of this chapter or a regulation prescribed or order issued under this chapter.' [Citation.] In other words, private citizen suits are authorized for substantive statutory or regulatory violations. By its terms, the provision does not authorize a mandamus-type action to compel the Agency to perform non-discretionary regulatory duties." (*Id*. at pp. 998–999.)

The OSFM also argues that the notice and hearing requirements of section 60121 appear in the FPSA as procedural protections for the benefit of the applicant seeking the waiver and not for the more general purpose of public participation. This latter point is consistent with the corresponding regulations: "Hearing means an informal conference or a proceeding for oral presentation. Unless otherwise specifically prescribed in this part, the use of 'hearing' is not intended to require a hearing on the record in accordance with section 554 of title 5, U.S.C." (49 C.F.R. § 190.3 (2025).)

Considering these regulations and the reasoning of *San Francisco*, there is a reasonable basis to find that federal law does not require a hearing with generalized public participation and hence to find no violation of the procedural aspects of the FPSA. Despite this lack of requirement, petitioners, nonetheless, actually submitted evidence to the OSFM. (CDB Petition, ¶¶ 68-74; EDC Petition, ¶ 116.) A reasonable inference is that the petitioners have had an opportunity to present evidence to OSFM regardless of whether there is a public participation requirement.

The court finds that petitioners have not shown a likelihood of success on the merits as to claims based on federal law, but again petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

(iii)    State Claims

Corresponding to their FPSA claims, petitioners also assert violations of the CPSA.

"It is the intent of the Legislature, in enacting this chapter, that the State Fire Marshal shall exercise exclusive safety regulatory and enforcement authority over intrastate hazardous liquid pipelines and, to the extent authorized by agreement between the State Fire Marshal and the United States Secretary of Transportation, may act as agent for the United States Secretary of Transportation to implement the federal Hazardous Liquid Pipeline Safety Act of 1979 (49 U.S.C. Sec. 60101 et seq.) and federal pipeline safety regulations as to those portions of interstate pipelines located within this state, as necessary to obtain annual federal certification." (Gov. Code, § 51010.)

"The State Fire Marshal shall adopt hazardous liquid pipeline safety regulations in compliance with the federal law relating to hazardous liquid pipeline safety, including, but not limited to, compliance orders, penalties, and inspection and maintenance provisions, and including amendments to those laws and regulations that may be hereafter enacted and adopted." (Gov. Code, § 51011, subd. (a).)

"The State Fire Marshal may exempt the application of regulations adopted pursuant to this section to any pipeline, or portion thereof, when it is determined that the risk to public safety is slight and the probability of injury or damage remote." (Gov. Code, § 51011, subd. (b).)

"Notification of exemptions shall be written, and shall include a discussion of those factors that the State Fire Marshal considers significant to the granting of the exemption." (Gov. Code, § 51011, subd. (c).)

"Title 49 of the Code of Federal Regulations, Part 195 is hereby adopted by reference as it relates to hazardous liquid pipelines." (Cal. Code Regs., tit. 19, § 2000.)

While federal procedural law may not separately provide for mandate remedies, California procedural law generally provides for writs of mandate to command California officials to comply with the law. (See Code Civ. Proc., §§ 1085, 1094.5.)

Reviewing the State Waivers, the court concludes that the State Waivers do not contain a discussion of factors that the OSFM considered significant in granting the exemption beyond conclusions.

"Administrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein. [Citation.] However, findings by implication cannot be substituted for specific findings when they are required by law." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.)

Case 2:26-cv-05242-SVW-SSC   Document 32   Filed 05/14/26   Page 198 of 485   Page ID #:15956

Given the specific findings required by section 51011, subdivision (b), it appears that the statutorily-required discussion of subdivision (c) must in some appropriate way at least connect the factors stated (and their significance) to the findings that the risk to public safety is slight and the probability of injury or damage remote. The court finds that petitioners have established a reasonable probability of success on the merits on this claim.

### (B)     Greater Harms

Petitioners argue that they, and the portion of the public they represent, would suffer the greater harm by the erroneous denial of a preliminary injunction. In particular, petitioners argue that the potential harm to natural resources and the failure to consider impacts of the project or to allow public input outweigh any delay for Sable. Sable argues that such harm is purely speculative and that it, and the general public, would suffer economic harms delaying or preventing the domestic oil production from Sable's use of the pipelines by the erroneous issuance of a preliminary injunction. The OSFM argues that erroneous issuance of an injunction against public officers in performing their duties is a form of irreparable injury.

As discussed below, because the petitions focus on deficiencies in the State Waivers as issued by OSFM and because additional approvals are required before the pipelines subject to the State Waivers may be restarted, the court finds that no party has made a strong showing that it would suffer greater harm by the erroneous grant or denial of the preliminary injunction.

### (C)     Balance of Equities

In arguing that CEQA is inapplicable, Sable and OSFM make the point that the State Waivers constitute but one approval of several necessary to restart the Las Flores Pipelines. This argument is carried forward into their analysis of the relative harms: "Petitioners' alleged harm from restart of the Pipelines [citations] is purely speculative due to the additional approval Sable must obtain before the Pipelines are operational. [Citation.] As Petitioners acknowledge, and as required by the Consent Decree, OSFM must approve a Restart Plan before Sable can restart the Pipelines. [Citations.] When reviewing Sable's Restart Plan, OSFM will necessarily consider the safety of operations and integrity of the pipelines to minimize potential safety risks." (Sable Opposition, at p. 19.)

Case 2:26-cv-05242-SVW-SSC Document 32 Filed 05/14/26 Page 199 of 485 Page ID #:15957

The principal harms argued both by petitioners and by Sable are based upon what would or would not happen when the Las Flores Pipelines are restarted. The evidence presented by all parties, however, shows that the restart of the Las Flores Pipelines is dependent upon approvals that have not yet been given. The respective potential harms are thus premature in this analysis. As the OSFM argues, there are potential harms in premature and potentially unnecessary judicial interference with the activities of regulators.

As the evidence and arguments of the petitioners most strongly demonstrate, the principal harm to be avoided is the restart of the Las Flores Pipelines without compliance with all applicable law. Because such a restart requires additional approvals, this harm may be avoided in the present by having adequate notice that a restart has been approved and so providing petitioners with a reasonable opportunity to address compliance issues of such a restart based upon such future approvals. By the same token, Sable would not be materially harmed by being restrained from restarting the Las Flores Pipelines without first providing such adequate notice. The OSFM would not be restrained or constrained in the interim to address all such matters within its regulatory purview.

Accordingly, the court will narrowly grant the motions for preliminary injunctions to enjoin the restart of the Las Flores Pipelines, as herein defined, until 10 court days following Sable's filing and service of notice that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree. Such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025 (the date of the court's grant of the TRO in these matters). The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing and the date of service.

Under these terms of the preliminary injunction, absent further order of the court, Sable may restart the Las Flores Pipelines 10 court days following the giving of notice of receiving all necessary approvals and permits. Sable is not prevented by this injunction from taking steps towards restarting the Las Flores Pipelines short of actual restart. The OSFM is not impeded by the injunction from taking steps it finds appropriate in its regulatory capacity, including any steps OSFM may find desirable following this order. The conditions of the injunction do not allow restart without prior notice. This notice requirement and intervening waiting period provides reasonable time and opportunity for the petitioners and for the OSFM to take any requisite procedural step they may find appropriate before restart is to occur. The ruling is without prejudice to petitioners to seek additional, further, or other relief from the court, if any is warranted, before such restart. The court would be in a position to assess the evidence and arguments of the parties as they then exist, including, presumably, the fact and effects of actions taken as a result of obtaining the remaining necessary approvals and permits.

(D) Bond

"On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (Code Civ. Proc., § 529, subd. (a).)

In view of the nature of the injunction issued, the potential damages caused by a wrongful injunction are minimal. The court fixes the amount of the undertaking required by section 529 at $1,000.00, to be filed by CBD and EDU, respectively in each case, on or before July 25, 2025.

(2) Motions re Richard B. Kuprewicz

In addition to the applications for issuance of preliminary injunctions, the parties have filed motions related to petitioners' expert witness Richard B. Kuprewicz: (1) motion of Sable (case No. 25CV02244) to compel the deposition of Kuprewicz; (2) the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions; (3) motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz; and (4) the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions. There are also motions now set for hearing in October in each case to quash Sable's deposition subpoena and notice of deposition, and to stay the deposition of Kuprewicz.

As discussed briefly above, the court has considered, but does not rely upon, the substance of the declaration of Kuprewicz to reach its conclusions in this ruling. The motions to strike the declaration will be denied. The motions to compel the deposition of Kuprewicz are denied as moot. To the extent these ruling moot the pending motions to quash, the court expects the parties to advise the court of that fact.

Based upon the court's ruling on the merits of the applications for preliminary injunction, it is not necessary at this time to determine what role, if any, the testimony of Kuprewicz may have in further proceedings. The court expects that petitioners will fully consider the issues raised by Sable in these motions in any further filings with the court.

## JUDGES

### JUDGE DONNA GECK

Dept. 4 SB-Anacapa

1100 Anacapa Street P.O. Box 21107

Santa Barbara, CA 93121-1107

US

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/25/2025 4:20 PM
By: Narzralli Baksh , Deputy

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100 / Fax: (510) 844-7150

*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SANTA BARBARA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,<br><br>   Petitioners/Plaintiffs,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive,<br><br>   Respondents/Defendants.<br><br>SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,<br><br>   Real Parties in Interest. | Case No.: 25CV02244<br><br>**PROOF OF SERVICE**<br><br>Action Filed: April 15, 2025<br>Trial: None Set |

1

PROOF OF SERVICE

I, Talia Nimmer, state:

I am over the age of 18 and not a party to the foregoing action. My business address is Center for Biological Diversity, 2100 Franklin St., Ste. 375, Oakland CA 94612. On July 25, 2025, I served a true and correct copy of:

1. **NOTICE OF POSTING BOND; and**
2. **NOTICE OF LODGING [PROPOSED] ORDER RE: PRELIMINARY INJUNCTION AND UNDERTAKING**

[X] BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy to the email addresses shown below pursuant to California Rule of Court Section 2.251(c)(3) and Local Rule 1012.

Michael S. Dorsi
Myung Park
Matthew Bullock
California Attorney General's Office
55 Golden Gate Ave, Ste 11000
San Francisco, CA 94102
Michael.Dorsi@doj.ca.gov
Myung.Park@doj.ca.gov
Matthew.Bullock@doj.ca.gov
*Attorney for Respondents/Defendants*

Jeffrey Dintzer
Matthew C. Wickersham
Garrett Stanton
ALSTON & BIRD
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Jeffrey.dintzer@alston.com
Matt.wickersham@alston.com
Garrett.stanton@alston.com
*Attorneys for Real Parties in Interest*

DJ Moore
Benjamin Hanelin
Natalie Rogers
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com
*Attorneys for Real Parties in Interest*

2

PROOF OF SERVICE

Trevor D. Large
Victoria C. Diffenderfer
FAUVER LARGE ARCHBALD & SPRAY
820 State Street, 4th Floor
Santa Barbara, CA 93101
tlarge@flasllp.com
vdiffenderfer@flasllp.com
*Attorneys for Real Parties in Interest*

I declare under penalty of perjury under the law of California that the foregoing is true and correct. Executed on July 25, 2025, in Los Angeles, California.

_____
Talia Nimmer

3

PROOF OF SERVICE

Pursuant to CRC 2.259 this document has been electronically filed by the Superior Court of California, County of Santa Barbara 7/25/2025

**F I L E D**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**07/29/2025**
Darrel E. Parker, Executive Officer
BY___Chavez, Terri_____
Deputy Clerk

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100 / Fax: (510) 844-7150

*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

CENTER FOR BIOLOGICAL DIVERSITY and
WISHTOYO FOUNDATION,

          Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF
FORESTRY AND FIRE PROTECTION;
OFFICE OF THE STATE FIRE MARSHAL;
DANIEL BERLANT, in his official capacity as
State Fire Marshal; and DOES 1 through 10,
inclusive,

          Respondents/Defendants.

_____

SABLE OFFSHORE CORP., a Delaware
Corporation, PACIFIC PIPELINE
COMPANY, a Delaware Corporation, and
DOES 11 through 20, inclusive,

          Real Parties in Interest.

Case No.: 25CV02244

[~~PROPOSED~~] ORDER RE: PRELIMINARY
INJUNCTION AND UNDERTAKING

Hearing: July 18, 2025
Time:    10:00 a.m.
Dept.:    4
Judge:   Hon. Donna D. Geck

Action Filed: April 15, 2025
Trial: None Set

---

1

[Proposed] Order Re: Preliminary Injunction and Undertaking

**TO RESPONDENTS AND REAL PARTIES IN INTEREST IN THE ABOVE-CAPTIONED ACTION:**

The application of Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") for a preliminary injunction was heard on July 18, 2025, at 10:00 A.M. in Department 4 of the above-captioned Court. Appearing as attorneys were Talia Nimmer for Petitioners; Michael Dorsi for Respondents California Department of Fire and Forestry and State Fire Marshal Daniel Berlant (collectively, "Respondents"); and Jeffrey Dintzer, Garret Stanton, and Trevor Large for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable").

At the hearing, the Court adopted its tentative ruling to grant, in part, Petitioners' application. The order of the Court is set forth in its tentative — and now final — ruling, attached hereto as **Exhibit A.**

**IT IS SO ORDERED.**

DATED: _____, 2025

07/29/2025

JUDGE OF THE SUPERIOR COURT
**Donna D. Geck**

# **<u>EXHIBIT A</u>**



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

NOTICE: Effective September 1, 2025, the cost of e-filing will increase from $6.45 to $10.00 per envelope. For more information click here.

Notice: The court is aware of fraudulent messages and scams being sent to the public. For more information please click here.

# Center for Biological Diversity et al vs California Dept of Forestry and Fire Protection et al

## Case Number

25CV02244

## Case Type

Civil Law & Motion

## Hearing Date / Time

Fri, 07/18/2025 - 10:00

## Nature of Proceedings

CMC; OSC Preliminary Injunction; Motion to Compel; Motion to Strike

## Tentative Ruling

(1)    The applications of petitioners in case numbers 25CV02244 and 25CV02247 for issuance of preliminary injunctions are, respectively, granted in part. The applications are granted to enjoin, pending the disposition of these proceedings or further order of the court, the restart of the Las Flores Pipelines, as herein defined, until 10 court days following the filing and service of notice by or on behalf of real parties in interest Sable Offshore Corp., and Pacific Pipeline Company (collectively, Sable) that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree identified herein. To be effective to commence the 10-court-day period, such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025. The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing or the date of service. The temporary restraining order remains in place until a written order of the court is entered on this preliminary injunction.

(2)    On or before July 25, 2025, petitioners in each case shall lodge with the court an order for signature and filing.

(3)    The court fixes the undertaking required by Code of Civil Procedure section 529 in the amount of $1,000.00, to be filed in each case by the respective petitioners. Petitioners shall file such undertaking on or before July 25, 2025.

(4)    For the reasons set forth herein, the motion of Sable (case No. 25CV02244) to compel the deposition of Richard B. Kuprewicz, the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions, the motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz, and the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions are all denied.

(1)    OSC re Preliminary Injunction

These are two related cases involving the same underlying incidents and activity. Pursuant to the parties' stipulation, the responding parties and real parties in interest have filed the same brief addressing both cases in each of these cases and the respective petitioners have filed reply papers in each of their respective cases. The court therefore will address the orders to show cause re issuance of preliminary injunctions (OSCs) together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

## Background:

The parties have submitted voluminous evidence in support of, and in opposition to, these OSCs. The court has reviewed all of the papers presented by the parties, and has relied only upon admissible evidence in making this ruling. The discussion herein is not intended to be exhaustive, but to provide context for the court's analysis and ruling.

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (Rusch decl., ¶ 33 & exhibit N [the Federal Consent Decree].)

The Federal Consent Decree includes the following provisions:

"1.     State Waivers for Lines 901, 903, and 2000 (not to include any replacement lines):

"A.     Prior to restarting Line 901, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 901. Plains must receive a State Waiver from the OSFM prior to restarting Line 901.

"B.     Prior to restarting non-operational segments of Line 903, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic

protection on Line 903. Plains must receive a State Waiver from the OSFM prior

to restarting Line 903.

"C.     Within 90 days of entry of the Consent Decree (CD), Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903. The State Waiver shall apply to the currently operational segment of Line 903 from Pentland to Emidio.

"D.     Within 90 days of entry of the CD, Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 2000.

"E.     To the extent that a State Waiver directly incorporates terms identified in section 4 (Integrity Management) below, as being applicable to Lines 901, 903, or 2000, Plains shall not contest the inclusion of those terms in the relevant State Waiver. Plains reserves its rights to contest on any grounds any additional terms that the OSFM may require as part of each State Waiver if one is received. Nothing in this CD shall be construed to limit the authority of the OSFM to require additional terms or conditions in the State Waiver. Further, nothing in the State Waiver shall be construed to limit the applicability of the terms set forth in the CD.

"2.     Replacement, Restart, or Abandonment of Lines 901 and 903:

"A.     Plains shall replace the existing Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland with non-insulated pipe, if Plains is able to timely obtain: (1) agreements from shippers to transport sufficient quantities of product to make the cost of replacing the segments economically viable; (2) the Federal, State, and Local permits that may be required; and (3) whatever additional rights are needed, including rights-of-way that may be needed from landowners. Obtaining required commercial commitments, permits, rights-of-way, and any other rights necessary for replacement is the sole responsibility of

Plains.

"1.     On any replacement segments of Lines 901 or 903, Plains shall, prior to commencing operation of such segment(s):

"a.     Test for potential AC/DC interference. Where potential AC/DC interference exists, proper mitigation of interference shall be designed and installed during construction of replacement lines.

"b.     Conduct a close interval survey (CIS) and AC/DC interference survey.

"c.     Based on the CIS and AC/DC interference surveys, place additional cathodic-protection test stations at locations where the surveys demonstrate potential cathodic-protection deficiencies, following review and consultation with the OSFM regarding proposed test station locations.

"B.     As an alternative to replacement of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may restart the existing pipelines in accordance with the CD (including Appendix D) and applicable law.

"C.      As an alternative to replacement or restart of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may abandon all or any segments in accordance with all applicable laws and regulations." (Federal Consent Decree, appen. B, art. I, §§ 1, 2.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

In May 2024, Sable began conducting repair and maintenance activities to the Las Flores Pipelines. (Rusch decl., ¶ 5.) According to Sable, these activities were completed pursuant to previously granted coastal development permits, approvals, and EIR. (*Ibid*.)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id*. & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (Rusch decl., ¶ 7 & exhibits B, C.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (Rusch decl., ¶ 9 & exhibit E.)

On April 2, 2025, OSFM issued letters noting its receipt of PHMSA's decision stating that it has no objection to granting the State Waivers. (Rusch decl., ¶ 10 & exhibits F, G.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On June 3, 2025, the court heard petitioners' ex parte applications for an administrative stay, or for an OSC re preliminary injunction and temporary restraining order (TRO). The court granted the petitioners' requests for a TRO and set a hearing on the OSCs for this date.

The applications for issuance of a preliminary injunction are opposed by OSFM and by Sable.

**Analysis:**

Notwithstanding the issuance of the TRO, the burden is on petitioners, as the parties seeking injunctive relief, to show all elements necessary to support issuance of a preliminary injunction. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.) A preliminary injunction is available "[w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action." (Code Civ. Proc., § 526, subd. (a)(2).)

"The trial courts consider two interrelated questions in deciding whether to issue a preliminary injunction: 1) are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant; and 2) is there a reasonable probability that the plaintiffs will prevail on the merits. [Citations.] '[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.]" (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206.)

(A)     Likelihood of Success on the Merits

Petitioners raise multiple claims in their petitions that separately could support issuance of an injunction. It is therefore necessary to address these claims in turn.

(i)     CEQA

Petitioners each assert a claim under CEQA based upon OSFM's issuance of the State Waivers without preparing environmental documentation, without providing public notice, and without providing an opportunity for public comment. (CBD Petition, ¶¶ 128-129; EDC Petition, ¶ 224.)

"[CEQA] and the regulations implementing it (Cal. Code Regs., tit. 14, § 15000 et seq.) embody California's strong public policy of protecting the environment. 'The basic purposes of CEQA are to: [¶] (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved.' [Citation.]" (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285–286 (*Tomlinson*).)

"To achieve these goals, CEQA and the implementing regulations provide for a three-step process. In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency. (§ 21065.)" (*Tomlinson, supra*, 54 Cal.4th at p. 286.)

"The second step of the process is required if the proposed activity is a 'project.' The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption (§ 21080) or a categorical exemption set forth in the regulations (§ 21084, subd. (a); Cal. Code Regs., tit. 14, § 15300). A categorically exempt project is not subject to CEQA, and no further environmental review is required. [Citations.] If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' [Citations.] Otherwise, the agency must proceed to the third step, which entails preparation of an environmental impact report before approval of the project. (§§ 21100, subd. (a), 21151, subd. (a).)" (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

CBD asserts that restarting the Las Flores Pipelines by issuance of the State Waivers is a "project" under CEQA requiring environmental review. (CBD Application, at pp. 21-23.) OSFM and Sable argue that the issuance of the State Waivers is not a "project" or is otherwise not subject to CEQA.

" 'Project' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] … [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Pub. Resources Code, § 21065.)

"The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (Cal. Code Regs., tit. 14, § 15378, subd. (c).)

Under this definition, the issuance of the State Waivers does not appear to constitute a "project" separately subject to CEQA review. The State Waivers would at most constitute a separate governmental approval for the underlying activity, which is the restart of the Las Flores Pipelines. The court concludes that the issuance of the State Waivers does not itself cause a change or authorize a change in the environment. (See *Simons v. City of Los Angeles* (1976) 63 Cal.App.3d 455, 466.)

If the State Waivers were considered more broadly, i.e., as a proxy for the restart of the Las Flores Pipelines, the resolution under CEQA is not clear. OSFM and Sable argue that, in such instance, the categorical existing facilities exemption applies.

"Class 1 consists of the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of existing or former use. The types of 'existing facilities' itemized below are not intended to be all-inclusive of the types of projects which might fall within Class 1." (Cal. Code Regs., tit. 14, § 15301; see also Pub. Resources Code, § 21084; Cal. Code Regs., tit. 14, § 15300.)

"Examples include but are not limited to: [¶] … [¶] (d) Restoration or rehabilitation of deteriorated or damaged structures, facilities, or mechanical equipment to meet current standards of public health and safety, unless it is determined that the damage was substantial and resulted from an environmental hazard such as earthquake, landslide, or flood." (Cal. Code Regs., tit. 14, § 15301, subd. (d).)

An issue now before the California Supreme Court is whether "negligible" in this exemption pertains to a negligible change in use or to a change that presents a negligible risk of environmental harm. (*Sunflower Alliance v. Department of Conservation* (2024) 105 Cal.App.5th 771, review granted Dec. 18, 2024, S287414 (*Sunflower*).) Under broader circumstances, this issue may bear upon the application of the exemption. But as the issue is presented here, such analysis is premature because the State Waivers are not themselves directly or indirectly causing change to the environment.

EDC, in particular, focuses its argument on the need for updated environmental review:

"When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs:

"(a) Substantial changes are proposed in the project which will require major revisions of the environmental impact report.

"(b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report.

"(c) New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." (Pub. Resources Code, § 21166.)

"When an EIR has been certified or a negative declaration adopted for a project, no subsequent EIR shall be prepared for that project unless the lead agency determines, on the basis of substantial evidence in the light of the whole record, one or more of the following:

"(1)    Substantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects;

"(2)    Substantial changes occur with respect to the circumstances under which the project is undertaken which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects; or

"(3)    New information of substantial importance, which was not known and could not have been known with the exercise of reasonable diligence at the time the previous EIR was certified as complete or the negative declaration was adopted, shows any of the following:

"(A)    The project will have one or more significant effects not discussed in the previous EIR or negative declaration;

"(B)    Significant effects previously examined will be substantially more severe than shown in the previous EIR;

"(C)    Mitigation measures or alternatives previously found not to be feasible would in fact be feasible and would substantially reduce one or more significant effects of the project, but the project proponents decline to adopt the mitigation measure or alternative; or

"(D)    Mitigation measures or alternatives which are considerably different from those analyzed in the previous EIR would substantially reduce one or more significant effects on the environment, but the project proponents decline to adopt the mitigation measure or alternative."

(Cal. Code Regs., tit. 14, § 15162, subd. (a).)

7/22/25, 1:56 PM
Case 2:26-cv-05242-SVW-SSC    Document 32    Filed 05/14/26    Page 219 of 485    Page
25CV02244 | Superior Court of California, County of Santa Barbara
ID #:15977

EDC argues that a subsequent EIR is required because: (1) operating the pipeline system without an effective cathodic protection system throughout the entire length of the pipeline constitutes a change in the project that increases the risk and severity of impacts, requiring major revisions to the 1985 EIR; (2) the failure of the pipeline system's cathodic protection system and resulting corrosion constitutes a change in circumstances; (3) it was only after the 2015 oil spill that the pipeline system was discovered to lack effective cathodic protection, which constitutes new information showing that the risk of an oil spill is substantially more severe than previously determined.

The petitioners rely largely upon the declaration and reports of expert Richard Kuprewicz for evidence regarding pipeline safety. The testimony of Kuprewicz is the subject of other motions also pending before the court (discussed below) based in part upon Kuprewicz's present unavailability to be subject to a deposition. For purposes of these motions, the court will consider Kuprewicz's evidence with Kuprewicz's unavailability going to the weight of the evidence in the context of these applications for preliminary injunctions.

"After an initial EIR is certified, CEQA establishes a presumption against additional environmental review. An agency has jurisdiction to prepare a subsequent or supplemental EIR only if the agency grants a 'discretionary' approval on the project [citation, fn.], and certain statutorily enumerated new circumstances occur." (*San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 928.)

The 1985 EIR addressed the potential for an oil spill from pipeline operation. (Dorsi decl., exhibit 5.) There is a dispute among the parties as to whether the 2015 spill and the failure of effective cathodic protection demonstrate new information requiring more or different analysis than present the 1985 EIR. However, this analysis, like the discussion above, is an analysis of a "project," and in particular the restart of pipeline operations as compared with the State Waivers at issue here.

The court concludes that, in the present administrative posture, petitioners are not likely to succeed on the merits of showing a violation of CEQA. Nonetheless, the court finds that petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

        (ii)    Federal Claims

In addition to violations of CEQA, petitioners assert violations of the FPSA in failing to provide a public process and failing to provide a statement of reasons.

"General requirements.--A person owning or operating a pipeline facility shall--

"(1)    comply with applicable safety standards prescribed under this chapter, except as provided in this section or in section 60126;

"(2)    prepare and carry out a plan for inspection and maintenance required under section 60108(a) and (b) of this title;

"(3)    allow access to or copying of records, make reports and provide information, and allow entry or inspection required under subsections (a) through (e) of section 60117 of this title; and

"(4)    conduct a risk analysis, and adopt and implement an integrity management program, for pipeline facilities as required under section 60109(c)." (49 U.S.C. § 60118(a).)

"Waivers by Secretary.--

(1)    Nonemergency waivers.--

"(A)    In general.--On application of an owner or operator of a pipeline facility, the Secretary by order may waive compliance with any part of an applicable standard prescribed under this chapter with respect to such facility on terms the Secretary considers appropriate if the Secretary determines that the waiver is not inconsistent with pipeline safety.

"(B) Hearing.--The Secretary may act on a waiver under this paragraph only after notice and an opportunity for a hearing."

(49 U.S.C. § 60118(c)(1).)

"Statement of reasons.--The Secretary shall state in an order issued under this subsection the reasons for granting the waiver." (49 U.S.C. § 60118(c)(3).)

7/22/25, 1:50 PM

Case 2:26-cv-05242-SVW-SSC   25CV02244 | Superior Court of California | County of Santa Barbara   Filed 05/14/26   Page 221 of 485   Page ID #:15979

"Waivers by State authorities.--If a certification under section 60105 of this title or an agreement under section 60106 of this title is in effect, the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c) of this section. However, the authority must give the Secretary written notice of the waiver at least 60 days before its effective date. If the Secretary makes a written objection before the effective date of the waiver, the waiver is stayed. After notifying the authority of the objection, the Secretary shall provide a prompt opportunity for a hearing. The Secretary shall make the final decision on granting the waiver." (49 U.S.C. § 60118(d).)

Petitioners argue that, because "the State authority may waive compliance with a safety standard to which the certification or agreement applies in the same way and to the same extent the Secretary may waive compliance under subsection (c)" and because the Secretary may act on a waiver only after notice and an opportunity for a hearing and by stating reasons, petitioners may set aside the State Waivers until the OSFM complies with section 60118.

OSFM and Sable argue that petitioners may not seek such remedies under federal law for violation of these non-discretionary procedural requirements, citing *City and County of San Francisco v. U.S. Dept. of Transp.* (9th Cir. 2015) 796 F.3d 993 (*San Francisco*). In *San Francisco*, the litigation was initiated following an explosion of a natural gas transmission pipeline. (*Id.* at p. 995.) Fearing a recurrence, the City and County of San Francisco sued under the FPSA's citizen suit provision alleging that the PHMSA failed to comply with the FPSA. (*Ibid.*) The city sought declaratory and injunctive relief to compel the FPSA to comply with its duties under the FPSA. (*Id.* at pp. 997-998.) The District Court dismissed the suit with leave to amend, finding that the citizen suit provision (49 U.S.C. § 60121) was " 'not an appropriate vehicle for seeking mandamus relief regarding defendants' performance of their regulatory obligations.' " (*Id.* at p. 998.) The city amended its complaint to include claims under the Administrative Procedures Act, arguing that the PHMSA approval of the state agency's certification was arbitrary and capricious, and a failure to act, in violation of title 5, United States Code section 706. (*Ibid.*) The District Court dismissed these claims as well. (*Ibid.*)

On appeal in *San Francisco*, the Ninth Circuit affirmed. (*San Francisco*, *supra*, 796 F.3d at p. 1004.) "The Pipeline Safety Act, by its plain language, allows only a very limited private right of action. It permits injunctive citizen suits against the United States or other entities 'for a violation of this chapter or a regulation prescribed or order issued under this chapter.' [Citation.] In other words, private citizen suits are authorized for substantive statutory or regulatory violations. By its terms, the provision does not authorize a mandamus-type action to compel the Agency to perform non-discretionary regulatory duties." (*Id*. at pp. 998–999.)

The OSFM also argues that the notice and hearing requirements of section 60121 appear in the FPSA as procedural protections for the benefit of the applicant seeking the waiver and not for the more general purpose of public participation. This latter point is consistent with the corresponding regulations: "Hearing means an informal conference or a proceeding for oral presentation. Unless otherwise specifically prescribed in this part, the use of 'hearing' is not intended to require a hearing on the record in accordance with section 554 of title 5, U.S.C." (49 C.F.R. § 190.3 (2025).)

Considering these regulations and the reasoning of *San Francisco*, there is a reasonable basis to find that federal law does not require a hearing with generalized public participation and hence to find no violation of the procedural aspects of the FPSA. Despite this lack of requirement, petitioners, nonetheless, actually submitted evidence to the OSFM. (CDB Petition, ¶¶ 68-74; EDC Petition, ¶ 116.) A reasonable inference is that the petitioners have had an opportunity to present evidence to OSFM regardless of whether there is a public participation requirement.

The court finds that petitioners have not shown a likelihood of success on the merits as to claims based on federal law, but again petitioners have shown some likelihood of success on the merits which may be weighed against the relative harms and equities to support issuance of a preliminary injunction.

(iii)    State Claims

Corresponding to their FPSA claims, petitioners also assert violations of the CPSA.

"It is the intent of the Legislature, in enacting this chapter, that the State Fire Marshal shall exercise exclusive safety regulatory and enforcement authority over intrastate hazardous liquid pipelines and, to the extent authorized by agreement between the State Fire Marshal and the United States Secretary of Transportation, may act as agent for the United States Secretary of Transportation to implement the federal Hazardous Liquid Pipeline Safety Act of 1979 (49 U.S.C. Sec. 60101 et seq.) and federal pipeline safety regulations as to those portions of interstate pipelines located within this state, as necessary to obtain annual federal certification." (Gov. Code, § 51010.)

"The State Fire Marshal shall adopt hazardous liquid pipeline safety regulations in compliance with the federal law relating to hazardous liquid pipeline safety, including, but not limited to, compliance orders, penalties, and inspection and maintenance provisions, and including amendments to those laws and regulations that may be hereafter enacted and adopted." (Gov. Code, § 51011, subd. (a).)

"The State Fire Marshal may exempt the application of regulations adopted pursuant to this section to any pipeline, or portion thereof, when it is determined that the risk to public safety is slight and the probability of injury or damage remote." (Gov. Code, § 51011, subd. (b).)

"Notification of exemptions shall be written, and shall include a discussion of those factors that the State Fire Marshal considers significant to the granting of the exemption." (Gov. Code, § 51011, subd. (c).)

"Title 49 of the Code of Federal Regulations, Part 195 is hereby adopted by reference as it relates to hazardous liquid pipelines." (Cal. Code Regs., tit. 19, § 2000.)

While federal procedural law may not separately provide for mandate remedies, California procedural law generally provides for writs of mandate to command California officials to comply with the law. (See Code Civ. Proc., §§ 1085, 1094.5.)

Reviewing the State Waivers, the court concludes that the State Waivers do not contain a discussion of factors that the OSFM considered significant in granting the exemption beyond conclusions.

"Administrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein. [Citation.] However, findings by implication cannot be substituted for specific findings when they are required by law." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.)

Given the specific findings required by section 51011, subdivision (b), it appears that the statutorily-required discussion of subdivision (c) must in some appropriate way at least connect the factors stated (and their significance) to the findings that the risk to public safety is slight and the probability of injury or damage remote. The court finds that petitioners have established a reasonable probability of success on the merits on this claim.

### (B)    Greater Harms

Petitioners argue that they, and the portion of the public they represent, would suffer the greater harm by the erroneous denial of a preliminary injunction. In particular, petitioners argue that the potential harm to natural resources and the failure to consider impacts of the project or to allow public input outweigh any delay for Sable. Sable argues that such harm is purely speculative and that it, and the general public, would suffer economic harms delaying or preventing the domestic oil production from Sable's use of the pipelines by the erroneous issuance of a preliminary injunction. The OSFM argues that erroneous issuance of an injunction against public officers in performing their duties is a form of irreparable injury.

As discussed below, because the petitions focus on deficiencies in the State Waivers as issued by OSFM and because additional approvals are required before the pipelines subject to the State Waivers may be restarted, the court finds that no party has made a strong showing that it would suffer greater harm by the erroneous grant or denial of the preliminary injunction.

### (C)    Balance of Equities

In arguing that CEQA is inapplicable, Sable and OSFM make the point that the State Waivers constitute but one approval of several necessary to restart the Las Flores Pipelines. This argument is carried forward into their analysis of the relative harms: "Petitioners' alleged harm from restart of the Pipelines [citations] is purely speculative due to the additional approval Sable must obtain before the Pipelines are operational. [Citation.] As Petitioners acknowledge, and as required by the Consent Decree, OSFM must approve a Restart Plan before Sable can restart the Pipelines. [Citations.] When reviewing Sable's Restart Plan, OSFM will necessarily consider the safety of operations and integrity of the pipelines to minimize potential safety risks." (Sable Opposition, at p. 19.)

The principal harms argued both by petitioners and by Sable are based upon what would or would not happen when the Las Flores Pipelines are restarted. The evidence presented by all parties, however, shows that the restart of the Las Flores Pipelines is dependent upon approvals that have not yet been given. The respective potential harms are thus premature in this analysis. As the OSFM argues, there are potential harms in premature and potentially unnecessary judicial interference with the activities of regulators.

As the evidence and arguments of the petitioners most strongly demonstrate, the principal harm to be avoided is the restart of the Las Flores Pipelines without compliance with all applicable law. Because such a restart requires additional approvals, this harm may be avoided in the present by having adequate notice that a restart has been approved and so providing petitioners with a reasonable opportunity to address compliance issues of such a restart based upon such future approvals. By the same token, Sable would not be materially harmed by being restrained from restarting the Las Flores Pipelines without first providing such adequate notice. The OSFM would not be restrained or constrained in the interim to address all such matters within its regulatory purview.

Accordingly, the court will narrowly grant the motions for preliminary injunctions to enjoin the restart of the Las Flores Pipelines, as herein defined, until 10 court days following Sable's filing and service of notice that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart. "Restart" shall have the same meaning as in the Federal Consent Decree. Such notice shall be signed by an officer of Sable under penalty of perjury under the laws of the State of California and shall identify each such approval or permit, the agency giving such approval or permit, and the date such approval or permit was given by the agency; the notice need not identify or provide information for any approval or permit given or received prior to June 3, 2025 (the date of the court's grant of the TRO in these matters). The 10-court-day time period shall be extended based upon the manner of service of the notice as provided in Code of Civil Procedure sections 1013 and 1010.6, and shall be calculated from the later of the date of filing and the date of service.

Under these terms of the preliminary injunction, absent further order of the court, Sable may restart the Las Flores Pipelines 10 court days following the giving of notice of receiving all necessary approvals and permits. Sable is not prevented by this injunction from taking steps towards restarting the Las Flores Pipelines short of actual restart. The OSFM is not impeded by the injunction from taking steps it finds appropriate in its regulatory capacity, including any steps OSFM may find desirable following this order. The conditions of the injunction do not allow restart without prior notice. This notice requirement and intervening waiting period provides reasonable time and opportunity for the petitioners and for the OSFM to take any requisite procedural step they may find appropriate before restart is to occur. The ruling is without prejudice to petitioners to seek additional, further, or other relief from the court, if any is warranted, before such restart. The court would be in a position to assess the evidence and arguments of the parties as they then exist, including, presumably, the fact and effects of actions taken as a result of obtaining the remaining necessary approvals and permits.

(D)    Bond

"On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (Code Civ. Proc., § 529, subd. (a).)

In view of the nature of the injunction issued, the potential damages caused by a wrongful injunction are minimal. The court fixes the amount of the undertaking required by section 529 at $1,000.00, to be filed by CBD and EDU, respectively in each case, on or before July 25, 2025.

(2)    Motions re Richard B. Kuprewicz

In addition to the applications for issuance of preliminary injunctions, the parties have filed motions related to petitioners' expert witness Richard B. Kuprewicz: (1) motion of Sable (case No. 25CV02244) to compel the deposition of Kuprewicz; (2) the motion of Sable (case No. 25CV02244) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions; (3) motion of Sable (case No. 25CV02247) to compel the deposition of Kuprewicz; and (4) the motion of Sable (case No. 25CV02247) to strike the declaration of Kuprewicz filed in support of petitioners' applications for preliminary injunctions. There are also motions now set for hearing in October in each case to quash Sable's deposition subpoena and notice of deposition, and to stay the deposition of Kuprewicz.

As discussed briefly above, the court has considered, but does not rely upon, the substance of the declaration of Kuprewicz to reach its conclusions in this ruling. The motions to strike the declaration will be denied. The motions to compel the deposition of Kuprewicz are denied as moot. To the extent these ruling moot the pending motions to quash, the court expects the parties to advise the court of that fact.

Based upon the court's ruling on the merits of the applications for preliminary injunction, it is not necessary at this time to determine what role, if any, the testimony of Kuprewicz may have in further proceedings. The court expects that petitioners will fully consider the issues raised by Sable in these motions in any further filings with the court.

## JUDGES

### JUDGE DONNA GECK

Dept. 4 SB-Anacapa

1100 Anacapa Street P.O. Box 21107

Santa Barbara, CA 93121-1107

US

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 139056 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Jeffrey D. Dintzer | | **ELECTRONICALLY FILED** |

ATTORNEY OR PARTY WITHOUT ATTORNEY STATE BAR NUMBER: 139056

NAME: Jeffrey D. Dintzer
FIRM NAME: Alston & Bird LLP
STREET ADDRESS: 350 South Grand Avenue, 51st Floor
CITY: Los Angeles    STATE: CA    ZIP CODE: 90071-1410
TELEPHONE NO.: (213) 576-1000    FAX NO.: (213) 576-1100
EMAIL ADDRESS: jeffrey.dintzer@alston.com
ATTORNEY FOR (name): Sable Offshore Corp., Pacific Pipeline Company

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/31/2025 3:03 PM
By: Narzralli Baksh , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
STREET ADDRESS: 1100 Anacapa St.
MAILING ADDRESS: 1100 Anacapa St.
CITY AND ZIP CODE: Santa Barbara, 93101
BRANCH NAME: Anacapa Division

PLAINTIFF/PETITIONER: Center for Biological Diversity et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| **CASE MANAGEMENT STATEMENT**<br>(Check one):  [X] **UNLIMITED CASE**<br>(Amount demanded<br>exceeds $35,000)   [ ] **LIMITED CASE**<br>(Amount demanded is $35,000<br>or less) | CASE NUMBER:<br>25CV02244 |
|---|---|

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: August 1, 2025    Time: 8:30 a.m.    Dept.: 4    Div.:    Room:

Address of court (if different from the address above):

[ ] **Notice of Intent to Appear by Telephone, by (name):**

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [X] This statement is submitted by party (name): Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.
   b. [ ] This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date): April 15, 2025
   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served (specify names and explain why not):

      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ] have had a default entered against them (specify names):

   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in  [X] complaint  [ ] cross-complaint    (Describe, including causes of action):
      Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

Page 1 of 5

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

CM-110

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
See Attachment 4b.

☒  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a. ☐ The trial has been set for *(date):*

b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a. ☒ days *(specify number):* 1

b. ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:                                    f.  Fax number:

e.  Email address:                                       g.  Party represented:

☒ Additional representation is described in Attachment 8.

9.  **Preference**

☒ This case is entitled to preference *(specify code section):* Public Resources Code section 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

| CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | **Page 2 of 5** |

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

10. c.   In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date)*: <br> ☐ Agreed to complete mediation by *(date)*: <br> ☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date)*: <br> ☐ Agreed to complete settlement conference by *(date)*: <br> ☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date)*: <br> ☐ Agreed to complete neutral evaluation by *(date)*: <br> ☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date)*: <br> ☐ Agreed to complete judicial arbitration by *(date)*: <br> ☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date)*: <br> ☐ Agreed to complete private arbitration by *(date)*: <br> ☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date)*: <br> ☐ Agreed to complete ADR session by *(date)*: <br> ☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy    ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Environmental Defense Center et al. v. Cal. Dept. of Forestry & Fire Protection et al.

(2) Name of court: Santa Barbara Superior Court

(3) Case number: 25CV02247

(4) Status: Pending

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
The Court has ordered Real Parties to provide 10 days notice of the approval of the "Restart Plan" as referenced in the Consent Decree. Based on meet and confer with Petitioners, Real Parties anticipate Petitioners will seek a temporary restraining order preventing the restart of the Pipelines. A proposed briefing schedule is included in Attachment 15.

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
The Parties are awaiting preparation and certification of the administrative record by Respondent, Office of State Fire Marshall.

**CM-110**

| PLAINTIFF/PETITIONER:  Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02244 |

17. **Economic litigation**

    a.  [ ]  This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b.  [ ]  This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

    [ ]  The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**

    a.  [x]  The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b.  [ ]  After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 3_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: July 31, 2025

Jeffrey D. Dintzer
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

    [ ]  Additional signatures are attached.

CM-110 [Rev. January 1, 2024]       **CASE MANAGEMENT STATEMENT**       **Page 5 of 5**

**Attachment 4b**

4.b. Provide a brief statement of the case, including any damages:

Plaintiffs and Petitioners Center for Biological Diversity and Wishtoyo Foundation and Environmental Defense Center, et al. ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

By way of their petitions, Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees.

1

**Attachment 8**

Real Parties in Interest will be represented by the following attorneys:

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:      (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:      (310) 620-5899

**FAUVER LARGE ARCHBALD & SPRAY**
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flasllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone:     (805) 966-7000
Facsimile:      (805) 966-7227

2

**Attachment 15**

As proposed by the Office of State Fire Marshal regarding the Court's 10-day notice period, Real Parties are in agreement with the following briefing schedule for an anticipated request for temporary restraining order that may be brought by the Petitioners upon issuance of notice of the approval of the "Restart Plan":

| Briefs & Hearing | Proposed Deadline During 10-Day Notice Period |
|---|---|
| Petitioners' Opening Joint Brief for A Temporary Restraining Order | 5th Court Day |
| Real Parties' and Respondents' Opposition Briefs | 8th Court Day |
| Hearing on Temporary Restraining Order | 10th Court Day |

3

**PROOF OF SERVICE**

1.      I, Kim Niz, declare:

2.      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On July 31, 2025, I served the document **CASE MANAGEMENT STATEMENT** on the interested parties in this action addressed as follows:  **See Attached Service List**

☒      BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 31, 2025, at Los Angeles, California.

_____
/s/ *Kim Niz*
         Kim Niz

1
PROOF OF SERVICE

# SERVICE LIST

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA 94612

**ATTORNEYS FOR PETITIONERS**
CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
        tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
        jfrankel@environmentaldefensecenter.org
        trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/ DEFENDANTS**
California Department of Forestry and Fire Protection, Office of the State Fire Marshal; Daniel Berlant, in his official capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
        benjaminhanelin@paulhastings.com
        natalierogers@paulhastings.com

Trevor D. Large, Esq.
**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
820 State Street, 4th Floor
Santa Barbara, CA 93101

**ATTORNEYS FOR REAL PARTIES IN INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 966-7000
Email: TLarge@FLASllp.com

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA BARBARA

Dated and Entered:   08/01/2025                           Time:   8:30 AM
Judicial Officer:        Donna D Geck
Deputy Clerk:          Maria Vidal                             Dept:   SB Dept 4
Deputy Sheriff:         Marco Diaz
Bailiff/Court Officer:                                         Case No: 25CV02244
Court Reporter:        Elizabeth Mooy

---

### Center for Biological Diversity  et al vs California Department of Forestry and Fire Protection  et al

Parties Present:

| | |
|---|---|
| David Pettit | Petitioner's Attorney |
| Michael Dorsi | Respondent's Attorney |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Garrett Stanton | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |
| Linda Krop | Attorney for Non-Party |
| Jeremy Frankel | Attorney for Non-Party |

---

### NATURE OF PROCEEDINGS:  Case Management Conference


The Court took the Motion to Quash scheduled for 10/24/25 off calendar.

The Case Management Conference was continued as follows:

September 19, 2025 10:00 AM
Case Management Conference
Geck, Donna D
SB Dept 4


DARREL E. PARKER, EXECUTIVE OFFICER              Minutes Prepared by:

_____
                                Maria Vidal                              , Deputy

---

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
8/27/2025 6:54 PM
By: Narzralli Baksh , Deputy

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100 / Fax: (510) 844-7150

*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,<br><br>   Petitioners and Plaintiffs,<br><br>   v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive,<br><br>   Respondents and Defendants.<br><br>SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,<br><br>   Real Parties in Interest. | Case No.: 25CV02244<br><br><br>**PETITIONERS' AND PLAINTIFFS' NOTICE OF MOTION AND MOTION TO BIFURCATE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with [Proposed] Order]*<br><br><br>Date:     September 19, 2025<br>Time:     10:00 a.m.<br>Dept.:     4<br>Judge:    Honorable Donna D. Geck<br><br>Action Filed: April 15, 2025<br>Trial: None Set |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 19, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Department 4 of the California Superior Court for the County of Santa Barbara, Anacapa Division, located at 1100 Anacapa Street, Santa Barbara, CA 93101, Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") will and hereby do move this Court for an order bifurcating the procedural and substantive claims of this action and thereby phasing the case so that the straightforward procedural claims precede (and potentially obviate the need to litigate) the technical, substantive claims.

Pursuant to California Code of Civil Procedure sections 598 and 1048(b), the Court has discretion to bifurcate its consideration of issues for a range of reasons, including to promote the economic and efficient handling of litigation. Here, bifurcating Petitioners' procedural claims from their substantive claims will promote judicial economy and efficient case management, prevent the wasteful expenditure of time and resources by the parties, and further the express legislative policy of prioritizing California Environmental Quality Act claims.

Petitioners' request is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other and further evidence as the Court may consider at the hearing on this Motion.

Dated: August 27, 2025                           Respectfully Submitted,

*/s/ Julie Teel Simmonds*
Julie Teel Simmonds
David Pettit
Talia Nimmer
CENTER FOR BIOLOGICAL DIVERSITY

*Counsel for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

Petitioners' and Plaintiffs' Notice of Motion and Motion to Bifurcate

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation's ("Petitioners") action includes both procedural and substantive challenges to the Office of the State Fire Marshal's ("OSFM") issuance of pipeline safety regulation waivers ("State Waivers" or "Waivers") that enable Sable Offshore Corp. and Pacific Pipeline Company ("Sable") to restart the transport of oil from the Santa Ynez Unit through the Las Flores Pipeline System (the "Project"). It is the perfect candidate for bifurcation. The Petition and Complaint include two distinct types of claims: (1) straightforward procedural claims that OSFM failed to adhere to the legal processes required by the California Environmental Quality Act ("CEQA") and pipeline safety laws, and (2) more technical and fact intensive substantive claims that OSFM failed to establish, as required, that the Waivers are consistent with pipeline and public safety. Should Petitioners prevail on one or more of its procedural claims, the Court need not reach Petitioners' substantive claims.

Bifurcation of the procedural and substantive claims makes logical sense for case management, simplifies the issues, and promotes the goals of judicial economy and efficiency by streamlining the litigation and opening the door for potential early resolution by potentially obviating the need to litigate the substantive claims. Moreover, bifurcation of the procedural and substantive claims furthers the express legislative policy that courts prioritize CEQA claims (which here are procedural). Accordingly, Petitioners respectfully request that the Court bifurcate the procedural and substantive claims of this action and phase the trial so that the procedural claims precede the substantive claims.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Sable's Efforts to Restart the Defective Las Flores Pipeline System

This case arises from Sable's efforts to restart the Santa Ynez Unit oil and gas activities using the Las Flores Pipeline System—a defective pipeline system that ruptured in 2015 at Refugio State Beach, causing one of the worst oil disasters in California history. As was discovered after the spill, the pipeline system suffers from a critical design defect that leaves it vulnerable to pervasive corrosion and, consequently, another catastrophic rupture. Importantly, the pipeline system does not just threaten coastal resources; it passes through major sources of water supply; renowned parks and ecological

Petitioners' and Plaintiffs' Notice of Motion and Motion to Bifurcate

reserves; and a populated suburban neighborhood in Buellton, California, complete with schools, parks, and dozens of residential homes.

Rather than replacing the pipeline system or retrofitting it with an effective means of corrosion prevention, Sable intends to simply restart the existing pipeline system under State Waivers issued by OSFM. The State Waivers, which excuse Sable from complying with critical corrosion prevention and remediation requirements, were approved without a public process, environmental review, or any analysis as to why the pipeline system can safely be restarted.

**B.    Petitioners' Procedural and Substantive Claims**

The Petition and Complaint challenging the restart Project contain three causes of action, which include five distinct procedural claims and two substantive claims. Petitioners' procedural claims are:

(1) OSFM violated sections 60118(c)(1)(B), (d) of the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101, *et seq.* (the "FPSA"), by failing to provide public notice and a hearing (First Cause of Action, Petition at ¶¶ 115, 117);

(2) OSFM violated sections 60118(c)(3), (d) of the FPSA by failing to provide an order containing the reasons for granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 118);

(3) OSFM violated sections 60118(d) of the FPSA by failing to conduct environmental review before granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 119);

(4) OSFM violated section 51011(c) of California's Elder Pipeline Safety Act, Gov. Code section 51010, *et seq.* (the "CPSA"), by failing to include a discussion of those factors that OSFM considered significant to the granting of the Waivers (Second Cause of Action, Petition at ¶¶ 123-124); and

(5) OSFM violated CEQA, Pub. Resources Code § 2100, *et seq.*, by failing to prepare an environmental document for the Project and include the public in the decisionmaking process (Third Cause of Action).

These procedural claims are straightforward in that they require Petitioners merely to establish that OSFM failed to comply with these procedural mandates, and the only relevant facts are whether OSFM did or did not do so.

Petitioners' substantive claims are that:

Petitioners' and Plaintiffs' Notice of Motion and Motion to Bifurcate

(1) OSFM violated sections 60118(c)(1)(A), (d) of the FPSA by failing to demonstrate that the Waivers are "not inconsistent with pipeline safety" (First Cause of Action, Petition at ¶¶ 115, 116); and

(2) OSFM violated section 51011(b) of the CPSA by failing to demonstrate that in issuing the State Waivers, the "risk to public safety is slight and the probability of injury or damage remote" (Second Cause of Action, Petition at ¶ 122.)

These substantive claims are fact and time-intensive and require the Court to delve into whether OSFM adequately demonstrated that the State Waivers protect public and pipeline safety. Thus, Petitioners bring this motion to bifurcate the procedural and substantive claims.

## III.    LEGAL STANDARD

Courts have broad discretion to bifurcate claims. (*See, e.g., Regents of Univ. of Cal. v. Sheily* (2004) 122 Cal.App.4th 824, 833.) Pursuant to Code of Civil Procedure section 1048(b), courts may bifurcate issues or claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Under section 598 of the Code of Civil Procedure, a party may move the court to order trial of any issue before trial of any other issue "when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted." Additionally, "[t]he statutory provisions for severance and separate trials (Code Civ. Proc., §§ 598 1048) are not limited to the separate trial of a 'cause of action' but also authorize a separate trial of any 'issue'." (*Am. Motorists Ins. Co. v. Superior Court* (1998) 68 Cal.App.4th 864, 872.)

## IV.    ARGUMENT

### A.    Bifurcation Furthers the Interests of Judicial Economy and Efficient Case Management and Avoids Wasted Resources

Bifurcation is appropriate in this case. One "objective" of bifurcation under Code of Civil Procedure section 598 "is avoidance of the waste of time and money caused by the unnecessary trial" of issues. (*Trickey v. Superior Court* (1967) 252 Cal.App.2d 650, 653.) Should Petitioners prevail on any of their procedural claims, it would obviate the need to litigate the substantive claims in this case, thereby conserving judicial resources and preventing the waste of time and resources. OSFM would be required to withdraw and reconsider the Project and Waivers in a procedurally compliant manner,

Petitioners' and Plaintiffs' Notice of Motion and Motion to Bifurcate

thereby eliminating the need to litigate the substantive claims. (*See Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 [if the court's determination of issues it chooses to hear first are dispositive of the remaining issues, nothing further remains to be tried]; *see also Regents of Univ. of Cal.,* supra, 122 Cal.App.4th at 833 [finding a "paradigm example of the propriety of bifurcation," where a second "issue to be decided by the court" is "dependent upon the first"].)

Separately, even if the resolution of the procedural claims did not obviate the need to litigate the substantive claims, bifurcation of proceedings into phases allows the Court "to expedite and simplify the presentation of evidence," (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 888), and is a tool often used by courts to streamline litigation (*see Buran Equip. Co. v. H & C Inv. Co.* (1983) 142 Cal.App.3d 338, 343). Bifurcation here would allow the Court to address the straightforward question as to whether OSFM even properly adhered to the CEQA and pipeline safety laws' procedural requirements before delving into the merits of the technical, substantive claims. Additionally, the Court's resolution of the procedural claims may inform how it evaluates and decides the substantive claims. (*See Save Our Capitol! v. Department of General Services* (2023) 87 Cal.App.5th 655, 703 [the court reviews whether an agency complied with its procedural mandates before assessing the substantive decisions it made].)

### B.    Bifurcation Achieves Prompt Determination of Petitioners' CEQA Claim

Beyond judicial economy and case management efficiency, there is another reason why bifurcation is advisable here: to further the express legislative policy that CEQA claims be promptly brought, briefed, and resolved pursuant to Public Resources Code section 21167.1. "Obviously, the rationale of the statutory scheme is to avoid delay and achieve prompt resolution of CEQA claims." (*Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1134, fn. 13.)

Although CEQA claims can be both procedural and substantive, OSFM's failure to conduct any CEQA review whatsoever for the Project amounts to a clear procedural violation. (*See Santa Clarita Organization etc. v. County of Los Angeles* (2024) 105 Cal.App.5th 1143, 1150 [lack of adequate notice and failure to analyze and disclose a project's environmental impact amount to procedural violations of CEQA].) Thus, hearing Petitioners' procedural CEQA claim prior to and separate from the time- and

fact-intensive substantive claims will expedite resolution of the CEQA claims, consistent with legislative intent.

## V.    CONCLUSION

For the above reasons, Petitioners respectfully request that this Court bifurcate the procedural and substantive claims of this action and phase the trial so that the procedural claims precede the substantive claims.

Dated: August 27, 2025                    Respectfully submitted,

                                          */s/ Julie Teel Simmonds*
                                          Julie Teel Simmonds
                                          David Pettit
                                          Talia Nimmer
                                          CENTER FOR BIOLOGICAL DIVERSITY

                                          *Counsel for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

Petitioners' and Plaintiffs' Notice of Motion and Motion to Bifurcate

**PROOF OF SERVICE**

I, Talia Nimmer, state:

I am over the age of 18 and not a party to the foregoing action. My business address is Center for Biological Diversity, 2100 Franklin St., Ste. 375, Oakland CA 94612. On August 27, 2025, I served a true and correct copy of:

1. **PETITIONERS' AND PLAINTIFFS' NOTICE OF MOTION AND MOTION TO BIFURCATE; and**
2. **[PROPOSED] ORDER RE: PETITIONERS' AND PLAINTIFFS' MOTION TO BIFURCATE**

[X] BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy to the email addresses shown below pursuant to California Rule of Court Section 2.251(c)(3) and Local Rule 1012.

Michael S. Dorsi
California Attorney General's Office
55 Golden Gate Ave, Ste 11000
San Francisco, CA 94102
Michael.Dorsi@doj.ca.gov
*Attorney for Respondents/Defendants*

Jeffrey Dintzer
Matthew C. Wickersham
Garrett Stanton
ALSTON & BIRD
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Jeffrey.dintzer@alston.com
Matt.wickersham@alston.com
Garrett.stanton@alston.com
*Attorneys for Real Parties in Interest*

DJ Moore
Benjamin Hanelin
Natalie Rogers
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com
*Attorneys for Real Parties in Interest*

Trevor D. Large
Victoria C. Diffenderfer
FAUVER LARGE ARCHBALD & SPRAY

Petitioners' and Plaintiffs' Notice of Motion and Motion to Bifurcate

820 State Street, 4th Floor
Santa Barbara, CA 93101
tlarge@flasllp.com
vdiffenderfer@flasllp.com
*Attorneys for Real Parties in Interest*

I declare under penalty of perjury under the law of California that the foregoing is true and correct. Executed on August 27, 2025, in Los Angeles, California.

_____

Talia Nimmer

Petitioners' and Plaintiffs' Notice of Motion and Motion to Bifurcate

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | |
|---|---|---|
| NAME: Talia Nimmer | STATE BAR NUMBER: 331002 | |

FIRM NAME: CENTER FOR BIOLOGICAL DIVERSITY

STREET ADDRESS: 2100 Franklin St., Ste. 375

CITY: Oakland    STATE: CA    ZIP CODE: 94612

TELEPHONE NO.: (510) 844-7100    FAX NO.:

EMAIL ADDRESS: tnimmer@biologicaldiversity.org

ATTORNEY FOR (name): Petitioners and Plaintiffs

**ELECTRONICALLY FILED** FOR COURT USE ONLY
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/4/2025 4:00 PM
By: Narzralli Baksh , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara**

STREET ADDRESS: 1100 Anacapa St.

MAILING ADDRESS: Same

CITY AND ZIP CODE: Santa Barbara 93101

BRANCH NAME: Anacapa Division

PLAINTIFF/PETITIONER: Center for Biological Diversity et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):* [x] **UNLIMITED CASE** (Amount demanded exceeds $35,000)    [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 25CV02244 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: September 19, 2025    Time: 10:00 a.m.    Dept.: 4    Div.:    Room:

Address of court *(if different from the address above):*

[ ] **Notice of Intent to Appear by Telephone, by** *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*

   a. [x] This statement is submitted by party *(name):* Center for Biological Diversity and Wishtoyo Foundation

   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*

   a. The complaint was filed on *(date):* April 15, 2025

   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*

   a. [x] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [ ] The following parties named in the complaint or cross-complaint

      (1) [ ] have not been served *(specify names and explain why not):*

      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ] have had a default entered against them *(specify names):*

   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**

   a. Type of case in [x] complaint   [ ] cross-complaint   *(Describe, including causes of action):*

   Petitioners challenge the Office of the State Fire Marshal's issuance of State Waivers from pipeline safety regulations to Sable Offshore Corp. enabling the restart of the Las Flores Pipeline System for CEQA and Pipeline Safety requirement violations.

**Page 1 of 5**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity, et al. | CASE NUMBER: 25CV02244 |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

    See Attachment 4b

☒ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

    The party or parties request ☐ a jury trial ☒ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

    a. ☐ The trial has been set for *(date):*

    b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

    c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

    The party or parties estimate that the trial will take *(check one)*

    a. ☒ days *(specify number):* 1-2

    b. ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

    The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

    a. Attorney:

    b. Firm:

    c. Address:

    d. Telephone number:          f. Fax number:

    e. Email address:             g. Party represented:

    ☐ Additional representation is described in Attachment 8.

9.  **Preference**

    ☒ This case is entitled to preference *(specify code section):* PRC § 21167.1(a)

10. **Alternative dispute resolution (ADR)**

    a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

        (1)  For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

        (2)  For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

    b.  **Referral to judicial arbitration or civil action mediation** (if available).

        (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

        (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

        (3) ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
            Cal. Rules of Court, rule 3.811(b)(1)

CM-110 [Rev. January 1, 2024]        **CASE MANAGEMENT STATEMENT**        **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity, et al. | CASE NUMBER: 25CV02244 |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*:  June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: Center for Biological Diversity, et al. | CASE NUMBER: 25CV02244 |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Envrionmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.

(2) Name of court: Santa Barbara Superior Court

(3) Case number: 25CV02247

(4) Status: Pending

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

Petitioners have filed a motion to bifurcate the procedural pipeline safety and CEQA claims from the substantive pipeline safety claims, which is set to be heard on September 19, 2025.

**15. Other motions**

☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

Petitioners intend to file an amended petition should the Office of the State Fire Marshal approve Sable Offshore Corp.'s restart plans.

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

Petitioners believe that discovery is not appropriate as the matter is a record case.

---

CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: Center for Biological Diversity, et al. | CASE NUMBER: 25CV02244 |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | |

17. **Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

   ☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

   Petitioners request that the October 24, 2025 Motion to Quash hearing be taken off calendar as the matter is moot.

19. **Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   On August 22, 2025, Petitioners sent the Parties a meet and confer email regarding Petitioners' Motion to Bifurcate. Additionally, the Parties have been discussing entering into a stipulation to consolidate this case with Case No. 25cv02247.

   b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* ___1_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:  Septmeber 4, 2025

Talia Nimmer
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

| CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | **Page 5 of 5** |
|---|---|---|

**Attachment 4b**

### I.      Brief Statement of the Case

Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation (Petitioners) filed this case on April 15, 2025 challenging the California Department of Forestry and Fire Protection, Office of the State Fire Marshall's (OSFM) issuance of State Waivers from pipeline safety regulations (State Waivers) that enable Real Parties to restart the Las Flores Pipeline System and its connected oil and gas production and transport infrastructure ten years after a catastrophic oil spill from the pipeline system shut down operations. OSFM approved the State Waivers without any environmental review of the restart project, public notice, hearing, opportunity for public comment, or required findings in violation of the California Environmental Quality Act (CEQA). Further, OSFM's State Waivers violate procedural California and federal pipeline safety laws in that they were issued absent notice and an opportunity for a hearing, absent environmental review, absent a discussion of significant factors, and absent a statement of reasons for granting the State Waivers. Finally, OSFM's State Waivers violate substantive California and federal pipeline safety laws because OSFM failed to establish that the risk to public safety is slight and the probability of injury or damage remote and that the State Waivers are not inconsistent with pipeline safety, as required by the governing laws.

### II.      Other Issues

On April 23, 2025, OSFM denied Petitioners' request to prepare the administrative record. Counsel for OSFM has told Petitioners that an index of the draft record will be shared with Petitioners shortly.

On August 26, 2025, Petitioners filed a Motion to Bifurcate the trial into two phases - the first for the procedural pipeline safety law and CEQA claims and the second for the substantive pipeline safety law claims. Although Petitioners sent a meet and confer email to the Parties on August 22, 2025 requesting confirmation as to whether the Parties intend to oppose the motion, Petitioners have not heard back from the Parties to date. The Motion is scheduled to be heard on September 19, 2025. Additionally, the Parties have been discussing entering into a stipulation to consolidate this case with Case No. 25CV02247.

Finally, Petitioners request that the October 24, 2025 Motion to Quash Subpoena of Richard B. Kuprewicz be taken off calendar as the matter is now moot.

I, Talia Nimmer, state:

I am over the age of 18 and not a party to the foregoing action. My business address is Center for Biological Diversity, 2100 Franklin St., Ste. 375, Oakland CA 94612. On September 4, 2025, I served a true and correct copy of:

**PETITIONERS' CASE MANAGEMENT STATEMENT**

[X] BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy to the email addresses shown below pursuant to California Rule of Court Section 2.251(c)(3) and Local Rule 1012.

Michael S. Dorsi
Matthew Bullock
Myung Park
California Attorney General's Office
55 Golden Gate Ave, Ste 11000
San Francisco, CA 94102
Michael.Dorsi@doj.ca.gov
Matthew.bullock@doj.ca.gov
Myung.park@doj.ca.gov
*Attorney for Respondents/Defendants*

Jeffrey Dintzer
Matthew C. Wickersham
Garrett Stanton
ALSTON & BIRD
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Jeffrey.dintzer@alston.com
Matt.wickersham@alston.com
Garrett.stanton@alston.com
*Attorneys for Real Parties in Interest*

DJ Moore
Benjamin Hanelin
Natalie Rogers
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com
*Attorneys for Real Parties in Interest*

1

Proof of Service re: Petitioners' Case Management Statement

Trevor D. Large
Victoria C. Diffenderfer
FAUVER LARGE ARCHBALD & SPRAY
820 State Street, 4th Floor
Santa Barbara, CA 93101
tlarge@flasllp.com
vdiffenderfer@flasllp.com
*Attorneys for Real Parties in Interest*

I declare under penalty of perjury under the law of California that the foregoing is true and correct. Executed on September 4, 2025, in Los Angeles, California.

_____
Talia Nimmer

2

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | *FOR COURT USE ONLY* |
|---|---|---|

NAME: Trevor D. Large (SBN 214886) | Victoria C. Diffenderfer (SBN 350018)
FIRM NAME: Fauver, Large, Archbald & Spray LLP
STREET ADDRESS: 820 State Street, 4th Floor
CITY: Santa Barbara        STATE: CA     ZIP CODE: 93101
TELEPHONE NO.: (805) 966-7000     FAX NO.: (805) 966-7227
EMAIL ADDRESS: tlarge@flasllp.com
ATTORNEY FOR *(name)*: Sable Offshore Corp., Pacific Pipeline Company

**ELECTRONICALLY FILED**
Superior Court of California
County of Santa Barbara
Darre̅E. Parker, Executive Officer
9/8/2025 12:13 PM
By: Terri Chavez , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SANTA BARBARA**
STREET ADDRESS: 1100 Anapaca St.
MAILING ADDRESS: 1100 Anapaca St.
CITY AND ZIP CODE: Santa Barbara, 93101
BRANCH NAME: Anapaca Division

PLAINTIFF/PETITIONER: Center for Biological Diversity et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*   [X] **UNLIMITED CASE**          [ ] **LIMITED CASE** | 25CV02244 |
| (Amount demanded exceeds $35,000)        (Amount demanded is $35,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: September 19, 2025        Time: 10:00 a.m.     Dept.: 4        Div.: Anacapa        Room:

Address of court *(if different from the address above)*:

[ ]   **Notice of Intent to Appear by Telephone,  by** *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*

   a. [X]   This statement is submitted by party *(name):* Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.

   b. [ ]   This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*

   a. The complaint was filed on *(date):*  April 15, 2025

   b. [ ]   The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*

   a. [X]   All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [ ]   The following parties named in the complaint or cross-complaint

      (1) [ ]   have not been served *(specify names and explain why not):*

      (2) [ ]   have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ]   have had a default entered against them *(specify names):*

   c. [ ]   The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**

   a. Type of case in   [X] complaint     [ ] cross-complaint      *(Describe, including causes of action):*
   Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

Page 1 of 5

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
See Attachment 4b.

☒ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  ☐ The trial has been set for *(date):*

b.  ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  ☒ days *(specify number):* 1

b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:            f.  Fax number:

e.  Email address:            g.  Party represented:

☒ Additional representation is described in Attachment 8.

9.  **Preference**

☒ This case is entitled to preference *(specify code section):* Public Resources Code section 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110 [Rev. January 1, 2024]    **CASE MANAGEMENT STATEMENT**    **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al.<br>DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | CASE NUMBER:<br>25CV02244 |
|---|---|

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy  ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

   (1) Name of case: Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al

   (2) Name of court: Santa Barbara Superior Court

   (3) Case number: 25CV02444

   (4) Status: Pending

   ☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
Petitioner's have filed a motion to bifurcate the CEQA claims from certain substantive pipeline claims, Real Parties are not agreeable to such bifurcation and continue to oppose this motion which is set to be heard concurrent to the September 19, 2025 Case Management Conference.

**15. Other motions**

☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
On July 8, 2025, Real Parties filed and served a Notice of Demurrer and Demurrer to Verified Petition for Writ of Mandate and Complain for Declaratory and Injunctive Relief, this matter is set to be heard concurrent to the September 19, 2025 Case Management Conference.

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

Page 4 of 5

**CM-110**

| PLAINTIFF/PETITIONER:    Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:    California Department of Forestry and Fire Protection et al. | 25CV02244 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
On June 12, 2025, the parties met and conferred about Real Parties' anticipated demurrer, the status of the administrative record, case consolidation, and CEQA settlement.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 2_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: September 4, 2025

| Trevor D. Large | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

| | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

**Attachment 4b**

4.b. Provide a brief statement of the case, including any damages:

Plaintiffs and Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees. Responding Parties oppose and deny the claims by Plaintiffs.

1

**Attachment 8**

Real Parties in Interest will be represented by the following attorneys:

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:    (213) 576-1000
Facsimile:    (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
Telephone:    (310) 620-5879
Facsimile:    (310) 620-5899

**FAUVER LARGE ARCHBALD & SPRAY**
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flasllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone:    (805) 966-7000
Facsimile:    (805) 966-7227

FAUVER · LARGE · ARCHBALD · SPRAY

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen, and not a party to the within action. My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101. On September 8, 2025, I served the within document:

**SABLE'S CASE MANAGEMENT STATEMENT**

By Mail: By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery: By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery: I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

X   By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on September 8, 2025, at Santa Barbara, California.

_____
Rachel N. Miles

**1**
**PROOF OF SERVICE**

**SERVICE LIST**

| | |
|---|---|
| Jeffrey D. Dintzer<br>Lisa L. Garcia<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 576-1000; Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Lisa.Garcia@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Julie Teel Simmonds, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>Center for Biological Diversity<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612<br>Tel.: (510) 844-7100<br>Fax: (510) 844-7150<br>Email:<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org | *Attorneys for Petitioners: Center for Biological Diversity and Wishtoyo Foundation* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Telephone: (310) 620-5879; Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Rengifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-1622; (510) 844-7100; Fax: (805) 962-3152; (510) 844-7150<br>Email:<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |

| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |
|---|---|

FAUVER · LARGE · ARCHBALD · SPRAY

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Trevor D. Large (SBN 214886) | Victoria C. Diffenderfer (SBN 350018)

FIRM NAME: Fauver, Large, Archbald & Spray LLP

STREET ADDRESS: 820 State Street, 4th Floor

CITY: Santa Barbara    STATE: CA    ZIP CODE: 93101

TELEPHONE NO.: (805) 966-7000    FAX NO.: (805) 966-7227

EMAIL ADDRESS: tlarge@flasllp.com

ATTORNEY FOR (name): Sable Offshore Corp., Pacific Pipeline Company

*FOR COURT USE ONLY*
**ELECTRONICALLY FILED**
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/8/2025 2:22 PM
By: Narzralli Baksh , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**

STREET ADDRESS: 1100 Anapaca St.

MAILING ADDRESS: 1100 Anapaca St.

CITY AND ZIP CODE: Santa Barbara, 93101

BRANCH NAME: Anapaca Division

PLAINTIFF/PETITIONER: Center for Biological Diversity et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| CORRECTED **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  [X] **UNLIMITED CASE**  (Amount demanded exceeds $35,000)    [ ] **LIMITED CASE**  (Amount demanded is $35,000 or less) | 25CV02244 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: September 19, 2025    Time: 10:00 a.m.    Dept.: 4    Div.: Anacapa    Room:

Address of court *(if different from the address above):*

[ ] **Notice of Intent to Appear by Telephone, by** *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*

   a. [X] This statement is submitted by party *(name):* Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.

   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*

   a. The complaint was filed on *(date):* April 15, 2025

   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*

   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [ ] The following parties named in the complaint or cross-complaint

      (1) [ ] have not been served *(specify names and explain why not):*

      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ] have had a default entered against them *(specify names):*

   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**

   a. Type of case in [X] complaint   [ ] cross-complaint   *(Describe, including causes of action):*
   Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

Page 1 of 5

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | CORRECTED   **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

**CM-110**

| PLAINTIFF/PETITIONER:  Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02244 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief)*:
See Attachment 4b.

[ **x** ]  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request  [   ]  a jury trial  [ **x** ]  a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  [   ]  The trial has been set for  *(date):*

b.  [ **x** ]  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  [ **x** ]  days *(specify number):* 1

b.  [   ]  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial  [ **x** ]  by the attorney or party listed in the caption  [   ]  by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:                                   f.  Fax number:

e.  Email address:                                        g.  Party represented:

[ **x** ]  Additional representation is described in Attachment 8.

9.  **Preference**

[ **x** ]  This case is entitled to preference *(specify code section):* Public Resources Code section 21167.1(a)

10.  **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel  [ **x** ]  has  [   ]  has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party  [   ]  has  [   ]  has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1)  [   ]  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)  [   ]  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)  [   ]  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER:  Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02244 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes    ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy    ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1)  Name of case: Center for Biological Diversity et al. v. California Department of Forestry and Fire Protection et al

(2)  Name of court: Santa Barbara Superior Court

(3)  Case number:  25CV02444

(4)  Status: Pending

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
Petitioner's have filed a motion to bifurcate the CEQA claims from certain substantive pipeline claims, Real Parties are not agreeable to such bifurcation and continue to oppose this motion which is set to be heard concurrent to the September 19, 2025 Case Management Conference.

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CM-110**

| PLAINTIFF/PETITIONER:  Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02244 |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 2

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: September 8, 2025

Trevor D. Large
_____
(TYPE OR PRINT NAME)                          ►_____
                                                    (SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)                          ►_____
                                                    (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CM-110 [Rev. January 1, 2024]    CORRECTED    **CASE MANAGEMENT STATEMENT**    **Page 5 of 5**

**Attachment 4b**

4.b. Provide a brief statement of the case, including any damages:


Plaintiffs and Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees. Responding Parties oppose and deny the claims by Plaintiffs.

1

**Attachment 8**

Real Parties in Interest will be represented by the following attorneys:


**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:    (213) 576-1000
Facsimile:    (213) 576-1100


**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
Telephone:    (310) 620-5879
Facsimile:    (310) 620-5899


**FAUVER LARGE ARCHBALD & SPRAY**
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flasllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone:    (805) 966-7000
Facsimile:    (805) 966-7227

2

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen, and not a party to the within action. My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101. On September 8, 2025, I served the within document:

**SABLE'S CASE MANAGEMENT STATEMENT**

By Mail: By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery: By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery: I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

X By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on September 8, 2025, at Santa Barbara, California.

_____
Rachel N. Miles

**1**
**PROOF OF SERVICE**

**SERVICE LIST**

| | |
|---|---|
| Jeffrey D. Dintzer<br>Lisa L. Garcia<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 576-1000; Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Lisa.Garcia@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Julie Teel Simmonds, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>Center for Biological Diversity<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612<br>Tel.: (510) 844-7100<br>Fax: (510) 844-7150<br>Email:<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org | *Attorneys for Petitioners: Center for Biological Diversity and Wishtoyo Foundation* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Telephone: (310) 620-5879; Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Rengifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-1622; (510) 844-7100; Fax: (805) 962-3152; (510) 844-7150<br>Email:<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |

FAUVER · LARGE · ARCHBALD · SPRAY

| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |
| --- | --- |

FAUVER · LARGE · ARCHBALD · SPRAY

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/8/2025 1:53 PM
By: Terri Chavez , Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA BARBARA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.<br><br>　　　　Petitioners and Plaintiffs,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et. al<br><br>　　　　Respondents and Defendants.<br><br>　　　　and<br><br>SABLE OFFSHORE CORP., et al.<br><br>　　　　Real Parties in Interest. | Case No. 25CV02244<br><br>Assigned for all purposes to Hon. Donna D. Geck<br><br>**SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S NOTICE OF WITHDRAWAL OF DEMURRER TO PETITIONERS' COMPLAINT**<br><br>Date:  September 19, 2025<br>Time: 10:00 a.m.<br>Dept.: 4<br><br>Complaint Filed:     April 15, 2025<br>Trial Date:     None set |

- 1 -
REAL PARTIES' NOTICE OF WITHDRAWAL OF DEMURRER TO PETITIONERS' COMPLAINT
LEGAL02/46599252v1

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, the "Real Parties") hereby withdraw their Demurrer to Petitioners' Complaint, which is set to be heard on September 19, 2025, at 10:00 a.m.

Dated:  September 8, 2025

Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
TREVOR LARGE

By:   _____
                    Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE
COMPANY

- 2 -

**PROOF OF SERVICE**

1. I, Kim Niz, declare:

2. I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On September 8, 2025, I served the document **SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S NOTICE OF WITHDRAWAL OF DEMURRER TO PETITIONERS' COMPLAINT** on the interested parties in this action addressed as follows: **See Attached Service List**

**I.**     ☒     BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 8, 2025, at Los Angeles, California.

_____
/s/ *Kim Niz*
Kim Niz

- 3 -
REAL PARTIES' NOTICE OF WITHDRAWAL OF DEMURRER TO PETITIONERS' COMPLAINT
LEGAL02/46599252v1

**SERVICE LIST**

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA 94612

**ATTORNEYS FOR PETITIONERS**
CENTER FOR BIOLOGICAL DIVERSITY and
WISHTOYO FOUNDATION

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
        tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a
California non-profit corporation; GET OIL
OUT!, a California non-profit corporation;
SANTA BARBARA COUNTY ACTION
NETWORK, a California non-profit corporation;
SIERRA CLUB, a national non-profit
corporation; and SANTA BARBARA
CHANNELKEEPER, a California non-profit
corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
        jfrankel@environmentaldefensecenter.org
        trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/
DEFENDANTS**
California Department of Forestry and Fire
Protection, Office of the State Fire Marshal;
Daniel Berlant, in his official capacity as State
Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN
INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
        benjaminhanelin@paulhastings.com
        natalierogers@paulhastings.com

Trevor D. Large, Esq.
**FAUVER, LARGE, ARCHBALD &
SPRAY LLP**
820 State Street, 4th Floor
Santa Barbara, CA 93101

**ATTORNEYS FOR REAL PARTIES IN
INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 966-7000
Email: TLarge@FLASllp.com

- 4 -

REAL PARTIES' NOTICE OF WITHDRAWAL OF DEMURRER TO PETITIONERS' COMPLAINT

LEGAL02/46599252v1

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/8/2025 6:01 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:      (213) 576-1000
Facsimile:      (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:      (310) 620-5879
Facsimile:      (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.<br><br>Petitioners and Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et. al<br><br>Respondents and Defendants.<br><br>and<br><br>SABLE OFFSHORE CORP., et al.<br><br>Real Parties in Interest. | Case No. 25CV02244<br>[Coordinated with Case No. 25CV02247]<br><br>Assigned for all purposes to:<br>Hon. Donna D. Geck<br><br>**SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO PETITIONERS' MOTION TO BIFURCATE**<br><br>Date:        September 19, 2025<br>Time:        10:00 AM<br>Dept.:        4<br><br>Complaint Filed:      April 15, 2025<br>Trial Date:        None set |

- 1 -

OPPOSITION TO MOTION TO BIFURCATE

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 5

II.    FACTUAL AND LEGAL BACKGROUND ....................................................... 5

III.   CBD'S "PROCEDURAL CLAIMS" SHOULD NOT BE BIFURCATED FROM THEIR "SUBSTANTIVE CLAIMS"................................................................. 8
       A.   All Claims Should Be Tried Together As They Are Based on the Same Factual And Legal Issues. .......................................................................... 9
       B.   Bifurcation Between "Procedural" and "Substantive" Claims Will Waste Judicial Resources and Prejudice Sable. ...................................................... 9
       C.   CBD's CEQA Claim Requires Concurrent Adjudication With Their Remaining Claims.................................................................................... 10

IV.    CONCLUSION.................................................................................................. 11

OPPOSITION TO MOTION TO BIFURCATE

## TABLE OF AUTHORITIES

**Page(s)**

**STATE CASES**

*City of Morgan Hill v. Bay Area Air Quality Mgmt. Dist.*
(2004) 118 Cal.App.4th 861 ..............................................................................................11

*Pilliod v. Monsanto Company*
(2021) 67 Cal.App.5th 591 ................................................................................................10

**FEDERAL STATUTES**

49 C.F.R. pt. 195.................................................................................................................6

49 U.S.C. § 60105...............................................................................................................6

49 U.S.C. § 60118, subd. (c)(1)(a).....................................................................................6

49 USC § 60118, subd. (c), (d)........................................................................................6, 8

49 U.S.C. § 60101 et seq....................................................................................................6

**STATE STATUTES**

Cal. Code Regs., Title 19, § 2000 ......................................................................................6

CEQA Guidelines, § 15378, subd. (a) .........................................................................10, 11

Code Civ. Proc., § 1048, subd. (a)......................................................................................9

Code Civ. Proc., § 1048, subd. (b)......................................................................................9

Code of Civil Procedure § 598............................................................................................9

Gov. Code, § 51010 ............................................................................................................6

Government Code § 51011(c)..............................................................................................8

Public Resources Code § 21167.1 .....................................................................................10

**OTHER AUTHORITIES**

Draft Environmental Impact Report/ Environmental Impact Statement, available at
*https://cosantabarbara.app.box.com/s/gc3vhh8ns8aiwketnq35vwbehnhre672* .......................6

Final Environmental Impact Report/ Environmnetal Impact Statement, available at:
*https://cosantabarbara.app.box.com/s/lkl9oo9xdsaangevdp6pasfo0cmimvlt* ........................6

OPPOSITION TO MOTION TO BIFURCATE

Pathways for Restarting Pipelines, available at, *https://osfm.fire.ca.gov/what-we-do/pipeline-safety-and-cupa/pathways-for-restarting-pipelines*) ...................................................................8

Consent Decree entered in in the United States District Court, Central District of California (Civil Action No. 2:20-cv-02415), available at *https://www.epa.gov/sites/default/files/2020-03/documents/plainsallamericanpipelinelp.pdf* ...........................................................7

- 4 -

## I.    <u>INTRODUCTION</u>

The Court should deny the Motion to Bifurcate ("Motion") filed by Petitioners Center For Biological Diversity, et al. ("CBD").   CBD's lawsuit challenges the Office of State Fire Marshal's ("OSFM") December 17, 2024 approval of alternative safety requirements (the "State Waivers"). Now, CBD greatly oversimplifies the claims raised in their Complaint to seek an order bifurcating their "procedural claims" from their "substantive claims."  CBD asks the Court to not only bifurcate claims into phases, but *parts and aspects* of CBD's claims.  For instance, CBD asks this Court to separate its First and Second Causes of Action into multiple trials after hearing the "procedural" elements of CBD's entire petition in the first trial, which clearly does not promote judicial efficiencies or conserve judicial resources.  But as the Court is familiar based on its prior ruling concerning Petitioners' Order to Show Cause regarding a Preliminary Injunction, CBD's claims do not raise purely "procedural" issues.  All CBD's "procedural" and "substantive" claims are entangled with each other as they are based on the same set of facts and parallel legal theories, and literally are contained within the same causes of action.  CBD's bifurcation request would accomplish none of the foregoing statutory goals and would instead create unnecessary piecemeal litigation that prejudices Real Parties' ability to defend against those claims at trial.  Additionally, bifurcation would require the parties to incur even greater costs and waste significant judicial resources by dragging out this litigation even further and conducting multiple trials.  In contrast, CBD cannot articulate and will not suffer any prejudice if their claims are tried all together at once.  CBD's request for bifurcation should be denied.

## II.    <u>FACTUAL AND LEGAL BACKGROUND</u>

In January 1985, the California State Lands Commission and federal Bureau of Land Management certified a joint EIR/EIS for what was then known as the "Celeron Pipeline Project," which included the construction of what are now called the Las Flores Pipelines.[1]  The EIR/EIS

---

[1] Two pipelines make up the Las Flores Pipelines. One is the Las Flores Pipeline CA-324 ("Line CA-324") (previously known as Line 901), which transports crude oil approximately 10.9 miles from the Las Flores Pump Station in Las Flores Canyon to the existing Gaviota Pump Station. The other is Las Flores Pipeline CA-325 ("Line CA-325") (previously known as Line 903), which transports crude oil approximately 113.5 miles north from the Gaviota Pump Station to the existing Pentland Delivery Point in Kern County.

- 5 -

OPPOSITION TO MOTION TO BIFURCATE

analyzed the Pipelines' construction, "operation," and "maintenance."[2] After certification of the EIR/EIS, "all necessary approvals for construction and operation of the Las Flores Pipeline" were obtained, the pipeline was constructed, and it "went into service in or around 1992." (Petition, ¶ 67.)

As the Las Flores Pipelines transport crude oil, they are subject to the federal Hazardous Liquid Pipeline Safety Act ("Pipeline Safety Act") (codified at 49 U.S.C. §§ 60101 et seq.), which is administered by the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). In turn, PHMSA adopted detailed regulations governing the design, construction, pressure testing, and maintenance of hazardous liquid pipelines. (See 49 C.F.R. Part 195.) The Act also grants PHMSA the authority to "waive compliance with any part of an applicable standard … on terms [PHMSA] considers appropriate if [it] determines that the waiver is not inconsistent with pipeline safety." (49 U.S.C. § 60118, subd. (c)(1)(a).)

The Pipeline Safety Act allows state agencies to apply and become certified to enforce equivalent or more stringent regulations with respect to intrastate pipelines. (See 49 U.S.C. § 60105.) In California, the State Legislature vested OSFM with the "exclusive safety[,] regulatory and enforcement authority over intrastate hazardous liquid pipelines and … to implement the [Pipeline Safety Act] and federal pipeline safety regulations as to those portions of interstate pipelines located within [California] as necessary to obtain annual federal certification." (Gov. Code, § 51010.) OSFM adopted PHMSA's regulations, and PHMSA certified OSFM to implement the Pipeline Safety Act. (Cal. Code Regs., tit. 19, § 2000.)

OSFM may "waive compliance with a safety standard" if the requested modification is not inconsistent with pipeline safety. (49 USC § 60118, subd. (c), (d).) Any such "State Waiver" may become effective only after OSFM provides PHMSA with 60 days' notice and the opportunity to make a written objection to its issuance. (See *ibid*.)

On March 13, 2020, the prior owner and operator of the Las Flores Pipelines entered into a Consent Decree with the United States and the State of California on behalf of several federal and state

---

[2] For background information purposes, the Draft and Final EIR/EIS referenced by the Petition are publicly available: The Draft EIR/EIS is available on the County's website, at *https://cosantabarbara.app.box.com/s/gc3vhh8ns8aiwketnq35vwbehnhre672.* The Final EIR/EIS is available at: *https://cosantabarbara.app.box.com/s/lkl9oo9xdsaangevdp6pasfo0cmimvlt.*

OPPOSITION TO MOTION TO BIFURCATE

regulatory agencies—including OSFM and PHMSA—in the United States District Court, Central District of California (Civil Action No. 2:20-cv-02415) to resolve issues related to the 2015 Refugio oil spill that resulted from a leak in Line CA-324. (Petition, ¶ 59.)[3]

The Consent Decree imposes a series of prerequisites must be satisfied before restarting either of the Las Flores Pipelines. The Consent Decree requires that the operator must, with respect to both Lines CA-324 and CA-325, "apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection" "prior to restarting" the pipelines. (Petition, ¶ 61.)  Said, differently, the Consent Decree required Sable Offshore Corp. and Pacific Pipeline Company (collectively "Sable") to apply for the waivers that Petitioners now challenge as a condition precedent to restart.

After Sable acquired the Las Flores Pipelines in February 2024, Sable submitted State Waiver applications to OSFM with respect to both Lines CA-324 and CA-325, as required under the Consent Decree. (See Petition, ¶ 70.)  In May 2024, Sable began repair and maintenance work on the pipelines as required under the Consent Decree and consistent with Sable's understanding that such work was authorized by the Pipeline's existing approvals and permits.

Following several months of consideration of Sable's State Waiver applications, OSFM granted both State Waivers on December 17, 2024, and imposed over sixty separate conditions on Sable's operation of the Las Flores Pipelines to reflect the modified regulatory standards required under the Consent Decree. This grant was conditioned on PHMSA either issuing an Order approving the State Waivers or taking no action within 60 days after receiving the OSFM's Letter of Decision on the State Waivers. (Petition, ¶ 72.)  On February 11, 2025, PHMSA notified OSFM that it had no objection to its issuance of the State Waivers, and the State Waivers became effective. (Petition, ¶ 79.) PHMSA's notice did not identify any deficiencies with OSFM's grant of the State Waivers.

The Consent Decree separately requires Sable to submit and obtain OSFM's approval of a written "Restart Plan" before restarting either Line CA-324 or Line CA-325. (See footnote 3, *supra*,

---

[3] For background information purposes, the Consent Decree is referenced by the Petition and is publicly available: "The Consent Decree is available on the U.S. Environmental Protection Agency's website, at *https://www.epa.gov/sites/default/files/2020-03/documents/plainsallamericanpipelinelp.pdf*." (Petition, ¶ 85, n. 3, emphasis added.)

[Consent Decree], Appendix D, ¶¶ 1.b, 1.f.) Sable submitted a draft Restart Plan to OSFM on July 29, 2024.[4] OSFM has taken no final action on the Restart Plan and it remains under review.

CBD filed its Complaint on April 15, 2025, asserting three causes of action.  The First cause of action seeks to enforce purported requirements for public process and disclosure of a statement of reasons pursuant to 49 U.S.C. section 60118, subsections (c) and (d). (Petition, ¶¶ 114-120.) The Second cause of action seeks to enforce a purported requirement for disclosure of "a discussion of significant factors" pursuant to Government Code section 51011(c). (*Id.*, ¶¶ 121-125.) The Third cause of action alleges that OSFM failed to comply with CEQA when it approved the State Waivers without preparing a subsequent EIR. (*Id.*, ¶¶ 126-131.)

## III.    CBD'S "PROCEDURAL CLAIMS" SHOULD NOT BE BIFURCATED FROM THEIR "SUBSTANTIVE CLAIMS"

CBD oversimplifies and mischaracterizes their claims in an effort to split parts of the causes of action into separate buckets of "procedural" and "substantive" claims for trial purposes.  CBD's arbitrary distinction, however, will not create any judicial efficiencies as all of CBD's claims hinge on the same set of facts and circumstances.  Many of CBD's legal theories are also derivative of one another, as they are literally part of the same cause of action, marking it wholly inefficient to require they be tried separately and twice.  CBD fails to clarify any satisfactory reasons to the contrary or why this Court should hear its causes of action multiple times when it can efficiently hold trial on all of them at once.  Moreover, CBD incorrectly claims that its cause of action under CEQA should proceed purely as a procedural issue and should, thus, proceed before any of the other "substantive" issues. The litigation process CBD now proposes only stands to confuse the issues for the Court's review and cause the parties and the court to waste judicial resources, when all such inefficiencies could be avoided

---

[4]  For background information purposes, the Restart Plan is publicly available at a website referenced in the Petition: "OSFM has consistently construed this standard to mean that a State Waiver can only be granted where the operator's 'proposed alternative measures can provide an equal or greater level of safety than the required regulation.' (Pathways for Restarting Pipelines, OSFM, *https://osfm.fire.ca.gov/what-we-do/pipeline-safety-and-cupa/pathways-for-restarting-pipelines)*." (Petition, ¶ 171, emphasis added.) The Restart Plan is accessible at the website under "#6: Startup Plan."

OPPOSITION TO MOTION TO BIFURCATE

by a single trial.  Indeed, Sable supports a single trial promptly take place, which would more than sufficiently address the relief CBD seeks by this Motion.

A.     **All Claims Should Be Tried Together As They Are Based on the Same Factual And Legal Issues.**

While CBD is correct that a trial court may order a separate trial of causes of action or issues under Code of Civil Procedure sections 598 and 1048, subdivision (b), CBD ignores that section 1048, subdivision (a) specifically provides for a joint hearing or trial when actions "involv[e] a common question of law or fact." (Code Civ. Proc., § 1048, subd. (a).)  Here, it is undisputed that CBD's "procedural" and "substantive" claims, which are contained within the same causes of action, involve the same factual and legal issues.  CBD's claims allege concerns with the OSFM's approval and issuance of State Waivers, which underly all of CBD's concerns with Sable's efforts to restart the Las Flores Pipelines.  ***All of the "procedural" and "substantive" issues in CBD's complaint have been pled together, further demonstrating these issues are interrelated and should be tried together.***  This only magnifies CBD's manufactured distinction between its "procedural" and "substantive" and does not warrant bifurcation now.

B.     **Bifurcation Between "Procedural" and "Substantive" Claims Will Waste Judicial Resources and Prejudice Sable.**

CBD argues that bifurcation could "obviate the need to litigate the substantive claims in this case, thereby conserving judicial resources and preventing the waste of time and resources." (Opposition ("Opp.") at p. 5.)  However, CBD's request to bifurcate will not promote the interests of judicial convenience, economy, and expedition or avoid prejudice.  Because the claims clearly involve "common issues of fact and law," bifurcation would result in a wasteful duplicity of litigation. See Code Civ. Proc., §  1048, subd. (a) [consolidating "actions involving a common question or law or fact . . . may tend to avoid unnecessary costs or delays"].)  Indeed, granting CBD's Motion would likely compound the very same ills CBD now complains about.  The parties would incur even greater costs and waste significant judicial resources by dragging out this litigation even further and requiring multiple trials.

- 9 -

OPPOSITION TO MOTION TO BIFURCATE

A single proceeding on all of CBD's claims will promote judicial economy.  As all of CBD's claims rest on the same set of factual circumstances and similar legal theories, briefing, argument, and adjudication on CBD's claims can and should all be completed together.  Proceeding with a single trial will reduce the amount of briefing in this litigation and allow the Court to issue a ruling without having to hold a second trial that will require a second round of briefing and argument.  On the other hand, CBD will not be prejudiced by trying all of their claims together.  CBD does not claim how any prejudice will arise if the request for bifurcation is denied, and CBD cannot explain why the Court should parse out its "procedural" claims from its "substantive" claims when CBD could not at the pleading stage.  The Court is perfectly capable of evaluating CBD's claims and applying the correct evidentiary and legal standards to each challenge.  (See *Pilliod v. Monsanto Company* (2021) 67 Cal.App.5th 591, 626 [affirming denial of motion for severance because "[m]ost of the evidence at trial pertained to both plaintiffs, including the evidence of general causation and [defendant's] conduct," and the "the jury instructions emphasized consistently that each plaintiff's case was to be considered separately"].)  This is particularly true here where there is no risk of confusion to a jury.

**C.    CBD's CEQA Claim Requires Concurrent Adjudication With Their Remaining Claims.**

CBD argues that "[b]eyond judicial economy and case management efficiency," CBD's CEQA claim should be bifurcated into an initial phase of trial, separate from its "substantive claims" and should "be promptly brought, briefed, and resolved pursuant to Public Resources Code section 21167.1" (Opp. at p. 6.)  Although there are public policy reasons to hear CEQA claims promptly, which Sable does not dispute, CBD fails to articulate any justifiable reason why the CEQA claim should be bifurcated and heard separately as a "procedural claim" separate and apart from CBD's remaining "substantive claims" that are intertwined between the "procedural claims" in a single cause of action.

As CBD plainly acknowledges, CEQA imposes *procedural and substantive* requirements on public agencies when those agencies undertake certain discretionary activities – "projects" in CEQA's terminology – that have the potential to result in physical changes in the environment. (CEQA Guidelines, § 15378, subd. (a); see Opp. at p. 6 ["Although CEQA claims *can be both procedural and*

- 10 -

OPPOSITION TO MOTION TO BIFURCATE

*substantive*, OSFM's failure to conduct subsequent environmental review amounts to a clear procedural violation."] (italics and emphasis added).)

CBD alleges that CEQA applies to OSFM's State Waivers (it does not) and OSFM's failure to conduct environmental review and prepare a subsequent EIR violates CEQA (it did not). Sable, however, maintains CEQA does not apply to OSFM's issuance of the State Waivers as OSFM was implementing a *federal* safety program pursuant to its delegated authority under *federal* law. (See *City of Morgan Hill v. Bay Area Air Quality Mgmt. Dist.* (2004) 118 Cal.App.4th 861, 871 ["the conclusion that the [air] permit is a federal one would seem to preclude the application of any state law such as CEQA. The [Air] District issued the permit acting on behalf of federal authorities who are not bound by state law"].) Sable also maintains that the State Waivers do not constitute a "project" under CEQA and further were ministerial in nature and thus do not trigger CEQA at all.

But even assuming *arguendo* that CEQA may apply for mapping out how to adjudicate CBD's claims, Sable further maintains that exemptions would apply and sufficient environmental review was captured by the existing EIR/EIS. Such exemption and EIR analysis under CEQA would require close examination of the existing EIR/EIS, which asks the Court, in turn, to review highly substantive issues at the juncture CBD asks for the Court to consider their "procedural claims." This makes no sense as a practical matter as it asks the Court to perform piecemeal analysis that could otherwise be avoided by holding one, single trial. Even still, CBD argues this should be done first, before its "substantive claims" are adjudicated. But CBD offers no reason why the CEQA claim should be heard without considering their other "substantive claims," especially when those claims all hinge on the same set of facts and circumstances. This deficiency is only further highlighted by CBD's unsupported argument that "[h]earing Petitioners' procedural CEQA claim prior to, and separate from, Petitioners' time and fact intensive substantive claims will expedite resolution of the CEQA claim, consistent with the Legislative intent." (Opp. at pp. 6-7.) But in truth, bifurcation of the CEQA analysis will require the Court to conduct fragmented analysis and will further waste judicial resources by creating piecemeal litigation.

## IV.    CONCLUSION

For the foregoing reasons, the CBD's Motion to Bifurcate should be denied.

- 11 -

DATED:   September 8, 2025

Respectfully submitted,

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
TREVOR D. LARGE

_____
        Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

OPPOSITION TO MOTION TO BIFURCATE

**PROOF OF SERVICE**

I, Kim Niz, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On September 8, 2025, I served the document(s) **SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO PETITIONERS' MOTION TO BIFURCATE** on the interested parties stated below, by the following means of service:

**See Attached Service List**

☒    BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 8, 2025, at Los Angeles, California.

                                  */s/ Kim Niz*
                                    Kim Niz

- 13 -

**SERVICE LIST**

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
Center for Biological Diversity
2011 Franklin Street, Suite 375
Oakland, CA 94612

ATTORNEYS FOR PETITIONERS
CENTER FOR BIOLOGICAL DIVERSITY and
WISHTOYO FOUNDATION

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
        tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

ATTORNEYS FOR PETITIONERS
ENVIRONMENTAL DEFENSE CENTER, a
California non-profit corporation; GET OIL
OUT!, a California non-profit corporation;
SANTA BARBARA COUNTY ACTION
NETWORK, a California non-profit corporation;
SIERRA CLUB, a national non-profit
corporation; and SANTA BARBARA
CHANNELKEEPER, a California non-profit
corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
        jfrankel@environmentaldefensecenter.org
        trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
California Attorney General's Office
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

ATTORNEYS FOR RESPONDENTS/
DEFENDANTS
California Department of Forestry and Fire
Protection, Office of the State Fire Marshal;
Daniel Berlant, in his official capacity as State
Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
        benjaminhanelin@paulhastings.com
        natalierogers@paulhastings.com

Trevor D. Large, Esq.
FAUVER, LARGE, ARCHBALD & SPRAY
LLP
820 State Street, 4th Floor
Santa Barbara, CA 93101

ATTORNEYS FOR REAL PARTIES IN
INTEREST
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 966-7000
Email: TLarge@FLASllp.com

- 14 -
OPPOSITION TO MOTION TO BIFURCATE

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|
| NAME: Michael S. Dorsi, Deputy Attorney General    STATE BAR NUMBER: 281865 | | *FOR COURT USE ONLY*<br><br>ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>9/9/2025 4:23 PM<br>By: Narzralli Baksh , Deputy |

ATTORNEY OR PARTY WITHOUT ATTORNEY

NAME: Michael S. Dorsi, Deputy Attorney General

STATE BAR NUMBER: 281865

FIRM NAME: California Attorney General's Office

STREET ADDRESS: 455 Golden Gate Avenue, Suite 11000

CITY: San Francisco    STATE: CA    ZIP CODE: 94102

TELEPHONE NO.: 415-510-3802    FAX NO.:

EMAIL ADDRESS: Michael.Dorsi@doj.ca.gov

ATTORNEY FOR (name): Respondents California Department of Forestry and Fire Protection, et a

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Barbara

STREET ADDRESS: 1100 Anacapa Street

MAILING ADDRESS:

CITY AND ZIP CODE: Santa Barbara, CA 93101

BRANCH NAME: Anacapa Divsiion

PLAINTIFF/PETITIONER: Center for Biological Diversity, et al

DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*   [X] **UNLIMITED CASE**<br>(Amount demanded exceeds $35,000)   [ ] **LIMITED CASE**<br>(Amount demanded is $35,000 or less) | 25CV02244 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: September 19, 2025    Time: 10:0 a.m.    Dept.: 4    Div.:    Room:

Address of court (if different from the address above):

[X] **Notice of Intent to Appear by Telephone,  by** *(name):* Michael S. Dorsi (by videoconfernce)

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*

   a. [X] This statement is submitted by party *(name):* Respondents California Department of Forestry and Fire Protection, et al.

   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*

   a. The complaint was filed on *(date):*   April 15, 2025

   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*

   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [ ] The following parties named in the complaint or cross-complaint

      (1) [ ] have not been served *(specify names and explain why not):*

      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ] have had a default entered against them *(specify names):*

   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**

   a. Type of case in   [X] complaint    [ ] cross-complaint    *(Describe, including causes of action):*

      Petition for writ of mandate and complaint challenging California Department of Forestry and Fire Protection's Office of the State Fire Marshal issuance of State Waivers for Las Flores Pipeline System

Page 1 of 5

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02244 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

Petitioners violations of federal and state procedures for pipeline safety regulations and California Environmental Quality Act

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a. ☐ The trial has been set for *(date):*

b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a. ☒ days *(specify number):* 1

b. ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a. Attorney:

b. Firm:

c. Address:

d. Telephone number:          f. Fax number:

e. Email address:          g. Party represented:

☐ Additional representation is described in Attachment 8.

9.  **Preference**

☒ This case is entitled to preference *(specify code section):* Public Resources Code § 21167.1(a)

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

Cal. Rules of Court, Rule 3.811(b)(1) [equitable relief]

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02244 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: | Center for Biological Diversity, et al | CASE NUMBER: |
|---|---|---|
| DEFENDANT/RESPONDENT: | California Dept. of Forestry and Fire Protection, et al. | 25CV02244 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

   (1) Name of case:

   (2) Name of court:

   (3) Case number:

   (4) Status: Pending

   ☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*
Possible, should be discussed at case management conference

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
Respondent is preparing the administrative record but, given the nature of the relevant agency process, this is more time-consuming than had initially been expected.

CM-110 [Rev. January 1, 2024]    **CASE MANAGEMENT STATEMENT**    **Page 4 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Dept. of Forestry and Fire Protection, et al. | 25CV02244 |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference  (specify):

This Court should address how to approach future requests for ex parte relief.

19. **Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

The parties conferred on some subjects and expect to confer on other subjects between now and the date of the case management conference.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:  September 8, 2025

| Michael S. Dorsi, Deputy Attorney General | ▶ s/ Michael S. Dorsi |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ▶ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

**DECLARATION OF SERVICE**

Case Names:    **CENTER FOR BIOLOGICAL DIVERSITY, et al. v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.**

Case No.:    **25CV02244**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter.

On September 9, 2025, I served the attached:

- **CASE MANAGEMENT STATEMENT – CBD**

by transmitting a true copy via electronic mail addressed as follows:

| | |
|---|---|
| Linda Krop<br>lkrop@environmentaldefensecenter.org<br>Jeremy M. Frankel<br>jfrankel@environmentaldefensecenter.org<br>Tara C. Rengifo<br>trengifo@environmentaldefensecenter.org<br>ENVIRONMENTAL DEFENSE CENTER | Julie Teel Simmonds<br>jteelsimmonds@biologicaldiversity.org<br>David Pettit<br>dpettit@biologicaldiversity.org<br>Talia Nimmer<br>tnimmer@biologicaldiversity.org<br>CENTER FOR BIOLOGICAL DIVERSITY |
| Moore, DJ djmoore@paulhastings.com<br>Hanelin, Benjamin J.<br>benjaminhanelin@paulhastings.com<br>Rogers, Natalie C.<br>natalierogers@paulhastings.com<br>PAUL HASTINGS LLP | Bolender, Brooke<br>Brooke.Bolender@alston.com<br>Jeffrey Dintzer jeffrey.dintzer@alston.com<br>ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on September 9, 2025 at Oakland, California.

| | |
|---|---|
| _____<br>Tania Martinez<br>Declarant | *Tania Martinez*<br>_____<br>Signature |

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/12/2025 1:34 PM
By: Narzralli Baksh , Deputy

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General
MATTHEW BULLOCK (SBN 243377)
MICHAEL S. DORSI (SBN 281865)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3802
  Fax: (415) 703-5480
  E-mail: Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants
Department of Forestry and Fire Protection, by and
through the Office of the State Fire Marshal, an
agency of the State of California; Daniel Berlant, in
his official capacity as State Fire Marshal*

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,**<br><br>                        **Petitioner and Plaintiff,**<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,**<br><br>                **Respondents and Defendants,**<br><br>**SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,**<br><br>                **Real Parties in Interest.** | Case No. 25CV02244<br><br>**RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S STATEMENT OF NO POSITION ON MOTIONS TO BIFURCATE**<br><br>Date:         September 19, 2025<br>Time:        10:00 a.m.<br>Dept:        4<br>Judge:      Hon. Donna Geck<br><br>Trial Date:   Not Set<br>Action Filed: April 15, 2025 |

1

Respondents' Statement of No Position re Motions to Bifurcate (25CV02244 and 25CV02247)

## STATEMENT

Respondents California Department of Forestry and Fire Protection, et al., are aware of the Motions to Bifurcate and take no position on the pending Motions.


Dated:  September 11, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General

/s/ Michael S. Dorsi
MICHAEL S. DORSI
Deputy Attorney General
*Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, et al.*

LA2025400847

Respondents' Statement of No Position re Motions to Bifurcate (25CV02244 and 25CV02247)

<u>**DECLARATION OF SERVICE BY E-MAIL**</u>

**Case Name:**      Center for Biological Diversity v. CalFire/OSFM
**Case Number:**    25CV02244
**Party Represented:**  Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal

**Declaration of Electronic Service**

1.  I am at least 18 years of age and not a party to this matter.

2.  I am employed in the Office of the Attorney General of the State of California.  My business address is 1515 Clay Street, 20th Floor, P.O. Box 70550, Oakland, CA  94612-0550, County of Alameda.

3.  My electronic service address is Tania.Martinez@doj.ca.gov.

4.  On September 12, 2025, I electronically served the following document[s]:

    a.  **RESPONDENTS CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S STATEMENT OF NO POSITION ON MOTIONS TO BIFURCATE**

5.  I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

| | |
|---|---|
| Linda Krop<br>lkrop@environmentaldefensecenter.org<br>Jeremy M. Frankel<br>jfrankel@environmentaldefensecenter.org<br>Tara C. Rengifo<br>trengifo@environmentaldefensecenter.org<br>ENVIRONMENTAL DEFENSE CENTER<br>Moore, DJ djmoore@paulhastings.com<br>Hanelin, Benjamin J.<br>benjaminhanelin@paulhastings.com<br>Rogers, Natalie C.<br>natalierogers@paulhastings.com<br>PAUL HASTINGS LLP | Julie Teel Simmonds<br>jteelsimmonds@biologicaldiversity.org<br>David Pettit<br>dpettit@biologicaldiversity.org<br>Talia Nimmer<br>tnimmer@biologicaldiversity.org<br>CENTER FOR BIOLOGICAL DIVERSITY<br>Bolender, Brooke<br>Brooke.Bolender@alston.com<br>Jeffrey Dintzer jeffrey.dintzer@alston.com<br>ALSTON & BIRD |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on September 12, 2025.

| | |
|---|---|
| Tania Martinez | *Tania Martinez* |
| Declarant | Signature |

LA2025400847
92031857.docx

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/12/2025 2:39 PM
By: Narzralli Baksh , Deputy

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100 / Fax: (510) 844-7150

*Attorneys for Petitioners Center for Biological
Diversity and Wishtoyo Foundation*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA BARBARA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,<br><br>Petitioners and Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive,<br><br>Respondents and Defendants.<br><br>SABLE OFFSHORE CORP., a Delaware Corporation; PACIFIC PIPELINE COMPANY, a Delaware Corporation; and DOES 11 through 20, inclusive,<br><br>Real Parties in Interest. | Case No.: 25CV02244<br><br>**PETITIONERS' AND PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE**<br><br>Date:    September 19, 2025<br>Time:    10:00 a.m.<br>Dept.:    4<br>Judge:    Honorable Donna D. Geck<br><br>Action Filed: April 15, 2025<br>Trial: None Set |

## I.    INTRODUCTION

The Court should grant Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation's ("Petitioners") Motion to Bifurcate ("Motion") because resolving Petitioners' procedural claims first could entirely obviate the need to reach their substantive challenges to the pipeline safety regulation waivers ("State Waivers" or "Waivers") that enable Sable Offshore Corp. and Pacific Pipeline Company ("Sable") to restart the transport of oil from the Santa Ynez Unit through the Las Flores Pipeline System (the "Project").[1] Specifically, should the Court rule that Respondents and Defendants California Department of Forestry and Fire Protection and Office of the State Fire Marshal ("OSFM") violated the pipeline safety laws' public notice and hearing, environmental review, statement of reasons, and discussion of significant factor requirements and/or the California Environmental Quality Act's ("CEQA") public participation and environmental review requirements when it issued the State Waivers, a new agency process, evidence, and decisions would be required. It makes little sense to rule on whether OSFM has demonstrated that the current State Waivers are "not inconsistent with pipeline safety" (49 U.S.C. § 60118(c)(1)(A), (d)) and that the "risk to public safety is slight and the probably of injury or damage remote" (Gov. Code § 51011(b)) when the agency may be required to undergo a new review process, including environmental review, that would fundamentally alter the agency's proceedings, record, and ultimate decisions.

Importantly, throughout Sable's Opposition, it presents the State Waivers and restart of the pipelines as a foregone conclusion mandated by the Consent Decree. In doing so, Sable ignores the existence of legally-mandated procedures and minimizes the procedural violations at issue in this case. Petitioners reiterate here that the Consent Decree, entered into by the former owner/operator of the pipeline system and numerous governmental entities, in no way pre-ordained that restart could ever occur or that the Waivers would ever issue. All the Consent Decree stated was that if restart was chosen over the other two pathways identified (pipeline replacement and pipeline abandonment), the operator "shall apply for a State Waiver through [Cal Fire] for the limited effectiveness of cathodic protection," which "must [be] receive[ed] . . .prior to restarting." (Petition at ¶ 61; June 2, 2025 Declaration of Julie

---

[1] OSFM has not opposed Petitioners' Motion to Bifurcate. (*See* OSFM Statement of No Position On Motion to Bifurcate.)

2

Teel Simmonds ISO Petitioners' Ex Parte Application for Administrative Stay or Preliminary Injunction, Exh. 6, p. 78.) Thus, the Consent Decrees certainly did not absolve the OSFM from compliance with all relevant laws and their legally-required procedures in moving forward with restart, replacement, or abandonment. As paragraph 78 of the Consent Decree explicitly states:

> State Agencies do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of … Pipeline Safety Laws, or with any other provisions of federal, state, or local laws, regulations, or permits.

(Petitioners' July 11, 2025 Reply in Support of Application for Administrative Stay or Preliminary Injunction, p. 2 [*citing* June 3, 2025 Declaration of Jeffrey Dintzer ISO Sable's Opposition to Petitioners' Ex Parte Application for Administrative Stay or Preliminary Injunction, Exh. 3, p. 47].)

Sable's Opposition otherwise largely focuses on the fact that Petitioners' procedural and substantive claims are based on the same set of circumstances and overall statutory frameworks and thus should be heard together. While this counsels for *consolidating* the two similar actions before the Court (25CV02244 and 25CV02247), it does not weigh against *bifurcating* Petitioners' legally distinct procedural and substantive claims in pursuit of efficiency and the preservation of resources. Resolution of Plaintiffs' procedural claims could resolve this case in full, and they are straightforward in that they merely require Petitioners to establish that OSFM failed to comply with its procedural mandates. A decision on the procedural claims could be the end of this matter. Delving into the time and fact-intensive substance of OSFM's decisions, rendered without proper adherence to procedural mandates, would be a waste of the Court's and the parties' resources.

## II.    ARGUMENT

### A.    Sable Appears to Confuse Consolidation and Bifurcation.

Sable argues that bifurcation is not warranted because Code of Civil Procedure section 1048(a) allows courts to order a *joint* trial or hearing "when actions 'involv[e] a common question of law or fact." (Opposition at 9.) Petitioners support consolidating this action with *Environmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.* (Case No. 25CV02247). However, Petitioners' present motion requests the *bifurcation* (under Code of Civil Procedure sections 1048(b) and 598) of the legally distinct *claims* in its action. Under section 1048(b), courts may, in furtherance of

3

"convenience" or for "expedition or economy," order a "separate trial of any cause of action…or of any separate issue or any number of causes of action or issues." Similarly, under Code of Civil Procedure section 598, a party may move the court to order trial of any issue before trial of any other issue "when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted." (*See Am. Motorists Ins. Co. v. Superior Court* (1998) 68 Cal.App.4th 864, 872 ["([t]he statutory provisions for severance and separate trials (Code Civ. Proc., § 598, 1048) are not limited to the separate trial of a 'cause of action' but also authorize a separate trial of any 'issue'"].)

Sable's citation to Code of Civil Procedure section 1048(a) is irrelevant to Petitioners' present Motion. The Court can, and should, order separate trials of Petitioners' legally distinguishable and separate procedural and substantive claims.

**B.     Petitioners' Procedural Claims Are Distinct and Should Be Decided First.**

Sable's contention that bifurcation is not warranted because Petitioners' procedural and substantive claims are too "entangled" (Opposition at 5) is unpersuasive. Sable attacks Petitioners' placement of its procedural claims under three broad causes of action (one for violations of federal pipeline safety laws, one for violations of state pipeline safety laws, and one for violations of CEQA). Sable's disdain for Petitioners' approach does nothing to detract from the fact that Petitioners pled *distinct claims* under each cause of action, some of which allege procedural violations and some of which allege substantive violations. The mere fact that Petitioners' claims are pled under three broad causes of action and involve some of the same set of "facts and circumstances" (Opposition at 8) does not render the procedural and substantive claims indistinguishable or obviate the desirability of bifurcating them.

The procedural and substantive claims allege distinct violations of separate legal requirements. (*See* Motion at pp. 4-5; *see also* Petition at ¶¶ 115-123, 129-130.) In simple terms, while Petitioners' procedural claims challenge the *way* in which OSFM issued the Waivers (without proceeding in the manner required by law), their substantive claims challenge the substance of and basis for OSFM's ultimate decisions to issue the Waivers (for failing to comply with pipeline and public safety standards). (*Id*.) Thus, the assertion that the two types of claims are inextricably intertwined is incorrect.

4

Indeed, Sable seems to concede that Petitioners' procedural and substantive claims are legally distinguishable when it argues that Petitioners will not be prejudiced if its Motion to Bifurcate is denied because the Court is capable of "evaluating [Petitioners'] claims and applying the correct evidentiary and legal standards to each challenge." (Opposition at 10.) The only case Sable cites for this proposition, *Pilliod v. Monsanto Co.* (2021) 67 Cal.App.5th 591, 626, which concerned the denial of Monsanto's motion to sever a single case brought by spouses against the company related to the couple's development of cancer, bears little if any resemblance to this case or the pending motion and fails to support a denial. The question here is not the *ability* of the Court to evaluate Petitioners' claims all at once, but the advisability and efficiency of doing so.

On that issue, Sable argues that Petitioners will not suffer any harm if the trial is not phased. Not so. As discussed in their motion, (Motion at 5), should Petitioners prevail on any of their procedural claims, it would obviate the need to litigate the substantive claims in this case, which would be fact and time-intensive for all involved and require that the Court probe the technical details of pipeline safety. Specifically, if the Court finds that OSFM failed to comply with any of its procedural mandates, a new process will be required for the issuance of the State Waivers, and there will be new evidence and a new decision. Hearing the procedural claims first makes logical sense and may *substantially reduce* briefing, argument, and adjudication in this case. Bifurcation will thus save the parties and the Court resources and prevent the unnecessary resolution of the substantive claims at this juncture. (*See Trickey v. Superior Court* (1967) 252 Cal.App.2d 650, 653 [one "objective" of bifurcation "is avoidance of the waste of time and money caused by the unnecessary trial" of issues].)

Even if resolution of the procedural claims did not obviate the need to litigate the substantive claims, bifurcation would still promote efficiency and streamline the litigation since resolution of the procedural claims may inform and shape the Court's evaluation of the substantive claims. (Motion at 6 [*citing Save Our Capitol! v. Department of General Services* (2023) 87 Cal.App.5th 655, 703 [the court reviews whether an agency complied with its procedural mandates before assessing the substantive decisions it made]].) For this reason too, bifurcation is warranted.

Petitioners' and Plaintiffs' Reply ISO of Motion to Bifurcate

**C.     Petitioners' CEQA Claims Are Procedural and Should Likewise Be Decided Prior to Their Substantive Pipeline Safety Law Claims.**

Finally, Sable takes particular issue with Petitioners casting their CEQA claims as procedural, noting that even Petitioners agree that "CEQA imposes *procedural and substantive* requirements on public agencies." (Opposition at 10). This generic overarching CEQA principle is not contested or at issue in this case, where no CEQA review at all was conducted—nor was any substantive CEQA decision issued—for the Project. As noted in Petitioners' Motion, Petitioners' claim that OSFM failed to conduct any CEQA review before issuing the State Waivers for the Project is purely procedural. (*See* Motion at 6 [*citing Santa Clarita Organization etc. v. County of Los Angeles* (2024) 105 Cal.App.5th 1143, 1150 [lack of adequate notice and failure to analyze and disclose a project's environmental impact amount to procedural violations of CEQA]]; *see also Californians for Alternatives to Toxics v. Department of Food & Agriculture* (2005) 136 Cal.App.4th 1, 12 ["[a]n agency fails to proceed in a manner required by law and thus abuses its discretion when it does not comply with the informational requirements of CEQA"].)

Sable's contentions that OSFM was not required to conduct any CEQA review for this Project does not convert Petitioners' claims into substantive ones. The only question before the Court remains whether OSFM acted in a manner required by law (rather than whether the agency's factual findings or conclusions are supported—OSFM made no CEQA findings or conclusions for the Project). (*See California Native Plant Society v. City of Santa Cruz* (2009) 177 Cal.App.4th 957, 984 [CEQA procedural claims include whether the agency has "scrupulously enforce[d] all legislatively mandated CEQA requirements" whereas substantive claims involve "the agency's substantive factual conclusions"].) Sable's attempt to recast Petitioners' procedural CEQA claims as substantive and oppose bifurcation on this basis should be rejected, particularly in light of Sable's acknowledgment that CEQA claims be promptly brought, briefed, and resolved. (Opposition at 10; *see also* Motion at 6 [*citing* Pub. Res. Code § 21167.1; *Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1134, fn. 13].)

## III.    CONCLUSION

In sum, Sable's arguments counsel for the possible consolidation of cases (25CV02244 and 25CV02247) but not against bifurcation of Petitioners' claims. The Court's resolution of Petitioners' readily distinguishable procedural claims before their substantive claims will streamline the litigation, promote judicial economy and efficient case management, and avoid wasted time and expense to the Parties in this case. Petitioners therefore respectfully request that the Court bifurcate the procedural and substantive claims of this action and phase the trial so that the procedural claims precede the substantive claims.

Dated: September 12, 2025                    Respectfully submitted,

                                             /s/ Julie Teel Simmonds
                                             Julie Teel Simmonds
                                             David Pettit
                                             Talia Nimmer
                                             CENTER FOR BIOLOGICAL DIVERSITY

                                             Counsel for Petitioners Center for Biological Diversity and Wishtoyo Foundation

7

Petitioners' and Plaintiffs' Reply ISO of Motion to Bifurcate

**PROOF OF SERVICE**

I, Talia Nimmer, state:

I am over the age of 18 and not a party to the foregoing action. My business address is Center for Biological Diversity, 2100 Franklin St., Ste. 375, Oakland CA 94612. On September 12, 2025, I served a true and correct copy of **PETITIONERS' AND PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE** by electronically mailing a true and correct copy to the email addresses shown below pursuant to California Rule of Court Section 2.251(c)(3) and Local Rule 1012.

Michael S. Dorsi
Matthew Bullock
Myung Park
California Attorney General's Office
55 Golden Gate Ave, Ste 11000
San Francisco, CA 94102
Michael.Dorsi@doj.ca.gov
Matthew.Bullock@doj.ca.gov
Myung.Park@doj.ca.gov
*Attorneys for Respondents/Defendants*

Jeffrey Dintzer
Matthew C. Wickersham
Garrett Stanton
ALSTON & BIRD
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Jeffrey.Dintzer@alston.com
Matt.Wickersham@alston.com
Garrett.Stanton@alston.com
*Attorneys for Real Parties in Interest*

DJ Moore
Benjamin Hanelin
Natalie Rogers
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com
*Attorneys for Real Parties in Interest*

Trevor D. Large
Victoria C. Diffenderfer
FAUVER LARGE ARCHBALD & SPRAY
820 State Street, 4th Floor
Santa Barbara, CA 93101

8

tlarge@flasllp.com
vdiffenderfer@flasllp.com
*Attorneys for Real Parties in Interest*

I declare under penalty of perjury under the law of California that the foregoing is true and correct. Executed on September 12, 2025, in Los Angeles, California.

_____
Talia Nimmer

9

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/17/2025 10:13 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

*Additional Counsel Listed on Signature Page*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive, <br><br> Respondents/Defendants, <br><br> SABLE OFFSHORE CORP., a Delaware Corporation; PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive, <br><br> Real Parties in Interest. | Case No. 25CV02244 <br><br> Assigned for all purposes to: Hon. Donna D. Geck <br><br> **REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO PETITIONERS' VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Complaint Filed:     April 15, 2025 <br> Trial Date:             None set |

1

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Real Parties" or "Sable") will and hereby do respond to the Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief ("Petition") filed by Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") and state as follows:

**INTRODUCTION**

1.      Answering the allegations in Paragraph 1, Sable admits that the "California Department of Forestry and Fire Protection and its Office of the State Fire Marshal (collectively Cal Fire)" granted pipeline safety regulation waivers ("State Waivers") to Sable pursuant to federal Consent Decree requirements governing the restart of pipelines CA-324, CA-325A and CA-325B (the "Las Flores Pipeline System"). To the extent Paragraph 1 characterizes issuance of the State Waivers as the final requirement needed to enable restart of the Las Flores Pipeline System, Sable denies those characterizations. The State Waivers are documents that speak for themselves.  Further answering the allegations in Paragraph 1, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required.  Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

2.      Answering the allegations Paragraph 2, Sable admits that the Las Flores Pipeline System is designed to transport oil from the Santa Ynez Unit.  Sable admits that on May 19, 2015, CA-324 (formerly known as Line 901) ruptured (the "2015 rupture"). Further answering the allegations in Paragraph 2, the allegations contained in this paragraph consist of Petitioners' characterizations of the rupture, to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

3.      Answering the allegations in Paragraph 3, Sable responds that the document referenced in this Paragraph speaks for itself, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

4.      Answering the allegations in Paragraph 4, the allegations contained in this paragraph consist of Petitioners' characterizations of the rupture, to which no response is required. Further answering the allegations in Paragraph 4, Sable lacks sufficient information or belief to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

each and every allegation in this paragraph not specifically admitted herein.

5.      Answering the allegations in Paragraph 5, Sable admits that trucking and replacement pipeline applications were filed "to truck oil" "while seeking permits to build a new replacement pipeline system."  Except as specifically admitted, Sable denies each and every allegation in this paragraph.

6.      Answering the allegations in Paragraph 6, Sable admits it acquired the Las Flores Pipeline System. Further answering the allegations in Paragraph 6, to the extent this paragraph characterizes the contents of documents described as "a draft Environmental Impact Report" and "a Cal Fire report," those documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 6, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. Except as specifically admitted, Sable denies each and every allegation in this paragraph.

7.      Answering the allegations in Paragraph 7, Sable admits that it sought and obtained State Waivers from Cal Fire. The State Waivers are documents that speak for themselves, to which no response is required. Further answering the allegations in Paragraph 7, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

8.      Answering the allegations in Paragraph 8, Sable admits that Cal Fire issued State Waivers and that "Cal Fire posted the State Waivers on its website *Pathways for Restarting CA-324 and CA-325*, https://osfm.fire.ca.gov/what-we-do/pipeline-safety-andcupa/pathways-for-restarting-pipelines." The State Waivers and website speak for themselves, to which no response is required. Further answering the allegations in Paragraph 8, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

9.      Answering the allegations in Paragraph 9, Sable admits state and federal agencies prepared a National Environmental Policy Act (NEPA)/CEQA review on the environmental impacts of the Celeron/All American and Getty Pipeline Projects. Further answering Paragraph 9, Sable admits that an Environmental Impact Report (EIR)/Environmental Impact Statement (EIS) was prepared and

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

certified by the California State Lands Commission and federal Bureau of Land Management.  Sable further responds that the contents of the EIR/EIS speak for themselves, to which no response is required. Further answering the allegations in Paragraph 9, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. Except as expressly admitted, Sable denies each and every allegation in this paragraph.

10.    Answering the allegations in Paragraph 10, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

11.    Answering the allegations in Paragraph 11, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegations in this paragraph.

12.    Answering the allegations in Paragraph 12, Sable responds that allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

**THE PARTIES**

13.    Answering the allegations in Paragraph 13, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

14.    Answering the allegations in Paragraph 14, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

15.    Answering the allegations in Paragraph 15, Sable responds that it lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

16.    Answering the allegations in Paragraph 16, Sable admits that Respondent and Defendant California Department of Forestry and Fire Protection is a political subdivision of the State

of California, organized and existing under the laws of the State of California, and includes several organizational programs, including the Office of the State Fire Marshal. The remaining allegations in this paragraph contain legal conclusions to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

17.    Answering the allegations in Paragraph 17, Sable admits that Respondent and Defendant Office of State Fire Marshal ("OSFM") is a political subdivision of the State of California, organized and existing under the laws of the State of California.  Sable admits that the restart of Las Flores Pipeline System is under the regulatory oversight of OSFM. Further answering the allegations in Paragraph 17, this paragraph contains legal conclusions to which no response is required. Except as specifically admitted herein, Sable denies each and every allegation in this paragraph.

18.    Answering the allegations in Paragraph 18, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

19.    Answering the allegations in Paragraph 19, Sable admits that Sable Offshore Corp. is the "the operator of the Las Flores Pipeline System, and a recipient of the approvals challenged in this action."  Further answering Paragraph 19, this paragraph contains legal conclusions, to which no response is required.  Except as expressly admitted, Sable denies each and every allegation in this paragraph.

20.    Answering the allegations in Paragraph 20, Sable admits that Pacific Pipeline Company is a wholly owned subsidiary of Sable Offshore Corp. and the legal owner of the Las Flores Pipeline System. Further answering the allegations Paragraph 20, this paragraph contains legal conclusions, to which no response is required.  Except as expressly admitted, Sable denies each and every allegation in this paragraph.

21.    Answering the allegations in Paragraph 21, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

22.    Answering the allegations in Paragraph 22, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground,

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

Sable denies each and every allegation in this paragraph.

**JURISDICTION AND VENUE**

23.     Answering the allegations in Paragraph 23, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions for which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

24.     Answering the allegations in Paragraph 24, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions for which no response is required. To the extent a response is required, Sable admits that venue is proper in this court. Except as expressly admitted, Sable denies each and every allegation in this paragraph.

25.     Answering the allegations in Paragraph 25, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

26.     Answering the allegations in Paragraph 26, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. Paragraph 26 further contains characterizations of law, for which the law speaks for itself. To the extent a response is required, Sable denies each and every allegation in this paragraph.

27.     Answering the allegations in Paragraph 27, Sable responds that Petitioners' "written notice and proof of service" attached to the Petition as "Exhibit A" speaks for itself, to which no response is required.  Further answering the allegations in Paragraph 27, this paragraph contains legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

28.     Answering the allegations in Paragraph 28, Sable responds that Petitioners' "Election to Prepare Administrative Record of Proceedings" attached to the Petition as "Exhibit B" speaks for itself, to which no response is required.  Further answering the allegations in Paragraph 28, this paragraph contains legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

29.     Answering the allegations in Paragraph 28, Sable responds that Petitioners' "notice and

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

proof of service to the Attorney General" attached to the Petition as "Exhibit C" speaks for itself, to which no response is required.  Further answering Paragraph 29, this paragraph contains legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

30.    Answering the allegations in Paragraph 30, Sable responds that Petitioners' "Request for Hearing and Notice of Request" attached to the Petition as Exhibit D speaks for itself, to which no response is required.  Further answering the allegations in Paragraph 30, this paragraph contains legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

31.    Answering the allegations in Paragraph 31, this paragraph contains legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

32.    Answering the allegations in Paragraph 32, this paragraph contains legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

## STATEMENT OF FACTS

**A.    The Las Flores Pipeline System and Environmental Setting**

33.    Answering the allegations in Paragraph 33, Sable admits the allegations in this paragraph.

34.    Answering the allegations in Paragraph 34, Sable admits the allegations in this paragraph.

35.    Answering the allegations in Paragraph 35, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Sable further responds that the "Draft EIR/EIS," "Final EIR/EIS," "Final Development Plan," and "Development Plan Conditions," speak for themselves, to which no response is required. Further answering the allegations in Paragraph 35, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

this paragraph.

36. Answering the allegations in Paragraph 36, Sable responds that the contents of the EIR/EIS speak for themselves, to which no response is required. Further answering the allegations in Paragraph 36, this paragraph contains Petitioners' characterizations of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

37. Answering the allegations in Paragraph 37, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

38. Answering the allegations in Paragraph 38, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

39. Answering the allegations in Paragraph 39, Sable admits that the Las Flores Pipeline System was "constructed from 1988 to 1991." Further answering the allegations in Paragraph 39, Sable admits that "Line 901/CA-324 is a buried and insulated 24-inch diameter pipeline that extends just under eleven miles along…Gaviota coastline." Further answering the allegations in Paragraph 39, Sable admits that Line 901/CA-324 is designed to transport heated crude from Exxon Mobil's storage tanks in Las Flores Canyon to the Gaviota Pumping Station. Further answering the allegations in Paragraph 39, Sable admits that Line 901/CA-324 "went into service in 1992." Except as expressly admitted, Sable denies each and every allegation in this paragraph.

40. Answering the allegations in Paragraph 40, Sable admits that "Line 903/CA-325" is a "30-inch diameter pipeline that extends approximately 114 miles in length" from the Gaviota Pump Station to the Pentland Pump Station, with an intermediate station at Sisquoc. Further answering the allegations in Paragraph 40, Sable admits that "Line 903/CA-325 became operational in 1991." Except as expressly admitted, Sable denies each and every allegation in this paragraph.

41. Answering the allegations in Paragraph 41, Sable denies the allegations in this

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

paragraph.

42.    Answering the allegations in Paragraph 42, Sable lacks sufficient information or belief to enable it to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

43.    Answering the allegations in Paragraph 43, Sable admits the Las Flores Pipeline System "rises close to 3,000 feet of elevation."  Further answering the allegations in Paragraph 43, Sable admits that the Las Flores Pipeline System nears "approximately 690 feet of elevation at its Pentland Station terminus."  Further answering the allegations in Paragraph 43, Sable lacks sufficient information or belief to enable it to answer the remaining allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

44.    Answering the allegations in Paragraph 44, Sable admits the allegations contained in this paragraph.

45.    Answering the allegations in Paragraph 45, Sable responds that to the extent this paragraph seeks to detail the project description for the Las Flores Pipeline System as described in the Santa Barbara County Planning Commission Action's March 3, 1986 "Celeron Pipeline Final Development Plan" and the "1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS, " the contents of those documents speak for themselves, to which no response is required. Further answering the allegations in Paragraph 45, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

46.    Answering the allegations in Paragraph 46, Sable responds that the allegations contained in this paragraph contain characterizations of law, for which the law speaks for itself. Further answering the allegations in Paragraph 46, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

47.    Answering the allegations in Paragraph 47, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

contentions, and/or conclusions, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

48. Answering the allegations in Paragraph 48, Sable admits the "Pipeline System also passes through … the city of Buellton, California…." Further answering the allegations in Paragraph 48, this paragraph contains legal conclusions and Petitioners' characterization of their legal claims, to which no response is required. To the extent a response is required, Sable denies each and every remaining allegation in this paragraph.

**B.    The 2015 Refugio State Beach Oil Spill**

49. Answering the allegations in Paragraph 49, Sable admits the allegations contained in this paragraph.

50. Answering the allegations in Paragraph 50, Sable admits the occurrence of the 2015 rupture. Further answering the allegations of Paragraph 50, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

51. Answering the allegations in Paragraph 51, Sable responds that the allegations contained in this paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. Further answering the allegations in Paragraph 51, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

52. Answering the allegations in Paragraph 52, Sable admits that PHMSA issued a Corrective Action Order on May 21, 2015, and responds that the contents of that document speaks for itself, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

53. Answering the allegations in Paragraph 53, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required. To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

54.     Answering the allegations in Paragraph 54, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required.  To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

55.     Answering the allegations in Paragraph 55, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required.  To the extent a response is required, and except as specifically admitted, Sable denies each and every allegation in this paragraph.

56.     Answering the allegations in Paragraph 56, Sable responds that PHMSA's "Failure Report" speaks for itself, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

57.     Answering the allegations in Paragraph 57, Sable responds that PHMSA's "Failure Report" speak for itself, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

58.     Answering the allegations in Paragraph 58, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 58, Sable responds that the contents of the "May 2016 Memorandum of Understanding" speaks for itself, to which no response is required.  Further answering the allegations in Paragraph 58, the allegations contained in this paragraph contain Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

59.     Answering the allegations in Paragraph 59, Sable admits that a Consent Decree was entered in *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415, and that the contents of the Consent Decree speak for themselves to which no response is required. To the extent a request is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

60.     Answering the allegations in Paragraph 60, Sable admits that a Consent Decree was entered in a case entitled *United States of America and the People of the State of California v. Plains*

11

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

*All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415, and that the contents of the Consent Decree speak for themselves, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

61.    Answering the allegations in Paragraph 61, Sable admits that a Consent Decree was entered in a case entitled *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415, and that the contents of the Consent Decree speak for themselves, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

62.    Answering the allegations in Paragraph 62, Sable admits that a Consent Decree was entered in a case entitled *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415, and that the contents of the Consent Decree speak for themselves, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

**C.    Sable's Pursuit to Restart and the Implications of Cal Fire's State Waivers**

63.    Answering the allegations of Paragraph 63, Sable admits that no crude oil has traveled through the Las Flores Pipeline System since the 2015 rupture. Except as expressly admitted, Sable denies each and every allegation in this paragraph.

64.    Answering the allegations of Paragraph 64, Sable admits that on February 14, 2024, Sable "closed on a Purchase and Sale Agreement with ExxonMobil Corporation and Mobil Pacific Pipeline Company," the contents of which speaks for itself, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

65.    Answering the allegations in Paragraph 65, Sable admits the allegations in this paragraph.

66.    Answering the allegations in Paragraph 66, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself.  Further answering the allegations in Paragraph 66, Sable responds that the contents of the Consent Decree speak for

themselves, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

67.    Answering the allegations in Paragraph 67, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further answering the allegations in Paragraph 67, this paragraph contains legal conclusions, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

68.    Answering the allegations in Paragraph 68, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

69.    Answering the allegations of Paragraph 69, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

70.    Answering the allegations in Paragraph 70, Sable admits it sent an April 24, 2024, "letter to Cal Fire," the contents of which speaks for itself, to which no response is required.  To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

71.    Answering the allegations in Paragraph 71, Sable admits it filed a "Form 8-K" with the U.S. Securities and Exchange Commission on December 17, 2024," the contents of which speaks for itself, to which no response is required.  Further answering the allegations in Paragraph 71, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further Sable lacks sufficient information or belief to enable it to answer the allegations contained in

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

72.    Answering the allegations in Paragraph 72, Sable responds that this paragraph asserts legal conclusions to which no response is required. Sable further responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. To the extent a response is required, Sable denies each and every allegation in this paragraph.

73.    Answering the allegations in Paragraph 73, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

74.    Answering the allegations in Paragraph 74, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

75.    Answering the allegations in Paragraph 75, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

76.    Answering the allegations in Paragraph 76, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that the contents of the "State Waiver issued for Line 901/CA-324" speaks for themselves, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

77.    Answering the allegations in Paragraph 77, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that the contents of the "State Waiver issued for Line 903/CA-325A/B" speaks for themselves, to which no response is required. To the extent a response is required, Sable denies the remaining allegations in this paragraph.

78.    Answering the allegations in Paragraph 78, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds the contents of PHMSA's "non-rulemaking federal docket for each State Waiver (Docket ID PHMSA-2025-002 for CA-324 and Docket ID PHMSA-2025-003 for CA-325)" speak for themselves, to which no response is required. Further answering the allegations in Paragraph 78, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every remaining allegation in this paragraph.

79.    Answering the allegations in Paragraph 79, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that the contents of "PHMSA's Associate Administrator for Pipeline Safety['s]" February 11, 2025 "letters concurring with Cal Fire's State Waivers" speak for themselves, to which no response is required. To the extent a response is required, Sable denies each and every allegation in this paragraph.

80.    Answering the allegations of Paragraph 80, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable responds that the contents of the "State Waivers" speak for themselves, to which no response is required.  Further answering the allegations in Paragraph 80, Sable responds that this paragraph asserts legal conclusions to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

81.    Answering the allegations in Paragraph 81, Sable responds that this paragraph asserts

legal conclusions and Petitioners' characterizations of their legal claims, to which no response is required.  Further answering the allegations in Paragraph 81, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, to the extent a response is required, Sable denies each and every allegation in this paragraph.

82.    Answering the allegations in Paragraph 82, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

83.    Answering the allegations in Paragraph 83, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself.  Further answering the allegations in Paragraph 83, Sable responds that the remaining allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

84.    Answering the allegations in Paragraph 84, Sable responds that the contents of the "1985 Celeron/All-American and Getty Pipeline Projects EIR/EIS" speaks for themselves, to which no response is required. Further answering the allegations in Paragraph 84, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

85.    Answering the allegations in Paragraph 85, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

86.    Answering the allegations in Paragraph 86, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required,

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

Sable denies each and every allegation in this paragraph.

87.    Answering the allegations in Paragraph 87, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. Further, Sable lacks sufficient information or belief to enable it to answer the allegations contained in this paragraph, and basing its denial on that ground, Sable denies each and every allegation in this paragraph.

88.    Answering the allegations in Paragraph 88, Sable responds that this paragraph describes events that are the subject of the Petition and that are described in the record of proceedings, to which Sable responds that the record of proceeding speaks for itself. . Further answering the allegations in Paragraph 88, Sable responds that the allegations contained in this Paragraph consist of Petitioners' own characterization of their legal claims, legal contentions, and/or conclusions, to which no response is required.  To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph

89.    Answering the allegations in Paragraph 89, Sable admits it filed a "Form 8-K" with the U.S. Securities and Exchange Commission on March 17, 2025," the contents of which speaks for itself, to which no response is required. To the extent a response is required, and except as expressly admitted, Sable denies each and every allegation in this paragraph.

<strong>LEGAL BACKGROUND</strong>

**A.    Oil and Gas Pipeline Safety Laws and Regulations**

90.    Answering the allegations in Paragraph 90, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

91.    Answering the allegations in Paragraph 91, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

92.    Answering the allegations in Paragraph 92, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

17

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

93.     Answering the allegations in Paragraph 93, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

94.     Answering the allegations in Paragraph 94, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

95.     Answering the allegations in Paragraph 95, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

96.     Answering the allegations in Paragraph 96, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

97.     Answering the allegations in Paragraph 97, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

98.     Answering the allegations in Paragraph 98, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

99.     Answering the allegations in Paragraph 99, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

100.     Answering the allegations in Paragraph 100, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

101.     Answering the allegations in Paragraph 101, this paragraph contains characterizations of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

102.     Answering the allegations in Paragraph 102, this paragraph contains characterization

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

**B.        CEQA's Environmental Review Requirements**

103.    Answering the allegations in Paragraph 103, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

104.    Answering the allegations in Paragraph 104, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

105.    Answering the allegations in Paragraph 105, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

106.    Answering the allegations in Paragraph 106, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

107.    Answering the allegations in Paragraph 107, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

108.    Answering the allegations in Paragraph 108, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

109.    Answering the allegations in Paragraph 109, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

110.    Answering the allegations in Paragraph 110, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

111.    Answering the allegations in Paragraph 111, this paragraph contains characterization

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

112.    Answering the allegations in Paragraph 112, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

113.    Answering the allegations in Paragraph 113, this paragraph contains characterization of law, for which the law speaks for itself, and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

**FIRST CAUSE OF ACTION**

**(Violations of Federal Pipeline Safety Laws – 49 U.S.C. § 60118)**

114.    Responding to the allegations of Paragraph 114, Sable incorporates its responses to Paragraphs 1-113 of the Petition, inclusive.

115.    Answering the allegations in Paragraph 115, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

116.    Answering the allegations in Paragraph 116, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

117.    Answering the allegations in Paragraph 117, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

118.    Answering the allegations in Paragraph 118, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

119.    Answering the allegations in Paragraph 119, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

120.    Answering the allegations in Paragraph 120, this paragraph contains Petitioners'

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

**SECOND CAUSE OF ACTION**

**(Violations of State Pipeline Safety Laws – Gov. Code § 51011)**

121.    Responding to the allegations of Paragraph 121, Sable incorporates its responses to Paragraphs 1-120 of the Petition, inclusive.

122.    Answering the allegations in Paragraph 122, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  Further answering the allegations in Paragraph 122, this paragraph characterizes the State Waivers, the contents of which speak for themselves, and to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

123.    Answering the allegations in Paragraph 123, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  Further answering the allegations in Paragraph 123, this paragraph characterizes the State Waivers, the contents of which speak for themselves, and to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

124.    Answering the allegations in Paragraph 124, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  Further answering the allegations in Paragraph 124, this paragraph characterizes the State Waivers, the contents of which speak for themselves, and to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

125.    Answering the allegations in Paragraph 125, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

**THIRD CAUSE OF ACTION**

**(Violations of CEQA – Pub. Resources Section 21000, *et seq.*;**

**14 Cal. Code Regs. Section 15000, *et seq.*)**

126.    Responding to the allegations of Paragraph 126, Sable incorporates its responses to

Paragraphs 1-125 of the Petition, inclusive.

127.    Answering the allegations in Paragraph 127, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  Further answering the allegations in Paragraph 127, this paragraph characterizes the State Waivers, the contents of which speak for themselves, and to which no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

128.    Answering the allegations in Paragraph 128, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  Further answering the allegations in Paragraph 128, this paragraph characterizes the State Waivers, the contents of which speak for themselves, and to no response is required. To the extent a response is required, except as expressly admitted, Sable denies each and every allegation in this paragraph.

129.    Answering the allegations in Paragraph 129, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

130.    Answering the allegations in Paragraph 130, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

131.    Answering the allegations in Paragraph 131, this paragraph contains Petitioners' characterizations of their legal claims and legal conclusions, to which no response is required.  To the extent a response is required, Sable denies each and every allegation in this paragraph.

## PETITIONERS' PRAYER FOR RELIEF

Answering Petitioners prayer for relief, Sable denies that Petitioners are entitled to any of the relief requested or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

As separate and distinct answers and defenses to the Petition, and on the basis that it has evidentiary support, or may obtain evidentiary support after a reasonable opportunity for further investigation or discovery, Sable asserts the following affirmative defenses:

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Exhaustion of Administrative Remedies)

1. Petitioners are barred from maintaining this action, either in whole or in part, by their failure to exhaust all administrative remedies.

## SECOND AFFIRMATIVE DEFENSE

### (Failure to Exhaust Issue)

2. Petitioners are barred from maintaining this action, either in whole or in part, by their failure to exhaust each issue raised herein, as required by law.

## THIRD AFFIRMATIVE DEFENSE

### (Statute of Limitations)

3. Petitioners are barred from maintaining this action, either in whole or in part, by applicable statutes of limitations, including but not limited to limitations periods expressed in the Government Code and Public Resources Code section 21167(c).

## FOURTH AFFIRMATIVE DEFENSE

### (Standing)

4. Petitioners lack standing to assert some or all of the claims set forth in the Petition.

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

5. Petitioners are barred from maintaining this action, either in whole or in part, by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

6. The Petition fails to state facts sufficient to constitute a cause of action.

## SEVENTH AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

7. Petitioners are barred from maintaining this action, either in whole or in part, by the doctrine of equitable estoppel.

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

## EIGHTH AFFIRMATIVE DEFENSE

### (*Res Judicata*, Collateral Estoppel, Plea in Abatement)

8.     Petitioners are barred from maintaining this action, either in whole or in part, by the doctrines of *res judicata*, collateral estoppel, and/or plea in abatement.

## NINTH AFFIRMATIVE DEFENSE

### (Laches)

9.     Petitioners are barred from maintaining this action, either in whole or in part, by the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

10.     Petitioners are barred from maintaining this action, either in whole or in part, by the doctrine of "unclean hands."

## ELEVENTH AFFIRMATIVE DEFENSE

### (Public Interest Against Injunction)

11.     Petitioners are barred from maintaining this action, either in whole or in part, because the balancing of hardships and considerations of public interest mandate against issuance of an injunction.

## TWELFTH AFFIRMATIVE DEFENSE

### (Non-Justiciable Political Question)

12.     Petitioners are barred from maintaining this action, either in whole or in part, because the issues raised in the Petition are non-justiciable political questions.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Ripeness)

13.     Petitioners are barred from maintaining this action, either in whole or in part, on the grounds that some or all of the claims are not ripe for adjudication.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Mootness)

14.     Petitioners are barred from maintaining this action, either in whole or in part, on the

grounds that some or all of the claims are barred by the doctrine of mootness.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Notice)

15. Petitioners are barred from maintaining this action, either in whole or in part, for failure to give legally adequate notice of the action required under the California Environmental Quality Act (Cal. Public Resources Code, §§ 21000 *et seq.*)

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Compliance with All Applicable Law)

16. 16. Petitioners are barred from maintaining this action, either in whole or in part, because the Office of State Fire Marshall and Real Parties at all times complied with all provisions of applicable law.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Cal. Public Resources Code, § 21166)

17. Petitioners are barred from maintaining this action, either in whole or in part, because none of the circumstances enumerated in Public Resources Code, § 21166 are present to require the preparation of a subsequent or supplemental environmental impact report.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Lack of Jurisdiction)

18. Petitioners are barred from maintaining this action, either in whole or in part, because the Court lacks jurisdiction to provide the requested relief due to the Consent Decree entered in a case entitled *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2-20-cv-02415.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Lack of Irreparable Harm/No Prejudice)

19. Petitioners are barred from maintaining this action, either in whole or in part, because Petitioners fail to allege any irreparable harm or prejudice.

/ / /

/ / /

## TWENTIETH AFFIRMATIVE DEFENSE

### (Preemption)

20. Petitioners claims are preempted by federal law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (No Private Right of Action)

21. Petitioners are barred from maintaining this action, either in whole or in part, because Petitioners' statutory claims provide no private right of action.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Improper Control of a Public Agency)

22. Petitioners improperly seek to control the exercise of discretion of a public agency and to compel the exercise of discretion on a particular manner.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Contrary to Public Policy)

23. The relief that Petitioners seek, if granted, would compel Cal Fire and Sable to act in a manner contrary to public policy.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (No Public Benefit)

24. The relief that Petitioners seek, if granted, would not confer a public benefit.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Future Defenses)

25. Sable reserves the right to amend this Answer and its defenses, to assert additional affirmative defenses, and to supplement, alter, or change this Answer upon revelation of more definite facts by Petitioners or other parties, and upon the undertaking of an investigation of this matter.

Dated: September 17, 2025          Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**

TREVOR D. LARGE

_____
Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
**SABLE OFFSHORE CORP.**
**PACIFIC PIPELINE COMPANY**

27

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

## VERIFICATION

I, Steven P. Rusch, am Vice President of Regulatory and Environmental Affairs of Sable Offshore Corp., and I am an Authorized Representative of Pacific Pipeline Company. I am authorized to execute this verification on behalf of them. I have read the attached Verified Answer to the Petitioners' Verified Petition and Complaint for Declaratory Relief and Injunctive Relief and am familiar with its contents. The facts provided in the petition and complaint are true of my personal knowledge, except for those alleged on information and belief, and I believe those to be true.

DATED: September 17, 2025

_____
Steven P. Rusch

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**PROOF OF SERVICE**

I, Garrett Stanton, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On September 17, 2025, I served the document(s) **REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO PETITIONERS' VERIFIED PETITION FOR WRIT OF MANDATE** on the interested parties stated below, by the following means of service:

**See Attached Service List**

(BY U.S. MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

(BY FACSIMILE)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

(BY OVERNIGHT MAIL)  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒    BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 17, 2025, at Los Angeles, California.

_____
Garrett Stanton

29
REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**SERVICE LIST**

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA  94612

**ATTORNEYS FOR PETITIONERS**
  CENTER FOR BIOLOGICAL
  DIVERSITY and
WISHTOYO FOUNDATION

TEL.:    (510) 844-7100
FAX:    (510) 844-7150
Email:
    jteelsimmonds@biologicaldiversity.org
      depettit@biologicaldiversity.org
      tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a
  California non-profit corporation; GET
  OIL OUT!, a California non-profit
  corporation; SANTA BARBARA
  COUNTY ACTION NETWORK, a
  California non-profit corporation;
  SIERRA CLUB, a national non-profit
  corporation; and SANTA BARBARA
  CHANNELKEEPER, a California non-
  profit corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
    jfrankel@environmentaldefensecenter.org
    trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/
  DEFENDANTS**
California Department of Forestry and Fire
  Protection, Office of the State Fire
  Marshal; Daniel Berlant, in his official
  capacity as State Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN
  INTEREST**
Sable Offshore Corp.; Pacific Pipeline
  Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
    benjaminhanelin@paulhastings.com
    natalierogers@paulhastings.com

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

Trevor D. Large, Esq.
**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
820 State Street, 4th Floor
Santa Barbara, CA  93101

**ATTORNEYS FOR REAL PARTIES IN I INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:   (805) 996-7000
Email:  TLarge@FLASllp.com

REAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:  09/19/2025                                  Time:   10:00 AM
Judicial Officer:       Donna D Geck
Deputy Clerk:          Maria Vidal                               Dept:   SB Dept 4
Deputy Sheriff:        Marco Diaz
Bailiff/Court Officer:                                           Case No: 25CV02244
Court Reporter:        Shelley Cockrell

---

**Center for Biological Diversity  et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

| | |
|---|---|
| Talia Nimmer | Petitioner's Attorney (via Zoom) |
| Tiffany Yee | Respondent's Attorney (via Zoom) |
| Jeffrey Dintzer | Attorney for Real Party in Interest |
| Garrett Stanton | Attorney for Real Party in Interest |
| Trevor Large | Attorney for Real Party in Interest |
| Linda Krop | Attorney for Non-Party |
| Tara Rengifo | Attorney for Non-Party |

---

**NATURE OF PROCEEDINGS***:  Case Management Conference; Motion: Bifurcation*

The Court adopted the tentative ruling and set a hearing as follows:

December 05, 2025 8:30 AM
Case Management Conference
Geck, Donna D
SB Dept 4

Mr. Dintzer was directed to give notice.

**RULING**:

(1)      For the reasons set forth herein, the motion of petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) to bifurcate trial of this action is denied.
(2)      For the reasons set forth herein, the motion of petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) to bifurcate trial of this action is denied.
(3)      As discussed herein, the parties shall meet and confer as to the desirability of consolidation of these actions and report to the court the results of such discussions at the next case management conference.

---

These are two related cases involving the same underlying incidents and activity. The petitioners and plaintiffs in their respective actions make essentially the same motions, and on the same grounds, to

---

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

bifurcate trial; defendants oppose both motions on essentially the same grounds. The court will therefore address both motions together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

As alleged in the petitioners' respective petitions:

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (CBD Petition, ¶¶ 59-62; EDC Petition, ¶¶ 85-88 & fn. 3 [the Federal Consent Decree].)

The Federal Consent Decree required the operator to "remediate all internal or external metal loss anomalies that have an ILI reported depth of 40 [percent] or greater wall loss, within one year of discovery." (CBD Petition, ¶ 60.) The Federal Consent Decree also expressly required that prior to any restart, the operator
"shall apply for a State Waiver through [OSFM] for the limited effectiveness of cathodic protection" and that it "must receive a State Waiver from [OSFM] prior to restarting." (CBD Petition, ¶ 61.) The Federal Consent Decree stated that OSFM has the discretion to require additional terms and conditions if it grants any request for a State Waiver. (CBD Petition, ¶ 62.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

---

**MINUTE ORDER**

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id*. & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (EDC Petition, ¶ 115; CBD Petition, ¶ 71.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (EDC Petition, ¶ 117.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On July 8, 2025, Sable filed their demurrers and their motions to strike as to the CBD Petition and EDC Petition. These demurrers and motions to strike were originally set for this hearing date of September 19.

On August 27, 2025, CBD and EDC filed motions in their respective cases to bifurcate what they describe as their "procedural claims" from their "substantive claims."

CBD identifies their procedural claims as:

"(1) OSFM violated sections 60118(c)(1)(B), (d) of the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101, *et seq.* (the 'FPSA'), by failing to provide public notice and a hearing (First Cause of Action, Petition at ¶¶ 115, 117);

"(2) OSFM violated sections 60118(c)(3), (d) of the FPSA by failing to provide an order containing the reasons for granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 118);

"(3) OSFM violated sections 60118(d) of the FPSA by failing to conduct environmental review before granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 119);

---

SC-2411 (Revised July 1, 2013)                         **MINUTE ORDER**

"(4) OSFM violated section 51011(c) of California's Elder Pipeline Safety Act, Gov. Code section 51010, *et seq.* (the 'CPSA'), by failing to include a discussion of those factors that OSFM considered significant to the granting of the Waivers (Second Cause of Action, Petition at ¶¶ 123-124); and

"(5) OSFM violated CEQA, Pub. Resources Code § 2100, *et seq.*, by failing to prepare an environmental document for the Project and include the public in the decisionmaking process (Third Cause of Action)." (CBD Motion, at p. 4.)

EDC similarly identifies their procedural claims as:

"First Cause of Action: OSFM failed to provide a public process, including adequate public notice and a public hearing, as required by the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101 et seq. (the 'FPSA').

"Second Cause of Action: OSFM failed to provide a statement of reasons in its Waiver approvals, as required by the FPSA.

"Third Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the FPSA.

"Fifth Cause of Action: OSFM failed to provide a discussion of significant factors in its Waiver approvals, as required by California's Elder Pipeline Safety Act, Gov. Code section 51010 et seq. (the 'CPSA').

"Sixth Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the CPSA.

"Eighth Cause of Action: OSFM failed to prepare a subsequent Environmental Impact Report (EIR), as required by CEQA." (EDC Motion, at p. 4.)

CBD identifies their substantive claims as:

"(1) OSFM violated sections 60118(c)(1)(A), (d) of the FPSA by failing to demonstrate that the Waivers are 'not inconsistent with pipeline safety' (First Cause of Action, Petition at ¶¶ 115, 116); and

"(2) OSFM violated section 51011(b) of the CPSA by failing to demonstrate that in issuing the State Waivers, the 'risk to public safety is slight and the probability of injury or damage remote' (Second Cause of Action, Petition at ¶ 122.)" (CBD Motion, at p. 5.)

EDC similarly identifies their substantive claims as:

"Fourth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the waiver is not inconsistent with pipeline safety'—the relevant legal standard under the FPSA. (49 U.S.C. § 60118(c)(1)(A), (d).)

"Sixth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the risk to public safety is slight and the probability of injury or damage remote'—the relevant legal standard under the CPSA. (Gov. Code § 51011(b).)" (EDC Motion, at p. 5.)

CBD and EDC argue that the procedural claims are straightforward in that they require petitioners to establish only that OSFM failed to comply with its procedural mandates and that the only relevant facts

SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

are whether OSFM did or did not do so. The substantive claims, by contrast, require fact and time-intensive inquires as to whether OSFM adequately demonstrated that the State Waivers protect public and pipeline safety. CBD and EDC seek orders to resolve the procedural claims first. If CBD and EDC are able to succeed on their procedural claims, the substantive claims need not be resolved by the court now but would await further administrative proceedings which may make the substantive claims moot.

Sable opposes both motions. Sable argues that all claims, including both procedural and substantive claims, are so entangled with each other that bifurcation would not likely result in judicial efficiency for the court or for the litigants.

On September 8, 2025, Sable filed notices withdrawing their demurrers and motions to strike. The demurrers and motions to strike accordingly were taken off calendar.

On September 12, 2025, OSFM filed notices that OSFM takes no position with respect to the petitioners' motions to bifurcate.

**Analysis:**

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States." (Code Civ. Proc., § 1048, subd. (b).)

"The court may, when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby, on motion of a party, after notice and hearing, make an order, no later than the close of pretrial conference in cases in which such pretrial conference is to be held, or, in other cases, no later than 30 days before the trial date, that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case, except for special defenses which may be tried first pursuant to Sections 597 and 597.5." (Code Civ. Proc., § 598.)

Under sections 598 and 1048, the court has discretion to bifurcate actions to accomplish the statutory purposes of expedition and economy. (See *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 833.)

A lengthy discourse on the nature of the petitioners' claims is neither necessary nor helpful here. While the petitioners' distinction between procedural and substantive claims is useful for some purposes, all of the claims are closely connected to a common set of facts. In short, the procedural claims do not exist in a vacuum. Among other things, the court's understanding of the factual basis for the substantive claims informs the court so as to assist in the determination of the procedural claims. In these circumstances, limiting a first phase of trial to one set of claims has the potential to exclude evidence or argument useful, and perhaps necessary, to the adjudication of the procedural issues.

Based upon the present procedural posture of the case and the arguments of the parties, the court does not find that bifurcation is likely to promote expeditious or efficient adjudication. Accordingly, the court will deny the motions to bifurcate.

At the same time, the petitioners mention the potential of consolidation of case No. 25CV02244 with case No. 25CV02247. This issue is not now before the court. However, as these motions demonstrate, the overlap in facts and law between the cases appears to make disposition of these cases together more efficient than addressing each case separately. (See Code Civ. Proc., § 1048, subd. (a).) The parties shall meet and confer as to the desirability of consolidation of these actions, for all purposes or for

purposes of trial only, and report to the court at the next case management conference the results of such discussions.


DARREL E. PARKER, EXECUTIVE OFFICER             Minutes Prepared by:

                                              _____Maria Vidal_____ , Deputy

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
9/22/2025 12:06 PM
By: Narzralli Baksh , Deputy

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:      (213) 576-1000
Facsimile:      (213) 576-1100

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California 90067
Telephone:      (310) 620-5879
Facsimile:      (310) 620-5899

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA BARBARA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.<br><br>Petitioners and Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et. al<br><br>Respondents and Defendants.<br><br>and<br><br>SABLE OFFSHORE CORP., et al.<br><br>Real Parties in Interest. | Case No. 25CV02244<br><br>Assigned for all purposes to<br>Hon. Donna D. Geck<br><br>**SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S NOTICE OF RULING**<br><br>Complaint Filed:     April 15, 2025<br>Trial Date:          None set |

- 1 -

REAL PARTIES' NOTICE OF RULING

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 19, 2025, the Court held a hearing concerning Petitioners' Motion to Bifurcate and a Case Management Conference.  The Court adopted its tentative order to deny Petitioners' Motion to Bifurcate, which is attached hereto as **Exhibit A**.  The parties stipulated on the record to consolidate this case with Case No. 25CV02247.  The Court set a Further Case Management Conference for December 5, 2025, at 8:30 a.m. in Department 4.  Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company were ordered to give notice.

Dated:  September 22, 2025                    Respectfully submitted,

**ALSTON & BIRD**
JEFFREY D. DINTZER
GARRETT B. STANTON

**PAUL HASTINGS LLP**
DUNCAN JOSEPH MOORE

**FAUVER, LARGE, ARCHBALD & SPRAY LLP**
TREVOR LARGE

By:  _____
                    Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP.; PACIFIC PIPELINE
COMPANY

- 2 -
REAL PARTIES' NOTICE OF RULING

# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

☰

Notice: The court is aware of fraudulent messages and scams being sent to the public. For more information please click <u>here</u>.

# Environmental Defense Center et al vs California Dept of Forestry and Fire Protection

## Case Number

25CV02247

## Case Type

Civil Law & Motion

## Hearing Date / Time

Fri, 09/19/2025 - 10:00

## Nature of Proceedings

CMC; Bifurcation

## Tentative Ruling

(1)    For the reasons set forth herein, the motion of petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) to bifurcate trial of this action is denied.

(2)     For the reasons set forth herein, the motion of petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) to bifurcate trial of this action is denied.

(3)     As discussed herein, the parties shall meet and confer as to the desirability of consolidation of these actions and report to the court the results of such discussions at the next case management conference.

These are two related cases involving the same underlying incidents and activity. The petitioners and plaintiffs in their respective actions make essentially the same motions, and on the same grounds, to bifurcate trial; defendants oppose both motions on essentially the same grounds. The court will therefore address both motions together.

Documents filed by petitioners and plaintiffs Center for Biological Diversity and Wishtoyo Foundation (case No. 25CV02244) will be identified by the prefix, and these parties will be collectively referred to as, "CBD"; documents filed by petitioners and plaintiffs Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper (case No. 25CV02247) will be identified by the prefix, and these parties collectively referred to as, "EDC." Petitioners and plaintiffs will collectively be referred to as "petitioners"; respondents and defendants will be collectively referred to as "respondents"; a petition and complaint will be referred to simply as a "petition." Respondents Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California, and Daniel Berlant, in his official capacity as State Fire Marshal will be collectively referred to as "OSFM." Real parties in interest Sable Offshore Corp., and Pacific Pipeline Company will be collectively referred to as "Sable."

**Background:**

As alleged in the petitioners' respective petitions:

These actions involve two oil pipelines connected to three offshore platforms known as the Santa Ynez Unit. (CBD Petition, ¶¶ 33, 34; EDC Petition, ¶ 38, 39.) The two oil pipelines at issue (collectively, the Las Flores Pipelines) consist of Las Flores Pipeline CA-324 (Line 324) and Las Flores Pipeline CA-325 (Line 325). (CBD Petition, ¶¶ 39, 40; EDC Petition, ¶ 41.) Prior to 2015, when owned by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline (collectively, Plains), Line 324 was known as Line 901 and Line 325 was known as Line 903. (CBD Petition, ¶ 49; EDC Petition, ¶ 41, 68.)

The Las Flores Pipelines were constructed and operated following approval by Santa Barbara County in 1986. (CBD Petition, ¶ 35; EDC Petition, ¶ 54.) This approval relied upon an environmental impact report (EIR) drafted in 1984 and finalized in 1985. (CBD Petition, ¶ 35; EDC Petition, ¶ 54 & fn. 1.)

In 2015, Line 324 (formerly Line 901) ruptured causing a serious oil spill (Refugio Oil Spill). (CBD Petition, ¶¶ 50-51; EDC Petition, ¶¶ 69-70.) The Las Flores Pipelines were consequently shut down at that time. (CBD Petition, ¶ 52; EDC Petition, ¶ 82.)

In March 2020, the United States and the State of California sued Plains based upon damages from the Refugio Oil Spill in *United States v. Plains All American Pipeline*, United States District Court for the Central District of California, case No. 2:20-cv-02415 (the Federal Action). (CBD Petition, ¶ 59; EDC Petition, ¶ 85.) The Federal Action was settled by a consent decree (Federal Consent Decree) entered by the court. (CBD Petition, ¶¶ 59-62; EDC Petition, ¶¶ 85-88 & fn. 3 [the Federal Consent Decree].)

The Federal Consent Decree required the operator to "remediate all internal or external metal loss anomalies that have an ILI reported depth of 40 [percent] or greater wall loss, within one year of discovery." (CBD Petition, ¶ 60.) The Federal Consent Decree also expressly required that prior to any restart, the operator "shall apply for a State Waiver through [OSFM] for the limited effectiveness of cathodic protection" and that it "must receive a State Waiver from [OSFM] prior to restarting." (CBD Petition, ¶ 61.) The Federal Consent Decree stated that OSFM has the discretion to require additional terms and conditions if it grants any request for a State Waiver. (CBD Petition, ¶ 62.)

In 2024, Sable acquired the Santa Ynez Unit and the Las Flores Pipelines. (CBD Petition, ¶ 64-65; EDC Petition, ¶ 99.)

In April 2024, Sable submitted State Waiver applications to OSFM for Lines 324 and 325. (EDC Petition, ¶ 110 & exhibit B.)

On September 24, 2024, CBD set a letter to OSFM stating that the OSFM had a duty to conduct an analysis and provide opportunities for meaningful public participation under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (CBD Petition, ¶ 68.)

On September 27, 2024, EDC sent a letter to OSFM renewing their March 2024 request for a public process. (EDC Petition, ¶ 112.) EDC also stated that operating the Las Flores Pipeline System without effective cathodic protection was neither anticipated nor reviewed in the 1985 EIR or any project approval, and the potential impacts of doing so have never been fully considered. (*Id.* & exhibit C.) OSFM never responded to the letter. (EDC Petition, ¶ 112.)

On December 17, 2024, OSFM issued State Waivers for Lines 324 and 325 with conditions. (EDC Petition, ¶ 115; CBD Petition, ¶ 71.) OSFM did not offer any sort of public process in advance of its decision. (EDC Petition, ¶ 115.)

On February 11, 2025, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) sent a letter to OSFM indicating that it would not object to the OSFM's issuance of the State Waivers. (EDC Petition, ¶ 117.)

On April 15, 2025, CBD filed their verified petition (case No. 25CV02244) seeking writ and injunctive relief asserting three causes of action: (1) violation of federal pipeline safety laws (49 U.S.C. § 60118); (2) violation of state pipeline safety laws (Gov. Code, § 51011); and (3) violations of CEQA.

Also on April 15, 2025, EDC filed their verified petition (case No. 25CV02247) seeking writ, injunctive, and declaratory relief asserting eight causes of action: (1) violation of the federal Pipeline Safety Act (FPSA, 49 U.S.C. § 60118(d))—failure to provide a public process; (2) violation of the FPSA (49 U.S.C. § 60118(d))—failure to provide a statement of reasons; (3) declaratory relief—state waiver procedures required under the FPSA (49 U.S.C. § 60118(d)); (4) abuse of discretion under the FPSA (49 U.S.C. § 60118(d)); (5) violation of the Elder California Pipeline Safety Act of 1981 (CPSA, Gov. Code, § 51011, subd. (c)); (6) abuse of discretion under the CPSA (Gov. Code, § 51011, subd. (b)); (7) declaratory relief—standards and procedures required under the CPSA (Gov. Code, § 51011, subds. (b), (c)); and (8) CEQA—failure to prepare a subsequent EIR (Pub. Resources Code, § 21166).

On July 8, 2025, Sable filed their demurrers and their motions to strike as to the CBD Petition and EDC Petition. These demurrers and motions to strike were originally set for this hearing date of September 19.

On August 27, 2025, CBD and EDC filed motions in their respective cases to bifurcate what they describe as their "procedural claims" from their "substantive claims."

CBD identifies their procedural claims as:

"(1) OSFM violated sections 60118(c)(1)(B), (d) of the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101, *et seq.* (the 'FPSA'), by failing to provide public notice and a hearing (First Cause of Action, Petition at ¶¶ 115, 117);

"(2) OSFM violated sections 60118(c)(3), (d) of the FPSA by failing to provide an order containing the reasons for granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 118);

"(3) OSFM violated sections 60118(d) of the FPSA by failing to conduct environmental review before granting the Waivers (First Cause of Action, Petition at ¶¶ 115, 119);

"(4) OSFM violated section 51011(c) of California's Elder Pipeline Safety Act, Gov. Code section 51010, *et seq.* (the 'CPSA'), by failing to include a discussion of those factors that OSFM considered significant to the granting of the Waivers (Second Cause of Action, Petition at ¶¶ 123-124); and

"(5) OSFM violated CEQA, Pub. Resources Code § 2100, *et seq.*, by failing to prepare an environmental document for the Project and include the public in the decisionmaking process (Third Cause of Action)." (CBD Motion, at p. 4.)

EDC similarly identifies their procedural claims as:

"First Cause of Action: OSFM failed to provide a public process, including adequate public notice and a public hearing, as required by the federal Hazardous Liquid Pipeline Safety Act, 49 U.S.C. section 60101 et seq. (the 'FPSA').

"Second Cause of Action: OSFM failed to provide a statement of reasons in its Waiver approvals, as required by the FPSA.

"Third Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the FPSA.

"Fifth Cause of Action: OSFM failed to provide a discussion of significant factors in its Waiver approvals, as required by California's Elder Pipeline Safety Act, Gov. Code section 51010 et seq. (the 'CPSA').

"Sixth Cause of Action: Declaratory relief regarding the scope of OSFM's procedural obligations under the CPSA.

"Eighth Cause of Action: OSFM failed to prepare a subsequent Environmental Impact Report (EIR), as required by CEQA." (EDC Motion, at p. 4.)

CBD identifies their substantive claims as:

"(1) OSFM violated sections 60118(c)(1)(A), (d) of the FPSA by failing to demonstrate that the Waivers are 'not inconsistent with pipeline safety' (First Cause of Action, Petition at ¶¶ 115, 116); and

"(2) OSFM violated section 51011(b) of the CPSA by failing to demonstrate that in issuing the State Waivers, the 'risk to public safety is slight and the probability of injury or damage remote' (Second Cause of Action, Petition at ¶ 122.)" (CBD Motion, at p. 5.)

EDC similarly identifies their substantive claims as:

"Fourth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the waiver is not inconsistent with pipeline safety'—the relevant legal standard under the FPSA. (49 U.S.C. § 60118(c)(1)(A), (d).)

"Sixth Cause of Action: OSFM abused its discretion in granting the Waivers, in part because the OSFM failed to establish, for each Waiver, that 'the risk to public safety is slight and the probability of injury or damage remote'—the relevant legal standard under the CPSA. (Gov. Code § 51011(b).)" (EDC Motion, at p. 5.)

CBD and EDC argue that the procedural claims are straightforward in that they require petitioners to establish only that OSFM failed to comply with its procedural mandates and that the only relevant facts are whether OSFM did or did not do so. The substantive claims, by contrast, require fact and time-intensive inquires as to whether OSFM adequately demonstrated that the State Waivers protect public and pipeline safety. CBD and EDC seek orders to resolve the procedural claims first. If CBD and EDC are able to succeed on their procedural claims, the substantive claims need not be resolved by the court now but would await further administrative proceedings which may make the substantive claims moot.

Sable opposes both motions. Sable argues that all claims, including both procedural and substantive claims, are so entangled with each other that bifurcation would not likely result in judicial efficiency for the court or for the litigants.

On September 8, 2025, Sable filed notices withdrawing their demurrers and motions to strike. The demurrers and motions to strike accordingly were taken off calendar.

On September 12, 2025, OSFM filed notices that OSFM takes no position with respect to the petitioners' motions to bifurcate.

**Analysis:**

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States." (Code Civ. Proc., § 1048, subd. (b).)

"The court may, when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby, on motion of a party, after notice and hearing, make an order, no later than the close of pretrial conference in cases in which such pretrial conference is to be held, or, in other cases, no later than 30 days before the trial date, that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case, except for special defenses which may be tried first pursuant to Sections 597 and 597.5." (Code Civ. Proc., § 598.)

Under sections 598 and 1048, the court has discretion to bifurcate actions to accomplish the statutory purposes of expedition and economy. (See *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 833.)

A lengthy discourse on the nature of the petitioners' claims is neither necessary nor helpful here. While the petitioners' distinction between procedural and substantive claims is useful for some purposes, all of the claims are closely connected to a common set of facts. In short, the procedural claims do not exist in a vacuum. Among other things, the court's understanding of the factual basis for the substantive claims informs the court so as to assist in the determination of the procedural claims. In these circumstances, limiting a first phase of trial to one set of claims has the potential to exclude evidence or argument useful, and perhaps necessary, to the adjudication of the procedural issues.

Based upon the present procedural posture of the case and the arguments of the parties, the court does not find that bifurcation is likely to promote expeditious or efficient adjudication. Accordingly, the court will deny the motions to bifurcate.

At the same time, the petitioners mention the potential of consolidation of case No. 25CV02244 with case No. 25CV02247. This issue is not now before the court. However, as these motions demonstrate, the overlap in facts and law between the cases appears to make disposition of these cases together more efficient than addressing each case separately. (See Code Civ. Proc., § 1048, subd. (a).) The parties shall meet and confer as to the desirability of consolidation of these actions, for all purposes or for purposes of trial only, and report to the court at the next case management conference the results of such discussions.

## JUDGES

### JUDGE DONNA GECK

Dept. 4 SB-Anacapa

1100 Anacapa Street P.O. Box 21107

Santa Barbara, CA 93121-1107

US

**PROOF OF SERVICE**

I, Martha Serrano, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 1900 Avenue of the Stars, Suite 450, Los Angeles, California 90067.

On September 22, 2025, I served the document **SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S NOTICE OF RULING** on the interested parties in this action addressed as follows:  **See Attached Service List**

I.      ☒      BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 22, 2025, at Los Angeles, California.

_____
Martha Serrano

SERVICE LIST

Julie Teel Simmons, Esq.
David Pettit, Esq.
Talia Nimmer, Esq.
**Center for Biological Diversity**
2011 Franklin Street, Suite 375
Oakland, CA 94612

**ATTORNEYS FOR PETITIONERS**
CENTER FOR BIOLOGICAL DIVERSITY and
WISHTOYO FOUNDATION

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
        tnimmer@biologicaldiversity.org

Linda Krop, Esq.
Jeremy M. Frankel, Esq.
Tara C. Regnifo, Esq.
**ENVIRONMENTAL DEFENSE CENTER**
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622; Fax: (805) 962-3152

**ATTORNEYS FOR PETITIONERS**
ENVIRONMENTAL DEFENSE CENTER, a
California non-profit corporation; GET OIL
OUT!, a California non-profit corporation;
SANTA BARBARA COUNTY ACTION
NETWORK, a California non-profit corporation;
SIERRA CLUB, a national non-profit
corporation; and SANTA BARBARA
CHANNELKEEPER, a California non-profit
corporation

Tel.:    (510) 844-7100
Fax:    (510) 844-7150
Email: lkrop@environmentaldefensecenter.org
        jfrankel@environmentaldefensecenter.org
        trengifo@environmentaldefensecenter.org

Michael S. Dorsi, Esq.
**California Attorney General's Office**
55 Golden Gate Ave, Ste 11000,
San Francisco, CA 94102

**ATTORNEYS FOR RESPONDENTS/
DEFENDANTS**
California Department of Forestry and Fire
Protection, Office of the State Fire Marshal;
Daniel Berlant, in his official capacity as State
Fire Marshal

Tel.:    (415) 510-3802
Email: Michael.dorsi@doj.ca.gov

Duncan Joseph Moore, Esq.
Benjamin J. Hanelin, Esq.
Natalie C. Rogers, Esq.
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067

**ATTORNEYS FOR REAL PARTIES IN
INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (310) 620-5879
Email: djmoore@paulhastings.com
        benjaminhanelin@paulhastings.com
        natalierogers@paulhastings.com

Trevor D. Large, Esq.
**FAUVER, LARGE, ARCHBALD &
SPRAY LLP**
820 State Street, 4th Floor
Santa Barbara, CA 93101

**ATTORNEYS FOR REAL PARTIES IN
INTEREST**
Sable Offshore Corp.; Pacific Pipeline Company

Tel.:    (805) 966-7000
Email: TLarge@FLASllp.com

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | *FOR COURT USE ONLY* |
|---|---|---|
| NAME: Trevor D. Large (SBN 214886) \| Victoria C. Diffenderfer (SBN 350018) | | |

FIRM NAME: Fauver, Large, Archbald & Spray LLP
STREET ADDRESS: 820 State Street, 4th Floor
CITY: Santa Barbara          STATE: CA     ZIP CODE: 93101
TELEPHONE NO.: (805) 966-7000      FAX NO.: (805) 966-7227
EMAIL ADDRESS: tlarge@flasllp.com
ATTORNEY FOR *(name):* Sable Offshore Corp., Pacific Pipeline Company

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**
STREET ADDRESS: 1107 Anacapa St.
MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
BRANCH NAME: Anacapa Division

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
11/20/2025 5:23 PM
By: Laura Kenny , Deputy

PLAINTIFF/PETITIONER: Center for Biological Diversity et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  [X] **UNLIMITED CASE** (Amount demanded exceeds $35,000)    [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 25CV02244 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: December 5, 2025     Time: 10:00 a.m.     Dept.: 4     Div.: Anacapa     Room:

Address of court *(if different from the address above):*

[ ]  **Notice of Intent to Appear by Telephone, by** *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [X]  This statement is submitted by party *(name):* Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Co.
   b. [ ]  This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*  April 15, 2025
   b. [ ]  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [X]  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ]  The following parties named in the complaint or cross-complaint
      (1) [ ]  have not been served *(specify names and explain why not):*

      (2) [ ]  have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ]  have had a default entered against them *(specify names):*

   c. [ ]  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in  [X] complaint    [ ] cross-complaint    *(Describe, including causes of action):*
   Plaintiffs/Petitioners challenge the California Department of Forestry and Fire Protection and its Office of the State Fire Marshal's (OSFM) issuance of waivers of federal pipeline safety regulations (the State Waivers). Petitioners allege violations of the federal Pipeline Safety Act and state pipeline safety laws and the California Environmental Quality Act.

Page 1 of 5

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

CM-110

| PLAINTIFF/PETITIONER:  Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02244 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
See Attachment 4b.

[ x ]  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request  [   ]  a jury trial  [ x ]  a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  [   ]  The trial has been set for  *(date):*

b.  [ x ]  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  [ x ]  days *(specify number):* 1

b.  [   ]  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial  [ x ]  by the attorney or party listed in the caption  [   ]  by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:                                        f.  Fax number:

e.  Email address:                                            g.  Party represented:

[ x ]  Additional representation is described in Attachment 8.

9.  **Preference**

[ x ]  This case is entitled to preference *(specify code section):* Public Resources Code section 21167.1(a)

10.  **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel  [ x ]  has  [   ]  has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party  [   ]  has  [   ]  has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1)  [   ]  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)  [   ]  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)  [   ]  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110 [Rev. January 1, 2024]                    **CASE MANAGEMENT STATEMENT**                    **Page 2 of 5**

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

10. c.   In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER:   Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   California Department of Forestry and Fire Protection et al. | 25CV02244 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection, et al.

(2) Name of court: Santa Barbara Superior Court

(3) Case number: 25CV02247

(4) Status: Pending

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to tile the following motions before trial (specify moving party, type of motion, and issues):

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CM-110**

| PLAINTIFF/PETITIONER:  Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  California Department of Forestry and Fire Protection et al. | 25CV02244 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (if not, explain):

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* 2

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: November 20, 2025

Trevor D. Large
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

| CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | **Page 5 of 5** |
|---|---|---|

**MC-025**

| SHORT TITLE: — Center for Biological Studies et al. v. California Department of Forestry and Fire Protection, et al. | CASE NUMBER: 25CV02244 |
|---|---|

**ATTACHMENT** *(Number):* _____4b._____

*(This Attachment may be used with any Judicial Council form.)*

Plaintiffs and Petitioners Center for Biological Diversity and Wishtoyo Foundation ("Petitioners") challenge the California Department of Forestry and Fire Protection, Office of the State Fire Marshal's ("OSFM") issuance of waivers of certain federal pipeline safety regulations (the "State Waivers") for the Las Flores Pipeline System. Petitioners allege that OSFM had a mandatory and nondiscretionary duty to provide a public process on the State Waivers, as well as issue a statement of reasons supporting its approval of the Waivers, under federal and state pipeline safety laws. Petitioners also assert that the State Waivers violate substantive federal and state pipeline safety law requirements and, thus, OSFM abused its discretion in issuing the Waivers. Finally, Petitioners allege that OSFM was required to conduct environmental review under the California Environmental Quality Act before issuing the State Waivers.

Petitioners seek a stay of the State Waivers, injunctive relief preventing any restart of the Pipeline System, a writ of mandate directing OSFM to set aside the State Waivers, declaratory relief, and attorneys' fees. Responding Parties oppose and deny the claims by Plaintiffs.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

*www.courtinfo.ca.gov*

**MC-025**

| SHORT TITLE:<br>— Center for Biological Studies et al. v. California Department of Forestry and Fire Protection, et al. | CASE NUMBER:<br>25CV02244 |
|---|---|

**ATTACHMENT** *(Number):*    8

Real Parties in Interest will be represented by the following attorneys:

ALSTON & BIRD LLP
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100


PAUL HASTINGS LLP
DUNCAN JOSEPH MOORE, SBN 233955
djmoore@paulhastings.com
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
Telephone: (310) 620-5879
Facsimile: (310) 620-5899


FAUVER LARGE ARCHBALDLD & SPRAY, LLP
TREVOR D. LARGE, SBN 214886
tlarge@flasllp.com
VICTORIA C. DIFFENDERFER, SBN 350018
vdiffenderfer@flaslllp.com
820 State Street, 4th Floor
Santa Barbara, CA 93101
Telephone: (805) 966-7000
Facsimile: (805) 966-7227

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen, and not a party to the within action.  My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101.  On November 20, 2025, I served the within document:

**SABLE OFFSHORE CORP AND PACIFIC PIPELINE'S
CASE MANAGEMENT STATEMENT**

By Mail:  By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery:  By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery:  I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

 X   By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on November 20, 2025, at Santa Barbara, California.

*Marina L Ratliff*
_____
Marina L. Ratliff

FAUVER · LARGE · ARCHBALD · SPRAY

**1**
**PROOF OF SERVICE**

**SERVICE LIST**

| | |
|---|---|
| Jeffrey D. Dintzer<br>Lisa L. Garcia<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 576-1000; Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Lisa.Garcia@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Julie Teel Simmonds, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>Center for Biological Diversity<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612<br>Tel.: (510) 844-7100<br>Fax: (510) 844-7150<br>Email:<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org | *Attorneys for Petitioners: Center for Biological Diversity and Wishtoyo Foundation* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Telephone: (310) 620-5879; Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Rengifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-1622; (510) 844-7100; Fax: (805) 962-3152; (510) 844-7150<br>Email:<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |

| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Email: Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |
|---|---|



CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY       STATE BAR NUMBER: 331002
NAME: Talia Nimmer
FIRM NAME: CENTER FOR BIOLOGICAL DIVERSITY
STREET ADDRESS: 2100 Franklin St., Ste. 375
CITY: Oakland          STATE: CA      ZIP CODE: 94612
TELEPHONE NO.: (510) 844-7100       FAX NO.:
EMAIL ADDRESS: tnimmer@biologicaldiversity.org
ATTORNEY FOR (name): Petitioners and Plaintiffs

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
11/20/2025 6:13 PM
By: Laura Kenny , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Barbara
 STREET ADDRESS: 1100 Anacapa St.
 MAILING ADDRESS: Same
CITY AND ZIP CODE: Santa Barbara 93101
 BRANCH NAME: Anacapa Division

PLAINTIFF/PETITIONER: Center for Biological Diversity et al.

DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one): [✗] UNLIMITED CASE (Amount demanded exceeds $35,000)    [ ] LIMITED CASE (Amount demanded is $35,000 or less) | 25CV02244 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: December 5, 2025     Time: 8:30 a.m.     Dept.: 4     Div.:     Room:

Address of court (if different from the address above):

[✗]  **Notice of Intent to Appear by Telephone, by (name):** Julie Teel Simmonds, Talia Nimmer

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [✗]  This statement is submitted by party (name): Center for Biological Diversity and Wishtoyo Foundation
   b. [ ]  This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date): April 15, 2025
   b. [ ]  The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [✗]  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ]  The following parties named in the complaint or cross-complaint
      (1) [ ]  have not been served (specify names and explain why not):

      (2) [ ]  have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ]  have had a default entered against them (specify names):

   c. [ ]  The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in [✗] complaint [ ] cross-complaint (Describe, including causes of action):
      Petitioners challenge the Office of the State Fire Marshal's issuance of State Waivers from pipeline safety regulations to Sable Offshore Corp. enabling the restart of the Las Flores Pipeline System for CEQA and Pipeline Safety requirement violations.

**Page 1 of 5**

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

See Attachment 4b

☒ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  ☐ The trial has been set for *(date):*

b.  ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  ☒ days *(specify number):* 1-2

b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:          f.  Fax number:

e.  Email address:          g.  Party represented:

☐ Additional representation is described in Attachment 8.

9.  **Preference**

☒ This case is entitled to preference *(specify code section):* PRC § 21167.1(a)

10.  **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1)  ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)  ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)  ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

Cal. Rules of Court, rule 3.811(b)(1)

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*:  June 12, 2025 |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes    ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case  *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy    ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

   (1) Name of case:  Envrionmental Defense Center et al. v. California Department of Forestry and Fire Protection et al.

   (2) Name of court:  Santa Barbara Superior Court

   (3) Case number:  25CV02247

   (4) Status:  Pending

   ☐ Additional cases are described in Attachment 13a.

b. ☒ A motion to  ☒ consolidate  ☐ coordinate  will be filed by *(name party):*
   Petitioners in the event the parties are unable to finalize a stipulation. (See section 19.)

**14. Bifurcation**

☒ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

On August 27, 2025, Petitioners filed a motion to bifurcate the action's procedural and substantive claims into two phases. On September 19, 2025, the Court denied Petitioners' motion.

**15. Other motions**

☒ The party or parties expect to file the following motions before trial  *(specify moving party, type of motion, and issues):*

Petitioners intend to file an amended petition should the Office of the State Fire Marshal approve Sable Offshore Corp.'s restart plans. Petitioners will file a motion for leave in the event the parties are unable to finalize a stipulation. (See section 19.)

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated  *(specify):*

Petitioners believe that discovery is not appropriate as the matter is a record case.

**CM-110**

| PLAINTIFF/PETITIONER: Center for Biological Diversity et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: California Department of Forestry and Fire Protection et al. | 25CV02244 |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

On April 23, 2025, the Office of the State Fire Marshal ("OSFM") denied Petitioners' request to prepare the administrative record. On August 5, 2025, counsel for Environmental Defense Center, in cooperation with Petitioners, provided OSFM with a list of proposed documents for the administrative record. OSFM has not yet provided Petitioners with an index of the draft record.

19. **Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

On June 12, 2025, the parties participated in a CEQA settlement conference and met and conferred about a number of issues, including case consolidation. The Parties have since then been discussing stipulating to consolidate this case with Case No. 25CV02247 and to allow Petitioners to file a First Amended Petition and Complaint should the Office of the State Fire Marshal approve Sable Offshore Corp.'s restart plans.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):*    1

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: November 20, 2025

Talia Nimmer
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Center for Biological Diversity et al. v. Cal Fire et al. | 25CV02244 |

**ATTACHMENT** *(Number):*      4b

*(This Attachment may be used with any Judicial Council form.)*

## I. Brief Statement of the Case

Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation (Petitioners) filed this case on April 15, 2025 challenging the California Department of Forestry and Fire Protection, Office of the State Fire Marshall's (OSFM) issuance of State Waivers from pipeline safety regulations (State Waivers) that enable Real Parties to restart the Las Flores Pipeline System and its connected oil and gas production and transport infrastructure more than ten years after a catastrophic oil spill from the pipeline system shut down operations. OSFM approved the State Waivers without any environmental review of the restart project, public notice, hearing, opportunity for public comment, or required findings in violation of the California Environmental Quality Act. Further, OSFM's State Waivers violate procedural California and federal pipeline safety laws in that they were issued absent notice and an opportunity for a hearing, absent environmental review, absent a discussion of significant factors, and absent a statement of reasons for granting the State Waivers. Finally, OSFM's State Waivers violate substantive California and federal pipeline safety laws, because OSFM failed to establish that the risk to public safety is slight and the probability of injury or damage remote and that the State Waivers are not inconsistent with pipeline safety, as required by the governing laws. Petitioners are seeking declaratory and injunctive relief.

## II. Case Status

The preliminary injunction this Court granted on July 29, 2025 remains in place. By the terms of the Court's ruling, the restart of the Las Flores Pipelines is enjoined until 10 court days following the filing and service of notice by Real Parties that they have received all necessary approvals and permits for restarting the Las Flores Pipelines and that they intend to do so.

In the meantime, the Parties have conferred about the administrative record and other case management issues. The Parties continue to discuss stipulating to consolidate this case with Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection, Case No. 25CV02247, and to allow Petitioners to file a First Amended Petition and Complaint should OSFM approve Real Parties' Restart Plans.

Regarding the record, on April 23, 2025, OSFM denied Petitioners' request to prepare the administrative record. On August 5, 2025, counsel for Environmental Defense Center, in cooperation with Petitioners, provided OSFM with a list of proposed documents for the administrative record. OSFM has not yet provided Petitioners with an index of the draft record.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page  6  of  6

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

*www.courtinfo.ca.gov*

I, Talia Nimmer, state:

I am over the age of 18 and not a party to the foregoing action. My business address is Center for Biological Diversity, 2100 Franklin St., Ste. 375, Oakland CA 94612. On November 20 2025, I served a true and correct copy of:

**PETITIONERS' CASE MANAGEMENT STATEMENT**

[X] BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy to the email addresses shown below pursuant to California Rule of Court Section 2.251(c)(3) and Local Rule 1012.

Michael S. Dorsi
Matthew Bullock
Myung Park
California Attorney General's Office
55 Golden Gate Ave, Ste 11000
San Francisco, CA 94102
Michael.Dorsi@doj.ca.gov
Matthew.bullock@doj.ca.gov
Myung.park@doj.ca.gov
*Attorney for Respondents/Defendants*

Jeffrey Dintzer
Matthew C. Wickersham
Garrett Stanton
ALSTON & BIRD
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Jeffrey.dintzer@alston.com
Matt.wickersham@alston.com
Garrett.stanton@alston.com
*Attorneys for Real Parties in Interest*

DJ Moore
Benjamin Hanelin
Natalie Rogers
PAUL HASTINGS
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com
*Attorneys for Real Parties in Interest*

1

Proof of Service re: Petitioners' Case Management Statement

Trevor D. Large
Victoria C. Diffenderfer
FAUVER LARGE ARCHBALD & SPRAY
820 State Street, 4th Floor
Santa Barbara, CA 93101
tlarge@flasllp.com
vdiffenderfer@flasllp.com
*Attorneys for Real Parties in Interest*

I declare under penalty of perjury under the law of California that the foregoing is true and correct. Executed on November 20, 2025, in Los Angeles, California.

_____
Talia Nimmer

2

Proof of Service re: Petitioners' Case Management Statement

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY                                STATE BAR NUMBER: 281865

NAME: Michael S. Dorsi, Deputy Attorney General

FIRM NAME: California Attorney General's Office

STREET ADDRESS: 455 Golden Gate Avenue, Suite 11000

CITY: San Francisco                    STATE: CA        ZIP CODE: 94102

TELEPHONE NO.: 415-510-3802            FAX NO.:

EMAIL ADDRESS: Michael.Dorsi@doj.ca.gov

ATTORNEY FOR (name): Respondents California Dept. of Forestry and Fire Protection, et al.

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
11/26/2025 2:50 PM
By: Terri Chavez , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara**

STREET ADDRESS: 1100 Anacapa Street

MAILING ADDRESS:

CITY AND ZIP CODE: Santa Barbara, CA 93101

BRANCH NAME: Anacapa Division

PLAINTIFF/PETITIONER: Center for Biological Diversity, et al.

DEFENDANT/RESPONDENT: California Dept. of Forestry & Fire Protection, et al.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| **(Check one):**  [X] **UNLIMITED CASE** (Amount demanded exceeds $35,000)   [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 25CV02244 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: December 5, 2025        Time: 9:30 a.m.        Dept.: 4        Div.:        Room:

Address of court *(if different from the address above):*

[X]   **Notice of Intent to Appear by Telephone, by** *(name):* Michael S. Dorsi, Deputy Attorney General (by videoconference)

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*

   a. [X] This statement is submitted by party *(name):* Respondents California Dept. of Forestry and Fire Protection, et al.

   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*

   a. The complaint was filed on *(date):* April 15, 2025

   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*

   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. [ ] The following parties named in the complaint or cross-complaint

      (1) [ ] have not been served *(specify names and explain why not):*

      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ] have had a default entered against them *(specify names):*

   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**

   a. Type of case in  [X] complaint    [ ] cross-complaint      *(Describe, including causes of action):*

      Petition for writ of mandate and complaint challenging California Department of Forestry and Fire Protection's Office of the State Fire Marshal issuance of State Waivers for Las Flores Pipeline System.

Page 1 of 5

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

**CM-11**

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

4.   b.   Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

Petitioners allege violations of federal and state procedures for pipeline regulations and California Environmental Quality Act

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**

The party or parties request   ☐ a jury trial   ☒ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**

a.   ☐   The trial has been set for  *(date):*

b.   ☒   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
March 2-20 (counsel unavailable). Also, counsel expects trial setting in other cases before CMC in this case.

7.   **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.   ☒   days *(specify number):* 1

b.   ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial   ☒ by the attorney or party listed in the caption   ☐ by the following:

a.   Attorney:

b.   Firm:

c.   Address:

d.   Telephone number:                                                    f.   Fax number:

e.   Email address:                                                          g.   Party represented:

☐   Additional representation is described in Attachment 8.

9.   **Preference**

☒   This case is entitled to preference *(specify code section):* PRC 21167.1(a)

10.   **Alternative dispute resolution (ADR)**

a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)   For parties represented by counsel: Counsel   ☒ has   ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)   For self-represented parties: Party   ☐ has   ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
CRC 3.811(b)(1)

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☒ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*:  June 12, 2025 |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☒ consolidate ☐ coordinate will be filed by *(name party):*

See stipulation to consolidate, filed concurrently.

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110 [Rev. January 1, 2024]    **CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER:<br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*
This case addresses the first of two approvals required for Real Parties to restart the Las Flores Pipeline System.

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
The parties conferred on some subjects and expect to confer on other subjects between now and the date of the case management conference.

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: November 25, 2025

| Michael S. Dorsi, Deputy Attorney General | ▶ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

| | ▶ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

| Print this form | Save this form | Clear this form |
|---|---|---|

## DECLARATION OF SERVICE BY E-MAIL

**Case Name:**          Center for Biological Diversity v. CalFire/OSFM
**Case Number:**      25CV02244
**Party Represented:** Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal

**Declaration of Electronic Service**

1. I am at least 18 years of age and not a party to this matter.

2. I am employed in the Office of the Attorney General of the State of California. My business address is 1515 Clay Street, 20th Floor, P.O. Box 70550, Oakland, CA 94612-0550, County of Alameda.

3. My electronic service address is Tania.Martinez@doj.ca.gov.

4. On November 26, 2025, I electronically served the following document[s]:

   a. **CASE MANAGEMENT STATEMENT**

5. I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

| | |
|---|---|
| Linda Krop<br>Jeremy M. Frankel<br>Tara C. Rengifo<br>ENVIRONMENTAL DEFENSE CENTER<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org<br>***Attorneys for Petitioners***<br>***Environmental Defense Center*** | Julie Teel Simmonds<br>David Pettit<br>Talia Nimmer<br>CENTER FOR BIOLOGICAL DIVERSITY<br>**Email Addresses:**<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org<br>***Attorneys for Petitioners Center for***<br>***Biological Diversity*** |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>PAUL HASTINGS, LLP<br>**Email Addresses:**<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline Company*** | Brooke Bolender<br>Jeffrey Dintzer<br>ALSTON & BIRD, LLP<br>**Email Addresses:**<br>Brooke.Bolender@alston.com<br>jeffrey.dintzer@alston.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline***<br>***Company*** |

| Trevor D. Large FAUVER, LARGE, ARCHIBALD & SPRAY, LLP **Email Address:** TLarge@FLASllp.com *Attorney for Real Parties in Interest* *Sable Offshore Corp Pacific Pipeline Company* | |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on November 26, 2025.

| Tania Martinez | *Tania Martinez* |
| Declarant | Signature |

LA2025400847
92059433.docx

Pursuant to CRC 2.259 this document has been electronically filed by the Superior Court of California, County of Santa Barbara, on 11/26/2025

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General
MATTHEW BULLOCK (SBN 243377)
MICHAEL S. DORSI (SBN 281865)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3802
  Fax: (415) 703-5480
  E-mail: Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants*
*Department of Forestry and Fire Protection, by and*
*through the Office of the State Fire Marshal, an*
*agency of the State of California; Daniel Berlant, in*
*his official capacity as State Fire Marshal*

**F I L E D**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**12/02/2025**
Darrel E. Parker, Executive Officer
BY  Chavez, Terri
                     Deputy Clerk

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,**<br><br>             **Petitioner and Plaintiff,**<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, by and through the OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,**<br><br>             **Respondents and Defendants,**<br><br>**SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,**<br><br>             **Real Parties in Interest.** | Case No. 25CV02244<br><br>**STIPULATION RE: CONSOLIDATION OF CASES**<br><br>Date:        December 5, 2025<br>Time:       8:30 a.m.<br>Dept:       4<br>Judge:     Hon. Donna Geck<br><br>Trial Date:   Not Set<br>Action Filed: April 15, 2025<br><br>THIS DOCUMENT IS FILED IN THIS MATTER AND THE RELATED CASE, NO. 25CV02247 |

1

## STIPULATION

The Parties in *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247,[1] conferred, as requested by the Court, regarding consolidation of the two cases. The Parties all agree that the two cases should be consolidated, as the Petitions and Complaints challenge the same agency actions on overlapping theories, and therefore jointly request that the Court order, that the cases be consolidated for all purposes, including trial. All future filings shall be in the case with the lower case number, 25CV02244.

Dated:  November 25, 2025

| | |
|---|---|
| ROB BONTA<br>Attorney General of California<br>MYUNG PARK<br>Supervising Deputy Attorney General<br><br>*/s/ Michael S. Dorsi*<br>Deputy Attorney General<br>*Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal*<br><br>ALSTON & BIRD<br><br>*/s/ Jeffrey Dintzer*<br>*Attorneys for Real Parties in Interest Sable Offshore Corp., a Delaware Corporation; and Pacific Pipeline Company, a Delaware Corporation* | Respectfully submitted,<br><br>ENVIRONMENTAL DEFENSE CENTER<br><br>*/s/ Linda Krop*<br>*Attorneys for Petitioners and Plaintiffs Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation; Santa Barbara County Action Network, a California non-profit corporation; Sierra Club, a national non-profit corporation; and Santa Barbara Channelkeeper, a California non-profit corporation*<br><br>CENTER FOR BIOLOGICAL DIVERSITY<br><br>*/s/ Talia Nimmer*<br>*Attorneys for Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation* |

As the attorney responsible for the filing of this Stipulation and Proposed Order, I attest that the attorneys for all parties approved of my affixing their electronic signatures to this document. */s/ Michael S. Dorsi*

---

[1] The Parties intend to file this Stipulation in both cases, with different cover pages and footers, but the content of the Stipulation is otherwise identical in the two filings.

## [~~PROPOSED~~] ORDER

The Parties in the cases *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247, entered into a stipulation seeking that the Court enter this Order addressing consolidation. All parties having agreed, and for good cause shown, the Court adopts the proposed order, as follows:

As authorized by Code of Civil Procedure section 1048, the matters of *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247, are consolidated for all purposes. All future filings shall be in the case with the lower case number, 25CV02244.

**IT IS SO ORDERED.**

Date: **12/02/2025**

HON. DONNA GECK
JUDGE OF SUPERIOR COURT

LA2025400847
44686738.docx

3

Stipulation re Consolidation of Cases (25CV02244)

## DECLARATION OF SERVICE BY E-MAIL

**Case Name:**      Center for Biological Diversity v. CalFire/OSFM
**Case Number:**    25CV02244
**Party Represented:** Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal

**Declaration of Electronic Service**

1. I am at least 18 years of age and not a party to this matter.

2. I am employed in the Office of the Attorney General of the State of California.  My business address is 1515 Clay Street, 20th Floor, P.O. Box 70550, Oakland, CA  94612-0550, County of Alameda.

3. My electronic service address is Tania.Martinez@doj.ca.gov.

4. On November 26, 2025, I electronically served the following document[s]:

   **a.  STIPULATION RE: CONSOLIDATION OF CASES**

5. I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

| | |
|---|---|
| Linda Krop<br>Jeremy M. Frankel<br>Tara C. Rengifo<br>ENVIRONMENTAL DEFENSE CENTER<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org<br>***Attorneys for Petitioners***<br>***Environmental Defense Center*** | Julie Teel Simmonds<br>David Pettit<br>Talia Nimmer<br>CENTER FOR BIOLOGICAL DIVERSITY<br>**Email Addresses:**<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org<br>***Attorneys for Petitioners Center for***<br>***Biological Diversity*** |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>PAUL HASTINGS, LLP<br>**Email Addresses:**<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline Company*** | Brooke Bolender<br>Jeffrey Dintzer<br>ALSTON & BIRD, LLP<br>**Email Addresses:**<br>Brooke.Bolender@alston.com<br>jeffrey.dintzer@alston.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline***<br>***Company*** |

| Trevor D. Large<br>FAUVER, LARGE, ARCHIBALD & SPRAY, LLP<br>**Email Address:** TLarge@FLASllp.com<br>***Attorney for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline Company*** | |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on November 26, 2025.

| Tania Martinez | *Tania Martinez* |
| Declarant | Signature |

LA2025400847
92059524.docx

Pursuant to CRC 2.259 this document has been electronically filed by the Superior Court of California, County of Santa Barbara, on 11/26/2025

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General
MATTHEW BULLOCK (SBN 243377)
MICHAEL S. DORSI (SBN 281865)
Deputy Attorney General
    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
    Telephone: (415) 510-3802
    Fax: (415) 703-5480
    E-mail: Michael.Dorsi@doj.ca.gov
*Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal*

**F I L E D**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**12/02/2025**
Darrel E. Parker, Executive Officer
BY  Chavez, Terri
_____
Deputy Clerk

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,**<br><br>      **Petitioners and Plaintiffs,**<br><br>      v.<br><br>**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10, inclusive,**<br><br>      **Respondents and Defendants**<br><br>**SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,**<br><br>      **Real Parties in Interest.** | Case No. 25CV02247<br><br><br>**STIPULATION RE: CONSOLIDATION OF CASES**<br><br>Date:   December 5, 2025<br>Time:   8:30 a.m.<br>Dept:   4<br>Judge:  Hon. Donna Geck<br><br>Trial Date: Not Set<br>Action Filed: April 15, 2025<br><br>THIS DOCUMENTS IS FILED IN THIS MATTER AND THE RELATED CASE, NO. 25CV02244 |

1

Stipulation re: Consolidation of Cases (25CV02247)

**STIPULATION**

The Parties in *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247,[1] conferred, as requested by the Court, regarding consolidation of the two cases. The Parties all agree that the two cases should be consolidated, as the Petitions and Complaints challenge the same agency actions on overlapping theories, and therefore jointly request that the Court order, that the cases be consolidated for all purposes, including trial. All future filings shall be in the case with the lower case number, 25CV02244.

Dated:  November 25, 2025

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General

*/s/ Michael S. Dorsi*
Deputy Attorney General
*Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal*

ALSTON & BIRD

*/s/ Jeffrey Dintzer*
*Attorneys for Real Parties in Interest Sable Offshore Corp., a Delaware Corporation; and Pacific Pipeline Company, a Delaware Corporation*

Respectfully submitted,

ENVIRONMENTAL DEFENSE CENTER

*/s/ Linda Krop*
*Attorneys for Petitioners and Plaintiffs Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation; Santa Barbara County Action Network, a California non-profit corporation; Sierra Club, a national non-profit corporation; and Santa Barbara Channelkeeper, a California non-profit corporation*

CENTER FOR BIOLOGICAL DIVERSITY

*/s/ Talia Nimmer*
*Attorneys for Petitioners and Plaintiffs Center for Biological Diversity and Wishtoyo Foundation*

As the attorney responsible for the filing of this Stipulation and Proposed Order, I attest that the attorneys for all parties approved of my affixing their electronic signatures to this document. */s/*

---

[1] The Parties intend to file this Stipulation in both cases, with different cover pages and footers, but the content of the Stipulation is otherwise identical in the two filings.

2

## ~~[PROPOSED]~~ ORDER

The Parties in the cases *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247, entered into a stipulation seeking that the Court enter this Order addressing consolidation. All parties having agreed, and for good cause shown, the Court adopts the proposed order, as follows:

As authorized by Code of Civil Procedure section 1048, the matters of *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.*, case no. 25CV02244, and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection*, case no. 25CV02247, are consolidated for all purposes. All future filings shall be in the case with the lower case number, 25CV02244.

**IT IS SO ORDERED.**

Date: __12/02/2025__

HON. DONNA GECK
JUDGE OF SUPERIOR COURT

LA2025400827
44687109.docx

3

Stipulation re: Consolidation of Cases (25CV02247)

## DECLARATION OF SERVICE BY E-MAIL

**Case Name:**          Environmental Defense Center v. CalFire/OSFM
**Case Number:**        25CV02247
**Party Represented:**  Attorneys for Respondents and Defendants Department of Forestry and Fire Protection, by and through the Office of the State Fire Marshal, an agency of the State of California; Daniel Berlant, in his official capacity as State Fire Marshal

**Declaration of Electronic Service**

1. I am at least 18 years of age and not a party to this matter.

2. I am employed in the Office of the Attorney General of the State of California.  My business address is 1515 Clay Street, 20th Floor, P.O. Box 70550, Oakland, CA  94612-0550, County of Alameda.

3. My electronic service address is Tania.Martinez@doj.ca.gov.

4. On November 26, 2025, I electronically served the following document[s]:

   a. **STIPULATION RE: CONSOLIDATION OF CASES**

5. I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

| | |
|---|---|
| Linda Krop<br>Jeremy M. Frankel<br>Tara C. Rengifo<br>ENVIRONMENTAL DEFENSE CENTER<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org<br>***Attorneys for Petitioners***<br>***Environmental Defense Center*** | Julie Teel Simmonds<br>David Pettit<br>Talia Nimmer<br>CENTER FOR BIOLOGICAL DIVERSITY<br>**Email Addresses:**<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org<br>***Attorneys for Petitioners Center for Biological Diversity*** |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>PAUL HASTINGS, LLP<br>**Email Addresses:**<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline Company*** | Brooke Bolender<br>Jeffrey Dintzer<br>ALSTON & BIRD, LLP<br>**Email Addresses:**<br>Brooke.Bolender@alston.com<br>jeffrey.dintzer@alston.com<br>***Attorneys for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline Company*** |

| Trevor D. Large<br>FAUVER, LARGE, ARCHIBALD & SPRAY, LLP<br>**Email Address:** TLarge@FLASllp.com<br>***Attorney for Real Parties in Interest***<br>***Sable Offshore Corp Pacific Pipeline Company*** | |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on <u>November 26, 2025</u>.

| Tania Martinez | *Tania Martinez* |
| Declarant | Signature |

LA2025400827
92059564.docx

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

Dated and Entered:  12/05/2025                                Time:  8:30 AM
Judicial Officer:      Donna D Geck
Deputy Clerk:         Maria Vidal                            Dept:   SB Dept 4
Bailiff/Court Officer: Eduardo Munoz                         Case No: 25CV02244
Court Reporter:       Robyn Van Tuyl

---

**Center for Biological Diversity  et al vs California Department of Forestry and Fire Protection  et al**

Parties Present:

Julie Simmonds          Petitioner's Attorney (via Zoom)
Talia Nimmer            Petitioner's Attorney (via Zoom)
Michael Dorsi           Respondent's Attorney (via Zoom)
Jeffrey Dintzer         Attorney for Real Party in Interest
Trevor Large            Attorney for Real Party in Interest
Linda Krop              Attorney for Non-Party
Jeremy Frankel          Attorney for Non-Party

---

**NATURE OF PROCEEDINGS***:  Case Management Conference**


The Court informed counsel that this case has been consolidated with case # 25CV02247.

The matter was continued as follows:

February 27, 2026 8:30 AM
Case Management Conference
Geck, Donna D
SB Dept 4


All counsel waived notice.


DARREL E. PARKER, EXECUTIVE OFFICER               Minutes Prepared by:

_____ Maria Vidal _____ , Deputy


SC-2411 (Revised July 1, 2013)                    **MINUTE ORDER**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
1/5/2026 6:59 PM
By: Narzralli Baksh , Deputy

Jeffrey D. Dintzer (SBN: 139056)
Garrett B. Stanton (SBN: 324775)
**ALSTON & BIRD, LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Tel: (213) 576-1000; Fax: (213) 576-1100
Jeffrey.Dintzer@alston.com
Garrett.Stanton@alston.com

Duncan Joseph Moore (SBN: 233955)
Benjamin J. Hanelin (SBN: 237595)
Natalie C. Rogers (SBN: 301254)
**PAUL HASTINGS LLP**
1999 Avenue of Stars, 27th Floor
Century City, CA 90067
Tel: (310) 620-5879; Fax: (310) 620-5899
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

Trevor D. Large (SBN: 214886)
Victoria C. Diffenderfer (SBN: 350018)
**FAUVER LARGE ARCHBALD & SPRAY**
820 State Street, 4th Floor
Santa Barbara, CA 93101
Tel: (805) 966-7000; Fax: (805) 966-7227
tlarge@flasllp.com
vdiffenderfer@flasllp.com

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10; inclusive,<br><br>Respondents/Defendants. | Case No.: 25CV02244<br>[Consolidated with 25CV02247]<br><br>**REAL PARTIES IN INTEREST SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declarations of J. Caldwell Flores and Trevor D. Large; [Proposed] Order Immediately Rescinding Preliminary Injunction] |

---

1

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

Date:    April 17, 2026
Time:    10:00 a.m.
Dept.:    4

Complaint Filed: April 15, 2025

[Assigned for Purposes to the Honorable Donna D. Geck, Dept. 4]

SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,

Real Parties in Interest

ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,

Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10; inclusive,

Respondents/Defendants.

SABLE OFFSHORE CORP., a Delaware Corporation, and PACIFIC PIPELINE COMPANY, a Delaware Corporation.

Real Parties in Interest.

Case No.: 25CV02247

2

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, April 17, 2026 at 10:00 a.m., in Department 4 of the Superior Court of California for the County of Santa Barbara, located at 1100 Anacapa Street, Santa Barbara, California, before the Honorable Donna D. Geck, Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively referred to herein as "Sable") will, and hereby do, move the Court pursuant to Code of Civil Procedure section 1008 and Code of Civil Procedure section 533 for an order rescinding the July 29, 2025 Order re: Preliminary Injunction in the above-referenced matters (the "Preliminary Injunction").

This motion is made pursuant to California Code of Civil Procedure section 1008, on the grounds that new and different facts and circumstances exist that warrant reconsidering and rescinding the Preliminary Injunction, including that the Las Flores Pipeline is now an interstate pipeline under the exclusive federal jurisdiction of the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), PHMSA has issued all necessary approvals for the restart of the Las Flores Pipeline, and *Petitioners in these consolidated actions are separately pursuing relief in the United States Court of Appeals for the Ninth Circuit directed at challenging PHMSA's actions*. Given this federal posture and given that the California Office of the State Fire Marshal ("OSFM") no longer has jurisdiction over the Las Flores Pipeline, the Preliminary Injunction is now moot and must be rescinded. In addition, Sable will continue to suffer significant and irreparable harm if the Preliminary Injunction is not immediately rescinded, based on the following specific facts and legal authority:

1. On July 29, 2025, the Court issued the Preliminary Injunction. Based on the Court's finding that Petitioners had a likelihood of success on their state law claims under the California Pipeline Safety Act, the Court enjoined the restart of the Las Flores Pipeline "until 10 court days following the filing and service of notice by or on behalf of real parties in interest . . . that Sable has received all necessary approvals and permits for restarting the Las Flores Pipeline and that Sable intends to commence such restart." (July 29, 2025 Order at p. 18.)

---

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

2.      Lines CA-324 and CA-325 (formerly known as Lines 901 and 903) are portions of the Las Flores Pipeline, which also includes offshore pipelines transporting crude oil from the Outer Continental Shelf and an onshore processing facility at Las Flores Canyon. Lines CA-324 and CA-325 had been considered intrastate since 2016 and thus subject to oversight by the OSFM. At the time the Court entered the Preliminary Injunction, Lines CA-324 and CA-325 were still designated as intrastate, and subject to OSFM's regulatory oversight.

3.      On December 17, 2025, PHMSA determined that the entirety of the Las Flores Pipeline is an interstate pipeline subject to PHMSA's exclusive jurisdiction. This determination eliminated any jurisdiction of OSFM over Lines CA-324 and CA-325. (See Declaration of J. Caldwell Flores in Support of Motion for Reconsideration ["Flores Decl.], Exhibit A, p. 2.) In making its determination that "***the Las Flores Pipeline is an interstate pipeline,***" PHMSA notified "OSFM that the Las Flores Pipeline is subject to the regulatory oversight of PHMSA." (*Id.*, pp. 2–3 [emphasis added].)

4.      On December 22, 2025, PHMSA approved Sable's Restart Plan for Lines CA-324 and CA-325 (the "Restart Approval"). (See Flores Decl., Exhibit B.)

5.      On December 23, PHMSA granted Sable a "emergency special permit" for the operation of Lines CA-324 and CA-325 pursuant to 49 U.S.C. Section 60118(c)(2)(A) (the "Emergency Special Permit"). (See Flores Decl., Exhibit C, p. 6.)

6.      Given PHMSA's assertion of jurisdiction over the Las Flores Pipeline as an interstate pipeline, OSFM is without jurisdiction to regulate Lines CA-324 and CA-325, or any other portion of the Las Flores Pipeline.

7.      On December 24, 2025, Petitioners in these consolidated actions, recognizing that approval to flow oil through the pipeline is now under federal jurisdiction, filed an Emergency Motion for Stay Pending Appeal and a Petition for Review in the United States Court of Appeals for the Ninth Circuit, seeking a stay, pending appeal, of the issuance of the Restart Approval and Emergency Special Permit issued by PHMSA. (*Environmental Defense Center, et al. v. U.S. Department of Transportation, et al.* (9th Cir.) Case No. 25-8059 (the "Ninth Circuit Action"),

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

Declaration of Trevor D. Large in Support of Ex Parte Application for Order Shortening Time ["Large Decl.", Exhibit D] [Emergency Motion for Stay Pending Appeal].)

8. On December 25, 2025, Sable filed an Emergency Motion to Intervene in the Ninth Circuit Action. (Large Decl., Exhibit D.)

9. On December 31, 2025, the United States Court of Appeals for the Ninth Circuit granted Sable's Emergency Motion to Intervene, denied Petitioners' Emergency Motion for Stay Pending Appeal, and set an expedited briefing schedule in the Ninth Circuit Action. (Large Decl., Exhibit D.)

10. On January 5, 2026 at 9:56 a.m., Trevor D. Large, counsel for Sable, sent an email to counsel for Petitioners and Respondents providing notice of Sable's Ex Parte Application for Order Shortening Time for the Court to hear this Motion for Reconsideration, and providing counsel with the date, time, department, and requested briefing schedule. (Large Decl., ¶¶ 6-7.)

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of J. Caldwell Flores in Support of Sable's Motion For Reconsideration, the Declaration of Trevor D. Large in Support of Sable's Ex Parte Application for Order Shortening Time, their exhibits, the concurrently lodged [Proposed] Order Rescinding Preliminary Injunction, the record on file with the Court in this matter, and upon such further evidence and argument as may be presented to the court at or before the hearing.

DATED: January 5, 2026

Respectfully submitted,
ALSTON & BIRD

By: _____ for

Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and
PACIFIC PIPELINE COMPANY

5

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (collectively referred to herein as "Sable") move the Court to reconsider and rescind the July 29, 2025 Order re: Preliminary Injunction (the "Preliminary Injunction") because new facts and circumstances render the Preliminary Injunction moot. First, the Las Flores Pipeline has been designated as an interstate pipeline under exclusive federal jurisdiction, and the California Office of the State Fire Marshal ("OSFM") no longer has any regulatory authority. Second, the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") has issued approvals authorizing the flow of oil through the Las Flores Pipeline. Third, Petitioners in these consolidated actions have now sought relief in the Court of Appeals for the Ninth Circuit challenging PHMSA's actions. Thus, the basis for the Court's Preliminary Injunction—which was grounded in OSFM's regulatory authority over the Las Flores Pipeline under the California Pipeline Safety Act—is now moot. In addition, the Preliminary Injunction should be dissolved to avoid the risk of collateral disputes and inconsistent directives across forums. As such, Sable respectfully requests that the Court rescind the Preliminary Injunction.

### II.   FACTUAL BACKGROUND

On July 29, 2025, the Court issued the Preliminary Injunction. Based on the Court's finding that Petitioners had a likelihood of success on their state law claims under the California Pipeline Safety Act, the Court enjoined the restart of Lines CA-324 and CA-325 "until 10 court days following the filing and service of notice by or on behalf of real parties in interest . . . that Sable has received all necessary approvals and permits for restarting the Las Flores Pipeline and that Sable intends to commence such restart." (See July 29, 2025 Preliminary Injunction at 18.)

Lines CA-324 and CA-325 are portions of the Las Flores Pipeline,[1] and had been

---

[1] Lines CA-324 and CA-325 (formerly known as Lines 901 and 903) are portions of the Las Flores Pipeline, which also includes offshore pipelines transporting crude oil from the Outer Continental Shelf and an onshore processing facility at Las Flores Canyon.

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

considered intrastate since 2016 and thus subject to OSFM's regulatory oversight. (Declaration of J. Caldwell Flores ["Flores Decl."], Ex. A, p. 1.) However, on December 17, 2025, PHMSA determined that "the Las Flores Pipeline is an interstate pipeline" subject to PHMSA's exclusive jurisdiction and notified "OSFM that the Las Flores Pipeline is subject to the regulatory oversight by PHMSA." (*Id.*, pp. 2–3.)

On December 22, 2025, PHMSA approved the Restart Plan for Lines CA-324 and CA-325. (See Flores Decl. Ex. B.) In approving the Restart Plan for Lines CA-324 and CA-325, PHMSA reviewed Sable's Fill Plan and Startup Procedures, Linefill Positioning Plan Assignments, Line Fill Contact List, and letters requesting removal of pressure restrictions for the Las Flores Pipeline. (*Ibid.*) PHMSA also conducted field inspections with Sable to discuss process and safety procedures for Restart. (*Ibid.*) PHMSA's letter confirms that its "approval is valid from the date of [PHMSA's] letter." (*Ibid.*)

On December 23, 2025, PHMSA issued an Emergency Special Permit for Lines CA-324 and CA-325.[2] (See Flores Decl., Ex. C, p. 6.) Special permits are the federal equivalent of state waivers, like those states waivers that were the subject of Petitioners' now moot challenge against OSFM. This Emergency Special Permit takes the place of the State Waivers OSFM previously issued. The OSFM State Waiver is no longer necessary because the Las Flores Pipeline is now designated as an interstate pipeline. (Flores Decl., Ex. C, p. 6.)

In issuing the Emergency Special Permit, PHMSA "confirm[ed] that the special permit conditions ensure that [Sable] has an ongoing program to locate and remediate safety threats" and that "compliance with [permit] conditions . . . would provide an equivalent level of safety as compliance with [federal regulations]." (Flores Decl., Ex. C, p. 6.) "The full set of conditions imposed by the special permit sufficiently address the risk of a failure or release as a result of [] corrosion and provide an equivalent level of safety as compliance with [federal regulations],

///

---

[2] A special permit is an order that waives or modifies compliance with a regulatory requirement if the pipeline operator requesting it demonstrates the need and PHMSA determines that granting a special permit would be consistent with pipeline safety. (49 U.S.C. § 60118(c).)

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

demonstrating the expected environmental impacts of the action will not be significant." (*Id.*, p. 4.)

PHMSA further found that "[g]ranting this special permit is necessary to address the emergency declared by the President in Executive Order 14156"[3] because "the special permit would enable and facilitate the [Las Flores Pipeline] to meet regional energy demands, reduce refinery feedstock prices, mitigate the risks of fuel shortages on the West Coast, and reduce United States dependency on imported oil and the associated energy security risks of such imports." (Flores Decl., Ex. C, p. 7.)

On December 24, 2025, recognizing that approval to flow oil through the pipeline is now under federal jurisdiction, Petitioners filed an Emergency Motion for Stay Pending Appeal and a Petition for Review in the United States Court of Appeals for the Ninth Circuit, seeking a stay, pending appeal, of the issuance of PHMSA's Restart Approval and Emergency Special Permit. (See Declaration of Trevor D. Large in Support of Ex Parte Application for Order Shortening Time ["Large Decl."], Ex. D.) On December 25, 2025, Sable filed an Emergency Motion to Intervene. (Large Decl., Ex. D.) On December 31, 2025, the Ninth Circuit granted Sable's Emergency Motion to Intervene, denied Petitioners' Emergency Motion for Stay Pending Appeal, and set an expedited briefing schedule in the Ninth Circuit Action. (Large Decl., Ex. D.)

## III.    LEGAL STANDARD

Code of Civil Procedure section 1008 authorizes the Court to reconsider a prior ruling if it finds there are new or different facts, circumstances, or law than those before the Court at the time of the original ruling. Once the Court determines the existence of new or different facts, circumstances, or law, it can either modify or affirm its prior decision. (*Corns v. Miller* (1986) 181 Cal.App.3d 195, 202.) Section 1008, subd. (a) provides: "When an application for an order has been made to a judge, or to a court, and refused in whole … any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon

---

[3] Executive Order 14156, issued January 20, 2025, declares a national energy emergency and vests federal agencies, including PHMSA, with authority to facilitate the identification, leasing, siting, production, transportation, refining, and generation of domestic energy resources.

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order." The party making the application shall state by affidavit (i) what application was made before, (ii) when and to what judge, (iii) what order or decisions were made, and (iv) what new or different facts, circumstances, or law are claimed to be shown. (Code Civ. Proc. § 1008, subd. (a).) To be entitled to reconsideration, a party must show new or different facts and a satisfactory explanation for failing to produce such evidence earlier. (*Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1160-61.)

Section 533 additionally allows the court to dissolve a preliminary injunction upon a showing that "there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order." (Code Civ. Proc., § 533.)

## IV.   ARGUMENT

### A.   This Motion is Timely

A motion for reconsideration must be filed within 10 days after the introduction of new or different facts, circumstances, or law. (Code Civ. Proc § 1008, subd. (a).) Here, PHMSA determined the Las Flores Pipeline is an interstate pipeline subject to PHMSA's exclusive regulatory oversight and issued approvals for which Petitioners sought review in the Court of Appeals for the Ninth Circuit. The Court of Appeals for the Ninth Circuit issued an order on December 31, 2025 denying Petitioners' Emergency Motion for Stay Pending Appeal and setting an expedited briefing schedule on Petitioners' Petition for Review. This motion follows within 10 days of those new or different facts. No entry of an order has been issued. Thus, this motion is timely.

### B.   Material New Facts and Circumstances Warrant Reconsidering and Rescinding the Preliminary Injunction

New facts and circumstances warrant reconsideration of the Preliminary Injunction. The

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

Preliminary Injunction enjoins Sable from restarting Lines CA-324 and CA-325 of the Las Flores Pipeline until it gives 10 days' notice that it received all necessary approvals and permits from OSFM. (July 29, 2025 Order at 18.) With PHMSA's designation of the Las Flores Pipeline as an interstate pipeline under its exclusive federal jurisdiction, OSFM no longer has regulatory authority over Lines CA-324 and CA-325, or any portion of the Las Flores Pipeline. The basis for this Court's Preliminary Injunction is therefore now moot, no legal justification exists to continue the Preliminary Injunction, and Sable will be irreparably harmed if the Court does not rescind the Preliminary Injunction. (Previously filed Declaration of Steve Rusch in Support of Opposition to Application for Preliminary Injunction, filed July 8, 2025, ¶¶ 66–72.)

On December 17, 2025, PHMSA designated the Las Flores Pipeline as interstate and subject to PHMSA's exclusive jurisdiction. (Flores Decl., Ex. A, p. 3.) PHMSA's determination eliminates OSFM's jurisdiction over the Las Flores Pipeline, which only exercises jurisdiction over *intrastate* pipelines. (*Ibid.*) Given PHMSA's determination that "***the Las Flores Pipeline is an interstate pipeline,***" PHMSA notified "OSFM that the Las Flores Pipeline is subject to the regulatory oversight of PHMSA." (*Ibid.*)

Since assuming federal jurisdiction over the Las Flores Pipeline, PHMSA has asserted regulatory oversight over the Las Flores Pipeline. PHMSA approved Sable's Restart Plan for Lines CA-324 and CA-325 on December 22, 2025 and issued an Emergency Special Permit on December 23, 2025. (Flores Dec., Exs. B and C.) These approvals are in lieu of and render moot the OSFM-issued State Waivers that are the subject of Petitioners' lawsuit and the Preliminary Injunction. PHMSA specifically confirmed that "[t]he conditions ordered by OSFM in the two state waivers are now being re-issued by PHMSA as a special permit subject to Federal oversight and enforcement." (See Flores Dec., Ex. C, p. 6.)

Given the Las Flores Pipeline has now been designated an interstate pipeline under the exclusive jurisdiction of PHMSA, the Court's Preliminary Injunction frustrates Sable's prompt compliance with "the accomplishment of a federal objective" and "make[s] it impossible . . . to comply with both state and federal law." (*Geier v. Am. Honda Motor Co.* (2000) 529 U.S. 861,

---

10

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

873-84.) The Supremacy Clause of the United States provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (U.S. Cons. Art. VI, cl. 2; *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 655 [noting that California courts are "duty-bound" to follow federal law].)

The Preliminary Injunction is also preempted. Conflict preemption arises when "it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." (*Silkwood v. Kerr-McGee Corp.* (1983) 464 U.S. 238, 248.) Where, as here, "compliance with both federal and state regulations is a physical impossibility," state law must immediately yield. (*Florida Lime & Avocado Growers, Inc. v. Paul* (1963) 373 U.S. 132, 142.) Preemption may be based on an Executive Order, such as the President's Executive Order 14156 issued on January 20, 2025, which is specifically referenced in PHMSA's findings supporting Sable's Emergency Special Permit. (See *Old Dominion Branch No. 496, National Ass'n of Letter Carriers, AFL-CIO v. Austin* (1974) 418 U.S. 264, 273.)

Moreover, given that PHMSA's approvals are now the subject of an appeal pending before the Ninth Circuit, the operation of the Preliminary Injunction increases the risk of collateral disputes and inconsistent directives across forums while the parties litigate parallel issues in federal proceedings. Recognizing the federal posture, Petitioners sought review of PHMSA's actions in the Court of Appeals for the Ninth Circuit by filing a Petition for Review and Emergency Motion for Stay Pending Appeal on December 24, 2025. (See Large Dec., Ex. D.) On December 31, 2025, the Court of Appeals for the Ninth Circuit granted Sable's Motion to Intervene, denied Petitioners' Emergency Motion for Stay Pending Appeal, and set an expedited briefing schedule on Petitioners' Petition for Review. (See Large Dec., Ex. D.) The parties are now actively litigating these issues in federal court on an abbreviated schedule.

///

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

The designation of the Las Flores Pipeline as an interstate pipeline under the exclusive jurisdiction of PHMSA, PHMSA's approval of Sable's Restart Plan and issuance of the Emergency Special Permit, and the pendency of the Ninth Circuit action all constitute material new facts and circumstances that warrant reconsidering and rescinding the Preliminary Injunction pursuant to Code of Civil Procedure sections 1008 and 533.

## V.    CONCLUSION

For the foregoing reasons, Sable respectfully requests that this Court reconsider and rescind the Preliminary Injunction.

DATED:  January 5, 2025

Respectfully submitted,

ALSTON & BIRD, LLP

By: _____ for

Jeffrey D. Dintzer

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen, and not a party to the within action.  My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101.  On January 5, 2026, I served the within document:

**REAL PARTIES IN INTEREST SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES**

By Mail:  By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery:  By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery:  I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

  X   By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on January 5, 2026, at Santa Barbara, California.

*Marina L Ratliff*
Marina L. Ratliff

---

LEGAL02/47827721v3

**SERVICE LIST**

| | |
|---|---|
| Jeffrey D. Dintzer<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Tel: (213) 576-1000<br>Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Julie Teel Simmonds, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>Center for Biological Diversity<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612<br>Tel.: (510) 844-7100<br>Fax: (510) 844-7150<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org | *Attorneys for Petitioners: Center for Biological Diversity and Wishtoyo Foundation* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Tel: (310) 620-5879<br>Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Trevor D. Large (SBN: 214886)<br>Victoria C. Diffenderfer (SBN: 350018)<br>**FAUVER LARGE ARCHBALD & SPRAY**<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101<br>Tel: (805) 966-7000<br>Fax: (805) 966-7227<br>tlarge@flasllp.com<br>vdiffenderfer@flasllp.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |

**14**
**PROOF OF SERVICE**

| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Rengifo, Esq.<br>ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Tel: (805) 963-1622; (510) 844-7100<br>Fax: (805) 962-3152; (510) 844-7150<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |

**PROOF OF SERVICE**

LEGAL02/47827721v3

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
1/5/2026 6:59 PM
By: Narzralli Baksh , Deputy

Jeffrey D. Dintzer (SBN: 139056)
Garrett B. Stanton (SBN: 324775)
**ALSTON & BIRD, LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Tel: (213) 576-1000; Fax: (213) 576-1100
Jeffrey.Dintzer@alston.com
Garrett.Stanton@alston.com

Duncan Joseph Moore (SBN: 233955)
Benjamin J. Hanelin (SBN: 237595)
Natalie C. Rogers (SBN: 301254)
**PAUL HASTINGS LLP**
1999 Avenue of Stars, 27th Floor
Century City, CA 90067
Tel: (310) 620-5879; Fax: (310) 620-5899
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

Trevor D. Large (SBN: 214886)
Victoria C. Diffenderfer (SBN: 350018)
**FAUVER LARGE ARCHBALD & SPRAY**
820 State Street, 4th Floor
Santa Barbara, CA 93101
Tel: (805) 966-7000; Fax: (805) 966-7227
tlarge@flasllp.com
vdiffenderfer@flasllp.com

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA BARBARA**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, <br><br> Petitioners and Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERMANT, in his official | Case No. 25CV02244 <br><br> [Consolidated with 25CV02247] <br><br> Assigned for all purposes to: Hon. Donna D. Geck <br><br> **DECLARATION OF J. CALDWELL FLORES IN SUPPORT OF REAL PARTIES IN INTEREST SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION** <br><br> [Filed concurrently with Notice of Motion and Motion for Reconsideration; Memorandum and Points of Authorities; Declaration of Trevor D. Large; [Proposed] Order Rescinding Preliminary Injunction] |

1

DECLARATION OF J. CALDWELL FLORES

capacity as State Fire Marshal; and DOES 1 to 10, inclusive,

                   Respondents and Defendants,

      and

SABLE OFFSHORE CORP., a Delaware corporation; and PACIFIC PIPELINE COMPANY, a Delaware Corporation,

                Real Parties in Interest.

Date: April 17, 2026

Time:   10:00 a.m.
Dept.:   4

Complaint Filed: April 15, 2025

[Assigned for Purposes to the Honorable Donna D. Geck, Dept. 4]

DECLARATION OF J. CALDWELL FLORES

**DECLARATION OF J. CALDWELL FLORES**

I, J. Caldwell Flores, declare as follows:

1. I am the President and Chief Operating Officer of Sable Offshore Corp. and President of Pacific Pipeline Company (collectively "Sable"). I make this declaration in support of Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company's Motion for Reconsideration. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to them.

2. Sable is a publicly traded oil and gas company focused on responsibly developing the Santa Ynez Unit and the Las Flores Pipeline in waters offshore and onshore in California.

3. Portions of the Las Flores Pipeline have been considered intrastate since 2016 and thus subject to regulatory oversight by the California Office of the State Fire Marshal ("OSFM"). On December 17, 2025, the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") notified Sable by letter of its determination that "the Las Flores Pipeline is an interstate pipeline" subject to PHMSA's exclusive jurisdiction, and notified "OSFM that the Las Flores Pipeline is subject to the regulatory oversight by PHMSA." (Ex. B [Dec. 17, 2025 Letter from PHMSA to Sable Offshore Corp.], pp. 2-3.) On December 17, 2025, I received this letter and electronically stored it in my computer in a segregated file where it has been securely maintained. In preparing this declaration, I retrieved the December 17, 2025 letter and provided a copy to my legal counsel at Alston & Bird. Attached hereto as **Exhibit A** is a true and correct copy of the December 17, 2025 letter, which I have reviewed before signing this declaration.

4. On December 22, 2025, I received a letter from the PHMSA addressed to Lance Yearwood, Sable's Vice President. The December 22, 2025 PHMSA letter approved Sable's Restart Plan for the Las Flores Pipeline. Upon receipt of the December 22, 2025 letter, I electronically stored it in my computer in a segregated file where it has been securely maintained. In preparing this declaration, I retrieved the December 22, 2025 letter and provided a copy to my legal counsel at Alston & Bird. Attached hereto as **Exhibit B** is a true and correct copy of the December 22, 2025 letter, which I have reviewed before signing this declaration.

5. On December 23, 2025, I received an Emergency Special Permit and Special Permit

Analysis and Findings issued by PHMSA for the Las Flores Pipeline. Upon receipt of the Emergency Special Permit and Special Permit Analysis and Findings, I electronically stored it in my computer in a segregated file where it has been securely maintained. In preparing this declaration, I retrieved the these documents and provided a copy to my legal counsel at Alston & Bird. Attached hereto as **Exhibit C** is a true and correct copy of the Emergency Special Permit and Special Permit Analysis and Findings, which I have reviewed before signing this declaration.

6.     In issuing the Emergency Special Permit, PHMSA Findings' "confirm that the special permit conditions ensure that [Sable] has an ongoing program to locate and remediate safety threats" and that "compliance with [permit] conditions . . . would provide an equivalent level of safety as compliance with [federal regulations]."

7.     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on January 5, 2026 in Houston, Texas.

_____
J. Caldwell Flores

DECLARATION OF J. CALDWELL FLORES

# EXHIBIT A



U.S. Department
of Transportation

1200 New Jersey Avenue SE
Washington, D.C. 20590

**Pipeline and Hazardous
Materials Safety
Administration**

December 17, 2025

<u>Via Electronic Mail to: cflores@sableoffshore.com</u>

J. Caldwell Flores
President and Chief Operating Officer
Sable Offshore Corp.
845 Texas Ave. Ste 2920
Houston, TX 77002

Re: Determination of Interstate Classification

Dear Mr. Flores:

This responds to your letter of November 26, 2025 regarding the Las Flores Pipeline owned and operated by Sable Offshore Corp. (Sable). Your letter notifies the Pipeline and Hazardous Materials Safety Administration (PHMSA) that Sable has determined the pipeline to be an interstate pipeline facility under the Pipeline Safety Act (PSA) and requests PHMSA transition regulatory oversight from the California Office of the State Fire Marshal (OSFM) to PHMSA.

As noted in your letter, portions of the Las Flores Pipeline (previously known as Lines 901 and 903) have been considered intrastate since 2016 and subject to regulatory oversight by OSFM pursuant to its certification with PHMSA under 49 U.S.C. § 60105(a). Prior to 2016, Lines 901 and 903 were considered interstate and regulated by PHMSA. The classification change in 2016 corresponded to the pipelines' previous owner cancelling tariffs with the Federal Energy Regulatory Commission (FERC). In 2024, Sable acquired Lines 901 and 903 and other assets comprising the Las Flores Pipeline, including offshore pipelines transporting crude oil from the Outer Continental Shelf (OCS) and an onshore processing facility at Las Flores Canyon. Sable operates the Las Flores Pipeline assets as a single pipeline system transporting crude oil from the OCS to the Pentland Station terminal in Kern County, California.

Upon receipt of your letter, PHMSA initiated a review of the Las Flores Pipeline. This review included an on-site inspection on December 9 through December 11, 2025. OSFM representatives accompanied PHMSA on the inspection. PHMSA also reviewed Sable's written procedures and records and conducted field observations of the Las Flores facility, the pump stations at Gaviota and Sisquoc, the control room in Santa Maria, and the offshore Harmony platform. In addition, PHMSA reviewed the 2025 program inspections conducted by OSFM. For

the following reasons, PHMSA agrees with your determination that the Las Flores Pipeline is an interstate pipeline.

The PSA authorizes PHMSA to prescribe and enforce minimum safety standards for pipeline transportation and for pipeline facilities.[1] The PSA vests with PHMSA exclusive regulatory authority over interstate pipelines and preempts States from adopting or continuing in force safety standards for interstate pipelines.[2] With respect to intrastate pipelines, the PSA provides a State authority may regulate the intrastate pipelines within its borders upon submission to PHMSA of an annual certification.[3] Both the PSA and the Federal pipeline safety regulations define interstate and intrastate pipelines.[4] An interstate pipeline is a pipeline or part of a pipeline used to transport hazardous liquids in interstate or foreign commerce; an intrastate pipeline is a hazardous liquid pipeline that is not an interstate pipeline.

Determining whether a hazardous liquid pipeline is an interstate or intrastate pipeline requires a factual inquiry.[5] To assist in that determination, PHMSA adopted Appendix A to 49 CFR Part 195 providing a statement of agency policy and interpretation on the delineation between Federal and State jurisdiction.[6] In short, "if there is a tariff or concurrence filed with FERC governing the transportation of hazardous liquids over a pipeline facility . . . then [PHMSA] will, as a general rule, consider the facility to be an interstate pipeline facility within the meaning of the [PSA]." The absence of a FERC tariff generally means a pipeline is intrastate; however, in certain situations, PHMSA will consider a pipeline to be interstate despite the lack of a filing with FERC. Several examples of this are listed in Appendix A. As it relates to the Las Flores Pipeline, one example provides that a pipeline originating on the OCS will be considered an interstate pipeline even if the pipeline does not have a tariff with FERC.[7]

PHMSA's evaluation of the Las Flores Pipeline confirms that it transports crude oil from the OCS to an onshore processing facility at Las Flores Canyon and continues the transportation of crude oil from Las Flores Canyon to Pentland, California. Consistent with Appendix A, the Las

---

[1] 49 U.S.C. § 60101 et seq.

[2] 49 U.S.C. § 60104(c). See Olympic Pipe Line Co. v. City of Seattle, 437 F.3d 872, 878 (9th Cir. 2006) (discussing how the "PSA differentiates between the regulation of interstate and intrastate hazardous liquid pipelines.")

[3] 49 U.S.C. § 60105(a). OSFM has a certification with PHMSA to regulate intrastate hazardous liquid pipelines in California.

[4] 49 U.S.C. § 60101(a)(7), (a)(8)(B), (a)(10); 49 CFR § 195.2. See S. Pac. Pipe Lines Inc. v. DOT, 796 F.2d 539 (D.C. Cir. 1986) (finding PHMSA's definition of interstate and intrastate pipelines reasonable under the PSA).

[5] Transportation of Liquids by Pipeline, 46 Fed. Reg. 38,357, 38,359 (Jul. 27, 1981) (PHMSA's predecessor agency (hereafter PHMSA) explained that it had "reviewed examples of what it believes are the most frequent and likely configurations of liquid pipelines and pipeline facilities and considered various ways of cataloging or classifying them as either interstate or intrastate."); see also Shell Oil Co. v. City of Santa Monica, 830 F.2d 1052, 1064 (9th Cir. 1987) (noting that whether the pipeline was interstate or intrastate turned on a disputed issue of fact).

[6] Transportation of Hazardous Liquids by Pipeline; Regulation of Intrastate Pipelines, 50 Fed. Reg. 15,895, 15,897 (Apr. 23, 1985).

[7] 49 CFR Part 195, App. A. "Example 7. Pipeline Company P operates a pipeline that originates on the Outer Continental Shelf. P does not file any tariff for that line with FERC. [PHMSA] will consider the pipeline to be an interstate pipeline facility."

3

Flores Pipeline is an interstate pipeline.[8] As portions of the Las Flores Pipeline were previously considered to be intrastate and regulated by OSFM, PHMSA is notifying OSFM that the Las Flores Pipeline is subject to the regulatory oversight of PHMSA. Please direct further correspondence on this matter to Dustin Hubbard, Director, Western Region, Office of Pipeline Safety, PHMSA, at (720) 963-3183.

Sincerely,

**LINDA GAIL DAUGHERTY** Digitally signed by LINDA GAIL DAUGHERTY Date: 2025.12.17 07:56.55 -05'00'

Linda Daugherty
Acting Associate Administrator for Pipeline Safety

cc:    James Hosler, Chief, Pipeline Safety Division, OSFM
       Varun Shekhar, Shareholder, Babst Calland Clements & Zomnir, PC

---

[8] PHMSA regulations consider the Las Flores Pipeline to be an "active" pipeline. *See* Pipeline Safety: Clarification of Terms Relating to Pipeline Operational Status, 81 Fed. Reg. 54,512 (Aug. 12, 2016) ("The regulations consider pipelines to be either active and fully subject to all relevant parts of the safety regulations or abandoned.")

# EXHIBIT B



U.S. Department
of Transportation
**Pipeline and Hazardous
Materials Safety
Administration**

12300 W. Dakota Ave., Suite 340
Lakewood, CO  80228

**<u>VIA ELECTRONIC MAIL TO: lyearwood@sableoffshore.com</u>**

December 22, 2025

Mr. Lance Yearwood
Vice President
Pacific Pipeline Company / Sable Offshore Corp.
845 Texas Avenue, Suite 2920
Houston, Texas 77002

**RE:    Approval of Sable Offshore Corp.'s Restart Plan for the Las Flores Pipeline System Line
CA-324 and Line CA-325**

Dear Mr. Yearwood:

From December 4 to December 12, 2025, the Pipeline and Hazardous Materials Safety Administration
(PHMSA) received several documents from Sable Offshore Corp. These documents included:

1. Line CA-324 and Line CA-325 Fill Plan and Startup Procedures
2. A letter requesting the removal of pressure restrictions for Line CA-324
3. A letter requesting the removal of pressure restrictions for Line CA-325
4. The Las Flores Pipeline Linefill Positioning Plan Assignments
5. The Las Flores Pipeline Linefill Contact List

These documents addressed the Restart Plan for Line CA-324 and Line CA-325 (previously known as
Plains Line 901 and Line 903, respectively). In addition, PHMSA conducted a field inspection with Sable
Offshore Corp. to discuss its process and safety procedures for the pipeline restart.

PHMSA has reviewed these documents and hereby approves the submitted Restart Plan. This approval is
valid from the date of this letter.

Should you have any questions or concerns, please contact me at (720) 963-3160 or by email at
dustin.hubbard@dot.gov.

Sincerely,

**DUSTIN B HUBBARD** Digitally signed by DUSTIN B HUBBARD
Date: 2025.12.22 13:19:33 -07'00'

Dustin Hubbard
Director, Western Region
Pipeline and Hazardous Materials Safety Administration

cc:     Trent Fontenot, Sr. Vice President - Operations, tfontenot@sableoffshore.com
        Jim Hosler, Assistant Deputy Director – Pipeline Safety and CUPA, CalFire,
        jim.hosler@fire.ca.gov

# EXHIBIT C

# U.S. DEPARTMENT OF TRANSPORTATION

# PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION

## Special Permit Analysis and Findings

## Emergency Special Permit

## Special Permit Information:

| | |
|---|---|
| **Docket Number:** | PHMSA-2025-1502 |
| **Requested By:** | Sable Offshore Corp. PPC |
| **Operator ID#:** | 40881 |
| **Date Requested:** | December 19, 2025 |
| **Issuance Date:** | December 23, 2025 |
| **Expiration Date:** | February 21, 2026 |
| **Code Section:** | 49 CFR § 195.452(h)(4)(iii)(H) |

## Purpose:

The Pipeline and Hazardous Materials Safety Administration (PHMSA), Office of Pipeline Safety (OPS),[1] provides this information to describe the facts of the subject emergency special permit application submitted by Sable Offshore Corp. PPC (Sable), to discuss relevant factors with respect to the request, to present the basis of the emergency, to discuss environmental considerations, and to make findings regarding whether the requested special permit should be granted and, if so, under what conditions.

## Pipeline System Affected:

On December 19, 2025,[2] Sable applied for a special permit which would, in conjunction with enhanced integrity management (IM) practices, waive 49 CFR § 195.452(h)(4)(iii)(H) for approximately 124.42 miles of the 24- and 30-inch diameter hazardous liquid pipelines, Lines CA-324 and CA-325 (CA-325A and CA-325B), of the interstate Santa Ynez Pipeline System (SYPS) pipeline facility, located on the Outer Continental Shelf (OCS) and in California.  A map of the *special permit segments* is available in Revised Attachment A.

## Special Permit Request:

Sable's request for an emergency special permit requested a waiver of 49 CFR § 195.452(h)(4)(iii)(H) as applicable to the three *special permit segments* Lines CA-324, CA-325A and

---

[1] Throughout this special permit the usage of "PHMSA" or "PHMSA OPS" means the U.S. Department of Transportation (DOT), Pipeline and Hazardous Materials Safety Administration, Office of Pipeline Safety.

[2] Sable submitted supplemental information related to its application on December 23, 2025.

CA-325B. Without this special permit, 49 CFR § 195.452(h)(4)(iii)(H) would require corrosion of or along a longitudinal seam weld to be scheduled for evaluation and remediation within 180 days of discovering the condition.[3]

This emergency special permit was not posted for public notice and comment prior to issuance in accordance with 49 CFR § 190.341(g).  The special permit will automatically expire in 60 days.  If Sable applies for a renewal of this emergency special permit, PHMSA will post the draft special permit and accompanying materials for public notice and comment in accordance with section 190.341.

## Analysis:

PHMSA may grant an emergency special permit "without notice and comment or hearing if the Associate Administrator determines that such action is in the public interest, is not inconsistent with pipeline safety, and is necessary to address an actual or impending emergency involving pipeline transportation." 49 CFR § 190.341(g).  Actual or impending emergencies involving pipeline transportation "may be local, regional, or national in scope and includes significant fuel supply disruptions and natural or manmade disasters . . . or other similar events."  Emergency special permits may be issued for a period not to exceed 60 days, after which the emergency special permit automatically expires.

The granting of this special permit is in the public interest.  In addition to addressing an actual or impending emergency involving pipeline transportation as described below, granting the special permit would ensure a uniform and continuous exercise of regulatory oversight over the *special permit segments*.  Specifically, the conditions in the emergency special permit had previously been applied to the pipeline through a series of waivers issued by California's Office of the State Fire Marshall (OSFM) when the *special permit segments* were considered intrastate pipelines subject to OSFM oversight.  The original state waivers had been reviewed and agreed to by PHMSA pursuant to 49 U.S.C. § 60118(d).  By granting this special permit, application of the conditions will continue under Federal oversight, providing regulatory certainty and uniformity.  In addition, as described in Sable's application, the granting of the special permit would contribute to local employment, reduce the need for anomaly digs and other field activities which could damage the local environment, and reduce ship traffic bringing imported oil to the West Coast.[4]

The granting of this special permit is also consistent with pipeline safety.  PHMSA reviewed this emergency special permit request to understand the known type of integrity threats that are in the *special permit segments*.  This integrity information confirmed that the special permit conditions ensure that the operator has an ongoing program to locate and remediate safety threats.  As described herein and in the Conditions document prepared as part of this special permit, PHMSA has reviewed the conditions proposed by Sable and determined that compliance with those conditions for operation of the *special permit segments* would provide an equivalent level of safety as compliance with 49 CFR § 195.452(h)(4)(iii)(H).

---

[3] OPS published a revision of Hazardous Liquid Integrity Management Frequently Asked Question 7.16 on September 12, 2025 clarifying that corrosion coincident with a longitudinal seam not does need to be mitigated per 49 CFR § 195.452(h)(4)(iii)(H).

[4] For more information regarding these effects, see Attachments C, D, E, and F.

Lastly, granting of this special permit is necessary to address an actual or impending emergency involving pipeline transportation.  On January 20, 2025, the President issued Executive Order 14156 in accordance with the National Emergencies Act (50 U.S.C. § 1601 et seq.) declaring a national energy emergency based on a finding that "[t]he United States' insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy."[5]  The Executive Order directs agencies, such as PHMSA, to "identify and exercise any lawful emergency authorities available to them, as well as all other lawful authorities they may possess, to facilitate," among other activities, the "production, transportation, refining, and generation of domestic energy resources."[6]  The Executive Order further directs agencies to "identify and use all lawful emergency or other authorities available to them to facilitate the supply, refining, and transportation of energy in and through the West Coast of the United States . . . ."[7]

Granting this special permit is necessary to address the emergency declared by the President in Executive Order 14156.  Specifically, the special permit would enable and facilitate the *special permit segments* to meet regional energy demands, reduce refinery feedstock prices, mitigate the risks of fuel shortages on the West Coast, and reduce United States dependency on imported oil and the associated energy security risks of such imports.

DOT Procedures for Considering Environmental Impacts contain specific provisions regarding environmental review in emergency circumstances.[8]  Specifically, the procedures note that "[e]mergency circumstances may require immediate actions that preclude following standard [National Environmental Policy Act (NEPA)] procedures" and "emergency actions necessary to protect . . . valuable resources should never be delayed in order to comply with NEPA."[9]  But when time permits, the agency should prepare appropriate environmental documentation.

As described in Executive Order 14156, the present national energy emergency requires the expeditious deployment of domestic "unrealized energy resources" and the United States' "current inadequate development of domestic energy resources leaves us vulnerable to hostile foreign actors and poses an imminent and growing threat to the United States' prosperity and national security."[10]  As an executive agency, PHMSA must "exercise any lawful emergency authorities" and "all other lawful authorities" to facilitate the transportation of "domestic energy resources."[11]

When the expected environmental impacts of a proposed emergency action are not considered significant, PHMSA should, to the extent practicable, prepare an environmental assessment (EA).[12]  For this special permit, the scope of the proposed emergency action is narrow: it waives a requirement that certain

---

[5] Exec. Order 14156: Declaring a National Energy Emergency (Jan. 20, 2025), Sec. 1.

[6] Exec. Order 14156: Declaring a National Energy Emergency (Jan. 20, 2025), Sec. 2(a).  The order's definition of "energy" or "energy resources" includes "crude oil," and its definition of "transportation" includes "the physical movement of energy, including through, but not limited to, pipelines." Sec. 1(a); 1(c).

[7] Exec. Order 14156: Declaring a National Energy Emergency (Jan. 20, 2025), Sec. 3(b).  For more information regarding these effects, see Attachments C, D, E, and F.

[8] *DOT Order 5610.1D: DOT's Procedures for Considering Environmental Impacts*, Sec. 23.

[9] *DOT Order 5610.1D: DOT's Procedures for Considering Environmental Impacts*, Sec. 23.

[10]  Exec. Order 14156: Declaring a National Energy Emergency (Jan. 20, 2025), Sec. 1.

[11] Exec. Order 14156: Declaring a National Energy Emergency (Jan. 20, 2025), Sec. 2(a).

[12] *DOT Order 5610.1D: DOT's Procedures for Including Environmental Impacts*, Sec. 23(b).

corrosion along a longitudinal seam weld is mitigated within 180 days.  Section 195.452(h)(4)(iii)(H).[13] The full set of conditions imposed by the special permit sufficiently address the risk of a failure or release as a result of such corrosion and provide an equivalent level of safety as compliance with 49 CFR § 195.452(h)(4)(iii)(H), demonstrating the expected environmental impacts of the action will not be significant.

Notwithstanding, PHMSA will conduct an EA and post it to the docket for this emergency special permit as soon as practicable.  In addition, if Sable applies for a renewal of this emergency special permit or a non-emergency special permit, PHMSA will post the associated EA for public comment.

## Findings:

Based on the information submitted by Sable and PHMSA's review of the documentation, PHMSA finds that granting this emergency special permit subject to conditions waiving the requirements of 49 CFR § 195.452(h)(4)(iii)(H) for Sable's Lines CA-324 and CA-325 is in the public interest, is not inconsistent with pipeline safety, and is necessary to address an actual or impending emergency involving pipeline transportation. This special permit requires Sable to implement the special permit conditions that include applying IM practices to the *special permit segments.*  This emergency special permit will automatically expire on the date specified in the permit and may be renewed upon application to PHMSA only after notice and opportunity for a hearing on the renewal.

---

[13] On September 12, 2025, PHMSA published a revised interpretation clarifying that corrosion coincident with a longitudinal seam does not need to be mitigated per section 195.452(h)(4)(iii)(H).  "Liquid Integrity Management Rule Frequently Asked Questions," Sec. 7.16 (rev. 09/12/2025), accessed at: https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/2025-09/Liquid%20IM%20FAQs%209-12-25%20revision.pdf

# U.S. DEPARTMENT OF TRANSPORTATION

# PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION

# EMERGENCY SPECIAL PERMIT

## Special Permit Information:

**Docket Number:**          2025-1502

**Requested By:**          Sable Offshore Corp. PPC

**Operator ID#:**          40881

**Date Requested:**          December 19, 2025

**Issuance Date:**          December 23, 2025

**Expiration Date:**          February 21, 2026

**Code Section:**          49 CFR § 195.452(h)(4)(iii)(H)

## Grant of Special Permit:

By this order, subject to the terms and conditions set forth below, the Pipeline and Hazardous Materials Safety Administration (PHMSA) Office of Pipeline Safety (OPS)[1] grants this emergency special permit to Sable Offshore Corp. PPC (Sable) for 124.42 miles of 24- and 30-inch diameter hazardous liquid pipelines, Lines CA-324 and CA-325 (*special permit segments*), transporting crude oil from Las Flores Canyon to Pentland in Santa Barbara, San Luis Obispo, and Kern counties, California.  This emergency special permit waives compliance from 49 CFR § 195.452(h)(4)(iii)(H), which requires corrosion of or along a longitudinal seam weld be scheduled for evaluation and remediation within 180 days of discovering the condition.

## I.    Purpose and Need

On December 19, 2025,[2] Sable requested an emergency special permit for relief from the requirement to evaluate and remediate corrosion occurring at longitudinal seam welds within 180 days.  The *special permit segments* are under polyurethane foam and polyethylene tape wrap insulation, which can inhibit the effectiveness of cathodic protection and contribute to a risk of corrosion due to shielding effects. Sable proposed an alternative approach to safely manage this risk, which was previously reviewed and approved as part of two state waivers issued by the California Office of State Fire Marshal (OSFM) on December 17, 2024 to Sable for the *special permit segments*.  PHMSA previously reviewed the state waivers pursuant to 49 U.S.C. § 60118(d).

---

[1] Throughout this special permit, the usage of "PHMSA" means the U.S. Department of Transportation (DOT), Pipeline and Hazardous Materials Safety Administration, Office of Pipeline Safety.
[2] Sable submitted supplemental information related to its application on December 23, 2025.

Sable sought this special permit to implement the terms of a Consent Decree entered in Civil Action No. 2:20-CV-02415 by the U.S. District Court for the Central District of California, which provides, among other requirements, that a "State Waiver" must be applied for and received from OSFM prior to restarting Lines CA-324 and CA-325. The *special permit segments* were previously considered intrastate at the time of entry of the Consent Decree and were regulated by OSFM pursuant to its state certification with PHMSA under 49 U.S.C. § 60105(a). However, the *special permit segments* are now considered interstate pursuant to Sable's designation on November 26, 2025, and PHMSA's concurrence on December 17, 2025. As a result, PHMSA has exclusive pipeline safety regulatory agency over Lines CA-324 and CA-325.  The conditions ordered by OSFM in the two state waivers are now being re-issued by PHMSA as a special permit subject to Federal oversight and enforcement.

Sable requested PHMSA grant a special permit for the above reasons on an emergency basis pursuant to 49 U.S.C. § 60118(c)(2) and 49 CFR § 190.341(g). In its application, Sable stated that expedited review of its application was warranted in light of the national energy emergency declared by the President under the National Emergencies Act (50 U.S.C. § 1601 et seq.) in Executive Order 14156 (January 20, 2025). In Executive Order 14156, the President declared a national energy emergency based on a finding that "[t]he United States' insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy."[3]  The Executive Order directs agencies, such as PHMSA, to "identify and exercise any lawful emergency authorities available to them, as well as all other lawful authorities they may possess, to facilitate," among other activities, the "production, transportation, refining, and generation of domestic energy resources."[4]  The Executive Order further directs agencies to "identify and use all lawful emergency or other authorities available to them to facilitate the supply, refining, and transportation of energy in and through the West Coast of the United States . . . ."[5]

Sable's application stated that grant of this special permit on an emergency basis would facilitate the restart of Lines CA-324 and CA-325 to provide relief in response to the acute energy shortage conditions identified in Executive Order 14156 within California and in the West Coast region of the United States.[6]  Sable further noted that grant of this special permit on an emergency basis is appropriate to address the gap in coverage under the OSFM State Waivers created by redesignation of Lines CA-324 and CA-325 as interstate, given that the proposed special permit is substantially the same as that which was previously reviewed and approved by OSFM and PHMSA for issuance of the State Waivers.

This emergency special permit allows Sable to operate Lines CA-324 and CA-325 without being subject to the requirement to evaluate and remediate corrosion of or along a longitudinal seam weld within 180 days.  On the condition that Sable comply with the terms and conditions set forth below, the emergency special permit waives compliance with 49 CFR § 195.452(h)(4)(iii)(H) for the *special permit segments*.

---

[3] Exec. Order 14156: Declaring a National Energy Emergency (Jan. 20, 2025), Sec. 1.
[4] Exec. Order 14156: Declaring a National Energy Emergency (Jan. 20, 2025), Sec. 2(a).  The order's definition of "energy" or "energy resources" includes "crude oil," and its definition of "transportation" includes "the physical movement of energy, including through, but not limited to, pipelines." Sec. 1(a); 1(c).
[5] Exec. Order 14156: Declaring a National Energy Emergency (Jan. 20, 2025), Sec. 3(b).
[6] For more information regarding these effects, see Attachments C, D, E, and F.

## II. Special Permit Segments

This emergency special permit pertains to the specified pipeline segments which make up the Las Flores Pipeline called Line CA-324 and CA-325.  Line CA-325 can be further divided into two segments: Lines CA-325A and CA-325B.  The Las Flores Pipeline is part of the Santa Ynez Pipeline System (SYPS), an interstate pipeline facility that Sable operates from the Outer Continental Shelf off the coast of Santa Barbara to Kern County, California.  A map of the special permit segments is available in Revised Attachment A.

**Special Permit Segments:**

| Special Permit Segment Name | Location | Mileage | California County or Counties |
|---|---|---|---|
| CA-324 | Las Flores Canyon Processing Facility to Gaviota Pump Station | 10.86 | Santa Barbara |
| CA-325A | Gaviota Pump Station to Sisquoc Pump Station | 38.72 | Santa Barbara |
| CA-325B | Sisquoc Pump Station to Pentland Station | 74.84 | Santa Barbara; San Luis Obispo; Kern |

## III.  Conditions

PHMSA grants this emergency special permit subject to Sable implementing each of the following conditions.  These conditions must be implemented and complied with in addition to all applicable requirements of 49 CFR Part 195 except for compliance with limitations on scheduling instances of corrosion on or near longitudinal seam welds for evaluation and remediation within 180 days of discovery in 49 CFR § 195.452(h)(4)(iii)(H), which would be waived.

**General Conditions:**

1)      The *special permit segments* may only be used to transport crude oil.

2)      Prior to transporting crude oil in the *special permit segments*, Sable must develop and implement procedures for the conditions and requirements described in this emergency special permit.

3)      Sable shall not exceed maximum operating pressure (MOP) limits for the *special permit segments*, as follows:

    a)  The MOP of Line CA-324 cannot exceed 1003 pounds per square inch gauge (psig).

    b)  The MOP of Line CA-325A (the segment of Line CA-325 between Gaviota and Sisquoc stations) cannot exceed 1000 psig.

    c)  The MOP of Line CA-325B (the segment of Line CA-325 between Sisquoc and Pentland stations) cannot exceed 1292 psig.

4)  Sable shall not exceed maximum operating temperature limits for crude oil transported in the ***special permit segments***, as follows:

    a)  The maximum operating temperature of the crude oil that is transported in Line CA-324 must not exceed 140 degrees Fahrenheit for more than 12 consecutive hours.

    b)  The maximum operating temperature of the crude oil that is transported in Line CA-325A (the segment of Line CA-325 between Gaviota and Sisquoc stations) must not exceed 125 degrees Fahrenheit for more than 12 consecutive hours. Temperature transmitters must be installed on Line CA-325 at Gaviota station to monitor the temperature of Line CA-325A.

    c)  The maximum operating temperature of the crude oil that is transported in Line CA-325B (the segment of Line CA-325 between Sisquoc and Pentland stations) must not exceed 110 degrees Fahrenheit for more than 12 consecutive hours. Temperature transmitters must be installed on Line CA-325 at Sisquoc station to monitor the temperature of Line CA-325B.

5)  This emergency special permit does not relieve Sable from complying with applicable requirements under 49 CFR Part 195, other than those waived in this emergency special permit.

6)  This emergency special permit does not relieve Sable from any requirements imposed by the Consent Decree (United States District Court Central District of California Civil Action No. 2:20-cv-02415).

7)  In-line inspections (ILIs) performed pursuant to this emergency special permit must include:

    a)  Use of a tool that is at least capable of reliably detecting and identifying cluster corrosion and general corrosion, defined as follows:

        i.  Cluster means two or more adjacent metal loss features in the wall of the pipe or weld that may interact based on interaction criteria.

        ii.  General corrosion means uniform or gradually varying loss of wall thickness over an area.

    b)  Use of a tool that is at least capable of reliably detecting and sizing corrosion at a 90 percent probability of detection (POD) and probability of identification (POI).

    c)  Use of a tool that is at least capable of reliably detecting and sizing crack or crack-like anomalies at a 90 percent POD and POI.

8)  Prior to placing CA-324 in operation, Sable must perform fracture toughness tests on the existing 24" pipe from CA-324 in accordance with ASTM E1820-23B Standard Test Method for Measurement of Fracture Toughness. All of the test specimens must be from the predominant existing 24" pipe, specifically API 5L X65 HF-ERW pipe with a nominal thickness of 0.344" that was manufactured by Nippon Steel Corp. in the 1980s. At least three (3) separate tests must be performed to obtain the fracture toughness values of the

pipe body, heat affected zone (HAZ)[7], and the HF-ERW long seam weld on the pipe to represent the fracture toughness of CA-324 (i.e. three (3) samples for pipe body, three (3) samples for HAZ, and three (3) samples for the HF-ERW long seam weld). The lowest fracture toughness value must be applied to conditions 11, 16, 17, and 21. Sable may use pipe samples taken opportunistically during ongoing maintenance and repair efforts on Line CA-324.[8]

9) Prior to placing Line CA-325 (including CA-325A and CA-325B) in operation, Sable must perform fracture toughness tests on the existing 30" pipe from CA-325A/B in accordance with ASTM E1820-23B Standard Test Method for Measurement of Fracture Toughness. All of the test specimens must be from both of the two following predominant existing 30" pipe specifications:

    a) API 5L X70 pipe with a nominal thickness of 0.281" that was manufactured by the various pipe mills in the 1980s.

    b) API 5L X65 pipe with a nominal thickness of 0.344" that was manufactured by the various pipe mills in the 1980s.

At least three (3) separate tests must be performed from each pipe mill, for both of the two pipe specifications listed above, to obtain the fracture toughness values of the pipe body, heat affected zone (HAZ), and the DSAW long seam weld on the pipe to represent the fracture toughness of CA-325A/B (i.e. three (3) samples for pipe body, three (3) samples for HAZ, and three (3) samples for the DSAW long seam weld). The lowest fracture toughness value must be applied to conditions 11, 16, 17, and 21. Sable may use pipe samples taken opportunistically during ongoing maintenance and repair efforts on Line CA-325A/B.[9]

10) All existing immediate and 180-day repair conditions must be evaluated and remediated pursuant to the Consent Decree repair criteria prior to restarting CA-325A/B.[10] Upon restart Sable must utilize Ultrasonic Thickness Wall Measurement (UTWM) and Ultrasonic Shear Wave Crack Detection (USCD) in-line inspection (ILI) tools within seven (7) days of achieving initial steady state operation in accordance with an ILI survey schedule approved by PHMSA. Sable must utilize the Ultrasonic Thickness Wall Measurement (UTWM) and Ultrasonic Shear Wave Crack Detection (USCD) in-line inspection (ILI) results to identify, evaluate and remediate any immediate and 180-day repair conditions that are listed in this emergency special permit.

11) Remaining strength of pipe calculation for all metal loss anomalies must be in accordance with the Modified B31G method as described in ASME B31G *Manual for Determining the Remaining Strength of Corroded Pipelines.* If ASME B31G 2012 Edition is used, then it must comply with the conditions in accordance with Section 1.2 and exclusions in accordance with Section 1.3 of ASME B31G 2012 Edition. However, if the metal loss

---

[7] The heat affected zone (HAZ), as used in this emergency special permit, is defined as a 1-inch-wide area on either side of the longitudinal weld seam.

[8] Sable indicated in its application that it has already completed all of the testing required in this condition. Sable must submit all fracture toughness results to PHMSA prior to restarting Line CA-324.

[9] Sable indicated in its application that it has already completed the testing required in this condition. Sable must submit all fracture toughness results to PHMSA prior to restarting Line CA-325.

[10] Sable indicated in its application that it has already completed the repairs required in this sentence. Sable must submit all of the results to PHMSA prior to restarting CA-324 and CA-325.

anomaly intersects or is within one (1) inch (circumferentially) of the longitudinal seam weld, Sable must also calculate the predicted failure pressure of the anomaly by using the crack-like flaw evaluation method ASME FFS-1/API 579-1.

12) Sable must utilize cleaning pigs at regular intervals not to exceed a biweekly basis to maintain adequate cleanliness on the internal pipe wall of CA-324 and CA-325A/B.

13) Pressure Testing:[11]

a) Prior to placing CA-324 in operation, Sable must conduct a spike hydrostatic pressure test of CA-324 at a minimum pressure that is at least 1.5 times the maximum operating pressure (MOP) or 100% specified minimum yield strength (SMYS), for a minimum of 15 minutes after the spike test pressure is stabilized. Sable must field evaluate and remediate the following anomalies before performing the spike hydrostatic test on CA-324:

    i. All metal loss anomalies that have an ILI reported depth of 40% and greater wall loss.

    ii. All anomalies that have a predicted failure pressure less than or equal to 1.6 times MOP.

b) Immediately following the spike hydrostatic pressure test specified in Condition 13(a), Sable must conduct an 8-hour hydrostatic pressure test of CA-324 at a minimum of 1.25 times the MOP.

c) Prior to placing Line CA-325A (segment of Line 325 between Gaviota and Sisquoc stations) in operation, Sable must conduct a spike hydrostatic pressure test of CA-325A at a minimum pressure that is at least 1.39 times the MOP, for a minimum of 15 minutes after the spike test pressure is stabilized. Sable must ensure that the spike hydrostatic pressure at the highest elevation of each testable segment is at least 1.39 times the MOP. Sable must field evaluate and remediate the following anomalies before performing the spike hydrostatic test on CA-325A:

    i. All metal loss anomalies that have an ILI reported depth of 40% and greater wall loss.

    ii. All anomalies that have a predicted failure pressure less than or equal to 1.5 times MOP.

d) Immediately following the spike hydrostatic pressure test specified in Condition 13(c), Sable must conduct an 8-hour hydrostatic pressure test of CA-325A at a minimum of 1.25 times the MOP.

e) Prior to placing Line CA-325B (segment of Line 325 between Sisquoc and Pentland stations) in operation, Sable must conduct a hydrostatic pressure test of CA-325B at a minimum pressure of 1.25 times the MOP, for a minimum of 8 hours. Sable must ensure that the hydrostatic pressure at the highest elevation of each testable segment is at least 1.25 times the MOP. Sable must field evaluate and remediate the following anomalies before performing the

---

[11] Sable indicated in its application that it has already completed all of the testing and repairs required in this Condition.  Sable must submit the results to PHMSA prior to restart and confirm that no failures occurred during the required pressure testing.

hydrostatic test on CA-325B:

    i. All metal loss anomalies that have an ILI reported depth of 40% and greater wall loss.

    ii. All anomalies that have a predicted failure pressure less than or equal to 1.4 times MOP.

f) Sable must obtain the Test ID for each hydrostatic pressure test from PHMSA (or OSFM if such testing was performed prior to November 26, 2025) and have the approved independent testing firm forward separately the certified test results to PHMSA or the OSFM, as applicable.

g) Each hydrostatic pressure test must be performed in accordance with the applicable requirements of 49 CFR Part 195 Subpart E – Pressure Testing and monitored by an independent testing firm listed under PHMSA or OSFM (as applicable) approved hydrostatic testing companies.

h) Failures resulting from the spike hydrostatic pressure test or the 8-hour strength test shall be immediately reported to PHMSA.[12]

i) Section(s) of the ***special permit segments*** that failed during the required hydrotesting must be repaired by removing and replacing the failed section. PHMSA reserves the right to revoke this emergency special permit if failure(s) raise the concern that the ***special permit segments*** cannot be safely operated.

14) In-Line Inspection (ILI) Assessment and Frequency:

a) Prior to performing in-line inspections of the ***special permit segment***, Sable shall provide PHMSA with a written notification to PHMSA describing its assessment plan with the following information:

    i. Dates for integrity assessment

    ii. In-line inspection tool(s) selected, in accordance with API Standard 1163 Section 5 and NACE SP0102[13] to assess the integrity of the subject pipe segment(s) in which ILIs must be capable to detect and size wall loss, dents, internal corrosion, external corrosion, cracks and crack-like indications;

    iii. In-line inspection tool vendor(s)

    iv. Required tool specifications including operational specifications and anomaly sizing tolerances

    v. Tool validation methodology

    vi. Anomaly feature identification criteria and reporting thresholds – wall loss, dents, internal corrosion, external corrosion, cracks, and crack-like indications

---

[12] All submissions to PHMSA required by this emergency special permit shall be submitted through email to the OPS Western Region Director, Dustin Hubbard, email address: Dustin.Hubbard@dot.gov or his designee.

[13] Industry standards referenced in this emergency special permit must utilize the editions that are incorporated by reference in 49 CFR 195.3 unless another edition is explicitly specified in this emergency special permit.

vii.  Criteria used to identify locations for excavation and field verification

viii.  Non-destructive examination

b)  Within seven (7) days prior to any anticipated ILI tool run, Sable must utilize extensive brush pigs and solvents (xylene or other chemicals) to ensure that the internal pipe wall does not have any corrosive products, wax, and bacteria buildup that may affect the ILI tool performance.

c)  Metal Loss Tool(s):

i.  Initial ILI tool runs – Each year, during the first two (2) years of operating the **special permit segments**, Sable shall conduct at least two (2) ILIs using a UTWM tool with an inertial measurement unit (IMU). Sable shall compare both runs and evaluate all available information, including these tool runs and corresponding IMU data. Sable shall perform the UTWM tool run every six (6) months not to exceed nine (9) months. If a UTWM tool run is unsuccessful, Sable shall identify the limitations that prevented the UTWM tool run from being successful, consider changes to increase the likelihood of a successful UTWM tool run, and use best efforts to rerun the UTWM tool within 30 days.

ii.  Subsequent ILI tool runs – After the first two (2) years of operating the **special permit segments**, Sable shall conduct at least one (1) Ultrasonic Wall Measurement tool (UTWM) each calendar year, not to exceed 15 months or the ILI assessment must be assessed at more frequent intervals if the remaining Failure Pressure Ratio will be less than 1.39 times MOP prior to the next ILI assessment, based upon anomaly growth estimates and pressure cycling. If any UTWM tool run is deemed to be unsuccessful, Sable shall document the reasons why the UTWM tool was unsuccessful, consider changes to increase the likelihood of a successful UTWM tool run, and must reassess the **special permit segment** within 30 days after it was deemed to be unsuccessful. All metal loss tool runs must also utilize an Inertial Measurement Unit (IMU).

d)  Crack Detection Tools - Sable shall conduct at least one (1) Ultrasonic Shear Wave Crack Detection (USCD) tool each calendar year, not to exceed 15 months[14] or the ILI assessment must be assessed at more frequent intervals if condition 21 determined a shorter assessment interval.

i.  These crack tool runs must utilize an Inertial Measurement Unit (IMU) and must be able to detect and size axial and circumferential cracks.

ii.  USCD Performance Specification Requirements

1.  The USCD tools must have a probability of detection that is

---

[14] Sable may petition PHMSA to revise the reassessment interval for Crack Detection Tool(s) when sufficient evidence is available to determine if crack growth rates could support a longer reassessment interval.  Changes to the reassessment interval are subject to PHMSA approval.

≥ 90% for axial and circumferential cracks.

2. The minimum crack depth that can be detected must be at least 1 mm for axial and circumferential cracks that are located in the base material.

3. The minimum crack depth that can be detected must be at least 2 mm for axial and circumferential cracks that are located in the weld.

4. The depth sizing accuracy for cracks must be ± 0.8 mm for axial cracks and ± 1 mm for circumferential cracks.

e) Dents and Pipe Deformation: Sable shall conduct a high-resolution deformation ILI tool with each UTWM.

f) Where any ILI tool fails to record data for 5% or more of the external and/or internal surface area of the inspected segment, reassess with the ILI tool to cover the area that is deemed to be inadequate data of the inspected segment. In addition, if the ILI tool travels at a speed that is outside the range of the tool velocity listed in the tool specification for 2% or more of the length of the inspected segment, Sable must rerun the ILI tool to reassess the *special permit segment* in which the ILI tool velocity was outside of the specified tool velocity range.

g) All ILI tool runs must obtain the Test ID from PHMSA prior to run.

h) Sable must require its ILI tool vendor(s) to include in the vendor's inspection report all metal loss indications of 10% or greater, based on raw data, prior to adding in any correction for tool tolerance.

i) Sable must incorporate ILI tool accuracy by ensuring that each ILI tool service provider determines the tolerance of each tool, in accordance with API Standard 1163 Second Edition and includes that tolerance in determining the size of each indication reported to Sable.

j) Sable must account for ILI tool tolerance and anomaly growth rates in scheduled response times, repairs, and future reassessment intervals. Sable must document and justify the values used. Sable must demonstrate ILI tool tolerance accuracy for each ILI tool run by using calibration, excavations, and unity plots[15] that demonstrate ILI tool accuracy to meet the tool accuracy specification provided by the vendor (typical for depth within +10% accuracy for 80% of the time). Sable must compare previous indications to current indications that are significantly different. If a trend is identified where the tool has been consistently over-calling or under-calling, the remaining ILI features must be re-graded accordingly.

k) Prior to the ILI final report being received, Sable must perform at least four (4) separate validation digs that do not interact with each other. At a minimum, Sable must perform validation digs in accordance with Level 2 of API Standard 1163, "In-line Inspection System Qualification" (Second

---

[15] A minimum of four (4) independent direct examination excavations must be used for unity plots.

Edition, April 2013).

15)    Discovery of Condition: The discovery date must be within 180 days of any ILI tool run for each type of ILI tool.

16)    Immediate Repair Conditions:[16]

    a)  A crack or crack-like anomaly that meets any of the following criteria:

        i.  Crack or crack-like anomaly that is equal to or greater than 50% of pipe wall thickness.

        ii. Crack or crack-like anomaly that has predicted failure pressure of less than 1.39 times the MOP as calculated using crack-like flaw evaluation method ASME FFS-1/API 579-1.

    b)  Internal or external metal loss anomalies where the remaining strength of pipe shows a predicted failure pressure less than 1.39 times the MOP.

    c)  Any external cluster corrosion or external general corrosion that is located on the bottom half of the pipeline (below the 3 and 9 o'clock positions) where the remaining strength of pipe shows a predicted failure pressure less than 1.5 times the MOP.[17]

17)    180-Day Repair Conditions:[18]

    a)  A crack or crack-like anomaly that has predicted failure pressure of less than 1.5 times the MOP.

    b)  Internal or external metal loss anomalies where the remaining strength of pipe shows a predicted failure pressure less than 1.5 times the MOP.

    c)  All internal or external metal loss anomalies that have an ILI reported depth of 40% or greater wall loss, including tool sizing tolerance for depth.[19]

    d)  For any crack (likely crack or possible crack) or crack-like anomaly, regardless of its dimensions, that interacts with metal loss anomalies and are within one (1) inch (circumferentially) of the longitudinal seam weld, Sable must integrate the ILI results from the most recent crack tool run and the most recent metal loss tool run before the discovery date deadline.

18)    Corrosion Growth Rate Analysis (CGRA):

    a)  Sable must develop a CGRA procedure to annually calculate corrosion growth rates between successive ILI's (using most recent ILI compared to

---

[16] The criteria specified in this emergency special permit is supplemental to, and does not relieve Sable from complying with, the requirements set forth in 49 CFR 195.452(h)(4)(i).  All immediate repair conditions must be remediated with a permanent repair method.

[17] Cluster means two or more adjacent metal loss features in the wall of the pipe or weld that may interact based on interaction criteria.  General corrosion means uniform or gradually varying loss of wall thickness over an area.

[18] The criteria specified in this emergency special permit is supplemental to, and does not relieve Sable from complying with, the requirements set forth in 49 CFR 195.452(h)(4)(iii), except for those associated with 49 CFR 195.452(h)(4)(iii)(H).  All immediate repair conditions must be remediated with a permanent repair method.

[19] For example, if the ILI tool reports a 31% metal loss anomaly and the tool sizing tolerance is ±10 for depth, then this anomaly is a 180-day repair condition since it can be considered as an external metal loss anomaly with 41% metal loss depth. If Sable is unable to remediate such indications within 180 days of discovery, Sable must notify PHMSA, temporarily reduce the operating pressure, and take further remedial action in accordance with 49 CFR § 195.452 until the indication is remediated or until otherwise authorized by PHMSA.

prior ILI) and perform pipeline remediations needed to assure the integrity of the **special permit segments** is maintained.[20] The timing of remediations under this condition shall be based on the most recent calculation of short-term corrosion rates.

b) The CGRA procedure must include ILI data matching methods[21] to analyze data from successive ILI's, methodologies for growth rate calculations and errors from comparing ILI data.

c) Sable must identify the projected date when remaining metal loss indications will reach a depth of 70% or greater wall loss.

d) When determining the projected date when remaining metal loss indications will reach a depth of 70% or greater wall loss, Sable must account for reported ILI depth, tool tolerance and corrosion growth rates.[22]

e) All metal loss indications that are projected to reach a depth of 70% or greater wall loss prior to the next ILI, will become actionable and must be remediated before the next ILI.

19) Pressure Reduction: If Sable is unable to perform field evaluation and remediation of any required conditions within the time limit conditions specified in this emergency special permit, Sable must temporarily implement a minimum 20 percent or greater operating pressure reduction, based on actual operating pressure for two (2) months prior to the date of inspection, until the anomaly is repaired.

20) In Field Direct Examination of Pipe:

a) Direct examinations[23] of pipe must include appropriate non-destructive examination methods for cracking such as magnetic particle inspection (MPI), shear wave technology or phased array ultrasonic testing (PAUT).[24] PAUT must be used for sizing any crack or crack-like anomaly lengths and depths.

b) Permanent repairs of metal loss anomalies are required for any section of pipe with wall loss equal to or greater than 40% in accordance with repair method 1, 4b, or 5 of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition. However, the following additional conditions are applied if Sable chooses repair method 5 for metal loss anomalies:

  i. Method 5 must not be used on metal loss anomalies that are in the HAZ, girth weld, or longitudinal seam weld.

  ii. Sable must increase the metal loss anomaly's depth by 20% when

---

[20] At a minimum, Sable must include signal matching between ILI data sets.

[21] If there are several matching techniques that can be used, Sable must utilize the most accurate method of comparing ILI data sets.

[22] Growth projections must use corrosion rates determined in accordance with the CGRA procedure. A default corrosion rate of 32 mpy must be used in determining projections, if corrosion rates determined by CGRA are less than the default value.

[23] Any time the pipeline is exposed for direct examination of an indication or to perform a repair, Sable must document the condition of the coating and carrier pipe (including anomalies) with photographs.

[24] Direct examinations for ILI reported crack or crack-like indications must include a magnetic particle inspection complemented by shear wave technology or inspection by phased array ultrasonic testing.

they input it into the formula for calculating the number of wraps needed for repair method 5.

   iii. After the anomaly is repaired via repair method 5, Sable must monitor the anomaly's wall loss depth in subsequent UTWM tool runs. If the anomaly's wall loss depth increases by more than 15% of the wall thickness in the subsequent UTWM tool runs, Sable must repair this anomaly via repair method 1 or 4b of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition.

c) Permanent repairs are required for all cracks and/or crack-like anomalies discovered during direct examination, regardless of crack depth or crack length in accordance with repair method 1 or 4b of Table 451.6.2(b)-1 of ASME B31.4 2006 Edition.

d) Sable must develop a coating repair procedure for excavated or remediated corrosion anomalies that prevents further external corrosion and seals transition areas from currently insulated pipe to newly coated sections. Any time a shrink sleeve or coating is exposed, remove the shrink sleeve and coating, investigate circumferentially and longitudinally along the pipe for external corrosion and coating deterioration, and recoat with two-part epoxy. Sable must recoat in accordance with their coating repair procedure.[25]

e) All external polyurethane foam and the polyethylene tape wrap on buried pipe that are exposed during the field evaluation must not be replaced with new insulation or polyethylene tape wrap.

21) Integrity Management:

a) A fracture mechanics and pressure cycling evaluation is required for un-remediated cracks and crack-like indications detected by ILI or indirect inspection tools.

   i. Sable must determine the predicted failure pressure, failure stress pressure and crack growth of un-remediated cracks and crack-like anomalies in accordance with 49 CFR § 192.712(d)(1).

   ii. Sable must perform a fatigue analysis using an applicable fatigue crack growth law or other technically appropriate engineering methodology in accordance with 49 CFR § 192.712(d)(2).

b) Sable must analyze a sample of additional indications of varying amounts of metal loss between 10% and 40% for validation. The sample size shall be at least ten (10), unless fewer than ten (10) indications are reported within that range, in which case Sable would examine the number of indications called.

c) When sizing metal loss indications, apply interaction/clustering criteria of 6t by 6t for applicable ILI tool(s).

d) Sable must send all field measurements to the ILI tool vendor within 90 days

---

[25] The coating procedure must be submitted to PHMSA prior to the effective date of this emergency special permit.

of completing direct examinations and require the ILI vendor to validate the accuracy of the tool. Sable must conduct annual meetings with the ILI tool vendor to discuss tool performance and incorporate lessons learned.

e) Sable must utilize a third-party expert to review all ILI reports, verification of digs, data integration, ILI tool tolerances, development of unity plots, measured field findings, failure pressure ratios and any other finding that could affect the integrity of the *special permit segments*. The review must be conducted within six (6) months of each ILI assessment. The third-party expert must be approved by PHMSA prior to being selected.

f) Within one (1) year from date of issuance, Sable must use a NACE-certified expert to conduct an evaluation and determine if alternating current (AC) interference or direct current (DC) interference or shorting that could contribute to external corrosion is

g) occurring. The expert must recommend the frequency of subsequent interference surveys. All evaluations must be approved and signed by the NACE-certified expert.

22) Data Requirements for Predicted Failure Analysis:

a) Unless the defect dimensions have been verified using a direct examination measurements, Sable must explicitly analyze uncertainties in reported assessment results including but not limited to tool tolerance, detection threshold, probability of detection, probability of identification, sizing accuracy, conservative anomaly, interaction criteria, location accuracy, anomaly findings, and unity chart plots or equivalent for determining uncertainties and verifying tool performance, in identifying and characterizing the type and dimensions of anomalies or defects used in the analyses.

b) The analyses performed in accordance with this emergency special permit must utilize pipe and material properties of the pipe body and longitudinal weld seam that are documented in traceable, verifiable, and complete records.

23) Recordkeeping:

a) Procedures, records of investigations, data, analyses, and other actions made in accordance with the requirements of this emergency special permit shall be kept for the life of the *special permit segments* and must be submitted to PHMSA, in the manner requested (electronic, hardcopy, or other format) within 30 days.

b) Sable must maintain the following records:

i. Technical approach used for the analysis

ii. All data used and analyzed

iii. Pipe and longitudinal weld seam properties

iv. Procedures used to implement emergency special permit conditions

v.      Evaluation methodology used

vi.      Models used

vii.     Direct in situ examination data

viii.    All in-line inspection tool assessments information evaluated

ix.      Pressure test data and results

x.      All in-the-ditch assessments performed on the *special permit segments*

xi.     All measurement tool, assessment, and evaluation accuracy specifications and tolerances used in technical and operations results

xii.    All finite element analysis results

xiii.   The number of pressure cycles to failure, the equivalent number of annual pressure cycles, and the pressure cycle counting methodology

xiv.   The predicted fatigue life and predicted failure pressure from the required fatigue life models and fracture mechanics evaluation methods

xv.    Safety factors used for fatigue life and/or predicted failure pressure calculations

xvi.   Reassessment time interval and safety factors

xvii.   The date of the review

xviii.  Confirmation of the results by qualified technical subject matter expert(s)

xix.   Approval by responsible Sable management personnel

xx.    Records of additional preventive and mitigative (P&M) measures performed

xxi.   Reports required by this emergency special permit.

24)    Reporting:

    a)   Any release on the *special permit segments* shall be reported to PHMSA at the earliest practicable moment following discovery but no later than 24 hours from the time of discovery.[26]

    b)   An email notification shall be made at least three (3) days prior to a *special permit segment* being exposed for non-emergency purposes of field evaluation and repair to PHMSA. The email notification shall include, if applicable:

        i.  Tool type and run date

        ii.  Unique identifier (e.g. Dig Number, Joint Number, Flaw ID, Condition Type)

---

[26] This requirement does not relieve Sable from spill reporting requirements that might exist under local, state, or Federal regulations.

      iii. Dig sheets

      iv. Field contact information for Sable

      v. Time and location of the field evaluation and repair.

c) Sable shall provide a Summary of Conditions Report within 210 days of the last date of an ILI run to PHMSA and include:

      i. Tool type

      ii. Run date

      iii. Summary of Conditions Report[27]

      iv. Final Vendor Report and Pipe Tally

d) Sable shall provide a report to PHMSA by June 15th of every year for the duration of this special permit, including any renewals. The report shall be submitted to PHMSA. At a minimum, the annual report shall contain the following, if applicable:

      i. A Closure Report for the previous calendar (CY) which contains:

        1. Features that were remediated in previous CY, including documentation for in-the-ditch assessments and repairs

        2. Identify features that remain to be assessed

        3. Unity Plots for previous ILI runs

      ii. Fracture mechanics and pressure cycling analyses in accordance with Condition 21(a);

      iii. The third-party ILI expert reviews in accordance with condition 21(e).

      iv. AC and DC Interference surveys that are due in accordance with condition 21(f).

      v. A copy of the CGRA for prior year including:

        1. Mean corrosion growth rate for the *special permit segments*

        2. Distribution graph of the corrosion growth rate for the *special permit segments* (e.g. occurrences (#) vs. corrosion rate (mpy)

The above conditions are based on PHMSA's review and consideration of information provided by Sable, including information in their emergency special permit application which can be found at Docket No. PHMSA-2025-1502 in the Federal Docket Management System located at www.regulations.gov.  PHMSA has determined the conditions listed above would be necessary to ensure this Emergency Special Permit is not inconsistent with pipeline safety.

---

[27] PHMSA may stipulate specific formatting or other information (e.g., condition type, anomaly details, remaining strength calculation method, failure pressure, CGRA, etc.) to be included in the Summary of Conditions Reports, Closure Report and Annual Reports if information provided is not deemed sufficient.

## IV.  Limitations:

This special permit is subject to the limitations set forth in 49 CFR § 190.341, as well as the following limitations:

1)  This emergency special permit is limited to an initial term of sixty (60) days from the date of issuance. If Sable elects to seek renewal of this emergency special permit, it must submit a renewal request to PHMSA pursuant to 49 CFR § 190.341(g).

2)  Should Sable fail to comply with any conditions of this emergency special permit or should PHMSA determine that this emergency special permit is no longer appropriate or is inconsistent with pipeline safety, PHMSA may revoke the emergency special permit and require Sable to comply with all appropriate regulatory requirements.

3)  PHMSA may order the *special permit segments* to be shutdown at any time.

4)  PHMSA may issue a compliance order or may initiate proceedings to determine the nature and extent of the violations and appropriate civil penalty for failure to comply with this emergency special permit. The terms and conditions of any compliance order shall take precedence over the terms of this emergency special permit.

5)  In the event of conflict between the conditions of this emergency special permit and industry standards, the emergency special permit conditions shall prevail.

6)  If Sable sells, merges, transfers or otherwise disposes of all or part of the assets covered by the emergency special permit, Sable must provide PHMSA written notice of the change within 60 days of the consummation date. In the event of such transfer, PHMSA reserves the right to revoke, suspend, or modify the emergency special permit.

AUTHORITY:  49 United States Code 60118 (c)(1) and 49 CFR § 1.97.

Issued in Washington, D.C., on <u>December 23, 2025</u>.

LINDA GAIL DAUGHERTY

Digitally signed by
LINDA GAIL DAUGHERTY
Date: 2025.12.23
15:48:57 -05'00'

Linda Daugherty
Acting Associate Administrator
    for Pipeline Safety

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen, and not a party to the within action.  My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101.  On January 5, 2026, I served the within document:

**DECLARATION OF J. CALDWELL FLORES IN SUPPORT OF REAL PARTIES IN INTEREST SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION**

By Mail:  By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery:  By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery:  I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

X     By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on January 5, 2026, at Santa Barbara, California.

*Marina L Ratliff*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Marina L. Ratliff

**SERVICE LIST**

| | |
|---|---|
| Jeffrey D. Dintzer<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Tel: (213) 576-1000<br>Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Julie Teel Simmonds, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>Center for Biological Diversity<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612<br>Tel.: (510) 844-7100<br>Fax: (510) 844-7150<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org | *Attorneys for Petitioners: Center for Biological Diversity and Wishtoyo Foundation* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Tel: (310) 620-5879<br>Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Trevor D. Large (SBN: 214886)<br>Victoria C. Diffenderfer (SBN: 350018)<br>**FAUVER LARGE ARCHBALD & SPRAY**<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101<br>Tel: (805) 966-7000<br>Fax: (805) 966-7227<br>tlarge@flasllp.com<br>vdiffenderfer@flasllp.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Rengifo, Esq. | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get* |

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Tel: (805) 963-1622; (510) 844-7100<br>Fax: (805) 962-3152; (510) 844-7150<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
1/5/2026 6:59 PM
By: Narzralli Baksh , Deputy

Jeffrey D. Dintzer (SBN: 139056)
Garrett B. Stanton (SBN: 324775)
**ALSTON & BIRD, LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Tel: (213) 576-1000; Fax: (213) 576-1100
Jeffrey.Dintzer@alston.com
Garrett.Stanton@alston.com

Duncan Joseph Moore (SBN: 233955)
Benjamin J. Hanelin (SBN: 237595)
Natalie C. Rogers (SBN: 301254)
**PAUL HASTINGS LLP**
1999 Avenue of Stars, 27th Floor
Century City, CA 90067
Tel: (310) 620-5879; Fax: (310) 620-5899
djmoore@paulhastings.com
benjaminhanelin@paulhastings.com
natalierogers@paulhastings.com

Trevor D. Large (SBN: 214886)
Victoria C. Diffenderfer (SBN: 350018)
**FAUVER LARGE ARCHBALD & SPRAY**
820 State Street, 4th Floor
Santa Barbara, CA 93101
Tel: (805) 966-7000; Fax: (805) 966-7227
tlarge@flasllp.com
vdiffenderfer@flasllp.com

Attorneys for Real Parties in Interest
SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

CENTER FOR BIOLOGICAL DIVERSITY
and WISHTOYO FOUNDATION,

        Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF
FORESTRY AND FIRE PROTECTION;
OFFICE OF THE STATE FIRE MARSHAL;
DANIEL BERLANT, in his official capacity
as State Fire Marshal; and DOES 1 through
10; inclusive,

        Respondents/Defendants.

Case No.: 25CV02244
[Consolidated with 25CV02247]

**DECLARATON OF TREVOR D. LARGE
IN SUPPORT OF REAL PARTIES IN
INTEREST SABLE OFFSHORE CORP.
AND PACIFIC PIPELINE COMPANY'S
NOTICE OF MOTION AND MOTION
FOR RECONSIDERATION**

[Filed concurrently with Notice of Motion
and Motion for Reconsideration;
Memorandum and Points of Authorities;
Declaration of J. Caldwell Flores; [Proposed]
Order Immediately Rescinding Preliminary
Injunction]

1

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

|  | Date:    April 17, 2026 |
|  | Time:    10:00 a.m. |
|  | Dept.:    4 |
|  | Complaint Filed: April 15, 2025 |
|  | [Assigned for Purposes to the Honorable Donna D. Geck, Dept. 4] |

SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,

Real Parties in Interest

ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,

Case No.: 25CV02247

Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10; inclusive,

Respondents/Defendants.

SABLE OFFSHORE CORP., a Delaware Corporation, and PACIFIC PIPELINE COMPANY, a Delaware Corporation.

Real Parties in Interest.

---

2

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

## DECLARATON OF TREVOR D. LARGE IN SUPPORT OF MOTION FOR

## RECONSIDERATION OF PRELIMINARY INJUNCTION

I, Trevor D. Large, declare:

1.     I am an attorney duly licensed to practice before all courts of the State of California. I am Counsel for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company in these consolidated actions. I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2.     Attached hereto, as **Exhibit D**, are true and correct copies of the relevant Ninth Circuit filings emergency papers filed by Petitioners in the United States Court of Appeals for the Ninth Circuit seeking relief related to PHMSA's actions.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 5, 2026 in Santa Barbara, California.

_____

Trevor D. Large

---

3

REAL PARTIES IN INTERESTS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

# EXHIBIT D

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 34. Disclosure Statement under FRAP 26.1 and Circuit Rule 26.1-1

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form34instructions.pdf*

**9th Cir. Case Number(s)** | 25-8059

Name(s) of party/parties, prospective intervenor(s), or amicus/amici filing this form:

(1) SABLE OFFSHORE CORP. (2) PACIFIC
PIPELINE COMPANY

Under FRAP 26.1 and Circuit Rule 26.1-1, I make the following disclosures:

1. I disclose the following information required by FRAP 26.1(a) and/or Circuit Rule 26.1-1(b) for any nongovernmental corporation, association, joint venture, partnership, limited liability company, or similar entity[1] which is a party, prospective intervenor, or amicus curiae in any proceeding, or which the government identifies as an organizational victim below in section 2 of this form,[2] or which is a debtor as disclosed below in section 3 of this form.

   a. Does the party, prospective intervenor, amicus, victim, or debtor have any parent companies? Parent companies include all companies that control the entity directly or indirectly through intermediaries.
   ● Yes      ○ No

   If yes, identify all parent corporations of each entity, including all generations of parent corporations *(attach additional pages as necessary)*:

   Sable Offshore Corp. has no parent corporation. Sable Offshore Corp is the parent corporation of Pacific Pipeline Company.

   b. Is 10% or more of the stock of the party, prospective intervenor, amicus, victim, or debtor owned by a publicly held corporation or other publicly held entity?
   ● Yes      ○ No

---

[1] A corporate entity must be identified by its full corporate name as registered with a secretary of state's office and, if its stock is publicly listed, its stock symbol or "ticker."

[2] To the extent it can be obtained through due diligence.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**                                    *1*                                    *New 12/01/24*

If yes, identify all such owners for each entity *(attach additional pages as necessary)*:

> Sable Offshore Corp. has no corporation owning 10% or more of its stock.
> Pacific Pipeline Company is 100% owned by Sable Offshore Corp.

2. In a criminal case, absent good cause shown, the government must identify here any organizational victim of the alleged criminal activity:

3. In a bankruptcy case, the debtor, the trustee, or, if neither is a party, the appellant must identify here each debtor not named in the court of appeals caption:

4. Are you aware of any judge serving on this Court who participated at any stage of the case, either in district court, administrative proceedings, or in related state court proceedings?
   ○ Yes    ⦿ No

   If yes, list the name of the judge and the case name, case number, and name of court of the related proceedings:

I certify that *(select only one)*:

⦿  this is the first disclosure statement filed in the above-referenced case by the above-identified party/parties, prospective intervenor(s), or amicus/amici, and this disclosure statement complies with FRAP 26.1 and Circuit Rule 26.1-1.

○  the party/parties, prospective intervenor(s), or amicus/amici submitting this supplemental disclosure statement has previously filed a compliant disclosure statement in this case, and this updated disclosure statement discloses changed or additional information.

○  I have reviewed this form, FRAP 26.1, and Circuit Rule 26.1-1 and, to the best of my knowledge, have no information to disclose at this time.

**Signature** /s/ Ashley Akers          **Date** 12/25/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**                    2                    *New 12/01/24*

No. 25-8059

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ENVIRONMENTAL DEFENSE CENTER,
GET OIL OUT!, SANTA BARBARA
COUNTY ACTION NETWORK, SIERRA
CLUB, SANTA BARBARA
CHANNELKEEPER, CENTER FOR
BIOLOGICAL DIVERSITY, and
WISHTOYO FOUNDATION,

*Petitioners,*

v.

U.S. DEPARTMENT OF TRANSPORTATION,
SEAN DUFFY, in his official capacity as
Secretary of the U.S. Department of
Transportation, PIPELINE AND
HAZARDOUS MATERIALS SAFETY
ADMINISTRATION, and PAUL ROBERTI,
in his official capacity as Administrator of
the Pipeline and Hazardous Materials
Safety Administration,

*Respondents,*

SABLE OFFSHORE CORP. and PACIFIC
PIPELINE COMPANY,

*Proposed Respondent-Intervenors.*

---

## DECLARATION OF J. CALDWELL FLORES

---

I, J. Caldwell Flores, declare as follows:

1. I am President and Chief Operating Officer of Sable Offshore Corp. ("Sable") and Pacific Pipeline Company ("PPC").

2. Sable operates the Santa Ynez Pipeline System ("SYPS"). The SYPS includes, among other things, offshore subsea pipelines transporting oil from three offshore oil production platforms located on the Outer Continental Shelf to onshore pipelines that, in turn, transport oil to an onshore facility to process crude oil for subsequent transportation; and onshore pipelines to transport oil from Las Flores Canyon to the Pentland Station terminal in Kern County, California.

3. The SYPS includes the pipelines formerly called Line 901 and the portion of Line 903 from Gaviota, California, to the Pentland Station terminal. These segments are now referred to as Lines CA-324 and CA-325.

4. In their motion, Petitioners assert that emergency relief is necessary because "[r]estart of the Pipeline System is imminent, and may have even already occurred."

5. For the avoidance of doubt, the Line CA-324 and CA-325 segments of the SYPS, while deemed active, currently do not contain crude oil.

6. Additionally, Sable has not yet projected a day and time when it may introduce crude oil into the Line CA-324 and CA-325 segments of the

2

SYPS. Sable will not introduce crude oil into the Line CA-324 and CA-325 segments of the SYPS before 5:00 PM PT Tuesday, December 30, 2025.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of December, 2025, in Houston, Texas.

_____

J. Caldwell Flores
President and Chief Operating Officer
Sable Offshore Corp. and Pacific Pipeline Company
845 Texas Avenue, Suite 2800
Houston, TX 77002

No. 25-8059

_____

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

_____

ENVIRONMENTAL DEFENSE CENTER,
GET OIL OUT!, SANTA BARBARA
COUNTY ACTION NETWORK, SIERRA
CLUB, SANTA BARBARA
CHANNELKEEPER, CENTER FOR
BIOLOGICAL DIVERSITY, and
WISHTOYO FOUNDATION,

*Petitioners,*

v.

U.S. DEPARTMENT OF TRANSPORTATION,
SEAN DUFFY, in his official capacity as
Secretary of the U.S. Department of
Transportation, PIPELINE AND
HAZARDOUS MATERIALS SAFETY
ADMINISTRATION, and PAUL ROBERTI,
in his official capacity as Administrator of
the Pipeline and Hazardous Materials
Safety Administration,

*Respondents,*

SABLE OFFSHORE CORP. and PACIFIC
PIPELINE COMPANY,

*Proposed Respondent-Intervenors.*

_____

### EMERGENCY MOTION FOR LEAVE TO INTERVENE UNDER
### CIRCUIT RULE 27-3

_____

*RELIEF REQUESTED BY DECEMBER 26, 2025*

James W. Noe (*admission pending*)

jim.noe@hklaw.com
John L. Brownlee (*admission pending*)
john.brownlee@hklaw.com
Ashley Akers
ashley.akers@hklaw.com
Kamran Mohiuddin (*admission pending*)
kamran.mohiuddin@hklaw.com
**HOLLAND & KNIGHT LLP**
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Tel: (202) 469-5525

Nicholas McDaniel (*admission pending*)
nmcdaniel@babstcalland.com
**BABST CALLAND**
505 9th Street NW, Suite 602
Washington, DC 20004
Tel: (202) 853-3455

Jessica Stebbins Bina
jessica.stebbinsbina@lw.com
**LATHAM & WATKINS LLP**
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5525

*Attorneys for Proposed Respondent-Intervenors*
*Sable Offshore Corp. and Pacific Pipeline Company*

**CIRCUIT RULE 27-3 CERTIFICATE**

I certify under penalty of perjury that the following is true and correct to the best of my knowledge:

The relief requested by proposed Respondent-Intervenors in the emergency motion accompanying this certificate is for leave to intervene pursuant to Federal Rule of Appellate Procedure 15(d). Petitioners have filed a Petition for Review of actions by Respondent Pipeline and Hazardous Material Safety Administration ("PHMSA") and, contemporaneously therewith, an Emergency Motion for Stay Pending Appeal seeking to enjoin those actions no later than December 26, 2025. Accordingly, the relief requested by proposed Respondent-Intervenors is needed by that date so that they, along with Respondents, may have time to file oppositions to Petitioners' stay application and be heard on the matter.

Proposed Respondent-Intervenors could not have filed their motion to intervene earlier because Petitioners only sought a stay pending appeal on December 24, 2025 (Christmas Eve). This motion is filed on December 25, 2025 (Christmas Day)—one day later and at the earliest practicable time.

The relief that proposed Respondent-Intervenors seek could not have been obtained in a lower court because this proceeding is an original action in this Court. Petitioners filed their Petition for Review directly in this Court pursuant to 49 U.S.C.

i

§ 60119(a), which provides for direct review of PHMSA orders in the Court of Appeals. There was no district court proceeding.

My co-counsel notified 9th Circuit court staff via email about the filing of this motion.

I have notified counsel for all parties of the filing of this motion, as listed below:

*Petitioners:*

| Linda Krop lkrop@environmentaldefensecenter.org Margaret M. Hall mhall@environmentaldefensecenter.org Jeremy M. Frankel jfrankel@environmentaldefensecenter.org 906 Garden Street Santa Barbara, CA 93101 | Attorneys for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper |
|---|---|
| Julie Teel Simmonds jteelsimmonds@biologicaldiversity.org David Pettit dpettit@biologicaldiversity.org 2100 Franklin Street, Suite 375 Oakland, CA 94612 | Attorneys for Center for Biological Diversity and Wishtoyo Foundation |

*Respondents:*

| Adam Gustafson, Adam.Gustafson@usdoj.gov Shannon Boylan Shannon.boylan@usdoj.gov | Attorneys for U.S. Department of Justice |
|---|---|

Counsel for Proposed Intervenors contacted counsel for Petitioners by telephone and email on December 25, 2025, and contacted counsel for Respondents

ii

by email on December 25, 2025, to provide notice of this filing and request their positions. No response has been received from counsel for Petitioners. Counsel for Respondents state that they consent to intervention.[1]

I declare under penalty of perjury that the foregoing is true.

/s/ Ashley Akers
 Ashley Akers
*Attorney for Proposed Respondent-Intervenors*

---

[1] Respondents further noted that December 26, 2025 is not a business day for the federal government.

## EMERGENCY MOTION FOR LEAVE TO INTERVENE

Pursuant to Federal Rule of Appellate Procedure 15(d), Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable") respectfully move for leave to intervene as respondent-intervenors in support of Respondents. This motion is timely filed one day after Petitioners filed their Petition for Review and Emergency Motion for Stay Pending Appeal on December 24, 2025, and well within the 30-day period prescribed by Rule15(d).

## INTEREST OF PROPOSED INTERVENORS

Sable Offshore Corp. is the lessee and designated operator of federal offshore oil and gas leases that form the Santa Ynez Unit ("SYU") and the designated operator of the Santa Ynez Pipeline System ("SYPS"). The SYU is located in federal offshore waters off the coast of California and is one of the largest offshore oil and gas fields in the United States, with hundreds of millions of barrels of recoverable oil remaining. The SYPS has historically facilitated the production and transportation of oil and gas from the SYU.

The SYPS includes, among other assets, offshore subsea pipeline segments transporting oil from the SYU platforms to onshore pipeline segments; and onshore pipeline segments capable of transporting oil from Las Flores Canyon to the Pentland Station terminal in Kern County, California. Pacific Pipeline Company, a

1

wholly owned subsidiary of Sable Offshore Corp., owns the pipeline segments at issue in this proceeding.

The SYPS includes the pipeline segments formerly known as Line 901 and the portion of Line 903 from Gaviota, California, to the Pentland Station terminal, which are now respectively designated as Lines CA-324 and CA-325. Line Segments CA-324 and CA-325 are the only pipeline segments subject to Pipeline and Hazardous Materials Safety Administration's ("PHMSA") Restart Approval and Emergency Special Permit that Petitioners challenge in this proceeding, identified below.

On December 22, 2025, the U.S. Department of Transportation ("DOT") through the PHMSA sent a letter indicating that it approved Sable's Restart Plan for Line Segments CA-324 and CA-325 (the "Restart Approval"). The Restart Plan was submitted by Sable in relation to a Consent Decree entered in *United States et al v. Plains All American Pipeline, L.P. et al*, No. 20-cv-02415 (C.D. Cal. October 14, 2020), but not pursuant to any statutory or regulatory requirement. On December 23, 2025, PHMSA issued an Emergency Special Permit ("ESP") to waive compliance with a specific provision of the federal pipeline safety regulations at 49 C.F.R. Part 195, for these segments, subject to specified conditions. Petitioners seek review of both actions and have filed an Emergency Motion for Stay Pending Appeal seeking to enjoin the Restart Approval and ESP.

Sable has a direct, substantial, and legally protectable interest in this proceeding. As the lessee and operator of the federal oil and gas leases that form the SYU—and the operator of the pipeline segments that are the subject of the Restart Approval and ESP—Sable is the entity PHMSA authorized to restart Line Segments CA-324 and CA-325. A stay of PHMSA's actions may preclude Sable from placing crude oil in Lines CA-324 and CA-325 despite the federal government's recent green light.

## GROUNDS FOR INTERVENTION

Federal Rule of Appellate Procedure 15(d) governs intervention in proceedings to review agency orders. Although "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed," the "policies underlying" Federal Rule of Civil Procedure 24 guide the analysis. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 276-77 (2022). Under Rule 24, courts consider whether: (1) the motion is timely; (2) the applicant has a significantly protectable interest relating to the subject of the action; (3) disposition of the action may impair the applicant's ability to protect that interest; and (4) the applicant's interest is inadequately represented by existing parties. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). This Court applies these requirements liberally and "construe[s] the [intervention] Rule broadly in favor of proposed intervenors." *Id.* at 1179.

3

First, Sable has a direct and substantial interest in the subject matter of this proceeding. Sable is the holder of the federal authorizations that Petitioners seek to stay. No party has a more direct stake in the outcome of this litigation than the entity whose federal permit and restart approval are under challenge. Sable's interest is immediate, direct, and concrete: if Petitioners prevail, Sable may be prevented from transporting valuable oil produced from the SYU through Lines CA-324 and CA-325 to market, in the oil- and fuel-starved California and west coast markets. Moreover, Sable's interest is legally protectable. For these reasons, Sable easily satisfies the first prerequisite to intervention. *See Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021) ("[A] proposed intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claims at issue.").

Second, disposition of this proceeding may impair Sable's ability to protect its interests. If Petitioners obtain a stay, the stay may preclude Sable from placing crude oil in Lines CA-324 and CA-325 notwithstanding PHMSA's approval. *Cf. California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."). That showing is readily made here: a stay would directly affect Sable's ability to exercise its rights under the Restart Approval and ESP.

4

Third, Sable's interests may not be adequately represented by the existing parties. "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840-41 (9th Cir. 2022). Although PHMSA and DOT will defend their actions, they represent the public interest in pipeline safety regulation—not Sable's specific operational, commercial, and legal interests as the permit holder and the lessee of the federal oil and gas leases that rely on the pipeline segments to bring the produced oil to market. While the government's interests and Sable's interests may align in outcome, they diverge in important respects, including litigation strategies, remedial considerations, and timing. Moreover, as the operator of the pipeline and the disputed segments, Sable alone has access to the critical operational readiness and safety of the pipeline, an issue raised by the Petitioners in their Petition for Review and Emergency Motion for Stay.

Fourth, this motion is timely. Petitioners filed their Petition for Review and Emergency Motion for Stay on December 24, 2025. Sable filed this motion on December 25, 2025—one day later and well within the 30-day period prescribed by Rule 15(d). Timeliness "is to be determined from all the circumstances," and "the point to which [a] suit has progressed is. . .not solely dispositive." *Cameron*, 595

5

U.S. at 279-80. This motion could not have been filed earlier because Petitioners'

challenge was initiated only the day before.

## CONCLUSION

For the foregoing reasons, Sable respectfully requests that the Court grant this

Motion for Leave to Intervene as respondent-intervenors in support of Respondents.

Sable further asks, for the reasons set forth in the motion filed contemporaneously

herewith, that the Court set an expedited briefing schedule so that it may respond to

Petitioners' stay application.


Dated: December 25, 2025

Respectfully submitted,


By: /s/ Ashley Akers
Ashley Akers
ashley.akers@hklaw.com
James W. Noe (*admission pending*)
jim.noe@hklaw.com
John L. Brownlee (*admission pending*)
john.brownlee@hklaw.com
Kamran Mohiuddin (*admission pending*)
kamran.mohiuddin@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Tel: (202) 469-5525

Nicholas McDaniel (*admission pending*)
nmcdaniel@babstcalland.com
BABST CALLAND

505 9th Street NW, Suite 602
Washington, DC 20004
Tel: (202) 853-3455

Jessica Stebbins Bina
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5525


*Attorneys for Proposed Respondent-Intervenors*
*Sable Offshore Corp. and Pacific Pipeline*
*Company*

## CERTIFICATE OF SERVICE

I, Ashley Akers, one of the attorneys for Proposed Respondent-Intervenors, certify that the foregoing document was filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system on December 25, 2025. The Court and/or Clerk of the Court may serve and give notice to counsel by CM/ECF electronic transmission.

<u>/s/ Ashley Akers</u>
 Ashley Akers
*Attorneys for Proposed Respondent-Intervenors*

## [PROPOSED] ORDER

Upon consideration of the Motion for Leave to Intervene filed by Sable Offshore Corp. and Pacific Pipeline Company, and good cause appearing, it is hereby

ORDERED that the Motion for Leave to Intervene is GRANTED; and it is further

ORDERED that Sable Offshore Corp. and Pacific Pipeline Company are permitted to intervene as respondent-intervenors in this proceeding.

Dated: _____

_____
[JUDGE]

No. 25-8059

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ENVIRONMENTAL DEFENSE CENTER,
GET OIL OUT!, SANTA BARBARA
COUNTY ACTION NETWORK, SIERRA
CLUB, SANTA BARBARA
CHANNELKEEPER, CENTER FOR
BIOLOGICAL DIVERSITY, and
WISHTOYO FOUNDATION,

*Petitioners,*

v.

U.S. DEPARTMENT OF TRANSPORTATION,
SEAN DUFFY, in his official capacity as
Secretary of the U.S. Department of
Transportation, PIPELINE AND
HAZARDOUS MATERIALS SAFETY
ADMINISTRATION, and PAUL ROBERTI,
in his official capacity as Administrator of
the Pipeline and Hazardous Materials
Safety Administration,

*Respondents,*

SABLE OFFSHORE CORP. and PACIFIC
PIPELINE COMPANY,

*Proposed Respondent-Intervenors.*

---

## MOTION FOR BRIEFING SCHEDULE

---

Proposed Respondent-Intervenors Sable Offshore Corp. and Pacific Pipeline

Company (collectively, "Sable") respectfully move this Court, pursuant to Federal

Rule of Appellate Procedure 27, to establish a briefing schedule that allows Respondents and Sable to file oppositions to Petitioners' Emergency Motion for Stay Pending Appeal by Tuesday, December 30, 2025 at 12:00 p.m. Pacific Time. Sable seeks this schedule to ensure Respondents and Sable can respond on an informed basis; Petitioners will not be prejudiced given Sable's voluntary standstill commitment described below. This motion seeks only a briefing schedule and does not request any ruling on the merits of the stay motion.

## INTRODUCTION

On December 24, 2025, Petitioners filed a Petition for Review and Emergency Motion for Stay challenging a letter from the Pipeline and Hazardous Materials Safety Administration ("PHMSA") approving a Restart Plan (the "Restart Approval") and an Emergency Special Permit ("ESP") for Line Segments CA-324 and CA-325 of the Santa Ynez Pipeline System ("SYPS"). Petitioners demand relief by December 26, 2025, a court and federal holiday, less than 48 hours after filing, and with the only intervening day being Christmas Day.

Sable is the designated operator of the SYPS. By separate motion filed concurrently herewith, Sable seeks leave to intervene in this proceeding. This motion requests a modest extension of time to allow for orderly briefing. Critically, Sable's commitment not to introduce crude oil into Line Segments CA-324 and CA-325

before December 30, 2025 at 5:00 p.m. Pacific Time eliminates any prejudice to Petitioners and ensures the status quo is maintained while the parties brief the issues.

## ARGUMENT

I.  **THE COURT SHOULD ESTABLISH A BRIEFING SCHEDULE ALLOWING RESPONSES BY DECEMBER 30, 2025**

### A. The Holiday Period Precludes Meaningful Briefing Before December 30

Petitioners filed their Emergency Motion on Christmas Eve and demand relief by December 26, 2025. This timeline is unreasonable.

December 25, 2025 is Christmas Day-a federal holiday. The Court is closed, and agency and counsel availability is materially constrained. The relief deadline Petitioners demand falls immediately after Christmas and is also a court holiday in the Ninth Circuit and a federal holiday by executive order.

Requiring substantive oppositions on this timetable would be impracticable and unfair given the holiday closures on December 25 and December 26 and the resulting constraints on availability. The issues raised-including complex questions of administrative law, the Pipeline Safety Act, and the National Environmental Policy Act-warrant meaningful briefing that cannot reasonably be completed on Petitioners' proposed timetable.

Although December 26 is a business day for some, staffing and availability at DOJ and the relevant agencies will remain limited through the weekend. A response

deadline of Tuesday, December 30, 2025 at 12:00 p.m. Pacific Time provides

adequate time for Respondents and Sable to prepare substantive responses.

### B. Sable's Voluntary Standstill Commitment Eliminates Any Claimed Urgency

Petitioners' primary argument for emergency relief is that restart of the

pipeline is "imminent, and may have even already occurred." Sable's standstill

commitment removes any basis for emergency relief before the opposition deadline.

As set forth in the accompanying Declaration of J. Caldwell Flores, President

and Chief Operating Officer of Sable Offshore Corp. and Pacific Pipeline Company:

> For the avoidance of doubt, the Line CA-324 and CA-325 segments of the SYPS, while deemed active, currently do not contain crude oil. Additionally, Sable has not yet projected a day and time when it may introduce crude oil into the Line CA-324 and CA-325 segments of the SYPS. Sable will not introduce crude oil into the Line CA-324 and CA-325 segments of the SYPS before 5:00 PM PT Tuesday, December 30, 2025.

Flores Decl. ¶¶ 5-6. Line Segments CA-324 and CA-325 are the only pipeline

segments subject to the Restart Approval and ESP that Petitioners challenge in this

proceeding. Because these segments will not contain crude oil before the proposed

opposition deadline, Petitioners will suffer no prejudice from allowing adequate time

for briefing. The status quo will be maintained through the opposition deadline. No

environmental harm can occur during the briefing period because no crude oil will

be introduced into these segments.

## C. The Parties Are Entitled to a Fair Opportunity to Respond

Petitioners' motion raises significant legal and factual issues, including whether PHMSA's assertion of jurisdiction complied with applicable law; whether the Restart Approval and ESP satisfy the requirements of the Pipeline Safety Act, 49 U.S.C. § 60101 et seq.; whether PHMSA was required to conduct environmental review under the National Environmental Policy Act, 42 U.S.C. § 4321 et seq.; and whether Petitioners satisfy the requirements for a stay pending appeal under *Nken v. Holder*, 556 U.S. 418 (2009).

These issues warrant careful briefing. Both PHMSA and Sable are entitled to a fair opportunity to respond. The Court's interest in a fully developed record is best served by allowing adequate time for briefing.

## D. The Proposed Schedule Maintains the Status Quo

The requested briefing schedule preserves all parties' rights while allowing for orderly litigation. With Sable's standstill commitment in place, Petitioners face no risk of harm during the briefing period; the Court will have the benefit of complete briefing from all parties; Respondents and Sable will have a fair opportunity to be heard; and the Court can make an informed decision on the stay motion.

## II.   PROPOSED BRIEFING SCHEDULE

Sable respectfully proposes that oppositions to Petitioners' Emergency Motion for Stay be filed by Tuesday, December 30, 2025 at 12:00 p.m. Pacific Time. Sable's standstill commitment ensures that the status quo will be maintained through that date.

### CONCLUSION

For the foregoing reasons, Sable Offshore Corp. and Pacific Pipeline Company respectfully request that the Court establish a briefing schedule requiring oppositions to Petitioners' Emergency Motion for Stay to be filed by Tuesday, December 30, 2025 at 12:00 p.m. Pacific Time.

Dated: December 25, 2025

Respectfully submitted,


By:   /s/ Ashley Akers
Ashley Akers
ashley.akers@hklaw.com
James W. Noe (*admission pending*)
jim.noe@hklaw.com
John L. Brownlee (*admission pending*)
john.brownlee@hklaw.com
Kamran Mohiuddin (*admission pending*)
kamran.mohiuddin@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Tel: (202) 469-5525

Nicholas McDaniel (*admission pending*)

nmcdaniel@babstcalland.com
BABST CALLAND
505 9th Street NW, Suite 602
Washington, DC 20004
Tel: (202) 853-3455

Jessica Stebbins Bina
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5525

*Attorneys for Proposed Respondent-Intervenors*

# CERTIFICATE OF SERVICE

I, Ashley Akers, one of the attorneys for Proposed Respondent-Intervenors, certify that the foregoing document was filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system on December 25, 2025. The Court and/or Clerk of the Court may serve and give notice to counsel by CM/ECF electronic transmission.

/s/ Ashley Akers
 Ashley Akers
*Attorneys for Proposed Respondent-Intervenors*

# [PROPOSED] ORDER

Upon consideration of the Motion for Briefing Schedule filed by Sable Offshore Corp. and Pacific Pipeline Company, and good cause appearing, it is hereby

ORDERED that oppositions to Petitioners' Emergency Motion for Stay Pending Appeal shall be filed by December 30, 2025 at 12:00 p.m. Pacific Time.

Dated: _____

_____
[JUDGE]

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 31 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER; et al.,<br><br>Petitioners,<br><br>v.<br><br>PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION,<br><br>Respondent,<br><br>----------------------------------------<br><br>SABLE OFFSHORE CORP. and PACIFIC PIPELINE COMPANY,<br><br>Intervenors - Pending. | No. 25-8059<br><br>Agency No. 2025-1502<br><br>Pipeline and Hazardous Materials Safety Administration<br><br>ORDER |

Before: HURWITZ and BRESS, Circuit Judges.

The motion (Docket Entry No. 4) for leave to intervene is granted.

The motion (Docket Entry No. 8) to stay the Pipeline and Hazardous Materials Safety Administration's December 22, 2025 approval of the Restart Plan and December 23, 2025 Emergency Special Permit is denied. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (defining standard for stay pending appeal).

This petition is expedited. The clerk will place this case on the next available calendar. *See* Gen. Ord. 3.3(f).

The opening brief is due January 26, 2026. The answering brief is due February 17, 2026. Intervenors' brief is due March 3, 2026. The optional reply brief is due 14 days after intervenors' brief is filed.

No streamlined extensions of time will be approved under Ninth Circuit Rule 31-2.2(a). Any request for an extension of time to file a brief must be made by written motion under Ninth Circuit Rule 31-2.2(b).

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen, and not a party to the within action. My business address is 820 State Street, 4th Floor, Santa Barbara, CA 93101. On January 5, 2026, I served the within document:

**DECLARATON OF TREVOR D. LARGE IN SUPPORT OF REAL PARTIES IN INTEREST SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION**

By Mail: By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Barbara, addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

By Hand Delivery: By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

By Overnight Delivery: I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address(es) set forth below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

X   By Electronic Mail: I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated below.

**SEE ATTACHED SERVED LIST**

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on January 5, 2026, at Santa Barbara, California.

_Marina L Ratliff_
Marina L. Ratliff

**4**
**PROOF OF SERVICE**

LEGAL02/47827721v3

SERVICE LIST

| | |
|---|---|
| Jeffrey D. Dintzer<br>Garrett B. Stanton<br>**ALSTON & BIRD, LLP**<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071<br>Tel: (213) 576-1000<br>Fax: (213) 576-1100<br>Jeffrey.Dintzer@alston.com<br>Garrett.Stanton@alston.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Julie Teel Simmonds, Esq.<br>David Pettit, Esq.<br>Talia Nimmer, Esq.<br>Center for Biological Diversity<br>2011 Franklin Street, Suite 375<br>Oakland, CA 94612<br>Tel.: (510) 844-7100<br>Fax: (510) 844-7150<br>jteelsimmonds@biologicaldiversity.org<br>dpettit@biologicaldiversity.org<br>tnimmer@biologicaldiversity.org | *Attorneys for Petitioners: Center for Biological Diversity and Wishtoyo Foundation* |
| Duncan Joseph Moore<br>Benjamin J. Hanelin<br>Natalie C. Rogers<br>**PAUL HASTINGS**<br>1999 Avenue of Stars, 27th Floor<br>Century City, CA 90067<br>Tel: (310) 620-5879<br>Fax: (310) 620-5899<br>djmoore@paulhastings.com<br>benjaminhanelin@paulhastings.com<br>natalierogers@paulhastings.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Trevor D. Large (SBN: 214886)<br>Victoria C. Diffenderfer (SBN: 350018)<br>**FAUVER LARGE ARCHBALD & SPRAY**<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101<br>Tel: (805) 966-7000<br>Fax: (805) 966-7227<br>tlarge@flasllp.com<br>vdiffenderfer@flasllp.com | *Attorneys for Real Parties in Interest: Sable Offshore Corp. and Pacific Pipeline Company* |
| Linda Krop, Esq.<br>Jeremy M. Frankel, Esq.<br>Tara C. Rengifo, Esq. | *Attorneys for Petitioners: Environmental Defense Center, a California non-profit corporation; Get* |

LEGAL02/47827721v3

| ENVIRONMENTAL DEFENSE CENTER<br>906 Garden Street<br>Santa Barbara, CA 93101<br>Tel: (805) 963-1622; (510) 844-7100<br>Fax: (805) 962-3152; (510) 844-7150<br>lkrop@environmentaldefensecenter.org<br>jfrankel@environmentaldefensecenter.org<br>trengifo@environmentaldefensecenter.org | *Oil Out!, a California non-profit corporation, Santa Barbara County Action Network, a California non-profit corporation, Sierra Club, a national non-profit corporation, and Santa Barbara Channelkeeper, a California non-profit corporation* |
|---|---|
| Michael S. Dorsi, Esq.<br>California Attorney General's Office<br>55 Golden Gate Ave, Ste 11000<br>San Francisco, CA 94102<br>Tel.: (415) 510-3802<br>Michael.dorsi@doj.ca.gov | *Attorneys for Respondents/Defendants: California Department of Forestry and Fire Protection, Office of the State Fire Marshal, Daniel Berlant (in his official capacity as State Fire Marshal)* |

LEGAL02/47827721v3