LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
Fax: (805) 962-3152

*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

JULIE TEEL SIMMONDS (Bar No. 208202)
jteelsimmonds@biologicaldiversity.org
DAVID PETTIT (Bar No. 67128)
dpettit@biologicaldiversity.org
TALIA NIMMER (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin Street, Suite 375
Oakland, CA 94612
Phone: (510) 844-7100

*Attorneys for Center for Biological
Diversity and Wishtoyo Foundation*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.<br><br>        *Petitioners/Plaintiffs,*<br><br>    v. | Case No.: 2:26-cv-05242<br><br>**PETITIONERS' EX PARTE APPLICATION FOR IMMEDIATE REMAND TO STATE COURT** |

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al.

     *Respondents/Defendants*,

SABLE OFFSHORE CORP., a Delaware Corporation, et al.

     *Real Parties in Interest*.

---

ENVIRONMENTAL DEFENSE CENTER, et al.

     *Petitioners/Plaintiffs*,

   v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al.

     *Respondents/Defendants*,

SABLE OFFSHORE CORP., et al.

     *Real Parties in Interest*.

## EX PARTE APPLICATION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Petitioners Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation (collectively, "Petitioners") will and do move, ex parte, for an order remanding this case to the Superior Court for Santa Barbara County (the "State Court") pursuant to 28 U.S.C. section 1447(c).

In July 2025, the State Court issued identical preliminary injunctions in these consolidated cases (the "PI Orders") directed to Respondent California Office of the State Fire Marshal ("OSFM") and Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (together, "Sable"). The PI Orders enjoin Sable from restarting defective oil pipelines CA-324 and CA-325 (the "Pipelines")—the subject of this action—unless and until it receives all necessary approvals to do so and provides Petitioners with ten court days' notice of its intent to restart.

On March 14, 2026, Sable restarted the Pipelines in open defiance of the PI Orders. It thereafter filed an ex parte application with the State Court seeking rescission of the PI Orders (for a second time), citing, *inter alia*, a March 13, 2026, order issued by the Secretary of Energy under the Defense Production Act (the "DPA Order"). On March 16, 2026, Petitioners filed an ex parte application of their own, which sought an order directing Sable to show cause why it was not in contempt of the PI Orders ("OSC") and an Order directing Sable to immediately shut down the Pipelines ("Enforcement Order").

On April 17, 2026, the State Court summarily denied Sable's ex parte application and affirmed the continued vitality of the PI Orders. The State Court continued Petitioners' ex parte application to May 22, 2026.

i

The week before the May 22, 2026 hearing, and a full two months after the DPA Order was issued, Sable, along with non-party the United States, unlawfully removed this case to (1) evade the May 22, 2026, hearing and the consequences of Sable's contempt of court and (2) improperly appeal the State Court's April 17, 2026, decision to this Court.

Petitioners bring this Ex Parte Application on the basis that (1) Sable and the United States' May 14, 2026, removal of this case is untimely under 28 U.S.C. section 1446(b)(3), which required removal, if at all, no later than April 12, 2026— i.e., thirty days after issuance of the DPA Order that gave rise to their claimed bases for removal; (2) the United States was not authorized to remove this case under 28 U.S.C. section 1442(a)(1) because this lawsuit—filed against the State of California—is not "directed to" it, as it claims; (3) Sable was not authorized to remove this case under 28 U.S.C. section 1442(a)(1) because (a) it is not "acting under" a federal officer by virtue of the DPA Order, as it claims; and (b) Sable waived any right it had to remove this case by seeking the State Court's adjudication of the effect of the DPA Order on the PI Orders and receiving an adverse ruling.

Further, remand is necessary on an ex parte basis to ensure the State Court can proceed with its scheduled May 22, 2026, hearing, hold Sable accountable for openly defying the PI Orders, and grant other appropriate relief to remedy the ongoing prejudice to Petitioners of Sable's contempt.

On May 18, 2026, at 11:30 a.m. PT, undersigned counsel met and conferred with counsel for Sable, the United States, and OSFM regarding this Application. *See* Declaration of Linda Krop, ¶ 5. At the conference, and again thereafter via email, undersigned counsel advised counsel for Sable, the United States, and OSFM that Petitioners intended to file this Application on May 18, 2026, the grounds for the Application, and that opposing papers may need to be filed not later than 3:00 p.m. on the first business day succeeding the day the ex parte was

served depending on the judge assigned. *Id*. Counsel for Sable and the United States have advised Petitioners that they will oppose this Application. *Id*. Counsel for OSFM agreed that Petitioners have meritorious grounds to seek remand and advised that they will not oppose this Application.

The information for counsel for the United States, Sable, and OSFM is as follows:

Adam R.F. Gustafson
Robert N. Stander
Bradley Craigmyle
Justin D. Heminger
Riley Walters
Stefan J. Bachman
Stefan.bachman@usdoj.gov
UNITED STATES DEPARTMENT OF JUSTICE
150 M Street, N.E., Room 2.900
Washington, D.C. 20002
Tel: (202) 598-9566
*Counsel for the United States of America*

Michael S. Dorsi
Michael.Dorsi@doj.ca.gov
Matthew Bullock
Matthew.Bullock@doj.ca.gov
Myung Park
Myung.Park@doj.ca.gov
CALIFORNIA ATTORNEY GENERAL'S OFFICE
55 Golden Gate Ave, Ste 11000
San Francisco, CA 94102
Tel: (415) 510-3802

*Counsel for Respondents and Defendants*

Andrew Klair
andrew.klair@hklaw.com
James W. Noe
jim.noe@hklaw.com
Rafe Petersen
rafe.petersen@hklaw.com

Matthew Z. Leopold
matt.leopold@hklaw.com
HOLLAND & KNIGHT LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Tel: (415) 743-6962
*Counsel for Real Parties in Interest*

