ROB BONTA
Attorney General of California
MYUNG J. PARK
SUPERVISING DEPUTY ATTORNEY GENERAL
MICHAEL S. DORSI (CA BAR NUMBER: 281865)
DEPUTY ATTORNEY GENERAL
 455 Golden Gate Avenue, Suite 11000
 San Francisco, California 94102
 P.O. Box 85266
 Tel: (415) 510-4400
 Fax:  (619) 645-2581
 E-mail: Michael.Dorsi@doj.ca.gov

*Counsel for Respondents and Defendants
California Department of Forestry and Fire
Protection's Office of State Fire Marshal, et al.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>          Petitioners and Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al.,<br><br>          Respondents and Defendants,<br><br>SABLE OFFSHORE CORP., et al.,<br><br>          Real Parties in Interest.<br>_____<br>ENVIRONMENTAL DEFENSE CENTER, et al.,<br><br>          Petitioners and Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al.,<br><br>          Respondents and Defendants,<br><br>SABLE OFFSHORE CORP., et al.,<br><br>          Real Parties in Interest | Case No. 2:26-cv-05242<br><br>**RESPONDENTS AND DEFENDANTS' CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, ET AL.'S MOTION TO REMAND AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 18, 2026<br>Dept. TBD<br>Time: TBD<br>Judge: TBD<br>Action Filed: April 15, 2025<br>Action Removed: May 15, 2026<br>Trial Date: TBD |

**TO ALL PARTIES AND THEIR ATTORNEYS:**

**PLEASE TAKE NOTICE THAT** Plaintiff California Department of Forestry and Fire Protection's Office of State Fire Marshal, et al. ("OSFM") hereby will and does move to remand this case to the Santa Barbara County Superior Court. This Motion will be heard on a date and time to be set after this matter is assigned to a judge of the United States District Court, at the Western Division, 350 West 1st Street, Los Angeles, California 90012. This Motion is made pursuant to 28 U.S.C. § 1447. This Motion is supported by the Declaration of Michael S. Dorsi and attached exhibits, and other matters that the Court may consider, including prior filings in this case, other cases in this district, and other cases in the Ninth Circuit Court of Appeals.

Dated:  May 18, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

/s/ Michael S. Dorsi
MICHAEL DORSI
Deputy Attorney General
*Counsel for Plaintiffs California Department of Forestry and Fire Protection's Office of the State Fire Marshal, et al.*

# TABLE OF CONTENTS

**Page**

Introduction...................................................................................................................1

Background ...................................................................................................................1

    A.    The State Waivers....................................................................2

    B.    The State Court Preliminary Injunction ...................................2

    C.    Sable's Attempts to Circumvent the Preliminary
          Injunction ..................................................................................3

Legal Standards ............................................................................................................4

Argument ......................................................................................................................5

    I.    The Notice of Removal is an Improper Attempt to Obstruct
        State Court Proceedings ..........................................................5

    II.    The Time to Remove Lapsed No Later Than April 15, 2026...............5

        A.    Sable's Claim to Federal Officer Removal was
            Ascertainable from the Wright Order, Issued by the U.S.
            to Sable, on March 13, 2026......................................................5

        B.    Even Applying More Generous Constructions, the Latest
            Plausible Date Starting the Clock is March 16, 2026.................6

        C.    The April 17 Order Did Not Allow Sable to Ascertain
            Allegations; it Allowed Sable to Ascertain that the Santa
            Barbara Court Concluded that Sable's Arguments Lack
            Merit.........................................................................................7

    III.    The Removal Statute Does Not Contain an Unbounded
         Exemption to the 30-Day Rule .................................................8

    IV.    California's Sovereign Immunity Bars Federal Jurisdiction in
         this Case ...................................................................................10

Conclusion ..................................................................................................................11

# TABLE OF AUTHORITIES

**Page**

CASES

*Enbridge Energy, LP v. Nessel on behalf of Michigan*,
  146 S. Ct. 1074 (2026) ........................................................................... 1, 4, 8, 9

*Fristoe v. Reynolds Metals Co.*,
  615 F.2d 1209 (9th Cir. 1980) ................................................................. 4

*Kruse v. State of Hawaii*,
  68 F.3d 331 (9th Cir. 1995) ..................................................................... 11

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
  707 F.3d 1136 (9th Cir. 2013) ................................................................. 4

*Leiter Minerals, Inc. v. United States*,
  352 U.S. 220 (1957) ................................................................................. 11

