ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
BRADLEY CRAIGMYLE
JUSTIN D. HEMINGER
Assistant Deputy Attorneys General
RILEY WALTERS
Counsel
Environment and Natural Resources Division
STEFAN J. BACHMAN (DC Bar Number 90008649)
Email: stefan.bachman@usdoj.gov
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
150 M Street, N.E., Room 2.900
Washington, D.C. 20002
Tel: (202) 598-9566
*Counsel for United States of America*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10; inclusive, <br><br> Respondents/Defendants. <br><br>―――――――――――――― <br><br> SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware | Case No. 2:26-cv-05242 <br><br><br> **SPECIAL APPEARING PARTY UNITED STATES' OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR REMAND** |

Corporation, and DOES 11 through 20, inclusive,

Real Parties in Interest.

_____

ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation; GET OIL OUT!, a California non-profit corporation; SANTA BARBARA COUNTY ACTION NETWORK, a California non-profit corporation; SIERRA CLUB, a national non-profit corporation; and SANTA BARBARA CHANNELKEEPER, a California non-profit corporation,

Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, an agency of the State of California; OFFICE OF THE STATE FIRE MARSHAL, an agency of the State of California; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 to 10; inclusive,

Respondents/Defendants.

_____

SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,

Real Parties in Interest.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND ............................................................................2

    a.  The Federal Consent Decree, the DPA Order, and Related Cases .......2

    b.  Plaintiffs' Claims and Procedural History of this Case .......................5

III. LEGAL BACKGROUND.................................................................................7

    a.  Removal Under § 1442 is Liberally Construed ..................................7

    b.  Plaintiffs Cite the Wrong Standard .......................................................7

IV. ARGUMENT ....................................................................................................8

    A.  Ex Parte Relief is Unwarranted..........................................................8

        i.    Ex parte relief is highly disfavored .........................................9

        ii.   Denying Plaintiffs' ex parte motion would not cause "irreparable prejudice"...........................................................10

        iii.  Plaintiffs omit key facts—Sable has made significant upgrades to the segments. There is no risk of environmental harm...............................................................10

    B.  The United States May Remove Even Though It is Not a Defendant....11

    C.  Section 1446's Time Limits Do Not Apply to the United States ...........12

    D.  The Removal Notice was Timely in Any Event ...................................13

V. CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Arredondo v. Univ. of La Verne*, 618 F. Supp.3d 937 (C.D. Cal. 2022) ..................8

*Bell v. U.S. Soc. Sec. Admin.*, No. 3:26-CV-929,
    2026 WL 659169 (N.D. Fla. Feb. 27, 2026) ......................................................9

*California v. Salas*, No. 24-MC-80105,
    2024 WL 3757492 (N.D. Cal. Aug. 12, 2024)................................................13

*Cal. Dep't of Parks & Recreation v. Sable Offshore Corp et al*,
    No. 2:26-CV-02946 (C.D. Cal. Mar. 19, 2026)................................................4

*Chevron USA Inc. v. Plaquemines Par.*, 146 S. Ct. 1052 (2026)........................6, 11

*City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022) ...................7

*Dietrich v. Boeing Co.*, 14 F.4th 1089 (9th Cir. 2021)............................................14

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) ...............6, 7, 13

*Enbridge Energy, LP v. Nessel on behalf of Mich.*,
    146 S. Ct. 1074 (2026) ..................................................................................12

*Hansen v. Grp. Health Coop.*, 902 F.3d 1051 (9th Cir. 2018)................................7

*In re Commonwealth's Motion to Appoint Counsel*,
    790 F.3d 457 (3d Cir. 2015).............................................................................6

*In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989).......................8

*Land v. Dollar*, 330 U.S. 731 (1947) ......................................................................7

*Loftin v. Rush*, 767 F.2d 800 (11th Cir. 1985).................................................12, 13

*Miami Herald Media Co. v. Fla. Dep't of Transp.*,
    345 F. Supp. 3d 1349 (N.D. Fla. 2018) ..........................................................13

*Mission Power Eng'g Co. v. Continental Cas Co.*,
    883 F. Supp. 488, 490 (C.D. Cal. 1995) ...........................................................8

