HOLLAND & KNIGHT LLP
   Andrew Klair (Bar No. 334960)
   *andrew.klair@hklaw.com*
560 Mission St., Suite 1900
San Francisco, CA 94105
Telephone: +1 415.743.6962
   James W. Noe (*pro hac vice* forthcoming)
   *jim.noe@hklaw.com*
   Rafe Petersen (*pro hac vice* forthcoming)
   *rafe.petersen@hklaw.com*
   Matthew Z. Leopold (*pro hac vice* forthcoming)
   *matt.leopold@hklaw.com*
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525

LATHAM & WATKINS LLP
   Jessica Stebbins Bina (Bar No. 248485)
   *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
   Nicholas McDaniel (*pro hac vice* forthcoming)
   *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

*Attorneys for Real Parties in Interest Sable*
*Offshore Corp. and Pacific Pipeline Company*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al., <br><br> Respondents/Defendants. | Case No. 2:26-cv-05242 <br><br> **REAL PARTIES IN INTEREST SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO PETITIONERS' *EX PARTE* APPLICATION FOR IMMEDIATE REMAND TO STATE COURT** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

SABLE OFFSHORE CORP., et al.,

Real Parties in Interest

ENVIRONMENTAL DEFENSE CENTER, et al.,

Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al.,

Respondents/Defendants.

SABLE OFFSHORE CORP., et al.,

Real Parties in Interest.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.    BACKGROUND .......................................................................................... 3

    A.    The State Court's April 17 Order........................................................5

    B.    Request For Remand ...........................................................................6

III.    ARGUMENT .............................................................................................. 7

    A.    The Application Fails To Demonstrate A Need For Ex Parte Relief ...........................................................................................7

    B.    Sable Complied With All Removal Procedural Requirements.....................................................................................10

    C.    The Notice of Removal Is Timely.....................................................12

        1.    Section 1446(b)(3)'s 30-Day Clock Does Not Apply To Removal Under Section 1442................................12

        2.    The March 13, 2026 DPA Order Did Not Trigger The Removal Clock ...........................................................12

    D.    Sable's Substantive Bases For Removal Are Fully Satisfied ............................................................................................14

        1.    Sable "Acted Under" A Federal Officer ..................................14

            a.    Petitioners' "Formal Delegation" Theory Is Not The Law ...............................................................19

        2.    Sable Did Not Waive Its Right To Remove ............................19

IV.    CONCLUSION.............................................................................................. 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arizona v. Manypenny*,
  451 U.S. 232 (1981).................................................................................11

*Baker v. Alaska*,
  No. 3:24-CV-00120-JMK, 2024 WL 3161584 (D. Alaska Jun. 25, 2024) .............................................................................................9

*Cedars-Sinai Imaging Med. Grp. v. Superior Ct.*,
  100 Cal. Rptr. 2d 320 (Cal. App. 2000).....................................................9

*Chevron USA Inc. v. Plaquemines Parish*,
  146 S. Ct. 1052 (2026)....................................................................11, 15, 18

*City and County of Honolulu v. Sunoco LP*,
  39 F.4th 1101 (9th Cir. 2022) ......................................................2, 15, 17

*County of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022)......................................................14, 15, 18

*DeFiore v. SOC LLC*,
  85 F.4th 546 (9th Cir. 2023) ......................................................14, 15, 19

*Dietrich v. Boeing Co.*,
  14 F.4th 1089 (9th Cir. 2021) .............................................................12

*Doe v. Cedars-Sinai Health Sys.*,
  106 F.4th 907 (9th Cir. 2024) ..............................................................15

*Durham v. Lockheed Martin Corp.*,
  445 F.3d 1247 (9th Cir. 2006) ......................................................2, 11, 12

*Foley v. Allied Interstate, Inc.*,
  312 F. Supp. 2d 1279 (C.D. Cal. 2004)..................................................20

*Friedenberg v. Lane County*,
  68 F.4th 1113 (9th Cir. 2023) ........................................................11, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

*Goncalves By & Through Goncalves v. Rady Children's Hospital San Diego,*
865 F.3d 1237 (9th Cir. 2017) ...............................................................18

*Harris v. Bankers Life & Cas. Co.,*
425 F.3d 689 (9th Cir. 2005) ................................................................21

*Horne v. Wells Fargo Bank, N.A.,*
969 F. Supp. 2d 1203 (2013) .............................................................8, 9

*Jaffe v. Zamora,*
No. 14-10478-CJC, 2014 WL 5786233 (C.D. Cal. Oct. 29, 2014).....................8

*Kenny v. Wal-Mart Stores, Inc.,* 881 F.3d 786 (9th Cir. 2018),
881 F.3d 791 .......................................................................................21

*Maryland v. Soper (No. 1),*
270 U.S. 9 (1926).................................................................................16

*Mattel v. Bryant,*
441 F. Supp. 2d 1081 (C.D. Cal. 2005) ..................................................20

*Mission Power Engineering Co. v. Continental Casualty Co.,*
883 F. Supp. 488 (1995) ...................................................................8, 10

*Montes v. United States National Bank Ass'n,*
No. 10-cv-0022-PSG-JCX, 2010 WL 11597574 (C.D. Cal. Jan. 12, 2010) ..........................................................................................9

*Nationwide Invs. v. Miller,*
793 F.2d 1044 (9th Cir. 1986) .........................................................14, 19

*Resolution Trust Corp. v. Bayside Developers,*
43 F.3d 1230 (9th Cir. 1994) .................................................................20

*Rosenthal v. Coates,*
148 U.S. 142 (1893)..............................................................................21

*Swett v. Schenk,*
792 F.2d 1447 (9th Cir. 1986) ...............................................................14

*Taylor v. United Road Services, Inc.,*
313 F. Supp. 3d 1161 (E.D. Cal. 2018) ..................................................21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

