LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
Fax: (805) 962-3152

*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

JULIE TEEL SIMMONDS (Bar No. 208202)
jteelsimmonds@biologicaldiversity.org
DAVID PETTIT (Bar No. 67128)
dpettit@biologicaldiversity.org
TALIA NIMMER (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin Street, Suite 375
Oakland, CA 94612
Phone: (510) 844-7100

*Attorneys for Center for Biological
Diversity and Wishtoyo Foundation*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.<br><br>     *Petitioners/Plaintiffs*,<br><br>     v. | Case No.: 2:26-cv-05242-SVW-SSC<br><br>**DECLARATION OF TALIA NIMMER IN SUPORT OF PETITIONERS' NOTICE OF PENDING EX PARTE APPLICATION FOR** |

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al.

     *Respondents/Defendants*,

SABLE OFFSHORE CORP., a Delaware Corporation, et al.

     *Real Parties in Interest*.

_____

ENVIRONMENTAL DEFENSE CENTER, et al.

     *Petitioners/Plaintiffs*,

   v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al.

     *Respondents/Defendants*,

SABLE OFFSHORE CORP., et al.

     *Real Parties in Interest*.

**ENFORCEMENT OF PRELIMINARY INJUNCTION AND FOR AN ORDER TO SHOW CAUSE WHY REAL PARTIES IN INTEREST SHOULD NOT BE FOUND IN CONTEMPT OF COURT AND REQUEST FOR HEARING DATE**

I, Talia Nimmer, hereby declare as follows:

1.    I am an attorney at law admitted to practice before this Court and am an attorney of record for Petitioners Center for Biological Diversity and Wishtoyo Foundation. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify to them. I submit this declaration in support of Petitioners' Notice of Pending Ex Parte Application for Enforcement of Preliminary Injunction and For an Order to Show Cause why Real Parties in Interest Should Not Be Found in Contempt of Court and Request for Hearing Date.

2.    On April 8, 2026, Petitioners filed in the Santa Barbara County Superior Court a Reply Brief in Support of their Ex Parte Application for Enforcement of Preliminary Injunction and For an Order to Show Cause why Real Parties in Interest Should Not Be Found in Contempt of Court. A true and correct copy of the Reply Brief is attached hereto as **Exhibit A**.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 29, 2026, in Los Angeles, California.

_____
Talia Nimmer

1

# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Angela Braun, Executive Officer
4/8/2026 4:59 PM
By: Narzralli Baksh , Deputy

Julie Teel Simmonds (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
David Pettit (Bar No. 67128)
dpettit@biologicaldiversity.org
Talia Nimmer (Bar No. 331002)
tnimmer@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100
*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

Linda Krop (Bar No. 118773)
lkrop@environmentaldefensecenter.org
Jeremy M. Frankel (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel: (805) 963-1622
*Attorneys for Petitioners Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and WISHTOYO FOUNDATION,<br><br>Petitioners/Plaintiffs,<br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; OFFICE OF THE STATE FIRE MARSHAL; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 10, inclusive,<br><br>Respondents/Defendants.<br><br>SABLE OFFSHORE CORP., a Delaware Corporation, PACIFIC PIPELINE COMPANY, a Delaware Corporation, and DOES 11 through 20, inclusive,<br>Real Parties in Interest. | Case No.: 25CV02244<br>[Consolidated with Case No. 25CV02247]<br><br>**PETITIONERS' COMBINED REPLY IN SUPPORT OF EX PARTE APPLICATION FOR ENFORCEMENT OF PRELIMINARY INJUNCTION AND FOR AN ORDER TO SHOW CAUSE WHY REAL PARTIES IN INTEREST SHOULD NOT BE FOUND IN CONTEMPT OF COURT**<br><br>Date:    April 17, 2026<br>Time:    10:00 a.m.<br>Dept.:    4<br>Judge:    Honorable Donna D. Geck<br><br>Action Filed: April 15, 2026 |

