HOLLAND & KNIGHT LLP
 Andrew Klair (Bar No. 334960)
 *andrew.klair@hklaw.com*
560 Mission St., Suite 1900
San Francisco, CA 94105
Telephone: +1 415.743.6962
 James W. Noe (*pro hac vice* pending)
 *jim.noe@hklaw.com*
 Rafe Petersen (*pro hac vice*)
 *rafe.petersen@hklaw.com*
 Matthew Z. Leopold (*pro hac vice* pending)
 *matt.leopold@hklaw.com*
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525

LATHAM & WATKINS LLP
 Jessica Stebbins Bina (Bar No. 248485)
 *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
 Nicholas McDaniel (*pro hac vice*)
 *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

*Attorneys for Real Parties in Interest Sable
Offshore Corp. and Pacific Pipeline Company*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY et al.,<br><br>　　　　Petitioners/Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.,<br><br>　　　　Respondents/Defendants. | No. 2:26-cv-05242-SVW-SSCx<br><br>**REAL PARTIES IN INTEREST SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO DEFENDANTS' MOTION TO REMAND, ECF 46**<br><br>Date:　　　June 8, 2026<br>Time:　　　1:30 p.m.<br>Judge:　　　Hon. Stephen V. Wilson<br>Courtroom:　10A |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

SABLE OFFSHORE CORP. et al.,

    Real Parties in Interest.

ENVIRONMENTAL DEFENSE CENTER et al.,

    Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.,

    Respondents/Defendants.

SABLE OFFSHORE CORP. et al.,

    Real Parties in Interest.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 2

III.   ARGUMENT ..................................................................................... 10

    A.   Removal Is Appropriate ......................................................... 10

    B.   Removal Is Timely .................................................................. 11

        1.   Nonparties May Remove Proceedings On Federal Officer Grounds ...................................................... 12

        2.   Section 1446(b)(3)'s Thirty-Day Clock Does Not Apply To Removal Under Section 1442 ............................ 13

        3.   Removability Was First Ascertainable After The April 17 Order ................................................................. 14

        4.   The United States' Removal Was Undoubtedly Timely ................................................................................ 19

    C.   Removal Is Not Barred By Sovereign Immunity ............................. 20

    D.   Broader Federal Interests Compel Retention Of Jurisdiction ............................................................................ 20

    E.   If This Court Remands, It Should Stay Any Order Pending Appeal ...................................................................... 22

IV.   CONCLUSION .................................................................................. 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. Manypenny*,
451 U.S. 232 (1981)........................................................................................11

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023)........................................................................................22

*Brown & Williamson Tobacco Corp. v. Williams*,
62 F.3d 408 (D.C. Cir. 1995)..........................................................................19

*Cal. Dep't of Parks & Rec. v. Sable Offshore Corp.*,
No. 26-cv-02946 (C.D. Cal.) (*State Parks II*) ...........................................10, 15

*California by & through Harrison v. Express Scripts, Inc.*,
139 F.4th 763 (9th Cir. 2025) ........................................................................22

*California v. PHMSA*,
Nos. 25-8059, 26-508 (9th Cir.) .....................................................................10

*California v. Wright*,
No. 26-cv-03396 (C.D. Cal.) ..........................................................................10

*Chevron USA Inc. v. Plaquemines Parish*,
146 S. Ct. 1052 (2026)....................................................................................11

*Dietrich v. Boeing Co.*,
14 F.4th 1089 (9th Cir. 2021) ...........................................................2, 14, 15, 17

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) ........................................................11, 14, 17, 19

*Enbridge Energy, LP v. Nessel*,
146 S. Ct. 1074 (2026)....................................................................................13

*Env't Def. Ctr. v. PHMSA*,
No. 25-8059 (9th Cir. Dec. 31, 2025)...............................................................7

*FBI v. Superior Court of California*,
507 F. Supp. 2d 1082 (N.D. Cal. 2007)............................................................18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

*Goncalves by and through Goncalves v. Rady Children's Hosp. S.D.,*
  865 F.3d 1237 (9th Cir. 2017) ...................................................................................12

*Green v. R.J. Reynolds Tobacco Co.,*
  274 F.3d 263 (5th Cir. 2001) .....................................................................................14

*Harris v. Bankers Life & Cas. Co.,*
  425 F.3d 689 (9th Cir. 2005) .....................................................................................16

*Kenny v. Wal-Mart Stores,*
  881 F.3d 786 (9th Cir. 2018) .....................................................................................16

*Kruse v. Hawai'i,*
  68 F.3d 331 (9th Cir. 1995) .......................................................................................20

*Mia. Herald Media Co. v. Fla. Dep't of Transp.,*
  345 F. Supp. 3d 1349 (N.D. Fla. 2018) ....................................................................13

*Nationwide Invs. v. Miller,*
  793 F.2d 1044 (9th Cir. 1986) ...................................................................................18

*Pac. Pipeline Co. v. California,*
  No. 26-cv-01486 (E.D. Cal.) .......................................................................................5

*Rose v. Beverly Health & Rehab. Servs., Inc.,*
  No. 06-cv-0067, 2006 WL 2067060 (E.D. Cal. July 22, 2006) ................................14

*Sable Offshore Corp. v. Quintero,*
  No. 26-cv-02739 (C.D. Cal.) (*State Parks I*)............................................................10

*Swett v. Schenk,*
  792 F.2d 1447 (9th Cir. 1986) ..................................................................13, 18, 19, 20

*United States v. Plains All Am. Pipeline, L.P.,*
  No. 20-cv-02415 (C.D. Cal. Mar. 13, 2020) ......................................................1, 3, 10

*Watson v. Philip Morris Cos.,*
  551 U.S. 142 (2007)...................................................................................................22

*Wis. Dep't of Corr. v. Schacht,*
  524 U.S. 381 (1998)...................................................................................................20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

