# Exhibit A

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
BRADLEY CRAIGMYLE
JUSTIN D. HEMINGER
Deputy Assistant Attorneys General
STEFAN J. BACHMAN (DC Bar Number 90008649)
Email: stefan.bachman@usdoj.gov
Senior Attorney
Environment and Natural Resources Division
United States Department of Justice
150 M Street, N.E., Room 2.900
Washington, DC 20002
Tel: (202) 598-9566
*Counsel for United States of America*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY et al.,<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.,<br><br>Respondents/Defendants.<br><br>SABLE OFFSHORE CORP. et al.,<br><br>Real Parties in Interest. | Case No. 2:26-cv-05242-SVW-SSCx<br><br>**UNITED STATES' NOTICE OF MOTION TO DISMISS, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: [TBD]<br>Time: [TBD]<br>Judge: Hon. Stephen V. Wilson |

ENVIRONMENTAL DEFENSE CENTER et al.,

Petitioners/Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al.,

Respondents/Defendants.

SABLE OFFSHORE CORP et al.,

Real Parties in Interest.

## NOTICE OF MOTION AND MOTION TO DISMISS

***Please take notice*** that, pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(7) and 19, the United States hereby moves to dismiss this action. The United States' motion will be heard on [TBD] at [TBD], or as soon thereafter as it may be heard, by the Honorable Stephen V. Wilson of the United States District Court for the Central District of California, Western Division, located at 350 West 1st Street, Suite 4311, Los Angeles, California, 90012.

Real Parties in Interest Sable Offshore Corporation and Pacific Pipeline Company do not oppose this motion; Plaintiffs oppose this motion; Defendants have indicated they will decide whether to oppose this motion after filing. As stated in the attached declaration of Stefan J. Bachman (Exhibit A), counsel for the United States and counsel for Plaintiffs, Defendants, and Real Parties in Interest held a Local Rule 7-3 meeting by videoconference on July 2, 2026, and counsel for the United States and counsel for Defendants conferred by telephone on July 13, 2026, and by videoconference on August 6, 2026, but were unable to reach a resolution that eliminates the need for filing this motion.

This motion is made pursuant to this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration of Stefan J. Bachman, and all other arguments and evidence that may be presented to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1
II. FACTUAL AND PROCEDURAL BACKGROUND .......... 1
III. STANDARD OF REVIEW .......... 6
IV. ARGUMENT .......... 7
A. The Court should dismiss this case because Sable's relinquishment of the challenged waivers rendered the case moot .......... 7
B. Separately, the Court should dismiss this case because the United States is a required party to this suit that cannot be joined .......... 9
1. The United States is a required party .......... 9
i. *This suit puts federal sovereign interests at issue, and only the United States can protect them* .......... 9
ii. *As the case now stands, Sable is ordered to operate and ordered not to operate* .......... 11
2. Joinder of the United States is infeasible .......... 12
3. This case must be dismissed, as it should not proceed without the United States .......... 13
i. *Proceeding without the United States would substantially prejudice its sovereign interest* .......... 13
ii. *Prejudice cannot be avoided through narrower relief* .......... 14
iii. *A judgment without the United States would not resolve the controversy* .......... 14
iv. *Plaintiffs have other avenues to pursue relief—and sovereign immunity would control even if they did not* .......... 15
V. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

CASES

*Alto v. Black*, 738 F.3d 1111 (9th Cir. 2013) .......... 9

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019) .......... 8

*Am. Greyhound Racing, Inc. v. Hull,* 305 F.3d 1015 (9th Cir. 2002) .......... 13, 15

*Bayer v. Nieman Marcus Grp., Inc.*, 861 F.3d 853 (9th Cir. 2017) .......... 7

*Boles v. Greeneville Hous. Auth.*, 468 F.2d 476 (6th Cir. 1972) .......... 11

*Brach v. Newsom*, 38 F.4th 6 (9th Cir. 2022) .......... 8

*Chamber of Commerce of U.S. v. E.P.A.*, 642 F.3d 192 (D.C. Cir. 2011) .......... 8