Jessica Stebbins Bina
jessica.stebbinsbina@lw.com
LATHAM AND WATKINS LLP
10250 Constellation Boulevard Suite 1100
Los Angeles, CA 90067
Tel: 424-653-5500
*Counsel for Real Parties in Interest*

Jeffrey Dintzer
Jeffrey.Dintzer@alston.com
Matthew C. Wickersham
Matt.wickersham@alston.com
Garrett Stanton
Garrett.stanton@alston.com
ALSTON & BIRD
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
*Counsel for Real Parties in Interest*

DJ Moore
djmoore@paulhastings.com
Benjamin Hanelin
benjaminhanelin@paulhastings.com
Natalie Rogers
natalierogers@paulhastings.com
PAUL HASTINGS
1999 Avenue of the Starts, 27th Floor
Century City, CA 90067
*Counsel for Real Parties in Interest*

Trevor D. Large
tlarge@flasllp.com
Victoria C. Diffenderfer

iv

vdiffenderfer@flasllp.com
FAUVER LARGE ARCHBALD & SPRAY
820 State Street, 4th Floor
Santa Barbara, CA 93101
*Counsel for Real Parties in Interest*

This Application is based on this Notice; the following Memorandum of Points and Authorities; all pleadings and papers on file in this action; and upon such other matters as may be presented to the Court before the Court's decision.

Petitioners pray that the Court grant the instant Application and remand the case to Santa Barbara Superior Court on or before May 21, 2026.

Respectfully submitted this 18th day of May, 2026.

/s/ *Linda Krop*
Linda Krop
Jeremy M. Frankel
ENVIRONMENTAL DEFENSE CENTER
*Counsel for Petitioners Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

/s/ *Julie Teel Simmonds*
Julie Teel Simmonds
David Pettit
Talia Nimmer
CENTER FOR BIOLOGICAL DIVERSITY
*Counsel for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

v

# TABLE OF CONTENTS

EX PARTE APPLICATION ........................................................................ i

TABLE OF AUTHORITIES ................................................................. viii

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

    INTRODUCTION ........................................................................1

    FACTUAL BACKGROUND.........................................................2

        I.     The Basis for this Lawsuit and the Court's Preliminary Injunction Orders ........................................................................2

        II.    Sable's Discontent with OSFM and the Unlawful Federalization of the Pipelines......................................................3

        III.   Sable's Numerous Failed Attempts at Rescinding the Preliminary Injunctions, Blatant Violation of the Injunctions, and Attempt to Evade Liability..............................4

    LEGAL BACKGROUND.............................................................6

    ARGUMENT..............................................................................7

        I.     Remand Is Necessary on an Ex Parte Basis.............................7

        II.    The Notice of Removal Is Untimely.........................................8

        III.   The United States and Sable Are Not Authorized to Remove this Action Under 28 U.S.C. Section 1442(a)(1)..................................................................12

            A.    The United States Is Not a Defendant in the State Case, and the Case Is Not Against or Directed to the United States. ...................................... 12

            B.    Sable Is Not Acting Under a Federal Officer and the Case Is Not Relating to Any Act Under Color of Federal Office............................................... 14

        1.       Sable Is Not Acting Under a Federal Officer. ....................................................14

        2.       The State Case Is Not for or Related to Any Act Under Color of Federal Office. .............18

IV.    Sable Waived Any Right It Had to Remove This Case When It Sought Dissolution of the PI Orders in State Court..................................................................................19

CONCLUSION..................................................................................20

CERTIFICATE OF COMPLIANCE ...................................................22

# TABLE OF AUTHORITIES

**Cases**

*Abrego Abrego v. The Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) (per curiam) ...................................................... 6

*Aqualon v. MAC Equip., Inc.*,
149 F.3d 262 (4th Cir.1998) .............................................................. 19

*Arizona v. Manypenny*,
451 U.S. 232 (1981) ............................................................................. 14

*Baldwin v. Perdue, Inc.*,
451 F.Supp. 373 (E.D. Va. 1978) .................................................... 19

*Chevron USA Inc. v. Plaquemines Par.*,
146 S. Ct. 1052 (2026) ..................................................................... 14, 18

*City & County of Honolulu v. Sunoco LP*,
39 F.4th 1101 (9th Cir. 2022) ...................................................... 7, 16

*County of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022) ........................................................ 15, 16

*DeFiore v. SOC, LLC*,
85 F.4th 546 (9th Cir. 2023) .......................................................... 17

*Dietrich v. Boeing Co.*,
14 F.4th 1089 (9th Cir. 2021) ......................................................... 8, 9

*Doe v. Cedars-Sinai Health Sys.*,
106 F.4th 907 (9th Cir. 2024) ......................................................... 17

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) ........................................................ 9

*Ely Valley Mines, Inc. v. Hartford Acc. and Indem. Co.*,
644 F.2d 1310 (9th Cir. 1981) ........................................................ 13

*Goncalves v. Rady Children's Hosp.*,
865 F.3d 1237 (9th Cir. 2017) ........................................................ 17

*Hansen v. Grp. Health Coop.*,
    902 F.3d 1051 (9th Cir. 2018) ............................................................ 7

*Loftin v. Rush*,
    767 F.2d 800 (11th Cir. 1985) ......................................................... 11

*Miami Herald Media Co. v. Fla. Dep't of Transp.*,
    345 F. Supp. 3d 1349 (N.D. Fla. 2018) ........................................... 11

*Nationwide Investors v. Miller*,
    793 F.2d 1044 (9th Cir. 1986) .................................................... 13, 17

*Resolution Trust Corp. v. Bayside Devs.*,
    43 F.3d 1230 (9th Cir. 1994) .......................................................... 19

*Rosenthal v. Coates,*
    148 U.S. 142 (1893) .................................................................. 19, 20

*Tennessee v. Davis*,
    100 U.S. 257 (1879) ........................................................................ 13

*Watson v. Philip Morris Cos.*,
    551 U.S. 142 (2007) .................................................................. 14, 15