*Loftin v. Rush*,
  767 F.2d 800, 805 (11th Cir. 1985) ......................................................... 9, 10

*Miami Herald Media Co. v. Fla. Dep't of Transportation*,
  345 F. Supp. 3d 1349 (N.D. Fla. 2018) .................................................... 9, 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ................................................................................... 10

*Printz v. United States*,
  521 U.S. 898 (1997) ................................................................................. 10

*State ex rel. Slatery v. Tennessee Valley Auth.*,
  311 F. Supp. 3d 896 (M.D. Tenn. 2018) .................................................. 9

*Zeigler v. Beers*,
  412 F. Supp. 2d 746 (N.D. Ohio 2005) .................................................... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

STATUTES

United States Code, Title 28
     § 1441(d)......................................................................................................8
     § 1442 ...........................................................................................................8
     § 1442(a)(1) ................................................................................................8
     § 1442a .........................................................................................................8
     § 1446(b)(1).................................................................................................1
     § 1446(b)(3)...................................................................................1, 4, 5, 7, 9
     § 1446(g)..................................................................................................9, 10

California Government Code
     § 51010.6 ....................................................................................................10
     § 51011 .......................................................................................................10

OTHER AUTHORITIES

Charles Alan Wright, Arthur R. Miller, et al.,
     14B Fed. Prac. & Proc. Juris. § 3726 (4th ed. 2018)............................................8

## INTRODUCTION

The federal removal statute provides that removal must take place within 30 days of the event authorizing removal, whether it is an initial pleading, 28 U.S.C. § 1446(b)(1), or a subsequent event in a case, 28 U.S.C. § 1446(b)(3). Here, to prevent a state court from holding a hearing to enforce its injunction, the U.S. and Sable filed this notice of removal 62 days after the Secretary of Energy issued the order that they claim confers federal jurisdiction under the federal officer removal statute. They did so only 7 days before the state court was to hold its hearing on the question of enforcing its injunction. Their motivation is clear: Sable and the U.S. timed the filing of their Notice of Removal to prevent the state court from holding its hearing. This Court should not indulge their efforts.

There is no relevant statutory exception to the 30-day requirement, and there is no equitable tolling of the removal deadline. *See Enbridge Energy, LP v. Nessel on behalf of Michigan*, 146 S. Ct. 1074, 1086 (2026). Additionally, California's sovereign immunity under the Eleventh Amendment bars federal jurisdiction in this case. The claims in this case are based on allegations of state law violations against a state agency. This Court should not indulge the U.S.' and Sable's bad faith attempt to prevent the regular operation of state courts and the enforcement of law, and should promptly remand this case to the Santa Barbara County Superior Court.

## BACKGROUND

The background of the underling disputes about Sable's pipeline, Lines CA-324/325, which operates in Santa Barbara, San Luis Obispo, and Kern Counties, is addressed in other briefs to this Court, the Santa Barbara County Superior Court, and the Ninth Circuit Court of Appeals. *See, e.g.*, Petitioner's Opening Brief, *California v. Pipeline and Hazardous Materials Safety Administration*, Case No. 26-508 (9th Cir.) ECF 23.1 at 15-30.[1] The dispute here concerns a preliminary

---

[1] In this Memorandum, all citations to pages in ECF filings refer to the blue page numbers at the top of the page, not the pagination at the bottom of the page.

injunction issued in Santa Barbara County Superior Court.

### A.    The State Waivers

The California Department of Forestry and Fire Protection's Office of the State Fire Marshal (OSFM) issued two State Waivers to Sable, giving Sable relief from federal pipeline safety regulations while imposing alternative safety conditions on the pipelines. The State Waivers were part of a two-stage approval—first OSFM issues waivers, which include requirements for certain remediation by Sable prior to restart of Lines CA-324/325, and second, a restart plan approval by OSFM.

After issuance of the state waivers but before completion of the requirements for restart, two plaintiff groups, led by Center for Biological Diversity and Environmental Defense Center (collectively CBD), sued OSFM in Santa Barbara County Superior Court. CBD alleged that OSFM failed to comply with law, notably the California Environmental Quality Act. As required under California procedure, CBD named Sable Offshore Corp and Pacific Pipeline Company (collectively Sable) as real parties in interest.