*Montes v. U.S. Nat'l Bank Assoc.*, No. 10-CV-0022,
    2010 WL 11597574 (C.D. Cal. Jan. 12, 2010)..................................................9

*Nationwide Invs. v. Miller*, 793 F.2d 1044 (9th Cir. 1986) ...............................7, 11

*Saldana v. Bronitsky*, 122 F.4th 333 (9th Cir. 2024)..........................................12

*Sheffield v. Fay Servicing, LLC*, No. 2:21-CV-09412,
  2021 WL 6499933 (C.D. Cal. Dec. 6, 2021) ......................................................9

*State of Cal. v. Chris Wright et al.*,
  No. 2:26-CV-02946 (C.D. Cal. Mar. 19, 2026)..................................................5

*State of Cal. v. PHMSA et al.*, No. 25-508 (9th Cir. Jan. 23, 2026).........................4

*United States & People of the State of Cal. et al. v.*
  *Plains All Am. Pipeline, L.P. & Plains Pipeline, L.P.*, 2:20-CV-02415
  (C.D. Cal. Mar. 13, 2020) ...................................................2, 3, 4, 5, 10

*Willingham v. Morgan*, 395 U.S. 402 (1969) ...........................................................7

*Zalvin v. Carrel*, No. 8:24-CV-00482,
  2024 WL 1121790, at *3 (C.D. Cal. Mar. 14, 2024) .....................................9

**STATUTES**

28 U.S.C. § 1441...........................................................................................................7

28 U.S.C. § 1442...................................................................................................6, 7, 14

28 U.S.C. § 1442(a)(1).............................................................1, 4, 6, 7, 11, 12, 13

28 U.S.C. § 1446..................................................................................................12, 13

28 U.S.C. § 1446(b)..............................................................................................12, 13

28 U.S.C. § 1446(b)(3) ...............................................................................1, 6, 13, 14

28 U.S.C. § 1446(g)........................................................................................................13

49 U.S.C. § 60112(a) ...................................................................................................10

49 U.S.C. § 60112(e) ...................................................................................................10

49 U.S.C. § 60121...........................................................................................................10

50 U.S.C. § 4513............................................................................................................4

**REGULATIONS**

49 C.F.R. § 195.304........................................................................................................10

49 C.F.R. § 195.452(j)(3) ...........................................................................................10

49 C.F.R. § 195.452(h)(4)(i).....................................................................................10

**RULES**

Fed. R. Civ. P. 12(b)(7) ...............................................................................................2

## I.      INTRODUCTION

This case concerns an oil pipeline owned and operated by Sable that is already the subject of multiple actions pending before this Court. Intervening events—and the state court's own actions—have fundamentally altered the nature of this suit such that it now properly belongs in federal court.

As currently postured, this case is entirely about the relationship between a federal consent decree and a federal order issued under the Defense Production Act ("DPA Order") and a state court order issued on April 17, 2026 ("the April Order"), that interferes with the DPA Order and federal interests. After the state court issued the April Order, it became unequivocally clear and certain that the case was now directed to the United States, and the United States promptly removed it to this Court. Plaintiffs' ex parte motion to remand to state court, Dkt. No. 45, establishes no basis for remand—much less remand on a highly prejudicial ex parte schedule.

Plaintiffs' arguments disregard the facts. Sable has relinquished waivers issued by California agencies and officials underlying Plaintiffs' state law bases for filing this action in the first place. And this Court already has before it multiple cases involving overlapping federal questions about the same pipeline, including (1) California's case against the U.S. Department of Energy seeking direct review of the DPA Order, and (2) a civil enforcement case involving the very federal consent decree that Plaintiffs want the state court to "enforce" over the DPA Order.

The United States has a material interest in ensuring that both the DPA Order and the federal consent decree are appropriately implemented, and that in the event of a conflict, the DPA Order governs Sable's operations. This ensures that the interests and core national defense and security needs of the United States related to oil production and delivery are met. This suit seeks to frustrate those ends by using a state-court injunction to render the federal consent decree controlling and to nullify the DPA Order. Impeding the DPA Order in this way operates as a collateral attack on the DPA Order, even though Plaintiffs have neither named the

United States or any federal agency or official as defendants or identified any waiver of the United States' sovereign immunity to allow for such challenge. Under the broad judicial  construction of the federal officer removal statute, this suit is thus now properly considered "directed to" the United States,[1] and was properly removed under 28 U.S.C. §§ 1442(a)(1), 1446(b)(3).