*Watson v. Philip Morris Cos.*,
  551 U.S. 142 (2007)...................................................................................*passim*

*Zalvin v. Carrel*,
  No. 8:24-cv-00482-FWS-JDE, 2024 WL 1121790 (C.D. Cal. Mar.
  14, 2024) ..............................................................................................................8, 9

## STATUTES

28 U.S.C.
  § 1441........................................................................................................................11
  § 1442................................................................................................................*passim*
  § 1442(a)(1) .......................................................................................................*passim*
  § 1442(d)(1) ............................................................................................................13
  § 1446(a) ............................................................................................................11, 12
  § 1446(b)(3) ...........................................................................................2, 6, 12, 13
  § 1447(d) .................................................................................................................1, 7

50 U.S.C.
  § 4511........................................................................................................................15
  § 4513..........................................................................................................................6
  § 4557..........................................................................................................................6

Cal. Gov't Code § 51011 ...............................................................................................4

## REGULATIONS

91 Fed. Reg. 8949 (Feb. 24, 2026) ..........................................................................10

Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025)..................................18

Exec. Order No. 14391, 91 Fed. Reg. 13199 (Mar. 13, 2026) ..............................18

Exec. Order No. 13603 ...............................................................................................18

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

iv

Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable") respectfully submit this opposition to Petitioners' *Ex Parte* Application for Immediate Remand to State Court, ECF 45.

## I.    INTRODUCTION

Petitioners' *Ex Parte* Application for Immediate Remand, ECF 45, wholly fails to meet this Court's standard for *ex parte* relief and should be denied on that basis alone. Petitioners' sole stated basis for *ex parte* relief is their desire to keep a previously calendared state court hearing date—a date that has already been released by the state court[1]—for a motion that can be heard in federal court. That is not a basis for *ex parte* relief. And it is certainly not a basis for an *ex parte* order remanding this complicated case—removed under the federal officer removal statute by the United States and Sable jointly, and involving five related and intertwined federal actions[2]—on less than a day's notice. This contested jurisdictional question—one carrying full appellate consequences under 28 U.S.C. § 1447(d)—should be heard on ordinary time, with full opportunity for all parties to be heard.

The application further fails on the merits. Removal was timely. Sable removed this action on May 14, 2026—within thirty days of the April 17, 2026 Order of the Santa Barbara Superior Court (Geck, J.) (the "April 17 Order"), which crystallized the federal-state conflict at the heart of this case. In the April 17 Order,

---

[1] *See* Declaration of Jessica Stebbins Bina ("Bina Decl."), Ex. C.

[2] *See California v. PHMSA*, Nos. 25-8059, 26-508 (9th Cir.) (challenging PHMSA's jurisdictional determination) (*"PHMSA"*); *United States & California v. Plains All Am. Pipeline, L.P.*, No. 20-cv-02415-SVW-SSC (C.D. Cal.) (*"Plains"*) (overlapping motions to dissolve and enforce the Consent Decree); *California v. Wright*, No. 26-cv-3396-SVW-SSC (C.D. Cal.) (*"Wright"*) (challenging the Defense Production Act order); *Sable Offshore Corp. v. Quintero*, No. 26-cv-02739-SVW-SSC (C.D. Cal.) (Sable's declaratory judgment action against California concerning a State Parks easement) (*"State Parks I"*); *Cal. Dep't of Parks & Rec. v. Sable Offshore Corp.*, No. 26-cv-02946-SVW-SSC (C.D. Cal.) (concerning same easement) (*"State Parks II"*).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

1

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

the state court, *for the first time*, reinterpreted this Court's *federal* Consent Decree[3] to bar Sable from complying with a Defense Production Act Order, *see* ECF 1-1 (the "DPA Order"), issued by, and monitored by, the U.S. Secretary of Energy. And in the April 17 Order, the state court, *for the first time*, threatened Sable with contempt for continuing to comply with federal law. The April 17 Order is the precise type of state-court invocation of coercive judicial power against persons acting under federal direction that 28 U.S.C. § 1442—the federal officer removal statute—was enacted to displace.

Plaintiffs' argument that the clock began to run on March 13, 2026, the date of the DPA Order, is foreclosed by controlling Ninth Circuit authority. The DPA Order is not a state-court "pleading, motion, order or other paper" within the meaning of § 1446(b)(3). Petitioners also miscast the removal as governed by § 1446 alone; the removal was effectuated under § 1442. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006), squarely holds that "the case isn't 'removable' until the federal officer ground for removal is disclosed"—and § 1442's removal mechanism must be construed liberally. The April 17 order is what disclosed the grounds for federal officer removal in this case.

Removal was also proper. Each element of section 1442(a)(1) is easily met. The DPA Order is not a generalized industry regulation of the kind at issue in *Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007), or *City and County of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022), on which Petitioners heavily rely, ECF 45 at 26-28. It is a targeted, by-name federal directive that compels Sable, specifically, to perform identified operational acts on identified pipeline segments under continuing federal supervision (including onsite oversight by the Pipeline and Hazardous Materials Safety Administration ("PHMSA")) and monthly reporting to

---

[3] *Plains*, ECF 6-1 (C.D. Cal. Mar. 13, 2020).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

the Department of Energy. That is "acting under" a federal officer in every sense. Petitioners' waiver theory is contrary to law and would punish Sable for the good-faith effort to resolve the federal-state conflict in state court that Petitioners now claim should have been brought to federal court in the first instance.

The application should be denied.

## II.    BACKGROUND

This consolidated case initially concerned a civil challenge brought by several environmental groups ("Petitioners") against certain California agencies and officials ("California"), challenging California's issuance of waivers to Sable related to certain onshore segments of Sable's Santa Ynez Pipeline System (the "SYPS")—but it has morphed into something else entirely, as the April 17 Order first confirmed.