## I.    **INTRODUCTION**

Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable") style their April 1, 2026, supplemental brief not as an opposition to Petitioners' Ex Parte Application ("Petitioners' Application"), but as further briefing in support of their own Ex Parte Application ("Sable's Application"), departing from the briefing schedule ordered by the Court. (*See* March 17, 2026, Minute Order ["Supplemental *Opposition* paperwork shall be filed no later than 4/1/2026"] [emphasis added].) Thus, the Court should strike the brief, or at the very least not consider any new arguments or evidence that were not first raised in Sable's moving papers; per the briefing schedule ordered by the Court, Petitioners have already filed their supplemental opposition to Sable's Application, and Petitioners no longer have a chance to further respond. That would include, for example, Sable's attempt to relitigate the underlying equities of the Court's July 29, 2025, Orders for Preliminary Injunction (the "PI Orders"), as well as its newly filed evidentiary declarations in support of its requested relief. As to the arguments that *were* preserved in Sable's moving papers, Petitioners have addressed those at length in their Combined Supplemental Opposition to Sable's Application ("Supplemental Opposition").

That said, to the extent that the Court construes Sable's brief as a supplemental opposition to Petitioners' Application, Petitioners address below why it fails to rebut Petitioners' factual showing of contempt, why it fails to raise a colorable defense to contempt, and, thus, why the Court should grant Petitioners' requested relief. Such relief includes issuing an order to show cause why Sable is not in contempt of the PI Orders, as well as enforcing the PI Orders by ordering Sable to immediately shut down and cease operating pipelines CA-324 and CA-325 (the "Pipelines").

## II.    **ARGUMENT**

### A.    **Sable Does Not Dispute that Petitioners Have Met Their Factual Burden to Establish Contempt.**

"The essential facts to establish contempt for violation of a court order are '(1) the making of the order; (2) knowledge of the order; (3) ability of the respondent to render compliance; and (4) willful disobedience of the order.'" (*Moore v. Superior Court* (2020) 57 Cal.App.5th 441, 456 [citation omitted].) Petitioners discussed each of these factors in their Application. (*See* Petitioners' Application, pp. 11-12.) Nowhere in Sable's supplemental brief does it address the standard for establishing contempt

2

or dispute the factual allegations in Petitioners' Application. Given Sable's lack of response, the Court should accept Petitioners' undisputed factual assertions as true. (*See People v. Stanley* (1995) 10 Cal.4th 764, 793 ["Every brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration."] [citation omitted]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-85 [when a party fails to address an issue, or fails to support their position with reasoned argument, it forfeits the issue]; *see also Rudick v. State Bd. Of Optometry* (2019) 41 Cal.App.5th 77, 89-90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

In any event, it is beyond dispute that the Court issued the PI Orders on July 29, 2025; that Sable had knowledge of the Orders; and that Sable has willfully disobeyed the Orders. Nor can it be disputed that Sable had the ability to comply with the Orders. As explained in Petitioners' Supplemental Opposition, Sable has been aware of its obligations under the PI Orders since last July. Sable could have complied with the Orders by pursuing the necessary approvals for restart and by providing the required 10 court days' notice prior to restart. As the Court noted, "Sable would not be materially harmed by being restrained from restarting the Las Flores Pipelines without *first* providing such adequate notice." (PI Orders, p. 18 [emphasis added].) Petitioners would then have had an opportunity to respond, and *the Court* would have decided whether compliance had been achieved and the PI Orders should be terminated. Sable has not provided any evidence that such compliance was infeasible. To the extent Sable suggests that the Secretary of Energy's March 13, 2026, Defense Production Act Order (the "DPA Order") left it unable to comply—including, even, with the Court's modest requirement to provide notice of restart—Sable is incorrect, as explained at length in Petitioners' Supplemental Opposition and again below. (*See* Petitioners' Supplemental Opposition, pp. 10-12.)