## STATUTES

28 U.S.C.
  § 1441.................................................................................................13
  § 1442.............................................................................................*passim*
  § 1442(a) ...........................................................................9, 11, 12, 18
  § 1442(a)(1) ...............................................................................*passim*
  § 1442(d)(1) ..................................................................................12, 18, 20
  § 1446..............................................................................................1, 11, 13
  § 1446(a) ...........................................................................................13
  § 1446(b) ...........................................................................................14
  § 1446(b)(1) .......................................................................................15
  § 1446(b)(3) ...............................................................................*passim*
  § 1447(d) ...........................................................................................22

50 U.S.C.
  § 4513.................................................................................................10
  § 4557.................................................................................................10

## RULES

Fed. R. Civ. P. 11 ...............................................................................17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable") respectfully submit this Opposition to Respondents/Defendants' California Department of Forestry and Fire Protection et al.'s ("California" or "Defendants") Motion to Remand, ECF 46.

## I.   **INTRODUCTION**

California's motion ignores the fundamental reality of this case, in which the original petitioners and the original defendant have aligned to maintain an injunction that solely restrains the real party in interest—and in fact are now seeking to have it held in contempt for carrying out the directives of federal authorities. In these circumstances, removal is wholly proper.

Sable timely removed this action on May 14, 2026—within thirty days of the April 17, 2026 Order of the Santa Barbara Superior Court (Geck, J.) ("April 17 Order"), which crystallized the federal-state conflict at the heart of this case. In the April 17 Order, the state court, *for the first time*, reinterpreted this Court's *federal* Consent Decree[1] to bar Sable from complying with a Defense Production Act order ("DPA Order") issued by, and overseen by, the U.S. Secretary of Energy pursuant to authority directly delegated by the President. And in the April 17 Order, the state court, *for the first time*, threatened Sable with contempt for continuing to comply with federal law. The April 17 Order is the precise type of state-court invocation of coercive judicial power against persons acting under federal direction that 28 U.S.C. § 1442—the federal officer removal statute—was enacted to displace.

California miscasts the removal as governed by § 1446 alone; instead, the removal was effectuated under § 1442. And § 1442 contains no time restrictions on removal. But even if Sable and the United States were subject to a thirty-day clock, California's argument that the clock began to run on March 13, 2026—the date of

---

[1] *See United States v. Plains All Am. Pipeline, L.P.*, No. 20-cv-02415, ECF 6-1 (C.D. Cal. Mar. 13, 2020).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

the DPA Order—is foreclosed by controlling Ninth Circuit authority. The DPA Order is not a state court "pleading, motion, order or other paper" within the meaning of § 1446(b)(3). "[T]he removal clock begins upon the revelation of a federal officer ground for removal." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021). The April 17 Order is the earliest point that grounds for removal became "unequivocally clear and certain." *Id.* Courts consistently find that state court orders initiating contempt proceedings against a federal officer—just like the April 17 Order—begin the thirty-day removal clock. Sable's and the United States' May 14 removal was within that window.

Removal also is not barred by sovereign immunity. Federal officer removal under § 1442(a)(1) is an independent basis for federal jurisdiction that operates regardless of whether the underlying claims sound in state law. As California belatedly acknowledges, sovereign immunity is irrelevant to the grounds for removal here: a state court exerting its coercive power in an effort to enjoin Sable from complying with a federal directive.

California's Motion to Remand should be denied.

## II.   BACKGROUND

This case has a convoluted history as a result of California's shifting positions. It began as a state procedure-based challenge by Petitioners Center for Biological Diversity et al. ("Petitioners") *against* California (which had been overseeing Sable's path to restart two onshore pipeline segments). It then became an opportunity for California to switch sides, team up with Petitioners, and argue in support of an injunction against Sable, despite California's nominal defendant status and Petitioners' lack of any claims against Sable.

As the Court is aware, from 2016 through 2025, certain onshore portions of the Santa Ynez Pipeline System ("SYPS")—segments 324 and 325—were classified as intrastate pipelines and regulated by California's Office of the State Fire Marshal

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

2

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

("OSFM") subject to delegation under the federal Pipeline Safety Act. *See* Decl. of J. Caldwell Flores ¶ 6, ECF 55-2 ("Flores Decl."). The intrastate classification followed a 2015 oil spill by the segments' former owner, Plains All American Pipeline ("Plains"). Following that spill, Plains removed oil from the segments and cancelled its Federal Energy Regulatory Commission tariffs.

*The Superior Court enjoins OSFM under state law.* In 2020, the United States and California entered into a Consent Decree with Plains that provided for financial compensation for the harms caused by the spill and provided a path to restart the onshore pipeline segments. *See generally United States v. Plains All Am. Pipeline, L.P.*, No. 20-cv-02415 (C.D. Cal.); Flores Decl. ¶ 6. The Consent Decree required Plains to obtain a waiver of certain pipeline safety regulations related to corrosion and cathodic protection for the onshore segments before resuming oil flow. *Id.* ¶ 7. After acquiring the SYPS in 2024, Sable contractually agreed to follow certain provisions of the Consent Decree that apply to the onshore segments. *See Plains*, ECF 43-1 at 98-106. In December 2024, consistent with the requirements of the Consent Decree, OSFM issued "State Waivers" approving Sable's alternative means of complying with the relevant pipeline safety regulations. A "State Waiver" is a mechanism by which state regulators can waive certain pipeline safety requirements while also imposing additional safety conditions on a pipeline. *See* Flores Decl. ¶ 13.