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002) .......... 12, 14

*EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010) .......... 10, 11

*Foster v. Carson*, 347 F.3d 742 (9th Cir. 2003) .......... 6

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) .......... 7

*George v. Bay Area Rapid Transit Dist.*, 175 F. App'x 809 (9th Cir. 2006) .......... 11

*In re Burrell*, 415 F.3d 994 (9th Cir. 2005) .......... 9

*Lane v. Peña*, 518 U.S. 187 (1996) .......... 12

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) .......... 9

*McCowen v. Jamieson*, 724 F.2d 1421 (9th Cir. 1984) .......... 11

*Miami Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349 (N.D. Fla. 2018) .......... 11, 12, 13, 14

*Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993 (9th Cir. 2011) .......... 7

*Powell v. McCormack*, 395 U.S. 486 (1969) .......... 6

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) .......... 13, 14, 15

*Republican Party of N.M. v. Herrera for Cnty. of Bernalillo N.M.*, No. 06-0834, 2006 WL 8443574 (D.N.M. Oct. 11, 2006) ....................10

*Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176 (9th Cir. 2012) ....................7, 12

*Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992) ....................11

*Tur v. YouTube, Inc.*, 562 F.3d 1212 (9th Cir. 2009) ....................9

*Two Shields v. Wilkinson*, 790 F.3d 791 (8th Cir. 2015) ....................12

*U.S. Steel Corp. v. Indus. Welfare Comm'n of State of Cal.*, 473 F. Supp. 537 (N.D. Cal. 1979) ....................8

*United States v. Sherwood*, 312 U.S. 584 (1941) ....................12

*Weiss v. Perez*, 602 F. Supp. 3d 1279 (N.D. Cal. 2022) .................... 12, 14

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ....................6

*White v. Univ. of Cal.*, 765 F.3d 1010 (9th Cir. 2014) .................... 10, 11, 13

## STATUTES

49 U.S.C. § 60104(c) ....................8

50 U.S.C. § 4513 ....................3

## RULES

Fed. R. Civ. P. 12 .................... passim

Fed. R. Civ. P. 19 .................... passim

## I. INTRODUCTION

This case must be dismissed for two independent reasons. First, the case is moot. When filed, this action challenged state waivers the California Office of the State Fire Marshal ("Fire Marshal") issued to Real Parties in Interest Sable Offshore Corporation and Pacific Pipeline Company ("Sable") for the operation of two pipeline segments subject to a consent decree entered by this Court. Sable has since surrendered those waivers and obtained their federal equivalent from the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). With the challenged waivers no longer in effect, adjudicating Plaintiffs' claims would result in an advisory opinion. The Court must therefore dismiss under Rule 12(b)(1).

Second, the United States is a required party that cannot be joined. Though California agencies and officials are the nominal defendants, the operative dispute now turns on a preliminary injunction entered by the state court that directly impedes compliance with a Defense Production Act order issued by the Secretary of Energy ("DPA Order") to address national-security risks from energy shortages and reliance on foreign oil. In practical effect, the injunction requires Sable to disobey the DPA Order—and it does so by purporting to enforce this Court's consent decree. Plaintiffs have neither sued the United States nor identified any waiver of sovereign immunity that would permit this Court, in this collateral proceeding, to adjudicate the propriety or effect of maintaining or enforcing that injunction. Nor have they identified any basis to obtain relief that impedes compliance with a federal directive and implicates federal sovereign interests without joining the United States and establishing an express waiver of sovereign immunity. For this independent reason, the Court must dismiss under Rules 12(b)(7) and 19(b).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case is now deeply intertwined with two other cases before this Court: one concerning a consent decree that governs the operation of two segments of the

Santa Ynez Pipeline ("Pipeline") and another concerning California's challenge to the DPA Order issued by the Secretary of Energy. Relevant details are set forth below.

***The Consent Decree Case.*** In March 2020, the United States and the State of California filed a complaint in this Court against Plains All American Pipeline, L.P. and Plains Pipeline, L.P. ("Plains") arising out of a 2015 oil release from one segment of the Pipeline. *United States v. Plains All Am. Pipeline, L.P.*, No. 2:20-cv-02415-SVW-SSC, Dkt. No. 1 (C.D. Cal. Mar. 13, 2020) ("*Plains*"). Along with the complaint, the United States and California lodged a proposed consent decree to resolve the alleged violations. *Plains*, Dkt. No. 6-1. The Court entered the consent decree in October 2020. *Plains*, Dkt. No. 33.