*Willingham v. Morgan*,
    395 U.S. 402 (1969) .................................................................. 12, 13

**Statutes**

28 U.S.C. § 1442(a) ........................................................................ 13

28 U.S.C. § 1442(a)(1)............................... 10, 13, 14, 16, 17, 18, 21

28 U.S.C. § 1442(d)(1).................................................................... 14

28 U.S.C. § 1446................................................................... 10, 16

28 U.S.C. § 1446(b) ................................................................. 15, 16

28 U.S.C. § 1446(b)(1).................................................................... 10

28 U.S.C. § 1446(b)(3).............................................. 5, 10, 12, 13, 15

28 U.S.C. § 1447(c) ........................................................................ 11

**Other Authorities**

James W. Moore, et al., *Moore's Federal Practice*, § 107.132[1]........................ 24

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

For over two months, Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company (together, "Sable") have openly defied two preliminary injunctions issued by the Superior Court for the County of Santa Barbara (the "State Court")—despite the State Court holding in February, and again in April, that the injunctions remain effective even in the face of recent federal developments. The Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation (collectively "Petitioners") respectfully request that this Court immediately remand this case to the State Court so that it can hear, as scheduled on May 22, 2026, Petitioners' request to redress Sable's contempt.

Sable and the United States' May 14, 2026, Notice of Removal is but a thinly veiled attempt to (1) evade the May 22, 2026, hearing and the consequences of Sable's contempt, and (2) improperly appeal the State Court's April decision (upholding the injunctions at issue) to this Court. And unfortunately, it marks only the latest impropriety in a months-long pattern of highly irregular, improper, and prejudicial conduct.

The removal, however, was not only brought in bad faith. It is patently unlawful. Neither Sable nor the United States were authorized to remove this case pursuant to 28 U.S.C. section 1442(a)(1): Sable because it is not "acting under" a federal officer, and the United States because this lawsuit—filed against the State of California—is not "directed to" it. And even if the parties *were* authorized to remove this case, removal is untimely under 28 U.S.C. section 1446(b)(3), which required removal, if at all, not later than April l2, 2026—i.e., thirty days after issuance of the March 13, 2026, Defense Production Act Order (the "DPA Order") that gave rise to the claimed bases for removal. Lastly, as to Sable in particular, it

1

has also waived any right it had to remove this case by seeking the State Court's adjudication of the effect of the DPA Order on the preliminary injunctions and receiving an adverse ruling.

Accordingly, Petitioners respectfully request that this Court remand this case to the State Court. Such relief is necessary on an ex parte basis to ensure the State Court can proceed with its May 22, 2026, hearing, and urgently redress, as scheduled, Sable's contempt, remedy the ongoing and wanton prejudice to Petitioners from Sable's conduct, and restore some semblance of law and order.

**FACTUAL BACKGROUND**

**I.      The Basis for this Lawsuit and the Court's Preliminary Injunction Orders**

These consolidated cases arise from Sable's efforts to restart defective oil pipelines CA-324 and CA-325 (the "Pipelines")—the former of which ruptured in 2015 at Refugio State Beach, causing one of the worst oil disasters in California history. As was discovered after the spill, the Pipelines suffer from a critical design defect that leaves them vulnerable to pervasive corrosion and, consequently, another catastrophic rupture. In addition to sensitive coastal areas, the Pipelines pass through major sources of water supply; renowned parks and ecological reserves; and a populated suburban neighborhood in Buellton, California, complete with schools, parks, and dozens of residential homes.

Rather than replacing the defective Pipelines or retrofitting them with an effective means of corrosion prevention, Sable sought to simply restart them. To do so, it was required, pursuant to a 2020 Consent Decree, to obtain "State Waivers" from Respondent California Office of the State Fire Marshal (OSFM). In February 2025, OSFM issued said State Waivers, which excused Sable from complying with critical corrosion prevention and remediation requirements, without a public process, environmental review, or any analysis as to why the Pipelines can safely be restarted.

2

Accordingly, on April 15, 2025, Petitioners filed two Petitions and Complaints, challenging the legality and adequacy of the State Waivers, which have since been consolidated. The Petitions included claims that OSFM failed to comply with the California Environmental Quality Act and federal and state pipeline safety acts in issuing the State Waivers. Notice of Removal, Exs. B-C.

On June 3, 2025, the Court granted Petitioners' requests for a Temporary Restraining Order, ordering OSFM and Sable to maintain the status quo until Petitioners' request for a Preliminary Injunction could be heard. Thereafter, on July 29, 2025, the Court granted, in part, Petitioners' requests for a Preliminary Injunction, ordering that:

> The applications are granted to enjoin, pending the disposition of these proceedings or further order of the court, the restart of the Las Flores Pipelines, as herein defined, until 10 court days following the filing and service of notice by or on behalf of real parties in interest Sable Offshore Corp., and Pacific Pipeline Company (collectively, Sable) that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart.

Notice of Removal, Ex. D, p. 9.

## II.    Sable's Discontent with OSFM and the Unlawful Federalization of the Pipelines

Following the Court's July 2025 Orders for Preliminary Injunction (the "PI Orders"), on September 11, 2025, Sable submitted to OSFM updated Restart Plans for approval. However, on October 22, 2025, OSFM declined to approve the plans, noting that it "identified a requirement of the State Waivers that has not yet been met and that Sable must complete prior to any potential restart." Notice of Removal, Ex. LL, p. 71.

In an apparent attempt to circumvent California oversight of the Pipelines, Sable sent a letter to the Pipeline and Hazardous Materials Administration (PHMSA) on November 26, 2025, requesting that PHMSA determine that the

3

pipelines are "interstate," not "intrastate," and thereby wrest jurisdiction of the Pipelines from OSFM. Notice of Removal, Ex. LL, p. 74. On December 17, 2025, PHMSA concurred in Sable's determination. *Id*. at p. 79. Days later, PHMSA approved Restart Plans for the Pipelines and granted Sable a Special Permit, the federal equivalent of a State Waiver, on an emergency basis. *Id*. at pp. 132, 135. Petitioners and OSFM have filed Petitions for Review of PHMSA's actions, which are pending in the Ninth Circuit Court of Appeals.