### B.    The State Court Preliminary Injunction

On May 19, 2025, Sable announced that it had restarted production at its offshore platforms (despite OSFM not having issued the required restart approval to ship such oil through pipelines—the crude oil accumulated in Sable's onshore storage tanks). On June 2, 2025, CBD sought a temporary restraining order, which the Superior Court granted the following day. The Court set briefing, and heard argument on whether to issue a preliminary injunction prohibiting use of Lines CA-324/325 until Sable came into compliance with restart requirements. on Friday, July 18, 2025. OSFM and Sable opposed on various grounds, including that the issue of a preliminary injunction was not ripe because Sable was still required to obtain restart plan approval from OSFM. The Superior Court issued and adopted a tentative ruling, proposing to enjoin Sable from restarting Lines CA-324/325 until it

2

obtained all required permits and gave 10 days' prior notice to all parties and the Court, in order to allow any party an opportunity to contest prior to the actual restart. Sable viewed this as a favorable outcome, and did not present argument against the tentative ruling at the hearing. The Court adopted its tentative ruling and entered the preliminary injunction order on July 29, 2025.

### C.   Sable's Attempts to Circumvent the Preliminary Injunction

As explained in other cases, Sable refused to complete repairs required by OSFM and sought federal intervention in an effort to displace OSFM. *See,* Petitioner's Opening Brief, *California v. Pipeline and Hazardous Materials Safety Administration*, Case No. 26-508 (9th Cir.) ECF 23.1 at 26-27. First, Sable sought orders from the federal Pipeline and Hazardous Material Safety Administration (PHMSA), which issued favorable orders for Sable on December 17, 22, and 23, 2025. Sable moved for the Santa Barbara County Superior Court to lift its preliminary injunction based on those orders. The Superior Court heard argument on that motion on February 27, 2026, and denied Sable's motion.

Sable next sought and obtained an order under the Defense Production Act (DPA), issued by the U.S. Secretary of Energy on Friday, March 13, 2026 (the Wright Order, ECF 1-1). After receipt of the Wright Order, Sable promptly restarted Lines CA-324/325 in open defiance of the Superior Court injunction. Shortly thereafter on March 19, 2026, Sable removed the case of *California Department of Parks and Recreation v. Sable Offshore Corp, et al.* from the Santa Barbara County Superior Court to this District Court on the basis of federal officer jurisdiction. 2:26-cv-02946 (C.D. Cal.) ECF 1. But Sable did not, at that time, remove this case, *Center for Biological Diversity v. CAL FIRE*, from the Superior Court. Instead, Sable sought relief in the Superior Court. On Monday, March 16, 2026, Sable again made a motion to lift the preliminary injunction before the Superior Court. The same day—Monday, March 16, 2026—CBD moved to enforce the injunction, seeking both an order compelling compliance and an order to show

cause for contempt for Sable's already-commenced violations of the injunction. The following day, the Santa Barbara County Superior Court declined to grant emergency relief to either moving party, instead setting a briefing schedule, setting the hearing 32 days later, on April 17, 2026.

Sable, like all other parties, continued to litigate this case in the Superior Court. CBD, Sable, and OSFM filed responding briefs on April 1, and CBD and Sable filed reply briefs on April 8. On April 17, 2026, the Superior Court heard argument and then denied Sable's second motion for reconsideration, and continued CBD's motion to enforce the injunction to May 22, 2026. At the hearing, Sable asked the Superior Court to continue the May 22 hearing to June 26, 2026. The Superior Court heard argument on this point and denied the request. Dorsi Decl., Exh. 2 at 30:17-21, 37:7-38:1 (transcript of April 17 hearing).

On Friday, May 15, 2026, the U.S. and Sable filed their Notice of Removal.

## LEGAL STANDARDS

"[A] party sued in state court who prefers to proceed in federal court generally has 30 days after receiving notice of the state-court action to remove the lawsuit to federal court (if there are grounds for doing so)." *Enbridge Energy, LP v. Nessel on behalf of Michigan*, 146 S. Ct. 1074, 1079 (2026). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

When a party removes after 30 days and no relevant exception applies, the remedy is remand. The removal statute's "time limit is mandatory such that a timely objection to a late petition will defeat removal." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 n.4 (9th Cir. 2013) (cleaned up) (citing *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980)).

4

## ARGUMENT

### I. THE NOTICE OF REMOVAL IS AN IMPROPER ATTEMPT TO OBSTRUCT STATE COURT PROCEEDINGS

The U.S. and Sable engaged in an untimely removal to prevent a state court from enforcing its lawfully-issued order. When issuing that order, the Superior Court considered and rejected an argument to delay the hearing. Dorsi Decl., Exh. 2 at 37:7-38:1 (transcript of hearing). Sable could continue to challenge enforcement in state court, or appeal to the California Court of Appeal. They also could have sought removal within 30 days. Instead, they tested the state court with two motions for reconsideration, twice found out that the state court thought their arguments were unpersuasive, and then further waited until shortly before the upcoming state court hearing to file a notice of removal. Because that notice is self-executing, the U.S. and Sable have the opportunity to obstruct the state court proceeding without *any* court finding that they acted lawfully.