## II.    FACTUAL BACKGROUND

This consolidated case concerns a civil challenge Plaintiffs brought against certain California agencies and officials, challenging California's issuance of waivers to Sable. The waivers are one step in a lengthy process Sable has taken under the federal consent decree to resume transporting crude oil through segments CA-324 and CA-325 of the Santa Ynez Pipeline System ("the segments").

### A.    The Federal Consent Decree, the DPA Order, and Related Cases

In March 2020, the United States and California filed a complaint in this Court against the segments' then-owners, Plains All American Pipeline, L.P. and Plains Pipeline, L.P. (together, "Plains"), arising out of a 2015 release of oil from segment CA-324. Complaint, *United States & People of the State of Cal. et al.* v. *Plains All Am. Pipeline, L.P. & Plains Pipeline, L.P.*, 2:20-cv-02415 (C.D. Cal. Mar. 13, 2020) ("*Plains*"), Dkt. No. 1. With the complaint, the United States and California (and related California agencies) lodged the federal consent decree, proposing to resolve the alleged violations. *Id.* at Dkt. No. 6-1. The Court entered

---

[1] The April Order, which threatens sanctions on Sable for noncompliance, Dkt. No 1-5 at 16–17, operates to collaterally attack and interfere with the implementation of the DPA Order, even though Plaintiffs have not brought claims against the United States or identified any waiver of United States' sovereign immunity to do so. The United States' material interests in proper implementation of the DPA Order and the 2020 federal consent decree renders it a required party, *see* Fed. R. Civ. P. 19(a)(1)(B), that cannot be joined due to the absence of any waiver of its sovereign immunity, Fed. R. Civ. P. 19(b). Thus, as the United States expects it will argue in a forthcoming filing, this case must be dismissed under Fed. R. Civ. P. 12(b)(7).

the consent decree in October 2020. *Id.* at Dkt. No. 33.

At the time of the complaint and entry of the decree, the segments were classified as *intrastate*. *Plains*, Dkt. No. 1 ¶¶ 8–9. Consistent with that classification, the decree required Plains to obtain waivers from California and approval of a restart plan before resuming transportation of oil through the segments. *Id.*, Dkt. No. 6-1, Appx. B ¶ 1.A, B & Appx. D ¶ 1.a, b, e, f, j.

In February 2024, Sable Offshore Corp. acquired an interest in the segments. *Id.*, Dkt. No. 49-2, Ex. 5. That transaction brought the segments under common ownership with other assets operated as a single interstate pipeline system, the Santa Ynez Pipeline System (SYPS). *Id.* 5. Since Sable's acquisition of the segments, intervening developments have materially altered the course of the segments' operations and the obligations imposed by the federal consent decree, resulting in substantial litigation in this Court:

- On December 17, 2024, California issued waivers to Sable. *Id.*, Dkt. No. 49-2, Ex. 3.

- On September 11, 2025, Sable submitted a restart plan for the segments to California, which to date California has neither approved nor disapproved. *See id.*

- On December 17, 2025, the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") reclassified the SYPS, including the segments, as interstate and assumed sole and exclusive jurisdiction over the SYPS pursuant to the Pipeline Safety Act. *Id.* at Ex. 5. Five days later, PHMSA approved a restart plan for the segments, and the next day PHMSA issued Sable an emergency special permit. *Id.* at Exs. 6, 7.

- On January 14, 2026, Plains and Sable each submitted written requests to the United States and California to terminate the consent decree. The United States determined that the consent decree's termination standard has been met and stipulated to termination. *Id.* at Dkt. No. 49, PageID

3

1381. California has refused to stipulate to termination. *Id.* at Dkt. No. 55.

- On January 23, 2026, California petitioned the Ninth Circuit to review PHMSA's reclassification of the segments as interstate, approval of the restart plan, and issuance of the emergency special permit. Petition for Review, *State of Cal. v. PHMSA et al.*, No. 25-508 (9th Cir. Jan. 23, 2026), Dkt. No. 1.