***The Consent Decree***. In May 2015, a portion of an onshore pipeline segment had an oil spill, resulting in a Consent Decree among the United States, California, and then-segment-owner Plains All American Pipeline. *See Plains*; Bina Decl., Ex. A (Declaration of J. Caldwell Flores) ¶ 6 ("Flores Decl."). The Consent Decree required Plains to obtain a waiver of certain regulations before resuming oil flow. *See id.* ¶ 7. A "State Waiver" is a mechanism by which state regulators can waive certain pipeline safety requirements while imposing additional safety conditions. *See id.* ¶ 13. After acquiring the SYPS in 2024, Sable contractually agreed to follow certain provisions of the Consent Decree that apply to the onshore segments. *See Plains*, ECF 43-1 at PageID #98-106. At the time of the Consent Decree, the segments were classified as *intrastate* pipelines, regulated by the California Office of the State Fire Marshal ("OSFM"). *See* Flores Decl. ¶ 6. Accordingly, OSFM issued the State Waivers to Sable in December 2024. *See id.* ¶ 13.

On April 15, 2025, Petitioners initiated this lawsuit alleging that OSFM violated state and federal pipeline safety laws in issuing the State Waivers. *See* ECF 1-2. In July 2025, the state court "narrowly" granted Plaintiffs' motion for a

LATHAM&WATKINS™

ATTORNEYS AT LAW
LOS ANGELES

3

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

preliminary injunction, finding no likelihood of success on any federal law claim but concluding the State Waivers were likely noncompliant with the Elder California Pipeline Safety Act's requirement that OSFM include a "discussion of factors . . . considered significant in granting the exemption beyond conclusions." *See* Order Granting Preliminary Injunction, ECF 1-4 at PageID #308, 329 (the "Preliminary Injunction"); Cal. Gov't Code § 51011. The Preliminary Injunction thus enjoined Sable, *on a state law basis*, from resuming transportation of oil through the SYPS onshore segments until ten court days after Sable filed and served notice that it had received all necessary approvals and permits and of its intent to commence "restart" as defined under the Consent Decree. *See* Preliminary Injunction at PageID #292, 308.

Two events occurred after the Preliminary Injunction was entered that materially changed the nature of the case, leading to the April 17 Order.

*First*, on December 17, 2025, PHMSA determined that it had exclusive jurisdiction to regulate the SYPS, including all onshore segments, because the SYPS is an *interstate* pipeline as defined in the Pipeline Safety Act. *See* Flores Decl. ¶¶ 25-27. That reassertion of jurisdiction displaced OSFM's regulatory role over any onshore segments, rendering the State Waivers ineffective. On December 23, 2025, PHMSA issued Sable an emergency special permit on substantially the same terms as the already-approved OSFM State Waivers (the "Special Permit"). *See id.* ¶¶ 29-30. Thereafter, on February 26, 2026, Sable relinquished and abandoned the State Waivers. *See* ECF 37 at PageID #18096. Thus, as OSFM has acknowledged, the challenged State Waivers—underlying Petitioners' claims and providing the basis for the Preliminary Injunction—are no longer in effect. *See* ECF 38 at PageID #18355.

*Second*, on March 13, 2026, the United States Secretary of Energy, acting under delegated authority from the President, determined that transporting crude oil

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

4

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

through the SYPS is essential to core national defense and security needs, and issued the DPA Order, which commanded Sable to immediately begin transporting hydrocarbons through the SYPS under pain of civil and criminal penalties. *See* ECF 1-1. In compliance with the DPA Order, Sable safely resumed transporting oil through the SYPS, including the onshore segments. *See* Flores Decl. ¶¶ 32-45. Sable is acting under the direction of the Secretary of Energy, and is required to report regularly on its progress. *See* 28 U.S.C. § 1442(a)(1); ECF 1-1 at 4.

### A.    The State Court's April 17 Order

Following the DPA Order, Sable moved *ex parte* to dissolve the Preliminary Injunction given the intervening federal directives. *See* ECF 1 at PageID #9. Petitioners simultaneously moved for an order to show cause regarding contempt. *Id.* The state court held a hearing on Sable's *ex parte* motion on March 17, 2026, but made no decision that date, citing the "complex, nuanced issues" presented and the need for "more time and more extensive briefing." Bina Decl., Ex. B (March 17, 2026 Hearing Transcript) at 4:4–14. The state court did not enter any adverse ruling or otherwise indicate that it would enforce the Preliminary Injunction in a manner conflicting with the DPA Order.

On April 17, 2026, following supplemental briefing, the state court issued a written order denying the motion to dissolve the Preliminary Injunction, reinterpreting the Preliminary Injunction "in light of recent events," finding that "Sable continues to be obligated" to obtain State Waivers from OSFM under the state court's view of the Consent Decree. April 17 Order, ECF 1-5, at PageID #351-52. Notably, the state court denied Petitioners' request for a mandatory enforcement order and deferred ruling on their application to show cause, continuing the hearing to May 22, 2026, "to allow the parties to take whatever steps they deem appropriate based upon this court's conclusions on the status of the preliminary injunction." *See id.* at PageID #352.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

Unlike the March 17 hearing—at which the court declined to issue any adverse order against Sable—the April 17 Order affirmatively denied dissolution of the Preliminary Injunction, subordinated the DPA Order to the Consent Decree, and set contempt proceedings in motion. By doing so, the state court directly interfered with the Secretary of Energy's delegated Presidential authority to address national security interests under the Defense Production Act, placing Sable in an impossible position: comply with the DPA Order's command to immediately transport hydrocarbons under pain of criminal penalties, or comply with the Preliminary Injunction under pain of state court sanctions. *See* 50 U.S.C. §§ 4513, 4557. As a result, the April 17 Order made the case removable for the first time under 28 U.S.C. §§ 1442(a)(1) and 1446(b)(3).