**B.    Sable Does Not Raise Any Valid Defense to Petitioners' Contempt Charge and Requested Relief.**

As noted, Sable does not contest that it willfully and knowingly violated the PI Orders. Instead, Sable's supplemental brief, generously construed, suggests that it was excused from complying with the Orders because (1) Petitioners' claims are moot by virtue of Sable's relinquishment of the State

Waivers; (2) the PI Orders were rendered invalid by the DPA Order; and (3) the equities underlying the PI Orders now weigh in favor of Sable. For the reasons that follow, none of Sable's arguments provide a colorable defense to Petitioners' contempt charge or otherwise excuse Sable's from complying with the PI Orders.

      1.    <u>If Sable Wanted Relief from the PI Orders, Its Recourse Was to Seek Rescission *Before* Restarting the Pipelines, not to Violate the Orders in Open Defiance of this Court's Authority.</u>

As an initial matter, to the extent Sable attempts to collaterally attack the PI Orders *after* violating them—particularly by inviting the Court to reexamine the merits and equities underlying the Orders—it is prohibited from doing so.

"An injunction duly issuing out of a court of general jurisdiction with equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within its jurisdiction, must be obeyed by them however erroneous the action of the court may be . . . ." (*Signal Oil & Gas Co. v. Ashland Oil & Refining Co.* (1958) 49 Cal.2d 764, 776, n. 6 [quoting *Howat v. Kansas* (1922) 258 U.S. 181, 189-190].) "[U]ntil its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished." (*Id.* [quoting *Howat*, 258 U.S. at 189-190].) Indeed, "a party may not defy a legally erroneous court order and then challenge it collaterally in proceedings brought to enforce the order." (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1080, n. 13 [citing *People v. Gonzalez* (1996) 12 Cal.4th 804, 817].)

The one apparent exception to this is where an order was, at the outset, "made in excess of the court's jurisdiction," (*Carrnshimba*, 215 Cal.App.4th at 1080, n. 13), or was otherwise not "lawfully issued," (*Gonzales*, 12 Cal.4th at 816). In other words, if the PI Orders were not "lawfully issued," i.e., void, as opposed to simply erroneous, that may form a defense to contempt. (*Gonzales*, 12 Cal.4th at 816.) But Sable does not contend that the PI Orders in this case were not "lawfully issued." Nor does it assert that this Court lacked jurisdiction *at the time the PI Orders were issued.* And while it may now believe that a change in circumstances in the interim have rendered the PI Orders invalid, it cannot raise that in defense of Petitioners' contempt charge. Sable's recourse was to present its arguments to the

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt

Court and seek rescission, not to unilaterally disregard this Court's authority and raise them after the fact. (*See Signal Oil & Gas Co.*, 49 Cal.2d at 776, n. 6 [quoting *Howat*, 258 U.S. at 189-190]; *Carrnshimba*, 215 Cal.App.4th at 1080, n. 13.)

                2.      <u>Sable's Purported Relinquishment of the State Waivers Does Not Invalidate the PI Orders.</u>

Sable suggests that it was excused from complying with the PI Orders by virtue of its relinquishment of the State Waivers, which it contends has rendered Petitioners' claims moot. Notwithstanding that this is improper to raise in defense to a contempt charge (see above), Sable is incorrect.

As explained at length in Petitioners' Supplemental Opposition, (*see* pp. 15-18), simply because a project approval has been rescinded—or in this case, relinquished—does not in itself render a case moot. (*See Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 873; *see also Friends of the Eel River v. North Coast Railroad Authority* (2014) 178 Cal.Rptr.3d 752, 767, *rev'd on other grounds*, 3 Cal.5th 677 (2017).) The pertinent inquiry in such circumstances is whether the project applicant has *abandoned* the project; if not, it may still be possible, as here, for the court to grant effective relief to petitioners. (*E.g., City of Lodi*, 144 Cal.App.4th at 873.)