On April 15, 2025, Petitioners filed this action in state court. *See* ECF 1-2. Petitioners sought a writ of mandate, and declaratory and injunctive relief, arising from OSFM's alleged violations of (a) the California Environmental Quality Act ("CEQA"), (b) the state Elder California Pipeline Safety Act ("Elder Act"), which applies to intrastate pipelines operated under OSFM's jurisdiction, and (c) the federal Pipeline Safety Act. The sole named defendants were OSFM and the State Fire Marshal. Sable was named as the real parties in interest.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

3

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

It was in this posture that, on July 29, 2025, the Superior Court issued its original injunction over objections by *both* Defendants and Sable, whose interests were then at least partially aligned. In its order, the Superior Court held that Petitioners had not shown a likelihood of success on the merits of their CEQA or federal Pipeline Safety Act claims. *See* ECF 1-4 at 15-22. It held, however, that Petitioners had shown a likelihood of success on their claims under the state Elder Act, which required the State Waivers to include a discussion of factors that OSFM considered significant in granting the State Waivers. *See id.* at 22-24. The Superior Court thus "narrowly grant[ed] the motions for preliminary injunctions to enjoin the restart of the Las Flores Pipelines . . . until 10 court days following Sable's filing and service of notice that Sable has received all necessary approvals and permits for restarting the Las Flores Pipelines and that Sable intends to commence such restart." *Id.* at 25. The Superior Court defined "Restart" as the term was defined in the Consent Decree. *Id.* at 9. The Preliminary Injunction thus enjoined Sable, *on a state law basis*, from resuming transportation of oil through the SYPS onshore segments until ten court days after Sable filed and served notice that it had received all necessary approvals and permits and of its intent to commence "restart" as defined under the Consent Decree. *See id.* at 9, 25.

To be clear, the original premise for this injunction at the heart of this case—that California failed to provide a discussion of factors when issuing the State Waivers—is worlds apart from the current posture. As California acknowledges, PHMSA has asserted jurisdiction, and Sable has relinquished the State Waivers and is no longer relying on them.

***California moves the goalposts.*** Beginning in fall 2025, California's conduct towards Sable changed from that of a neutral regulator to an antagonist. In September, the California Legislature passed, and Governor Newsom signed, Senate Bill (SB) 237. SB 237 facilitated new onshore in-state drilling in Kern County,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

California, but in exchange, the legislation enacted new pipeline laws that were expressly designed to stop Sable's offshore federal lease production and pipeline system from operating.  Specifically, those new provisions—which are the subject of a separate challenge in the Eastern District of California, *see Pac. Pipeline Co. v. California*, No. 26-cv-01486 (E.D. Cal.)[2]—were designed to target Sable by creating new requirements for any pipeline that was idled as of December 31, 2025. The Legislature viewed those new regulations as impossible for Sable to timely and economically satisfy before the end of 2025, as the state believed they would impose substantial additional permitting and environmental review obligations.[3]

With SB 237's December 31, 2025 deadline looming, the state had a new goal: delay flow of oil through the onshore segments of the pipeline system as long as possible, and at least through December 31, 2025, to further the state's assertion that SB 237 might apply to Sable.  State agencies with whom Sable had been working

---

[2] To be clear, and as explained in that lawsuit, Sable vigorously disputes that SB 237 applies to any portion of the SYPS.

[3] Legislators were clear that the bill was intended to make Sable's operations more difficult and less likely to succeed:

- State Senator Monique Limon stated that the legislation responded to "community concerns over the restart process of the Sable Offshore Pipeline in Santa Barbara County." [https://sd21.senate.ca.gov/news/2025/april/legislation-establish-clear-pipeline-restart-requirements-clears-first-committee]

- Assemblymember Gregg Hart stated that he was "actively working to prevent the restart of oil operations from the very platform and pipeline system responsible for the 2015 spill." [https://hart.asmdc.org/press-releases/20250604-hart-legislation-protect-californias-coast-advances-senate]

- State Senator Timothy Grayson stated that the legislation would "revis[e] permitting requirements for the Sable pipeline." [https://calmatters.digitaldemocracy.org/hearings/278274]

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

collaboratively and in good faith suddenly went silent. For example, Sable had been negotiating with the California Department of Parks and Recreation ("State Parks") over the Gaviota State Park easement for over a year, but the agency stopped returning Sable's calls in August—ignoring eighteen separate follow-ups. *See* Declaration of Jessica Stebbins Bina ("Bina Decl."), Ex. A ¶¶ 18-48. State Parks did not resurface until December 26, 2025, with its first substantive response in months. *Id.* ¶ 44. OSFM changed course at the same time. After OSFM staff had confirmed to Sable multiple times that Sable's pipeline repairs satisfied the State Waiver requirements, Sable submitted its Restart Plan under the Consent Decree on September 11, 2025, but OSFM never acted on that submission. *See* Bina Decl., Ex. B ¶ 6. Then, on October 22, 2025, OSFM adopted a brand-new interpretation of the State Waivers: that they allegedly required another round of pipeline repairs— repairs that could not feasibly be completed before December 31, 2025—in order to allow restart of the onshore segments under the Consent Decree. *Id.* ¶¶ 7-22.

***PHMSA takes jurisdiction; the Ninth Circuit denies Petitioners' demand for a stay.*** Given the substantial differences between Plains' historic operations of segments 324 and 325 and Sable's newly consolidated ownership and operations— comprising the entire SYPS, from federally leased platforms through the offshore pipeline segments in federal and state waters to the Las Flores Canyon facility and the onshore pipeline segments—Sable reevaluated its position regarding whether the SYPS was properly within OSFM's jurisdiction. On December 17, 2025, PHMSA determined that it had exclusive jurisdiction to regulate the SYPS, including the onshore segments, because the SYPS is an *interstate* pipeline as defined in the Pipeline Safety Act. *See* Flores Decl. ¶¶ 25-27. PHMSA's jurisdiction displaced OSFM's limited regulatory role over the onshore segments, rendering the State Waivers irrelevant.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

6

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

On December 22 and 23, 2025, PHMSA approved Sable's Restart Plan and issued an Emergency Special Permit allowing operations.  Flores Decl. ¶¶ 28-29.  Petitioners here immediately challenged those approvals in the Ninth Circuit and sought an emergency stay of their effect, asserting that oil would flow through the pipeline unlawfully if not enjoined.  On December 31, 2025, the Ninth Circuit denied the motion for emergency stay.  *See* Order, *Env't Def. Ctr. v. PHMSA*, No. 25-8059, ECF 21 (9th Cir. Dec. 31, 2025).