The consent decree required Plains to obtain, among other things, waivers from the Fire Marshal before restarting two Pipeline segments—the segment that ruptured in 2015 and a connecting segment. *Plains*, Dkt. No. 6-1, Appx. B ¶ 1.A, B & Appx. D ¶ 1.a, b, e, f, j. That requirement reflected the segments' then-*intra*state status. *Plains*, Dkt. No. 1 ¶¶ 8–9. Sable later acquired the Pipeline and applied for the waivers. The Fire Marshal granted the request and issued the waivers in December 2024. *Plains*, Dkt. No. 49-2, Ex. 3.

Since then, intervening developments have materially altered the course of the segments' operations and the obligations imposed by the consent decree. On December 17, 2025, PHMSA confirmed the segments are *inter*state and therefore subject to PHMSA's sole and exclusive jurisdiction under the Pipeline Safety Act. *Plains*, Dkt. No. 49-2, Ex. 5. Five days later, PHMSA approved a restart plan for the segments, and the next day PHMSA issued an emergency special permit (the federal equivalent of a state waiver) to Sable. *Plains*, Dkt. No. 49-2, Exs. 6, 7. Soon after, Sable relinquished the state waivers issued by the Fire Marshal. *Plains*, Dkt.

No. 49-2 ¶ 18. On June 25, 2026, PHMSA issued Sable a regular special permit for operation of the segments.[1] *Plains*, Dkt. No. 81.

The United States has moved to terminate the consent decree or, alternatively, to modify it to substitute PHMSA for the Fire Marshal as the segments' regulator. *Plains*, Dkt. No. 49. California has opposed and moved to enforce the consent decree, *Plains*, Dkt. No. 55, and the United States, Plains, and Sable have opposed that motion. *Plains*, Dkt. Nos. 59–61. Those motions are pending.

***The DPA Case.*** On March 13, 2026, the Secretary of Energy determined that restarting the Pipeline, including the segments, was essential to core national defense and security needs in light of energy shortages and reliance on foreign oil. *Plains*, Dkt. No. 49-2, Ex. 10. Acting under delegated presidential authority, the Secretary issued the DPA Order directing Sable to immediately begin transporting hydrocarbons (*i.e.*, oil) through the Pipeline. Sable *must* comply with the Secretary's order. 50 U.S.C. § 4513 (criminal penalties for failure to comply). In the days that followed, Sable restarted the Pipeline with oversight from PHMSA pipeline safety experts. *Plains*, Dkt. No. 49-3 ¶¶ 14–33.

California subsequently filed an action challenging the DPA Order and moved for a preliminary injunction; the United States opposed that motion. *California v. Wright*, No. 2:26-cv-03396, Dkt. Nos. 1, 16, 23 (C.D. Cal. Mar. 30, 2026) ("*Wright*"). The preliminary injunction motion remains pending. The Court granted Sable's motion to intervene and denied Plaintiffs' motion to intervene in

---

[1] The Ninth Circuit is considering consolidated challenges to PHMSA's reclassification of the segments, approval of the restart plan, and issuance of the regular special permit. *See Envtl. Defense Ctr. v. PHMSA*, No. 25-8059 (9th Cir.); *California v. PHMSA*, Nos. 26-508, 26-4629 (9th Cir.).

that action. *Wright*, Dkt. Nos. 28, 33. The United States has moved to dismiss. *Wright*, Dkt. No. 66.

***This Case.*** Plaintiffs filed this action in state court in April 2025, alleging that the Fire Marshal did not comply with state and federal procedural requirements in issuing the state waivers to Sable in December 2024, and naming Sable as a real party in interest. Dkt. Nos. 1-2, 1-3. About two months later, Plaintiffs moved for a preliminary injunction seeking to prevent Sable from restarting the segments. Dkt. No. 1-4. The state court granted Plaintiffs' request in July 2025, ordering Sable not to operate the segments until all applicable provisions of the consent decree entered by this Court are complete. *Id.* at PageID 290–308.