**III.    Sable's Numerous Failed Attempts at Rescinding the Preliminary Injunctions, Blatant Violation of the Injunctions, and Attempt to Evade Liability**

Following PHMSA's decisions, on January 5, 2026, Sable moved the State Court to reconsider and rescind the PI Orders, arguing that Petitioners' lawsuits were moot in light of PHMSA's purported federalization of the Pipelines. *See* Notice of Removal, Ex. E, p. 9. On February 27, 2026, the Court rejected Sable's request. In pertinent part, the Court explained that "[t]he court is not persuaded on this record that administrative actions taken by PHMSA necessarily eliminates OSFM participation in the restart process" and that therefore "the court does not find the evidence of subsequent events involving PHMSA and federal appellate proceedings are sufficient to reconsider its ruling on the preliminary injunction or to modify or dissolve the preliminary injunction." Notice of Removal, Ex. OO, p. 19.

Dissatisfied with this ruling, Sable next turned to the United States Secretary of Energy for help. On March 13, 2026, at the behest of Sable, the Secretary of Energy issued the DPA Order. The order directed Sable to immediately commence contract performance for, and prioritize and allocate transportation of hydrocarbons through, the Pipelines. Notice of Removal, p. 7, Ex. A. The very next day, in reliance of the DPA Order, Sable restarted the Pipelines in open

4

defiance of the PI Orders, which the State Court had just weeks ago upheld. Notice of Removal, Ex. OO, p. 137.

Only *after* Sable began unilaterally violating the PI Orders did it seek further relief from the State Court. Specifically, on March 16, 2026, it filed an ex parte application asking the State Court to rescind the PI Orders, this time based not only on mootness but also on an alleged conflict between the PI Orders and the DPA Order. Notice of Removal, Ex. OO, pp. 146-147.[1] Petitioners filed an ex parte application of their own, which sought an Order directing Sable to Show Cause why it was not in contempt of the PI Orders ("OSC") and an Order directing Sable to immediately shut down the Pipelines ("Enforcement Order"). Notice of Removal, Ex. E, p. 9.

On April 17, 2026, after directing supplemental briefing, the State Court again denied Sable's request to rescind and reconsider the injunction, explaining that there "there is no preemption issue," that "[t]he DPA Order therefore does not constitute a basis for dissolving or modifying the preliminary injunction," and that "Sable has not persuasively shown that subsequent events make this matter moot and so warrant dissolution of the preliminary injunction." *Id.*, Ex. E, pp. 14, 16. The State Court left no doubt: it stated that it "makes its position clear as to the current vitality of the preliminary injunction in light of recent events . . . [and] is deeply concerned with noncompliance with the preliminary injunction." *Id.*, p. 17. The State Court continued Petitioners' ex parte application to May 22, 2026. *Id.* at p. 6.

The week before the May 22, 2026 hearing, and a full two months after the DPA Order was issued, Sable, along with non-party the United States, unlawfully removed this case to (1) evade the May 22, 2026, hearing and the consequences of

---

[1] The Notice of Removal incorrectly states that Sable filed its second request to rescind the injunction on March 13, 2026. Notice of Removal, p. 9. Sable actually filed the second request on March 16, 2026, two days after it restarted the Pipelines. *See* Notice of Removal, Ex. OO, pp. 137, 144.

Sable's contempt of court and (2) improperly appeal the State Court's April 17, 2026, decision to this Court. Petitioners now seek immediate remand to the State Court so that it may proceed, as scheduled, on May 22, 2026.

**LEGAL BACKGROUND**

The federal officer removal statute authorizes defendants to remove to federal court any "civil action or criminal prosecution that is commenced in a State court and that is against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

28 U.S.C. section 1446 provides the procedure for removal of civil actions from state to federal court. Section 1446(a) requires that a defendant or defendants seeking removal must file a notice of removal in the district court of the United States, and that such notice must contain a statement of grounds for removal, along with a copy of "all process, pleadings, and orders served upon defendant or defendants in such action." Section 1446(b)(1) requires that the notice of removal must be filed within thirty days after the receipt by the defendant of a copy of the initial pleading or within thirty days after service of summons, whichever period is shorter.

Removal may also be allowed, even if the case stated in the initial pleading is not removable, if a later action gives rise to removability. Still, in such situations, notice of removal must be filed within thirty days after receipt by the defendant "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

In all instances, the burden of establishing that removal is proper rests with the removing defendant. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the

6

burden on removal rests with the removing defendant"). When considering removal claims, the Ninth Circuit exercises "prudence and restraint" and "strictly construe[s] the removal statute against removal jurisdiction." *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1106 (9th Cir. 2022) (quoting *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056-57 (9th Cir. 2018)).

Once a case has been removed, the non-removing party has an opportunity to seek remand of the case "on the basis of any defect." 28 U.S.C. § 1447(c).

## ARGUMENT

This case should be remanded to state court for three reasons: (1) the Notice of Removal is untimely; (2) neither the United States nor Sable is entitled to removal; and (3) to the extent Sable was entitled to remove the matter, it waived such right by choosing the State Court as the forum to seek the exact same relief it now pursues.

## I.    Remand Is Necessary on an Ex Parte Basis.

For over two years, Sable has routinely disregarded all manner of state laws and agency directives, resulting in monetary penalties (that it refuses to pay), multiple lawsuits, and felony criminal charges. But somehow, Sable has managed to descend even deeper into lawlessness. What before seemed unthinkable, Sable began willfully and openly defying the PI Orders, upending all norms of our judicial system in the process. The gravity of Sable's conduct cannot be overstated, and it must be met in equal force by severe and immediate action from the court whose authority it has openly flouted.