The U.S. and Sable understand that removal more than 30 days after the triggering event—the issuance of the Wright Order 62 days ago—is suspect. They offer two defenses: that actually the date to remove runs from when Sable's motion in the Superior Court failed, and that the U.S. actually has no deadline for removal at all. Both arguments strain credulity. This Court should put an end to their gamesmanship by remanding this case to the Santa Barbara County Superior Court.

### II. THE TIME TO REMOVE LAPSED NO LATER THAN APRIL 15, 2026

#### A. Sable's Claim to Federal Officer Removal was Ascertainable from the Wright Order, Issued by the U.S. to Sable, on March 13, 2026

When the basis for removal arises after filing of an initial pleading, the time to remove runs from the date of receipt "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it *may first be ascertained that the case is one which is or has become removable*." 28 U.S.C. § 1446(b)(3) (emphasis added). Sable claims that, during this litigation, it became a

"person acting under" the direction of a federal officer. Under Sable's theory, that occurred on March 13, 2026, when the Secretary of Energy issued the Wright Order. Accordingly, the "order or other paper" under the removal statute from which the allegation of federal officer jurisdiction can be ascertained issued on March 13, 2026. And because the U.S. transmitted the Wright Order to Sable on March 13, both the U.S. and Sable "otherwise" received the Wright Order on that day. Accordingly, had the Notice of Removal been filed by April 12, 2026, and Sable's underlying federal officer removal theory was valid, it would have been timely. But Sable and the U.S. missed that date by more than a month.

Sable agreed with this timing calculation in the prior case that was removed to this District. According to Sable's Notice of Removal in the State Parks case, actions against Sable became removable under the federal officer statute on March 13, 2026, because, on that date, Sable became subject to the Wright Order. *See* Notice of Removal, *California Department of Parks and Recreation v. Sable Offshore Corp, et al.*, Case No. 2:26-cv-2946 (C.D. Cal.) ECF 1 at 3:3-14. In that case, State Parks filed its Complaint on March 17, 2026—two days after issuance of the Wright Order—and Sable removed two days after that, on March 19, 2026.

**B.    Even Applying More Generous Constructions, the Latest Plausible Date Starting the Clock is March 16, 2026**

Having already moved for relief from the preliminary injunction in January 2026, Sable knew that the preliminary injunction was against or directed at its restart of Lines CA-324/325, and that the Superior Court considered the Consent Decree as relevant to its decisionmaking (as Sable had argued in its briefs opposing the preliminary injunction in July 2025). Sable learned nothing after March 13 except that CBD was serious about enforcing the preliminary injunction and that the Superior Court found Sable's arguments unpersuasive.

The U.S., of course, was aware of its own order on the date it invoked the DPA to issue the Wright Order. Admittedly, OSFM cannot disprove the possibility

that Sable concealed the existence of the preliminary injunction from the U.S. until after issuance of the Wright Order.[2] But on Monday, March 16, 2026, OSFM filed a copy of the preliminary injunction as a supporting document in *United States, et al. v. Plains, et al.* (the Consent Decree case), causing the document to be served on the U.S. Thirty days after March 16 is April 15—also long since passed.

Also on Monday, March 16, 2026, CBD filed its motion seeking to enforce the preliminary injunction against Sable. *See* Dorsi Decl., Exh. 1. CBD did not hide the ball about what they were seeking; they asked the Superior Court for "an order directing Sable . . . to immediately shut off and cease operation of pipelines CA-324 and CA-325 (the 'Pipelines'), which is necessary to enforce the Court's July 29, 2025 Orders re: Preliminary Injunction (the 'PI Orders') and uphold the integrity of the judicial process." *Id.* at 2:7-11. The service of that motion, on Sable as the purported contempt defendant, is the last remotely plausible time that Sable and the U.S. could have "*first* [] ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

**C.    The April 17 Order Did Not Allow Sable to Ascertain Allegations; it Allowed Sable to Ascertain that the Santa Barbara Court Concluded that Sable's Arguments Lack Merit**

The April 17 Order from the Superior Court does not add any new allegation or claim for relief against Sable. The Superior Court originally planned to hear CBD's motion directed against Sable on April 17, alongside Sable's motion for relief. The only action that the Superior Court took on CBD's enforcement motion was to reset it to May 22. As a practical matter, this gave Sable another chance to come into compliance with the preliminary injunction before the hearing. Instead, Sable remained in violation and then removed.