- On March 13, 2026, the Secretary of Energy determined that transporting crude oil through the SYPS, including the segments, is essential to core national defense and security needs, which are threatened by energy shortages and reliance on foreign oil. The Secretary, acting pursuant to delegated Presidential authority, issued the DPA Order, *see* Dkt. No. 1-1, directing Sable to immediately prioritize transportation of hydrocarbons through the SYPS. *Id.* at 4. Soon after, Sable safely resumed transporting oil through the SYPS, including the segments, with PHMSA pipeline safety inspectors onsite supervising the process. *Plains*, Dkt. No. 49-3 ¶¶ 14–33. Sable must comply with the DPA Order, *see* 50 U.S.C. § 4513 (criminal penalties for failure to comply), and therefore the DPA Order requires Sable to act under the direction of the Secretary of Energy. *See* 28 U.S.C. § 1442(a)(1).

- On March 17, 2026, the California Department of Parks and Recreation filed a trespass action against Sable in Santa Barbara County Superior Court related to a portion of the segments that crosses state land in Gaviota State Park. Sable removed that action to this Court on March 19, 2026, citing the DPA Order and 28 U.S.C. § 1442(a)(1). Notice of Removal, *Cal. Dep't of Parks & Recreation v. Sable Offshore Corp et al.*, 2:26-cv-02946 (C.D. Cal. Mar. 19, 2026), Dkt. No. 1.

- On March 30, 2026, the United States filed a motion to terminate or

4

modify the federal consent decree. *Plains*, Dkt. No. 49. The motion asks this Court to terminate the consent decree because the termination standard has been met. *Id.* at PageID 1384–85. Alternatively, the motion asks this Court to modify the decree to substitute PHMSA as the regulator for the segments, reflecting significant changes in fact and law that have occurred since entry. *Id.* at PageID 1389–96. That motion is pending with the Court.

- On March 31, 2026, California filed a complaint in this Court against the Secretary of Energy challenging the DPA Order. Complaint, *State of Cal. v. Chris Wright et al.*, No. 2:26-cv-03396 (C.D. Cal. Mar. 30, 2026), Dkt. No 1.

- On April 13, 2026, California filed a motion in this Court to enforce the federal consent decree against the United States and Sable. *Plains*, Dkt. No. 55. That motion is pending with the Court.

**B.     Plaintiffs' Claims and Procedural History of this Case**

On April 15, 2025, Plaintiffs filed complaints against the California Department of Forestry and Fire Protection, Office of the State Fire Marshal, and State Fire Marshal Daniel Berlant, in his official capacity ("OSFM"), challenging OSFM's issuance of the state waivers. Plaintiffs' suit contends, *inter alia*, that OSFM failed to comply with state and federal laws when issuing the waivers to Sable. *See* Dkt. Nos. 1-2; 1-3.

In July 2025, the state court issued a preliminary injunction preventing Sable from resuming transportation of oil through the segments until Sable complies with all provisions of the federal consent decree. *See* Dkt. No. 1-4. Since then, Sable has twice asked the state court to dissolve the injunction: first after PHMSA reclassified the segments to interstate and again after the Secretary issued the DPA Order. The state court denied both requests.

The state court's second order, issued on April 17, 2026 (the April Order), is

5

most relevant here. That Order found that no conflict existed between the federal consent decree and the preliminary injunction, which, in the state court's view, rendered Sable's obligations under the DPA Order secondary to those set forth in the decree. *See* Dkt. No. 1-5. The state court also set a hearing for May 22, 2026, to address whether Sable should be found in contempt for obeying the DPA Order as opposed to the federal consent decree.