### B.    Request For Remand

The SYPS is at the center of multiple actions that raise complicated and fact-intensive questions of federalism, preemption, and national security. As noted above, four of those actions are currently pending in this Court. In *Plains*, this Court is considering whether a Consent Decree resolving a spill occurring under prior ownership should be terminated, considering Plains' compliance with its terms and the changed circumstances in the form of the DPA Order. In *State Parks I* and *State Parks II*, this Court is considering whether Sable may transport oil through a segment of the SYPS crossing state park land. And, in *Wright*, this Court is considering whether the DPA Order, which compels Sable to operate the SYPS in furtherance of national security objectives, is lawful under the Constitution and certain federal statutes and regulations. Separately, in *PHMSA*, the Ninth Circuit is considering whether PHMSA or OSFM has jurisdiction over certain onshore portions of the SYPS.

The Preliminary Injunction hinges on the state court's assumption that the Consent Decree requires Sable to comply with certain *state law* requirements. And

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

at the heart of Petitioners' *ex parte* motion to remand is their desire for the state court to immediately enforce that purported requirement—something this Court notably decided *not* to do when it denied the State of California's *ex parte* motion to enforce the Consent Decree earlier this year. *See Plains*, ECF 47 (C.D. Cal. Mar. 23, 2026).

There is every reason not to speed toward judgment. This Court is considering many of the same underlying issues as part of competing motions to dissolve and enforce the Consent Decree scheduled for hearing in *Plains* on June 1 and as part of a motion for preliminary injunction scheduled for hearing in *Wright*, also on June 1. Any relief granted to Petitioners in state court would hinge on the outcomes of these interrelated federal actions. Rather than remand this action for the state court to further speculate about the meaning of a *federal* Consent Decree and *federal* DPA Order, this Court thus should retain jurisdiction to support the efficient, coordinated, and—most importantly—consistent consideration of these significant federal questions. And any relief that could issue from the state court's May 22 hearing would likely be obviated by the hearings on the DPA Order that are before this Court just ten days later on June 1.

## III.  **ARGUMENT**

### A.  **The Application Fails To Demonstrate A Need For Ex Parte Relief**

As explained further below, Sable strongly disputes Petitioners' arguments about the propriety of removal. But whatever the merits of the motion to remand, there is no reason for this Court to decide a complex jurisdictional question about federal officer removal—from which remand is immediately appealable, *see* 28 U.S.C. § 1447(d)—on an *ex parte* basis. Petitioners' sole cited basis for "emergency" relief is their desire to keep an *already-vacated* state court hearing date on a non-dispositive show cause motion that would—at most—result in further state court proceedings. *See* ECF 45 at 4, 13, 19-20. That is not a sufficient basis for *ex*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

*parte* relief.[4]

This Court applies strict standards for ex parte relief, with courts emphasizing that "opportunities for legitimate ex parte applications are extremely limited." *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (2013). "Ex parte applications call for emergency relief that is rarely justified." *Jaffe v. Zamora*, 14-10478-CJC (RNBx), 2014 WL 5786233, at *1 (C.D. Cal. Oct. 29, 2014) (denying ex parte application to remand). The seminal case of *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (1995), established the foundational framework. Because "ex parte motions are inherently unfair, and they pose a threat to the administration of justice," *id.* at 490, courts require a two-part showing demonstrating why "the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment": first, evidence that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and second, that the moving party is without fault in creating the need for relief. *Id.* at 492.

Petitioners' desire to keep their preferred hearing date in front of their preferred judge—a hearing date that is *already vacated*, *see* Bina Decl., Ex. C—fails to meet their burden to demonstrate irreparable prejudice. Numerous cases hold that keeping a particular state-court officer or hearing date is insufficient basis for an *ex parte* motion to remand. For example, *Zalvin v. Carrel*, No. 8:24-cv-00482-FWS-JDE, 2024 WL 1121790 (C.D. Cal. Mar. 14, 2024) denied an ex parte remand where the plaintiff wanted to file a state court motion for temporary restraining order, noting:

> Plaintiff's preference that his motion for preliminary injunction be heard in state court is insufficient to demonstrate 'a threat of immediate

---

[4] Indeed, California filed a regularly noticed motion for remand, demonstrating the lack of any emergency basis for this application. *See* ECF 46.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

or irreparable injury,' especially because Plaintiff can request equivalent injunctive relief in federal court.

*Id.* at \*3. Likewise, *Montes v. United States National Bank Ass'n*, No. 10-cv-0022-PSG-JCX, 2010 WL 11597574 (C.D. Cal. Jan. 12, 2010), denied an ex parte application to remand where "Plaintiff ha[d] not provided sufficient evidence of irreparable injury if a motion for remand [wa]s heard according to regular motion procedures." *Id.* at \*2. The court explained that the underlying action "would not necessarily be impacted by an immediate remand of [plaintiff's] case, nor would his claims against Defendant be prejudiced if his motion were scheduled according to normal motion procedures. Furthermore, Defendant should be afforded an opportunity to fully address the merits of Plaintiff's remand request." *Id.*; *see also Horne*, 969 F. Supp. 2d at 1206 (noting that ex parte motion to remand was inappropriate, because plaintiffs "identif[ied] no reason why a change of venue [was] necessary to prevent immediate or irreparable injury"); *Baker v. Alaska*, No. 3:24-CV-00120-JMK, 2024 WL 3161584, at \*5 (D. Alaska Jun. 25, 2024) ("A pending trial date … is not . . . an emergency justifying expedited relief from the Court.").