Sable has, quite obviously, *not* abandoned the project challenged in this matter—restarting the Pipelines—and is instead pursuing it at all costs. And while Sable may prefer otherwise, it still needs approvals from the Office of the State Fire Marshal (OSFM) to pursue the project, as expressly required by the Consent Decree, and as this Court has already recognized. (February 27, 2026, Minute Order, p. 9 ["[T]he Federal Consent Decree by its terms requires authorization from OSFM"].) Because Petitioners' challenge here asks for declaratory relief regarding what process OSFM must follow in issuing those approvals, and regarding the corollary rights of Petitioners to participate in that process, this Court can still afford effective relief to Petitioners notwithstanding Sable's purported relinquishment of the State Waivers. In other words, so long as the Consent Decree—which compels Sable to proceed through OSFM—remains in effect, and Sable has not abandoned its efforts to restart and operate the Pipelines, the relief requested by Petitioners will have a "practical impact" on OSFM's review, and thus their claims are not moot. (*Woodward Park Homeowners Ass'n v. Garreks, Inc.* (2000) 77 Cal.App.4th 880,

5

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt

888; s*ee Lodi*, 144 Cal.App.4th at 873; *Friends of the Eel River*, 178 Cal.Rptr.3d at 767.)

Sable tries to escape this inevitability by suggesting that Petitioners are improperly attempting to enforce the Consent Decree in this action, which, in its view, is an "extra-jurisdictional" matter that the Court should not engage in. Petitioners are not asking the Court to enforce the Consent Decree. Petitioners merely ask this Court to afford full faith and credit to the Consent Decree— a final judgment (*see Mi Familia Vota v. Fontes* (9th Cir. 2025) 129 F.4th 691, 717–18)—by recognizing that the plain language of the Consent Decree compels Sable to proceed with its restart project through OSFM. And indeed, the Court has already done so. (*See* February 27, 2026, Minute Order, p. 9 ["[T]he Federal Consent Decree by its terms requires authorization from the OSFM"].)[1]

Ironically, what would be "extra-jurisdictional" is for the Court to simply ignore the Consent Decree, as Sable urges it to do, which would have the practical effect of setting aside a binding federal court judgment. Whether the Consent Decree can be set aside or modified is a question for the federal district court that retains jurisdiction over the decree. And, as of March 30, 2026, that question is pending in that court, though not with great urgency: the United States has noticed the issue for a hearing in June. (*See* Motion for Order for Termination or Modification, Dkt. No. 49, *United States v. Plains All American*, No. 2:20-cv-02415 (C.D. Cal.).)

Moreover, it should not be lost on this Court that Sable has itself recognized the effect of the Consent Decree on multiple occasions. (*See, e.g.,* Sable's Opposition to Application for Preliminary Injunction, p. 8 ["The Consent Decree imposes a series of prerequisites that the operator must satisfy before restarting the Pipelines, including 'appl[ying] for a State Waiver *through the OSFM*'" . . . .] [emphasis added].) But more importantly, Sable has also substantively relied on it, including in opposing the very PI Orders at issue. (*See id.* at 18 ["The federal Consent Decree precludes Petitioners from asserting that they will be irreparably harmed by the restart of the pipelines."].) Thus, to the extent Sable now disclaims the binding effect of the Consent Decree, it is estopped from doing so. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 ["Judicial estoppel prevents a party from

---

[1] For the same reason, Sable's reliance on the "doctrine of exclusive concurrent jurisdiction" is misplaced. Petitioners are not litigating the same claims here that are presented in the Consent Decree case (or any other case Sable cites). Nor could they, as Petitioners are not a party to the Consent Decree.

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt

asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process"] [quoting *Cleveland v. Policy Management Systems Corp.* (5th Cir.1997) 120 F.3d 513, 517].)

In sum, so long as OSFM has oversight over the restart project at issue—either via the Consent Decree or by virtue of the Pipelines' intrastate status—and Sable has not abandoned its efforts to restart and operate the Pipelines, Petitioners' claims are not moot and Sable's purported relinquishment of the Waivers is of no moment.[2]

### 3. The PI Orders are Not Preempted by the DPA Order.

Next, Sable again argues that the DPA Order preempts the PI Orders and thus renders them invalid. This argument, too, improperly relies on intervening events to defend against Petitioners' contempt charge; it has no bearing on whether, at the time the Court issued the PI Orders, it did so unlawfully or in excess of its jurisdiction. (*See Carrnshimba*, 215 Cal.App.4th at 1080, n. 13; *Signal Oil & Gas Co.*, 49 Cal.2d at 776, n. 6 [quoting *Howat*, 258 U.S. at 189-190].) But even if the Court were to consider it, the Court should roundly reject the tenuous and unfounded theory of preemption that Sable advances.