On January 5, 2026, Sable applied to the Superior Court to dissolve the injunction as moot, given PHMSA's assertion of jurisdiction over the pipeline and issuance of the emergency special permit.  *See* ECF 32 at 399-410.  The Superior Court set a hearing for February 27, 2026.  For the first time, OSFM, the ostensible defendant in the case, aligned with the Petitioners against Sable, the real party in interest, and both opposed lifting the injunction.  ECF 37 at 14.  The Superior Court denied this request, asserting that PHMSA's jurisdiction was not certain because the Ninth Circuit "ha[d] not issued a final ruling," notwithstanding the Ninth Circuit's denial of Petitioners' stay motion.  *Id.* at 18-19.

***The Executive Branch issues the DPA Order; Sable complies and seeks relief in state court.***  On March 13, 2026, the U.S. Secretary of Energy, acting under delegated authority from the President, determined that transporting crude oil through the SYPS is essential to core national defense and security needs.  He then issued the DPA Order, which requires Sable to immediately resume hydrocarbon transportation through the entire SYPS, including the onshore pipeline segments subject to the state court injunction, under pain of civil and criminal penalties.  *See* ECF 1-1.  In compliance with the DPA Order, Sable safely resumed transporting oil through the SYPS, including the onshore segments.  *See* Flores Decl. ¶¶ 32-45.  The DPA Order specifically names Sable, requiring it to act under the direction of the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

Secretary of Energy and to report regularly on its progress. *See* ECF 1-1 at 4; *cf.* 28 U.S.C. § 1442(a)(1).

Immediately following the issuance of the DPA Order, Sable petitioned the Superior Court for *ex parte* relief from the injunction in light of the intervening federal directives. *See* ECF 37 at 144-61. Petitioners simultaneously moved *ex parte* to enforce the injunction and to have the court issue an order to show cause why Sable should not be held in contempt. *Id.* at 71-83. Once again, OSFM, the ostensible defendant, aligned with Petitioners and urged the court to maintain the injunction—premised on *OSFM's* alleged violation of *state* law—against *Sable*. *Id.* at 294-311. The state court held a hearing on Sable's *ex parte* motion on March 17, 2026, but it made no decision on that date, citing the "complex, nuanced issues" presented and the need for "more time and more extensive briefing." *See* ECF 55-3 at 3. There was no ruling adverse to Sable or any indication that the state court would enforce the Preliminary Injunction in a manner conflicting with the DPA Order. Instead, the Superior Court issued a very short minute order continuing the matters "to allow time for proper briefing." ECF 37 at 357.

On April 17, 2026, following supplemental briefing, the Superior Court held a hearing and issued an order denying Sable's motion to lift the injunction and—for the first time—held that (1) the DPA Order did not, and lawfully could not, authorize Sable to flow oil through the pipeline in light of the Superior Court's interpretation of the Consent Decree, and (2) that Sable remained obligated to comply with the Superior Court's preliminary injunction. ECF 1-5 at 15-16. Positing itself as the enforcer of the federal Consent Decree, the court concluded that the Consent Decree "requires approvals from the OSFM, which in turn must comply with state procedures in granting such approvals," and that the DPA Order did not preempt these claimed requirements. *Id.* at 16. The Court then noted that it was "deeply

LATHAM&WATKINS℠
ATTORNEYS AT LAW
LOS ANGELES

8

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

concerned with noncompliance with the preliminary injunction" and continued the hearing on Petitioners' order to show cause. *Id.* at 17.

Unlike the March 17 hearing—at which the court declined to issue any adverse order against Sable—the April 17 Order affirmatively denied dissolution of the Preliminary Injunction, subordinated the DPA Order to the Consent Decree, and set contempt proceedings in motion.

***Removability.***  At the time it was filed, the case was not removable by Sable, as Sable was not a defendant.  Nor was there any basis to assert federal officer removal, as at that time Sable was acting solely on its own behalf.  That remained the case through the original injunction, which was issued solely on a state law basis against a state entity.  And it remained true through the February 27 hearing on whether PHMSA's jurisdiction mooted the State Waivers.  At all times prior to March 13, 2026, Sable was solely acting as a private company, not at the direction of federal authorities.

After March 13, 2026, Sable was—for the first time—acting as a federal officer.  But it did not yet have in place proceedings "against or directed to [it]" "for or relating to any act under color of such office."  *See* 28 U.S.C. §§ 1442(a).  While Petitioners had asked the Superior Court to commence such proceedings, the court had deferred decision not only on that request, but also on Sable's request to lift the injunction and allow it to carry out its federally mandated duties.

That changed on April 17.  Unlike the March 17 hearing—at which the court declined to issue any adverse order against Sable—the April 17 Order affirmatively denied dissolution of the Preliminary Injunction, subordinated the DPA Order to the Consent Decree, and set contempt proceedings in motion.  By doing so, the state court created ancillary proceedings aimed directly against the United States' interests, interfering with the Secretary of Energy's delegated presidential authority to address national security interests under the Defense Production Act, and placing

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

Sable in an impossible position: comply with the DPA Order's command to immediately transport hydrocarbons under pain of criminal penalties, or comply with the Preliminary Injunction under pain of state court sanctions. *See* 50 U.S.C. §§ 4513, 4557. As a result, the April 17 Order made the case removable for the first time under 28 U.S.C. § 1442(a)(1).

On May 14, 2026, Sable and the United States jointly removed this action under 28 U.S.C. § 1442(a)(1). This motion, alongside Petitioners' *Ex Parte* Application for Immediate Remand, ECF 45, followed.