Sable twice asked the state court to dissolve the preliminary injunction: first after PHMSA reclassified the segments, Dkt. No. 32 at PageID 16157–68, and next after the Secretary issued the DPA Order. Dkt. No. 37 at PageID 18024–41. The state court denied both requests. Dkt. Nos. 1-5, 37 at PageID 17891. In its order denying the second request, the state court reasoned that the consent decree's requirements are paramount to the DPA Order and, on that basis, left the injunction in place and required Sable to obtain the Fire Marshal's restart-plan approval before operations could resume. Dkt. No. 1-5 at PageID 349–51. By the time the state court issued that order, Sable had (as mentioned above) received an emergency special permit from PHMSA and surrendered the state waivers animating Plaintiffs' underlying claims. As a result, Plaintiffs' requested relief in this action effectively narrowed to continued enforcement of the preliminary injunction (and related contempt proceedings) as the means to restrain ongoing operations notwithstanding PHMSA's exclusive jurisdiction and the DPA Order. That is the dispute now before this Court.

Plaintiffs moved the state court to enforce the preliminary injunction on March 16, 2026, after Sable restarted operation of the segments pursuant to the DPA Order. Dkt. No. 37 at PageID 17951–63. The state court scheduled a

contempt/show-cause proceeding for May 22, 2026. Dkt. No. 1-5 at PageID 352. But, on May 14, 2026, the United States and Sable removed the action to this Court. Dkt. No. 1.

Plaintiffs and the Fire Marshal have moved to remand, and the United States and Sable have opposed. Dkt. Nos. 44–46, 55–57, 79–80. Sable has moved to dissolve the preliminary injunction, and Plaintiffs and the Fire Marshal have opposed that motion. Dkt. Nos. 43, 89–90. On June 8, 2026, the Court held a hearing on those motions, which remain pending.

***Blended Timeline.*** Events discussed above occurred in the following combined timeline:

- **2015** – Release of oil from a segment of the Pipeline.
- **October 14, 2020** – The Court enters the consent decree resolving claims alleged in a March 2020 complaint.
- **December 17, 2024** – The Fire Marshal issues state waivers to Sable after it acquires the Pipeline.
- **April 15, 2025** – Plaintiffs file this action in state court.
- **June 3, 2025** – Plaintiffs move in this action for a preliminary injunction.
- **July 29, 2025** – The state court grants Plaintiffs' motion and issues a preliminary injunction.
- **December 17, 2025** – PHMSA confirms the segments are interstate.
- **December 22–23, 2025** – PHMSA approves a restart plan and issues an emergency special permit (the federal equivalent of a state waiver).
- **February 26, 2026** – Sable relinquishes the state waivers.
- **March 13–14, 2026** – The Secretary of Energy issues a DPA Order, Sable resumes transporting oil through the Pipeline, and Sable asks the state court to dissolve the preliminary injunction.
- **March 16, 2026** – Plaintiffs move to enforce the preliminary injunction.

- **March 30, 2026** – In the *Plains* case, the United States moves to terminate or modify the consent decree, and California files an action challenging the DPA Order.
- **April 13, 2026** – In the *Plains* case, California moves to enforce the consent decree.
- **April 17, 2026** – The state court denies Sable's March 14 motion to dissolve the preliminary injunction, relying on the federal consent decree and dismissing the DPA Order's effect.
- **May 1, 2026** – In the *Wright* case, California moves to preliminarily enjoin the DPA Order.
- **May 14, 2026** – The United States and Sable remove this action to this Court.
- **May 15, 2026** – Sable moves this Court to dissolve the preliminary injunction issued in this action.
- **May 18, 2026** – Plaintiffs and the Fire Marshal move to remand this action to state court.
- **June 25, 2026** – PHMSA issues a regular special permit for operation of the segments and issues a new jurisdictional determination.
- **June 29, 2026** – In the *Wright* case, the United States moves to dismiss California's action challenging the DPA Order.