And indeed, as Sable is well aware, that is the purpose of the May 22, 2026, hearing that the State Court has scheduled: to potentially hold Sable accountable for openly defying the PI Orders, including by granting appropriate relief to remedy the ongoing prejudice to Petitioners of Sable's contempt. *See* Notice of Removal, ¶ 11. To allow Sable to evade that hearing by filing a frivolous Notice of Removal would not only magnify the ongoing prejudice to Petitioners, but would

7

also facilitate Sable's flouting of judicial authority and endorse, at least tacitly, its bad faith gamesmanship.

Accordingly, immediate remand to the State Court is necessary to redress, as scheduled, Sable's contempt, remedy the ongoing and extreme prejudice to Petitioners from Sable's conduct, and restore some semblance of law and order.

## II.    The Notice of Removal Is Untimely.

As noted, 28 U.S.C. section 1446(b) lays out two pathways for removal and "sets a thirty-day deadline" for each. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1090 (9th Cir. 2021). As explained in *Dietrich*,

> Often, the basis for removal is clear from the complaint (or other initial pleading), and so the thirty days begin to run from the date a defendant receives the initial pleading. 28 U.S.C. § 1446(b)(1). This is the first pathway to removal. But 'if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.' *Id.* § 1446(b)(3). This is the second pathway to removal.

*Id.* Here, Sable and the United States each seek removal under the "second pathway" of section 1446(b)(3).

Sable and United States claim that removal is timely because the section 1446(b)(3) deadline was triggered, if at all, when the State Court issued its April 17 Order—i.e., not when the Secretary issued the March 13 DPA Order, *despite that order serving as the basis for removal*. Their arguments in this regard are borderline frivolous. The removal clock began with the March 13, 2026, DPA Order; the deadline to remove was April 12, 2026; and the Notice of Removal was thirty-two days late.

Start with Sable. The Notice of Removal plainly states that Sable's ground for removal is that the DPA Order rendered it a "federal officer" within the meaning of section 1442(a)(1). *See, e.g.,* Notice, ¶¶ 37-41. Again, in determining

the section 1446(b)(3) deadline, the pertinent inquiry is when "it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). For Sable, that occurred on March 13, 2026, when it was issued the DPA Order and became aware, certainly and unequivocally, of the alleged grounds for federal officer removal that it now claims. *See Dietrich*, 14 F.4th at 1094 ("[T]he removal clock begins upon the revelation of a federal officer ground for removal." (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006)). Thus, the 1446(b)(3) removal clock began for Sable on March 13, 2026.[2]

Sable attempts to escape this inevitability by claiming, bizarrely, that removal only became proper after the April 17 Order. *See* Notice of Removal, ¶ 29 ("The April Order disclosed facts that . . . render removal proper now."). But Sable contradicts itself. It was the March 13 DPA Order, Sable itself says, that rendered it a "federal officer"—not the April 17 Order. *See, e.g.,* Notice of Removal, ¶¶ 37-41. Nor has Sable explained how the State Court's order could somehow independently render Sable a federal officer or otherwise restart its thirty-day deadline.[3] Thus, the removal clock began running not on April 17, but on March 13.

---

[2] Section 1446(b)(3) references "receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper." To the extent this provision suggests that Sable needed to be independently apprised of its grounds for removal by a pleading filed in the state court proceedings, that was satisfied when Petitioners filed their March 16, 2026, Ex Parte Application to Enforce the PI Orders and for an Order to Show Cause re: Contempt. And, in that case, the Notice of Removal would still be a full thirty days late.

[3] Sable appears to suggest, citing section 1442(d)(1), that the contempt proceedings are a separate "civil action . . . against or directed to it," 28 U.S.C. § 1442(a); that those proceedings were initiated by the April 17 Order; and thus its thirty-day clock for removal began on that date. Even assuming, *arguendo*, that the contempt proceedings could be considered a separate action, they began on March 16, 2026, when Petitioners filed their Ex Parte Application "s[eeking] a judicial order" from the court. 28 U.S.C. § 1442(d)(1).

Turning to the United States, its separate basis for removal is that this lawsuit became "directed to" it, for purposes of section 1442(a), when the state court entered its April 17 Order. Notice of Removal, p. 4. However, even assuming, for the moment, that this lawsuit—filed against the State of California—*was* "directed to" the United States, it would be by virtue of the March 13 DPA Order, not the April 17 Order.

Indeed, the United States' argument that this lawsuit is now "directed to" it is premised on the following: "The state court's *April Order* prohibits Sable from immediately transporting crude oil through the segments under threat of sanctions, while the DPA Order requires Sable to immediately transport oil through the [Pipelines]." Notice of Removal, ¶ 15 (emphasis added). But the April 17 Order is not what enjoins Sable—the PI Orders are. In other words, the April 17 Order does not have any independent effect on Sable's ability to operate; it merely confirmed the validity of the *already existing* PI Orders, issued nearly a year ago in July 2025, and preserved the status quo. In other words, while Sable brought to the court's attention a potential conflict between the PI Orders and the DPA Order, the court did not create a *new* conflict. It simply rejected Sable's arguments. Thus, to the extent the United States suggests it is the April 17 Order, and not the PI Orders, that interfere with the DPA Order, its frustration is misplaced.

Accordingly, even assuming, as the United States suggests, that these proceedings interfere with the DPA Order (such that this lawsuit is "directed to" it), any perceived interference began on March 13, the moment the DPA Order was issued in conflict, allegedly, with the PI Orders.[4] Thus, like Sable, the section

---

[4] Notably, the United States was likely on notice of the PI Orders well before March 13, 2026, but in any event no later than March 16, 2026. *See United States et al. v. Plains All American Pipeline, L.P.*, 2:20-cv-02415, Dkt. 43-1, p. 111 (PI Orders served on United States as exhibit to State's emergency motion on March 16, 2026).

1446(b)(3) removal clock would have begun running for the United States on March 13.