It is plain to see what happened: Sable did not know which forum was more favorable. Sable attempted to have the preliminary injunction lifted in the Santa

---

[2] We do know that Sable affirmatively sought the issuance of the Wright Order. *See* OLC Opinion at *2. If Sable did so without disclosing the preliminary injunction to the U.S., that would be surprising.

7

Barabara County Superior Court. That court rejected Sable's arguments on the merits. So now Sable, and its allies in the federal government, want to try again *with the same arguments* in front of a different judge. This Court should not give weight to Sable's interest in untimely forum shopping.

## III. THE REMOVAL STATUTE DOES NOT CONTAIN AN UNBOUNDED EXEMPTION TO THE 30-DAY RULE

The U.S. and Sable also assert that there is no time limit for them to remove the Superior Court case. ECF 1 at 4:24-27, 14:19-21. Their theory is that 28 U.S.C. section 1442(a)(1) does not contain a time limit for removal, and that the U.S. is not a defendant, so the timing provisions in 28 U.S.C. section 1446 do not apply. No court has ever adopted this theory as grounds to deny remand. And their position is contrary to the text, structure, and purpose of the removal statutes. The U.S. must follow the same 30-day rule as every other litigant.

The Supreme Court recently explained the operation of the time limits for removal in *Enbridge Energy, LP v. Nessel on behalf of Michigan*, 146 S. Ct. 1074 (2026). The removal statutes are a set of related provisions, where certain provisions authorize removal, and except for explicit exceptions, 28 U.S.C. section 1446 provides the relevant procedures. *Id.* at 1079–80. Congress knew how to write exceptions to the default rules in Section 1446. For example, Section 1441(d) provides that the time for removal of actions against foreign states may be enlarged for good cause shown. Congress also knew how to create exceptions for the U.S. as a litigant. *See, e.g.*, 28 U.S.C. § 1442a (authorizing removal by members of the armed forces, for certain cases, "any time before the trial or final hearing"). But there is no written exception to the 30-day rule for removal of actions by the U.S., regardless of whether it is a defendant or a non-party.

The generally accepted rule is that "[t]he procedure for removal by a federal officer under Sections 1442 and 1442a generally is governed by Section 1446." Charles Alan Wright, Arthur R. Miller, et al., 14B Fed. Prac. & Proc. Juris. § 3726

(4th ed. 2018). This is consistent with appellate precedent. In *Loftin v. Rush*, the Eleventh Circuit held that the 30-day limit in Section 1446(b)(3) applied to the Navy's removal of a proceeding to collect child support by garnishing a Navy employee's wages.[3] 767 F.2d 800, 805 (11th Cir. 1985), *abrogated in part by Enbridge Energy, LP v. Nessel on behalf of Michigan*, 146 S. Ct. 1074 (2026). District courts routinely apply the 30-day limit against the U.S. *See, e.g.*, *Zeigler v. Beers*, 412 F. Supp. 2d 746, 750 (N.D. Ohio 2005), *State ex rel. Slatery v. Tennessee Valley Auth.*, 311 F. Supp. 3d 896, 902 (M.D. Tenn. 2018).

Perhaps the most common types of cases where a state court action is "against or directed to" the U.S., but not naming the U.S. as a defendant, are "order[s] for testimony or documents," *e.g.*, enforcement of subpoenas. Those cases are governed by 28 U.S.C. § 1446(g), holding to a 30-day rule. It would be incongruous to include such specific exceptions and nuances, but by omission, allow the U.S., when not a party in an ordinary case to be allowed to delay *forever* before removing a case to federal court.

The core of the U.S.' rationale, explained in its notice of removal, is that the U.S. is not a defendant, that 28 U.S.C. § 1446(b)(3) applies only to defendants, and therefore Section 1446(b)(3) does not apply to the U.S. in this case. This hyper-technical reading of Section 1446(b)(3) should not defeat the purpose of the statute: to set a 30-day default rule. But even this argument fails based on a careful reading of 28 U.S.C. § 1446(b)(3). That statute does not say *when a defendant may remove*, it says when "a notice of removal may be filed." *Id*. The passive voice appears designed to avoid exactly the kind of evasion attempted here by the U.S.