On May 14, 2026, Sable and the United States jointly notified the parties and the Court that the case was removed pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446(b)(3). Dkt. No. 1. On May 18, 2026, Plaintiffs filed their *Ex Parte Application* seeking to remand the case to state court. Dkt. No. 45. That same day, California separately moved to remand the case to state court. Dkt. No. 46.[2,3]

---

[2] California's filing violated the local rules of this Court because California did not wait the required seven days after such a conference of counsel before filing its motion. L.R. 7-3. This violation provides the Court with grounds to strike California's motion. *Mirtaheri v. Sprouts Farmers Mkt.*, 2020 WL 4883819, at \*2 (C.D. Cal. Aug. 20, 2020) (denying plaintiff's motion for remand following removal to federal court because plaintiff failed to comply with Local Rule 7-3 before filing the motion); *Gamarra v. ADT, LLC*, 2021 WL 223250, at \*2 (C.D. Cal. Jan. 21, 2021) (same); *Singer v. Live Nation Worldwide, Inc.*, 2012 WL 123146, at \*2 (C.D. Cal. Jan. 13, 2012) (denying motion due to the movant's failure to abide by Local Rule 7-3). If the Court does not strike California's motion, the United States will respond to California's Motion by the time permitted under the Local Rules.

[3] California is wrong in arguing in its motion that sovereign immunity bars this Court from hearing this case. *See* Dkt. No. 46 Page ID 19099. California does not have sovereign immunity as to the United States because, as the Supreme Court has long and repeatedly explained, "States have no sovereign immunity as against the Federal Government." *West Virginia v. United States*, 479 U.S. 305, 311 (citing *United States v. Texas,* 143 U.S. 621, 646 (1892)).

## III.   LEGAL BACKGROUND

### A.   Removal under § 1442 is liberally construed.

As the United States described in the Joint Notice of Removal, Dkt. No. 1 ¶ 13, the federal officer removal statute at 28 U.S.C. § 1442(a)(1) is "broadly construed in favor of a federal forum." *In re Commonwealth's Motion to Appoint Counsel*, 790 F.3d 457, 466–67 (3d Cir. 2015); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). The Supreme Court recently confirmed this rule of construction, when it construed Section 1442(a)(1)'s phrase "relating to" in favor of removing state court lawsuits against energy companies for crude oil production during World War II. *Chevron USA Inc. v. Plaquemines Parish, La.*, 146 S. Ct. 1052, 1060–62 (2026). This Court's inquiry is whether the United States is "threatened," one way or another, "with the state's coercive power." *Nationwide Invs. v. Miller*, 793 F.2d 1044, 1046 (9th Cir. 1986). And where, as here, "the essential nature and effect of the proceeding" is to "interfere with the public administration," then the suit is against the sovereign for purposes of the federal officer removal statute. *Land v. Dollar*, 330 U.S. 731, 738 (1947) (internal quotations omitted).

### B.   Plaintiffs cite the wrong standard.

Plaintiffs assert, incorrectly, that the Ninth Circuit construes the federal officer removal statute narrowly. *See* Dkt. No. 45 at 19 (Plaintiffs claim that "[w]hen considering removal claims, the Ninth Circuit exercises 'prudence and restraint' and 'strictly construes the removal statute against removal jurisdiction.'" (citing *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1106 (9th Cir. 2022) (quoting *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056-57 (9th Cir. 2018))). But Plaintiffs fail to recognize that the underlying source of their assertion, *Hansen v. Grp. Health Coop.*, was describing the standard for a court interpreting and applying the *general removal statute* at § 1441, not the *federal officer removal statute* at § 1442.

7

Contrary to Plaintiffs' claims, the Supreme Court has long made clear that the federal officer removal statute is not "narrow" or "limited" and its purpose "should not be frustrated by a narrow, grudging interpretation." *Willingham v. Morgan*, 395 U.S. 402, 406-7 (1969). The Ninth Circuit has held the same, insisting that courts should construe § 1442 broadly. *Durham*, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal."). Accordingly, the Court should interpret § 1442(a)(1) in favor of granting the United States a federal forum in this case.

## IV.    ARGUMENT

### A.    Ex Parte Relief is Unwarranted.

#### 1.  Ex parte relief is highly disfavored.

Ex parte motions are "inherently unfair" and "pose a threat to the administration of justice" because "the parties' opportunities to prepare are grossly unbalanced." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). For this reason, an ex parte application is "solely for extraordinary relief and [is] rarely justified." *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937 943 (C.D. Cal. 2022) (citing *Mission Power Eng'*., 883 F. Supp.at 490). As the court in *Intermagnetics* stated:

> [E]x parte applications contravene the structure and spirit of the Federal Rules of Civil Procedure and the Local Rules of this court. Both contemplate that noticed motions should be the rule and not the exception. Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing

8

counsel who are required to make a hurried response under pressure, usually for no good reason. They demand priority consideration, where such consideration is seldom deserved. In effect, they put the applicant 'ahead of the pack,' without cause or justification.