The same is true here. Petitioners' pending motion to enforce the injunction transferred on removal, and there is no reason that it cannot be timely heard in this Court. *See Zalvin*, 2024 WL 1121790, at \*3; *Montes*, 2010 WL 11597574, at \*2. Nor do Petitioners explain the harm they will experience from remaining in federal court. Under state law, the only remedy Petitioners could obtain at the May 22 hearing would be a further evidentiary hearing on contempt. *See Cedars-Sinai Imaging Med. Grp. v. Superior Ct.*, 100 Cal. Rptr. 2d 320 (Cal. App. 2000) (explaining state-court procedures). Petitioners also fail to demonstrate any harm that will come from taking the time to notice a motion. The circumstances allegedly giving rise to Plaintiffs' show cause application are not likely to change in the time necessary to notice a motion. The purported need to keep a non-dispositive, interim state court motion on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

the calendar is insufficient to demonstrate why "special treatment" is needed to avoid "a threat to the administration of justice." *Mission Power*, 883 F. Supp. at 490, 492.

Petitioners also notably fail to explain how their state-law, process-based objections to OSFM's issuance of now-ineffective State Waivers implicate any safety concerns for a pipeline that has been operating safely for over two months. Nor can they. Since acquiring the SYPS in 2024, Sable has invested more than $215 million on repairs and increased safety measures. *See* Flores Decl. ¶¶ 9, 12. The Emergency Special Permit issued by PHMSA in December 2025 imposed heightened safety standards that matched special conditions previously imposed by OSFM, *id.* at ¶¶ 29-30, and Sable has since applied for a non-emergency permit on substantially identical terms, *see* 91 Fed. Reg. 8949, 8949 (Feb. 24, 2026). Sable continues to implement all conditions of the Emergency Special Permit in the interim. Flores Decl. ¶ 31. Finally, PHMSA technical staff were onsite for the restart of the SYPS, supervising Sable's compliance with safety requirements. *Id.* at ¶¶ 35-39. There is no basis to suggest that PHMSA—the agency Congress charged with overseeing pipeline safety—is incapable of managing the SYPS' safety.

Indeed, Petitioners fail to mention that both the Ninth Circuit[5] and this Court[6] have already rejected similar ex parte attempts by Petitioners and California to enjoin operation of the SYPS on an emergency basis. And both the Ninth Circuit and this Court have upcoming hearings—June 1 in this Court and July 7 in the Ninth Circuit—that will address the merits of the various arguments presented here. The May 22 hearing date could be easily reset if this Court determined that remand is appropriate, with no harm to Petitioners. Petitioners' asserted irreparable harm is insufficient.

**B.     Sable Complied With All Removal Procedural Requirements**

---

[5] *See* Order Denying Stay, *PHMSA*, ECF 21 (9th Cir. Dec. 31, 2025).
[6] *See Plains*, ECF 47 (C.D. Cal. Mar. 23, 2026).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

Removal here is effectuated under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which the Ninth Circuit has advised is "to be liberally construed" in favor of removal. *Durham*, 445 F.3d at 1252. The Supreme Court confirmed this broad construction in *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026), which authorized federal officer removal of a state environmental suit challenging crude-oil production that supported federal wartime fuel needs. *Id.* at 1060-62.

The Ninth Circuit has held that, for federal officers, the removal clock begins upon the revelation of "sufficient facts for federal officer removal, even if the officer was previously aware of a different basis for removal." *Durham*, 445 F.3d at 1253. "[W]hen federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal," and "where the timeliness of a federal officer's removal is at issue, we extend section 1442's liberal interpretation to section 1446." *Id.* at 1252-53. In contrast to removal under 28 U.S.C. § 1441, "the federal officer removal statute is to receive a generous interpretation." *Friedenberg v. Lane County*, 68 F.4th 1113, 1123 (9th Cir. 2023) (citing *Durham*, 445 F.3d at 1252). Hence, the "ordinary" presumption against removal that applies in diversity-removal cases, invoked by Petitioners, *see* ECF 45 at 7, has no force here. The Supreme Court has stated that the right to removal under § 1442(a)(1) "is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

A notice of removal need contain only "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a). The notice need not be overly detailed or anticipate every defense; the Ninth Circuit has gone so far as to say that "[t]he absence of detailed grounds setting forth [a] basis for removal is not fatal to defendants' right to remove," *Friedenberg*, 68 F.4th at 1123 (citation omitted). "It

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

11

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

is enough 'if the court is provided the facts from which its jurisdiction can be determined.'" *Id.* (citation omitted).

### C.     The Notice of Removal Is Timely

Petitioners' argument that Sable's removal was untimely, *see* ECF 45 at 7-12, rests on two false assumptions: (1) that the March 13, 2026 DPA Order triggered the 30-day removal clock under 28 U.S.C. § 1446(b)(3); and (2) that this removal is governed by § 1446 rather than § 1442.

> *1.     Section 1446(b)(3)'s 30-Day Clock Does Not Apply To Removal Under Section 1442*

Section 1446, which Petitioners insist prohibits removal, governs "***a defendant or defendants*** desiring to remove any civil action …" 28 U.S.C. § 1446(a), (b)(3) (emphasis added). Sable is not a "defendant" in this matter and, in any event, removal here is pursuant to § 1442, which lacks similar language concerning the 30-day clock. Under § 1442 "the removal clock begins upon the revelation of a federal officer ground for removal." *Durham*, 445 F.3d at 1253. This is when the federal officer (or person acting under that officer) acquires "sufficient facts for federal officer removal … even if the officer was previously aware of a different basis for removal." *Id.*[7]

> *2.     The March 13, 2026 DPA Order Did Not Trigger The Removal Clock*

The DPA Order is not a state-court "pleading, motion, order or other paper" within the meaning of § 1446(b)(3). *See Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021). The trigger for removal is the "revelation of a federal officer ground for removal." *Durham*, 445 F.3d at 1253.  The DPA Order alone did not reveal this

---

[7] Petitioners dismiss the *Miami Herald* authority as mere dicta, ECF 45 at 11, but it reflects the structural logic that non-party sovereigns cannot be expected to monitor the docket of a case to which they are strangers.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

12

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

ground for removal—instead, those removal grounds came from the state court when it issued its April 17 Order reinterpreting the basis for its preliminary injunction and threatening contempt proceedings.