To begin, Petitioners are obliged to address Sable's mischaracterization of the DPA Order, and to lay bare the ruse that it is.

First and foremost, the DPA Order was issued at *Sable's* behest, after months of solicitation, for one reason: Sable's "view" that an order requiring restart would excuse its compliance with the Consent Decree and any conflicting state laws. (Sable's Ex Parte Application, p. 6.) Undersigned counsel are not aware of any other instance where a private party solicited an order from the federal government under the DPA. That is likely because an order issued under the DPA is intended to be a *burden* on an affected party. Its use here, to confer on Sable a purported *benefit*, is fundamentally at odds with the DPA's

---

[2] Consent Decree aside, so long as OSFM separately retains oversight of the Pipelines by virtue of their *intra*state status, Sable is required to obtain State Waivers from OSFM to operate without effective cathodic protection. (*See* 49 U.S.C. § 60105(a) [states with valid certifications, like California, have exclusive regulatory jurisdiction over intrastate pipelines]; 49 U.S.C. § 60118(d) [where a pipeline is under exclusive state jurisdiction, waivers of pipeline safety regulations must be obtained from state authorities].)

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt

statutory scheme; hence, unsurprisingly, the DPA Order exceeds the scope of authority delegated under the DPA, and it does not have the preemptive effect Sable claims. Nonetheless, beginning the day after the DPA Order was issued, Sable began wielding it as a blank check to disregard state (and even federal) requirements standing as impediments to restart of the Pipelines, including this Court's PI Orders.

Now, as Sable tells it, the DPA Order "commanded Sable to commence the flow of crude oil through the [Pipelines]." (Sable Ex Parte Notice, p. 4.) But the Order does not, in fact, direct Sable to commence the "flow" of anything. All it does is instruct Sable "to immediately *prioritize* and *allocate* pipeline transportation services for hydrocarbons from the [Santa Ynez Unit] through the [Pipelines]." (Dintzer Decl., Exh. B at 3 [emphasis added].) Indeed, the Secretary conspicuously stopped short of "requiring" Sable to restart the Pipelines, as Sable had apparently requested.

Turning to the merits of Sable's preemption theory, Petitioners have addressed Sable's arguments at length in their Supplemental Opposition. (*See* Supplemental Opposition, pp. 8-15.) However, to briefly summarize, the PI Orders, like Petitioners' claims, flow from a federal Consent Decree that requires Sable to obtain approvals from OSFM before restarting the Pipelines, as this Court has recognized. (February 27, 2026, Minute Order, p. 9.) The DPA Order does not displace the Consent Decree, which remains binding on Sable. Whatever conflict remains is one between federal authorities that are incapable of preempting one another. And so long as that conflict persists, this Court's PI Orders remain consistent with federal law and cannot be preempted.

But even if the Court were to nonetheless delve into the potential preemptive effect of the DPA Order, it would find none, for at least two reasons. First, it is not impossible for Sable to comply with both this Court's PI Orders and the DPA Order, as Sable suggests. (*See* Supplemental Opposition, pp. 10-12.) Second, even if it were, that would not end the inquiry: for the DPA Order to preempt state law, Sable must show that Congress clearly and manifestly intended to delegate the power (1) to issue an order of this nature, unprecedented under the DPA, *and* (2) to override state law requirements. (*See* *Wyeth v. Levine* (2009) 555 U.S. 555, 565 [Courts assume that Congress does not supersede state law unless that is its "clear and manifest" intent.].) Sable has not, and cannot, identify any such clear intent. (*See* Supplemental Opposition, pp. 12-15.)

Accordingly, the DPA Order has no preemptive effect on the PI Orders.