***Related Actions.*** The SYPS is at the center of multiple actions that raise complicated and fact-intensive questions of federalism, preemption, and national security. Four of those actions—in addition to this one—are currently pending in this Court. *See United States v. Plains All Am. Pipeline, L.P.*, No. 20-cv-02415 (C.D. Cal.) (whether the Consent Decree should be terminated); *Sable Offshore Corp. v. Quintero*, No. 26-cv-02739 (C.D. Cal.) (*State Parks I*) (whether Sable has the right to transport oil through a segment of the SYPS crossing Gaviota State Park); *Cal. Dep't of Parks & Rec. v. Sable Offshore Corp.*, No. 26-cv-02946 (C.D. Cal.) (*State Parks II*) (same); *California v. Wright*, No. 26-cv-03396 (C.D. Cal.) (whether the DPA Order, which compels Sable to operate the SYPS in furtherance of national security objectives, is lawful under the Constitution and certain federal statutes and regulations). Lastly, in *California v. PHMSA*, Nos. 25-8059, 26-508 (9th Cir.), the Ninth Circuit is considering whether PHMSA or OSFM has jurisdiction over certain onshore portions of the SYPS.

## III.   **ARGUMENT**

### A.   **Removal Is Appropriate**

Sable and the United States jointly removed this action under 28 U.S.C. § 1442(a)(1), which authorizes removal to federal court of:

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

10

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

[a] civil action . . . that is commenced in a State court and that is against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) . . . for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a).  Sable bears the burden of establishing three elements: (1) that it is a "person" acting under a federal officer; (2) that the state court action is "for or relating to any act under color of such [federal] office"; and (3) that it has a colorable federal defense.  *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052, 1057-58 (2026).  "[T]he right of removal is absolute for conduct performed under color of federal office, and . . . the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"  *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).  The Ninth Circuit thus has directed that § 1442(a)(1) is "to be liberally construed."  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).  This liberal construction also extends to a determination of whether federal officer removal was timely under § 1446.  *Id.* at 1252-53.

California does not contest that Sable meets the elements for federal officer removal.  Nor could it.  Sable is "acting under" a federal officer in complying with a targeted federal directive that compels Sable to operate the SYPS under continuing federal supervision.  And the DPA Order provides a colorable defense to the state court's April 17 Order and its initiation of contempt proceedings.  Instead of the substantive merits, California's remand motion focuses on the timeliness of Sable's and the United States' removal notice.

## B.    Removal Is Timely

Like Petitioners in their *Ex Parte* Application for Immediate Remand, ECF 45, California argues that removal was untimely because a thirty-day clock began to run with the issuance of the DPA Order on March 13, 2026—or, at the latest, with the filing of Petitioners' motion to enforce the preliminary injunction on March 16, 2026.  California is wrong.  The thirty-day clock does not apply to removal under

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

Section 1442, and, even if it did, the April 17 Order was the triggering event—meaning Sable's May 14 removal was timely.

1.   *Nonparties May Remove Proceedings On Federal Officer Grounds*

The Ninth Circuit, like other circuits, interprets the federal officer removal statute broadly to permit removal when a federal officer, or someone acting at or under their direction, is faced with a "civil action . . . that is against or directed" to them.  28 U.S.C. § 1442(a).  The phrase "civil action" "include[s] any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order . . . is sought or issued."  *Id.* § 1442(d)(1).  The "words 'acting under' are broad," and the statute is "liberally construed."  *Goncalves by and through Goncalves v. Rady Children's Hosp. S.D.*, 865 F.3d 1237, 1245 (9th Cir. 2017) (cleaned up).  Here, Sable and the United States removed this proceeding when the Superior Court threatened Sable with contempt for acts it took at the direction of the United States.  It was this conflict—not the underlying pleadings, the July 2025 injunction, or even the DPA Order—that made this case removable.

As the Ninth Circuit explained in *Goncalves*, federal officer removal requires more than simply looking at the pleadings and the parties—the stuff of federal question or diversity removal.  The removing parties in *Goncalves* were "not defendants or parties nor did they seek to intervene or were they going to incur any obligations as a result of the litigation."  *Id*. at 1249.  Instead, in a case about expunging a lien, *nonparties* removed on the grounds that the case could impair the federal government's interest in subrogation.  *Id*. at 1249-50.  The Ninth Circuit explained that those portions of the action that threatened the Goncalves' federally required actions were properly removable, despite being ancillary to the action as a whole.  *Id*. at 1250-51.  This comports with the removal statute's purpose "to ensure a federal forum in any case where a federal official is entitled to raise a defense

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

arising out of his official duties." *Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir. 1986) (quotation omitted).

The same is true here. Sable is a real party in interest, and the United States is a nonparty, to the proceedings below. The threat to the United States' interest—and Sable's interest in carrying out the United States' directives under the DPA Order—was triggered by the Superior Court's April 17 Order, which first created a conflict with Sable's federal obligations by subordinating the DPA Order to the state court's interpretation of the federal Consent Decree. Defendants ask this Court to penalize Sable for not rushing to remove this case—a state court case initially only involving state claims against a state agency—at a time when it was far from certain that any conflict with federal law even existed.

2.     *Section 1446(b)(3)'s Thirty-Day Clock Does Not Apply To Removal Under Section 1442*

Put simply, the time limit in § 1446(b)(3) does not apply. Section 1446 governs "*[a] defendant or defendants* desiring to remove any civil action," 28 U.S.C. § 1446(a) (emphasis added), but Sable and the United States did not remove this action under § 1446 but rather under § 1442, which lacks similar language concerning the thirty-day clock. Neither Sable nor the United States are "defendants" in this action, and the thirty-day limit in § 1446 textually applies only to "defendants." *See Mia. Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349, 1366 (N.D. Fla. 2018) (holding time limits under § 1446 apply only to defendants). California's timeliness argument fails for this reason alone.