## III. STANDARD OF REVIEW

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation modified). "Federal courts have no jurisdiction to hear a case that is moot" and must dismiss the action under Rule 12(b)(1). *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (mootness is properly raised in a motion to dismiss under Rule 12(b)(1)).

Separately, the Ninth Circuit applies a three-step analysis to a motion to dismiss for failure to join a party: (1) whether the absent party is "required" under Rule 19(a); (2) if so, whether joinder is feasible; and (3) if joinder is not feasible, whether, under Rule 19(b), "in equity and good conscience" the action should proceed among the existing parties or be dismissed. *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 & n.3 (9th Cir. 2012). If the action cannot proceed among the existing parties, the case is properly dismissed under Rule 12(b)(7). *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 1002 (9th Cir. 2011).

## IV. ARGUMENT

The Court should dismiss this action under Rule 12(b)(1) because Plaintiffs' claims based on the state waivers are moot. As the case now stands, the operative controversy concerns whether the preliminary injunction will be dissolved or enforced (including through Plaintiffs' pending show-cause/enforcement request), not the merits of Plaintiffs' challenges to the now-relinquished state waivers. Independently, the Court should dismiss this action under Rules 12(b)(7) and 19 because the United States is a required party that cannot be joined absent an express waiver of sovereign immunity, and the action cannot proceed in equity and good conscience without the United States.

### A. The Court should dismiss this case because Sable's relinquishment of the challenged waivers rendered the case moot.

Federal courts can decide only "actual cases and controversies," and a live controversy must "persist throughout all stages" of litigation. *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128–29 (9th Cir. 2005). Otherwise, the case is moot and no longer within the constitutional authority of federal courts. *Id.* at 1129. "A request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Bayer v. Nieman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (citation omitted).

This case does not present a live controversy because Sable has relinquished the California-issued waivers that Plaintiffs challenge as substantively and procedurally unlawful. *Plains*, Dkt. No. 49-2 ¶ 18. Those waivers, which addressed certain corrosion control and cathodic protection requirements for the Pipeline segments, *Plains*, Dkt. No. 6-1 at PageID 173, no longer authorize any conduct and have no continuing legal effect. They have been superseded by federal permits and PHMSA's exclusive jurisdiction over the interstate segments. When an agency action ceases to have legal effect during litigation challenging that action, the case is moot. *See, e.g.*, *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019) (finding repeal of blanket prohibition on certain medical care mooted legal challenge).

Sometimes, recognized exceptions can preserve a challenge to an agency action that no longer has current legal effect. *See, e.g.*, *Brach v. Newsom*, 38 F.4th 6, 12–15 (9th Cir. 2022) (discussing exceptions to mootness). But no exception to mootness applies here. The Fire Marshal cannot reissue the relinquished waivers, or any similar waivers, because PHMSA has exclusive jurisdiction to regulate the interstate Pipeline. *See* 49 U.S.C. § 60104(c).

Nor does the pendency of separate challenges to the DPA Order and PHMSA's jurisdiction preserve a live controversy over the relinquished waivers. *See U.S. Steel Corp. v. Indus. Welfare Comm'n of State of Cal.*, 473 F. Supp. 537, 539–40 (N.D. Cal. 1979); *see also Chamber of Commerce of U.S. v. E.P.A.*, 642 F.3d 192, 208 (D.C. Cir. 2011) (declining to retain jurisdiction over a moot challenge based on the possibility that federal emissions standards would be invalidated and state standards would be reimposed).

And even if PHMSA's jurisdictional determination were ever overturned, the Fire Marshal has already stated that Sable would have to apply for new waivers; the relinquished waivers challenged here would not be reinstated. Dkt. No. 38 at PageID 18355. Any challenge to future waivers would therefore involve a new

agency action and a separate case, and courts cannot maintain jurisdiction over a moot dispute merely because resolving it might offer guidance or reduce hypothetical future litigation. *See Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (case moot even if resolving it would prevent identical future litigation); *see also In re Burrell*, 415 F.3d 994, 999 (9th Cir. 2005) (rejecting collateral-consequences exception to mootness where alleged continuing harm from potential preclusion was hypothetical and speculative).