Perhaps when recognizing they had blown past their respective removal deadlines by over a month, Sable and the United States throw up a Hail Mary: section 1446(b), they say, "does not apply to the United States where it removes a case under § 1442(a)(1) that is 'directed to' it." Notice of Removal, ¶ 20. But the only authority they cite for this extreme and novel position is dicta from a Florida district court case, *Miami Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349, 1366 (N.D. Fla. 2018).

Of course, this court need not follow either dicta or the opinions of an out of circuit case. But in any event, their reliance on *Miami Herald* is misplaced. While the United States sought removal there as a non-party, the court ultimately considered whether its removal was timely under a different provision, section 1446(g). *Id.* at 1367. Moreover, to the extent the court suggested, in passing, that section 1446(b) only applies to *defendants*—i.e., not to non-parties—that proposition conflicts with binding precedent in that court's circuit. *See Loftin v. Rush*, 767 F.2d 800, 805 (11th Cir. 1985) (removal by non-party United States subject to time limits of section 1446(b)), *abrogated on other grounds by Enbridge Energy, LP v. Nessel ex rel. Mich.*, 146 S. Ct. 1074 (2026) (abrogating *Loftin's* holding that section 1446(b)'s thirty-day deadline could be equitably tolled). It is also incorrect: Nothing in section 1446(b)(3) qualifies that the provision applies only to defendants. It merely states, without any subject noun, that "a notice of removal may be filed within 30 days . . . ." 28 U.S.C. § 1446(b)(3). Indeed, to outright excuse the United States from section 1446(b), as the parties here would have it, would lead to the absurd result that the United States could remove a case at *any* time, at *any* stage of proceedings, and without *any* regard for when it became aware that that a federal objective was implicated in the proceedings,

leading to the precise type of widespread disruption and uncertainty that section 1446 is intended to prevent.

In sum, then, the clock for Sable and the United States to remove this action began on March 13, 2026; their deadline to remove was April 12, 2026; and their Notice of Removal is thirty-two days' late.

**III.   The United States and Sable Are Not Authorized to Remove this Action Under 28 U.S.C. Section 1442(a)(1).**

The United States and Sable do not qualify for removal pursuant to 28 U.S.C. section 1442(a)(1). This statute is intended to provide a *federal* forum for *federal* defendants to present *federal* defenses and to avoid state court interference with their operations. The United States does not qualify for removal because no federal agency or officer is named as a defendant or has appeared in the case. Sable is not entitled to removal as a non-federal defendant because it does not meet the strict requirements of "acting under" a federal officer and because the state case does not relate to an act under color of federal office. Therefore, the case should be remanded to state court.

**A.   The United States Is Not a Defendant in the State Case, and the Case Is Not Against or Directed to the United States.**

Removal pursuant to 48 U.S.C. section 1442 is intended to provide a forum for *federal defendants* to raise *federal defenses*. *Willingham v. Morgan*, 395 U.S. 402 (1969). Specifically, section 1442(a) states that:

> A civil action or criminal prosecution that is commenced in a State court and that *is against or directed to* any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> *(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof . . . .*

28 U.S.C. § 1442(a)(1) (emphasis added).

The Supreme Court has allowed federal defendants to remove cases from state to federal court where the defendants acted in their official capacity as officers of the United States. *See, e.g.*, *Willingham*, 395 U.S. 402 (1969) (defendants were a warden and chief medical officer at a federal penitentiary and were sued in their capacity as officers of the United States); *Tennessee v. Davis*, 100 U.S. 257 (1879) (defendant was a deputy collector of internal review and sued in his capacity as an officer of the United States). In such cases, the Court noted that the named defendants were entitled to removal so they could have the "opportunity to present their version of the facts to a federal, not a state, court." *Willingham*, 395 U.S. at 409. As discussed in detail in *Willingham*, section 1442(a) was enacted as a "federal officer removal statute" to "protect federal officers from interference by hostile state courts." *Id*. at 405. Congress recognized "the very basic interest in the enforcement of federal law through federal officials." *Id.* at 406.

The Ninth Circuit has followed the lead of the Supreme Court and upheld removal where federal defendants are involved. *See, e.g., Ely Valley Mines, Inc. v. Hartford Acc. and Indem. Co.*, 644 F.2d 1310, 1313 (9th Cir. 1981) (upholding removal by defendant federal receiver, noting that the defendant was acting in an official capacity and thus "there is a strong federal interest in providing federal court access"); *see also Nationwide Investors v. Miller*, 793 F.2d 1044, 1047 (9th Cir. 1986) (extending removal to federal officers subject to the subpoena power of State courts).

This case, however, does not name any federal defendants. The action was not commenced against the United States, or any agency or officer thereof. Even the removing parties concede that "the United States is not a defendant in the state court case." Notice of Removal, p. 4. Importantly, the state court injunction is not directed at a federal entity and does not compel or restrict action by a federal

agency or officer. No relief runs against the United States. Instead, the action was filed in *state* court against a *state* agency and the officer in charge of that agency (i.e., the California Department of Forestry and Fire Protection, Office of State Fire Marshal, and Daniel Berland in his official capacity as State Fire Marshal), to enforce their obligations under *state* law.

Because the United States is not a defendant and the case does not impose relief against the federal government, the United States is not entitled to remove this action to federal court.

**B.      Sable Is Not Acting Under a Federal Officer and the Case Is Not Relating to Any Act Under Color of Federal Office.**

Nor is Sable entitled to remove the case. Sable is acting as a private party, not under a federal officer. Nor does the case relate to any action by Sable acting under color of a federal office.

1.      Sable Is Not Acting Under a Federal Officer.

First, it is important to remember the purpose of the federal officer removal statute, which is "to ensure a federal forum in any case where a *federal official* is entitled to raise a defense arising out of his duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981) (emphasis added). A federal forum may be necessary to "protect the *Federal Government* from state-court 'interference with its operations.'" *Chevron USA Inc. v. Plaquemines Par.*, 146 S. Ct. 1052, 1057 (2026) (emphasis added).