The Notice of Removal quotes *Miami Herald Media Co. v. Fla. Dep't of*

---

[3] After acknowledging that the 30-day rule applied, the Eleventh Circuit concluded that it had the discretion to retain the case on equitable grounds. That option is now foreclosed by the Supreme Court's decision in *Enbridge*, which identified *Loftin* as abrogated on the question of equitable tolling. *Enbridge*, 146 S. Ct. at 1081 (identifying *Loftin* as part of the circuit split, on the side finding equitable tolling), 1086 (rejecting equitable tolling).

*Transportation*, 345 F. Supp. 3d 1349, 1366 (N.D. Fla. 2018) for the proposition that "Section 1446(b) does not address removal by a non-party to the case." There are several problems with this assertion. First, the relevant statement in *Miami Herald* is entirely dicta, addressing a different removal provision—Section 1446(b)—than the provision that controlled—Section 1446(g). Second, the issue was not briefed. In *Miami Herald*, the U.S. was a party and it did not make the argument for which it now cites *Miami Herald*. *Miami Herald Media Co. v. Fla. Dep't of Transportation*, Case No. 4:18-cv-00392 (N.D. Fla.), ECF 12. Third, *Miami Herald* claims to be following *Loftin v. Rush*, as it was bound to do as a district court within the Eleventh Circuit. But the quoted dicta is contrary to *Loftin v. Rush*, which said that the 30-day deadline applied to removal by the U.S. as a non-party. *Loftin v. Rush*, 767 F.2d 800, 805 (11th Cir. 1985).

There is no unstated exception to the rules for the U.S. If there were, the U.S. could remove any civil case in which it had an interest as late as during jury deliberations. No law supports this conclusion, and this Court should reject it.

## IV. CALIFORNIA'S SOVEREIGN IMMUNITY BARS FEDERAL JURISDICTION IN THIS CASE

The Eleventh Amendment immunizes a state against a federal court resolving whether a state failed to comply with state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). The allegations in this case are that California failed to comply with the California Environmental Quality Act (CEQA) and the rules to provide reasons for decisions under the California Elder Pipeline Safety Act.[4] Simplified, CBD alleges that a California agency did not obey California law. That is not an issue that a federal court may lawfully review. California asserts its sovereign immunity and deprives this Court of jurisdiction. *Id.* (["I]t is difficult to

---

[4] CBD's Complaint articulates part of the allegations that OSFM did not comply with certain procedures in federal law. Those procedures apply only because they have been adopted by California into state law. Cal. Gov't Code §§ 51010.6, 51011. The federal government cannot constitutionally impose procedural requirements on a state agency. *Printz v. United States*, 521 U.S. 898, 935 (1997).

think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

Where a federal court lacks jurisdiction over claims due to sovereign immunity but the matter can be litigated in state court, the correct remedy is to remand those claims to state court. *Kruse v. State of Hawaii*, 68 F.3d 331, 335 (9th Cir. 1995). Here, all of the claims in the Complaints should be remanded.

OSFM expects that the U.S. will complain that, in fact, relief is sought against Sable, which is acting on a command by the U.S. Maybe so. But that does not confer jurisdiction over claims in the Complaints, and that is what must be evaluated. This does not leave the U.S. without a remedy, but any other remedy would require the U.S. to make an affirmative showing that it needs relief. *See, e.g.*, *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957).

## CONCLUSION

The U.S. and Sable's Notice of Removal is a transparent, last-minute attempt to interfere with a state court enforcing its own injunction. The U.S. and Sable, for transparent tactical reasons, waited until the 30-day period for removal lapsed. There is no relevant exception they can invoke. This Court should remand the case to the Santa Barbara County Superior Court.

Dated:  May 18, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

*/s/ Michael S. Dorsi*
MICHAEL DORSI
Deputy Attorney General
*Counsel for Plaintiffs California Department of Forestry and Fire Protection's Office of the State Fire Marshal, et al.*

11

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for California Department of Forestry and Fire Protection's Office of the State Fire Marshal, certifies that this brief contains 3,769 words, which complies with the word limit of L.R. 11-6.1.


Dated:  May 18, 2026                          Respectfully submitted,

                                              ROB BONTA
                                              Attorney General of California
                                              MYUNG J. PARK
                                              Supervising Deputy Attorney General

                                              */s/ Michael S. Dorsi*
                                              MICHAEL DORSI
                                              Deputy Attorney General
                                              *Counsel for Plaintiffs California
                                              Department of Forestry and Fire
                                              Protection's Office of the State Fire
                                              Marshal, et al.*