*In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) (footnote omitted).

For the Court to grant ex parte relief, "a moving party must present evidence to show that the moving party's cause will be 'irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures.'" *Sheffield v. Fay Servicing, LLC*, No. 2:21-CV-09412, 2021 WL 6499933, at *1 (C.D. Cal. Dec. 6, 2021).

> 2.    Denying Plaintiffs' ex parte motion would not cause "irreparable prejudice."

Plaintiffs do not—and cannot—establish they will be "irreparably prejudiced" if their motion proceeds on a regularly noticed schedule. *Sheffield*, 2021 WL 6499933, at *1. Contrary to their assertions, the May 22 hearing originally scheduled by the state court was not viewed as urgent—as reflected by the state court's decision to set the hearing for a date five weeks after the April Order. Nor are Plaintiffs prejudiced by the fact that this Court may now conduct the hearing (if it chooses to hold one at all). *See Zalvin v. Carrel*, No. 8:24-CV-00482, 2024 WL 1121790, at *3 (C.D. Cal. Mar. 14, 2024) (denying ex parte application for remand and finding no prejudice because motion for preliminary injunction could be heard in federal court). And the timing of removal, relative to the hearing date set by the state court, does not provide a basis for remand. *Bell v. U.S. Soc. Sec. Admin.*, 2026 WL 659169, at *1 n.2 (N.D. Fla. Feb. 27, 2026). In short, none of Plaintiffs' arguments establishes any basis to circumvent the ordinary process to force resolution of the complicated issues presented here on an ex parte schedule. *Montes v. U.S. Nat'l Bank Assoc.*, No. 10-CV-0022, 2010 WL 11597574, at *2 (C.D. Cal.

9

Jan. 12, 2010) (denying ex parte application to remand based on lack of irreparable injury because Plaintiff's "claims against Defendant [would not] be prejudiced if his motion were scheduled according to normal motion procedures," and "Defendant should be afforded an opportunity to fully address the merits of Plaintiff's remand request").

        3.     <u>Plaintiffs omit key facts—Sable has made significant upgrades to the segments, and there is no risk of environmental harm.</u>

Plaintiffs cannot establish irreparable prejudice. Sable has made extensive repairs and improvements to the segments to address the cause of the 2015 release and prevent recurrence. For example, Sable remediated all locations that had 40% or more metal loss. *Plains*, Dkt. No. 49-2, Ex. 2 at Page ID 1428. When Sable restarted the segments pursuant to the DPA Order, it complied with a PHMSA-approved restart plan and acted under PHMSA's direct supervision. *Plains*, Dkt. No. 49-3 ¶¶ 14–33. The length of the segments—nearly 125 miles—have now been filled and pressurized "without any signs of release or other safety issues." *Id*. ¶¶ 6, 32. As important, PHMSA has authority to shut down the segments if PHMSA determines operations are hazardous to life, property, or the environment. *Id*. ¶ 34; see 49 U.S.C. § 60112(a) and (e).

Sable has also agreed to continue operating the segments under the stringent conditions of a PHMSA emergency special permit and has asked PHMSA to make those conditions permanent. The conditions exceed PHMSA's regulatory standards and include additional requirements related to pressure testing, inspections, and repairs. *E.g., compare Plains*, Dkt. No. 49-2, Ex. 7 at Page ID 1451–55 and Ex. 9 at Page ID 1753–57 *with* 49 C.F.R. §§ 195.304, 195.452(j)(3), 195.452(h)(4)(i) (permit conditions that are more stringent than corresponding regulations). Regardless of the outcome of its permit application, Sable must comply with the requirements in the Pipeline Safety Act and PHMSA's regulations.