On March 17, 2026, Petitioners filed an ex parte application asking for an order directing Sable to cease operations and for an order to show cause why Sable should not be found in contempt of the Preliminary Injunction, explaining that they had "made no previous application for similar relief." ECF 37 at PageID #17952. In ruling on that motion, the April 17 Opinion emphasized "the limited scope of the court's preliminary injunction" which previously rested on *OSFM's* alleged noncompliance. ECF 1-5 at 14. Only when the April 17 Order denied Sable's motion and confirmed the Preliminary Injunction remained in effect *notwithstanding* the DPA Order that a cognizable conflict—and thus federal officer jurisdiction—first became "ascertain[able]." 28 U.S.C. § 1446(b)(3). A federal directive issued by the federal government does not, simply by virtue of its issuance, constitute the State's invocation of coercive process *against* the federal government or its agents. What makes a case "directed to" the United States or its agents within the meaning of § 1442 is the deployment of state judicial power against federal interests. That did not happen until April 17.

Petitioners' reliance on *Dietrich* is misplaced. *Dietrich* merely restates *Durham's* rule that the clock runs from the revelation of the federal-officer ground for removal. That revelation is the April 17 Order, which *revealed* that Sable was being enjoined by a state court from carrying out federally mandated activities under penalty of sanctions.

The state court's consideration of contempt proceedings is also relevant. Section 1442(d)(1) defines "civil action" broadly to "include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

issued." The Ninth Circuit has squarely held: "[A] contempt action against a federal official for failure to comply with a state court order, although ancillary to the underlying state action, is a distinct action which may be removed." *Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir. 1986). "The form of the action is not controlling; it is the state's power to subject federal officers to the state's process that § 1442(a)(1) curbs." *Nationwide Invs. v. Miller*, 793 F.2d 1044, 1047 (9th Cir. 1986). Where coercive process escalates within a larger state proceeding, the state court's issuance of such coercive processes may necessitate removing the entire action. *Swett*, 792 F.2d at 1450.

### D.    Sable's Substantive Bases For Removal Are Fully Satisfied

#### 1.    Sable "Acted Under" A Federal Officer

Section 1442(a)(1)'s words "acting under" are "broad" and must be "liberally construed." *Watson*, 551 U.S. at 147.

As explained in the Joint Notice of Removal, in *County of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), the Ninth Circuit identified four factors to determine whether a person was "acting under" a federal officer:  (1) whether it was working under an officer "in a manner akin to an agency relationship"; (2) whether it was "subject to the officer's close direction," guidance, control, or "detailed regulation, monitoring, or supervision"; (3) whether it helped fulfill "basic governmental tasks"; and (4) whether its activities were "so closely related to the government's implementation of its federal duties" that it faced "a significant risk of state-court prejudice." *Id.* at 756-57. All are met here.

*Agency-like relationship.* The Ninth Circuit's agency formulation is based on common-law agency and is satisfied where the principal "manifests assent" that the agent "shall act on the principal's behalf and subject to the principal's control," and the agent "manifests assent or otherwise consents so to act." *DeFiore v. SOC LLC*, 85 F.4th 546, 554 (9th Cir. 2023). The DPA Order is exactly that: it identifies Sable,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

specifies the performance Sable must undertake, requires immediate compliance, and retains authority to determine when compliance may cease. Sable manifested assent by complying.

*Close direction and supervision.* Section 1442 "protects the government's agents" where the agents are "'subject to close direction or supervision.'" *DeFiore*, 85 F.4th at 555 (quoting *Honolulu*, 39 F.4th at 1108). Federal officials were onsite with Sable during the restart of the Segments the morning after the DPA Order was issued. The DPA Order's explicit monthly reporting requirement establishes continuing oversight, and Sable is compelled to "comply with this order immediately and to maintain such compliance until such time as the conditions necessitating the issuance of this order abate or until Sable is directed otherwise." DPA Order at § IV. Because the federal government here exercises control over the flow of hydrocarbons through the SYPS, and acts only through Sable, Sable is "serving as the government's common-law agent" and therefore "satisfies the statute's 'acting under' requirement." *Id.* at 557.

*Basic governmental tasks.* Acting under a federal officer entails more than "simply *complying* with the law"; it requires "*helping* the Government to produce an item that it needs." *Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 916 (9th Cir. 2024) (quoting *Watson*, 551 U.S. at 152–53). Where a private party produces goods that are "'used to help conduct a war' and at least arguably 'perform[s] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform,'" it qualifies for federal-officer removal. *San Mateo*, 32 F.4th at 757 (quoting *Watson*, 551 U.S. at 154). Federal-officer removal is appropriate where state-law claims challenge private crude-oil production that supports federal wartime fuel needs. *Plaquemines*, 146 S. Ct. at 1060–62. That is precisely Sable's role here. The DPA Order recites that immediate transportation of SYU hydrocarbons through the SYPS is "necessary or appropriate to promote the national defense" under 50

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

U.S.C. § 4511, and directs Sable to "immediately prioritize and allocate" that capacity and "immediately commence performance" of transportation services in furtherance of that federal objective. DPA Order § IV(A); Dkt. 1-1 at 4.