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt

4.    Sable Improperly Attempts to Relitigate the Equities Underlying the PI Orders.

Sable devotes much of its supplemental brief to rehashing the equities underlying the PI Orders. Its arguments in this regard, and the evidence it submits in support, are wholly irrelevant.[3] The equities here have no bearing on whether Sable should be held in contempt. (*See Carrnshimba*, 215 Cal.App.4th at 1080, n. 13; *Signal Oil & Gas Co.*, 49 Cal.2d at 776, n. 6 [quoting *Howat*, 258 U.S. at 189-190].) Indeed, Sable cannot ignore the PI Orders on the basis that doing so, in its view, is good policy.

In any event, the principle animating the Court's narrow PI Orders remains: there is no harm to Sable so long as it does not have all necessary permits and approvals to restart the Pipelines. (PI Orders, p. 18.) The parade of horribles Sable now complains of in its supplemental brief does not change that calculus. To date, Sable has not obtained all necessary approvals nor provided any notice that it purportedly has done so.

Thus, Sable's invitation to this Court to reweigh the equities here is improper and unavailing. Nevertheless, Petitioners briefly respond to several misleading assertions in Sable's brief.

First, Sable claims that there is no threat of irreparable harm to Petitioners or the public because it restarted the Pipelines without causing a spill. (Sable Supp. Brief, p. 10.) This ignores that the underlying defect in the Pipelines—namely, their lack of effective protection from corrosion—has not been resolved. As pervasive corrosion of the Pipelines continues unabated, the risk of a spill increases with each passing day.

Second, Sable appears to suggest that its restart project was subject to "comprehensive environmental review." (Sable Supp. Brief, p. 10.) It is unclear what environmental review Sable refers to. If Sable is referring to the original 1985 Environmental Impact Report/Environmental Impact Statement (EIR/EIS) prepared for the Pipelines, that review never contemplated operating—or restarting—the Pipelines without effective cathodic protection. Indeed, the 1985 EIR/EIS's analysis of risks and impacts was premised on the Pipelines having an effective cathodic protection system that

---

[3] Nor, as noted at the outset, should these arguments and evidence be considered in the context of Sable's affirmative Application to rescind the PI Orders. They were not presented in Sable's original moving papers, and Petitioners, having already submitted their supplemental opposition, have no chance to respond and submit countervailing evidence.

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt

would prevent external corrosion and, thus, minimize the risk of an oil spill. As we now know, by flaw of design, the system is not effective on the Pipelines, leaving them vulnerable to pervasive, progressive corrosion, which is what ultimately caused the 2015 Refugio Oil Spill.

Third, Sable complains that, should it comply with the Court's PI Orders, it would have to violate the DPA Order, which may subject it to criminal and civil penalties. As explained above and in Petitioners' Supplemental Opposition, Sable can readily comply with both the Court's PI Orders and the DPA Order and, in any event, Sable need only comply with the DPA Order "to the fullest extent possible." (10 C.F.R. § 217.55.) Moreover, any risk of penalties is a problem of Sable's own making: Sable, again, solicited the DPA Order knowing full well it was enjoined by this Court's PI Orders.

**C.    Sable Does Not Address Petitioners' Request for Immediate Enforcement of the PI Orders.**

Lastly, Sable makes no argument as to why, if this Court finds Petitioners have established a prima facie case for contempt, it should not issue an order appurtenant to the PI Orders directing Sable to immediately shut down and cease operating the Pipelines.

Sable's open defiance of the PI Orders poses an immediate and exigent threat to the public, the environment, and to law and order, and thus warrants immediate enforcement measures from the Court to deter continued violation. (Code Civ. Proc. § 525 [an injunction "may be enforced as an order of the court"]; *Conn v. Superior Court* (1987) 196 Cal.App.3d 774, 785 ["[T]he court has the inherent power to control the proceedings before it and to make orders which prevent the frustration, abuse, or disregard of the court's processes."].) For the reasons expressed in Petitioners' Application, Petitioners request that the Court exercise its inherent authority to issue an order directing Sable to immediately shut down and cease operating the Pipelines until it has all necessary approvals to restart and provides 10 court days' notice of its intent to do so, as required by the PI Orders.