California relies heavily on *Enbridge Energy, LP v. Nessel*, 146 S. Ct. 1074 (2026), for the proposition that removal deadlines are mandatory and equitable tolling is unavailable. ECF 46 at 6, 9, 13-14. But *Enbridge* is inapposite: it addressed ordinary removal under § 1441 and § 1446, not federal officer removal under

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

13

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

§ 1442, and no one is asking the Court to apply equitable tolling here.  Nothing in *Enbridge* disturbs the longstanding liberal construction afforded to § 1442.[4]

        3.    *Removability Was First Ascertainable After The April 17 Order*

Even if the thirty-day limit does apply here, Sable timely removed this action.  Removal timing is not meant to be a guessing game:  the time limit begins running only when the grounds for removal are first "unequivocally clear and certain." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021).  That occurred with the issuance of the April 17 Order.  Neither of California's alleged triggering events—the March 13 DPA Order or the March 16 filing of Petitioners' motion to enforce the preliminary injunction—meets this standard.

**The DPA Order.**  The DPA Order cannot be a triggering event, because it is not a qualifying state court "pleading, motion, order or other paper" within the meaning of § 1446(b)(3) that triggers the thirty-day clock.  *Dietrich*, 14 F.4th at 1094.  California cites no authority for the novel proposition that a document issued outside the context of the state court action can start the clock for its removal.  Nor could it: "Within the Ninth Circuit, the phrase 'other paper' has been interpreted as 'documents generated within the state court litigation[.]'" *Rose v. Beverly Health & Rehab. Servs., Inc.*, No. 06-cv-0067, 2006 WL 2067060, at *5 (E.D. Cal. July 22, 2006); *see also Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 266 (5th Cir. 2001) (noting general consensus that "court decisions in unrelated cases [do] not [] constitute 'orders' or 'other papers' under § 1446(b) and [are] not to be grounds for removal," except for controlling precedential decisions).

---

[4] Even for defendants, timeliness for federal officer removal is "liberally construed," *see Durham*, 445 F.3d at 1253, and the removal clock does not begin to run until "revelation of a federal officer ground for removal," *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

California also wrongly argues that Sable recognized that issuance of the DPA Order started a removal clock because it removed *State Parks II* on March 19, 2026. ECF 46 at 11. But unlike this case, removability was evident on the face of California's complaint because *State Parks II* involves direct claims against Sable that inherently conflict with Sable's compliance with the DPA Order. And while an initial pleading will start the removability clock under § 1446(b)(1) if it simply "set[s] forth" a ground for removal, a subsequent paper—like an amended pleading, motion, order, or other paper—only starts the removability clock under § 1446(b)(3) if it provides grounds from which removal can be "ascertained." Recognizing this different standard, the Ninth Circuit requires greater certainty before starting the removal clock under § 1446(b)(3): it must be "unequivocally clear and certain" that grounds for removal exist. *Dietrich*, 14 F.4th at 1094.

Here, the grounds for removal are completely untethered to the complaint—which contains state procedural claims against a state agency relating to now-abandoned State Waivers. The CBD/EDC State Action was filed on April 15, 2025—nearly a year before the DPA Order—as a challenge to OSFM's issuance of the State Waivers under state environmental and pipeline safety laws. Sable was named only as a real party in interest, and no state-court process had been directed at Sable for federally-directed conduct. Unlike *State Parks II*, the interplay between the federal directive and the ongoing state proceedings required further development—specifically, the state court's April 17 Order reinterpreting its injunction to subordinate the DPA Order and initiate contempt proceedings—before the basis for federal officer removal became ascertainable under the more demanding "unequivocally clear and certain" standard of § 1446(b)(3). *See id.*

***Petitioners' March 16 Motion.*** Petitioners' motion to enforce the preliminary injunction also did not start the clock for removal under § 1446(b)(3). The preliminary injunction rested on the state court's conclusion that the State Waivers

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

were likely noncompliant with state procedural requirements. *See* ECF 1-4 at 25, 46. And though Petitioners' motion to enforce alleged that Sable had restarted the SYPS in violation of the preliminary injunction, it notably made no reference to the DPA Order, *see* ECF 37 at 71-82—making it far from "unequivocally clear and certain" that there were grounds for federal officer removal. The state court, moreover, *declined to enforce* the injunction in March 2026—making it entirely reasonable for Sable to defer removal until the state court created the conflict by refusing to dissolve the preliminary injunction and entertaining contempt.[5]

California accuses Sable and the United States of "gamesmanship" and "bad faith" to "obstruct the state court proceeding." ECF 46 at 6, 10. But the removal of this case in May, rather than March, is consistent with a good faith effort to ascertain whether federal officer removal grounds even existed. None of Petitioners' underlying claims provide grounds for removal. And their motion to enforce fails to even mention the DPA Order. If the state court had dissolved or stayed the preliminary injunction in light of the DPA Order when the court first analyzed the issue on April 17, then no federal officer removal grounds would likely exist. Instead, the state court initiated contempt proceedings in the face of the DPA Order, and Sable and the United States removed on those grounds. This is not gamesmanship; it is a reasonable, common-sense approach to removal.