The Court therefore lacks jurisdiction under Article III and must dismiss under Rule 12(b)(1).

**B. Separately, the Court should dismiss this case because the United States is a required party to this suit that cannot be joined.**

1. <u>The United States is a required party.</u>

Rule 19(a)(1)(B) requires joinder when a nonparty has an interest in a matter and *either* (i) proceeding without the nonparty will, as a practical matter, impair or impede the nonparty's ability to protect that interest, *or* (ii) the nonparty's absence may expose an existing party to a substantial risk of inconsistent obligations because of the interest. The United States is a required party here under both provisions.

i. *This suit puts federal sovereign interests at issue, and only the United States can protect them.*

Under Rule 19(a)(1)(B)(i), an absent party must have a "legally protected" interest—something more than a mere financial stake or speculation about a future event. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (citations omitted). "As a practical matter, an absent party's ability to protect its interest will not be impaired . . . where [the] interest will be adequately represented by existing parties to the suit." *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (citation modified). Representation is inadequate when the absent party's interest diverges

from those of the existing parties or when future conflicts are reasonably foreseeable. *See White v. Univ. of Cal.*, 765 F.3d 1010, 1027 (9th Cir. 2014).

Here, the United States has a legally protected interest because the operative dispute concerns the continued validity and potential enforcement of a preliminary injunction that impedes Sable's compliance with the United States' DPA Order. And the injunction does so by purporting to enforce this Court's consent decree entered in *Plains*—to which the United States is a party—on the theory that the decree controls notwithstanding the DPA Order. Maintaining or enforcing the injunction would therefore require this Court to determine the effect of the consent decree on Sable's compliance with the DPA Order, directly implicating federal sovereign interests in two dimensions. *See EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010) ("A public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices.") (citations omitted); *Republican Party of N.M. v. Herrera for Cnty. of Bernalillo N.M.*, No. 06-0834, 2006 WL 8443574, at *6 (D.N.M. Oct. 11, 2006) (Attorney General a required party where consent decree involving the United States and the Attorney General implicated).

Proceeding without the United States would impair its ability to protect those interests because no existing party can adequately represent them. Plaintiffs' interests are adverse to those of the United States, and the Fire Marshal's interests in continuing the preliminary injunction are now aligned with Plaintiffs' interests. *See* Dkt. No. 89. Sable's interests are commercial and operational, and it faces competing pressures in navigating the preliminary injunction and federal directives. The United States' interests are distinct: protecting its sovereign prerogatives (including sovereign immunity), defending federal action from impermissible collateral attacks, and ensuring the DPA Order and consent decree are implemented consistent with federal objectives. Beyond that, because noncompliance with the DPA Order carries potential criminal consequences, the

risk of divergence between Sable's litigation positions and the United States' sovereign interests is concrete. *See Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992); *see also White*, 765 F.3d at 1027. The United States must therefore be joined as a required party under Rule 19(a)(1)(B)(i).

This conclusion aligns with decisions requiring joinder where the requested relief would operate as a practical restraint on federal action. *See, e.g.*, *George v. Bay Area Rapid Transit Dist.*, 175 F. App'x 809, 809–10 (9th Cir. 2006) (United States required where suit attacked federal regulations); *McCowen v. Jamieson*, 724 F.2d 1421, 1423–24 (9th Cir. 1984) (Secretary required where relief depended on determining Secretary erred in issuing waiver); *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476 (6th Cir. 1972) (HUD required where suit indirectly attacked HUD's administrative approval); *Miami Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349, 1369–74 (N.D. Fla. 2018) (United States required where state-court order undermined federal directive and exposed party to conflicting obligations). And it applies with added force here because California is moving to enforce the same consent decree in *Plains*, and because the injunction dispute in this case rests on the same asserted primacy of that decree over the DPA Order.

ii. *As the case now stands, Sable is ordered to operate and ordered not to operate.*

Courts apply Rule 19(a)(1)(B)(ii) where the requested relief would place an existing party at a substantial risk of conflicting legal obligations. *E.g.*, *EEOC*, 610 F.3d at 1081–82. That is exactly the situation here. The preliminary injunction prohibits Sable from transporting oil through the segments unless and until the Fire Marshal approves a restart plan under this Court's consent decree, while the DPA Order directs Sable immediately to transport oil through the Pipeline (including the segments). Both directives are simultaneously operative. And Plaintiffs' pending

show-cause/enforcement request underscores the real risk of sanctions if Sable complies with the DPA Order rather than the injunction.