A party who is not a federal official may remove a case to federal court if the party is "acting under" a federal officer. 28 U.S.C. § 1442(a)(1). To act in such capacity, however, requires more than the relationship between Sable and the Department of Energy (DOE) in this case. Instead, Sable must be acting *on behalf of a federal officer* in a manner akin to an agency relationship. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 156 (2007). A duty to comply with a federal directive is not enough. *Id.* Nor is a federal requirement to fulfill a contract. *Id.* at 156.

14

Rather, there must be evidence of a "delegation of legal authority" to perform "on the Government agency's behalf." *Id.*

In *Watson*, the Supreme Court rejected defendant Philip Morris' assertion that the company was "acting under" the Federal Trade Commission, finding that the fact that Philip Morris had to "simply *comply*[] with the law" did not bring the company within the scope of 28 U.S.C. section 1442(a)(1). *Id.* at 152. The court noted that a private defendant's "compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Id.* at 153. The court found that there was no evidence of a delegation of authority and thus "we can find nothing that warrants treating the FTC/Philip Morris relationship as distinct from the usual regulator/regulated relationship." *Id.* at 157. Accordingly, the court reversed the Eighth Circuit Court of Appeals' removal order.

The Ninth Circuit has consistently limited removal by a party who is not a federal agency or officer to circumstances where the party is serving as an agent of the federal government or acting on behalf of the federal government. In *County of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), the Ninth Circuit identified four factors to determine whether a person is "acting under" a federal officer: (1) working under an officer "in a manner akin to an agency relationship"; (2) being "subject to the officer's close direction, such as acting under the ... 'guidance, or control' of the officer" or having an "unusually close" relationship "involving detailed regulation, monitoring, or supervision"; (3) helping fulfill "basic governmental tasks"; and (4) conducting activities "so closely related to the government's implementation of its federal duties that the ... person faces 'a significant risk of state-court prejudice.'" 32 F.4th at 756–57 (citing *Watson*, 551 U.S. at 151–53).

Removal must be rejected here because Sable is not "acting under" a federal officer. Sable is not an agent of the DOE, has not been delegated authority by

15

DOE, and is not acting on behalf of the agency. Nor does Sable have a contract directly with DOE. Furthermore, Sable is not sharing in the day-to-day administration of the DPA. Instead, Sable is merely attempting to comply with a Secretarial Order directing it to prioritize and allocate contracts and services.

This case is similar to *City & County of Honolulu*, wherein the oil company defendants sought to remove a case based on their production of oil and gas pursuant to the DPA. 39 F.4th 1101. There the Ninth Circuit noted that "DPA directives are basically regulations." *Id.* at 1107-08. The court further explained that "[w]hen complying [with the DPA], Defendants did not serve as government agents and were not subject to close direction or supervision." *Id.* at 1108. Accordingly, the court determined that removal was not proper.

Another illustrative case is *County of San Mateo*, wherein several oil and gas companies sought to remove a case based on their asserted obligations to provide fuel to the U.S. Navy. 32 F.4th 733. In that case, the oil companies based their request for removal on contracts to supply fuel to service stations at several Navy installations. The court held that the fuel supply contracts, even though they required providing supplies to Navy installations, were insufficient to show that the companies were "acting under" a federal officer. *Id.* at 758. The court also rejected the assertion that a contract between Standard Oil and the Navy to coordinate production of oil to "ensure the availability of oil reserves in the event of a national emergency" resulted in a relationship such that Standard Oil was "acting under" a federal officer for purposes of 28 U.S.C. section 1442(a)(1). *Id.* at 758-79. The *County of San Mateo* and *City & County of Honolulu* cases clearly show that Sable lacks the requisite agency relationship to qualify for removal under 28 U.S.C. section 1442(a)(1).

The Ninth Circuit has refused to find that non-federal defendants were "acting under" federal officers in other contexts as well. For example, in *Doe v. Cedars-Sinai Health System*, the court found that a defendant health care

16

provider's actions were not sufficiently federally directed, were not conducted pursuant to federally delegated authority, and were related to compliance, not to carrying out the duties or tasks of a federal officer. 106 F.4th 907, 916-17 (9th Cir. 2024).

This case is readily distinguishable from cases in which the Ninth Circuit has granted removal:

- In *DeFiore v. SOC, LLC*, the court found that private government contractors working for the Department of Defense (DOD) were "acting under" the DOD because they were essentially serving as DOD agents. 85 F.4th 546, 556 (9th Cir. 2023).

- Similarly, in *Goncalves v. Rady Children's Hosp.*, the court found that private health insurance companies were "acting under" the federal Office of Personnel Management (OPM) where OPM contracted with such carriers to share the date-to-day operations of the program. In doing so, the court noted that the private parties were "serving as the government's agent" such that their actions "go well 'beyond simple compliance with the law and help[] officers fulfill other governmental tasks.'" 865 F.3d 1237, 1246-47 (9th Cir. 2017), quoting *Watson*, 551 U.S. at 153.

- In *Nationwide Investors v. Miller*, 793 F.2d 1044, 1046-47 (9th Cir. 1986), removal was permitted to provide a *federal officer* with a federal forum to challenge a subpoena in a state proceeding.

None of these cases warrants removal here, where Sable is not acting as an agent of the federal government, does not have a contract directly with the federal government, and is not performing a federal duty.

17

2.     The State Case Is Not for or Related to Any Act Under Color of Federal Office.

Because Sable is not acting under a federal officer, the inquiry can stop there, and the case should be remanded. However, even if that were not the case, remand is appropriate because the state case is not "so closely related to the government's implementation of its federal duties" that it requires removal to federal court.