Finally, if Sable were to violate the special permit or the Pipeline Safety Act and corresponding regulations, PHMSA may bring an enforcement action. The Act also allows for private enforcement and injunctive relief in appropriate cases. 49 U.S.C. § 60121. Contrary to Plaintiffs' claims, Dkt. No. 45 at 14, the pipelines are safely operating and present no imminent risk of environmental harm. Plaintiffs' request for ex parte relief should be rejected.

**B.      The United States may remove even though it is not a defendant.**

Turning to the issue presented by Plaintiffs' ex parte motion, federal officer removal under Section 1442(a)(1) allows the United States to remove cases to federal court that are "directed to" it. Federal officer removal is construed broadly in favor of the federal forum. *Chevron USA*, 146 S. Ct. at 1060–62. This Court's inquiry is whether the United States is "threatened," one way or another, "with the state's coercive power." *Miller*, 793 F.2d at 1046.

As discussed below, the United States can remove this case directed to it to federal court even though the United States is not a party to the state court case. Section 1442(a)(1) allows removal of cases "against *or* directed to" the United States and its agencies or officials. 28 U.S.C. § 1442(a)(1) (emphasis added). Petitioners are wrong arguing otherwise. *See* Ex. Parte App., Dkt. No. 45 at 12-14.

For federal officer removal under § 1442(a)(1) the suit must also be "for or relating to any act under color of such office," which the Supreme Court has held should be interpreted broadly. *See Chevron USA*, 146 S. Ct. at 1060–62. Here, that standard is plainly met because the DPA Order was issued by an officer of the United States, the Secretary of Energy. Limiting federal officer removal only to those cases where the United States is a party would render redundant the right to remove cases "directed to" the United States, as cases where the United States is a defendant party are plainly removable as "against" the United States. In 2011, Congress expressly amended § 1442 to add "directed to" to expand the scope of federal officer removal. *See Goncalves By and Through Goncalves v. Rady*

11

*Children's Hospital San Diego*, 865 F.3d 1237, 1250 (9th Cir. 2017). Courts must give meaning to Congress' choice to provide two bases for removal, not one. *See Saldana v. Bronitsky*, 122 F.4th 333, 342 (9th Cir. 2024). Thus, federal courts have repeatedly sustained removal under § 1442(a)(1) in a variety of circumstances where the suit is "directed to" the United States, federal agencies, or federal officials, even when those officials and agencies were not named as defendants. *Id.* Dkt. No. 1 PageID 10–11 (collecting cases finding removal proper even where there is no federal party to the case). Plaintiffs ignore these decisions and cite no case where the United States was kept out of federal court in a similar situation.

### C.      Section 1446's Time Limits Do Not Apply to the United States

Plaintiffs conflate and misapply the federal officer removal statute to insist that the time limitations for removal apply to the United States in this case. Plaintiffs are wrong and the cases they cite do not support a different conclusion.

Here, the United States is not named as a defendant in this case. The thirty-day time limitations set forth in 28 U.S.C. § 1446 refers to limitations on "defendants," which the United States plainly is not. Under the plain text, the time limit does not apply to the United States in this situation.

Plaintiffs (at 11) say this argument "conflicts with binding precedent," but that's wrong. In the case they rely on, a federal agency was a party. *See Loftin v. Rush*, 767 F.2d 800, 801 (11th Cir. 1985) (noting the Navy's obligation to file an answer), *abrogated by Enbridge Energy, LP v. Nessel on behalf of Mich.*, 146 S. Ct. 1074 (2026). To be sure, *Enbridge Energy, LP* concluded that a private party defendant was not entitled to equitable tolling of the removal deadline, 146 S. Ct. at 1082-84, but we are not relying on equitable tolling. Rather, the United States is relying on its status as a non-party sovereign that must defend its sovereignty in the appropriate forum—i.e., federal court, now that the April Order has directly challenged that sovereign authority.

Plaintiffs ask this Court to find an implied time restriction applicable to non-

12

party sovereigns in § 1446, but such an atextual reading should be rejected. The federal officer removal statute must be broadly construed in *favor* of removal. *Durham*, 445 F.3d at 1252. It cannot follow, then, that a court should interpret 28 U.S.C. § 1446(b)(3) as containing a silent time limit on a non-party sovereign to try to defeat the presumption in favor of removal under 28 U.S.C. §1442(a)(1). *C.f.*, *id.* at 1253 ("where the timeliness of a federal officer's removal is at issue, we extend [§] 1442's liberal interpretation to [§] 1446"); *California v. Salas*, No. 24-mc-80105, 2024 WL 3757492, *4-6 (N.D. Cal. Aug. 12, 2024) (Broad construction applicable to Section 1442(a)(1) extends to Section 1446(g) in construing 30-day time limit).