*Sable faces a significant risk of state-court prejudice.* The April 17 Order presents an immediate and acute risk of state-court prejudice. The Secretary of Energy directs Sable to transport oil; the Superior Court threatens to punish that transportation. As the Supreme Court has recognized, "[s]tate-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials," and "States hostile to the Federal Government may impede . . . enforcement of [] federal law," or "deprive federal officials of a federal forum in which to assert federal immunity defenses." *Watson*, 551 U.S. at 150 (quoting *Maryland v. Soper (No. 1)*, 270 U.S. 9, 32 (1926)). Given California's vocal opposition to Sable's compliance with the DPA Order, Sable—effectively conscripted by the federal government to implement federal objectives—faces precisely the "significant risk of state-court prejudice" the statute was enacted to prevent.

Petitioners argue that Sable is not "acting under" a federal officer on the theory that "[a] duty to comply with a federal directive is not enough." ECF 45 at 26 (citing *Watson*, 551 U.S. at 156). *Watson* held that compliance with generally applicable FTC regulations governing cigarette testing did not constitute "acting under" a federal officer. 551 U.S. at 153. The Court emphasized that "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.* at 152. Unlike the cigarette-testing methodology in *Watson*, the DPA Order is no industry regulation of general applicability. Sable is not "simply complying with the law." Sable is operating the SYPS at the express command of the U.S. Secretary of Energy, as his agent, and under emergency authority delegated by the President. The DPA Order is a *targeted, by-name federal directive* compelling specific operational conduct on identified

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

pipeline segments, subject to monthly reporting to the Department of Energy and federal supervision under penalty of law.

*Honolulu*, on which Petitioners principally rely, ECF 45 at 28-29, is distinguishable. *Honolulu* held that DPA orders directed at an industry were "basically regulations" and that the defendants there "did not serve as government agents and were not subject to close direction or supervision." 39 F.4th at 1108. The DPA orders in *Honolulu* were applicable across an industry—not targeted, by-name commands compelling specific operational acts of the kind issued here.

Moreover, the supervisory architecture surrounding Sable's compliance bears no resemblance to the arms-length regulatory relationship in *Honolulu*. Federal officials were immediately onsite to supervise Sable during the restart of the pipeline segments, United States' Opposition to Ex Parte Emergency Motion at 11–12, ECF 45, *Plains* (C.D. Cal. Mar. 17, 2026). The State of California itself has conceded that "[t]he DPA Order expressly requires Sable's immediate compliance with its directions" and "the DPA imposes criminal penalties on defense contractors who refuse to comply." California Plaintiffs' Ex Parte Emergency Motion at 13, *Plains*, ECF 43 (C.D. Cal. Mar. 16, 2026). Company-specific obligations, onsite federal supervision, criminal-penalty backed compliance, and continuing reporting obligations are textbook indicia of "close direction," which the Ninth Circuit found absent in *Honolulu*. 39 F.4th at 1108. Moreover, the *Honolulu* court found that "Defendants' actions were more like an arm's-length business deal"; that is not the case here.

The Supreme Court's decision in *Plaquemines* confirms that *Honolulu*'s reasoning cannot bear the weight Petitioners place on it. In *Plaquemines*, the Supreme Court squarely held that federal-officer removal is available where private energy producers operate at the direction of the federal government to satisfy federally identified national-security or emergency fuel needs—even where the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

federal direction is mediated through priority orders, allocation directives, and emergency authority of the kind at issue under the DPA. *See* 146 S. Ct. at 1060-62. The Court emphasized that the removal statute is broad, and that it "contemplates removal of suits against officers or their agents" even "for acts that were not done under color of their offices, so long as the suits 'relat[e] to' such acts." *Id.* at 1063.

*Plaquemines* maps precisely onto this case. The President declared a national energy emergency. Exec. Order No. 14391, 91 Fed. Reg. 13199 (Mar. 13, 2026); *see also* Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025). The Secretary of Energy, exercising DPA authority delegated by Executive Order No. 13603, then issued the DPA Order to alleviate that emergency. The April 17 Order directly restrains activity that the DPA Order *commands*, creating (for the first time) a concrete conflict between the state court's injunction and a federal directive. Sable's compliance is exactly the type of federally enlisted, emergency-driven energy operation that *Plaquemines* held qualifies for § 1442 removal. 146 S. Ct. at 1060–62. To the extent *Honolulu* could be read to require something more—and it cannot, given its narrower holding—that reading does not survive *Plaquemines*.

Indeed, Petitioners' own authorities (ECF 45 at 17–18) ultimately support Sable. *San Mateo,* like Honolulu, dealt with a generic contract that did not constitute the targeted, by-name direction at issue here. Rather, it confirmed that "acting under" exists when a party works "in a manner akin to an agency relationship" and is "subject to the officer's close direction." *Id.* at 756–57. *Goncalves By & Through Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017), held that the "acting under" requirement is satisfied where the private party is "serving as the government's agent" such that its actions "go well 'beyond simple compliance with the law and help[] officers fulfill other governmental tasks.'" *Id.* at 1246–47 (quoting *Watson*, 551 U.S. at 153). *DeFiore* reached the same conclusion, holding that private contractors were "acting under" the Department of Defense

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

because they served as the government's agents. 85 F.4th at 556. And *Nationwide Investors* (cited by ECF 45 at 18) recognized § 1442 removal where state coercive process was directed at a federal agent. *Nationwide Invs. v. Miller*, 793 F.2d 1044, 1046 (9th Cir. 1986). That, too, mirrors what happened on April 17.

### a. Petitioners' "Formal Delegation" Theory Is Not The Law

Petitioners *argue that "Sable is not an agent of the DOE, has not been delegated* authority by DOE, and is not acting on behalf of the agency," ECF 45 at 16-17, implying that "acting under" requires a formal agency-delegation relationship. That is not the standard. The Ninth Circuit's test is common-law agency, not formal delegation. *DeFiore*, 85 F.4th at 556–57. As the Supreme Court has explained:

> The relevant relationship is that of a private person "*acting under*" a federal "officer" or "agency." In this context, the word "under" must refer to what has been described as a relationship that involves "acting in a certain capacity, considered in relation to one holding a superior position or office." That relationship typically involves "subjection, guidance, or control.