**III.    CONCLUSION**

For over two years, Sable has routinely disregarded all manner of state laws and agency directives, resulting in monetary penalties (that it refuses to pay), multiple lawsuits, and felony criminal charges. Now, Sable has somehow managed to descend even deeper into lawlessness by willfully violating this Court's PI Orders and upending all norms of judicial process. The gravity of its conduct

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt

cannot be overstated, and it must be met in equal force by severe and immediate action from the Court whose authority it has openly flouted.

Petitioners request that the Court issue an Order to Show Cause directing Sable to show why it should not be found in contempt of this Court's PI Orders. Additionally, Petitioners' request that the Court simultaneously issue an enforcement order requiring Sable to immediately shut down operations, and, should it do so, order Sable to show cause why it is not in contempt of that order.

Dated: April 8, 2026                        Respectfully submitted,


*/s/ Linda Krop*
Linda Krop
Jeremy Frankel
ENVIRONMENTAL DEFENSE CENTER
906 Garden St.,
Santa Barbara, CA 93101
Tel. (805) 963-1622

*Attorneys for Petitioners Environmental Defense Center, Get Out Oil!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

*/s/ Talia Nimmer*
Julie Teel Simmonds
David Pettit
Talia Nimmer
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Tel. (510) 844-7100

*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

11

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt

**PROOF OF SERVICE**

I, Jeremy M. Frankel, declare:

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to this action. My business address is 906 Garden Street, Santa Barbara, California 93101.

On April 8, 2026, I served the above document(s) described as **PETITIONERS' COMBINED REPLY IN SUPPORT OF EX PARTE APPLICATION FOR ENFORCEMENT OF PRELIMINARY INJUNCTION AND FOR AN ORDER TO SHOW CAUSE WHY REAL PARTIES IN INTEREST SHOULD NOT BE FOUND IN CONTEMPT OF COURT** on the interested parties in this action, stated below, by the following means of service:

**See Attached Service List**

☒    **By e-mail or electronic transmission.** On the date above, I caused a copy of the document(s) described above to be served electronically on the recipients designated in the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 8, 2026, at Santa Barbara, California.

_____

Jeremy M. Frankel

## SERVICE LIST

| | |
|---|---|
| Michael S. Dorsi<br>Michael.Dorsi@doj.ca.gov<br>Myung Park<br>Myung.Park@doj.ca.gov<br>Matthew Bullock<br>Matthew.Bullock@doj.ca.gov<br>California Attorney General's Office<br>55 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102 | ATTORNEYS FOR RESPONDENTS/DEFENDANTS<br>California Department of Forestry and Fire Protection, Office of the State Fire Marshal; and Daniel Berlant, in his official capacity as State Fire Marshal |
| Duncan Joseph Moore<br>djmoore@paulhastings.com<br>Benjamin J. Hanelin<br>benjaminhanelin@paulhastings.com<br>Natalie C. Rogers<br>natalierogers@paulhastings.com<br>PAUL HASTINGS, LLP<br>1999 Avenue of the Stars, 27th Floor<br>Century City, CA 90067 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Jeffrey D. Dintzer<br>Jeffrey.dintzer@alston.com<br>Matthew C. Wickersham<br>Matt.wickersham@alston.com<br>Garrett B. Stanton<br>Garrett.stanton@alston.com<br>ALSTON & BIRD LLP<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |
| Trevor D. Large<br>tlarge@flasllp.com<br>Victoria C. Diffenderfer<br>vdiffenderfer@flasllp.com<br>FAUVER LARGE ARCHBALD & SPRAY<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101 | ATTORNEYS FOR REAL PARTIES IN INTEREST<br>Sable Offshore Corp. and Pacific Pipeline Company |

2

Petitioners' Combined Reply ISO *Ex Parte* Application for Enforcement of Preliminary Injunction and OSC re: Contempt