Indeed, the "unequivocally clear and certain" standard that the Ninth Circuit has adopted for removal under § 1446(b)(3) supports this more common-sense approach. It *limits* gamesmanship by "preventing plaintiffs from strategically

---

[5] Under Ninth Circuit law, a defendant does not have a duty of inquiry if an earlier pleading or other document is "indeterminate" with respect to removability. *Kenny v. Wal-Mart Stores*, 881 F.3d 786, 791 (9th Cir. 2018); *see also Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693-94 (9th Cir. 2005). Even where apparent grounds for removal could be discovered through investigation, a defendant does not lose its right to remove by failing to conduct that investigation. *See id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

starting the removal clock without the defendants' realization[.]" *Dietrich*, 14 F.4th at 1094. It promotes judicial efficiency by "avoid[ing] the specter of inevitable collateral litigation over whether the amended pleading, motion, order or other paper contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry[.]" *Id.* (cleaned up). It "ensure[s] respect for the jurisdiction of state courts" by "assur[ing] that removal occurs once the jurisdictional facts supporting removal are evident" and "guarding against premature and protective removals." *Id.* (cleaned up). And it frees defendants from needing to risk "fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal." *Durham*, 445 F.3d at 1251.[6]

By emphasizing Petitioners' March motion to enforce the preliminary injunction, California assumes that facts *allowing* removal are sufficient to *require* removal under § 1446(b)(3). But *Dietrich* expressly rejected that argument when it adopted the "unequivocally clear and certain" standard. 14 F.4th at 1094. Moreover, the Ninth Circuit requires that any doubts about the timeliness of federal-officer removal be resolved in favor of removal. *Durham*, 445 F.3d at 1252-53 (extending the liberal construction of federal officer removal to timeliness). That Sable might have attempted removal of the state court action earlier accordingly does not mean that removal here was untimely. *See id.* It was only when the April 17 Order confirmed the preliminary injunction remained in effect *notwithstanding* the DPA Order did a cognizable conflict—and thus federal officer jurisdiction—first become "unequivocally clear and certain." *Dietrich*, 14 F.4th at 1094.

---

[6] If Sable and the United States had attempted removal in March, it is entirely possible that California and Petitioners would have opposed removal for being too *early* (i.e., before any DPA-related controversy had crystallized). The Ninth Circuit's "unequivocally clear and certain" standard erases Sable's need to play this guessing game about timing. *See Dietrich*, 14 F.4th at 1094.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

The Ninth Circuit has held that the key moment for the removal time limit is a state court's *order* initiating contempt proceedings against a federal officer, which accordingly provides the first clear grounds for removal. In *Swett*, a federal employee in a state court action refused to answer certain questions even after an order compelling him to do so, and the state court accordingly held him in contempt. 792 F.2d at 1449. The federal employee *then* removed the action to federal court, and the Ninth Circuit affirmed: "*Until this order to testify* [against his wishes], there was no basis for removal under § 1442(a)." *Id*. at 1451 (emphasis added). That is because "a contempt action against a federal official for failure to comply with a state court order, although ancillary to the underlying state action, is a distinct action which may be removed." *Id*. at 1450. And significant here, the Ninth Circuit rejected the state court plaintiffs' argument that the federal employee had waived his right to removal by consenting to the initial deposition. *Id*. at 1451; *see also Nationwide Invs. v. Miller*, 793 F.2d 1044, 1045-48 (9th Cir. 1986).

*FBI v. Superior Court of California*, 507 F. Supp. 2d 1082 (N.D. Cal. 2007), is likewise instructive. There, in a state criminal case, the defendant and prosecution issued separate subpoenas ordering an FBI agent to testify about whether the defendant had been a confidential informant. *Id*. at 1085. The United States stated that the FBI agent would not appear, though it did not remove the action. *Id*. But when the state court itself subsequently ordered the agent to testify, the United States removed. *Id*. at 1085-86. There was no assertion that the removal, which took place within thirty days of the state court order but well after service of the first subpoena, was untimely. The same is true here: the "state's power to subject federal officers to the state's process," *Nationwide Invs.*, 793 F.2d at 1047, was not invoked until the April 17 Order.

Section 1442(d)(1) reinforces this conclusion. Petitioners' April 17 success in subordinating the DPA Order to the state court's view of the Consent Decree—

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

and the resulting initiation of contempt proceedings—qualifies as exactly the kind of coercive process within a larger state proceeding that, the Ninth Circuit has recognized, "may necessitate[] removing the entire action." *Swett*, 792 F.2d at 1450; *see also Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995) (§ 1442 reaches "any proceeding in which state judicial civil power was invoked against a federal official"). And the April 17 initiation of "a contempt action" against Sable for "failure to comply with a[n ancillary] state court order" was the "distinct action" that provided grounds for Sable's timely removal on May 14. *See Swett*, 792 F.2d at 1450.

### 4.    The United States' Removal Was Undoubtedly Timely

Finally, regardless whether Sable timely removed, the United States' removal was clearly timely. *FBI*, *Nationwide*, and *Swett* all apply with even greater force to the United States: when a federal officer or agency is a nonparty, it is not required to parse every motion that may or may not create a federal conflict, but rather may wait to remove until the state court enters an order exercising or asserting its power. Critically, neither event California identifies as starting the clock—the March 13 DPA Order or Petitioners' March 16 motion to enforce—was directed at the United States, which was a nonparty served with no state-court process; no removal clock could run against the United States based on those events. The state court first asserted coercive power against the United States' interests for the first time in its April 17 Order subordinating the DPA Order to the preliminary injunction. So even if the Court finds that *Sable's* removal was untimely (and it should not), it must still retain jurisdiction because the *United States'* removal was clearly timely. *See Durham*, 445 F.3d at 1253 ("[A] federal officer or agency defendant can unilaterally remove a case under section 1442.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

### C.   Removal Is Not Barred By Sovereign Immunity

Sovereign immunity issues are irrelevant.  Moreover, California's alleged sovereign injury lacks plausibility when it has actively endorsed the injunction against OSFM, *see* ECF 37 at 294-311, and aligned with the Petitioners in maintaining it.

In any event, as California concedes in its supplementary statement, the federal-state conflict and contempt proceedings contemplated by the April 17 Order constitute an "ancillary" proceeding, a "distinct action which may be removed." *Swett*, 792 F.2d at 1450; *see* 28 U.S.C. § 1442(d)(1).  In that circumstance, the proper procedure is to "remov[e] the entire action," resolve the contempt issues, and then determine "whether to hear the rest of the action or remand it to the state court from which it was removed."  *Swett*, 792 F.2d at 1450.  Because "invocation of the Eleventh Amendment . . . d[oes] not destroy removal jurisdiction over the entire case," *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998), this Court may, at a minimum, resolve the "ancillary" and "distinct" contempt and preliminary injunction questions now.  *See also Kruse v. Hawai'i*, 68 F.3d 331, 334 (9th Cir. 1995) ("[A]n Eleventh Amendment bar against some of the claims of an action does not prevent removal of the action.").