Rule 19 exists to prevent precisely this type of conflict. *See Weiss v. Perez*, 602 F. Supp. 3d 1279, 1294–95 (N.D. Cal. 2022) (absent parties required where proceeding without them would force the defendants to choose between compliance with one legal directive and violation of another). For the reasons set forth above, that conflict directly implicates the United States' legally protected interests as the sovereign that issued the DPA Order and as a party to the consent decree. And while Sable can describe its compliance posture, it cannot adequately represent those interests. Proceeding without the United States would therefore leave Sable exposed to conflicting commands from separate sovereigns.

2. <u>Joinder of the United States is infeasible.</u>

The second step in the Court's inquiry is to determine whether joinder is "feasible." *Salt River*, 672 F.3d at 1179. When the absent party is a sovereign, joinder is only feasible if it has waived its sovereign immunity. *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1159 (9th Cir. 2002); *Miami Herald*, 345 F. Supp. 3d at 1374 (discussing *Two Shields v. Wilkinson*, 790 F.3d 791, 794–97 (8th Cir. 2015)). Any waiver of the United States' sovereign immunity must be express. *Lane v. Peña*, 518 U.S. 187, 192 (1996).

Plaintiffs have asserted no claim against the United States or identified any express waiver of sovereign immunity that would permit the Court to adjudicate the propriety or effect of maintaining an injunction restraining compliance with the DPA Order in this collateral action. Accordingly, joinder of the United States is infeasible, *see United States v. Sherwood*, 312 U.S. 584, 586 (1941), and the Court must proceed to Rule 19(b).

3. This case must be dismissed, as it should not proceed without the United States.

The final step in the Court's inquiry is to determine whether, if joinder is infeasible, the case should proceed "in equity and good conscience" without the required party. Fed. R. Civ. P. 19(b). Courts review four factors when making this determination: (i) potential prejudice posed by not joining the required party; (ii) the ability to fashion relief to mitigate that prejudice; (iii) the adequacy of a judgment issued without the required party; and (iv) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(1)–(4). These factors are not exclusive, and no single factor is dispositive. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862–63 (2008). Where the required party is a sovereign immune from suit, the Ninth Circuit has recognized "there may be very little need for balancing . . . because immunity itself may be viewed as the compelling factor." *White*, 765 F.3d at 1028 (citation modified).

i. *Proceeding without the United States would substantially prejudice its sovereign interests.*

When joinder is infeasible because of sovereign immunity, proceeding without the sovereign almost always constitutes substantial prejudice. *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024–25 (9th Cir. 2002) (stating that the first Rule 19(b) factor "largely duplicates the consideration that made a party necessary under Rule 19(a)"); *Miami Herald*, 345 F. Supp. 3d at 1373 (discussing *Pimentel*). Prejudice is especially acute where the relief sought would require the court to adjudicate, or potentially restrain, federal action while the sovereign is unable to appear and defend its interests. *See Pimentel*, 553 U.S. at 868–69.

That is exactly what is happening here. As the background makes clear, this case is now entirely about whether the preliminary injunction should be dissolved or enforced. Maintaining or enforcing the injunction would impede compliance

with the Secretary's DPA Order, which responds to domestic energy vulnerabilities on the West Coast that the President identified as an "unusual and extraordinary threat" to national security. *Plains*, Dkt. No. 49-2, Ex. 10 (DPA Order), § III. And it would effectively compel compliance with the consent decree on the theory that its terms control notwithstanding the Executive Branch's authority under the Defense Production Act. Deciding those issues in the United States' absence would adjudicate its sovereign interests in the DPA Order's implementation and the consent decree's operation without its participation. That is substantial prejudice—precisely what Rule 19 disallows. *Pimentel*, 553 U.S. at 868–69; *see also Miami Herald*, 345 F. Supp. 3d at 1371–73.

ii. *Prejudice cannot be avoided through narrower relief.*

The second factor also favors dismissal because the prejudice to the United States cannot be "lessened or avoided" through tailoring. Fed. R. Civ. P. 19(b)(2). This is not a case where the Court can mitigate prejudice by narrowing peripheral issues. Rather, the conflict arises from the preliminary injunction's core restraint on conduct the DPA Order requires.