Sable cites *Chevron USA* for the proposition that the state case relates to an act under color of federal office.[5] 146 S. Ct. 1052. In that case, the federal government contracted with companies like Chevron that operated refineries to supply aviation gasoline (avgas) to the military during the Second World War. *Id.* at 1058. The contract required Chevron to quadruple its production. *Id*. The parish's case against Chevron asserted that Chevron had engaged in illegal production activities, making it liable under the State and Local Coastal Resources Management Act. 146 S. Ct. at 1059. The Supreme Court held that Chevron was able to demonstrate "a close relationship between its challenged conduct and the performance of its federal duties." *Id.* at 1061. Notably, "the Government emphasized the importance of *increasing Chevron's crude-oil production* to support avgas refining as part of the war effort." *Id*. (emphasis added). Because the state suit "implicate[d] Chevron's wartime efforts to produce and supply avgas' essential feedstock," the court found it to be closely connected to Chevron's wartime avgas refining for the military." *Id*.

In the cases brought by Petitioners, there is no such "close relationship" between the state litigation and Sable's performance of its duties under the DPA Order. The DPA Order does not order Sable to commence or increase the

---

[5] In *Chevron*, no party disputed that Chevron acted under a federal office when it refined crude oil into aviation fuel for the U.S. military. 146 S. Ct. at 1057. The only question was whether the state litigation related to Chevron's wartime refining of crude oil. *Id.*

18

*production* of oil or *restart* the pipelines, only to prioritize certain contracts and allocate existing resources and services among competing needs. Nor does the DPA Order direct Sable to violate state law or ignore binding court orders. Therefore, the case should be remanded because the state case is not related to Sable duties under color of federal office.

In sum, neither the United States nor Sable are entitled to removal.

## IV. Sable Waived Any Right It Had to Remove This Case When It Sought Dissolution of the PI Orders in State Court.

Finally, Sable's waiver of its right to remove the case in and of itself renders its Notice of Removal improper.

It is well established that a defendant "may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon her right to a federal forum." *Resolution Trust Corp. v. Bayside Devs.*, 43 F.3d 1230, 1240 (9th Cir. 1994) (citing *Baldwin v. Perdue, Inc.*, 451 F. Supp. 373, 375-76 (E.D. Va. 1978); *George v. Al-Saud*, 478 F. Supp. 773, 774 (N.D. Cal. 1979)).[6] *See also Rosenthal v. Coates,* 148 U.S. 142, 147 (1893) (removal acts "do not contemplate that a party may experiment on his case in the state court, and, upon an adverse decision, then transfer it to the Federal Court."); *Aqualon v. MAC Equip., Inc.,* 149 F.3d 262, 264 (4th Cir.1998) ("A defendant may waive the right to remove by taking some substantial defensive action in the state court *before* petitioning for removal.").

---

[6] In *Bayside,* the Ninth Circuit held the plaintiff's petition for rehearing filed in state court did not constitute a waiver of its right to remove. However, in that case the plaintiff filed the petition on the *same date* that it filed the notice of removal. *Bayside,* 43 F.3d at 1240. Furthermore, the Ninth Circuit expressly stated that the "petition specifically stated that the plaintiff intended to remove and had made the petition solely for the defensive purpose of preserving the status quo pending removal." *Id.* Accordingly, the procedural facts of the instant case are distinguishable from *Bayside.*

19

"Courts are particularly likely to find that a defendant waived the right to remove when," as here, "it appears the state court has been used to 'test the waters.'" 16 James W. Moore, et al., *Moore's Federal Practice*, § 107.132[1]. "Removing only after there has been . . . an adverse ruling is suspect. Removal under those circumstances would effectively operate as a federal appeal of the adverse state-court decision." *Id.* (citing *Rosenthal*, 148 U.S. at 147). Under Sable's removal theory, it could have pursued federal officer removal as soon as March 13, when the DPA Order was issued. However, it deliberately chose instead to proceed in state court. It then brought a motion that specifically sought adjudication of the effect of the DPA Order on the PI Orders, unequivocally manifesting an intent to have that matter resolved in state court. And indeed, it was only *after* it lost its second motion to rescind the injunction that it opted to remove the case, seeking, effectively, "a federal appeal of the adverse state-court decision." *Id.*

Accordingly, by filing its motion to lift the PI Orders—which raised most, if not all, of the same arguments Sable now asks *this* court to consider—Sable submitted to the state court's jurisdiction and waived its right to a federal forum.

## CONCLUSION

The Notice of Removal mischaracterizes the State Court's orders, misapplies section 1442(a)(1), and is untimely. This Court should immediately remand the case to Santa Barbara Superior Court.

Respectfully submitted this 18th day of May, 2026.

                                    */s/ Linda Krop*
                                    Linda Krop
                                    Jeremy M. Frankel
                                    ENVIRONMENTAL DEFENSE
                                    CENTER
                                    *Counsel for Environmental Defense
                                    Center, Get Oil Out!, Santa Barbara
                                    County Action Network, Sierra Club,
                                    Santa Barbara Channelkeeper and
                                    Surfrider Foundation.*

                                    */s/ Julie Teel Simmonds*
                                    Julie Teel Simmonds
                                    David Pettit
                                    Talia Nimmer
                                    CENTER FOR BIOLOGICAL
                                    DIVERSITY
                                    *Counsel for Center for
                                    Biological Diversity and
                                    Wishtoyo Foundation*

21

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper, Surfrider Foundation, Center for Biological Diversity, and Wishtoyo Foundation, certifies that this brief contains 6,603 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 18, 2026

*/s/ Linda Krop*
Linda Krop
Jeremy M. Frankel
ENVIRONMENTAL DEFENSE CENTER
*Counsel for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Santa Barbara Channelkeeper and Surfrider Foundation.*

*/s/ Julie Teel Simmonds*
Julie Teel Simmonds
David Pettit
Talia Nimmer
CENTER FOR BIOLOGICAL DIVERSITY
*Counsel for Center for Biological Diversity and Wishtoyo Foundation*

22