Plaintiffs dismiss the relevance of a strikingly similar case to this one, *Miami Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349 (N.D. Fla. 2018), but their reasoning for doing so is unsound. Plaintiffs contend that the court there was applying circuit precedent relevant to a different provision, § 1446(g), rather than the operative provision here, § 1446(b). ECF 45 at 11. Aside from failing to explain why this distinction makes any difference, Plaintiffs ignore that the court in *Miami Herald Media Co.* specifically referred to § 1446(b) when concluding that the timeliness requirement did not apply to the non-party United States. 345 F. Supp. 3d at 1366 (citing *Loftin*, 767 F.2d at 805).

To adequately defend its sovereign interests following the issuance of the April Order, it was proper for the non-party United States to remove this case when it did. The time limitation constraints applicable to "defendants" in § 1446 do not apply to the United States here and should not operate to defeat removal under § 1442(a)(1).

### D.    The Removal Notice was Timely in Any Event.

Even if § 1446(b)'s timing provision applied to the United States, the removal was timely because the United States filed notice within 30 days of the April Order. Plaintiffs ask the wrong question, and in doing so, they focus on the

13

wrong event. The issue here is not when federal authority underlying a potential conflict with the state court's orders was first exercised, but when it became ascertainable that the state action was "directed to" the United States within the meaning of § 1442. As Plaintiffs recognize, grounds for removal become ascertainable only once "unequivocally clear and certain." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1091 (9th Cir. 2021).

That did not occur when the DPA Order was issued. At that point, the state court could have harmonized the injunction with the DPA Order, modified the injunction, or dissolved it entirely. Until the state court held otherwise, any conflict between the preliminary injunction and the DPA Order was speculative. And § 1446(b)(3) does not require (or even permit) the United States to file anticipatory or protective removal notices based on the mere possibility that a state court might later construe its orders in a manner adverse to federal interests.

The April Order fundamentally altered the nature of the state action and preliminary injunction. Only when the state court denied Sable's motion to dissolve the injunction and subordinated the DPA Order to the federal consent decree did the state action become one that objectively interfered with federal authority and the execution of federal duties. *That* was the triggering event for the United States' removal under § 1442 because it placed the United States' interests squarely in controversy and made the United States' grounds for removal "unequivocally clear and certain." *Dietrich*, 14 F.4th at 1095.

Plaintiffs confuse awareness of a federal issue with ascertainment of removability. The United States removed this case not because the state court issued the preliminary injunction but because the April Order interpreted the relationship between the state injunction, the federal consent decree, and the DPA Order in a manner that directly interferes with the Secretary of Energy's delegated authority. Because the United States filed its notice of removal within 30 days of the April Order, removal is timely.

14

## V.   CONCLUSION

For the foregoing reasons, special appearing party the United States respectfully requests that the Court deny Plaintiffs' ex parte motion.

Respectfully submitted,

Adam R.F. Gustafson
Principal Deputy Assistant Attorney General
Robert N. Stander
Bradley Craigmyle
Justin D. Heminger
Deputy Assistant Attorneys General
Riley Walters
Counsel
Environment and Natural Resources Division
United States Department of Justice

/s/ *Stefan J. Bachman*
Stefan J. Bachman (DC Bar No. 90008649)
Email: stefan.bachman@usdoj.gov
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
150 M Street, NE, Room 2.900
Washington, DC 20002
(202) 598-9566

### Certificate of Compliance with Local Rule 11-6.2

The undersigned, counsel of record for Plaintiff the United States of America, certifies that this brief contains 6,994 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Stefan J. Bachman*

15

Stefan J. Bachman (DC Bar No. 90008649)
Email: stefan.bachman@usdoj.gov
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
150 M Street, NE, Room 2.900
Washington, DC 20002
(202) 598-9566

16