*Watson*, 551 U.S. at 151 (citations omitted) (emphasis in the original).

The DPA Order's by-name directives, monthly reporting requirement, federal supervision of the restart, and retained federal shutdown authority satisfy that test many times over. Requiring more, such as a formal delegation order or contract, would read out of § 1442 every removal predicated on the direct federal command Congress most plainly intended to protect.

### 2. Sable Did Not Waive Its Right To Remove

Petitioners argue that Sable waived its right to remove this case by choosing to defend itself in state court. ECF 45 at 19-20. Contrary to Petitioners' characterizations, Sable did not "test the waters" or "experiment" in state court. *Id.* at 19. Rather, Sable was compelled to respond to the active proceedings in light of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

the contradictory federal directive in the DPA Order to immediately restart the Pipelines, and to defend itself against Petitioners' own contempt application.

A party does not waive removal simply by defending itself while federal jurisdiction is still developing. In *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230 (9th Cir. 1994), the court made clear that defensive measures do not constitute a waiver, and that "the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits." *Id.* at 1240 (citation omitted); *Foley v. Allied Interstate, Inc.,* 312 F. Supp. 2d 1279, 1284 (C.D. Cal. 2004) ("[I]t is well settled that merely filing a responsive pleading does not invoke the state court's jurisdiction so as to constitute a waiver of the right to remove." (citations omitted)).

Waiver requires a clear and intentional relinquishment of a known right. *Resolution Trust*, 43 F.3d at 1240. Seeking to resolve a federal-state conflict in state court before invoking § 1442 is not such relinquishment; it is precisely the sort of good-faith effort the law encourages. *See Mattel v. Bryant*, 441 F. Supp. 2d 1081, 1091 (C.D. Cal. 2005) (finding that action was not removable when defendant filed its permissive counterclaims because it was not "unequivocally apparent" that case was removable until later date). Sable did not "evade" any hearing or improperly pursue a "federal appeal of the adverse state-court decision." ECF 45 at 20. Sable asked the state court to address the federal-state conflict in the first instance. Only when the state court denied that request and crystallized the conflict by initiating coercive process did Sable invoke its federal-officer right of removal.

Petitioners' reliance on *Rosenthal v. Coates,* 148 U.S. 142, 147 (1893), is misplaced: in *Rosenthal*, sufficient grounds for removal already existed before the party experimented in state court.[8]

---

[8] The *Rosenthal* case and Moore's Federal Practice, cited by Petitioners, also address ordinary diversity removal by named defendants—not § 1442.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

Lastly, for waiver to apply, the removal right must be readily apparent. "[A] defendant does not have a duty of inquiry if an earlier pleading or other document is 'indeterminate' with respect to removability." *Kenny v. Wal-Mart Stores, Inc.,* 881 F.3d 786, 791 (9th Cir. 2018); *see also Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689, 693–94 (9th Cir. 2005) (same). Even where apparent grounds for removal could be discovered through investigation, a party does not lose its right to remove by failing to conduct that investigation. In *Taylor v. United Road Services, Inc.,* 313 F. Supp. 3d 1161 (E.D. Cal. 2018), the court held that a defendant who moved for judgment on the pleadings in state court did not waive its right to remove where the pleadings were indeterminate as to removability, because the defendant's state court conduct predated its ability to recognize removability. *Id.* at 1183 ("Defendant had an objectively reasonable basis for removal. The Court agrees that none of the seven triggering events that Plaintiff cites did in fact start the 30–day clock to remove.").

Until the April 17 Order, the state court filings were indeterminate as to removability. Sable's state-court filings were defensive responses to a new request by Petitioners to enforce an injunction rendered obsolete by the DPA Order. And on March 17, several days after the DPA Order, the state court *itself* recognized that the potential conflict and grounds for removal were indeterminate, noting that the matter involves "complex, nuanced issues" that did not allow the court to make a quick decision. *See* Bina Decl., Ex. B at 4:4–14. Because the removal clock did not begin until the April 17 Order, Sable's earlier state court filings cannot constitute waiver of a right that did not yet exist.

## IV.  CONCLUSION

The application should be denied.

Dated: May 19, 2026                Respectfully submitted,
                                   LATHAM & WATKINS LLP

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

/s/ *Jessica Stebbins Bina*[9]
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Tel: +1 424.653.5500
Facsimile: +1 424.653.5501

HOLLAND & KNIGHT LLP

Andrew Klair (Bar No. 334960)
*andrew.klair@hklaw.com*
560 Mission St., Suite 1900
San Francisco, CA 94105
Telephone: +1 415.743.6962

James W. Noe (*pro hac vice* forthcoming)
*jim.noe@hklaw.com*
Rafe Petersen (*pro hac vice* forthcoming)
*rafe.petersen@hklaw.com*
Matthew Z. Leopold (*pro hac vice* forthcoming)
*matt.leopold@hklaw.com*

800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525

BABST CALLAND

/s/ *Nicholas McDaniel*
Nicholas McDaniel (*pro hac vice* forthcoming)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Tel: +1 202.853.3455

*Attorneys for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company*

---

[9] Filer attests that all signatories concur in this filing's content and have authorized the filing.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company, hereby certifies that this Opposition To Petitioners' *Ex Parte* Application For Immediate Remand To State Court contains 6,769 words, which complies with the word limit for Local Rule 11-6.1.

Dated: May 19, 2026                                    /s/ *Jessica Stebbins Bina*
                                                       Jessica Stebbins Bina

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

NO. 2:26-cv-05242
REAL PARTIES IN INTEREST OPP. TO
PETITIONERS *EX PARTE* APPLICATION