Sovereign immunity thus offers no basis to grant California's motion.  If at some point the threat to federal interests—including the contempt and preliminary injunction issues—are resolved, there is nothing to prevent the Court from taking the action it considers appropriate at that time.  But as California effectively concedes, *see* ECF 76 at 3, remand on this basis would be inappropriate now.

### D.   Broader Federal Interests Compel Retention Of Jurisdiction

This Court is currently considering many of the same underlying issues as part of competing motions to terminate and enforce the Consent Decree scheduled for hearing in the *Plains* action, and as part of a motion for preliminary injunction in the

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

20

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

*Wright* action. Separately, the Ninth Circuit is considering whether PHMSA or OSFM has jurisdiction over the onshore portions of the SYPS. Remand would create the risk of inconsistent adjudications on overlapping federal questions, and any relief that could have been issued from the state court's May 22 hearing would likely be obviated by this Court's consideration of the DPA Order shortly thereafter.

Federal law permeates this dispute. The President declared a national energy emergency. Exec. Order No. 14391, 91 Fed. Reg. 13199 (Mar. 13, 2026); *see also* Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025). The Secretary of Energy, exercising DPA authority delegated by Executive Order 13603, issued the DPA Order to alleviate that emergency. California's own senior officials have treated this dispute in federal terms—confirming that it is, at its core, a federal-state conflict. Governor Newsom publicly "condemned President Trump and Energy Secretary Chris Wright's . . . orders invoking the Defense Production Act to attempt to restart the Sable Offshore pipeline." *See* Press Release, Off. of Gov. Gavin Newsom (Mar. 13, 2026).[7] Attorney General Bonta likewise framed the dispute as one in which the President "is illegally restarting oil transportation through California's pipelines." *See* Press Release, Off. of Att'y Gen. (Apr. 6, 2026).[8] Petitioners have done the same: CBD's counsel called the DPA Order "a revolting power grab by an extremist president," and EDC's counsel told the press that "[t]he federal government handed Sable a get-out-of-jail-free card."[9] These characterizations underscore the very

---

[7] https://www.gov.ca.gov/2026/03/13/governor-newsom-condemns-and-vows-to-fight-trump-for-exploiting-iran-war-crisis-of-his-own-making-to-harm-californias-coastline/

[8] https://oag.ca.gov/news/press-releases/attorney-general-bonta-opposes-sable%E2%80%99s-request-special-permit-waive-federal

[9] https://biologicaldiversity.org/w/news/press-releases/trump-administration-orders-restart-of-dangerous-santa-barbara-oil-pipeline-2026-03-13/; https://www.newspress.com/2026/04/19/agent-orange-precedent-inside-the-latest-ruling-against-sable-oil-pipeline/

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

"local prejudice" against federal directives that § 1442(a)(1) was designed to guard against. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007).

### E.   If This Court Remands, It Should Stay Any Order Pending Appeal

If this Court determines that remand is appropriate, it should stay any order pending appeal.  Sable will likely seek immediate interlocutory review.  *See* 28 U.S.C. § 1447(d) (stating that federal officer jurisdiction is an exception to the general nonappealability of remand orders).  A stay follows the traditional four-factor test of (1) "likel[ihood] to succeed on the merits," (2) "irreparabl[e] injur[y]," (3) potential "injur[y] [to] the other parties," and (4) the public interest. *California by & through Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 768 (9th Cir. 2025).

Sable satisfies that standard.  It is likely to succeed on the merits for the reasons explained above.  And it will suffer immediate and irreparable injury if this Court remands this case while an appeal of the remand order is pending because this Court's remand would deny Sable the federal forum that Congress "guarantee[d]." *Id.* at 771 n.7.  And this harm is irreparable even if Sable is ultimately successful on appeal, because "subjection to an illegitimate proceeding" is a "here-and-now injury" that "cannot be undone." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).  Nor will any other party suffer from litigating in this Court, the federal forum that Congress created by statute for these kinds of claims—meaning a stay also presumptively serves the public interest.

## IV.   CONCLUSION

Defendants' Motion to Remand, ECF 46, should be denied.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

22

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

Dated:  June 3, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Jessica Stebbins Bina*

LATHAM & WATKINS LLP
  Jessica Stebbins Bina (Bar No. 248485)
  *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:   +1 424.653.5501

BABST CALLAND
  Nicholas McDaniel (*pro hac vice*)
  *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:   +1 202.853.3491

HOLLAND & KNIGHT LLP
  Andrew Klair (Bar No. 334960)
  *andrew.klair@hklaw.com*
560 Mission St., Suite 1900
San Francisco, CA 94105
Telephone: +1 415.743.6962
  James W. Noe (*pro hac vice* pending)
  *jim.noe@hklaw.com*
  Rafe Petersen (*pro hac vice*)
  *rafe.petersen@hklaw.com*
  Matthew Z. Leopold (*pro hac vice* pending)
  *matt.leopold@hklaw.com*
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525

*Attorneys for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Real Parties in Interest Sable Offshore Corp. and Pacific Pipeline Company, hereby certifies that this Opposition to Defendants' Motion to Remand contains 6,992 words, which complies with the word limit for Local Rule 11-6.1, and is less than 25 pages, which complies with this Court's New Case Order, ECF 70 ¶ 3.A.

Dated: June 3, 2026

/s/ *Jessica Stebbins Bina*
Jessica Stebbins Bina

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

24

NO. 2:26-cv-05242-SVW-SSCx
REAL PARTIES IN INTEREST'S OPPOSITION TO
DEFENDANTS' MOTION TO REMAND