Any relief that keeps the injunction in place would preserve that restraint. Sable would still be forced to choose between operating the segments (and violating the injunction) or refraining from operating them (and violating the DPA Order). No protective provision or other form of tailoring could eliminate that prejudice while allowing the case to proceed in the United States' absence. *See Weiss*, 602 F. Supp. 3d at 1297 (finding no way to avert prejudice to absent tribe under Rule 19(b)(2) because requested relief was directly contrary to tribe's position); *see also Dawavendewa*, 276 F.3d at 1162.

iii. *A judgment without the United States would not resolve the controversy.*

The third factor—whether a judgment rendered in the United States' absence would be adequate—likewise supports dismissal. "Adequacy" under Rule 19(b)(3)

reflects the "public stake in settling disputes by wholes, whenever possible." *Pimentel*, 553 U.S. at 870 (citation modified). That interest is not served here. A judgment in this case would not finally resolve the operative controversy because it would not bind the United States as to implementation of the DPA Order. Nor would it resolve the closely related consent-decree enforcement dispute already pending before this Court in *Plains*, where California seeks to compel compliance with the decree's restart prerequisites in response to Sable's post-DPA Order operations. *See Plains*, Dkt. No. 55. Proceeding without the United States would therefore perpetuate fractured litigation rather than provide a comprehensive resolution.

iv. *Plaintiffs have other avenues to pursue relief—and sovereign immunity would control even if they did not.*

Finally, the fourth factor does not weigh against dismissal. Courts routinely dismiss where a required sovereign cannot be joined, even if dismissal leaves plaintiffs without an alternative forum. *Pimentel*, 553 U.S. at 871–72; *Am. Greyhound*, 305 F.3d at 1025 ("[W]e have regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs."). In any event, closely related disputes are already pending in *Wright* (concerning the DPA Order) and *Plains* (concerning the consent decree). To the extent Plaintiffs believe any relief remains available, those proceedings provide the relevant forums—subject to standing and sovereign immunity constraints.

Because all four Rule 19(b) factors favor dismissal, this case cannot proceed in equity and good conscience without the United States. It must be dismissed under Rules 12(b)(7) and 19(b).

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss this action. Plaintiffs' challenges to the Fire Marshal's waivers are moot because Sable has relinquished the waivers and obtained federal permits, leaving no live controversy and rendering

any merits ruling advisory. The Court therefore lacks jurisdiction and should dismiss under Rule 12(b)(1).

Independently, the United States is a required party that cannot be joined absent an express waiver of sovereign immunity, and the action cannot proceed in equity and good conscience in its absence. The Court should therefore dismiss under Rules 12(b)(7) and 19(b).

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
BRADLEY CRAIGMYLE
JUSTIN D. HEMINGER
Deputy Assistant Attorneys General

/s/ *Stefan J. Bachman*
STEFAN J. BACHMAN (DC Bar No. 90008649)
Email: stefan.bachman@usdoj.gov
Senior Attorney
Environment and Natural Resources Division
United States Department of Justice
150 M Street, NE, Room 2.900
Washington, DC 20002
(202) 598-9566

## L.R 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the United States of America, certifies that this brief does not exceed 25 pages and contains 4,658 words, which complies with this Court's New Case Order, Dkt. No. 70, and the word limit of L.R. 11-6.1.

/s/ *Stefan J. Bachman*
STEFAN J. BACHMAN (DC Bar No. 90008649)
Email: stefan.bachman@usdoj.gov
Senior Attorney
Environment and Natural Resources Division
United States Department of Justice
150 M Street, NE, Room 2.900
Washington, DC 20002
(202) 598-9566